**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:10-cv-08103 |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC and | ) | |
| JON PAULSON d/b/a PAULSON GAMES, | ) | |
| | ) | Judge Matthew F. Kennelly |
| Defendants. | ) | |

<u>**DEFENDANT JON PAULSON'S d/b/a PAULSON GAMES
ANSWER**</u>

Jon Paulson d/b/a Paulson Games ("Paulson") hereby answers the First Amended
Complaint ("FAC") of Games Workshop Limited ("GW") and denies every allegation therein
except where expressly admitted:

**PARTIES AND JURISDICTION**

1.      Games Workshop Limited is a United Kingdom corporation and a subsidiary of
Games Workshop Group, plc, which has numerous store locations in and around Chicago,
Illinois, which is its single largest selling market in the United States.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in
paragraph 1 and therefore denies them.

2.      Upon information and belief, Chapterhouse Studios LLC is a Texas limited
liability company with offices at 3930 Glade Road, Suite 108 #174, Colleyville, Texas, 76034.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in
paragraph 2 and therefore denies them.

1

3.      Upon information and belief, Jon Paulson is an individual and the principal owner of Paulson Games, having an address at 2232 College Road, Downers Grove, Illinois, 60516.

**ANSWER**: Paulson admits that he is the sole proprietor of Paulson Games and that he resides at 2232 College Road, Downers Grove, Illinois, 60516.

4.      This is an action for copyright infringement under 17 U.S.C. § 101 et seq.; trademark infringement under 15 U.S.C. § 1114(1) and Illinois common law; for use of false designations of origin under 15 U.S.C. § 1125(a); for dilution under 15 U.S.C. § 1125(c) and 765 ILCS 1036/65; for violation of the Illinois Deceptive Trade Practices Act under 815 ILCS 510/1 et seq.; for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act under 815 ILCS 505/2 et seq.; and for unfair competition under Illinois common law.

**ANSWER**: Paulson admits that the FAC purports to state claims for copyright infringement under 17 U.S.C. § 101 et seq.; for trademark infringement under 15 U.S.C. § 1114(1); for use of false designations of origin under 15 U.S.C. § 1125(a); for dilution under 15 U.S.C. § 1125(c); for violation of 765 ILCS 1036/65, 815 ILCS 510/1 et seq., and 815 ILCS 505/2 et seq.; and for trademark infringement and unfair competition under Illinois common law. Paulson is only charged with copyright infringement under Count I and, as noted below, he believes that GW's claim is unfounded.

5.      This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over the claims arising under the statutory and common law of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

**ANSWER**: Jurisdiction is a legal conclusion to which no response is necessary.

6.      The Court has personal jurisdiction over Defendants because, upon information and belief, each of the Defendants sells and offers to sell infringing products within this jurisdiction; because Defendant Chapterhouse maintains an interactive commercial website through which Illinois residents are able to make purchases of the subject infringing goods; because Defendant Paulson has his principal place of business in this jurisdiction; and because, at all times material to this action, each of the Defendants was the agent, servant, employee, partner, alter ego, subsidiary, and/or joint venturer of each of the other Defendant; certain of the material acts of the Defendants were performed in the scope of such relationship; in doing the acts complained of herein, each of the Defendants acted with the knowledge, permission, and/or consent of the other Defendant.

**ANSWER**: Personal jurisdiction is a legal conclusion that does not require a response.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the Defendants reside in this District and because a substantial part of the events giving rise to the claims occurred in this District.

**ANSWER**: Proper venue is a legal conclusion to which no response is necessary.


## FACTS COMMON TO ALL COUNTS

### A.      Games Workshop's Copyrighted WARHAMMER and WARHAMMER 40,000 Games and WARHAMMER and WARHAMMER 40,000 Trademarks

8.      Games Workshop is the largest and most successful tabletop fantasy wargames company in the world, with a following of millions of gamers and hobbyists devoted to collecting, creating, painting, and building armies for use in Games Workshop's popular WARHAMMER and WARHAMMER 40,000 war games.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 8 and therefore denies them.

9.       Games Workshop's WARHAMMER and WARHAMMER 40,000 war games are played, not on a board with defined game places, but in an open-ended world defined only by the underlying literary works and rules that define and depict the characters and armies of the games.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 9 and therefore denies them.

10.       The game WARHAMMER, for instance, takes place in a fantasy world of dark magic and powerful gods, populated by mighty heroes and foul monsters, in which armies of humans stand shoulder to shoulder with noble elves and grim dwarves battling unending attacks from enemies such as rat-like Skaven that crawl beneath cities, restless dead who stir in their graves, and daemons who lead mutated hordes of the Chaos Gods into war.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 10 and therefore denies them.

