**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>           Plaintiff,<br><br>  v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES<br><br>           Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly<br>Hon. Jeffrey T. Gilbert |

**PLAINTIFF'S MOTION TO COMPEL AN ANSWER TO INTERROGATORY NO. 1**

  Plaintiff Games Workshop Limited ("Games Workshop"), by and through its undersigned counsel, respectfully submits this Motion to Compel an Answer to Interrogatory No. 1 against Defendant Chapterhouse Studios LLC ("Chapterhouse"). In support of this motion, Games Workshop states as follows:

**INTRODUCTION**

  1.  On March 25, 2011, after Chapterhouse had sought leave to move to dismiss certain claims of the Complaint on grounds that the pleading purportedly did not sufficiently identify the works Chapterhouse is alleged to have infringed, Games Workshop, believing Chapterhouse knew full well which Games Workshop works it had copied, served limited discovery, including Interrogatories Nos. 1-2, seeking to identify the actual Games Workshop works in defendant's possession. Because Chapterhouse's entire business is devoted to trading on the success of Games Workshop's extensive portfolio of copyrighted works devoted to its

1

popular WARHAMMER and WARHAMMER 40,000 games and the goodwill represented by Games Workshop's trademarks for its games, and because of the very extent of Games Workshop's portfolio of copyrighted works, Games Workshop believed it was most efficient as an alternative to possible motion practice, simply to inquire directly from Chapterhouse which Games Workshop copyrighted works defendant had in its possession and whether it even purported to claim as inspiration for its accused products any other works of any third parties. Although the Court did not permit Chapterhouse to proceed with the motion, Games Workshop's initial limited discovery requests remain highly relevant to the basic issues in this action – both in proving direct copying by Chapterhouse of the original elements of Games Workshop's works and in rebutting Chapterhouse's defense that it independently created the accused works.

2.  Although Chapterhouse now admits in the parties' Joint Status Report dated June 29, 2011 (Dkt. No. 60) that it had access to all of Games Workshop's subject works (thus conceding it had absolutely no basis for its original motion insofar as it was grounded on a false premise it did not even know which works it was accused of copying), Chapterhouse now refuses to answer any discovery on grounds that it should first be permitted to move for summary judgment on completely different grounds (namely, that the parties' works are not sufficiently similar). As shown below, Chapterhouse fundamentally miscomprehends the nature of similarity necessary to prove unlawful copying, and Games Workshop believes Chapterhouse's ever-evolving excuses to avoid discovery are simply meant to conceal evidence of direct and willful copying and run up costs. As also shown below, it appears Chapterhouse's counsel has not even inquired of its client what specific Games Workshop works Chapterhouse has in its possession.

3.  Furthermore, in connection with its own newly-filed motion to compel, Chapterhouse concedes that the Court can *not* assess the issue of infringement until Games

Workshop has produced all of the works that Games Workshop surmises Chapterhouse must have used as its exclusive sources for copying. Although Games Workshop believes Chapterhouse's argument stands logic on its head (because what really matters is Chapterhouse's own knowledge of the works it copied), based simply on Chapterhouse's new theory, it has no basis now even to suggest summary judgment might be appropriate and could not possibly have any such basis until it receives Games Workshops original works it is accused of infringing.

4. To allow a summary judgment motion now (solely on Games Workshop's copyright claims), before Chapterhouse has answered any discovery, will not only preclude any possible settlement discussions (as the Court has proposed and as Games Workshop believes should at least be explored[1]), it will simply require Games Workshop to request precisely such discovery under Fed. R. Civ. P. Rule 56(f). Furthermore, the same evidence of direct copying that is relevant to Games Workshop's copyright claims, bears directly on its trademark infringement and unfair competition claims, under which intent is a factor. See, e.g., AutoZone, Inc. v. Strick, 543 F.3d 923, 929, 933-34 (7th Cir. 2008). Chapterhouse has not even suggested it intends to seek summary judgment on those claims, so it would be utterly wasteful to foreclose discovery now on Games Workshop's copyright claims, when the same discovery is needed for the trademark and unfair competition claims.

5. Games Workshop itself believes this case, if it can not be settled, can be resolved in its favor on summary judgment. However, Games Workshop is not prepared to settle or move prematurely for summary judgment until it receives basic discovery disclosing the extent of Chapterhouse's infringing activity and can determine if there is any factual basis for

---

[1] For instance, although Games Workshop believes the facts already known to it indicate the case could well be resolved in its favor in summary judgment, without knowing the nature or method of Chapterhouse's deliberate copying or the extent of its sales, it is very difficult for Games Workshop to explore settlement options.

CHIC_5443316.1

Chapterhouse's affirmative defenses. Resolution of this case should not be delayed now by Chapterhouse's efforts to evade its most basic discovery obligations.

