IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC and | ) | |
| JON PAULSON d/b/a PAULSON GAMES, | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | |

DEFENDANT CHAPTERHOUSE STUDIOS LLC'S
MOTION FOR SANCTIONS

Plaintiff has failed to comply with this Court's July 7, 2011 Discovery Order (the

"July 7 Discovery Order").[1]  Defendant moves for sanctions pursuant to Fed. R. Civ.

Proc. 37(b)(2).

I.      Background

On June 30, 2011, Defendant filed a motion to compel responses to its Document

Request No. 1 (seeking exemplars of the products Plaintiff alleges Defendant has

infringed) and its Interrogatories 1 and 2 (seeking basic information necessary to test

Plaintiff's ownership and protectability of copyrights alleged in this case) ("Defendant's

Motion to Compel").

On July 7, 2011, this Court issued the July 7 Discovery Order granting

Defendant's Motion to Compel.  The Court gave Plaintiff until July 29, 2011 to comply,[2]

and "to produce exemplars of the works claimed, in response to Defendant's Request for

---

[1] Minute Order of July 7, 2011 (Docket No. 69).
[2] Declaration of Thomas J. Kearney ("Kearney Decl.") ¶ 2, Exh. 1, at 17:5-12 (July 6, 2011 Hearing Transcript).

Production No. 1, and to provide the information requested about the copyrights claimed, in response to Interrogatories Nos. 1 and 2."[3]

By letter dated July 5, 2011, Plaintiff produced an electronic copy of a single printed work, in the form of TIFF images of page proofs of a book entitled *The Soul Drinkers Omnibus*. By letter dated July 29, 2011, Plaintiff produced electronic copies of twelve additional printed works, which included nine books of rules and background information, each approximately 60-100 pages in length; one 90-page instruction manual on how to paint miniature figures; one issue of a magazine; and two art books, one approximately 215 pages and the other approximately 420 pages. Both of the art books and one of the background information books (over 700 pages in all) were produced as black-and-white TIFF images, despite the fact that all three books feature large numbers of full-color illustrations. Plaintiff failed to produce any other documents, or to provide any other information in response to the Court's July 7 Discovery Order.[4]

## II.     Plaintiff Has Failed to Comply With The July 7 Order Requiring Production of Documents In Response To Defendant's Document Request No. 1.

Defendant's Document Request No. 1 sought exemplars of the copyrights in suit that Plaintiff claims Defendant has infringed, as identified by Plaintiff in its response to Defendant's Interrogatory No.1.[5]

Defendant's Document Request No. 1 sought:

> For each of Chapterhouse's works identified in Exhibit A to your Responses to Chapterhouse Studios' First Set of Interrogatories, one exemplar of each of your works identified in the corresponding table entry of Exhibit A, produced in the same order in which they are listed in Exhibit A. If one page of a multi-page publication is identified in Exhibit A, produce the entire publication.

---

[3] Defendant Chapterhouse Studios LLC's Motion to Compel Answers to Interrogatories 1 and 2 and Document Request No. 1, at 8 (June 30, 2011) (Docket No. 61).
[4] Kearney Decl. ¶ 3.
[5] Kearney Decl. ¶ 4, Exh. 2 (Plaintiff's Response to Chapterhouse Studios' First Set of Interrogatories); Kearney Decl. ¶ 5, Exh. 3 (Plaintiff Games Workshop Studios LLC's [sic] Response to Request for Production of Documents to Games Workshop Limited Set One).

Defendant's Interrogatory No. 1 sought

> Identify each infringement of your copyrights for which you claim
> Chapterhouse is liable, by identifying (a) the copyright infringed;
> (b) the allegedly infringing product or products; (c) the exclusive
> right or rights of the copyright owner, as set forth in 17 U.S.C.
> section 106, that you claim has been infringed; and (d) the specific
> conduct that constitutes the infringement.[6]

In response to Defendant's Interrogatory No. 1, Plaintiff produced a chart
("Plaintiff's Exhibit A") that showed, for each allegedly infringing work, the
corresponding work or works that Plaintiff claimed was infringed.[7]

