# EXHIBIT 1

**(Transcript of July 6, 2011 Hearing)**

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3

 4   GAMES WORKSHOP LIMITED,     )
                                 )
 5              Plaintiff,       )   Docket No. 10 C 8103
                                 )
 6        vs.                    )
                                 )
 7   CHAPTERHOUSE STUDIOS, LLC,  )   Chicago, Illinois
     et al.,                     )   July 6, 2011
 8                               )   10:00 a.m.
                Defendants.      )
 9

10               TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE MATTHEW F. KENNELLY
11

12   APPEARANCES:

13
     For the Plaintiff:      FOLEY & LARDNER, LLP
14                           BY:  MR. SCOTT R. KASPAR
                             321 North Clark Street, Suite 2800
15                           Chicago, Illinois  60610

16
     For the Defendant:      WINSTON & STRAWN, LLP
17                           BY:  MR. ERIC J. MERSMANN
                             35 West Wacker Drive
18                           Chicago, Illinois  60601

19

20

21

22

23
             LAURA M. BRENNAN - Official Court Reporter
24             219 South Dearborn Street - Room 2102
                    Chicago, Illinois  60604
25                      (312) 427-4393
```

```
 1        (The following proceedings were had in open court:)
 2           THE CLERK:  10 C 8103, Games Workshop v.
 3  Chapterhouse.
 4           THE COURT:  Before you walk all the way up here, just
 5  have a seat.  I want to talk today about everything, including
 6  the motion that is noticed up for tomorrow or whenever.  So I
 7  want to give you a couple of minutes to do that, plus it's
 8  going to take awhile, and some of the other stuff is quicker.
 9  So I would like to get some of the other stuff taken care of.
10  So just collect your thoughts while you're waiting.
11          (Brief recess.)
12           THE CLERK:  10 C 8103, Games Workshop v.
13  Chapterhouse.
14           THE COURT:  I am very sorry.  I really, honestly, did
15  not expect it to go this long.
16          All right, let me get everybody's names to start off
17  with.
18           MR. KASPAR:  Good morning, your Honor; Scott Kaspar
19  on behalf of the plaintiff Games Workshop.
20           MR. MERSMANN:  Eric Mersmann on behalf of defendant
21  Chapterhouse.
22           THE COURT:  Okay.  So let me just go through with you
23  what I have here.  I've got the status report that was filed
24  about a week ago.  I've got the original motion to compel
25  which was filed in mid-June, and then there was a -- I'll just
```

1 call it a renewed motion.
2 MR. KASPAR: Yes.
3 THE COURT: It really covers part of the same thing,
4 that was filed within the last day or two.
5 MR. KASPAR: Yes.
6 THE COURT: Then I've got a motion by the defense to
7 compel some discovery, which is noticed up, I think, maybe
8 tomorrow or next week sometime.
9 MR. MERSMANN: That's correct, your Honor.
10 THE COURT: And a response was already filed to that.
11 Is that everything I'm supposed to have?
12 MR. KASPAR: That sounds correct, your Honor.
13 THE COURT: Okay. So let me just kind of --
14 I read all this stuff last night and read it again
15 this morning. I will sort of give you my reaction so that you
16 have something to kind of shoot at.
17 My reaction is I should grant both motions to compel,
18 and I'm going to worry about the anticipated summary judgment
19 motion if and when I see it. I'm not particularly saying when
20 about the prospect of the summary judgment motion that's
21 anticipated resolving everything. That's largely for the
22 reasons that are described in the -- I don't remember if it
23 was the renewed motion to compel or if it was the response to
24 the defendants' motion to compel. It was one of the two,
25 which talked about the issues of copying and similarity being

1   intertwined.  That's true.  Generally speaking, it's true.  I
2   can imagine a case in which they weren't intertwined.  I can
3   imagine a case, for example, in which you look at this and you
4   look at this and you say, those are nothing like each other.
5   That's not -- you know, there's no copyright claim there.
6          But what I gather that what we're talking about in
7   here are -- it's not necessarily that they copied the whole
8   Starbucks cup; it's that they copied something with maybe it's
9   like The Little Mermaid logo or something like that.
10         The second thing I want to tell you before I forget
11  about it is that people keep describing -- and it's common to
12  do this in copyright law -- keep describing independent
13  creation as an affirmative defense.  I actually don't think
