**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>       Plaintiff,<br><br>  v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES<br><br>       Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly<br>Hon. Jeffrey T. Gilbert |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SANCTIONS AND CROSS-MOTION TO STRIKE**

Plaintiff Games Workshop Limited ("Games Workshop"), by and through its undersigned counsel, respectfully submits this Opposition to Defendant Chapterhouse Studios LLC's ("Chapterhouse") Motion for Sanctions and Cross-Motion to Strike and for a protective order from future motions in violation of Local Rule 37.2. In support of its Opposition and Cross-Motion, Games Workshop states as follows:

## I. INTRODUCTION

1. For the second time, Chapterhouse has made a needless discovery motion without any prior effort to meet and confer. Worse still, in both instances, the underlying discovery request itself concerns only documents that Chapterhouse already has in its possession. The documents Chapterhouse seeks are the original Games Workshop works on which Chapterhouse relied for inspiration in creating its accused works. Chapterhouse admits it has access to all of the Games Workshop works in issue, and the parties confirmed on August 1, that Chapterhouse still has in its possession hundreds if not thousands of copyrighted Games Workshop publications and products. (Moskin Decl. Ex. ¶ 5, Ex. 5.) The documents were requested by Chapterhouse, not to confirm if Games Workshop had a different version from the exact copy

previously purchased by defendant as its source of inspiration, but as best as Games Workshop can discern, merely as needless make-work.

2.      As with defendant's prior motion to compel production of documents in response to its Document Request No. 1, Chapterhouse's present motion has been made without any prior effort to discuss or resolve the matter informally and indeed without any notice whatsoever that Chapterhouse had any questions or concerns about the 2,279 pages of documents Games Workshop timely produced in response to this one document request. Not surprisingly, as with its prior motion, the motion is not accompanied by a Statement under Local Rule 37.2 that Chapterhouse's counsel made a good faith effort to resolve this issue before filing its motion. Remarkably, Chapterhouse proceeded with its unannounced August 9 motion notwithstanding an August 8 email from plaintiff's counsel (written after reading the veiled discovery objections Chapterhouse raised in its opposition to plaintiff's motion to extend the deadline to amend pleadings) that Games Workshop was completely in the dark as to any outstanding  concerns Chapterhouse might have.  (Moskin Dec. ¶ 9, Ex. 10.)

3.      Rather, this manufactured dispute evidently serves no purpose other than to deflect attention from Chapterhouse's own all-but-complete refusal to provide discovery (as well as its own violation of the Court's instructions by failing to produce *any* documents on or before July 29, as directed by Court on July 6, and failing to identify the alleged independent sources of creation for its own accused works).  Only when Games Workshop threatened to move for sanctions on July 28 (Moskin Decl. ¶ 4, Ex. 4) did Games Workshop belatedly ship to an office in Dallas, Texas dozens of boxes of Games Workshop material (plastic game pieces and publications, none of which were fragile as previously represented to the Court as the excuse for the four-month delay in production).  Chapterhouse continues to refuse to identify the specific works on which it knows it relied in creating each of the accused works, simply ignoring or evading Games Workshop's requests (which have been pending for over four months). Accordingly, Games Workshop cross-moves to strike the present motion (which is also now moot) and requests assistance of the Court to establish a more orderly way for discovery to move forward.

4.      Not only have both of Chapterhouse's motions been wasteful insofar as Chapterhouse already has all the documents it seeks, but because Chapterhouse's underlying document request No. 1 frames the issue entirely backwards.  The proper way to frame the issue

