IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>                                        Plaintiff,<br><br>v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES<br><br>                                      Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly<br>Hon. Jeffrey T. Gilbert |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR PROTECTIVE ORDER**

Plaintiff Games Workshop Limited ("Games Workshop"), by and through its undersigned counsel, respectfully submits this Opposition to Defendant Chapterhouse Studios LLC's ("Chapterhouse") Motion for Protective Order filed August 15, 2011 (Dkt. No. 84) and noticed for a hearing on August 18, 2011. Games Workshop opposes the motion and opposes Chapterhouse's attempt to re-notice the motion for the following reasons:

1. On May 27, 2011, Games Workshop served its second set of interrogatories (attached as Exhibit 1), which seek, *inter alia*, the identities of the public websites at which Chapterhouse advertises and sells its accused products and the names and addresses of the designers and manufacturers of the accused products.

2. Even after Chapterhouses was directed by this Court on July 6 to respond to Games Workshop's *first* set of discovery requests, served March 25, Games Workshop still has received no substantive responses to those first requests and virtually no information or documents in response to its May 27 second set of discovery requests (other than the limited

1

information at issue in this motion). Although Chapterhouse did agree to serve amended responses to Games Workshop's second set of interrogatories, its July 29 amended responses disclosing the identities of the websites and the names and addresses of its designers were also designated as "Highly Confidential" under the Protective Order entered in this action.

3. Because Chapterhouse's attorneys-eyes-only designation prevented Games Workshop's counsel from sharing this responsive information with its client, on August 1, 2011, Games Workshop sent an email to Chapterhouse (attached as Exhibit 2) questioning the basis for the designation and requesting that the identities of the websites and names and addresses of the designers be de-designated or at least be designated as "Confidential" and not "Highly Confidential" so that Games Workshop's counsel could share the responsive information with its client. Chapterhouse refused to respond to the August 1 email or explain the basis for the designations, and instead, after two weeks of silence, brought this motion. (Chapterhouse did offer to schedule a call to discuss the matter, but because of Chapterhouse's prior refusal to adhere to telephone agreements or even to discuss matters in good faith[1], Games Workshop requested first the courtesy of a substantive explanation of Chapterhouse's position as a basis for further discussion. Chapterhouse refused to provide such an explanation, thus furthering Games Workshop's concerns that a telephone call would be counterproductive.)

---

[1] In a June 8 meet and confer initiated by Games Workshop principally to resolve it own concerns about Chapterhouse's failure to respond to plaintiff's initial discovery requests, served on March 25, the parties did reach agreement on some of these issues, and also addressed and resolved all of the questions Chapterhouse raised regarding its own discovery requests, but Chapterhouse eventually disavowed its agreement, requiring Games Workshop to move to compel and to defend two frivolous motions by Chapterhouse. In a similar manner, when the Court previously ordered the parties to engage in discussions on managing discovery and to submit a joint status report (Dkt. No. 59), Chapterhouse refused for days to engage in any such discussions or provide any comments to the draft joint report Games Workshop prepared, but instead "sandbagged" Games Workshop by announcing during the actual meet and confer (which Games Workshop scheduled even without any prior cooperation from Chapterhouse) that it refused to participate in discovery *at all* in anticipation of a proposed summary judgment motion. Although Chapterhouse has not moved for summary judgment, it nonetheless has continued its refusal to cooperate in discovery

4. Games Workshop also alerted opposing counsel by letter of August 5 (attached as Exhibit 3), that now that it had confirmed the existence of "as many as nine independent designers, four independent manufacturers and twenty-two independent contractors involved in creating the accused works, it is particularly imperative that Chapterhouse produce the communications (by email or otherwise), agreements and other documents between or among Chapterhouse and these third parties as called for by Document Requests 6, 7 and 12." Chapterhouse has also refused to produce any such documents or even respond to the August 5 letter, despite innumerable requests. Chapterhouse's Highly Confidential designation thus must be viewed in light of its complete refusal to cooperate in any discovery in this case since Games Workshop first served interrogatories and document requests almost five months ago on March 25.

5. The protective order provides two levels of confidentiality. "Confidential" information is information concerning a Person's business operations, processes, and technical and development information within the scope of Rule 26(c)(1)(G), the disclosure of which is likely to harm that Person's *competitive* position, or the disclosure of which would contravene an obligation of confidentiality to a third Person or to a Court." (Dkt. No. 71 at ¶ 2(b) (emphasis added).)

