## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GAMES WORKSHOP LIMITED,

                       Plaintiff,

       v.

CHAPTERHOUSE STUDIOS LLC and JON
PAULSON d/b/a PAULSON GAMES

                     Defendants.

Civil Action No. 1:10-cv-8103

Hon. Matthew F. Kennelly
Hon. Jeffrey T. Gilbert

## JOINT RULE 26(f)(3) DISCOVERY PLAN AND PROPOSED
## CASE MANAGEMENT DEADLINES

Pursuant to the Court's November 8, 2011 Minute Order (Docket No. 113), Plaintiff

Games Workshop Limited ("Games Workshop") and Defendant Chapterhouse Studios LLC

("Chapterhouse") (collectively, "the Parties"), as for their Rule 26(f)(3) discovery plan and

proposed case management deadlines, state as follows:

1.      The undersigned counsel for the Parties conducted a full-day settlement

conference in court (with principals present) on November 7, 2011, during which time the Parties

addressed certain of the outstanding discovery issues, and the parties have since exchanged

proposals for a case schedule to move this case forward.  The Court has also asked the parties to

outline any disagreements they have with respect to the matters covered in Rule 26(f)(3).

2.      Games Workshop identifies the following unresolved discovery disputes:

a.      Independent creation documents.  Based on Chapterhouse's admission of

access to all of Games Workshop's original works, one of the principal issues in the case has

been Chapterhouse's defense of independent creation.  Based on discussions at the November 7,

2011 settlement and discovery conference before Magistrate Judge Gilbert, Chapterhouse represented that it had produced all documents in its possession, custody or control responsive to Plaintiff's Document Request No. 9 (concerning references to third party-works as part of the development of approximately four or five of Chapterhouse's more than ninety accused works). Counsel for Chapterhouse was unable to confirm whether Chapterhouse had produced any documents in its possession, custody or control responsive to Plaintiff's Document Request No. 10 (concerning the actual genesis of Chapterhouse's accused works, such as sketches, mock-ups, models and the like). Based on Plaintiff's review of Chapterhouse's production, Plaintiff does not believe that any documents responsive to Plaintiff's Document Request No. 10 have been produced. Games Workshop also believes that such "independent creation" documents are within the scope of its Interrogatory 2 and Document Request No. 1, which were the subject of the Court's instructions at the July 6, 2011 status hearing. A full understanding of Chapterhouse's independent creation defense, including complete production with respect to these requests, may help to narrow the issues in this case (including facilitating further settlement discussions). Accordingly, Games Workshop contemplates a possible motion to ensure production of such documents to the extent that the parties are unable to resolve this dispute through the meet-and-confer process.

b. Deposition of document custodian. There are numerous other narrower document requests for which Chapterhouse has declined to confirm either if it has documents or will produce the same. However, to try to resolve these issues without motion practice, on August 31, 2011, Games Workshop noticed the deposition of Chapterhouse by its designated document custodian to determine what documents exist and be certain Games Workshop has received the documents needed to complete discovery. The parties have yet to agree upon a date

2

for this initial deposition, which will allow Games Workshop to determine what discovery issues might require further attention.

        c.     Attorney's Eyes Only Designation.  After Chapterhouse served amended responses to interrogatories on July 29, 2011 in which it identified the names of its product designers but designated the information "Attorneys-Eyes-Only", Games Workshop objected that the names of possible joint infringers can not be concealed on confidentiality grounds as Games Workshop has no interest in competing with Chapterhouse for the services of the designers but rather in investigating the infringement here at issue.  Chapterhouse filed a motion for a protective order, and on August 23, 2011, Magistrate Judge Gilbert preliminarily granted the request (subject to possible further consideration).  Because Magistrate Judge Gilbert had also directed the parties to focus efforts on settlement, Games Workshop did not file objections to the Magistrate Judge's order.  Instead, it served additional discovery to test the basis for Chapterhouse's argument that the designers were afraid of being sued by Games Workshop.  However, Chapterhouse has refused to answer this discovery.  Without being able to share the names of the independent designers with its client, Games Workshop is greatly limited in deciding whether to take discovery from the third parties or indeed to name them as parties to the litigation.

