IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>                              Plaintiff,<br><br>       v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON<br>PAULSON d/b/a PAULSON GAMES<br><br>                            Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly<br>Hon. Jeffrey T. Gilbert |

**PLAINTIFF'S MOTION TO COMPEL OR FOR SANCTIONS**

      Plaintiff Games Workshop Limited ("Games Workshop"), by and through its undersigned counsel, respectfully submits this Motion to Compel or for Sanctions (the "Motion") against Defendant Chapterhouse Studios LLC ("Chapterhouse"). For the reasons discussed below, the Court should: direct Chapterhouse to respond to Interrogatory Nos. 2, 7, 8, 12, 13, 14 and 15 and Document Request Nos. 2, 14-21, 25, 27 and 29; to set a deadline for it to respond in full to Document Requests 9 and 10 or preclude it from offering any further information concerning alleged third party sources for any of its works; deem Chapterhouse to have admitted all requests in Games Workshop's First Request for Admissions; and order it to remove the attorneys-eyes-only designation from its supplemental responses to Interrogatory Nos. 3, 4, 6, 9, and 10. In support of this Motion, Games Workshop states as follows:

**INTRODUCTION**

      1.     In this action, Games Workshop alleges that Chapterhouse has developed a business devoted exclusively to developing products derived from and that can be used with

1

Games Workshop's popular Warhammer 40,000 game. Every product it sells is tied to the specific names, characters and imagery created by Games Workshop, including the descriptions of the products and how they are meant to be used with the Warhammer 40,000 game. The name of the company itself is apparently derived from the "Chapters" of the Space Marine characters used in Warhammer 40,000, and the banner at the top of the website prominently states "Specializing in Custom Sculpts and Bits for Warhammer 40,000 and Fantasy". No purpose for the company other than trading on plaintiff's Warhammer 40,000 fantasy game is specified. (Evidently conceding infringement, the site has been redesigned in the past week to remove the banner.)

2.  The complaint thus alleges that many specific products are infringing derivative works based on the books, characters and imagery Games Workshop has created, *see*, *e.g*. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1170 (7th Cir. 1997), and that the overall site is an infringement because it copies key elements of Games Workshop's original materials, very much as in *Castle Rock Ent. v. Carol Pub. Group, Inc*., 150 F.3d 132, 137 (2d Cir. 1998). In *Castle Rock*, defendant's short book contained only 643 trivia questions having no narrative relationship other than that derived from 84 of the 86 episodes of the "Seinfeld" television series. The Second Circuit affirmed a grant of summary judgment by then-district-court-judge Sonia Sotomayor where, as here, access was not denied, and there was no genuine dispute as to the defendant's actual (and only) source for its accused copying. *Castle Rock* held that the book infringed copyrights in the entire "Seinfeld" television series because the trivia tested aspects of the "Seinfeld" characters, such as expressions and mannerisms, based on the fictitious expression created by the authors, notwithstanding that only fragments were copied from individual episodes. *Id*. at 139. In much the same way, all of Chapterhouse's products are derived from

aspects of the original fictional world and the original characters Games Workshop has created, and are made to be used *only* in connection with that original creative world. Indeed, Chapterhouse specifically instructs its customers on its website how to use its accused works in connection with plaintiff's Warhammer 40,000 game, and even if it might be true, as Chapterhouse seems to argue, that some individual Chapterhouse products could in theory escape a finding of copyright infringement, the entire Chapterhouse website, which itself constitutes a copyrightable collective whole, is an infringement. Moreover, to the extent Chapterhouse or other parties sell defendant's products individually (for example on eBay or other similar venues), they are all sold solely on the basis of use of Games Workshop's trademarks, thus constituting trademark infringement. The complaint also alleges that other prominent use of Games Workshop's registered trademarks and character names infringes its rights in those marks.

