# EXHIBIT I



**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW
90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3572
jmoskin@foley.com EMAIL

CLIENT/MATTER NUMBER
099251-0101

July 28, 2011

<u>VIA E-MAIL</u>

Jennifer A. Golinveaux, Esq.
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Re: <u>Games Workshop Group PLC</u>

Dear Jennifer:

This letter is further to my July 5, 2011 email concerning Chapterhouse's evasive responses to Games Workshop's second set of discovery requests. Together with Chapterhouse's complete refusal to respond to Games Workshop's first set of discovery requests (served March 25), and its failure to date to produce any documents or any information in response to the second set of discovery requests (served May 27), the fact is we have received zero information from your client.

Although entry of the parties agreed protective order was stated as the only substantive reason for Chapterhouse's refusal to answer Interrogatories 3, 4, 6, 9 and 10, that order was approved on July 12. We hope you can promptly confirm that complete answers will now be provided. Moreover, despite boilerplate objections, Chapterhouse promised to produce documents in response to Document Requests 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 22, 23, 24, 26 and 28, but we have received nothing. Nor have we received a privilege log to the extent Chapterhouse contends any documents are privileged. Please confirm when these documents will be delivered.

Assuming we will soon receive complete responses to the above interrogatories and document requests, the following details the principal deficiencies in the remaining responses. However, if for any reason Chapterhouse no longer intends to provide complete responses to Interrogatories 3, 4, 6, 9 and 10 and Document Requests 5 - 14, 16 - 19, 22 - 24, 26 and 28, we trust you will let us know immediately and provide an appropriate explanation.

<u>Interrogatory No. 5</u>. The interrogatory sought an explanation of how Chapterhouse selects new products for development, including an identification of the persons involved. Its response simply denies that it has a formal procedure, which is not responsive. Nor has Chapterhouse identified the persons involved in the process. Anyone looking at Chapterhouse's website can see its entire business is devoted to trading on Games Workshop's highly popular WARHAMMER 40,000 game. What we expect your client needs to explain in response to this interrogatory is how it selects items from the WARHAMMER universe on which to develop its

| BOSTON | JACKSONVILLE | MILWAUKEE | SAN DIEGO | SILICON VALLEY |
|---|---|---|---|---|
| BRUSSELS | LOS ANGELES | NEW YORK | SAN DIEGO/DEL MAR | TALLAHASSEE |
| CHICAGO | MADISON | ORLANDO | SAN FRANCISCO | TAMPA |
| DETROIT | MIAMI | SACRAMENTO | SHANGHAI | TOKYO |
| | | | | WASHINGTON, D.C. |

NYC_1184288.1



**FOLEY & LARDNER LLP**

Jennifer A. Golinveaux, Esq.
July 28, 2011
Page 2

products. Understandably it is reluctant to admit that its method consists of little or nothing more than deliberate copying, but that is the very heart of the case. If Chapterhouse has any other method of product development, it can explain that as well.

<u>Interrogatory No. 7.</u> Chapterhouse has completely failed to answer this interrogatory, which seeks an identification of the works actually relied on by Chapterhouse in developing the accused works. Chapterhouse's website makes clear that it targets Games Workshop and only Games Workshop as its basis for inspiration. As you know, we have prepared for this case an extensive fifteen-page analysis of the sources we <u>assume</u> are most likely among those your client relied upon in developing the accused works. Chapterhouse's response does not deny that these are indeed the principal (or only) sources of inspiration, and it identifies no others. Your client also defends the case on grounds of independent creation, yet it is unable to identify so much as a single work other than Games Workshop's copyrighted works on which it relies. You are correct that this interrogatory calls for a comprehensive list of sources relied upon, just as we prepared for you a comprehensive list of the works from which we assume your client copied. However, only your client can directly answer the question whether it simply copied or indeed relied on some independent sources.

<u>Interrogatory No. 8.</u> The interrogatory seeks very simply the intended meaning and inspiration of the name Chapterhouse. The evasive answer provides neither, but instead offers an abstract definition without any indication that anyone at Chapterhouse intended to invoke the OED definition of "chapter house" (two words) as a monastic meeting house, much less to reference Frank Herbert's "Dune" novel, neither of which has anything to do with the subject website or business. I believe the dictionary also defines "chapter house" (again, two words) as a place where a college fraternity or sorority meets, but that clearly has as little to do with the actual meaning and derivation of the name (one word) used by your client as either source cited in this answer.

<u>Interrogatory No. 11.</u> Chapterhouse has simply failed to answer this interrogatory seeking an identification of the derivations of the product names and designations used for each of the accused works. We fail to understand any of the boilerplate objections raised.

