IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC and | ) | |
| JON PAULSON d/b/a PAULSON GAMES, | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S MOTION TO
COMPEL ANSWERS TO INTERROGATORIES AND DOCUMENT REQUESTS**

I.  **Introduction**

Defendant Chapterhouse Studios LLC ("Chapterhouse") files this motion to compel seeking basic categories of discovery concerning ownership, protectability and scope of Plaintiff's alleged copyrights and trademarks, and Plaintiff's alleged damages, which Plaintiff refuses to provide.

Plaintiff is the master of its case and it has alleged infringement of scores of vaguely specified copyrights and trademarks. It should not now be allowed to avoid its discovery obligations by complaining that any discovery into the ownership and scope of those copyrights and trademarks is too burdensome, or that it should get a pass on having to establish those most basic elements of its case (its most frequent objection to the discovery at issue).

Plaintiff, for example, takes the position that Chapterhouse should simply rely on its assertions that Plaintiff owns all of the copyrights at issue, and that they were all created by Plaintiff's employees. Chapterhouse is entitled to test those unsupported claims through discovery.

1

Chapterhouse respectfully requests an order granting this motion and requiring Plaintiff to respond to the categories of discovery summarized in Section III below.[1]

## II.  Local Rule 37.2 Statement

For months, Plaintiff has refused to respond to the vast majority of Chapterhouse's discovery requests, failed to produce documents it agreed to produce, and refused Chapterhouse's attempts to meet and confer to resolve these issues. Kearney Decl. ¶¶ 3-5 and Exs. 17-18. After the parties filed their Joint Case Management Statement (Dkt. No. 115), Chapterhouse renewed its efforts to reach out to Plaintiff in an effort to resolve outstanding discovery issues without the need for Court intervention. Kearney Decl. ¶ 6-8 and Exs. 19-21(relevant correspondence summarizing the outstanding discovery issues). Plaintiff rebuffed those efforts and refused even to speak with Defendant about the outstanding issues until yesterday, the day before Defendant was required to file this motion.

On November 29, the day before the deadline for filing this motion, Plaintiff finally agreed to meet and confer. Kearney Decl. ¶ 9-11, Ex. 22 (the email Chapterhouse sent after the parties had met and conferred), Ex. 23 (Plaintiff's response). Despite Chapterhouse's good faith attempt to resolve differences in hours of telephone conversations, the parties were unable to reach agreement on the following issues.

## III.  ARGUMENT

The Federal Rules of Civil Procedure broadly permit parties in litigation to obtain discovery "'regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Bond v. Uteras*, 585 F.3d 1061, 1067 (7th Cir. 2009) (quoting Fed. R. Civ. P. 26(b)(1)); *see also Johnson v. Jung*, 242 F.R.D. 481, 482 (N.D. Ill. 2007) (noting that "the Federal Rules of Civil Procedure provide for liberal discovery"). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

---

[1] All relevant discovery requests and responses are attached as Exhibits 1 – 16 to the Declaration of Thomas Kearney (Kearney Decl.). *See* Kearney Decl. ¶ 1 and Exs. 1-16.

2

Plaintiff refuses to produce the following highly relevant categories of discovery.

**A. Information about the Authors of Plaintiff's Alleged Works Sufficient to Establish Ownership of Copyright.**

| Request at Issue | Summary of discovery sought |
|---|---|
| Rogs Nos. 1-2 | Identification of each allegedly infringed work including the author and date of creation |
| Rog No. 5 | Author of or contributor to each alleged work; nature of contribution; time and place of creation |
| Rog No. 17 | Title, type of work, and author of each alleged work |
| RFP No.2 | Documents concerning design, creation, or authorship of alleged works |
| RFP No. 3 | Employment agreements with authors of alleged works during relevant times |
| RFP No. 35 | Transfer of title of copyrights from author to Plaintiff |

