### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| GAMES WORKSHOP LIMITED, <br><br>                             Plaintiff, <br><br>          v. <br><br> CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES <br><br><br>                       Defendants. | Civil Action No. 1:10-cv-8103 <br><br> Hon. Matthew F. Kennelly <br> Hon. Jeffrey T. Gilbert |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

Plaintiff Games Workshop Limited ("Games Workshop"), by and through its undersigned counsel, respectfully submits this Memorandum in opposition to the Motion to Compel of Defendant Chapterhouse Studios LLC ("Chapterhouse").

### INTRODUCTION

1. As with Defendant's two prior discovery motions, both of which were made in disregard of Local Rule 37.2 and the parties prior agreements during a meet and confer (in June), the present motion is largely premised on false characterizations of the record; new discovery issues never before raised with Games Workshop and the revisiting of matters already resolved. Indeed, as shown below, Games Workshop believes it has complied with all of Chapterhouse's discovery requests except in instances where the requests are sweepingly overbroad and Chapterhouse has declined Games Workshop's repeated entreaties to narrow the requests to matters (if any) actually in dispute.  However, presuming the Court is less interested in the seemingly petty disagreements among counsel, Games Workshop first addresses the substance of

Chapterhouse's motion and only turns to the false personal allegations at the end (¶¶ 21-22, *infra*).

## DISCOVERY REQUESTS

A. <u>Authorship Information</u>.

2.      As set forth in Games Workshop's response to Interrogatory No. 5 (concerning authorship) and in the accompanying declaration of Gillian Stevenson, essentially all of the works at issue are created by Games Workshop employees acting within the scope of their employment, and the one exception raised by Chapterhouse's motion – a computer game, Dawn of War, made under license, and two novels in the Black Library series, "Soul Drinkers" and "Brothers of the Snake", written by freelance authors – are owned by Games Workshop pursuant to written agreements Games Workshop has produced (as it had confirmed to Chapterhouse before it filed this needless motion).  Moreover, Chapterhouse itself has admitted to the Court (including as set forth in the parties' November 16 joint status report) that, under British law, "[t]he author of a work is the first owner of any copyright in it," except that "[w]here a literary . . . or artistic work . . . is made by an employee in the course of his employment, his employer is the first owner of any copyright in the work subject to any agreement to the contrary." Copyright, Designs & Patents Act 1988 § 9(1) § 11.  Furthermore, Chapterhouse openly admits on its website that Games Workshop is indeed the owner of copyright in all of the subject works.[1]

---

[1] The disclaimer on Chapterhouse's website states:  "Adeptus Astartes, Battlefleet Gothic, Black Flame, Black Library, the Black Library logo, BL Publishing, Blood Angels, Bloodquest, Blood Bowl, the Blood Bowl logo, The Blood Bowl Spike Device, Cadian, Catachan, the Chaos device, Cityfight, the Chaos logo, Citadel, Citadel Device, City of the Damned, Codex, Daemonhunters, Dark Angels, Dark Eldar, Dark Future, the Double-Headed/Imperial Eagle device, 'Eavy Metal, Eldar, Eldar symbol devices, Epic, Eye of Terror, Fanatic, the Fanatic logo, the Fanatic II logo, Fire Warrior, Forge World, Games Workshop, Games Workshop logo, Genestealer, Golden Demon, Gorkamorka, Great Unclean One, the Hammer of Sigmar logo, Horned Rat logo, Inferno, Inquisitor, the Inquisitor logo, the Inquisitor device, Inquisitor:Conspiracies, Keeper of Secrets, Khemri, Khorne, Kroot, Lord of Change, Marauder, Mordheim, the Mordheim logo, Necromunda, Necromunda stencil logo, Necromunda Plate logo, Necron,

3.    Notwithstanding the above, Games Workshop has repeatedly advised Chapterhouse (including most recently during the parties' November 29 meet and confer) that if it has reason to question the authorship of any work in issue in the case, Games Workshop will be happy to address any such questions.  Chapterhouse indeed will have the opportunity to depose Games Workshop's witnesses on this subject within a matter of weeks, as Games Workshop has agreed to produce one or more witnesses to testify on this subject in response to Chapterhouse's 30(b)(6) deposition notice.

