# EXHIBIT A



**ATTORNEYS AT LAW**
90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3572
jmoskin@foley.com EMAIL

CLIENT/MATTER NUMBER
099251-0101

August 5, 2011

<u>**VIA E-MAIL**</u>

Thomas J. Kearney, Esq.
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

    Re:  <u>Games Workshop Limited v. Chapterhouse Studios LLC</u>

Dear Thomas:

   This will respond to your letter of July 29. As a general matter, your letter and Chapterhouse's discovery requests appear to us overall to be consistent with a pattern of raising factual and procedural issues having little evident connection with the circumstances of the case but having a direct effect of obstructing access to the facts and running up costs. As part of this pattern, Chapterhouse began this case by seeking to dismiss based on the impossible pretense that it did not know on what original sources it relied in creating its own accused works. It later undermined this implausible theory by admitting access to all of Games Workshop's works. Since then, it has refused to provide discovery and now needlessly frustrates Games Workshop's ability to pursue the case by asserting confidentiality in non-confidential information. As detailed in my July 28 letter and the follow-up deficiency letter today, its production of documents and information is still woefully lacking.[1]

   In keeping with these stratagems, Chapterhouse has served discovery purporting to raise issues that your client has already conceded are not disputed, evidently doing so for no purpose other than to raise costs for Games Workshop. As explained below, we believe we have adequately answered the discovery requests, addressing matters genuinely in dispute (or will soon complete production of documents or information). However, we remain deeply troubled by the nature and scope of discovery sought … and received.

---

[1] After four months of stonewalling and refusing to produce the original works of Games Workshop in its possession (including based on the premise the materials were to fragile to be moved) it nonetheless did move them (albeit to a law firm in Dallas and only after threat of sanctions) but produced them in completely disorganized fashion. Unfortunately, while the production of vast quantities of Games Workshop works confirms your client's single-minded focus on the WARHAMMER and WARHAMMER 40,000 games, which is evident from the company website itself, your client will also have to explain which of these many works were its actual sources of inspiration for the specific accused products in issue, rather than simply dumping on us vast quantities of disorganized materials and claiming inspiration as well from entirely unspecified third-party sources.

BOSTON
BRUSSELS
CHICAGO
DETROIT

JACKSONVILLE
LOS ANGELES
MADISON
MIAMI

MILWAUKEE
NEW YORK
ORLANDO
SACRAMENTO

SAN DIEGO
SAN DIEGO/DEL MAR
SAN FRANCISCO
SHANGHAI

SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO
WASHINGTON, D.C.

# ∎FOLEY

FOLEY & LARDNER LLP

Thomas J. Kearney, Esq.
August 5, 2011
Page 2

Interrogatory 3. Games Workshop has identified the Games Workshop trademarks (the validity of which your client concedes) that Chapterhouse uses on its website to identify its own products. We do not know what else this request seeks.

Interrogatory 4/Document Request 10. I expect to have to you within a day or two the documents responsive to this request demonstrating communications reflecting instances of confusion. Even without your reminder, we understand the need to identify any other instances where confusion was expressed orally only.

Interrogatory 5/Document Requests 3, 4, 12, 13, 18-19, 28-29, 30. Your client very publicly admits the following:

Adeptus Astartes, Battlefleet Gothic, Black Flame, Black Library, the Black Library logo, BL Publishing, Blood Angels, Bloodquest, Blood Bowl, the Blood Bowl logo, The Blood Bowl Spike Device, Cadian, Catachan, the Chaos device, Cityfight, the Chaos logo, Citadel, Citadel Device, City of the Damned, Codex, Daemonhunters, Dark Angels, Dark Eldar, Dark Future, the Double-Headed/Imperial Eagle device, 'Eavy Metal, Eldar, Eldar symbol devices, Epic, Eye of Terror, Fanatic, the Fanatic logo, the Fanatic II logo, Fire Warrior, Forge World, Games Workshop, Games Workshop logo, Genestealer, Golden Demon, Gorkamorka, Great Unclean One, the Hammer of Sigmar logo, Horned Rat logo, Inferno, Inquisitor, the Inquisitor logo, the Inquisitor device, Inquisitor:Conspiracies, Keeper of Secrets, Khemri, Khorne, Kroot, Lord of Change, Marauder, Mordheim, the Mordheim logo, Necromunda, Necromunda stencil logo, Necromunda Plate logo, Necron, Nurgle, Ork, Ork skull devices, Sisters of Battle, Skaven, the Skaven symbol devices, Slaanesh, Space Hulk, Space Marine, Space Marine chapters, Space Marine chapter logos, Talisman, Tau, the Tau caste designations, Tomb Kings, Trio of Warriors, Twin Tailed Comet Logo, Tyranid, Tyrannid, Tzeentch, Ultramarines, Warhammer, Warhammer Historical, Warhammer Online, Warhammer 40k Device, Warhammer World logo, Warmaster, White Dwarf, the White Dwarf logo, and all associated marks, names, races, race insignia, characters, vehicles, locations, units, illustrations and images from the Blood Bowl game, the Warhammer world, the Talisaman world, and the Warhammer 40,000 universe are either ®, TM and/or © Copyright Games Workshop Ltd 2000-2010, variably registered in the UK and other countries around the world. … No challenge to their status intended. All Rights Reserved to their respective owners.

