IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>   Plaintiff,<br><br>v.<br><br>CHAPTERHOUSE STUDIOS LLC and<br>JON PAULSON d/b/a PAULSON GAMES,<br><br>   Defendants. | )<br>)<br>)<br>) Case No. 1:10-cv-08103<br>)<br>)<br>)<br>) Judge Matthew F. Kennelly<br>)<br>)<br>) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL OR FOR SANCTIONS**

**I. INTRODUCTION**

Plaintiff has moved to compel responses to interrogatories and document requests, *most of which are not even in dispute*. For the key category of requests Plaintiff has moved on, which it refers to as "Independent Creation" requests, Chapterhouse has *already responded* to the interrogatories and either produced or agreed to produce documents over the next week. To complete this production, Chapterhouse's attorneys have collected tens of thousands of emails, produced hundreds of pages of emails, and Chapterhouse is supplementing its production with additional documents over the next week, as the parties have discussed. By stark contrast, Plaintiff has produced only a handful of emails, refuses to produce documents in response to the majority of Chapterhouse's requests, and refuses to even conduct keyword searches in email because of Chapterhouse's confidentiality designations, which Judge Gilbert has already determined to be justified.

For the handful of other discovery requests referenced in Section C of Plaintiff's motion, Plaintiff ignores or mischaracterizes Chapterhouse's current responses to discovery and mischaracterizes its own requests. In the few instances that it does identify genuine issues in

1

dispute, Plaintiff's motion asks this Court to compel discovery that is overbroad, unduly burdensome, duplicative, and irrelevant to the matters at issue.

Finally, Plaintiff claims that Chapterhouse's responses to Plaintiff's First Set of Requests for Admission were served one day late and should, therefore, be deemed admitted. Putting aside for the moment that Plaintiff never raised this issue with Chapterhouse before filing its motion, Plaintiff has made a simple error calculating the deadline. Chapterhouse's responses are timely, and it would have corrected Plaintiff's calculation error for it if Plaintiff had simply raised the issue before filing a motion, as it is required to do under the Local Rules.

Plaintiff has also liberally misstated the record regarding the parties' efforts to resolve discovery issues. Despite repeated requests from Chapterhouse, Plaintiff flatly refused to meet and confer about the parties' discovery issues *until the day before the deadline to file these motions,* virtually assuring that the parties would make little progress towards reaching consensus, and despite repeated requests from Chapterhouse to meet. Declaration of J. Caleb Donaldson ("Donaldson Decl.") ¶¶ 4 - 16, Exs. 3 - 11.

In short, this motion is without merit. It appears more likely to be a smoke screen, an effort by Plaintiff to concoct issues with Chapterhouse's discovery responses and create the misimpression that not all of the legitimate issues are with Plaintiff's own discovery responses. Far from deserving half of its fees for bringing this motion, Plaintiff should compensate Defendant's having to respond to this meritless motion.

**II.     BACKGROUND**

Plaintiff has resorted to litigation to vindicate its belief that the entire fictional world of Warhammer 40,000, which is inhabited by thousands of hobbyists and their imaginative endeavors, is its intellectual property. It apparently believes that this extends even to accessories and other decorations that fit on its own sculptural works to enhance the gaming experience for devoted hobbyists, including creative works it has never dreamed of. Plaintiff is surprisingly frank in its motion about the true nature of its copyright infringement claim. Rather than pointing to any actionable copying, Plaintiff complains that Chapterhouse develops products

2

"that can be *used with* Games Workshop's popular Warhammer 40,000 game," products that are "*tied to* the specific names, characters, imagery created by Games Workshop" (emphases added).[1] Plaintiff complains that even the name "Chapterhouse" is too close for comfort, because Plaintiff has organized its Space Marines into "Chapters." Mot. at 2. None of these claims is a legitimate basis for an infringement lawsuit.[2] Plaintiff insists that Chapterhouse has conceded access to and copying of Plaintiff's works[3], and claims that a boilerplate statement on Chapterhouse's website operates as an admission that Plaintiff owns copyrights in all the works at issue.[4]

On August 16, 2011, this Court referred the parties to Judge Gilbert for the purpose of holding proceedings related to settlement and discovery issues associated with settlement.. For the last several months, the parties have been before Magistrate Gilbert to try to settle the case. Minute Order, August 16, 2011 (Docket No. 87). Discovery efforts during that time were focused on discovery necessary for settlement. After a number of conferences with Magistrate Gilbert, written submissions, and an in-person settlement conference, the parties were unable to reach a resolution.[5]

---

[1] Plaintiff's Motion to Compel or for Sanctions, Nov. 30, 2011 (Docket No. 117) ("Motion") at 1-2.

