**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED, <br><br>                            Plaintiff, <br><br> v. <br><br> CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES <br><br><br>                            Defendants. | Civil Action No. 1:10-cv-8103 <br><br> Hon. Matthew F. Kennelly <br> Hon. Jeffrey T. Gilbert |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL AND CROSS-MOTION TO COMPEL**

Plaintiff Games Workshop Limited ("Games Workshop"), by and through its undersigned counsel, respectfully submits this Memorandum in opposition to the Motion to Compel of Defendant Chapterhouse Studios LLC ("Chapterhouse") and in support of its cross-motion to compel responses from Chapterhouse.

## INTRODUCTION

1.    For the third time Defendant has made a discovery motion in total disregard of Local Rule 37.2. And as with all three of defendant's prior discovery motions, the present motion is again premised on utterly false characterizations of the record and discovery issues that had already been resolved. Indeed, on January 3, Games Workshop confirmed with Chapterhouse that although Games Workshop's offices were closed over the Christmas week, it was pressing forward to complete its review of 25 years' of files to comply with the Court's December 23 order. (It is now able to respond to many but not yet all of the specific requests addressed in the Court's order.) Chapterhouse then sent one peremptory demand letter on

January 5 (utterly ignoring the two emails the undersigned counsel sent on December 30 and January 3 that already answered the questions raised), and without even awaiting a response, three days later filed this motion. The letter did not even purport to set a deadline for a response by a date certain on threat of a motion (not that such a peremptory demand would excuse this or any of Chapterhouse's prior violations of Local Rule 37.2); nor was it followed by the courtesy of a phone call.

2. Obviously, Games Workshop, as plaintiff in this action, has every incentive to complete discovery as quickly as possible so that it can move to summary judgment and, if necessary, trial. It is Chapterhouse that has the incentive to delay (in attainment of which it is evidently content to have the Court declare a pox on both houses), and despite its pleas of being a small entity, it is represented by a team of some half dozen lawyers or more at a major firm, whereas Games Workshop has essentially only two lawyers working on the case.

3. Games Workshop views the present motion (and Chapterhouse's prior motions) largely if not entirely as litigation stratagems to divert attention from its own almost complete failure to comply with its discovery obligations and this Court's orders. Unlike Games Workshop, Chapterhouse has obvious motives to delay and obstruct completion of discovery. Indeed, although Chapterhouse has been in existence for only three years, and presumably therefore does not have nearly the extensive base of documents that Games Workshop has, it has been unable to produce a single document showing independent creation in the six months since the Court ordered it to do so on July 6 (and ten months since the requests were first served), is now impatient that it has taken Games Workshop one week to review twenty five years of records regarding the genesis of its products. Similarly, in the almost eight months since Games Workshop requested production of the artwork for creation of the 86 products originally in issue

2

(excluding the new products Chapterhouse has launched since suit commenced), Chapterhouse thus far has produced documents relating only to about 16 products. Even these (which Games Workshop received after the December motion was argued) it has designated attorneys-eyes-only, thus making it impossible for Games Workshop to share them with its client's in-house counsel or move the case forward. Moreover, as shown below, now that Chapterhouse has finally begun its belated production of documents concerning its primary defense (independent creation) (Kaspar Decl., Ex. D), it is clear those documents only show Chapterhouse's intent to copy or come as close as the law will allow, hence explaining its desire now to set yet another roadblock in the path of orderly completion of discovery.

4. For these reasons and those set forth below, Games Workshop requests that the motion be stricken for violation of Local Rule 37.2. The motion also should be denied because Games Workshop is in complete compliance with this Court's December 23 Order, and the remaining odd assortment of requests Chapterhouse cites. To the extent the Court is prepared to address outstanding discovery issues without regard to strict compliance with Local Rule 37.2, Games Workshop cross moves to compel production from Chapterhouse of discovery responses it has failed to provide.

5. Nor is there any reason for Chapterhouse's sudden urgent demands, as it has just served on Friday night, January 6, an additional 92 admission requests (Nos. 376 to 467), 17 document requests (Nos. 45 to 61) and 5 interrogatories (Nos. 18 to 22). Thus, at the earliest, Games Workshop will not have completed its basic discovery responses until the second week of February, only after which will Chapterhouse apparently be able to commence depositions. Moreover, Chapterhouse has utterly ignored Games Workshop repeated offers to produce Games Workshop's witnesses in Chicago – most recently for various dates in January (Kaspar Decl., Ex.

