**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES, | ) | Judge Matthew F. Kennelly |
| | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S
ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

Chapterhouse Studios LLC ("Chapterhouse") hereby answers the Second Amended Complaint ("SAC") of Games Workshop Limited ("GW") and denies every allegation therein except where expressly admitted:

**PARTIES AND JURISDICTION**[1]

1.      Games Workshop Limited is a United Kingdom corporation and a subsidiary of Games Workshop Group, plc, which has numerous store locations in and around Chicago, Illinois, which is its single largest selling market in the United States.

        **ANSWER:**    Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 1 and therefore denies them.

2.      Upon information and belief, Chapterhouse Studios LLC is a Texas limited liability company with offices at 3930 Glade Road, Suite 108 #174, Colleyville, Texas, 76034.

        **ANSWER:**    Chapterhouse admits it is a Texas limited liability company.

---

[1] For the Court's convenience, Chapterhouse reproduces headings and subheadings from the SAC. Chapterhouse does not thereby concede, affirm, or otherwise adopt any of those headings.

Chapterhouse denies the remaining allegations in paragraph 2.

3.     Upon information and belief, Jon Paulson is an individual and the principal owner of Paulson Games, having an address at 2232 College Road, Downers Grove, Illinois, 60516.

**ANSWER:**   Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 3 and therefore denies them.

4.     This is an action for copyright infringement under 17 U.S.C. § 101 *et seq.*; trademark infringement under 15 U.S.C. § 1114(1) and Illinois common law; for use of false designations of origin under 15 U.S.C. § 1125(a); for dilution under 15 U.S.C. § 1125(c) and 765 ILCS 1036/65; for violation of the Illinois Deceptive Trade Practices Act under 815 ILCS 510/1 *et seq.*; for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act under 815 ILCS 505/2 *et seq.*; and for unfair competition under Illinois common law.

**ANSWER:**   Chapterhouse admits that the SAC purports to state claims for copyright infringement under 17 U.S.C. § 101 *et seq.*; for trademark infringement under 15 U.S.C. § 1114(1); for use of false designations of origin under 15 U.S.C. § 1125(a); for dilution under 15 U.S.C. § 1125(c); for violation of 765 ILCS 1036/65, 815 ILCS 510/1 *et seq.*, and 815 ILCS 505/2 *et seq.*; and for trademark infringement and unfair competition under Illinois common law. Except as expressly admitted, Chapterhouse denies the allegations in paragraph 4 and specifically denies any wrongdoing.

5.     This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over the claims arising under the statutory and common law of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

**ANSWER:** Jurisdiction is a legal conclusion to which no response is necessary. To the extent a response is necessary, Chapterhouse denies the allegations in paragraph 5.

6.     The Court has personal jurisdiction over Defendants because, upon information and belief, each of the Defendants sells and offers to sell infringing products within this jurisdiction; because Defendant Chapterhouse maintains an interactive commercial website through which Illinois residents are able to make purchases of the subject infringing goods; because Defendant Paulson has his principal place of business in this jurisdiction; and because, at all times material to this action, each of the Defendants was the agent, servant, employee, partner, alter ego, subsidiary, and/or joint venturer of each of the other Defendant; certain of the material acts of the Defendants were performed in the scope of such relationship; in doing the acts complained of herein, each of the Defendants acted with the knowledge, permission, and/or consent of the other Defendant.

**ANSWER:** Personal jurisdiction is a legal conclusion that does not require a response. To the extent a response is necessary, Chapterhouse denies the allegations relating to personal jurisdiction. Chapterhouse lacks sufficient information as to the allegations relating to the other defendant to admit or deny them, and therefore denies them. Chapterhouse denies the remaining allegations in paragraph 6.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the Defendants reside in this District and because a substantial part of the events giving rise to the claims occurred in this District.

**ANSWER:** Proper venue is a legal conclusion to which no response is necessary. To the extent a response is necessary to the allegation that venue is proper,

Chapterhouse denies the allegation. Chapterhouse lacks sufficient information as to the allegations relating to the other defendant to admit or deny them, and therefore denies them. Chapterhouse denies the remaining allegations in paragraph 7.

**FACTS COMMON TO ALL COUNTS**

**A.**    **Games Workshop's Copyrighted WARHAMMER and WARHAMMER 40,000 Games and WARHAMMER and WARHAMMER 40,000 Trademarks**

8.    Games Workshop is the largest and most successful tabletop fantasy wargames company in the world, with a following of millions of gamers and hobbyists devoted to collecting, creating, painting, and building armies for use in Games Workshop's popular WARHAMMER and WARHAMMER 40,000 war games.

     **ANSWER:**   Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 8 and therefore denies them.

9.    Games Workshop's WARHAMMER and WARHAMMER 40,000 war games are played, not on a board with defined game places, but in an open-ended world defined only by the underlying literary works and rules that define and depict the characters and armies of the games.

     **ANSWER:**   Chapterhouse denies the allegations in paragraph 9.

10.    The game WARHAMMER, for instance, takes place in a fantasy world of dark magic and powerful gods, populated by mighty heroes and foul monsters, in which armies of humans stand shoulder to shoulder with noble elves and grim dwarves battling unending attacks from enemies such as rat-like Skaven that crawl beneath cities, restless dead who stir in their graves, and daemons who lead mutated hordes of the Chaos Gods into war.

     **ANSWER:**   Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 10 and therefore denies them.

11.    The game WARHAMMER 40,000 similarly takes place in a fantasy universe, but

one set in a dark and forbidding world of the 41st millennium, a place ravaged by thousands of years of conflict in which gothic armies of the universe do battle and in which the foremost defenders of humanity are Space Marines; genetically engineered super-warriors armed with the most inventive weapons imaginable, supported by vast armies of the Emperor and tanks of the Imperial Guard who confront foes such as the alien armies of the Tau; the savage Orks; enigmatic Eldar; and unfathomable Tyranids, while lurking in the background are once-loyal Space Marines, turned traitorous supporters of the unspeakable Daemon Lords of Chaos.

**ANSWER:** Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 11 and therefore denies them.

12. The various characters, armies and accessories in the WARHAMMER 40,000 universe have distinct names, colors, symbols, and other characteristics by which they are known and by which they are immediately recognized by the many fans and followers of the game.

