**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC and | ) | |
| JON PAULSON d/b/a PAULSON GAMES, | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | |

**OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL
AND CROSS-MOTION TO COMPEL RESPONSES TO
INTERROGATORIES 17 AND 18 AND PRODUCTION OF EMAILS**

**I.     INTRODUCTION.**

Plaintiff's motion represents the worst kind of gamesmanship; feigning issues that do not exist in order to distract from its own stonewalling of critical discovery.

First, Plaintiff seeks production of documents and an interrogatory response ordered by the Court on December 23. But Chapterhouse provided this discovery in December and January, as it has repeatedly told Plaintiff. Second, Plaintiff asks that the Court order Chapterhouse to produce a document custodian for deposition. Chapterhouse repeatedly offered to stipulate to mutual custodial depositions, followed by full 30(b)(6) depositions. Plaintiff refused. Accordingly, Chapterhouse has proposed dates for a 30(b)(6) deposition of Chapterhouse, but also made clear that it will not stipulate to multiple 30(b)(6) depositions in light of Plaintiff's refusal to agree to the same.

As detailed below, both issues are manufactured by Plaintiff, and its motion should be denied.

In fact, Plaintiff only began pressing these issues when it became clear that Chapterhouse intended to file a motion to compel Plaintiff to produce information regarding the employment

status of the authors of Plaintiff's alleged works, and email communications responsive to Chapterhouse's discovery, both of which Plaintiff has wrongfully withheld and which are the subject of Chapterhouse's cross motion filed herewith.

In order to meet its burden to show copyright infringement in this case, Plaintiff must first meet its burden to show ownership of the alleged works. As a United Kingdom entity, UK law will apply to the issue of ownership, and it requires that Plaintiff establish that each of its alleged works were created by authors in the scope of their employment, or that Plaintiff has valid assignments. More than a year into this case—and near the close of fact discovery—last month Plaintiff finally identified the authors of the works in suit (although it now concedes that it unable to identify the author information for a number of the alleged works). But Plaintiff refuses to identify which of these individuals are current employees, the dates of their alleged employment by Plaintiff, or to provide contact information for those no longer employed by Plaintiff so that Chapterhouse can test Plaintiff's claims. Chapterhouse cross moves to compel this necessary information.

Plaintiff has also failed to produce a *single* internal email or *any* communications with any of the more than 35 individuals it now identifies as the authors of the works at issue, despite the Court's order that Plaintiff produce documents related to the creation of its alleged works. Plaintiff's lawyers will not even confirm whether email has ever been reviewed for production despite repeated requests. This is in stark contrast to Chapterhouse's production of thousands of pages of email with its independent contractor designers regarding the design of Chapterhouse's products. Notably, Plaintiff—a multinational corporation that claims to be one of the most successful gaming companies in the world—has produced just 1,780 documents totaling 5,379 pages in this litigation, compared with 14,520 pages produced by Chapterhouse, a tiny company run out of its founder's home in Texas.

Finally, Plaintiff refuses to provide documents establishing dates of first U.S. use of the marks it claims in this case, without which it cannot establish trademark rights in the U.S.

The Court should deny Plaintiff's manufactured motion and order Plaintiff to

immediately (a) provide the employment status and dates of employment of the authors of its alleged works with current contact information for any non-employees; (b) collect and produce responsive email communications; and (c) provide documents establishing the dates of first U.S. use for each of the marks Plaintiff claims in this action.

## II.     THE COURT SHOULD DENY PLAINTIFF'S MANUFACTURED MOTION

### A.     Chapterhouse Has Already Responded to the Court-Ordered Discovery

Plaintiff moves to compel responses to its document requests 2, 7, 9, 10, 15, 16, 18, 19, 20, and 27, and  interrogatory 15.  Mot. at 14.  Chapterhouse has already responded to these requests, which it has repeatedly told Plaintiff.[1]  Plaintiff's motion should be denied.

