IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC and | ) | |
| JON PAULSON d/b/a PAULSON GAMES, | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF THOMAS J. KEARNEY IN SUPPORT OF
DEFENDANT CHAPTERHOUSE STUDIOS LLC'S
<u>OPPOSITION AND CROSS MOTION TO COMPEL</u>**

I, Thomas J. Kearney, declare as follows:

1. I am an associate attorney with the law firm of Winston & Strawn LLP. I am a member in good standing of the Bar of the State of California, and have been admitted *pro hac vice* to the bar of this Court for purposes of this action. I have personal knowledge of the facts set forth herein.

2. On December 28, 2011, Chapterhouse sent to Plaintiff's counsel Jonathan Moskin a disk with documents with Bates labels CHS00014237 through CHS00014353 in response to Plaintiff's Requests for Production. Exhibit A is a true and correct copy of Chapterhouse's cover letter transmitting that disk.

3. Exhibit B is a true and correct copy of the transcript of the Court's December 19, 2011 hearing on Plaintiff's November 30, 2011 Motion to Compel or for Sanctions (Dkt. 117) and Defendant's November 30, 2011 Motion to Compel Answers to Interrogatories and Document Requests (Dkt. 121).

4. On August 8, 2011, Chapterhouse produced a summary of sales information in response to Plaintiff's discovery requests. That document, which is designated HIGHLY CONFIDENTIAL, bears Bates labels CHS00000024 – CHS00000027. It contains a summary of

1

eBay auction sales. Chapterhouse's principal Nick Villacci has confirmed that Chapterhouse does not track sales of its products in any other secondary market, and that it has no records of sales, if any, through any venue called "Barterhouse."

5. Exhibit C is a true and correct copy of Defendant Chapterhouse Studios LLC's Supplemental Response to Games Workshop Ltd.'s Fourth Set of Interrogatories.

6. On January 27, 2012, I wrote to Plaintiff's counsel Scott Kaspar, proposing that the parties conduct 30(b)(6) depositions the week of February 13, and informing him that Chapterhouse would be available in Dallas, Texas during that week  Exhibit D is a true and correct copy of that letter.

7. On February 1, 2012, I wrote to Plaintiff's counsel Jonathan Moskin, reminding him that I had suggested dates for Chapterhouse's 30(b)(6) deposition in my previous letter and asking him to respond to those dates. Exhibit E is a true and correct copy of that letter.

8. On February 3, 2012, I again wrote to Mr. Moskin, informing him that Chapterhouse could be available for deposition in Dallas during the weeks of February 13 or February 20, and asking him to let us know which week he would prefer. Exhibit F is a true and correct copy of that letter.

9. On February 7, 2012, K. Joon Oh of Winston & Strawn sent a letter to Mr. Moskin, with a copy to me via email, informing Mr. Moskin that because of Plaintiff's delay in responding, Chapterhouse was no longer available the week of February 13, but that Chapterhouse could be available for deposition on either February 21 or 22. Exhibit G is a true and correct copy of that letter.

10. Exhibit H is a true and correct copy of Plaintiff Games Workshop Studios LLC's [sic] Response to Request for Production of Documents to Games Workshop Limited Set Two. In response to Chapterhouse's document request no. 4, seeking "All documents constituting the chain of title for all copyrights You claim in this action," Plaintiff responds that it "is not aware of any documents responsive to this request."

11. Exhibit I is a true and correct copy of the transcript of the Court's September 1, 2011 hearing in this matter. At page 30, lines 16-19, Plaintiff's counsel states that **"as a matter of law, Games Workshop is the owner of every single work . . . because they're all written and created by employees within the scope of their employment" (emphasis added).**

12. Exhibit J is a true and correct copy of Plaintiff's Response to Chapterhouse's Request For Admission No. 337. In response to Chapterhouse's request to admit that "Not all the works for which YOU claim copyrights in this action were created by Games Workshop employees," Plaintiff "admits that one product at issue in this litigation was created under contract by a third party but otherwise denies this request." Due to the length of Games Workshop Ltd.'s Response to Chapterhouse Studios LLC's Second Set of Requests for Admission, in which Plaintiff's response appears, Exhibit J comprises only the caption page and the page on which Plaintiff responds to request no. 337.

13. Exhibit K is a true and correct copy of Defendant Chapterhouse Studios LLC's Interrogatories to Games Workshop Limited Set Three.

14. Exhibit L is a true and correct copy of Games Workshop Ltd.'s Response To Chapterhouse Studios LLC's Interrogatories Set Three.

15. Exhibit M is a true and correct copy of Plaintiff's Supplemental Exhibit A to Games Workshop Ltd.'s Answer to Interrogatory No. 1 ("Plaintiff's Supplemental Exhibit A"), identifying for each of Chapterhouse's products at issue the works that Plaintiff alleges are infringed by that work. This document identifies for the first time some 36 authors of the works Plaintiff alleges. Plaintiff provided this document to Chapterhouse on January 19, 2012.

