# Exhibit O

**FOLEY**

FOLEY & LARDNER LLP

ATTORNEYS AT LAW

90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3572
jmoskin@foley.com EMAIL

CLIENT/MATTER NUMBER
099251-0101

February 7, 2012

**VIA E-MAIL**

Thomas J. Kearney, Esq.
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Re:     Games Workshop Limited v. Chapterhouse Studios LLC

Dear Tom:

This will respond to your letter of Friday, February 3, 2012 regarding Chapterhouse's outstanding discovery.

As far as we know from your letter, Chapterhouse is now producing at least one document (No. CH 14354), which we have yet to receive. (We also have yet to receive the promised privilege log and fail to see why you could not have sent it by email.) However, you continue to refuse to confirm the Bates numbers of documents, if any, responsive to Requests 16, 18 and 19. Evidently there are no such documents, as we have long contended. (Certainly we can find none.) Chapterhouse also continues to refuse to respond to Interrogatories 5, 13 and 15. It likewise continues to refuse to supplement its responses to Interrogatory 2, or to Interrogatory 3 (which you do not dispute is plainly incomplete and inaccurate). We can only guess if the new disk includes any documents responsive to Requests 20, 21 and 27, or to Document Requests 9 and 10 to address the accused products beyond the mere 15 or so for which some documents have been produced; or any documents showing independent creation, regarding which you concede Chapterhouse has to date produced nothing. Nor have you told us *when* Mr. Nagy's, Mr. Lawler's or Mr. Traina's documents will be produced or attempted to answer the question why Chapterhouse should not be compelled to produce creation documents from all of its "independent" designers, some of whom are employees or owners of the company.

However, we accept your willingness to produce Chapterhouse's document custodian next week. We can proceed on February 14 at 10 a.m. We will schedule a full 30(b)(6) deposition as soon as we have some answers to the questions we have been asking since discovery began regarding the missing documents.

Since you no longer argue that there was a basis for the AEO designation that Chapterhouse placed on its "creation documents," we will proceed tomorrow with production on a confidential basis to our client. Regarding Games Workshop's privilege log, the redactions from documents Bates Nos. 2507-2511, which were made to preserve the confidentiality of the individuals named, raise issues under the European Data Protection Act (not merely simple confidentiality). Nor have you even suggested that anything remotely relevant was redacted

BOSTON        JACKSONVILLE      MILWAUKEE      SAN DIEGO          SILICON VALLEY
BRUSSELS      LOS ANGELES       NEW YORK       SAN DIEGO/DEL MAR  TALLAHASSEE
CHICAGO       MADISON           ORLANDO        SAN FRANCISCO      TAMPA
DETROIT       MIAMI             SACRAMENTO     SHANGHAI           TOKYO
                                                                 WASHINGTON, D.C.

4833-4744-9870.1



FOLEY & LARDNER LLP

Thomas J. Kearney, Esq.
February 7, 2012
Page 2

from the THQ license – certainly nothing regarding ownership of copyright or trademark or regarding damages (as we believe is evident from the agreement itself). If you do have any questions, we would be happy to answer them.

Finally, now that Games Workshop has completed it responses to the latest overbroad and burdensome discovery requests from Chapterhouse, plaintiff's in-house counsel is resuming her efforts to determine if Games Workshop Retail can identify a witness to make available in Chicago during the week of February 13. However, thus far, Games Workshop has been unable to identify any witness who knows anything about even the one or two topics about which the company might conceivably have some knowledge. The problem is that it is merely a service company with no substantive role regarding the questions raised. We might suggest as an alternative, that you hold the questions for the depositions of Games Workshop Limited. Regarding the seven individuals at Games Workshop Limited that Chapterhouse has said it wishes to depose, some are in failing health or no longer work for Game Workshop; however, Games Workshop is confirming the schedules of the remaining individuals.

Very truly yours,

Jonathan E. Moskin

cc.:  Jennifer Golinveau, Esq.
      Scott Kaspar, Esq.

# Exhibit P

# ⊟FOLEY

**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

90 PARK AVENUE
NEW YORK, NY 10016-1314
212.682.7474 TEL
212.687.2329 FAX
foley.com

WRITER'S DIRECT LINE
212.338.3572
jmoskin@foley.com EMAIL

CLIENT/MATTER NUMBER
099251-0101

January 31, 2012

<u>Via E-Mail</u>

Thomas J. Kearney, Esq.
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Re: <u>Games Workshop Limited v. Chapterhouse Studios LLC</u>

Dear Tom:

This will respond to your January 27, 2012 letter regarding Chapterhouse's outstanding discovery. While Judge Kennelly urged the parties at the January 17, 2012 motion call to meet and confer to resolve their differences, he did not excuse Chapterhouse from providing any discovery absent a meet and confer or require that the parties exchange discovery on the same date. Indeed, the closest the Court came to any sort of mutuality was in the December 23 Order, which expressly directed the parties to set a date certain for production of privilege logs. Thus far, while Games Workshop complied on January 13, 2012, Chapterhouse has yet to do even this. If you think the Court authorized Chapterhouse to refuse to produce any discovery by purporting to link the timing of its production to the completion by Games Workshop of all of its production, please point us to where any such direction was given.

As we plainly stated in response to Chapterhouse's January 10 motion, which the Court denied, Games Workshop has been diligently working to fully comply with the Court's December 23 Order. Although Games Workshop has been reviewing its more than 25 years' of files, it has provided responses to most of the outstanding requests, and has identified responsive documents and produced them on a rolling basis. We expect to complete such production this week. Moreover, simply to deflect attention from Chapterhouse's complete failure to produce documents in response to the Court's December 23 order (or July 6 order, as it has yet to produce a single document showing independent creation) you continue to raise extraneous issues such as a document regarding Mr. Paulson's relationship with Mr. Villacci that we told you was deleted from the Internet (and hence was never a Games Workshop document anyway, and is now wholly irrelevant following the settlement with Paulson) and organizational charts. Simply to put an end to such diversions (although not because it is Games Workshop's duty), we conducted an internet search and will produce the results this week. Likewise, although Games Workshop had already produced its organizational charts responsive to Chapterhouse's requests, and demonstrated the falsity of your contention otherwise by attaching them to its recent opposition to Chapterhouse's January 10 motion, there is a new 2012 organizational chart that did not previously exist. It will be produced this week too. And we remind you yet again that the duty to supplement works both ways: Chapterhouse must supplement its prior responses. Finally, we

BOSTON
BRUSSELS
CHICAGO
DETROIT

JACKSONVILLE
LOS ANGELES
MADISON
MIAMI

MILWAUKEE
NEW YORK
ORLANDO
SACRAMENTO

SAN DIEGO
SAN DIEGO/DEL MAR
SAN FRANCISCO
SHANGHAI

SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO
WASHINGTON, D.C.



**FOLEY & LARDNER LLP**

Thomas J. Kearney, Esq.
January 31, 2012
Page 2

have also already told you repeatedly that all of Games Workshop's works (with the exception of Dawn of War) were first published in the United Kingdom.

