1    IN THE UNITED STATES DISTRICT COURT
     NORTHERN DISTRICT OF ILLINOIS
2    EASTERN DIVISION

3

4    GAMES WORKSHOP LIMITED,              )
                                          )
5                       Plaintiff,        )   Docket No. 10 C 8103
                                          )
6             vs.                         )
                                          )
7    CHAPTERHOUSE STUDIOS, LLC,           )   Chicago, Illinois
     et al.,                             )   February 14, 2012
8                                         )   10:40 a.m.
                        Defendants.       )
9

10                  TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE MATTHEW F. KENNELLY
11

12   APPEARANCES:

13

14   For the Plaintiff:      FOLEY & LARDNER, LLP
                               BY:  MR. SCOTT R. KASPAR
                               321 North Clark Street, Suite 2800
15                             Chicago, Illinois  60610

16
     For the Defendant:      WINSTON & STRAWN, LLP
17                             BY:  MR. RAFFENSPERGER
                               35 West Wacker Drive
18                             Chicago, Illinois  60601

19

20

21

22

23
               LAURA M. BRENNAN - Official Court Reporter
24               219 South Dearborn Street - Room 2102
                    Chicago, Illinois  60604
25                       (312) 435-5785

1      (The following proceedings were had in open court:)

2          THE CLERK:  10 C 8103, Games Workshop v.

3   Chapterhouse.

4          MR. KASPAR:  Good morning, your Honor; Scott Kaspar

5   for the plaintiff Games Workshop.

6          MR. RAFFENSPERGER:  Your Honor, John Raffensperger on

7   behalf of defendant Chapterhouse Studios.

8          THE COURT:  I always have such fun reading your guys'

9   stuff.  Not.

10         I'm just going to give you a couple of little

11  practice points here.  A, leave out all of the, you know, "the

12  other side is the prince of darkness" arguments, please.  You

13  guys have done this consistently, and I don't know who's doing

14  it.  I don't know if this is because there are a bunch of

15  people sitting back there that need to get all of the

16  aggression off of their -- you know, off of their heads.  Just

17  leave it out.  It's a distraction.  It's a complete

18  distraction.

19         Secondly, as far as the plaintiff's motion to compel

20  is concerned, on the first big category, and it's really the

21  one that starts with paragraph 10 on page 6 regarding requests

22  9 and 27 and it continues over to about page 11, I had a

23  really hard time getting a handle on what you were even asking

24  for.  I couldn't get it because it really --

25         So what you need to do is, you know, just figure

1   you've got to hit the judge between the eyes, I mean, because

2   I had this pile of stuff here and it was just hard to figure

3   out exactly what you were asking for there.

4           So can you tell me?  The rest of it I got.  But I

5   wrote down after I read it for the third time, "not sure

6   exactly what plaintiff seeks here."

7           So what is it on the requests 9 and 27?

8           MR. KASPAR:  Your Honor, as an initial point --

9           THE COURT:  No.  I only want you to talk about one

10  thing and that is the question that I just asked you.

11          MR. KASPAR:  Your Honor, their principal defense

12  is --

13          THE COURT:  Independent creation.

14          MR. KASPAR: -- independent creation.

15          THE COURT:  That much I'm with you.

16          MR. KASPAR:  And we have tendered, you know, document

17  requests and interrogatories trying to get at that, and I know

18  I said document requests 7, 9 and 10.  It's actually

19  interrogatory 7, but document requests 9 and 10.

20          THE COURT:  Okay.

21          MR. KASPAR:  They produced a number of documents that

22  boil down to e-mail threads with designers.

23          THE COURT:  Okay.

24          MR. KASPAR:  And the substance of these e-mails, to

25  generalize this, is usually a designer or Chapterhouse

1    consulting some Games Workshop work or seeing something in a

2    store and wanting to create something that looks like that.

3         THE COURT:  Okay.

4         MR. KASPAR:  And what we have not seen is anything

5    that actually is evidence of independent creation, and their

6    opposition --

7         THE COURT:  Maybe that means there isn't any.

8         MR. KASPAR:  Well, but their opposition -- and they

9    have never taken that position.  I mean, if they would say

10   that no such documents exist, we could all move on.  Instead

11   they keep --

12        THE COURT:  Which tab has the two documents?  Which

13   tab has request 9 in it?

14        MR. KASPAR:  Excuse me?

15        THE COURT:  Which tab on your motion gives me request

16   9 so that I can just look at it?

