```
 1          IN THE UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF ILLINOIS
 2                  EASTERN DIVISION

 3

 4  GAMES WORKSHOP LIMITED,      )
                                 )
 5                Plaintiff,     )   Docket No. 10 C 8103
                                 )
 6          vs.                  )
                                 )
 7  CHAPTERHOUSE STUDIOS, LLC,   )   Chicago, Illinois
    et al.,                      )   December 19, 2011
 8                               )   10:10 a.m.
                  Defendants.    )
 9

10              TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE MATTHEW F. KENNELLY

11

12  APPEARANCES:

13

14  For the Plaintiff:     FOLEY & LARDNER, LLP
                              BY:  MR. SCOTT R. KASPAR
                              321 North Clark Street, Suite 2800
15                            Chicago, Illinois  60610

16
    For the Defendant:     WINSTON & STRAWN, LLP
17                            BY:  MR. ERIC J. MERSMANN
                              35 West Wacker Drive
18                            Chicago, Illinois  60601

19

20

21

22

23
              LAURA M. BRENNAN - Official Court Reporter
24             219 South Dearborn Street - Room 2102
                    Chicago, Illinois  60604
25                       (312) 435-5785
```

```
1         (The following proceedings were had in open court:)
2              THE CLERK:  10 C 8103, Games Workshop v.
3    Chapterhouse.
4              THE COURT:  Good afternoon, or good morning, rather.
5              MR. MERSMANN:  Good morning, your Honor; Eric
6    Mersmann for defendant Chapterhouse.
7              MR. KASPAR:  Good morning, your Honor; Scott Kaspar
8    for plaintiff Games Workshop.
9              THE COURT:  Okay.  Just give me a second here to get
10   organized.  I will be with you momentarily.
11        (Brief interruption.)
12             THE COURT:  All right.  So the sequence I have these
13   things in this thing here is I'm going to deal first with the
14   plaintiff's motion to compel.  So I want to start with a point
15   that is made by the defendant right at the very beginning of
16   the defendants' --
17             Remind me.  Who is plaintiff; who is defendant?
18             MR. MERSMANN:  I'm defendant, your Honor.
19             THE COURT:  You're plaintiff, you're defendant, okay.
20             So the defendant says at the beginning of the
21   response that it's already responded to many of these, quote,
22   unquote, independent creation requests, so that a good deal of
23   what is being talked about here are nonissues.
24             So can you just sort of respond on a general -- tell
25   me on a general level where you see things as being right now
```

1   as we speak in connection with your request.

2          MR. KASPAR:   Your Honor, as we stand here right now,

3   we have received from Chapterhouse approximately 2,000 or so

4   pages of documents that appear to consist of printouts from

5   their website.  I know in their motion they talk about how

6   they have produced documents or intend to produce documents

7   responsive to most everything else, but as I stand right

8   now --

9          THE COURT:   Have you gotten anything in the last --

10  so this is --

11         Have you gotten anything in the last two weeks

12  because their response was filed on the 7th of December?  So

13  since then, have you gotten anything?

14         MR. KASPAR:   I have not, no.

15         THE COURT:   Okay.

16         MR. MERSMANN:   That's not my understanding, your

17  Honor.  If a production didn't go out at the very end of last

18  week, which I understood was our intention, it's slated to go

19  out today.  I'm surprised to hear that plaintiff hasn't

20  received it.

21         THE COURT:   Okay.  So are you the two people doing

22  the discovery or is there somebody else that's doing it?

23         MR. KASPAR:   I'm primarily doing discovery for the

24  plaintiff.

25         THE COURT:   How about on your side?

1    MR. MERSMANN:  Your Honor, the discovery team is
2  primarily in our San Francisco office.
3    THE COURT:  I mean, just sort of as a basic threshold
4  kind of thing, I need to have somebody here that knows the
5  status of things.  And so I've got the lawyer on the one side
6  who is actually dealing with this stuff saying, I don't have
7  anything, and I've got you saying, that comes as news to me.
8  So I don't have people here who can answer the question for
9  me.  That's not a good state of affairs.
10    MR. MERSMANN:  I understand, your Honor.
11    I got an update from that team just this weekend, and
12  I was told that there's a large production that went out.
13    THE COURT:  Define "went out."  How is stuff being
14  produced?
15    MR. MERSMANN:  Generally, as I understand it, we have
16  been exchanging a cover letter via e-mail.  At the same time,
17  a hard copy letter along with a disk has gone out Federal
18  Express.
19    THE COURT:  Have you gotten an e-mail saying stuff is
20  coming?
21    MR. KASPAR:  I have not gotten the cover letter.  We
22  got an e-mail.  I should have a copy.
23    (Brief interruption.)
24    MR. KASPAR:  This is Monday, December 12th, saying
25  that they will shortly produce additional documents.  This

1    e-mail just says they're going to produce documents responsive

2    to our document requests 5, 6 and 10.  Their opposition also

3    includes 2, 9 and 16.  So I'm not quite sure how this e-mail

4    comes --

5           THE COURT:  Okay, so I'm past that.  I'm not going to

6    spend a second more on the contention that a bunch of stuff

7    has been produced or is about to be produced because I don't

8    have anybody in here explaining where it is --

9           MR. MERSMANN:  Your Honor --

10          THE COURT:  -- and when it's going to be produced.

11          Yes?

12          MR. MERSMANN:  If I may, regardless of the status of

13   this most recent production, the characterization of the

14   previous production is not accurate.  In that previous

15   production, there was also documents on design, communications

16   with manufacturers and communications with designers.

17          THE COURT:  All right.  I am going to deal with the

18   papers as I have them here.

19          On page 6 of the response to the motion, the top --

20   in the first paragraph, the carry-over paragraph, Chapterhouse

21   is saying, look, in terms of design documents, we work with

22   independent designers.  They're independent contractors.  Then

23   their documents aren't within our possession, custody or

24   control.

25          What's the plaintiff's view on that topic?

1        MR. KASPAR:  Your Honor, up until this opposition, we

2   were not aware that Mr. Villacci or Chapterhouse did not

3   have -- you know, apparently did not have access to those

4   documents.  They have been contending up to that point, you

5   know, this defense of independent creation, and we presume

6   they had documents they were relying on to support that

7   defense, and, you know, we --

8        THE COURT:  Okay.  Putting aside whether you believe

9   him or not, okay, so let's just take them at their word at

10  this point that they have -- that some of the design work -- I

11  don't know what the percentage of it is -- is being done by

12  independent contractors.

13       Is it your position that the defendant has the

14  obligation to produce documents by independent contractors

15  that it may have hired to do design work; yes or no?

16       MR. KASPAR:  Generally, yes.  And we don't know --

17       THE COURT:  Why?

18       MR. KASPAR:  We don't know the relationship that he

19  has with the independent contractors or the designers.  You

20  know, we presumed that he had --

21       THE COURT:  Well, part of this is that you don't even

22  know who they are because the defendant is refusing to tell

23  you.

24       MR. KASPAR:  Right.

25       MR. MERSMANN:  I mean, we have them.

1      THE COURT:  This is the whole thing about attorney's

2   eyes only, right?  You're not willing to identify who these

3   people are?

4      MR. MERSMANN:  Well, your Honor, we have actually

5   identified them.  We have designated them attorney's eyes only

6   because it constitutes trade secret material.

7      THE COURT:  Okay.  So you're telling me on the one

8   hand --

9      MR. KASPAR:  You're correct, your Honor.  That's the

10  names, and it's prevented us from proceeding.

