```
                   IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
                            EASTERN DIVISION


GAMES WORKSHOP LIMITED,        )
                               )
                 Plaintiff,    )   Docket No. 10 C 8103
                               )
            vs.                )
                               )
CHAPTERHOUSE STUDIOS, LLC,     )   Chicago, Illinois
et al.,                        )   June 21, 2011
                               )   9:30 a.m.
                 Defendants.   )


                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE MATTHEW F. KENNELLY

APPEARANCES:

For the Plaintiff:      FOLEY & LARDNER, LLP
                        BY:  MR. SCOTT R. KASPAR
                        321 North Clark Street, Suite 2800
                        Chicago, Illinois  60610

For the Defendant:      WINSTON & STRAWN, LLP
                        BY:  MR. ERIC J. MERSMANN
                        35 West Wacker Drive
                        Chicago, Illinois  60601
```

LAURA M. BRENNAN - Official Court Reporter
219 South Dearborn Street - Room 2102
Chicago, Illinois  60604
(312) 427-4393

```
 1        (The following proceedings were had in open court:)
 2            THE CLERK:  10 C 8103, Games Workshop v.
 3  Chapterhouse.
 4            THE COURT:  Good morning.
 5            MR. KASPAR:  Good morning, your Honor; Scott Kaspar
 6  on behalf of the plaintiff Games Workshop.
 7            MR. MERSMANN:  Eric Mersmann on behalf of the
 8  defendant Chapterhouse.
 9            THE COURT:  Okay.  Mr. Mersmann, you've got the
10  floor.
11            MR. MERSMANN:  We are here about this motion to
12  compel.  Frankly, when we received it last week, we were a bit
13  perplexed.  As their motion stated, there was a June 8th
14  meet-and-confer about problems on both sides.
15            Both sides agreed to supplement, I believe, standing
16  by their objections.  I know we said from the get-go that we
17  were standing by our objection that the language in the
18  interrogatory is hopelessly vague.
19            THE COURT:  So tell me what is hopeless.
20            First of all, are you talking about interrogatory 1
21  or interrogatory 2 or both?
22            MR. MERSMANN:  As I understand, they only moved to
23  compel on interrogatory number 2.
24            THE COURT:  Okay.
25            MR. MERSMANN:  So I'm just referencing interrogatory
```

1 number 2.

2 THE COURT: What is it? I'm looking at it. It's two
3 lines long. What is hopelessly vague about it?

4 MR. MERSMANN: Well, it's this notion that our client
5 should have to identify all sources consulted, used, reviewed
6 or relied upon, essentially asking to get his inspiration for
7 106 different works.

8 THE COURT: Somebody is going to be doing that in a
9 deposition anyway, you know, right? I mean, it's an
10 infringement case. He's trying to avoid taking the deposition
11 that's going to last, you know, probably until Jarndyce v.
12 Jarndyce is done, maybe.

13 MR. MERSMANN: The issue here, though, is that this
14 second interrogatory is not about what works of the
15 plaintiff's he referenced but any works anywhere.

16 THE COURT: Yes?

17 MR. MERSMANN: And that --

18 THE COURT: But time out. I mean, isn't that just
19 sort of an obvious question, you know, in an infringement
20 case?

21 So the first question is: Did you rely on any of my
22 stuff? Answer: No. Well, then what did you rely on?

23 I mean, that's pretty obvious.

24 MR. MERSMANN: Your Honor, we don't see how it's --
25 What we have said to the other side is that it's not

1  relevant to the -- it's not aimed at the elements of the
2  copyright claim, and it really just underscores the
3  fundamental problems with their claims that we bring.
4      THE COURT:  You mean the thing you lost on.
5      MR. MERSMANN:  I'm sorry?
6      THE COURT:  You mean the thing you lost on.
7      MR. MERSMANN:  Your Honor --
8      THE COURT:  I denied the motion, right?
9      MR. MERSMANN:  Yes, correct.
10     THE COURT:  Right.
11     MR. MERSMANN:  And we have served contention
12 interrogatories, as your Honor suggested, and we have received
13 responses from them.  And we think that the responses they
14 have given us to the contention interrogatories make it even
15 more clear that they have not stated a claim for copyright
16 infringement, that their -- the issue of whether or not they
17 stated a claim is still ripe for early motion practice, and
18 taking their responses to our contention interrogatories as
19 incomplete as they are, along with their pleadings, is ripe
20 for a judgment on the pleadings.
21     THE COURT:  Okay, look.  First of all, you keep
22 talking about how their answers are incomplete.  I don't have
23 a motion from you, so I'm not going to deal with that.
24     Number two, you keep talking about how it's ripe for
25 motion practice.  My question is:  Where's your motion?  I

