IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>                 Plaintiff,<br><br>    v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES<br><br>                 Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly<br>Hon. Jeffrey T. Gilbert |

**PLAINTIFF'S REQUEST FOR STATUS CONFERENCE**

Plaintiff Games Workshop Limited ("Games Workshop"), by and through its undersigned counsel, respectfully submits this Memorandum in support of its request for an immediate status conference (on March 6) to aid in the orderly completion of fact discovery, currently set to close on March 15, 2012 and to minimize possible prejudice to Games Workshop from the apparent systematic failure to produce documents.

**INTRODUCTION**

1. As Games Workshop reported to the Court on February 21 (Dkt. 174), it had grown alarmed regarding certain apparent systematic failures by Chapterhouse to produce documents or information concerning numerous basic issues, including issues as to which the Court had already ordered production. Following the deposition of Chapterhouse's document custodian on February 29, it is now clear that Chapterhouse has indeed *systematically* failed to produce any documents from its designers (including its co-owner, Tomas Fiertek, whose records Chapterhouse was already ordered to produce on February 14). It has done so notwithstanding

that, as confirmed at the deposition, it has always had a contractual right to obtain the records from the designers. (Chapterhouse itself had failed to produce the agreements giving it the right to obtain such documents, despite a specific discovery request directly on point, but Games Workshop obtained the contract independently by subpoenaing some of the designers.) Chapterhouse also has no explanation why it has produced (i) no communications with its designers dated after January 26, 2011 (one month after it was sued); (ii) no documents regarding the development of 106 of its 121 products in issue; and (iii) no documents regarding independent creation. Adding to the puzzle, the document custodian testified he gave direct access to all of these communications to Winston & Strawn *at the outset of the case*, making it difficult to understand why the only communications produced in discovery were on September 20, 2011 (5 email strings allegedly concerning independent creation, which the Court had ordered be produced on July 6) and on December 14 and 28 when Winston & Strawn produced the remaining communications furnished to date. Although Chapterhouse evidently also provided its counsel with 1200 pages of instant messages and sales data two weeks ago, its counsel only sent those documents *by regular mail* on February 28, thus ensuring they won't be received until too late to be reviewed. And counsel refuses to explain (even generally) what new documents are now somewhere in the United States mail.

  2. As shown below, the deposition of Chapterhouse's document custodian reveals remarkable similarities to the discovery abuses that gave rise to sanctions in *Wilson v. Sunstrand Corp.*, Nos. 99 C 6944 & 99 C 6946, 2003 WL 21961359 (N.D. Ill. Aug. 18, 2003) (Kennelly, J). However, Games Workshop at this point does not seek discovery sanctions; only direction from the Court how to limit the prejudice to it and complete document discovery and depositions as quickly as possible so as not to disrupt the existing summary judgment and trial schedule.

**ARGUMENT**

3.      Despite being ordered by the Court on February 14 to retrieve all relevant documents from the co-owner of the business, Tomas Fiertek, with whom Chapterhouse engages in extensive communications allegedly protected by the attorney-client privilege,[1] Chapterhouse has *not even contacted him* yet to seek any of the records first requested by Games Workshop as early as March and May 2011. Chapterhouse's owner also admitted he misrepresented to the Court in his February 13, 2012 declaration that Mr. Fiertek was not a "member" of Chapterhouse (Dkt. 165, Villacci Decl. ¶ 4). In fact, Mr. Fiertek owns 49% of the company. (Moskin Decl., Ex. 2, Villacci Tr. p. 6 l. 18-23) ("I have a partner …His name is Tomas Fiertek. … It's 51 percent me and 49 percent him.")

4.      Chapterhouse not only failed to produce any documents from Mr. Fiertek as previously ordered by the Court, it concealed in discovery (by refusing even to answer Games Workshop's Document Request 29[2]) that it has *actual written agreements* with *all* of its supposedly independent designers and concept artists (Villacci Tr. p. 35 l. 22 – 36 l. 13; p. 39. l. 15 - 24) under which Chapterhouse enjoys an express right to compel them to return to it all of the design documents in their possession (including all "nonpublic information relating to Company's … inventions … trade secrets, patents copyrights, …research and development

---

[1] When Chapterhouse belatedly produced its privilege log on February 7, it revealed that it claims privilege in an unspecified number of communications with this same co-owner of the company, Tomas Fiertek, over whom it says it has insufficient control to produce any documents. (Dkt. 158-1, 2/9/12 Kaspar Decl., Ex. F.) Clearly, it can not have it both ways – sharing privileged advice with a non-lawyer yet also claiming that it has so little a relationship with the same non-lawyer as to be unable to obtain so much as a single document from him.

