**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC, | ) | |
| | ) | Honorable Matthew F. Kennelly |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S
MOTION FOR SUMMARY JUDGMENT**

# Table of Contents

I. INTRODUCTION ............................................................................................- 1 -

II. FACTUAL AND PROCEDURAL BACKGROUND ................................- 1 -

    A. The Parties .............................................................................................- 1 -

    B. Procedural Background.........................................................................- 2 -

    C. GW's Claims..........................................................................................- 3 -

III. CHS IS ENTITLED TO SUMMARY JUDGMENT ON GW'S COPYRIGHT CLAIMS.......................................................................................................- 4 -

    A. GW Has Now Abandoned Its Copyright Claims For 32 CHS Products.............- 4 -

    B. GW Cannot Meet Its Burden To Show Ownership of 15 Alleged Works..........- 5 -

    C. GW's Miniature Figures Are Unprotectable Under Governing Law. ................- 7 -

    D. CHS's Products Are Not Substantially Similar to Protectable Elements of GW's Alleged Works. ..................................................- 8 -

        1. Unprotectable Elements Should be Filtered Out. ..................................- 9 -

            a. Copyright Does Not Protect Simple Geometric Shapes, Letters, or Roman Numerals. ....................................- 10 -

            b. Copyright Does Not Protect Simple Combinations of Two Unprotectable Elements.....................................- 11 -

            c. Copyright Does Not Protect Mechanical and Utilitarian Elements of GW's Works. .........................................- 12 -

            d. Copyright Does Not Protect Elements of Works Derived from Nature, the Public Domain, or Third Party Works...........- 12 -

            e. Copyright Does Not Protect Ideas. ...........................- 14 -

            f. Copyright Does Not Protect the Names and Titles of Works. .....................................................................- 15 -

        2. CHS's Products Are Not Substantially Similar to Protectable Elements of GW's Alleged Works ......................................- 16 -

    E. CHS's Website Does Not Infringe GW's Alleged Works................- 16 -

**IV.  CHS IS ENTITLED TO SUMMARY JUDGMENT ON GW'S TRADEMARK CLAIMS**..................................................................................................- 17 -

A.  GW Has Now Abandoned Its Claims for 29 of Its Alleged Marks. .................- 17 -

B.  GW Cannot Establish U.S. Rights in Its Marks................................................- 17 -

    1.  GW Provided No Evidence Of Use of The Marks in the U.S. .............- 18 -

    2.  GW Has Failed to Adequately Identify Its Alleged Design Marks. ...................................................................................................- 19 -

    3.  GW's Book Titles and Excerpts Are Not Trademarks. ........................- 20 -

C.  CHS Has Not Used Many of The Alleged Marks..............................................- 21 -

D.  GW Cannot Show Infringement of Any Mark. .................................................- 21 -

    1.  CHS's Use of GW's Alleged Marks Is Nominative Fair Use. .............- 21 -

    2.  No Likelihood of Confusion ................................................................- 22 -

        a.  There Is No Evidence of Actual Confusion.............................- 23 -

        b.  There Is No Evidence of Intent to Palm Off. ...........................- 24 -

        c.  Customers Are Likely to Exercise a High Degree of Care.........................................................................................- 24 -

        d.  GW's Alleged Marks are Weak...............................................- 24 -

        e.  Similarity of Marks/Products/Concurrent Use........................- 25 -

E.  GW's Federal And State Dilution Claims Also Fail..........................................- 25 -

**V.  CONCLUSION** ...........................................................................................- 25 -

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AHP Subsidiary Holding Co v. Stuart Hale Co.,*
   1 F.3d 611 (7th Cir. 1993) ...................................................................................23

*Alassani v. Walter,*
   No. 10-4491, 2011 WL 135018 (E.D. Pa. Jan. 14 2011)........................................4

*Alberto-Culver Co. v. Andrea Dumon, Inc.,*
   466 F.2d 705 (7th Cir. 1972) ......................................................................... passim

*Albiero v. City of Kankakee,*
   246 F.3d 927 (7th Cir. 2001) ...........................................................................6, 18

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)...............................................................................................4

*Baby Buddies, Inc. v. Toys "R" Us, Inc.,*
   611 F.3d 1308 (11th Cir. 2010) .............................................................................9

*Barbecue Marx, Inc. v. 551 Ogden, Inc.,*
   235 F.3d 1041 (7th Cir. 2000) .......................................................................22, 24

*Bobak Sausage Co. v. A & J Seven Bridges, Inc.,*
   805 F. Supp. 2d 503 (N.D. Ill. 2011) .........................................................23, 24, 25

*Bryant v. Gordon,*
   483 F. Supp. 2d 605 (N.D. Ill. 2007) ...................................................................8, 9

*Cambridge Univ. Press v. Becker,*
   No. 8-cv-1425, 2012 WL 1835696 (N.D. Ga. May 11, 2012)................................6

*Castle Rock Ent. v. Carol Pub. Group, Inc.,*
   150 F.3d 132, 137 (2d Cir. 1998).........................................................................17

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)...............................................................................................4

*Central Mfg., Inc. v. Brett,*
   492 F.3d 876, 881-83 (7th Cir. 2007) ...............................................17, 18, 19, 20

*Durham Indus., Inc. v. Tomy Corp.,*
   630 F.2d 905 (2d Cir. 1980)..............................................................5, 8, 12, 15

*Echo Travel, Inc. v. Travel Assocs., Inc.,*
   870 F.2d 1264 (7th Cir. 1989) .............................................................................21

*Eltra Corp. v. Ringer,*
   579 F. 2d 294 (4th Cir. 1978) ...............................................................................11

*Eva's Bridal Ltd. v. Halanick Enters., Inc.*,
   No. 07 C 1668, 2010 WL 2035720 (N.D. Ill. 2010)..............................................18

*FASA Corp. v. Playmates Toys, Inc.*,
   912 F. Supp. 1124 (N.D. Ill. 1996), *vacated in part on other grounds*, 108 F.3d 140
   (7th Cir. 1997) ("FASA II")...................................................................8, 12, 15

*FASA Corp. v. Playmates Toys, Inc.*,
   869 F. Supp. 1334 (N.D. Ill. 1994) ("FASA I") ...................................................15

*Feist Publ'ns., Inc. v. Rural Television Serv. Co.*,
   499 U.S. 340 (1991)..............................................................................5, 13, 14

*Francorp, Inc. v. Siebert*,
   210 F. Supp. 2d 961 (N.D. Ill. 2001) ...............................................................9, 10

*Gentieu v. Tony Stone Images/Chicago, Inc.*,
   255 F. Supp. 2d 838 (N.D. Ill. 2003) ...........................................................4, 9, 13

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
   471 U.S. 539 (1985)................................................................................13, 14

*Ideal Toy Corp. v. Kenner Products Div. of General Mills Fun Group, Inc.*,
   443 F. Supp. 291 (D.C.N.Y. 1977) .................................................................15, 16

*In re National Council Books, Inc.*,
   121 U.S.P.Q. 198 (TTAB 1959) ........................................................................20

*Incredible Techs. v. Virtual Techs.*,
   400 F.3d 1007 (7th Cir. 2005) .............................................................................8

*James Burrough Ltd. v. Sign of Beefeater, Inc.*,
   540 F. 2d 266 (7th Cir. 1976) ..........................................................................25

*Johnson v. Cypress Hill*,
   619 F. Supp. 2d 537 (N.D. Ill. 2008) ....................................................................5

*Kelley v. Chicago Park Dist.*,
   635 F.3d 290 (7th Cir. 2011) .............................................................................10

*L. Batlin & Son, Inc. v. Snyder*,
   536 F. 2d 486 (2nd Cir. 1976)...........................................................................13

*Lifetime Homes, Inc. v. Walker Homes, Inc.*,
   485 F. Supp. 2d 1314 (M.D. Fla. 2007)..................................................................9

*Lucasfilm Limited and Others v. Ainsworth and another*, [2011] UKSC 39 (UK Supreme
Ct. 2011) ...........................................................................................................................7

*Lucasfilm Ltd. v. Ainsworth*, [2010] F.S.R. 10, ¶ 82 (Ct. Appeal 2010).....................................7, 8

*Mattel, Inc. v. Azrak-Hamway Intern., Inc.*,
724 F. 2d 357 (2nd Cir. 1983)............................................................................................15

*Mattel, Inc. v. Goldberger Doll Mfg. Co.*,
365 F.3d 133 (2nd Cir. 2004)..............................................................................................14

*Merriam-Webster, Inc. v. Random House, Inc.*,
35 F.3d 65 (2d Cir. 1994) ...................................................................................................24

*New Kids on the Block v. News Am. Publ'g, Inc.*,
971 F.2d 302 (9th Cir. 1992) .........................................................................................21, 22

*Ohio Art Co. v. Lewis Galoob Toys, Inc.*,
799 F. Supp. 2d 870 (N.D. Ill. 1992) .................................................................................23

