**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC and | ) | |
| JON PAULSON d/b/a PAULSON GAMES, | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF THOMAS J. KEARNEY**

I, Thomas J. Kearney, declare as follows:

1.      I am an associate attorney with the law firm of Winston & Strawn LLP.  I am a member in good standing of the Bar of the State of California, and on February 14, 2011 was admitted *pro hac vice* to the bar of this Court for purposes of this action.  I have personal knowledge of the facts set forth herein and if called to testify could and would do so competently.

**GW'S COPYRIGHT CLAIMS**

2.      At a March 30, 2011 hearing, the Court suggested CHS propound contention interrogatories seeking the basis for GW's claims and identification of the specific works allegedly infringed. **Exhibit 1** is a true and correct copy of relevant portions of the March 30, 2011 Hearing Transcript (at 8:18-9:1).

3.      On April 1, 2012, CHS served contention interrogatories seeking the basis for GW's claims and identification of the specific works allegedly infringed. **Exhibit 2** is a true and

1

correct copy of Defendant Chapterhouse Studios LLC's Request for Interrogatories to Games Workshop Limited Set One ("First Set of Interrogatories") (Apr. 1, 2011).

4.      GW responded to CHS's First Set of Interrogatories on May 4, 2011 (the "Rog 1 Response"). GW's response included, as Exhibit A, a chart purporting to identify, for each of CHS's products, the GW works that the CHS product infringed. (Hereinafter, Exhibit A to the Rog 1 Response is referred to as the "Original Copyright Claim Chart".) The Original Copyright Claim Chart contained numbers indicating it had 97 entries, but it identified only 95 CHS products because entry 91 was left blank, and there was no entry 66. **Exhibit 3** is a true and correct copy of Plaintiff's Responses to CHS's First Set of Interrogatories.

5.      On January 19, 2012, I received a revised version of Exhibit A to Games Workshop Ltd.'s Answer to Interrogatory No. 1 (the "First Rev. Copyright Claim Chart") by email from GW's counsel. **Exhibit 4** is a true and correct copy of that First Rev. Copyright Claim Chart. The First Rev. Copyright Claim Chart identified 26 previously-unidentified CHS products, for a total of 121 CHS products. The First Rev. Copyright Claim Chart also supplemented the list of GW works allegedly infringed by both the newly-identified and previously-identified CHS products. The First Rev. Copyright Claim Chart changed the numbering scheme of the Original Copyright Claim Chart by identifying new products out of sequence.

6.      On August 3, 2012, I received by email from GW's counsel a document entitled "EXHIBIT A to Games Workshop Ltd.'s Answer to Interrogatory No. 1" (hereinafter "Second Rev. Copyright Claim Chart"). **Exhibit 5** is a true and correct copy of the Second Rev. Copyright Claim Chart. GW's counsel stated that the document was "the revised claim chart."

7.     The Second Rev. Copyright Claim Chart changed the numbering scheme of the First Rev. Copyright Claim Chart, by identifying new CHS products out of sequence. As a result, references to the Second Rev. Copyright Claim Chart with numbers above 117 do not necessarily correspond to numbered references to the First Rev. Copyright Claim Chart or the Original Copyright Claim Chart.

8.     August 3 was 11 days before the Court's August 14, 2012 deadline to submit dispositive motions. (Dkt. 116, Scheduling Order.)

9.     The Second Rev. Copyright Claim Chart drops copyright claims against 32 previously-identified CHS products. It identifies 20 additional, previously-unidentified CHS products as infringing, and alleges copyright claims as to 15 of those new products.  Although the Second Rev. Copyright Claim Chart lists a total of 143 entries, two numbered entries are blank, and five new entries (nos. 118, 119, 120, 129, and 143) do not assert copyright claims.

10.     As of August 12, 2012, GW has not produced exemplars of most of the new, previously-unidentified works that the Second Rev. Copyright Claim Chart alleges Chapterhouse's products infringe.

11.     The Second Rev. Copyright Claim Chart alleges infringement of numerous miniature toy soldiers, model vehicles, and assorted accessories.  *See, e.g.*, entry 1 (listing two URLs as allegedly infringed works and stating "Miniatures designed by Jes Goodwin, Martin Footit and Dave Thomas"; entry 2 (listing URL and stating "Models designed by Will Hayes and Phil Stutcinskas"); entry 3 (stating "Miniature designed by Juan Diaz Ramos"); etc.

