**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC and JON | ) | |
| PAULSON d/b/a PAULSON GAMES, | ) | |
| | ) | Honorable Matthew F. Kennelly |
| Defendants. | ) | |

**LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN
SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56(c) and LR56.1, Defendant Chapterhouse
Studios LLC ("CHS"), by and through its counsel, sets forth the undisputed facts supporting
CHS's Motion for Summary Judgment as follows:

## PARTIES

1. **Plaintiff Games Workshop Limited ("GW") is a United Kingdom corporation and a
   subsidiary of Games Workshop PLC.**

   Dkt. 147 at ¶ 1 (Second Amended Complaint).

2. **Defendant Chapterhouse Studios LLC ("CHS") is a Texas limited liability company
   whose address is 3930 Glade Road, Suite 108 # 174, Colleyville, Texas, 76034.**

   Dkt. 147 at ¶ 2.

## JURISDICTION

3. **This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. §
   1121 and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over claims
   arising under the statutory and common law of the State of Illinois pursuant to 28
   U.S.C. § 1367 (a) because the state law claims are so related to the federal claims
   that they form part of the same case or controversy.**

   Dkt. 147 at ¶ 5.

1

SF:338464.13

4. **Pursuant to Federal Rule of Civil Procedure 12(h), CHS waived its objections to personal jurisdiction and venue by responding to GW's complaint.**

   Dkt. 45 (CHS's Answer to GW's Amended Complaint).

## DEFENDANT CHAPTERHOUSE'S BUSINESS

5. **Chapterhouse Studios ("CHS") is a small company located in Grapevine, Texas that makes products players may use when playing fantasy and sci-fi war games. It was formed by a longtime enthusiast of GW's Warhammer 40,000 and other tabletop war games.**

   Declaration of Nicholas Villacci ("Villacci Decl.") ¶3.

6. **Most of CHS's products are accessories (or "bits") that players can use to customize the toy soldiers they use to play tabletop war games—such as toy armor shoulder pads; shields; weapons; or alternative miniature heads. In order to use CHS's bits in a game, a player must own one or more miniatures to use them with.**

   Villacci Decl. ¶4.

7. **To ensure compatibility with a wide range of miniature figures, CHS's products conform to the standard 28mm scale.**

   Villacci Decl. ¶9;

   Kearney Decl. at:

   - **¶ 42, Ex. 22**:  G. Stevenson Depo. Tr. (March 5. 2012 ) ("Stevenson I") at 67:9-11 ("Games Workshop sells miniatures 28 millimeter little men.  Some of them are called Space Marines and they have knee pads….");

   - **¶ 71, Ex. 51**: (screenshot from www.miniatures-wargames.com website marketing third-party 28mm miniature figures, including Warmachine 28mm miniatures).

8. **CHS also makes custom-decorated spare parts, such as functional replacement doors with fanciful decorations, that fit various model vehicles sold by GW.**

   Villacci Decl. ¶10.

2

9. **CHS's products are cast from pewter or gray resin, and all are sold and shipped unpainted, so that players may paint the products themselves.**

Villacci Decl. ¶10.

## PLAINTIFF GAMES WORKSHOP'S BUSINESS

10. **Plaintiff Games Workshop Limited ("GW") is an international UK-based company in the business of tabletop fantasy war games. It produces miniature toy soldiers related to its Warhammer and Warhammer 40,000 war games, as well as rule books, guides, and accessories for those and other games.**

Dkt. 147: SAC, *e.g.*, ¶¶1, 8, 13, 24.

11. **Many of GW's miniatures also conform to the standard 28mm scale.**

Kearney Decl. at:

- **¶ 42, Ex. 22**: Stevenson I at 67:9-11 ("Games Workshop sells miniatures 28 millimeter little men. Some of them are called Space Marines and they have knee pads….");

- **¶38, Ex. 18**: Alan Merrett Depo. Tr. (Apr. 3, 2012) ("Merrett II") at 26:1-4 (referring to "the 28 millimeter scale of the 40K miniatures . . . .");

- **¶5, Ex. 4**: First Rev. Copyright Claims Chart, Entry 81 ("Miniatures in the Warhammer 40,000 game are based on a 28mm scale").

- **¶ 37, Ex. 17**: A. Merrett Depo. Tr. (March 8, 2012) ("Merrett I") at 14:11-15:15 (Merrett's designations as 30(b)(6) witness, including copyright-related topics);

- **¶49, Ex. 29**: Depo. Ex. 39 (GW's witness designation list).

12. **GW worked with freelance artists and model-makers to create certain of the intellectual property it claims in this case.**

Kearney Decl. at:

- **¶25, Ex. 8**: GW's Expert Report of Michael Bloch QC & Dr. Harris Bor ("Bloch Report"), ¶22(e): "It is our understanding that of the 12 works in issue in which alleged independent contractors/freelancers have participated, only 2 have not as yet been located by the Plaintiff."

3

- **¶65, Ex. 45**: Plaintiff Games Workshop Limited's Further Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22 (listing alleged authors and dates of employment if any);

- **¶47, Ex.27**:  J. Blanche Depo. Tr. (Apr. 2, 2012) at 48:9-22 ("**Q:** Clint Langley? **A:**  I know the name but I know him as a freelance artist for the Black Library . . .");

- *Id*. at 50:19-24 ("**Q:** Was Gary Chalk a freelancer?  **A:** He was, yes.");

- **¶5, Ex. 4**: Exhibit A to GW's Answer to Rog. No. 1 (Jan. 19, 2012) ("First Rev. Copyright Claim Chart"), *e.g.*, at nos. 99 (listing Gary Chalk as creator of GW's alleged work);

- **¶6, Ex. 5**: Exhibit A to GW's Answer to Rog. No. 1 (Aug. 3, 2012) ("Second Rev. Copyright Claim Chart"), *e.g.*, at no. 17 (listing Clint Langley as creator of GW's alleged work);

- **¶ 37, Ex. 17**: Merrett I Tr. at 51:17-23; 53:8-17; 54:24-55:1; 55:3-5; 65:6-7 (GW's working with freelance artists, writers, and toy miniature sculptors).

- *Id*. at 14:11-15:15 (Merrett's designations as 30(b)(6) witness, including copyright-related topics);

- **¶49, Ex. 29**: Depo. Ex. 39 (GW's witness designation list).

## THE PARTIES' YEARS OF CO-EXISTENCE

13. **CHS began making limited sales on eBay and similar websites around June 2008, and in April 2009 CHS launched its website, www.chapterhousestudios.com.**

    Villacci Decl. ¶11.

14. **Since its launch, CHS's website has featured a prominent notice disclaiming any affiliation with GW on every page of the website.**

    Villacci Decl. ¶12, Ex.A.

    Kearney Decl. at:

    - **¶72 & Ex. 52**: archived copy, showing the home page of the Chapterhouse Studios website as it appeared on June 7, 2009;

4

- **¶73 & Ex. 53**: copy of the CHS website home page at
  http://www.chapterhousestudios.com/webshop/ as it appeared on Aug. 5, 2011.

