**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC and | ) | |
| JON PAULSON d/b/a PAULSON GAMES, | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF THOMAS J. KEARNEY IN SUPPORT OF
DEFENDANT CHAPTERHOUSE STUDIOS LLC'S OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I, Thomas J. Kearney, declare as follows:

1.      I am an associate attorney with the law firm of Winston & Strawn LLP.  I am a member in good standing of the Bar of the State of California, and on February 14, 2011 was admitted *pro hac vice* to the bar of this Court for purposes of this action.  I have personal knowledge of the facts set forth herein and if called to testify could and would do so competently.

2.      GW's Ex. 126, which is depicted at GW's Statement of Undisputed Facts No. 59 and which GW's attorney Jonathan Moskin characterizes (without any foundation) as "[a] copy of the back of Chapterhouse's Generic Power Armour Shoulder Pad for Space Marine," is not a picture of that product. *See* GW MSJ Ex. 126; GW MSJ Ex. 4 ("Moskin Decl.") at ¶ 86. Attached as **Exhibit 1** is a true and correct copy of an image depicting the back of Chapterhouse's actual "Power Armor Shoulder Pad for Space Marine" product referenced at GW's SUF No. 59 and Moskin Decl. ¶ 86. Exhibit 1 was created by an attorney working under

1

my supervision. For ease of reference, the image in Exhibit 1 is shown below, side by side with

the relevant portion of GW's Exhibit 126:





Back of CHS "Power Armor
Shoulder Pad for Space Marine
(CHS Product No. 54)

DETAIL of GW Ex. 126

3.    In its January 19, 2012 Second Amended Complaint ("SAC"), GW alleged that

CHS infringed 83 marks. Dkt. 147 ¶¶ 56, 58. In its March 9, 2012 Second Supplemental

Response to Interrogatory No. 18 (the "Rog 18 Response"), GW claimed CHS infringed 110

marks—omitting 17 of the marks alleged in its SAC , and adding 44 marks not alleged in its

SAC.  Between the SAC and the Rog 18 Response, GW has thus alleged infringement of 127

claimed marks.

4.    **Exhibit 2** is a true and correct copy of CHS's Deposition Exhibit 114, which is

GW's Second Supplemental Response to CHS's Interrogatories Set Four (the "Rog 18

Response").

5.    **Exhibit 3** is a true and correct copy of relevant pages of the Andrew Jones

Deposition Transcript (Apr. 3, 2012) ("Jones Dep.").

6.    **Exhibit 4** is a true and correct copy of CHS's Deposition Exhibit 39, which is a

list designating GW's 30(b)(6) witnesses on various topics.

7.    I have reviewed the documents GW has produced in this case. GW has produced

no sales invoices or purchase orders for any of the Marks At Issue, including any sales invoices

of Internet or retail sales in the U.S. or in the Illinois.

8.      Before the deposition of Andrew Jones, GW's 30(b)(6) witness concerning GW's revenues and related records, GW had produced 13 pages of sales records Bates numbered GW0002576 –2588. GW had produced no other sales records at that time.

9.      On April 1, 2011, CHS served contention interrogatories seeking the basis for GW's claims and identification of the specific works allegedly infringed. GW responded to CHS's First Set of Interrogatories on May 4, 2011 (the "Rog 1 Response"). The Rog 1 Response included, as Exhibit A, a chart purporting to identify, for each of CHS's products, the GW works that the CHS product infringed. (Hereinafter, Exhibit A to the Rog 1 Response is referred to as the "Original Copyright Claim Chart".) The Original Copyright Claim Chart contained numbers indicating it had 97 entries, but it identified only 95 CHS products because entry 91 was left blank, and there was no entry 66. **Exhibit 5** is a true and correct copy of the Rog 1 Response, including the Original Copyright Claim Chart.

10.     On January 19, 2012, I received a revised version of Exhibit A to Games Workshop Ltd.'s Answer to Interrogatory No. 1 (the "First Rev. Copyright Claim Chart") by email from GW's counsel. **Exhibit 6** is a true and correct copy of that First Rev. Copyright Claim Chart. The First Rev. Copyright Claim Chart identified 26 previously-unidentified CHS products, for a total of 121 CHS products. The First Rev. Copyright Claim Chart also supplemented the list of GW works allegedly infringed by both the newly-identified and previously-identified CHS products. The First Rev. Copyright Claim Chart changed the numbering scheme of the Original Copyright Claim Chart by identifying new products out of sequence.

