# Exhibit

# 18.

Show cart...
Your cart is empty.

| Home | News | About us | Contact | Order Status and Shipping | Customer Comments | Gallery |

## ☙ Our Store

**Infantry and Shoulder Pad Bits compatible with Space Marine® models**
**Heads compatible with Space Marines®**
**28mm Weapons, Jump Packs and Shields compatible with Games Workshop Models**
**Vehicle Replacement Part Kits that fit on Games Workshop Models**
**Bits/Conversion kits compatible with Eldar armies**
**Bits/Conversion kits compatible with Tyranids**
**Bits/Conversions for 28mm for imperial guard**
**Super Heavy Vehicle Kits**

List All Products

Product Search

[                    ] [ Search ]

Advanced Search

Username
[                    ]
Password
[                    ]
Remember me ☑
[ Login ]

Lost Password?

Forgot your username?

No account yet? Register

We accept Paypal



## 28MM Celtic, Tech-Wolf Shields and Hammer available now!

Friday, 29 January 2010 14:23

Hello guys and gal,

The Jetbike Seer Council kit





This kit has been completed by the sculptor and is in transit to me for final approval. Once it arrives and passes quality check it will be molded in resin (and maybe pewter). This is a complete kit with arms, legs, torsos, heads, weapon options and bike accessories. All you would want is the Jetbike model to add to this. There will be a Warlock and a Farseer kit to choose from. They will have options for a sword or spear.

Estimatated time for this kit to hit production is 2-3 weeks. I want the price to be in the $14-17.00 price range.

I wanted to give you all an update on our new and upcoming 28mm conversion bits.

Firstly, we have 2 new shields available for sale for $2.00 each on the website.

The much anticipated Celtic Shield, it is 28mm scale, its less bulky then our previouse shields so best suited for regular power armor. It is lightweight white metal and comes with a seperate spiked knuckle guard.



The second new shield release is perfect for all you Space Wolf players out there. Its a Techno Wolf Shield (good size for terminator armor).



Also up, is a new generic Power Hammer, also in 28mm scale. Does great things for fantasy or sci-fi conversions. This is available for $1.50.



I have also updated the Fleshtearer - sawblade and jewel shoulder pad photos:



Lastly some news on the upcoming Ymargl Genestealer heads and Xenomorph Gaunt heads. These are being molded this week. Our price point for the Ymargl Genestealer heads will most likely be $6.00 for a sprue of 6 white metal heads (3 different bits). The Xenomorph heads are going to be $6.50 per sprue of 6 resin heads (2 different bits).

The reason we went metal on the Ymargls is that they have some slender parts that wont survive resin casting, they also have a nob to allow easy glueing to the bodies. The Xenomorph heads have no pertrusions for glueing so need to be resin in order to be usable.

These will be on the site next week and if you are interested in preordering feel free to email me at nick@chapterhousestudios.com .


Boneswords and Lashwhips

These are being sculpted this week, and will be molding in 2-3 weeks. Price point is 2-4$ a set (pewter).

I dont think I forgot anything so enjoy!

This web site is completely unofficial and in no way endorsed by Games Workshop Limited.

Adeptus Astartes, Battlefleet Gothic, Black Flame, Black Library, the Black Library logo, BL Publishing, Blood Angels, Bloodquest, Blood Bowl, the Blood Bowl logo, The Blood Bowl Spike Device, Cadian, Catachan, the Chaos device, Cityfight, the Chaos logo, Citadel, Citadel Device, City of the Damned, Codex, Daemonhunters, Dark Angels, Dark Eldar, Dark Future, the Double-Headed/Imperial Eagle device, 'Eavy Metal, Eldar, Eldar symbol devices, Epic, Eye of Terror, Fanatic, the Fanatic logo, the Fanatic II logo, Fire Warrior, Forge World, Games Workshop, Games Workshop logo, Genestealer, Golden Demon, Gorkamorka, Great Unclean One, the Hammer of Sigmar logo, Horned Rat logo, Inferno, Inquisitor, the Inquisitor logo, the Inquisitor device, Inquisitor:Conspiracies, Keeper of Secrets, Khemri, Khorne, Kroot, Lord of Change, Marauder, Mordheim, the Mordheim logo, Necromunda, Necromunda stencil logo, Necromunda Plate logo, Necron, Nurgle, Ork, Ork skull devices, Sisters of Battle, Skaven, the Skaven symbol devices, Slaanesh, Space Hulk, Space Marine, Space Marine chapters, Space Marine chapter logos, Talisman, Tau, the Tau caste designations, Tomb Kings, Trio of Warriors, Twin Tailed Comet Logo, Tyranid, Tyrannid, Tzeentch, Ultramarines, Warhammer, Warhammer Historical, Warhammer Online, Warhammer 40k Device, Warhammer World logo, Warmaster, White Dwarf, the White Dwarf logo, and all associated marks, names, races, race insignia, characters, vehicles, locations, units, illustrations and images from the Blood Bowl game, the Warhammer world, the Talisman world, and the Warhammer 40,000 universe are either ®, TM and/or © Copyright Games Workshop Ltd 2000-2010, variably registered in the UK and other countries around the world. Used without permission. No challenge to their status intended. All Rights Reserved to their respective owners.

