# Exhibit

# 145

Highly Confidential - Filed Under Seal

# EXHIBIT

# 146

4814-4449-4352.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GAMES WORKSHOP LIMITED,

        Plaintiff,

    v.

CHAPTERHOUSE STUDIOS LLC and JON
PAULSON d/b/a PAULSON GAMES,

        Defendants.

Civil Action No. 1:10-cv-8103

Hon. Matthew F. Kennelly
Hon. Jeffrey T. Gilbert

**SUPPLEMENTAL DECLARATION OF ANDREW JONES**

I, Andrew Meredith Jones, hereby declare:

1.      I am Head of Legal, Licensing and Strategic Projects, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.  I have been employed by Games Workshop since 1986 and I base this declaration on my personal knowledge and my complete access to the books and records of the company.

2.      Exhibit 146 contains two spreadsheets summarizing the vastly more detailed (monthly) sales data pulled directly from our sales data systems in order to demonstrate use of claimed trademarks which I helped assemble.  In these spreadsheets, from available historic sales data, Games Workshop has separately identified for each claimed trademark, for each year, the sales value Games Workshop or licensees have had in the United States. The charts are broken out alphabetically by claimed trademark in the grey horizontal bands (e.g. Adeptus Mechanicus, Assault, Alpha Legion and so on for the unregistered marks) and an

2

associated total sales value per year and overall total, with certain non exhaustive specific products sold using those trademarks listed by way of example in white boxes below each trademark, in each case again with year on year and total sales values. One of the spreadsheets also lists for each claimed registered trademark the international classification of goods for the registered marks.  For both documents, reading left to right, the columns break out sales by year from 2004 (well before Chapterhouse commenced business) to date with a grand total at the far right column.

I hereby declare under penalty of perjury this 6th day of September, 2012, under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

 /s/ Andrew M. Jones
Andrew Meredith Jones

4

## CERTIFICATE OF SERVICE

I, Jason J. Keener, an attorney, hereby certify that on September 6, 2012, I caused to be filed electronically the foregoing SUPPLEMENTAL DECLARATION OF ANDREW JONES with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

/s/  Jason J. Keener
Jason J. Keener

5

# Exhibit

# 147

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GAMES WORKSHOP LIMITED,

          Plaintiff,

          v.

CHAPTERHOUSE STUDIOS LLC and JON
PAULSON d/b/a PAULSON GAMES

          Defendants.

Civil Action No. 1:10-cv-08103

Hon. Matthew F. Kennelly
Hon. Jeffrey T. Gilbert

## PLAINTIFF GAMES WORKSHOP STUDIOS LLC'S RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS TO GAMES WORKSHOP LIMITED SET TWO

Pursuant to Fed.R.Civ.P. Rules 26 and 34, Games Workshop responds as follows to the First Request For Production of Documents of Defendant Chapterhouse Studios LLC.

### GENERAL OBJECTIONS

Games Workshop will produce electronically stored information in a format mutually agreed upon among counsel, or as otherwise appropriate.

### REQUESTS FOR PRODUCTION

2.      All documents concerning the design, creation, or authorship of the copyrighted works You claim in this action.

**RESPONSE:**

Games Workshop objects that this request is overbroad and unduly burdensome given the needs of the case, given that Games Workshop is the owner of each of the copyrighted works at issue in the case and no issue has been raised as to its ownership or creation of any given work.

23.     All documents concerning Your plans to market copyrighted works claimed by You in this action, including without limitation any and all products that are derivative works of such copyrighted works, whether such products are currently existing or planned for the future.

**RESPONSE:**

Games Workshop objects that this request seeks confidential information that is irrelevant and not likely to lead to the discovery of admissible evidence.

24.     All documents that evidence, refer to, or discuss any damages or harm, including without limitation monetary damage, You claim to have suffered, or to be likely to suffer, as a result of Chapterhouse's alleged infringements and violations as set forth in Your First Amended Complaint.

**RESPONSE:**

Games Workshop objects that this is a contention request best deferred to the close of discovery, including receipt of discovery from Chapterhouse regarding its sales.

25.     Documents sufficient to identify Your total annual profits, related to each copyrighted work claimed by You in this action, for each of the past ten (10) years.

**RESPONSE:**

Games Workshop objects that this request is vague and ambiguous, overbroad and unduly burdensome given the needs of the case.  The request also seeks information that is confidential.  The request is also a contention request best deferred until Games Workshop elects whether or not to pursue lost profits in this case.

Without prejudice to or waiver of the foregoing objections, subject to entry of a protective order, Games Workshop, will produce documents responsive to this request to support a claim of

lost profits to the extent it elects to pursue a claim for such lost profits.

26.    Documents sufficient to identify Your total annual revenues related to each copyrighted work claimed by You in this action, for each of the past ten (10) years.

**RESPONSE:**

Games Workshop objects that this request is vague and ambiguous, overbroad and unduly burdensome given the needs of the case. The request also seeks information that is confidential. The request is also a contention request best deferred until Games Workshop elects whether or not to pursue lost profits in this case.

Without prejudice to or waiver of the foregoing objections, subject to entry of a protective order, Games Workshop, will produce documents responsive to this request to support a claim of lost profits to the extent it elects to pursue a claim for such lost profits.

27.    Documents sufficient to identify Your total annual expenses related to each copyrighted work claimed by You in this action, for each of the past ten (10) years.

**RESPONSE:**

Games Workshop objects that this request is vague and ambiguous, overbroad and unduly burdensome given the needs of the case. The request also seeks information that is confidential. The request is also a contention request best deferred until Games Workshop elects whether or not to pursue lost profits in this case.

Without prejudice to or waiver of the foregoing objections, subject to entry of a protective order, Games Workshop, will produce documents responsive to this request to support a claim of lost profits to the extent it elects to pursue a claim for such lost profits.

28.    All documents concerning allegations of copyright infringement asserted against You.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| GAMES WORKSHOP LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES <br><br> Defendants. | Civil Action No. 1:10-cv-8103 <br><br> Hon. Matthew F. Kennelly <br> Hon. Jeffrey T. Gilbert |

**PLAINTIFF GAMES WORKSHOP LIMITED'S RESPONSE TO
DEFENDANT CHAPTERHOUSE STUDIOS LLC'S
REQUEST FOR PRODUCTION OF DOCUMENTS LIMITED SET SEVEN**

Pursuant to Fed.R.Civ.P. Rules 26 and 34, Games Workshop responds as follows to the Seventh Request For Production of Documents of Defendant Chapterhouse Studios LLC.