11.       The game WARHAMMER 40,000 similarly takes place in a fantasy universe, but one set in a dark and forbidding world of the 41st millennium, a place ravaged by thousands of years of conflict in which gothic armies of the universe do battle and in which the foremost defenders of humanity are Space Marines; genetically engineered super-warriors armed with the most inventive weapons imaginable, supported by vast armies of the Emperor and tanks of the Imperial Guard who confront foes such as the alien armies of the Tau; the savage Orks; enigmatic Eldar; and unfathomable Tyranids, while lurking in the background are once-loyal Space Marines, turned traitorous supporters of the unspeakable Daemon Lords of Chaos.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 11 and therefore denies them.

12.     Games Workshop produces and sells army figures for its games and a wide range of accessories for those armies and games, including weapons, vehicles, equipment, and other accessories for its armies; the features and appearances of which derive from and are complemented by underlying and highly detailed background publications, including the Warhammer 40,000 rule book (now in its fifth edition); the Space Marine Collectors' Guide, (Second Edition, July 2003) and a list of volumes (including all of the earlier editions of each of these works).

Codexes (which contain, for a particular army, specific game rules and guides to collecting and painting)

Warhammer 40,000 Tyranids, Fourth Edition, January 2010

Warhammer 40,000 Space Marines, Fourth Edition, October 2008

Warhammer 40,000 Dark Angels, Third Edition, February 2007

Warhammer 40,000 Chaos Space Marines, Fourth Edition, September 2007

Background Work

Index Astartes II, January 2002

Index Astartes III, February 2004

Index Astartes IV, June 2005

Art Book/Background work

The Horus Heresy Collected Visions, June 2007

The Art of Warhammer 40,000, January 2006

Magazine

     White Dwarf Magazine 249, September 2000

How to Book

     How to Paint Space Marines, April 2005

Novel

     Soul Drinkers, September 2002

Each of the foregoing have been created by or for Games Workshop in England and are protected by copyright belonging exclusively to Games Workshop.

     **ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 12 and therefore denies them.

     13.     The underlying stories, myths, fictional histories, overall appearances, and unique characteristics of the many armies used in Games Workshop's games, such as their language, culture, major worlds, weapons, methods of waging war, heraldry and iconography, and how they look, behave, and function are all derived from detailed books and other publications (which are supplemented by other written materials, such as specific game rules, novels, licensed products, hobby guides, and datasheets separately) all of which are created by Games Workshop and are protected by copyright, including those literary works referenced above.

     **ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 13 and therefore denies them.

     14.     None of the foregoing copyrighted works are United States works for which registration is required under 17 U.S.C. § 411(a); however, Games Workshop does own numerous registrations in the United States Copyright Office for its works, including

Registration No. TX0006541286, "Games Workshop Complete Catalog & Hobby Reference 2006-2007", containing many of the individual works at issue herein.

**ANSWER**: Paulson admits that the U.S. Copyright Office lists a copyright Registration No. TX0006541286, with the "Title on deposit" of "Games workshop complete catalog & hobby reference : 2006-2007" registered in the name of Games Workshop, Ltd.  Paulson lacks sufficient information to admit or deny the remaining allegations in paragraph 14 and therefore denies them.

15.     Since at least as early as 1984, Games Workshop has sold in the United States games, models, parts and equipment therefore, and related items and services under the name and trademark WARHAMMER (and related names and marks described more fully herein), and, since long prior to the acts of Defendants complained of herein, the WARHAMMER trademark and other trademarks associated with the WARHAMMER game have come to identify Plaintiff's goods and services and to distinguish them from the goods and services of others.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 15 and therefore denies them.

16.     Since at least as early as 1987, Games Workshop has sold in the United States games, models, parts and equipment therefore, and related items and services under the name and trademark WARHAMMER 40,000 (and related names and marks described more fully WARHAMMER 40,000 trademark and other trademarks associated with the WARHAMMER 40,000 game have come to identify Plaintiff's goods and services and to distinguish them from the goods and services of others.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 16 and therefore denies them.

17.     Games Workshop's "Forge World" division has for eleven years been selling conversion kits, replacement doors, and additional products for its customers made to fit existing WARHAMMER and WARHAMMER 40,000 products to use to decorate and modify their models for use in connection with the WARHAMMER and WARHAMMER 40,000 games.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 17 and therefore denies them.

18.     Plaintiff's WARHAMMER and WARHAMMER 40,000 games have achieved enormous success, and for many years has been among the best known and most popular table top hobby war games in this country.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 18 and therefore denies them.

19.     Plaintiff owns numerous registrations for its trademarks on the Principal Register in the United States Trademark Office, including the following registrations:

| Trade Mark | Country | Registration Number |
|---|---|---|
| WARHAMMER | USA | 2718741 |
| WARHAMMER 40,000 | USA | 3707457 |
| 40K | USA | 3768909 |
| 40,000 | USA | 3751267 |
| SPACE MARINE | USA | 1922180 |
| ELDAR | USA | 1944847 |
| DARK ANGELS | USA | 1913474 |
| TAU | USA | 2820748 |

**ANSWER**: Paulson admits that the registration numbers given correspond to trademark registrations listed on the principal register of the United States Patent and Trademark Office, and that these registrations list Games Workshop Limited as the registrant. Paulson lacks sufficient information to admit or deny any remaining allegations in paragraph 19 and therefore denies them.