6. Interrogatory No. 1, which Chapterhouse refuses to answer, calls for an identification of Games Workshop's works in Chapterhouse's possession, custody or control so that Games Workshop can determine which of its specific works served as the inspiration for Chapterhouse's copying:

> Identify each Games Workshop publication, including (without limitation) copies of any of the works identified in paragraphs 12-14 of the Amended Complaint and/or any Games Workshop newsletter, and/or any Games Workshop miniatures and/or gaming accessories, that has ever been in Chapterhouse's possession, custody or control.

Exhibit A. Because of the vast number of Games Workshop works from which Chapterhouse could have copied, Chapterhouse's answers to these interrogatories will help focus attention on those of plaintiff's specific works in Chapterhouse's possession from which it did actually copy in creating and/or deriving its infringing products. Although Chapterhouse admits access to all of Games Workshops works (thus largely conceding direct copying) to close the loop on the issue of direct copying, Games Workshop requires specification by Chapterhouse which specific Games Workshop works it used for each of its accused products.

7. Similarly, and as already explained to the Court in connection with Games Workshop's pending motion to compel, to rule out the possibility Chapterhouse relied on any sources other than Games Workshop's works, Interrogatory No. 2 calls for an identification of all sources that Chapterhouse consulted, used, reviewed or relied on in deriving its infringing products:

> Identify any and all sources consulted, used, reviewed or relied on by Chapterhouse in creating each of the Accused Works.

4

Indeed, Chapterhouse has asserted as an affirmative defense in its Answer that it "independently created" the accused works at issue in this action (i.e., that it developed the accused works by relying on other sources (which it also has refused to identify). To excuse its refusal to answer either initial interrogatory, Chapterhouse argues that because it is theoretically possible the Court could find non-infringement without any need to address its affirmative defense of independent creation, the Court should effectively <u>bifurcate</u> discovery and prohibit all discovery now, even on the inextricably intertwined issues of copying and independent creation (an notwithstanding the relatedness of these copyright issues with Games Workshop's trademark and unfair competition claims).

8.  Rather than identify any actual Games Workshop works in its possession as required by Interrogatory No. 1, Chapterhouse has indicated instead that it would make available for inspection *in Texas* documents and things responsive to Interrogatory No. 1:

> In addition to its General Objections, Chapterhouse objects to this interrogatory as vague and ambiguous. Chapterhouse further objects to this interrogatory as overbroad, unduly burdensome, and seeking information outside the scope of permissible discovery. Chapterhouse further objects to this interrogatory insofar as it would purport to require Chapterhouse to determine what is a Games Workshop publication. Chapterhouse further objects to this interrogatory on the grounds and to the extent that it is duplicative of Games Workshop's Request for Production No. 1.
>
> Notwithstanding and subject to its General and specific objections, Chapterhouse responds that it will make available for inspection documents and things responsive to Games Workshop's Request for Production No. 1.

Exhibit A.

9.  During a June 8, 2011 meet and confer, counsel for Chapterhouse agreed to provide Plaintiff with at least a general description of the documents and things allegedly responsive to Interrogatory No. 1 that Chapterhouse is withholding in Texas so that Games

5

Workshop would be able to assess the appropriateness of traveling to Texas now (rather than deferring that to a later time); insisting at least that photographs be produced of any items that could not easily be shipped, or identifying which of the items could be copied and produced for inspection here at Winston & Strawn's world headquarters in Chicago. Based on this assurance that at least some description was forthcoming, Games Workshop did not include in its first motion to compel (regarding Interrogatory No. 2) a request that the Court also compel and answer to Interrogatory No. 1.

10. However, despite its agreement during the June 8 meet and confer to provide at least some basic information, to date, Chapterhouse has not provided any description of the documents and things allegedly responsive to Interrogatory No. 1 that Chapterhouse is withholding in Texas, despite repeated requests, including written letters (Exhibits B-D) and emails (Exhibit E). It now refuses to produce any such information.

11. In a meet and confer conducted on June 29, 2011, counsel for Chapterhouse indicated that it would not be providing any description whatsoever of the documents and things allegedly responsive to Interrogatory No. 1 that Chapterhouse is withholding in Texas. When Plaintiff's counsel asked for clarification as to the quantity of responsive things that are in Chapterhouse's possession in Texas, counsel for Chapterhouse could not specify with any certainty whether it was 10 things or 100 things, which strongly suggests that counsel for Chapterhouse has not even investigated the items for themselves in the more than two months since a response to Interrogatory No. 1 has been due. *See* Joint Status Report filed June 29, 2011 (Dkt. No. 60), at Section I.