Despite the Court's July 7 Discovery Order, Plaintiff has produced only a few of
its allegedly infringed works identified on Plaintiff's Exhibit A: only eleven of the twenty
printed works it claims have been infringed,[8] and none of the thirty or more tangible
things (including miniature figures, accessories, and other non-print works) it alleges
have been infringed. *See* Kearney Decl. ¶ 6, Exh. 4 (chart showing works named in
Plaintiff's Exhibit A but not produced). By way of example, in just the first five entries
in Plaintiff's Exhibit A, Plaintiff named six works that it failed to produce.[9]

In addition, three of Plaintiff's works were produced as black-and-white scans,
despite the fact that two of those works are collections of full-color artwork and the third
prominently features color illustrations as well. Plaintiff alleges repeatedly that
Chapterhouse's products infringe in part by copying the color schemes of various

---

[6] Defendant also served companion Interrogatory No. 2, to ensure that Plaintiff identified
the specific work/s that it claimed each of Chapterhouse's products had infringed.
Plaintiff responded to Interrogatories 1 and 2 with the same Exhibit A.
[7] Kearney Decl., ¶2, Exh. 2 (Plaintiff's Exhibit A).
[8] Two of the thirteen works Plaintiff has produced are not named in Plaintiff's Exhibit A
as allegedly infringed works.
[9] The works named, but not produced, in just the first five entries of Plaintiff's Exhibit A
are: "Space Marine Collector's Guide 2003" (Entry 1); "Mark V Heresy Space Marines"
and "Warhammer 40,000 Space Marine Land Speeder 1998" (Entry 2); "Space Marine
Chaplain with skull helmet" (Entry 3); "Blood Raven decal/transfer sheet" (Entry 4); and
"Space Marines in Terminator armor" (Entry 5). *Compare* Kearney Decl. Exh. 2
(Plaintiff's Exhibit A) *with* Kearney Decl. Exh. 4 (chart of named works not produced).

3

Warhammer 40,000 armies, and cites in support a book called *The Art of Warhammer 40,000* — which it has produced only in black-and-white. *See, e.g.*, Plaintiff's Exhibit A (Kearney Decl. Exh. 2) at entry 14 (noting that the colors of the Howling Griffons Space Marine Chapter are red and yellow, and citing to The Art of Warhammer 40,000 at p.71); Kearney Decl. ¶ 7, Exh. 5 (reproducing Plaintiff's black-and-white scan of The Art of Warhammer 40,000 page 71). Plaintiff's Exhibit A also alludes vaguely to unspecified "Black Library novels," a category that includes literally hundreds of books, only three of which have been produced.[10]

By way of example, Plaintiff's production is missing at least the following nine printed works named in Plaintiff's Exhibit A:

| Printed Work Not Produced by Plaintiff | Entry in Plaintiff's Exhibit A |
|---|---|
| Index Astartes I (2002) | 8 |
| Soul Drinkers (2002), front cover | 23, 24 |
| Space Marine Collector's Guide (2003) | 1, 79 |
| Space Marine Land Speeder (1998) | 2 |
| Space Marines (2008) | 65 |
| Space Marines | 34 |
| Space Wolves (2000) | 79 |
| Space Wolves (2009) | 95 |
| White Dwarf 101 (1988) [magazine] | 90 |

Plaintiff produced no tangible things at all, despite having named at least 30 models, accessories, or other tangible things in its Exhibit A. *See* Kearney Decl. ¶ 6,

---

[10] Black Library is a division of Games Workshop. Kearney Decl. ¶ 8, Exh. 6 (*http://www.blacklibrary.com/* (last visited August 3, 2011)). Plaintiff's Exhibit A refers to Games Workshop Black Library novels at Entry 17. Kearney Decl. ¶ 4, Exh. 2. Black Library has published more than 200 novels, including more than 100 Warhammer 40,000 novels. Kearney Decl. ¶ 9, Exh. 7 (List of Black Library novels at wikipedia.org, http://en.wikipedia.org/wiki/List_of_Black_Library_novels).

Ex. 5 (table identifying works named in Plaintiff's Exhibit A but not produced by Plaintiff).