14  that's correct, strictly speaking, and this is not anything
15  that really directly pertains to what we're doing today, but I
16  just wanted to flag it for you.
17         So as luck would have it, or as unluck would have it,
18  I was the chair of the part of the Seventh Circuit Civil Jury
19  Instruction Committee that drafted the copyright, trademark
20  and patent instructions.  And if you look at instruction
21  12.5.1, which is on the Seventh Circuit website, that's the
22  instruction about copying.  And I recall we spent a very, very
23  long time on this because the law was a little murky because
24  there are cases that use this language, affirmative defense.
25  We came to the conclusion that it wasn't an affirmative

1  defense, and there's a comment, which is comment number four,
2  which basically says that the burden of proving copying is
3  always on the party who is claiming infringement and that
4  evidence of independent creation is relevant on that, but
5  there is no real shifting burden of proof.
6        That's somewhat of an oversimplification of the
7  instruction.  Like I say, I don't think it directly bears on
8  this, but you both ought to be looking at that instruction.  I
9  can't guarantee it's correct, but I was the chair of the
10 committee that drafted the thing, so it's something you ought
11 to be thinking about.
12       So you've heard sort of what my inclination is here.
13 Who would like to go first and tell me why you think I'm all
14 wet, in whole or in part?
15       And if nobody wants to, I'm good to go with that, and
16 I will apologize again for making you wait two hours to hear
17 that, or an hour and 45 minutes.  What I'm inclined to do is
18 just say both motions to compel are granted.  And when I get
19 the motion for summary judgment, I will figure out at that
20 point or when I get the 56 -- it's not (f) anymore; I think
21 it's (d) now -- they changed the subsection -- I will figure
22 out whether more discovery needs to be done to deal with it.
23       But I guess I am very much disinclined to, sight
24 unseen, kind of put certain things on pause based on the
25 motion that I haven't gotten yet.

1  MR. KASPAR: Your Honor, with respect to defendants'
2  motion to compel, I suppose granting it doesn't really change
3  anything, but we have been producing documents.
4  THE COURT: I understand that. And I am really not
5  inclined to get into sort of the back and forth of, you know,
6  who said what to whom, when and whatnot. And if you're
7  producing documents, then you shouldn't be all that concerned
8  about the motion being granted, but it seems like to me that
9  there's a dispute over it, and so I am just sort of inclined
10 to say, okay, fine, it's granted, and we'll go work out the
11 particulars of it when and where as you go on.
12 MR. KASPAR: Then, your Honor, the other concern we
13 have is that defendants have not engaged in discovery thus far
14 because of their intention to file an early summary judgment
15 motion.
16 THE COURT: Engaged, as in requested?
17 MR. KASPAR: Right. I mean, we have served them with
18 requests.
19 THE COURT: Oh, responded to your request. Well,
20 that would be part of me granting your --
21 I mean, I'm going to set drop-dead dates.
22 MR. KASPAR: Okay, fair enough.
23 THE COURT: Because, like I say, I'm not prepared --
24 I mean, if I had a motion for summary judgment that had
25 already been filed at some point in time, that would be one

1 thing, but I don't.  I mean, I've got discovery requests that
2 have been out there for a while.  They have already been the
3 subject of a motion to compel, which I asked you to confer
4 about.  You know, you tried and you couldn't work it out, and
5 it happens sometimes, but I'm not going to say, you know, you
6 don't have to respond to that until you file a motion for
7 summary judgment because that's not the way it works.
8     Okay.  I'm getting these long pauses.
9     MR. MERSMANN:  Your Honor, as to the --
10     I just want a quick question for clarification.  Are
11 we talking about all three of the current pending motions to
12 compel that you're prepared to grant, or are we just talking
13 about two?
14     THE COURT:  That's actually a good question because
15 the original motion to compel concerned interrogatories 1 and
16 2, and the renewed one concerns interrogatory 1, and it's
17 actually worthwhile for me to say:  Where are you on 2?
18     MR. KASPAR:  Well, the first one --
19     THE COURT:  1 is the one that says identify all of
20 the plaintiff's stuff that you have or had access to.
21     MR. KASPAR:  Right.
22     THE COURT:  Number 2 says identify everything you