now would be for Chapterhouse, at long last, to identify the works on which it actually relied on developing the accused works, as the Court previously directed it to do at the July 6, 2011 status hearing, rather than expecting Games Workshop to guess from which of its hundreds of original sources Chapterhouse in fact turned for inspiration. (Given the vast extent of the Games Workshop "universe", and given that Chapterhouse's entire product line is obviously inspired by none other than Games Workshop, it is not entirely unlike expecting Disney first to identify all of its thousands of publications in which Mickey Mouse appears, rather than first simply asking a defendant selling products obviously inspired by Disney on which sources it relied.) If there are any remaining disputes as to the sources of inspiration for any of Defendant's accused works, the parties can address those issues in follow-up discovery. However, all the record shows now is a vast accumulation by Chapterhouse of hundreds or thousands of Games Workshop originals (originals it refuses to catalogue or produce in orderly fashion); an admission of access to all of the Games Workshop copyrighted works; a public admission by Chapterhouse on its website that Games Workshop owns all of the copyrights and trademarks in issue, and an entire product line and numerous public statements all devoted exclusively to the exploitation of Games Workshop's WARHAMMER universe and games. Balanced against this is Chapterhouse's conspicuous inability to produce so much as a single third party product or work on which it even contends it relied in creating the accused works.

5.     Because Chapterhouse's prior motion was made improperly, without any prior meet and confer (and despite the fact that Games Workshop had already begun assembling documents and had never disputed its obligation to produce documents reasonably requested and, indeed, despite an apparent early resolution of these issues in early June (Moskin Decl. ¶ 3)), the Court noted that it was granting the motion simply to keep discovery moving forward (not based on any express consideration of the merits of the motion and without questioning Games Workshop's representations to the Court that Games Workshop had never suggested it was refusing to cooperate. See July 6 Transcript p. 6 lines 1-11. The motion is also made notwithstanding that the discovery requests themselves are needless make-work given Chapterhouse's previous admission to the Court that it already had in its possession all of the Games Workshop original materials about which it is now complaining.

6.     If Chapterhouse's counsel had ever even attempted to discuss the matter, it would have learned that beyond the 2,297 pages of documents Games Workshop timely produced

during the month of July (beginning July 5) the remaining five books that Games Workshop agreed to produce in response to Document Request 1 (not ten as miscounted in Chapterhouse's motion) were simply unavailable for immediate production because Games Workshop is unable to locate duplicate copies. Although Document Request 1 insisted on complete copies of each publication, which Games Workshop was seeking to locate (a fact Chapterhouse could have learned had it simply asked), Games Workshop in the interim has produced the specific pages most directly in issue, thus rendering moot this entire motion. Although Chapterhouse had never previously made clear that it also expected copies of the plastic miniatures in response to Document Request 1 (and Games Workshop had made clear in a June 15 letter its understanding the that Document Request 1 was limited to the publications – an understanding never subsequently challenged by Chapterhouse (Moskin Decl. ¶ 3)), Games Workshop has also provided photographic specimens of all of the miniatures – as to which there is likewise no dispute Chapterhouse had already had each and every one in its possession.

7.     To the extent this motion seeks identification of the authors of Games Workshop original works in issue, the simple answer is that, as a matter of law, Games Workshop is the author of every work at issue here (all of which are created solely by employees), as Chapterhouse already knew before it made this motion. However, most or all of Games Workshop's publications also identify the individual authors and dates of publication. As explained below, it is unclear to Games Workshop what further information Chapterhouse possibly could be seeking (in particularly concerning Section III of the present motion). Because Chapterhouse already had in its possession all of the books and game pieces, it also already knew what information could be found on the works, and thus had a duty to alert Games Workshop if there was something else it sought.

8.     Notwithstanding that Games Workshop is undisputedly the author of each of the works in issue; the balance of the motion (Section III) argues that defendant "is entitled to test Plaintiff's claim of ownership", and thus baselessly raises a new set of discovery issues concerning Games Workshop's status as owner of the subject works - issues not even presented by Document Request No. 1, but rather, in Chapterhouse's *second* set of discovery requests, served June 3, 2011 and answered by Games Workshop on July 5. Chapterhouse did in fact raise a small number of follow-up questions about Games Workshop's responses to those second requests (including for example whether there had been any "works for hire") in a July 29 letter.