6. "Highly Confidential" information is limited to "current or future business or technical trade secrets and plans more sensitive or strategic than Confidential information, the disclosure of which is likely to *significantly harm* that Person's *competitive* position." (Dkt. No. 71 at ¶ 2(c).) The critical difference between the two levels of confidentiality is that "Highly Confidential" information must be maintained as outside attorney's eyes only and cannot be shared with, for instance, upper management or in-house counsel. (*Id.* at ¶ 4(c).) Just as

3

Chapterhouse's counsel refused to answer the simple questions presented in Games Workshop's August 1 email, its motion does not attempt to tie the information at issue to the actual definitions in the Protective Order.

7. Chapterhouse's motion seeks a protective order against de-designation of its interrogatory responses, including the identities of responsive websites and the names and addresses of its designers, on two bases: (1) that the information represents trade secrets that, if disclosed to Games Workshop's upper management or in-house counsel would cause competitive harm (Motion at 4-5); and (2) that revealing the designers' identities could subject them to "retribution" by Games Workshop (Motion at 5-6). Chapterhouse's motion fails on both accounts.

8. First, the identities of the websites cannot possibly be protected as "trade secrets." All of the websites are public-facing sites that sell Chapterhouse's accused products to the public at large. Under the express terms of the Protective Order, publicly-accessible information cannot be maintained as a trade secret by virtue of having been "disclosed in a printed publication". (Dkt. No. 71 at ¶ 2(d).) Indeed, a Google search would undoubtedly reveal all of the names, but there is no reason to put Games Workshop to the burden of sifting through all of the search results or being left with the uncertainty if it has confirmed the complete list.

9. Nor are the sites that sell and promote Chapterhouse's products remotely similar to customer lists. Games Workshop has not asked to learn the identities of Chapterhouse's customers, but only other businesses that assist in its promotion and sale of infringing products. Nor does Games Workshop have any interest in selling its products through such sites, as Chapterhouse well knows. Likewise, the designers are not "suppliers" within the meaning of any legal definition or precedent cited by Chapterhouse. They may indeed be nothing more than

4

contributory infringers. Regardless, Games Workshop likewise is not seeking to learn the identities of the designers so that it can interfere with the supply chain or because it has any competitive interest in having them design products for it. Rather, it simply seeks to confirm (or at least test) its suspicions that the designers help Chapterhouse develop products to trade on Games Workshop's copyrighted works. To Games Workshop's knowledge, certain of the accused products are made by the designers at the request of specific customers, and the designers then allow Chapterhouse to sell the accused products to the public at large. In whatever other ways Chapterhouse and the designers identify new products to make based on Games Workshop original materials, Chapterhouse can not frustrate the discovery process by hiding these identities.

10. Further, as shown by the undersigned counsel's August 5 letter (Ex. 3 hereto) not only is Chapterhouse seeking to conceal from Games Workshop the identities of its designers, it has refused to produce in discovery any of its correspondence with these third parties, notwithstanding that they are all located in remote parts of the country (or indeed the world), such that the only way Chapterhouse could possibly communicate with these third parties about *visual* design issues is by mail or email. Thus, the claim of confidentiality must be viewed in the broader context of Chapterhouse's complete refusal to produce any information in this action, including any information about the infringing design process.

11. It can not be overemphasized that none of the information that Chapterhouse has designated as "Highly Confidential", including the names and addresses of the designers and manufacturers, has any bearing on the parties' "*competitive*" relationship. Chapterhouse nowhere purports to demonstrate otherwise. There is no suggestion that Games Workshop is looking to enter business relations with any of the third parties in competition with

5

Chapterhouse. As Games Workshop repeatedly has informed Chapterhouse and as it advised the Court only yesterday (*see* Dkt. No. 83), plaintiff uses only its own employees as designers. Similarly, it markets its products solely under the Games Workshop banner. Nor does the discovery at issue entail the disclosure of any business plans or information of competitive interest to merit Highly Confidential treatment. Far more simply, it does not include any "technical trade secrets and plans" to warrant Highly Confidential treatment as defined in the Protective Order.