      3.     Chapterhouse contends that these are non-issues, because it has either produced or agreed to produce the above-referenced documents, and has agreed to make a 30(b)(6) deponent available.

      4.     Chapterhouse Studios identifies the following unresolved discovery disputes:

        Plaintiff has refused to respond to the vast majority of Chapterhouse's discovery requests, primarily on the grounds that it does not consider the requests relevant.  Although

Chapterhouse voluntarily produced the discovery Plaintiff identified as important to it in order to facilitate a meaningful settlement conference, Plaintiff did not reciprocate. Chapterhouse is making a final effort to resolve outstanding issues with Plaintiff this week. To date (for months now), Plaintiff's counsel has refused to meet and confer with Chapterhouse about these issues, and instead insists that it has met its discovery obligations as indicated by its statement in section 5 below. Chapterhouse disagrees.

The following are the key unresolved discovery issues regarding Plaintiff's discovery responses:

a. **Exemplars of the works at issue.** Plaintiff has refused to produce exemplars of most of its alleged works, despite a Court order compelling it to do so.[1] Plaintiff has failed to produce many of the illustrations and printed works it alleges, and some of those it has produced are partially illegible; it has produced others only as black-and-white scans of color artwork; and it has not produced any sculptural works, instead producing a number of low-resolution screenshots of pages from its website, many in black and white, and many bearing no apparent relationship to any of the sculptural works at issue. Analysis of the copyright infringement claims requires a side-by-side comparison of the works at issue. Plaintiff's failure to produce exemplars of its works prejudices Chapterhouse's ability to defend itself.

b. **Authorship and ownership information.** Plaintiff must prove its ownership of the copyrights at issue as part of its *prima facie* case. Because it has admitted in response to admission requests that the only U.S. copyright registration it has for the works at issue is one registration for a product catalog, it will not have the advantage of relying on the

---

[1] Plaintiff has elsewhere attempted to excuse its failure by claiming falsely that Chapterhouse has conceded access to "all of Games Workshop's original works." Chapterhouse has, of course, not done so.

presumption of ownership conferred by registration. Because Plaintiff has conceded in its discovery responses that it has no documents comprising chain of title for any of its alleged works, it must produce evidence that the author of each work was its employee at the time the work was created in order to meet its burden to prove ownership.[2] Plaintiff has refused to identify the authors of the alleged works, despite multiple discovery requests and a Court order requiring it to do so.

   c.    **Design, creation, and source information.** To determine the scope of copyright in Plaintiff's alleged works, Chapterhouse is entitled to discovery about the sources of those works. Plaintiff cannot claim copyright protection for third party and public domain elements, and to the extent it claims Chapterhouse's products infringe such elements, its claims will fail. Plaintiff has refused to respond to requests regarding those sources.

   d.    **Information about first publication of Plaintiff's alleged works.** If Plaintiff's works were first offered for sale in the U.S. at the same time they were offered elsewhere, U.S. copyright registration is a prerequisite to bringing its claims. Because Plaintiff concedes it has only one relevant U.S. registration for a catalog, it may lack standing for many of its copyright claims. Plaintiff has produced no evidence to support its claim that "[n]one of [its alleged works] are United States works for which registration is required,"[3] but merely makes the conclusory statement that its works were "created . . . in England."[4] But whether a work is a U.S. work for purposes of copyright law is based on where it was first published, not where it

---

[2] Under governing U.K. law, for Plaintiff to show that it owns the copyrights it claims, it must show for each work either (1) that the natural person who created the work was an employee working in the course and scope of his employment, or (2) that Plaintiff has a written, signed assignment of copyright from the natural person who created the work. Under U.K. law, a corporate entity such as Games Workshop cannot, as a matter of law, be the author of a work created by its employee.