3. Chapterhouse has admitted having access to all of Games Workshop's works (Dkt. No. 60). However, among the 23 boilerplate defenses asserted in its answer (for which it has yet to answer discovery seeking identification of the grounds therefor[1]) its principal substantive defense appears to be independent creation.[2]

---

[1] Although Chapterhouse had refused to respond to Games Workshop's Interrogatory 13 and Document Request 27 seeking identification of facts relied upon to assert the 23 affirmative defenses, on November 29 it agreed to drop its objections and provide complete responses. The defense of independent creation is merely one of the 23 defenses set forth in boilerplate fashion in Chapterhouse's Answer. Others include laches, *res judicata*, consent, waiver, acquiescence, and "copyright misuse," but not are supported by specific factual averments.

[2] Chapterhouse also now challenges Games Workshop's ownership of copyright in the subject works, notwithstanding the admission on its website that Games Workshop indeed owns copyright in all such works and notwithstanding its concession that where, as here, works are created by employees within the scope of their employment, as a matter of law the employer is the author and owner of the works. However, Games Workshop does not seek discovery from Chapterhouse concerning its own creation and ownership of the works.

3

**DISCOVERY REQUESTS**

A. <u>Independent Creation</u>.

4. On March 25, 2010, Games Workshop served Interrogatory No. 2 (Exhibit A, seeking identification of all sources consulted by Chapterhouse in developing the accused works) and Document Request No. 2, seeking all documents on which Chapterhouse relied for its answer to Interrogatory 2.[3] On May 27, Games Workshop also served its Document Requests 9[4] and 10[5] and Interrogatory 7[6], seeking all references to third party works and all sketches, mock-ups and so forth demonstrating the actual creation of the accused works. After the Court instructed Chapterhouse at the July 6 hearing to produce its evidence of independent creation, Chapterhouse, on July 29, served an amended answer to Interrogatory 2 in which it identified a small number of third party works having some alleged general resemblance to some isolated features (such as a cross or lion) plucked from entire characters found in Games Workshop's

---

[3] Document Request No. 2 calls for production of all documents identified, reviewed, or considered by Chapterhouse in responding to Interrogatory Nos. 1 and 2 (Exhibit B):
> Any and all documents and things identified, reviewed, or considered by Chapterhouse in preparing responses to each of Games Workshop's First Set of Interrogatories or that support or form any part of the bases of Chapterhouse's responses to each and every interrogatory contained in Games Workshop's First Set of Interrogatories.

[4] Similarly, Document Request No. 9 (Exhibit D) calls all documents referring to such third-party sources:
> Separately for each of the Accused Works, any and all documents or things in Chapterhouse's possession, custody or control, setting forth or referring to any sources consulted, used, reviewed or relied on by Chapterhouse *other than* works of Games Workshop in creating each of the said Accused Works.

[5] Document Request No. 10 requests production of all mock-ups, drafts, drawing briefs or the like:
> Separately for each of the Accused Works, any and all documents or things in Chapterhouse's possession, custody or control, setting forth or reflecting any mock-ups, drafts, drawing briefs or the like concerning the conception, development or creation of each of the said Accused Works.

[6] Interrogatory No. 7 (Exhibit C) calls for any third-party sources that Chapterhouse consulted, used, reviewed or relied in creating its products:
> Separately for each of the Accused Works, identify any sources consulted, used, reviewed or relied on by Chapterhouse other than works of Games Workshop in creating each of the said Accused Works.

4

works. However, when Chapterhouse did ultimately produce documents purportedly demonstrating any actual reliance on any such third-party works, which it did on October 27, its documents mentioned only two of the third-party works referenced in its amended response to Interrogatory 2 (for products having a lion and a mantis design).[7] Indeed, these documents, (expressly produced in response to Document Request 9, not Request 2), concern only approximately 5 email strings regarding defendant's creation of 5 unidentified products (featuring a raven, a fist, a lion, a mantis head and a griffon). Chapterhouse contends that these are the only documents of which it is aware referencing third-party works in the creation of its accused products. Moreover, not only has Chapterhouse failed to produce documents corresponding to the third-party works identified in Interrogatory 2, but it has refused to confirm that the third party references identified in response to Interrogatory 2 are the only third party references on which it purports to have relied in creating the accused works. Rather, its amended response to Interrogatory 2 states that "Defendant reserves the right to further supplement this response as additional sources are recollected". Given that the requests were served on March 25, eight months ago, and that the Court directed Chapterhouse to respond to Interrogatory 2 and the related Document Request 2 on July 6, some finality must be brought to this exercise, and a date certain must be set for Chapterhouse to finalize its answer to Interrogatory 2 and to complete production of corresponding documents (whether in response to Document Request 2 or 9). Although Chapterhouse has also not yet produced any documents in response to Document Request 10 (showing the sketches and mock-ups in developing its accused works), on November 29 it promised it would do so now.