<u>Interrogatory No. 12.</u> Chapterhouse promised to produce documents in response to this interrogatory concerning instances in which customers have referred to Games Workshop or its WARHAMMER games (including instances of possible confusion), yet we have received nothing.

<u>Interrogatory No. 13.</u> This interrogatory sought an identification of the facts, <u>if any</u>, on which Chapterhouse relied in asserting its 23 boilerplate affirmative defenses. Contrary to your assertion, it is not a contention interrogatory. It does not seek all facts supporting these defenses or contentions and does not preclude identification of other facts or theories later in discovery if that is when you learn such facts. Rather, it seeks more narrowly to understand if Chapterhouse


FOLEY & LARDNER LLP

Jennifer A. Golinveaux, Esq.
July 28, 2011
Page 3

in fact had <u>any</u> basis for asserting any of its affirmative defenses, such as lack of standing, an unexplained Constitutional defense, independent creation, preemption, or failure to mitigate damages, to name but a few of the apparently meaningless defenses set forth without any factual context.

<u>Document Requests 3, 4</u>. We fail to understand how the request for documents concerning Games Workshop, WARHAMMER or WARHAMMER 40,000 are outside the scope of permissible discovery, as your client has objected. That is the very subject matter of the case. And even if <u>some</u> such documents are outside the scope of permissible discovery (although you will need to explain why), that does not excuse the complete failure to produce any documents at all. Please also let us know when we can expect to receive the log of documents withheld on grounds of privilege.

<u>Document Request 15</u>. The request seeks documents in defendant's possession custody and control concerning sales of Chapterhouse's products on eBay or in any other secondary market. Conceding that there are such documents, Chapterhouse objects that producing such materials would be unduly burdensome. Yet, it also offers incomprehensible objections that the information sought is attorney-client privileged or not relevant. Where and how the products are sold can not possibly be privileged, and such information is directly relevant to Games Workshop's trademark and unfair competition claims.

<u>Document Request 20</u>. Your client made various changes to its website in response to its receipt on December 22, 2010 of notice of the complaint (before it engaged any counsel). Yet Chapterhouse has refused to produce any documents concerning the changes – including materials simply documenting the public revisions – on grounds of attorney client privilege. If any such changes indeed were made on advice of counsel, we expect you will identify any documents in which Chapterhouse in fact claims privilege on a privilege log. Because no such privilege log has been produced, it is difficult to credit the objection that the changes were on advice of counsel.

<u>Document Request 21</u>. Chapterhouse's response to this request concedes that it does have metrics reports concerning visits to its website, but refuses to produce such information on puzzling grounds of relevance and attorney-client privilege. We fail to understand either objection and expect the reports will be produced.

<u>Document Request 25</u>. This request seeks documents concerning consumer perceptions of Chapterhouse or its products. Obviously, many businesses conduct research or maintain records concerning consumer comments. Please confirm whether Chapterhouse has such documents and, if so, confirm that they will be produced promptly.

<u>Document Request 27</u>. As noted above regarding Interrogatory 13, Chapterhouse has asserted 23 boilerplate affirmative defenses, none of which appear to be based on any facts.

NYC_1184288.1



**FOLEY & LARDNER LLP**

Jennifer A. Golinveaux, Esq.
July 28, 2011
Page 4

Chapterhouse's response to this request does not dispute that it does have documents on which it relied in framing its affirmative defenses but objects on grounds of relevance and privilege. Having raised the affirmative defenses in its answer, it cannot meaningfully object on grounds of relevance. Although the objection is consistent with our impression that most of these defenses have nothing to do with the case, if so, the defenses should never have been asserted and should be withdrawn promptly now. If there are any privileged documents, they must be identified on a privilege log.

      Please let us know if you are available tomorrow or Monday to confer by telephone to try to resolve the above issues. We are increasingly frustrated by Chapterhouse's apparently complete refusal to cooperate in discovery. Although we would greatly prefer not to have to move again to compel answers and production, we will do so promptly if we can not resolve these issues.

Very truly yours,

Jonathan E. Moskin

JEM:se

cc.:   Scott Kaspar, Esq.
       Aaron Weinzierl, Esq.



**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW
90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3572
jmoskin@foley.com EMAIL

CLIENT/MATTER NUMBER
099251-0101

August 5, 2011

VIA E-MAIL

Jennifer A. Golinveaux, Esq.
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Re: Games Workshop Limited v. Chapterhouse Studios LLC

Dear Jennifer:

Further to my letter of July 28, I have now reviewed defendant's Supplemental Responses to Games Workshop's Interrogatories 2, 3, 4, 6, 9 and 10.