These requests seek basic information about the authors of Plaintiff's alleged works, such as their identities, "the nature of each such person's contribution . . . the period of time during which each such person was engaged in such authorship . . . [and] the place or places where such authorship, creation, or design was undertaken."[2] This discovery is directly relevant to whether Plaintiff in fact owns all of the alleged copyrights and the scope of its copyrights. Although Plaintiff has made the unsubstantiated claim that all of its works were created by employees in the course of their employment, its submission policies and the credits pages for its books and magazines indicate that at least some of the works at issue were likely created by fans, freelancers, or independent contractors.[3] Moreover, as is standard in the industry, most of the

---

[2] Kearney Decl. Ex. 3 (Interrogatory No. 5).
[3] *See, e.g.*, Kearney Decl. ¶ 12 and Ex. 24 (comprising credits page from one of GW's books thanking "[h]obbyists who [ILLEGIBLE] models for this catalogue," and a page from GW's

3

novels published under GW's "Black Library" imprint are written not by GW employees but by freelance writers.[4]  To the extent its alleged works were authored by freelance writers or artists, or independent contractors, Plaintiff cannot show a chain of title giving it ownership of those works, and its copyright claims fail.

Despite a Court order months ago requiring it to respond to Interrogatories 1 and 2 (July 7, 2011 Minute Order, Dkt. No. 69), Plaintiff has still not provided author information in response to those Interrogatories.  Ironically, Plaintiff objected to subsequent Interrogatories 5 and 17, which specifically asked for identification of the natural person who created each allegedly infringed work, by claiming that they were "needlessly cumulative and repetitive of Chapterhouse's prior discovery requests, including Interrogatory No. 1"[5] despite the fact that it has refused to provide this information in response to Interrogatory No. 1.

Plaintiff must prove its ownership of the copyrights at issue as part of its *prima facie* case.  Because Plaintiff has conceded that it has only a single document comprising chain of title for any of its alleged works,[6] and has also admitted that the only U.S. copyright registration it has relevant to the alleged works is for a nearly 1000-page catalog that contains only some of the works at issue,[7] it will not be entitled to any presumption of ownership typically afforded by

---

"White Dwarf" magazine indicating that GW accepts and publishes submissions from non-employees).

[4] Author information available through GW's publishing website at www.blacklibrary.com establishes that many if not most authors of GW's books are not GW employees.  The Black Library website confirms, for example, that the author of Black Library's "Soul Drinkers" novel referenced in Plaintiff's Exhibit A (entries 23-24) is a "freelance writer" and not a GW employee.  Kearney Decl. ¶ 13 and Ex. 25 (attaching screenshot of http://www.blacklibrary.com/Authors/Ben-Counter.html).

[5] Kearney Decl. Ex. 1 (Interrogatory No. 1).

[6] Plaintiff's response to RFP 4 stated that "Games Workshop is not aware of any documents responsive to this request."  Kearney Decl. Ex 10.  Plaintiff now claims that a single document exists, but has yet to produce it.  Kearney Decl. Ex. 23 (Nov. 30, 2011 email from Plaintiff's counsel stating that Plaintiff "will produce the one chain of title document of which we are aware").

[7] Plaintiff's Response to RFA 11 stated that "Games Workshop admits that the only work thus far identified by it in this action that is registered in the United States is Registration No. TX000654l286, 'Games Workshop Complete Catalog & Hobby Reference 2006-2007.' "

such documents.[8] Under governing U.K. law, for Plaintiff to show that it owns the copyrights it claims, it must show for each work either (1) that the natural person who created the work was an employee working in the course and scope of his employment, or (2) that Plaintiff has a written, signed assignment of copyright from the natural person who created the work.[9] Information about whether the authors of Plaintiff's alleged works were Plaintiff's employees during relevant times is directly relevant to whether Plaintiff in fact owns the alleged copyrights. Information about the authors will also allow Defendant to depose certain of those individuals regarding whether third party elements that cannot be claimed by Plaintiff were incorporated in the works.