4.    As Games Workshop explained in an unanswered November 29 email message to Chapterhouse (Moskin Decl. Ex. D) (which Chapterhouse summarizes only in part in its motion while failing to address the substance of the point actually raised), if Disney were to sue for infringement of copyright in its Mickey Mouse cartoons, it is inconceivable that, *without any basis to suspect a defect in title*, it would be required to produce 50 years or more of employment records concerning all employees who worked on all of the works created over some such time span that happened to feature Mickey Mouse.  If, of course, an accused infringer could articulate some reason to challenge ownership of one or more specific works, there would be a basis to permit further inquiry, including employment contracts.  (Just so, as a result of internal inquiries made by Games Workshop itself during the course of discovery, Games Workshop recognized it needed to produce the agreements with the non-employee authors of the two Black Library novels and the Dawn of War computer game.)  Here, by contrast, defendant not only has refused

---

Nurgle, Ork, Ork skull devices, Sisters of Battle, Skaven, the Skaven symbol devices, Slaanesh, Space Hulk, Space Marine, Space Marine chapters, Space Marine chapter logos, Talisman, Tau, the Tau caste designations, Tomb Kings, Trio of Warriors, Twin Tailed Comet Logo, Tyranid, Tyrannid, Tzeentch, Ultramarines, Warhammer, Warhammer Historical, Warhammer Online, Warhammer 40k Device, Warhammer World logo, Warmaster, White Dwarf, the White Dwarf logo, and all associated marks, names, races, race insignia, characters, vehicles, locations, units, illustrations and images from the Blood Bowl game, the Warhammer world, the Talisaman world, and the Warhammer 40,000 universe *are either ®, TM and/or © Copyright Games Workshop Ltd 2000-2010, variably registered in the UK and other countries around the world. Used without permission. No challenge to their status intended.* All Rights Reserved to their respective owners."  (emphasis added).

to identify any specific works on which it relied to create its copies, which might help to limit the field of inquiry (instead admitting access to everything), but defendant has also been unable to articulate a specific question as to ownership of any of Games Workshop's works. Moreover, it openly admits that Games Workshop owns copyright in all of the works in issue. The questions it raises regarding authorship, regarding Games Workshop's relations with its employees, and the genesis of the original works in issue (discussed below and in the accompanying declaration of Gillian Stevenson) ) are simply mistaken. Lacking any specific basis to challenge ownership of any given works (and indeed admitting publicly on its website that Games Workshop owns copyright in all of its works) the demands appear to be made simply for abusive purposes to impose a needless burden on plaintiff.

5.    Regarding the specific questions Chapterhouse raises, Games workshop responds as follows:

Interrogatories 1 and 2:  On June 15, Games Workshop provided a narrative answer to Interrogatory No. 1 and produced a 16-page detailed analysis of the works it understands Chapterhouse has infringed. In response, Chapterhouse admits access to all of the works (Docket No. 60) and has never questioned the completeness of Games Workshop's initial claim chart. It does not do so now. Chapterhouse raised no issues as to the completeness of Games workshop's response to Interrogatory 2 in either its July 29 or November 17 letters (Def. Exs. 17, 19), and as set forth in Chapterhouse's own (self-serving) summary of the issues raised in the parties' November 29 meet and confer (Def. Ex. 22), and as confirmed in Games Workshop's responsive email (Def. Ex. 23) there were no issues raised as to Interrogatory 2, which, as best Games Workshop can tell is simply repetitive of Interrogatory 1. *See* 12/7/11 Declaration of Jonathan Moskin ("Moskin Decl.") ¶ 10, Exs. E-F. Chapterhouse has never explained how the two differ.