We are not aware of any copyrighted materials at issue in this case the ownership of which your client questions (including on possible grounds that some part of some work may, hypothetically, have been created for Games Workshop by an independent contractor).

# ▪▪FOLEY

FOLEY & LARDNER LLP

Thomas J. Kearney, Esq.
August 5, 2011
Page 3

Naturally, as need be, we intend to offer testimony explaining the genesis and originality of the works in issue. However, it strikes us as needlessly wasteful and burdensome to require a recitation of the full history of creation of the entire WARHAMMER and WARHAMMER 40,000 series when your client admits the validity of the copyrights and when only a narrow part of this entire universe is at issue. Indeed, it is particularly wasteful when your client has been concealing since the outset of the case the specific Games Workshop materials from which he knows he derived his works.

Similarly, notwithstanding your client's admission that Games Workshop owns all of its trademarks, if there are third-party uses you consider relevant, please let us know. If you will refer to the actual answer to Interrogatory 3, you will see that Games Workshop does not claim ownership of the name "Star Fox". Nor does it claim copyright.

Interrogatory 6. In view of your client's admission that Games Workshop owns all of the rights in the trademarks at issue in this case, we do not understand why your client is also now interested in the sources of inspiration for any of these names, most of which were adopted so long ago that Games Workshop no longer has records pertaining to their adoption. Moreover, trademark rights do not depend on originality, so there is little if any relevance that we can see to justify the burden.

Interrogatory 7. We have identified the person most knowledgeable regarding the creation of the works we believe have been infringed. Should it be necessary to identify other people (particularly after your client has clarified on what specific works it relied in creating its accused works), we will do so, but do you have some specific reason to doubt the designation?

Interrogatory 9. Given your client's admission that Games Workshop owns copyright in all of the works in issue, and given its refusal for four months to identify the specific Games Workshop works on which it relied in creating the accused works, we fail to understand the basis for demanding that Games Workshop identify every third-party source that influenced every one of its works. Given Chapterhouse's express admission of access to all of the Games Workshop works, the only logical way for this case to proceed is for your own client to identify the actual works on which it relied in creating the accused works. If Chapterhouse then has some basis to challenge Games Workshop's rights in such works, it can raise the challenge in that context.

Interrogatories 10, 14. Games Workshop does not maintain sales records based on the individual characters and materials that have been copied. Nonetheless, we will have for you within a day or two a sales summary. Without meaning to limit Chapterhouse's right to reasonable discovery, I think it makes most sense to table this discussion for a few days until we can get you that information. Regarding specific stores that sell books or products, we do not understand what relevance that has to the defense of the copyright claims. This is particularly true given Chapterhouse's admission of access to all of the works. Given this admission, what



**FOLEY & LARDNER LLP**

Thomas J. Kearney, Esq.
August 5, 2011
Page 4

difference does it make if specific works are sold in specific stores in Texas or Illinois or New York or elsewhere?

    <u>Interrogatory 13/Document Requests 24-27.</u>  Without prejudicing Games Workshop's right to seek monetary relief after some meaningful discovery is received from your client, I expect that Games Workshop will be seeking Chapterhouse's profits, not its own losses.  But it is simply too early in the case to address this issue given that we have received essentially no substantive discovery from your client.  This is not a contract action, so I simply don't know what you mean by failure to mitigate.  (As noted in my July 28 letter, Chapterhouse has also refused to explain in response to Games Workshop's discovery requests what it means by this or any of its boilerplate affirmative defenses.)