[2] Plaintiff's departure from the required elements of an infringement lawsuit is also illustrated by its position that it need not prove the *prima facie* elements of a copyright infringement case such as ownership and protectibility of copyrightable material. Those refusals are the subject of Chapterhouse's own Motion to Compel. Docket No. 121.

[3] Plaintiff elsewhere argues that Chapterhouse has conceded the issues of access to and copying from Plaintiff's works. Mot at 3. Chapterhouse has repeatedly corrected this misunderstanding in correspondence and telephone calls. For the first time in its Motion, Plaintiff unveils its support for this proposition: the Joint Case Management Statement filed with this Court on June 29, 2011 (Docket No. 60) ("JCMS"). That document merely states that "***for purposes of its motion*** *on substantial similarity* Chapterhouse would concede access and copying. JCMS at 5 (emphasis added); *see also id.* at 7 ("For the purpose of its dispositive motion, however, Chapterhouse will not contest access.")

[4] It is apparently for this reason that Plaintiff refuses to respond to discovery on issues of ownership and originality of its works, necessitating Chapterhouse's own motion to compel.

[5] Minute Order, November 8, 2011 (Docket No. 113).

3

Plaintiff's Rule 37.2 statement describing the parties efforts to resolve discovery issues is inaccurate and highly misleading. For example, Plaintiff's claim that its correspondence to Chapterhouse about discovery "have gone largely unanswered" is simply false.[6] Chapterhouse responded in detail to Plaintiff's correspondence, and sought repeatedly to meet with Plaintiff either in person or by telephone to try to resolve outstanding issues.[7] Plaintiff flatly refused; and refused to answer calls or messages from Chapterhouse's counsel seeking to discuss discovery.[8] Despite repeated requests from Chapterhouse, Plaintiff refused all efforts to meet and confer until November 29, 2011, and even then simply demanded that Chapterhouse identify whether it had changed its position on any of the issues in Plaintiff's letters.[9] Before filing its motion, Plaintiff never once mentioned its meritless position that Chapterhouse served responses to requests for admission one day late.

### III. LEGAL STANDARD

Parties may obtain discovery of non-privileged matter relevant to the claim or defense of any party. Fed R. Civ. P. 26(b)(1). The Court, however, shall limit the normally broad scope of discovery if it determines, *sua sponte* or on motion, that "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed R. Civ. P. 26(b)(2).

---

[6] Donaldson Decl. ¶¶ 2-3, Exs. 1-2.
[7] Donaldson Decl. ¶¶ 4-16, Exs. 3-11.
[8] Donaldson Decl. Exs. 4-7.
[9] When Mr. Moskin was unable to continue the call, his associate did go through a few of the specific outstanding issues, but Mr. Moskin later repudiated any progress the parties had made toward compromise. *See* Donaldson Decl. ¶¶ 27-28 & Ex. 13.

Federal Rule of Civil Procedure 37 provides that sanctions are inappropriate where the responding party's response was substantially justified, or where the movant did not attempt in good faith to obtain the disclosure or discovery without court action, or other circumstances make the award of expenses unjust. Fed R. Civ. P. 37(a)(5)(A). A response is "substantially justified" when there is a "genuine dispute" or "if reasonable people could differ" as to its appropriateness. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citations and quotation marks omitted). On the other hand, when a discovery motion fails, the court must, after giving the movant an opportunity to be heard, require the movant to pay the opposing party's reasonable attorney's fees, unless the motion was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(B). Finally, if the motion is granted in part and denied in part the court may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C).