A) – yet now dishonestly accuses Games Workshop of refusing to cooperate in scheduling depositions. With more than two months remaining for discovery the only reason to set an arbitrary deadline of January 23 to complete document production is to unfairly prejudice Games Workshop. Certainly there is no reason to link the parties' discovery obligations, and Games Workshop is also rushing to comply with the January 19 deadline to amend its complaint. Each should proceed with all diligence. Indeed, Chapterhouse has repeatedly used such linkage as a basis to delay discovery (such as by refusing to produce for deposition a document custodian, which Games Workshop repeatedly has said would be a hour-long telephonic examination, until Games Workshop produces its witnesses in Chicago, a problem compounded by Chapterhouse's refusal to agree to any of the dates proposed by Games Workshop for such depositions) (Kaspar Decl., Ex. A).

6. A further and even greater threat to delay completion of discovery is that Chapterhouse concealed until the filing of its December 7, 2011 brief opposing Games Workshop's motion to compel, that it claimed not to have access to or control of the third-party designers who developed the accused works. On December 15, it also refused to produce any documents (as requested by Games Workshop) to disclose the nature of its relationship with them. Thus, although Games Workshop had expected to be near the close of discovery when Chapterhouse, after ten months, agreed finally to produce the creation documents, only now do we learn that the creation documents are spread among twelve or more locations around the planet and that Chapterhouse's interrogatory answers improperly fail even to disclose which designer created which products.

7. The December 23 order did set some specific dates (i) for Chapterhouse to respond to specified discovery requests (Nos. 16, 18 and 19) and (ii) for Games Workshop to produce its

settlement agreement with Mr. Paulson. Games Workshop undisputedly complied with this deadline and is now diligently working to complete all remaining discovery. For reasons explained below (¶¶ 9-19, *infra*) it would be Chapterhouse that has not met its specified deadlines. As such, and given Chapterhouse's other ongoing failures, it is not in a position to complain or insist on new artificial deadlines, particularly given its awareness that Games Workshop had essentially only one week to respond to the Court's Order before being faced with this improper motion in violation of Local Rule 37.2.

8.      It is also astonishing to Games Workshop that Chapterhouse can accuse plaintiff of refusing to cooperate in scheduling depositions, given that Chapterhouse itself has refused for months now to produce a document custodian for a simple one-hour telephonic deposition that Games Workshop first noticed on August 31. To be sure, Games Workshop agreed to defer the deposition during September and October when Magistrate Judge Gilbert essentially stayed discovery and when Chapterhouse repeatedly promised to produce at least the alleged independent creation documents. But when Chapterhouse finally did produce a tiny number of documents (essentially five email chains for five products), Chapterhouse then refused to make the witness available as requested in November, when he was present in Chicago for the settlement conference, and has since refused every overture to set a date. Instead, it insists on improperly linking the timing of this initial (minimal) deposition to setting the dates for Games Workshop's depositions (in connection with which it has failed even to respond to the various dates proposed). *See* Kaspar Decl., Ex. A.

## I.      GAMES WORKSHOP IS IN COMPLIANCE WITH THE COURT'S DECEMBER 23 ORDER

9.      The Court's December 23 Order directed Games Workshop to respond to the following specific Requests 2, 8, 11 and 38. Although Games Workshop was closed during the

Christmas holiday, Games Workshop has pressed forward with its review of 25 years' of files to determine what additional documents, if any, should be produced. The December 23 Order directed Games Workshop to deliver to the Court its settlement correspondence with Mr. Paulson by a date certain, but the Court did not set specific deadlines for the production of all other categories of documents implicated by the Order. Rather, the Court advised the parties at the December 19 hearing to meet and confer regarding a timeframe for producing documents. Instead, Chapterhouse brought this needless motion just days after Games Workshop advised Chapterhouse that it was taking appropriate steps to comply with the December 23 Order. As shown in the following paragraphs, Games Workshop is in compliance with the Court's Order..