**ANSWER:** Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 12 and therefore denies them.

13. Games Workshop produces and sells army figures for its games and a wide range of accessories for those armies and games, including weapons, vehicles, equipment, and other accessories for its armies; the names, symbols, features and appearances of which derive from and are complemented by underlying and highly detailed background publications, including the Warhammer 40,000 rule book (now in its fifth edition); the Space Marine Collectors' Guide, (Second Edition, July 2003) and a list of volumes (including all of the earlier editions of each of these works).

Codexes (which contain, for a particular army, specific game rules and guides to collecting and painting)
Necromunda Rulebook, 1995
Warhammer 40,000 Tyranids, Fourth Edition, January 2010

        Warhammer 40,000 Space Marines, Fourth Edition, October 2008
        Warhammer 40,000 Space Marines, Fourth Edition, 2004
        Warhammer 40,000 Eldar, 2006
        Warhammer 40,000 Tau Empire, 2001
        Warhammer 40,000 Tau Empire, 2005
        Warhammer 40,000 Space Wolves, 2000
        Warhammer 40,000 Space Wolves, 2009
        Warhammer 40,000 Dark Angels, Third Edition, February 2007
        Warhammer 40,000 Chaos Space Marines, Fourth Edition, September 2007
        Warhammer Orks, 1994

Background Work
        Index Astartes II, January 2002
        Index Astartes, 2002
        Index Astartes III, February 2004
        Index Astartes IV, June 2005
        Space Marine Collectors Guide, 2003
        Imperial Guard Collectors Guide, 2003
        Warhammer 40,000 Wargear 2005
        Warhammer 40,000 Apocalypse, 2007

Art Book/Background work
        The Horus Heresy Collected Visions, June 2007
        The Art of Warhammer 40,000, January 2006

Magazine
        White Dwarf Magazine 249, September 2000
        White Dwarf Magazine 101, 1988

How to Book
        How to Paint Space Marines, April 2005

Novel
        Soul Drinkers, September 2002
        Brothers of the Snake, 2007

Each of the foregoing have been created by or for Games Workshop in England and are

protected by copyright belonging exclusively to Games Workshop.

        **ANSWER:**   Chapterhouse lacks sufficient information to admit or deny the

allegations in paragraph 13 and therefore denies them.

    14.    The underlying stories, myths, fictional histories, character names, symbols or

icons, overall appearances, and unique characteristics of the many armies used in Games Workshop's games, such as their language, culture, major worlds, weapons, methods of waging war, heraldry and iconography, and how they look, behave, and function are all derived from detailed books and other publications (which are supplemented by other written materials, such as specific game rules, novels, licensed products, hobby guides, and datasheets separately) all of which are created by Games Workshop and are protected by copyright, including those literary works referenced above.

      **ANSWER:**    Chapterhouse denies the allegations in paragraph 14.

15.    None of the foregoing copyrighted works created in the United Kingdom are United States works for which registration is required under 17 U.S.C. § 411(a); however, Games Workshop does own numerous registrations in the United States Copyright Office for its works, including Registration No. TX0006541286, "Games Workshop Complete Catalog & Hobby Reference 2006-2007", containing many of the individual works at issue herein.

      **ANSWER:**    Chapterhouse admits that the US Copyright office lists a copyright Registration No. TX0006541286, with the "other title" "Games workshop complete catalog & hobby reference : 2006-2007" registered in the name of Games Workshop, Ltd. Chapterhouse lacks sufficient information to admit or deny the remaining allegations in paragraph 15 and therefore denies them.

16.    Games Workshop also owns all copyright in a computer game, produced for it under license, entitled Dawn of War, permitting head-to-head or cooperative multiplayer participation in a game set in the WARHAMMER 40,000 universe.

      **ANSWER:**    Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 16 and therefore denies them.

17.     Games Workshop has pending in the United States Copyright Office applications to register "Dawn of War" and "Dawn of War II".

**ANSWER:**     Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 17 and therefore denies them.

18.     Since at least as early as 1984, Games Workshop has sold in the United States games, models, parts and equipment therefore, and related items and services under the name and trademark WARHAMMER (and related names and marks described more fully herein), and, since long prior to the acts of Defendants complained of herein, the WARHAMMER trademark and other trademarks associated with the WARHAMMER game have come to identify Plaintiff's goods and services and to distinguish them from the goods and services of others.

**ANSWER:**     Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 18 and therefore denies them.

19.     Since at least as early as 1987, Games Workshop has sold in the United States games, models, parts and equipment therefor, and related items and services under the name and trademark WARHAMMER 40,000 (and related names and marks described more fully herein), and, since long prior to the acts of Defendants complained of herein, the WARHAMMER 40,000 trademark and other trademarks associated with the WARHAMMER 40,000 game have come to identify Plaintiff's goods and services and to distinguish them from the goods and services of others.

**ANSWER:**     Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 19 and therefore denies them.

20.     Games Workshop's "Forge World" division has for eleven years been selling conversion kits, replacement doors, and additional products for its customers made to fit existing

-8-

WARHAMMER and WARHAMMER 40,000 products to use to decorate and modify their models for use in connection with the WARHAMMER and WARHAMMER 40,000 games.

**ANSWER:** Chapterhouse cannot properly respond to paragraph 20 because it is incomprehensible. To the extent Chapterhouse can understand this paragraph, Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 20 and therefore denies them.

21. Plaintiff's WARHAMMER and WARHAMMER 40,000 games have achieved enormous success, and for many years have been among the best known and most popular table top hobby war games in this country.

**ANSWER:** Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 21 and therefore denies them.

22. Plaintiff owns numerous registrations for its trademarks on the Principal Register in the United States Trademark Office, including the following registrations:

| Trade Mark | Country | Registration Number |
|---|---|---|
| WARHAMMER | USA | 2,718,741 |
| WARHAMMER 40,000 | USA | 3,707,457 |
| 40K | USA | 3,768,909 |
| 40,000 | USA | 3,751,267 |
| GAMES WORKSHOP | USA | 3,612,759 |
| GW | USA | 3,878,431 |
| SPACE MARINE | USA | 1,922,180 |
| ELDAR | USA | 1,944,847 |
| DARK ANGELS | USA | 1,913,474 |
| TAU | USA | 2,820,748 |
| AQUILA Design | USA | 3,646,312 |

**ANSWER:** Chapterhouse admits that the registration numbers given correspond to trademark registrations listed on the principal register of the United States Patent and Trademark Office, and that these registrations list Games Workshop Limited as the registrant. Chapterhouse lacks sufficient information to admit or deny any remaining allegations

in paragraph 22 and therefore denies them.