#### 1.     Chapterhouse Has Already Responded to Document Request 2.

Chapterhouse served its objections to this request more than nine months ago, and since that time Plaintiff has never raised it as an issue before filing this motion.  This request sought "documents and things identified, reviewed, or considered by Chapterhouse in preparing responses to each of Games Workshop's First Set of Interrogatories. . . . "  Chapterhouse objected to the request on multiple grounds, including that it was overbroad and sought irrelevant materials.  Plaintiff has neither attempted to narrow its request, nor even attempted to explain why it should be granted.   Indeed, Plaintiff's Motion refers to this request, but does not further address it, offers no argument as to why Chapterhouse's response is incomplete, and gives no indication what relief Plaintiff seeks or why.

#### 2.     Chapterhouse Has Already Responded to Document Requests 7, 9, and 10.

These three requests seeking Chapterhouse's communications with Jon Paulson (No. 7), third party sources relied on by Chapterhouse (No. 9), and mock-ups and drafts of

---

[1] Plaintiff's claim that "since December 23, Chapterhouse's entire production has consisted of a single, one-page document" (Mot. at 2) is false: Chapterhouse produced more than a hundred pages of documents on December 28, 2011.  Kearney Decl. ¶ 2 & Ex. A.  Plaintiff's claim is also very misleading as it knows that Chapterhouse provided responses to many of these requests earlier in December.

Chapterhouse's products (No. 10) were the subject of Plaintiff's November 30, 2011 motion to compel (Dkt. 117), the December 19 hearing on that motion, and the Court's December 23, 2011 Order (Dkt. 139). Chapterhouse had already produced responsive documents *before* the hearing on Plaintiff's motion. At the December 19 hearing, Chapterhouse informed Plaintiff and the Court that it had done so, but Plaintiff's counsel claimed that he had not received the documents,[2] when in fact his office had received them days before the hearing and he neglected to mention that he had been traveling and so did not know whether they had come in.[3] Plaintiff even acknowledges it in its motion that Chapterhouse has produced responsive documents. *See, e.g.*, Mot. at 5 (referring to "documents . . . that Chapterhouse did produce in December"); *id.* at 6 ("Chapterhouse has produced . . . documents"). It is unclear why Plaintiff has moved to compel responses to these requests.

### 3. Chapterhouse Has Already Responded to Document Request 15.

Plaintiff's document request no. 15 sought "documents or things . . . concerning any sales of Chapterhouse's products on eBay or in any other secondary market." In its Nov. 30, 2011 Motion to Compel (Dkt. 117), Plaintiff explained that it wanted Chapterhouse to "identify sales volumes in specific venues such as eBay or Barterhouse." Dkt. 117 at 10. The Court instructed Chapterhouse to respond to that narrowed request. Dkt. 139 at 1. But Chapterhouse had already done so.[4] Had Plaintiff discussed this issue with Chapterhouse prior to moving, Chapterhouse could have confirmed this fact.

### 4. Chapterhouse Has Already Responded to Document Requests 16, 18, and 19.

---

[2] *See* Kearney Decl. ¶ 3 & Ex. B (Dec. 19, 2011 Hearing Transcript) at 3:11-14 ("THE COURT: . . . Have you gotten anything in the last two weeks because their response was filed on the 7th of December? So since then, have you gotten anything? MR. KASPAR: I have not, no.").

[3] Plaintiff received Chapterhouse's discovery responses on December 16, three days before the Monday hearing. Dkt. 137 (Defendant's letter to the Court dated Dec. 19, 2011) ("The Chicago offices of Foley & Lardner received the disc before 10:00 am Friday, December 16, 2011."); Dkt. 138 (Plaintiff's letter to the Court dated Dec. 19, 2011) ("Games Workshop Ltd. acknowledges that it has now received a production disc from Chapterhouse that is dated December 15, 2011").

[4] Kearney Decl. ¶ 4.

The Court's December 23, 2011 Order instructed Chapterhouse to produce documents responsive to these three requests, if any, by December 28, 2011. Chapterhouse did so, producing more than a hundred pages of documents.[5] Chapterhouse has repeatedly informed Plaintiff of this, which Plaintiff acknowledges in its Motion. Mot. at 12 ("Chapterhouse has stated . . that it has produced documents as ordered by the Court"). No nonprivileged documents responsive to request no 18 have been identified, and Chapterhouse had already produced all nonprivileged documents responsive to request 19 before the December 28 date.