16. Plaintiff's Supplemental Exhibit A (Exhibit M hereto) identifies Gary Chalk as the author of Plaintiff's alleged work titled "Mantis Warrior." *See* Exhibit M hereto at p.35 (table entry 99). On January 6, 2012, I spoke to Mr. Chalk, who informed me that he had been a freelance artist at the time he created the "Mantis Warrior" work. Mr. Chalk told me that he had not been Plaintiff's employee at that time; that he had been responsible for paying taxes on all

payments he received for that work from Games Workshop; and that he had never signed a copyright assignment to Games Workshop for the "Mantis Warrior" work.

17. Plaintiff's Supplemental Exhibit A (Exhibit M hereto) identifies Eric Ren as the author of Plaintiff's alleged work titled "2034_Jet Bike Squad." *See* Exhibit M hereto at p.43 (table entry 118). On January 13, 2012, I spoke to Eric Ren, who informed me that he had been a freelance artist when he created that piece of artwork for a company called Sabertooth Games. Mr. Ren told me he had never been a Games Workshop employee.

18. Plaintiff's Supplemental Exhibit A (Exhibit M hereto) identifies Ralph Horsley as the author of Plaintiff's alleged work titled "2107_Devastators1." *See* Exhibit M hereto at p.34 (table entry 98). On February 2, 2012, I sent an email to Ralph Horsley at email@ralphhorsley.co.uk. In his reply, Mr. Horsley stated: "I do freelance for Games Workshop." I asked Mr. Horsley if he had ever been a Games Workshop employee, and he responded, "No, I have only ever freelanced with GW." Exhibit N is a true and correct copy of my correspondence with Mr. Horsley.

19. On February 7, 2012, I received a letter from Jonathan Moskin in which he claimed for the first time that certain redactions in Plaintiff's document production "raise issues under the European Data Protection Act (not merely simple confidentiality)." Exhibit O is a true and correct copy of that letter.

20. On January 31, 2012, I was cc:'d on a letter from Jonathan Moskin addressed to Jennifer Golinveaux and sent via email. In that letter, Mr. Moskin stated that Plaintiff "expecte[ed] to complete [its] production this week." Exhibit P is a true and correct copy of that letter.

21. On February 10, 2012, I received a letter from Scott Kaspar responding to some of the discovery issues Chapterhouse had raised in earlier correspondence. With respect to Chapterhouse's Interrogatory No. 18, which sought the dates of first use in U.S. commerce of each of Plaintiff's alleged marks, Mr. Kaspar stated that Plaintiff had "produced . . . additional

4

specimens" and "has produced documents showing the dates of first publication of the works in issue." Exhibit Q is a true and correct copy of that letter.

22. On December 30, 2011, I received an email from Jonathan Moskin in which he stated, "I am not aware of any attorney-client privileged documents Games Workshop has withheld." Exhibit R is a true and correct copy of that letter.

23. On February 8, 2012, I was in the office of K.Joon Oh when he answered a telephone call from Jonathan Moskin. I heard Mr. Oh say several times that he was about to send a letter to Mr. Moskin addressing many of the issues the parties had raised, and ask Mr. Moskin several times to read that letter first so that they could discuss it.

24. Mr. Oh sent Mr. Moskin the promised letter, with a copy to me via email, on February 8, 2012. That letter also asked Mr. Moskin to call back once he had reviewed its contents. Exhibit S is a true and correct copy of that letter.

25. Mr. Moskin never called back to discuss Mr. Oh's February 8 letter.

26. Ever since the Court in its December 23, 2011 Order instructed Plaintiff to produce documents responsive to Chapterhouse's document requests on December 23, 2011, I have sent multiple emails to Plaintiff inquiring when it intended to produce the ordered discovery. On February 9, 2012, I sent a letter to Plaintiff's counsel regarding Chapterhouse's issues with Plaintiff's discovery responses and asking to meet and confer the next day at 11:00 a.m. Pacific time. Exhibit T is a true and correct copy of that letter.

27. On February 10, 2012, Mr. Kaspar sent me a letter explaining that Mr. Moskin was out of the office that day and that he would respond to my February 9 letter. Mr. Kaspar also requested further information about several of Chapterhouse's document requests. Exhibit U is a true and correct copy of that letter.

28. On February 10, 2012, Jennifer Golinveaux, K. Joon Oh, and I called Plaintiff's counsel Scott Kaspar, but he did not answer his phone. Ms. Golinveaux left a message asking him to return her call or let us know another time the parties could meet and confer. Ms. Golinveaux also called a second time approximately fifteen minutes later and left another

5

message for Mr. Kaspar asking him to respond. Mr. Kaspar never returned either of those telephone calls, and never provided a time to meet and confer.

I declare under the penalty of perjury that the foregoing is true and accurate.

Dated: February 13, 2012            By: <u>/s/ Thomas J. Kearney</u>