Since the Court's December 23 order, Chapterhouse has provided no meaningful discovery (other than documents responsive to Request 10, which were promised in September and again when the parties met and conferred in late November) and we are still awaiting word when we will be able to take an initial deposition of Chapterhouse's document custodian, which we have been seeking since last August; when Chapterhouse intends to comply with its Court-ordered obligations to supplement Interrogatory 15 and Document Requests 16, 18, and 19; to fulfil its promise to supplement Interrogatories 5 and 13 and Document Request 27; and the requirement that it supplement its responses to Interrogatory 2 and Document Requests 9 and 10 to address all of the products beyond the meagre 15 or so for which some documents have been produced; Interrogatory 3; Document Request 20; and to provide Chapterhouse's privilege log. Although we reject outright the notion that the Court authorized Chapterhouse to delay responding to discovery until Games Workshop had completed its responses, we have confirmed above what we previously told you as to when Games Workshop intends to complete production. When can we expect to receive the documents and supplemental interrogatory answers that Chapterhouse has been ordered to produce and had promised to produce when the parties met and conferred on November 29, as summarized here and in our prior two letters?

Because Winston & Strawn is also now representing the designers, Mr. Lawler and Mr. Traina, when can we expect receipt of those documents? Please also confirm if you are representing Mr. Nagy and when we can expect his documents. You also have never explained why Chapterhouse can't simply request these documents from its own designers, some of whom purport to be employed by the company. What is the answer?

Regarding the AEO designation that Chapterhouse placed on its "creation documents," we will remind you again that we requested de-designation on December 30 and made our position very clear in our January 13 opposition and cross-motion. The terms of the Agreed Protective Order are clear: Chapterhouse had 10 days to remove the designation or else seek a protective order from the Court. That time has long passed. We also invited you twice last week to propose an alternative arrangement, but you have not responded. Games Workshop will treat these documents as "Confidential". As we demonstrated to the Court (Ex. D to Kaspar Decl.), it would appear the only reason Chapterhouse wishes to suppress access to the documents is because they openly show direct copying.

Finally, we agree we will need to talk soon about scheduling depositions. Given the gaping holes in Chapterhouse's production, we continue to insist that it must produce a document custodian for a telephonic deposition before we are put to the expense of going to Texas to begin substantive questioning. We will even give you a list of the basic questions we intend to ask. You previously agreed to do so. Please confirm a new date and time. Although we do not agree that there are remotely similar defects in Games Workshop's production (rather,



**FOLEY**

FOLEY & LARDNER LLP

Thomas J. Kearney, Esq.
January 31, 2012
Page 3

just an issue of timing given the need to review 25 years of archives, which could have been resolved far more easily had you ever answered our questions in the months preceding December 23 to identify specific products for which you sought such background materials), as we have told you in the past, we will happily consider a similar telephonic deposition. We can also discuss in that call what you wish to do about Games Workshop Retail. You have not responded to our January 26 letter. If you do wish to proceed with a deposition, you will have to let us know so that we can make arrangements. In the meantime, understanding there will be no deposition this Thursday in Washington DC, we enclose formal objections to the testimonial subpoena.

Very truly yours,

Jonathan E. Moskin

cc.:    Jennifer Golinveau, Esq.
        Scott Kaspar, Esq.

**Exhibit Q**

# █FOLEY

**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

321 NORTH CLARK STREET, SUITE 2800
CHICAGO, IL 60654-5313
312.832.4500 TEL
312.832.4700 FAX
foley.com

WRITER'S DIRECT LINE
312.832.5113
skaspar@foley.com EMAIL

CLIENT/MATTER NUMBER
099251-0101

February 10, 2012

<span style="font-variant: small-caps">Via E-Mail</span>

Thomas J. Kearney, Esq.
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

Re:     Games Workshop Limited v. Chapterhouse Studios LLC

Dear Tom:

Jonathan is out of the office, so I am responding to your letter yesterday evening regarding Games Workshop's most recent responses to discovery and the inquiries by your colleague, Mr. Oh, regarding redacted documents and deposition scheduling.

Request 47: We have discussed this request with our client and have very little idea what you are looking for. Indeed, the request seems to be based on a misconception how artists work in a studio or an incorrect presumption that Games Workshop provides instructions to the author's who create the works. We understand that *Chapterhouse* develops its products by starting with existing materials (all of which evidently come from Games Workshop) and then uses them to make derivative works, as illustrated, for example, by Document CHS003522 in which Mr. Villacci indicates that he went to a hobby store to copy materials from a Games Workshop codex so he could help Mr. Navarro create the accused "Mycetic Spore" product. However, that is not how Games Workshop's artists and authors create. If you can give us some further information what it is you are seeking, we can raise it with Games Workshop to try to accommodate the request.

Request 49: We discussed this with our client and we were again at a loss to know what you are looking for. To begin, Games Workshop itself is the author of its works, but this request seems to be seeking interviews that individual artists may have given on any number of possible subjects over the course of 25 years or more. It is our understanding of the law that what individuals say in their individual capacities are not the responsibility of the employer, and, not surprisingly, Games Workshop does not keep a repository of interviews by individual authors and artists. Moreover and equally important, this request is not even limited to any particular topics of interest. Once again, perhaps you can clarify.

Request 52: We believe we have produced substantial evidence of the actual recognition of the Warhammer 40,000 products and marks. Games Workshop is reviewing its records for additional such evidence as you have requested and we expect to receive and review additional documents within days. I think it is best to discuss this after we have had a chance to review them.

| BOSTON | JACKSONVILLE | MILWAUKEE | SAN DIEGO | SILICON VALLEY |
|--------|--------------|-----------|-----------|----------------|
| BRUSSELS | LOS ANGELES | NEW YORK | SAN DIEGO/DEL MAR | TALLAHASSEE |
| CHICAGO | MADISON | ORLANDO | SAN FRANCISCO | TAMPA |
| DETROIT | MIAMI | SACRAMENTO | SHANGHAI | TOKYO |
| | | | | WASHINGTON, D.C. |

4843-2597-0190.1



FOLEY & LARDNER LLP

Thomas J. Kearney, Esq.
February 10, 2012
Page 2

Request 60: Games Workshop briefly owned Sabertooth Games, which held rights in a card game called Universal Fighting System. The company was sold in 2008 and had nothing to do with any of the properties at issue in this suit.

Request 61: The request appears to be based on a misunderstanding. Citadel Miniatures is a brand name. There is or was also a company called Citadel Miniatures Limited, but it is not an operating company and has nothing to do with this suit or the products sold under the Citadel Miniatures brand name.

Interrogatory 18: You are incorrect in stating that Games Workshop only produced screen shots of the web pages showing its products and the accompanying trademarks. Although these screenshots do plainly show use of the marks in commerce, we have also produced a large number of additional specimens as well as records from the Trademark Office for the registered marks. We also have produced documents showing the dates of first publication of the works in issue. You also have not answered the question presented in the interrogatory answer: namely, does Chapterhouse even purport to question that Games Workshop has priority of use over Games Workshop with respect to any of the marks and symbols in issue? Because it seems abundantly clear that every product name used by Chapterhouse was copied directly from an already-existing Games Workshop character or army or product, we do not even understand the basis for the inquiry.