17        MR. KASPAR:  It's actually not in this motion.  It's

18   in --

19        THE COURT:  Don't talk to me about prior motions.  If

20   I kept all of your other stuff, they would have to give me a

21   whole new chambers, which, by the way, they aren't giving me.

22        Does anybody got a copy?

23        MR. RAFFENSPERGER:  Your Honor, request 9 asked

24   separately for each accused work, any and all documents or

25   things in Chapterhouse's possession, custody or control

1    setting forth or referring to any sources consulted, used,

2    reviewed or relied on by Chapterhouse other than works of

3    Games Workshop in creating each of the accused works.

4              THE COURT:  Okay.  Do you have 27 there as well?

5              MR. RAFFENSPERGER:  Yes.

6              THE COURT:  What does that say?

7              MR. RAFFENSPERGER:  27 is any and all documents or

8    things on which Chapterhouse consulted or relied in alleging

9    each of the affirmative defenses asserted in its answer to the

10   amended complaint.

11             THE COURT:  Okay.  So let's just talk about request

12   9.

13             So what Mr. Kaspar is telling me is that the thrust

14   of request 9 is documents --

15             Well, I mean, you just read it to me.  It's documents

16   that reflect what was consulted to, or what was relied on or

17   consulted to design the products that are accused in this

18   case.  Is that how you understood it?

19             MR. RAFFENSPERGER:  That's how I understood it.  We

20   feel that Games Workshop is misrepresenting requests 9 and 27

21   as being about independent creation documents when that's --

22             THE COURT:  What were you just reading from there?

23   Can I look at it for a second?

24             MR. RAFFENSPERGER:  It's just a summary.

25             THE COURT:  Yes, that will work.  I will give it back

1  to you.  Don't worry.

2      (Brief interruption.)

3          THE COURT:  Okay.  So number 9, "separately for each

4  of the accused works, any and all documents or things in

5  Chapterhouse's possession, custody or control setting forth or

6  referring to any sources consulted, used, reviewed or relied

7  on by Chapterhouse other than works of Games Workshop in

8  creating each of the said accused works," period.

9          So the way I would read that is if the defendant has

10  any documents that identify what sources other than the

11  plaintiff's works that the defendant relied on to create its

12  own works, you need to produce those documents.  That's kind

13  of the plain reading of it.

14          MR. RAFFENSPERGER:  Well, your Honor, we have

15  produced documents responsive to that request.

16          THE COURT:  The first question is:  Do you agree that

17  I have read it right?  Do you agree that I have understood it

18  correctly?

19          MR. RAFFENSPERGER:  That's our understanding.

20          THE COURT:  So as you stand there right now, has the

21  defendant produced each and every document that it has that is

22  responsive to request 9 as it's just been interpreted?

23          MR. RAFFENSPERGER:  Yes, your Honor.  We produced

24  those documents prior to the hearing on December 19th.

25          THE COURT:  Okay.  So there aren't anymore, in other

1  words.

2       MR. RAFFENSPERGER:  That's right.

3       THE COURT:  Okay.  I mean, putting aside the issue of

4  things that might be in the hands of the independent

5  contractors who maybe are or aren't independent contractors,

6  at least stuff that Games Workshop -- or excuse me -- that

7  Chapterhouse concedes that's in its possession, custody or

8  control, you say you've produced all of them.

9       MR. RAFFENSPERGER:  Yes, all documents in

10 Chapterhouse's possession that, you know, that show the third

11 party sources that it relied on, we have produced.

12      THE COURT:  That set forth or refer to any sources,

13 yes.  You didn't -- I don't think you just changed the meaning

14 of it, so, okay.

15      MR. KASPAR:  Although, your Honor, and this might

16 be -- I might be reading into this, but he just said "in its

17 possession."  He left out the custody and control.

18      THE COURT:  We're going to get to that in a second.

19      All right.  Request number 27, which is the other

20 part of this part of the motion, asks for any and all

21 documents or things on which Chapterhouse consulted or relied

22 in alleging each of the affirmative defenses.  That's a pretty

23 broad and general request, but I would think that --

24      Is there an affirmative defense alleged that says

25 independent creation?

1      MR. KASPAR:  Yes.

2      THE COURT:  Is there?  What affirmative defense is

3  it?

4      MR. KASPAR:  I think it's the first affirmative

5  defense.

6      THE COURT:  Do you disagree with that, that there's

7  an affirmative defense that says independent creation?