11      THE COURT:  So you're telling me on the one hand that

12  it's a trade secret, so the identities are attorney's eyes

13  only.  Number one.

14      Number two, we don't have their documents, so we're

15  not going to produce them, which leads us to number three,

16  which is that the plaintiff is going to have to subpoena them.

17      There's no way to do a subpoena in secret.  So how

18  can you have it both ways?  Explain that to me in 25 words or

19  less.

20      MR. MERSMANN:  Your Honor --

21      THE COURT:  Go to 50 if you need 50.

22      MR. MERSMANN:  Your Honor, whether or not the

23  necessity of the case demands some adjustment to the

24  protective order or whether or not their client needs to see

25  this list in order for the attorneys to draft subpoenas, I

1  don't see how that pertains to whether or not the list itself

2  is trade secret material.

3              Even if the individual names --

4              THE COURT:  And now I'm skipping around a little bit.

5  So I guess I'm having a hard time seeing how it's a trade

6  secret that you hired John Smith to design something for you.

7  I'm really having a pretty hard time with that.  So explain

8  that one to me.

9              MR. MERSMANN:  Your Honor, it may or may not be the

10  case that an individual name is a trade secret, but the

11  compilation, the list of those designers that he relies upon

12  for his business for his livelihood, combined with their

13  contact information and the way that it was produced in the

14  case is --

15              THE COURT:  You just keep telling me that it is.

16  What I want you to tell me is why it is.  Why?  Why is it a

17  trade secret?

18              MR. MERSMANN:  List of suppliers or customers is

19  widely considered to be.

20              THE COURT:  No, it's not.  Just by saying I have a

21  list of suppliers, it doesn't automatically qualify for trade

22  secret protection.

23              What is it about this, this particular situation,

24  that makes the identity of these people collectively or

25  individually, whatever it is, a trade secret?

1      MR. MERSMANN:  As we have said in the earlier

2  briefing, one of the reasons for it is the fear that those

3  designers have of reprisal by Games Workshop.

4      THE COURT:  What is your basis for that?  Did

5  somebody get reprised against?

6      MR. MERSMANN:  Games Workshop is known in the

7  industry to be highly litigious against parties who they

8  believe are in any way, shape or form interacting with their

9  competitors or these other small design shops.  And much in

10  the same fashion that they are suing our client, these

11  designers are afraid of also being sued.

12      THE COURT:  This is what I'm telling you.  You may

13  not have it both ways.  You may not have it both ways.  You

14  can either make --

15      I'm going to do one of two things.  I'm either going

16  to say that it's not a trade secret because I'm not persuaded

17  that it is, number one; and number two, there is no way to

18  subpoena people in secret.  So, therefore, it can't be -- it

19  can't be kept attorney's eyes only.  That's one possibility.

20      Possibility number two is you find some way to get

21  past it.  Well, they're outside of our control and, therefore,

22  we can't produce their documents.

23      So which would you prefer?  It's a binary choice.

24  There is no third choice.

25      MR. MERSMANN:  Your Honor, I don't see why we have to

1  de-designate the list just to be able to serve the individual

2  subpoenas.

3          THE COURT:  Because a subpoena is a public record.

4  I'm assuming that some of these people may not be in this

5  district.

6          MR. MERSMANN:  But that would not --

7          THE COURT:  Are some of them out of this district?

8          MR. MERSMANN:  I believe so, your Honor.

9          THE COURT:  Okay.  So the only way you get the

10  subpoena is that you go get a subpoena from the district court

11  of another district and then you serve it in that district,

12  okay.

13          And then if there's an issue, which there may well be

14  because you're telling me that these people all fear for their

15  livelihood, then somebody has to file something in that

16  district, and there is no way for me to tell the District of,

17  you know, Montana or whatever it is that you must file this

18  thing under seal because that's their business.  And so we

19  can't even get to step one, okay.  And so that's why I'm

20  telling you again that this is a binary choice.  So pick one.

21          Do you want to produce their documents?  And, you

22  know, careful what you're asking for because you are now

23  stepping into their shoes, and you're going to be responsible

24  for the completeness of their production and for verifying,

25  you know, under the penalties of whatever, that you have

1  gotten all of the responsive documents from these independent
2  contractors.

3           If I were in your shoes, I would not want to do that,
4  but you may say, as between that and subjecting our people to,
5  you know, the scrutiny of the plaintiff in this case, we'll
6  take that.

7           MR. MERSMANN:  Your Honor, I would need to consult
8  with my client on this.

9           THE COURT:  No, you don't.  This is the argument on
10  this motion.  I need the people here who can talk about this
11  with authority.  I can't have -- I can't be doing this in, you
12  know, in bits and pieces.  It's here today to be argued.  I've
13  given you a schedule.  I've told you that it's not going to
14  move, come hell or high water, and today is the day I'm going
15  to decide all this stuff.  So if you're not in a position to
16  make a choice, then fine, you have forfeited the ability to
17  make the choice, and I will make it for you.

18           MR. MERSMANN:  Your Honor, I don't believe that the
19  issue about the subpoena question has been fully briefed.  If
20  you're asking me to make a choice right here, then I will, I
21  will make the choice and say that --

22           THE COURT:  You know what, everybody had an
23  opportunity to brief this, and you basically argued two
24  inconsistent things.  And maybe it's not clear from your
25  papers that they're inconsistent, but they are.  You said, on

1  the one hand, these people are outside our control.  You

2  haven't said the documents are not relevant.  You said they're

3  outside our control and we can't produce the documents.

4      Then you said, on the other hand, that their identity

5  has to be kept secret from everybody other than the outside

6  counsel for the other side, which, as a practical matter,

7  makes it impossible for the plaintiff to go get the documents

8  themselves.  It does, period.  They're inconsistent things.

9  It's been fully briefed.  You just happened to take

10 inconsistent positions on it.

11     And I'm telling you, we're done, I'm done, Judge

12 Gilbert's done.  Everybody is done with pushing this thing

13 down the row.  You're getting decisions now.  That's all

14 you're going to get.  They're going to come flowing down like

15 water, okay, starting now.  So if you're not in a position to

16 make a decision, I will make one.

17     The list is not a trade secret.  It hasn't been shown

18 to be a trade secret.  It hasn't been established.  The

19 attorney's-eyes-only designation is removed.  And you don't

20 have to produce independent contractor documents.

21     Next point.  At page 7 of the motion at the bottom,

22 Chapterhouse says that it has produced documents within its

23 possession, custody or control responsive to request 9 and is

24 producing communications with the designers of the works at

25 issue in the case that relate to creation and design, et

1   cetera.

2          So, in other words, Chapterhouse says it's produced

3   its documents relating to communications with designers.

4          Do you agree with that?  Have you gotten those

5   documents?

6          MR. KASPAR:  The documents that we have received in

7   response to number 9, which were produced during our

8   settlement conference before Magistrate Gilbert, it's about

9   five e-mail strings that address --

10          THE COURT:  Five e-mail strings, you said?

11          MR. KASPAR:  -- five products.

12          THE COURT:  Five e-mail strings?

13          MR. KASPAR:  Yes, and it totals about 200 pages.

14          THE COURT:  Okay.

15          MR. KASPAR:  But based on, you know, what they put in

16   the first paragraph of this, it says they have collected tens

17   of thousands of e-mails.  So I suspect there is more, but we

18   have not received any.

19          THE COURT:  Okay.  So has the defendant produced, as

20   you stand here right now, all of its documents in its

21   possession, custody or control responsive to document request

22   number 9?

23          MR. MERSMANN:  Document request number 9 I believe is

24   the one that refers to third party sources.