1  don't have one. I'm dealing with this, okay. It's relevant.
2  I think it's relevant.
3  If you want to file some sort of a motion -- I don't
4  know if you can do it as a motion for judgment on the
5  pleadings, you know, because interrogatory answers aren't
6  pleadings. It may have to be a motion for summary judgment.
7  But if you want to file some sort of a motion for
8  summary judgment and ask that all discovery halt except what
9  they need to respond to the summary judgment motion, I will
10 entertain that when you file it, but you haven't yet. And
11 I've got an interrogatory here and a motion to compel and an
12 interrogatory that was served three months ago this Saturday,
13 and so that's what I'm going to deal with.
14 And when you say it's hopelessly vague, your argument
15 didn't suggest anything vague about it; your argument
16 basically said that we shouldn't have to do this because it's
17 not relevant. Those are two different things. And I don't
18 have a problem with you arguing relevance, but I'm not
19 persuaded by it.
20 MR. MERSMANN: Well, your Honor, as to specifically
21 the issue of the vagueness of the interrogatory, with the
22 sorts of allegations that are at issue in this case, where,
23 you know, our client is being alleged of infringing a
24 copyright on these very broad, very general ideas, the
25 inspiration for something like a space marine, for example,

1  you could go pages and pages back to, you know, early pulp
2  science fiction, back to Robert Heinlein's Starship Troopers.
3              THE COURT:  Back to Flash Gordon.
4              MR. MERSMANN:  Exactly.
5              THE COURT:  There might be two people in the room who
6  even know what I just said, maybe three.
7              MR. MERSMANN:  And we think that -- we think that
8  that request, that asking for any inspiration on these very
9  broad, very ambiguous items that we're being accused -- that
10 my client is being accused of infringing, it simply
11 exacerbates the problems with the pleading.
12             THE COURT:  I understand what you're saying, but,
13 with respect, there's a right way and a wrong way to do
14 things.  The right way is not come in here three months after
15 the interrogatory gets served in response to a motion to
16 compel and say we shouldn't have to answer this stuff.
17             The right way would have been to come in here on a
18 motion for protective order at some earlier point in the
19 process after you ascertained that you weren't going to be
20 able to get this thing narrowed down in a way that was
21 suitable to you.  You didn't do that.
22             And so I'm here on a motion to compel an answer to an
23 interrogatory, and everything you're saying is all well and
24 good, but I'm not going to grant summary judgment on a motion
25 -- I'm not going to grant summary judgment in your favor on

1  their motion to compel, okay.  I'm not going to put the brakes
2  on discovery without any kind of a motion that asks for a
3  dispositive ruling in the case on file, and I don't have a
4  motion for protective order.  And so those are -- you know,
5  from my perspective at this moment in time, those are all side
6  issues.  They're side issues, okay.
7        Now, you might have a burdensomeness issue.  I mean,
8  I'm kind of hearing you saying that, and that is contained in
9  your objections.  So let me hear what the plaintiff has to say
10  about the burdensomeness issue.  In other words, it's too
11  tough.
12        MR. KASPAR:  Your Honor, at the meet-and-confer that
13  we had a week and a half ago or so, they did not -- opposing
14  counsel did not express --
15        THE COURT:  I just want you to answer my question.  I
16  don't want to hear about all your meet-and-confers.  I just
17  want you to answer my question.
18        MR. KASPAR:  During that meet-and-confer, we did
19  reach an agreement as to the scope.
20        THE COURT:  Okay.  What is the agreement?
21        MR. KASPAR:  And it was really to narrow it down on
22  specific works if they have -- either works of my client's
23  or --
24        You know, they have alleged an affirmative defense of
25  independent creation, and there's got to be something out