[2] Although the Court's December 23 Order declined to order Chapterhouse to produce documents from its alleged third-party designers, that decision was based on Chapterhouse's representation it had no control over the designers and its citation to certain case law regarding the relations between parent and subsidiary companies. However, Chapterhouse had concealed from the Court that at the same time the motion was pending, it had also separately refused to respond to Games Workshop's Document Request seeking documents concerning its *actual* relationship with the designers. After Games Workshop was given at least some opportunity to present arguments on point, the Court, on January 17, indicated a willingness to reconsider that order based on additional precedents cited by Games Workshop.

activities, customers, business plans, promotional and marketing activities …") (Moskin Decl. Ex. 3, ¶ 1). As Mr. Villacci admitted: "Q: And that covers all of the design documents that the designers create? … A: In my interpretation, yes." (Villacci Tr. p. 37 l. 25 - 38 l. 5.) The contracts expressly provide:

> Employee will promptly return or destroy all tangible materials embodying Confidential Information (in any form and including, without limitation, all summaries, copies, and excerpts of Confidential Information) following Company's request, without retaining any copy or reproductions thereof or any computer, electronic or other record of such information.

(Moskin Decl. Ex. 3, ¶ 5) Games Workshop first learned of the existence of these agreements giving Chapterhouse the right to these design records *not* from Chapterhouse, but only by subpoenaing a handful of the designers, each of whom either produced such an actual agreement or produced emails referencing such agreements. (*See also* Moskin Decl. Ex. 4). Mr. Villacci admits that the "whole point", or at the very least a significant purpose, of the agreements is to ensure that he retains control over such confidential design documents (Villacci Tr. p. 37 l. 18 – 38 l. 8), yet he says he has no recollection whether he gave the agreements to his counsel (Id. p. 36 l. 14 – 23) and has made no effort whatsoever even to ask the designers to share the materials with him (*Id* at p. 41 l. 5 - 23).

> Q: For example, you never picked up the phone or sent an instant message to Mr. Fiertek saying, Tomas, I need – I'd like you to give me all of your documents regarding the creation of the works at issue in this case?
> A: No.
> Q: You never said, you never asked Mr. Fiertik that?
> A: No.
> Q. The answer is no.
> A. No.
> Q: And the same for the other designers?
> A: That is correct.
> Q: And concept artists; is that right?
> A: That's Correct. (*Id.*)[3]

---

[3] Consistent with the terms of the agreements designating such design records as "confidential" information, Winston & Strawn, in overseeing the responses to document subpoenas Games Workshop

4

5. As this Court held in *Wilson v. Sunstrand Corp.*, 2003 WL 21961359 (N.D. Ill. Aug. 18, 2003):

> By virtue of its virtually unfettered contractual right of access to the records of its former division from the division's purchaser, Sundstrand unquestionably had "control" over those records and thus was required under Rule 34(a) to produce them when requested by plaintiffs. "Control" for purposes of Rule 34(a) means includes "the legal right to obtain the documents requested upon demand*.*".

*Id* at * 9. *Accord Knoll Pharma. Co. v. Teva Pharms. USA, Inc.*, 2004 WL 2966964, at *2 (N.D. Ill. 2004) ("Rule 34(a) permits discovery of documents 'which are in the possession, custody, or control of the party upon whom the request is served.' Defendant further argues that because Dr. Arnold agreed to cooperate in any litigation concerning the validity of the patent, Plaintiffs have 'the legal right to obtain the documents requested upon demand.',″ citing *Wilson*.)[4]

6. Moreover, Mr. Villacci says he has no idea why none of the confidentiality agreements has been produced (Villacci Tr. p. 40 l. 14 – 41 l. 4), and neither Chapterhouse nor the designers have produced a newer version of the agreement that Mr. Villacci admits exists. As a practical matter, because six of the twelve designers reside outside the United States (including Mr. Fiertek); one United States resident (Simon Summers) has no given address, and a

---

served on the designers, has designated all such materials from the designers concerning creation of the products "confidential" or "highly confidential".

[4] Games Workshop previously has explained that a party's duty to produce documents from third parties is entirely fact-specific, and based on the *practical* ability to obtain such information, not bare abstract legal theories. *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160-61 (3d Cir. 2004); *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 928-29 (1st Cir. 1988); *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179; 195, 2007 U.S. Dist. LEXIS 6198 (S.D.N.Y. 2007) ("Under Rule 34, 'control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or *practical ability* to obtain the documents from a non-party to the action." (emphasis added)). As the court further explained in *In re NTL*:

> Moreover, defendant NTL Europe's CEO demonstrated that NTL Europe had the simple "practical ability" to obtain the relevant documents from New NTL; he testified that "[w]henever there was a document that we needed [from New NTL] . . ., we would call [New NTL] and ask if they had it, and if they had it, they'd send it."

*Id.* at 195-96.