*Packman v. Chicago Tribune Co.*,
267 F.3d 628 (7th Cir. 2001) .........................................................................................22, 23

*Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.*,
80 F. Supp. 2d 815 (N.D. Ill. 1999) ...............................................................................23, 24

*Platinum Home Mortg. Corp. v. Platinum Fin. Group*,
149 F.3d 722 (7th Cir. 1998) .........................................................................................20, 21

*Psihoyos v. The National Geographic Society*,
409 F. Supp. 2d 268 (S.D.N.Y. 2005).................................................................................13

*Rudnicki v. WPNA 1490 AM*,
No. 04 C 5719, 2009 WL 4800030 (N.D. Ill. Dec. 10, 2009) (Pallmeyer, J.)..........................7

*Saregama India Ltd. v. Mosley*,
635 F.3d 1284 (11th Cir. 2011) .............................................................................................5

*Satava v. Lowry*,
323 F.3d 805 (9th Cir. 2003) ...............................................................................................11

*Spex, Inc. v. Joy of Spex, Inc.*,
847 F. Supp. 567 (N.D. Ill. 1994) ...................................................................................23, 25

*Sugar Busters LLC v. Brennan*,
177 F.3d 258 (5th Cir. 1999) .........................................................................................20, 21

*Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*,
No. 06-c-950, 2007 WL 118527 (N.D. Ill. Jan. 4, 2007) (Kennelly, J.).................................24

*Ty, Inc. v. Publications Intern., Ltd.*,
No. 99 CC 5565, 2005 WL 464688 (N.D. Ill. Feb. 25, 2005) ..........................................21, 22

*Wildlife Express Corp. v. Carol Wright Sales, Inc.*,
18 F.3d 502, 510 (7th Cir. 1994) .................................................................................8, 13

*Williams Elecs., Inc., v. Bally Mfg. Corp.*,
568 F. Supp. 1274 (N.D. Ill. 1983) .........................................................................12


**STATUTES**

37 C.F.R. § 202.1 .........................................................................................................11

37 C.F.R. § 202.1(a) .....................................................................................................15

765 ILCS 1036/65 .........................................................................................................25

15 U.S.C. 1125(c) .........................................................................................................25

15 U.S.C. § 1114(1)(a) .................................................................................................21

15 U.S.C. § 1125(a) .....................................................................................................24

15 U.S.C. § 1125(a)(1) .................................................................................................21

15 U.S.C. § 1125(c)(4)(a) .............................................................................................25

15 U.S.C. § 1127 .....................................................................................................19, 21

17 U.S.C. § 101 .............................................................................................................12

17 U.S.C. § 102(b) .......................................................................................................14

17 U.S.C. § 410(c) .........................................................................................................5

Fed. R. Civ. P. 56 .........................................................................................................4

Fed. R. Civ. P. 56(e) .....................................................................................................4

FRE 702(b) ....................................................................................................................7

Lanham Act 1125(a) .....................................................................................................22

UK Copyright, Designs, and Patents Act 1988 § 1 .......................................................8

UK Copyright, Designs, and Patents Act 1988 § 11 .....................................................5

UK Copyright, Designs, and Patents Act 1988 § 11(2) .................................................6

iv

UK Copyright, Designs, and Patents Act 1988 § 4 ................................................................. 8

UK Copyright, Designs, and Patents Act 1988 § 90(3) ........................................................ 6

**OTHER AUTHORITIES**

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Compettion § 19:118 (4th Ed.) ................................................................................................................ 19

J. Thomas McCarthy, McCarthy on Trademarks and Unfair Compettion § 23:11.50 (4th Ed.) ................................................................................................................ 22

Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[B][2][b] ........................ 13

Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 13.03[D] at 13-92 ............. 9, 17

Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 20.2 (1975) ........................... 13

U.S. Copyright Office, Compendium II: Copyright Office Practices § 503.02(a)-(b) (1984) ................................................................................................................ 10, 11, 19

## I.      INTRODUCTION

Plaintiff Games Workshop Ltd. ("GW") is an international, publicly traded company headquartered in the United Kingdom. It manufactures and sells fantasy and sci-fi "toy soldiers"—miniature figures and accessories used to play tabletop war games. Defendant Chapterhouse Studios ("CHS") is a small business operated out of its founder's home in Texas. It makes products others can use to enhance their playing experience with GW games and those of other companies using the standard 28mm toy soldiers used to play miniature war games.

In this case, GW made a blanket allegation that every single one of CHS's more than 100 products infringed GW's undefined universe of copyrights, and that CHS's reference to GW products to describe compatibility (and use of generic terms such as "assault" and "grenade launcher") infringed GW's trademarks. After dragging CHS through more than a year and a half of extensive discovery on these claims, 11 days ago GW abruptly dropped its copyright claims against 32 CHS products, and has also now abandoned a number of its trademark claims.

The undisputed evidence shows that GW's remaining claims fail as well. Despite its size and sophistication, GW failed to come forward with basic documentation required to establish that it owns the rights it asserts. Despite repeated efforts by CHS and this Court to induce GW to provide discoverable documents related to such fundamental evidence as exemplars of the asserted works, ownership of the works, and use in the U.S. of its alleged trademarks, GW failed to supply such documents and the documents it has provided are too little, too late.

Even putting aside these failures on threshold issues, GW's claims of infringement do not pass muster. Its initial pleadings were broad stroke and overreaching because it never expected to have to litigate this case. Under scrutiny, its infringement claims amount to nothing more than a claim that CHS's products are "inspired by" GW's products. But inspiration is not infringement. To argue otherwise undermines a fundamental purpose of copyright law: to provide creators the freedom to build upon the ideas of others. CHS is entitled to summary judgment.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Parties

Plaintiff GW is an international UK-based company in the business of tabletop fantasy games. (SUF 1, 10.) It produces miniature toy soldiers related to its Warhammer 40,000 war game, and rule books and accessories for it and other games. *Id.* Many GW miniatures conform to the standard 28mm scale. (SUF 11.) GW worked with freelance artists and model-makers to create some of the content at issue in this case. (SUF 12.)

Defendant CHS is a small company located in Grapevine, Texas that makes products for fantasy and sci-fi war games. (SUF 5.) It was formed by a long time enthusiast of GW's Warhammer 40,000 and other tabletop war games. *Id.* Most of CHS's products are accessories (or "bits") that players can use to customize the toy soldiers they use to play tabletop war games—such as toy armor shoulder pads; shields; weapons; or alternative miniature heads. (SUF 6.) To ensure compatibility with a wide range of miniature figures, CHS's bits conform to the standard 28mm scale. (SUF 7.) CHS also makes custom-decorated spare parts, such as functional replacement doors with fanciful decorations, that fit various model vehicles sold by GW. (SUF 8.) CHS's products are cast from pewter or gray resin, and are all sold and shipped unpainted, so that players may paint the products themselves. (SUF 9.) Of course, in order to use CHS's "bits" in a game, a player must own one or more miniatures to attach them to. (SUF 6.)

There were limited sales of CHS products on eBay beginning around June 2008, and in April 2009 CHS launched its website. (SUF 13.) CHS's website has always featured a prominent notice disclaiming any affiliation with GW on every page. (SUF 14.) Although GW and CHS have co-existed for more than four years now, there is no evidence that anyone has ever been confused about the relationship between the two companies. (SUF 15-17, 72-75.)

**B.     Procedural Background**

GW filed this suit in December 2010, alleging that each of CHS's 106 products infringed the copyright in an indeterminate number of unspecified GW works; that CHS infringed more than 60 of GW's registered and unregistered trademarks; that certain of its marks were famous and likely to be diluted by CHS references to them; and parallel state claims. (Compl., Dkt. 1.) GW failed to allege that any CHS product infringed a particular GW work or mark, or to specify

the nature of alleged infringements. Rather, GW alleged broadly that CHS's "products [were] derived from, inspired by, and copied from Games Workshop's copyrighted works. . . ." *Id.* ¶ 32.

CHS moved to dismiss or for a more definite statement (Dkt. 24), and the Court allowed GW to supplement its claims. (Dkt. 106.) GW filed its First Amended Complaint (Dkt. 32) on March 21, 2010, again failing to specify the allegedly infringed works. CHS propounded early interrogatories seeking the basis for GW's claims and identification of the specific works allegedly infringed. (Kearney Decl. ¶2-3 Exs. 1-2.) In response, GW provided a chart (the "Original Copyright Claim Chart") identifying the copyrights it claimed were infringed by each CHS product. (SUF 18-19.) When GW did not produce exemplars of its works as requested, CHS moved to compel, and the Court ordered them produced by July 29, 2011. (Dkts. 61, 69.) GW did not respond by then, and ultimately produced a few books or book excerpts, and certain screenshots from its website, but *no* miniature figures, despite identifying many miniatures as infringed. (SUF 20.) In November 2012, CHS again moved to compel, and the Court ordered GW to produce "the best available exemplar of the works in question." (Dkts. 121, 139, 171; Kearney Decl. ¶¶22-23.) In January 2012, GW filed a Second Amended Complaint ("SAC") and served a revised claim chart ("First Rev. Copyright Claim Chart"), adding 26 new CHS products and alleging infringement of additional GW works. (SUF 21-22.) On March 2, 2012, GW certified to the Court that its production was complete to the best of its knowledge, except for new requests. (Dkt. 187, SUF 23-24.) Fact discovery closed on March 15, 2012. (Dkt. 116.)