**THE PRODUCTS BINDER**

12.     GW's Second Rev. Copyright Claim Chart is a table with three columns. **Column 1** simply assigns a sequential number to each CHS product. **Column 2** identifies a CHS product by name and website description. **Column 3** identifies the GW work or works that the corresponding CHS product allegedly infringes.

13.     For the Court's convenience, I have prepared a binder (the "**Products Binder**") (**Exhibit 6** hereto) with tabs corresponding to each entry in the Second Rev. Copyright Claim Chart. Each tab of the Products Binder contains true and correct images of each alleged GW work identified in the corresponding entry of the Second Rev. Copyright Claim Chart (to the extent such work could be identified). On the page facing each alleged GW is an image of the corresponding CHS product that allegedly infringes it. This format enables the Court to readily compare CHS's products and GW's alleged works side-by-side, in order to assess substantial similarity.

14.     The images reproduced in the Products Binder are true and correct copies of the exemplars GW provided of its alleged works identified in Column 3 of the Second Rev. Copyright Claim Chart. These images are also the only exemplars GW provided of its alleged works. In particular, GW failed to provide physical exemplars of any of the miniature figures it alleges.

15.     The images of CHS's products that appear in the Products Binder were prepared by attorneys and paralegals under my supervision, with the exception of the image at tab 111, which is a true and correct copy of an image from the corresponding product page on the CHS website.

16.     For each identified CHS product, I created a screenshot of the corresponding product page from the Chapterhouse Studios website at www.chapterhousestudios.com. I included a true and correct copy of the corresponding Chapterhouse website product screenshot at each tab of the Products Binder.

17.     Because GW failed to identify any of its alleged works listed in **Column 3** by Bates number despite formal discovery requests to do so from CHS, I was required to search GW's entire document production to identify each GW allegedly infringed work.

18.     In many cases, the Second Rev. Copyright Claim Chart provides only a URL referring to a page of GW's website, or in some cases a third party website to reference the GW work allegedly infringed. GW failed to specify whether it had produced screenshots of those pages, and failed to identify Bates numbers for such screenshots (if any). Despite GW's failure to identify any such screenshots in its document production by Bates number or otherwise, I searched for screenshots of those URLs in GW's produced documents.

19.     For many of the URLs identified in Column 3 of GW's Second Rev. Copyright Claim Chart, I was unable to locate a corresponding page in GW's document production. I clicked on each such URL, and printed the resulting web page. I then searched GW's document production for a representative sample of those web pages, and discovered that in many cases GW's document production simply did not include any screenshot of the linked pages.

20.     CHS does not believe that any of the unproduced web pages described in the previous paragraph are properly in the case or should be considered by the Court. However, for the sake of completeness I have included them in the Products Binder. The exemplars in the Products Binder that were produced by GW are marked with a GW Bates number.

21.     The Products Binder is thus a comprehensive list of each and every GW alleged work, side by side with an image of the CHS product that GW alleges infringes it, tracking GW's Second Rev. Copyright Claim Chart.

22.     At a December 19, 2011 hearing, the Court ordered GW to produce the best available exemplar of its allegedly infringed works. The transcript of that hearing is at Docket No. 171 (*see* 33:21-24; p.34; 35:21-24; 36:8-9). The Court's Order is at Docket No. 139 (*see* p.1) ("Plaintiff must produce the best available exemplar of the works in question.").

23.     The Court ordered GW to produce color exemplars of works whose original was in color. Dkt. No. 171 (Dec. 19, 2011 Hearing Tr.) at 36:8-9 ("THE COURT: . . . [I]f the original is in color, then the exemplar has to be in color.").

24.     Concurrently with its Motion for Summary Judgment and this Declaration, CHS is submitting to the Court a set of physical specimens of CHS's products, labeled according to the corresponding numbered entries in the Second Rev. Copyright Claim Chart. The set of physical specimens comprises **Exhibit 7**.


## EXPERT REPORTS AND FOREIGN LAW


25.     **Exhibit 8** is a true and correct copy of the Expert Report of Michael Bloch QC and Dr. Harris Bor dated May 1, 2012.

26.     **Exhibit 9** is a true and correct copy of the Expert Report of Professor Lionel Bently.

27.     **Exhibit 10** is a true and correct copy of Sections 1, 4, 11, 90 of the UK Copyright, Designs and Patents Act 1988 ("CDPA").