15. **GW has been aware of CHS and its products since at least the summer 2008.**

    SAC ¶ 31 ("Upon information and belief, after having initiated some modest sales on
    eBay in 2008, sometime in or about May 2009, Chapterhouse began manufacturing and
    selling gaming miniatures and accessories at its website located at
    www.chapterhousestudios.com ('the Website')");

    Kearney Decl. at:

    - **¶43, Ex. 23**: G. Stevenson Depo. Tr. (March 9, 2012 ) ("Stevenson II") at 103:4-
      6 (learning of CHS in January 2008);

    - **¶ 42, Ex. 22**: G. Stevenson I. Tr. at 17:22-19:25 (re: Stevenson's designations as
      30(b)(6) witness, including on topics concerning document collection, confusion,
      CHS, and trademark policies);

    - **¶49, Ex. 29**: Depo. Ex. 39 (designation list).

16. **There is no evidence that anyone has ever been confused about the relationship
    between GW and CHS.**

    Kearney Decl. ¶83;

    Kearney Decl. at

    - **¶36 & Ex. 16** :  Sandra Casey Depo. Tr. (March 1, 2012) at 58:23-59:20;
      (*e.g.*, **Q.**      Does Games Workshop Retail have any records of customers
      expressing confusion between their products and Chapterhouse products?
      **A.**      Not to my knowledge.);

    - **Id**: S. Casey Tr. at 12:22-13:1(re: Casey's designation as 30(b)(6) witness for
      Games Workshop Retail, Inc. "GWR");

    - **¶52 , Ex. 33**: CHS's Deposition Subpoena to GWR;

    - **¶51 , Ex. 31**: CHS's Document Subpoena to GWR;

    - **¶94 , Ex. 32**: GWR's Response to [Document] Subpoena;

    - **¶53 , Ex. 34**: Response to [Deposition] Subpoena to GWR;

5

- **¶95 , Ex. 60**: Re-Notice of Subpoena to GWR;

Villacci Decl. ¶13.

17. **Games Workshop Retail ("GWR"), which is GW's U.S.-based business, produced no documents pursuant to CHS's document subpoena, including no documents in response to the following request: "All documents concerning Chapterhouse or its products.".**

Kearney Decl. at:

- **¶76, Ex. 56**: J. Moskin, January 19, 2012 email ("the fact is that Games Workshop Retail has not been able to identify any responsive documents.").

- **¶36, Ex. 16** : Sandra Casey Depo. Tr. (March 1, 2012) at 93:14-17:

    Q.    Has Games Workshop Retail produced any documents to the Defendants in response to the document subpoena?

        A.  No.

Dkt. 187 (March 2, 2012): GW's certification that it had completed its document production ("Certification");

Kearney Decl. **¶ 33, Ex. 15**: Andrew Jones Depo. Tr. (April 3, 2012) at:

    24:25-25:13 (re: identifying Sandra Casey as the person with knowledge of records for GW's U.S. business);

    7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records),

- ¶49, Ex. 29: Depo. Ex. 39 (GW's (30(b)(6) designation list).

Kearney Decl. at:

- **¶36, Ex. 16**: S. Casey Tr. at 12:22-13:1(re: Casey's designation as 30(b)(6) witness for GWR);

- **¶52 , Ex. 33**: CHS's Deposition Subpoena to GWR;

- **¶51 , Ex. 31**: CHS's Document Subpoena to GWR;

6

- **¶94 , Ex. 32**: GWR's Response to [Document] Subpoena;

- **¶53 , Ex. 34**: Response to [Deposition] Subpoena to GWR;

- **¶95 , Ex. 60**: Re-Notice of Subpoena to GWR.

## GW'S COPYRIGHT CLAIMS

18. **As part of its June 15, 2011 response to Interrogatory No. 1, GW included a chart ("Original Copyright Claim Chart") identifying, for each of CHS's accused products, the copyrights allegedly infringed.**

    Kearney Decl. at:

    - **¶4, Ex. 3**: Plaintiff's Responses to Chapterhouse Studios's First Set of Interrogatories (May 4, 2011) (including Original Copyright Claim Chart);

    - **¶3, Ex. 2**: Defendant Chapterhouse Studios LLC's Request for Interrogatories to Games Workshop Limited Set One (April 1, 2011).

19. **After initially pleading that all of CHS's "106 products" were infringing, the Original Copyright Claim Chart identified 95 CHS products as infringing, as well as the corresponding GW works that CHS allegedly infringed.**

    Dkt. 1: Compl. ¶30.

    Kearney Decl. ¶ 4.

20. **GW has not produced any of its miniature figures to CHS. GW produced a few books, book excerpts, and certain screenshots from its website, but no miniature figures, despite identifying many miniatures as infringed. GW has continued to produce some book excerpts and other materials between March 16, 2012, and August 13, 2012.**

    Kearney Decl. ¶83.

21. **On January 19, 2012, GW served a supplemental Exhibit A (the "First Rev. Copyright Claim Chart") to its Answer to CHS's Interrogatory No. 1, adding copyright claims against 26 additional CHS products, and supplementing its identification of infringed works.**

    Kearney Decl. ¶ 5;

7

Kearney Decl. **¶5, Ex. 4**: Games Workshop's "EXHIBIT A to Games Workshop Ltd.'s Answer to Interrogatory No. 1" (the "First Rev. Copyright Claim Chart") served Jan. 19, 2012.

22. **GW's First Rev. Copyright Claim Chart identified a total of 121 CHS products as infringing GW's copyrights.**

Kearney Decl. **¶5, Ex. 4**: GW's First Rev. Copyright Claim Chart identified a total of 121 CHS products, and identifying previously-unidentified GW works as infringed by both previously-identified CHS products, and newly-identified CHS products;

23. **Appearing before the Court on March 6, 2012, GW's counsel confirmed GW's March 2, 2012 certification (Dkt. 187) that GW's document production was complete "to the best of its knowledge."**

Kearney Decl. **¶77, Ex. 57**: Mar. 6, 2012 Hearing Tr. at 37:10-11:

> MR MOSKIN: . . . . In plain English, all I really meant to say by the hedging is, look, there may be some stray documents here and there. Every case -- this is a bigger case, I confess, than I expected and hoped it would be. We -- I can't -- except for that sort of stray document, there are no -- virtually, every stone has been overturned at least in using practical common sense of where documents might be.

Dkt. 187 (Certification).

24. **On March 12, 2012, GW served its responses to CHS's last set of discovery requests. In those responses, GW objected to each and every request, with the exception of Document Request No. 66, which requested "All licenses concerning the ALLEGEDLY INFRINGED WORKS," and Requests for Admission No. 497, which was "YOU do not own a copyright to Michael Moorcock's novel 'Stormbringer.'"**

Kearney Decl. at:

- **¶ 66, Ex. 46**: GW's Request for Production of Documents Limited [sic] Set Seven;

- **¶ 63, Ex. 43**: GW's Response To Defendant CHS's Interrogatories Sets Five & Six;

- **¶ 69, Ex. 49:** GW's Responses to CHS's Fourth Set of Requests for Admission.

- **¶97, Ex. 67**: Defendant Chapterhouse Studios LLC's Request for Production of Documents to Games Workshop Limited Set Seven;

- **¶98, Ex. 68**: Defendant Chapterhouse Studios LLC's Interrogatories to Games Workshop Limited Set Five;

- **¶ 99 Ex. 69**: Defendant Chapterhouse Studios LLC's Fourth Set of Requests for Admission.