11.     On August 3, 2012, I received by email from GW's counsel a document entitled

"EXHIBIT A to Games Workshop Ltd.'s Answer to Interrogatory No. 1" (hereinafter "Second Rev. Copyright Claim Chart"). GW's counsel wrote that the document was "the revised claim chart." **Exhibit 7** is a true and correct copy of the Second Rev. Copyright Claim Chart. GW's Second Rev. Copyright Claim Chart is a table with three columns:

- **Column 1** simply assigns a sequential number to each CHS product.

- **Column 2** identifies a CHS product by name and website description.

- **Column 3** identifies the GW work or works that the corresponding CHS product allegedly infringes.

The Second Rev. Copyright Claim Chart contains numbers indicating it has 143 entries, but it identifies only 141 CHS products because entries 125 and 127 are blank. The Second Rev. Copyright Claim Chart again changed the numbering scheme of the First Rev. Copyright Claim Chart by identifying new products out of sequence.

12.     **Exhibit 8** is a true and correct copy of Plaintiff Games Workshop Limited's Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22 dated March 13, 2012.

13.     **Exhibit 9** is a true and correct copy of Plaintiff Games Workshop Limited's Further Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22 dated May 3, 2012.

14.     **Exhibit 10** is a true and correct copy of the Jeremy Goodwin Deposition Transcript (March 7, 2012) ("Goodwin Dep.").

15.     **Exhibit 11** is a true and correct copy of excerpts of the John Blanche Deposition Transcript (Apr. 2, 2012) ("Blanche Dep.").

16.     **Exhibit 12** is a true and correct copy of documents GW produced, Bates labeled GW0004947-4948. These documents depict the front and back of the package for a product

called "Eldar Warlock with Witchblade." The packaging consists of a cardboard backing to which a clear plastic "blister" is attached, with the "Eldar Warlock with Witchblade" product clearly visible inside the plastic (GW0004948). The product contains only a base and a one-piece miniature figure that does not require assembly. The packaging gives no indication of who created the original miniature from which this product was cast.

17.     **Exhibit 13** is a true and correct copy of the Neil Hodgson Deposition Transcript (March 5, 2012)("Hodgson Dep.").

18.     **Exhibit 14** is a true and correct copy of the May 1, 2012 Rule 26(a)(2)(B) Expert Report of William F. N. Brewster ("Brewster Report").

19.     **Exhibit 15** is a true and correct copy of documents GW produced, Bates labeled GW0005462 – GW0005463. These documents depict the front and back of the package for a product called "Terminator Lightning Claws." The packaging gives no indication of who created the original miniature from which this product was cast.

20.     I have reviewed all of the documents that ("GW") has produced to CHS in response to CHS's discovery requests, and have also supervised paralegals and other Winston & Strawn attorneys in conducting further review of those documents. With the exception of a single copyright assignment that was executed in 1994, all of the approximately 30 so-called "confirmatory assignments" GS has produced were executed after April 20, 2012, more than a year into this litigation and also after the close of fact discovery.

21.     **Exhibit 16** is a true and correct copy of excerpts of the Alan Merrett Deposition Transcript, Volume 1 (Mar. 8, 2012) ("Merrett I").

22.     **Exhibit 17** is a true and correct copy of the Expert Report of Professor Lionel Bently.

5

23.     I have reviewed all of the documents that ("GW") has produced to CHS in response to CHS's discovery requests, and have also supervised paralegals and other Winston & Strawn attorneys in conducting further review of those documents. GW's document production does not include any employment records or employment documents concerning the following individuals: Wayne England; Clint Langley; Mike McVey; Bob Naismith; Adrian Smith, and Simon Egan. GW has produced no contracts, payroll records, nor any other facts to show that any freelance artist could be considered an employee.

24.     **Exhibit 18** is a true and correct copy of the cover page, relevant responses, and the signature page, of Games Workshop Ltd.'s Response to Chapterhouse Studios LLC First Set of Requests for Admissions, Response to No. 11.