Webdesign and hosting by Mahonlap.com



SSL certificates.

Archived by Cloud Preservation(TM) on Fri Aug 05, 2011 at 05:52:22 AM GMT
http://www.chapterhousestudios.com/webshop/news/21-28mm-celtic-tech-wolf-shields-and-hammer-available-now

CHS00000030

# Exhibit

# 21

**NICK VILLACCI**
**February 29, 2012**

1 (Pages 1 to 4)

---

**1**

1   IN THE UNITED STATES DISTRICT COURT
    FOR THE NORTHERN DISTRICT OF ILLINOIS
2            EASTERN DIVISION
3   GAMES WORKSHOP LIMITED,        §
                                   §
4        Plaintiff,                §
                                   §
5   V.            §   CIVIL ACTION NO.
                  §   1:10-cv-08103
6   CHAPTERHOUSE STUDIOS LLC       §
    and JON PAULSON d/b/a          §
7   PAULSON GAMES                  §
                                   §
8        Defendants.               §
9
10  *********************************************
11          ORAL DEPOSITION OF
12             NICK VILLACI
13          FEBRUARY 29, 2012
14  *********************************************
15
16      ORAL DEPOSITION OF NICK VILLACI, produced as a
17  witness at the instance of the Plaintiff and duly sworn,
18  was taken in the above-styled and -numbered cause on the
19  29th of February, 2012, from 1:20 p.m. to 3:10 p.m.,
20  before Melisa Duncan, CSR in and for the State of Texas,
21  reported by machine shorthand, at the offices of
22  Carrington, Coleman, Sloman & Blumenthal, 901 Main Street,
23  Suite 5500, Dallas, Texas, in accordance with the Federal
24  Rules of Civil Procedure and agreement hereinafter set
25  forth.

---

**3**

1             I N D E X
2                          PAGE
3   Appearances . . . . . . . . . . . . . . . . . . . .  2
4   NICK VILLACI
5       Examination by Mr. Moskin . . . . . . . . . .  5
6   Signature and Changes . . . . . . . . . . . . . .  56
7   Reporter's Certificate. . . . . . . . . . . . . .  58
8             E X H I B I T S
9   NO.      DESCRIPTION                     PAGE
10  1    February 28, 2012 Letter and E-mail      8
11  2    Second Set of Interrogatories           15
12  3    E-mails, January 26, 2011, Bates Nos.    18
         CHS00002535 - 2537
13  4    E-mails, October 28, 2009, Bates Nos.    23
         CHS00007792 - 7793
14  5    E-mails, December 5, 2008, Bates Nos.    23
         CHS00002017 - 2019
15  6    E-mails, June 12, 2009, Bates Nos.       23
         JN00000001 - 5
16  7    E-mails, October 7, 2009, Bates Nos.     28
         CHS00004067 - 4122
17  9    Confidentiality & Nondisclosure Agreement,   33
         Bates Nos. WT000000022 - 23
18  12   E-mails, February 10, 2011, Bates No.    37
         ML00000001 - 4
19  13   E-mails, September 21, 2009, Bates Nos. CHS  30
         00004335 - 4343
20  15   Chapterhouse Studios Privilege Log       42
21  16   First Set of Interrogatories             48
22  17   Sales by Item Summary, 1/1/2007 - 8/4/2011   52
23
24
25