**GENERAL OBJECTIONS**

1.     Games Workshop will produce electronically stored information in a format mutually agreed upon among counsel, or as otherwise appropriate.

2.     Games Workshop objects that, individually and cumulatively, these requests are extraordinarily overbroad and unduly burdensome given the needs of the case.  Games Workshop further objects that service 86 document requests is abusive, and that the requests seek information that is irrelevant or has already been provided.  The requests thus are needlessly cumulative and repetitive of prior requests and appear to have been interposed vexatiously and for no reason other than to increase costs

3.     Games Workshop further objects that Chapterhouse's own answers to discovery, even under Court order, confirm these requests are irrelevant and not likely to lead to the

**RESPONSE:**

Games Workshop objects that this request is overbroad and unduly burdensome and is

needlessly cumulative and repetitive of prior requests.

78.     For each of the unregistered trademarks YOU claim in THIS ACTION, a product package upon which YOU utilize such mark in U.S. commerce, either directly or through a license.

**RESPONSE:**

Games Workshop objects that this request is overbroad and unduly burdensome and is

needlessly cumulative and repetitive of prior requests.

79.     For each of the allegedly infringed unregistered trademarks YOU claim in TRIS ACTION, an advertisement upon which YOU utilize such mark in U.S. commerce either directly or through a license.

**RESPONSE:**

Games Workshop objects that this request is overbroad and unduly burdensome and is

needlessly cumulative and repetitive of prior requests.

80.     For each of the unregistered trademarks YOU claim in THIS ACTION, documents sufficient to identify each and every geographic region in the U.S. where YOU contend to possess common-law trademark rights for such mark.

**RESPONSE:**

Games Workshop objects that this request is overbroad and unduly burdensome and is

needlessly cumulative and repetitive of prior requests.

81.     For each of the unregistered trademarks YOU claim in THIS ACTION, documents sufficient to identify YOUR sales, revenues, and profits in each and every geographic region in the U.S. where YOU contend to possess common-law trademark rights for that mark.

**RESPONSE:**

Games Workshop objects that this request is overbroad and unduly burdensome and is

needlessly cumulative and repetitive of prior requests.

# Exhibit

# 148

**Keener, Jason J.**

| | |
|---|---|
| **From:** | Moskin, Jonathan |
| **Sent:** | Monday, February 27, 2012 9:49 PM |
| **To:** | Golinveaux, Jennifer A. |
| **Subject:** | RE: Games Workshop v. Chapterhouse Studios |

Because you have offered no explanation for Chapterhouse's refusal to produce its document custodian in a reasonable manner - despite two orders from the Court, we will be proceeding tomorrow as planned.  You previously agreed to produce the witness in September and October but then needlessly put us to the burden of repeatedly seeking a court order on the point.  The court has twice ordered defendant to produce its witness.  When we insisted on Tuesday, you then proposed Wednesday (even while failing to explain why he could not appear tomorrow).  We have no confidence that you will even keep your word Friday, but even if he were to appear, it leaves us no opportunity to prepare for the substantive depositions of Chapterhouse on March 12 -14 because the entire following week is taken up with depositions of Games Workshop, which we assume is the actual reason you are declining to produce him tomorrow.   Unfortunately, I suppose if you are not explain to us why the witness does not want to be available tomorrow, you can explain to the court your client's refusal to appear.  The court reporter will be there at 1:00 tomorrow ready to begin.

To streamline that deposition, let me alert you now that the witness should be prepared to answer the following (among other) questions: (1) identify any documents produced by Chapterhouse (including emails or other communications) concerning the development of any products other than the following 15 items: Wheeled conversion kit for Chimera; Doors for wheeled conversion kits; Power Fist; Hive Tyrant Bonesword Arm; Jet Bike for Eldars; Eldar bits (including Scorpion Warrior Priestess); Lion shoulderpads; Raven shoulderpads; Resin Base; Death Angel Shield; Space Marine heads; Space Marine jump packs; Tyranid Lashwhip weapon; Winged sword; Tervigon conversion kit for Carnifex: (2) identify any emails or other communications between Chapterhouse and its designers or manufacturers dated after January 26, 2011 (CH0002530), and (3) identify the last email or other communication between Chapterhouse and its designers.

Regarding the depositions of GW's witnesses, I remind you that we offered to make the witnesses available in January, but you declined to accept.  You simply can't monopolize the limited time left now.  We have previously raised the possibility of requesting the court for leave to complete remaining discovery (including for instance John Blanche's deposition under special guidance given his health issues).  However, because I can not be in two places at once, we must complete all depositions no later than Thursday March 8.  (And, of course,  that includes completing the court-ordered custodial deposition so we have some time to prepare for a full deposition.)  Ms. Stevenson offered declarations only on subjects within the scope the topics for which she is being designated.  You do not dispute that the law does not permit generally deposing attorneys.

Subject to your possible willingness to moderate your position, the witness schedule we proposed will stand.

       **Thursday, March 1: Games Workshop Retail, Inc in Memphis, TN**

       **Monday, March 5: Neil Hodgson (who is simply an illustrator) and Gill Stevenson in Chicago  (limited to the designated subjects in defendant's 30(b)(6) notice)**

       **Tuesday, March 6: Dave Gallagher (who is not named as an individual author for any works) and Andy Jones (as corporate designee) in Chicago**

       **Wednesday, March 7: Alan Merrett and Jes Goodwin in Chicago.**

The witnesses are traveling a long way and some respect for their needs is called for.  Subject to GW's previously stated objections, GW will as need be identify a witness for categories 36 and 37 before the depositions.  As noted, conceivably we could make a witness available on March 8 if there were a genuine need, but rather than offer any accommodation, you simply continue to extend the deadlines further out to interfere with Games Workshop's ability to conduct depositions the following week.