20.     Plaintiffs foregoing WARHAMMER trademarks (collectively, the "WARHAMMER Registered Marks") are valid, subsisting, unrevoked, and uncancelled, and Registration Nos. 2,718,741, 2,820,748, 2,070,887, 2,820,748, 2,100,767, 1,944,847, and 1,913,474 are now incontestable under the provisions of 15 U.S.C. § 1065.

**ANSWER**:    Paulson admits that Declarations of Continued Use (Section 8) and Incontestability (Section 15) have been filed with the U.S. Patent and Trademark Office for the given registration numbers. Paulson lacks sufficient information to admit or deny the allegations in paragraph 20 and therefore denies them.

21.     Games Workshop has very substantial annual sales of products bearing its WARHAMMER, WARHAMMER 40,000, 40K, DARK ANGELS, ELDAR, TYRANID, CHAOS, TAU, and SPACE MARINE brand names, with annual sales in this country alone of approximately $40 million, and Games Workshop invests considerable sums each year in marketing and promoting these brands and in developing new products under these brand names. Games Workshop has thereby built up substantial goodwill and reputation in the marks WARHAMMER, WARHAMMER 40,000, 40k, DARK ANGELS, ELDAR, TYRANID, CHAOS, TAU, and SPACE MARINE (collectively, the "WARHAMMER Marks"), which it uses in connection with its tabletop games and miniatures and accessories for such games.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 21 and therefore denies them.

22.     The area in and around Chicago, Illinois is one of the most active for Games Workshop, being part of the single largest selling market in the United States; being home to the AdeptiCon, the largest independent convention for miniature wargaming hobbyists in the country (at which the WARHAMMER and WARHAMMER 40,000 games are featured), and the site

selected by Games Workshop for its 2011 Games Day Convention (which is expected to attract 3,000 or more fans of the WARHAMMER and WARHAMMER 40,000 games at the Donald E. Stephens Convention Center).

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 22 and therefore denies them.

23.     As a result of the great success of Games Workshop's WARHAMMER and WARHAMMER 40,000 games, since long prior to the acts of Defendants complained of herein, the name and trademarks WARHAMMER, WARHAMMER 40,000, 40k, DARK ANGELS, ELDAR, TYRANID, CHAOS, TAU and SPACE MARINE have come to represent substantial and highly valuable goodwill belonging exclusively to Plaintiff.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 23 and therefore denies them.

24.     The foregoing WARHAMMER Marks are now, and since long prior to the acts of Defendants complained of herein have been, widely recognized throughout the United States and at all relevant times have been famous marks within the meaning of 15 U.S.C. § 1125(c).

**ANSWER**: The allegation as to fame within the meaning of 15 U.S.C. § 1125(c) is a legal conclusion to which no response is necessary. To the extent a response is necessary, Paulson denies the allegation. Paulson lacks sufficient information to admit or deny the remaining allegations in paragraph 24 and therefore denies them.

25.     Games Workshop also has a large number of well-known unregistered trademarks (including names of armies, Chapters, and other products) including without limitation: "Adeptus Mechanicus", "Alpha Legion", "Soul Drinkers", "Iron Snakes", "Luna Wolves", "Imperial Fist", "Death Watch", "Tervigon", "Blood Ravens", "Black Templars", "Legion of the Damned",

"Salamanders", "melta gun", "Carnifex", "Crimson Fists", "Blood Angels", "Death Watch", "Celestial Lions", "Eldar Farseer", "Thousand Sons", "Horus Heresy", "Genestealer" "Assault Marines", "Devastator Marines", and "Tactical Marines".

**ANSWER**: The allegation as to trademark protection, presumably under 35 U.S.C. § 1125, for unregistered trademarks is a legal conclusion to which no response is necessary. To the extent a response is necessary, Paulson lacks sufficient information to admit or deny the allegation. Paulson lacks sufficient information to admit or deny the remaining allegations in paragraph 25 and therefore denies them.

26. The foregoing unregistered WARHAMMER marks are also very well known among the hobbying and gaming communities. Games Workshop's annual sales of products bearing these marks is likewise significant, and it invests great sums each year in marketing and promoting these brands and in developing new products under these brand names. As a result, Games Workshop has built up substantial goodwill and reputation in these unregistered trade marks in the U.S. and around the world.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 26 and therefore denies them.

## B.     Defendants' Infringing Conduct

27. Upon information and belief, after having initiated some modest sales on eBay in 2008, sometime in or about May 2009, Chapterhouse began manufacturing and selling gaming miniatures and accessories at its website located at www.chapterhousestudios.com ("the Web site").