12. Although Chapterhouse delayed providing comments to Games Workshop's draft status report before the parties had met and conferred on June 29, after the telephone

CHIC_5443316.1

Chapterhouse (when it finally shared its comments on and inserts to the joint status report) revealed why it refused even to discuss reasonable accommodations to facilitate discovery: It had instead used the week following the Court's order that the parties prepare a joint status report on discovery to craft a new theory on which it might seek early summary judgment and hence seek to excuse itself from the discovery process entirely. However, its theory seems to be based on a mistaken notion that only exact, literal copying (essentially, counterfeiting) is actionable under the Copyright Act. To the contrary, as shown by the cases Chapterhouse itself cites, in particular Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167 (7th Cir. 1997), the issues of copying and independent creation are inextricably intertwined (even if conceptually separate). In Ty, Inc., where (unlike here) defendant disputed having access to Ty's "Squealer" pig bean bag toys, defendant might have defended a claim of copying by pointing to proof it relied on real pigs or even other pig toys in the public domain in creating its toy, "Preston". Judge Posner explained: "Real pigs are not the only pigs in the public domain. But GMA has not pointed to any fictional pig in the public domain that Preston resembles. It resembles only Squealer, and resembles him so closely as to warrant an inference that GMA copied Squealer." Id. at 1170.

13. Typically, where a defendant denies copying, proof of infringement requires a two-step analysis. The first is a demonstration of both access and sufficient overall similarity to support an inference of copying. Only then does the court assess whether the copying was of protectable elements. Castle Rock Ent. v. Carol Pub. Group, Inc., 150 F.3d 132, 137 (2d Cir. 1998). Here, however, copying is all but conceded by Chapterhouse. The first step of the analysis is all-but assured. What remains is for Games Workshop to isolate in discovery why Chapterhouse picked the specific features it did from Games Workshop's underlying works to satisfy its customers (who, to Games Workshop's knowledge, consist solely of Games

CHIC_5443316.1

Workshop's fans) so that Chapterhouse's resulting derivative works could fit as seamlessly as possible within the WARHAMMER 40,000 universe. Although Games Workshop believes the quality and quantity of the copying by Chapterhouse vastly exceeds the copying at issues in Castle Rock, where defendant's book contained 643 trivia questions derived from 84 of the 86 episodes of "Seinfeld" television series[2], the qualitative component of copying—i.e., copying of creative expression—alone can drive the infringement analysis. Id. at 139. In Castle Rock, the Second Circuit thus affirmed a grant of summary judgment by then-district-court-judge Sonia Sotomayor where, as here, access was not denied, and there was no genuine dispute as to the defendant's actual (and only) source for its accused copying. Castle Rock held that the trivia book infringed copyrights in the "Seinfeld" television series because the trivia tested aspects of the "Seinfeld" characters, such as expressions and mannerisms, based on the fictitious expression created by the authors, notwithstanding that only fragments were copied from individual episodes. Id. at 139. In much the same way, all of Chapterhouse's products are derived from aspects of the original fictional world Games Workshop has created and are made to be used only in connection with that original creative world. As in Castle Rock, summary judgment for Games Workshop may be appropriate, but no resolution of the case is possible so long as Chapterhouse refuses to produce any discovery.

## ARGUMENT

14. Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Chapterhouse's answers to Interrogatory Nos. 1-2 were due on or before **April 28, 2011**. *See* Fed. R. Civ. P. 33(b)(2).

---

[2] An example cited by the court included the following: "To impress a woman, George passes himself off as: a) a gynecologist; b) a geologist; c) a marine biologist; d) a meteorologist." Id. at 135.

15. As a good faith accommodation, Games Workshop has attempted to work with Chapterhouse to obtain answers to Interrogatory No. 1. Specifically, Games Workshop has attempted to engage Chapterhouse, both through correspondence and two meet and confers, in an effort to determine why Chapterhouse has refused and continues to refuse to answer the interrogatory, as further described in Paragraphs 17-21, *infra*.

16. Particularly given Chapterhouse's admission it had access to all of Games Workshop's works, to the extent that Chapterhouse continues to refuse to identify the Games Workshop materials in its possession, an inference of direct copying would be appropriate. See Ty, Inc. v. GMA Accessories, Inc., 959 F. Supp. 936, 939-40 (N.D. Ill. 1997), aff'd, 132 F.3d 1167 (7th Cir. 1997).

## STATEMENT UNDER L.R. 37.2

17. On May 4, 2011, counsel for Games Workshop directed a deficiency letter to Chapterhouse outlining the deficiencies and requesting that Chapterhouse immediately answer its interrogatories. Exhibit B.

18. On June 6, 2011, counsel for Games Workshop followed up on its May 4, 2011 letter to Chapterhouse by sending a second letter further outlining the deficiencies and requesting a meet and confer on these unresolved issues. Exhibit C.