Defendant is entitled to exemplars of the things it is accused of infringing. A determination of substantial similarity—required for copyright infringement—requires a side-by-side comparison of the protectable elements of the works. *Bryant v. Gordon*, 483 F. Supp. 2d 605, 617 (N.D. Ill. 2007) (Kennelly, J.) (citing *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 506 n.1, 510 (7th Cir. 1994)). Plaintiff is in violation of the Court's July 7 Discovery Order to produce such exemplars.

**III.    Plaintiff Has Failed to Comply with the July 7 Discovery Order Requiring Complete Responses to Defendant's Interrogatory Nos. 1 and 2.**

Plaintiff has also failed to provide the ownership and other basic information about the copyrights in suit requested in Interrogatories 1 and 2, despite the July 7 Discovery Order requiring it to fully respond to those interrogatories.

Defendant's Interrogatories 1 and 2 requested basic information about each of Plaintiff's claimed copyrights, including: "the author; the date of creation; the current owner; any current exclusive licensee; the U.S. copyright registration or application number if any."[11] Plaintiff's initial response to the Interrogatories listed a handful of works and attached Plaintiff's Exhibit A listing "Games Workshop's . . . understanding" of the sources of Chapterhouse's works,[12] but failed to identify the author, date of creation, current owner, exclusive licensee, or copyright registration information, for any of the works. Following a meet and confer, Plaintiff served an amended response, which differed from Plaintiff's original response only in that it included the following statement:

> Pursuant to Fed. R. Civ. P. Rule 33(d), Games Workshop will produce documents responsive to this request identifying the authors and dates of first publication of the foregoing works, as well as Registration No. TX0006541286, "Games Workshop Complete Catalog & Hobby

---

[11] Kearney Decl. ¶ 10 Exh. 8, at 3 (Defendant's First Set of Interrogatories Nos. 1-2, Definition 5(c)).

[12] Kearney Decl. ¶ 4, Exh. 2, at 2 (Plaintiff's Responses to Chapterhouse Studios' First Set of Interrogatories).

Reference 2006-2007". Games Workshop further confirms that it is the sole owner of each of the foregoing works, none of which is licensed for use by third parties in the United States.[13]

Neither Plaintiff's interrogatory responses, nor its document production, provided any information about the dates of creation of any of its alleged copyrighted works.[14] Nor did Plaintiff's interrogatory responses or document production provide any information about the U.S. copyright registration status of any work other than the "Games Workshop Complete Catalog & Hobby Reference 2006-2007," which is not even identified in Plaintiff's Exhibit A as an allegedly infringed work. *See* Kearney Decl. ¶ 4, Exh. 2 (Plaintiff's Exhibit A).

Despite Plaintiff's representations, the documents produced also do not sufficiently identify the authors of the works, and do not provide any information about the dates of creation of the works. Instead, Plaintiff has produced thirteen multi-page volumes[15] with text, illustrations, and photographs, many of which are credited to multiple authors without any indication of what part of the work is infringed, or which author created which part of the work. For example, the book "Tyranids 2009" credits eight artists, but does not attribute any particular illustration to a specific creator.[16] The book "Space Marines 2004" credits two writers, seven artists, five "conceptual designers," three "graphic designers," eight "miniatures designers," and one contributor of unspecified "additional material."[17] Only the cover art of "Space Marines 2004" is attributed to an individual author, and Plaintiff does not allege that the cover art has been

[13] Kearney Decl. ¶ 11, Exh. 9, at 2-3 (Plaintiff's Amended Responses to Chapterhouse Studios' First Set of Interrogatories).

[14] Plaintiff also claimed that the documents would identify the dates of first publication, which is not what the Interrogatories requested.

[15] Two of these works are not named in Plaintiff's Exhibit A as allegedly infringed works.

[16] Kearney Decl. ¶ 12, Exh. 10 (Tyranids 2009 at 96, Bates No. GW0001466). The Tyranids 2009 book is identified by Games Workshop in Entries 37, 40, 86 of Plaintiff's Exhibit A. Kearney Decl. ¶ 4, Exh. 2 (Plaintiff's Exhibit A).