23 consulted when you created the accused works.
24     MR. KASPAR:  Right.  We're, unfortunately, no farther
25 along on either of those.

1     THE COURT:  So the answer would be I'm talking about
2  the broadest possible.
3     MR. MERSMANN:  Your Honor, as to interrogatory number
4  1, we proposed dates for inspection months ago.
5     THE COURT:  This is the whole thing about going to
6  Texas?
7     MR. KASPAR:  Yes.
8     MR. MERSMANN:  Yes, your Honor.
9     THE COURT:  You're going to have to go to Texas.
10    MR. KASPAR:  I understand, your Honor, but it would
11 be helpful if they could at least tell us what they have in
12 Texas, even generally.  They don't seem to even know --
13    THE COURT:  What's going to happen when he goes down
14 there to Texas?  Is he going to go in a room and there's going
15 to be a bunch of stuff sitting on a table?
16    MR. MERSMANN:  That is my understanding, your Honor.
17    THE COURT:  Can somebody go around with their cell
18 phone and take a bunch of pictures so he knows what he's going
19 to see?
20    MR. KASPAR:  Because, your Honor, we also believe
21 that they have books down there.  It would be kind of absurd
22 for us --
23    THE COURT:  Honestly, I think it does make some sense
24 for the defense to give the plaintiff maybe not a complete
25 list, but some sense of what they're going to be seeing going

1  down there because it's --
2      I mean, presumably somebody from your firm is going
3  to go down there, too.  I don't know what your rates are in
4  comparison to those lawyers I was talking about earlier, but
5  just say it's going to be an expensive trip for everybody
6  involved, and I think --
7      You know, rather than people going down there and
8  saying, oh, jeez, if I had known that you weren't going to
9  show me this, I would have talked to you about it beforehand,
10 I think it makes sense to at least give people a head's-up
11 before the date of the trip, this is what we're going to show
12 you so that, you know, somebody can say, well, what about this
13 and what about this and what about that.
14      MR. MERSMANN:  Your Honor, we have represented that
15 our client has a number of hand-painted fragile miniatures as
16 well as books.  We have been attempting to schedule a date for
17 inspection for months.  There is no existing catalog or
18 inventory of those things.  Our client is a sole proprietor
19 being represented here by pro bono counsel, and we're not
20 prepared to send a photographer --
21      THE COURT:  This isn't going on Winston & Strawn's
22 regular hourly rates?
23      MR. MERSMANN:  No, your Honor.
24      THE COURT:  Okay.
25      MR. MERSMANN:  So the notion that we're going to send

1 a photographer --
2     THE COURT: There's somebody at the firm that really
3 likes -- this is not World of Warcraft, I know; it's something
4 like it. There's somebody over at the firm that really,
5 really likes that stuff.
6     MR. MERSMANN: Sightly more analog than World of
7 Warcraft.
8     THE COURT: Okay.
9     MR. MERSMANN: SO it's unduly burdensome for our
10 client to have to somehow catalog and then also produce all of
11 these things as well.
12     THE COURT: Let me tell you what the deal is going to
13 be, though. Here's the deal, and then you will figure out
14 along with your client whether this is -- you know, whether
15 you want to incur this risk or not. If what happens -- I'm
16 okay with that. I'm okay with Mr. Kaspar or whoever having to
17 go down there sight unseen to look at the stuff. But if what
18 happens is that they don't get everything that they were
19 supposed to get and that they ought to have gotten pursuant to
20 the discovery requests that I'm enforcing, the next trip is
21 going to be everybody going to Foley & Lardner, including your
22 people shipping all of their stuff up here. And it's not
23 going to happen in Texas, in other words.
24     So you get one crack at getting it done in Texas, and
25 if it doesn't get done in Texas, then the rest of it gets done

1  here.  So you will decide, okay.  I will leave it to the free
2  market to decide, so to speak.
3           MR. MERSMANN:  And then as to the second
4  interrogatory, your Honor --
5           THE COURT:  Yes.
6           MR. MERSMANN:  -- there was some mention during the
7  last status hearing that there was some sort of narrowing of
8  their request under the interrogatory on the burdensomeness
9  issue.  And as is clear from their status report, the breadth
10 of the information that is being requested is still of a level
11 that is just --
12          THE COURT:  Remind me what you're talking about when