However by letter dated August 5, Games Workshop answered every one of those questions. (Moskin Decl. Ex 8.) Remarkably, Chapterhouse's motion nowhere explains that Section III of its motion does not even concern its Document Request No. 1 (purportedly the only subject of this motion), but, rather, a new set of requests served on June 3, 2011 and answered by Games Workshop on July 5. Remarkably too, the present motion nowhere mentions Games Workshop's August 5 letter (Moskin Decl. Ex 8), which already answered Chapterhouse's questions. Nor does the motion mention that, following the undersigned counsel's August 5 letter, Chapterhouse has refused even to respond to innumerable emails seeking to elicit from Chapterhouse any specific remaining questions. (Moskin Decl. Exs. 10-11.)

9.     In fact, the entire premise of Section III of the motion is substantively incorrect, precisely because Games Workshop is itself the author of all of the works in issue (as confirmed by plaintiff's responses to Chapterhouse's second set of discovery requests). Although Chapterhouse states in the motion that it is "entitled to test Plaintiff's claim of ownership" among the 23 boilerplate affirmative defenses in Chapterhouse's Answer to the Complaint, not a one purports to challenge Games Workshop's ownership of any given work or works.[1] Moreover, Chapterhouse publicly admits on its website that Games Workshop owns copyright (and trademark) rights in all of the works in issue. (The lengthy admission is quoted in full in the letter attached as Moskin Decl. Ex 8, p. 2.)

10.     As with its initial motion to compel and the present motion, Chapterhouse is once again seeking to make an end-run around procedural safeguards to try to avoid adjudication of *its own* substantive infringements. In the same manner, Chapterhouse first sought to bring an initial wasteful motion to dismiss based on the patently false premise it did not know what Games Workshop works it had itself relied on as inspiration for the accused works – despite later admitting it had access to all the works. Chapterhouse then refused for months to engage in any discovery, first by seeking to tie the timing of its responses to plaintiff's considerably earlier requests, and then by insisting it had a right first to move for summary judgment (effectively granting itself a protective order). For obvious reasons it has not made any such motion, yet it

---

[1] One of the twenty-three defenses states the need for Games Workshop to provide certificates for registration for any United States based works, which Games Workshop has done; and another notes that Games Workshop would not have standing to sue on works it does not own, but none of the twenty-three defenses purports to challenge ownership of any work. Moreover, <u>Chapterhouse also has refused to answer Games Workshop's interrogatories seeking identification of any facts on which Chapterhouse relies for any of the defenses.</u>

still has provided absolutely no meaningful discovery to plaintiff. Instead, it asks the Court to adjudicate Games Workshop's ownership rights to the works in issue through the back door.

11.    Indeed, perhaps the crowning irony to the motion is that it was made in the context of Chapterhouse's own complete or near-complete failure to produce *any* documents or meaningful information in response to Games Workshop's first and second set of discovery responses.  As detailed below, Chapterhouse, on July 27 and 28, directly refused to comply with this Court's order that it produce by July 29 the original Games Workshop materials in its possession, eventually agreeing only on threat of a motion for sanctions to make the documents and things available for inspection three days late.  (Moskin Dec. Ex 4.)  (Contrary to Chapterhouse's prior assertions that the documents were too fragile to be moved, defendant did in fact ship dozens of boxes of perfectly sturdy plastic game pieces and books and magazines to a law office in Dallas, albeit in entirely haphazard format. *See* Moskin Decl Ex. 5.)  In addition, Chapterhouse has refused to respond at all to letters of the undersigned counsel dated July 28 and August 5, detailing the most obvious deficiencies in its production, thus making all-but impossible any meet and confer to resolve the issues.  Further, although Chapterhouse did place in the regular mail on August 9, a disk purportedly containing some production documents, it has refused to say what is on the disk, and after the disk arrived in unreadable format, it refused even to say in what format the documents were produced (Moskin Decl. ¶ 10, Ex 11.).  Finally, the only limited information Chapterhouse did belatedly produce in response to Games Workshop's Second Interrogatories (such as the retail locations where its products are advertised or sold) it improperly designated as Confidential Attorneys' Eyes Only and has refused to say why. (Moskin Decl. ¶ 8.)  Effectively, then, Chapterhouse has completely failed to produce any information in usable format, making all the more ironic its needless discovery motion that could have been avoided had it simply asked by letter, email or phone call regarding the status of Games Workshop's discovery responses – a point made all the more conspicuous by Games Workshop's email the day earlier, on August 8, seeking clarification what possible lingering discovery concerns Chapterhouse could have had.  Accordingly, the motion should be stricken.