12. The authority cited by Chapterhouse is inapplicable here, because the websites and designers are not "customers" within the context of any of the cases and are not even analogous to customers. For instance, in *Autotech Tech. L.P. v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 439 (N.D. Ill. 2006), the disputed customer list consisted of the names of customers who had been solicited or sold products purchased by the defendant from the plaintiff, who directly compete. Chapterhouse's list of websites reflects its *retailers*, not downstream customers like *Autotech* or any of the other authority cited by Chapterhouse. Similarly, Chapterhouse's list of designers and manufacturers reflects third parties involved in its production, again not downstream customers. Games Workshop, which is not a competitor of Chapterhouse, has its own production and distribution channels and has no competitive interest in Chapterhouse's retailers, designers, or manufacturers. However, it does need the information (which outside counsel alone is unable to assess without input from the client) to prosecute this litigation.

13. Chapterhouse's website http://chapterhousestudios.com/webshop/ makes clear that its business is predicated entirely on the unauthorized copying of Games Workshop's works, including bits and sculpts and other unauthorized products derived from Games Workshop's

6

highly popular WARHAMMER 40,000 game. Nothing about disclosing such "Highly Confidential" information will harm Chapterhouse's *competitive* position, because Games Workshop has no interest in competing in the market for infringing works. Indeed, there is no competitive market for infringing works.

14. Games Workshop seeks de-designation of such "Highly Confidential" information, not for to better compete with Chapterhouse, but so that, minimally, its in-house counsel, if not also its upper management, can fully assess where Chapterhouse's accused products are being sold and who is contributing to the design of the accused products. The documents should not be entitled to any level of confidentiality, or, minimally, should be entitled to no protection above the "Confidential" level so that Games Workshop's in-house counsel can evaluate the information.

15. To the extent that Games Workshop determines that these websites and/or designers are contributing to Chapterhouse's infringement, Games Workshop should be free to consider whether one or more entities or individuals should be named in its Complaint. This Court has set August 31, 2011 as the deadline for amending the pleadings. Chapterhouse cannot use the confidentiality designations as a shield to prevent Games Workshop from enforcing its intellectual property and prosecuting this litigation. Although the accusation of feared "retribution" is based on nothing more than the conclusory *ipse dixit* assertion of Mr. Villacci, with no evident basis, the fact is, the Protective Order was not intended as a device to conceal infringement, and Games Workshop must be permitted to assess the scope of the infringing conduct

16. Finally, and precisely because of concerns regarding its ability to comply with the August 31 deadline to amend pleadings, Games Workshop opposes Chapterhouse's effort to re-

notice this motion for August 25. Games Workshop has already had to move once to extend the deadline because it had received absolutely no documents or information from Chapterhouse since discovery commenced on March 25. As it is, Games Workshop will have to request a second extension because of vacation schedules in the remaining two weeks of August and the fact that the only additional information received since July 31 is inaccessible to the client. Moreover, Games Workshop anticipates a further dispute over confidentiality given that Chapterhouse, on August 9, produced a "Highly Confidential" disk purporting to contain production documents that Games Workshop has been unable to open other than to view a few segments of the Chapterhouse website. Plainly, the images from its website are not confidential at all, yet Chapterhouse has refused to answer repeated inquiries since August 9 seeking to learn either the substantive content of the disk or even in what program the materials are saved on the disk. Such needless delays and refusals to cooperate are increasingly intolerable.

## CONCLUSION

In view of the foregoing, Games Workshop respectfully requests that the Court deny Chapterhouse's motion for a protective order and enter an order compelling Chapterhouse to de-designate its answers to Games Workshop's second set of interrogatories. The documents should not be entitled to any level of confidentiality, or, minimally, should be entitled to no protection above the "Confidential" level so that Games Workshop's in-house counsel can evaluate the information.

Dated:  August 17, 2011

Respectfully submitted,

/s/  Scott R. Kaspar

Scott R. Kaspar (Ill. Bar No. 6284921)
Aaron J. Weinzierl (Ill. Bar No. 6294055)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone:  312.832.4500
Facsimile:  312.832.4700
Email:  skaspar@foley.com;
aweinzierl@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone:  (212) 682-7474
Facsimile:  (212) 687-3229
Email:  jmoskin@foley.com

*Attorneys for Plaintiff*
*Games Workshop Limited*

## **CERTIFICATE OF SERVICE**

      I, Scott R. Kaspar, an attorney, hereby certify that on August 17, 2011, I caused to be filed electronically the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

      /s/ Scott R. Kaspar