[3] First Amended Complaint ¶ 14.

[4] First Amended Complaint ¶ 12.

was created. A work that was first sold or offered for sale simultaneously in the U.S. and a foreign country — for instance, by being offered for sale over the internet — is considered a U.S. work. Thus if any of Plaintiff's alleged works were first sold or offered for sale over the internet, Plaintiff is precluded by statute from bringing a copyright claim for those works without a U.S. copyright registration. Plaintiff has refused to respond to Chapterhouse's discovery requests relating to first publication.

e. **Information about Plaintiff's trademark allegations.** To make a *prima facie* case of trademark infringement, Plaintiff must demonstrate that its alleged marks are valid and protectable under the Lanham Act. To do so, it must show as a threshold matter that they were, and continue to be, used in commerce as source identifiers in the U.S. Plaintiff has refused to respond to discovery requests concerning its marks, although it is evident (and Plaintiff has conceded) that at least some of the marks it claims are not used in commerce. Plaintiff has refused to provide specimens of use in U.S. commerce for many claimed marks, or of *first* use in U.S. commerce for *any* claimed mark; refused to produce documents relating to third party use of those marks; and refused to produce any documents relating to its efforts to enforce them.

f. **Documents concerning Chapterhouse and 30(b)(6) deposition.** Plaintiff claims it has produced all of the emails it is "aware of" concerning Chapterhouse, but has produced only four emails in total in this litigation, all from third parties. Plaintiff also claims it has no privileged documents concerning Chapterhouse. Similarly, Plaintiff has refused to produce its correspondence with Chapterhouse's designers, manufacturers, and contractors, stating that it was "unable to answer this request" because Chapterhouse's confidentiality designations prevented Plaintiff's counsel from sharing those names with its client. But Plaintiff's counsel need not share the names to run keyword searches for email of relevant

custodians. To examine the adequacy of Plaintiff's search for relevant documents, and to address other key topics in this case, Chapterhouse has noticed a 30(b)(6) deposition of Plaintiff. To date, Plaintiff has refused to make its witnesses available.

     5.    Games Workshop contends the above summary by Chapterhouse is a gross misstatement. Games Workshop has responded in full to five sets of document requests served by Chapterhouse, three sets of interrogatories and two sets of admission requests (totaling 374 separate requests). Games Workshop has responded in detailed letters to all discovery issues raised by Chapterhouse, to which Chapterhouse has never responded (nor has it responded to Games Workshop's own complaints regarding the deficiencies in Chapterhouse's responses). Games Workshop also received the above summary by Chapterhouse of discovery issues only 30 minutes before finalizing and submitting this response (three days after it submitted a draft to Chapterhouse).

     For instance, contrary to Chapterhouse's statement, Games Workshop has produced exemplars of all of the works at issue and Chapterhouse has previously admitted that it already has all of Games Workshops works. Moreover, Chapterhouse has admitted to the Court that under UK law "[t]he author of a work is the first owner of any copyright in it," except that "[w]here a literary . . . or artistic work . . . is made by an employee in the course of his employment, his employer is the first owner of any copyright in the work subject to any agreement to the contrary." Copyright, Designs & Patents Act 1988 § 9(1) § 11. Games Workshop has confirmed in interrogatory answers (and reminded Chapterhouse's counsel only yesterday) that all of the works in issue have been produced by employees within the scope of their employment (with one exception for which Games Workshop is producing a written contract confirming ownership). Moreover, Chapterhouse openly admits on its website that

7

Games Workshop owns copyright in all of the subject works. Games Workshop has also

produced evidence that its works were all created and first published in the United Kingdom.