---

[7] Chapterhouse has also identified a single "chaos" symbol it says originated with HR Giger, but has not produced any other artwork.

5. Because as of August 19, 2011 Games Workshop had received no documents whatsoever concerning alleged independent creation (which was before Chapterhouse produced the 5 email strings on October 27), and because Chapterhouse had declined to respond to Games Workshop's letters seeking confirmation whether documents would be produced, Games Workshop served admission requests separately keyed to each of the 95 accused works. Rather than move to compel or for sanctions, Games Workshop simply hoped to confirm for each product that no documents exist and that none had been produced. However, Chapterhouse has refused to respond to any such admission requests. Moreover, although its responses were due on September 21, defendant served its responses (all boilerplate objections to relevance) a day late, thus waiving these objections. To ensure it finally received the information requested, Games Workshop also contemporaneously served on Chapterhouse Interrogatory No. 15[8], which requested that Chapterhouse identify the works upon which Chapterhouse relies to support its denial of any of the admission requests. To date, Chapterhouse has refused to provide any response to Games Workshop's Interrogatory No. 15.

6. Games Workshop previously filed a motion to compel answers to Interrogatory Nos. 1 and 2 on June 15, 2011 (Dkt. No. 56), which the Court granted. At the July 6, 2011 status hearing, the Court ordered compliance with the overdue discovery requests by July 29, 2011. When Chapterhouse's counsel objected that a response required getting information from multiple employees, the Court responded:

> …presumably if he's being asked to regurgitate what he himself did, it's not speculation; it's just his memory. If he's being asked to describe what other

---

[8] Interrogatory No. 15 (Exhibit G) calls for:
> Separately for each admission request in Games Workshop's First Set of Requests For Admission, if the answer is anything but an unequivocal admission, identify each third party work on which Chapterhouse relies in support thereof, and set forth the date on which and source from which Chapterhouse originally located or acquired the same.

> people may have contributed, that is, in fact the nub of the problem in that …the plaintiff …needs to be able to get that information somehow, and the question is how best to get it. … So if you can negotiate some other mechanism for Mr. Kaspar to get this information, which I have concluded he is entitled to get, or his client is entitled to get, in a timely way consistent with the fact that his interrogatories were served long before defendant served any interrogatories, then, fine, you can work that out. Failing that, you have got to respond.

*See* 7/6/11 Transcript at 15:1-24.[9] Given the vagueness of Chapterhouse's responses to Interrogatory No. 2 and the failure to produce corresponding documents, as well as its refusal to answer Games Workshop's admission requests, Games Workshop requests that Chapterhouse be precluded from offering any documents concerning alleged third party works on which it relied (beyond those already produced in response to Document Request No. 9) and that it either amend its response to Interrogatory No. 2 by a date certain (including production of documents concerning the information already provided) or be precluded from offering any further information concerning alleged third party sources for any of its works.

B. <u>Improper Use of Highly Confidential – Attorneys' Eyes Only Designation</u>.

7. After Games Workshop's four-month-long pursuit of the identities of Chapterhouse's third-party designers and suppliers pursuant to Interrogatory Nos. 3, 4, 6, 9, and 10, Chapterhouse, on July 29, supplemented its responses to identify the third parties (Exhibit C). However, Chapterhouse designated these supplemental responses as Highly Confidential – Attorneys' Eyes Only, precluding Games Workshop's counsel from being able to discuss the third parties with its client's in-house counsel. Because these identities are not trade secrets—indeed, many of them come up as hits on Google searches for miniature war-gaming or are regular participants on public bulletin boards and blogs—Games Workshop requested that Chapterhouse de-designate its supplemental interrogatory responses. Instead, Chapterhouse

---

[9] The parties have not agreed on any other mechanism to get Games Workshop the information requested in March, and notes that it requires that information before it can profitably conduct a 30(b)(6) deposition concerning the creation and design of the accused works.