Regarding the supplemental responses to Interrogatories 2 and 7, and related Document Request 2 (as well as Request 9), Chapterhouse has produced no documents identifying so much as a single alleged third-party work relied on by Chapterhouse in creating any of the accused works and no means for us even to assess to what Chapterhouse is even referring. As with Chapterhouse's response to Interrogatory No. 8, referring to an abstract OED definition of "chapter house" or Frank Herbert's "Dune" novel, without any indication that either had any actual role in defendant's selection of the name Chapterhouse, the supplemental responses to Interrogatories 2 and 7 are evasive and essentially meaningless.

Moreover, although Chapterhouse belatedly made available for our initial inspection a vast quantity of original Games Workshop materials in Chapterhouse's possession, it is essential that Chapterhouse now identify which of those documents or things it relied upon as inspiration for the accused works and that it actually produce copies of the same – all as required by Interrogatory 2 and Document Request 9.

Moreover, now that it is clear (based on Chapterhouse's supplemental responses to Interrogatories 3, 4, 6) that Chapterhouse has as many as nine independent designers, four independent manufacturers and twenty-two independent contractors involved in creating the accused works, most of whom are located at places remote from Chapterhouse's Texas headquarters, it is particularly imperative that Chapterhouse produce the communications (by email or otherwise), agreements and other documents between or among Chapterhouse and these third parties as called for by Document Requests 6, 7 and 12.

Similarly, now that Chapterhouse has identified the places where its products are sold, it only underscores the failure to produce any sales figures or actual advertising.

BOSTON          JACKSONVILLE    MILWAUKEE       SAN DIEGO          SILICON VALLEY
BRUSSELS        LOS ANGELES     NEW YORK        SAN DIEGO/DEL MAR  TALLAHASSEE
CHICAGO         MADISON         ORLANDO         SAN FRANCISCO      TAMPA
DETROIT         MIAMI           SACRAMENTO      SHANGHAI           TOKYO
                                                                   WASHINGTON, D.C.

NYC_1194842.1



**FOLEY & LARDNER LLP**

Jennifer A. Golinveaux, Esq.
August 5, 2011
Page 2

     You have not responded at all to my July 28 letter, either answering any of the questions raised or agreeing to a time to confer to try to resolve these issues. Please let us know if you are available later today or Monday to confer by telephone.

     As you are now or soon will be aware, we have sent a separate response to Mr. Kearney's letter of July 29.

                                   Very truly yours,

                                   Jonathan E. Moskin

JEM:se

cc.:    Scott Kaspar, Esq.

NYC_1194842.1



**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW
90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3572
jmoskin@foley.com EMAIL

CLIENT/MATTER NUMBER
099251-0101

September 9, 2011

VIA E-MAIL

J. Caleb Donaldson, Esq.
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Re: Games Workshop Group PLC

Dear Caleb:

      This letter is further to your September 1 email responding in part to my July 28 and August 5 letters and July 5, 2011 email concerning Chapterhouse's responses to Games Workshop's second set of discovery requests. We are preparing a separate response to the second part of your message concerning Games Workshop's discovery responses, which we also plan to send today.

      We have also now been able to conduct an initial review of the disk you produced that we had been unable to open, which apparently consists almost exclusively of public web pages from the Chapterhouse Studios site (all of which have been improperly designated Attorneys-Eyes-Only) plus a four page sales summary. Please tell us in response to which request all of these web pages have been produced. As requested in our email yesterday, please also confirm that you will correct the confidentiality designation.

      Enclosed with this letter are the three emails I mentioned at the September 1 hearing and referred to in point three of my September 1 email. I do not understand on what basis you purport to link Chapterhouse's duty to produce the correspondence with the nine independent designers, four independent manufacturers and twenty-two independent contractors involved in creating the accused works (as identified in its supplemental responses to Interrogatories 3, 4, 6), as called for by Document Requests 5, 6, 7 and 12, served in May. Particularly given that you assured the Court you would produce these now, please let me know when they will be delivered.

      Bearing in mind that we have not received any documents other than those on the disk (in response to which requests we do not know), these are our principal outstanding concerns.

      <u>Interrogatories No. 2, 7.</u> I asked you to confirm in response to these two interrogatories that Chapterhouse has identified all of the third party works on which it allegedly relied in developing each of the accused works. As we have now repeatedly clarified, these interrogatories call for a comprehensive list of sources relied upon for each work. For months

BOSTON  JACKSONVILLE  MILWAUKEE  SAN DIEGO  SILICON VALLEY
BRUSSELS  LOS ANGELES  NEW YORK  SAN DIEGO/DEL MAR  TALLAHASSEE
CHICAGO  MADISON  ORLANDO  SAN FRANCISCO  TAMPA
DETROIT  MIAMI  SACRAMENTO  SHANGHAI  TOKYO
                                                                                                WASHINGTON, D.C.