Plaintiff has refused to provide this basic information and instead insists that Chapterhouse must take Plaintiff's word that "all of the works in issue have been produced by employees within the scope of their employment."[10] Chapterhouse is entitled to test Plaintiff's claims of ownership. Information about authors and dates of creation is also relevant to permit Chapterhouse to probe the scope of Plaintiff's alleged copyrights, for example by investigating the sources consulted by the authors of the alleged works. The Court should order Plaintiff to produce responsive documents.

---

[8] 17 U.S.C. § 410(c); *Morris v. Business Concepts, Inc.*, 283 F.3d 502, 506 (2d Cir. 2002) ("unless the copyright owner of a collective work also owns all the rights in a constituent part, a collective work registration will not extend to a constituent part").

[9] Copyright Designs & Patents Act, 1988, c. 48, § 11 ("First ownership of copyright"); *id.* § 99(3) (providing that "[a]n assignment of copyright is not effective unless it is in writing signed by or on behalf of the assignor").

[10] *See* Joint Case Management Statement, Dkt. No. 115, at 7. In response to requests for admission regarding particular individuals, Plaintiff conceded it was unable to determine whether those individuals had created any of the works at issue. Plaintiff's Responses to RFA Nos. 343, 348, 353, 358, 363, 368. In at least one case Plaintiff was unable to determine whether the individual was *ever* its employee. *See id.* (Pl.'s Response to RFA 365).

B. **Exemplars of Plaintiff's Alleged Works.**

| Request at Issue | Summary of Discovery Sought |
|---|---|
| RFP No. 1 | One exemplar of each of Plaintiff's works identified in Plaintiff's Exhibit A |

Defendant served early discovery seeking identification of Plaintiff's allegedly infringed works and exemplars of the works for inspection. Plaintiff responded to Chapterhouse's Interrogatory No. 1 with a chart identifying its claimed infringed works,[11] but refused to produce exemplars of many of the works identified in response to Chapterhouse's companion document request. Chapterhouse moved to compel such exemplars (Dkt. No. 61), and the Court granted the motion on July 6, 2011 (Minute Order, Dkt. No. 66). Nearly five months later, Plaintiff still refuses to produce the documents and things that were the subject of the Court's July 6 Order. Plaintiff has failed to produce many of the illustrations and printed works it alleges, and some of those it has produced are partially illegible; it has produced others only as black-and-white scans of color artwork; and it has not produced any of the 30 sculptural works it identified, instead producing a number of low-resolution screenshots of pages from its website, many in black and white, and many bearing no apparent relationship to any of the sculptural works at issue.[12] Defendant believes that Plaintiff has delayed providing this basic discovery because a side-by-side comparison will make clear that none of Defendant's products are at all similar to Plaintiff's.

---

[11] Kearney Decl. Ex. 2 (Pl.'s Response to Interrogatory Nos. 1 and 2) includes an Exhibit ("Plaintiff's Exhibit A") listing Plaintiff's allegedly infringed works.

[12] Plaintiff's repeated contention that it has produced the requested sculptural works is patently false. *See, e.g.,* Joint Rule 26(f)(3) Discovery Plan & Proposed Case Management Deadlines at 7 (Dkt. No. 115). The only purported works Plaintiff has produced are scans of printed books, and screenshots from its website. Plaintiff's screenshots would be grossly inadequate even as demonstrative exhibits (which they are not): they are partial, out of context, and lacking in significant detail. Plaintiff's repeated contentions that Chapterhouse has "admitted that it already has all of Games Workshops [sic] works" and "does admit it has access to all of the works" (*id.*) are also false.

To explain its refusal to produce exemplars of its works, Plaintiff claims that "just as it would not be necessary for Walt Disney to produce every single Mickey Mouse work to prove infringement of the character, it should not be necessary for Games Workshop to produce exemplars of all of its works."[13] That is not at all the same. Disney would of course be required to produce copies of each work it claims to be infringed as part of a copyright infringement suit. Here Plaintiff does not alleged infringement of a single unified work (analogous to the "Mickey Mouse" character), but rather of hundreds of disparate works. If Disney alleged infringement of a particular Mickey Mouse product, Disney would of course have to produce an exemplar of the product if defendant requested it, just as Plaintiff must produce exemplars of the works it has alleged. Plaintiff's Mickey Mouse argument is unpersuasive.