Interrogatories 5 and 17: As noted, as a matter of law, the author of each work in issue is Games Workshop itself. As set forth in the attached 12/7/11 Declaration of Gillian Stevenson ("Stevenson Decl.") (and as Chapterhouse repeatedly has been told) that

4

Games Workshop sometimes gives individual credits to members of its staff is simply an honorific reflecting status within the Games Workshop creative department. Stevenson Decl. ¶¶ 2-3. It does not reflect the actual role of any such individual on any given work. Games Workshop has produced copies of each work identified in its initial claim chart, and Chapterhouse does not dispute that, under Rule 33(d) those works identify the author, title and type of work. As set forth in Chapterhouse's own (self-serving) summary of the issues raised in the parties' meet and confer, there were no issues raised as to Interrogatory 5.[2]

Requests 2, 3 and 35. As confirmed in the parties meet and confer (and reflected in the confirmatory emails following the call) Games Workshop has already confirmed it has no objection to producing any documents pertaining to a transfer of title. (This includes the one computer game at issue, Dawn of War, and the two Black Library novels, "Soul Drinkers" and "Brother of the Snake" identified on Games Workshop's initial claim chart.) However, in almost all instances, there are no such documents because the works were created by employees within the scope of their employment. And had Chapterhouse first inquired before moving, Games Workshop could have confirmed (as set forth in the Declaration of Gillian Stevenson) that Games Workshop does not rely on any third party submissions, such as the photographs of fan-painted miniatures that appear in White Dwarf Magazine. Stevenson Decl. ¶¶ 4-6. Chapterhouse's argument (Brief at 3-4) is simply misplaced. If Chapterhouse has questions as to whether any specific work was created by employees within the scope of their employment or as to the originality of any of the works identified on the initial claim chart that Chapterhouse has had since June 15, Games Workshop has repeatedly confirmed that it will be happy to answer such questions and produce additional documents. However, Chapterhouse does not dispute that it would be extraordinarily overbroad (and ultimately without purpose) for Games Workshop to produce almost thirty-five years of documents concerning the creation of the entire Warhammer 40,000 universe (which is how its requests are framed). Chapterhouse's motion does not address Games Workshop's

---

[2] Regarding Interrogatory 5, which Chapterhouse does not dispute is simply repetitive of Interrogatory 1 in seeking authorship information, Games Workshop has answered the request in full to the best of its knowledge.

objection, and Chapterhouse has refused to narrow its requests to any matters that might actually be in issue.

B. Exemplars of Plaintiff's Work.

6. Chapterhouse's statement that Games Workshop has not produced exemplars of its works is false. As Chapterhouse acknowledges, Games Workshop, on June 15, produced a detailed claim chart identifying the works it believes Chapterhouse has infringed. Games Workshop has since produced exemplars of each of these works identified (Bates Nos. GW0000001-0000768, GW0000781-0002297, GW0002413-0002502). However, as the parties discussed in their meet and confer, Chapterhouse simply wants different specimens – at a needless burden to Games Workshop.[3] The specimens Games workshop has produced show the characters and designs in color, in the format from which Chapterhouse has quite plainly copied its designs (and which are also presented on Chapterhouse's website fully painted and adorned in the colors adopted by Games Workshop and with the character names created by Games Workshop). Moreover, given Chapterhouse's admission it has access to all of Games Workshop's products (Dkt. 60), the demand for different specimens represents a particularly needless burden. Again recalling the hypothetical above, just as Disney would not be required to produce every version of Mickey Mouse to prove copying of the character by a defendant that admits access to all of Disney's works, Games Workshop should not be required to produce additional exemplars without reason.

7. Notwithstanding that Games Workshop believes it has complied with Request 1, if it can find specimens that better reveal the elements of its original works it believes

---

[3] As best Games Workshop can tell, although Chapterhouse has not made this clear, what Chapterhouse seems to want are unpainted, unfinished plastic miniatures, which are sold as parts that need to be assembled. Obviously, those unpainted parts do not show all of the elements of the characters in issue (which are shown more completely in books and photographs). Nor do they show all of the elements that Chapterhouse is accused of copying and marketing to its customers by presenting them on its website fully painted and adorned in the colors adopted by Games Workshop and with the character names created by Games Workshop.

Chapterhouse has copied, it has every interest in producing them. Indeed, because Games Workshop has every interest in providing specimens that best reveal the elements of the characters it is seeking to protect, Chapterhouse's suggestion that plaintiff is somehow concealing such evidence is not easily understood.