    <u>Document Request 11</u>  I have in hand documents demonstrating use in commerce of the trademarks in issue.  They are being bates-stamped and will be produced momentarily

    <u>Document Request 20</u>  We have produced Games Workshop's policies regarding use of its copyrights and trademarks by third parties.

    <u>Document Request 21</u>  Games Workshop is not refusing to produce documents, and to the contrary has produced documents responsive to this request.  However, it is not required to create documents for purposes of the litigation.

    <u>Document Request 23</u>  Laying aside that we still do not know which Games Workshop works are actually in issue because your client has refused to identify the specific works on which it relied for inspiration, please explain why it is relevant how Games Workshop plans to use those works in the future?  Your letter instead appears to ask an entirely different and admittedly narrower question whether Games Workshop had or has plans to sell specific products for which Chapterhouse has created derivative works without authorization.  The claim of unlawful copying stands with or without such specific plans, but please confirm that that is what you wish to know.

    I hope this answers your questions.  I am sure you will let us know if any relevant questions remain.

                  Very truly yours,

                  Jonathan E. Moskin

JEM:se

cc.:    Scott Kaspar, Esq.

# EXHIBIT B

# ■FOLEY

**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3572
jmoskin@foley.com EMAIL

CLIENT/MATTER NUMBER
099251-0101

November 23, 2011

<u>Via E-Mail</u>

J. Caleb Donaldson, Esq.
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Re:    <u>Games Workshop Limited v. Chapterhouse Studios LLC</u>

Dear Caleb:

This will respond to your letter of November 17.

At the outset, I have to note that on August 5 I responded (I thought) to all of the discovery questions raised by Chapterhouse, and since then Chapterhouse has not further commented (at least not to us), thus creating the impression there were no substantive issues remaining in dispute. Consistent with my understanding, your letter identifies only three small issues lingering from your prior correspondence (essentially just asking us to confirm what we already told you). The other issues raised are new.

<u>Issues Remaining From Prior Correspondence</u>.

To my knowledge, Games Workshop has produced the documents responsive to Request 10 demonstrating communications reflecting instances of confusion. The law is very clear that even one or two instances of actual confusion can be sufficient to prove a likelihood of confusion, so your efforts to disparage this evidence is not terribly helpful. As I previously advised, we need to reminders to produce additional such evidence if it is located.

Jeremy Goodwin. Mr. Goodwin has been involved in the creative process at Games Workshop for some thirty years. While we do not contend he is the only person knowledgeable about the creative process, he was identified as the most knowledgeable. I expect you will have an opportunity to explore the extent of his knowledge when you depose him.

Sales summary. These documents have now been produced.

<u>Document Requests 4, 9, 14, 15, 17-19, 28, 29, 43, 44</u>.

<u>Requests 4 and 15</u>. With the exception of "Dawn of War, there are no "chain of title" documents because all of the other works were created by Games Workshop's own employees. However, the client is securing consent from the producer of "Dawn of War" to share the assignment document.

| | | | | |
|---|---|---|---|---|
| BOSTON | JACKSONVILLE | MILWAUKEE | SAN DIEGO | SILICON VALLEY |
| BRUSSELS | LOS ANGELES | NEW YORK | SAN DIEGO/DEL MAR | TALLAHASSEE |
| CHICAGO | MADISON | ORLANDO | SAN FRANCISCO | TAMPA |
| DETROIT | MIAMI | SACRAMENTO | SHANGHAI | TOKYO |
| | | | | WASHINGTON, D.C. |

4831-0807-7838.1

# ∎FOLEY

FOLEY & LARDNER LLP

J. Caleb Donaldson, Esq.
Winston & Strawn LLP
November 23, 2011
Page 2

    <u>Request 9</u>. We previously advised you Games Workshop is not aware of any trademark surveys.

    <u>Request 14</u>. We previously advised you that Games Workshop is not aware that any of its works infringe any third-party rights.

    <u>Request 17</u>. We previously advised you that to the extent we understand what you mean by "assertion of rights", Games Workshop is not aware of any documents. If you want to clarify want you mean, please do so.

    <u>Requests 18-19</u>. We previously advised you that that Games Workshop is not aware of any documents that it has falsely claimed copyright or trademark rights.