IV.   **ARGUMENT**

A.   **Chapterhouse Has Provided and Agreed to Provide Discovery Relating to Independent Creation**

Plaintiff moves on Interrogatory 2 and Document Requests 7, 9, and 10 relating to independent creation, but *acknowledges* that Chapterhouse has responded to each of these requests, and has agreed to produce documents in response to Document Request 10 over the next week. In light of this, the only relief Plaintiff seeks with respect to these requests appears to be that the Court issue an order precluding Chapterhouse from further supplementing these requests in the event that it discovers additional information responsive to the requests.[10]

Chapterhouse has complied with its obligations to produce documents within its possession, custody or control, and information available to it, relating to sources for its works. It has twice supplemented its response to Interrogatory No. 2. *See* Kaspar Decl. Ex. A, at 5-6. That interrogatory sought information regarding sources—other than Games Workshop

---

[10] Chapterhouse specifically proposed a mutual agreement about the timing of further supplementation. Donaldson Decl. Ex.1 at 1.

5

sources—from which Chapterhouse's works were developed. Chapterhouse has also produced documents it has located in its possession, custody or control responsive to Document Request No. 9. That request sought documents "setting forth or referring to any sources consulted, used, reviewed or relied upon by Chapterhouse *other than* works of Games Workshop in creating" the works at issue. Kaspar Decl., Ex. D at 8 (emphasis in original). As Chapterhouse has explained, it works with a number of independent designers. Documents within the possession of independent contractors are not within Chapterhouse's possession, custody or control, if indeed any exist, and Plaintiff does not even attempt to argue otherwise. If and when Chapterhouse obtains information or documents responsive to Plaintiff's discovery requests from them or from any other source, it will supplement its responses in accordance with Rule 26(e).

Plaintiff may take the position that Chapterhouse has an obligation to gather this information from its independent designers. When interrogatories are propounded on a party that is a corporation, partnership, association or governmental entity, Federal Rule of Civil Procedure 33 requires an agent or officer of that party to furnish "the information available to that party." "Rule 33 requires that a corporation furnish such information as is available from the corporation itself or from sources under its control." *Brunswick Corp. v. Suzuki Motor Co., Ltd.*, 96 F.R.D. 684, 686 (D.C. Wis. 1983) (ordering respondent to obtain information from its corporate subsidiaries to respond to interrogatory). "Courts analyzing a party's control of documents in the possession of a non-party affiliate look to several factors, including: (1) the party's and non-party's corporate structure; (2) the degree of ownership exercised by the parent over the subsidiary; (3) the financial relationship between the party and non-party; (4) the amount of overlap of directors, officers, and employees; and (5) the party's access to the non-party's documents in the ordinary course of business." *Wachovia Securities, LLC v. Loop Corp.*, 2008 WL 2625907, at *2 (N.D. Ill. 2008). Here, there is no relationship in corporate structure, no degree of ownership over the independent contractors, no financial connection (other than payment for services), and no overlap in directors, officers or employees between Chapterhouse and the independent designers. As to the fifth factor, Chapterhouse has already agreed to

6

produce communications with its independent designers that bear on the creation or design of the products, and this discovery will show that Chapterhouse did not routinely have access to the documents of its independent designers in the ordinary course of business. Indeed, Plaintiff does not even attempt to argue that the independent designers are under Chapterhouse's control, and cites no authority for the proposition that Chapterhouse must inquire of these third parties to satisfy Plaintiff's curiosity.

In order to find out what other works the independent designers "consulted, used, reviewed or relied upon in creating the works," it will be necessary to ask the independent designers themselves. Courts do not require parties to make such inquiries to answer interrogatories. *See Mortgage Now, Inc. v. Stone*, 2010 WL 235142, at *5 (N.D. Fla. Jan. 15, 2010) (denying motion to compel answers to interrogatories on the ground that the responding party would have to obtain the information from third parties, and the propounding party could obtain the information directly from third parties itself); *Susquehanna Commercial Finance, Inc. v. Vascular Resources, Inc.*, No. 1:09-CV-2012, 2010 WL 1780020, at *6 (M.D. Penn. April 30, 2010) (declining to order supplementation of an interrogatory answer where the propounding party "[wa]s not powerless in its efforts to extract further discoverable information from [the responding party] or even third parties who may have information … including through the use of depositions" and the responding party had agreed to supplement when and if it learned of new information); *Harry M. v. Pennsylvania Dept. of Public Welfare*, No. 1:10–cv–922, 2011 WL 53047, at *2 (M.D. Penn. Jan. 7, 2011) (denying motion to compel answers to interrogatories where the information was not within Defendant's possession, but instructing Defendant to answer with respect to information which should be within its possession).