10. Document Request 2. Chapterhouse's proposed January 23 deadline for Games Workshop to complete its review of the 25-year history of creation of the WARHAMMER 40,000 is utterly arbitrary. Although, understandably, the parties need to move with diligence, if Chapterhouse has a particular need to receive the documents by a specific date, it should have conferred with Games Workshop prior to filing this motion. Although Games Workshop is working as fast as it can, and not only has already produced the documents it has been able to retrieve from its archives, there is certainly no reason to set a cut-off before responses are even due (in the second week of February) to Chapterhouse's recently served 92 admission requests (Nos. 376 to 467), 17 document requests (Nos. 45 to 61) and 5 interrogatories (Nos. 18 to 22). Nonetheless, although assembly of documents has needlessly been delayed this week by the requirement to respond to this motion (and although Games Workshop is also working to amend its complaint next week) has already produced the materials it has assembled thus far (Bates Nos. GW0003339-3405).

11.    Document Requests 8 and 11.  Games Workshop is completing assembly of any additional specimens of trademark use and copyright.  As noted above, although Games Workshop is eager to complete discovery to move for summary judgment, Chapterhouse's January 23 deadline is simply arbitrary.

12.    Interrogatory 9.  Games Workshop has sufficiently completed its review of the creation of the WARHAMMER 40,000 universe to confirm it is aware of no references to any third party works.

13.    Names of authors.  The Court did not instruct Games Workshop that it was required to produce additional authorship information beyond what has already been produced.  However, if there are specific works as to which Chapterhouse requests such additional information, plaintiff would be happy to provide it.  (In the meantime, Chapterhouse presumably is well aware it can serve a 30(b)(6) notice covering creation of specific works.  Its contention that it can not proceed with depositions is not correct.)

14.    Correspondence regarding Chapterhouse.  Although Chapterhouse does not identify the specific requests it contends Games Workshop has not answered, the fact is Games Workshop has already produced such documents, including the initial correspondence to Games Workshop identifying Chapterhouse's infringements (Bates Nos. GW0002546-52, 2572-75).

15.    Document Request 38[1].  Now that Games Workshop's in-house counsel is aware of the identities of Chapterhouse's third-party designers, Games Workshop has completed its review and found no correspondence with any of them.

16.    Privilege Log.  Games Workshop advised Chapterhouse on December 30 that Games Workshop was not aware of any privileged documents that needed to be identified on a

---

[1] Although the Court's December 23 Order referred to Document Request 28, this was understood in context to mean Request 38 regarding possible correspondence between Games Workshop and Chapterhouse's independent designers.

privilege log. Golinveaux Decl., Ex. E. Chapterhouse declined to respond to Games Workshop's inquiry why it believed, to the contrary, there existed any privileged documents and instead simply filed this needless motion. Had Chapterhouse mentioned the two instances in Games Workshop's production in which some portions of produced documents had been redacted, Games Workshop could have easily responded. Indeed, now that Chapterhouse has articulated the basis for its question, Games Workshop has already served a privilege log on Chapterhouse with respect to the two redacted items. (For its part, Chapterhouse has produced no privilege log.)

17. Document Request 22. The principal document showing a connection between Mr. Paulson and Chapterhouse was a blog posting that has since been removed from the Internet, but is now irrelevant given the settlement with Mr. Paulson. Nor is there any doubt Mr. Paulson had a business relationship with Chapterhouse (*see*, *e.g.* Kaspar Decl., Ex. B at 20). Moreover, pursuant to the Court's December 23 order, Games Workshop delivered a complete set of its correspondence with Mr. Paulson's counsel, which the Court deemed inadmissible. Games Workshop has produced to Chapterhouse's counsel a copy of its settlement agreement with Mr. Paulson pursuant to the Court's December 30 order.

18. Document Requests 31 - 33. Games Workshop has already produced the documents of which it is aware that are responsive to these requests. *See* Bates Nos. GW0002408-2571.

19. Organizational charts and copyright registration. Games Workshop told Chapterhouse only days before it filed this needless motion it has produced the organizational charts responsive to its requests. Kaspar Decl., Ex. C. Games Workshop had also been under

the impression it had long ago produced the copyright registration mentioned in the complaint. Removing any doubt, a fresh copy has been produced (Bates Nos. GW0003406-07).