23.     Plaintiff's foregoing WARHAMMER trademarks (collectively, the "WARHAMMER Registered Marks") are valid, subsisting, unrevoked, and uncancelled, and Registration Nos. 2,718,741, 2,820,748, 2,070,887, 2,820,748, 2,100,767, 1,944,847, and 1,913,474 are now incontestable under the provisions of 15 U.S.C. § 1065.

**ANSWER:**     Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 23 and therefore denies them.

24.     Games Workshop has very substantial annual sales of products bearing its WARHAMMER, WARHAMMER 40,000, 40K, DARK ANGELS, ELDAR, TYRANID, CHAOS, TAU, and SPACE MARINE brand names, with annual sales in this country alone of approximately $40 million, and Games Workshop invests considerable sums each year in marketing and promoting these brands and in developing new products under these brand names. Games Workshop has thereby built up substantial goodwill and reputation in the marks WARHAMMER, WARHAMMER 40,000, 40k, DARK ANGELS, ELDAR, TYRANID, CHAOS, TAU, and SPACE MARINE (collectively, the "WARHAMMER Marks"), which it uses in connection with its tabletop games and miniatures and accessories for such games.

**ANSWER:**     Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 24 and therefore denies them.

25.     The area in and around Chicago, Illinois is one of the most active for Games Workshop, being part of the single largest selling market in the United States; being home to the AdeptiCon, the largest independent convention for miniature wargaming hobbyists in the country (at which the WARHAMMER and WARHAMMER 40,000 games are featured), and the site selected by Games Workshop for its 2011 Games Day Convention (which attracted thousands of

fans of the WARHAMMER and WARHAMMER 40,000 games at the Donald E. Stephens Convention Center).

**ANSWER:** Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 25 and therefore denies them.

26.     As a result of the great success of Games Workshop's WARHAMMER and WARHAMMER 40,000 games, since long prior to the acts of Defendants complained of herein, the name and trademarks WARHAMMER, WARHAMMER 40,000, 40k, DARK ANGELS, ELDAR, TYRANID, CHAOS, TAU and SPACE MARINE have come to represent substantial and highly valuable goodwill belonging exclusively to Plaintiff.

**ANSWER:** Chapterhouse denies the allegations in paragraph 26.

27.     The foregoing WARHAMMER Marks are now, and since long prior to the acts of Defendants complained of herein have been, widely recognized throughout the United States and at all relevant times have been famous marks within the meaning of 15 U.S.C. § 1125(c).

**ANSWER:** The allegation as to fame within the meaning of 15 U.S.C. § 1125(c) is a legal conclusion to which no response is necessary. To the extent a response is necessary, Chapterhouse denies the allegation. Chapterhouse denies the remaining allegations in paragraph 27.

28.     Games Workshop also has a large number of well-known unregistered trademarks (including names of armies, Chapters, and other products) including without limitation: Adeptus Mechanicus, Assault, Alpha Legion, Black Templars, Blood Angels, Blood Ravens, Cadian, Carnifex, Chaos Space Marines, Chaplain, Chimera, Crimson Fists, Dark Angel, Death Watch, Devastator, Dreadnought, Drop Pod, Eldar, Elder Farseer, Eldar Jetbike, Eldar Warlock, Eldar Seer Council, Empire, Exorcist, Flesh Tearers, Gene Stealer, Grenade Launcher, Halberd,

Heavy bolter, Heresy Armour, Hellhound, High Elf, Hive Tyrant, Horus Heresy, Howling Banshee, Imperial Fists, Imperial Guard, Inquisition, Iron Hands, Jetbike, Jump Pack, Land Raider, Land Speeder, Legion of the Damned, Librarian, Lightning Claw, Melta, Mk II Armour, Mk V Armour, Plasma, Predator, Rhino, Salamander, Scorpion, Soul Drinker, Space Wolves, Stormraven, Storm Shield, Tactical, Techmarine, Termagants, Terminator, Thousand Sons, Thunder Hammer, Tyrant, Tyranid Warrior.

   **ANSWER:**  Chapterhouse denies the allegations in paragraph 28.

  29.  Many of the symbols associated with the characters and armies of the WARHAMMER 40,000 universe, as well as the accessories for these characters and armies, have also become well-known and immediately recognizable to the many fans of the game as used on and in connection with the respective characters, including without limitation: skulls, Wings (eagle wings, angel wings), Lions, Griffon, Triptychs, Broadswords, Skull with horns, Storm bolter (gun) Sawblade with blood-drop, Clenched fist in a gauntlet, Snakes, Flaming skulls, Flaming chalice, Salamander, Dragon/salamander scales pattern, Tau Symbol, Tau - Oval vents, Tau - X marking on power/ammo packs, Tau – circle with diagonal line through it, Tau – geometric grooves, Roman numerals (combined with) arrows, X crosses and inverted V, Cog, Iron hands icon – gauntleted left hand shown palm downwards, Overlapping/banded armour, Wolf fur, Wolf skulls, Wolf tails, Raven wings with blood drop in centre, I symbol (for Inquisition), Scarab beetles, Spirit stones, Eldar iconography/symbols (seer icons etc), Eldar - Spirit Stones, Eldar – decorative gems on weapons.

   **ANSWER:**  Chapterhouse denies the allegations in paragraph 29.

  30.  The foregoing unregistered WARHAMMER word marks and symbols are also very well known among the hobbying and gaming communities. Games Workshop's annual

sales of products bearing these marks is likewise significant, and it invests great sums each year in marketing and promoting these brands and in developing new products under these brand names. As a result, Games Workshop has built up substantial goodwill and reputation in these unregistered trade marks in the U.S. and around the world.

> **ANSWER:** Chapterhouse denies the allegations in paragraph 30.

## B. **Defendants' Infringing Conduct**

31. Upon information and belief, after having initiated some modest sales on eBay in 2008, sometime in or about May 2009, Chapterhouse began manufacturing and selling gaming miniatures and accessories at its website located at www.chapterhousestudios.com ("the Website").

> **ANSWER:** Chapterhouse admits it maintains a website at www.chapterhousestudios.com, and admits that it sells gaming miniatures and accessories through that website. Chapterhouse admits that it began selling gaming miniatures and accessories through this website in or about May 2009. Chapterhouse denies the remaining allegations in paragraph 31.