### 5.      Chapterhouse Has Already Responded to Document Request 20.

This vague, overbroad request sought "Any and all documents . . . concerning any changes to defendant's website appearing at www.chapterhousestudios.com on or after December 22, 2010." The Court held that the request "must be narrowed. . . to be enforceable." Dkt. 139 at 1. Plaintiff then specified that it was seeking documents about (a) "changes to the disclaimer shortly after this lawsuit was filed," (b) "the decision to delete the banner about "Custom Sculpts and Bits for Warhammer 40,000," and (c) "changes to the descriptions of the products." Mot. at 12.[6] To Chapterhouse's knowledge, no responsive, non-privileged documents exist

### 6.      Chapterhouse Has Already Responded to Document Request 27.

This request seeks "Any and all documents or things on which Chapterhouse consulted or relied in alleging each of the affirmative defenses asserted in its Answer to the Amended Complaint." Although Plaintiff mischaracterizes this as a request for "independent creation documents" (Mot. at 10), it is not. In any event, Chapterhouse has already produced non-

---

[5] Kearney Decl. ¶ 2 & Ex. A (Dec. 28, 2011 letter transmitting Chapterhouse production disk). Request 16 concerned Chapterhouse's advertising and promotion of its products at issue; Request 18 concerned the disclaimer on Chapterhouse's website; and Request 19 concerned Chapterhouse's website banner.

[6] The Court instructed Plaintiff to "specify[] the changes that you want them to provide you documents about." Kearney Decl. ¶ 3 & Ex. B (Dec 19, 2011 Hearing Transcript at 25:21-23). Particularly in light of the Court's instructions, Plaintiff's purported request for all documents concerning "the recent decision to change the overall look and feel of the site" is vague and overbroad, does not narrow Plaintiff's original overbroad request, and fails to "specify[] the changes" about which Plaintiff requests documents.

privileged documents responsive to this request, as it agreed to do.[7]  It is not clear what else

Plaintiff seeks—and indeed, Plaintiff's motion does not appear to actually seek anything, but

simply takes the opportunity to argue the merits of Plaintiff's case.

### 7.    Chapterhouse Has Already Responded to Interrogatory 15.

Chapterhouse has responded to this interrogatory, as the Court ordered.  On August 19,

2011, Plaintiff propounded the same two requests for admission for each Chapterhouse product

Plaintiff had identified in its response to Chapterhouse's interrogatories nos. 1 and 2,: first,

> Admit that Chapterhouse is unable to identify any specific third-party works (that
> is, works created by parties other than Plaintiff) on which it relied in developing
> the accused product. . . .

and second,

> Admit that Chapterhouse does not currently have in its possession (so as to make
> available for discovery and inspection) any specific third-party works (that is,
> works created by parties other than Plaintiff) on which it relied in developing the
> accused product. . . .[8]

Plaintiff's interrogatory no. 15 asked Chapterhouse, "for each admission request in

Games Workshop's First Set of Requests For Admission," to

> identify each third party work on which Chapterhouse relies in support thereof,
> and set forth the date on which and source from which Chapterhouse originally
> located or acquired the same.

In its December 15, 2011 Order, the Court instructed Chapterhouse to answer

Interrogatory 15, which Chapterhouse did.[9]  To the extent Chapterhouse is aware of such works

in its possession, custody, or control, it has produced them in accordance with Fed. R. Civ. P.

---

[7] Chapterhouse also agreed to supplement its response to Plaintiff's Interrogatory No. 13, which sought "facts or other grounds . . . on which Chapterhouse relied" for its affirmative defenses.  It has done so. Plaintiff does not move on Interrogatory No. 13, and its insistence that Chapterhouse offer an "explanation of the basis for its . . . affirmative defenses" (Mot. ¶ 4) is completely improper and goes far beyond what Plaintiff has requested or Chapterhouse has agreed to provide.