Interrogatory 19: We are puzzled by the truncated quote merely of the objection from the actual interrogatory answer that you have provided. As you know, the actual answer is far more detailed, as follows:

Without prejudice to or waiver of the foregoing objections, Games Workshop is the largest and most successful tabletop fantasy wargames company in the world, with a following of millions of gamers and hobbyists devoted to collecting, creating, painting, and building armies for use in Games Workshop's popular WARHAMMER and WARHAMMER 40,000 war games. The various characters, armies and accessories in the WARHAMMER 40,000 universe have distinct names, colors, symbols, and other characteristics by which the game is known and by which it is immediately recognized by the many fans and followers of the game  Games Workshop has very substantial annual sales of products bearing its WARHAMMER and WARHAMMER 40,000 marks, with annual sales in this country alone of approximately $40 million, and Games Workshop invests considerable sums each year in marketing and promoting these brands and in developing new products under these brand names. Games Workshop has thereby built up substantial goodwill and reputation in the marks WARHAMMER, WARHAMMER 40,000 marks, which it uses in connection with its tabletop games and miniatures and accessories for such games  Deliberate



**FOLEY & LARDNER LLP**

Thomas J. Kearney, Esq.
February 10, 2012
Page 3

copying of these symbols by parties such as Chapterhouse also confirms that the subject marks are immediately recognizable – even when slightly modified such as by replacing the specific blood raven symbol with a more generic raven symbol used in the context of the game.

Interrogatory 20: Your letter is incorrect in stating that Games Workshop has not produced sales records. However, Games Workshop is attempting to determine if additional reports with greater granularity can be generated. (Based on your own arguments to the Court that Chapterhouse should not be required to produce web metrics reports even if it has the information in a database it can access might suggest that Games Workshop has no duty even to try to generate such additional reports, but the fact is it is trying to do so.)

Interrogatory 21: You seem to be asking us for a narrative description of thousands of pages of documents produced in the litigation but have not articulated a specific question about any one of the documents to support your contention that there are inconsistent identifications of Plaintiff s works. Notwithstanding that for months you have refused to answer *any* of our questions seeking identification of very specific documents allegedly produced by Chapterhouse, because your letter seems to suggest there are only specific documents about which you have questions, it would be more productive if you would simply ask us those specific questions.

Interrogatory 22: The Court previously rejected your contention that Games Workshop had failed to identify individual writers or artists who contributed to Games Workshop's own authorship of the works in issue. We also just spent weeks running down information about contributors to a 1987 magazine the content of which is not in issue in this case, and now you seem to be asking for extensive personal information about every single contributor to every single work. Can you please explain the relevance of this inquiry? If there are specific questions you have about authors of specific works that is one thing, but we do not understand the basis for this inquiry. It is also curious that you should be asking for such information about myriad authors when Chapterhouse has refused to identify a single one of its employees, or to explain its actual relationships with any of its designers, of whom there are apparently only eleven other than Mr. Villacci himself.

Finally, you say you have reviewed the documents Plaintiff has produced to date, and note that Plaintiff has produced only sixteen emails of any kind. I have no idea if you have added correctly, but I do not know what is the question or how to answer the question in the abstract. If there is some particular category of requests where you think there should be more emails, let me know. This calls to mind the great fuss you raised when we identified only two or three documents withheld on grounds of privilege, yet Chapterhouse itself then identified only three documents - plus one obviously irrelevant category that we could have added as well (i.e. communications between defendant and trial counsel) and another general category that is plainly improper (i.e. unspecified communications with a non-lawyer over whom you have told the Court you have no control). Once again, although it does not seem surprising to me that



FOLEY & LARDNER LLP

Thomas J. Kearney, Esq.
February 10, 2012
Page 4


Games Workshop would have few emails relevant to the issues in the case: namely the copying and distribution of its copyrighted materials and infringement of its trademarks. That much of the evidence of copying by your client is revealed in emails with its designers does not mean that Games Workshop does have or should have emails relevant to any particular inquiries you have raised.

Last, Games Workshop is sending us clean, unredacted copies of the handful of emails requested by your colleague, Mr. Oh. There is a specific reason we believe a stipulation is best, and will send you a draft ASAP. We have now also confirmed that Games Workshop can produce the following witnesses in Chicago the first full week of March: Dave Gallagher, Jes Goodwin, Neal Hodgson, Andy Jones and Alan Merrett. Mr. Spettigue no longer works for the company and Mr. Blanche is too ill to travel. We will also need to discuss with you specifics of scheduling because Mr. Hodgson must be back in the United Kingdom by March 7.

Sincerely,

Scott R. Kaspar

cc.:    Jennifer Golinveau, Esq.
        K. Joon Oh, Esq.
        Jonathan E. Moskin, Esq.

**Exhibit R**

| | |
|---|---|
| **From:** | Moskin, Jonathan |
| **To:** | Golinveaux, Jennifer A. |
| **Cc:** | Kearney, Tom J.; Kaspar, Scott R.; Donaldson, J. Caleb; Mersmann, Eric J. |
| **Subject:** | RE: Games Workshop v. Chapterhouse Studios |
| **Date:** | Friday, December 30, 2011 5:27:30 PM |

Neither Scott nor I have any idea what you are talking about - either regarding the supposed conversation about copyright registrations nor your assumptions what organizational charts you evidently presume GW should have. Likewise, I don't recall this was even mentioned in your self-serving summary of the parties' November 28 meet and confer. Perhaps you can clarify.

In the meantime, given our complete puzzlement by your messages, I might well borrow from you to say that this entire exchange has been concocted by you to distract from the fact that Chapterhouse still has failed to produce the documents and supplement its interrogatory responses as promised on November 28 or as directed by the court. The fact that you have sought once again to link the timing on Chapterhouse's deadlines to seemingly fictional duties created for Games Workshop might further incline me towards such a conclusion. You might nonetheless say that such an accusation is not helpful, so I will simply note that I resent your own unfounded accusations against me and my client. I could cite many similar examples, but it is now 8:30 in NY and I can think of many better ways to spend my evening.

At any rate, I agree that Chapterhouse should produce its privilege log as it has repeatedly referred in its discovery responses and on-line to opinions of counsel. However, I am not aware of any attorney-client privileged documents Games Workshop has withheld. If you believe there have been any such references, please let me know

Happy New Year

Jonathan

-----Original Message-----
From: Golinveaux, Jennifer A. [mailto:JGolinveaux@winston.com]
Sent: Friday, December 30, 2011 7:52 PM
To: Moskin, Jonathan
Cc: Kearney, Tom J.; Kaspar, Scott R.; Donaldson, J. Caleb; Mersmann, Eric J.
Subject: RE: Games Workshop v. Chapterhouse Studios

Jonathan,

The lengths you will go to avoid a substantive response are impressive if pointless.