8      MR. RAFFENSPERGER:  We have alleged that is in there.

9      THE COURT:  So when you responded -- when

10 Chapterhouse responded to request number 27, has it produced

11 all documents that it consulted or relied on in alleging that

12 affirmative defense of independent creation?

13     MR. RAFFENSPERGER:  Yes, your Honor.  We produced all

14 nonprivileged documents that respond to that request.

15     THE COURT:  Okay, so now I'm going to give this back

16 to you now because I don't need it anymore.  Thank you.

17     So we have got two things we have got to talk about,

18 the nonprivileged thing, okay.  So have you provided a

19 privilege log?

20     MR. RAFFENSPERGER:  Yes, your Honor.

21     THE COURT:  Okay, so you've done that.

22     And then the other thing we have to talk about is

23 things that might be in the hands of these other people, what

24 we'll call the consultants or the contractors.

25     So let me tell you what the problem is I have here.

1    You're telling me, on the one hand, that you don't have --

2    you're not able to produce their documents, and I dealt with

3    that at the last hearing, I think, back in I guess it was

4    January.

5          On the other hand, at least as to one of these

6    people, I'm now being told in response that the reason we

7    claimed communications with this person are covered by the

8    attorney/client privilege is basically that he's an agent of

9    ours, at least for this purpose.

10          Am I getting it right?

11          MR. RAFFENSPERGER:  That's right.

12          THE COURT:  Okay.  So as I understand the

13   attorney/client privilege, it covers joint ventures, okay.

14   You know, if you're engaged in a joint venture, there's

15   certain bells and whistles that you have to hit, but if you're

16   engaged in a joint venture and you all get together and you

17   have, you know, otherwise privileged communications, then the

18   fact that you're not employed by the same person or that you

19   may be with different companies doesn't forego the privilege.

20   Okay.  I'm with you so far.

21          Here's the problem I have.  If the joint venture is

22   broad enough to make those conversations privileged, it would

23   seem to me that it's broad enough that those documents have to

24   be deemed to be within your custody or control; otherwise it

25   seems to me that you're trying to have it both ways, and I'm

1  just not buying it.

2      If this person is close enough to you for the

3  particular purpose that you're talking about here, which is

4  the design of these objects, that his communications are

5  covered by an attorney/client or work productive privilege,

6  then he's close enough to you that you have custody or control

7  over his records.  It's that simple.  I don't think it's any

8  more complicated than that.  It's a pretty straightforward

9  proposition.

10      So you're going to have to figure out which position

11  you're going to take here because you guys convinced me before

12  that these people were independent.  You convinced me of that,

13  okay.  There's this little doctrine called judicial estoppel,

14  and I could say right now you blew the privilege because you

15  convinced me that these people were really independent of you

16  for this other purpose.  I'm not prepared to do that.

17      What I am prepared to do is you can't have it both

18  ways.  And it seems to me that if you want to protect the

19  privilege, then you need to be producing their documents, and

20  I'm basically prepared to order you to do that.

21      MR. RAFFENSPERGER:  Your Honor --

22      THE COURT:  What am I missing?

23      MR. RAFFENSPERGER:  Well, we, feel like, your

24  Honor -- we feel like Games Workshop is trying to have it both

25  ways on their own part because the purpose of dedesignating

1     our list of independent designers was so they could subpoena

2     the designers and get the information and documents directly

3     from them.

4             THE COURT:  I understand, but I have to tell you

5     that -- and I know that you hadn't served the privilege log

6     yet, at least I don't think you had.

7             Had the privilege logs been served at the time of the

8     last -- when I ruled on all that stuff?

9             MR. KASPAR:  At the last time, no.

10            THE COURT:  Because I ordered people to do that.

11            If I had known then, if I had been told then that

12    when we file a privilege log and we serve our privilege log,

13    it's going to say that this independent designer is -- that

14    our communications with him involving counsel and whatnot are

15    privileged, I would have ruled the other way on that motion.

16    I would have ruled the other way on that motion.

17            So they're not trying to have it both ways because

18    they didn't know about -- and neither did I.  They didn't know

19    about this other fact at that point, the fact being that you

20    were going to claim that these people are within the

21    privilege.

22            The only person on this -- and there may be other

23    things where other people are trying to have it both ways.

24    The only side that's trying to have it both ways on this

25    particular issue is Chapterhouse, and you're not going to be

1  permitted to do it.