25          THE COURT:  Yes.

1    MR. MERSMANN:  In which case, yes, your Honor.

2    THE COURT:  Okay.  So it may be that there just

3 aren't that many of them.  Do you have some reason to believe

4 there are more out there?

5    MR. KASPAR:  If that's all of them, then that

6 confirmation is all we need.

7    THE COURT:  Okay, fine.  I'm taking people at their

8 words here.

9    Page 8, document request 2.  It sought, quote,

10 "documents identified, reviewed or considered by Chapterhouse

11 in preparing responses to each of Games Workshop's first set

12 of interrogatories," et cetera.

13    I have to say I'm having a hard time seeing why that

14 request just doesn't go way beyond what you need.  Explain

15 that one to me.  I don't get it.

16    Produce everything that you looked at in order to

17 respond to any interrogatory.  Why do you need that?  If you

18 get answers to the interrogatories, why do you need what they

19 looked at and consulted to do it?

20    MR. KASPAR:  Correct.  I agree with you.  If we had

21 -- if the response --

22    THE COURT:  For example, one of the things that may

23 have been reviewed -- you know, it happens this way

24 sometimes -- is that, you know, there's memos that go back and

25 forth between the lawyer and the client.  And so you're

1    basically asking for privilege stuff, and that's not the only

2    thing.  It just strikes me that that's pretty overbroad.  What

3    am I missing?

4              MR. KASPAR:  You're right, your Honor, it is

5    overbroad, and it captures that privilege stuff.

6              THE COURT:  I don't think you need --

7              My view of that one is that unless --

8              MR. KASPAR:  But the response to the --

9              THE COURT:  Unless the documents have been otherwise

10   requested through some other, you know, document request that

11   the defendant doesn't need to produce the documents that it

12   reviewed in order to answer the interrogatories.

13             On the request -- I'm moving down to the bottom of

14   page 8.  On the request for admission, there's an argument

15   that this is actually timely.

16             Do you disagree with that, that the requests for

17   admission were served in a timely way?

18             MR. KASPAR:  They may be, your Honor.  The 30th day

19   falls on a Sunday.  So they may be right with their

20   calculation.

21             THE COURT:  Honestly, even if it wasn't, I would give

22   them the extra day.

23             MR. KASPAR:  It's just really an ancillary sort of

24   issue.

25             THE COURT:  The requests for admission are considered

1    to be timely.

2            MR. KASPAR:  Okay.

3            THE COURT:  All right, the next is page 10.  That's

4    the thing about the contractor list.  I've already talked

5    about that.  It's not attorney's eyes only anymore, but it's

6    still subject to the rest of the protective order, which means

7    that it can be only used for purposes of this litigation.  I

8    assume that there's a provision like that in the protective

9    order.

10           MR. KASPAR:  Yes, there is.

11           MR. MERSMANN:  I believe so, your Honor.

12           THE COURT:  All right, moving on.  Page 11.  Let me

13   just see.  Excuse me.

14       (Brief interruption.)

15           THE COURT:  On page 12, there's an argument about

16   burdensomeness regarding interrogatory number 12.

17   Interrogatory number 12, I'm blanking on what it says right

18   now.  Oh, this is the one where I think the interrogatory is:

19   How did you come up with the names?

20           MR. KASPAR:  Right.

21           THE COURT:  Right.

22           And Chapterhouse agreed to produce documents pursuant

23   to whatever provision of Rule 33 that is that says that you

24   can do that.

25           And basically my sense of it is that the plaintiff is

1    not particularly believing the response that you got because

2    you got a page out of the Oxford English dictionary or

3    something like that.

4              MR. KASPAR:  Well, the way that they have answered

5    it, they're not committing that that's the actual source.

6    They just say it could be that.

7              THE COURT:  Why does it matter?  This is one of the

8    issues I had as I was going through it.  Why does it matter

9    how they picked their name?

10             MR. KASPAR:  Your Honor, I think it goes to -- well,

11   it goes to copying and sort of their intention behind using,

12   you know, trading on Games Workshop's stuff and if --

13             THE COURT:  I mean, really, but in the scheme of --

14   you're saying that it's going to help you prove that they --

15             First of all, you don't claim that the term

16   "Chapterhouse" is copyrighted or copyrightable, I'm assuming.

17             MR. KASPAR:  No.

18             THE COURT:  Okay.  And the theory is, I gather, that

19   they used the name Chapterhouse because that gives somebody a

20   little -- so a little light bulb goes on, and, aha, this is

21   related in some way to the plaintiff's product.

22             MR. KASPAR:  Yes.

23             THE COURT:  So you think that the fact that they

24   picked a name that includes the word "Chapterhouse" is going

25   to help you prove to a jury that they infringed your

1    copyrights and all of these other things?

2              MR. KASPAR:  It may.

3              THE COURT:  So in the words of one of my colleagues,

4    you're really going for the capillary here.  That would be as

5    opposed to the jugular, okay.  Really, I think that is such a

6    small thing that you don't really need to do it.  So I'm not

7    persuaded by the argument of the plaintiff on that one.

8              Let's see.  On page 12 of the response, item number 3

9    says Chapterhouse agreed to supplement its answer to

10   plaintiff's interrogatory number 5.  I have to tell you, I

11   looked and I couldn't find anything in the plaintiff's motion

12   that even concerned interrogatory number 5.  Maybe I missed

13   it.  In other words, this didn't look like it was an issue

14   that was actually raised by the plaintiff.

15             It also has to do with how do you go about

16   identifying products for development or creation.

17             Was there an issue on that and, if so, tell me what

18   page of the plaintiffs --

19             MR. KASPAR:  Your Honor, it's not in our motion.

20             THE COURT:  I didn't think it was, okay.  That's a

21   nonissue.  Let me make a note here.

22        (Brief interruption.)

23             THE COURT:  Next point on that page on document

24   requests 14 and 17, the defendant is saying we identified in

25   interrogatory number 9 the businesses where we have offered

1  any of the accused works for sale and that's good enough.  Do

2  you disagree?  Does the plaintiff disagree and, if so, why?

3          MR. KASPAR:  Your Honor, what they have produced for

4  -- you know, these have to do with sales information, and what

5  they have produced is sort of a summary.

6          THE COURT:  Yes.

7          MR. KASPAR:  Like a four-page summary.  It gives

8  total sales.

9          THE COURT:  But does or doesn't it identify the

10  places where they sell?

11          MR. KASPAR:  It does not.  And that's what we have

12  been asking for in the meet-and-confers.

13          THE COURT:  Tell me what it is that you have done

14  that you think answers interrogatory number 9.

15          MR. MERSMANN:  Your Honor, I believe counsel is

16  discussing the documents that we produced, but as you

17  mentioned, our briefing talks about our interrogatory

18  responses which I believe have identified the --

19          THE COURT:  No, I'm sorry.  I misspoke before.  I

20  said that you elected to produce documents.  You didn't.  You

21  actually gave the answer.

22          So document request 14 says, give us documents

23  sufficient to identify any businesses or venues where you have

24  offered any of the accused works for sale.

25          And what Chapterhouse is saying, we don't need to do

1    that because we answered an interrogatory number 9 that said

2    this is where we sell the stuff.

3              And if that's the case, I agree that you don't need

4    to produce documents because you've essentially given an

5    answer.

6              So on the plaintiff's side, do you think that the

7    answer to interrogatory 9 is irrelevant?

8              MR. KASPAR:  Your Honor, in response to interrogatory

9    number 9, they have just given a list with the third parties

10   that they sell through.