1    there that they're pointing to, and we're just not seeing
2    that.  And, you know, they did supplement on Friday -- provide
3    a supplemental response to this interrogatory.
4            THE COURT:  Okay.
5            MR. KASPAR:  If I can approach the bench, I can share
6    a copy with you.
7            THE COURT:  Yes.
8            MR. KASPAR:  There's a lot of words, but they don't
9    identify anything specific.  It's really --
10           I mean, actually opposing counsel, just in speaking
11   this morning, gave the supplement, which is they pointed
12   generally to mythology.
13           It's number 2.
14           THE COURT:  Okay, right.  Hang on a second.
15           MR. KASPAR:  Supplemental.
16           THE COURT:  Supplemental response.  It's in here, the
17   bottom of page 4.
18           The answer, if I could put it in a nutshell, is we
19   basically consulted everything.
20           MR. KASPAR:  Right.
21           THE COURT:  "Mythology, military history, fiction
22   film, video games, physics, biology, gaming and many other
23   disciplines, and there is a study in cultural expression.  The
24   Internet provides a wealth of informational and inspirational
25   material for all creative endeavors, and we do Internet and

1 other research when creating its products."

2 So let me ask about this affirmative defense of
3 independent creation. Is that, in fact, alleged in the case?

4 MR. KASPAR: Yes, your Honor, I believe it is.

5 THE COURT: Okay. So we're past the relevance
6 objection. You just lost that one because you said
7 independent creation, and if you're going to say that in an
8 answer, I think somebody is entitled to an explanation. So
9 your relevance objection is overruled.

10 Let's just sort of think about for a second
11 collectively how this case is going to get decided if we
12 get -- if this is where we're stuck. I see us being on one of
13 those muddy country roads and the wheels are just getting
14 farther and farther down in the mire and we're not getting
15 anywhere.

16 And so I'm going to put this over for about ten days,
17 and there's two things I want you to do. Number one, on the
18 defense side, you're going to need to come up with a way of
19 answering this better, okay, rather than saying we have
20 consulted everything that is offered in the average college
21 catalog these days and plus the Internet, okay, which means
22 you've consulted every source of information there is in that
23 whole entire world.

24 The second thing is we're going to figure -- you guys
25 need to figure out and propose to me a way of getting us to a

1   resolution in this case sometime in my lifetime, okay, and I'm
2   planning to live for a while. I'm only 54, and I would like
3   to get this done, you know, before I go on to the great
4   beyond. It's not looking real promising right now, and I know
5   I'm being a little snide here, but, you know, you're kind of
6   asking for it.
7           So I'd like you to come back two weeks from today.
8   Two weeks from tomorrow would be the 6th of July. Does that
9   date work okay?
10          MR. MERSMANN: Yes, your Honor.
11          MR. KASPAR: Yes, your Honor.
12          THE COURT: Okay. So I'm going to enter and continue
13  this motion to the 6th of July at 9:30.
14          Now, I want to get a status report from you, let's
15  say, by the preceding Friday. And lest I make the mistake
16  that I made with one of the other cases on my call today where
17  I asked people to provide a status report and got something 26
18  pages long, I want something short and to the point that gives
19  me a proposal or alternative proposals about how we get from
20  point A to point whatever the end point is in this case. And
21  I'm not necessarily saying I'm going to adopt either one of
22  them, but I would like to get your ideas, and then I'll sort
23  of work with those and I'll talk to you about them and figure
24  out what to do.
25          So let's make the status report no more than about

1 seven pages or so. Okay.
2     All right, see you in two weeks.
3     MR. MERSMANN: Thank you, your Honor.
4     THE COURT: Bye-bye.
5     MR. KASPAR: Thank you.
6
7 (Which were all the proceedings had in the above-entitled
8 cause on the day and date aforesaid.)
9             C E R T I F I C A T E
10
11   I hereby certify that the foregoing is a true and
12 correct transcript of the above-entitled matter.
13
14
15 */s/ Laura M. Brennan*                    June 22, 2011
16
17 _____     _____
   Laura M. Brennan
18 Official Court Reporter                   Date
   Northern District of Illinois
19
20
21
22
23
24
25