5

second United States resident (Sam Terry) evidently does not reside at the stated address in West Virginia, Chapterhouse's concealment of its actual relationship with its designers and it right to compel productions has frustrated Games Workshop's ability to obtain needed information. The prejudice to Games Workshop is heightened by the fact Chapterhouse itself has produced from its own records no information whatsoever concerning 106 of the 121 products in issue. Given the number of open admissions of direct copying in the emails that have been produced regarding the 15 products, this systematic failure of production that has persisted since March and May 2010 is inexplicable.

7. Chapterhouse itself can not answer why it has produced so few relevant records because it admits *it has done no searches whatsoever of its three email accounts*. Rather, it gave access to all of the accounts to Winston & Strawn at the outset of the case (Villacci Tr. p. 26 l. 3 – p. 27 l. 21). Notwithstanding that Chapterhouse gave its counsel full access to its three email accounts at the outset of the case, and although Mr Villacci testified that his principal means of communicating with his designers is by email, defendants have produced no *emails more recent than January 26, 2011* (Moskin Decl. ¶ 5) and no emails or design documents concerning 106 of the 121 accused products (*Id*. ¶ 6) – again in response to discovery requests served in March and May 2011. Mr. Villacci is unable to explain why (Villacci Tr. p. 48 l. 20 – 50 l. 1). For the first time one week ago (i.e. during the week of February 20) (Villacci Tr. p. l0 l. 6-20) Mr. Villacci says he gave to his counsel an unknown number of instant messages (probably less than 200) (Villacci Tr. p. 12 l. 18-25). This was evidently after Games Workshop brought to the Court's attention the failure to produce even a single instant message despite numerous references to such instant messaging in the documents it had produced (Dkt No. 174-1, 2/21/12 Kaspar Decl.

6

Ex. F).[5]  No instant messages had previously been produced and none has yet been received by Games Workshop.  However, he contends he has no recollection how many such messages he provided counsel during the week of February 20 (Villacci Tr. p. 11 l. 12 – 13 l. 7), which was the first time he had even searched his computer files for instant messages (*Id*. p. 13 l. 4 – 7).  For its part, defendant's counsel refuses to disclose what it might be producing. (Moskin Decl Ex. 5).

8.   Mr. Villacci was also unable to identify any emails he produced after January 26, 2011. (Villacci Tr. p. 20 l. 10 – 21 l. 5) and his counsel refused to elucidate on the record why the last produced email is dated only one month after the suit was filed.  (Villacci Tr. p. 21 l. 6–22 l. 18).

9.   Rather than facilitate completing document production, on February 28, at 6:49 pm, Chapterhouse's counsel alerted Games Workshop that it had placed in the *regular mail* a new disk containing 1200 pages of documents, yet refused Games Workshops repeated requests to say even what the documents are (Moskin Decl. Ex. 5; Villacci Tr. p. 21 l. 19 – 22 l. 18).  By using ordinary mail and by refusing to divulge any information in response to plaintiff's requests, Chapterhouse's counsel ensures only that whatever new mystery documents arrive, they will arrive in New York next week while the undersigned counsel is in Chicago substantially all week defending depositions in this case, thus making it impossible to review the materials (requested back in March or May 2011) or prepare for depositions of Chapterhouse the following week.  (This might also explain why counsel inexplicably delayed producing the document custodian as requested on February 28, even in response to two court orders, while he

---

[5] Apparently also included were some sales records.

7

was in fact simply at home with his family.[6]) At his deposition, Mr. Villacci could not even say if the new documents concerned any of the 106 products for which no records have been produced but only that they contained some unknown number of instant messages and sales data. (Villacci Tr. p. 11 l. 21-22).

10. Although numerous emails produced by Chapterhouse concerning the 15 products for which it has provided some information reveal extensive use of a photo sharing service, Photobucket.com, to which many of the designers post images of the accused works in development (*e.g.* Dkt. 174-1, 2/21/12 Kaspar Decl. Ex. F), Chapterhouse also confirmed it made no effort whatsoever to access or produce any of those shared documents in that depository. (Villacci Tr. p. 32 l. 23 - 34 l. 22.) It contends it does not even know how many designers post design records to this shared depository. (*Id*. p. 34 l. 14 – 22.)

11. Chapterhouse also continues to refuse to produce a proper privilege log (Dkt. 158-2 at 16, 2/9/12 Kaspar Decl. Ex. F) and its document custodian is unable to explain what are any of the allegedly privileged communications with Mr. Villacci's business partner; over what period of time they occurred or concerning what subjects. (Villacci Tr. p. 44 l. 1 – 46 l. 2) Chapterhouse also seeks now to claim attorney-client privilege in 13 other emails (such as the confidential email previously filed with the Court (Dkt. 158-1, 2/9/12 Kaspar Decl. Ex. C at 8) that it exchanged with another supposedly independent designer, Wyatt Traina. However, it has declined to explain the basis for its privilege claim. (Moskin Decl. Ex. 6). As with Mr. Fiertek's records, notwithstanding the claim that Mr. Traina is entitled to share privileged communications with Mr. Villacci, Chapterhouse evidently contends it has insufficient control over Mr. Traina to

---

[6] Given the imminent close of discovery, Games Workshop had sought to conduct the simple telephonic deposition on February 28 to allow at least one extra day to resolve these issues. However, Chapterhouse's counsel declined to produce the witness, and refused to explain why he could not have been produced sooner (Moskin Decl. Ex. 1). In fact, as the witness admitted, he was simply home with his family at the stated time. (Villacci Tr. p. 13 l. 20-23.)