On August 3, 2012, months after fact discovery closed, and days before the dispositive motion deadline, GW served a revised claim chart ("Second Rev. Copyright Claim Chart"), dropping its copyright claims for 32 products, supplementing its remaining claims with dozens of previously unidentified and unproduced GW works, and adding 15 new claims. (SUF 25.)

### C. GW's Claims

GW's Original Copyright Claim Chart identified 95 CHS products as infringing, and the corresponding GW works allegedly infringed. (SUF 19.) GW's First Rev. Copyright Claim Chart identified 121 CHS products as infringing. (SUF 22.) GW's Second Rev. Copyright Claim Chart

drops 32 claims and adds copyright claims for 15 additional products for a total of 104. (SUF 25.)[1] Exhibit 6 to the Kearney Declaration is a binder showing each accused CHS product, alongside the exemplars (if any) of GW's alleged infringed works (the "**Products Binder**.")[2].

The SAC alleged infringement of 83 marks. ¶¶56, 58. In discovery, GW claimed infringement of 110 marks, but now has abandoned 12 claims. (SUF 52-53, 59.)

## III.   CHS IS ENTITLED TO SUMMARY JUDGMENT ON GW'S COPYRIGHT CLAIMS

Summary judgment is appropriate where the pleadings and evidence presented, viewed in a light favorable to the non-moving party, show no genuine issue of any material facts, such that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is "the appropriate route [in a copyright case] where the court 'concludes either that any similarity between the works concerns only noncopyrightable elements or that no reasonable jury could find the works substantially similar.'" *Gentieu v. Tony Stone Images/Chicago, Inc.*, 255 F. Supp. 2d 838, 849 (N.D. Ill. 2003) (internal citations omitted). The burden of proof lies first on the moving party to "show that there is no issue of material fact in dispute." *Id.* The burden then shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). It must provide enough evidence for the court to determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.* at 252.

### A.   GW Has Now Abandoned Its Copyright Claims For 32 CHS Products.

On Aug. 3, 2012, GW expressly abandoned its copyright claims for 32 CHS products.[3] (SUF 26-27.) GW cannot pursue claims it has withdrawn and CHS is entitled to summary judgment. *See Alassani v. Walter*, No. 10-4491, 2011 WL 135018, *11 (E.D. Pa. Jan. 14 2011).

---

[1] The Second Rev. Copyright Claim Chart lists 143 entries, but drops copyright claims for 32, two entries are blank, and five new entries do not assert copyright claims. Kearney Decl. ¶9.

[2] For ease of reference, this Motion and the Products Binder identifies CHS products by their entry number in GW's Second Rev. Copyright Claim Chart, attached to the Kearney Decl. as Ex. 5.

[3] **Nos. 8, 15, 16, 25, 26, 28-30, 32, 38-42, 44, 70, 71, 81, 84-86, 88, 89, 91-93, 96, 107, 109, 115-16, 122.**

**B.      GW Cannot Meet Its Burden To Show Ownership of 15 Alleged Works.**

A copyright plaintiff bears the burden of proving that it owns the copyrights it alleges, as part of its *prima facie* case. *Feist Publ'ns., Inc. v. Rural Television Serv. Co.*, 499 U.S. 340, 362 (1991). GW cannot meet its burden for at least 15 of its alleged works, because it cannot show that the works were created by its employees, and it has no copyright assignments.

As GW concedes, (SUF 33), "[i]nitial ownership of a copyrighted work is determined by the laws in the work's country of origin." *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011) (internal citations omitted). While registering a copyright with the U.S. Copyright Office within five years of publication creates a presumption that the copyright is valid, a plaintiff lacking a valid, timely registration "has the burden of proving the validity of its copyright." *Johnson v. Cypress Hill*, 619 F. Supp. 2d 537, 542 (N.D. Ill. 2008). GW concedes it does not have timely registrations for any of the works at issue (SUF 29-30), so is not entitled to a presumption of ownership under 17 U.S.C. § 410(c). GW claims a single copyright registration in this case, for a catalog (the "Catalog"), but GW does not claim CHS's products infringe the Catalog. *Id.* And, although GW alleges the Catalog "contain[s] many of the individual works at issue herein" (SAC ¶ 16), GW never identified *which* works the Catalog contained; nor is there any record evidence that the works included in the catalog were created within five years of registration. (SUF 31.) Moreover, GW did not produce the Catalog until after the close of fact discovery. (SUF 32). Finally, even if GW's sole registration created a presumption that GW also owns a valid copyright for all works included in the Catalog (it does not), it is rebuttable. *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1980).

The UK Copyright, Designs, and Patents Act 1988 ("CDPA"), which GW, a UK company, concedes determines ownership of its alleged works,[4] (SUF 33), provides a clear baseline rule: the author of a UK work is the presumptive owner of copyright. CDPA, §11; Bently Report, ¶¶52-57.[5] Two narrow statutory exceptions are that (a) where a work was created

---

[4] For this motion, CHS assumes GW's works were created in the UK, but does not concede it.
[5] Cited portions of CDPA and Expert Report of Lionel Bently are attached as Exs. 9-10 to Kearney Decl.

by an employee, acting in the course and scope of his employment, the employer owns the copyright; and (b) an owner may assign his copyright to another by a signed writing. CDPA, §§11(2), 90(3). "[W]here a contributing author's contract is missing it cannot be presumed that a contract exists or that the missing contract would contain particular provisions . . . Therefore, **where the evidence does not include a contract with a contributing author, that will be fatal to Plaintiffs'** *prima facie* **case where the [work] at issue is the subject of the alleged infringement.**" *Cambridge Univ. Press v. Becker*, No. 8-cv-1425, 2012 WL 1835696 at *22 (N.D. Ga. May 11, 2012); *id*. at *130 (emphasis added) (holding plaintiff failed to make its *prima facie* case of copyright infringement where there was "no evidence that the . . . author [of a work first published outside the US] either agreed that [the work] was a work made for hire or that she transferred her rights to [plaintiff]").

For nine authors, who among them created 15 of GW's alleged works, GW has provided no assignments, no employment agreements, no evidence that those individuals were ever its employees during any relevant times, and was unable to provide the employment dates for these individuals with the exception of Smith who they concede was not an employee at relevant times. (SUF 34.) GW cannot establish ownership of the following 15 alleged works:

- GW has no evidence that the following authors were ever GW employees: Gary Chalk (same work allegedly infringed by **Nos. 99, 100**); Wayne England (**Nos. 4, 12, 69**); Des Hanley (**No. 116**); Clint Langley (**No. 17**); Mike McVey (**No. 108**); Bob Naismith (**No. 82**); Adrian Wild (**No. 109**). (SUF 35.)
- GW concedes that Adrian Smith (**Nos. 23, 45**) was not its employee during the time he created the alleged works. (SUF 36.)
- GW has no evidence that Simon Egan (**Nos. 25, 32 [two works], 82**) was its employee during the time he created the alleged works. (SUF 37.)

GW's mere allegations are not evidence to the contrary, for such "conclusory statements, unsupported by the evidence of record, are insufficient to avoid summary judgment." *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001).[6]

---

[6] In addition to being inadequate evidence as a matter of law, GW's allegations of ownership are inconsistent. It initially asserted that *all* works at issue were created by employees; then submitted a sworn declaration from its in-house counsel that just three of the works at issue were created by non-

In light of these issues, GW commissioned English solicitor Michael Bloch to opine on English law governing ownership of its copyrights. He opines generally that "*assuming*" GW's alleged facts are proven "*some* of the independent contractors/freelancers in this case can be treated as employees", and that in his opinion, the circumstances of this case are consistent with an "equitable assignment" to GW. Bloch Report ¶ 31 (d) (1), (3) (emphasis added).[7] The Bloch Report is simply not "based on sufficient facts or data" as required under FRE 702(b). As CHS's expert Professor Bently of the University of Cambridge notes, Bloch's broad generalizations about ownership are not supported by UK law; rather, the Court must "conduct an analysis of each and every piece of subject matter in which the Plaintiff claims protection in order to determine whether each one is protected under UK law." Bently Report, ¶16(a). As GW's own expert makes clear, GW cannot prove facts sufficient to make such a showing. And GW refused to provide contact information for all but two of these individuals so CHS could not contact them. (SUF 39.) Summary judgment of non-infringement is appropriate as to these fifteen works.