28. **Exhibit 11** is a true and correct copy of the decision of the UK Court of Appeal in *Lucasfilm Ltd v. Ainsworth*, [2010] F.S.R. 10.

## PUBLIC DOMAIN BINDER

29. **Exhibit 12** is a true and correct copy of the May 1, 2012 Rule 26(a)(2)(B) Expert Report of William F. N. Brewster ("Brewster Report"), together with the references cited in the Brewster Report (Bates labeled CHS00017724 through CHS00017910).

30. After examining GW's alleged works and CHS's products at issue, Brewster is of the opinion that "the insignia and symbols, body armour, weapons, and machines claimed by Games Workshop [are] in keeping with previously existing examples known within actual military material culture." In particular, Mr. Brewster found:

- "[T]he range of equipment, weaponry and decorative elements claimed by Games Workshop in this litigation has long existed within the real world of international militaries. The use of decorative elements in combination and surmounting other elements is neither new nor innovative." Brewster Report at 7-8.

- "That the insignia, heraldry, equipment pattern and design used by Games Workshop, are compatible with and not markedly dissimilar from those elements found to exist previously within the world of military material culture." Brewster Report at 4.

- "That the models Games Workshop creates incorporates patterns and designs of insignia, heraldry, and equipment that are documented to exist either currently or in the past outside of the world of fantasy gaming." Brewster Report at 4.

- "The majority of decorative elements presented in the images referenced on Games Workshop's Exhibit A have long been used in recorded civilian and military history." Brewster Report at 6.

- "Eagles (and other birds of prey), griffins, lions, crowns, wreaths, hands, arrows and spears, scales, and serpents are all encountered within the range of decoration incorporated for military purposes on Roman and Medieval body armour, shields and military standards. Further, the use of these figural designs is commonly found in the heraldic crests associated with United States Army distinctive insignia. Brewster Report at 6.

- "Arrows and chevrons as an incorporated geometric design are encountered in 20th Century military insignia." Brewster Report at 6.

- "The particular form of arrow cross that appears in Games Workshop imagery . . . is associated with national socialist/neo-Nazi ideology immediately post-dating World War II." Brewster Report at 7.

- "The gear symbol . . . is generally associated with socialist political philosophy." Brewster Report at 7.

31.    **Exhibit 13** is a true and correct copy of the Supplement to Rule 26(a)(2)(B)

Expert Report of William F. N. Brewster ("Brewster Supp. Report"), together with the references

cited in the Brewster Supp. Report (Bates labeled CHS000017911 through CHS000017929).

Brewster noted that:

- "[C]hevrons . . . are a common military and heraldic symbol. The chevron is in form an inverted "V". It appears singly and in multiples and may be traced through history for hundreds of years." Brewster Supp. Report at 1.

- "[B]lood drops . . . appear as incorporated elements of insignia design." Brewster Supp. Report at 1.

32.    For the Court's convenience, I have prepared **Exhibit 14** (the "Public Domain

Chart") showing, for certain GW works at issue, representative examples of similar works from

military history and the public domain, including images of animals (real and mythical); skulls;

types of armor; traditional weapons; and other items. Except as otherwise noted, the images in

the Public Domain Chart are taken from GW's document production; the Brewster Report and

Brewster Supp. Report; and images of CHS products from the Products Binder.

## DEPOSITION TRANSCRIPTS

33.    **Exhibit 15** is a true and correct copy of the 30(b)(6) deposition of Andrew Jones,

GW's Head of Legal, Licensing, and Strategic Projects, taken on April 3, 2012 (the "Jones

Dep.").

34.     I have reviewed the Jones Dep. My review indicates that GW has abandoned the following trademark claims, for the reasons stated by 30(b)(6) designee Andrew Jones:

| GW alleged mark | Jones Dep. testimony |
|---|---|
| "wings." | Jones Dep. at 128:19-20 ("It is an interesting question, isn't it, because "wings", do we claim that we own wings as a unique trademark, no…"). |
| "skulls" | *Id.* at 81:14-16 ("I couldn't find a particular example of a stylized skull that I would contend is being used as a trademark…"). |
| "Roman numerals (combined with) arrows." | *Id.* at 77:17-78:1 ("what I am saying is we cannot claim to exclusively own Roman numerals with or without arrows. That is what I am saying.") |
| "Tau – oval vents." | *Id.* at 108:4-6 ("I don't think we would use oval vents as a particular trademark.") |
| "plasma." | *Id.* at 74:7-12 ("I would call out "plasma", simply because certainly we have products that we have sold as, you know, Plasma Gun, what have you, but I can't remember us trying to use 'plasma' specifically as a trademark on its own."). |
| "tactical." | *Id.* at 164:8-21 ("**Q** So in this lawsuit is Games Workshop contending that the word phrase "Tactical" is a trademark at issue or that Chapterhouse has infringed Games Workshop's copyright to the word?  **A** It will be once again the unique association of the elements that are at issue. So it will be the association of the word "Tactical" with the word "Space Marine", with particular armour, weapon combinations, and that will be at issue, not the word in isolation, "Tactical."  **Q** For clarification on the record, the word phrase "Tactical" in isolation, Games Workshop is not claiming that it is -- **A** No."). |
| "halberd." | *Id.* at 71:6-72:16 ("my opinion is that 'Halberd' we cannot claim as an exclusive trademark."). |
| "broadswords." | *Id.* at 76:11-12 ("I put 'broadswords' in the same category as Halberds."). |

| GW alleged mark | Jones Dep. testimony |
|---|---|
| "overlapping/banded armour." | *Id.* at 120:7-8 ("**Q** Let's move on to the overlapping/banded armour? **A** As a trademark, I don't know what that refers to."). |
| "Tau – geometric groves." | *Id.* at 74:12-14 ("I don't know what 'Tau Geometric Groves' is. It might be supposed to say 'Grooves.' It sounds like it is rather to do with trees."). |
| "wolf fur." | *Id.* at 83:3-7 ("**Q** Then with respect to wolf fur -- **A** Yes. Honestly, I can't imagine why we are holding it up. That is one that I would not say why we are holding it. I would say why are we holding up wolf fur as a particular trademark."). |
| "snakes" | *Id.* at 76:20-25 ("Again, we have a chapter of Space Marines called Iron Snakes, and it has a particular snake symbol which is a trademark rather in the way 'cog' is, but I don't think we would claim that 'snakes' is entirely our exclusive trademark."). |

35.     Andrew Jones identified 37 different marks as design marks (symbols, icons, or designs), as listed in the table below.  The mark for Warhammer 40,000 is not a Mark at Issue. The Aquila Design is identified in the SAC as a registered mark and is among the Marks At Issue.  The remaining 35 marks are not identified in the SAC as registered marks and are among the Marks At Issue.

| Mark | Where identified as symbol mark (citations to Jones Dep.) |
|---|---|
| Warhammer 40,000 | 128:18-129:10 (discussing "the Warhammer 40,000 logo") |
| Aquila | 165:4 ("The Aquila is a symbol") |
| Skulls | 76:9-18, 80:3-81:19 |
| Wings (eagle wings, angel wings) | 128:12-129:10, 129:22-130:2 |
| Lions | 89:20-90:4 |
| Griffon | 89:20-90:4 |
| Triptychs | 89:20-90:4, 90:14-24 |
| Broadswords | 90:12-13 |
| Skull with horns | 91:8-18 |

| Mark | Where identified as symbol mark (citations to Jones Dep.) |
|---|---|
| Storm bolter (gun) | 91:18-21 |
| Sawblade with blooddrop | 92:22-93:2 |
| Clenched first in a gauntlet | 94:8-18 |
| Snakes | 76:20-25 |
| Flaming skulls | 106:4-5 |
| Flaming chalice | 106:6-9 |
| Salamander | 107:6-11 |
| Dragon/salamander scales pattern | 107:14-24 |
| Tau Symbol | 107:25-108:15 |
| Tau – Oval vents | 108:4-8 |
| Tau – X marking on power/ammo packs | 108:23-109:19 |
| Tau – circle with a diagonal line through it | 108:23-109:19 |
| Tau – geometric groves | 74:12-14; 108:23-109:19 |
| Roman numerals (combined with) arrows | 77:2-79:11 |
| X crosses and inverted V | 109:23-110:12, 110:20-111:1 |
| Cog | 75:16-23 |
| Iron hands icon – gauntleted left hand shown palm downwards | 119:8-14 |
| Overlapping/banded armour | 120:5-11 |
| Wolf fur | 81:20-82:23 |
| Wolf skulls | 81:20-82:23 |
| Wolf tails | 81:20-82:23 |
| Raven wings with blood drop in center | 120:15-121:10 |
| I symbol (for Inquisition) | 124:11-20 |
| Scarab beetles | 126:1-16 |
| Spirit stones | 126:19-127:21 |
| Eldar iconography/symbols (seer icons, etc.) | 127:5-21 |
| Eldar – Spirit Stones | 127:5-21 |
| Eldar – decorative gems on weapons | 126:19-127:21 |

.