25. **On August 3, 2012, GW served a revised version of its copyright claim chart ("Second Rev. Copyright Claim Chart") in response to CHS's Interrogatory No. 1. This revised chart dropped GW's copyright claims against 32 CHS products. It includes claims that previously-identified CHS products also infringed dozens of previously-unidentified GW works (only a handful of which GW had produced before GW's March 2, 2012 certification); identified 20 additional, previously-unidentified CHS products; and added copyright claims against 15 of those previously-unidentified CHS products.**

   Dkt. 116: Scheduling Order;

   Dkt. 187: Certification;

   Kearney Decl. **¶6, Ex. 5**: Exhibit A to GW's Answer to Rog. No. 1 (August 3, 2012) ("Second Rev. Copyright Claim Chart");

   Kearney Decl. ¶¶6-9.

26. **GW's Second Rev. Copyright Claim Chart drops 32 copyright claims and adds copyright claims to 15 additional CHS products.**

   Kearney Decl. ¶ 9;

   Kearney Decl. **¶6, Ex. 5:** Second Rev. Copyright Claim Chart.

27. **GW has now acknowledged that CHS products nos. 8, 15, 16, 25, 26, 28-30, 32, 38-42, 44, 70-71, 81, 84-86, 88-89, 91-93, 96, 107, 109, 115-16, and 119 do not infringe its copyrights**.

   Kearney Decl. at:

9

- **¶6, Ex. 5:** Second Rev. Copyright Claim Chart (nos. 8, 15, 16, 25, 26, 28-30, 32, 38-42, 44, 70-71, 81, 84-86, 88-89, 91-93, 96, 107, 109, 115-16, and 119, indicating that each "product implicates trademark issues only, not copyright.");

- **¶5, Ex. 4:** First Rev. Copyright Claim Chart at no. 84 ("This shield does not incorporate any Games Workshop Copyright");

- **¶ 37, Ex. 17**: A. Merrett I Tr. at 199:25 – 200:2 ("We don't contend that [product 38] is actually a copy of a Games Workshop product component or a Games Workshop copyrightable illustration. . . .");

- **¶38, Ex. 18**: Merrett II Tr. at 21:14-15 ("I don't think [product 85] infringes on the copyright of the Games Workshop hammer, no.").

- **¶ 37, Ex. 17**: A. Merrett I Tr. at 14:11-15:15 (Merrett's designations as 30(b)(6) witness, including copyright-related topics);

- **¶49, Ex. 29**: Depo. Ex. 39 (GW's witness designation list).

28. **GW designated Alan Merrett as its 30(b)(6) witness concerning certain topics, including copyright-related topics.**

Kearney Decl. at:

- **¶ 37, Ex. 17**: Merrett I Tr. at 14:11-15:15 (Merrett's designations as 30(b)(6) witness, including copyright-related topics);

- **¶49, Ex. 29**: Depo. Ex. 39 (GW's witness designation list).

29. **GW does not have timely registrations for any individual works at issue in this case.**

Kearney Decl. at:

- **¶68, Ex. 48**: GW's Response 1st Set of RFA, No. 11 ("Games Workshop admits that the only work thus far identified by it in this action that is registered in the United States is Registration No. TX0006541286, 'Games Workshop Complete Catalog & Hobby Reference 2006-2007'");

- **¶96, Ex. 61**: Defendant Chapterhouse Studios LLC's First Set of Requests for Admission, Request No. 11.

30. **GW's Second Rev. Copyright Claim Chart does not identify infringement of its "Games Workshop Complete Catalog & Hobby Reference 2006-2007" (hereinafter, the "Catalog") by any CHS product.**

Kearney Decl. ¶¶84, 105, 107;

- GW's Second Rev. Copyright Claim Chart does not identify the work "Games Workshop Complete Catalog & Hobby Reference 2006-2007" as an allegedly infringed work; (¶ 105)

- GW's First Rev. Copyright Claim Chart does not identify the work "Games Workshop Complete Catalog & Hobby Reference 2006-2007" as an allegedly infringed work; (¶ 107)

*See* Kearney Decl. at:

- **¶6, Ex. 5**: Second Rev. Copyright Claim Chart;

- **¶5, Ex. 4**: First Rev. Copyright Claim Chart.

31. **GW has not specified which works the Catalog contained, if any, that CHS allegedly infringes. There is no record evidence that the works included in the Catalog were created within 5 years of the registration.**

Kearney Decl. ¶ 85.

32. **GW failed to produce the Catalog before either its Certification or the close of fact discovery.**

Kearney ¶ 84 ;

Dkt. 187 : Certification;

Dkt. 116: Scheduling Order.

33. **GW concedes that UK copyright law governs ownership of its alleged copyrights.**

SAC ¶¶ 13, 15;

Kearney Decl. **¶25, Ex. 8**: Bloch Report, ¶ 19 (stating that GW's works were "designed and manufactured in England"); ¶ 29 (acknowledging that ownership of GW's copyrights is determined "as a matter of English law").

11

34. **For nine authors (Gary Chalk; Wayne England; Des Hanley; Clint Langley; Mike McVey; Bob Naismith; Adrian Wild, and Simon Egan), who among them created 15 of GW's alleged works identified as infringed in its Second Rev. Copyright Claim Chart, GW has provided no assignments, no employment agreements, no evidence that those individuals were ever its employees during any relevant times, and was unable to provide the employment dates for these individuals in their interrogatory response, with the exception of Mr. Smith, who was not an employee at relevant times based on GW's interrogatory responses.**

Kearney Decl. ¶ 86;

Kearney Decl. at

- **¶65, Ex. 45**: Plaintiff Games Workshop Limited's Further Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22 (listing alleged authors and dates of employment if any);

- **¶6, Ex. 5**: Second Rev. Copyright Claim Chart;

- **¶60, Ex. 40**: Defendant Chapterhouse Studios LLC's Interrogatories to Games Workshop Limited Set Four.

35. **GW has produced no evidence that the following authors were ever GW employees: Gary Chalk; Wayne England; Des Hanley; Clint Langley; Mike McVey; Bob Naismith; Adrian Wild.**

Kearney Decl. ¶ 86;

Kearney Decl. at:

- **¶65, Ex. 45**: Plaintiff Games Workshop Limited's Further Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22 (listing alleged authors and dates of employment if any);

- **¶47, Ex. 27**: Apr. 2, 2012 John Blanche Depo. Tr. at 48:9-22 ("**Q:** Clint Langley? **A:** I know the name but I know him as a freelance artist for the Black Library . . . ");

- **_Id_**. at 50:19-24 ("**Q:** Was Gary Chalk a freelancer? **A:** He was, yes.").

36. **The evidence that GW produced shows that Adrian Smith was not its employee during the time he created the alleged works.**

12

Kearney Decl. at:

- **¶6, Ex. 5**: Second Rev. Copyright Claim Chart, No. 23 (Adrian Smith credited with work created in 2002);

- *id*. at no. 45 (Adrian Smith credited with work created in 2001).

- **¶65, Ex. 45**: Plaintiff Games Workshop Limited's Further Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22 (alleging GW employed Adrian Smith between 01/12/2008 and 11/09/2009).