25.     **Exhibit 19** is a true and correct copy of GW's Response to Request for Production of Documents Set Two, Nos. 4 and 7, dated July 5, 2011.

26.     **Exhibit 20** is a true and correct copy of GW's Supp. Response to CHS's Interrogatories Set Four (Mar. 2, 2012) (including GW's response to Interrogatory No. 18).

27.     GW did not produce physical specimens of boxes or packaging for its miniature toys or tabletop games. GW has not produced any of its miniature figures to CHS. GW produced complete copies of only 13 of its dozens of alleged literary works, including three works whose originals were in color, but which GW produced only in the form of black-and-white scans. Before the close of fact discovery on March 15, 2012, GW produced thirteen books, a handful of book excerpts, and screenshots of its website. Three of the books GW produced (including "The Art of Warhammer 40,000" and "The Horus Heresy: Collected Visions") were in the form of black and white scans, although the books feature full-color artwork. GW has continued to produce some book excerpts and other materials between March 16, 2012, and August 13, 2012.

28.     **Exhibit 21** is a true and correct copy of excerpts of the Nicholas Villacci

Deposition Transcript Vol. 2 (Apr. 11, 2012) ("Villacci II").

29.     **Exhibit 22** is a true and correct copy of relevant excerpts from GW's Response to

CHS Requests for Admission Set 2:

- Response to Request 243 (admitting that "YOU do not manufacture or sell a four-legged 'walker' vehicle for the Tau army"); and

- Response to Request 337 (in response to CHS's request to admit that "Not all the works for which YOU claim copyrights in this action were created by Games Workshop employees," Plaintiff "admits that one product at issue in this litigation was created under contract by a third party but otherwise denies this request.")

30.     **Exhibit 23** is a true and correct copy of excerpts of the Nicholas Villacci Dep. Tr.

Vol. 1 (Feb. 29, 2012) ("Villacci Dep. I").

31.     **Exhibit 24** is a true and correct copy of excerpts of the Wyatt Traina Dep. Tr.

(Mar. 15, 2012) ("Traina Dep.").

32.     **Exhibit 25** is a true and correct copy of excerpts of Tomas Fiertek Dep. Tr. (Apr.

13, 2012) ("Fiertek Dep.").

33.     On August 9, 2012, three business days before the deadline for filing dispositive

motions, GW served CHS with 110 pages of additional documents Bates labeled GW0011281-

GW0011390. Those documents comprised 86 pages of copyright and trademark applications and

registrations, and 24 miscellaneous pages excerpted from four books.

34.     **Exhibit 26** is a true and correct copy of the following exhibits to the Expert

Report of William Brewster, each of which is a true and correct copy of a page from a book

depicting historical armor: CHS00017881 (depicting reconstruction of historical Roman *lorica

segmentata* armor); CHS00017877 (depicting historical armor dated ca. 1500-1508); and

CHS00017882 (depicting "arquebus armor" dated ca. 1680-1690).

35.    **Exhibit 27** comprises true and correct copies of the cover, title page, and relevant interior pages from a book entitled "Collins Eyewitness Guides: Arms & Armour," which GW produced in partial response to CHS's request for "All documents concerning the design, creation, or authorship of the copyrighted works You claim in this action." The attached pages are Bates labeled GW GW0006779, GW0006783, GW0006802 and GW0006805. The images at GW0006802 and GW0006805 depict historical arms and armor dating from the 16th century, which closely resemble some of GW's alleged works. GW refused to produce any additional documents from what are likely dozens of such books. *See* attached Exhibit 13, Hodgson Dep. at 41:9-15:

> Q   And if you had to estimate, how many of these
> types of reference books are there at work?
> A   I couldn't because they're all over the place.
> Q   More than five?
> A   Yes.
> Q   More than 25?
> A   Probably.