---

**2**

1        A P P E A R A N C E S
2   FOR THE PLAINTIFF(S):
3     Mr. Jonathan E. Moskin  (Via Teleconference)
      FOLEY & LARDNER
4     90 Park Avenue
      New York, New York 10016
5     212.682.7474
      jmoskin@foley.com
6
7     Mr. David J. Diamond
      CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, L.L.P.
8     901 Main Street, Suite 5500
      Dallas, Texas 75202
9     214.758.3726
      ddiamond@ccsb.com
10
11  FOR THE DEFENDANT(S):
12    Ms. Jennifer A. Golinveaux
      WINSTON & STRAWN LLP
13    101 California Street
      San Francisco, California 94111
14    415.591.1000
      jgolinveaux@winston.com
15
16
17
18
19
20
21
22
23
24
25

---

**4**

1          P R O C E E D I N G S
2        THE REPORTER:  We are on the record.  Today's
3   date is Wednesday, February 29, 2012.  The time is
4   1:20 p.m.  This is the oral deposition of Nick Villaci in
5   the case styled in the United States District Court for the
6   Northern District of Illinois, Eastern Division, Games
7   Workshop Limited versus Chapterhouse Studios and Jon
8   Paulson d/b/a Paulson Games, Civil Action
9   No. 1:10-cv-08103.
10       We are located at Carrington, Coleman, Sloman
11  & Blumenthal, 901 Main Street, Suite 5500, Dallas, Texas.
12  I am Melisa Duncan with CSI Global Deposition Services.
13       Will counsel present please identify
14  yourselves for the record.
15       MS. GOLINVEAUX:  Jennifer Golinveaux of
16  Winston & Strawn on behalf of defendant, Chapterhouse.
17       MR. MOSKIN:  For the plaintiff present by
18  telephone and video link, Jonathan Moskin of Foley &
19  Lardner.
20       MR. DIAMOND:  Then for plaintiff as well,
21  David Diamond with Carrington, Coleman.
22            NICK VILLACI,
23  having been first duly sworn, testified as follows:
24            EXAMINATION
25  BY MR. MOSKIN:

---

**NICK VILLACCI**
**February 29, 2012**

12 (Pages 45 to 48)

45

1  case. Do you know what types of files he keeps?
2  **A. No.**
3  Q. Regarding the -- and I mean to limit that to in
4  connection with Chapterhouse. I'm not interested in his
5  other personal or other business.
6  **A. I don't know what kind of files he keeps, no.**
7  Q. Did you ever at any time advise or alert
8  Mr. Fiertek that he should preserve any of his records
9  regarding the business of Chapterhouse?
10  **A. Yes.**
11  Q. What did you do?
12  **A. After my first talk with Corby Bell, Esquire.**
13  MS. GOLINVEAUX: And I would just caution the
14  witness here. He's referring to counsel he retained. So
15  not to disclose the -- the substance of attorney-client
16  communications.
17  **A. Most companies in any sort of line of work of**
18  **designing artwork products keep white books, logs, some**
19  **sort of -- some sort of log on stuff they make and the**
20  **development of those. And it would be a good idea if he**
21  **did that.**
22  Q. (BY MR. MOSKIN) Do you know if he did?
23  **A. I don't know if he did or not, no.**
24  Q. Is -- did you keep logs or, as you call them,
25  white books, product development?

46

1  **A. The files that I kept on my computer were**
2  **pictures, sketches that my designers sent me. I sought to**
3  **preserve those, yes.**
4  Q. What did you do to try to preserve those?
5  **A. Save them on my hard drive.**
6  Q. And from what point forward did you try to save
7  those?
8  MS. GOLINVEAUX: Objection, vague and
9  ambiguous.
10  **A. I'm sure I was saving pictures and stuff like that**
11  **since when we started working on the business together.**
12  Q. (BY MR. MOSKIN) And when was that, in 2007, 2008?
13  **A. I couldn't tell you offhand, a ways back.**
14  Q. Can you approximate?
15  **A. No.**
16  Q. Who is -- can you tell me who is Corby Bell? You
17  described him briefly or your counsel did?
18  **A. He was an attorney that we worked with.**
19  Q. When did you work with him?
20  **A. Obviously -- well, according to this paperwork,**
21  **2009. It might have been before and after. I couldn't**
22  **tell you offhand.**
23  Q. And have you worked with any other lawyers other
24  than Mr. Bell and Winston & Strawn?
25  **A. Yes.**