Jonathan

**From:** Golinveaux, Jennifer A. [mailto:JGolinveaux@winston.com]
**Sent:** Monday, February 27, 2012 11:30 AM
**To:** Moskin, Jonathan
**Subject:** RE: Games Workshop v. Chapterhouse Studios

Jonathan,

We have made every effort to accommodate your requests regarding deposition dates. To be clear, your proposal regarding depositions of Games Workshop's witnesses is that Defendant agree in advance to limit each deposition to half a day, rather than the one day/seven hours to which it is entitled under the Federal Rules.  As I have said, Defendant cannot agree to that. **Accordingly, we will proceed with the depositions of Games Workshop witnesses on the dates we have noticed, namely:**

       **Monday, March 5: Rule 30(b)(6) Deposition of Plaintiff Games Workshop Ltd in Chicago**
       **Tuesday, March 6: Neil Hodgson in Chicago**
       **Wednesday, March 7: Jes Goodwin in Chicago continuing to March 8 as necessary**
       **Friday, March 9: Dave Gallagher in Chicago**
       **Monday, March 12: John Blanche telephonically**
       **Tuesday, March 13: Alan Merrett in Chicago**
       **Wednesday, March 14: Gill Stevenson in Chicago**

If Plaintiff wishes to shuffle days within this time frame for the convenience of the witnesses, let us know by this Wednesday and we will continue to make every effort to accommodate your requests.  If Plaintiff insists that Defendant is entitled to only half a day with each of these witnesses, then you will need to seek a protective order.

As you know, we renoticed Mr. Blanche's deposition to occur telephonically based upon your representation that he is too ill to travel. If Mr. Blanche is too ill to sit for deposition at all, then let us know right away. Your email below is unclear.

9/6/2012

Second, you appear to be taking the position that you will limit our questioning of Ms. Stevenson to those topics for which Plaintiff has elected to designate her in response to Defendant's Rule 30(b)(6) notice.  As you know, Ms. Stevenson is the *only* fact witness Plaintiff has relied on to date, having three times filed declarations in this action based on her claimed personal knowledge.  *See* Dkt. Nos. 117-1 (identities of Chapterhouse's independent designers), 130-3 (authorship of works and employment status of authors), 174-3 (use of email and computers, information about individual authors, copyright status of individual works).  Defendant is entitled to question Ms. Stevenson about her statements, and other non-privileged matters.  If you improperly attempt to limit Defendant's questioning of Ms. Stevenson we will seek an order compelling her testimony and all appropriate remedies.

Third, you did not respond when I asked whether Plaintiff is refusing to put up a designee on topics 35-37 of Chapterhouse's 30(b)(6) notice. If Plaintiff fails to produce a qualified witness to testify on those topics, we will file a motion to compel.

I raise these issues now to make every effort to avoid unnecessary motion practice in connection with these depositions.

Finally, I told you that this Tuesday is not available for the custodial deposition of Chapterhouse.  Chapterhouse will be available on February 29 in Dallas, the date and location you noticed, for two hours commencing at 1PM Central time.

Jennifer

---

**From:** Moskin, Jonathan [mailto:JMoskin@foley.com]
**Sent:** Saturday, February 25, 2012 2:03 PM
**To:** Golinveaux, Jennifer A.
**Subject:** RE: Games Workshop v. Chapterhouse Studios

This schedule is worse than the one you previously proposed. It is quite clear you are not even willing to try to cooperate.

You can't simply crowd us out from taking depositions or preparing for substantive depositions, and given your refusal for months to answer our questions about the obvious deficiencies in Chapterhouse's document production (such as the lack of any independent creation documents; the systematic failure to produce any documents for 106 of the 121 products, and so forth), we will need at least a little time to prepare for Chapterhouse's depositions after taking the testimony from the document custodian this week.  Having now just received documents from Mr. Traina (documents it is now clear Chapterhouse itself can and should have produced months ago in response to our May 2011 discovery requests) we enclose a deposition notice for Mr. Traina for March 15.

Mr. Blanche is seriously ill.  The law is clear that lawyers are not proper subjects of depositions.   We are sticking with our proposal.  If you are unwilling to agree to try to accommodate the interests of the witnesses, perhaps you would prefer to have the Court intervene.  We might well need to do that because I suspect the only way the depositions of Games Workshop's witnesses will proceed in a reasonably professional way is to conduct them at the courthouse.  We will inquire Monday about reserving space there.

Since you do not want to make any accommodation, please also confirm the document custodian will be available Tuesday.

Jonathan

---

**From:** Golinveaux, Jennifer A. [mailto:JGolinveaux@winston.com]
**Sent:** Friday, February 24, 2012 6:03 PM
**To:** Moskin, Jonathan
**Subject:** RE: Games Workshop v. Chapterhouse Studios

Thank you.

To clarify, is Plaintiff refusing to put up a designee on topics 35-37 based upon the earlier objections? If so, please clarify your concerns and let's try to work through this.

Regarding the schedule, we have tried to come up with a way to address your concern of having GW witnesses come to the U.S. over more than one week.  In light of the very large number of relevant Plaintiff witnesses, we have worked to be very targeted with the depositions we are taking, and simply can't agree in advance to half days with any of the noticed witnesses or designees. Although you mention below Mr. Gallagher not being named as an author, he is identified several times on Plaintiff's Exhibit A, and has been involved in the creative process at GW for more than two decades. We do intend to take Ms. Stevenson's deposition in her individual capacity in addition to as a corporate designee.

Regarding Chapterhouse's custodial deposition, are there specific questions you have about the production that we may be able to work through to address your concerns, which may be more effective than a deposition on the broad topics noticed?

To try to address your scheduling concerns, we could agree to take Mr. Goodwin's deposition on Saturday, March 10, rather than the following Monday.  Accordingly, we propose the following revised schedule for party depositions. Please let me know your thoughts.

**Wednesday, Feb. 29: Chapterhouse's telephonic custodial deposition (CH in SF)**
**Thursday, March 1: Games Workshop Retail, Inc in Memphis, TN**
**Monday, March 5: Neil Hodgson in Chicago**
**Tuesday, March 6: Gill Stevenson in Chicago**

Wednesday, March 7: Dave Gallagher in Chicago
Thursday, March 8: Andy Jones (as corporate designee) in Chicago
Friday, March 9: Alan Merrett in Chicago
Saturday, March 10: Jes Goodwin in Chicago
Monday, March 12: John Blanche telephonically
Wednesday, March 14: Chapterhouse's continued 30(b)(6) deposition in Texas

**Jennifer Golinveaux**
D: +1 (415) 591-1506
www.winston.com
WINSTON
&STRAWN
LLP

**From:** Moskin, Jonathan [mailto:JMoskin@foley.com]
**Sent:** Friday, February 24, 2012 11:35 AM
**To:** Golinveaux, Jennifer A.
**Subject:** RE: Games Workshop v. Chapterhouse Studios

The list is attached.