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 27, which relate only to the other defendant, to admit or deny them, and therefore denies them.

28.     Chapterhouse makes no secret of the fact that its products are derived from, inspired by, and copied from Games Workshop's copyrighted works and, indeed, the banner at the top of each page of the Website describes its business as "Specializing in Custom Sculpts and Bits for Warhammer 40,000 and Fantasy".

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 28, which relate only to the other defendant, to admit or deny them, and therefore denies them.

29.     The very name "Chapterhouse" is a direct reference to Games Workshop's proprietary Space Marines characters from the WARHAMMER 40,000 game, each of which belongs to a specific "Chapter" (of which there are many), with each Chapter having its own unique expressions, such as its own heraldry and iconography.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 29, which relate only to the other defendant, to admit or deny them, and therefore denies them.

30.     Because many of the characteristics of the many armies used in Games Workshop's WARHAMMER and WARHAMMER 40,000 games, such as their language, culture, major worlds, weapons, methods of waging war, heraldry and iconography, and their appearances, behaviors and functions can be found in or derived from numerous Games Workshop books and other publications, as alleged above, only defendants know for certain which of these books and other publications they accessed and relied upon in creating the works at issue herein. However, by way of example, the following exemplify some of the ways in which Chapterhouse infringes Games Workshop's copyrighted works.

a.      Chapterhouse produces and sells a kit to convert a Games Workshop "Carnifex" into a "Tervigon" (both of which terms are original and proprietary to

Games Workshop). Games Workshop's Tyranid Codex describes the Tervigon and provides a representation of it, and Defendant's conversion kit will create a Tervigon having unique expressions proprietary to Games Workshop, including having the same number of spine pieces and in the same configuration; the same number, type and configuration of limbs; and similar abdomen sacs; all of which are as depicted and described in Games Workshop's Warhammer 40,000 Tyranids, Fourth Edition, January 2010. However, Chapterhouse may also have referred to and relied upon other Games Workshop publications, including the Tyranid Codexes for 1995, 2001 and 2004.

b.      Chapterhouse is producing shoulder pads for "Space Marines" that very clearly derive from many of the background works published by Games Workshop for its Space Marine Chapters. Games Workshop's Space Marine units are classified by specific shapes and icons on their shoulder pads, the features of which are clearly and uniquely defined in Games Workshop's background works, such as an arrow for the Tactical Squad, the use of Roman numerals, inverted "V" icons and other iconography and heraldry specific to the Chapter and squad to which a soldier belongs.

c.      Chapterhouse is selling shoulder pads for Space Marines featuring symbols and bearing other unique expressions taken from a number of Games Workshop's Assault and Tactical Space Marine unit types. For example, many of the shoulder pads that Chapterhouse is selling bear not only the unique expressions described above as applying more generally to Games Workshop's products but also have studs, arrow and cross arrow designs, inverted "V" and Roman numeral icons, as well as icons associated with a number of Games Workshop's proprietary Chapters, including the Black Templars, Blood Ravens, Thousand Sons, Blood Eagles, Celestial Lions, Exorcists, Flesh Tearers, Howling Griffons, Imperial Fists, Iron Snakes, Soul Drinkers and Salamander Chapters. Chapterhouse is also selling pads that convert standard Games Workshop Space Marines into characters for other Chapters, such as the Salamander and Fleshtearers Chapters, and which borrow unique expressions relevant to that Chapter which are proprietary to Games Workshop.

d.      Chapterhouse's conversion and armor kits reproduce all or substantial distinctive features of the vehicles and miniatures upon which they are based, as they are specifically configured to fit to Games Workshop's products, including: (i) the surface decoration of defendant's Salamander Drop Pod overlays, which is derived from and reproduces Games Workshop's Salamander iconography; and (ii) defendant's Rhino Tank Conversion Kits for Space Marine® Dragon or Salamander, the doors, front panels and armor sections of which, in Defendant's own words, have been specifically designed to "...accessorize the current space marine® rhino model kit. Themed in a dragon or salamander style also good for alpha legion..."

13

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 30, including those in subsections (a) through (d), and therefore denies them. Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

31.     Also among the products sold by Chapterhouse are "Super Heavy Assault Walker" products (referred to by Defendant as a TAU Super Heavy Assault Walker, to incorporate explicitly Games Workshop's proprietary trademark), which, on information and belief, was designed and licensed for Chapterhouse by Defendant Paulson Games.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 31, and therefore denies them. Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

32.     By letter dated December 22, 2010, Games Workshop alerted Chapterhouse to these and other specific infringements, yet Chapterhouse has never acknowledged or responded to the letter or the specific instances of infringements detailed therein.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 32, which relate only to the other defendant, to admit or deny them, and therefore denies them.