19. The parties held a meet and confer on June 8, 2011, at 3:30 p.m. CDT. During the meet and confer, counsel for Chapterhouse agreed to provide a description within a business day of the documents and things allegedly responsive to Interrogatory No. 1 that is being withheld by Chapterhouse in Texas.

20. Despite Chapterhouse's promises to provide a description within a day of the June 8, 2011 meet and confer, Chapterhouse still has not provided such a description to Games Workshop. On June 9, 2011, when Chapterhouse still had not provided any additional

information, Games Workshop renewed its request and Chapterhouse again assured Games Workshop the information would be forthcoming. On June 13, 2011, Games Workshop sent another letter to Chapterhouse following up on the agreement it thought the parties had reached at the June 8, 2011 meet and confer. Exhibit D. The letter requested that Chapterhouse provide its interrogatory answer or otherwise respond before the close of business on June 14, 2011. Similar follow-up emails were directed to counsel for Chapterhouse on both June 24, 2011 and June 27, 2011. Exhibit E. Chapterhouse has failed to provide any such description and/or any meaningful response to Games Workshops' letters and outstanding discovery requests.

21. In a second meet and confer conducted on June 29, 2011, counsel for Chapterhouse indicated that it would not be provided anything further—no description of the documents and things allegedly responsive to Interrogatory No. 1 that Chapterhouse is withholding in Texas, and no meaningful responses to the interrogatories themselves. Moreover, in the June 29, 2011 meet and confer, counsel for Chapterhouse indicated that it intended instead to bring an early summary judgment motion in this case and that it would not be providing any discovery until after the Court has resolved that motion. *See* Joint Status Report filed June 29, 2011 (Dkt. No. 60), at Section I.

22. Accordingly, as set forth above in detail in paragraphs 17-21 of this motion, and as shown by attached Exhibits B-E, Games Workshop has in good faith conferred with Chapterhouse in an effort to obtain answers to Interrogatory No. 1 without Court action, as required by Fed. R. Civ. P. 37(a)(1) and Local Rule 37.2. Indeed, Games Workshop initially refrained from moving to compel in reliance on Chapterhouse's assurances it would at least partly comply. However, despite these efforts, Games Workshop's forebearance has been

rewarded with Chapterhouse ultimate refusal to provide any response at all, hence necessitating this motion.

## CONCLUSION

23. Accordingly, Games Workshop respectfully requests that the Court direct Chapterhouse to respond in full to Interrogatory No. 1 (and Games Workshop's accompanying document requests calling for production of the same), by producing in Chicago all of the materials that Chapterhouse is withholding in Texas. Alternatively (and minimally) Chapterhouse should be required to provide a complete listing of every such item by a date certain. Games Workshop should not be forced to travel to Texas simply to learn of the scope and quantity of allegedly responsive documents and things being withheld there by Chapterhouse, particularly where Chapterhouse's counsel is unable to identify how many items are involved.

24. Alternatively, Games Workshop requests that the Court enter an order establishing an evidentiary finding of direct copying by Chapterhouse (hence also barring its defense of independent creation).

25. In addition, pursuant to Federal Rule of Civil Procedure 37(a)(4), the Court may apportion the reasonable expenses incurred in relation to a motion to compel among the parties in a just manner. Accordingly, should the Court determine that Chapterhouse's general objections are unfounded and its refusal to answer the interrogatories improper, Games Workshop should be reimbursed for at least one half of its reasonable expenses, including attorneys' fees, incurred in relation to this motion. *Nat'l Business Sys., Inc. v. AM Intern, Inc.*, 109 F.R.D. 172 (N.D. Ill. 1986).

**WHEREFORE**, Games Workshop respectfully requests that the Court enter an order (1) granting the Motion; (2) ordering Chapterhouse to respond to Interrogatory No. 1 or,

alternatively, establishing an inference of direct copying; (3) ordering that Games Workshop be reimbursed for at least one half of its reasonable expenses, including attorneys' fees, incurred in relation to this Motion, and (4) granting any such further relief as the Court deems appropriate and just.

Dated: July 5, 2011

Respectfully submitted,

/s/ Scott R. Kaspar

Scott R. Kaspar (Ill. Bar No. 6284921)
Aaron J. Weinzierl (Ill. Bar No. 6294055)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: skaspar@foley.com;
aweinzierl@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-3229
Email: jmoskin@foley.com

*Attorneys for Plaintiff*
*Games Workshop Limited*

**CERTIFICATE OF SERVICE**

        I, Scott R. Kaspar, an attorney, hereby certify that on July 5, 2011, I caused to be filed electronically the foregoing PLAINTIFF'S MOTION TO COMPEL AN ANSWER TO INTERROGATORY NO. 1 with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                                              /s/ Scott R. Kaspar