[17] Kearney Decl. ¶ 13, Exh. 11 (Space Marines 2004 at 1, Bates No. GW0001219). The Space Marines 2004 book is named in Entry 48 of Plaintiff's Exhibit A. Kearney Decl. ¶ 4, Exh. 2 (Plaintiff's Exhibit A).

infringed. Plaintiffs have failed to provide author information and other requested information for any of the other works in suit identified in Plaintiff's Exhibit A. Defendant should not be required to depose potentially dozens of authors in an effort to discover which of them created the content that is really at issue in this case.

Defendant is entitled to test Plaintiff's claim of ownership, part of a copyright plaintiff's *prima facie* case on which Plaintiff bears the burden. Not only does Plaintiff's refusal to provide this basic information (such as author of the works and dates of creation) violate the Court's July 7 Discovery Order, but it means that Plaintiff has failed to produce evidence supporting its ownership of the works in suit. If it cannot show ownership, then it does not have standing to bring its claims. A plaintiff who does not own a copyright does not have standing to sue for its infringement. 17 U.S.C. 501(b).

Authorship information is particularly important in this case because of issues concerning United Kingdom copyright law. [18] The ownership of a copyright is determined by the country of the work's origin. In the case of a non-U.S. work, "the law of the [Berne Convention] signatory country with the closest relationship to the international work at issue governs determination of copyright ownership." *Rudnicki v. WPNA 1490 AM*, No. 04 C 5719, 2009 WL 4800030, at \*7 (N.D. Ill. Dec. 10, 2009) (Pallmeyer, J.) (ownership of copyright in radio broadcasts by Polish national residing in Belgium, which were first broadcast in Poland, was governed by Polish copyright law); *Saregama India Ltd. v. Mosley*, Slip Op., No. 1:08-cv-20373, \*13 (11th Cir. Mar. 25, 2011) ("Initial ownership of a copyrighted work is determined by the laws in the work's country of origin") (quoting *Lahiri v. Universal Music & Video Distrib., Inc.*, 513 F.

---

[18] To the extent Plaintiff's works are U.S. works, Plaintiff may not bring claims for infringement unless it has registered the works with the U.S. Copyright Office. In part because of Plaintiff's failure to provide information about its alleged works, Defendant lacks knowledge about the national origin of those works. Nothing in this motion should be taken as conceding that Plaintiff's works are U.K. works, or that they are not U.S. works, for the purposes of applying U.S. copyright law.

Supp. 2d 1172, 1176 n.4 (C.D. Cal. 2007)); *accord, Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90 (2d Cir. 1998).

Plaintiff alleges that its works "have been created . . . in England." FAC ¶ 12. Plaintiff must show ownership of the copyright in those works under U.K. law. In addition, because the works Games Workshop alleges have been infringed do not appear to have been registered with the U.S. Copyright Office, Plaintiff is not entitled to any statutory presumption of validity.[19]

Under U.K. law, the "author" of a work is "the person who created it." Copyright Designs & Patents Act, 1988, c. 48, § 9.1 ("Authorship of work"). U.K. law does not have a provision like the "work made for hire" provision of U.S. copyright law, which creates the legal fiction that the creator's employer is the "author" of a copyrighted work. "The author of a work is the first owner of any copyright in it, [except that] [w]here a literary, dramatic, musical or artistic work . . . is made by an employee in the course of his employment, his employer is the first owner of any copyright in the work subject to any agreement to the contrary." *Id.* § 11 ("First ownership of copyright"). To show ownership of a U.K. copyright, then, a plaintiff must show that it is the "first owner" of copyright, or that the actual "first owner" has transferred the copyright to the plaintiff. U.S. copyright law follows the same basic legal principal: "If a plaintiff is not the author of the copyrighted work then he or she must establish a proprietary right through the chain of title in order to support a valid claim to the copyright. . . . Absent this showing, a plaintiff does not have standing to bring an action under the Copyright Act." *Motta v.*

---

[19] Although U.S. copyright registration provides "prima facie evidence of the validity of the copyright and of the facts stated in the certificate" under 17 U.S.C. § 410(c), it does not appear that Plaintiff is entitled to such statutory presumption of validity or ownership. Plaintiff claims only a single U.S. copyright registration, and does not allege that that lone registered work has been infringed. FAC (Docket No. 32) ¶ 14 (alleging Games Workshop owns a registration for "Games Workshop Complete Catalog & Hobby Reference 2006-2007"); Kearney Decl. ¶ 2, Exh. 1 (Plaintiff's Exhibit A, which does not mention "Games Workshop Complete Catalog & Hobby Reference 2006-2007").