13 you say that there was some mention of narrowing.  I don't
14 have a transcript in front of me, so I don't know what you're
15 talking about.
16          MR. KASPAR:  Your Honor, I believe that we are okay
17 getting specific works and whatever they're pointing to as
18 their source of their independent creation.  As it currently
19 stands, their interrogatory reads that they're pointing to
20 mythology and --
21          THE COURT:  Oh, right.  This is the -- we looked at
22 --
23          MR. KASPAR:  -- warfare and all things on the
24 Internet.
25          THE COURT:  Yes, we looked at everything in the

1 entire world.
2     MR. KASPAR: Right.
3     THE COURT: Including everything that's on the
4 Internet. I remember this discussion.
5     And I guess I have got a little bit of a problem with
6 that, with the answer. Now, the narrowing part I don't really
7 recall.
8     MR. MERSMANN: Your Honor asked counsel to address
9 the issue that the interrogatory was overburdensome.
10     THE COURT: Right.
11     MR. MERSMANN: And there was some representation made
12 on the record that there was an agreement as to the scope and
13 that it was narrowed down to specific works.
14     THE COURT: Okay. So the best I'm going to be able
15 to do for you right now is if you're saying that there was
16 some agreement made on the record, my suggestion is get the
17 transcript, and if an agreement was made on the record, then
18 people are going to have to live with that.
19     MR. MERSMANN: No, your Honor. What I'm saying is
20 that there was no agreement.
21     THE COURT: Oh.
22     MR. MERSMANN: And the status report makes clear that
23 what they want is a voluminous recounting of anything that our
24 client may have recalled possibly looking at.
25     THE COURT: So let me walk through this with you, and

1 that's a decent point. Let me walk through it with you, and
2 this may repeat something we talked about when you were last
3 here.
4     So I acknowledge that your client is probably not in
5 a situation where there's one guy sitting in a cubicle that is
6 doing all of this. It's a bunch of people.
7     Warhammer, by the way, is what we're talking about as
8 opposed to World of Warcraft.
9     MR. KASPAR: Yes.
10     THE COURT: I think the plaintiff is entitled to find
11 out, given what the claims are in the case: Okay, if you say
12 you created it independently, what did you look at?
13     Now, there's a bunch of ways of doing that. One is
14 to do what Mr. Kaspar did, send an interrogatory saying: What
15 did you look at?
16     Number two would be to say, 30(b)(6) deposition.
17 Okay. What did you look at in creating however many number of
18 things there are? Then you would have to figure out, okay,
19 who do we designate and which people do we designate. It may
20 end up being everybody in the gosh darned company, okay.
21     I'm not necessarily saying that you get to do both,
22 but I'm not prepared to say that asking an interrogatory is an
23 unreasonable way of doing it because, quite frankly, the
24 30(b)(6) alternative, which is the only one that lends itself
25 and that comes to my mind right now is probably more

1 cumbersome for you because you then have to prepare a bunch of
2 people to sit down in a deposition just to get the kind of
3 basic information out there.
4     MR. MERSMANN: And, your Honor, this is not a
5 situation where the company has multiple different employees.
6 The company is one individual who works with a number of
7 different designers on a contracting basis occasionally. I
8 think I misstated before on the record and suggested it was a
9 sole proprietorship. It's obviously not a sole
10 proprietorship.
11     THE COURT: Is this Mr. Paulson? No, he's a separate
12 person.
13     MR. KASPAR: No. Mr. Valenchi.
14     And, your Honor --
15     THE COURT: So is where you're going to get with
16 this, like, why don't they just depose the guy?
17     MR. MERSMANN: Not only that, but this interrogatory
18 is either seeking to have our client generate information,
19 just whole cloth, as to speculating as to what people may have
20 used as inspiration, what he may have looked at or relied on.
21     THE COURT: So I've got to stop you right there.
22     MR. MERSMANN: It's so broad.
23     THE COURT: First of all, interrogatories, the whole
24 purpose of them is to get people to generate information. So
25 that part of it I don't have a problem with.

1   As far as speculating is concerned, presumably if
2 he's being asked to regurgitate what he himself did, it's not
3 speculation; it's just his memory.
4   If he's being asked to describe what other people may
5 have contributed, that is, in fact, the nub of the problem in