## II.    Games Workshop Has Complied with Chapterhouse's Document Request 1

12.    In the parties June 29, 2011, joint status report (Dkt. No. 60) Chapterhouse conceded that it has access to all of Games Workshop's works in issue.  This was after

NYC_1199478.1

Chapterhouse had had nearly two months to review the 15 page *initial draft*[2] claim chart produced by Games Workshop in its May 4, 2011 responses to Chapterhouse's initial discovery requests. (Moskin Decl. Ex. 3.) Moreover, Chapterhouse belatedly made available to Games Workshop on August 1, in a law firm in Dallas, vast quantities of Games Workshop materials that, as far as Games Workshop can tell, confirm Chapterhouse still has in its possession all or virtually all of the specific items Chapterhouse nonetheless requested in Document Request 1. Chapterhouse does not dispute that every one of the subject materials it purports to be seeking by the present motion is already in its possession. Unfortunately, the materials were produced in such disorderly fashion (*see* Moskin Decl. Ex. 5) that Games Workshop has been unable to catalog what was there. The job of providing such a listing would more naturally have fallen to Chapterhouse, but it represented to this Court that it was unable to do so and was unable to produce the materials or copies thereof in Chicago because the books, magazines and game pieces – all made out of sturdy plastic – were supposedly too fragile to be transported to Chicago.

13. What Games Workshop had understood Chapterhouse was seeking in its Document Request 1[3] were the publications referenced in the complaint and in the 15-page detailed analysis that Games Workshop produced on May 4 in response to Interrogatory 1 (*See* Moskin Decl. ¶ 2). That is evident from Games Workshop's initial and supplemental responses to Chapterhouse's first discovery requests (on May 4 and June 15) and the parties' correspondence before Chapterhouse made its initial needless motion. (Moskin Decl. Exs. 1, 2.) Thus, in its May 4 and June 15 answer to Interrogatory No 1, Games Workshop identified 11 publications as the original works of authorship on which it believed (prior to having received any discovery from defendant) that Chapterhouse likely relied on as sources of inspiration. In its June 15 supplemental response to Interrogatory No. 1 and an accompanying letter that day

---

[2] Games Workshop emphasizes that this claim chart is simply an initial draft. Precisely as explained above, given the vast number of Games Workshop works on which Chapterhouse could have relied for inspiration, plaintiff must await actual discovery responses from defendant to know on which works it actually relied.

[3] The request states in full:

> For each of Chapterhouse's works identified in Exhibit A to your Responses to Chapterhouse Studios' First Set of Interrogatories, one exemplar of each of your works identified in the corresponding table entry of Exhibit A, produced in the same order in which they are listed in Exhibit A. If one page of a multi-page publication is identified in Exhibit A, produce the entire publication.

NYC_1199478.1

(Moskin dec. Exs. 1, 2), Games Workshop clarified its understanding (based in part on a June 8 telephone conference) that what Chapterhouse was seeking and what it was more than agreeable to provide, were all of those publications. The authors and dates of publication of the works would be apparent from the face of the publications themselves, all of which Games Workshop had been assembling without the need for any motion practice at all. Having understood that its agreement to produce these works resolved any issues, Games Workshop was taken entirely by surprise by Chapterhouse's initial motion, served less than two weeks after Games Workshop had timely served its formal response to the request[4], and has been taken equally by surprise by the current motion which likewise was preceded by no correspondence (email or letter) much less by a telephone call., and was made only one day after Chapterhouse refused to answer Games Workshop inquiry whether there were any genuine lingering issues (as suggested – surprisingly to Games Workshop – in defendant's opposition to the motion to extend the deadline to amend pleadings).