Nor is Games Workshop aware of any discovery requests concerning its trademarks it has not

answered. Finally, Games Workshop believes it has produced all responsive emails concerning

Chapterhouse and is unaware how it can run keyword searches on its servers concerning third-

party designers without knowing the names it is supposed to search.

      6.     To address these discovery disputes and to move the case forward, the

Parties propose the following case management deadlines:

| ACTIVITY | PLAINTIFF'S PROPOSED DATES | DEFENDANT'S PROPOSED DATES |
|---|---|---|
| Parties file cross-motions on outstanding discovery issues | Plaintiff position is that Chapterhouse should be required to comply with ordinary meet and confer requirements and that Games Workshop is entitled to know in advance of any briefing what issues Chapterhouse believes require resolution[5] | November 28, 2011[6] |
| Parties file responsive briefs | Same as above | December 5, 2011 |
| Argument on discovery motions | Same as above | December 13, 2011 |
| Last day to file amended pleadings | January 6, 2012 | November 1, 2011 |
| Close of Fact Discovery | March 15, 2012 | Same |
| Last day to serve expert disclosures and reports (FRCP 26(a)(2)) on\ issues which the | May 1, 2012 | Same |

---

[5] Games Workshop notes that it received Chapterhouse's portion of this joint report at almost 5:00 central time (6:00 in New York) and that Chapterhouse has refused to respond to prior correspondence seeking to resolve discovery disputes.

[6] Chapterhouse notes that Plaintiff has refused to meet and confer on discovery issues despite repeated requests from Defendant for months now. Defendant is making one final effort to do so this week and then intends to proceed with its motion to compel.

| party bears the burden of proof | | |
|---|---|---|
| Last day to serve rebuttal expert reports | June 15, 2012 | Same |
| Close of expert discovery | July 13, 2012 | Same |
| Last day to file dispositive motions | August 14, 2012 | Same |
| Pre-trial disclosures (FRCP 26(a)(3)) | October 19, 2012 | Same |
| Last day for Court to hear dispositive motions | September 28, 2012 | Same |
| Final pre-trial conference | November 16, 2012 | Same |
| Trial | December 3, 2012 (5-7 Court days) | Same |

The Parties believe that good cause exists for resetting the case schedule and respectfully request that the Court enter an Order adopting the above case management deadlines.

Dated: November 16, 2011     Respectfully submitted,

         /s/ Scott R. Kaspar
          Scott R. Kaspar (Ill. Bar No. 6284921)
          Aaron J. Weinzierl (Ill. Bar No. 6294055)
          FOLEY & LARDNER LLP
          321 North Clark Street, Suite 2800
          Chicago, IL 60654-5313
          Telephone: 312.832.4500
          Facsimile: 312.832.4700
          Email: skaspar@foley.com;
          aweinzierl@foley.com

          Jonathan E. Moskin
          FOLEY & LARDNER LLP
          90 Park Avenue
          New York, New York 10016
          Telephone: (212) 682-7474
          Facsimile: (212) 687-3229
          Email: jmoskin@foley.com

         *Attorneys for Plaintiff*
         *Games Workshop Limited*


         /s/ Thomas J. Kearney
          Jennifer A. Golinveaux, Esq.
          Thomas J. Kearney, Esq.
          J. Caleb Donaldson, Esq.
          Winston & Strawn LLP
          101 California Street
          San Francisco, CA 94111
          jgolinveaux@winston.com
          tkearney@winston.com
          jcdonaldson@winston.com

          Eric J. Mersmann, Esq.
          Winston & Strawn LLP
          35 West Wacker Drive
          Chicago, IL 60601
          emersmann@winston.com

         *Attorneys for Defendant*
         *Chapterhouse Studios LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I, Scott R. Kaspar, an attorney, hereby certify that on November 16, 2011, I caused to be filed electronically JOINT RULE 26(f)(3) DISCOVERY PLAN AND PROPOSED CASE MANAGEMENT DEADLINES with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.


          /s/   Scott R. Kaspar