7

brought a motion for protective order before Magistrate Judge Gilbert (Dkt. No. 84), which was granted in large part based on Chapterhouse's proffered affidavit from Mr. Villacci who, under oath, stated that many of the third parties feared reprisal by Games Workshop. 8/23/2011 Transcript at 8:6-10.

8. Although Chapterhouse contends that even Games Workshop's in-house counsel can not learn the names of its third party designers and manufacturers because of fears of reprisal, when Games Workshop served follow-up discovery on Chapterhouse to determine the basis for any such fear (specifically Document Request No. 29 and Interrogatory No. 14, attached as Exhibits E and F), Chapterhouse refused to answer the requests, as shown in Exhibit H. Moreover, as set forth in the attached Declaration of Gillian Stevenson, Games Workshop's in-house counsel, virtually all of these names can be discovered in entirely public internet forums devoted to fans of Warhammer 40,000. They are not confidential. Yet Games Workshop is unable to determine if it needs to take discovery from any such third party (including, for example, information that may contradict Chapterhouse's independent creation defense) or even if it might wish to name one or more such third parties as defendants in an amended complaint. Nor is Games Workshop able to respond to certain discovery requests propounded by Chapterhouse seeking correspondence or communications between Games Workshop and these designers. Chapterhouse thus has itself placed in issue the identities of these third parties, and should be required to allow disclosure of such information to Games Workshop – or at least to its in-house counsel.

9. Because the parties were instructed by Magistrate Judge Gilbert to focus their efforts on settlement and the settlement conference ultimately conducted on November 7, Games Workshop did not immediately file objections to the decision. Moreover, as Games Workshop

understands Magistrate Gilbert's decision, it was made without prejudice to Games Workshop's ability to challenge the decision should it be able to show that the Highly Confidential designation unduly hampers its pursuit of this case. 8/23/2011 Transcript at 8:15-18. Games Workshop is more than willing to have this issue referred back to Magistrate Judge Gilbert, before whom the issue previously was fully briefed (Dkt. Nos. 84, 90) and thus has not fully re-briefed the issue here, but simply needs to resolve the matter.

    C.  <u>Other Discovery Deficiencies</u>.

    10.  The primary remaining discovery issues Games Workshop has been unable to resolve without court assistance concern Chapterhouse's general refusal to respond to Interrogatory Nos. 8 and 12 and Document Requests Nos. 14-21 and 25, as set forth below.

    11.  In response to Interrogatory No. 8 seeking the actual reason for Chapterhouse's selection of its name, Chapterhouse instead has simply stated that there happen to be two other (seemingly unrelated) uses of the name, citing the dictionary definition of a "chapterhouse" as a monastic meeting house or Frank Herbert's *Chapterhouse Dune* novel. Neither has any apparent relationship with defendant's business, and, despite repeated requests, Chapterhouse has refused to confirm that it genuinely contends its name in fact was derived from either of these references. Similarly, Chapterhouse has not produced any documents in response to Request No. 23 concerning the actual selection of the name. If Chapterhouse wants to clarify its current answer that the *actual* intended meaning of and *actual* derivation for the name "Chapterhouse" is not the Chapters of the Space Marines, but rather one or both of the hypothetical references, it must amend its answer.

    12.  In response to Interrogatory No. 12 seeking instances where consumers have referred to Games Workshop's products, Chapterhouse promised to produce responsive

9

documents in lieu of a written narrative. More than 5 months have passed since Chapterhouse promised compliance, yet Games Workshop has yet to receive any responsive documents or a supplemental response. It is Games Workshop's expectation that every single customer of Chapterhouse orders products by reference to Games Workshop's original copyrighted works or the trademarks Games Workshop uses to identify its characters and products. It is also Games Workshop's expectation that such correspondence will help explain the genesis of much of the copying conducted by Chapterhouse. Although Chapterhouse for the first time on November 29 agreed to respond to Games Workshop's Interrogatory No. 5, seeking the methods or plans used by Chapterhouse in selecting new products, Games Workshop's understanding is that many or most of the accused works have been developed because customers asked Chapterhouse to copy such products from Games Workshop's originals.