NYC_1219063.1


FOLEY & LARDNER LLP

J. Caleb Donaldson, Esq.
September 9, 2011
Page 2

now, you have had Games Workshop's extensive fifteen-page analysis of the most likely sources, yet have identified at most a tiny number of additional sources (without even challenging that Chapterhouse also relied on all of the sources cited by plaintiff or perhaps other Games Workshop works). Your message simply says evasively that you reserve the right to amend, but what we have a right to know <u>now</u> is that, based on your client's review of these discovery requests over the past five months, it is satisfied that it is unaware of any other sources. If it must supplement its responses later based on newly acquired information, it will have to explain why it could not have identified the alleged sources sooner.

As noted, we also need all of the documents referenced in the supplemental interrogatory answers, such as the specific Dungeons and Dragons hammers referenced, the lion/fish photograph, the HR Giger images, etc.). However, you did not respond to this portion of my message. Please confirm when we will get these documents and that Chapterhouse stands on its current interrogatory responses in the sense described above.

I also remind you, as noted in my August 5 letter, that although Chapterhouse belatedly made available for our initial inspection a vast quantity of original Games Workshop materials in Chapterhouse's possession, it is essential that Chapterhouse now identify which of those documents or things it relied upon as inspiration for the accused works and that it actually produce copies of the same – all as required by Interrogatory 2 and Document Request 9. This also includes any and all artist's sketches, mock-ups, notations made by Chapterhouse or its independent designers on or in original Games Workshop materials and so forth as required by Document Request 10. You have not objected to producing theses things but have simply failed to do so.

<u>Interrogatory No. 5</u>. As I explained in my July 28 letter, what we expect your client needs to explain in response to this interrogatory is how it selects items from the WARHAMMER universe on which to develop its products. There is nothing vague about that. For instance, it may be based on customer requests or it may be based on some form of independent review by Chapterhouse of Games Workshop's catalogue. Likewise, if Chapterhouse has any other method of product development, this is its opportunity to explain what that is.

<u>Interrogatory No. 8.</u> You don't dispute that you understand what this interrogatory seeks (as explained in my July 28 letter). If your client wants to stand on the on its current answer that the actual <u>intended</u> meaning of and <u>actual</u> inspiration for the name "Chapterhouse" is not the Chapters of the Space Marines, but rather a monastic meeting house or Frank Herbert's "Dune" novel, it should clarify its answer. Contrary to your email, Chapterhouse's actual answer does not say that these were the actual inspiration for the name; rather, as it stands, the answer merely refers to these two items as other hypothetical meanings.

■FOLEY
FOLEY & LARDNER LLP

J. Caleb Donaldson, Esq.
September 9, 2011
Page 3

Interrogatory No. 11. We note that Chapterhouse has simply refused to identify the derivations of the product names and designations used for its accused works and refuses to explain any of its boilerplate objections raised.

Interrogatory No. 12. Although you agree to produce the documents concerning instances in which customers have referred to Games Workshop or its WARHAMMER games (including instances of possible confusion), please let us know when Chapterhouse will deliver the documents to us. The documents are months overdue.

Interrogatory No. 13. We note that Chapterhouse simply refuses to identify any facts on which it relied in asserting its 23 boilerplate affirmative defenses, notwithstanding the clarification in my July 28 letter that this was not meant to preclude identification of other facts or theories later in discovery, if that is when you learn such facts, but rather, only to understand if Chapterhouse in fact had any basis for asserting any of its affirmative defenses. Based on its current answers, we must conclude it had none (which would raise potentially serious questions under Rule 11).

Document Requests 3, 4. Because your client thus far has failed to produce any documents (other than its web pages and a short sales summary), it is not in a very good position to say that plaintiff's request for documents concerning Games Workshop, WARHAMMER or WARHAMMER 40,000 are duplicative of other requests. This is also a new ground for refusing production, the prior objection being that the documents were outside the scope of permissible discovery. Neither excuse justifies the failure to produce any documents at all.

Document Request 10. As noted above, we are awaiting artist's sketches, mock-ups, notations made by Chapterhouse or its independent designers on or in original Games Workshop materials and so forth demonstrating the genesis of the creation of each of the accused products.