A determination of substantial similarity—without which there is, and can be, no copyright infringement—requires a side-by-side comparison of the protectable elements of the works. *Bryant v. Gordon*, 483 F. Supp. 2d 605, 617 (N.D. Ill. 2007) (Kennelly, J.) (citing *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 506 n.1, 510 (7th Cir. 1994)). This is impossible without actual examples of the works themselves. Plaintiff continues to refuse to provide them. The Court should order Plaintiff to produce exemplars of the works identified in Plaintiff's Exhibit A; in the alternative, or alternatively, Plaintiff should be precluded from relying on documents or things other than those it has produced to date.

C. **Information about the Sources of Plaintiff's Alleged Works.**

| Requests at Issue | Summary of Discovery Sought |
|---|---|
| Rog No. 9 | Sources consulted, used, reviewed or relied on in creating alleged works |
| RFP No. 2 | Documents concerning design, creation, authorship of alleged works |

---

[13] Kearney Decl. Ex. 23.

| RFP No. 36 | Instructions, guidelines, advice given to creators of Warhammer 40,000 works |

Information about the sources of Plaintiff's alleged works is relevant to the proper scope of Plaintiff's copyrights. As a threshold matter, it is Plaintiff's burden to show that its alleged copyrights are valid and protectable. Each of Plaintiff's alleged works draws from a vast reservoir of pre-existing science fiction and fantasy ideas, and public domain elements taken from mythology, heraldry, and religious iconography. To name just a few examples, Plaintiff's former creative director has said publicly that Plaintiff's Tau race is simply a combination of Star Trek's Klingons and Japanese anime style; the Tyranid creatures GW claims copyright in are clearly based on the works of Swiss artist H.R Giger, particularly the *Alien* movies; and the eight-pointed Chaos Star was designed in the early 1970s by science-fiction author Michael Moorcock. Many of Plaintiff's other designs come straight from nature, ancient art, or other unprotectable realms. Even where its works contain original expression, to the extent they are based on pre-existing works, its copyrights will be "thin" and protected only against exact or near-exact copying—not present here. Plaintiff also alleges copyrights for a number of extremely common symbols in the public domain, such as "an arrow . . . the use of Roman numerals, [and] inverted 'V' icons. . . ."[14] Use of such common elements cannot, as a matter of law, infringe Plaintiff's alleged copyrights, which protect only Plaintiff's limited original contributions to these pre-existing works. *See FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334, 1348 (N.D. Ill. 1994) ("copyright protection . . . is not extended to the preexisting material

---

[14] First Amended Complaint ¶ 30.b. Plaintiff's so-called "inverted 'V' icon" is a simple chevron, one of the oldest and best-known heraldic symbols. These simple, public domain design elements do not meet the minimal standards of original, creative authorship required for copyright protection. *See* U.S. Copyright Office, Copyright Compendium II § 503.02(a) ("Copyrightability depends upon the presence of creative expression in a work. . . . Thus, registration cannot be based upon the simplicity of standard ornamentation such as chevron stripes. . . . Similarly, it is not possible to copyright . . . a standard symbol such as an arrow. . . .").

employed in the work"). To the extent Plaintiff claims Chapterhouse's products infringe such preexisting material, its claims will fail.

Ironically, Plaintiff refuses to provide the requested discovery although it has requested the same information about the sources of Chapterhouse's products — information Chapterhouse has produced. Chapterhouse asks that the Court order Plaintiff to do the same.