    C.  <u>Information About Sources of Games Workshop's Works</u>

    8.    As set forth in the accompanying declaration of Gillian Stevenson, Games Workshop does not rely on any third party submissions in developing its works. As this Court noted in <u>Bryant</u> v. <u>Gordon</u>, 483 F. Supp. 2d 605, 616 (N.D. Ill. 2007), even access to public domain works does not necessarily give rise to an inference of lack of originality. Chapterhouse is evidently dissatisfied with the answers provided, but Games Workshop can not be compelled to produce what it does not possess. Moreover, as also shown in the Declaration of Gillian Stevenson (¶ 7), Chapterhouse's reliance on false hearsay reports of a disgruntled former employee that it evidently found posted on the internet (Def. Brief at 8) proves nothing as the employee was not even involved in creating the Tyranid characters the originality of which he purports to question. Chapterhouse is of course free to pursue discovery from this third-party, but given the falsity of the statement, Games Workshop can not produce documents or information that do not exist to substantiate his purported assertions. Likewise, Chapterhouse is simply mistaken in suggesting that Games Workshop's "Chaos Star" design (which is a registered copyright in the United States, Reg. No. VA 1-626-669) or Games Workshop's Tyranid race were copied from third parties. (Stevenson Decl. ¶ 7.) Once again, Games Workshop can not produce information that does not exist. Chapterhouse also misses the point that even if isolated individual elements of Games Workshop's characters or stories or game rules were used somewhere, that is irrelevant to the originality of the characters and stories and

game rules taken as a whole. See, e.g., Gaiman v. McFarlane, 360 F.3d 644, 660 (7th Cir. 2004) (even an unnamed "medieval" character, broadly limned *in context* is copyrightable). Similarly, Games Workshop does not purport to claim rights in the any given Roman numeral(s) in isolation. Rather, Roman numerals are simply incorporated as one of many features in certain Ultramarine units as part of their overall characters. See Boisson v. Banian, Ltd., 273 F.3d 268 (2d Cir. 2001) (alphabet quilt copyrightable where public domain letters presented in original fashion). Chapterhouse's own accused works use such Roman numerals, not in isolation, but as part of larger works identified by the Space Marines' names and other distinguishing features original to Games Workshop. Similarly, Chapterhouse's Tyranid products or Chaos Space Marine products always refer to the specific Games Workshop characters (by name) to make clear that defendant's source of reference is Warhammer 40,000, not to any third party works. The case cited by Chapterhouse, FASA Corp. v. Playmates Toys, Inc., 869 F. Supp. 1334, 1338 (N.D. Ill. 1994), thus is largely irrelevant because the defendant there independently created the toys in issue, whereas here, every single product made and sold by Chapterhouse is directly tied to the Games Workshop originals (including by use of Games Workshop's original character names) and Chapterhouse has produced no evidence of independent creation beyond a mere handful of instances when it sought to substitute copies of one isolated feature (namely, a fist, a lion, a griffon, a mantis and a raven) in works otherwise modeled directly on Games Workshop's originals.

9. As set forth in Chapterhouse's own (self-serving) summary of the issues raised in the parties' meet and confer (Moskin Decl. Ex. E), it never raised any issues regarding Games Workshop's responses to Interrogatory 9 or Document Requests 2 or 36[4] – except to note that it

---

[4] Interrogatory 9 and Document Request 2 seek all of Games Workshop's sources of inspiration and Document Request 36 seeks essentially every document that has ever been circulated around Games Workshop's creative team,

had agreed to narrow Request 36 and would serve an amended request. Once again, this motion thus is improper.

        D.   <u>Information About First Publication of Games Workshop's Works</u>

    10.    As set forth in Chapterhouse's own summary of the issues raised in the parties' meet and confer (Moskin Decl. Ex. E), Games Workshop agreed to supplement its Response to Interrogatory 16 (which agreement is not reflected in Chapterhouse's motion), and Games Workshop had asked Chapterhouse to further clarify what it was seeking. Games Workshop believed it had answered all questions in its August 5 and November 23 letters. (Moskin Decl. Exs. A-B) Moreover, Chapterhouse's own summary of the issues raised in the parties' meet and confer shows that no issues were even raised as to Interrogatory 10.[5] The inflammatory statement that Games Workshop has refused to answer this discovery is simply false (or worse).