    <u>Request 29</u>. We previously advised you that that Games Workshop is not aware of any documents concerning any claims against it of copyright or trademark infringement.

    <u>Requests 43/44</u>. Although Games Workshop does not believe its correspondence with Mr. Paulson is relevant, it also does not see there is any point fighting over this and will produce its correspondence with him prior to the litigation. However, we believe communications with his counsel concerning settlement are not relevant.

    <u>Chapterhouse's Own Documents</u> Although we continue to be puzzled that Chapterhouse requires copies of its own documents demonstrating its possession of (and access to) all of Games Workshop's works in issue, and although we continue to believe Chapterhouse should have made copies of all of the same (and still should do so), we will produce back to you copies of the same.

    <u>Document Request 36</u>. As we read this request, it essentially seeks copies of every document ever circulated between or among Games Workshop's creative team, at any time and regardless whether the works are even here in issue, concerning the creation of the entire Warhammer 40,000 universe. Although we have repeatedly invited you to identify any works the originality of which Chapterhouse disputes (despite the admission on defendant's website that Games Workshop indeed owns copyright in all of its works), you have declined to do so. If we are misreading this request, please explain what you do mean.

    <u>Document Request 38</u>. You do not disagree that Chapterhouse, by designating "attorneys-eyes-only" all of the information identifying its designers and manufacturers has made it impossible for us to discuss with our client what our client knows about these individuals. Although you state that we should nonetheless be able to manage collection of possible communications between Games Workshop and these individuals, as a practical matter, we are at a loss to understand how you contemplate that we do so. We again urge you to allow us to share the information with the in-house attorney at Games Workshop so she can advance the ball.



**FOLEY**

FOLEY & LARDNER LLP

J. Caleb Donaldson, Esq.
Winston & Strawn LLP
November 23, 2011
Page 3

Regarding communications between Games Workshop and Chapterhouse or Mr. Villacci, those documents (from 2008) have now been produced. If you'd like, we are also more than happy to Bates stamp and produce the December 2010 letter.

<u>Document Request 42.</u> As noted above, although Games Workshop does not believe its correspondence with Mr. Paulson is relevant, it also does not see there is any point fighting over this and will produce its correspondence with him prior to the litigation. However, we believe communications with his counsel concerning settlement are not relevant.

<u>Interrogatories 16, 17.</u> Our understanding is that all of Games Workshop's works are first offered to and made available at the Games Workshop company store in Nottingham, but this is a question only first made specific in Chapterhouse's 374 admission requests. The fact that the Chapterhouse sent such a vast number of requests at a time when the Magistrate Judge had essentially stayed discovery struck us as abusive and unfair. (You will note, by contrast that Games Workshop served no requests during this period.)

I also believe we also answered Interrogatory 17 by producing copies of all of the subject works and confirming both that they were all created by employees (with the exception of "Dawn of War"), and explaining as well that the fact that Games Workshop gives specific credits to various individuals in some of its published works simply reflects the fact that those individuals held positions of note at the company at the time. The reality is that under British law (which you yourself have cited to the Court) the only author of these works is Games Workshop.

I hope this answers your questions. Please let us know if any relevant questions remain.

Very truly yours,

Jonathan E. Moskin

JEM:se

cc.: Jennifer Golinveau, Esq.
Scott Kaspar, Esq.

# EXHIBIT C

**Kaspar, Scott R.**

| | |
|---|---|
| **From:** | Moskin, Jonathan |
| **Sent:** | Tuesday, November 22, 2011 1:23 PM |
| **To:** | Golinveaux, Jennifer A.; Donaldson, J. Caleb; Kearney, Tom J.; Mersmann, Eric J. |
| **Cc:** | Kaspar, Scott R. |
| **Subject:** | Games Workshop v. Chapterhouse Studios |
| **Attachments:** | nyaccucolor36091.PDF |

Attached is Games Workshop's response to the 30(b)(6) deposition notice served by Chapterhouse during the period discovery was effectively stayed. Now that we are back on, we will need to select a time and place for Games Workshop to bring to the US its witnesses (unless you would prefer to take the depositions in England). We also will be producing some additional documents today.