As Plaintiff acknowledges, Chapterhouse has also produced documents within its possession, custody, or control responsive to Plaintiff's Document Request No. 9, and is producing communications with the designers of the works at issue in this case that relate to the creation and design of those works, as well as drafts, mockups, and images of the works in

7

progress in response to Plaintiff's Document Request Nos. 5 and 10, providing further insight into the creation and design of the works at issue.

Document Request No. 2 sought all documents "identified, reviewed or considered by Chapterhouse in preparing responses to each of Games Workshop's First Set of Interrogatories or that support or form any part of the bases of Chapterhouse's responses to each and every Interrogatory contained in Games Workshop's First Set of Interrogatories." Chapterhouse objected on several grounds. Plaintiff has not addressed Chapterhouse's objections that the request as written is vague and overbroad and seeks irrelevant material because it seeks all documents Plaintiff might have reviewed in trying to answer the interrogatories, whether or not those documents had any bearing on the answers given or were even relevant to the action. The request would further require Chapterhouse to form a conclusion about whether each and every document within its possession, custody or control might support its response to a given interrogatory. Notably, Plaintiff advances no argument in its brief that these documents should be produced, nor was this request the subject of either of its two prior motions to compel. To the extent Plaintiff's Motion can be read to encompass this request, it should be denied.

Plaintiff does not contest that its Interrogatory No. 7 seeks a subset of the information sought by Interrogatory No. 2. *Compare* Kaspar Decl. Ex C at 13, *with* Kaspar Decl. Ex A at 4. Rule 26 provides that duplicative discovery shall be "limited" by the court.

**B.      Chapterhouse's Responses to Plaintiff's Requests for Admission Were Timely**

Plaintiff asserts, without reference to the applicable rules or any effort to explain its calculations, that Chapterhouse served its responses to Plaintiff's First Set of Requests for Admission one day (or maybe three days) [11] late. Although it never mentioned this supposed deficiency in the intervening two and a half months, and never met and conferred about this issue, Donaldson Decl. ¶ 29. Plaintiff now asks the Court to deem its requests admitted as a

---

[11] Plaintiff's Motion contradicts itself on the due date of these responses, asserting both that they were due on September 21, 2011, Mot. at 6, and that they were due on September 19, 2011, Mot. at 12. Application of Fed. R. Civ. Proc. 6 establishes that both of these guesses are wrong.

8

sanction. Aside from Plaintiff's failure to meet and confer, or even make Chapterhouse aware of its position, Plaintiff has miscalculated the deadline. The responses were timely served.

Federal Rule of Civil Procedure 36 allows thirty days to respond or object to requests for admission. Fed. R. Civ. P 36(a)(3). Calculation of time for this and all other deadlines under the Federal Rules is governed by Federal Rule of Civil Procedure 6. Fed. R. Civ. P. 6(a). Under Rule 6, to calculate a deadline triggered by the serving of a document, one excludes the day the document was served. *Id.* According to its own certificate of service, Plaintiff served its Requests for Admission by U.S. Mail on August 19, 2011, and so the first counted day is August 20. One counts all days thereafter (regardless of whether they are holidays or weekend days) up to the thirty days specified by Rule 36. Rule 6(a)(2). The thirtieth day is thus Sunday, September 18, 2011. "[B]ut if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." In this case, that is Monday, September 19, 2011. However, Rule 6(e) requires that when the triggering document is served by mail, three days are added "after the period would otherwise expire under Rule 6(a)." Fed. R. Civ. P. 6(e). Adding three days to September 19 results in a deadline for response of September 22, 2011, the day Chapterhouse responded. Chapterhouse's responses were not late.[12]

C.  **Chapterhouse Properly Designated its Contractor Lists as Highly Confidential and Properly Objected to Plaintiff's Document Request No. 29 and Interrogatory No. 14 as Seeking Irrelevant Documents and Information.**