## II.    GAMES WORKSHOP'S CROSS-MOTION TO COMPEL

20.    Games Workshop would not have initiated motion practice at this time without a meet and confer.[2]  However, to the extent that the Court would prefer to have matters resolved irrespective of Local Rule 37.2, and simply to allow Games Workshop to place in context the improper nature of Chapterhouse's motion, Games Workshop must advise the Court of Chapterhouse's continuing failure to respond to the most basic discovery – including Interrogatory 15 or the admission requests served on August 19 (*see* Note 2, *supra*) that Games Workshop served in lieu of a motion to compel.  The Court instructed Chapterhouse in its December 23 Order to answer Interrogatory 15, but no response has been forthcoming.  The Court simply did not address in its December 23 Order Chapterhouse's refusal to answer any of Games Workshop's admission requests.

21.    Similarly, although Chapterhouse promised Games Workshop before the parties filed their December cross-motions that it would provide an answer to Interrogatory 13 and Document Request 27 (*see* Ex. F to Plaintiff's December 7, 2011 Response, Dkt. 130-2 at 15), seeking an explanation of the basis for its 23 affirmative defenses and any documents relied upon to support those affirmative defenses, no responses have been forthcoming.  The same is true regarding Interrogatory 5, which seeks Chapterhouse's methods of doing business and selecting new products.  Although Chapterhouse promised to supplement its answer to Interrogatory 5 (*see id.*), it has failed to do so.

---

[2] In August, rather than respond in kind to Chapterhouse's discovery motion filed in violation of Local Rule 37.2, Games Workshop instead served Admission Requests intended to confirm Chapterhouse's non-compliance with the Court's July 6 instructions to produce its alleged "independent creation" documents.

22. Among the 23 boilerplate defenses Chapterhouse has asserted is its primary defense of "independent creation". Although Chapterhouse has produced documents concerning 5 products in which it acknowledged in emails that it was trying to come as close as the law would allow to Games Workshop's original copyrighted works (*See*, *e.g.*, Kaspar Decl., Ex. D at 9[3]; Ex. B at 3[4] & 9[5]) it has yet to show that any one of its products was conceived *independently* of Games Workshop. To the contrary, the documents are the very antithesis of independent creation. Nor are there any documents even purporting to show independent sources of *inspiration*. Rather, the only outside "inspiration" shown in any of the documents are requests from Warhammer 40,000 fans seeking variations on products already created by Games Workshop. (*See*, *e.g.*, Kaspar Decl., Ex. D at 11[6]) This is consistent with the statement on Chapterhouse's website that it "specialize[s] in ideas submitted by our customers and creating pewter and resin bits to fit their armies".[7] It also calls special attention to Chapterhouse's failure to answer Interrogatory 5 (concerning its methods of identifying new products for development). Of course, every product it sells is marketed under the names of Games Workshop's characters and/or the names of Games Workshop's corresponding products. Not a single product is sold on its own merit. However, after ten months since Games Workshop commenced discovery, and after the Court instructed Chapterhouse as early as July 6 to produce its independent creation documents, Chapterhouse can not be permitted to evade such basic discovery obligations to explain the basis for its primary defense (or should be precluded from offering any further evidence).

---

[3] *See also* Exhibit G.
[4] *See also* Exhibit G.
[5] *See also* Exhibit G.
[6] *See also* Exhibit G.
[7] *See* http://chapterhousestudios.com/index.php?route=information/about.