32. Chapterhouse makes no secret of the fact that its products are derived from, inspired by, and copied from Games Workshop's copyrighted works and, indeed, although Chapterhouse recently changed its website as a result of the allegations of infringement against it, the banner at the top of each page of the Website had, until November 2011, described its business as "Specializing in Custom Sculpts and Bits for Warhammer 40,000 and Fantasy".

> **ANSWER:** Chapterhouse admits that until November 2011, each page of its website at www.chapterhousestudios.com contained the words "Specializing in Custom Sculpts and Bits for Warhammer 40,000 and Fantasy." Chapterhouse denies the other allegations in

paragraph 32.

33.    The website does not identify any sources of inspiration for any of the products other than Games Workshop.

    **ANSWER:**    Chapterhouse denies the allegations of paragraph 33.

34.    Every one of Chapterhouse's products is identified on its website by the names created and adopted by Games Workshop to identify its corresponding characters, armies and the accessories therefor, as well as images and descriptions derived or copied from Games Workshop's original copyrighted materials.

    **ANSWER:**    Chapterhouse denies the allegations of paragraph 34.

35.    The very name "Chapterhouse" is a direct reference to Games Workshop's proprietary Space Marines characters from the WARHAMMER 40,000 game, each of which belongs to a specific "Chapter" (of which there are many), with each Chapter having its own unique expressions, such as its own heraldry and iconography.

    **ANSWER:**    Chapterhouse denies the allegations of paragraph 35.

36.    Chapterhouse further admits on its website that Games Workshop is the owner of all of the copyrights and trademarks at issue herein by expressly stating:

Adeptus Astartes, Battlefleet Gothic, Black Flame, Black Library, the Black Library logo, BL Publishing, Blood Angels, Bloodquest, Blood Bowl, the Blood Bowl logo, The Blood Bowl Spike Device, Cadian, Catachan, the Chaos device, Cityfight, the Chaos logo, Citadel, Citadel Device, City of the Damned, Codex, Daemonhunters, Dark Angels, Dark Eldar, Dark Future, the Double-Headed/Imperial Eagle device, 'Eavy Metal, Eldar, Eldar symbol devices, Epic, Eye of Terror, Fanatic, the Fanatic logo, the Fanatic II logo, Fire Warrior, Forge World, Games Workshop, Games Workshop logo, Genestealer, Golden Demon, Gorkamorka, Great Unclean One, the Hammer of Sigmar logo, Horned Rat logo, Inferno, Inquisitor, the Inquisitor logo, the Inquisitor device, Inquisitor:Conspiracies, Keeper of Secrets, Khemri, Khorne, Kroot, Lord of Change, Marauder, Mordheim, the Mordheim logo, Necromunda, Necromunda stencil logo, Necromunda Plate logo, Necron, Nurgle, Ork, Ork skull devices, Sisters of Battle, Skaven, the Skaven symbol devices, Slaanesh, Space Hulk,

Space Marine, Space Marine chapters, Space Marine chapter logos, Talisman, Tau, the Tau caste designations, Tomb Kings, Trio of Warriors, Twin Tailed Comet Logo, Tyranid, Tyrannid, Tzeentch, Ultramarines, Warhammer, Warhammer Historical, Warhammer Online, Warhammer 40k Device, Warhammer World logo, Warmaster, White Dwarf, the White Dwarf logo, and all associated marks, names, races, race insignia, characters, vehicles, locations, units, illustrations and images from the Blood Bowl game, the Warhammer world, the Talisaman world, and the Warhammer 40,000 universe are either ®, TM and/or © Copyright Games Workshop Ltd 2000-2010, variably registered in the UK and other countries around the world.

**ANSWER:** Chapterhouse denies the allegations of paragraph 36.

37. Because many of the characteristics of the many armies used in Games Workshop's WARHAMMER and WARHAMMER 40,000 games, such as their language, culture, major worlds, weapons, methods of waging war, heraldry and iconography, and their appearances, behaviors and functions can be found in or derived from numerous Games Workshop books and other publications, as alleged above, only defendants know for certain which of these books and other publications they accessed and relied upon in creating the works at issue herein. However, by way of example, the following exemplify some of the ways in which Chapterhouse infringes Games Workshop's copyrighted works.

**ANSWER:** Chapterhouse denies the allegations of this introductory portion of paragraph 37.

37.a. Chapterhouse produces and sells a kit to convert a Games Workshop "Carnifex" into a "Tervigon" (both of which terms are original and proprietary to Games Workshop). Games Workshop's Tyranid Codex describes the Tervigon and provides a representation of it, and Defendant's conversion kit will create a Tervigon having unique expressions proprietary to Games Workshop, including having the same number of spine pieces and in the same configuration; the same number, type and configuration of limbs; and similar abdomen sacs; all of which are as depicted and described in Games Workshop's Warhammer 40,000 Tyranids,

Fourth Edition, January 2010. However, Chapterhouse may also have referred to and relied upon other Games Workshop publications, including the Tyranid Codexes for 1995, 2001 and 2004.

**ANSWER:**    Chapterhouse admits that it sells a product kit that can be used to convert a Games Workshop model of a Carnifex into another figure. Chapterhouse denies the remaining allegations in paragraph 37.a.

37.b.   Chapterhouse is producing shoulder pads for "Space Marines" that very clearly derive from many of the background works published by Games Workshop for its Space Marine Chapters. Games Workshop's Space Marine units are classified by specific names, shapes and icons on their shoulder pads, the features of which are clearly and uniquely defined in Games Workshop's background works, such as an arrow for the Tactical Squad, the use of Roman numerals, inverted "V" icons and other iconography and heraldry specific to the Chapter and squad to which a soldier belongs.

**ANSWER:**    Chapterhouse admits that it produces "shoulder pad" parts that fit certain models sold by Games Workshop. Chapterhouse denies the remaining allegations in paragraph 37.b.