[8] Games Workshop Ltd.'s First Request for Admissions on Defendant Chapterhouse Studios LLC (Nos. 1 - 190) (Aug. 19, 2011).

[9] Kearney Decl. ¶ 5 & Ex. C (Defendant Chapterhouse Studios LLC's Supplemental Response to Games Workshop Ltd.'s Fourth Set of Interrogatories).

33(d).  In addition, to the extent Chapterhouse is aware of other such works not in its possession, custody, or control, it has provided a narrative response identifying those.  Because Chapterhouse relies on independent contractors to design and create its products and may be unaware of third-party works its independent contractors relied upon in creating the products at issue, it is unable conclusively to identify such works or determine whether such works are in its possession, custody, or control.  Plaintiff's claim that "unless Chapterhouse has a right . . . to know the documents and sources on which the designers rely, it simply cannot contend that any of the designs were independently created" is nonsense.  (Mot. at 10.)  Chapterhouse is fully entitled to have its independent contractor designers testify on this issue.

### 8. Chapterhouse Has Already Responded to Document Request 29.

Plaintiff discusses at length its document request 29[10] but does not move on it.  Mot. at 14.  Moreover, as discussed below, no further response is warranted.  The bulk of Plaintiff's argument has nothing to do with the document request, but instead comprises an unfocused and irrelevant argument about whether Chapterhouse is required to produce documents in the hands of its independent contractors—an issue the Court has already ruled on.  Chapterhouse addresses this issue separately below, but notes that Plaintiff fails to move on that issue as well.

Plaintiff's document request is overbroad.  Unsurprisingly, Plaintiff does not quote the actual language of its request in its Motion, which seeks

> all documents setting forth or referring to the terms of the relationship between and/or among Chapterhouse or its principals and any if [sic] its independent designers or manufacturers, including (without limitation) responsibilities between and among the same, and division of revenues and costs between and among the same.

Although Chapterhouse objected to this vague and extremely overbroad request, Plaintiff made no attempt to narrow it, failed to raise it in correspondence, never attempted to meet and confer on the subject, and it is unclear what documents Plaintiff seeks.  And, as noted, Plaintiff

---

[10] Plaintiff's arguments seem to address its document request no. 30, not 29.  *See* Dkt. 158-1 at ¶ 5 (Decl. of Scott Kaspar), Dkt. 158-2 at 8 (Ex. 5 to Decl. of Scott Kaspar).

does not even move on this request.  Mot. at 14.

### 9. The Court Has Already Considered and Rejected Plaintiff's Motion Regarding Its Admission Requests

Plaintiff purports to "renew its November 30 motion to compel with respect to its Admission" (Mot. at 6), but fails to brief the issue.  Plaintiff's Nov. 30 motion (Dkt. 117) did not seek to compel responses to Plaintiff's RFAs, nor did it offer any substantive argument as to why Chapterhouse's responses were inadequate.  Rather, Plaintiff simply asked the Court to deem the requests admitted, based entirely on the mistaken notion that Chapterhouse's responses had been late.  The Court found that "defendant's responses . . . were timely."  Dkt. 139 at 1.  In short, the Court has already considered and rejected Plaintiff's motion regarding its admission requests.

Because Chapterhouse has already responded fully to each of the discovery requests addressed in Plaintiff's motion, and for the additional reasons noted above, Plaintiff's motion should be denied.

### B. Chapterhouse Is Not Required to Produce Independent Contractors' Documents.

The Court has already ruled that "Defendant is not obligated to produce documents in the hands of its independent contractors / designers."  Dkt. 139 at 1.  Nonetheless, Plaintiff continues to argue this point.  Plaintiff's claim that because two of Chapterhouse's independent contractors purportedly informally identify themselves as something other than independent contractors on third-party websites, they should be deemed employees of Chapterhouse is again misplaced.