If you did indeed speak with Scott, I assume you know he told us that it was his understanding that the relevant copyright registration was still being "collected" despite Plaintiff's agreement to produce it months ago. Now you apparently claim you have produced it. That is false. The documents have not been produced. If you claim they have, provide the Bates numbers. Plaintiff has also failed to have comply with a number of other requests despite representations to the contrary, which Tom will write to you about shortly.

Since you have still not responded, I will repeat myself here:

Plaintiff had failed to produce current or complete organizational
charts or the copyright registration. Confirm by Tuesday that no more
complete or current organizational charts exist and explain why the sole
copyright registration (and the corresponding application, which
Plaintiff also agreed to produce but has not) have not been produced
despite your representations.

These are not complicated or confusing points. Stop wasting everyone's
time and simply respond.

You have also ignored my email requesting that we agree on a date to
exchange privilege logs. I proposed Jan. 9. Confirm whether this is
acceptable or propose a timely alternative by Tuesday. We also need to
agree on a date to exchange the additional documents the Court ordered
both sides to produce. We propose Jan. 9. Confirm whether this is
acceptable or propose a timely alternative by Tuesday. We need dates
certain so that we can schedule all of the depositions that will need to
occur by the middle of March.

The Court has set a firm date for the close of fact discovery. We will
not indulge your efforts to further delay Plaintiff's discovery
obligations.

Jennifer

-----Original Message-----
From: Moskin, Jonathan [mailto:JMoskin@foley.com]
Sent: Friday, December 30, 2011 3:11 PM
To: Golinveaux, Jennifer A.
Cc: Kearney, Tom J.; Kaspar, Scott R.; Donaldson, J. Caleb; Mersmann,
Eric J.
Subject: RE: Games Workshop v. Chapterhouse Studios


First, I can assure you Scott and I did confer before I sent my message.
More important, if you have a question about the completeness of a
discovery response, I don't understand why you would simply ignore what
you were told (in which I provided an explanation of the various times
in which we already had aswered the same question); nor do I understand
on what basis you would then simply threaten to refuse to carry through
with your own discovery obligations. However, it has long become clear
to me that you will do what you will.

Have a nice weekend.

Jonathan

-----Original Message-----
From: Golinveaux, Jennifer A. [mailto:JGolinveaux@winston.com]
Sent: Friday, December 30, 2011 4:35 PM
To: Moskin, Jonathan
Cc: Kearney, Tom J.; Kaspar, Scott R.; Donaldson, J. Caleb; Mersmann,
Eric J.
Subject: Re: Games Workshop v. Chapterhouse Studios

And you should check with your associate before making representations
about what has been produced because you appear to be out of the loop.

On Dec 30, 2011, at 1:24 PM, "Moskin, Jonathan" <JMoskin@foley.com>
wrote:

> I can only say that your temerity evidently knows no bounds.
>
> Jonathan
>
> -----Original Message-----
> From: Golinveaux, Jennifer A. [mailto:JGolinveaux@winston.com]
> Sent: Friday, December 30, 2011 4:19 PM
> To: Moskin, Jonathan
> Cc: Kearney, Tom J.; Kaspar, Scott R.; Donaldson, J. Caleb; Mersmann,
> Eric J.
> Subject: Re: Games Workshop v. Chapterhouse Studios
>
> Jonathan,
>
> Rather than being unprofessional and evasive why don't you try to
> respond to the substance of Tom's email. Plaintiff had failed to
produce
> current or complete organizational charts or the copyright
registration.
> Confirm by Tuesday that no more complete or current organizational
> charts exist and explain why the sole copyright registration (and the
> corresponding application, which Plaintiff also agreed to produce but
> has not) have not been produced despite your representations, or you
can
> explain it to the Court.
>
> We will respond to the remainder of your email once we receive a
> substantive response.
>
> Jennifer
>
> On Dec 30, 2011, at 12:24 PM, "Moskin, Jonathan"
> <JMoskin@foley.com< mailto:JMoskin@foley.com> > wrote:
>
> It has been 5 months since I told you GW had produced the responsive
> organizational charts, and we assured you again during the meet and
> confer that GW had complied with both of these requests.  Instead of
> raising false issues, why don't you complete production of the
documents
> and provision of the interrogatory answers you promised to provide on
> November 28 and which the court instructed Chapterhouse to produce in
> its order last week.  Chapterhouse is still woefully delinquent
>
> Please also confirm that you will de-designate the email
correspondence
> between Chapterhouse and the supposedly independent designers, all of
> which were improperly designated attorneys eyes only.  Further, please
> confirm you will produce the documents requested in Games Workshop's
> fourth request for documents (Request 30).  It is astonishing to me
that
> Chapterhouse would argue to the court that it has no control over its
> independent designers and yet refuse to produce the documents setting
> forth the terms of its relationship with those designers.
>
> Thank you
> Jonathan
>

> _____
> From: Kearney, Tom J. [mailto:TKearney@winston.com]
> Sent: Thursday, December 29, 2011 9:40 PM
> To: Moskin, Jonathan; Kaspar, Scott R.
> Cc: Golinveaux, Jennifer A.; Donaldson, J. Caleb; Mersmann, Eric J.
> Subject: Games Workshop v. Chapterhouse Studios
>
> Counsel -
>
> I have had no response to my email last week regarding Chapterhouse's
> document production request no. 21. That request seeks "[a]ll
documents
> constituting organization charts of Games Workshop Limited, including
> without limitation its officers, directors, employees," and related
> companies. The handful of documents Plaintiff has produced in apparent
> response are inadequate, and we now find that they were also outdated
> and inaccurate at the time Plaintiff produced them.
>
> Plaintiff has also failed to produce any documents responsive to
> Chapterhouse's document request no. 5, which seeks "[a]ll certificates
> of copyright registration for copyrighted works You claim in this
> action," despite its agreement to do so.
>
> It has been more than half a year since Chapterhouse requested these
> documents. Please let us know by close of business tomorrow when we
can
> expect to receive them, or provide a time on Tuesday, January 3 to
meet
> and confer regarding Plaintiff's failure to produce them.
>
> Thank you,
>
> Thomas J. Kearney
>
> D: +1 (415) 591-6894
>
> www.winston.com<http://www.winston.com>
>
> <image001.jpg>
> From: Kearney, Tom J.
> Sent: Thursday, December 22, 2011 5:57 PM
> To: Kaspar, Scott R.
> Cc: 'Moskin, Jonathan'; Golinveaux, Jennifer A.; Donaldson, J. Caleb;
> Mersmann, Eric J.
> Subject: Games Workshop v. Chapterhouse Studios
>
> Scott -
>
> I write regarding Chapterhouse's document production request no. 21,
> seeking organization charts of Games Workshop Limited, its officers,
> directors, employees, subsidiaries, parent companies, sister
companies,
> and affiliated companies.  In response to this request, Games Workshop
> produced nine documents (Bates labeled GW0000769 - GW0000777), each
> reflecting the corporate structure of only GW's parent.  However, it
> appears those documents were outdated and inaccurate.  Please confirm
> whether current organization charts exist, and let us know when Games
> Workshop will produce responsive, current organization charts
reflecting
> its officers, directors, and employees, as well as organization charts