2  So which is it going to be?  Are you going to forego

3  the privilege as it relates to these people, or are you going

4  to --

5  I mean, I'm not sure it's really your choice at this

6  point.  I mean, I think that it would be within my authority

7  right now to say, having claimed the privilege relating to

8  them, the documents are deemed to be within your custody or

9  control and, therefore, you must produce them.  I mean, I

10  suppose I could give you a chance for a do-over, but I'm not

11  sure that I'm required to do that.

12  So should I?

13  MR. RAFFENSPERGER:  Your Honor, we would have to

14  consult with our client before making that decision.

15  THE COURT:  Yes.  So here's going to be the next

16  thing.  And I know that we have got all sorts of -- every time

17  I turn around, there's like three more pro hac motions in this

18  case.  All right.  So here's the question.  If the case is

19  going to trial, who is the top dog on each side?  Who is the

20  lawyer?  Who is it on the plaintiff's side?

21  MR. KASPAR:  On plaintiff's side?

22  THE COURT:  Yes.

23  MR. KASPAR:  The lead counsel would be Jonathan

24  Moskin.  I imagine I would be supporting him.

25  THE COURT:  Hang on a second.

1    (Brief interruption.)

2         THE COURT:  And he is the guy from New York, right?

3         MR. KASPAR:  Correct.

4         THE COURT:  And your person, who is the lead person

5    on your side?  Which one of the people from San Francisco is

6    it?

7         MR. RAFFENSPERGER:  Your Honor, it would be Jennifer

8    Golinveaux.

9         THE COURT:  Okay, so here's the deal, folks.  This is

10   about the fifth time in this case that I have been told, I

11   have to go back and talk to somebody.  From now on, we're not

12   having any court dates at which I don't have Mr. Moskin and

13   Ms. Golinveaux standing in the room.  That's it.  I can't have

14   this.  I'm going to rule on this today.  I'm not going to give

15   you a chance to go back and consult because it was a fairly

16   predictable thing.

17        But from now on, you guys -- anybody else can come.

18   The whole cast of thousands can come.  I'm going to have the

19   lead dogs here on both sides all the time, every time.  It's

20   not going to be done any other way, and I know that means one

21   of them has to travel from New York and one of them has to

22   travel from San Francisco.  So, you know, United and American

23   are going to have their --

24        MR. RAFFENSPERGER:  Your Honor, can I just say

25   Winston is representing the defendant pro bono in this matter?

1          THE COURT:  I understand.  But this is the second

2    time, second time in a row, that I have been told at one of

3    these dates, I can't answer the question; I've got to go back

4    and talk to somebody.  I can't have it work that way.  It

5    imposes costs on everybody, not the least of which is them,

6    but also on me because then I have to go back and -- if I was

7    going to accede to that, I would have to go back and relearn

8    all of this stuff again, which I'm not going to do.

9          And you know what, if Ms. Golinveaux wants to say,

10   fine, Judge, I'm withdrawing my appearance and I will make

11   Mersmann the chief person in charge, I'm withdrawing my

12   appearance and I'm not going to reinstitute it, and Mersmann

13   checks off the box as lead counsel and tells me that he's

14   going to be the lead person who is sitting in the chair there

15   when the case is being tried, then I will go with him.

16         Same deal for the other side.  If you want to have a

17   local person do it, that's all well and good, but I'm not

18   going to have a situation where I've got people standing in

19   front of me saying, I don't know the answer; I've got to go

20   back and talk to other people.  I can't have it happen.  We're

21   moving on to another point here.

22         The second point in the plaintiff's motion is the

23   highly confidential designation.  And I guess this relates to

24   the motion to file under seal.  Why is this stuff being

25   designated as attorney's eyes only?  Give me a good reason.

1    Is the subject --

2         Is the confidential information the identity of the

3    third party?  Is there something more than that?

4         MR. RAFFENSPERGER:  I believe so, your Honor.  I

5    would just like to make the point that we have actually agreed

6    to allow Games Workshop to share these documents with their

7    in-house counsel, just asking that the in-house counsel would

8    sign the agreed protective order, and to this date they have

9    not confirmed that they have gotten that signature.  As soon

10   as we get that, we're happy to let them share the documents.

11        THE COURT:  Is that who you wanted to show it to was

12   the in-house lawyer?

13        MR. KASPAR:  Your Honor, we do, and, I mean, we

14   planned to actually have her sign the protective order.

15        THE COURT:  So when are you planning to do it?

16        MR. KASPAR:  I think it's in the works right now.  I

17   mean --

18        THE COURT:  I mean, in this day and age,

19   signatures -- when somebody tells me a signature is in the

20   works, I mean, I'm not even sure what that means.  Something

21   can get signed in like a nanosecond.