11             THE COURT:  Yes, that's what --

12             MR. KASPAR:  But they haven't given the sales volume.

13             THE COURT:  Well, but this document request 14 just

14   said documents sufficient to identify the businesses or venues

15   where they have been sold or offered for sale.

16             Maybe I'm mistaken here.  Which exhibit to which

17   motion is document request 14?

18             MR. KASPAR:  Number 9 just asks for the names.

19             THE COURT:  Right.  Document request 14, where do I

20   find it?  Which exhibit is that?

21             MR. MERSMANN:  I can tell you.  I'm sorry, your

22   Honor.  Exhibit D to plaintiff's motion to compel.

23             THE COURT:  Okay.

24             MR. MERSMANN:  It's number 117-3.

25             THE COURT:  Yes, I have got the hard copy right here.

1    So document request 14 says, "documents sufficient to

2    identify any and all websites or other businesses or venues

3    where any of the accused works has ever been offered for sale

4    or sold."

5    And document request 17 says, "documents sufficient

6    to identify any and all websites or other businesses or venues

7    where any of the accused works has ever been advertised or

8    promoted."

9    So those together say identify every place, whether

10   it's a venue or a website or a business, where you've

11   advertised, promoted, offered for sale or sold any of the

12   accused works.

13   And what the defendant is telling me is that the

14   answer to interrogatory 9, they have identified all those

15   places, and so they don't need to provide a further answer to

16   document requests 14 and 17 because those document requests

17   don't ask for volume.  They just ask for identity of places.

18   So what is wrong with that?

19   It kind of sounds right to me I guess is what I'm

20   saying.

21   MR. KASPAR:  Your Honor, based on the request, it

22   does sound right.  I think perhaps we have had additional

23   discussions about these, but that's --

24   THE COURT:  All right.  Requests 14 and 17, I think

25   they have been sufficiently complied with via the answer to

1   interrogatory number 9.

2          Document request 15 -- I'm now over to page 13 of the

3   motion.  Document request 15 says, "any documents concerning

4   sales on eBay or any other secondary market."

5          And in the request -- in the plaintiff's motion, and

6   I will get you the page for it here in just a second.  In the

7   plaintiff's motion at page number --

8          Just a minute here.

9          (Brief interruption.)

10         THE COURT:  The plaintiff's motion at page -- well,

11  it's paragraph 13, page 10.

12         What the plaintiff is complaining about is the

13  failure to identify sales volume in particular venues such as

14  eBay or Barterhouse.  And so the objection to the

15  interrogatory was it seemed to be asking about much more than

16  that, but I guess what I'm saying to you is I'm going to

17  consider it to have been narrowed by paragraph 13 of the

18  motion to compel.

19         So is there some reason why it's still unduly

20  burdensome if I read it that way?

21         MR. MERSMANN:  I believe that it actually is

22  broadened by paragraph 13.  The original document request --

23         THE COURT:  That's not what you said in your

24  response.

25         In your response at page 13, you say, quote:

1          "In its motion, plaintiff explains that it seeks

2     sales volumes in specific venues such as eBay or Barterhouse,

3     but the request as written is much broader."

4          So you say that the request is broader than the

5     motion.  Now you're saying that the motion is broader than the

6     request.

7          MR. MERSMANN:  Well, there's nothing in the original

8     request that asks for the sales volumes, and this really goes

9     back to the same issue as the previous one we argued where

10    we --

11         THE COURT:  I don't agree.  I think a request that

12    asks for documents concerning any sales asks for sales

13    volumes, I mean, because --

14         And I agree that the request is more burdensome

15    because the request would basically require you to go combing

16    through all of your records to find out anything that says

17    anything about any kind of a sale in a secondary market or on

18    eBay.  And it's been narrowed now in a way that I think asks

19    for something narrower.

20         And it may be, you know, that you have got documents

21    that summarize these things, and I think that's easier to

22    comply with than the original one, than the request as

23    originally worded.  And I think that it makes --

24         You know, the further objection that's made on

25    page 13 of the response is that "the request as written is not

1    limited to the works that are at issue in the case."

2            And I guess what I would say to that is, well, okay,

3    I don't know what your sales data looks like.  If it's item by

4    item, in other words, if it's, you know -- well, whatever.

5            If it's item by item, then you could probably take

6    the data you have and just line out the things that aren't at

7    issue, redact those out, in other words, and produce the sales

8    volume data regarding the things that are at issue.

9            If, on the other hand, your data isn't item by item,

10    if it's lumped, then it's going to be more problematic, but I

11    don't think that would be a basis to decline to produce the

12    stuff altogether.

13            So do you follow what I'm saying?

14            MR. MERSMANN:  I do, your Honor.

15            THE COURT:  And I know that on both sides, both sides

16    said, well, you know, nobody met and conferred enough.  I'm

17    done with the meeting and conferring, okay.  You can do that

18    on your own time.  I'm ruling on stuff today.

19            So on document request number 15, I'm going to order

20    production as it's been narrowed by the particular part that I

21    just referred to -- and I will put this all in an order -- in

22    the motion to compel.

23            All right.  The next item down the page says

24    Chapterhouse has agreed to produce documents responsive to

25    requests 16, 18 and 19.  And my question is:  When are they

1  being produced?

2        And I'm happy to just sort of say here's your

3  deadline, but if you know when they're going to be produced, I

4  can make the deadline after that.

5        MR. MERSMANN:  Your Honor, I believe this is part of

6  the production I may have mistakenly thought was being

7  produced last week, and so I would be -- I would expect it to

8  be this week.

9        THE COURT:  Okay.  So I'm going to say by next

10  Wednesday, produce by 12/28.

11        Next item, document request 20, has to do with

12  documents regarding any changes to the defendants' website on

13  or after December the 22nd.

14        So let me just give you some thoughts about this.

15  So, first of all, the plaintiff, I assume, has been monitoring

16  the changes on the website, so you know what changes happened

17  and when.

18        MR. KASPAR:  Yes.

19        THE COURT:  Okay.  So, first of all, I think in light

20  of that -- and even if you hadn't done that, I think I would

21  say this -- the request is overbroad.  You need to be

22  specifying the changes that you want them to provide you

23  documents about because not every change is relevant.  I mean,

24  let's say, for example, that they changed their phone number.

25  That's a change to the website on their contact information.

1   You don't need that, so you need to specify.

2          And I also think that the request for, quote,

3   unquote, all documents relating to changes is too broad.  You

4   are going have to narrow that.  I think you could narrow that

5   to, you know, produce documents that explain when and why the

6   following -- that reflect when and why the following changes

7   were made to your website.  I think if you do that in a

8   narrowed-down fashion, I think that that's -- if you do it in

9   a reasonable way, it's likely that I'm going to enforce it.

10          As far as the points that are made by the defendant

11   is concerned, I'm not really inclined to preclude requests

12   like this on the theory that any change that has ever been

13   made to anything since the lawsuit was filed is by definition

14   a subsequent remedial measure.  It may end up being the case

15   that particular things are subsequent remedial measures, but

16   that's an evidentiary -- that's an evidentiary rule, not a

17   discovery rule.  And so I am overruling that objection to

18   discovery.  I'm not saying that they're not subsequent

19   remedial changes; I'm just saying that doesn't preclude the

20   discovery.

21          And as far as -- you know, I guess I will say this to

22   both sides, and I don't know because it hasn't really come up

23   in here, you know, the extent to which people have produced

24   privilege logs.  So these kind of blanket privilege objections

25   that say, you know, we're not producing privilege documents,

1    well, I mean, everybody knows that you have got to produce a

2    privilege log.  So you need to have some sort of a date

3    certain, which I'm happy to give you -- in fact, which I

4    probably will give you -- by which people are going to be

5    producing privilege logs.