8

obtain his design records. Of course, it also has a specific agreement with Mr. Traina under which he is required to produce such records.

12. Chapterhouse further admits is has failed to produce any documents to support its supposed *independent creation* defense (as set forth in its response to Interrogatory 2), and Mr. Villacci concedes he has no idea what sources his designers actually consult (Villacci Tr. p. 50 l. 10 – 51 l. 14).

> Q: I'm asking if Chapterhouse has any documents showing any of those – those items [referenced in response to Interrogatory 2 as supposed independent sources of inspiration]?
> A: The items we drew inspiration from?
> Q: Yes the ones I just mentioned that had referenced in your answer to Interrogatory No. 2?
> A: I don't have possession of any documents that show that. The designers might.
> Q: You don't know?
> A: Chapterhouse itself does not have any documents showing that.
> Q: And you don't know whether the designers do?
> A: I don't know what documents they draw inspiration from. (*Id.*)

Mr. Villacci admits that he has not himself designed any of the products in issue.

13. Even the documents Chapterhouse belatedly produced in December in response to discovery requests served in March and May 2011 (relating to only 15 of 121 products) include numerous emails in which it openly admit copying or acknowledge that Chapterhouse was trying to come as close as the law would allow to Games Workshop's original copyrighted works (*See*, *e.g.*, Dkt. 158-1, 2/9/12 Kaspar Decl., Ex. B at 9; Ex. C at 3 & 9)). With so many "smoking guns" already disclosed, Games Workshop believes it is entitled to see the full range of documents concerning the development of the other 106 products (or be able to determine more clearly if such documents simply were not preserved or intentionally destroyed). Comparing Chapterhouse's own records to the records of its not-so-independent designers will likely show why Chapterhouse has sought to avoid production of those documents. It has been almost a full

9

year since Games Workshop commenced discovery and seven months since the Court instructed Chapterhouse on July 6 to produce its independent creation documents

14. Accordingly, Games Workshop requests a conference to address the proper completion of discovery in the face of Chapterhouse's admissions it has failed systematically to produce documents responsive to the most critical of Games Workshop's requests. Although the Court has suggested that sanctions might be appropriate, at this juncture Games Workshop simply seeks a rational means to complete discovery so as to move the case to summary judgment or trial as efficiently as possible. Particularly given that these records were all requested almost a full year ago, in March and May 2011, it is simply unfair to complete depositions without the most basic of information.

## CONCLUSION

**WHEREFORE**, Games Workshop respectfully requests that the Court schedule a status conference to assist with the orderly completion of discovery and granting any such further relief as the Court deems appropriate and just. Although Games Workshop is not (at this juncture) seeking sanctions as in *Wilson v. Sunstrand Corp.*, and although (as it has previously advised the Court) Games Workshop is willing to complete fact discovery in the time currently reserved for expert discovery so as to preserve the current schedule for summary judgment and trial, Games Workshop does believe it is entitled to the documents it has been seeking for almost a full year before it is required to conclude fact discovery.

Dated:  March 1, 2012                              Respectfully submitted,

                                              /s/  Scott R. Kaspar

                                              Scott R. Kaspar (Ill. Bar No. 6284921)
                                              Aaron J. Weinzierl (Ill. Bar No. 6294055)
                                              FOLEY & LARDNER LLP
                                              321 North Clark Street, Suite 2800
                                              Chicago, IL 60654-5313
                                              Telephone:  312.832.4500
                                              Facsimile:  312.832.4700
                                              Email:  skaspar@foley.com;
                                              aweinzierl@foley.com

                                              Jonathan E. Moskin
                                              FOLEY & LARDNER LLP
                                              90 Park Avenue
                                              New York, New York 10016
                                              Telephone:  (212) 682-7474
                                              Facsimile:  (212) 687-3229
                                              Email:  jmoskin@foley.com

                                          *Attorneys for Plaintiff*
                                          *Games Workshop Limited*

## **CERTIFICATE OF SERVICE**

I, Scott R. Kaspar, an attorney, hereby certify that on March 1, 2012, I caused to be filed electronically the foregoing PLAINTIFF'S REQUEST FOR A STATUS CONFERENCE with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                                                /s/  Scott R. Kaspar