### C. GW's Miniature Figures Are Unprotectable Under Governing Law.

GW alleges infringement of many miniature toy soldiers, model vehicles, and assorted toy accessories. (SUF 40.) But UK copyright does not extend protection to such "mass produced . . . toys." Bently Report, ¶¶ 22-29, 38 ("a toy miniature of a fictional character is unlikely to be protected by [UK] copyright as a sculpture."); *Lucasfilm Ltd. v. Ainsworth*, [2010] F.S.R. 10, ¶ 82 (Ct. Appeal 2010); *aff'd*, *Lucasfilm Limited and Others v. Ainsworth and another*, [2011] UKSC 39 (UK Supreme Ct. 2011).[8] Where there is no copyright to own, GW cannot satisfy its burden with respect to its *prima facie* case of infringement.

As set forth in the Section above, copyright ownership is determined by the laws of the work's country of origin. *Rudnicki v. WPNA 1490 AM*, No. 04 C 5719, 2009 WL 4800030, at *7 (N.D. Ill. Dec. 10, 2009) (Pallmeyer, J.) ("the law of the [Berne Convention] signatory country

---

employees; and later acknowledged that at least 12 works were, without identifying which ones. (SUF 38.) GW's bald claims as to the employment status of its alleged authors are unreliable.
[7] The Bloch Report is attached to the Kearney Decl. at ¶25, Ex. 8.
[8] A copy of the *Lucasfilm* decision is attached as Exhibit 11 to the Kearney Decl. at ¶ 28.

with the closest relationship to the international work at issue governs determination of copyright ownership.") Under UK law, copyright subsists in GW's miniature figures only to the extent they are "sculptures" or "works of artistic craftsmanship" under the meaning of the CDPA. CDPA §§1, 4. But GW's toy soldiers are neither. As an English Court of Appeal recently held "in most modern cases toy soldiers, whether real or fictional, will not be works of art . . . They will be playthings registrable for their design qualities but nothing else . . . [T]he cases which will qualify for protection under the Copyright Act will be relatively rare." *Lucasfilm*, [2010] F.S.R. 10 at ¶ 82. *Lucasfilm* upheld on appeal a lower court's ruling that toy *Star Wars* Stormtroopers were not protectable under UK copyright law. Here, as in *Lucasfilm*, many of the works at issue "are mass produced plastic toys [that] are no more works of sculpture than the helmet and armour which they reproduce." *Id.* ¶ 83.[9] GW cannot prove it owns the copyrights in such works under UK law, and summary judgment of non-infringement is warranted for such products.

### D. CHS's Products Are Not Substantially Similar to Protectable Elements of GW's Alleged Works.

"Th[e] test [for substantial similarity] requires a side-by-side comparison of the works." *Bryant v. Gordon*, 483 F. Supp. 2d 605, 617 (N.D. Ill. 2007) (citing *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 506 n.1, 510 (7th Cir. 1994)); *see Durham Indus.*, 630 F.2d at 914 ("words are no substitute for a visit to the toy store"). However, "where, as here, the Court is comparing products that have both protectible and unprotectible elements, [it] must exclude comparison of the unprotectible elements from the application of the ordinary observer test." *FASA Corp. v. Playmates Toys, Inc.*, 912 F. Supp. 1124, 1147 (N.D. Ill. 1996), *vacated in part on other grounds*, 108 F.3d 140 (7th Cir.1997) ("FASA II").

GW must establish substantial similarity irrespective of any evidence that CHS had access to or copied its work. *Incredible Techs. v. Virtual Techs.*, 400 F.3d 1007, 1011 (7th Cir.

---

[9] GW concedes it is primarily a "toy manufacturer," and indeed refused to respond to CHS's discovery requests on that basis. Dkt. 83 at 10 ("[Games Workshop] has no duty to identify individual artists who were involved in creating any of the subject game pieces. No **toy manufacturer** does so, and Games Workshop never understood that to be part of Chapterhouse's discovery requests.") (emphasis added).

2005) (even if defendant "set out to copy" plaintiff's game, plaintiff must still show the copying resulted in substantial similarity); *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 708 (7th Cir. 1972) (same); *Lifetime Homes, Inc. v. Walker Homes, Inc.*, 485 F. Supp. 2d 1314, 1320, 1323 (M.D. Fla. 2007) (even where defendants intentionally copied plaintiff's design, no substantial similarity); *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1312 (11th Cir. 2010) (summary judgment even though defendant's contractor was given a copy of Plaintiff's product and asked to "please work on a similar design"); 4 Nimmer on Copyright, § 13.03[D] at 13-92 ("Proof of access . . . logically exerts no impact on copying as a legal matter; no matter how steeped in plaintiff's work defendant may have been, if the resulting product is non-actionable as a matter of law, then the absence of substantial similarity that must underlie every successful claim still dooms the infringement suit"); *id.* at 13-91 ("[T]here is nothing wrong in having access to one's competitor's products. Nor may a showing of substantial similarity ever be avoided") (footnotes omitted). For purposes of this motion, CHS does not contest access.

### 1. Unprotectable Elements Should be Filtered Out.

To prove copyright infringement, GW must show that CHS's products are substantially similar to *protectable* elements of GW's works when the works are compared side by side. *Bryant*, 483 F. Supp. 2d at 617. Because only *protected* expression is relevant to the determination of substantial similarity, *unprotectable* elements cannot form the basis for claims of copyright infringement. Thus "any comparison of [works] must be preceded by an analysis of the scope of [Plaintiff's] copyrights to identify what elements are included in [its] protected expression." *Gentieu*, 255 F. Supp. 2d at 848. "[The Court] must determine the extent of [plaintiff's] copyrights" by "begin[ning] with the allegedly aggrieved work in one hand and nothing in the other hand and ask[ing] 'Is it copyrightable? And if so, in what respect? To what extent?' Those limiting questions define whether a comparison need to be made at all and, if so, also defines the universe for such a comparison." *Francorp, Inc. v. Siebert*, 210 F. Supp. 2d 961, 965 (N.D. Ill. 2001) (internal quotations omitted).

GW asserts copyright for many unprotectable elements. Once the proper scope of its

copyrights is determined, CHS's products are not substantially similar to what remains.

### a. Copyright Does Not Protect Simple Geometric Shapes, Letters, or Roman Numerals.

Eleven of GW's claims concern only elements of GW works consisting of simple geometric shapes or common symbols over which no one may claim ownership. (SUF 41.) These elements are categorically unprotectable by copyright, and are in the public domain.

- **No. 48** – the only element in CHS's product that is similar to GW's alleged work is the public domain symbol of arrows crossed in an **X**. (SUF 42.)

- **No. 21, 22, 49, 53, 54, 55 and 97-100** – GW asserts that the only issue with these CHS shoulder pads is the "shape/design of the underlying shoulder pad." *See* SUF 25 (Second Rev. Copyright Claim Chart). Although GW claims that products 54 and 55 infringe certain "markings and symbols," these CHS products have no such design and the only element similar to GW's alleged works is the simple, common half-hemisphere shape of a traditional bandshell. (SUF 43.)

GW identifies no particular work that these shoulder pads infringe. *Id.* Although its claims chart states "large border around outer edge", not all of CHS's products have that and those that do have dissimilar borders. *Compare, e.g.*, CHS product images at **Product Binder**, **tabs. 49, 54, 55**. The other supposed unique "characteristics" identified by GW merely describe the objects in relation to a hypothetical toy soldier and are not characteristics of CHS's armor bits themselves. For example, because CHS's shoulder pads are symmetrically shaped, they will fit on either the left or the right of any given toy soldier figure.

- **No. 50** – the only element in CHS's product that is similar to GW's alleged work is the public domain symbol of chevron, i.e. an inverted **V**. (SUF 44.)

- **No. 56** – the only element in CHS's product that is similar to GW's alleged work is the public domain symbol of a "parking lot" arrow. (SUF 45.)

Simply put, "common geometric shapes cannot be copyrighted." *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 303 (7th Cir. 2011) (citing U.S. Copyright Office, Compendium II: Copyright Office Practices §503.02(a)-(b) (1984) ("Copyright Compendium II"). The U.S. Copyright Office refuses to base copyright registration on the very same simple and "standard ornamentation" at issue here, "**such as chevron stripes . . . a plain, ordinary cross . . . common**

geometric figures or shapes . . . a standard symbol such as an arrow or a five-pointed star
. . . .” Copyright Compendium II § 503.02(a)-(b)(emphasis added). Also not copyrightable are
simple, basic three-dimensional shapes, such as the shape of GW's "sci-fi shoulderpad," or other
"common geometric figures or shapes in three dimensional form, such as the cone, cube, or
sphere . . . the creative expression capable of supporting copyright must consist of something
more than the mere bringing together of two or three standard forms or shapes with minor linear
or spatial variations." *Id.* Typefaces, such as Roman numerals, also cannot be copyrighted. *Eltra
Corp. v. Ringer,* 579 F. 2d 294, 298 (4th Cir. 1978) ("typeface is an industrial design in which
the design cannot exist independently and separately as a work of art"); 37 C.F.R. § 202.1
("works not subject to copyright . . . [include] familiar symbols or designs; mere variations of
typographic ornamentation . . . [and] [t]ypeface as typeface.").