36.    **Exhibit 16** is a true and correct copy of the 30(b)(6) deposition of Sandra Casey,

taken on March 1, 2012.

37.    **Exhibit 17** is a true and correct copy of pages 14, 15, 51, 53, 54, 55, 65, 199, and

200 from the deposition of Alan Merrett, Volume 1, on March 8, 2012 ("Merrett I").

38.    **Exhibit 18** is a true and correct copy of pages 21, 25-36, and 44 from the

deposition of Alan Merrett, on April 3, 2012 ("Merrett II").

39.  **Exhibit 19** is a true and correct copy of Exhibit 62 from the deposition of Alan Merrett II, which is a page from GW's "Black Library" website. *See* Merrett II at 32:10-33:17.

40.  Defendant's Deposition Exhibit (hereinafter, "Depo. Ex.") No. 102 corresponds to CHS product number 95. Depo. Ex.102 is discussed at Merrett II, 24:16-27:5. **Exhibit 20** is a true and correct copy of the court reporter's slip page for Depo. Ex.102, which is a physical specimen of a CHS product corresponding to no. 95 on the Second Rev. Copyright Claim Chart and First Rev. Copyright Claim Chart as well as the corresponding physical specimen at no. 95 for **Exhibit 7**.

41.  **Exhibit 21** is a true and correct copy of Depo. Ex.103, which is a page from GW's production Bates labeled GW0001424. Depo. Ex.103 is discussed at Merrett II, 24:16-27:5.

42.  **Exhibit 22** is a true and correct copy of pages 17-19 and 67 from the 30(b)(6) Deposition of Gillian L. Stevenson, Volume 1, taken on March 5, 2012 ("Stevenson I").

43.  **Exhibit 23** is a true and correct copy of pages 95, 103, 122, 123, 142, 143, 147, 148, 150, 151, 152, 203, 204 from the 30(b)(6) Deposition of Gillian L. Stevenson, Volume 2, taken on March 9, 2012 ("Stevenson II").

44.  **Exhibit 24** is a true and correct copy of Depo. Ex. 143 (Bates No. GW0002576-2588).

45.  **Exhibit 25** is a true and correct copy of Depo. Ex.88 from Stevenson II, Bates labeled GW0005554, which is a copy of an email to GW from a third party.

46.  **Exhibit 26** is a true and correct copy of Depo. Ex. 89 from Stevenson II, Bates labeled GW0005559, which is a copy of an email to GW from a third party.

47.     **Exhibit 27** is a true and correct copy of pages 48, 50 from the Deposition of John Blanche, taken on April 2, 2012.

48.     **Exhibit 28** is a true and correct copy of pages 114 – 117 from the Deposition of Michael Bloch QC, taken on July 11, 2012.

49.     **Exhibit 29** is a true and correct copy of Depo. Ex.39.

50.     **Exhibit 30** is a true and correct copy of Depo. Ex.142.

## DISCOVERY DOCUMENTS

### SUBPOENAS

51.     **Exhibit 31** is a true and correct copy of a 12/27/2011 Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action re: Games Workshop Retail Inc.

52.     **Exhibit 33** is a true and correct copy of CHS's Subpoena to Testify at a Deposition in a Civil Action re: Games Workshop Retail, Inc. ("GWR") dated January 19, 2012.

53.     **Exhibit 34** is a true and correct copy of GWR's Response to [Deposition] Subpoena to Games Workshop Retail, Inc. dated January 31, 2012.

### INTERROGATORY RESPONSES

54.     **Exhibit 35** is a true and correct copy of Plaintiff's Amended Responses to Chapterhouse Studios' First Set of Interrogatories, dated June 15, 2011.

55.     **Exhibit 36** is a true and correct copy of Defendant Chapterhouse Studios LLC's Interrogatories to Games Workshop Limited Set Two dated June 3, 2011.

56.     **Exhibit 37** is a true and correct copy of Plaintiff Games Workshop Studios LLC's [*sic*] Response to Interrogatories to Games Workshop Limited Set Two dated July 5, 2011.