37. **The evidence that GW produced shows that Simon Egan was not its employee during the time he created the alleged works.**

Kearney Decl. at:

- **¶5, Ex. 4**: First Rev. Copyright Claim Chart, No. 25 (Simon Egan credited with undated work);

- *id*. at no. 32 (Simon Egan credited with two undated works);

- *id*. at no. 82 (Simon Egan credited with undated work);

- **¶65, Ex. 45**: Plaintiff Games Workshop Limited's Further Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22 (alleging GW employed Simon Egan from 01/06/2004 to the present).

38. **GW's claims of ownership have been inconsistent. It initially represented to CHS and the Court that all works at issue were created by employees; then submitted a declaration by GW's in-house attorney that just three of the works at issue were created by non-employees; and later identified that there are at least "12 works in issue in which . . . independent contractors/freelancers have participated," but did not identify which 12 works.**

Kearney Decl. at:

- **¶ 79, Ex. 59**: Sept. 1, 2011 Hearing Tr. at 30:13-19 ("MR. MOSKIN: The author of each work is Games Workshop as a matter of law. End of story. And if there are specific questions they have about any specific works, they can ask them, but as a matter of law, Games Workshop is the owner of every single work. That's why there is no chain of title issue because **they're all written and created by employees within the scope of their employment** . . . .") (emphasis added);

13

- ***Id***. at 31:1-2 ("MR. MOSKIN: . . . my client has said in an interrogatory answer that that's the truth");

Pl.'s Opp. to Def.'s Mot. for Sanctions & Cross-Mot to Strike, Dkt. 83 (Aug. 15, 2011), at 10, ¶ 19 ("As Games Workshop explained in its responses to Chapterhouse's second set of discovery requests, **all of Games Workshop's works in issue were created by Games Workshop employees.** There is no issue as to any chain of title and no issue as to Games Workshop's ownership of all of the works.") (emphasis added);

Joint Case Management Statement, Dkt. No. 115 (Nov. 16, 2011), at 7 ("Games Workshop has confirmed in interrogatory answers (and reminded Chapterhouse's counsel only yesterday) that **all of the works in issue have been produced by employees within the scope of their employment (with one exception** for which Games Workshop is producing a written contract confirming ownership).") (emphasis added);

Kearney Decl. **¶ 70, Ex. 50**:

- GW's Resp. to CHS's Second Set of Requests for Admission, Response to RFA 337 (Nov. 1, 2011) (in response to CHS's request to admit that "Not all the works for which YOU claim copyrights in this action were created by Games Workshop employees," Plaintiff "admits that **one product at issue in this litigation was created under contract by a third party** but otherwise denies this request.") (emphasis added);

Dkt. No. 130 (12/07/2011): Gillian Stevenson Decl., ¶¶ 2, 5-6 (re: three works);

Kearney Decl. at:

- **¶25, Ex. 8**: Bloch Report, ¶ 22(e) (re: 12 works);
- **¶ 48, Ex. 28**: M. Bloch Depo. Tr. (07/11/2012) at 116:13-20; 117:8-13 (re: 12 works).

39. **Despite CHS's request, GW failed to provide contact information for all but two of "independent contractors/freelancers" referenced in the Bloch Report.**

Kearney Decl. at:

- **¶ 65, Ex. 45**: Plaintiff Games Workshop Limited's Further Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22;
- **¶25, Ex. 8**: Bloch Report at 7-14, 38-42 (re: "independent contractors/freelancers").

40. **GW alleges infringement of numerous miniature toy soldiers, model vehicles, and assorted accessories.**

   Kearney Decl. ¶¶ 6, 12-18: GW's Second Rev. Copyright Claim Chart alleges infringement of numerous miniature toy soldiers, model vehicles, and assorted accessories. *See, e.g.*, **no. 1** (listing two URLs as allegedly infringed works and stating "Miniatures designed by Jes Goodwin, Martin Footit and Dave Thomas"; **no. 2** (listing URL and stating "Models designed by Will Hayes and Phil Stutcinskas"); **no. 3** (stating "Miniature designed by Juan Diaz Ramos"); etc.;

   Kearney Decl. at

   - **¶6, Ex. 5**: Second Rev. Copyright Claim Chart;

   - **¶13, Ex. 6**: (**Products Binder**)

41. **GW claims that CHS product nos. 21, 22, 49, 53-55, 97-100 infringe only the "shape/design of the underlying shoulder pad," and CHS products nos. 48, 49, 50, 54-56 feature simple geometric shapes such as two arrows crossed in an X; a half-hemisphere shape; a chevron; or an arrow.**

   Kearney Decl. **¶13, Ex.6**: **Products Binder**, tabs 21, 22, 48, 49, 50, 53- 56, and 97-100.

42. **The only element in CHS's product no. 48 that is similar to GW's alleged work is the public domain symbol of arrows crossed in an X.**

   Kearney Decl. **¶13, Ex.6**: **Products Binder**, tab 48.

43. **CHS's products nos. 54 and 55 are simple half-hemisphere shapes.**

   Kearney Decl. at:

   - **¶13, Ex.6**: **Products Binder**, tabs 49, 54, 55.

   - **¶38, Ex. 18**: Merrett II. Tr. at 44:20-22:

        Not every shoulder pad that Games
        Workshop produces for its Space Marines include all of
        those characteristics [GW's Second Rev. Copyright Claim Chart, No. 54].

   - **¶ 37, Ex. 17**: Merrett I Tr. at 14:11-15:15 (Merrett's designations as 30(b)(6) witness, including copyright-related topics);

15

- **¶49, Ex. 29**: Depo. Ex. 39 (GW's witness designation list).

44. **The only element in CHS's product no. 50 that is similar to GW's alleged work is the public domain symbol of chevron / inverted V.**

   Kearney Decl. **¶13, Ex.6**: **Products Binder**, tab 50.

45. **The only element in CHS's product no. 56 that is similar to GW's alleged work is the public domain symbol of an arrow.**

   Kearney Decl. **¶13, Ex.6**: **Products Binder**, tab 56.

46. **Each of CHS's products nos. 12, 13, 33, 46, 47, 51, 52, and 57 - 62 combines a simple symbol, namely a chevron, arrow, sawblade, or X symbol, together with a Roman numeral or a teardrop shape.**

   Kearney Decl. at:

   - **¶6, Ex. 5**: Second Rev. Copyright Claim Chart;

   - **¶13, Ex. 6**: Products Binder, **tabs 12, 13, 33, 46, 47, 51, 52, and 57 - 62.**

47. **GW claims that many of CHS's products infringe its copyrights because they are "designed…to be used with" or are "of a size and scale to fit with" various GW products.**

   *See, e.g.,* Kearney Decl. at

   - **¶6, Ex. 5**: Second Rev. Copyright Claim Chart, Nos. 6, 7 ("This product is designed to be used with other Games Workshop Products . . . It is of a size and scale to fit with Games Workshop products.");

   - *id*. at no. 69 ("The Chapterhouse product is designed and of a size and scale to be used with Games Workshop products…").