36.    **Exhibit 28** comprises true and correct copies of pages from GW's website, depicting two views of its assembled "Tyranid Carnifex" model. I located and printed those images by visiting GW's website at http://www.games-workshop.com/gws/catalog/productDetail.jsp?prodId=prod1050178 and clicking on thumbnail images of GW's assembled "Tyranid Carnifex" model. The images of GW's assembled model show that each of the features GW describes in its SUF 50, "including two small hind legs, four large pointed legs that each have a small horn extending off the 'elbow' of the leg, several bony protrusions that extend off the back of the creature, and the overall stance of the creature" are features of *GW's own product*. For ease of reference, the relevant images from Exhibit 28 and GW's SUF 50 (showing CHS's Kit assembled on top of an assembled GW "Carnifex" model)

are shown below:






(Detail from GW SUF 50 and GW MSJ Ex. 62, showing a CHS
Tervigon Conversion Kit for Carnifex Model, assembled on a GW
"Carnifex" model to demonstrate fit and compatibility.)

37.     CHS produced documents from Sam Terry, the independent contractor who

designed CHS's "Tervigon Conversion Kit for Carnifex Model," with Bates numbers

3RDPARTY00000021 -22 and 3RDPARTY00000027-35.

38.     **Exhibit 29** is a true and correct copy of excerpts of the Alan Merrett Deposition

Transcript vol. 2 (Apr. 3, 2012) ("Merrett II").

39.     The word "mycetic" is an English word that means "relating to or of the nature of a microbe." **Exhibit 30** is a screenshot from the Oxford English Dictionary, which is available online at http://www.oed.com/, showing the result of my request for the dictionary definition of "mycetic."

40.     **Exhibit 31** is a true and correct copy of the relevant pages from the transcript of Proceedings before the Honorable Jeffrey T. Gilbert, taken on September 1, 2011.

41.     **Exhibit 32** is a true and correct copy of the Michael Bloch Deposition Transcript (July 11, 2012).

42.     **Exhibit 33** is a true and correct copy of the 30(b)(6) deposition of Sandra Casey, taken on March 1, 2012.

43.     **Exhibit 34** is a true and correct copy of a 12/27/2011 Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action re: Games Workshop Retail Inc.

44.     **Exhibit 35** is a true and correct copy of CHS's Subpoena to Testify at a Deposition in a Civil Action re: Games Workshop Retail, Inc. ("GWR") dated January 19, 2012.

45.     **Exhibit 36** is a true and correct copy of GWR's Response to [Document] Subpoena, dated January 11, 2012.

46.     **Exhibit 37** is a true and correct copy of GWR's Response to [Deposition] Subpoena to Games Workshop Retail, Inc.  dated January 31, 2012.

47.     **Exhibit 38** is a true and correct copy of Deposition Ex. 1 (Re-Notice of Subpoena to GWR) dated February 17, 2012.

48.     I have reviewed the documents GW has produced in this case. GW produced no consumer survey or testimonial or expert report concerning confusion between GW and CHS.

49.     I have reviewed the documents GW has produced in this case. GW has produced

10

no sales invoices or purchase orders for any of the Marks At Issue, including any sales invoices of Internet or retail sales in the U.S. or in the Illinois.

50. I have reviewed the documents GW produced in this case. GW has produced no sales invoices or other records showing that GW and CHS distributed goods in any particular geographical area that overlap.

51. I have reviewed the documents GW produced in this case. GW did not produce consumer surveys or testimonials, or expert reports, concerning any of the Marks At Issue.

52. **Exhibit 39** is a true and correct copy of excerpts of the Gillian Stevenson Deposition Transcript (March 9, 2012 ) ("Stevenson II").

53. **Exhibit 40** is a true and correct copy of excerpts of the Gillian Stevenson Deposition Transcript (March 5, 2012) ("Stevenson I").

54. **Exhibit 41** is a true and correct copy of Deposition Ex. 88 from Stevenson II, Bates labeled GW0005554, which is a copy of an email to GW from a third party.

55. **Exhibit 42** is a true and correct copy of Deposition Ex. 89 from Stevenson II, Bates labeled GW0005559, which is a copy of an email.

56. **Exhibit 43** is a true and correct copy of the cover  and credits page from "Horus Heresy: The Collected Visions," Bates numbered GW0001875 and GW0001882, respectively. The credits page show that the book "Horus Heresy: The Collected Visions" was previously published in four separate volumes, with the latest of those volumes published in 2006.

57. GW's Second Rev. Copyright Claim Chart does not identify the work "Games Workshop Complete Catalog & Hobby Reference 2006-2007" as an allegedly infringed work.

58. GW's First Rev. Copyright Claim Chart does not identify the work "Games Workshop Complete Catalog & Hobby Reference 2006-2007" as an allegedly infringed work.