47

1  Q. And who are those?
2  **A. Before Winston & Strawn represented us, we had**
3  **another attorney. I believe you've spoken to him before.**
4  **He's the first attorney that represented us.**
5  Q. Any -- there was somebody who sent me at least an
6  e-mail. I don't --
7  **A. His name was Nick, that's all I remember.**
8  Q. Any other lawyers?
9  **A. No, not in official capacity at all, no.**
10  MR. MOSKIN: Can we take a two-minute break?
11  I'm being summoned to deal with something, if that's all
12  right.
13  (Recess from 2:49 p.m. to 2:54 p.m.)
14  Q. (BY MR. MOSKIN) I have -- we have explained to
15  your counsel and to the court in this case that we have
16  received no documents concerning the development of
17  Chapterhouse's products except for 15 products, namely, a
18  wheeled conversion kit for a Chimera, doors for wheeled
19  conversion kits, powerfist hydra (phonetic) sword arm, gun
20  fight for eldars, eldar bits including scorpion warrior
21  priestess, flying shoulder pads, hidden shoulder pads,
22  resin base, death angel shield, space marine heads, space
23  marine jump packs, lashwhip weapon, winged sword and
24  Tervigon conversion kit for car effects.
25  Are you aware of why we have received no

48

1  documents for any of the other 121 products at issue in
2  this case?
3  MS. GOLINVEAUX: Objection, assumes facts not
4  in evidence and argumentative.
5  **A. I've provided all the documents my attorneys asked**
6  **for, so . . .**
7  Q. (BY MR. MOSKIN) Other than the documents you
8  provided last week, had you earlier in the case provided
9  documents concerning products other than those 15 I just
10  read off?
11  **A. Don't know what my attorneys have provided you but**
12  **I've given them everything they've asked for.**
13  Q. Do you know that you gave them the documents
14  concerning the development of the 116 other products prior
15  to last week?
16  **A. If we had documents for those items, they have**
17  **them.**
18  Q. I'm asking you more specifically, if you know
19  specifically that you did provide documents for the other
20  116 products?
21  **A. I don't know specifically what documents we have**
22  **for what items.**
23  Q. I'd like to show you what can be marked as
24  Exhibit 16.
25  (Exhibit 16 was marked.)

**NICK VILLACCI**
**February 29, 2012**

49

1    Q.  (BY MR. MOSKIN)  And do you have that in front of
2  you?
3    **A.  Yes, I do.**
4    Q.  And on page 8, is that your signature?
5    **A.  That is my signature.**
6    Q.  I'd like to -- you can read the whole thing, but
7  I'd like to direct your attention to page 6.  And I will
8  tell you this is in response to our request for you to
9  identify all sources consulted, used, reviewed or relied on
10  by Chapterhouse creating each of the accused works.  And
11  the supplemental responses provided on page 6, I'd like to
12  ask you -- and you can read it, I am aware that we received
13  from you documents referring to a lion and a mantis
14  design.  Are you aware of whether Chapterhouse has any
15  documents concerning dungeons and dragon hammer weapons,
16  saw blades, snake art from Greek art, Google images of
17  dragons, HR Giger artwork, the lashwhips, boneswords and
18  mycetic spore, wolf's head sketches, Nordic-style runes?
19    **A.  Do we have any documents?**
20    MS. GOLINVEAUX:  Could you -- could you
21  repeat the question?
22    Q.  (BY MR. MOSKIN)  I'm asking if Chapterhouse -- if
23  you're aware that Chapterhouse has any documents showing
24  any of those -- those items?
25    **A.  The items we drew inspiration from?**

50

1    Q.  Yes, the ones I just mentioned and that are
2  referenced in your answer to interrogatory number two.
3    **A.  I don't have possession of any documents that show**
4  **that. The designers might.**
5    Q.  You don't know?
6    **A.  Chapterhouse itself does not have any documents**
7  **showing that.**
8    Q.  And you don't know whether or not the designers
9  do?
10    **A.  I don't know what documents they draw inspiration**
11  **from.**
12    Q.  Do you do any of the design work yourself?
13    **A.  There's one product that was wholly designed by**
14  **myself.**
15    Q.  What was that?
16    **A.  I believe it's a shoulder pad and we just**
17  **designate it a Mach I shoulder pad.**
18    Q.  Is that -- is that a product that incorporates
19  any -- in anything -- is that one of the products at issue
20  in this lawsuit?
21    **A.  I think so.**
22    Q.  So you don't have any drawings that you created?
23    MS. GOLINVEAUX:  Objection, vague and
24  ambiguous.  Was that the entire question?
25    Q.  (BY MR. MOSKIN)  Let me strike that.  Other than