Jonathan

**From:** Golinveaux, Jennifer A. [mailto:JGolinveaux@winston.com]
**Sent:** Friday, February 24, 2012 1:19 PM
**To:** Moskin, Jonathan
**Cc:** Oh, Joon; Kearney, Tom J.; Kaspar, Scott R.; Raffensperger, Jon
**Subject:** RE: Games Workshop v. Chapterhouse Studios

Jonathan,

Please send over the list of designees by topics so that I have a better understanding of what the various designees will cover, and I will then respond to try to address some of your scheduling concerns.

Regards,
Jennifer

**Jennifer Golinveaux**
D: +1 (415) 591-1506
www.winston.com
WINSTON
&STRAWN
LLP

**From:** Moskin, Jonathan [mailto:JMoskin@foley.com]
**Sent:** Friday, February 24, 2012 9:29 AM
**To:** Golinveaux, Jennifer A.
**Cc:** Oh, Joon; Kearney, Tom J.; Kaspar, Scott R.; Raffensperger, Jon
**Subject:** RE: Games Workshop v. Chapterhouse Studios

Further to my message last night, here is our proposed schedule. I note that Ms Stevenson is GW's lawyer, so will only appear for designated topics in the 30(b)(6) notice where no other witness can be available. It is inappropriate and there is no reason here to designate the attorney.

I also remind you that not only is John Blanche ill, but at most he can only sit for a deposition for very limited periods at any one time (perhaps an hour or so). Equally important, it is also impossible for me to be in two places at one time, and Mr Kaspar is unavailable because of depositions and a similar deadline in another case. Because we have already noticed Chapterhouse's witnesses for the 12th, I cannot be in England and Texas at the same time. I also have a hearing on Friday March 9 in New York in another case and you should have ample time with the witnesses. There certainly is no reason to detain Mr. Goodwin or me over the weekend, and again, we had already advised you to reserve the following week for the defendant's depositions. I also note that Mr. Hodgson is simply an illustrator with a very limited design role at GW and we are not aware that any of Mr. Gallagher's works are even in issue. You might well be able to complete Mr Hodgson, Mr. Gallagher and Ms Stevenson in one day.

What we propose therefore, is that we can move Mr. Blanche's deposition to a later time and you can move the defendant's depositions to a later time if the court will agree to permit the depositions later in March - but only if the court so-orders. If you agree to such a relaxation of the schedule and if the court so-orders the arrangement, we will also agree to conduct the document custodian deposition on Wednesday

Thursday, March 1: Games Workshop Retail, Inc in Memphis, TN

Monday, March 5: Neil Hodgson (who is simply an illustrator) and Gill Stevenson in Chicago

Tuesday, March 6: Dave Gallagher (who is not named as an individual author for any works) and Andy Jones (as corporate designee) in Chicago

Wednesday, March 7: Alan Merrett and Jes Goodwin in Chicago

I look forward to hearing from you soon. For the record, we were preparing to send you a more complete breakdown of the 30(b)(6) designees, but held off after you rewarded our willingness to be cooperative by improperly designating Ms. Stevenson as a witness once we had identified her as a limited 30(b)(6) witness.

Jonathan

---

**From:** Moskin, Jonathan
**Sent:** Thursday, February 23, 2012 9:18 PM
**To:** 'jgolinveaux@winston.com'
**Cc:** 'KOh@winston.com'; 'TKearney@winston.com'; Kaspar, Scott R.; 'JRaffensperger@winston.com'
**Subject:** RE: Games Workshop v. Chapterhouse Studios

The reason we had to move the date is because Chapterhouse has failed to comply with the Court's prior order by refusing to produce any documents from the co-owner and co-founder of the company, whom Mr. Villacci publicly describes as his "partner". (For the same reason, the co-owner and partner is properly required to appear for his deposition where his company is based.)

Why can't the witness be available on Tuesday?

Jonathan

---

**From:** Golinveaux, Jennifer A. [mailto:JGolinveaux@winston.com]
**Sent:** Thursday, February 23, 2012 07:00 PM
**To:** Moskin, Jonathan
**Cc:** Oh, Joon <KOh@winston.com>; Kearney, Tom J. <TKearney@winston.com>; Kaspar, Scott R.; Raffensperger, Jon <JRaffensperger@winston.com>
**Subject:** RE: Games Workshop v. Chapterhouse Studios

Jonathan,

This email late Thursday afternoon is your first ever request to take Chapterhouse's custodial deposition on Tuesday. Tuesday is not available. We can proceed on February 29 (the date for which you have noticed it) if we receive your confirmation today that you wish to proceed on that date.

Meanwhile, please send the list of designees by topic that you said would be ready yesterday.

Regards,
Jennifer

**Jennifer Golinveaux**
D: +1 (415) 591-1506
www.winston.com
WINSTON
&STRAWN
LLP

---

**From:** Moskin, Jonathan [mailto:JMoskin@foley.com]
**Sent:** Thursday, February 23, 2012 3:48 PM
**To:** Golinveaux, Jennifer A.
**Cc:** Oh, Joon; Kearney, Tom J.; Kaspar, Scott R.; Raffensperger, Jon
**Subject:** RE: Games Workshop v. Chapterhouse Studios

I will respond more fully tomorrow about the balance of your message, but I have to note that your proposal is entirely unfair to Games Workshop. Although the court instructed you a week ago to produce documents from Mr. Fiertek, you have refused our repeated requests to advise when or if we will be receiving anything, and even if we are somehow wrong that your client violated the law by not preserving instant messages or emails, under your proposal we would not even get a chance to learn why no documents have been produced for 106 of the 121 products in issue; why not a single independent creation document has been produced; what were the unexplained attorney-client communications that defendants' privilege log fails to disclose and so forth until March 1, leaving only one business day for us to prepare for the follow up depositions as you have purported to block out the entire next week.

Therefore, unless you will stipulate that defendants' depositions can be taken after March 15, and unless the court so-orders that arrangement, the witness must be produced by Tuesday.

Jonathan

---

**From:** Golinveaux, Jennifer A. [mailto:JGolinveaux@winston.com]
**Sent:** Thursday, February 23, 2012 4:21 PM

**To:** Moskin, Jonathan
**Cc:** Oh, Joon; Kearney, Tom J.; Kaspar, Scott R.; Raffesperger, Jon
**Subject:** FW: Games Workshop v. Chapterhouse Studios

Jonathan,

I write further to our correspondence on deposition scheduling.