33.     Upon information and belief, many consumers of Plaintiff's original WARHAMMER and WARHAMMER 40,000 books and other products and services are users of and make purchases from Defendants' [sic], including many such individuals and users in the State of Illinois.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 33 and therefore denies them.

34.     All of the 106 products that Chapterhouse currently markets and sells (including the "TAU Super-Heavy Assault Walker" designed at least in part by Paulson Games) are derived from and bear the unique characteristics and expressions of Games Workshop's copyrighted works, including unique expressions created and set forth in great detail in Games Workshop's background published works described above.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 34, and therefore denies them.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

35.     Upon information and belief, all of the items produced, marketed, and sold by Chapterhouse (including the "Super-Heavy Assault Walker" designed at least in part by Paulson Games) have copied elements from (and infringe upon) Games Workshop's copyrighted characters and stories and sculptural works and use trademarks owned by Games Workshop to identify these sources of inspiration.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 35, and therefore denies them.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

36.     Similarly, at least 14 of the 15 items produced, marketed, and sold by Paulson Games have been copied from (and infringe upon) Games Workshop's copyrighted characters and stories and sculptural works.

**ANSWER**: Paulson denies any copying as alleged in paragraph 36.  Because Plaintiff has failed to identify what products infringe what copyright(s), Paulson lacks sufficient information to admit or deny the allegations in paragraph 36 and therefore denies them.

15

37.    On information and belief, Paulson entered his agreement with Chapterhouse for the "Super-Heavy Assault Walker" because of an inability to satisfy great consumer demand for the product, which Chapterhouse now sells at retail for $285.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 37, and therefore denies them.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

38.    Defendants' development, production, marketing, and sale of their derivative works based on Games Workshop's proprietary works is without authorization or approval of Games Workshop.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 38 and therefore denies them.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

39.    Defendants' development, production, marketing, and sale of their derivative works based on Games Workshop's proprietary works preempts Games Workshop's ability to develop and sell its own such derivative works and compete directly with Games Workshop's "Forge World" products.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 39 and therefore denies them.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

40.    Beyond the copying of protected original elements of Games Workshop's copyrighted works, Chapterhouse makes extensive unauthorized use of Games Workshop's trademarks.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 40, which relate only to the other defendant, to admit or deny them, and therefore denies them.

41.     Chapterhouse makes pervasive references to Games Workshop's trademarks to identify its products (and adopts a distinctly British phrasing by use of the term "bits" to underscore the connection), including without limitation: "Vehicle Accessory Kits for Space Marines", "Imperial Guard Conversion Bits", "Assault Shoulder Pad for Space Marine with Number 7", "Soul Drinker Bits", "Salamander Bits", and "Xenomorph Head Bits for Tyranid Gaunts".

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 41, which relate only to the other defendant, to admit or deny them, and therefore denies them.

42.     The very title of Chapterhouse's Website "Specializing in Custom Sculpts and Bits for Warhammer 40,000 and Fantasy" indicates prominently - and falsely - that Chapterhouse is literally acting "for" Games Workshop in creating, marketing, and selling such "bits" for the WARHAMMER 40,000 game when it has not been authorized by Games Workshop to use its brand or product names in any way.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 42, which relate only to the other defendant, to admit or deny them, and therefore denies them.

43.     Upon information and belief, such references create an association in the minds of customers between Defendants' products and those of Games Workshop and give the false impression that Chapterhouse's products are licensed by or endorsed by Games Workshop or are otherwise associated with Plaintiff.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 43, which relate only to the other defendant, to admit or deny them, and therefore denies them. To

the extent the allegations in paragraph 43 are directed to Paulson, Paulson denies the allegations in paragraph 43.

44.     As a result of the foregoing, Games Workshop has received many customer complaints and inquiries about Chapterhouse's products, indicating that customers are confused and will continue to be confused as to the origin and sponsorship of Chapterhouse's products, including whether Games Workshop has licensed Chapterhouse or otherwise given it authority to produce the products being sold through the Website.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 44, which relate only to the other defendant, to admit or deny them, and therefore denies them.

45.     Upon information and belief, products produced and sold by Chapterhouse copied from Games Workshop's copyrighted originals and bearing trademarks and other indicia of origin with Games Workshop are also sold in substantial quantities in the secondary market (such as on eBay and other similar platforms), where purchasers are likely to be confused as to the origin of those products.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 45, which relate only to the other defendant, to admit or deny them, and therefore denies them.