*Samuel Weiser, Inc.*, 768 F.2d 481, 484 (1st Cir. 1985); *Marobie-FL, Inc. v. National Ass'n of Fire Equipment Distributors*, 983 F. Supp. 1167, 1173 (N.D. Ill. 1997).

Because U.K. law lacks a U.S.-style "work made for hire" provision, Plaintiff cannot claim ownership of any copyrights as an author. Instead, it must show that it owns the copyright for each work under U.K. law. Games Workshop may do this in two ways. First, it may prove that each work was created by a Games Workshop employee in the course of his or her employment. Alternatively, it may establish a chain of title from each author who was the "first owner" of copyright.[20] Information about the authors of the works at issue, and the dates of creation of the works, bears directly on these issues.

## IV.     Requested Relief

Fed. R. Civ. P. 37 provides for sanctions against a party for failing to obey a discovery order. The sanctions "may include . . . prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii).

For its failure to comply with the Court's July 7 Discovery Order requiring production of exemplars of allegedly infringed works responsive to Defendant's Document Request No. 1, Plaintiff should be prohibited from supporting its copyright claims with documentary evidence of the allegedly infringed works other than the thirteen publications that it produced, and its infringement claims should be limited to those thirteen works. Plaintiff should also be ordered to supplement its Exhibit A to specify the portion or portions of the thirteen voluminous publications it has now produced that it claims each of Defendant's products infringes.

---

[20] Defendant's Request for Production of Documents No. 4 requested "All documents constituting the chain of title for all copyrights [Plaintiff] claim[s] in this action." In response, Plaintiff stated that "Games Workshop is not aware of any documents responsive to this request." Kearney Decl. Exh. 3, at ¶ 4 (Plaintiff Games Workshop Studios LLC's [sic] Response to Request for Production of Documents to Games Workshop Limited Set Two).

For its failure to comply with the Court's July 7 Discovery Order requiring production of information responsive to Defendant's Interrogatories 1 and 2, Plaintiff should be prohibited from supporting its copyright claims with any U.S. copyright registration not currently identified in its Responses to Defendant's Interrogatories 1 and 2.  The Court should also dismiss all other copyrights from this case for Plaintiff's failure to provide information sufficient to allow Defendant to test Plaintiff's claim of ownership, unless Plaintiff immediately provides the information it was already ordered to provide.

Defendant also respectfully requests that the Court order Plaintiff to pay Defendant's reasonable expenses occasioned by Plaintiff's failure to produce the required documents and information, including attorneys' fees associated with this motion, as required by Rule 37.  Fed. R. Civ. P. 37(b)(2)(C).

Dated: August 8, 2011                              Respectfully submitted,

                                                   CHAPTERHOUSE STUDIOS LLC

                                                   By:     /s/ Thomas J. Kearney
                                                   Jennifer Golinveaux (CA Bar No. 203056)
                                                   J. Caleb Donaldson (CA Bar No. 257271)
                                                   Thomas J. Kearney (CA Bar No. 267087)
                                                        WINSTON & STRAWN LLP
                                                        101 California Street
                                                        San Francisco, CA 94111-5802
                                                        Phone: (415) 591-1000
                                                        Fax: (415) 591-1400
                                                        jgolinveaux@winston.com
                                                        jcdonaldson@winston.com
                                                        tkearney@winston.com

Eric Mersmann (IL Bar No. 6286859)
Catherine B. Diggins (IL Bar No. 6296237)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600
Fax: (312) 558-5700
emersmann@winston.com
cdiggins@winston.com

*Attorneys for defendant Chapterhouse Studios LLC*

11

SF:316237.2