6 that the defendant -- or the plaintiff, rather, needs to be
7 able to get that information somehow, and the question is how
8 best to get it.
9   Now, I'm not necessarily married to this
10 interrogatory thing, but the interrogatory has been out there
11 and has the advantage of being out there.  And what I'm not
12 going to have happen here, not, is have a situation where we
13 say, well, the interrogatory's not good enough; Kaspar, you go
14 back to the drawing board; and then all of a sudden his
15 discovery requests, which were served first in time, now all
16 of a sudden are way behind yours in the process.  Not going to
17 happen.
18   So if you can negotiate some other mechanism for Mr.
19 Kaspar to get this information, which I have concluded that he
20 is entitled to get, or his client is entitled to get, in a
21 timely way consistent with the fact that his interrogatories
22 were served long before the defendant served any
23 interrogatories, then, fine, you can work that out.  Failing
24 that, you have got respond to the interrogatory.
25   And as far as whether, you know, what information

1 he's got to get from other people, you know, Rule 33 has
2 always said possession, custody or control. I'm not going to,
3 you know, arbitrate right now what that means in the case, but
4 I would not err on the side of cutting it too finely.
5     MR. MERSMANN: And, your Honor, I guess what -- the
6 guidance that I would like from the Court is in a case where
7 the allegations include things like vehicles with piles of
8 skulls on the side of them, where do we draw the line in terms
9 of narrowing our instruction, or our response, from -- we have
10 consulted any creative work and have viewed, you know,
11 anything could have inspired a weapon -- or a vehicle with a
12 rail gun mounted on it.
13     THE COURT: The movie with Mel Gibson when he was
14 still young where they're driving through the desert,
15 Apocalyptic?
16     MR. MERSMANN: Mad Max Road Warrior.
17     THE COURT: Mad Max is going to be on the list
18 somewhere, right? Aren't there skulls on some of these
19 vehicles?
20     MR. MERSMANN: Your Honor, that is the type of
21 response we're eventually getting to except instead of having
22 one broad response, which your Honor has said we need to
23 prove, we're going to need 106.
24     THE COURT: The answer is you're going to have to do
25 the best you can. And if the thing is vague -- I mean, if the

1  thing is vague, then you're just going to do the best you can,
2  and at some point it gets narrowed down and you're going to
3  end up tweaking it at that point. I just --
4  　　　　Honestly, guys, we need to get off of the dime on
5  this case, and we're sitting on this dime spinning around. So
6  the ruling is all of the motions to compel are granted.
7  That's all three of them because the second one by the
8  plaintiff is really encompassed within the first.
9  　　　　They're to be -- I'm giving both sides basically --
10 today's the 6th. You've got until the last business day of
11 the month to respond to them. So compliance by the 29th of
12 July. And if you want to work out some longer time than that
13 between the two sides that's mutually acceptable, I'm okay
14 with that.
15 　　　　But one way or another, we're going to have a meeting
16 at 9:00 o'clock on the 8th of August. That will be in
17 chambers, and I will still be here on the 8th of August. So
18 come to the 10th floor and talk about a deadline for
19 completing discovery by then. If this motion for summary
20 judgment gets filed in the interim, I will worry about it
21 then. Okay.
22 　　　　MR. MERSMANN: Your Honor, if I may, as to
23 interrogatory number 1, just this clarification. Your order
24 on their motion to compel, we can fulfill that by via
25 production of documents and things in Texas?

1  THE COURT: Well, I have granted the motion to
2 compel. It's okay to produce the documents in Texas. I'm not
3 going to repeat everything I said about that.
4  As far as whether that satisfies, you know, the
5 requirements of Rule 33(c) or (d) or whatever it is, I don't
6 know until I see it. Okay.
7  So I'm done clarifying for you. Good-bye.
8  MR. MERSMANN: Thank you, your Honor.
9  THE COURT: All right.
10  (Which were all the proceedings had in the above-entitled
11 cause on the day and date aforesaid.)
12
13
14  C E R T I F I C A T E
15
16  I hereby certify that the foregoing is a true and
17 correct transcript of the above-entitled matter.
18
19
20  /s/ Laura M. Brennan                              July 11, 2011
21
22  _____          _____
23  Laura M. Brennan
    Official Court Reporter                         Date
    Northern District of Illinois
24
25