14.     Between July 8 and July 29, Games Workshop produced entire copies of nine of the works identified in its response to Interrogatory No 1. The remaining five publications referred to in Chapterhouse's present motion (Chapterhouse has essentially doubled this number by counting different versions of the same work as entirely different works) are works for which Games Workshop has been unable to find complete copies to make available for production (as it did with the other nine works) so as to comply with the express instructions of the request ("If one page of a multi-page publication is identified in Exhibit A, produce the entire publication.") Notwithstanding Chapterhouse's admission it already had all of the Games Workshop works in issue, Games Workshop had begun to assemble the subject publications at issue (in June, even

---

[4] As Games Workshop explained in paragraph 2 to its opposition to the initial motion:

As shown by the attached emails, when counsel for the parties conferred on June 8, 2011 (in response to Games Workshop's efforts to secure Chapterhouse's cooperation in responding to Games Workshop's discovery requests, which Chapterhouse now openly refuses to answer), Defendant's attorney, in response, raised the issue presented by this motion of having Games Workshop identify the authors and dates of publication of Games Workshop's works referenced in its detailed and lengthy response to Chapterhouse's Interrogatory No. 1. (The information at issue was not specifically requested on the face of Interrogatory No. 1, but in extensive general instructions to Chapterhouse's interrogatories.) During that June 8, 2011 call, Chapterhouse's counsel expressed satisfaction with Games Workshop's explanation that all of the information would be apparent on the face of the works themselves, which Games Workshop has been actively assembling for production in response to Chapterhouse's initial document requests (responses to which were, at the time, not even due for another two weeks).

before it thought it had resolved all of these issues by the parties' June 8 meet and confer and before its June 15 letter) so that it could make available complete copies as requested. It began producing such documents on July 8. However, Games Workshop no longer retains copies of all of the works in its official archives and does not have digitally formatted copies of most of the works. Games Workshop thus produced the complete copies it had and has continued to try to locate complete copies of the few it did not have archived. Nonetheless, when Chapterhouse surprised plaintiff by making its unannounced motion, Games Workshop did copy from its library in England, the individual pages referenced in its extensive initial claim chart. (Moskin Dec. Ex. 3) Had Chapterhouse inquired as to the status of the production, this motion would have been unnecessary.

15. Regarding the 30 game pieces, not only are all of them easily accessible on Games Workshop's website (making it a needless burden for Chapterhouse to have requested those if that is what it wanted), and not only does Chapterhouse concede it already has samples anyway, but as shown by Games Workshop's actual May 4 and June 15 answer to Interrogatory No. 1 and its June 15 correspondence, Games Workshop had never understood that the parties' June agreement entailed production of such materials. The document request itself also focuses solely on the publications, as shown by the specific instruction in the request "If one page of a multi-page publication is identified in Exhibit A, produce the entire publication." Because Chapterhouse never conferred with Games Workshop before or after making either motion to compel, Games Workshop was not aware until receiving the present motion that Chapterhouse was seeking such additional materials. Because Chapterhouse already had in its possession all of the books and game pieces, it also already knew what information could be found on the works, and thus had a duty to alert Games Workshop if there was something else it sought. It never did.

16. Moreover, Games Workshop had already made available specimens of many of the individual games pieces in response to separate Document Request No. 7 of Second Request for Documents, which had separately sought exemplars of the products by product name. Moreover, because Chapterhouse for the first time made a point of clarifying that it also wanted identifying materials regarding the game-piece miniatures in its present motion, Games Workshop, to the extent it had not already done so, assembled photographic specimens from its website of all of the miniatures.

17.     Section III of Chapterhouse's motion also seeks to adjudicate Games Workshop's ownership of copyright in its subject works.  Clearly, this has no relation to Document Request No. 1 set forth in the margin (*see* Note 3, *supra*).  Rather, questions as to authorship and chain of title were first raised by Chapterhouse in its *second* set of discovery requests, which Chapterhouse has not even sought to place before the Court.  For instance, Request 3 of the second set seeks employment agreements for any individual authors of Games Workshop's subject works; Request 4 seeks all documents concerning the chain of title for any such works acquired by assignment; Request 5 seeks all certificates of registration.  Despite there being no disagreement as to the sufficiency of Games Workshop's responses to Chapterhouse's second set of discovery requests, these are the very questions raised by Section III of the motion.