13. In response to Document Requests Nos. 14, 15 and 17 seeking sales information of the accused works, Chapterhouse has produced general information but has refused to identify sales volumes in specific venues such as eBay or Barterhouse, even though it does not dispute that it has such information. (It was on those two websites where Games Workshop first discovered Chapterhouse selling its products under Games Workshop's trademarks.) Where and how the accused works are sold can not possibly be privileged, and channels of trade information is directly relevant to Games Workshop's trademark and unfair competition claims. Indeed, it is one of the express factors the Court must consider in the multi-factor test of likelihood of confusion.

14. In response to Document Request No. 16 seeking documents relating to advertising of the accused works, Chapterhouse has stated that it will produce "representative" specimens of Chapterhouse's advertising. Laying aside the appropriateness of Chapterhouse

10

purported selection of "representative" items, unless the request is burdensome, it is not clear why Chapterhouse purports to limit production of such materials at all, as they are indisputably relevant. In any event, despite the promise it made more than five months ago, Chapterhouse has yet to produce even "representative" specimens of its advertising.

15. In response to Document Request No. 20 seeking documents relating to any changes to Chapterhouse's website and Request Nos. 18 and 19 seeking documents concerning the creation of the disclaimer and banner of Chapterhouse's website, Chapterhouse has objected that all responsive documents are privileged, notwithstanding that certain of these changes (in response to its receipt of notice of the complaint) were made before it had even engaged any counsel. While Games Workshop may choose to test the sufficiency of Chapterhouse's claim of privilege, to date Chapterhouse has not served any privilege log, despite the fact that it responded to Games Workshop's second set of document requests more than 5 months ago.

16. In response to Document Request No. 21 seeking metrics reports concerning visits to Chapterhouse's website, Chapterhouse has refused to produce such information on grounds of relevance. The very fact that Chapterhouse also initially objected on grounds of attorney-client privilege confirms that its counsel considered these reports to be relevant to the defense of the case, and it can not realistically be disputed that a profile of visitors to the site is directly relevant to assessing the trademark and unfair competition claims. In a November 29, 2011 meet and confer, Chapterhouse changed its objection to state simply that no such reports have been generated, even though the data apparently exists and Chapterhouse could access the same if it wished to do so. Accordingly, Chapterhouse must provide responsive information.

17. In response to Document Request No. 25 seeking consumer perceptions of Chapterhouse or its products, Chapterhouse does not deny that it has such documents but simply

11

refuses to produce responsive information. Importantly, it does not dispute that this request seeks highly relevant information. Accordingly, Chapterhouse must provide responsive information.

## **ARGUMENT**

18. Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Chapterhouse's answers to Interrogatory No. 2 and Document Request No. 2 were due on or before *April 28, 2011*. *See* Fed. R. Civ. P. 33(b)(2). Answers to Interrogatories Nos. 7, 8, 12, 13, 14 and Document Request Nos. 9, 10, 14-21, 25, 27 and 29 were due on *June 27, 2011*, and answers to Admission Requests and to Interrogatory No. 15 were due on *September 19, 2011*. *Id.* Last, answers to Interrogatory No. 14 and Document Request No. 29 were due on *September 21, 2011*.

19. Chapterhouse has refused to provide sufficient responses to Interrogatories Nos. 2, 7, 8, 12, 13, 14 and 15 and information sufficiently responsive to Document Requests Nos. 2, 9, 10, 14-21, 25, 27 and 29, as described in Paragraphs 4-17 *supra*. Moreover, while Chapterhouse has provided certain supplemental responses to Interrogatories Nos. 3, 4, 6, 9, and 10, it designated that information Highly Confidential – Attorneys' Eyes Only, thereby precluding Games Workshop's outside counsel from even discussing the identities of third parties with its in-house counsel and unduly hampering Games Workshop's ability to prosecute this case.