Document Request 15. Chapterhouse has now produced a sales summary, but judging from your email is now raising a new objection that it does not have to identify sales volumes in specific venues, such as eBay (even though you don't dispute that it has such information). As I previously explained in my July 28 letter, where and how the products are sold can not possibly be privileged and channels of trade information is directly relevant to Games Workshop's trademark and unfair competition claims. It is one of the express factors in the likelihood of confusion test.

Document Request 20. You confirm your client's refusal to produce documents concerning the changes to its website – including materials simply documenting the public revisions – on grounds of attorney client privilege, notwithstanding that certain of these changes (in response to its receipt on December 22, 2010 of notice of the complaint) were made before it had even engaged any counsel. We would prefer not to move to compel, but minimally need to

NYC_1219063.1



FOLEY & LARDNER LLP

J. Caleb Donaldson, Esq.
September 9, 2011
Page 4

see a privilege log bearing on the issue. We can discuss broader issues of privilege, but please let us know when these specific entries can be produced.

Document Request 21. You again concede that Chapterhouse does have metrics reports concerning visits to its website, but refuse to produce such information on grounds of relevance. The very fact that you also initially objected on grounds of attorney-client privilege confirms that you as counsel considered these reports to be relevant to the defense of the case, and it can not realistically be disputed that a profile of visitors to the site is directly relevant to assessing the trademark and unfair competition claims.

Document Request 25. Your email seems to confirm that Chapterhouse does have documents concerning consumer perceptions of Chapterhouse or its products. You don't dispute that these are highly relevant. I do not know what other objections your client has to producing these materials, and your message offers no insight – just further obstruction without communication.

Document Request 27. Now that you have agreed to produce the documents on which Chapterhouse relied in asserting its 23 boilerplate affirmative defenses, please let us know precisely when we can expect receipt.

Pending your response to this letter, we think it makes sense to defer briefly the noticed 30(b)(6) deposition of Chapterhouse's document custodian, but if we do not receive a meaningful and prompt response, we will want to proceed with the deposition during the week of the 19th. Please also know when you contemplate getting us either a full or partial privilege log. It may make sense to make a coordinated exchange, but candidly, I am not aware of any privileged documents that have been identified by Games Workshop that are being withheld, and do not believe you have identified any categories of requests where this is an issue.

Once we have your response, if any, to this letter (and my separate letter today regarding answering Chapterhouse's questions about Games Workshop's discovery responses), we can then best assess how to raise any remaining issues with the Magistrate Judge Gilbert.

Very truly yours,

Jonathan E. Moskin

JEM:se

cc.:    Jennifer A. Golinveaux, Esq.
        Scott Kaspar, Esq.

NYC_1219063.1

# ≡FOLEY

**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3572
jmoskin@foley.com EMAIL

CLIENT/MATTER NUMBER
099251-0101

November 23, 2011

**VIA E-MAIL**

Jennifer A. Golinveaux, Esq.
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Re: <u>Games Workshop Limited v. Chapterhouse Studios LLC</u>

Dear Jennifer:

Following up on our exchange of emails yesterday, I call your attention to the fact that we have <u>not</u> received responses to my letters of July 28, August 5 and September 9. We also need to schedule a date to depose Chapterhouse's document custodian. In addition, we note the following issues:

Chapterhouse refused to answer Games Workshop's Interrogatory No. 14, requiring it to identity of any third parties fearing reprisal for carrying Chapterhouse products. As you know, we requested such information because that alleged fear formed a key basis for Chapterhouse's motion for a protective order to prevent disclosure to Games Workshop of the identities of its allegedly independent designers and manufacturers..

Regarding its independent creation defense, Chapterhouse refused to answer any of Games Workshop's Requests For Admission (which we served only because Chapterhouse had refused to produce meaningful documents or information on this subject in response to earlier discovery requests, including Interrogatories Nos. 1 2, and 7 and requests for production 2, 9 and 10). Because Chapterhouse did not admit any of the statements in Games Workshop's requests for admission, it was also required to answer Interrogatory No 15, seeking identification of any third party works it alleges it relied on in creating the accused works, yet it refused to do so.

We hope we can resolve these issues before November 30.

Very truly yours,

Jonathan E. Moskin

JEM:se

cc.: Scott Kaspar, Esq.

| | | | | |
|---|---|---|---|---|
| BOSTON | JACKSONVILLE | MILWAUKEE | SAN DIEGO | SILICON VALLEY |
| BRUSSELS | LOS ANGELES | NEW YORK | SAN DIEGO/DEL MAR | TALLAHASSEE |
| CHICAGO | MADISON | ORLANDO | SAN FRANCISCO | TAMPA |
| DETROIT | MIAMI | SACRAMENTO | SHANGHAI | TOKYO |
| | | | | WASHINGTON, D.C. |

4834-6682-1902.1