D. **Information about First Publication of Plaintiff's Alleged Works.**

| Requests at Issue | Summary of Discovery Sought |
|---|---|
| Rog No. 10 | Distributors and channels of distribution of alleged works |
| Rog No. 16 | Identify first publication of alleged works |

If Plaintiff's works were first offered for sale in the U.S. at the same time they were offered elsewhere, U.S. copyright registration is a prerequisite to bringing its claims. Because Plaintiff admits it has only one U.S. copyright registration relevant to this case, which is for a thousand page catalog, it may lack standing for many of its copyright claims. Plaintiff claims that "[n]one of [its alleged works] are United States works for which registration is required," but merely makes the conclusory statement that its works were "created . . . in England."[15] But whether a work is a U.S. work for purposes of copyright law is based on where it was first published, not where it was created. 17 U.S.C. § 101. A work that was first sold or offered for sale simultaneously in the U.S. and a foreign country — for instance, by being offered for sale over the internet — is considered a U.S. work. *Id.; Kernal Records Oy v. Mosley*, --- F. Supp. 2d ---, 2011 WL 2223422 (S.D. Fla. June 07, 2011) (finding work first published on the internet is a United States work for purposes of the Copyright Act). Thus if any of Plaintiff's alleged works were first sold or offered for sale over the internet, Plaintiff is precluded by statute from bringing a copyright claim for those works without a U.S. copyright registration. 17 U.S.C.

---

[15] First Amended Complaint ¶¶ 14, 12.

9

§ 411(a). Plaintiff concedes that it has only a single copyright registration for any of the works at issue, and that registration is for a catalogue. But a copyright registration for a collective work such as a catalogue does not automatically extend the benefits of registration to works included in the catalogue: indeed, "unless the copyright owner of a collective work also owns all the rights in a constituent part, a collective work registration will not extend to a constituent part." *Morris v. Business Concepts, Inc.*, 283 F.3d 502, 506 (2d Cir. 2002). Plaintiff's single registration for a catalogue thus will not save its copyright claims if it cannot show that it also owns the constituent works contained therein.

Plaintiff has refused to respond to Chapterhouse's discovery requests relating to first publication, and has refused to provide information about when and where the works were first created. Nor do the documents Plaintiff has produced contain information about their first publication: none of the printed books Plaintiff has produced appear to be first editions; even if they were, they would only very approximate information about the time of their publication, and none about the place of their publication. And, as noted above, Plaintiff has also failed to produce exemplars of many of the works at issue.

E. **Information about Plaintiff's Alleged Marks Sufficient to Establish Their Validity.**

| Requests at Issue | Summary of Discovery Sought |
|---|---|
| Rog No. 6 | Sources relied on re trademarks and names |
| RFP No. 7 | Exemplar of use in U.S. commerce |
| RFP No. 8 | Documents concerning trademark research |
| RFP No. 11 | Specimens of first use in U.S. commerce |
| RFP No. 12 | Use of marks by others |
| RFP No. 13 | Efforts to enforce marks |
| RFP No. 16 | Terms of distributor agreements |

10

| Requests at Issue | Summary of Discovery Sought |
|---|---|
| RFP No. 20 | Policies regarding use of copyrights and trademarks by others |
| RFP No. 31 | Documents concerning alleged false and misleading statements by Chapterhouse |
| RFP No. 32 | Documents concerning alleged unfair and deceptive business practices of Chapterhouse |
| RFP No. 33 | Documents concerning alleged false and deceptive representations by Chapterhouse |

To make out a *prima facie* case of trademark infringement, Plaintiff must demonstrate that its alleged marks are valid and protectable under the Lanham Act. To do so, it must show as a threshold matter that they were, and continue to be, used in commerce as source identifiers in the U.S. Plaintiff has refused to respond to discovery requests concerning its marks, although it is evident (and Plaintiff has conceded) that at least some of the marks it claims are not used in U.S. commerce.[16] Plaintiff has refused to provide specimens of use in U.S. commerce for many claimed marks, or of first use in U.S. commerce for any claimed mark; refused to produce documents relating to third party use of those marks; and refused to produce any documents relating to its efforts to enforce them.

---

[16] *See, e.g.,* Plaintiff's Response to RFA 210 [admitting that the only works Plaintiff sells under the name "Soul Drinker" are the novels referred to in Plaintiff's Exhibit A]; Pl.'s Resp. to RFA 232 [admitting that Plaintiff does not manufacture or sell a "tervigon" figure].