    11.    Chapterhouse falsely asserts that Games Workshop has not identified dates of first publication of its works in issue. Chapterhouse ignores that each specimen produced by Games Workshop includes a date of first publication. Chapterhouse does not dispute that, pursuant to Fed R Civ. P. 33(d), it already has all of this information.

    12.    Notwithstanding that Chapterhouse failed to raise these issues previously, it now argues a specific point that the place of first publication is relevant to determining whether the

---

at any time, regardless of whether relevant to the works at issue in this lawsuit. There is no basis for these requests covering 35 years of character and story development in view of Chapterhouse's public admission on its website (*see* Note 1 *supra*) that it concedes Games Workshop's ownership of its copyrights when Chapterhouse has consistently refused to articulate any specific questions (other than the few mistaken theories mentioned in the text above). In any event, in neither its letters, nor the parties' meet and confer efforts, much less in this motion, has Chapterhouse made any effort to justify such extraordinarily broad and burdensome request, well exceeding the scope of the works here at issue.

[5] Interrogatory 10, which calls for all of the specific stores that sell Games Workshop's products and books, has no relevance to the defense of a copyright claim and, because Chapterhouse has admitted access to Games Workshop's works (Dkt. 60), there is no basis for this request. Once again, in neither its letters, nor the parties' meet and confer efforts, much less in this motion, has Chapterhouse made any effort to justify such extraordinarily broad and burdensome request.

works in issue are indeed United Kingdom publications. The Copyright Act defines publication as follows:

> "Publication" is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

17 U.S.C. § 101. Based on the statutory definition, Games Workshop believes that the answers it previously provided are correct, and that all of its works were first published in England by its offering of copies to independent distributors for further distribution. Simply "displaying" the works on its website (which appears to be the basis for Chapterhouse's question as to the timing of first publication) would not even constitute publication. Withal, such display would have occurred after the distribution process was already well underway so that the distributors would have product in place in stores to be timed with the launch of the products. However, now that Chapterhouse has for the first time raised the issue, should Games Workshop discover evidence requiring it to amend its prior answers, it will do so. However, because Games Workshop has never suggested it would not produce such information, this is not a proper basis for the present motion.

E. Information About Games Workshop's Trademarks

13.    Chapterhouse's website admits that Games Workshop owns all of the marks at issue in this litigation. Moreover, as set forth in Chapterhouse's own (self-serving) summary of the issues raised in the parties' November 29 meet and confer (Moskin Decl. Ex. E), no issues were even raised as to Document Requests 8, 11 and 12.[6] Games Workshop agreed to supplement its

---

[6] Document Request 8 seeks any trademark searches relating to Games Workshop's marks, to which Games Workshop has stated that it will produce responsive documents should they exist. Moskin Decl. Ex. F. Document Request 11 seeks specimens of first use of Games Workshop's marks, which Games Workshop believes it has complied with. At any rate, Games Workshop has stated that it will produce additional responsive documents

Response to Interrogatory 16 (which agreement is not reflected in Chapterhouse's motion) and also to produce, in response to Interrogatory 13, the pleadings from its one trademark enforcement effort in the United States (concerning a party doing business under the name "Warhammer Alliance") notwithstanding its objection that the documents are irrelevant to this action. Games Workshop had asked Chapterhouse to further clarify what it was seeking in response to Interrogatories 6, 7 and 13,[7] but it has refused to do so.

14.    Games Workshop further confirmed during the meet and confer (and in the ensuing email exchange) that it already had produced all documents it has been able to locate responsive to Requests 20, 31, 32 and 33. There is no basis for the current motion.

F.    Documents Concerning Defendants and Their Products

15.    As set forth in the exchange of emails following the parties' meet and confer, and as also confirmed in Games Workshop's November 23 letter to Chapterhouse, Games Workshop confirmed that it would produce back to Chapterhouse (in response to Request 34) copies of the photographs and videos it was required to pay to obtain to document Chapterhouse's own vast collection of thousands of Games Workshop's original materials. (Chapterhouse had refused to produce these documents and things in Chicago after the Court, on July 6, instructed it to make production of all such Games Workshop materials in its possession in response to Games Workshop's Document Request 1. Instead, Games Workshop was required, at its own expense,

---

should they exist. *Id.* Document Request 12 seeks use by others of Games Workshop's marks, a request that is not relevant to Chapterhouse's defense, particularly in view of Chapterhouse's public admission on its website (*see* Note 1 *supra*) that it concedes Games Workshop's ownership of its trademarks. Nonetheless, Games Workshop agreed to produce documents concerning its one enforcement action in the United States.