We also believe it would be useful to try to narrow the discovery issues before the deadline next week to serve motions. We would love to get responses to our letters (dated July 28, August 5 and September 9) as well as a date to depose Chapterhouse's document custodian. We also will get you a response to your recent letter, after which we think it might be useful to confer to see what genuinely is in dispute.

Best,

Jonathan

# EXHIBIT D

**Kaspar, Scott R.**

| | |
|---|---|
| **From:** | Moskin, Jonathan |
| **Sent:** | Tuesday, November 29, 2011 8:15 AM |
| **To:** | 'Kearney, Tom J.'; Kaspar, Scott R.; 'Golinveaux, Jennifer A.' |
| **Cc:** | 'Donaldson, J. Caleb'; 'Mersmann, Eric J.' |
| **Subject:** | Games Workshop v Chapterhouse |

On further reflection following the unproductive exchange of messages yesterday trying to limit the discovery issues, what most frustrates me is that even though you refuse to respond in writing to the deficiency letters we have sent or confirm in writing what issues, if any, you think remain regarding Games Workshop's discovery responses following our letters to you responding to all known objections is that you will need to put those positions in writing in the next several days. We fail to understand, therefore, why you won't put them in writing now so that we have certainty what is in issue and can point the court to a clear record.

I hate to be so blunt, but quite frankly Chapterhouse's defense of this case has eroded our trust that defendant will abide by what you say. I initiated a meet and confer in early June, yet despite apparent agreement resolving then-outstanding issues, Chapterhouse proceeded to file two later discovery motions in disregard of the agreements reached in June (and did so without any prior meet and confer). In September and October, leading up to the settlement and discovery conference, you twice promised in telephone conferences with Magistrate Judge Gilbert to produce the independent creation documents we have been demanding since the outset of discovery, yet in the end Chapterhouse produced only four or five email strings and conceded at the conference itself that no attempt had even been made to produce documents such as sketches, mock-ups and so-forth that might show actual independent creation. Similarly, when we tried to negotiate a joint status conference with you in late June, you refused to participate and then "sandbagged" us by saying that because Chapterhouse intended to move for summary judgment it didn't need to cooperate. That in turn led to a series of emails after our telephone calls with each side disputing what the other said. We do not wish for a repeat of that event, so, rather than a series of such emails now, why won't you just put in writing your positions on discovery issues. It might save us all a lot of effort.

Thank you

Jonathan

# EXHIBIT E

## Kaspar, Scott R.

**From:** Kearney, Tom J. [TKearney@winston.com]
**Sent:** Tuesday, November 29, 2011 8:41 PM
**To:** Moskin, Jonathan; Kaspar, Scott R.
**Cc:** Golinveaux, Jennifer A.; Donaldson, J. Caleb; Mersmann, Eric J.; Kearney, Tom J.
**Subject:** Games Workshop v. Chapterhouse Studios

Counsel –

I write to summarize our telephonic meet and confer of today.  As we explained on the phone, given the Court's November 30 filing deadline, we must have your written response to the issues noted below before 9:00 a.m. PST tomorrow or we will have no alternative but to move the Court to compel production on all issues.

Defendant has asked Plaintiff to confirm dates the week of December 12-16 for Plaintiff's 30(b)(6) deposition in Chicago. Plaintiff has requested possible dates for its 30(b)(6) deposition of Chapterhouse at or near the same time.

The parties discussed Games Workshop's outstanding discovery issues, which Chapterhouse now believes (and Scott confirmed) have been fully addressed.  Chapterhouse agreed to supplement its responses to Interrogatories 5 and 13 and RFP 27.  Chapterhouse's document production, which will be forthcoming this week or next, should address the remainder of Plaintiff's outstanding discovery requests.

With respect to Chapterhouse's outstanding discovery issues:

- With respect to RFP 1 you will let us know whether Games Workshop's sculptural works are relevant to Plaintiff's claims or not. Defendant explained that Plaintiff either considers the works relevant, in which case exemplars must be produced, or it does not consider them relevant, in which case Defendant will move to exclude them from consideration later in the case.

- With respect to RFPs 4, 9, 14, 15, 17, 18, 19, 28, 29, 43, and 44, Plaintiff's responses indicate that it is "not aware" of responsive documents.  You confirmed that Plaintiff will nonetheless produce responsive documents to the extent they exist.

- You stated that you would reconsider your response to RFP 34.  Please confirm whether you will produce responsive documents.  You also stated you would reconsider your responses to RFPs 24, 25, 26, and 27.  Please confirm whether you will produce responsive documents, and if so by when.