Plaintiff has already challenged Chapterhouse's designation of its lists of designers, manufacturers, and distributors as Highly Confidential. Chapterhouse moved for a protective order seeking to retain the designation because these closely-held lists were confidential

---

[12] Plaintiff does not address the merits of Chapterhouse's objections, relying only on its incorrect assertion that the objections were untimely. In any case, the objections are proper, particularly in the light of the other discovery Chapterhouse has responded to on the same issue. Chapterhouse cannot determine whether it has in its possession any third-party works on which its designers based any of the products without investigation of information beyond its control.

9

information vital to Chapterhouse's business. *See* Motion for Protective Order, August 15, 2011 (Docket No. 84). Judge Gilbert granted that motion, noting that Plaintiff had failed to rebut Chapterhouse's threshold showing of confidentiality, and had made no showing that it was harmed by the confidentiality designations. Minute Order, August 23, 2011 (Docket No. 94) at 2. Nothing has changed. In fact, Plaintiff concedes it has not even briefed the issue in its motion. Mot. at 9. Plaintiff has also not complied with the procedure outlined in the Protective order for challenging designation. Plaintiff argues that Magistrate Gilbert's decision was made "without prejudice to Games Workshop's ability to challenge the decision should it be able to show that the Highly Confidential designation unduly hampers its pursuit of this case." Mot. at 9. But it has not even attempted to make such a showing here. Plaintiff's request to de-designate Chapterhouse's sensitive competitive information should be denied.

Even if the Court were to entertain on its merits Plaintiff's request to compel de-designation of this vital information, that request should be denied. As Chapterhouse explained in its earlier motion to preserve its confidentiality designations, the Illinois Trade Secret Act includes in its definition of trade secrets "lists" of "actual or potential customers or suppliers." 765 ILCS 1065/2(d); Motion for Protective Order to Maintain Highly Confidential Designation, August 15, 2011, Docket No. 84 at 4. Even if one or more of the names on the list are known or discoverable, the list itself can still be a trade secret. Moreover, the interrogatory responses at issue include contact information, as well as bare names of contributors and manufacturers, further compromising privacy of those named on the lists. Finally, the Declaration of Gillian Stevenson in support of the Motion shows only that seven "likely designers" can be named from Internet searches. One of the seven is a designer who did not fear reprisal, asked that he be credited for his design, and was therefore identified in Chapterhouse's original motion to maintain the designations. *See* Docket No. 84 at n.5 (naming Zac Soden as a designer). Finally, Ms. Stevenson's asserts that she could find more likely designers if she only had the number of names she was supposed to be looking for. Plaintiff apparently believes that the number of names on the interrogatory response would constitute Highly Confidential information. But

10

Plaintiff's counsel put those numbers into the public record as part of Plaintiff's filings in this very Motion. *See* Kaspar Decl., Exhibit I (Docket No. 117-5, page ID #961.)

Plaintiff's Document Request No. 29 and Interrogatory No. 14 also seek information relating to the fear of reprisal that those who work with Chapterhouse have expressed. Plaintiff admits that it seeks this information only to test the validity of Mr. Villacci's declaration on the collateral matter of third parties' fear of reprisal for the purposes of attacking the confidentiality designation that Magistrate Gilbert upheld. These discovery requests are not relevant to any issue in this case and the motion to compel them should be denied.

**D.  Other Discovery Issues**

Plaintiff's motion raises a handful of additional purported issues, none of which have merit.

**1.  Chapterhouse Responded to Plaintiff's Interrogatory No. 8.**

Plaintiff served its Interrogatory No. 8 seeking "the meaning and derivation of the name 'Chapterhouse' and identification of all sources consulted, used, reviewed or relied on" in selecting the name. Chapterhouse answered the question as to its meaning by reference to the Oxford English Dictionary, and identified its source for the name. Kaspar Dec. Ex. C, at 15. It is unclear what else Plaintiff seeks. Notably, Plaintiff claims no interest in the word Chapterhouse, nor has it asserted that it has ever used the word in connection with any of its works. Chapterhouse has adequately responded to this Interrogatory, particularly given its questionable relevance to any issue in the case.