23. As the Court noted in its December 23 order, Chapterhouse's counsel was unable at the December 19 hearing to explain the discrepancies among its responses to Interrogatory 2 (listing the alleged independent sources for its accused works) and document requests 9 and 10 (seeking the actual source documents on which Chapterhouse relied in designing the accused products). The discrepancies remain unanswered. Once again, Games Workshop believes Chapterhouse should be required to produce the documents upon which it bases its defense of independent creation, including any documents supporting its response to Interrogatory 2, or else be precluded from relying on independent creation as a defense. It cannot have it both ways. Moreover, although the Court did not compel Chapterhouse to produce documents from its allegedly independent third-party designers, Chapterhouse concealed from the Court prior to the December 19 hearing that only 3 days earlier, it had served by mail the attached response to Games Workshop's Document Request 29 (Kaspar Decl., Ex. E), seeking documents showing the actual relationship between Chapterhouse and these designers. By mailing the responses rather than serving by email (as Games Workshop always does when it responds to discovery), Chapterhouse prevented Games Workshop from alerting the Court at that time that defendant had refused to provide the information bearing on its contention it has no control over the designers. Moreover, Chapterhouse's legal argument, never before raised (and to which Games Workshop never had an opportunity to respond) incorrectly cited cases concerning the relationship between parent and subsidiary corporations. That plainly is not the relationship between Chapterhouse and its designers, yet Chapterhouse refuses to produce the documents that would show the actual relationship. Indeed, had Chapterhouse disclosed its theory (and made known its refusal to produce the relevant facts), Games Workshop would have been able to clarify that a party's duty to produce documents from third parties is entirely fact-specific, and

based on the *practical* ability to obtain such information, not bare abstract legal theories. *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160-61 (3d Cir. 2004) ("Under these circumstances, we find the documents were plainly within the control of the 'prime contractor' (in this case, the Intermediary). In the context of Fed.R.Civ.P. 34(a), so long as the party has the legal right *or ability* to obtain the documents from another source upon demand, that party is deemed to have control."(emphasis added)); *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 928-29 (1st Cir. 1988) ("This cooperation pact put [third party's] information — including the Report — at [appellee's] disposal and, constructively, in its possession. Accordingly, appellee had a duty to make inquiry of [third party] before answering the interrogatories and responding to the requests for production."); *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179; 195, 2007 U.S. Dist. LEXIS 6198 ("Under Rule 34, 'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or *practical ability* to obtain the documents from a non-party to the action." (emphasis added)). As the court further explained in *In re NTL*:

> Moreover, defendant NTL Europe's CEO demonstrated that NTL Europe had the simple "practical ability" to obtain the relevant documents from New NTL; he testified that "[w]henever there was a document that we needed [from New NTL] . . ., we would call [New NTL] and ask if they had it, and if they had it, they'd send it."

*Id.* at 195-96. The actual legal standard confirms why Chapterhouse should be compelled to respond to Document Request 29 to disclose the actual terms of its relationships with the designers …and to produce the documents from the designers. (Based on the documents produced to date (*see*, *e.g*., Kaspar Decl., Exs. B & D), Games Workshop suspects the real reason for Chapterhouse's refusal to produce the documents is that they will further demonstrate deliberate copying.)

24.    Alternatively, if Chapterhouse has no control over its designers, it should likely be precluded from relying on any evidence in the possession of the designers to prove independent creation.  Indeed, unless Chapterhouse has a right to control the design process and to know the documents and sources on which the designers rely, it simply can not contend that any of the designs were independently created.  (Moreover, if Chapterhouse has so little control over its designers, then it has also presumably waived attorney-client privilege by disclosing attorney advice to the designers (*see*, *e.g.*, Kaspar Decl., Ex. B at 6[8]).

25.    A further consequence of Chapterhouse's concealment (until its December 7 brief) of its contention that it had no control over the designers is that, for months, Games Workshop expected it ultimately would receive all "creation" documents from Chapterhouse without a need to subpoena the third-party designers.  (Nor could Games Workshop's litigation counsel even *discuss* any issues concerning the designers with its client given Chapterhouse's improper confidentiality designation.)

26.    Now that the confidentiality designation has been removed and Chapterhouse has disclosed its position that it has no control over the designers, Games Workshop has begun to subpoena the designers.  However, as set forth in Games Workshop's January 4 email (Kaspar Decl., Ex. F), Chapterhouse's answer to Interrogatory 3 improperly identifies the designers of only 16 or so of its accused products.  This issue was of less concern when Games Workshop understood it would be getting all of the documents from Chapterhouse, but now is a major concern (particularly given that most of these parties are abroad) and stymies Games Workshop's ability to target the designers of principal interest.  Despite Games Workshop's January 4 email requesting at the very least that Chapterhouse supplement its interrogatory response to identify the products designed by each, Chapterhouse has not done so.

---

[8] *See also* Exhibit G.