37.c.   Chapterhouse is selling shoulder pads for Space Marines featuring symbols and bearing other unique expressions taken from a number of Games Workshop's Assault and Tactical Space Marine unit types. For example, many of the shoulder pads that Chapterhouse is selling bear not only the unique expressions described above as applying more generally to Games Workshop's products but also have studs, arrow and cross arrow designs, inverted "V" and Roman numeral icons, as well as icons associated with a number of Games Workshop's proprietary Chapters, including the Black Templars, Blood Ravens, Thousand Sons, Blood Eagles, Celestial Lions, Exorcists, Flesh Tearers, Howling Griffons, Imperial Fists, Iron Snakes,

Soul Drinkers and Salamander Chapters. Chapterhouse is also selling pads that convert standard Games Workshop Space Marines into characters for other Chapters, such as the Salamander and Fleshtearers Chapters, and which borrow unique expressions relevant to that Chapter which are proprietary to Games Workshop.

      **ANSWER:**   Chapterhouse admits that it sells "shoulder pad" parts that fit certain models sold by Games Workshop. Chapterhouse further admits that some of its shoulder pad models bear designs and markings including arrow designs, inverted Vs, and Roman numerals. Chapterhouse denies the remaining allegations in paragraph 37.c.

    37.d.   Chapterhouse's conversion and armor kits reproduce all or substantial distinctive features of the vehicles and miniatures upon which they are based, as they are specifically configured to fit to Games Workshop's products, including: (i) the surface decoration of defendant's Salamander Drop Pod overlays, which is derived from and reproduces Games Workshop's Salamander iconography; and (ii) defendant's Rhino Tank Conversion Kits for Space Marine® Dragon or Salamander, the doors, front panels and armor sections of which, in Defendant's own words, have been specifically designed to "…accessorize the current space marine® rhino model kit. Themed in a dragon or salamander style also good for alpha legion…"

      **ANSWER:**   Chapterhouse denies the allegations of paragraph 37.d.

    37.e.   For use in its conversion kits, including without limitation its Storm Raven Extension Kit and Carnifex conversion kit, Chapterhouse copies parts of the instructions and drawings from the original Games Workshop assembly instructions.

      **ANSWER:**   Chapterhouse denies the allegations of paragraph 37.e.

    38.   Subsequent to the commencement of this action, Chapterhouse has also introduced numerous new products copied from Games Workshop's original WARHAMMER

40,000 universe, including without limitation an *"Armana'serq warrior"* that is simply a female version of Games Workshop's masculine Eldar firgures; a "Doomseer Iyanar-Duanna" figure that similarly is a female version of certain Games Workshop masculine Eldar Farseer characters and models; and a "Javelin Jet Bike" copied from Games Workshop' Space Marine Bike.

> **ANSWER:** Chapterhouse admits that, subsequent to the commencement of this action, Chapterhouse has introduced products named "Armana'serq Scorpion Warrior Priestess," "Doomseer Iyanar-Duanna," and "Javelin Imperial Jet Bike." Chapterhouse denies the remaining allegations of paragraph 38.

39. Chapterhouse has also announced the forthcoming release (and has published drawings) of an "Eldar Howling Banshee" that is copied from Games Workshop's Eldar Howling Banshee.

> **ANSWER:** Chapterhouse denies the allegations of paragraph 39.

40. Consistent with the pervasive copying by defendant of Games Workshop's original works, Chapterhouse has in its possession hundreds if not thousands of Games Workshops publications and products, and has ready access to all of Games Workshop's copyrighted works.

> **ANSWER:** Chapterhouse denies the allegations in paragraph 40.

41. By letter dated June 12, 2009, Games Workshop placed Chapterhouse directly on notice that it deemed many of its products to infringe Games Workshop's intellectual property rights. However, since then, Chapterhouse has simply expanded its business in disregard of Games Workshop's rights.

> **ANSWER:** Chapterhouse admits that Plaintiff has provided a letter dated

June 12, 2009. Chapterhouse denies the remaining allegations of paragraph 41.

42. Upon information and belief, many consumers of Plaintiff's original WARHAMMER and WARHAMMER 40,000 books and other products and services are users of and make purchases from Defendants' [sic], including many such individuals and users in the State of Illinois.

**ANSWER:** Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 42 and therefore denies them.

43. Upon information and belief, all of the products that Chapterhouse currently markets and sells are derived from and bear unique characteristics and expressions of Games Workshop's copyrighted works, including unique expressions created and set forth in great detail in Games Workshop's background published works described above.

**ANSWER:** Chapterhouse denies the allegations in paragraph 43.

44. Upon information and belief, all of the items produced, marketed, and sold by Chapterhouse have copied elements from (and infringe upon) Games Workshop's copyrighted characters and stories and sculptural works and/or use trademarks and symbols owned by Games Workshop to identify these sources of inspiration.

**ANSWER:** Chapterhouse denies the allegations in paragraph 44.

45. Similarly, at least 14 of the 15 items produced, marketed, and sold by Paulson Games have been copied from (and infringe upon) Games Workshop's copyrighted characters and stories and sculptural works.

**ANSWER:** Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 45 and therefore denies them.

46. On information and belief, Paulson entered his agreement with Chapterhouse for

-19-

the "Super-Heavy Assault Walker" because of an inability to satisfy great consumer demand for the product, which Chapterhouse now sells at retail for $285.

       **ANSWER:**   Chapterhouse admits that it lists its "SXV-141 Super Heavy Walker" for sale at $285. Chapterhouse denies the other allegations in paragraph 46.

47.    Defendants' development, production, marketing, and sale of their derivative works based on Games Workshop's proprietary works is without authorization or approval of Games Workshop.

       **ANSWER:**   Chapterhouse denies the allegations of paragraph 47.

48.    Defendants' development, production, marketing, and sale of their derivative works based on Games Workshop's proprietary works preempts Games Workshop's ability to develop and sell its own such derivative works and compete directly with Games Workshop's "Forge World" products.

       **ANSWER:**   Chapterhouse denies the allegations of paragraph 48.

49.    Beyond the copying of protected original elements of Games Workshop's copyrighted works, Chapterhouse makes extensive unauthorized use of Games Workshop's registered and unregistered trademarks and symbols.

       **ANSWER:**   Chapterhouse denies the allegations of paragraph 49.

50.    Chapterhouse makes pervasive references to Games Workshop's trademarks and symbols to identify its products (and adopts a distinctly British phrasing by use of the term "bits" to underscore the connection), including without limitation: "Vehicle Accessory Kits for Space Marines", "Imperial Guard Conversion Bits", "Assault Shoulder Pad for Space Marine with Number 7", "Soul Drinker Bits", "Salamander Bits", and "Xenomorph Head Bits for Tyranid Gaunts".