### 1. Chapterhouse's Independent Contractors Are Not Employees or Members of Chapterhouse.

Plaintiff claims, without any foundation, that certain language on Chapterhouse's website (which Plaintiff's Motion does not reproduce) and hearsay statements of two of Chapterhouse's independent contractors are "evidence that Chapterhouse has control over at least some of its designers" and "indicate[] that there are four employees at Chapterhouse."  Mot. at 9.  Plaintiff is

mistaken. Chapterhouse has no employees. Declaration of Nick Villacci ("Villacci Decl.") ¶ 2. It is a Texas limited liability corporation. *Id*. ¶ 1. Michael Lawler, a Chapterhouse concept artist, is not an employee or a member of Chapterhouse. *Id.* ¶ 4. Tomas Fiertek, a Chapterhouse designer, is also not an employee or a member of Chapterhouse. *Id.* ¶ 6.

Plaintiff's continued position that Chapterhouse should produce documents from its independent contractors is particularly ironic since Plaintiff has apparently misled Chapterhouse and the Court about the employment status of the authors of Plaintiff's alleged works for over a year, and has yet to produce a *single* email correspondence from its alleged authors about the creation of the alleged works despite taking the position that they are all employees.

### 2.     Chapterhouse's Attorney-Client Privilege Applies to Its Communications with Its Independent Contractors

Plaintiff is also mistaken in claiming that "either Mr. Fiertek is an employee . . . or Chapterhouse has waived its privilege." (Mot. at 10.) Unsurprisingly, Plaintiff cites no authority for this proposition, which is incorrect as a matter of law. "A privileged communication does not lose its status as such when an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation." *Wilstein v. San Tropai Condominium Master Ass'n*, 189 F.R.D. 371, 379-80 (N.D. Ill. 1999), quoting *Weeks v. Samsung Heavy Ind. Co., Ltd.*, 1996 WL 341537, at *4 (N.D. Ill. June 20, 1996). "[D]ocuments between business personnel responsible for a project that outlines a situation and requests or relays both legal and business advice" are privileged. *McCook Metals LLC v. Alcoa Inc.*, 192 F.R.D. 242, 254 (N.D. Ill. 2000). As a general matter, "Management personnel should be able to discuss the legal advice rendered to them as agents of the corporation." *Wilstein v. San Tropai Condominium Master Ass'n*, 189 F.R.D. 371, 379-80 (N.D. Ill. 1999), quoting *Weeks v. Samsung Heavy Ind. Co., Ltd.*, 1996 WL 341537, at *4 (N.D. Ill. June 20, 1996).

"The attorney-client privilege affords confidentiality to communications among clients, their attorneys, and the agents of both, for the purpose of seeking and rendering an opinion on law or legal services, or assistance in some legal proceeding, so long as the communications

were intended to be, and were in fact, kept confidential." *Johnson v. Sea-land Service, Inc.*,
2001 WL 897185, at *2 (S.D.N.Y. 2001). It is irrelevant that Mr. Fiertek is an independent
contractor instead of an employee. "It is unquestionable that a person may be another's agent
without being an employee." *Carte Blanche (Singapore) PTE., Ltd. v. Diners Club. Intern., Inc.*,
130 F.R.D. 28, 34 (S.D.N.Y. 1990). *See Roger v. Boise Cascade Corp.*, 1988 WL 84724 N.D.
Ill. (1998) (communications between agent and outside counsel privileged); *Stafford Trading,
Inc. v. Lovely*, 2007 WL 611252 (N.D. Ill. 2007) (outside consultant covered by privilege).

Nick Villacci, as the sole member of Chapterhouse Studios LLC, acts as its agent in
seeking and obtaining legal advice from attorneys concerning copyright law and Chapterhouse's
products. When Fiertek works on a product for Chapterhouse, he acts as Chapterhouse's agent
for that purpose. Thus when Fiertek, as Chapterhouse's agent, seeks legal advice concerning his
responsibilities with respect to Chapterhouse and for the benefit of Chapterhouse, those
communications remain within Chapterhouse's privilege.