> for its subsidiaries, sister companies, and affiliated companies.
>
> Best,
>
> Tom
>
>
> Thomas J. Kearney
>
> D: +1 (415) 591-6894
>
> www.winston.com<http://www.winston.com>
>
> <image001.jpg>
>
> The contents of this message may be privileged and confidential.
> Therefore, if this message has been received in error, please delete
it
> without reading it. Your receipt of this message is not intended to
> waive any applicable privilege. Please do not disseminate this message
> without the permission of the author.
>
********************************************************************
> ****** Any tax advice contained in this email was not intended to be
> used, and cannot be used, by you (or any other taxpayer) to avoid
> penalties under the Internal Revenue Code of 1986, as amended.
>
>
> The preceding email message may be confidential or protected by the
> attorney-client privilege. It is not intended for transmission to, or
> receipt by, any unauthorized persons. If you have received this
message
> in error, please (i) do not read it, (ii) reply to the sender that you
> received the message in error, and (iii) erase or destroy the message.
> Legal advice contained in the preceding message is solely for the
> benefit of the Foley & Lardner LLP client(s) represented by the Firm
in
> the particular matter that is the subject of this message, and may not
> be relied upon by any other party.
>
> Internal Revenue Service regulations require that certain types of
> written advice include a disclaimer. To the extent the preceding
message
> contains advice relating to a Federal tax issue, unless expressly
stated
> otherwise the advice is not intended or written to be used, and it
> cannot be used by the recipient or any other taxpayer, for the purpose
> of avoiding Federal tax penalties, and was not written to support the
> promotion or marketing of any transaction or matter discussed herein.
> The contents of this message may be privileged and confidential.
> Therefore, if this message has been received in error, please delete
it
> without reading it. Your receipt of this message is not intended to
> waive any applicable privilege. Please do not disseminate this message
> without the permission of the author.
>
********************************************************************
> ****** Any tax advice contained in this email was not intended to be
> used, and cannot be used, by you (or any other taxpayer) to avoid
> penalties under the Internal Revenue Code of 1986, as amended.

>
> The preceding email message may be confidential or protected by the
attorney-client privilege. It is not intended for transmission to, or
receipt by, any unauthorized persons. If you have received this message
in error, please (i) do not read it, (ii) reply to the sender that you
received the message in error, and (iii) erase or destroy the message.
Legal advice contained in the preceding message is solely for the
benefit of the Foley & Lardner LLP client(s) represented by the Firm in
the particular matter that is the subject of this message, and may not
be relied upon by any other party.
>
> Internal Revenue Service regulations require that certain types of
written advice include a disclaimer. To the extent the preceding message
contains advice relating to a Federal tax issue, unless expressly stated
otherwise the advice is not intended or written to be used, and it
cannot be used by the recipient or any other taxpayer, for the purpose
of avoiding Federal tax penalties, and was not written to support the
promotion or marketing of any transaction or matter discussed herein.
>
The contents of this message may be privileged and confidential.
Therefore, if this message has been received in error, please delete it
without reading it. Your receipt of this message is not intended to
waive any applicable privilege. Please do not disseminate this message
without the permission of the author.
**********************************************************************
****** Any tax advice contained in this email was not intended to be
used, and cannot be used, by you (or any other taxpayer) to avoid
penalties under the Internal Revenue Code of 1986, as amended.

The preceding email message may be confidential or protected by the
attorney-client privilege. It is not intended for transmission to, or
receipt by, any unauthorized persons. If you have received this message
in error, please (i) do not read it, (ii) reply to the sender that you
received the message in error, and (iii) erase or destroy the message.
Legal advice contained in the preceding message is solely for the
benefit of the Foley & Lardner LLP client(s) represented by the Firm in
the particular matter that is the subject of this message, and may not
be relied upon by any other party.

Internal Revenue Service regulations require that certain types of
written advice include a disclaimer. To the extent the preceding message
contains advice relating to a Federal tax issue, unless expressly stated
otherwise the advice is not intended or written to be used, and it
cannot be used by the recipient or any other taxpayer, for the purpose
of avoiding Federal tax penalties, and was not written to support the
promotion or marketing of any transaction or matter discussed herein.


The contents of this message may be privileged and confidential.
Therefore, if this message has been received in error, please delete it
without reading it. Your receipt of this message is not intended to
waive any applicable privilege. Please do not disseminate this message
without the permission of the author.
**********************************************************************
****** Any tax advice contained in this email was not intended to be
used, and cannot be used, by you (or any other taxpayer) to avoid
penalties under the Internal Revenue Code of 1986, as amended.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not
intended for transmission to, or receipt by, any unauthorized persons. If you have received this

message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

**Exhibit S**

# WINSTON & STRAWN LLP

| | | |
|---|---|---|
| BEIJING | 101 CALIFORNIA STREET | MOSCOW |
| CHARLOTTE | SAN FRANCISCO, CALIFORNIA 94111 | NEW YORK |
| CHICAGO | | NEWARK |
| GENEVA | +1 (415) 591-1000 | PARIS |
| HONG KONG | | SAN FRANCISCO |
| HOUSTON | FACSIMILE +1 (415) 591-1400 | SHANGHAI |
| LONDON | www.winston.com | WASHINGTON, D.C. |
| LOS ANGELES | | |

February 8, 2012

**K. JOON OH**
Attorney
415.591.1564
koh@winston.com

**VIA EMAIL**

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016

Re:    **Games Workshop v. Chapterhouse Studios**

Dear Mr. Moskin:

I am writing in response to your February 8, 2012 letter from earlier today. With all due respect, if any letter was "based on numerous misunderstandings and inaccuracies" as you claim, it is your own.

Contrary to your assertion, Chapterhouse has repeatedly made clear its position that Games Workshop is entitled to a single 30(b)(6) deposition. Although months ago Chapterhouse suggested that the parties stipulate to separate custodian-of-records deposition, you did not respond to those suggestions. *See* J. Golinveaux email to J. Moskin, December 16, 2011 2:14 pm ("We need agreement on these issues before Defendant agrees to multiple 30(b)(6) depositions"); J. Golinveaux email to J. Moskin, December 16, 2011 4:30 pm ("The parties can either stipulate to mutual custodial depositions, and we are open to negotiating the terms of those depositions, with subsequent full 30(b)(6) depositions, or both sides can proceed with full 30(b)(6) depositions") (emphasis in original); T. Kearney letter to J. Moskin, January 27, 2012 (**"As we have explained in the past, we do not intend to make Chapterhouse available for more than one 30(b)(6) deposition in light of your refusal to agree to mutual custodian depositions despite multiple requests"**)(emphasis added); T. Kearney letter to J. Moskin, February 2, 2012 (**"To be clear, I reiterate that we do not intend to stipulate to more than one 30(b)(6) deposition of Chapterhouse."**)(emphasis added). Your claim that this is a "new contention" is inaccurate.