22        MR. KASPAR:  Well, fair enough.

23        They raised, you know, their motion, their cross-

24   motion, and the issues with that.

25        THE COURT:  I'm not talking about that yet.

1       MR. KASPAR:  Right, they raised that all on Friday,

2   and on Friday I e-mailed a copy of the protective order.

3       THE COURT:  Well, that will probably cover this

4   because that's who you're asking to have them look at it, or

5   to be able to look at it.

6       I have a bigger problem because, you know, and it's

7   the problem that I identified for somebody else earlier.  It

8   was probably an hour ago at this point.  I'm being asked to

9   put things under seal in the court file that I'm supposedly

10  relying on in making decisions.  There's a basic First

11  Amendment public's right of access type problem with that.

12  And so tell me why it is --

13      First of all, is it just the identities of the third

14  parties?  Is that what we're talking about?

15      MR. RAFFENSPERGER:  Your Honor, I believe it's the

16  total list of third party contractors that Chapterhouse uses.

17      THE COURT:  Okay.  So why should that be hidden from

18  the public that pays my salary?

19      MR. RAFFENSPERGER:  Well, your Honor, I think -- we

20  believe that it was a protected trade secret.

21      THE COURT:  The identity of somebody?

22      MR. RAFFENSPERGER:  The list of identities of those

23  people together.

24      MR. KASPAR:  Your Honor, I thought we had --

25      THE COURT:  Don't I correctly remember from some

1   prior hearing in this case that some of these people on their

2   own websites kind of brag about their work for this company?

3          MR. RAFFENSPERGER:  I'm sorry?

4          THE COURT:  Some of the designers kind of say, hey,

5   I'm designing stuff for, you know, for this Warhammer 6000 or

6   whatever the thing is?

7          MR. RAFFENSPERGER:  Well, your Honor, I believe

8   you're referring --

9          THE COURT:  I mean, how can it be confidential if you

10  brag about it I guess is my question?

11         MR. RAFFENSPERGER:  I believe you're referring to

12  their LinkedIn profiles.  Is that it?

13         THE COURT:  I don't remember.  I remember it being

14  something from a prior hearing at which there was something

15  shown to me that suggested --

16         The plaintiff was able to identify who some of these

17  people were.

18         MR. KASPAR:  There's a lot of blogs on this game and

19  a lot of people who share ideas and conduct pod casts and so

20  forth.

21         THE COURT:  I mean, the only justification that was

22  ever given to me really for this was, at least as I recall it,

23  was that there was some concern about retaliation, that the

24  plaintiff was going to go out and do bad stuff to these people

25  or bad mouth them or trash them or whatever, whatever it was.

1  Okay, I'm going to deal with that in a second.  We're going to
2  move on to another point.

3        I think the highly confidential thing will -- you
4  know, it's going to be sufficient to work that out if the
5  in-house counsel signs up on the protective order, and there
6  is certainly no reason why he or she --

7        Requests 16, 18 and 19.  So the beef that is raised
8  in the motion -- I'm looking at page 12 -- is that, okay, you
9  say you've produced the stuff.  Can you just tell us which
10 documents it is?  So why can't you do that, or have you done
11 it?

12       MR. RAFFENSPERGER:  Well, your Honor, I believe all
13 those documents -- the documents produced on December 28th are
14 responsive to request number 16.  Chapterhouse has not
15 identified any nonprivileged documents that are responsive to
16 request 18, and it has already produced all nonprivileged
17 documents responsive to request 19 prior to the December 28th
18 deadline.

19       THE COURT:  Okay.  But when you guys produced
20 documents, was there something that said, okay, we're sending
21 you a pile of documents and 1 through 50 concern this request,
22 and 51 through 100 concern this request, and 101 through 150
23 concern this request and so on?  Was it done that way or was
24 it just, here's our documents?

25       MR. RAFFENSPERGER:  Your Honor, we sent them a disk

1  with the cover letter with the Bates numbers of the documents,

2  the base range of the documents on it.

3        THE COURT:  But did the cover letter identify which

4  documents or which documents in the Bates stamp range

5  corresponded to which requests?

6        MR. RAFFENSPERGER:  I would have to check that to

7  make sure.

8        THE COURT:  Did it?

9        MR. KASPAR:  No, your Honor.  It's my

10  understanding --

11       THE COURT:  It needs to.  It needs to.

12       You know, you can produce documents as they're kept

13  in the ordinary course of business, but my guess is is that

14  the disk is not the way they were kept in the ordinary course

15  of business, which means you have to, under Rule 34, identify

16  which documents are responsive to which requests.  So you have

17  to do that.