6          All right.  So moving on, and in a second here, I

7    will be with you guys.  It will be about five minutes for the

8    people in the back of the room.  I will be with you in five

9    minutes.  We'll take a break in between the two motions here.

10          Document request 21 is the next one.  So documents

11    concerning metrics for defendants' website, and I'm going to

12    just assume that all of you people are, A, young enough and,

13    B, smart enough to know what that means.  I figured it out

14    eventually.  The defendant basically says, look, we don't have

15    anything like this and we don't have to create it.

16          Do you disagree with that?

17          MR. KASPAR:  Your Honor, we understand.

18          THE COURT:  I'm assuming metrics are meaning things

19    like you might in common terms call a market study.

20          MR. KASPAR:  Right.

21          THE COURT:  In other words, this is who's looking at

22    our website, this is when they're looking at it, and this is

23    what they're looking at.

24          MR. KASPAR:  Right.  We believe they're tracking

25    that, and we believe that that information is in some sort of

1    database.  It may not be in a report that they're running

2    regularly, but, you know, I believe --

3            THE COURT:  So you think that it's something that's

4    maybe -- it maybe exists --

5            MR. KASPAR:  Right.

6            THE COURT:  -- as part of the maintenance of the

7    website?  They may not be using it, but it's there.

8            MR. KASPAR:  I think they're using it.

9            THE COURT:  Okay.

10            MR. KASPAR:  But, I mean, they may not --

11            You know, their rebuttal, or their response seems to

12    be that they don't have reports that capture that information,

13    and that may be the case.

14            THE COURT:  So a document these days is defined as

15    something that may exist just in electronic format even if you

16    haven't actually printed it out.

17            So do you know whether the defendant has, whether

18    it's printed it out or not, or whether it uses it or not even,

19    information that would give the kind of information -- I guess

20    that they have material that gives the kind of information

21    that the plaintiff's looking for?

22            MR. MERSMANN:  I don't know if that data is compiled,

23    your Honor.

24            THE COURT:  I think you need to check.  And so what

25    I'm going to tell you to do is that defendant is going to need

1    to do some due diligence to determine whether this kind of

2    information exists even if it isn't being used or even if it

3    isn't being printed out or even if it isn't being analyzed.

4         And if it exists somewhere, I mean, then the

5    objection that you don't have to create documents, I think,

6    you know, isn't going to carry water.  So we'll talk about

7    deadlines for doing all that.

8         Then the last thing in this motion is request

9    number 25.  So documents regarding consumer perceptions of

10   Chapterhouse or its products, that strikes me as a pretty

11   vague request, and in all likelihood, in my view, overbroad

12   the way it's worded.  And so I'm not going to enforce it, and,

13   you know, I'm not going to say that you couldn't come up with

14   something, you know, narrower and more focused and less vague.

15   But as worded, I think that's too vague.

16        Okay, have a seat for a second.  I've got to spend

17   about three minutes with these other people here.  I've just

18   got to get my clerk back in here.

19        Come on up.

20        (Brief recess.)

21        THE COURT:  Come on back up.

22        I'm recalling Games Workshop v. Chapterhouse, 10 C

23   8103.  I've got the same lawyers here.

24        Now we're going to move over to the defendants'

25   motion to compel.

1    All right and, again, my questions are largely going

2    to be focused on issues that are raised in the response, and

3    the first question I want to ask has to do with this issue of

4    exemplars.  I guess I'm not clear on Chapterhouse's side what

5    specifically you're looking for by way of exemplars other than

6    what the plaintiff has already produced.  And it's probably

7    partly because I don't have a real clear sense of what was

8    produced.

9    So maybe if you can sort of walk me through that and

10   give me your thoughts on it.

11   MR. MERSMANN:  Your Honor, as you know, a number of

12   Chapterhouse products have been accused.  They have provided

13   us with a claim chart that identified certain Games Workshop

14   products.  We requested exemplars of those products.

15   THE COURT:  Right.

16   MR. MERSMANN:  In many cases, all we have received

17   are print -- black-and-white printouts from their website

18   where the accused product is actually a miniature item like

19   this hammer here, your Honor, and I can --

20   Permission to approach?

21   THE COURT:  It's too small even with my glasses.

22   MR. MERSMANN:  There's a --

23   THE COURT:  Okay.  So what you handed me here is a

24   printout, it looks like, from a website called Thunder Hammer

25   Conversion Pack.  Then you handed me a little plastic bag that

1 │ has what I'm guessing must be a Thunder Hammer.

2 │        MR. MERSMANN:  Actually, your Honor, the hammer in

3 │ your right is the accused product, and the printout in your

4 │ left is the only exemplar we have been given --

5 │        THE COURT:  Got it.

6 │        MR. MERSMANN:  -- of what they claim the accused

7 │ product infringes.

8 │        THE COURT:  Got it.  So the thing in the plastic bag

9 │ is the defendants' product.

10 │        MR. MERSMANN:  That's correct.

11 │        THE COURT:  Okay, got it.

12 │        MR. MERSMANN:  And the issue we have there is if they

13 │ are accusing us of copying models, we think that we're

14 │ entitled to the models.  Where they're accusing us of copying

15 │ a particular piece of artwork from a book, we believe we're

16 │ entitled -- we believe we're entitled to a copy of that piece

17 │ of artwork so that we can make the comparison.

18 │        THE COURT:  And so in terms of what you've gotten,

19 │ what proportion ball park, what proportion of the exemplars

20 │ you've gotten are the kind of thing you're talking about right

21 │ now?  What you've got, in other words, is a black-and-white

22 │ printout from a website.

23 │        MR. MERSMANN:  I would guess maybe about a quarter.

24 │        THE COURT:  Okay.  And on the rest of it, what have

25 │ you gotten?  Have you gotten actual miniatures of some kind?

1  MR. MERSMANN:  No, your Honor.  We received no

2  miniatures.  On some of the books and printed works that they

3  have listed in their responses, we have received some copies,

4  some of them black and white, I believe some of them in color.

5  THE COURT:  Okay, all right.  I think I have a better

6  handle on it now.

7  Okay.  So talk to me about this.

8  MR. KASPAR:  Sure.  Your Honor, what we have produced

9  largely are copies of all the copyrighted works, so all the

10  Games Workshop reference books, manuals, how to paint a space

11  marine because that's the stuff that is copyrighted.  It

12  includes color pictures of all of the characters as well as a

13  narrative and description of, you know, how to --

14  THE COURT:  Let me ask you this.  On the thing he

15  just showed me here, and I assume you've still got it there,

16  is there something else, or is it just what's on the website

17  in terms of what it is you -- what it is you're saying that

18  that little hammer thing in the plastic bag infringes?

19  Is it just this thing on the website, or is there

20  some other exemplar of it other than that picture that might

21  appear on the website?

22  MR. KASPAR:  For that specific instance, I would have

23  to look at our claim chart and what we produced.

24  But what we have tried to do is in most of the --

25  with each of their accused products, we have tried to map it

1  out in our books where these things come from.

2  THE COURT:  Okay.

3  MR. KASPAR:  And we have produced those books, and

4  those books are -- those books are the copyrighted material.

5  THE COURT:  Yes, I get that.

6  MR. KASPAR:  In some instances, we have also pointed

7  to some of our accused products, and that may be one of them

8  where they look awfully similar to the products.