When these unprotectable elements of GW's works are removed from consideration, no
similarity remains and CHS is entitled to summary judgment as to these eleven products.

> **b.** **Copyright Does Not Protect Simple Combinations of Two
> Unprotectable Elements.**

13 additional claims—**nos. 12, 13, 33, 46, 47, 51, 52, and 57-62**—are for CHS products
that consist merely of combinations of two simple, unprotectable symbols, namely a chevron,
arrow, or X symbol, together with a Roman numeral, or sawblade and jewel. (SUF 46; **Products
Binder, tabs 46, 47, 51-52, 57-62**.) These simple combinations of unprotectable elements are
also unprotectable. "[A] combination of unprotectable elements is eligible for copyright
protection only if those elements are numerous enough and their selection and arrangement
original enough that their combination constitutes an original work of authorship." *Satava v.
Lowry*, 323 F.3d 805, 811 (9th Cir. 2003); Copyright Compendium II § 503.02(a)-(b)
("[R]egistration cannot be based upon . . . a simple combination of a few standard symbols. . .
[or] the mere bringing together of two or three standard forms or shapes with minor linear or
spatial variations."). When the unprotectable elements of GW's works comprising simple
combinations of at most two public domain elements are removed from consideration, nothing

remains, and GW cannot show substantial similarity.

### c. Copyright Does Not Protect Mechanical and Utilitarian Elements of GW's Works.

GW claims that many of CHS's products infringe its copyrights simply because they are designed to be used with or are "of a size and scale to fit with" various GW products. (SUF 47.) But size, scale, and fit are mechanical and utilitarian features of works and are unprotectable by copyright. The size and scale of *all* CHS's (and GW's) products—such as armor shoulderpads, shields, weapons, vehicles, and replacement heads—is dictated by the utilitarian need to conform to the standard 28mm scale for gaming miniatures. *See* SUF 7, 11. The sizes and shapes of CHS's shoulderpads, and of each of CHS's 19 vehicle and creature "conversion kits"—**Nos. 32-33, 35-36, 37, 63, 82, 87-90, 93-94, 103-106, 109, 114**—are dictated by the mechanical and utilitarian requirement that the add-on pieces must fit onto the base model. For instance, the shape of a replacement door for a model vehicle is dictated by the requirement that the door must fit onto the model properly, and must open and close.

Insofar as "the shapes of . . . toys and their dimensions and configurations . . . have been dictated primarily by utilitarian considerations," they are not protected by copyright. *Durham Indus.*, 630 F.2d at 915; 17 U.S.C. § 101 (Copyright Act protects pictorial, graphic, and sculptural works only "insofar as their form but not their mechanical or utilitarian aspects."); FASA II, 912 F. Supp. at 1167-68 ("[T]he 'mechanical' or 'utilitarian' features [of plaintiff's works] are not protectible."); *Williams Elecs., Inc., v. Bally Mfg. Corp.*, 568 F. Supp. 1274, 1280 (N.D. Ill. 1983). Copyright does not apply to the functional, mechanical, and utilitarian shapes and dimensions of GW's works and CHS's products, and those features should be excluded.

### d. Copyright Does Not Protect Elements of Works Derived from Nature, the Public Domain, or Third Party Works.

GW's alleged works borrow heavily from the public domain, third-party works, and things in nature. GW is entitled to protection only for the additions or changes to such material, if any, original to GW. Its alleged works make heavy use of elements such as depictions of birds and other animals (e.g., **nos. 4, 5, 6, 7, 83, 101, 102, 104**), dragon symbols (e.g. **nos. 63-65,** ),

skulls (e.g. **nos. 3, 19, 20, 105**), and arrows or chevrons (**nos. 48, 50, 56**). As further detailed in the Brewster expert report, these depictions borrow heavily from the public domain.[10]

A plaintiff cannot claim copyright protection for elements of its works that are in the public domain. *L. Batlin & Son, Inc. v. Snyder*, 536 F. 2d 486, 491 (2nd Cir. 1976) (citing Nimmer § 20.2 (1975); *Alberto-Culver*, 466 F.2d at 708 ("a mere attempt to copy plaintiff's conception did not constitute 'copying' if . . . [there was] merely duplication of concepts in the public domain."). Even direct copying of elements that are not original is not copyright infringement: "[c]opyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original —for example . . . materials in the public domain. . . ." *Feist*, 499 U.S. at 350 (quoting *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547-48 (1985)). And, "to the extent a [work] captures the characteristics of an object as it occurs in nature, these characteristics are not protectible." *Psihoyos v. The National Geographic Society,* 409 F. Supp. 2d 268, 275 (S.D.N.Y. 2005) (citing Nimmer § 13.03[B][2][b]); *Genteiu*, 255 F. Supp. 2d at 850 ("When reproduction of a lifelike object is at issue, a copyright holder must . . . prove substantial similarity to those few aspects of the work that are expression not *required* by the idea") (quoting *Wildlife Exp.*, 18 F.3d at 508 )(emphasis in original). "Even if a work does not occur in nature—a **dragon**, for instance—there is no liability if the only similarity between the two works is that they each portray the same item, but in a different form." Nimmer § 13.03[B][2] (emphasis added).

GW's alleged works are replete with common items and "lifelike object[s]" from the public domain and the real world, such as animals (real and mythical); skulls; historical and fantasy depictions of types of armor; traditional weapons; and other items. Kearney Decl. ¶¶30-32, Exs. 13, 14. GW's copyrights extend only to the original expression it contributed to these designs, if any. The fact that CHS depicts the same type of object is not copyright infringement, and GW cannot claim protection nor limit CHS's use of such elements.

---

[10] Kearney Decl. ¶ 32 Exs. 14 (side-by-side comparisons with public domain); *id.* ¶¶ 29-31 Exs. 12-13 (Expert Report of William Brewster; Supplement to Report of William Brewster).

### e.    Copyright Does Not Protect Ideas.

"The most fundamental axiom of copyright law is that '[n]o author may copyright his ideas.'" *Feist*, 499 U.S. at 344-45 (citation and quotation omitted). But most or all of GW's copyright claims are based on alleged similarities of unprotectable, abstract ideas, devoid of reference to any particularized expression, including among many examples the following:[11]

- **CHS Product No. 95**. GW's 30(b)(6) designee on copyright infringement conceded that "[t]his thing is a copy of our idea. That is the best I can come up with." (SUF 48.)

- **CHS Product No. 3**. ("Their iconography heavily features skulls."), **No. 105** ("Games Workshop sells products decorated with piles of skulls.")

- **CHS Product No. 70**. ("The Chapter is strongly associated with technology.")

- **CHS Product No. 104**. ("The Space Wolves Chapter decorates its vehicles with wolf's heads shown face on.")

- **CHS Products Nos. 4-5, 12-13, 33, 101-102**. After filtering out unprotectable elements, the only similarity is the idea of combining a common or public domain symbol with a blood drop. Products Binder, **tabs 4-5, 12-13, 33, 101-102**;

- **CHS Products Nos. 25-32, 63-67, 103**. The only similarity is the idea of depicting a mythical dragon and/or scales. Products Binder, **tabs 25-32, 63-67, 103**;

- **CHS Products 37-43**. The only similarity is the idea of depicting slimy-looking aliens and their "bio-mechanical" weaponry. Products Binder, **tabs 37-43**;

- **CHS Product 120**. The only similarity is the idea of depicting a hybrid human-scorpion figure. Products Binder, **tab 120**.

"In no case does copyright protection for an original work of authorship extend to any idea . . . regardless of the form in which it is . . . illustrated[] or embodied in such work." 17 U.S.C. § 102(b). Rather, "copyright . . . encourages others to build freely upon the ideas . . . conveyed by a work." *Feist*, 499 U.S. at 350-41 (citing *Harper & Row*, 471 U.S. at 556-57); *Alberto-Culver*, 466 F.2d at 708 (holding that competitor's "intent to convey the same general image and thought" was not copyright infringement). Even very specific ideas are not protected by copyright. *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 136 (2nd Cir. 2004) (holding plaintiff's idea of "a doll visage with an upturned nose, bow lips, and widely spaced eyes [could] not prevent a competitor from making dolls with upturned noses, bow lips, and

---

[11] Quotations in these bullets are to Second Rev. Copyright Claim Chart (SUF 25) unless indicated.

widely spaced eyes," even if the competitor took the idea from plaintiff's products).