57.     **Exhibit 38** is a true and correct copy of Defendant Chapterhouse Studios LLC's First Supplemental Response to Games Workshop Ltd.'s Second Set of Interrogatories to Chapterhouse Studios LLC (Nos. 3-13) dated July 29, 2011.

58.     **Exhibit 39** is a true and correct copy of Defendant Chapterhouse Studios LLC's Second Supplemental Response to Games Workshop Ltd.'s Second Set of Interrogatories to Chapterhouse Studios LLC (Nos. 3-13) dated February 3, 2012.

59.     In its response to  Interrogatory No. 3 (the "Rog 3 Response"), which required GW to identify allegedly infringing use by CHS for each mark that GW alleges is at issue in this case, GW did not identify any use by CHS of a number of marks it identified in the SAC and in response to CHS's Interrogatory 18. Based on my review of those documents, GW did not identify any infringing use by CHS of the following 55 Marks At Issue:

| | | |
|---|---|---|
| 1.  Warhammer 40K | 2.  Cadian | 3.  Chimera |
| 4.  Grenade Launcher | 5.  Halberd | 6.  Heresy Armour |
| 7.  Hellhound | 8.  Howling Banshee | 9.  Imperial Guard |
| 10. Jetbike | 11. Jump Pack | 12. Librarian |
| 13. Plasma | 14. Predator | 15. Scorpion |
| 16. Stormraven | 17. Techmarine | 18. Terminator |
| 19. Thunder Hammer | 20. Tyrant | 21. Skulls |
| 22. Wings (eagle wings, angel wings) | 23. Lions | 24. Griffon |
| 25. Triptychs | 26. Broadswords | 27. Skull with horns |
| 28. Storm bolter (gun) | 29. Sawblade with blood-drop | 30. Clenched first in a gauntlet [sic] |
| 31. Snakes | 32. Flaming skulls | 33. Flaming chalice |
| 34. Salamander | 35. Dragon/salamander scales pattern | 36. Tau Symbol |
| 37. Tau – Oval vents | 38. Tau – X marking on power/ammo packs | 39. Tau – circle with a diagonal line through it |
| 40. Tau –geometric groves | 41. Roman numerals (combined with) arrows | 42. X crosses and inverted V |

| 43. Cog | 44. Iron hands icon – gauntleted left hand shown palm downwards | 45. Overlapping/banded armour |
|---|---|---|
| 46. Wolf fur | 47. Wolf skulls | 48. Wolf tails |
| 49. Raven wings with blood drop in center | 50. I symbol (for Inquisition) | 51. Scarab beetles |
| 52. Spirit Stones | 53. Eldar iconography/symbols (seer icons, etc.) | 54. Eldar – Spirit Stones |
| 55. Eldar – decorative gems on weapons | | |

60.     **Exhibit 40** is a true and correct copy of Defendant Chapterhouse Studios LLC's Interrogatories to Games Workshop Limited Set Four dated January 6, 2012.

61.     **Exhibit 41** is a true and correct copy of Plaintiff Games Workshop Limited's Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatories Set Four dated March 2, 2012

62.     **Exhibit 42** is a true and correct copy of Plaintiff Games Workshop Limited's Second Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatories Set Four dated March 9, 2012.

63.     **Exhibit 43** is a true and correct copy of Plaintiff Games Workshop Limited's Response to Defendant Chapterhouse Studios LLC's Interrogatories Sets Five and Six dated March 12, 2012. In its responses, GW re-numbers CHS's interrogatories nos. 23-25 from CHS' 5th Set of Interrogatories as nos. 24-26.  As part of its objections in GW's Response to "Interrogatory No. 25," GW's stated "Pursuant to Rule 33(d), Games Workshop has produced documents responsive to this request."

64.     **Exhibit 44** is a true and correct copy of Plaintiff Games Workshop Limited's Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22 dated March 13, 2012.

65.     **Exhibit 45** is a true and correct copy of Plaintiff Games Workshop Limited's Further Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22 dated May 3, 2012.


## DOCUMENT REQUESTS

66.     **Exhibit 46** is a true and correct copy of Games Workshop Ltd.'s Seventh Set of Document Requests to Chapterhouse Studios LLC (Nos. 33-35) dated May 16, 2012.

67.     **Exhibit 47** is a true and correct copy of Defendant Chapterhouse Studios LLC's Request for Production of Documents to Games Workshop Limited Set Two dated June 3, 2011.