48. **Alan Merrett, GW's 30(b)(6) designee on copyright infringement, testified that the best he could "come up with" with respect to CHS Product No. 95 is that it was "a copy of [GW's] idea."**

   Kearney Decl. at:

16

- **¶38, Ex. 18**: Merrett II Tr. at 32:13-15 ("I am sorry, it is a copy of our idea. This thing is a copy of our idea. That is the best I can come up with.");

- **¶ 37, Ex. 17**: Merrett I Tr. at 14:11-15:15 (Merrett's designations as 30(b)(6) witness, including copyright-related topics);

- **¶49, Ex. 29**: Depo. Ex. 39 (GW's witness designation list).

49. **GW bases a number of its claims of copyright infringement on the names and titles of its alleged works.**

Kearney Decl. **¶6, Ex. 5**: Second Rev. Copyright Claim Chart (including references to "Tactical" (**no. 2**); Terminator" (**no. 5**); "Heresy" (**no. 76**); "Power armour" (**no. 3**); *and see* **nos. 1, 31, 66** ("thunder hammer"); **no. 27** ("power fist"); **nos. 28-30, 81, 83-84, 86** ("storm shield"); **nos. 2, 76-79, 87, 90, 93, 96-98** ("heresy"); **3, 67** ("chaplain"); and numerous other examples.).

50. **GW fails to alleged that any GW work is infringed by 4 of the 20 newly-identified CHS products in its Second Rev. Copyright Claim Chart:  nos. 118, 119, 129, and 143.**

Kearney Decl. **¶6, Ex. 5**: Second Rev. Copyright Claim Chart (nos. 118, 119, 129, 143).

51. **CHS product no. 110 has not yet been cast, and has never been sold or offered for sale.**

Kearney Decl. **¶6, Ex. 5**: Second Rev. Copyright Claim Chart at no. 110;

Villacci Decl. ¶14.

## PLAINTIFF GW'S TRADEMARK CLAIMS

52. **On March 9, 2012, in its second supplemental response to Interrogatory No. 18 ("Rog 18 Response"), GW claimed 110 marks were infringed by CHS—omitting 17 marks alleged in its Second Amended Complaint ("SAC") , and adding 44 marks not alleged in its SAC.  The 17 omitted marks are: WARHAMMER 40,000; TYRANID; BLOOD RAVENS MARINES; ALPHA LEGION; BONESWORD; GAUNT; HOWLING GRIFFONS; LASHWHIP; LUNA WOLVES; MANTIS WARRIORS; MK ARMOUR; MYCETIC SPORE; SONS OF RUSS; SWARMLORD; THUNDER ARMOUR; TERVIGON; and YMGARL.**

SAC ¶¶ 56, 58;

Kearney Decl. at:

- **¶62, Ex. 42**:  Pl. Games Workshop Ltd's Second Supp. Resp. to CHS Rogs Set 4 at No. 18 ("Rog 18 Response");

- **¶60 Ex 40**: CHS Rog. Set 4, Rog. No. 18 (Jan. 6, 2012).

53. **Andrew Jones, GW's Head of Legal, Licensing and Strategic Project and GW's 30(b)(6) witness on trademark-related topics, confirmed that GW's Rog 18 Response is a comprehensive list of the GW marks at issue in this lawsuit (hereinafter, the "Marks At Issue").**

Kearney Decl. at:

- **¶ 33, Ex. 15**: Andrew Jones Depo. Tr. at 13:22 – 14:8 (confirming that GW's Rog 18 Response is a comprehensive list of the GW marks at issue in this lawsuit);

- **¶ 33, Ex. 15**: A. Jones Tr., at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records),

- **¶49, Ex. 29**: Depo. Ex. 39 (GW's (30(b)(6) designation list);

- **¶ 100, Ex. 66**: Depo. Ex. 114 (Rog 18 Response);

- **¶62, Ex. 42**  :  (Rog 18 Response).

54. **On June 3, 2011, CHS requested from GW "[o]ne exemplar of the use in commerce in the United States of each of the marks You claim in this action."  On July 5, 2011, GW agreed to produce documents responsive to this request.**

Kearney Decl. at:

- **¶67, Ex.47**: CHS Req. for Prod. of Docs  Set 2, No. 7;

- **¶108, Ex. 70**: GW's Response to Request for Production of Documents Set Two, No. 7 (July 5, 2011).

55. **On January 6, 2012, CHS requested, for each of GW's alleged marks, the date of first use in U.S. commerce and the nature of such use.  GW agreed to produce responsive documents, "*including the actual packaging of the sculptural works bearing copyright dates of first publication and . . . copies of its literary works bearing the dates of first publication and sale.*"  (italics in original).**

18

Kearney Decl. at:

- **¶60, Ex. 40**: CHS Rog. Set 4, Rog. No. 18 (Jan. 6, 2012);

- **¶61, Ex. 41**: GW's Supp. Response to CHS's Interrogatories Set Four (Mar. 2, 2012) (Rog. No. 18).

56. **GW did not produce physical specimens of boxes or packaging for its miniature toys or tabletop games.  GW produced complete copies of only 13 of its dozens of alleged literary works, including three works whose originals were in color, but which GW produced only in the form of black-and-white scans.**

Kearney Decl. ¶83.

57. **GW 30(b)(6) witness Andrew Jones abandoned GW's claims that the following are GW trademarks:**

| "wings." | Kearney Decl. ¶3, Ex.15: A. Jones Tr. at 128:19-20 ("It is an interesting question, isn't it, because "wings", do we claim that we own wings as a unique trademark, no…"). |
|---|---|
| "skulls" | *Id.* at 81:14-16 ("I couldn't find a particular example of a stylized skull that I would contend is being used as a trademark…"). |
| "Roman numerals (combined with) arrows." | *Id.* at 77:17-78:1 ("what I am saying is we cannot claim to exclusively own Roman numerals with or without arrows. That is what I am saying.") |
| "Tau – oval vents." | *Id.* at 108:4-6 ("I don't think we would use oval vents as a particular trademark.") |
| "plasma." | *Id.* at 74:7-12 ("I would call out "plasma", simply because certainly we have products that we have sold as, you know, Plasma Gun, what have you, but I can't remember us trying to use 'plasma' specifically as a trademark on its own."). |
| "tactical." | *Id.* at 164:8-21 ("**Q** So in this lawsuit is Games Workshop contending that the word phrase "Tactical" is a trademark at issue or that Chapterhouse has infringed Games Workshop's copyright to the word?  **A** It will be once again the unique association of the elements that are at issue. So it will be the association of the |

| | word "Tactical" with the word "Space Marine", with particular armour, weapon combinations, and that will be at issue, not the word in isolation, "Tactical." **Q** For clarification on the record, the word phrase "Tactical" in isolation, Games Workshop is not claiming that it is -- **A** No."). |
|---|---|
| "halberd." | *Id.* at 71:6-72:16 ("my opinion is that 'Halberd' we cannot claim as an exclusive trademark."). |
| "broadswords." | *Id.* at 75:14 ("I put 'broadswords' in the same category as Halberds."). |
| "overlapping/banded armour." | *Id.* at 120:5-8 ("**Q** Let's move on to the overlapping/banded armour? **A** As a trademark, I don't know what that refers to."). |
| "Tau – geometric groves." | *Id.* at 74:12-14 ("I don't know what 'Tau Geometric Groves' is. It might be supposed to say 'Grooves.' It sounds like it is rather to do with trees."). |
| "wolf fur." | *Id.* at 83:3-7 ("**Q** Then with respect to wolf fur -- **A** Yes. Honestly, I can't imagine why we are holding it up. That is one that I would not say why we are holding it. I would say why are we holding up wolf fur as a particular trademark."). |
| "snakes" | *Id.* at 76:20-25 ("Again, we have a chapter of Space Marines called Iron Snakes, and it has a particular snake symbol which is a trademark rather in the way 'cog' is, but I don't think we would claim that 'snakes' is entirely our exclusive trademark."). |

Factual Support:

Kearney Decl. at:

- **¶ 33, Ex. 15**: A. Jones Tr. (*passim*);

- *Id.* at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

- **¶49, Ex. 29**: Depo. Ex. 39 (GW's (30(b)(6) designation list).