59. I am familiar with the pleadings in this case, and I have reviewed the documents GW has produced in discovery. To the best of my knowledge, GW has never specified which of its alleged works, if any, are included in the "Games Workshop Complete Catalog & Hobby Reference 2006-2007." To the best of my knowledge, GW has produced no evidence of the dates

of creation of its alleged works, if any, included in the "Games Workshop Complete Catalog & Hobby Reference 2006-2007."

60.    As of the close of fact discovery on March 15, 2012, GW had not produced a copy of the work entitled "Games Workshop Complete Catalog & Hobby Reference 2006-2007."

61.    **Exhibit 44** is a true and correct copy of the decision of the UK Court of Appeal in *Lucasfilm Ltd v. Ainsworth*, [2010] F.S.R. 10.

62.    I have reviewed the pleadings, discovery responses, and documents GW produced in this case. To the best of my knowledge, GW has produced no evidence that it advertises on the same websites or in the same publications as CHS.

63.    **Exhibit 45** is a true and correct copy of GW Response to CHS Interrogatories Set 2.

64.    **Exhibit 46** is a true and correct copy of Defendant Chapterhouse Studios LLC's Second Supplemental Response to Games Workshop's Ltd.'s Second Set of Interrogatories to Chapterhouse Studios LLC (Nos. 3-13).

65.    **<u>Exhibit 47</u>** are true and correct copies of excerpts from the Neil Hodgson Deposition Transcript (March 5, 2012).

66.    I have reviewed and compared the 80 marks listed in GW's Motion in footnote 16 and those listed in GW's Rog 18 Response; the following 14 marks from footnote 16 were not identified in GW's Rog 18 Response: Alpha Legion; Assault Space Marine; Devastator Space Marine; Gaunt; Howling Griffons; Mycetic Spore; Striking Scorpion; Tactical Space Marine; Tervigon; Tyranid; Tyranid Bonesword; Tyranid Lashwhip; Warhammer 40,000; and Ymgarl.

67.    In its response to Interrogatory No. 3 ("Rog 3 Response"), which required GW to identify allegedly infringing use by CHS for each mark that GW alleges is at issue in this case, GW did not identify use by CHS of 28 marks that GW identified in its Motion in footnote 16. A copy of GW's Rog 3 Response is included a part of Exhibit 45. The 28 marks are: Assault Space Marine; Cadian; Chaos Space Marine; Chimera; Devastator Space Marine; Dreadnought;

Gaunt; Hellhound; Heresy Armour; Howling Banshee; Howling Griffons; Imperial Guard; Librarian; Melta; Mycetic Spore; Plasma; Predator; Stormraven; Striking Scorpion; Tactical Space Marine; Techmarine; Terminator; Thunder Hammer; Tyranid Bonesword; Tyranid Lashwhip; Tyrant; Warhammer 40K; and Ymgarl.

68.     **Exhibit 48** is a true and correct copy of Deposition Ex. 84 from Stevenson II, Bates labeled GW0005548, which is a copy of an email to GW from a third party.

69.     **Exhibit 49** is a true and correct copy of Deposition Ex. 85 from Stevenson II, Bates labeled GW0005546, which is a copy of an email to GW from a third party.

70.     **Exhibit 50** is a true and correct copy of Deposition Ex. 86 from Stevenson II, Bates labeled GW0005547, which is a copy of an email to GW from a third party.

71.     **Exhibit 51** is a true and correct copy of Deposition Ex. 87 from Stevenson II, Bates labeled GW0005550 – GW0005551, which is a copy of an email to GW from a third party.

72.     GW dropped its copyright claims for 33 CHS products in GW's Second Rev. Copyright Claim Chart.  GW's Second Rev. Copyright Claim Chart included copyright claims against 15 never-before-identified CHS products; and identified five new CHS products, against which it did not bring copyright claims.

73.     **Exhibit 52** is a true and correct copy of GW's Response to CHS's Request for Production of Documents to [*sic*] Set Five.


I declare under the penalty of perjury that the foregoing is true and accurate.


Dated: September 6, 2012                                          By: /s/ Thomas J. Kearney
                                                                           Thomas J. Kearney


SF:339892.3