51

1  the Mach I product, you don't have any drawings or sketches
2  that you personally created?
3    **A.  Yes, I do.**
4    Q.  And what are those?
5    **A.  I couldn't tell you specifically, but during the**
6  **design process, ideas and designs are e-mailed back and**
7  **forth between parties.**
8    Q.  And some of those are drawings that are done --
9  that are created by you?
10    **A.  I wouldn't call them drawings.  I would call them**
11  **doodles.  They were just rough sketches.**
12    Q.  Okay.  You say that you have not asked your
13  independent designers, concept artists to -- to give you
14  documents that they may have.  Do you know what they would
15  say if you did ask?
16    MS. GOLINVEAUX:  Objection, calls for
17  speculation.
18    **A.  I don't know what they would say.**
19    Q.  (BY MR. MOSKIN)  Are you aware of any who would
20  refuse to -- are you aware of any of the independent
21  designers or concept artists who would refuse to produce
22  documents if you asked?
23    MS. GOLINVEAUX:  Objection, calls for
24  speculation.
25    **A.  Again, I don't know what their frame of mind would**

52

1  be on that.
2    Q.  (BY MR. MOSKIN)  I'd like to have put in front of
3  you Exhibit 17.
4    (Exhibit 17 was marked.)
5    Q.  (BY MR. MOSKIN)  And ask you if you can identify
6  this?
7    **A.  It appears to be a report with our items on there,**
8  **says sales by item summary on the top.**
9    Q.  Did you generate this report?
10    **A.  I don't remember specifically generating this**
11  **report.  I have generated reports before, though.**
12    Q.  Is there anybody else at Chapterhouse that would
13  have generated this report?
14    **A.  No one else has access to this information.**
15    Q.  As far as you know, you did create or generate
16  this report?
17    MS. GOLINVEAUX:  Sorry, what was --
18    (Requested portion was read.)
19    **A.  Again, it -- it -- I have generated reports like**
20  **this and provided them to my attorneys.  I don't know if**
21  **this is one of them.**
22    Q.  (BY MR. MOSKIN)  Okay.  Where does the data reside
23  that is used to generate this report?
24    **A.  On my computer.**
25    Q.  That one computer with -- with backup hard drives?

**NICK VILLACCI**
**February 29, 2012**

14 (Pages 53 to 56)

---

53

1    A.  Yes.
2    Q.  And if you wanted to, you could generate a report
3  with current information, more recent than August 4, 2011?
4    A.  Yes.
5    Q.  That could be generated up to -- up to date?
6    A.  Yes.
7    Q.  Is this report all of the income to Chapterhouse
8  or is this after or before any amounts that are paid to
9  designers including Mr. Fiertek?
10        MS. GOLINVEAUX:  Objection, vague and
11  ambiguous.
12    A.  I don't know.  I'm not an accounting professional.
13  And it's a form report that's built into the system.  So
14  I'm not sure how the -- you know, what formulas or how to
15  calculate what.
16    Q.  (BY MR. MOSKIN)  You don't know if this -- what is
17  already deducted out of the payments to designers such as
18  Mr. Fiertek?
19    A.  Yes, I don't know how any of these numbers are
20  generated.
21    Q.  Do you create or populate the fields that list
22  what you have here as inventory?
23    A.  Are you asking me if those product names are
24  populated by me?
25    Q.  Yes.

---

54

1    A.  That is what we have in our accounting system,
2  yes.
3    Q.  And do those fields or product names correspond to
4  any other electronic or paper records that Chapterhouse
5  maintains?
6    A.  No.
7    Q.  So that, for example, that a white book as you
8  were saying before or the files you were describing that
9  you created on your computer, you don't create a file in
10  the white book or on your computer that corresponds to each
11  of these?
12    A.  No.
13        MR. MOSKIN:  All right.  As -- insofar as we
14  requested the examination of a document custodian, I have
15  no further questions.  I reserve our right to resume the
16  deposition on other topics that we designated.
17        Let me ask you while we're all present.
18  Would you agree to allow -- to share with us the MSN, Yahoo
19  and Skype passwords and account names so we could access
20  those ourselves?
21        MS. GOLINVEAUX:  We will take that request
22  under advisement and discuss it and get back to you.  We
23  frankly hadn't considered providing passwords and account
24  names but we're happy to discuss that with you.
25        MR. MOSKIN:  When do you think you could tell