As you know Plaintiff has currently noticed two 30(b)(6) depositions of Chapterhouse. In light of this morning's hearing, Mr. Villacci will be available next week to testify telephonically on behalf of Chapterhouse on the custodial topics you noticed. Mr. Villacci can be available on Thursday, March 1 for two hours starting at 1pm PST. The witness will be at Winston & Strawn's offices in San Francisco. As the Court indicated this morning, that deposition will count against Plaintiff's allotted seven hours with Mr. Villacci.

Plaintiff has also noticed Chapterhouse's 30(b)(6) deposition for Monday, March 12 and Mr. Villacci's personal deposition on Tuesday, March 13. In light of the fact that Mr. Villacci is Chapterhouse's 30(b)(6) designee, and since Plaintiff will already have used a portion of its seven hours with Mr. Villacci, one day should be more than ample time to complete Chapterhouse's/Mr. Villacci's deposition. He will be available on Tuesday, March 13 in Dallas, Texas for the completion of his deposition, and will not separately be available on Monday, March 12.

Plaintiff has also noticed the deposition of Tomas Fiertek in Dallas, Texas. As you know, Mr. Fiertek is a resident of Sweden and Plaintiff will need to seek to depose him there, not in Dallas. If Plaintiff wishes to cover his expenses to fly to the U.S. for deposition, that is something we can discuss with Mr. Fiertek.

If I do not hear back from you by tomorrow, we will proceed with Plaintiffs' depositions on the dates set forth in my email immediately below, namely:

**Thursday, March 1: Games Workshop Retail, Inc in Memphis, TN**
**Monday, March 5: Neil Hodgson in Chicago**
**Tuesday, March 6: Gill Stevenson in Chicago**
**Wednesday, March 7: Dave Gallagher in Chicago**
**Thursday, March 8: Andy Jones (as corporate designee) in Chicago**
**Friday, March 9: Alan Merrett in Chicago**
**Monday, March 12: Jes Goodwin in Chicago**
**Monday, March 12: John Blanche telephonically**

We have still not received the list of Plaintiff's designees by topic that you said would be ready yesterday morning. Please send it.

Regards,
Jennifer

**Jennifer Golinveaux**
D: +1 (415) 591-1506
www.winston.com
WINSTON
& STRAWN
LLP

---

**From:** Golinveaux, Jennifer A.
**Sent:** Wednesday, February 22, 2012 10:01 AM
**To:** 'Moskin, Jonathan'; Oh, Joon
**Cc:** Kaspar, Scott R.; Raffesperger, Jon; Kearney, Tom J.
**Subject:** RE: Games Workshop v. Chapterhouse Studios

Jonathan,

I will respond to your email.

No, we do not intend to limit our deposition of Plaintiff's Rule 30(b)(6) designees to half a day each for both their corporate designee and individual depositions. We have already gone above and beyond to renotice the depositions to accommodate the scheduling needs you earlier identified. We also intend to depose Gill Stevenson in her personal capacity. In light of the scheduling preferences you have indicated, I propose the following dates for Plaintiff's witnesses, starting with their deposition as a corporate designee and continuing as necessary in their individual capacity:

Monday, March 5: Neil Hodgson
Tuesday, March 6: Gill Stevenson
Wednesday, March 7: Dave Gallagher

Thursday, March 8: Andy Jones (as corporate designee)
Friday, March 9: Alan Merrett
Monday, March 12: Jes Goodwin in Chicago
Monday, March 12: John Blanche telephonically

Please let us know this week if Plaintiff prefers to switch up any of these dates, or we will proceed accordingly. We will make every effort to complete the depositions in one seven hour testifying day for each witness, but reserve the right to seek additional time with witnesses as necessary, particularly in light of the fact that we still do not have the list of topics on which they will be designated to testify.

As you know, we already rescheduled the deposition of Games Workshop Retail to accommodate your schedule. We will reschedule yet again and will proceed on March 1 as you request, but only if the witness is available on that date for the full seven hours of deposition to which Defendant is entitled, and only if we receive your written confirmation of that this week. Otherwise, that deposition remains as currently noticed. If we can complete the deposition in less than the allowed time, we will do so.

As we have said repeatedly, we do not intend to make Chapterhouse available for two separate 30(b)(6) depositions and will object to the February 29 deposition you noticed in violation of the Court's instruction.

Jennifer


**Jennifer Golinveaux**
D: +1 (415) 591-1506
www.winston.com

WINSTON
&STRAWN
LLP

From: Moskin, Jonathan [mailto:JMoskin@foley.com]
Sent: Tuesday, February 21, 2012 5:11 PM
To: Oh, Joon
Cc: Kaspar, Scott R.; Raffensperger, Jon; Golinveaux, Jennifer A.; Kearney, Tom J.
Subject: Re: Games Workshop v. Chapterhouse Studios

As a further clarification, now that the briefing is done on this motion, we will prepare a more formal listing tomorrow of the topics for which the witnesses will be designated. I see that my prior message was not specific.

Jonathan


From: Moskin, Jonathan
Sent: Tuesday, February 21, 2012 07:49 PM
To: Oh, Joon <KOh@winston.com>
Cc: Kaspar, Scott R.; Raffensperger, Jon <JRaffensperger@winston.com>; Golinveaux, Jennifer A. <JGolinveaux@winston.com>; Kearney, Tom J. <TKearney@winston.com>
Subject: RE: Games Workshop v. Chapterhouse Studios

There are quite a few things I COULD say in response to your message but I am not looking to add any further to the needless hostility. Let me just observe that, coming in response to my own message confirming that we had all-but completed a list of designees, so that you would have them two weeks before depositions begin, I might simply express mystification. Similarly, although the number of witnesses you have requested is excessive, we have not complained. The rules contain no express requirement when or if a party such as GW should disclose its designees - much less authorize one party by fiat then to take more time than authorized. However, GW has now identified the four witnesses who will respond to the 30(b)(6) notice, namely Alan Merrett, Andy Jones, Jeremy Goodwin and Gill Stevenson.

Quite frankly, we were thinking that, as a practical matter, you would be able to complete the depositions in two or at most three days. That should be more than sufficient. Just as we don't intend to waste time with protracted questioning, we expect some consideration be given to the needs of the witnesses and the needs of the case. After all, the main issue is copying. What we proposed is the following schedule.