46.     Exacerbating the injury to Games Workshop's reputation, the quality of many of Defendants' products is materially inferior to the quality of Games Workshop's originals, which will cause injury to Games Workshop's reputation among purchasers of Defendants' products in the original or secondary markets.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 46 and therefore denies them. Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

47.     Chapterhouse's use of the Games Workshops trademarks, including without limitation the marks WARHAMMER, WARHAMMER 40,000, 40K, SPACE MARINE, CHAOS SPACE MARINES, ELDAR, ELDAR FARSEER, ELDAR JETBIKE, ELDAR WARLOCK, ELDAR SEER COUNCIL, TYRANID, ADEPTUS MECHANICUS, BLOOD ANGELS, DARK ANGELS, BLOOD RAVENS MARINES, IMPERIAL GUARD, BLACK TEMPLARS, ALPHA LEGION, BONESWORD, CARNIFEX, CRIMSON FISTS, FLESH TEARERS, GENESTEALER, GAUNT, HERESY ARMOUR, HORUS HERESY, HOWLING GRIFFONS, IRON HANDS, IMPERIAL FISTS, LASHWHIP, LEGION OF THE DAMNED, LIGHTNING CLAW, LUNA WOLVES, MANTIS WARRIORS, MK ARMOUR, MYCETIC SPORE, RHINO, SALAMANDER, SONS OF RUSS, SOUL DRINKER, SPACE WOLVES, SWARMLORD, TECHMARINES, TAU, THUNDER ARMOUR, THUNDER HAMMER, TERMAGANTS, TERVIGON, and YMGARL (among others) are likely to cause confusion, to cause mistake, or to deceive.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 47, which relate only to the other defendant, to admit or deny them, and therefore denies them.

48.     The WARHAMMER Marks and WARHAMMER Registered Marks were famous at the time Defendants began using these marks.

**ANSWER**: The allegation as to fame within the meaning of 15 U.S.C. § 1125(c) or 765 ILCS 1036/65 is a legal conclusion to which no response is necessary. To the extent a response is necessary, Paulson lacks sufficient information to admit or deny the allegations in paragraph 48 and therefore denies them.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

49.     Defendants' use of the Games Workshops trademarks has been without Plaintiff's authorization or consent.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 49 and therefore denies them.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

50.     Upon information and belief, Defendants' acts complained of herein have been willful and malicious, and intended to trade upon the reputation of Plaintiff and its products and services sold under its WARHAMMER Marks and thereby cause harm to Plaintiff.

**ANSWER**: Paulson denies the allegations in paragraph 50.


## FIRST CAUSE OF ACTION

[Copyright Infringement by Chapterhouse and Paulson Under 17 U.S.C. § 101 et seq.]

51.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 50 as though fully set forth herein.

**ANSWER**: Paulson incorporates by reference its answers to paragraphs 1 through 50.

52.     Defendants' conduct as aforesaid constitutes infringement of Games Workshop's copyright in and to its literary and sculptural works.

**ANSWER**: Paulson lacks sufficient information to admit or deny the allegations in paragraph 52 and therefore denies them.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

53.     For those of the infringing works produced by Paulson Games for Chapterhouse, Defendants share liability jointly and severally for said infringing conduct.

**ANSWER**: Paulson denies the allegations in paragraph 53. Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

54.     Defendants' conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER**: Paulson denies the allegations in paragraph 54. Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

55.     Plaintiff has no adequate remedy at law.

**ANSWER**: Paulson denies the allegations in paragraph 55. Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

## SECOND CAUSE OF ACTION

[Trademark Infringement by Chapterhouse Under 15 U.S.C. § 1114(1)]

56.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 55 as though fully set forth herein.

**ANSWER**: Paulson incorporates by reference its answers to paragraphs 1 through 55.

57.     Chapterhouse's use in commerce of the WARHAMMER Registered Marks is likely to cause confusion, or to cause mistake, or to deceive.

21

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 57, which relate only to the other defendant, to admit or deny them, and therefore denies them.

58.     The foregoing conduct of Chapterhouse constitutes trademark infringement in violation of 15 U.S.C. §1114(1).

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 58, which relate only to the other defendant, to admit or deny them, and therefore denies them.

59.   Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 59, which relate only to the other defendant, to admit or deny them, and therefore denies them.

60.     Plaintiff has no adequate remedy at law.

**ANSWER**: Paulson denies the allegations in paragraph 60.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.


**THIRD CAUSE OF ACTION**

[False Designations of Origin by Chapterhouse Under 15 U.S.C. § 1125(a)]

61.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 60 as though fully set forth herein.

**ANSWER**: Paulson incorporates by reference its answers to paragraphs 1 through 60.

62.     Chapterhouse's conduct as aforesaid is likely to cause confusion, to cause mistake, or to deceive the relevant public that Chapterhouse, its products and services are authorized by or are affiliated with Games Workshop.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 62, which relate only to the other defendant, to admit or deny them, and therefore denies them.

63.     The above-described conduct of Chapterhouse constitutes use of false designations of origin and false and misleading descriptions or representations that are likely to cause confusion, to cause mistake, or to mislead as to the affiliation, connection, or association of Chapterhouse or its goods or services, with Plaintiff and its goods and services in violation of 15 U.S.C. §1125(a).

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 63, which relate only to the other defendant, to admit or deny them, and therefore denies them.

64.     Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 64, which relate only to the other defendant, to admit or deny them, and therefore denies them..