18.     By letter dated July 29, Chapterhouse did ask certain questions of Games Workshop regarding its responses to those second discovery requests, but Games Workshop answered all of these questions by letter of August 5 (Moskin Dec. Ex. 8), and despite numerous requests by plaintiff's undersigned counsel to determine in Chapterhouse had any lingering concerns, Chapterhouse has identified none.  (Moskin Dec. Exs. 10, 11.)  As a result, even if Chapterhouse does at some point choose to raise any further questions, Section III of its motion, which relates exclusively to Chapterhouse's Second Set of Discovery Requests, is not properly raised now.  Not only has Chapterhouse failed to meet and confer regarding Games Workshop's response to Document Request No. 1 (the purported subject of this motion), it has refused in its correspondence with Games Workshop to identify any questions about the responses to the more recent discovery.

19.     As Games Workshop explained in its responses to Chapterhouse's second set of discovery requests, all of Games Workshop's works in issue were created by Games Workshop employees.  There is no issue as to any chain of title and no issue as to Games Workshop's ownership of all of the works.  Moreover, precisely as Games Workshop promised in its June 15 Supplemental Response to Interrogatory 1 and its June 15 letter, the individual authors of the publications and dates of publication are all identified in the publications themselves.  The fact is that Games Workshop has no legal duty to identify any individual authors in any of the publications, because, as a matter of law, it (the employer) is the author (not the individual employees).  Similarly, it has no duty to identify individual artists who were involved in creating any of the subject game pieces.  No toy manufacturer does so, and Games Workshop never

NYC_1199478.1

understood that to be part of Chapterhouse's discovery requests.  If that is what Chapterhouse seeks, it could have been resolved by a telephone call.  There was no need for this motion, and it should be denied.  It is already moot.

### III.    Chapterhouse's Motion Should be Stricken And Chapterhouse Should Be Precluded From Making Any Further Motions In Violation Of Rule 37.2

20.    Local Rule 37.2 provides in relevant part that "this court shall hereafter refuse to hear any and all motions for discovery and production of documents under Rules 26 through 37 of the Federal Rules of Civil Procedure, unless the motion includes a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's."  Similarly, this Court's personal rules underscore the need to comply strictly with Local Rule 37.2.  ("Judge Kennelly believes that parties can and should work out most discovery disputes and thus discourages the filing of discovery motions.  Judge Kennelly will not hear or consider any discovery motion unless the movant has complied with the "meet and confer" requirement of Local Rule 37.2.  The motion must state with specificity when and how the movant complied with Local Rule 37.2.  Parties are reminded that compliance with Local Rule 37.2 requires a good faith effort to resolve discovery disputes and communication that takes place face to face or by telephone.  The exchange of correspondence ordinarily will not be sufficient to comply with Local Rule 37.2.").

21.    This is the second time that Chapterhouse has made a discovery motion without a prior good faith effort to resolve this dispute – indeed despite prior understandings that any questions had already been resolved.  Games Workshop has incurred significant time and fees trying to resolve this manufactured dispute with Chapterhouse, including that incurred in filing this opposition.

22.    Of equal or greater concern, Chapterhouse's present motion appears to be part of a broader pattern of frivolous motions and evasive behavior seeking to frustrate Games Workshop's ability to progress with discovery and resolution of this case on the merits.  Chapterhouse first sought leave to move to dismiss the complaint based on the pretense that it did not know on which of Games Workshop's works it relied for inspiration in creating the accused works.  Chapterhouse next sought to delay its duty to respond to Games Workshop's discovery by linking the timing of the two parties' discovery responses, notwithstanding that

NYC_1199478.1

Games Workshop had commenced discovery weeks earlier (*See* ¶ 4 of Plaintiff's Opposition, Dkt. No. 65). Chapterhouse then asserted (in the parties Joint Status Report) that it should be relieved of its discovery obligations and be permitted instead to move for summary judgment.[5]