20. To the extent that Chapterhouse continues to refuse to identify the sources it relied upon in creating the accused works, it should be precluded from using any of the information that should have been provided in response to Games Workshop's requests as evidence to meet any of its burdens of proof in this case, including in support of its defense of

independent creation. *Holiday Inns, Inc. v. Robertshaw Controls, Co.*, 560 F.2d 856 (7th Cir. 1977) (ruling that the exclusion of evidence requested in the interrogatories not in error).

## **STATEMENT UNDER L.R. 37.2**

21. Games Workshop has taken extensive steps to resolve these discovery disputes with Chapterhouse over the course of the last six months. For instance, Games Workshop has directed numerous deficiency letters to Chapterhouse, including letters dated July 28, August 5, September 9, and November 23, 2011 (copies attached as Exhibit I), which have gone largely unanswered. The parties have also had extensive discussions (on the record and off) before Magistrate Judge Gilbert seeking to resolve at least the main issues.

22. On November 29, 2011, the parties participated in a lengthy meet and confer telephone conference in which Games Workshop discussed all of its outstanding discovery disputes with Chapterhouse and have confirmed their remaining points of disagreement in subsequent emails. Unable to reach resolution on these issues, Games Workshop seeks this Court's intervention.

23. Accordingly, the undersigned counsel for Games Workshop states that after consultation by telephone and good faith attempts to resolve differences, Games Workshop was unable to reach an accord.

## **CONCLUSION**

24. Accordingly, Games Workshop respectfully requests that the Court grant this Motion and direct Chapterhouse to respond to Interrogatory Nos. 2, 7, 8, 12, 13, 14 and 15 and Document Requests Nos. 2, 14-21, 25, 27 and 29; set a deadline for it to complete its responses to Requests 9 and 10, and order it to de-designate its supplemental responses to Interrogatory Nos. 3, 4, 6, 9, and 10. In addition, Chapterhouse should be deemed to have admitted all of Games Workshop's admission requests. Alternatively, Games Workshop requests that the Court

enter an order precluding Chapterhouse from relying upon any information called for by these requests, including any information in support of its defense of independent creation. In addition, pursuant to Federal Rule of Civil Procedure 37(a)(4), the Court may apportion the reasonable expenses incurred in relation to a motion to compel among the parties in a just manner. Accordingly, should the Court determine that Chapterhouse's general objections are unfounded and its refusal to answer the interrogatories improper, Games Workshop should be reimbursed for at least one half of its reasonable expenses, including attorneys' fees, incurred in relation to this motion. *Nat'l Business Sys., Inc. v. AM Intern, Inc.*, 109 F.R.D. 172 (N.D. Ill. 1986).

**WHEREFORE**, Games Workshop respectfully requests that the Court enter an order (1) granting the Motion; (2) directing Chapterhouse to respond to Interrogatories Nos. 2, 7, 8, 12, 13, 14, and 15 and Document Requests Nos. 2, 14-21, 25, 27, and 29, and to complete its responses to Requests 9 and 10 by a date certain; or, alternatively, precluding Chapterhouse from relying upon any information called for by these requests as evidence to meet any of its burdens of proof; (3) deeming Chapterhouse to have admitted all of Games Workshop's Requests for Admission; (4) directing Chapterhouse to de-designate its supplemental responses to Interrogatory Nos. 3, 4, 6, 9, and 10; (5) granting Games Workshop reimbursement for at least one half of its reasonable expenses, including attorneys' fees, incurred in relation to this Motion; and (6) granting any such further relief as the Court deems appropriate and just.

Dated: November 30, 2011

Respectfully submitted,

/s/ Scott R. Kaspar

Scott R. Kaspar (Ill. Bar No. 6284921)
Aaron J. Weinzierl (Ill. Bar No. 6294055)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: skaspar@foley.com;
aweinzierl@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-3229
Email: jmoskin@foley.com

*Attorneys for Plaintiff*
*Games Workshop Limited*

**CERTIFICATE OF SERVICE**

I, Scott R. Kaspar, an attorney, hereby certify that on November 30, 2011, I caused to be filed electronically the foregoing PLAINTIFF'S MOTION TO COMPEL OR FOR SANCTIONS with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

      /s/ Scott R. Kaspar