11

F. **Documents Concerning Defendants and Their Products at Issue So That Chapterhouse Can Understand and Investigate the Claims Against It.**

| Requests at Issue | Summary of Discovery Sought |
|---|---|
| RFP No. 34 | Audio, video, and photographs Plaintiff made at Aug. 1, 2011 document inspection |
| RFP No. 38 | Correspondence with Chapterhouse's designers, manufacturers, contractors, employees, officers, or directors |
| RFP No. 42 | Documents concerning Paulson and Paulson's works or products |

Plaintiff refuses on specious grounds to produce key classes of documents relating to Defendants and their works, which are necessary to enable Chapterhouse to investigate and defend itself against Plaintiff's claims. On August 1, 2011, Plaintiff's agent photographed and videotaped documents and things responsive to Plaintiff's Request for Production No. 1. Because Plaintiff's photographs and videotapes will likely be used as evidence, Chapterhouse seeks, and is entitled to receive, copies, but Plaintiff refuses to produce them, objecting based on the false premise that Defendant seeks copies of Chapterhouse's own documents, which it self-evidently does not. Plaintiff also states, bizarrely, that it "does not believe that it is one party's burden to assemble and produce documents for the other." Plaintiff has also refused to produce its correspondence with Chapterhouse's designers, manufacturers, and contractors, stating that it is "unable to answer this request" because Chapterhouse's confidentiality designations prevent Plaintiff's counsel from sharing those names with its client. But Plaintiff's counsel need not share the names to run keyword searches for email of relevant custodians, and there is no basis for Plaintiff's refusal to produce the requested documents. Plaintiff has also refused to produce

12

Chapterhouse's request for "[a]ll documents concerning Paulson or any works or products created, marketed, or sold by Paulson," instead agreeing to produce only documents from "before this litigation." Documents from after the inception of this litigation are equally relevant, if not more so, and Plaintiff articulates no grounds for refusing to produce them.

The Court should order Plaintiff to produce all relevant documents, including privilege logs, so that Chapterhouse can adequately investigate Plaintiff's claims.

### G. Information about Plaintiff's Alleged Damages So That Chapterhouse Can Properly Evaluate the Claims Against It.

| Requests at Issue | Summary of Discovery Sought |
| --- | --- |
| Rog No. 13 | Description of damages allegedly suffered |
| Rog No. 14 | Revenues / profits from allegedly infringed works |
| RFP No. 23 | Plans to market the alleged works or derivative works thereof |
| RFP No. 24 | Documents evidencing harm |
| RFP Nos. 25, 26, 27 | Documents to identify profits and revenues from, and expenses related to, alleged works |

Plaintiff alleges it has been harmed but refuses to respond to discovery going to the nature and extent (if any) of that harm. Rather than produce the information requested, Plaintiff has to date provided only 13 pages summarizing aggregate financial information for extremely broad product categories such as "Warhammer Fantasy Battles," "Warhammer 40K," and "Lord of the Rings," and for extremely broad corporate divisions such as "Warhammer World," "Forge World," "Black Library," etc. Such broad-brush information is not responsive to Chapterhouse's requests. Chapterhouse is entitled to information about the alleged harm to Plaintiff and Plaintiff's alleged damages with respect to the works at issue, so that it can properly evaluate the

13

claims, potential liability, and the likelihood of settlement.[17] Chapterhouse also seeks discovery concerning Plaintiff's allegation that it has been harmed because its "ability to develop and sell its own derivative works" has somehow been "preempt[ed]" by Chapterhouse's products.[18]

Plaintiff does not dispute the relevance of Chapterhouse's requests going to damages, but nevertheless attempts to evade its discovery obligations by characterizing Chapterhouse's requests as "contention interrogatories" or "contention requests" and stating vaguely that it is "too early in the case" for Plaintiff to provide the requested information.[19] Plaintiff also improperly attempts to condition responses on Chapterhouse's providing responses to Plaintiff's discovery requests.[20]

## IV. CONCLUSION

Plaintiff has refused to provide discovery that is directly relevant to key issues in this case, such as ownership of the alleged copyrights, the scope of Plaintiff's rights in the alleged copyrights and trademarks, and whether Plaintiff has suffered any damage. Defendant respectfully requests that the Court order Plaintiff to produce documents and provide information in response to each of the above referenced discovery requests.