[7]    Interrogatory 6 seeks all sources on which Games Workshop relied in selecting its trademarks, which is largely irrelevant insofar as trademark rights do not depend on originality or the circumstances of selection (but rather on use in commerce) and in view of Chapterhouse's public admission on its website (*see* Note 1 *supra*) that it concedes Games Workshop's ownership of its trademarks. Moreover, given the passage of time, it is unduly burdensome to find such old records. Chapterhouse has not disputed any of these objections or sought to narrow its request to any marks in dispute. Interrogatory 7 seeks the identity of persons knowledgeable for the creation and development of the works, and Games Workshop *has identified* the most knowledgeable person, whom Chapterhouse soon will have the opportunity to depose. Interrogatory 13 seeks Games Workshop's sales information, which Games Workshop has produced (Bates Nos. GW0002576-0002588).

to arrange to have the materials photographed and videotaped in Texas.). Because Games Workshop has already agreed to produce the documents, there is no basis for this motion concerning Document Request 34.

16. Similarly, as also set forth in the exchange of emails following the parties' meet and confer, Games Workshop confirmed that it would produce to Chapterhouse copies of its pre-litigation correspondence with Mr. Paulson. Since the initiation of this lawsuit, correspondence between Games Workshop and Mr. Paulson has been limited to and made in furtherance of settlement negotiations pursuant to Fed. R. Evid. 408. Chapterhouse acknowledged in the November 29 meet and confer that it was not entitled to anything more, but nonetheless Chapterhouse continued to include Document Request 42 in its omnibus motion. There is no basis for this motion concerning Document Request 42.

17. Regarding Document Request 38, concerning possible communications between Games Workshop and Chapterhouse's independent designers, Games Workshop has repeatedly noted (including to the Court in the parties' November 16 status report) that it would be happy to comply but it is not able to do so precisely because Chapterhouse has designated "Confidential Attorneys-Eyes-Only" all information identifying those designers. Partly for this reason, Games Workshop has moved to de-designate the information so that Games Workshop can determine whether itself to seek discovery from such third parties or even to add them as defendants.

G. Information About Damages

18. As set forth in the emails confirming the parties meet and confer, "although [the parties] did not discuss Request 24" (concerning Games Workshop's financial losses as a result of Chapterhouse), Games Workshop confirmed afterward that it "will produce documents if they become available." Games Workshop further confirmed that "[w]e have already produced

documents responsive to Requests 25, 26, and 27" (concerning Games Workshop's revenues and expenses). (Def. Ex. 23.) There is no basis for the motion in these respects. Similarly, although the parties also did not discuss Interrogatory 14, Games Workshop has produced its sales data (Bates Nos. GW0002576-0002588).

19.     Regarding Interrogatory 13, Games Workshop repeatedly has advised Chapterhouse (including in its formal response to this interrogatory) that it will likely limit any monetary claims to recovery of Chapterhouse's profits (rather than its own damages). Not only are those profits substantial, and easier to calculate than damages, development of a claim for damages will need to await further discovery (and most likely would need to be refined by expert discovery). To date, because Games Workshop has received virtually no discovery other than copies of Chapterhouse's website and a summary of profits, Games Workshop simply has not yet been able to calculate damages. Regarding Request 23, which seeks any Games Workshop plans to develop products that would compete with the infringing derivative works sold by Chapterhouse, Games Workshop has repeatedly asked Chapterhouse to clarify to which of Chapterhouse's works the request relates, and how such highly confidential information is relevant to any issue in the case, neither of which Chapterhouse has addressed.