- With respect to RFP 30, please confirm that Plaintiff is abandoning all claims relating to the "Star Fox" name, mark, and design.

- You stated that you have produced (or "may have produced") all documents responsive to RFPs 6, 8, 20, and 21.  Please confirm whether all such documents have been produced.

- In light of your claim to have produced all documents concerning Chapterhouse or its products, please confirm that there are no additional documents in Plaintiff's possession, custody, or control responsive to RFP 31, 32, or 33.

- In its written responses to RFP 7 and 11, Plaintiff refused to produce documents, but you now state that Plaintiff has already produced responsive documents.  Please confirm that Plaintiff has

produced all responsive documents in Plaintiff's possession, custody, or control, and that Plaintiff will rely only on its document production to date as evidence of first use in U.S. commerce. Please also confirm that Plaintiff will supplement its written responses to these Requests to indicate that it has produced all responsive, non-privileged documents. Defendant will move to exclude non-produced or late-produced documents that Plaintiff attempts to use as evidence of use in commerce, including first use in commerce, in the United States.

- With respect to RFP 3, Plaintiff stands on its objections and refuses to produce responsive documents, but you also state that Plaintiff may be able to produce some unspecified responsive documents. That is an insufficient response: unless you confirm in writing that Plaintiff will agree to produce all responsive documents, Defendant will move to compel.

- With respect to RFP 4, you stated that Plaintiff is now aware of and will produce at least one responsive document. With respect to RFPs 5 and 37, you stated that responsive documents are being collected. With respect to RFP 35, Plaintiff has agreed to produce responsive documents but to date we have received none. Please confirm when those documents will be produced.

- You refused to supplement or amend Plaintiff's responses to RFPs 1, 2, 12, 13, 16, 22, 23, 38, and 42.

- Chapterhouse agreed to narrow RFP 36.

- With respect to Defendant's Interrogatories, we have raised issues with respect to 1-2, 3-7, 9, 10, 13-14, and 16-17. You agreed to supplement your response to Interrogatory 16 in accordance with the interrogatory instructions, to explicitly address the portions of the interrogatory Plaintiff was unable to answer. Because you have not agreed to otherwise supplement the responses, Defendant will move the Court to compel.

As noted above, given the Court's filing deadline for Defendant's motion to compel, we must have Plaintiff's responses to the above by 9:00 a.m. PST, November 30.

Sincerely,

Thomas Kearney

**Thomas J. Kearney**
D: +1 (415) 591-6894
www.winston.com
WINSTON
&STRAWN
LLP

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
************************************************************************** Any

12/7/2011

tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

# EXHIBIT F

## Kaspar, Scott R.

**From:** Moskin, Jonathan

**Sent:** Wednesday, November 30, 2011 10:54 AM

**To:** Kearney, Tom J.; Kaspar, Scott R.

**Cc:** Golinveaux, Jennifer A.; Donaldson, J. Caleb; Mersmann, Eric J.

**Subject:** RE: Games Workshop v. Chapterhouse Studios

Confirming why we had been insisting on written responses to the many unanswered deficiency letters we have sent since July, your email yesterday is inaccurate in many respects, and appears designed to create a false impression that Games Workshop has been in some way uncooperative, while at the same time trying to create an incorrect appearance that we resolved most of the issues we had raised with you for months regarding the deficiencies in Chapterhouse's discovery responses. Therefore, let me clarify a few things.

You are correct that defendant has asked us to confirm dates the week of December 12-16 for Plaintiff's 30(b)(6) deposition in Chicago, which we noted might well be difficult given the need to bring two or more witnesses from England to testify on all of the sustentative issues raised by Chapterhouse. (From my discussion this morning with my client, it appears likely this will be at least three witnesses.) By contrast, all Games Workshop has initially requested is a date for Chapterhouse's document custodian pursuant to a notice we first served in August. As we have told you repeatedly, that should take no more than an hour or so. A full 30(b)(6) deposition of Chapterhouse must await receipt of documents.