**2.  Plaintiff Misstates the Record Regarding its Interrogatory No. 12.**

As Plaintiff notes, Chapterhouse agreed to produce documents in response to Interrogatory No. 12. Kaspar Decl. Ex. C at 20. Plaintiff, however, misstates the scope of this response. Plaintiff inaccurately claims that Chapterhouse has agreed to produce all documents referring or relating to Plaintiff. Motion at 9-10. Chapterhouse agreed to respond to Interrogatory No. 12 with documents it agreed to produce in response to Request No. 26. Kaspar Decl. Ex. C at 20. In that response, Chapterhouse objected that the request for all documents

11

mentioning or concerning Plaintiff was overbroad, but agreed to produce documents relating to consumer confusion between Chapterhouse and Games Workshop. Kaspar Decl. Ex D at 22. Rather than address this issue, Plaintiff has misrepresented Chapterhouse's response and asked this Court for an order directing a broader response to Interrogatory 12 and Document Request 26. In any event, the discovery is overbroad and unduly burdensome, and would require Chapterhouse to review all of its customer communications for references to Plaintiff's claimed trademarks and other terms. Plaintiff claims it needs this information because it will tend to show "the genesis of much of the copying by Chapterhouse." Mot. at 10. But at the same time, Plaintiff acknowledges that Chapterhouse has agreed to provide a narrative description of how it selects products for development, which will provide this same information.

    **3.    Chapterhouse Agreed to Supplement its Answer to Plaintiff's Interrogatory No. 5.**

As Plaintiff's motion indicates, during the parties' first meet-and-confer on this issue on November 29, Chapterhouse agreed to supplement its answer to Interrogatory No. 5 to provide, a narrative explanation of the typical way or ways in which Chapterhouse selects potential new products for creation and development.

    **4.    Chapterhouse Has Satisfied Document Requests Nos. 14 and 17.**

Document Request 14 seeks documents sufficient to identify any and all businesses or venues where any of the Accused works had been offered for sale or sold. Chapterhouse provided this information in its answer to Interrogatory No. 9. Document Request No. 17 seeks documents sufficient to identify any and all businesses or venues where any of the Accused works had been offered for sale or sold. Chapterhouse provided this information in its response to Interrogatory No. 10. Plaintiff did not bring up this issue during the meet-and-confer on November 29. Plaintiff provides no reason that this is not a sufficient response to these Document Requests.

### 5. Document Request No. 15 Is Overbroad and Unduly Burdensome.

Document Request No. 15 seeks "Any and all documents or things in Chapterhouse's possession, custody or control concerning any sales of Chapterhouse's products on eBay or in any other secondary market." In its motion, Plaintiff explains that it seeks "sales volumes in specific venues such as eBay or Barterhouse."[13] But the request as written is much broader, and even on the day it filed its motion Plaintiff maintained that the request called for "sales data and communications with the sites or showing how the products were promoted on such sites. This might also include customer feedback or interaction arising from such marketing."[14] Donaldson Decl. ¶ 28 & Ex. 13. The request as written is not limited to the works at issue in the case, and potentially encompasses all communications with all customers serviced through eBay or any other secondary channels, whether by Chapterhouse itself or another party. During the November 29, 2011 meet-and-confer, Chapterhouse specifically explained that the request as drafted was overbroad and asked Plaintiff to identify what specific documents it was seeking. Plaintiff said it would respond to Chapterhouse on this issue. Instead it filed this motion.

### 6. Chapterhouse Has Agreed to Produce Documents Responsive to Document Requests Nos. 16, 18, and 19.

As it stated during the November 29 meet-and-confer, Chapterhouse has already produced documents responsive to Document Request No. 16. If additional documents are located during Chapterhouse's reasonable, diligent search for responsive documents, they too will be produced. Similarly, Chapterhouse has agreed to produce documents responsive to Requests Nos. 18 and 19. It is unclear why Plaintiff included these three requests in its Motion.

### 7. Chapterhouse Should Not Have to Produce Every Document Relating to Every Change on its Website. (Document Request No. 20)

Request No. 20 seeks "any and all documents or things … concerning any changes to Defendant's website … on or after December 22, 2010." Kaspar Decl. Ex. D at 18.