27.    On August 31, given the nearly complete failure of Chapterhouse to produce any documents (other than screen captures of its own public website, which Games Workshop hardly needed) Games Workshop served a 30(b)(6) notice to take the deposition of Chapterhouse's document custodian.  Games Workshop agreed to defer the deposition during the period from September to early November when Magistrate Judge Gilbert essentially stayed discovery and when Chapterhouse repeatedly promised to produce at least the alleged independent creation documents.  But when Chapterhouse finally did produce a tiny number of documents (essentially five email chains for five products), it then refused to make the witness available in November when he was present in Chicago for the settlement conference and has since refused every overture to set a date.  *See*, *e.g*., Kaspar Decl., Ex. A.

28.    On December 15, Chapterhouse served 2,800 documents purporting to respond to two requests: Document Request 10 (concerning the creation of the accused works) and Request 5 (constituting its correspondence with the independent designers).  Attached as Exhibit B (filed under seal) are representative samples of the documents.  Although these documents do demonstrate deliberate copying (or, minimally, an intent to come as close to the line as the law will allow), there are no trade secrets or other confidential materials in these or any of the documents.  Accordingly, on January 3, Games Workshop requested that Chapterhouse de-designate the materials so they can be shared with Games Workshop's in-house counsel. Kearney Decl., Ex. G.  However, Chapterhouse has not complied.  Just as Chapterhouse's original attorneys-eyes-only designation of all information about the designers stalled discovery about the designers for many months, the inability to share such documents with Games Workshop's in-house counsel continues to delay progress of discovery.

14

29.    The Court's December 23 order specified that Chapterhouse should respond to Games Workshop's Request 20 concerning specific changes to its website.  In its January 3 email (Kearney Decl., Ex. G), Games Workshop specified that the request could be limited to changes to the disclaimer shortly after this lawsuit was filed, and the recent decision to change the overall look and feel of the site, including the decision to delete the banner about "Custom Sculpts and Bits for Warhammer 40,000" and changes to the descriptions of the products.  To date, no response has been forthcoming.  Chapterhouse thus should be ordered to comply with the request as narrowed by Games Workshop.

30.    Although Chapterhouse has stated (in a January 6 email) that it has produced documents as ordered by the Court on December 23 in response to Requests 16 (advertising), 18 (creation of the disclaimer on its website) and 19 (creation of the banner citing Warhammer 40,000 on its website), Games Workshop is aware of no such documents.  It would have been a very simple thing for Chapterhouse to identify the Bates number of the documents (as it agreed to do before the December motion with respect to the advertising) but it never did.

31.    Privilege Log.  Although Chapterhouse has needlessly filed a motion faulting Games Workshop for a seemingly modest oversight that has already been corrected, it has in the meantime failed to produce a privilege log of its own.  Rather than delay production of its own privilege log by linking the date of production to Games Workshop's production,, it should simply produce the log now – or, if it needs more time, make a straightforward request.

<u>CONCLUSION</u>

**WHEREFORE**, Games Workshop respectfully requests that the Court deny Chapterhouse's motion in its entirety, or simply strike the motion as having been filed in violation of Local Rule 37.2, and grant such other and further relief as the Court deems appropriate and just.

15

Dated:  January 13, 2012                    Respectfully submitted,


/s/  Scott R. Kaspar

    Scott R. Kaspar (Ill. Bar No. 6284921)
    Aaron J. Weinzierl (Ill. Bar No. 6294055)
    FOLEY & LARDNER LLP
    321 North Clark Street, Suite 2800
    Chicago, IL 60654-5313
    Telephone:  312.832.4500
    Facsimile:  312.832.4700
    Email:  skaspar@foley.com;
    aweinzierl@foley.com

    Jonathan E. Moskin
    FOLEY & LARDNER LLP
    90 Park Avenue
    New York, New York 10016
    Telephone:  (212) 682-7474
    Facsimile:  (212) 687-3229
    Email:  jmoskin@foley.com

    *Attorneys for Plaintiff*
    *Games Workshop Limited*

## <u>CERTIFICATE OF SERVICE</u>

   I, Scott R. Kaspar, an attorney, hereby certify that on January 13, 2012, I caused to be filed electronically the foregoing PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

        /s/ Scott R. Kaspar