**ANSWER:** Chapterhouse admits that, when its kits and replacement parts are compatible with a Games Workshop model, Chapterhouse sometimes identifies that model by name. Chapterhouse denies the other allegations in paragraph 50.

51. The very title of Chapterhouse's Website "Specializing in Custom Sculpts and Bits for Warhammer 40,000 and Fantasy" indicates prominently - and falsely - that Chapterhouse is literally acting "for" Games Workshop in creating, marketing, and selling such "bits" for the WARHAMMER 40,000 game when it has not been authorized by Games Workshop to use its brand or product names in any way.

**ANSWER:** Chapterhouse denies the allegations in paragraph 51.

52. Upon information and belief, such references create an association in the minds of customers between Defendants' products and those of Games Workshop and give the false impression that Chapterhouse's products are licensed by or endorsed by Games Workshop or are otherwise associated with Plaintiff.

**ANSWER:** Chapterhouse denies the allegations in paragraph 52.

53. As a result of the foregoing, Games Workshop has received many customer complaints and inquiries about Chapterhouse's products, indicating that customers are confused and will continue to be confused as to the origin and sponsorship of Chapterhouse's products, including whether Games Workshop has licensed Chapterhouse or otherwise given it authority to produce the products being sold through the Website.

**ANSWER:** Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 53 and therefore denies them.

54. Upon information and belief, products produced and sold by Chapterhouse copied from Games Workshop's copyrighted originals and bearing trademarks and other indicia of

origin with Games Workshop are also sold in substantial quantities in the secondary market (such as on eBay and other similar platforms), where purchasers are likely to be confused as to the origin of those products.

   **ANSWER:** Chapterhouse denies the allegations in paragraph 54.

  55. Exacerbating the injury to Games Workshop's reputation, the quality of many of Defendants' products is materially inferior to the quality of Games Workshop's originals, which will cause injury to Games Workshop's reputation among purchasers of Defendants' products in the original or secondary markets.

   **ANSWER:** Chapterhouse denies the allegations in paragraph 55.

  56. Chapterhouse's use of the Games Workshops trademarks, including without limitation the marks WARHAMMER, WARHAMMER 40,000, 40K, SPACE MARINE, CHAOS SPACE MARINES, ELDAR, ELDAR FARSEER, ELDAR JETBIKE, ELDAR WARLOCK, ELDAR SEER COUNCIL, TYRANID, ADEPTUS MECHANICUS, BLOOD ANGELS, DARK ANGELS, BLOOD RAVENS MARINES, IMPERIAL GUARD, BLACK TEMPLARS, ALPHA LEGION, BONESWORD, CARNIFEX, CRIMSON FISTS, FLESH TEARERS, GENESTEALER, GAUNT, HERESY ARMOUR, HORUS HERESY, HOWLING GRIFFONS, IRON HANDS, IMPERIAL FISTS, LASHWHIP, LEGION OF THE DAMNED, LIGHTNING CLAW, LUNA WOLVES, MANTIS WARRIORS, MK ARMOUR, MYCETIC SPORE, RHINO, SALAMANDER, SONS OF RUSS, SOUL DRINKER, SPACE WOLVES, SWARMLORD, TECHMARINES, TAU, THUNDER ARMOUR, THUNDER HAMMER, TERMAGANTS, TERVIGON, and YMGARL (among others) are likely to cause confusion, to cause mistake, or to deceive.

   **ANSWER:** Chapterhouse denies the allegations in paragraph 56.

57. The WARHAMMER Marks and WARHAMMER Registered Marks were famous at the time Defendants began using these marks.

> **ANSWER:** Chapterhouse denies the allegations in paragraph 57.

58. Chapterhouse's use of the logos and symbols associated with Games Workshops WARHAMMER $40,000 on and in connection with the same characters, armies and accessories for which Games Workshop uses the same, are likely to cause confusion, to cause mistake, or to deceive, including without limitation: Wings (eagle wings, angel wings), Lions, Griffon, Triptychs, Broadswords, Skull with horns, Storm bolter (gun) Sawblade with blood-drop, Clenched fist in a gauntlet, Snakes, Flaming skulls, Flaming chalice, Salamander, Dragon/salamander scales pattern, Tau Symbol, Tau - Oval vents, Tau - X marking on power/ammo packs, Tau – circle with diagonal line through it, Tau – geometric grooves, Roman numerals (combined with) arrows, X crosses and inverted V, Cog, Iron hands icon – gauntleted left hand shown palm downwards, Overlapping/banded armour, Wolf fur, Wolf skulls, Wolf tails, Raven wings with blood drop in centre, I symbol (for Inquisition), Scarab beetles, Spirit stones, Eldar iconography/symbols (seer icons etc), Eldar - Spirit Stones, Eldar – decorative gems on weapons.

> **ANSWER:** Chapterhouse denies the allegations in paragraph 58.

59. Defendants' use of the Games Workshops trademarks has been without Plaintiff's authorization or consent.

> **ANSWER:** Chapterhouse denies the allegations in paragraph 59.

60. Upon information and belief, Defendants' acts complained of herein have been willful and malicious, and intended to trade upon the reputation of Plaintiff and its products and services sold under its WARHAMMER Marks and thereby cause harm to Plaintiff.

**ANSWER:**     Chapterhouse denies the allegations in paragraph 60.

## FIRST CAUSE OF ACTION

### [Copyright Infringement by Defendants Under 17 U.S.C. § 101 *et seq.*]

61.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 60 as though fully set forth herein.

**ANSWER:**     Chapterhouse incorporates by reference its answers to paragraphs 1 through 60.

62.     Defendants' conduct as aforesaid constitutes infringement of Games Workshop's copyright in and to its literary and sculptural works.

**ANSWER:**     Chapterhouse denies the allegations in paragraph 62.

63.     For those of the infringing works produced by Paulson Games for Chapterhouse, Defendants share liability jointly and severally for said infringing conduct.

**ANSWER:**     Chapterhouse denies the allegations in paragraph 63.

64.     Defendants' conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER:**     Chapterhouse denies the allegations in paragraph 64.

65.     Plaintiff has no adequate remedy at law.

**ANSWER:**     Chapterhouse denies the allegations in paragraph 65.

## SECOND CAUSE OF ACTION

### [Trademark Infringement by Chapterhouse Under 15 U.S.C. § 1114(1)]

66.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 65 as though fully set forth herein.