### C. Plaintiff's Motion to Compel Chapterhouse's 30(b)(6) Deposition Is Unnecessary and Procedurally Improper

Plaintiff claims that Chapterhouse refuses to produce a document custodian for
deposition (Mot. at 5), but Chapterhouse has repeatedly offered Plaintiff dates for
Chapterhouse's 30(b)(6) deposition. Kearney Decl. ¶¶ 6-9 & Exs. D - G. The real issue—which
Plaintiff does not brief or even mention—is that Plaintiff wants to conduct *multiple* 30(b)(6)
depositions of Chapterhouse. But even if Plaintiff offered any argument why it should be
permitted multiple 30(b)(6) depositions of Chapterhouse, doing so in a motion to compel is
procedurally improper. The Federal Rules requires a party to seek leave of court to take a second
deposition where "the parties have not stipulated to the deposition and the deponent has already
been deposed in the case." Fed. R. Civ. P. 30(a)(2)(A)(ii). Chapterhouse has not already been
deposed, and Plaintiff has not properly moved for leave of court. For all of these reasons, the
Court should deny Plaintiff's motion.

## CHAPTERHOUSE STUDIOS' CROSS MOTION TO COMPEL

**I.    PLAINTIFF SHOULD PRODUCE EMPLOYMENT AND CONTACT INFORMATION FOR THE AUTHORS OF ITS ALLEGED WORKS IN RESPONSE TO CHAPTERHOUSE'S INTERROGATORY 17.**

As part of its *prima facie* case, Plaintiff must show that it owns each of the copyrights at issue. Because Plaintiff has no U.S. registrations for any of the works it has identified as allegedly infringed, and is not entitled to the presumption of ownership that registration gives, it must prove ownership of the copyrights. Under governing U.K. law, the natural person who creates a work is the presumptive first owner of copyright in the work.[11] The only exception is that, where the creator is an employee working in the course and scope of his employment, the creator's employer presumptively owns the copyright.[12] A creator may also assign his copyright to a third party by a signed writing, but Plaintiff has conceded that none exist.[13] Plaintiff must therefore prove that it is the original owner of each of the claimed copyrights by demonstrating, at a minimum, that each author was an employee at the time he created the work at issue.

Because Plaintiff failed to identify the authors of its works, their employment status, or their contact information, Chapterhouse served Interrogatory No. 17 seeking identification of "the natural person(s) who created [each of Plaintiff's] work[s]," by identifying each author's full name; present or last known business address, telephone number, and email address; occupation and business position or title held; and present or last known U.S. and foreign residence address, telephone number, and email address.[14]

Plaintiff claims to have produced documents responsive to this interrogatory, but it has

---

[11] Copyright Designs & Patents Act, 1988, c. 48, § 11(1) ("First ownership of copyright").

[12] *Id.* § 11(2).

[13] Kearney Decl. ¶ 10 & Ex. H (Plaintiff Games Workshop Studios LLC's [sic] Response to Request for Production of Documents to Games Workshop Limited Set Two, at 2). Plaintiff has also represented repeatedly all of its works (or alternatively all but one) were created by its employees. *See, e.g.*, Kearney Decl. ¶ 11 & Ex. I (Sept. 1, 2011 Hearing Transcript at 30:16-19) ("MR. MOSKIN: . . . as a matter of law, Games Workshop is the owner of every single work . . . because they're all written and created by employees within the scope of their employment."); *id.* ¶ 12 & Ex. ¶ J (Plaintiff's Response to Chapterhouse's RFA # 337) (stating that all but one of the works for which Plaintiff claims copyrights in this action were created by Games Workshop employees).

[14] Kearney Decl. ¶ 13 & Ex. K (Defendant Chapterhouse Studios LLC's Interrogatories to Games Workshop Limited Set Three) at 4, 3.

not.[15]  To date, Plaintiff has failed to provide employment status or contact information for any of the authors it has identified, and Chapterhouse has had to attempt to find this critical information on its own, the fact that they all presumably reside in Europe having made Chapterhouse's investigation all the more difficult.  Demonstrating just how critical this information is, of the three authors Chapterhouse has so far been able to contact, *every one of them* states that they were independent contractors at the time they created the works at issue.[16]

The Court should order Plaintiff to respond in full to Interrogatory 17, including by providing the information listed above, by February 17, 2012, to give Chapterhouse time to investigate Plaintiff's claims before the close of fact discovery.  Depending upon the response, Chapterhouse may need to seek additional time and depositions to depose these individuals in light of the apparent misrepresentations Plaintiff has made about the employment status of the authors of its alleged works.