Accordingly, Games Workshop is entitled to one 30(b)(6) deposition, not a 30(b)(6) deposition and a separate custodian-of-records deposition. As I said in my last letter, the currently available dates are either February 21 or 22, 2012, which we will reserve until this Friday, 12 pm Pacific time.

WINSTON & STRAWN LLP

February 8, 2012
Page 2

With regard to your intention to disclose Highly Confidential-AEO documents in violation of the Agreed Protective Order, I will not take the time to correct the many inaccuracies in your letter. In an effort to resolve the issue, Chapterhouse is willing to discuss a stipulation where Chapterhouse would grant you permission to disclose certain AEO emails between Chapterhouse and its independent contractor designers *with your client's in-house counsel only*, as long as you return Exhibit A pursuant to the Agreed Protective Order from the in-house counsel before any disclosure. Please note that this arrangement would extend only to AEO emails and *only* involving individuals identified in Chapterhouse's Second Supplemental Response to Plaintiff's Interrogatory No. 3. As you know, the Court left undisturbed Chapterhouse's HIGHLY CONFIDENTIAL designation of its lists of manufacturers (which Chapterhouse identified in response to Plaintiff's Interrogatory No. 4) and employees (which Chapterhouse identified in response to Plaintiff's Interrogatory No. 6), in addition to other information Chapterhouse has designated HIGHLY CONFIDENTIAL or CONFIDENTIAL.

With respect to your ongoing refusal to produce the unredacted documents as requested, your professed ignorance about the relevance of that material is surprising. You redacted the names of relevant witnesses who received the only apparent communications that Games Workshop claims demonstrate confusion in the marketplace. Putting aside the merit of that claim, those are relevant witnesses. Also, you did not even attempt to explain why you only redacted the names of Games Workshop employees and not the identities of the senders of the communications. The terms of the THQ contract are directly relevant to the rights that Games Workshop has or does not have in this action. Unless Games Workshop is willing to stipulate that it will not use any of these documents in the case for any purpose and that Games Workshop bases none of its claims, including copyright and trademark infringement claims, on any work related to the THQ contract, Plaintiff must produce unredacted versions immediately.

Your letter also notably failed to identify the employment status and contact information of the identified authors or to respond to this important issue. In fact you failed even to identify which individuals no longer work for Games Workshop or which current employees may not be available to travel. I trust you will clarify your position on this issue and provide the requested information for those individuals we have noticed when we speak shortly. To be clear, until we receive information confirming which individuals are no longer employees, we intend to proceed with all the depositions be have noticed.

Please call my office once you have reviewed this letter. Note that I am unavailable from 1 to 2 pm Pacific time.

Sincerely,

K. Joon Oh

cc: Scott Kaspar

# Exhibit T

# WINSTON & STRAWN LLP

| | | |
|---|---|---|
| BEIJING | 101 CALIFORNIA STREET | MOSCOW |
| CHARLOTTE | SAN FRANCISCO, CALIFORNIA 94111 | NEW YORK |
| CHICAGO | | NEWARK |
| GENEVA | +1 (415) 591-1000 | PARIS |
| HONG KONG | | SAN FRANCISCO |
| HOUSTON | FACSIMILE +1 (415) 591-1400 | SHANGHAI |
| LONDON | www.winston.com | WASHINGTON, D.C. |
| LOS ANGELES | | |

February 9, 2012

**THOMAS J. KEARNEY**
(415) 591-6894
tkearney@winston.com

**VIA E-MAIL**

Jonathan E. Moskin
Foley & Lardner LLP
90 Park Avenue
New York NY 10016
jmoskin@foley.com

Re: Games Workshop v. Chapterhouse Studios

Dear Jonathan:

We have received Plaintiff's responses to Chapterhouse's fourth set of interrogatories and fifth set of requests for production of documents. I request a time to meet and confer regarding Plaintiff's refusal to produce documents and answer interrogatories, including the following document requests and interrogatories.

## I.   Issues with Respect to Plaintiff's Responses to Chapterhouse Document Requests

RFP 47. All documents YOU provided to any author, creator, or contributor to any work claimed by YOU in this action, to enable such author, creator, or contributor to supply such work.

PLAINTIFF'S RESPONSE:
Games Workshop objects that this request is vague and ambiguous, overbroad and unduly burdensome and seeks information that is irrelevant and not likely to lead to the discovery of admissible evidence.

Plaintiff's objection is misplaced. The documents requested are directly relevant: at a minimum, to the extent Plaintiff's alleged works were based on pre-existing works, they are not original and Plaintiff may not claim copyright in them.

RFP 49. All documents constituting or concerning interviews with, or articles by or about, any author or creator of any of the works for which YOU claim

WINSTON & STRAWN LLP                                   February 9, 2012
                                                       Page 2

copyright in this action, including without limitation the works YOU identified in
response to Chapterhouse's Interrogatories Nos. 1 and 2, concerning the creation,
authorship, inspiration, derivation, or sources of such works, including without
limitation notes for or drafts of such interviews or articles.

PLAINTIFF'S RESPONSE:
Games Workshop objects that this request is vague and ambiguous, overbroad and
unduly burdensome and seeks information that is irrelevant and not likely to lead
to the discovery of admissible evidence. The request also appears to seek
documents, if any, in the possession of third parties.

Plaintiff's objection is again misplaced. The documents requested are relevant to, among other
things, the sources consulted or relied on by the authors of Plaintiff's alleged works, which goes
directly to the issue of ownership and whether such works are protectable at all under copyright
law, and if so the scope of such protection.

RFP 52. All documents concerning surveys showing the extent of actual
recognition within the United States of any mark YOU claim is famous, including
without limitation the WARHAMMER Marks and the WARHAMMER
Registered Marks as defined in paragraphs 20 and 21 of YOUR First Amended
Complaint.

PLAINTIFF'S RESPONSE:
Games Workshop objects that this request is vague an ambiguous, overbroad and
unduly burdensome, and seeks documents that are irrelevant and not likely to lead
to the discovery of admissible evidence. The request is also needlessly cumulative
and repetitive of prior requests and incorporates by reference herein its objections
thereto.
        Without prejudice to or waiver of the foregoing objections, Games
Workshop has produced and/or will produce documents responsive to this
request.

Plaintiff has produced no such documents. Additionally, Plaintiff previously stated it was "not
aware" of any documents response to RFP 9 (which sought "All surveys, studies, or other
documents relating to market (or prospective market) impressions of, reactions to, or attitude by
a consumer or consumers towards" the alleged marks). In light of these contradictory
representations, please clarify what documents you contend have been produced and whether
additional documents will be produced.