18       Number 20, this has to do with the changes to the

19  website.  What I get from the response is that you're saying

20  there are no documents that are responsive to request 20.  Am

21  I correct about that?

22       MR. RAFFENSPERGER:  Yes, that's correct.

23       THE COURT:  So is there something more you think I

24  should do on that, Mr. Kaspar?

25       MR. KASPAR:  No.  That confirmation is what we have

1  been seeking.

2         THE COURT:  Okay.

3         MR. RAFFENSPERGER:  I would just like to clarify,

4  your Honor.  Games Workshop purports to request documents

5  concerning, quote, the recent decision to change the overall

6  look and feel of the site, unquote.

7         THE COURT:  Yes, and then it was modified a little

8  bit after that.

9         MR. RAFFENSPERGER:  Well, but, that's -- your Honor,

10  that's what they also purport in their current motion to

11  request, and we felt like that was modified in your earlier

12  order when you requested that they narrow that request.

13         MR. KASPAR:  Well, originally the request was any

14  changes to the website, and so it was modified to --

15         THE COURT:  Well, what I put in the order -- there

16  was some discussion about this at the hearing.  What I put in

17  the order of December 23rd is that:

18         "Request 20 is overly broad as currently worded and

19  must be narrowed by plaintiff, as described at the hearing, to

20  be enforceable."

21         So what I was trying to reference there were the

22  comments that were made at the hearing about this is how we're

23  willing to narrow this request.

24         MR. KASPAR:  Right, and we attempted to narrow it to

25  correspond with those comments that we made or that were

1  raised, and part of it is that they recently revamped their

2  whole website, and we're curious as to why.

3          MR. RAFFENSPERGER:  Well, your Honor, as we

4  understood request 20 as narrowed, it would include changes to

5  the web site disclaimer, the decision to delete the banner,

6  changes to the product descriptions.  To those specific

7  points, we say that no responsive nonprivileged documents

8  exist.

9          THE COURT:  Which is what I said like five minutes.

10  So why are we still talking about this?

11          MR. RAFFENSPERGER:  Right.

12          Now, just to the extent that they purport in their

13  current motion that request 20 means, you know, all docs

14  concerning the recent decision to change the overall look and

15  feel of the site, we feel that that is vague and overbroad and

16  doesn't adequately specify the changes.

17          THE COURT:  I see what you're saying.  So you think

18  that's --  you don't think that is specific enough.  In other

19  words, when you say, overall look and feel, what are you

20  talking about exactly?  That's a decent point.

21          MR. RAFFENSPERGER:  Yes, your Honor.

22          THE COURT:  That's a decent point.  I think that is

23  a --

24          You need to identify specifically what it is you're

25  talking about because, you know, if we just kind of play this

1   forward, if there is some dispute about this later, you're

2   going to say, well, Judge, you know, we told them to produce

3   all the documents that concerned the change of the overall

4   look and feel, and I'm going to get a response that says,

5   well, when he said, overall look and feel, I didn't know

6   that's what he meant.

7        And then I'm going to have to go back and say, well,

8   was that really specific enough, and I think my answer to that

9   would probably be no, you've got to mean -- you know, overall

10  look and feel has to mean something.  The color was different,

11  the setup was different, you know, the fonts were different or

12  whatever it is.  I think you need -- you're going to need to

13  be more specific on that.

14       I was just looking back to see if I had given you a

15  trial date, and I have.  I'm so happy about that.

16       Okay, so reviewing on the plaintiff's motion to

17  compel -- and I'm going to rule on the other thing.  I find

18  based upon the contention that is made by the defendants -- by

19  the defendant -- that communications with the allegedly

20  independent designers are privileged.  They have essentially

21  conceded they're part of a joint venture, and I think the

22  joint venture is broad enough --

23       The joint venture concerns the design of these

24  things, and that's also broad enough for me to say that

25  documents of the third parties, the third party designers, the

1    ostensible third party designers, are within the custody or

2    control of Chapterhouse, and so you are now required to

3    produce those documents.  The earlier ruling was incorrect

4    because there is new information.

5         MR. RAFFENSPERGER:  Your Honor, can I ask for a

6    little clarification?

7         THE COURT:  Yes.

8         MR. RAFFENSPERGER:  Does that cover all the third

9    party designers or just the ones for which --

10        THE COURT:  It covers anybody you have said is

11   covered by a privilege.