9  THE COURT:  The products that you guys have.

10  MR. KASPAR:  Correct.

11  THE COURT:  Okay.  But in those situations, have you

12  produced a little -- an example of your product, or have you

13  just given them a printout from a website?

14  MR. KASPAR:  We have given them the printouts from

15  the website.

16  THE COURT:  Yes, I think you need to do more than

17  that.  I mean, I understand if --

18  You know, and this I guess is going to be dependent

19  on what particular -- what the particular nature is of the

20  copyrighted material that the plaintiff claims that the

21  defendant is infringing on an item-by-item basis.  But it

22  seems to me that what the defendant is entitled to here is

23  kind of the -- sort of the best example of what it is that you

24  think they ripped off from you.  And I would be surprised if

25  that black-and-white printout from a website is the best

1   example.

2          And so that's what I think you need to do.  And, you

3   know, you've got this claim chart and you can kind of work

4   through that, and it doesn't seem like it's a terribly large

5   proportion of the material where what's been produced are

6   these black-and-white printouts from websites, but I think you

7   need to do better.

8          Now, it may be that the depiction on the website is

9   all there is.  If that's all there is, then that's all there

10  is, but you need to give them --

11         You know, if it's in color, you need to give them

12  something in color.  If it's three-dimensional, you need to

13  give them something three-dimensional or at least, you know,

14  some really good pictures of it so that they can see the

15  three-dimensional aspects of it, and that's what you need to

16  do.  So I'm just going to tell you, you need to do better on

17  that.

18         MR. KASPAR:  Okay.  Now, your Honor, just for

19  clarification --

20         THE COURT:  Yes.

21         MR. KASPAR:  -- a lot of the stuff -- I mean,

22  actually most of it -- of what rolls off of Games Workshop's

23  assembly line is their black plastic pieces.

24         THE COURT:  Okay.

25         MR. KASPAR:  Because they're sold that way.

1      THE COURT:  And then people go and paint them.

2      MR. KASPAR:  People paint them, and most of the hobby

3   is people painting these things according to the books that we

4   put out.  And part of why we haven't produced the black

5   plastic stuff is we don't see that as being as helpful --

6      THE COURT:  Well --

7      MR. KASPAR:  -- whereas the website shows, you know,

8   how they look.  And we know from the inspection that we took

9   in Texas that Mr. Villacci has all of this stuff in his

10  collection.

11     THE COURT:  Yes, not good enough, though.  I mean,

12  because the fact that, you know, somebody requests documents

13  from you, it's not -- I never thought it's a good response to

14  say, well, you already have this because you got it on your

15  own.  I mean, part of this is pinning people down as to what

16  they think in their case, you know, is being infringed, and I

17  think you need to do that.

18     So I don't know whether it's going to actually tell

19  the defendant anything materially different for them to get

20  this little, you know, the black or gray or whatever it is

21  piece that comes off of the assembly line, but, like I say, I

22  think you need to give them what I would refer to as the best

23  available exemplar of the items that you're contending have

24  been infringed.

25     So, Mr. Mersmann, beyond the 25 percent or so, are

1  there other kinds of categories of things where you think you

2  haven't gotten a good enough exemplar yet?

3            MR. MERSMANN:  I believe that your Honor's order did

4  just address everything.  You know, our question of in color

5  where the original was in color I think would address most of

6  our other --

7            THE COURT:  Yes, and that's definitely the case.  I

8  mean, if the original is in color, then the exemplar has to be

9  in color.

10           Okay, moving on.  So I'm now to, I guess it's

11  interrogatory -- is it interrogatory 9 that asks for

12  information about the sources of Games Workshop's works?

13           MR. MERSMANN:  Your Honor, interrogatory number 9 and

14  requests for document numbers 2 and 36.

15           THE COURT:  Okay.  All right.  And so if I'm

16  understanding this correctly, the plaintiff is saying, look,

17  they all belong to us, they're ours, and so we don't really --

18  we didn't rely on any third parties.  We obviously had people

19  working for us, employees, who did this, and so we don't

20  really -- there's no real good need to produce documents or

21  give answers that explain how we came up with, you know, what

22  we claim is copyrighted.

23           I know that that is somewhat of an

24  oversimplification.  And I have some, you know, some points

25  that I'm going to make about this whole thing about getting

1  employment agreements of people and whatnot.  But I was to a

2  large degree persuaded by the argument that the defendant made

3  that it's not just -- this information is not just relevant on

4  the issue of ownership; it's also relevant on the question of

5  originality, and the degree of originality tends to define the

6  degree of protection that is accorded to something that may be

7  copyrighted.

8         And so tell me what I'm missing here.  In other

9  words, and I recognize that it might be burdensome for

10  somebody who claims that we have infringed, that the defendant

11  has infringed, a couple of hundred copyrighted items to

12  explain how it developed those, but that's part of what comes

13  with the territory of filing a lawsuit that says somebody has

14  infringed a couple hundred of our copyrights.

15         So what am I missing here?

16         MR. KASPAR:  As a first point, your Honor, I think

17  this is particularly with request 36, it's far more sweeping

18  than what we have accused.

19         THE COURT:  Okay.  So where do I find -- remind me

20  where I find request 36.  That's going to be probably in the

21  defendants' motion.  Tell me what exhibit number.

22         Request 36.  Is it in the first -- it's not in the

23  first request.

24         MR. MERSMANN:  Your Honor, I believe that is

25  Exhibit 14.

1      THE COURT:  How many?

2      MR. MERSMANN:  14.

3      THE COURT:  14.  36, all documents concerning

4  instructions, manuals, procedures, how-to guides, FAQs, style

5  sheets, specifications or other guidelines or advice given to

6  any artist, designer, writer, model, painter, sculptor, or

7  other author or creator for use in creating works related to

8  Warhammer 40,000.

9      Okay, that's broader.  But let's say I --

10      The other document request was number 2, and I'm

11  assuming that that's going to be in Exhibit 9 maybe.  All

12  documents concerning the design, creation or authorship of the

13  copyrighted works.

14      Let's talk about number 2.  All documents concerning

15  the design, creation or authorship of the copyrighted works

16  you claim in this action.  Maybe we could pare that down a

17  little bit, but what's wrong with that?  In what way does that

18  seek irrelevant material?  I'm not seeing it.

19      MR. KASPAR:  It's not necessarily that it seeks

20  irrelevant material.  I suppose the objection would be that

21  it's just -- it's burdensome and that we would be going

22  through, you know, 35 years of files to try to find every

23  instance of, you know -- I hate to use the Disney analogy.

24      THE COURT:  See, I don't buy the Disney analogy,

25  though.  I mean, I think you've changed the example there.  I

1  mean, basically if somebody --

2         If I were contending that -- if I'm Disney and I'm

3  contending that you infringed Mickey Mouse and your defense

4  partly was that, hey, Mickey Mouse wasn't original to begin

5  with because there was this mouse and there was that mouse and

6  there was this rodent and there was that thing that were all

7  out there, then the fact that, you know, it was invented back

8  in the 1930s or '40s I don't think would be a good reason to

9  say, no, we don't have to produce that.

10        Now, that doesn't mean that you have to produce

11  everything about every Mickey Mouse that's ever been used all

12  the way from then to now.

13        MR. KASPAR:  Okay.

14        THE COURT:  But what he's talking about is the design

15  and creation and the authorship of the thing.  And so if you

16  have got --

17        I mean, I'm having a hard time seeing what's wrong

18  with the request that says, okay, you've got this thing here

19  that you claim is copyrighted.  We dispute it's copyrightable.