*FASA Corp. v. Playmates Toys, Inc.*, 869 F. Supp. 1334 (N.D. Ill. 1994) ("FASA I"), a case similar to this one, held that plaintiffs could not claim protection for "general ideas and concepts [such as] (1) a futuristic, interstellar, battle dominated universe; (2) robot-like battle machines; (3) genetically manipulated warriors; and, (4) direct communication between machine and human brain." *Id.* at 1351 (footnote omitted). The Court noted the considerable body of work related to "concepts of interstellar, battle dominated universes, drivable giant robots, and genetically manipulated warriors." *Id.* at n.32; *compare* SAC (Dkt. 147) at ¶ 11 (describing "a fantasy universe . . . in which gothic armies of the universe do battle and in which the foremost defenders of humanity are . . . genetically engineered super-warriors armed with the most inventive weapons imaginable, supported by vast armies of the Emperor . . . ."); *see also Ideal Toy Corp. v. Kenner Products Div. of General Mills Fun Group, Inc.*, 443 F. Supp. 291 (D.C.N.Y. 1977) (even though toy company "sought to make use of the themes embodied in" *Star Wars* and its licensed products, "[a] theme is not protectable . . . [because] it is only the idea which stands behind a protectible expression"). Inspiration is not infringement, and "a general impression of similarity is not sufficient to make out a case of infringement." *Durham Indus.*, 630 F.2d at 912; *FASA II*, 912 F. Supp. 1124 at 1171. The Second Circuit upheld a finding that defendant's line of 5½" scale figures was unlikely to infringe plaintiff's 5½" scale figures, even though defendant's toys were designed to be *compatible with*, and directly compete with, plaintiff's, and even though defendant had given its toy sculptor one of plaintiff's dolls "to show him what kind of doll it wanted. . . ." *Mattel, Inc. v. Azrak-Hamway Intern., Inc.*, 724 F. 2d 357, 359-61 (2nd Cir. 1983). GW's abstract ideas are not protected by copyright, and should not be considered in assessing its copyright claims.

### f.     Copyright Does Not Protect the Names and Titles of Works.

"Words and short phrases such as names, titles, and slogans" are also not subject to copyright. 37 C.F.R. § 202.1(a); *see Alberto-Culver Co.*, 466 F.2d at 710. GW identifies CHS

use of names and words as infringing its copyrights.[12]

Such claims fail both because (1) names and titles are not protectable by copyright law, and GW cannot claim copyright protection for the names of its products (such as "thunder hammer", or "storm shield") or imaginary armies (such as "Exorcists", or "Imperial Guard"); and (2) the names of GW's works are irrelevant to its copyright claims, because *no names appear on CHS's products*. There can be no question of substantial similarity of elements that are not part of the accused works. *See Ideal Toy Corp. v. Kenner Products Div. of General Mills Fun Group, Inc.*, 443 F. Supp. 291, 303 n.10 (D.C.N.Y. 1977) ("To extend the comparison beyond the characters themselves . . . or to consider the various promotional aspects of [allegedly infringing] toys . . . seems . . . inappropriate," and "any comparison will have to be made solely on the basis of physical appearance"). Where GW's copyright claims are based on purported use of names/descriptions that do not appear on CHS's products, they fail.

> **2.      CHS's Products Are Not Substantially Similar to Protectable Elements of GW's Alleged Works**

Once the unprotectable elements of GW's alleged works are excluded, a side-by-side comparison demonstrates that *none* of CHS's products (including the 15 new products GW identified as infringing on Aug. 3) is substantially similar to any protectable elements of GW's works. *See* **Products Binder**.

In addition, GW fails to alleged that *any* GW work is infringed by 4 of the 20 newly-identified CHS products in its Second Rev. Copyright Claim Chart (**nos. 118, 119, 129, and 143**), and CHS product **no. 110** has not yet been cast, and has never been sold or offered for sale. (SUF 50-51.) A work that does not yet exist cannot be substantially similar to anything.

> **E.      CHS's Website Does Not Infringe GW's Alleged Works.**

GW also advances the theory that CHS's website is itself an infringing work *irrespective*

---

[12] (SUF 49.) (E.g. "Tactical" (**no. 2**); Terminator" (**no. 5**); "Heresy" (**76**); "Power armour" (**no. 3**); **nos. 1, 31, 66** ("thunder hammer"); **no. 27** ("power fist"); **nos. 28-30, 81, 83-84, 86, 119** ("storm shield"); **nos. 2, 76-79, 87, 90, 93, 96-98, 118** ("heresy"); **3, 67** ("chaplain"); and numerous other examples. *Id.*

*of whether CHS's products infringe any GW copyrights.*[13] GW offers no support for the proposition that non-infringing works can somehow become infringing, if only there are enough of them. The sole case GW has cited, *Castle Rock Ent. v. Carol Pub. Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998), is inapposite. (Dkt. 117 at 2-3.) That court found that defendant's *de minimis* defense did not apply where each of 634 instances of alleged infringement was "based directly upon original, protectable expression." *Castle Rock* does not apply here; many of GW's alleged works are neither "original [nor] protectable"; for this motion CHS does not rely on a *de minimis* defense; and CHS's products do not infringe GW's alleged works. CHS is entitled to summary judgment that its website does not infringe GW's copyrights.

## IV. CHS IS ENTITLED TO SUMMARY JUDGMENT ON GW'S TRADEMARK CLAIMS

GW has claimed CHS infringed over 100 marks. (SUF 52-53.) It has now abandoned claims for 29. CHS is entitled to summary judgment on these and the remaining claims.

### A. GW Has Now Abandoned Its Claims for 29 of Its Alleged Marks.

GW alleged infringement of 83 marks. (SAC ¶¶ 56, 58.) In interrogatory responses, GW then claimed infringement of 110 marks, omitting 17 marks from its SAC, and adding 44 new marks. (SUF 52.) GW's 30(b)(6) witness confirmed these 110 marks are the only at issue ("Marks At Issue").[14] (SUF 53.) CHS is entitled to summary judgment on the 17 dropped marks.

GW's 30(b)(6) witness then abandoned 12 of the 110 Marks At Issue. (SUF 57.) For example, when asked whether GW was really claiming that the word "tactical" is a mark at issue, the witness testified "No." *Id.* CHS is entitled to summary judgment on these 12 alleged marks.

### B. GW Cannot Establish U.S. Rights in Its Marks

The Marks At Issue include 11 registered marks and 99 unregistered marks. (SUF 58.) GW cannot meet its burden to show U.S. rights for any of them because it failed to provide evidence of trademark use in the U.S. "An action for trademark infringement can only succeed

---

[13] Pl's Mot. to Compel or for Sanctions at 3 (Dkt. 117) ("even if . . . individual [CHS] products could . . . escape a finding of copyright infringement, the entire Chapterhouse website . . . is an infringement.")
[14] CHS does not concede that GW had adequately pleaded the 44 marks never alleged in its SAC.

if…the plaintiff owns the mark" and used the mark in commerce first. *Central Mfg., Inc. v. Brett*, 492 F.3d 876, 881-83 (7th Cir. 2007) (affirming summary judgment, attorney fees, and costs where plaintiff failed to establish *bona fide* use of registered trademark); *Eva's Bridal Ltd. v. Halanick Enters., Inc.*, No. 07 C 1668, 2010 WL 2035720, *3 (N.D. Ill. 2010) (same regarding unregistered marks). While a federal trademark registration provides *prima facie* evidence of ownership, GW must still provide evidence of senior and *bona fide* use in the U.S. *Central Mfg.*, 492 F.3d. at 882 (rejecting documents that did not "evidence[] any actual orders or sales the listed products."). "Conclusory statements [to the contrary], unsupported by the evidence of record, are insufficient to avoid summary judgment." *Albiero*, 246 F.3d at 933.

### 1.    GW Provided No Evidence Of Use of The Marks in the U.S.

GW cannot establish it sold product in U.S. commerce for any mark. Despite CHS discovery demands seeking evidence of use of GW's marks in commerce and dates of first use, GW provided only bare allegations of dates of first use in U.S. commerce for each alleged mark, but failed to specify the nature of the use for each mark or identify the Bates numbers for any corresponding documents. *See* SUF 52 (Rog. 18 Response); (SUF 54-56.) Kearney Decl. ¶83.

GW concedes that its U.S. retail stores do not carry its full range of products. (SUF 59.) When asked "[w]hat records does [GW] have that demonstrate that this product was actually sold in the US?", GW's 30(b)(6) witness answered "I really don't know." As "a global company…centralized…in the UK," "you would need to talk to somebody in the American business" about records that the "American sales business keeps…" (SUF 60-61.)