## REQUESTS FOR ADMISSION

68.     **Exhibit 48** is a true and correct copy of Games Workshop Ltd.'s Response to Chapterhouse Studios LLC's First Set of Requests for Admissions dated October 19, 2011.

69.     **Exhibit 49** is a true and correct copy of Games Workshop Ltd.'s Response to Chapterhouse Studios LLC's Fourth Set of Requests for Admissions dated March 12, 2012.

70.     **Exhibit 50** is a true and correct copy of GW's Response to CHS's Second Set of Requests for Admission, Response to RFA 337 (Nov. 1, 2011).


## MISCELLANEOUS DOCUMENTS

71.     **Exhibit 51** is a true and correct copy of a screenshot from www.miniatures-wargames.com website (http://www.miniatures-wargames.com/c-1431151/warmachine-28mm-privateer-press/), marketing third-party 28mm miniature figures, including Warmachine 28mm miniatures.

72.     On August 12, 2012, I downloaded an archived copy of the CHS website from the "wayback machine" archive maintained by the Internet Archive, at http://web.archive.org/web/20090607231914/http://chapterhousestudios.com/webshop/. **Exhibit 52** is a true and correct copy of that archived copy, showing the home page of the Chapterhouse Studios website as it appeared on June 7, 2009.

73.     **Exhibit 53** is a true and correct copy of a document Bates numbered CHS00001060-1061, which is a copy of the CHS website home page at http://www.chapterhousestudios.com/webshop/ as it appeared on Aug. 5, 2011.

74.     **Exhibit 54** is a true and correct copy of CHS00014341, which is a CHS advertising banner explicitly identifying CHS as "Your #1 source for non-GW Conversion kits and bits!"

75.     **Exhibit 55** is a true and correct copy of documents bates labeled GW0002528 – GW0002529.

76.     **Exhibit 56** is a true and correct copy of a January 19, 2012 e-mail I received from GW's attorney J. Moskin.


## HEARING TRANSCRIPTS

77.     **Exhibit 57** is a true and correct copy of excerpt of page 37 from a March 6, 2012 Hearing before the Honorable Matthew F. Kennelly.

78.     **Exhibit 58** is a true and correct copy of pages 42 and 43 from a December 19, 2011 Hearing transcript before the Honorable Matthew F. Kennelly.

79.     **Exhibit 59** is a true and correct copy of the transcript of Proceedings before the Honorable Jeffrey T. Gilbert, taken on September 1, 2011.


### DOCUMENTS NOT PRODUCED

80.     I have reviewed all of the documents that Plaintiff Games Workshop Limited ("GW") has produced to Defendant Chapterhouse Studios ("CHS) in response to CHS's discovery requests, and have also supervised paralegals and other Winston & Strawn attorneys in conducting further review of those documents.

81.      I have reviewed the pleadings and the discovery papers in this matter. I have searched for GW registered trademarks using the trademark search function of the U.S. Patent & Trademark Office ("PTO") website at http://www.uspto.gov/trademarks/process/search/. Based on my review, the Marks At Issue include 11 registered marks and 99 unregistered marks.

82.     GW produced no consumer survey or testimonial or expert report concerning confusion between GW and CHS.

83.     GW has not produced any of its miniature figures to CHS.  GW did not produce exemplars of its alleged works before July 29, 2011. Between July 30, 2011 and the close of fact discovery on March 15, 2012, GW produced thirteen books, a handful of book excerpts, and screenshots of its website. Three of the books GW produced were in the form of black and white scans, although the books feature full-color artwork. GW has continued to produce some book excerpts and other materials between March 16, 2012, and August 13, 2012.

84.     As of the close of fact discovery on March 15, 2012, GW had not produced a

copy of the work entitled "Games Workshop Complete Catalog & Hobby Reference 2006-2007."

85.     I am familiar with the pleadings in this case, and I have reviewed the documents GW has produced in discovery. To the best of my knowledge, GW has never specified which of its alleged works, if any, are included in the "Games Workshop Complete Catalog & Hobby Reference 2006-2007." To the best of my knowledge, GW has produced no evidence of the dates of creation of its alleged works, if any, included in the "Games Workshop Complete Catalog & Hobby Reference 2006-2007."