58. **The Marks At Issue include 11 registered marks and 99 unregistered marks.**

Kearney Decl. ¶81.

59. **GW's retail stores in the U.S. do not carry the full range of its products.**

Kearney Decl. **¶33, Ex. 15**: A. Jones Tr. at 20:21-21:6; 23:1-5:

> Q   So to backtrack about the retail range
> that is sold in the United States, so the retail range
> sold in the United States is only a subset of the
> Games Workshop entire product line?
>
> A   Yes . . . .

*Id*. at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

Kearny Decl. **¶49, Ex. 29**: Depo. Ex. 39 (GW's (30(b)(6) designation list).

60. **Records concerning sales in the United States are kept by GW's U.S. business, GWR.**

Kearney Decl. **¶33, Ex. 15**: A. Jones Tr. at 24:25-25:18;

*Id*. at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records),

Kearney Decl. **¶49, Ex. 29**: Depo. Ex. 39 (GW's (30(b)(6) designation list).

61. **GW has no sales records proving if or when a particular product was sold in the U.S., or in any particular geographical area such as in Illinois.**

Kearney Decl. **¶33, Ex. 15**: A. Jones Tr. at:

- 23:24-24:11 ("….Have we got records that show that every single item has been sold in the States, I don't know, sorry. . . ."); 22:9-12; 24:12-25:2; 25:14-26:18; 40:20-41:4; 60:20-24;  214:19-215:14;

- 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

Kearney Decl. at:

- **¶49, Ex. 29**: Depo. Ex. 39 (GW's (30(b)(6) designation list);

21

- **¶ 100, Ex. 66**: Depo. Ex. 114 (Rog 18 Response);

Kearney Decl. ¶36, Ex. 16 : S. Casey Tr. at:

- 37:23 – 38:4 ("Some products are not sold in our retail stores that are sold through the Internet");

- 42:13-43:3; 50:7-51:3; 51:7-12; 64:11-65:1; *e.g.*, at 50:14-18:

> Q…..For any given particular product,
> would Games Workshop Retail have a record of when
> it first sold that product in the U.S.?
>
> A.    That would not be readily available,
> no….

Kearney Decl. at:

- **¶36, Ex. 16**: S. Casey Tr. at 12:22-13:1(re: Casey's designation as 30(b)(6) witness for GWR);

- **¶52 , Ex. 33**: CHS's Deposition Subpoena to GWR;

- **¶51 , Ex. 31**: CHS's Document Subpoena to GWR;

- **¶94 , Ex. 32**: GWR's Response to [Document] Subpoena;

- **¶53 , Ex. 34**: Response to [Deposition] Subpoena to GWR;

- **¶95 , Ex. 60**: Re-Notice of Subpoena to GWR.

62. **GW did not produce itemized sales invoices or purchase orders for each or any of the Marks At Issue, including any sales invoices or purchase orders for Internet or retail sales in the U.S. or Illinois.**

Kearney Decl. ¶ 87, 92.

Kearney Decl. at:

- **¶36, Ex. 16**: Sandra Casey Depo. Tr. (March 1, 2012) at 93:14-17:

> Q.    Has Games Workshop Retail produced any
> documents to the Defendants in response to the
> document subpoena?

22

A. No.

**¶33 Ex. 15**: Jones Dep. at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records),

- **¶49, Ex. 29**: Depo. Ex. 39 (GW's (30(b)(6) designation list).

63. **GW 30(b)(6) witness Andrew Jones identified 36 of the Marks At Issue as design marks (symbols, icons, or designs). Only the Aquila Design is identified as a registered mark in the SAC.**

Kearney Decl. ¶35;

Kearney Decl. at:

- **¶100, Ex. 66**: Rog 18 Response (35 symbol marks from "skulls" to end of list);

- **¶ 33, Ex. 15**: Jones Depo. Tr.:

| *Mark* | *Identified as symbol mark (A. Jones Tr. at:)* |
|---|---|
| Warhammer 40,000 | 128:18-129:10 (discussing "the Warhammer 40,000 logo") |
| Aquila | 165:4 ("The Aquila is a symbol") |
| Skulls | 76:9-18, 80:3-81:19 |
| Wings (eagle wings, angel wings) | 128:12-129:10, 129:22-130:2 |
| Lions | 89:20-90:4 |
| Griffon | 89:20-90:4 |
| Triptychs | 89:20-90:4, 90:14-24 |
| Broadswords | 90:12-13 |
| Skull with horns | 91:8-18 |
| Storm bolter (gun) | 91:18-21 |
| Sawblade with blooddrop | 92:22-93:2 |
| Clenched first in a gauntlet | 94:8-18 |
| Snakes | 76:20-25 |
| Flaming skulls | 106:4-5 |
| Flaming chalice | 106:6-9 |

23

| | |
|---|---|
| Salamander | 107:6-11 |
| Dragon/salamander scales pattern | 107:14-24 |
| Tau Symbol | 107:25-108:15 |
| Tau – Oval vents | 108:4-8 |
| Tau – X marking on power/ammo packs | 108:23-109:19 |
| Tau – circle with a diagonal line through it | 108:23-109:19 |
| Tau – geometric groves | 74:12-14; 108:23-109:19 |
| Roman numerals (combined with) arrows | 77:2-79:11 |
| X crosses and inverted V | 109:23-110:12, 110:20-111:1 |
| Cog | 75:16-23 |
| Iron hands icon – gauntleted left hand shown palm downwards | 119:8-14 |
| Overlapping/banded armour | 120:5-11 |
| Wolf fur | 81:20-82:23 |
| Wolf skulls | 81:20-82:23 |
| Wolf tails | 81:20-82:23 |
| Raven wings with blood drop in center | 120:15-121:10 |
| I symbol (for Inquisition) | 124:11-20 |
| Scarab beetles | 126:1-16 |
| Spirit stones | 126:19-127:21 |
| Eldar iconography/symbols (seer icons, etc.) | 127:5-21 |
| Eldar – Spirit Stones | 127:5-21 |
| Eldar – decorative gems on weapons | 126:19-127:21 |

- **¶ 33, Ex. 15**: Jones Depo. Tr. at 87:7-14 (confirming Rog. 18 Response from "skulls" to the end of the list refers to symbols):

```
7               Q    Turn to page 4.  You see where it says

8        "skulls" towards the bottom of the page?

9               A    Yes.

10              Q    And from that point to the end of the

11       list of entries on page 6, let's focus with respect to

12       those trademarks, let's focus on those being actually

13       symbols --

14              A    Okay.
```

64. **In its response to CHS's Interrogatory No. 18 ("Rog 18 Response"), which required GW to identify each allegedly infringed trademark, GW did not include a copy of its icons or identify Bates numbers for corresponding exemplars of trademark use.**

24

Kearney Decl. **¶100, Ex. 66**:  Rog 18 Response.