---

55

1  me?
2        MS. GOLINVEAUX:  When can we have a
3  discussion about it?  Did you say anything -- we're kind of
4  waiting for you.
5        MR. MOSKIN:  Yes.  When can we -- I'd like to
6  get that resolved.  Time is running out.
7        MS. GOLINVEAUX:  Would you like to give me a
8  call tomorrow when I'm back in the office?
9        MR. MOSKIN:  Fine.  I have no further
10  questions.
11        MS. GOLINVEAUX:  I have no questions.  We
12  would like a copy of the transcript to review.
13        (Deposition was concluded at 3:10 p.m.)
14
15
16
17
18
19
20
21
22
23
24
25

---

56

1        CHANGES AND SIGNATURE
2  WITNESS NAME: _____  DATE OF DEPOSITION: _____
3  PAGE    LINE   CHANGE        REASON
4  _____
5  _____
6  _____
7  _____
8  _____
9  _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____
25  _____

---

**CSI GLOBAL DEPOSITION SERVICES**
**972-719-5000**

**NICK VILLACCI**
**February 29, 2012**

15 (Pages 57 to 59)

---

57

1    I, NICK VILLACCI, have read the foregoing
2    deposition and hereby affix my signature that same is true
3    and correct, except as noted herein.
4    _____
     NICK VILLACCI
5
6    THE STATE OF TEXAS  )
7    COUNTY OF _____  )
8        Before me, _____, on this day personally
9    appeared NICK VILLACCI, known to me (or proved to me under
10   oath or through _____) (description of identity
11   card or other document) to be the person whose name is
12   subscribed to the foregoing instrument and acknowledged to
13   me that he executed the same for the purposes and
14   consideration therein expressed.
15       Given under my hand and seal of office, this _____
16   day of _____, _____.
17
18
19
20   _____
     NOTARY PUBLIC IN AND FOR
21   THE STATE OF _____
22
23   My Commission Expires: _____
24   _____ No Changes Made _____ Amendment Sheet(s) Attached
25   GAMES WORKSHOP LIMITED VS. CHAPTERHOUSE STUDIOS, ET AL.

---

58

1        IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
2               EASTERN DIVISION
3    GAMES WORKSHOP LIMITED,        §
                                    §
4        Plaintiff,                 §
                                    §
5    V.                §    CIVIL ACTION NO.
                       §    1:10-cv-08103
6    CHAPTERHOUSE STUDIOS LLC      §
     and JON PAULSON d/b/a         §
7    PAULSON GAMES                 §
                                   §
8        Defendants.               §
9        REPORTER'S CERTIFICATION OF THE
         ORAL DEPOSITION OF NICK VILLACCI
10            FEBRUARY 29, 2012
11       I, Melisa Duncan, a Certified Shorthand Reporter
12   in and for the State of Texas, hereby certify to the
13   following:
14       That the witness, NICK VILLACCI, was duly sworn by
15   the officer and that the transcript of the oral deposition
16   is a true record of the testimony given by the witness:
17       That the original deposition was delivered to
18   Mr. Moskin.
19       That a copy of this certificate was served on all
20   parties and/or the witness shown herein on _____.
21       I further certify that pursuant to FRCP Rule 30(f)(1)
22   that the signature of the deponent:
23       _____ was requested by the deponent or a party before
24   the completion of the deposition and that the signature is
25   to be before any notary public and returned within 30 days

---

59

1    from date of receipt of the transcript.  If returned, the
2    attached Changes and Signature Page contains any changes
3    and the reasons therefore:
4        _____ was not requested by the deponent or a party
5    before the completion of the deposition.
6        I further certify that I am neither counsel for,
7    related to, nor employed by any of the parties or attorneys
8    in the action in which this proceeding was taken, and
9    further that I am not financially or otherwise interested
10   in the outcome of the action.
11       Certified to by me on this, the _____ day of
12   _____, 2012.
13
14
15
16   _____
     MELISA DUNCAN, Texas CSR 6185
17   Expiration Date: 12/31/13
     Firm Registration No. 526
18   CSI Global Deposition Services
     4950 North O'Connor Road, Suite 152
19   Irving, Texas 75062
     972.719.5000
20
21
22
23
24

---