Monday 5 March – Neil Hodgson & Gill Stevenson
Tuesday 6 March – Dave Gallagher & Andy Jones
Wednesday 7 March – Alan Merrett & Jes Goodwin

Notwithstanding the normal courtesies that we should be entitled to expect (for example, we DO actually take pains to answer defendant's questions), we can't help but notice that your unexplained new interpretation of the rules comes from a party that has exceeded the number of permitted interrogatories and served almost 700 admission requests, while providing documents for only 15 of its 121 infringing products and has reneged on it repeated prior assurances of producing a document custodian for a telephonic deposition - and now continues that refusal in the face of a court order that appears quite unambiguous. Because you have identified no lack of cooperation; because there has been no lack of cooperation, and because the rules do not authorize the sort of new demands you are making, you only fuel suspicion that this is simply one more stratagem to run up costs and distract attention from the actual issues in the case.

I confess I am not optimistic, but I do hope there will be some actual communication rather than posturing as we attempt to complete scheduling of depositions.  On that note, I learned today that the rescheduled date for the Games Workshop Retail deposition is less convenient than the original date.  Although, as we have previously advised, GW Retail has almost no information relevant to this case, the witness, Sandra Casey, is only available on the morning of March 1.

Once again, please let me know if Chapterhouse will produce its document custodian for a short telephonic deposition now and when it will produce the remaining documents as directed by the Court.

Jonathan

---

**From:** Oh, Joon [mailto:KOh@winston.com]
**Sent:** Friday, February 17, 2012 8:05 PM
**To:** Moskin, Jonathan
**Cc:** Kaspar, Scott R.; Raffensperger, Jon; Golinveaux, Jennifer A.; Kearney, Tom J.
**Subject:** Games Workshop v. Chapterhouse Studios

Dear Mr. Moskin:

Chapterhouse has made every effort to accommodate your wishes regarding the deposition scheduling.  In light of your long and continued delay in providing the 30(b)(6) designees, however, (inexcusable since Chapterhouse served the operative 30(b)(6) notice on February 7, 2012, and Plaintiff has had notice of nearly all the topics since September 29, 2011), we will honor your request to have designated witness make one trip to testify, but you leave us with no choice but to schedule two days for each person, so that each person can testify as a designated 30(b)(6) witness one day and to continue as an individual witness for the second day as necessary.

Accordingly we have rescheduled the Hodgson deposition for March 5 and 6, 2012 to accommodate his schedule, and the Goodwin deposition for March 7 and 8, 2012.  We have rescheduled the Gallagher deposition for March 9 and 12 as necessary, and the Merrett deposition for March 13 and 14, 2012 as necessary.

Best regards,

Joon

**Joon Oh**
D: +1 (415) 591-1564
www.winston.com


WINSTON
&STRAWN
LLP

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. ***************************************************************** Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. ***************************************************************** Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid

penalties under the Internal Revenue Code of 1986, as amended.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
************************************************************************ Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
************************************************************************ Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
************************************************************************ Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding

message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author. ************************************************************************************ Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

# Exhibit

# 149

Page 1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3

4

5    - - - - - - - - - - - - - - - - -

6    GAMES WORKSHOP LIMITED,

7          Plaintiff,

8    v.          Civil Action No.: 1:10-cv-8103

9    CHAPTERHOUSE STUDIOS LLC and JON
     PAULSON d/b/a PAULSON GAMES,
10            Defendants.

11   - - - - - - - - - - - - - - - - -

12

13

14

15       DEPOSITION OF PROFESSOR LIONEL BENTLY

16       Thursday, July 12, 2012 at 9:28 a.m.

17

18

19            Held at:
         The offices of Eversheds
20           1 Wood Street
         London EC2V 7WS
21          United Kingdom

22

23   Court Reporter: Fiona Farson

24

25

---

Page 2

1         A P P E A R A N C E S

2    For the Plaintiff:

3        Jonathan E Moskin
     FOLEY & LARDNER LLP
4        90 Park Avenue
     New York, NY 10016-1314
5        Tel: 212.682.7474
     Fax: 212.687.2329
6        email: jmoskin@foley.com

7

8        Gill Stevenson, Legal Manager
     GAMES WORKSHOP LIMITED
9        Willow Road
     Lenton
10       Nottingham, NG7 2WS
     Tel: +44 (0) 115 900 4124
11       Fax: +44 (0) 115 916 811
     email: Gill.Stevenson@games-workshop.com

12

13

14   For the Defendant:

15       Scotia Hicks
     WINSTON & STRAWN LLP
16       101 California Street, 39th Floor
     San Francisco, CA 94111-5802
17       Tel: (415) 591-1000
     Fax: (415) 591-1400
18       email: shicks@winston.com

19

20

21

22

23

24

25

---

Page 3

1             I N D E X
2    EXAMINATION
3    BY MR. MOSKIN                          5
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

---

Page 4

1         E X H I B I T   I N D E X

2    Exhibit 119    Curriculum vitae of Professor Lionel Bently    9

3    Exhibit 120    Email dated 05/30/12 from Winston & Strawn    20

4    Exhibit 121    Email dated 05/29/12 from Tom Kearney    28

5    Exhibit 122    Expert report of Professor Lionel

6        Bently                    29

7    Exhibit 123    Expert report of Mr. Michael Bloch QC

8        and Dr. Harris Bor            35

9    Exhibit 124    Transcript of deposition of John

10       Blanche            93

11   Exhibit 125    Black Library Novels Commissioning Form

12       for Dan Abnett        96

13   Exhibit 126    Black Library Novels Commissioning Form

14       for Ben Counter        96

15   Exhibit 127    Confirmatory assignment for John

16       Sibbick        98

17   Exhibit 128    Exhibit A to Games Workshop Ltd's answer

18       to Interrogatory No 1        129

19   Exhibit 129    Excerpt from Intellectual Property Law,

20       Third Edition        166

21   Exhibit 130    Between a Rock and a Hard Place:

22       The Problems Facing Freelance Creators

23       in the UK Media Market-place    171

24

25



1 else that -- in paragraph 16(e) of your report, on
2 page 7, that the courts exceptionally will find an
3 implied undertaking to assign copyright.
4 A. Yes, as an exception to the general principle that the
5 author is the owner, yeah.
6 Q. Now, in the sense that you say "exceptionally,"
7 I wonder -- in American jurisprudence, it is said, for
8 example, that injunctive relief is an exceptional
9 remedy; and yet injunctions are granted on a daily
10 basis. So is -- is that sense in which you mean
11 "exceptional" here that it has to be out of the
12 ordinary, but it's not -- you know, in appropriate
13 circumstances, it will be found?
14 A. Well, I think I mean it in at least -- well, certainly
15 in one sense that as an exception to the general rule.
16 So you've got one statutory exception to the author as
17 being first owner, and then you have one judicial-made
18 exception to the legislative scheme that the author is
19 the owner of the copyright, and that's this equitable
20 assignment doctrine.
21 As you say, quite how many times is -- would be just
22 dependent upon the number of times that the particular
23 factual circumstances demanded such an inference.
24 Now, Mr. Lightman -- Mr. Justice Lightman says they
25 will be rare. Mr. Bloch and Dr. Bor say it will often.