65.     Plaintiff has no adequate remedy at law.

**ANSWER**: Paulson denies the allegations in paragraph 65.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

## FOURTH CAUSE OF ACTION

[Dilution and Tarnishment by Chapterhouse Under 15 U.S.C. § 1125(c)]

66.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 65 as though fully set forth herein.

**ANSWER**: Paulson incorporates by reference its answers to paragraphs 1 through 65.

67.     The WARHAMMER Registered Marks are now and at all relevant times have been famous within the meaning of 15 U.S.C. § 1125(c)(2).

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 67, and, therefore, denies them.

68.     Chapterhouse's use in commerce of the WARHAMMER Marks is likely to create associations that will impair the distinctiveness of and tarnish Plaintiff's WARHAMMER Marks.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 68, which relate only to the other defendant, to admit or deny them, and therefore denies them.

69.     Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 69, which relate only to the other defendant, to admit or deny them, and therefore denies them.

70.     Plaintiff has no adequate remedy at law.

**ANSWER**: Paulson denies the allegations in paragraph 70.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

**FIFTH CAUSE OF ACTION**

[Violation by Chapterhouse of the Illinois Anti-Dilution Statute, 765 ILCS 1036/65]

71.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 70 as though fully set forth herein.

**ANSWER**: Paulson incorporates by reference its answers to paragraphs 1 through 70.

72.    The WARHAMMER Registered Marks are now and at all relevant times have been famous within the meaning of 765 ILCS 1036/65.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 72, and, therefore, denies them.

73.    Chapterhouse's use in commerce of the WARHAMMER Marks causes dilution of the distinctive quality of Plaintiff's WARHAMMER Marks.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 73, which relate only to the other defendant, to admit or deny them, and therefore denies them.

74.    Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 74, which relate only to the other defendant, to admit or deny them, and therefore denies them.

75.    Plaintiff has no adequate remedy at law.

**ANSWER**: Paulson denies the allegations in paragraph 75.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

## SIXTH CAUSE OF ACTION

[Violation by Chapterhouse of the Illinois Deceptive Trade Practices Act,
815 ILCS 510/1 et seq.]

76.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 75 as though fully set forth herein.

**ANSWER**: Paulson incorporates by reference its answers to paragraphs 1 through 75.

77.     This is a claim for deceptive trade practices under the Illinois Deceptive Trade Practices Act. 815 ILCS 510/1 et seq.

**ANSWER**: Paulson admits that this purports to be a claim for deceptive trade practices under the Illinois Deceptive Trade Practices Act. 815 ILCS 510/1 et seq.

78.     Upon information and belief, Chapterhouse have/has knowingly made false and misleading representations as to the source of its goods and services, and knowingly made false representations as to its affiliation with Plaintiff.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 78, which relate only to the other defendant, to admit or deny them, and therefore denies them.

79.     Chapterhouse has caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods and services by making false and misleading representations of fact.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 79, which relate only to the other defendant, to admit or deny them, and therefore denies them.

80.     Chapterhouse has caused a likelihood of confusion or misunderstanding as to the affiliation, connection, or association with or certification by Plaintiff by making false and misleading representations of fact.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 80, which relate only to the other defendant, to admit or deny them, and therefore denies them.

81.     The conduct complained of herein constitutes unfair and deceptive trade practices, in violation of 815 ILCS 510/1 et seq.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 81, which relate only to the other defendant, to admit or deny them, and therefore denies them.

82.     Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 82, which relate only to the other defendant, to admit or deny them, and therefore denies them.

83.     Plaintiff has no adequate remedy at law.

**ANSWER**: Paulson denies the allegations in paragraph 83.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

## SEVENTH CAUSE OF ACTION

[Violation by Chapterhouse of the Illinois Consumer Fraud and Deceptive Business
Practices Act, 815 ILCS 510/1 et seq.]

84.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 83 as though fully set forth herein.

**ANSWER**: Paulson incorporates by reference its answers to paragraphs 1 through 83.

85.     This is a claim for unfair and deceptive trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, Section 2.

**ANSWER**: Paulson admits that this purports to be a claim for unfair and deceptive trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, Section 2.

86.     Chapterhouse's business practices directed at Plaintiff and Plaintiff's customers constitutes an unfair and deceptive business practice as defined and prohibited by Illinois law.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 86, which relate only to the other defendant, to admit or deny them, and therefore denies them.

87.     Chapterhouse has made false and deceptive representations of material fact to Plaintiffs customers with the intent that Plaintiff's customers rely on the misrepresentations.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 87, which relate only to the other defendant, to admit or deny them, and therefore denies them.

88.     Chapterhouse has made false and deceptive representations of material fact relating to the source, sponsorship, approval, or certification of its goods and services with the intent that Plaintiff's customers rely on the misrepresentations.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 88, which relate only to the other defendant, to admit or deny them, and therefore denies them.