23.     The vast quantities of original Games Workshop materials in Chapterhouse's possession, coupled with its inability to produce so much as a single third party work on which it allegedly relied as proof of independent creation, leaves no realistic doubt as to the actual sources of inspiration for Chapterhouse's accused works. For just these reasons, having evidently conceded it has no plausible basis to move for summary judgment, it instead now seeks to create a sideshow by making needless and wasteful discovery motions to distract from its inability to demonstrate independent creation,

24.     Indeed, as demonstrated by the attached correspondence (Moskin Decl Exs. 6-7) Chapterhouse has failed to date to produce any meaningful discovery. Moreover, it refuses even to answer Games Workshop's letters so as to permit the scheduling of a meaningful "meet and confer" calls to resolve any issues. In a similar manner, when the Court previously ordered the parties to engage in discussions on managing discovery and to submit a joint status report (Dkt. No. 59), Chapterhouse refused for days to engage in any such discussions or provide any comments to the draft joint report Games Workshop prepared, but instead "sandbagged" Games Workshop by announcing during the actual meet and confer (which Games Workshop scheduled even without any prior cooperation from Chapterhouse) that it refused to participate in discovery *at all* in anticipation of a proposed summary judgment motion. Although Chapterhouse has not moved for summary judgment, evidently it is nonetheless adhering to its planned refusal to cooperate in discovery.

25.     Although Chapterhouse did belatedly make available on August 1 (after Games Workshop had to threaten to move for sanctions) the vast stores of original Games Workshop materials in its possession that Games Workshop had first requested in March, Chapterhouse has effectively produced no further information. On August 8 it sent an email announcing that it had sent by regular mail a CD containing some additional documents, but for days – at the same time

---

[5] The premise of Chapterhouse's proposed motion was that it somehow knew it was not infringing, a position which itself is directly contrary to the position it took in its motion to compel that it *could not* assess infringement until Games Workshop produce documents the contents of which it contends (or pretends) it does not know, and is impossible to reconcile with its inability to date to produce any evidence of independent creation.

NYC_1199478.1

it was refusing to answer Games Workshop's July 29 and August 5 letters – it refused to say what was on the disk. When the disk arrived and could not be opened, Chapterhouse refused even to say in what format the materials were saved on the disk, thus completely frustrating plaintiff's ability to advance discovery. (Moskin Decl. Ex. 11.)

26.     Similarly, when Chapterhouse belatedly produced information in Supplemental Interrogatory answers served July 29 (including in particular the public venues where it sells and advertises its infringing products, as well as the names of the numerous independent designers and manufacturers who make the accused products, it designated such information attorneys-eyes only, thus frustrating plaintiff's ability to share the information with its client. And it has refused to answer counsel's July 28 and August 5 letters seeking to resolve the matter.

27.     Games Workshop thus requires the Court's assistance to prevent future needless discovery motions by defendant and to require some greater measure of cooperation in advancing discovery.

## IV.     <u>CONCLUSION</u>

In view of the foregoing, Games Workshop respectfully requests that the Court enter an order (1) denying the motion, (2) ordering that Games Workshop be reimbursed for its reasonable expenses, including attorneys' fees, incurred in relation to this motion; (3) precluding Chapterhouse from making any further motions in violation of Local Rule 37.2 and (4) granting any such further relief as the Court deems appropriate and just.

NYC_1199478.1

Dated:  August 15, 2011                              Respectfully submitted,

/s/  Scott R. Kaspar

Scott R. Kaspar (Ill. Bar No. 6284921)
Aaron J. Weinzierl (Ill. Bar No. 6294055)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone:  312.832.4500
Facsimile:  312.832.4700
Email:  skaspar@foley.com;
aweinzierl@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone:  (212) 682-7474
Facsimile:  (212) 687-3229
Email:  jmoskin@foley.com

*Attorneys for Plaintiff*
*Games Workshop Limited*

## <u>CERTIFICATE OF SERVICE</u>

        I, Scott R. Kaspar, an attorney, hereby certify that on August 15, 2011, I caused to be filed electronically the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS AND CROSS-MOTION TO STRIKE with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                      /s/ Scott R. Kaspar

NYC_1199478.1