---

[17] Plaintiff will likely seek actual damages because it is likely ineligible for statutory damages. Plaintiff concededly has only a single U.S. registration, for a catalogue, and copyright claims based on unregistered works are ineligible for statutory damages. 17 U.S.C. § 412(b).
[18] First Amended Complaint at ¶ 39.
[19] *See, e.g.*, Kearney Decl. Ex. 10 (Pl.'s Responses to RFPs Nos. 24 [refusing to respond]; 25-27 [refusing to respond unless Plaintiff "elects to pursue a claim" for lost profits].
[20] *See* Kearney Decl. Ex. 10 (Pl.'s Response to RFP No. 24 [refusing to respond on the basis that "this is a contention request best deferred to the close of discovery, including receipt of discovery from Chapterhouse regarding its sales"]).

Dated: November 30, 2011    Respectfully submitted,

                                              CHAPTERHOUSE STUDIOS LLC

                                              By:    /s/ Thomas J. Kearney
                                                        Jennifer Golinveaux (CA Bar No. 203056)
                                                        J. Caleb Donaldson (CA Bar No. 257271)
                                                        Thomas J. Kearney (CA Bar No. 267087)
                                                        WINSTON & STRAWN LLP
                                                        101 California Street
                                                        San Francisco, CA 94111-5802
                                                        Phone: (415) 591-1000
                                                        Fax: (415) 591-1400
                                                        jgolinveaux@winston.com
                                                        jcdonaldson@winston.com
                                                        tkearney@winston.com

                                         Eric Mersmann (IL Bar No. 6286859)
                                                        WINSTON & STRAWN LLP
                                                        35 West Wacker Drive
                                                        Chicago, IL 60601-1695
                                                        Phone: (312) 558-5600
                                                        Fax: (312) 558-5700
                                                        emersmann@winston.com

                              *Attorneys for defendant Chapterhouse Studios LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2011, I electronically filed the foregoing

>DEFENDANT CHAPTERHOUSE STUDIOS LLC'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND DOCUMENT REQUESTS
>
>DECLARATION OF THOMAS J. KEARNEY IN SUPPORT OF DEFENDANT CHAPTERHOUSE STUDIOS LLC'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND DOCUMENT REQUESTS

with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D), pursuant to Local Rule 5.9:

| | |
|---|---|
| Scott R. Kaspar<br>Aaron J. Weinzierl<br>FOLEY & LARDNER LLP<br>321 North Clark Street, Suite 2800<br>Chicago, IL 60654-5313<br>Telephone: 312.832.4500<br>Facsimile: 312.832.4700<br>Email: skaspar@foley.com<br>aweinzierl@foley.com | Jonathan E. Moskin<br>FOLEY & LARDNER LLP<br>90 Park Avenue<br>New York, New York 10016<br>Telephone: (212) 682-7474<br>Facsimile: (212) 687-3229<br>Email: jmoskin@foley.com |

Ronald H. Spuhler
Ronald A. DiCerbo
Thomas J. Campbell Jr.
MCANDREWS, HELD & MALLOY LTD.
500 W. Madison Street – 34th Floor
Chicago, IL 60061
Telephone: (312) 775-8000
Facsimile: (312) 775-8100
Email: rspuhler@mhmlaw.com
rdicerbo@mhmlaw.com
tcampbell@mcandrews-ip.com


Date: November 30, 2011           /s/ Thomas J. Kearney
                                  Thomas Kearney
                                  One of the attorneys for Chapterhouse Studios LLC

SF:316322.1