## ARGUMENT

20.     As shown above, Chapterhouse's contention that Games Workshop has not cooperated in discovery is wholly false. Indeed, most of the issues raised above are being raised now for the first time or were already resolved in the parties' prior meet and confer efforts. The only actual disputes concern Chapterhouse's refusal to narrow certain vastly overbroad requests (such as Interrogatories 1, 2, 5 and 17 and Document Requests 2, 3 and 35), which Chapterhouse has declined to narrow. Its motion does not even address the basis for Games Workshop's

objections much less Games Workshop's repeated efforts to resolve these issues based on a reasonable narrowing in the scope of the requests.

21. Chapterhouse's motion is also premised on false assertions that Games Workshop has been uncooperative or unwilling to meet and confer to resolve these issues. To the contrary, when Chapterhouse wrote a letter on July 29 (the day after Games Workshop's deficiency letter to Chapterhouse) itemizing alleged deficiencies in Games Workshop's discovery responses, Games workshop immediately responded by letter on August 5, in which Games Workshop not only attempted to answer all questions raised but invited further inquiry. For reasons Chapterhouse has not disclosed, it refused to respond to the letter (and indeed instead made an improper discovery motion on August 8 (Dkt. 78) without any meet and confer). When Chapterhouse did finally elect to articulate any questions it had, by letter dated November 17, Games Workshop again responded immediately on November 23. Just so, in the parties' November 16 status report, Games Workshop urged that the parties first meet and confer before the filing of any motions, but Chapterhouse insisted it be allowed to make its discovery motion without any prior meet and confer efforts.

22. Chapterhouse has also falsely argued that Games Workshop has refused to participate in telephonic "meet and confer" calls. Unfortunately, as set forth and summarized in counsel's November 29 email to Chapterhouse's attorneys (Moskin Decl. Ex. D) (which Chapterhouse omitted from the emails attached to its own motion and to which it has not responded), Chapterhouse's conduct in this litigation has been marked by a lack of courtesy and cooperation and an effort to vilify Games Workshop rather than reach resolution – beginning with a June 8 meet and confer set up by Games Workshop but which Chapterhouse dishonored by its two later-filed discovery motions abrogating the agreements made. The August emails

14

attached to Chapterhouse's motion (Def. Ex. 18) likewise show Games Workshop great interest in resolving discovery disputes amicably – but based at least initially on written exchanges confirming what was in dispute. For months, Chapterhouse refused to respond to any of these requests. The actual meet and confer process on November 29 (which was initiated by Games Workshop (*see* Moskin Decl. Ex. C)) showed the same troubling pattern inasmuch as Chapterhouse's summary of the two hour conference (Moskin Decl. Ex. E) grossly misstated what was discussed and agreed, requiring Games Workshop to respond in detail. (*Id*. Ex. F) Chapterhouse has not disputed Games Workshop's summary, and the present motion once again reflects the same pattern of raising issues with the Court in disregard of prior agreements and near agreements.

## <u>CONCLUSION</u>

**WHEREFORE**, Games Workshop respectfully requests that the Court deny Chapterhouse's motion in its entirety and grant such other and further relief as the Court deems appropriate and just.

Dated:  December 7, 2011                    Respectfully submitted,


                                           /s/  Scott R. Kaspar
                                           _____

                                               Scott R. Kaspar (Ill. Bar No. 6284921)
                                               Aaron J. Weinzierl (Ill. Bar No. 6294055)
                                               FOLEY & LARDNER LLP
                                               321 North Clark Street, Suite 2800
                                               Chicago, IL 60654-5313
                                               Telephone:  312.832.4500
                                               Facsimile:  312.832.4700
                                               Email:  skaspar@foley.com;
                                               aweinzierl@foley.com

                                               Jonathan E. Moskin
                                               FOLEY & LARDNER LLP
                                               90 Park Avenue
                                               New York, New York 10016
                                               Telephone:  (212) 682-7474
                                               Facsimile:  (212) 687-3229
                                               Email:  jmoskin@foley.com

                                               *Attorneys for Plaintiff*
                                               *Games Workshop Limited*

## <u>CERTIFICATE OF SERVICE</u>

I, Scott R. Kaspar, an attorney, hereby certify that on December 7, 2011, I caused to be filed electronically the foregoing PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.


/s/  Scott R. Kaspar_____