Regarding the issues raised by Games Workshop, Chapterhouse has stated it has produced all documents responsive to document request 9 and promises now to produce all documents responsive to Request 10 (although it has not said when). It has also said it will produce communications with third party designers, etc. responsive to Requests 6, 7, 8 and 12; that it has no business plans responsive to Request 11 and that it would provide the bates ranges for the documents it says it has produced in response to Request 16 (advertising by Chapterhouse). We are not aware of any such documents it has produced. Please confirm we are correct in the above and let us know when you expect to produce these items.

As you now note, Chapterhouse has also agreed to supplement its responses to Interrogatories 5 and 13 and Request 27. However please confirm that you will provide complete responses explaining the bases for all of Chapterhouse's 23 affirmative defenses and explain all methods used by Chapterhouse for selecting new products to fit within the Warhammer 40,000 game. Again, when do you expect we will receive these items?

We also asked you if Chapterhouse had changed its position regarding the other issues raised in our prior correspondence (dated July 28, August 5, September 9 and November 23) and you said no. Thus, although you are correct that all issues were raised, many remain unresolved.

Regarding the issues identified in your message as to Games Workshop's responses, you have misstated the issue regarding Response 1. Chapterhouse refuses to identify the specific works from which it has copied, but it does admit it has access to all of the works. We have produced exemplars of the works we believe show the most direct evidence of copying, and as such, it seems a needless burden for Games Workshop to produce additional exemplars. This is particularly so given the fact that it is undisputed Chapterhouse already has all of these items. If you will be more forthcoming what works Chapterhouse actually consulted, we can produce additional exemplars. However, just as it would not be necessary for Walt Disney to produce every single Mickey Mouse work to prove infringement of the character, it should not be necessary for Games Workshop to produce exemplars of all of its works when there is no dispute as to access or copying.

 With respect to all responses, wherever you have asked us to confirm whether documents exist, we have directly answered whether we have been able to find documents (although that is not technically required). As I confirmed yesterday, to the extent Games Workshop finds documents responsive to requests 4, 9, 14, 15, 17, 18, 19, 28, 29, 43, and 44 they will be produced. The same holds true regarding Requests 5, 6, 7, 8, 11, 20, and 21, 31, 32, or 33 and 37. We trust this resolves all such issues.

Regarding Requests 34 and 42, we did not say we would simply reconsider our position. Rather, I told you in writing last week that Games Workshop would produce the documents that it obtained from your client (at the needless expense to which you put us by refusing to produce the same) and would also produce its

correspondence with Mr Paulson.

Although we did not discuss Request 24, we will produce documents if they become available. We have already produced documents responsive to Requests 25, 26, and 27.

We have told you so many times in writing and on the record that Games Workshop does not claim rights in Star Fox that we can scarcely believe you insist on further confirmation. One more time, here it is: Games Workshop does not claim rights in Star Fox.

With respect to Request 3, we have repeatedly told you that if Chapterhouse questions the originality of any given works or if it believes any given author was not acting within the scope of his or her employment agreement, we would produce documents. However, instead you insisting on more than 30 years of employment agreements without identifying any reason for such a demand. If you can articulate a reason, please let us know. This also ties in with Request 4, and you are correct that we will produce the one chain of title document of which we are aware. Again, this calls to mind the analogy to a claim by Disney for infringement of Mickey Mouse noted above.

We already have produced documents in response to Requests 1 and 2, yet you have declined our repeated invitations to identify specific works for which you have any remaining questions. If you can identify any such questions, we will be happy to comply.

Regarding Request 13, I told you there was at least one enforcement matter which, although irrelevant, we would produce documents. We have also agreed to produce documents regarding Request 22 (even though it is no longer relevant) Otherwise regarding requests 12, 13, 16, 22, 23, we are hopeful you will provide clarification and a narrowing of the requests (as you agreed to do regarding Request 36) to make the demands more intelligible. However, you declined our request yesterday to explain why you needed the information in the form and scope requested

Regarding Request 38, we have explained repeatedly that unless we can advise our client who are Chapterhouse's third party designers, etc. it is impossible for us to respond. We again ask you to allow our client's in-house counsel to see the amended responses to Games Workshop's interrogatories.

Jonathan

---

**From:** Kearney, Tom J. [mailto:TKearney@winston.com]
**Sent:** Tuesday, November 29, 2011 9:41 PM
**To:** Moskin, Jonathan; Kaspar, Scott R.
**Cc:** Golinveaux, Jennifer A.; Donaldson, J. Caleb; Mersmann, Eric J.; Kearney, Tom J.
**Subject:** Games Workshop v. Chapterhouse Studios

Counsel –

I write to summarize our telephonic meet and confer of today. As we explained on the phone, given the Court's November 30 filing deadline, we must have your written response to the issues noted below before 9:00 a.m. PST tomorrow or we will have no alternative but to move the Court to compel production on all issues.