---

[13] Despite Plaintiff's repeated insistence that "Barterhouse" is one of the places it first learned Chapterhouse was selling its products, Chapterhouse has never heard of, let alone sold products through, anything called Barterhouse.

[14] This is the first time Plaintiff had expressed a willingness to compromise on its overbroad Request No. 15.

Chapterhouse has agreed to produce documents concerning changes to the banner at the top of the page (in response to Plaintiff's Request No. 19) and the information at the bottom of the page (in response to Plaintiff's Request No. 18), and has already produced a copy of its website. It is unclear what else Plaintiff seeks with this request. In its Motion, Plaintiff characterizes Chapterhouse's Response to Document Request No. 20 as claiming "that all responsive documents are privileged." This is wrong: Chapterhouse's response to the request states in relevant part "Chapterhouse further objects to this request *to the extent* it seeks documents and things covered by the attorney-client privilege or the attorney work-product doctrine." Kaspar Decl. Ex. ___ (emphasis added). Chapterhouse also properly objected that this request, seeking "all" documents concerning "any" changes to Chapterhouse's website over the last year, is overbroad. Further, changes that Plaintiff claims operate as an admission of liability are likely not admissible for that purpose as subsequent remedial measures. *See* Fed. R. Evid. 407. Plaintiff has failed to respond to the substance of Chapterhouse's objections to this request, failed to address it during the November 29, 2011 meet-and-confer, and the Motion should be denied as to this request.

### 8. Chapterhouse Has Already Reported that there Are No Documents Responsive to Document Request No. 21.

Chapterhouse reported to Plaintiff on November 29 that it had not located any documents responsive to this request, which sought "Any and all documents concerning metrics for defendant's website." Chapterhouse explained this during the meet-and-confer on November 29. Chapterhouse does not have an obligation to create documents to respond to a document request. *See U.S. v. Dish Network, LLC*, 2011 WL 98951, at *5 (C.D. Ill. Jan. 10, 2011) ("Rule 34 does not require a recipient to compile data or generate new documents.")

### 9. Document Request No. 25 is Overbroad and Plaintiff Refused to Narrow It.

Document Request No. 25 seeks any and all documents or things in Chapterhouse's possession, custody or control concerning "consumer perceptions" of Chapterhouse or its products. Plaintiff confirmed as recently as the morning it filed its Motion that it views

14

Document Request No. 25 as calling for any and every communication or other document reflecting consumer perception of Chapterhouse or its products. Donaldson Decl. Ex. 13. Responding to this request would require Chapterhouse to review each and every message from the public, and all internal documents reflecting to customer service and on that basis is overbroad and unduly burdensome. Further, the request is not limited to the 106 works Plaintiff sued over, adding to its overbreadth and decreasing the likelihood that responsive documents would be relevant. During the November 29 meet-and-confer, Chapterhouse explained this, explained that no surveys or formal reports of customer satisfaction exist, and asked whether Plaintiff could narrow its request or explain what it was looking for. Plaintiff initially agreed to investigate whether the request could be narrowed, but later repudiated that agreement.

## V. CONCLUSION

Plaintiff has concocted issues to put before this Court where none exist. In the few cases in which a genuine disagreement exists, Plaintiff seeks discovery that is overbroad, unduly burdensome, duplicative and irrelevant to any claim. With respect to Chapterhouse's responses to Plaintiff's Requests for Admission, Plaintiff has simply miscalculated the deadline, compounding its error with its failure to meet and confer on the issue. Plaintiff's Motion should be denied in its entirety.

CHAPTERHOUSE STUDIOS LLC

By: /s/
Jennifer Golinveaux (CA Bar No. 203056)
J. Caleb Donaldson (CA Bar No. 257271)
Thomas J. Kearney (CA Bar No. 267087)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Phone: (415) 591-1000
Fax: (415) 591-1400
jgolinveaux@winston.com
jcdonaldson@winston.com
tkearney@winston.com

Eric Mersmann (IL Bar No. 6286859)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600
Fax: (312) 558-5700
emersmann@winston.com

*Attorneys for defendant Chapterhouse Studios LLC*