**ANSWER:**     Chapterhouse incorporates by reference its answers to paragraphs 1

-24-

through 65.

67. Chapterhouse's use in commerce of the WARHAMMER Registered Marks is likely to cause confusion, or to cause mistake, or to deceive.

**ANSWER:** Chapterhouse denies the allegations in paragraph 67.

68. The foregoing conduct of Chapterhouse constitutes trademark infringement in violation of 15 U.S.C. §1114(1).

**ANSWER:** Chapterhouse denies the allegations in paragraph 68.

69. Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER:** Chapterhouse denies the allegations in paragraph 69.

70. Plaintiff has no adequate remedy at law.

**ANSWER:** Chapterhouse denies the allegations in paragraph 70.

**THIRD CAUSE OF ACTION**

**[False Designations of Origin by Chapterhouse Under 15 U.S.C. § 1125(a)]**

71. Plaintiff realleges and incorporates by reference Paragraphs 1 through 70 as though fully set forth herein.

**ANSWER:** Chapterhouse incorporates by reference its answers to paragraphs 1 through 70.

72. Chapterhouse's conduct as aforesaid is likely to cause confusion, to cause mistake, or to deceive the relevant public that Chapterhouse, its products and services are authorized by or are affiliated with Games Workshop.

**ANSWER:** Chapterhouse denies the allegations in paragraph 72.

73. The above-described conduct of Chapterhouse constitutes use of false

designations of origin and false and misleading descriptions or representations that are likely to cause confusion, to cause mistake, or to mislead as to the affiliation, connection, or association of Chapterhouse or its goods or services, with Plaintiff and its goods and services in violation of 15 U.S.C. §1125(a).

> **ANSWER:** Chapterhouse denies the allegations in paragraph 73.

74. Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

> **ANSWER:** Chapterhouse denies the allegations in paragraph 74.

75. Plaintiff has no adequate remedy at law.

> **ANSWER:** Chapterhouse denies the allegations in paragraph 75.

### FOURTH CAUSE OF ACTION

### [Dilution and Tarnishment by Chapterhouse Under 15 U.S.C. § 1125(c)]

76. Plaintiff realleges and incorporates by reference Paragraphs 1 through 75 as though fully set forth herein.

> **ANSWER:** Chapterhouse incorporates by reference its answers to paragraphs 1 through 75.

77. The WARHAMMER Registered Marks are now and at all relevant times have been famous within the meaning of 15 U.S.C. § 1125(c)(2).

> **ANSWER:** Chapterhouse denies the allegations in paragraph 77.

78. Chapterhouse's use in commerce of the WARHAMMER Marks is likely to create associations that will impair the distinctiveness of and tarnish Plaintiff's WARHAMMER Marks.

> **ANSWER:** Chapterhouse denies the allegations in paragraph 78.

79. Chapterhouse's conduct as aforesaid has caused great and irreparable injury to

Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

> **ANSWER:** Chapterhouse denies the allegations in paragraph 79.

80. Plaintiff has no adequate remedy at law.

> **ANSWER:** Chapterhouse denies the allegations in paragraph 80.

## FIFTH CAUSE OF ACTION

### [Violation by Chapterhouse of the Illinois Anti-Dilution Statute, 765 ILCS 1036/65]

81. Plaintiff realleges and incorporates by reference Paragraphs 1 through 80 as though fully set forth herein.

> **ANSWER:** Chapterhouse incorporates by reference its answers to paragraphs 1 through 80.

82. The WARHAMMER Registered Marks are now and at all relevant times have been famous within the meaning of 765 ILCS 1036/65.

> **ANSWER:** Chapterhouse denies the allegations in paragraph 82.

83. Chapterhouse's use in commerce of the WARHAMMER Marks causes dilution of the distinctive quality of Plaintiff's WARHAMMER Marks.

> **ANSWER:** Chapterhouse denies the allegations in paragraph 83.

84. Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

> **ANSWER:** Chapterhouse denies the allegations in paragraph 84.

85. Plaintiff has no adequate remedy at law.

> **ANSWER:** Chapterhouse denies the allegations in paragraph 85.

## SIXTH CAUSE OF ACTION

**[Violation by Chapterhouse of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*]**

86.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 85 as though fully set forth herein.

**ANSWER:**     Chapterhouse incorporates by reference its answers to paragraphs 1 through 85.

87.     This is a claim for deceptive trade practices under the Illinois Deceptive Trade Practices Act. 815 ILCS 510/1 *et seq.*

**ANSWER:**     Chapterhouse admits that this purports to be a claim for deceptive trade practices under the Illinois Deceptive Trade Practices Act. 815 ILCS 510/1 *et seq.* Chapterhouse denies any other allegations in paragraph 87 and specifically denies any wrongdoing.

88.     Upon information and belief, Chapterhouse have/has knowingly made false and misleading representations as to the source of its goods and services, and knowingly made false representations as to its affiliation with Plaintiff.

**ANSWER:**     Chapterhouse denies the allegations in paragraph 88.

89.     Chapterhouse has caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods and services by making false and misleading representations of fact.

**ANSWER:**     Chapterhouse denies the allegations in paragraph 89.

90.     Chapterhouse has caused a likelihood of confusion or misunderstanding as to the affiliation, connection, or association with or certification by Plaintiff by making false and misleading representations of fact.

**ANSWER:**     Chapterhouse denies the allegations in paragraph 90.

91.     The conduct complained of herein constitutes unfair and deceptive trade practices, in violation of 815 ILCS 510/1 *et seq.*

        **ANSWER:**     Chapterhouse denies the allegations in paragraph 91.

92.     Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

        **ANSWER:**     Chapterhouse denies the allegations in paragraph 92.

93.     Plaintiff has no adequate remedy at law.

        **ANSWER:**     Chapterhouse denies the allegations in paragraph 93.

## SEVENTH CAUSE OF ACTION

**[Violation by Chapterhouse of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 510/1 *et seq.*]**

94.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 93 as though fully set forth herein.

        **ANSWER:**     Chapterhouse incorporates by reference its answers to paragraphs 1 through 93.

95.     This is a claim for unfair and deceptive trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, Section 2.

        **ANSWER:**     Chapterhouse admits that this purports to be a claim for unfair and deceptive trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, Section 2. Chapterhouse denies any other allegations in paragraph 95 and specifically denies any wrongdoing.