## II. The Court Should Order Plaintiff to Produce Responsive Emails and Other Communications.

Plaintiff complains that it must review 25 years of documents, but from that 25 years it has produced *not one* internal email, letter, or memorandum in response to any of Chapterhouse's discovery requests, *and refuses to confirm whether it has even searched emails for responsive documents*.  It is simply implausible that there is not a single internal email responsive to any of Chapterhouse's discovery requests, including without limitation documents concerning the design of Plaintiff's products at issue (RFP 2), which the Court ordered Plaintiff to produce on December 23 and which Plaintiff claims have been produced; documents about Chapterhouse (RFP 6); and Plaintiff's correspondence with the authors of its works (RFP 41), which Plaintiff agreed to produce.

---

[15] Kearney Decl. ¶ 14 & Ex. L (Games Workshop Ltd.'s Response to Chapterhouse Studios LLC's Interrogatories Set Three) at 3.
[16] Kearney Decl. ¶¶ 15-18 & Exs. M, N.

Plaintiff claims that none of its documents, which include emails, are privileged. It has produced a privilege log listing only two partially redacted documents with third parties (after claiming that it had no such documents) and has represented that no other privileged documents exist.[17] Plaintiff has recently disclosed for the first time that it has withheld certain information based on European privacy laws. On February 7, 2012, in response to a letter from Chapterhouse questioning Plaintiff's unexplained redaction of certain documents, Plaintiff responded that "the redactions . . . which were made to preserve the confidentiality of the individuals named, raise issues under the European Data Protection Act." Notably, Plaintiff raised the issue of European privacy laws only *after* Chapterhouse pressed it on a number of unexplained redactions in Plaintiff's production.[18] Plaintiff should be ordered to disclose whether it has withheld any communications or other information based on privacy laws or similar grounds. The redacted documents are four emails sent to Plaintiff by third parties that Plaintiff claims to be its only evidence of confusion in this case, which it must prove to prevail on its trademark infringement claims. Unexplainably, Plaintiff redacted the names of its employees that received the emails, so that Chapterhouse is unable to identify them for deposition, but did not redact the names of the individuals who actually sent the emails. Although Plaintiff has now acknowledged that the redactions were improper and agreed to produce unredacted versions, it still has not done so. Unredacted versions of these four emails should also be produced.

Plaintiff represented that it would complete its outstanding document production the week of January 31, 2011.[19] Chapterhouse has noticed depositions for the weeks of February 21-24 and March 6 - 10 in the expectation that Plaintiff would have completed its production of agreed and Court-ordered documents before that time. Chapterhouse seeks a Court order that Plaintiff (1) produce responsive emails and other communications, including without limitation

---

[17] *See, e.g.,* Kearney Decl. ¶ 22 & Ex. R.
[18] Kearney Decl. ¶ 19 & Ex. O (Feb. 7, 2012 letter from Jonathan Moskin) ("the redactions . . . raise issues under the European Data Protection Act.")
[19] Kearney Decl. ¶ 20 & Ex. P (Jan 31, 2012 letter from J. Moskin) ("Games Workshop has identified responsive documents . . . We expect to complete such production this week").

communications about the design of the products at issue, and communications about

Chapterhouse and this litigation; (2) identify the custodians from whom it has collected email for

review in light of its failure to produce any internal emails to date; and (3) disclose whether it has

withheld or failed to review responsive communications or other information on any basis,

including without limitation privacy grounds, confidentiality, and claims of privilege. If it is

revealed that Plaintiff has improperly withheld or failed to collect and review documents,

Chapterhouse reserves the right to re-open depositions and to seek independent expert analysis of

Plaintiff's email communication systems.