RFP 60. All documents concerning the assignment, purchase, license, or other
transfer of copyrights, trademarks, or design rights, between Sabertooth Games,
Inc. and YOU.

WINSTON & STRAWN LLP

February 9, 2012
Page 3

> PLAINTIFF'S RESPONSE:
> Games Workshop objects that this request is vague and ambiguous, overbroad and
> unduly burdensome and seeks information that is irrelevant and not likely to lead
> to the discovery of admissible evidence.

> RFP 61. All documents concerning the assignment, purchase, license, or other
> transfer of copyrights, trademarks, or design rights, between Citadel Miniatures
> and YOU.

> PLAINTIFF'S RESPONSE:
> Games Workshop objects that this request is vague and ambiguous, overbroad and
> unduly burdensome and seeks information that is irrelevant and not likely to lead
> to the discovery of admissible evidence.

Documents responsive to requests for production 60 and 61 are directly relevant to, among other
things, Plaintiff's purported ownership of the copyrights and trademarks it alleges. And, given
Plaintiff's vague claims that its entire imaginary universe is at issue in this case, it is difficult to
understand the basis upon which Plaintiff claims that documents responsive to this request are
irrelevant. Are you saying that Plaintiff does not intend to pursue any of its claims that may be
based on any works or marks created for, or owned by, Sabertooth Games or Citadel Miniatures?
Unless Plaintiff agrees to an appropriate such stipulation, all responsive documents must be
produced.

## II. **Issues with Respect to Plaintiff's Responses to Chapterhouse's Interrogatories**

> INTERROGATORY NO. 18:
> Separately for each mark YOU allege in this action, provide the date of first "use in
> commerce" of the mark (as that term is defined in 15 U.S.C. § 1127) by you in the U.S.,
> and the nature of such use.

You claim that Plaintiff has produced responsive documents, but it appears that the only
arguably responsive documents are time-and-date-stamped screenshots of product pages from
Plaintiff's website. Are you saying that these screenshots provide, on their face, the dates of first
use in commerce in the U.S.? If not, Plaintiff must respond to the interrogatory.

> INTERROGATORY NO. 19:
> Separately for each mark YOU allege in this action that YOU claim is famous, identify
> all facts on which you base such claim.

First, Plaintiff's objection that an answer is "best deferred until the conclusion of discovery" is
not well taken, inasmuch as we are now nearing the close of discovery. Second, the request

WINSTON & STRAWN LLP

seeks *all* facts upon which Plaintiff's allegations of fame are based, for each allegedly famous mark. Are you saying that there are *no* other facts upon which Plaintiff intends to rely at trial? Plaintiff must respond now to the interrogatory.

INTERROGATORY NO. 20:
Separately for each mark YOU allege in this action that YOU claim is famous, identify the total volume of sales and gross revenue for each product or service offered under the mark.

Plaintiff now claims to have produced responsive documents, but it has not. If you contend we have missed responsive documents, please provide the Bates numbers. Plaintiff must respond to the interrogatory.

INTERROGATORY NO. 21:
Separately for each document YOU produced within the Bates range GW0000001 - GW0002506, identify (a) the Bates range that comprises the entire document; (b) the name or title of the entire document; (c) the work or works YOU identified in YOUR response to Defendant's Interrogatories Nos. 1 and 2, for which YOU claim the document is an exemplar; and (d) all Chapterhouse products that YOU allege infringe any work for which the document is an exemplar.

Plaintiff has produced a number of miscellaneous screenshots and single pages or cropped images from various unidentified books, some of them partially illegible. Plaintiff's responses to Chapterhouse's Interrogatories 1 and 2 are replete with inconsistent identifications of Plaintiff's alleged works, and often identify what may or may not be the same work in several confusingly different ways. Defendant continues to demand (as it has for nearly a year now) that Plaintiff unambiguously identify its works at issue. Plaintiff cannot continue to hide the ball on the nature of its claims. It must respond to the interrogatory.

INTERROGATORY NO. 22:
For each person who authored any portion of the copyrighted material YOU claim Chapterhouse has infringed, provide that person's (a) dates of employment by Plaintiff; (b) job title or titles during any time YOU employed the person; and (c) most recent contact information if the person is no longer employed by Plaintiff.

Plaintiff claims to have produced this information in response to prior discovery requests, but it has not. If you disagree, please provide the Bates range where such information can be found. Plaintiff's claim that this information is confidential is both false and irrelevant. If any part of this information is indeed confidential, Plaintiff may designate it as such. However, this information is plainly relevant and must be produced.

WINSTON & STRAWN LLP

February 9, 2012
Page 5

Finally, we have reviewed the documents Plaintiff has produced to date, and note that Plaintiff has produced only sixteen emails of any kind, all of which have been from third parties. To date, Plaintiff has produced no internal emails, letters, or other internal communications whatsoever responsive to Chapterhouse's document requests. Plaintiff's position that no such documents exist, privileged or otherwise, is not credible. We ask you again: has Plaintiff searched for e-mails and other communications responsive to Chapterhouse's requests? Chapterhouse reserves its right to reopen depositions if, as it appears, documents have been wrongfully withheld.

We will call you tomorrow, February 10, at 11:00 a.m. PST to meet and confer on these issues. If that is more convenient for you tomorrow, please let me know.

Sincerely,

Thomas Kearney /ss

Thomas Kearney

TJK/

cc: Scott Kaspar

# Exhibit U

# ▪FOLEY

**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

321 NORTH CLARK STREET, SUITE 2800
CHICAGO, IL  60654-5313
312.832.4500 TEL
312.832.4700 FAX
foley.com

WRITER'S DIRECT LINE
312.832.5113
skaspar@foley.com EMAIL

CLIENT/MATTER NUMBER
099251-0101

February 10, 2012

**Via E-Mail**

Thomas J. Kearney, Esq.
Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

Re:     Games Workshop Limited v. Chapterhouse Studios LLC

Dear Tom:

Jonathan is out of the office, so I am responding to your letter yesterday evening regarding Games Workshop's most recent responses to discovery and the inquiries by your colleague, Mr. Oh, regarding redacted documents and deposition scheduling.

Request 47:  We have discussed this request with our client and have very little idea what you are looking for.  Indeed, the request seems to be based on a misconception how artists work in a studio or an incorrect presumption that Games Workshop provides instructions to the author's who create the works.  We understand that *Chapterhouse* develops its products by starting with existing materials (all of which evidently come from Games Workshop) and then uses them to make derivative works, as illustrated, for example, by Document CHS003522 in which Mr. Villacci indicates that he went to a hobby store to copy materials from a Games Workshop codex so he could help Mr. Navarro create the accused "Mycetic Spore" product.  However, that is not how Games Workshop's artists and authors create.  If you can give us some further information what it is you are seeking, we can raise it with Games Workshop to try to accommodate the request.