12        MR. RAFFENSPERGER:  All right.

13        THE COURT:  The second item that has to do with the

14   attorneys eye's only, I think that's been resolved by the

15   proposal to have the general counsel sign on the protective

16   order so that that person can see the documents, and I'm going

17   to come back to the motion to file under seal in a second.

18        On requests number 16, 18 and 19, the defendant has

19   to identify which documents were responsive to which requests.

20        On request 20, if the plaintiff wants more, it's

21   going to have to provide a more specific request.  That deals

22   with everything in the plaintiff's motion.

23        The plaintiff also made a motion for leave to file

24   exhibits under seal.  A written response to that has to be

25   filed within a week of today -- that's the 21st of February --

1    explaining to me why the things that -- because the plaintiff

2    doesn't want to file stuff under seal.  It's the defendants'

3    documents.  And so I need an explanation as to why they should

4    be kept out of the public record.

5           And then, thirdly, on the crossmotion to compel, I

6    need a written response to that by the same date, the 21st of

7    February.  And I'm going to have you come back on the 24th, I

8    believe.  Let me just check that date to be sure.  No, not the

9    24th, the 23rd of February.  I'm going to tell you to come

10   back actually at, let's say, 10:15.  I should be done with my

11   call by then.  And that's when I will hear the motion, the

12   crossmotion to compel, by the defendant.

13          At that particular hearing, I do not have to have the

14   head people here.  But just bear in mind that if anybody can't

15   answer a question, you're assuming the risk of a ruling that

16   goes adverse to you.  All further status hearings, I need to

17   have -- and all further motion hearings, I need to have the

18   lead person here.  I'm not going to do it this way.  Okay.

19          MR. RAFFENSPERGER:  Your Honor, I'm sorry.  Would you

20   be amenable to having them phone in or do they --

21          THE COURT:  No.  It doesn't work all that well,

22   frankly.  It's very difficult to have -- if I have got people

23   in the room and people on the phone, you know, the proceeding

24   has to be recorded by the court reporter.  It's very difficult

25   to do it that way.

1        And so, you know what, it's all well and good that

2    people are doing stuff pro bono, but I will say it again.  I

3    have had it happen too many times in this case where somebody

4    has basically said, I can't answer a question.  And I'm doing

5    this for another reason, okay, deterrence, because I've gotten

6    way more motions to compel from everybody in this case than I

7    should have gotten.  And I actually think that if the lead

8    person has to come in on these motions, which they now will,

9    maybe fewer of them will get filed and more of them will get

10   worked out, and that's the way it ought to be.

11        Have a nice day.

12        MR. KASPAR:  Your Honor, I have one last issue on the

13   motion that we have not talked about, and it has to do with

14   30(b)(6) depositions.

15        THE COURT:  Is it in the motion?

16        MR. KASPAR:  It is.

17        THE COURT:  Okay.  Just focus me on what paragraph.

18        MR. KASPAR:  On the page here, it's probably in

19   the --

20        THE COURT:  Oh, yes, I remember it.  Now I'm groping

21   for where it was.

22      (Brief interruption.)

23        THE COURT:  It's something about a record custodian,

24   right?

25        MR. KASPAR:  Right.  And I think if we could just get

1    some clarification on this, it would help resolve.

2            THE COURT:  You need to zero me in on which paragraph

3    of the motion.

4            MR. KASPAR:  Sure.  I see it's footnote 7.

5            THE COURT:  Aha, aha.  That's that thing in that

6    really tiny print down there at the bottom of the page.

7            MR. KASPAR:  Yes.

8            THE COURT:  Well, that's another practice point.  If

9    you really want me to do something, don't shove it into a

10   footnote.

11           MR. KASPAR:  Your Honor, originally the parties had

12   agreed to have -- because there's so many issues on both sides

13   with, you know, document production, both parties had agreed

14   to have a limited 30(b)(6) on document issues, and that's

15   something that Games Workshop would still like to have.  It's

16   been trying to schedule this for months.  And it appears

17   Chapterhouse's position is just that they're only going to sit

18   for one 30(b)(6).  The problem with merging, you know --

19           THE COURT:  What about this?

20           MR. RAFFENSPERGER:  I'm sorry.

21           Well, first of all, Games Workshop's motion alleges

22   that we have refused to produce a document custodian.  That's

23   not true.  Chapterhouse has repeatedly offered dates for a

24   30(b)(6) deposition.