20  We dispute that it's a particularly strong copyright.  We

21  dispute, you know, how much scope of protection you're

22  entitled to for this, and so we want to see how you came up

23  with this.  Did you come up with this by basically seeing a

24  picture in another book or, you know, reading, you know, some

25  Tolkien novel or whatever?

1    And if the answer is, we don't remember, then the

2  answer is we don't remember, but I don't have a -- I'm having

3  a hard time seeing why I shouldn't tell you to do that.

4    36, I agree with you, maybe is a little bit different

5  because it -- I mean, that strikes me as a tad on the vague

6  side, and it's really not specified to the items that are at

7  issue in the case.  So, I mean, I'm focusing on requests for

8  production 2.

9    MR. KASPAR:  If 2 is limited to, you know, the

10  accused products?

11    THE COURT:  It is.

12    MR. KASPAR:  And to just the sort of conception of

13  the documents that go behind?

14    THE COURT:  I think 2 goes hand in hand with

15  interrogatory 9, which says, "separately for each copyright

16  you claim Chapterhouse infringes, identify any and all sources

17  consulted, used or viewed or relied on by you or your agents

18  in creating such works."

19    And then request for production 2 basically asks for

20  the documents that concern how you came up with it.

21    MR. KASPAR:  Okay.

22    THE COURT:  I think those are both enforceable.

23    36 I'm not going to enforce right now because I think

24  it's too vague, and I think it sweeps beyond what is

25  necessary.

1       But I think you're going to have to answer number 9

2   to the extent you haven't already done it, and produce

3   documents pursuant to request 2.

4       All right, moving on to the next thing.  Let's see

5   here.  Information about first publication.  If I'm

6   understanding the response correctly -- and I'm looking at

7   page 9, paragraphs 10 and 11 -- the plaintiff is contending

8   that you have already done -- that your answers to complete --

9   your answer to these requests, which is interrogatory 16, I

10  guess, is complete based on what you now know or have access

11  to you.

12      If that's the case, then fine, just tell me.  If it's

13  not case, in other words, if it's not complete, then you need

14  to tell me that it's not complete so I can tell you when you

15  need to complete it by.

16      So is the answer complete right now or not?

17      MR. KASPAR:  As I understand it, it's complete right

18  now.

19      THE COURT:  Okay.  So if they're telling you it's

20  complete, does the defendant have some reason to believe it's

21  not complete?

22      MR. MERSMANN:  I'm not sure that their response to

23  interrogatory number 16 goes to each of the items that they're

24  accusing Chapterhouse of infringing.

25      THE COURT:  Where do I see -- which exhibit do I see

1  their response in?

2          MR. MERSMANN:  Your Honor, I apologize.

3          THE COURT:  Is that maybe Exhibit 6 to your motion?

4          I see it.  So what they say is that after making

5  objections, they say, we have produced documents responsive to

6  this request pursuant to Rule 33(d).

7          MR. KASPAR:  Right, and, your Honor, we produced

8  copies of all the books and publications that have, you know,

9  their publication date and so forth.

10          THE COURT:  Okay, but what you're telling me --

11          So let me go back to the question I asked you then,

12  Mr. Kaspar, in other words.  You're telling me that the

13  documents that you have produced completely answer an

14  interrogatory which asks to identify the date on which the

15  work was first offered, first sold and advertised and where.

16          Are you sure about that?

17          MR. KASPAR:  The information we produced, you know,

18  has certainly the date on which it was first produced.

19          THE COURT:  Let me put it in a different way.

20          MR. KASPAR:  Where it was produced.

21          THE COURT:  So let's say that with regard to that

22  little hammer thing that they were talking about before, that

23  you produced a book and it's got -- you know, it's got a

24  publication date of August of 2008.  What that means is that

25  since you have elected the option to produce documents in

1    response to that interrogatory, and you've produced that

2    particular document and you've now told me that the response

3    is complete, you are now -- you've got it hung around your

4    neck that the date of first publication was August of 2008 in

5    a way that you're going to have to live with.

6              Are you comfortable saying that?

7              MR. KASPAR:  With the date of publication, yes.

8              THE COURT:  Okay.  So this is what I'm going to say.

9    I think the defendant is entitled to a complete answer to

10   interrogatory 16.  If a complete answer is provided by your

11   production of documents, then you tell them in writing, we

12   have completely answered this by our production of documents,

13   and then you're stuck with it.  If you haven't, then you need

14   to provide a more complete answer.  Again, we're going to come

15   up with a date for all of this stuff in a minute.

16             Moving on to the next thing.  Information --

17             I referred to category E as -- excuse me.  I'm

18   looking at the wrong thing.  I referred to the last two topics

19   in the motion as hodgepodge one and hodgepodge two.  There was

20   a whole bunch of stuff kind of mushed together.

21             So under heading E of the plaintiff's response to the

22   defendants' motion -- this is the part that covers what I

23   referred to as hodgepodge one, paragraphs 13 and 14 -- that

24   the plaintiff is saying we have produced everything that we

25   have got or have agreed to produce everything that we have

1  that is responsive to this, as we understand it, except for

2  the things that we asked you to clarify but you haven't

3  clarified.

4       So I would like you to react to that.

5       MR. MERSMANN:  Your Honor, the primary topic that we

6  have been exploring in hodgepodge one was the trademark issues

7  in the case which have not really been the focus of the case

8  so far but certainly will be important at some point, no

9  doubt.

10      The questions that we asked, again, as we state in

11 our brief, primarily focus on the protectability of the

12 trademarks that Chapterhouse is being accused of infringing.

13 That includes showing their validity, their protectability and

14 the fact that they were and continue to be used in commerce.

15 And I believe we also requested specimens on those trademarks

16 that were being accused of infringing as well.

17      THE COURT:  Okay.  So what you say -- I'm looking at

18 page 11 of the motion.  You say that the plaintiff has not

19 produced specimens of use in U.S. commerce for some of the

20 marks or first use in U.S. commerce for any of the marks and

21 hasn't produced documents regarding third party use or

22 documents concerning enforcement.

23      MR. MERSMANN:  That's correct, your Honor.

24      THE COURT:  Okay.  And in the response, the plaintiff

25 says:  Well, wait a second.  When we had the meet-and-confer,

1    you didn't raise any issues about some of these things, 8, 11

2    and 12, requests 8, 11 and 12.  We agreed to supplement our

3    answer to interrogatory 16.  We produced some more documents

4    in response to interrogatory 13, and we asked you to clarify

5    what else you were asking for for interrogatories 6, 7 and 13,

6    but you haven't told us.  And then we have already produced

7    everything we have regarding document requests 20, 31, 32 and

8    33.

9            So what in what the plaintiff says in their response

10   do you disagree with and why?

11           MR. MERSMANN:  I believe we have made quite clear

12   what we're requesting in interrogatories 6 and 7 at least.

13   The sources of the trademarks that are being accused in this

14   case are relevant to the question of trademark protectability

15   and the rights that plaintiff has to even assert in this case.

16           THE COURT:  What did you rely on -- 6 is:  What did

17   you rely on in connection with selecting the marks or product

18   names?  And what would --

19           What information would that get you that helps?  I

20   mean, it's different from copyright.  In other words, the

21   scope of protection for a trademark is typically determined by

22   reference to what sort of a mark it is.  In other words, is it

23   a coined word; is it an arbitrary word, or something like

24   that?  And, I mean, my sense is that you generally decide that

25   just from looking at the word.