CHS served GW's U.S. business, Games Workshop Retail, with a document subpoena and deposed it. (SUF 16.) Its 30(b)(6) witness confirmed that its stores do not carry the full range of GW's products, and that it has no records to determine whether a particular product was actually sold in the U.S., and no records of dates or geographical locations of any product sales. (SUF 61.) Months before that deposition, in response to CHS's document subpoena, seeking among other things records for sales in the U.S., GW's counsel confirmed that "Games Workshop Retail has not been able to identify any responsive documents." (SUF 17.) At

deposition, its 30(b)(6) witness confirmed it produced no documents in response to the subpoena. *Id*. A day later, GW's counsel certified GW's production as complete. Kearney Decl. ¶77 Ex. 57.

GW did not produce any sales invoices or purchase orders for any sales in the U.S. (or Illinois) for any product. (SUF 62.) Instead, it produced 13 pages of unitemized sales data, not sales by product, mark, or date. Kearney Decl. ¶88. This is the very type of "conclusory" evidence that, as the Seventh Circuit affirmed, should be rejected when presented in opposition to summary judgment. *Central Mfg.*, 492 F.3d at 882 (affirming that plaintiffs' production of generalized, high-level sales data, price sheets, and advertising "failed completely to support their claim that they actually used the [mark]…."). Even records of "intra-company shipments…do not constitute *bona fide* shipments to satisfy" the use-in-commerce requirement. McCarthy on Trademarks § 19:118. Like the plaintiffs in *Central Mfg.*, GW failed "to produce even a single purchase order or invoice as proof" of "*the bona fide use* of [any] mark" "*in commerce*" in the U.S. *Central Mfg.,* 492 F.3d at 883 (emphasis in original) (citing 15 U.S.C. § 1127). Because GW failed to come forward with evidence required to establish U.S. rights in its alleged marks, CHS is entitled to summary judgment on GW's trademark claims.[15]

More than two months after the close of fact discovery, nearly three months after it certified its production as complete (and long after fact depositions concluded), GW produced several undecipherable spreadsheets, presumably sales sheets. Kearney Decl. ¶89.[16] Even if GW had timely produced this material, which it did not, the Court should provide it no evidentiary weight since "[t]here is no way for this Court [or CHS] to know that this alleged sales sheet bears any relation to reality and is not simply something Plaintiffs generated on a home computer for the purposes of this litigation." *Central Mfg.,* 492 F.3d at 882. GW should also not be permitted to ambush CHS with data it did not produce during discovery, and denied having.

### 2. GW Has Failed to Adequately Identify Its Alleged Design Marks.

36 of the Marks At Issues are icons. (SUF 63.) Only one—the Aquila Design, is

---

[15] This despite GW certifying on March 2, 2012 that it had completed its document production.

[16] GW has produced nearly half of its documents after the close of fact discovery, and months after certifying its production was complete, to try to improperly supplement the record. Kearney Decl. ¶90.

identified as a registered mark in the SAC. *Id*. GW failed to identify *the actual icons* for the 35 unregistered marks, and did not identify exemplars as part of its Rog 18 Response, which required GW to identify each mark at issue. (SUF 64.)  GW instead listed vague categories, such as "Eldar iconography/symbols (seer icons, etc.)" and "Tau – geometric groves." (SUF 63.) Even GW's 30(b)(6) witness was flummoxed: "I don't know what 'Tau Geometric Groves' is." (SUF 57, 63.) When asked to identify exemplars, he did not know whether GW even produced exemplars for all the Marks at Issue. (SUF 65.)  When asked to describe trademark uses, he described uses such as book titles or in book excerpts, which are not trademark uses (as discussed below)—and failed to identify any use for seven unregistered icons. (SUF 66-67.) Because GW failed to identify the 35 unregistered icons (and any use for seven of those icons), CHS is entitled to summary judgment of non-infringement on the 35 unregistered icons.

### 3.    GW's Book Titles and Excerpts Are Not Trademarks.

GW claims use of terms as book titles and references in books as trademark use, e.g. "Soul Drinker" and "grenade launcher." (SUF 66.) But unless a book title is also a mark for a *series* of books,  such use does not qualify as a trademark. *In re National Council Books, Inc.*, 121 U.S.P.Q. 198, 198 (TTAB 1959) ("a mere title of a book, however arbitrary it may be, cannot qualify as a trademark"). Moreover, while an identical title used for a series of books may achieve secondary meaning required for trademark protection, GW failed to produce *any* evidence of secondary meaning.[17] *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999) ("for plaintiff to prevail under § 43(a), it must demonstrate (1) that its title has secondary meaning, and (2) that defendants' title is likely to confuse or mislead consumers…").

- GW conducts minimal advertising in the U.S.,[18] and produced no studies about its

---

[17] Evidence for secondary meaning includes:  1) amount and manner of advertising, 2) sales volume, 3) length and manner of use, 4) consumer testimony, and 5) consumer surveys. *Platinum Home Mortg. Corp. v. Platinum Fin. Group*, 149 F.3d 722, 728-29 (7th Cir. 1998).

[18] Even if GW had produced evidence of advertising expenditures for specific marks, courts discount such evidence as "entirely circumstantial" because it "does not necessarily indicate that consumers associate a mark with a particular source, especially where the advertisements and promotions do not specifically emphasize the mark." *Id.* at 729.

advertising's success in attracting customers for *any* particular Mark At Issue.[19] (SUF 69.) The evidence instead shows that GW trivializes its advertising efforts. *Id.* ("Well, if you don't advertise, it doesn't cost you anything.");

- As discussed above, GW produced general sales data, not itemized sales information for each of the Marks At Issue. (SUF 62.); Kearney Decl. ¶¶87-88.

- GW failed to produce consumer surveys or testimonials, or expert reports, for any of the Marks At Issue. (SUF 69.) *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 728 (7th Cir. 1998) ("While not fatal to its request [for a finding of secondary meaning], the absence of [consumer surveys and testimonials] weighs against [plaintiff].") (affirming no secondary meaning).

Summary judgment is therefore appropriate for marks used only as book titles.

### C. CHS Has Not Used Many of The Alleged Marks.

GW also bears the burden of establishing that CHS used the alleged marks in commerce. 15 U.S.C. §§ 1114(1)(a), 1125(a)(1), and § 1127 (defining "use in commerce"). GW fails even to claim any use by CHS of 55 of the Marks At Issue (SUF 70), and CHS does not use another seven. (SUF 71.) CHS is entitled to summary judgment for those 62 marks.

### D. GW Cannot Show Infringement of Any Mark.

GW's trademark claims also fail under the doctrine of nominative fair use and because it cannot show likelihood of confusion.

### 1. CHS's Use of GW's Alleged Marks Is Nominative Fair Use.

Any reference by CHS to GW's alleged marks is nominative fair use: there is no infringement when a mark is used to truthfully identify plaintiff's goods. The crux of nominative fair use, as GW's counsel submits, is whether "the term at issue is used to tell the truth." Moskin, J., Frankenlaw: The Supreme Court's Fair and Balanced Look at Fair Use, 95 Trademark Rptr. 848, 867–868 (2005). To analyze nominative fair use, the Seventh Circuit applies the *New Kids* factors: 1) defendant's product is not reasonably identifiable without plaintiff's mark; 2) defendant uses no more of plaintiff's mark than is reasonably necessary; and 3) defendant does not use the mark in a manner likely to suggest sponsorship or endorsement of its product by the plaintiff. *See Ty, Inc. v. Publications Intern., Ltd.*, No. 99 CC 5565, 2005 WL 464688, *5-6

---

[19] *See Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1270 (7th Cir. 1989) ("it is the *effect* or *success* of the advertising, not the mere *fact* of advertising, that is the test of secondary meaning.")

(N.D. Ill. Feb. 25, 2005) (citing *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)); *World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 842-43 (N.D. Ill. 2002) (same). CHS's uses are fair because it refers to GW terms to tell the truth.

For example, CHS references GW terms on its home page to identify products that players may wish to use with those armies. Villacci Decl., ¶12, Ex. A. Similarly, on its product pages, CHS references GW products to explain that CHS products are compatible with, fit on, or can be used to decorate such products. [20] S*ee* McCarthy, § 23:11.50 (discussing that "confusion will usually be unlikely" where defendant "is using [plaintiff's marks] as trademarks identifying the true owner in order to convey the message of alleged product compatibility.").

Second, CHS uses no more of (alleged) marks than necessary to identify GW's products and does not use any specialized stylization or color to call them out. *Cf. Ty,* 2005 WL 464688 at *8 (denying summary judgment due to use of different stylized fonts for alleged trademark).

Third, CHS does not suggest sponsorship or endorsement by GW. It disclaims connection on its website. (SUF 14.) "In light of [a disclaimer, plaintiff] must respond with evidence that [defendant's] use of the mark suggested sponsorship or endorsement by [plaintiff]. *Ty,* 2005 WL 464688 at *10 (no issue of material fact where plaintiff failed to produce evidence).