86.     GW's document production does not include any employment records or employment documents concerning the following individuals: Gary Chalk; Wayne England; Des Hanley; Clint Langley; Mike McVey; Bob Naismith; or Adrian Wild.

87.     I have reviewed the documents GW has produced in this case. GW has produced no sales invoices or purchase orders for any of the Marks At Issue, including any sales invoices of Internet or retail sales in the U.S. or in the Illinois.

88.     Before the deposition of Andrew Jones, GW's 30(b)(6) witness concerning GW's revenues and related records, GW had produced 13 pages of sales records Bates numbered GW0002576 –2588. GW had produced no other sales records at that time.

89.     On May 30, 2012, more than two months after the close of fact discovery and months after its Certification that its production was complete (and after depositions had concluded for fact witnesses), GW produced certain spreadsheets, presumably sales sheets.  GW produced 41 Bates labeled spreadsheets on May 30, 2012.  GW filed its Certification the its production was complete on March 2, 2012, and fact discovery closed on March 15, 2012.

90.     Before GW's March 2, 2012 Certification concerning the completeness of its

document production, GW had produced 5,937 Bates numbered pages (GW0000001 –

GW0005937).  Between the close of fact discovery and August 13, 2012, GW has produced

5,453 Bates numbered pages (GW0005938-11391).  Approximately 48% of the Bates numbered

pages that GW has produced has been after the close of fact discovery and after its Certification.

91.     I have reviewed the documents GW produced in this case. GW did not produce

consumer surveys or testimonials, or expert reports, concerning any of the Marks At Issue.

92.     GW has produced no sales invoices or other records showing that GW and CHS

distributed goods in any particular geographical area that overlap.

93.     I reviewed the documents that CHS produced comprising its website. I also

performed keyword and text searches on those documents using a standard document review

platform. Under my direction, a paralegal performed similar searches on those documents. Based

on that review, the following seven Marks At Issue do not appear on the Chapterhouse website at

www.chapterhouse.com:  Aquila Design; BLOOD ANGELS; CHAOS SPACE MARINES;

HORUS HERESY; LAND SPEEDER; MK II ARMOUR; TERMEGANTS.

**MISCELLANEOUS**

94.     **Exhibit 32** is a true and correct copy of GWR's Response to [Document]

Subpoena, dated January 11, 2012.

95.     **Exhibit 60** is a true and correct copy of Depo. Ex. 1 (Re-Notice of Subpoena to

GWR) dated February 17, 2012.

96.     **Exhibit 61** is a true and correct copy of Defendant Chapterhouse Studios LLC's

First Set of Requests for Admission (September 9, 2011).

97.     **Exhibit 67** is a true and correct copy of Defendant Chapterhouse Studios LLC's

Request for Production of Documents to Games Workshop Limited Set Seven (February 10,

2012);

98.     **Exhibit 68** is a true and correct copy of Defendant Chapterhouse Studios LLC's Interrogatories to Games Workshop Limited Set Five (February 10, 2012);

99.     **Exhibit 69** is a true and correct copy of Defendant Chapterhouse Studios LLC's Fourth Set of Requests for Admission (February 10, 2012).

100.    **Exhibit 66** is a true and correct copy of Depo. Ex. 114 (Rog 18 Response).

101.    **Exhibit 62** is a true and correct copy of Depo. Ex. 84 (CONFIDENTIAL);

102.    **Exhibit 63** is a true and correct copy of Depo. Ex. 85 (CONFIDENTIAL);

103.    **Exhibit 64** is a true and correct copy of Depo. Ex. 86 (CONFIDENTIAL);

104.    **Exhibit 65** is a true and correct copy of Depo. Ex. 87 (CONFIDENTIAL);

105.    GW's Second Rev. Copyright Claim Chart does not identify the work "Games Workshop Complete Catalog & Hobby Reference 2006-2007" as an allegedly infringed work.

106.    I have reviewed the documents GW produced in this case. To the best of my knowledge, GW has produced no evidence that it advertises on the same websites or in the same publications as CHS.

107.    GW's First Rev. Copyright Claim Chart does not identify the work "Games Workshop Complete Catalog & Hobby Reference 2006-2007" as an allegedly infringed work.

108.    **Exhibit 70** is a true and correct copy of GW's Response to Request for Production of Documents Set Two, No. 7 (July 5, 2011).


I declare under the penalty of perjury that the foregoing is true and accurate.


Dated: August 14, 2012                                        By: /s/ Thomas J. Kearney