65. **GW 30(b)(6) witness Andrew Jones did not know whether GW produced exemplars for trademark use of each of the Marks At Issue.**

Kearney Decl. **¶ 33, Ex. 15**: Jones Depo. Tr. at 31:21-32:6:

> **Q:** What documents have Games Workshop provided to the defendants showing the trademarks used on a product for each of the years associated with these dates?
>
> **A:** . . . I can't tell you exactly which of these hundreds of trademarks we have actually sent you products about.

*Id.* at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

**¶49, Ex. 29**: Depo. Ex. 39 (GW's (30(b)(6) designation list).

66. **When asked to describe trademark use for SOUL DRINKER and Grenade Launcher, GW 30(b)(6) witness Andrew Jones contended that GW used them as trademarks in a title of books and book excerpts.**

Kearney Decl. ¶ 33, Ex. 15: Jones Depo. Tr.:

- 163:14-17 (". . . I couldn't say whether we have released any other Soul Drinker products. Probably not. But yes, the Soul Drinker product I was thinking about was the 2002 book by that title.");

- 66:15-17 ("The first product I know that Grenade Launchers were in, the Warhammer 40,000 rule book.").

67. **GW 30(b)(6) witness Andrew Jones failed to identify any trademark use concerning the design marks LIONS;  COG;  TRIPTYCH;  SKULL WITH HORNS;  FLAMING SKULLS;  FLAMING CHALICE;  and DRAGON/SALAMANDER SCALE.**

Kearney Decl. **¶ 33, Ex. 15**: Jones Depo. Tr.:

- "lions" (Jones Depo. Tr. at 89:23-25);
- "cog" (*id.* at 75:16-18; 112:6-13);

25

- "Triptych" (*id.* at 90:25-91:3);
- "skull with horns" (*id.* at 91:13-18);
- "flaming skulls" (*id.* at 106:4-5);
- "flaming chalice" (*id.* at 106:13-14);
- "Dragon/Salamander Scale" (*id.* at 107:21-24).
- 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

Kearney Decl. **¶49, Ex. 29**: Depo. Ex. 39 (GW's (30(b)(6) designation list).

68. **GW conducts minimal advertising in the United States.**

Kearney Decl. **¶36, Ex. 16**: S. Casey Tr. 43:9-15:

> Q.    What type of advertising does Games Workshop Retail do?
> A.    We don't do traditional advertising.
> Q.    What type of nontraditional advertising do you do?
> A.    Our advertisement is word of mouth from our customers.

Kearney Decl. **¶43, Ex. 23**:  Stevenson II Tr. at 203:19 to 204:14;

> Q   Does Games Workshop have records to determine its advertising expenditures in the United States?
> A   If it had any, then it would.
> Q   And what do you mean if it had any?
> A   Well, if you don't advertise, it doesn't cost you anything.
> Q   So Games Workshop is not advertising in the United States?
> A   They have in the past very occasionally run very localized adverts; but as a general course of business, Games Workshop does not advertise.

Kearney Decl. **¶ 42, Ex. 22**: G. Stevenson I. Tr. at 17:22-19:25 (re: Stevenson's designations as 30(b)(6) witness, including on topics concerning document collection, confusion, CHS, and trademark policies);

Kearney Decl. **¶49, Ex. 29**: Depo. Ex. 39 (designation list).

26

69. **GW has not conducted any consumer surveys or testimonials, or commissioned any expert reports, concerning any of the Marks At Issue.**

Kearney Decl. ¶91;

Kearney Decl. at:

- **¶ 33, Ex. 15**: Jones Tr. at 223:20-224:2:

    Q . . . Has Games Workshop commissioned any studies by an independent research service to evaluate the fame of its trademarks in the US?

    A   No, not to my knowledge we have not.  I suppose the closest you would get to a valuation is the fact that companies like THQ sign up to million of dollars of guarantees in the licensing agreements we have in place with them.

- *Id*. at 225:3 – 226:8:

    Q: . . . Has Games Workshop conducted any studies to determine the brand recognition with respect to its trademark in the United States?

    A   I certainly have not been involved in anything like that.  I guess our US sales business might have done so at some point in its history.

- *Id*. at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

Kearney Decl. **¶49, Ex. 29**: Depo. Ex. 39 (GW's (30(b)(6) designation list).

70. **In its response to  Interrogatory No. 3 ("Rog 3 Response"), which required GW to identify allegedly infringing use by CHS for each mark that GW alleges is at issue in this case, GW did not identify use by CHS of 55 of the Marks At Issue. Those 55 Marks At Issue are:**

| | | |
|---|---|---|
| 1.   Warhammer 40K | 2.   Cadian | 3.   Chimera |
| 4.   Grenade Launcher | 5.   Halberd | 6.   Heresy Armour |
| 7.   Hellhound | 8.   Howling Banshee | 9.   Imperial Guard |
| 10. Jetbike | 11. Jump Pack | 12. Librarian |
| 13. Plasma | 14. Predator | 15. Scorpion |
| 16. Stormraven | 17. Techmarine | 18. Terminator |

| | | |
|---|---|---|
| 19. Thunder Hammer | 20. Tyrant | 21. Skulls |
| 22. Wings (eagle wings, angel wings) | 23. Lions | 24. Griffon |
| 25. Triptychs | 26. Broadswords | 27. Skull with horns |
| 28. Storm bolter (gun) | 29. Sawblade with blood-drop | 30. Clenched first in a gauntlet [sic] |
| 31. Snakes | 32. Flaming skulls | 33. Flaming chalice |
| 34. Salamander | 35. Dragon/salamander scales pattern | 36. Tau Symbol |
| 37. Tau – Oval vents | 38. Tau – X marking on power/ammo packs | 39. Tau – circle with a diagonal line through it |
| 40. Tau –geometric groves | 41. Roman numerals (combined with) arrows | 42. X crosses and inverted V |
| 43. Cog | 44. Iron hands icon – gauntleted left hand shown palm downwards | 45. Overlapping/banded armour |
| 46. Wolf fur | 47. Wolf skulls | 48. Wolf tails |
| 49. Raven wings with blood drop in center | 50. I symbol (for Inquisition) | 51. Scarab beetles |
| 52. Spirit Stones | 53. Eldar iconography/symbols (seer icons, etc.) | 54. Eldar – Spirit Stones |
| 55. Eldar – decorative gems on weapons | | |

Factual Support:

Kearney Decl. ¶59;

Kearney Decl. at:

- **¶55, Ex. 36**: Defendant Chapterhouse Studios LLC's Interrogatories to Games Workshop Limited Set 2 (Interrogatory No. 3);

- **¶56, Ex. 37**: Pl. Games Workshop Ltd's Resp. to CHS Rogs Set 2, at No. 3 ("Rog 3 Response");

- **¶100, Ex. 66**: Rog 18 Response.

71. **The following seven Marks At Issue are not used on the Chapterhouse website, www.chapterhouse.com: Aquila Design; BLOOD ANGELS; CHAOS SPACE MARINES; HORUS HERESY; LAND SPEEDER; MK II ARMOUR; TERMEGANTS.**

SF:338464.13

Kearney Decl. ¶93.