1 That's all I can trust.
2 Q. But again, when you say "exceptionally," in
3 paragraph 16(e), that's again not meant as a numerical
4 or empirical count, but rather just as an exception to
5 the general rule that the author retains rights?
6 A. Yeah, I think that's right, yeah.
7 Q. If you're not comfortable with the word "often," would
8 you say that courts have repeatedly found equitable
9 assignments?
10 A. I would like to use the word "occasionally."
11 Q. Okay.
12 MR. MOSKIN: Well, let's mark 129.
13 (Exhibit 129 marked for identification.)
14 MR. MOSKIN: Are we back on the record? Okay.
15 BY MR. MOSKIN:
16 Q. First of all -- and I know this is just
17 a two-or-three-page excerpt, but is --
18 A. Yeah.
19 Q. Is this in fact an excerpt from -- that you recognize
20 from your book, Intellectual Property Law?
21 A. That is correct.
22 Q. And would you agree that on page 133 -- again, it's
23 simply an excerpt -- that you say that the courts have
24 repeated" -- and I don't mean to take this out of
25 context, but just say the courts have repeatedly

1 responded to their sense that rights should follow money
2 and have found equitable assignments.
3 MS. HICKS: Objection. Mischaracterizes the document.
4 I'm not sure where you're talking about, either.
5 133? Oh.
6 MR. MOSKIN: Right here.
7 BY MR. MOSKIN:
8 Q. Professor Bently, do you see that, where I'm referring
9 right here?
10 A. It sounds familiar to me.
11 Okay, so I -- certainly the words, "The courts, by
12 repeatedly responding to their sense that rights should
13 follow money," is there on page 133.
14 Q. And in fact you've cited a half-a-dozen cases, roughly,
15 in footnotes 90 through 93, in which courts have found
16 an equitable assignment?
17 A. Yeah, that's right.
18 Q. All right. And with the exception of Griggs v Raben
19 Footwear, none of these six cases are cited in your
20 report as indicating the frequency with which the courts
21 do find equitable assignment; is that right?
22 A. No, not really. I discuss some of these cases -- at
23 least one of these cases on page 60 of my report,
24 paragraph 135, the case of Massine v De Basil, and I
25 highlight there that the statement was an obiter dictum.

1 Q. However, by contrast, in your -- in your book, you
2 simply cite it as a case that supports the proposition
3 that courts do, in appropriate circumstances, find
4 equitable assignments.
5 A. Yeah. I think that the book in that respect hasn't
6 respected that it's the decision between obiter dictum
7 and ratio.
8 Q. And --
9 A. Can I say, I would need to -- I would want to go back
10 and look at those cases before -- before saying much
11 more about them. But they certainly -- if this is the
12 gist of your point, that I cite six cases in this book,
13 or Brad and I cite six cases in this book, where there
14 have been -- courts have talked about or found equitable
15 assignments, bar Massine v De Basil. Sure, there are
16 five cases over -- you know, over 80 years.
17 Q. Well --
18 A. And Massine v De Basil being something like the end of
19 the 1930s.
20 Q. But you know, isn't it also true that you're just
21 generally critical of the doctrine of equitable
22 assignment? You think that courts shouldn't --
23 shouldn't recognize it?
24 A. The passage contains a substantial criticism of the
25 judicial doctrine, which is to the effect that the



1    legislature has created a scheme where copyright is to
2    vest in the author.
3  Q.  And you seem --
4  A.  And -- can I finish my --
5  Q.  Go ahead; I'm sorry.  I didn't mean to cut you off.
6  A.  And under which it is perfectly possible for anybody to
7    create an express assignment of copyright, so to acquire
8    copyright from that person, even future copyright.  And
9    the courts have nevertheless found the -- developed the
10    doctrine of equitable assignment on top of that, in a
11    way that I am raising here, or we are raising the
12    legitimacy of that, which is what academics do when they
13    write textbooks for students; they want students to
14    think about whether this rule is justified or a good or
15    a bad rule.
16  Q.  And so is that the only sense in which you are critical
17    of the doctrine, that you want students to think about
18    whether it's a fair rule or not?
19  A.  I mean, I think that -- I certainly want students to
20    think about whether it's a fair rule, which is why these
21    comments appear in the context of a textbook.  I've been
22    critical of the rule elsewhere, in documents that
23    highlight on behalf of authors some of the problems
24    with, you know, UK copyright law.
25      So I wrote a book -- I don't know whether you've

1    seen it or not -- called Between a Rock and a Hard
2    Place:  The Problems Facing Freelance Creators in the UK
3    Media Market-place, that I was entitled -- asked to --
4    or commissioned to write.
5  Q.  And who commissioned you to write that book?
6  A.  An organization called the Creators' Rights Alliance,
7    that represents a whole range of different creators.
8  Q.  And what -- is there some sort of mission statement or
9    goal of the Creators' Rights Alliance?
10  A.  Probably.
11  Q.  Oh, okay.
12  A.  Other --
13  Q.  What do you understand is the purpose of the group?
14  A.  Yeah, the purpose of the group was to try and improve
15    the legal and then thus the economic position of
16    freelance creators in the UK.  And certainly -- well,
17    I can't remember, but I'm fairly certain that I would
18    have criticized the equitable assignment doctrine in
19    this book, because it leaves authors often -- and
20    creators often not clear about ownership of rights, and
21    in fact it often is a mechanism for taking those rights
22    from them when they haven't expressly consented to that.
23  Q.  Now, you're not aware of any facts that suggest that
24    Games Workshop mistreats or treats unfairly the people
25    that work for it, either on a freelance basis or as