89.     Chapterhouse has made false and deceptive representations of material fact relating to its affiliation, connection, or association with Plaintiff or certification by Plaintiff with the intent that Plaintiffs customers rely on the misrepresentations.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 89, which relate only to the other defendant, to admit or deny them, and therefore denies them.

90.     Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 90, which relate only to the other defendant, to admit or deny them, and therefore denies them.

91.     Plaintiff has no adequate remedy at law.

**ANSWER**: Paulson denies the allegations in paragraph 91.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.


**EIGHTH CAUSE OF ACTION**

[Common Law Unfair Competition—Trademark Infringement by Chapterhouse]

92.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 91 as though fully set forth herein.

**ANSWER**: Paulson incorporates by reference its answers to paragraphs 1 through 91.

93.     Chapterhouse's conduct as aforesaid is likely to confuse and deceive consumers about the origin of Defendants' goods and services.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 93, which relate only to the other defendant, to admit or deny them, and therefore denies them.

94.     The foregoing conduct of Chapterhouse constitutes infringement and misappropriation of Plaintiff's common law rights in its trademarks in violation of the common law of the State of Illinois.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 94, which relate only to the other defendant, to admit or deny them, and therefore denies them.

95.     Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER**: Paulson lacks sufficient information as to the allegations in paragraph 95, which relate only to the other defendant, to admit or deny them, and therefore denies them.

96.     Plaintiff has no adequate remedy at law.

**ANSWER**: Paulson denies the allegations in paragraph 96.  Paulson lacks sufficient information regarding the other defendant and, therefore, denies the allegations referring to the other defendant.

## AFFIRMATIVE DEFENSES

Paulson asserts the following defenses, without regard to whether they are affirmative defenses or matters as to which GW bears the burden of proof. Paulson reserves the right to raise additional defenses as discovery proceeds. Paulson does not assume the burden of proof on any

issue, however characterized, on which it does not bear that burden. GW's FAC, and every cause of action within it, fails to state a cause of action on which relief can be granted.

This court lacks subject-matter jurisdiction over claims to enforce U.S. copyrights for which GW has not obtained, or has not pleaded ownership of, copyright registrations.

GW's copyright claims are barred because GW lacks standing to enforce copyrights it does not own.

GW's copyright claims are barred by the doctrine of fair use.

GW's copyright claims are barred by the de minimis doctrine.

GW's copyright claims are barred by the doctrine of independent creation.

GW's claims are barred by its failure to join indispensable parties.

GW's claims are barred by consent, waiver, acquiescence or license.

GW's claims are barred by relevant statutes of limitations.

GW's claims are barred by laches.

GW's claims are barred by res judicata.

GW's claims are barred by estoppel.

GW's claims are barred by the doctrine of copyright misuse.

GW's claims are barred as to any of its actions that violate any unfair competition laws.

GW's claims are barred due to its unclean hands.

GW's claims are barred by the First Amendment to the United States Constitution.

GW's claims are barred by its failure to mitigate damages.

GW's claims to statutory damages are limited or barred by the United States Constitution.

GW's claims to treble damages are barred because at all times Paulson has acted

without malice and with a good faith belief that its actions were proper.

## JURY TRIAL DEMANDED

In accordance with Federal Rule of Civil Procedure 38(b), Paulson demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Paulson seeks relief as follows:

That the Court enter judgment for Paulson and against GW on all causes of action; That the Court award Paulson costs of suit, including reasonable attorneys' fees; and

That the Court award such other relief as is just and equitable.

Dated: May 20, 2011

Respectfully Submitted,

By:  ___*s/ Thomas J. Campbell Jr.*___
  For Jon Paulson, d/b/a Paulson Games

*Counsel for Defendant Jon Paulson*
  *d/b/a Paulson Games*

Ronald H. Spuhler
Ronald A. DiCerbo
Thomas J. Campbell Jr.
MCANDREWS, HELD & MALLOY LTD.
500 W. Madison Street – 34th Floor
Chicago, IL 60061
Tel (312) 775-8000
Fax (312) 775-8100

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 20, 2011 I filed through the Court's CM/ECF System the

foregoing **DEFENDANT JON PAULSON'S d/b/a PAULSON GAMSES ASNWER.**

Counsel of record was served via the Court's CM/ECF System in compliance with Local Rule

5.5 and the Court's General Order on Electronic Case Filing as follows:

| | |
|---|---|
| Scott R. Kaspar | Jonathan E. Moskin |
| Aaron J. Weinzierl | FOLEY & LARDNER LLP |
| FOLEY & LARDNER LLP | 90 Park Avenue |
| 321 North Clark Street, Suite 2800 | New York, New York 10016 |
| Chicago, IL 60654 | |

Jennifer Golinveaux
J. Caleb Donaldson
Thomas J. Kearney
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111

*/s/ Thomas J. Campbell Jr.*
_____