Defendant has asked Plaintiff to confirm dates the week of December 12-16 for Plaintiff's 30(b)(6) deposition in Chicago. Plaintiff has requested possible dates for its 30(b)(6) deposition of Chapterhouse at or near the same time.

The parties discussed Games Workshop's outstanding discovery issues, which Chapterhouse now believes (and Scott confirmed) have been fully addressed. Chapterhouse agreed to supplement its responses to Interrogatories 5 and 13 and RFP 27. Chapterhouse's document production, which will be forthcoming this week or next, should address the remainder of Plaintiff's outstanding discovery requests.

With respect to Chapterhouse's outstanding discovery issues:

- With respect to RFP 1 you will let us know whether Games Workshop's sculptural works are relevant to Plaintiff's claims or not. Defendant explained that Plaintiff either considers the works relevant, in which case exemplars must be produced, or it does not consider them relevant, in which case Defendant will move to exclude them from consideration later in the case.

- With respect to RFPs 4, 9, 14, 15, 17, 18, 19, 28, 29, 43, and 44, Plaintiff's responses indicate that it is "not aware" of responsive documents.  You confirmed that Plaintiff will nonetheless produce responsive documents to the extent they exist.

- You stated that you would reconsider your response to RFP 34.  Please confirm whether you will produce responsive documents.  You also stated you would reconsider your responses to RFPs 24, 25, 26, and 27.  Please confirm whether you will produce responsive documents, and if so by when.

- With respect to RFP 30, please confirm that Plaintiff is abandoning all claims relating to the "Star Fox" name, mark, and design.

- You stated that you have produced (or "may have produced") all documents responsive to RFPs 6, 8, 20, and 21.  Please confirm whether all such documents have been produced.

- In light of your claim to have produced all documents concerning Chapterhouse or its products, please confirm that there are no additional documents in Plaintiff's possession, custody, or control responsive to RFP 31, 32, or 33.

- In its written responses to RFP 7 and 11, Plaintiff refused to produce documents, but you now state that Plaintiff has already produced responsive documents.  Please confirm that Plaintiff has produced all responsive documents in Plaintiff's possession, custody, or control, and that Plaintiff will rely only on its document production to date as evidence of first use in U.S. commerce.  Please also confirm that Plaintiff will supplement its written responses to these Requests to indicate that it has produced all responsive, non-privileged documents.  Defendant will move to exclude non-produced or late-produced documents that Plaintiff attempts to use as evidence of use in commerce, including first use in commerce, in the United States.

- With respect to RFP 3, Plaintiff stands on its objections and refuses to produce responsive documents, but you also state that Plaintiff may be able to produce some unspecified responsive documents.  That is an insufficient response: unless you confirm in writing that Plaintiff will agree to produce all responsive documents, Defendant will move to compel.

- With respect to RFP 4, you stated that Plaintiff is now aware of and will produce at least one responsive document.  With respect to RFPs 5 and 37, you stated that responsive documents are being collected.  With respect to RFP 35, Plaintiff has agreed to produce responsive documents but to date we have received none.  Please confirm when those documents will be produced.

- You refused to supplement or amend Plaintiff's responses to RFPs 1, 2, 12, 13, 16, 22, 23, 38, and 42.

- Chapterhouse agreed to narrow RFP 36.

- With respect to Defendant's Interrogatories, we have raised issues with respect to 1-2, 3-7, 9, 10, 13-14, and 16-17.  You agreed to supplement your response to Interrogatory 16 in accordance with

the interrogatory instructions, to explicitly address the portions of the interrogatory Plaintiff was unable to answer. Because you have not agreed to otherwise supplement the responses, Defendant will move the Court to compel.

As noted above, given the Court's filing deadline for Defendant's motion to compel, we must have Plaintiff's responses to the above by 9:00 a.m. PST, November 30.

Sincerely,

Thomas Kearney

**Thomas J. Kearney**
D: +1 (415) 591-6894
www.winston.com

WINSTON
&STRAWN
LLP

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
******************************************************************************** Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

12/7/2011