96.     Chapterhouse's business practices directed at Plaintiff and Plaintiff's customers constitutes an unfair and deceptive business practice as defined and prohibited by Illinois law.

>       **ANSWER:**     Chapterhouse denies the allegations in paragraph 96.

97.     Chapterhouse has made false and deceptive representations of material fact to Plaintiff's customers with the intent that Plaintiff's customers rely on the misrepresentations.

>       **ANSWER:**     Chapterhouse denies the allegations in paragraph 97.

98.     Chapterhouse has made false and deceptive representations of material fact relating to the source, sponsorship, approval, or certification of its goods and services with the intent that Plaintiff's customers rely on the misrepresentations.

>       **ANSWER:**     Chapterhouse denies the allegations in paragraph 98.

99.     Chapterhouse has made false and deceptive representations of material fact relating to its affiliation, connection, or association with Plaintiff or certification by Plaintiff with the intent that Plaintiff's customers rely on the misrepresentations.

>       **ANSWER:**     Chapterhouse denies the allegations in paragraph 99.

100.    Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

>       **ANSWER:**     Chapterhouse denies the allegations in paragraph 100.

101.    Plaintiff has no adequate remedy at law.

>       **ANSWER:**     Chapterhouse denies the allegations in paragraph 101.

## EIGHTH CAUSE OF ACTION

### [Common Law Unfair Competition–Trademark Infringement by Chapterhouse]

102.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 101 as though fully set forth herein.

>       **ANSWER:**     Chapterhouse incorporates by reference its answers to paragraphs 1 through 101.

103.    Chapterhouse's conduct as aforesaid is likely to confuse and deceive consumers about the origin of Defendants' goods and services.

**ANSWER:**    Chapterhouse denies the allegations in paragraph 103.

104.    The foregoing conduct of Chapterhouse constitutes infringement and misappropriation of Plaintiff's common law rights in its trademarks in violation of the common law of the State of Illinois.

**ANSWER:**    Chapterhouse denies the allegations in paragraph 104.

105.    Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER:**    Chapterhouse denies the allegations in paragraph 105.

106.    Plaintiff has no adequate remedy at law.

**ANSWER:**    Chapterhouse denies the allegations in paragraph 106.

## AFFIRMATIVE DEFENSES

Chapterhouse asserts the following defenses, without regard to whether they are affirmative defenses or matters as to which GW bears the burden of proof. Chapterhouse reserves the right to raise additional defenses as discovery proceeds. Chapterhouse does not assume the burden of proof on any issue, however characterized, on which it does not bear that burden.

GW's SAC, and every cause of action within it, fails to state a cause of action on which relief can be granted.

This court lacks subject-matter jurisdiction over claims to enforce U.S. copyrights for which GW has not obtained, or has not pleaded ownership of, copyright registrations.

GW's copyright claims are barred because GW lacks standing to enforce copyrights it

does not own.

GW's copyright claims are barred by the doctrine of fair use.

GW's copyright claims are barred by the *de minimis* doctrine.

GW's copyright claims are barred by the doctrine of independent creation.

GW's state law claims are barred to the extent they are preempted by federal law.

GW's claims are barred by its failure to join indispensable parties.

GW's claims are barred by consent, waiver, acquiescence or license.

GW's claims are barred by relevant statutes of limitations.

GW's claims are barred by laches.

GW's claims are barred by res judicata.

GW's claims are barred by estoppel.

GW's claims are barred by the doctrine of copyright misuse.

GW's claims are barred due to its use of the Lanham Act to impede free and fair competition.

GW's claims are barred as to any of its actions that violate any unfair competition laws.

GW's claims are barred due to its unclean hands.

GW's trademark claims are barred by the defense of nominative fair use.

GW's trademark claims are barred to the extent it has abandoned its alleged marks.

GW's claims are barred by the First Amendment to the United States Constitution.

GW's claims are barred by its failure to mitigate damages.

GW's claims to statutory damages are limited or barred by the United States Constitution.

GW's claims to treble damages are barred because at all times Chapterhouse has acted without malice and with a good faith belief that its actions were proper.

## JURY TRIAL DEMANDED

In accordance with Federal Rule of Civil Procedure 38(b), Chapterhouse demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Chapterhouse seeks relief as follows:

That the Court enter judgment for Chapterhouse and against GW on all causes of action;

That the Court award Chapterhouse costs of suit, including attorneys' fees; and

That the Court award such other relief as is just and equitable.

Dated: February 6, 2012                     Respectfully submitted,

                                            CHAPTERHOUSE STUDIOS LLC


                        By:     /s/ Thomas J. Kearney
                                Jennifer Golinveaux (CA Bar No. 203056)
                                Dean A. Morehous (CA Bar No. 111841)
                                Thomas J. Kearney (CA Bar No. 267087)
                                WINSTON & STRAWN LLP
                                101 California Street
                                San Francisco, CA  94111-5802
                                Phone: (415) 591-1000
                                Fax: (415) 591-1400
                                jgolinveaux@winston.com
                                dmorehous@winston.com
                                tkearney@winston.com

                                Eric Mersmann (IL Bar No. 6286859)
                                Jonathon C. Raffensperger (IL Bar No. 6302802)
                                WINSTON & STRAWN LLP
                                35 West Wacker Drive
                                Chicago, IL 60601-1695
                                Phone: (312) 558-5600
                                Fax: (312) 558-5700
                                emersmann@winston.com
                                jraffensperger@winston.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2012, I electronically filed the foregoing

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S ANSWER TO**

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

with the clerk of the court by using the CM/ECF system, which will send a notice of electronic

filing to the following and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D),

pursuant to Local Rule 5.9:


Scott R. Kaspar
Aaron J. Weinzierl
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: skaspar@foley.com
aweinzierl@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-3229
Email: jmoskin@foley.com


Ronald H. Spuhler
Ronald A. DiCerbo
Thomas J. Campbell Jr.
MCANDREWS, HELD & MALLOY LTD.
500 W. Madison Street – 34th Floor
Chicago, IL 60061
Telephone: (312) 775-8000
Facsimile: (312) 775-8100
Email: rspuhler@mhmlaw.com
rdicerbo@mhmlaw.com
tcampbell@mcandrews-ip.com


Date: February 6, 2012

/s/ Thomas J. Kearney
Thomas Kearney
One of the attorneys for Chapterhouse Studios LLC