### III.    Plaintiff Must Provide Dates of First Use in U.S. Commerce of Each Alleged Mark.

Chapterhouse's Interrogatory 18 requested:

> Separately for each mark YOU allege in this action, provide the date of first "use
> in commerce" of the mark (as that term is defined in 15 U.S.C. § 1127) by you in
> the U.S., and the nature of such use.

Plaintiff objected on grounds of relevance, but stated that it "has produced and/or will

produce documents responsive to this request." Plaintiff's relevance objection is not well taken.

Plaintiff's federal, state, and common law trademark claims all require Plaintiff to prove that it

has trademark rights by, among other things, proving that it has used the marks in U.S.

commerce. But the only arguably responsive documents for many of the alleged marks are time-

and-date-stamped screenshots of product pages from Plaintiff's website. Plaintiff cannot

seriously contend that these documents show the date of first use, and if it does, it should be held

to those dates.

When pressed on this issue, Plaintiff responded vaguely that it had also produced

"additional specimens" and "documents showing the dates of first publication of the works in

issue."[20] None of these documents (insofar as they can be identified at all) are responsive to

Interrogatory 18. Plaintiff has produced no documents showing dates of first use of any of its

---

[20] Kearney Decl. ¶ 21 & Ex. Q.

alleged unregistered marks, and dates of first publication of copyrighted works are not responsive to an interrogatory seeking dates of first use in commerce.

The information Chapterhouse seeks is directly relevant to Plaintiff's federal, state, and common law trademark claims, and the Court should order Plaintiff to respond to Interrogatory 18 in full.

## IV.    STATEMENT UNDER L.R. 37.2

Chapterhouse has complied in good faith with L.R. 37.2. Chapterhouse's counsel has raised these issues with Plaintiff's counsel in multiple letters and although Plaintiff's counsel said it would provide some of the author information, it failed to do so or to explain the missing email communications when counsel spoke on February 8, 2012.[21] Plaintiff's counsel has not responded to multiple follow-up calls from Chapterhouse's counsel attempting to further address these issues.

## V.    CONCLUSION

Plaintiff's motion to compel seeks discovery Chapterhouse has already produced; asks the Court to order a deposition that Chapterhouse has already agreed to; and rehashes arguments the Court has already considered and rejected. The Court should deny the motion in its entirety.

On its cross motion to compel, Chapterhouse requests that the Court order Plaintiff to:

(1) respond in full to Chapterhouse's Interrogatories No. 17 and 18 by February 17, 2012;

(2) produce responsive emails and other communications, including without limitation communications about the design of the products at issue, and communications about Chapterhouse and this litigation and;

   a. identify the custodians from whom it has collected email for review in light of its failure to produce any internal emails to date; and

   b. disclose whether it has withheld or failed to review responsive communications or other information on any basis, including without limitation privacy grounds, confidentiality, and claims of privilege.

---

[21] Kearney Decl. ¶¶ 23- 28 & Exs. S – U.

Dated: February 13, 2012    Respectfully submitted,

          By:  /s/ Thomas J. Kearney
          Jennifer Golinveaux (CA Bar No. 203056)
          Dean A. Morehous (CA Bar No. 111841)
          Thomas J. Kearney (CA Bar No. 267087)
           WINSTON & STRAWN LLP
           101 California Street
           San Francisco, CA 94111-5802
           Phone: (415) 591-1000
           Fax: (415) 591-1400
           jgolinveaux@winston.com
           dmorehous@winston.com
           tkearney@winston.com

          Eric Mersmann (IL Bar No. 6286859)
          Jonathon C. Raffensperger (IL Bar No. 6302802)
           WINSTON & STRAWN LLP
           35 West Wacker Drive
           Chicago, IL 60601-1695
           Phone: (312) 558-5600
           Fax: (312) 558-5700
           emersmann@winston.com
           jraffensperger@winston.com

          *Attorneys for defendant Chapterhouse Studios LLC*