Request 49:  We discussed this with our client and we were again at a loss to know what you are looking for.  To begin, Games Workshop itself is the author of its works, but this request seems to be seeking interviews that individual artists may have given on any number of possible subjects over the course of 25 years or more.  It is our understanding of the law that what individuals say in their individual capacities are not the responsibility of the employer, and, not surprisingly, Games Workshop does not keep a repository of interviews by individual authors and artists.  Moreover and equally important, this request is not even limited to any particular topics of interest.  Once again, perhaps you can clarify.

Request 52:  We believe we have produced substantial evidence of the actual recognition of the Warhammer 40,000 products and marks.  Games Workshop is reviewing its records for additional such evidence as you have requested and we expect to receive and review additional documents within days.  I think it is best to discuss this after we have had a chance to review them.

BOSTON          JACKSONVILLE        MILWAUKEE        SAN DIEGO           SILICON VALLEY
BRUSSELS         LOS ANGELES         NEW YORK         SAN DIEGO/DEL MAR   TALLAHASSEE
CHICAGO          MADISON             ORLANDO          SAN FRANCISCO       TAMPA
DETROIT          MIAMI               SACRAMENTO       SHANGHAI            TOKYO
                                                                         WASHINGTON, D.C.

4843-2597-0190.1



FOLEY & LARDNER LLP

Thomas J. Kearney, Esq.
February 10, 2012
Page 2

Request 60:  Games Workshop briefly owned Sabertooth Games, which held rights in a card game called Universal Fighting System.  The company was sold in 2008 and had nothing to do with any of the properties at issue in this suit.

Request 61:  The request appears to be based on a misunderstanding.  Citadel Miniatures is a brand name.  There is or was also a company called Citadel Miniatures Limited, but it is not an operating company and has nothing to do with this suit or the products sold under the Citadel Miniatures brand name.

Interrogatory 18: You are incorrect in stating that Games Workshop only produced screen shots of the web pages showing its products and the accompanying trademarks.  Although these screenshots do plainly show use of the marks in commerce, we have also produced a large number of additional specimens as well as records from the Trademark Office for the registered marks.  We also have produced documents showing the dates of first publication of the works in issue.  You also have not answered the question presented in the interrogatory answer: namely, does Chapterhouse even purport to question that Games Workshop has priority of use over Games Workshop with respect to any of the marks and symbols in issue?  Because it seems abundantly clear that every product name used by Chapterhouse was copied directly from an already-existing Games Workshop character or army or product, we do not even understand the basis for the inquiry.

Interrogatory 19: We are puzzled by the truncated quote merely of the objection from the actual interrogatory answer that you have provided.  As you know, the actual answer is far more detailed, as follows:

> Without prejudice to or waiver of the foregoing objections, Games Workshop is the largest and most successful tabletop fantasy wargames company in the world, with a following of millions of gamers and hobbyists devoted to collecting, creating, painting, and building armies for use in Games Workshop's popular WARHAMMER and WARHAMMER 40,000 war games.  The various characters, armies and accessories in the WARHAMMER 40,000 universe have distinct names, colors, symbols, and other characteristics by which the game is known and by which it is immediately recognized by the many fans and followers of the game  Games Workshop has very substantial annual sales of products bearing its WARHAMMER and WARHAMMER 40,000 marks, with annual sales in this country alone of approximately $40 million, and Games Workshop invests considerable sums each year in marketing and promoting these brands and in developing new products under these brand names.  Games Workshop has thereby built up substantial goodwill and reputation in the marks WARHAMMER, WARHAMMER 40,000 marks, which it uses in connection with its tabletop games and miniatures and accessories for such games  Deliberate



**FOLEY & LARDNER LLP**

Thomas J. Kearney, Esq.
February 10, 2012
Page 3

copying of these symbols by parties such as Chapterhouse also confirms that the subject marks are immediately recognizable – even when slightly modified such as by replacing the specific blood raven symbol with a more generic raven symbol used in the context of the game.

Interrogatory 20: Your letter is incorrect in stating that Games Workshop has not produced sales records. However, Games Workshop is attempting to determine if additional reports with greater granularity can be generated. (Based on your own arguments to the Court that Chapterhouse should not be required to produce web metrics reports even if it has the information in a database it can access might suggest that Games Workshop has no duty even to try to generate such additional reports, but the fact is it is trying to do so.)

Interrogatory 21: You seem to be asking us for a narrative description of thousands of pages of documents produced in the litigation but have not articulated a specific question about any one of the documents to support your contention that there are inconsistent identifications of Plaintiff s works. Notwithstanding that for months you have refused to answer *any* of our questions seeking identification of very specific documents allegedly produced by Chapterhouse, because your letter seems to suggest there are only specific documents about which you have questions, it would be more productive if you would simply ask us those specific questions.

Interrogatory 22: The Court previously rejected your contention that Games Workshop had failed to identify individual writers or artists who contributed to Games Workshop's own authorship of the works in issue. We also just spent weeks running down information about contributors to a 1987 magazine the content of which is not in issue in this case, and now you seem to be asking for extensive personal information about every single contributor to every single work. Can you please explain the relevance of this inquiry? If there are specific questions you have about authors of specific works that is one thing, but we do not understand the basis for this inquiry. It is also curious that you should be asking for such information about myriad authors when Chapterhouse has refused to identify a single one of its employees, or to explain its actual relationships with any of its designers, of whom there are apparently only eleven other than Mr. Villacci himself.

Finally, you say you have reviewed the documents Plaintiff has produced to date, and note that Plaintiff has produced only sixteen emails of any kind. I have no idea if you have added correctly, but I do not know what is the question or how to answer the question in the abstract. If there is some particular category of requests where you think there should be more emails, let me know. This calls to mind the great fuss you raised when we identified only two or three documents withheld on grounds of privilege, yet Chapterhouse itself then identified only three documents - plus one obviously irrelevant category that we could have added as well (i.e. communications between defendant and trial counsel) and another general category that is plainly improper (i.e. unspecified communications with a non-lawyer over whom you have told the Court you have no control). Once again, although it does not seem surprising to me that



FOLEY & LARDNER LLP

Thomas J. Kearney, Esq.
February 10, 2012
Page 4


Games Workshop would have few emails relevant to the issues in the case: namely the copying and distribution of its copyrighted materials and infringement of its trademarks. That much of the evidence of copying by your client is revealed in emails with its designers does not mean that Games Workshop does have or should have emails relevant to any particular inquiries you have raised.

Last, Games Workshop is sending us clean, unredacted copies of the handful of emails requested by your colleague, Mr. Oh. There is a specific reason we believe a stipulation is best, and will send you a draft ASAP. We have now also confirmed that Games Workshop can produce the following witnesses in Chicago the first full week of March: Dave Gallagher, Jes Goodwin, Neal Hodgson, Andy Jones and Alan Merrett. Mr. Spettigue no longer works for the company and Mr. Blanche is too ill to travel. We will also need to discuss with you specifics of scheduling because Mr. Hodgson must be back in the United Kingdom by March 7.

Sincerely,

Scott R. Kaspar

cc.:    Jennifer Golinveau, Esq.
        K. Joon Oh, Esq.
        Jonathan E. Moskin, Esq.