25           THE COURT:  Of a document custodian?

1      MR. RAFFENSPERGER:  Of Chapterhouse.

2      THE COURT:  Wait a second.

3      MR. RAFFENSPERGER:  It seems like the issue that

4  they're addressing in this motion --

5      THE COURT:  So you've offered repeated dates for a

6  30(b)(6) deposition.  Is the 30(b)(6) deposition going to

7  include somebody who is going to be able to testify about

8  these document issues that the other side wants to ask about;

9  yes or no?

10     MR. RAFFENSPERGER:  Yes, your Honor, but --

11     THE COURT:  Okay, then, so you've offered dates.  So

12  why haven't you taken one of the dates he's offered, or is he

13  lying?

14     MR. KASPAR:  They have linked it, though, saying

15  they're only going to sit for one 30(b)(6).

16     THE COURT:  Okay, so there's going to be one --

17     Is there going to be one person who's going to cover

18  all of the topics?

19     MR. RAFFENSPERGER:  Yes, your Honor.  I mean, this is

20  essentially a one-man operation.

21     THE COURT:  Okay.  So he's going to be able to cover

22  everything.  So there's not going to be a situation where he's

23  going to say, you know, I'm really not the person to ask about

24  this, it's so and so, because you know what's going to happen

25  if that happens.  Somebody is going to be paying a sanction.

1    MR. RAFFENSPERGER:  Well, your Honor, I mean, we have

2    offered multiple days for this 30(b)(6) deposition, and if

3    what they want is a second 30(b)(6), then there is a procedure

4    to obtain that.

5    THE COURT:  So now I'm going to ask you a direct

6    question, okay.  So are you telling me -- you've just told me

7    that there is only one person that's going to sit for a

8    30(b)(6) deposition because it's a one-man operation, right?

9    MR. RAFFENSPERGER:  That's my understanding.

10    THE COURT:  All right.  And that person is going to

11    be able to cover all the topics in the 30(b)(6) notice; still

12    right?

13    MR. RAFFENSPERGER:  That is my understanding.

14    THE COURT:  Okay.  Then that ought to be good enough.

15    Now, a line from old Saturday Night Live:  Hear me

16    now and believe me later.  All right.  If what happens here --

17    because it's not unusual for people to send out 30(b)(6)

18    notices that have multiple topics, and it's not particularly

19    unusual for the respondent to say, well, it's really different

20    people.  And that's generally the case in bigger

21    organizations, and you're telling me it's not a bigger

22    organization.

23    If what happens here is that I find out later down

24    the road that the 30(b)(6) deposition happened and this person

25    wasn't able to answer the questions, okay, and is not the

1  right person for the 30(b)(6) notice, then, like I say,

2  there's going to be a sanction imposed.  It's not going to be

3  if; it's going to be how much and how bad.  Okay.

4      MR. RAFFENSPERGER:  Your Honor, I mean, can I say if

5  I happen to be wrong on this, can we stipulate to a second

6  30(b)(6)?

7      THE COURT:  I don't know.  I mean, this goes back to

8  the question I had before.  And I understand that, you know,

9  there's divisions of responsibility, but, you know, from a

10  judicial perspective, I need to have a person standing in

11  front of me -- this is no slight on you people, okay -- I need

12  to have a person standing in front of me that can answer all

13  my questions.  Or if it's not one person, it's like the

14  30(b)(6) deposition; I need to have all of them right here so

15  they can just say, okay, that's his question, that's his

16  question, that's her question.

17      So the deal is this.  Either it's the one person that

18  covers everything and knows about everything or you're

19  producing a separate person for the other stuff.  It's going

20  to be one of the two.  You don't get around it by saying,

21  well, we only have to produce one person, but he didn't really

22  know everything.  So that's the answer.

23      MR. RAFFENSPERGER:  We understand, your Honor.

24      THE COURT:  It's got to be clear enough, and if you

25  guys can't work it out off of that, something's badly wrong.

1    Goodbye.  I have to deal with these other people

2  here.

3        MR. RAFFENSPERGER:  Thank you, your Honor.

4        MR. KASPAR:  Thank you, your Honor.

5   (Which were all the proceedings had in the above-entitled

6  cause on the day and date aforesaid.)

7

8

9              C E R T I F I C A T E

10

11       I hereby certify that the foregoing is a true and

12  correct transcript of the above-entitled matter.

13

14

15  */s/ Laura M. Brennan*

16  _____          _____

Laura M. Brennan
17  Official Court Reporter                    Date
Northern District of Illinois
18

19

20

21

22

23

24

25