1          MR. MERSMANN:  That may be, your Honor, but --

2          THE COURT:  Is there a law that says that what you

3    consulted in coming up with -- let's say that what Exxon

4    consulted in coming up with the word "Exxon," that that's

5    relevant to determining the scope of protection?

6          MR. MERSMANN:  I think if it could show that they did

7    take that word from somewhere else or some obscure source or

8    even a well-known source, it would certainly go to whether or

9    not the word was arbitrary or unique.

10         THE COURT:  Well, everybody gets something from

11   somewhere.  There's really nothing new under the sun.  I mean,

12   I'm not -- I don't really find that particularly persuasive.

13   I'm not persuaded by that.  So 6 and 7, I'm just not -- I'm

14   not willing to enforce at this point.  You haven't shown me

15   why you need enforcement of those.

16         Number 13 is an interrogatory that asks for what

17   damages have you suffered, and I'm sort of missing why it is

18   that the response to that is that this is a contention

19   interrogatory best deferred to the close of discovery, seeing

20   as how it's something that the plaintiff has to put in

21   26(a)(1) disclosures, which by definition come at the

22   beginning.

23         I mean, I recognize that you say, well, we haven't

24   gotten discovery from the defendant about its sales, and I

25   recognize that in cases like this, sometimes damages or part

1  of the damages are based on the defendant's sales and profits.

2  But that doesn't provide a basis for deferring answering this

3  interrogatory altogether.  I mean, I think you need to give

4  what you can.  I think you need to say, you know, that there

5  are other categories including your profits or including, you

6  know, your sales, we don't have it yet, and then the rules

7  provide a mechanism for when and how you have to supplement

8  those things.  So interrogatory 13 you've got to answer.

9         As far as the document requests are concerned --

10  let's see.  Let me just find these again here:  8, 11 and 12.

11     (Brief interruption.)

12         THE COURT:  Well, I think that document requests 8

13  and 11 are appropriate.  What research did you do on

14  trademarks?  If it's none, then you just say none.

15         11 is specimens of first use for each of the marks.

16  I think that's an appropriate request.

17         And as far as request number 12 is concerned,

18  documents concerning the use by others, I mean, I don't think

19  any issue has been raised about that at this point.  And I

20  think --

21         And then the plaintiff says they already produced all

22  their documents under requests 20, 31, 32 and 33.  That seems

23  to me to be the end of the story on that one.

24         And then that leaves interrogatories 13 and 16, and

25  16 is the one we just talked about.  That's the author for

1    sale thing, so I already dealt with that one.

2         And then interrogatory 13 is -- just a second.

3         MR. MERSMANN:  Your Honor, I believe that's the

4    damages contention interrogatory that you also ruled on.

5         THE COURT:  Okay, right.  Then we're on to hodgepodge

6    two, which is the last thing before I start giving you some

7    dates.  Let's see.  This is about three -- let's see here.

8       (Brief interruption.)

9         THE COURT:  In paragraph 15 plaintiff is saying we

10   have already agreed to produce the documents that they are

11   referring to there and that's sufficient.

12        So what's wrong with that answer?

13        MR. MERSMANN:  Your Honor, if plaintiff is indeed

14   producing all the photographs taken at the inspection as well

15   as the video taken at the inspection, then I don't believe we

16   would have an issue there.

17        THE COURT:  All right.

18        MR. KASPAR:  Your Honor, production --

19        THE COURT:  That's what it says, right?

20        MR. KASPAR:  -- on Thursday.

21        THE COURT:  Okay, all right.

22        And then on paragraph 16, plaintiff is saying that

23   they agreed to produce copies of their prelitigation

24   correspondence with Mr. Paulson.  And have you gotten those

25   yet or has that been produced yet?

1          MR. KASPAR:  Your Honor, that's in progress.

2  Actually I brought with me, which I can produce now, the

3  letter to Mr. Paulson, and I will give you a formal copy.

4          MR. MERSMANN:  Okay.

5          THE COURT:  And as far as the correspondence post-

6  lawsuit, it wasn't clear to me.  I mean, are you producing

7  that or saying you don't have to?

8          MR. KASPAR:  We would prefer not to produce that.

9          THE COURT:  Why wouldn't it be relevant, though?

10          MR. KASPAR:  It's relevant, but it's also -- you

11  know, we settled with Mr. Paulson and --

12          THE COURT:  Do you have a confidentiality agreement

13  with him?

14          MR. KASPAR:  Yes.

15          THE COURT:  Okay.  So I think what you're going to

16  need to do on that is you're going to have to give it to me to

17  look at, and then I'm going to have to decide whether there is

18  anything relevant in there or not.

19          And also give me -- I need to see a copy of the --

20  you're going to produce this in camera.

21          MR. KASPAR:  Right.

22          THE COURT:  I need to see the agreement, too, so that

23  I can see the scope of the confidentiality.  So produce the

24  agreement and the responsive documents in camera, and I will

25  decide whether I'm going to require production of them or not.

1        And then the last thing is in paragraph 17 of the

2   response, and that's communications between the plaintiff and

3   the defendants' independent designers.  Well, now you're going

4   to have to produce that because that's no longer attorney's

5   eyes only because the identities of the designers, in other

6   words, aren't attorney's eyes only anymore.

7        MR. KASPAR:  Okay.

8        THE COURT:  Okay.  So we need to have some dates for

9   this stuff.  And what I would prefer to have you do rather

10  than me just imposing this on you is you guys sit down and

11  figure it out.  It needs to be --

12       And this is what it needs to be, though.  These are

13  my parameters.  My parameters are the deadlines that I gave

14  you for completing other stuff that you have to complete are

15  set in granite.  And so you have to come up with dates for you

16  to provide whatever further answers that I have told you you

17  have to provide long enough in advance of the fact discovery

18  cutoff date that it gives you time to digest what you have and

19  take the depositions of the people you think are necessary.

20  And so rather than me just giving dates for you, I think you

21  ought to just come up with them yourself.  Okay.

22       And the same on privilege logs.  I think you need to

23  come up with a deadline by which people are going to produce

24  privilege logs, and it needs to be soon enough that people

25  can, A, get in and discuss any challenges that you have and

1    then bring to my attention any challenges that you have so I

2    can rule on them in advance of the discovery cutoff date.  And

3    I think that's basically it.

4          And then I think you need to have a deadline by which

5    you're going to -- well, no, I already said that, by which

6    you're going to produce whatever supplemental things you have

7    to produce.

8          As far as the in camera stuff, I need it by, let's

9    say, ten days from now.

10         So the other stuff I'm going to -- the stuff we

11   haven't talked about, I will get you an order within the next

12   day or two that basically says what I think you need to do,

13   but most of it I think you're walking out of here knowing.

14         Okay.  So I'm going to give you another status in

15   about, oh, let's say, early February.  So a status hearing on

16   February the 8th at 9:30.

17         All right, anything else we've got to talk about

18   today?

19         MR. KASPAR:  No.

20         MR. MERSMANN:  No, your Honor.

21         THE COURT:  All right, take care.

22         MR. MERSMANN:  Thank you.

23         MR. KASPAR:  Thank you, your Honor.

24

25

1  (Which were all the proceedings had in the above-entitled

2  cause on the day and date aforesaid.)

3

4

5                    C E R T I F I C A T E

6

7          I hereby certify that the foregoing is a true and

8  correct transcript of the above-entitled matter.

9

10

11  */s/ Laura M. Brennan*                    December 20, 2011

12

13  _____          _____

14  Laura M. Brennan
    Official Court Reporter                        Date
15  Northern District of Illinois

16

17

18

19

20

21

22

23

24

25