## 2. No Likelihood of Confusion

Because CHS uses the alleged marks to reference GW's own products, there is no likelihood of confusion. McCarthy, §23:11.50. The courts weight seven factors to determine likelihood of confusion,[21] although "no single factor is dispositive." *Barbecue Marx, Inc. v. 551 Ogden, Inc.,* 235 F.3d 1041, 1043-44 (7th Cir. 2000). The same test applies to claims under §§ 1114 and 1125(a) of the Lanham Act. *See Packman v. Chicago Tribune Co.,* 267 F.3d 628, 638

---

[20] Each CHS product page is included alongside photographs of each product in the **Products Binder**.

[21] The factors are: 1) the similarity between the marks in appearance and suggestion; 2) the similarity of the products; 3) the area and manner of concurrent use; 4) the degree of care likely to be exercised by consumers; 5) the strength of complainant's mark; 6) whether there is actual confusion; and 7) whether defendant intended to palm off his product as complainant's. *Barbecue Marx*, 235 F.3d at 1043-44.

n.8 (7th Cir. 2001). Here the relevant factors overwhelmingly indicate no confusion.[22]

### a.   There Is No Evidence of Actual Confusion.

Although CHS and GW have co-existed for more than four years (SUF 15), there is no evidence of confusion. "It is reasonable and proper to infer from the absence of any evidence of actual confusion that there is no likelihood of confusion." *Ohio Art Co. v. Lewis Galoob Toys, Inc.,* 799 F. Supp. 2d 870, 884 (N.D. Ill. 1992) (denying preliminary injunction); *Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp.,* 80 F. Supp. 2d 815, 883 (N.D. Ill. 1999) (granting summary judgment and deeming it "very significant" that over an extended period of coexistence, plaintiff "has been unable to muster any evidence of actual confusion.")

There is no evidence of confusion. GW's U.S. business has *no records* of U.S. "customers expressing confusion" with CHS or even inquiring[23] about CHS. (SUF 72.) Despite years of coexistence, GW produced emails with only five third parties concerning CHS. (SUF 73.) *Packman,* 267 F.3d at 645 ("evidence that three consumers were confused did not demonstrate likelihood of confusion") (affirming summary judgment for defendant) (citation omitted). One is from an Australian email address and two are from British email addresses. The other two emails[24] were sent to GW's legal team in England, not to its U.S. customer service email address; GW has no evidence that the senders were from the U.S. (SUF 73-74.) Apart from the fact that there is no evidence these emails are from U.S. consumers, they do not evidence confusion. To the contrary, the senders are notifying GW legal about CHS, and it is clear they are not confused about the source of CHS's products. GW's own in-house counsel (and 30(b)(6) designee on confusion) forwarded one of these emails to a colleague noting "**another one who clearly is not confused!**" (SUF 75.) (exclamation in original; emphasis added). And GW did not

---

[22] The Seventh Circuit has "rejected the idea that to prevail on a motion for summary judgment, a defendant must demonstrate that there is no genuine issue of material fact as to *any* of the seven factors." *Bobak Sausage Co. v. A & J Seven Bridges, Inc.,* 805 F. Supp. 2d 503, 522 (N.D. Ill. 2011) (emphasis in original) (citing *AHP Subsidiary Holding Co v. Stuart Hale Co.,* 1 F.3d 611, 616 (7th Cir. 1993)).

[23] *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) ("evidence of occasional inquiries is superficial and trivial in the absence of evidence of actual diversion of business").

[24] For one, GW conceded that it "do[es]n't know that the original author is confused." (SUF 74.)

produce a consumer survey or testimonials, which weighs against a finding of actual confusion.[25]

The absence of actual confusion "is highly persuasive evidence that confusion is not likely." *Planet Hollywood,* 80 F. Supp. 2d at 883 (internal quotation omitted); *Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, No. 06-c-950, 2007 WL 118527 (N.D. Ill. Jan. 4, 2007) (Kennelly, J.) (granting summary judgment to defendant on federal and state trademark claims).

### b.  There Is No Evidence of Intent to Palm Off.

There is no evidence that CHS had an intent to "palm off" its products as GW's and profit from confusion. To the contrary, CHS uses a disclaimer on every page that expressly informs customers that its products are *not* created, sponsored, or endorsed by GW. (SUF 14.)

### c.  Customers Are Likely to Exercise a High Degree of Care.

"'[W]here consumers are sophisticated, deliberate buyers, confusion is less likely….'" *Bobak Sausage Co.,* 805 F. Supp. 2d at 517 (quoting *Planet Hollywood*, 80 F. Supp. 2d at 882). Moreover, where, as here, customers are "'afficionados,'" the Court "can expect that [they] will exercise a reasonable degree of care" even if the goods are relatively inexpensive. *See Barbecue Marx*, 235 F.3d at 1045. Purchasers of war gaming miniatures and accessories are aficionados likely to exercise care in purchases, spending hundreds of hours using the products. (SUF 76.) Such purchasers are unlikely to be confused, and this factor also favors CHS.

### d.  GW's Alleged Marks are Weak

"The 'strength' of a trademark refers to the mark's 'distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source.'" *Bobak Sausage,* 805 F. Supp. 2d at 518. "[GW] bears the burden of proving the strength of its mark based on its actual strength in the marketplace." *Id.* at 519. GW produced no consumer surveys, testimonials, market-share analysis, itemized sales records, or sales volumes for any of its marks. (SUF 69, 77.) Many of the claimed marks—like GRENADE LAUNCHER—are highly descriptive of war gaming pieces. Neither registrations or even "45 years [of alleged

---

[25] *Merriam-Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 72 (2d Cir. 1994) (vacating injunction and dismissing 15 U.S.C. § 1125(a) claim).

trademark use] answer the question of whether the name resonates in the consumers' consciousness … It is the *strength* of its name which is the necessary predicate to establish confusion." *Bobak Sausage,* 805 F. Supp. 2d at 519 (emphasis added). This factor favors CHS.

### e.     Similarity of Marks/Products/Concurrent Use

As discussed, where, as here, the alleged marks are used nominatively to refer to GW's own products, similarity of marks alone is not probative of likely confusion. And the parties do not sell their products through the same websites, retail stores, or distributors. (SUF 78.) They primarily sell from their respective websites, which are clearly marked, and GW also sells from its own retail shops, where no other company's products are available. *Id*. There is no evidence of any overlap in the promotion, distribution, and sales of the parties' goods. (SUF 78-80.)

The relevant factors indicate no likelihood of confusion warranting summary judgment.[26]

### E.     GW's Federal And State Dilution Claims Also Fail

As a threshold matter, federal and state dilution claims require that (a) GW owns a famous mark, (b) CHS adopted that mark after it became famous, and (c) CHS's use is commercial and in commerce. 15 U.S.C. 1125(c); 765 ILCS 1036/65. The factors to prove fame include 1) reach of advertising/publicity; 2) amount, volume, geographical extent of sales; and 3) extent of recognition. *Id.* GW produced no such evidence that *any* of its marks are famous in the U.S. or Illinois. (SUF 61, 68-69, 77.)  GW also provided no evidence for the other threshold elements: of the date each mark became famous or the date that CHS adopted each mark (if at all), and as discussed above, CHS does not use these terms as marks, but to refer to GW's own products. *See* 15 U.S.C. § 1125(c)(4)(a); 765 ILCS 1036/65(b)(1). GW's dilution claims fail.

### V.     CONCLUSION

Given the undisputed facts, GW's claims fail. Inspiration is not infringement; nor is fair competition and comparative. CHS is entitled to summary judgment.

---

[26] GW's state and common law claims fail for the same reasons. *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) (holding that state and common law "[c]laims for unfair competition and deceptive business practices… are to be resolved according to the principles set forth under the Lanham Act"); McCarthy;  *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F. 2d 266, 274 (7th Cir. 1976) ("Illinois law mandates application of the same [likelihood of confusion] test" as the Lanham Act).

Dated: August 14, 2012                    Respectfully submitted,

                                          /s/ Thomas J. Kearney
                            Jennifer A. Golinveaux (CA Bar No. 203056)
                            Dean A. Morehous (CA Bar No. 111841)
                            K. Joon Oh (CA Bar No. 246142)
                            Thomas J. Kearney (CA Bar No. 267087)
                                  WINSTON & STRAWN LLP
                                  101 California Street
                                  San Francisco, CA 94111-5802
                                  Phone: (415) 591-1000
                                  Fax: (415) 591-1400
                                  jgolinveaux@winston.com
                                  dmorehous@winston.com
                                  koh@winston.com
                                  tkearney@winston.com


                            Eric Mersmann (IL Bar No. 6286859)
                            Jonathon Raffensperger (IL Bar No. 6302802)
                                  WINSTON & STRAWN LLP
                                  35 West Wacker Drive
                                  Chicago, IL 60601-1695
                                  Phone: (312) 558-5600
                                  Fax: (312) 558-5700
                                  emersmann@winston.com
                                  jraffensperger@winston.com

SF:338473.3