72. **GW's U.S. business has no records of U.S. customers expressing confusion between CHS and CHS or even inquiring about CHS.**

Kearney Decl. **¶36, Ex. 16**: S. Casey Tr. 58:23-59:20:

> Q.    Does Games Workshop Retail have any records of customers expressing confusion between their products and Chapterhouse products?
>
> A.    Not to my knowledge.
>
> Q.    Does Games Workshop Retail have any records of anyone writing into the company about Chapterhouse Studio?
>
> A.    Not to my knowledge.

Kearney Decl. at:

- **¶36, Ex. 16**: S. Casey Tr. at 12:22-13:1(re: Casey's designation as 30(b)(6) witness for GWR);

- **¶52 , Ex. 33**: CHS's Deposition Subpoena to GWR;

- **¶51 , Ex. 31**: CHS's Document Subpoena to GWR;

- **¶94 , Ex. 32**: GWR's Response to [Document] Subpoena;

- **¶53 , Ex. 34**: Response to [Deposition] Subpoena to GWR;

- **¶95 , Ex. 60**: Re-Notice of Subpoena to GWR.

73. **GW produced emails with five individuals not affiliated with GW relating to CHS. The emails were received by GW's legal team in the United Kingdom. Based on the email addresses, one of the emails appears to have been sent from Australia and another two appears to have been sent from the United Kingdom. For the other two emails, Gillian Stevenson, GW's 30(b)(6) witness regarding confusion related to CHS, testified that it would not be possible to determine whether those emails were sent from individuals residing in the United States based on the emails.**

Kearney Decl. **¶43, Ex. 23**:  Stevenson II Tr. at:

29

- 103:18-23 (re: Tamila Fox is a member of GW's legal team);

- 122:14-123:10:

    Q   Has Games Workshop received any communications from individuals in the United States concerning Chapterhouse Studios?  And just for clarification, this question does not include Games Workshop's employees or agents, such as attorneys.

    A   That would be impossible for me to say….

- 142:20-143:1 (re: Australian email address; Depo. Ex. 84);

- 147:19-148:8, 150:2-14 (re: British email addresses; Depo. Exs. 85, 87);

- 147:15-18 (re: no indication that sender resided in the U.S.; Depo. Ex. 86);

- 151:9-13, (re: no indication that sender resided in the U.S.; Depo. Ex. 88).

Kearney Decl. at:

- **¶101, Ex. 62**: Depo. Ex. 84 (CONFIDENTIAL);
- **¶102, Ex. 63**: Depo. Ex. 85 (CONFIDENTIAL);
- **¶103, Ex. 64**: Depo. Ex. 86 (CONFIDENTIAL);
- **¶104, Ex. 65**: Depo. Ex. 87 (CONFIDENTIAL);
- **¶45, Ex. 25**: Depo. Ex. 88 (CONFIDENTIAL).
- **¶49, Ex. 29**: Depo. Ex. 39 (designation list).

Kearney Decl. **¶ 42, Ex. 22**: G. Stevenson I. Tr. at 17:22-19:25 (re: Stevenson's designations as 30(b)(6) witness, including on topics concerning document collection, confusion, CHS, and trademark policies).

74. **Gillian Stevenson, GW's 30(b)(6) witness regarding confusion related to CHS, testified that "I don't know that the original author is confused," with respect to Depo. Ex. 88.**

Kearney Decl. at:

- **¶43, Ex. 23**:  Stevenson II Tr. at 151:1-8, Depo. Ex. 88;

- **¶45, Ex. 25**: Depo. Ex. 88 (CONFIDENTIAL);

30

- **¶ 42, Ex. 22**: G. Stevenson I. Tr. at 17:22-19:25 (re: Stevenson's designations as 30(b)(6) witness, including on topics concerning document collection, confusion, CHS, and trademark policies);

- **¶49, Ex. 29**: Depo. Ex. 39 (designation list).

75. **GW's 30(b)(6) witness Gillian Stevenson wrote "And another one who clearly is not confused!" after reviewing an email from a individual concerning CHS.**

Kearney Decl. at:

- **¶43, Ex. 23**:  Stevenson II Tr.  at 151:16-152:10; Depo. Ex. 88-89;

- **¶45, Ex. 25**: Depo. Ex. 88 (CONFIDENTIAL);

- **¶46, Ex.26**: Depo. Ex. 89 (CONFIDENTIAL).

- **¶ 42, Ex. 22**: G. Stevenson I. Tr. at 17:22-19:25 (re: Stevenson's designations as 30(b)(6) witness, including on topics concerning document collection, confusion, CHS, and trademark policies);

- **¶49, Ex. 29**: Depo. Ex. 39 (designation list).

76. **Purchasers of wargaming miniatures and accessories are aficionados and likely to exercise a great deal care in their purchases, spending hundreds of hours using the products, with collections taking up entire rooms, etc.**

Villacci Decl. ¶8:

77. **GW has not conducted studies to evaluate the public's recognition of its marks, or the size of the market it competes in.**

Kearney Decl. at:

- **¶ 33, Ex. 15**: Andrew Jones Tr. at 225:3-20;

- *Id*. at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

- **¶49, Ex. 29**: Depo. Ex. 39 (GW's (30(b)(6) designation list).

31

78. **There is no evidence that the parties sell their respective products through the same websites, retail stores, or distributors.**

Kearney Decl. ¶ 106;

Kearney Decl. at:

- **¶ 56 ,Ex. 37**: GW Response to CHS Interrogatories Set 2 (Interrogatory 11) ("Games Workshop sells copyrighted products at issue on the Internet, at special events and in retail stores.");

- **¶ 58 ,Ex. 39**: Defendant Chapterhouse Studios LLC's Second Supplemental Response to Games Workshop's Ltd.'s Second Set of Interrogatories to Chapterhouse Studios LLC (Nos. 3-13) (Interrogatory 9) (listing websites and physical locations where Chapterhouse has sold products that GW claims infringe its copyrights).

79. **GW has produced no evidence that it advertises on the same websites or in the same publications as CHS.**

Kearney Decl. ¶ 106.

80. **GW has produced no sales invoices or other records showing that GW and CHS distributed goods in any particular geographical area that overlap.**

Kearney ¶ 87.

Dated: August 14, 2012

Respectfully submitted,

/s/_____Thomas J. Kearney_____
Jennifer Golinveaux (CA Bar No. 203056)
Dean A. Morehous (CA Bar No. 111841)
K. Joon Oh (CA Bar No. 246142)
Thomas J. Kearney (CA Bar No. 267087)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Phone: (415) 591-1000
Fax: (415) 591-1400
jgolinveaux@winston.com
dmorehous@winston.com
koh@winston.com
tkearney@winston.com

32

Eric Mersmann (IL Bar No. 6286859)
Jonathon Raffensperger (IL Bar No. 6302802)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600
Fax: (312) 558-5700
emersmann@winston.com
jraffensperger@winston.com

SF:338464.13

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas J. Kearney, an attorney, hereby certify that on August 14, 2012, I caused to be filed electronically the foregoing LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.


_____/s/ Thomas J. Kearney_____

SF:338464.13
CHI:2675554.2