1    employees?
2  A.  As I said before, I have no real knowledge of how Games
3    Workshop treats its employees or freelancers.
4  MR. MOSKIN:  Well, let's mark 130.
5      (Exhibit 130 marked for identification.)
6  BY MR. MOSKIN:
7  Q.  Is this the work to which you referred, A Rock and
8    a Hard Place?
9  A.  It's not a -- the -- it doesn't appear to me -- well,
10    I don't know where you got it from in this form.
11  Q.  Well, I don't mean to -- we just downloaded it from the
12    website of I think the Creators' Rights Alliance.
13  A.  Okay.  It's -- I mean, in its published form, it's
14    a different size, but I imagine it's the same document.
15  Q.  Okay.  And if you'll look to page 15 of this version.
16  A.  Yeah, I'm on page 15.
17  Q.  Now, first looking at footnote 17:  This is another
18    case, isn't it, which found an equitable assignment but
19    which was not cited in your report?
20  A.  Well, this case -- I don't know whether -- I don't
21    recall whether I've cited it, but it is a very poorly
22    reported case, because it only appears reported in that
23    summary in the European Intellectual Property Review.
24    It's a case that I would be -- I mean, I rely on it --
25    I refer to it here, but I think there are much better

1    cases than this, you know, the Griggs v Lucasfilm case,
2    to establish that proposition that you can -- that you
3    can have equitable assignments, which I don't -- as you
4    know, I'm not at all -- in any way denying this.
5  Q.  All right.  And is it your general view, as stated --
6    again, this is the last sentence of the paragraph on 15,
7    that:
8      "Dealings between creators and exploiters rarely
9    take place on the 'level playing field' of equivalent
10    market power which the legal principle of freedom of
11    contract presupposes."
12  A.  That's -- I don't have a problem with that sentence.
13    The background to this report was -- and I had lots of
14    discussions with creators to ascertain what their
15    grievances were and the circumstances in which those
16    grievances arose, because I was specifically
17    commissioned to write this, so -- and that certainly was
18    something that the creators represented -- who I met
19    represented to me.
20  Q.  And once again, you're not aware that this is
21    a criticism that can be leveled at Games Workshop, that
22    it takes unfair advantage of its --
23  A.  Well, I know --
24  Q.  -- of its -- let me finish the sentence -- of the
25    freelancers or employees who work for it?



1  A.  Okay.  Sorry.
2      No, to -- as I said before, I had very limited
3  knowledge of the relations between either Games Workshop
4  and its employees or Games Workshop and its freelancers,
5  and none of the information I have seen expresses the
6  views of any of those creators that they are badly
7  treated by Games Workshop.
8      (Discussion off the record.)
9  Q.  But isn't it also the case that in this -- in this work,
10     Between a Rock and a Hard Place, you express a general
11     disapproval of the doctrine of equitable assignments?
12 A.  Can you take me where -- to where I do?
13 Q.  All right.
14 A.  Sorry, I --
15 Q.  No reason for the suspense.  Why don't you turn to
16     page 94.
17     And here you state that -- you can correct me if I'm
18     mischaracterizing what you've written here, that
19     although as a general matter assignments have to be in
20     writing, the courts have circumvented this rule by
21     "...ludicrously ... first inferring from the
22     circumstances 'agreements' to assign copyright, and then
23     adopting a 'legal fiction' -- in the form of the
24     aphorism 'equity looks on as done, that which ought to
25     be done.'"

1      And I -- that's not meant to be a complete quote.
2  It's there; the document does speak for itself.  But
3  that is a criticism that you've leveled at the courts
4  for adopting the doctrine of equitable assignment?
5  A.  I think you need to -- when we're in this section, we
6  need to be a little bit nuanced that I am representing
7  here the views of the creators with whom I have been
8  discussing what the law is.  And I recollect vividly
9  their reaction to thinking that that system of equitable
10 assignment was -- was ludicrous.
11     And so then I've -- then it follows the CRA believes
12 that the statutory rule -- not everything in this
13 document that the CRA wanted is stuff that I would have
14 advocated myself, so it was a briefing document on
15 behalf of them.
16     Does that answer your question?  I'm a bit lost.
17 Sorry, counsel.
18 Q.  But just -- I think my question was simply that you've
19     expressed criticism here of the doctrine of equitable
20     assignment.
21 A.  Yes.  That would be fair.  Even if I was doing it on
22     behalf of others.  I don't really disagree.
23 Q.  I'm sorry, so you don't disagree with the statement?
24 A.  I think that the doctrine of equitable assignment often
25     leaves creators in a difficult position of knowing where

1  they stand vis-a-vis ownership of copyright,
2  particularly unless it is limited very specifically to
3  circumstances where the parties understood the nature of
4  the arrangement as being that the copyright was to vest
5  in the commissioner.
6  Q.  Obviously you haven't acknowledged in your report in
7  this case that you have a general underlying suspicion
8  of the doctrine of equitable assignment?
9  MS. HICKS:  Objection.  It mischaracterizes the prior
10     testimony and is argumentative.
11 A.  I have no need to acknowledge that I'd previously
12     criticized it.  This is a rebuttal report about what the
13     law is, and I state what the law is in a way that is,
14     I think, a suitable objective corrective to -- or
15     balance to what I saw in the report of Bloch and Bor.
16     We draw a distinction between what the law is and
17     what the law ought to be, and -- you know, some of those
18     statements are about what the law ought to be, but some
19     of the statements in the CRA report about what the law
20     ought to be, from the point of view of the creators who
21     I was representing.  The statements in this report are
22     about what the law is, based on a reading and citation
23     of the cases.
24 BY MR. MOSKIN:
25 Q.  And a finding in this case that there was an equitable

1  assignment would run contrary to your general
2  understanding of what the law ought to be?
3  MS. HICKS:  Objection.  Misstates prior testimony.
4  A.  Well, so -- actually, you know, the CRA report would not
5  necessarily -- well, I'm not sure what I think the law
6  -- exactly what the law ought to be now.
7      So I don't know, but -- about the accuracy of what
8  you just said.  I think that what -- if I was advocating
9  what the law ought to be, I think it's probably not too
10 far from what the law is now, insofar as I understand
11 the existing law to be that authors benefit from
12 copyright unless it can be established objectively that
13 they intended to transfer -- it was intended by the
14 parties that there would be a transfer of some rights.
15     So I reserve the right to change my view about what
16 the law ought to be from what I said in the CRA report
17 when I was representing the CRA.  So I'd want to give
18 it -- you know, this report is what the law is; it's for
19 the benefit of the court, not for the benefit of a --
20 you know, an organization trying to get in a particular
21 position.
22 BY MR. MOSKIN:
23 Q.  To state it differently, were an English court to
24     find -- I don't know to what extent, you know, authors
25     in England would look to what an American court finds --

