**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| |
|---|
| GAMES WORKSHOP LIMITED, |
| Plaintiff, |
| v. |
| CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES, |
| Defendants. |

Civil Action No. 1:10-cv-8103

Hon. Matthew F. Kennelly
Hon. Jeffrey T. Gilbert

**GAMES WORKSHOP'S REPLY TO
CHAPTERHOUSE'S ADDITIONAL MATERIAL FACTS IN SUPPORT OF
GAMES WORKSHOP'S MOTION FOR SUMMARY JUDGMENT**

### 1.     UNDISPUTED ADDITIONAL MATERIAL FACTS

*Additional Material Fact No. 10.* GW concedes that UK copyright law governs ownership of its alleged copyrights.

- Second Amended Complaint (Dkt. 147) at ¶¶ 13, 15;

- GW MSJ Ex. 10 (Bloch Report) at ¶ 19 (stating that GW's works were "designed and manufactured in England"); ¶ 29 (acknowledging that ownership of GW's copyrights is determined "as a matter of English law").

**Games Workshop's Response:** Games Workshop does not contest this fact.  However, Games Workshop contests this fact to the extent it implies that *copyrightability* is governed by UK copyright law.  As explained in Games Workshop's Reply Brief, US law governs the copyrightability of the products at issue.

*Additional Material Fact No. 17.* CHS's products are sold unpainted.

- Declaration of Nicholas Villacci in Support of CHS's Opposition to GW's Mot. for Summary Judgment ("Villacci Decl.") ¶¶ 4-5.

**Games Workshop's Response:** Games Workshop contests this fact to the extent that it implies

that Chapterhouse does not use painted parts or figures of its products on its website or

marketing materials to market and sell its products. *See, e.g.,* Exs. 33, 38, 129, and 131.

*Additional Material Fact No. 27.* GW has been aware of CHS and its products since at
least the summer 2008.

- Second Amended Complaint (Dkt. 147) at ¶ 31 ("Upon information and belief,
  after having initiated some modest sales on eBay in 2008, sometime in or about
  May 2009, Chapterhouse began manufacturing and selling gaming miniatures and
  accessories at its website located at www.chapterhousestudios.com ('the
  Website')");

- Kearney Decl. at:

  - ¶52, Ex. 39: G. Stevenson Depo. Tr. (March 9, 2012 ) ("Stevenson II") at
    103:4-6 (learning of CHS in January 2008);

  - ¶ 53, Ex. 40: G. Stevenson Depo. Tr. (March 5, 2012) ("Stevenson I") at
    17:22-19:25 (re: Stevenson's designations as 30(b)(6) witness, including
    on topics concerning document collection, confusion, CHS, and trademark
    policies);

  - ¶6, Ex. 4: Depo. Ex. 39 (designation list).

**Games Workshop's Response:** Games Workshop does not contest the fact that Chapterhouse

(or its predecessor) began making sales on eBay and similar websites around June 2008.

## 2. DISPUTED ADDITIONAL MATERIAL FACTS

*Additional Material Fact No. 11.* Alan Merrett's statement that "it is [GW's] customary
practice to obtain confirmatory assignments from [freelancers]," but that "[o]ver the years, some
of these have been misplaced," is flatly contradicted by discovery responses in which GW stated
that it was "not aware of any documents responsive to [CHS's] request" for "documents
constituting the chain of title for all copyrights" it claimed in this action.

- Merrett Decl. ¶ 12 (GW MSJ Ex. 1);

- Kearney Decl. ¶ 25 Ex. 19: Plaintiff Games Workshop Studios LLC's [*sic*]
  Response to Request for Production of Documents to Games Workshop Limited
  Set Two (Response to Request 4);

- Kearney Decl. ¶ 20 (all but one of approximately 30 "confirmatory assignments"
  executed after April 20, 2012, more than a year into this litigation and after the
  close of fact discovery);

2

- Dkt. 116: Scheduling Order.

**Games Workshop's Response:** Games Workshop contests this fact. The fact that Games Workshop did not currently retain assignment documents does not contradict the unrebutted testimony from Games Workshop's employees that it was Games Workshop's customary policy to collect such documents. (Ex. 1, Merrett Decl. ¶12). Furthermore, Games Workshop produced contemporaneous confirmatory assignments from all 11 nominally freelance artists whose work is at issue (Games Workshop does not claim copyright issues in any works by Gary Chalk, Des Hanley, or Adrian Wild), and Games Workshop has obtained and produced to Chapterhouse a number of confirmatory assignments that confirmed that the subject authors had in fact assigned their rights to Games Workshop. (Id.; Exs. 142 and 151) Finally, there is no evidence that any of the subject authors allege ownership over any of the copyrights at issue. (Ex. 1, Merrett Decl., ¶13).

*Additional Material Fact No. 12.* For six authors (Wayne England; Clint Langley; Mike McVey; Bob Naismith; Adrian Smith, and Simon Egan), who among them created nine of GW's alleged works identified as infringed in its Second Rev. Copyright Claim Chart, GW has provided no assignments, no employment agreements, no evidence that those individuals were ever its employees during any relevant times, and was unable to provide the employment dates for these individuals in their interrogatory response, with the exception of Mr. Smith, who was not an employee at relevant times based on GW's interrogatory responses.

- Kearney Decl. ¶ 23;

- Kearney Decl. at

  - ¶13, Ex. 9: Plaintiff Games Workshop Limited's Further Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22 (listing alleged authors and dates of employment if any);

  - ¶10, Ex. 6: First Rev. Copyright Claim Chart;

  - ¶11, Ex. 7: Second Rev. Copyright Claim Chart.

**Games Workshop's Response:** Games Workshop contests this fact. Games Workshop in fact has produced confirmatory assignments from its former employees, Clint Langley and Wayne

3

England, its current employee, Simon Egan, as well as for the former freelancer Adrian Smith. (Ex. 132, Suppl. Merrett Decl ¶ 2-3; Ex. 151)  Although, as estimated by Mr. Goodwin, 95-99% of the company's products are created by employees, it has over the years employed a small number of free-lance artists. (Ex. 7, Goodwin Tr. at 57:6-15; Ex. 1, Merrett Decl. at ¶ 12). However, it has had a general practice of collecting confirmatory assignments from such individuals, notwithstanding that some have been lost over the years. (Ex. 1 at ¶ 12). Nonetheless, Games Workshop has confirmatory assignments for the works here at issue in which an individual who might nominally be deemed a freelance artist participated. (Id.). Even when Games Workshop does work with freelance artists, it directly participates in and closely supervises the process, as every work must fit within the broader Warhammer 40K universe. (Id.). There are also a small number of works created by employees (Ex. 8, Sup. Resp. to Interrogatory 22) for which Games Workshop is unable to locate employment records (or confirmatory assignments). However, Alan Merrett, Games Workshop's Head of Intellectual Property is able to vouch for their employment status (Ex. 1, Merrett Decl. at ¶ 13). As a practical matter, no such individual has ever purported to challenge Games Workshop's ownership of the subject works. (Id.) Even if they had, as a matter of English law, Games Workshop would, minimally, be deemed a joint author of such works or owner by equitable assignment. (Ex. 10, Bloch Report ¶¶ 60-97, 102-111).

    ***Additional Material Fact No. 13.*** GW has produced no evidence that the following authors were ever GW employees: Wayne England; Clint Langley; Mike McVey; Bob Naismith.
- Kearney Decl. ¶ 23;

- Kearney Decl. at:

  - ¶ 13, Ex. 9: Plaintiff Games Workshop Limited's Further Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22 (listing alleged authors and dates of employment if any);

- ¶ 15, Ex. 11: Apr. 2, 2012 John Blanche Depo. Tr. at 48:9-22 ("**Q:** Clint Langley? **A:** I know the name but I know him as a freelance artist for the Black Library. . . ");

**Games Workshop's Response:** Games Workshop contests this fact. Games Workshop in fact has produced confirmatory assignments from its former employees, Clint Langley and Wayne England. (Ex. 132, Suppl. Merrett Decl ¶ 2-3) Although, as estimated by Mr. Goodwin, 95-99% of the company's products are created by employees, it has over the years employed a small number of free-lance artists. (Ex. 7, Goodwin Tr. at 57:6-15; Ex. 1, Merrett Decl. at ¶ 12). However, it has had a general practice of collecting confirmatory assignments from such individuals, notwithstanding that some have been lost over the years. (Ex. 1 at ¶ 12). Nonetheless, Games Workshop has confirmatory assignments for the works here at issue in which an individual who might nominally be deemed a freelance artist participated. (Id.). Even when Games Workshop does work with freelance artists, it directly participates in and closely supervises the process, as every work must fit within the broader Warhammer 40K universe. (Id.). There are also a small number of works created by employees (Ex. 8, Sup. Resp. to Interrogatory 22) for which Games Workshop is unable to locate employment records (or confirmatory assignments). However, Alan Merrett, Games Workshop's Head of Intellectual Property is able to vouch for their employment status (Ex. 1, Merrett Decl. at ¶ 13). As a practical matter, no such individual has ever purported to challenge Games Workshop's ownership of the subject works. (Id.) Even if they had, as a matter of English law, Games Workshop would, minimally, be deemed a joint author of such works or owner by equitable assignment. (Ex. 10, Bloch Report ¶¶ 60-97, 102-111).

*Additional Material Fact No. 14.* The evidence that GW produced shows that Adrian Smith was not its employee during the time he created the alleged works.
- Kearney Decl. at:

5

- ¶ 11, Ex. 7: Second Rev. Copyright Claim Chart, No. 23 (Adrian Smith credited with work created in 2002);

- *id.* at no. 45 (Adrian Smith credited with work created in 2001).

- ¶ 13, Ex. 9: Plaintiff Games Workshop Limited's Further Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22 (alleging GW employed Adrian Smith between 01/12/2008 and 11/09/2009).

**Games Workshop's Response:** Games Workshop admits that Mr. Smith was engaged as a freelance artist when he created certain Games Workshop works at issue (such as the cover art for the novel *Soul Drinkers*), for which Games Workshop has furnished a confirmatory assignment) and that Mr. Smith did not become an employee until 2008. Games Workshop has obtained a confirmatory assignment from Mr. Smith. (Ex. 151).

*Additional Material Fact No. 15.* GW has no evidence that Simon Egan was its employee during the time he created the alleged works.
- Kearney Decl. at:

- ¶ 11, Ex. 7: Second Rev. Copyright Claim Chart, No. 82 (Simon Egan credited with undated work);

- ¶ 13, Ex. 9: Plaintiff Games Workshop Limited's Further Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22 (alleging GW employed Simon Egan from 01/06/2004 to the present).

**Games Workshop's Response:** Games Workshop contests this fact. Simon Egan has been employed by Games Workshop since 01/06/2004. (CHS Mot., Kearney Decl, Ex. 45). The Spaces Wolves conversion pack for the Rhino sold by Forge World was created after 01/06/2004 (Ex. 132, Suppl., Merrett Decl. ¶ 3) and Mr. Egan has signed a confirmatory assignment. There are no other copyrighted works of Simon Egan at issue in Games Workshop's Second Rev. Copyright Claim Chart. (Ex. 135).

*Additional Material Fact No. 18.* GW's Exhibit 126, which purports to be an image of the back of CHS's "Power Armor Shoulder Pad for Space Marine", is not a Chapterhouse product.

- Villacci Decl. ¶ 9.

- GW MSJ Ex. 126;

- Kearney Decl. ¶ 2, Ex. 1;



Back of CHS "Power Armor Shoulder Pad for Space Marine(CHS Product No. 54)



DETAIL of GW MSJ Ex. 126

**Games Workshop's Response:**  Games Workshop contests this fact.  Mr. Villacci testified that

Chapterhouse copied the indents on the back of Games Workshop's shoulder pads when it

created the templates for its own products.  Villacci Tr. at 170 l. 11 – 173 l. 17.

> Q Okay. And do you know where those indentations are there?
> A We designed them to be -- they're similar for -- if players are that picky about
> details on their models, we wanted to put them on there so that they would be
> similar to the ones that Games Workshop has.
> Q Do they serve any function?
> A I'm sure there's some sort of in the fiction , like, strengthening function.
> Q I'm saying just function in how the shoulder pads just -- you know, work on an
> actual model?
> A Esthetics. (Ex. 16, Villacci Tr at 172 l. 9 - 20)

The picture Games Workshop used in Ex. 126 is a photograph of the back side of the physical

sample Chapterhouse produced at CHS0017417.  The physical sample as well as the photograph

(Ex. 126) were shown to Mr. Villacci at his deposition where he confirmed that the picture was

of Chapterhouse's Tactical Shoulder Pad for Space Marines with Number VI (Product 62).  (Ex.

16, Villacci Tr. At 171:14-172:14; Ex. 154, Villacci Dep. Exhibits 51 and 51A).

*Additional Material Fact No. 21.* GW has no sales records proving if or when a
particular product was sold in the U.S., or in any particular geographical area such as in Illinois.

4814-9293-5441.2

- Kearney Decl. ¶5, Ex. 3: Jones Dep. at:

  - 23:24-24:11 ("….Have we got records that show that every single item has been sold in the States, I don't know, sorry. . . ."); 22:9-12; 24:12-25:2; 25:14-26:18; 40:20-41:4; 60:20-24; 214:19-215:14;

  - 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

- Kearney Decl. at:

  - ¶6, Ex. 4: Depo. Ex. 39 (GW's (30(b)(6) designation list);

  - ¶ 4, Ex. 2: Depo. Ex. 114 (Rog 18 Response);

- Kearney Decl. ¶42, Ex. 33: Deposition of Sandra Casey (Mar. 1, 2012) ("Casey Dep.") at:

  - 37:23 – 38:4 ("Some products are not sold in our retail stores that are sold through the Internet");

  - 42:13-43:3; 50:7-51:3; 51:7-12; 64:11-65:1; e.g., at 50:14-18:

    Q…..For any given particular product, would Games Workshop Retail have a record of when it first sold that product in the U.S.?

    A. That would not be readily available, no….

  - 12:22-13:1 (re: Casey's designation as 30(b)(6) witness for GWR);

- Kearney Decl. at:

  - ¶44, Ex. 35: CHS's Deposition Subpoena to GWR;

  - ¶43, Ex. 34: CHS's Document Subpoena to GWR;

  - ¶45 , Ex. 36: GWR's Response to [Document] Subpoena;

  - ¶46 , Ex. 37: Response to [Deposition] Subpoena to GWR;

  - ¶47 , Ex. 38: Re-Notice of Subpoena to GWR.

**<u>Games Workshop's Response:</u>**  Games Workshop contests this fact.  As explained in the Jones declaration, Exhibit 145 contains two spreadsheets summarizing the highly detailed sales data that was produced to Chapterhouse.  (Ex. 146, Sup. Jones Decl. ¶2).  The detailed sales data

8

provides no doubt that each of the accused products was sold in commerce in the United States prior to Chapterhouse's sales of its products. The detailed sales data was produced at GW0011004-GW0011044. (Ex. 155, 2nd Sup. Moskin Decl. ¶ 2) The detailed sales data consisted of 41 separate files, each produced in raw excel format to allow for Chapterhouse's easy searching for the various products by name and date. (Id. at ¶ 3) Further, the spreadsheets are set up with various macros that allow easy sorting and filtering by year, month, product id, and product description. (Id.) The detailed sales data was subdivided into six main categories based on Games Workshop's various sales channels in the United States: US Retail, US Direct, US Trade, Global Web, Black Library, and Forge World. (Id. at ¶ 4) For each of these channels detailed sales spreadsheets were provided that detail for each month of each year, the total number of sales of each Games Workshop product number (including product description) on both a quantity level and a dollar level. (Id.) For example, the excel spreadsheet for US Direct sales indicates that in February of 2007 the Tyranid Codex (product number 60030106002) was sold seven times at an MSRP of $22 for a total of $154. (Id.) Due to the large size of each of these spreadsheets (many over 50,000 lines each), Games Workshop has not included these spreadsheets as exhibits in its motion; however, if necessary, Games Workshop is willing to submit these spreadsheets under seal to the Court. (Id. at ¶ 5) Nonetheless, Chapterhouse has never contested any of the information contained therein, or explained any difficulty they have had in understanding the information. (Id.) The headers on the spreadsheets are self explanatory (Year, Period, Product, Description, Quantity, MSRP, and Total). (Id.) Moreover, Chapterhouse itself has purchased all or essentially all of these products in the United States (Ex 136) and for that reason named all of its competing products using the established Games Workshop trademarks to make them immediately identifiable to Games Workshop's customers.

*Additional Material Fact No. 22.* There is no evidence that anyone has ever been confused about the relationship between GW and CHS.

- Kearney Decl. ¶48;

- Kearney Decl. at

  - ¶42 & Ex. 33 : Casey Dep. at 58:23-59:20;

    (e.g., Q. Does Games Workshop Retail have any records of customers expressing confusion between their products and Chapterhouse products?

    A. Not to my knowledge.);

  - *Id.*: Casey Dep. at 12:22-13:1(re: Casey's designation as 30(b)(6) witness for Games Workshop Retail, Inc. "GWR");

  - ¶44, Ex. 35: CHS's Deposition Subpoena to GWR;

  - ¶43, Ex. 34: CHS's Document Subpoena to GWR;

  - ¶45 , Ex. 36: GWR's Response to [Document] Subpoena;

  - ¶46 , Ex. 37: Response to [Deposition] Subpoena to GWR;

  - ¶47 , Ex. 38: Re-Notice of Subpoena to GWR.

- Villacci Decl. in Support of CHS Mot. for Summary Judgment ("Villacci MSJ Decl.") (Dkt. 208.43-208.44) at ¶13.

**Games Workshop's Response:**  Games Workshop disputes this fact.  Games Workshop has received several emails evidencing this customer confusion.  (Ex. 122).  Evidence of customer confusion written by English speaking customers received by Games Workshop UK's company via email is still relevant insofar as Chapterhouse's internet-based business originates in the United States but is not limited to United States customers.

*Additional Material Fact No. 23.* GW did not produce itemized sales invoices or purchase orders for each or any of the Marks At Issue, including any sales invoices or purchase orders for Internet or retail sales in the U.S. or Illinois.

- Kearney Decl. ¶ 49, 50;

- Kearney Decl. ¶5, Ex. 3: Jones Dep. at:

- 23:24-24:11 ("….Have we got records that show that every single item has been sold in the States, I don't know, sorry. . . ."); 22:9-12; 24:12-25:2; 25:14-26:18; 40:20-41:4; 60:20-24; 214:19-215:14;

- 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

- 203:15-207:10 (explaining GW0002583-85);

- GW MSJ Ex. 3 (GW0002583-85);

- Kearney Decl. at:

  - ¶42, Ex. 33: Casey Dep. at 93:14-17:

    Q. Has Games Workshop Retail produced any documents to the Defendants in response to the document subpoena?

    A. No.

- Kearney Decl. at:

  - ¶5, Ex. 3: Jones Dep. at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

  - ¶42, Ex. 33: Casey Dep. at 12:22-13:1(re: Casey's designation as 30(b)(6) witness for Games Workshop Retail, Inc. "GWR");

  - ¶44, Ex. 35: CHS's Deposition Subpoena to GWR;

  - ¶43, Ex. 34: CHS's Document Subpoena to GWR;

  - ¶45 , Ex. 36: GWR's Response to [Document] Subpoena;

  - ¶46 , Ex. 37: Response to [Deposition] Subpoena to GWR;

  - ¶47 , Ex. 38: Re-Notice of Subpoena to GWR.

  - ¶6, Ex. 4: Depo. Ex. 39 (GW's (30(b)(6) designation list).

**Games Workshop's Response:**  Games Workshop contests this fact.  As explained in the Jones declaration, Exhibit 145 contains two spreadsheets summarizing the highly detailed sales data that was produced to Chapterhouse.  (Ex. 146, Sup. Jones Decl. ¶2).  The detailed sales data provides no doubt that each of the accused products was sold in commerce in the United States

11

prior to Chapterhouse's sales of its products. The detailed sales data was produced at GW0011004-GW0011044. (Ex. 155, 2nd Sup. Moskin Decl. ¶ 2) The detailed sales data consisted of 41 separate files, each produced in raw excel format to allow for Chapterhouse's easy searching for the various products by name and date. (Id. at ¶ 3) Further, the spreadsheets are set up with various macros that allow easy sorting and filtering by year, month, product id, and product description. (Id.) The detailed sales data was subdivided into six main categories based on Games Workshop's various sales channels in the United States: US Retail, US Direct, US Trade, Global Web, Black Library, and Forge World. (Id. at ¶ 4) For each of these channels detailed sales spreadsheets were provided that detail for each month of each year, the total number of sales of each Games Workshop product number (including product description) on both a quantity level and a dollar level. (Id.) For example, the excel spreadsheet for US Direct sales indicates that in February of 2007 the Tyranid Codex (product number 60030106002) was sold seven times at an MSRP of $22 for a total of $154. (Id.) Due to the large size of each of these spreadsheets (many over 50,000 lines each), Games Workshop has not included these spreadsheets as exhibits in its motion; however, if necessary, Games Workshop is willing to submit these spreadsheets under seal to the Court. (Id. at ¶ 5) Nonetheless, Chapterhouse has never contested any of the information contained therein, or explained any difficulty they have had in understanding the information. (Id.) The headers on the spreadsheets are self explanatory (Year, Period, Product, Description, Quantity, MSRP, and Total). (Id.) Moreover, Chapterhouse itself has purchased all or essentially all of these products in the United States (Ex 136) and for that reason named all of its competing products using the established Games Workshop trademarks to make them immediately identifiable to Games Workshop's customers.

*Additional Material Fact No. 33.* There is no evidence that the parties sell their respective products through the same websites, retail stores, or distributors.

- Kearney Decl. ¶ 62;

- Kearney Decl. at:

    - ¶ 63, Ex. 45: GW Response to CHS Interrogatories Set 2 (Interrogatory 11) ("Games Workshop sells copyrighted products at issue on the Internet, at special events and in retail stores.");

    - ¶ 64, Ex. 46: Defendant Chapterhouse Studios LLC's Second Supplemental Response to Games Workshop's Ltd.'s Second Set of Interrogatories to Chapterhouse Studios LLC (Nos. 3-13) (Interrogatory 9) (listing websites and physical locations where Chapterhouse has sold products that GW claims infringe its copyrights).

**Games Workshop's Response:** Games Workshop contests this fact to the extent it implies that potential customers may not see both Games Workshop products and Chapterhouse products on the secondary market (such as eBay), at gaming conventions, or otherwise while playing the Warhammer 40K tabletop game against other opponents. Chapterhouse also concedes it markets its products exclusively on web forums devoted principally if not exclusively to fans of Warhammer 40,000.

*Additional Material Fact No. 35.* GW has produced no sales invoices or other records showing that GW and CHS distributed goods in any particular geographical area that overlap.
- Kearney Decl. ¶ 7.

**Games Workshop's Response:** Games Workshop contests this fact. As explained in the Jones declaration, Exhibit 145 contains two spreadsheets summarizing the highly detailed sales data that was produced to Chapterhouse. (Ex. 146, Sup. Jones Decl. ¶2). The detailed sales data provides no doubt that each of the accused products was sold in commerce in the United States prior to Chapterhouse's sales of its products. The detailed sales data was produced at GW0011004-GW0011044. (Ex. 155, 2nd Sup. Moskin Decl. ¶ 2) The detailed sales data consisted of 41 separate files, each produced in raw excel format to allow for Chapterhouse's easy searching for the various products by name and date. (Id. at ¶ 3) Further, the spreadsheets

13

are set up with various macros that allow easy sorting and filtering by year, month, product id, and product description. (Id.) The detailed sales data was subdivided into six main categories based on Games Workshop's various sales channels in the United States: US Retail, US Direct, US Trade, Global Web, Black Library, and Forge World. (Id. at ¶ 4) For each of these channels detailed sales spreadsheets were provided that detail for each month of each year, the total number of sales of each Games Workshop product number (including product description) on both a quantity level and a dollar level. (Id.) For example, the excel spreadsheet for US Direct sales indicates that in February of 2007 the Tyranid Codex (product number 60030106002) was sold seven times at an MSRP of $22 for a total of $154. (Id.) Due to the large size of each of these spreadsheets (many over 50,000 lines each), Games Workshop has not included these spreadsheets as exhibits in its motion; however, if necessary, Games Workshop is willing to submit these spreadsheets under seal to the Court. (Id. at ¶ 5) Nonetheless, Chapterhouse has never contested any of the information contained therein, or explained any difficulty they have had in understanding the information. (Id.) The headers on the spreadsheets are self explanatory (Year, Period, Product, Description, Quantity, MSRP, and Total). (Id.) Moreover, Chapterhouse itself has purchased all or essentially all of these products in the United States (Ex 136) and for that reason named all of its competing products using the established Games Workshop trademarks to make them immediately identifiable to Games Workshop's customers.

### 3.  IMMATERIAL ADDITIONAL MATERIAL FACTS

***Additional Material Fact No. 1.*** GW identified only 121 CHS products before the close of fact discovery.

- Kearney Decl. Exs. 5 (Original Copyright Claim Chart), 6 (First Rev. Copyright

- Claim Chart, listing 121 CHS products).

- Dkt. 116 (Scheduling Order).

14

**Games Workshop's Response:** Games Workshop does not contest this fact. For purposes of its Motion, Games Workshop is relying on the claims identified in its Second Rev. Copyright Claim Chart served on August 3, 2012. (Kearney Decl. ¶11, Ex. 7).

*Additional Material Fact No. 2.* On August 3, 2012, GW served a Second Rev. Copyright Claim Chart, in which it dropped its copyright claims for 33 CHS products; added copyright claims against 15 never-before-identified CHS products; and identified five new CHS products, against which it did not bring copyright claims. GW's Second Rev. Copyright Claim Chart is a chart with 143 entries, but two entries (nos. 125 and 127) are blank.

- Kearney Decl. ¶ 10-11 & Exs. 6-7 (First Rev. Copyright Claim Chart; Second Rev. Copyright Claim Chart)**;**

- Kearney Decl. ¶ 72;

- GW Motion for Summary Judgment at 4, fn.2.

**Games Workshop's Response:** Games Workshop does not contest that it served a Second Revised Claim Chart on August 3, 2012 in which it dropped claims of copyright infringement as to 33 previously identified products. However, it did not purport to assert claims in 15 new products (which claims will be the subject of a new complaint to be filed presently), but simply to identify the 15 new products as being within the scope of Chapterhouse's underlying discovery requests.

*Additional Material Fact No. 3.* GW attached 13 U.S. Copyright Registrations to its Motion for Summary Judgment, of which two were for works not at issue in this case ("Games Workshop Catalog 2006-07", TX 6-541-286; and "Necromunda – Battle for Survival in the Nightmare Undercity", TX 7-536-772).

- GW MSJ Ex. 11 (copyright registrations)

- Kearney Decl. at:

  - ¶ 9 & Ex. 5 (Original Copyright Claim Chart) ("Games Workshop Catalog 2006-07" and "Necromunda – Battle for Survival in the Nightmare Undercity" not listed as infringed by any CHS product).;

  - ¶ 10 & Ex. 6 (First Rev. Copyright Claim Chart) (same);

  - ¶ 11 & Ex. 7 (Second Rev. Copyright Claim Chart) (same).

**Games Workshop's Response:** Games Workshop does not contest this fact. However, the copyright office has now issued copyright registrations on 45 of the works at issue in this case:

15

| Copyright Application | Registration Number | Registration Date |
|---|---|---|
| Codex: Dark Angels | TX 7-538-588 | 3/5/2012 |
| How to Paint Space Marines | TX 7-538-607 | 3/5/2012 |
| Codex: Tyranids | TX 7-538-598 | 3/5/2012 |
| Codex: Space Wolves (2009) | TX 7-549-698 | 3/5/2012 |
| Horus Heresy: Collected Visions | TX 7-538-569 | 3/5/2012 |
| Codex: Eldar | TX 7-549-696 | 3/5/2012 |
| Necromunda – Battle for Survival in the Nightmare Undercity | TX 7-536-772 | 3/9/2012 |
| Codex: Space Marines (2004) | TX 7-505-931 | 3/7/2012 |
| Codex: Space Wolves (1999) | TX 7-508-934 | 3/7/2012 |
| Codex: Orks | TX 7-507-116 | 3/7/2012 |
| Index Astartes | TX 7-505-945 | 3/7/2012 |
| Index Astartes III | TX 7-505-940 | 3/7/2012 |
| Space Marine Collectors' Guide | TX 7-507-128 | 3/7/2012 |
| Warhammer 40,000 Wargear | TX 7-508-949 | 3/7/2012 |
| The Art of Warhammer 40,000 | TX 7-505-926 | 3/7/2012 |
| How to Paint Space Marines | TX 7-538-607 | 3/5/2012 |
| Brothers of the Snake | TX 7-508-982 | 3/7/2012 |
| Legion of the Damned | TX 7-513-642 | 3/2/2012 |
| Alpha Legion Land Raider Doors Set | VA 1-819-306 | 3/7/2012 |
| Blood Raven Transfer Sheet | VA 1-819-307 | 3/7/2012 |
| Contemptor Heavy Conversion Beamer | VA 1-824-754 | 3/7/2012 |
| Mark V Heresy Armour | VA 1-824-755 | 3/7/2012 |
| Space Marine Character Conversion Kit | VA 1-824-622 | 3/7/2012 |
| Salamanders Land Raider Doors | VA 1-824-753 | 3/7/2012 |
| Salamanders Terminator Shoulder Pads | VA 1-824-496 | 3/7/2012 |
| Space Wolves Door Set for Rhino | VA 1-824-497 | 3/7/2012 |
| Valthex Astral Claws of the Master Forge | VA 1-824-495 | 3/7/2012 |
| Eldar Farseer with Spear | VA 1-814-847 | 3/7/2012 |
| Eldar Farseer and Warlocks | VA 1-814-841 | 3/7/2012 |
| Space Marine Drop Pod | VA 1-814-902 | 3/7/2012 |
| Legion of the Damned | VA 1-824-653 | 3/9/2012 |
| Eldar Guardians | VA 1-814-857 | 3/7/2012 |
| Tau Piranha | VA 1-814-858 | 3/7/2012 |
| Space Marine Predator Tank | VA 1-824-621 | 3/8/2012 |
| Eldar Farseer | VA 1-824-646 | 3/9/2012 |
| Space Marine Chaplain with Jump Pack | VA 1-824-666 | 3/9/2012 |
| Land Raider | VA 1-824-602 | 3/8/2012 |
| Armour through the Ages | VA 1-824-732 | 3/8/2012 |
| Imperial Guard Cadian Shock Troops | VA 1-824-586 | 3/8/2012 |
| Imperial Fists Conversion Pack | VA 1-824-739 | 3/8/2012 |
| Grey Knights | VA 1-824-604 | 3/8/2012 |
| Flesh Tearers Shoulder Pads | VA 1-824-668 | 3/8/2012 |
| Eldar Jetbike | VA 1-824-904 | 3/8/2012 |

16

| Copyright Application | Registration Number | Registration Date |
|---|---|---|
| Basilica Administratum | VA 1-824-629 | 3/8/2012 |
| Website Content From 2000 to 2011 | TXu 1-788-290 | 12/28/2011 |

(Ex. 155, 2nd Sup. Moskin Decl. ¶ 6).

*Additional Material Fact No. 4.* Only the following five registrations attached at GW MSJ Ex. 11 were filed within five years of the alleged date of publication of the work, and one of those works ("Games Workshop Catalog 2006-07") is not at issue in this case:

- "Blood Raven Transfer Sheet", Reg. No. VA 1-819-307;

- "Games Workshop Catalog 2006-07", Reg. No. TX 6-541-286;

- "Horus Heresy: Collected Visions", Reg. No. TX 7-538-569;

- "Codex: Tyranids", Reg. No. TX 7-538-598; and

- "Website Content from 2000 to 2011", Reg. No. TXu 1-788-290).

- GW MSJ Ex. 11 (showing alleged publication dates and registration dates for each registered work)

- Kearney Decl. at:

  - ¶ 9 & Ex. 5 (Original Copyright Claim Chart) ("Games Workshop Catalog 2006-07" not listed as infringed by any CHS product).;

  - ¶ 10 & Ex. 6 (First Rev. Copyright Claim Chart) (same);

  - ¶ 11 & Ex. 7 (Second Rev. Copyright Claim Chart) (same).

**Games Workshop's Response:** Games Workshop disputes that only five of its works at issue were registered within five years but does not otherwise contest this fact. In fact, thirteen of Games Workshop's products at issue were registered within five years of the date of first publication. These registrations are:

| Registration | Registration Date | Date of First Publication |
|---|---|---|
| Codex: Tyranids TX 7-538-598 | 3/5/12 | 11/30/09 |
| Codex: Space Wolves TX 7-549-698 | 3/5/12 | 12/31/09 |
| Horus Heresy: Collected Visions TX 7-538-569 | 3/5/12 | 4/30/07 |
| Legion of the Damned TX 7-513-642 | 3/2/12 | 10/31/11 |
| Blood Raven Transfer Sheet VA 1-819-307 | 3/7/12 | 7/31/10 |

17

| Registration | Registration Date | Date of First Publication |
|---|---|---|
| Contemptor Heavy Conversion Beamer<br>VA 1-824-754 | 3/7/12 | 7/25/11 |
| Mark V Heresy Armour<br>VA 18-824-755 | 3/7/12 | 6/30/10 |
| Space Marine Character Conversion Kit<br>VA 1-824-622 | 3/7/12 | 7/31/10 |
| Salamanders Terminator Shoulder Pads<br>VA 1-824-496 | 3/7/12 | 5/25/07 |
| Valthex Astral Claws of the Master Forge<br>VA 1-824-495 | 3/7/12 | 6/29/11 |
| Space Marine Drop Pod<br>VA 1-814-902 | 3/7/12 | 8/4/08 |
| Legion of the Damned<br>VA 1-824-653 | 3/9/12 | 11/30/09 |
| Grey Knights<br>VA 1-824-604 | 3/8/12 | 2/2/11 |

(Ex. 133, Sup. Moskin Decl. ¶10).

**Additional Material Fact No. 5.** The work "Horus Heresy: Collected Visions" is a compilation of four previously-published books, each of which was published more than five years before the date on which "Horus Heresy: Collected Visions" was registered with the U.S. Copyright Office.

- GW MSJ Ex. 11

- Kearney Decl. ¶ 56 & Ex. 43: credits page "Horus Heresy: Collected Visions", GW0001882, providing publication dates before 2007 for each of the books that make up the collection.

**Games Workshop's Response:** Games Workshop does not contest this fact. However, Games Workshop is the undisputed owner of the copyrights for the Horus Heresy: Collected Visions compilation. (Exs. 158-16, assignments for Horsley, Brady, Low, Norman, Ren, Vohwinkel, Wood, and Trevas.). Moreover, the Horus Heresy: Collected Visions also includes some additional new material and editorial revisions that were not contained in each of the original books.

18

*Additional Material Fact No. 6.* GW's registered work "Codex: Tyranids" contains only three works at issue.

- GW MSJ Ex. 11 (U.S. copyright registration for "Codex: Tyranids")

- Kearney Decl. Ex. 7: Second Rev. Copyright Claim Chart, no. 37 (alleged work "Warhammer 40,000 Tyranids 2009, page 52", credited to Alex Boyd);

- *id.* no. 43 (alleged work "Warhammer 40,000 Tyranids 2010, page 61", credited to Dave Gallagher);

- *id.* no. 95 ("Warhammer 40,000 Tyranids 2009, page 54", credited to Alex Boyd).

**Games Workshop's Response:** Games Workshop does not contest this fact.

*Additional Material Fact No. 7.* GW's Second Rev. Copyright Claim Chart does not identify infringement of its "Games Workshop Complete Catalog & Hobby Reference 2006-2007" (hereinafter, the "Catalog") by any CHS product.

- Kearney Decl. ¶¶57, 58;

- GW's Second Rev. Copyright Claim Chart does not identify the work "Games Workshop Complete Catalog & Hobby Reference 2006-2007" as an allegedly infringed work; (¶ 57)

- GW's First Rev. Copyright Claim Chart does not identify the work "Games Workshop Complete Catalog & Hobby Reference 2006-2007" as an allegedly infringed work; (¶ 58)

- *See* Kearney Decl. at:

  - ¶10, Ex. 6: First Rev. Copyright Claim Chart;

  - ¶11, Ex. 7: Second Rev. Copyright Claim Chart.

**Games Workshop's Response:** Games Workshop does not contest this fact. While Games Workshop had initially identified the catalog as a potential source for Chapterhouse's copying, throughout discovery Games Workshop has further identified and specified the various sources for Chapterhouse's infringement as specified in GW's Second Rev. Copyright Claim Chart.

*Additional Material Fact No. 8.* GW has not specified which works the Catalog contained, if any, that CHS allegedly infringes. There is no record evidence that the works included in the Catalog were created within 5 years of the registration.

- Kearney Decl. ¶ 59.

**Games Workshop's Response:** Games Workshop does not contest this fact. While Games Workshop had initially identified the catalog as a possible source for Chapterhouse's infringement, throughout discovery Games Workshop has further identified and specified the various sources for Chapterhouse's infringement as specified in GW's Second Rev. Copyright Claim Chart.

*Additional Material Fact No. 9.* GW failed to produce the Catalog before either its Certification or the close of fact discovery.

- Kearney Decl. ¶ 60;

- Dkt. 187 : GW's Certification that its production was complete;

- Dkt. 116: Scheduling Order.

**Games Workshop's Response:** Games Workshop does not contest this fact. While Games Workshop had initially identified the catalog as a possible source for Chapterhouse's infringement, throughout discovery Games Workshop has further identified and specified the various sources for Chapterhouse's infringement as specified in GW's Second Rev. Copyright Claim Chart.

*Additional Material Fact No. 16.* Despite CHS's request, GW failed to provide contact information for all but two of "independent contractors/freelancers" referenced in the Bloch Report.

- Kearney Decl. at:

  - ¶ 13, Ex. 9: Plaintiff Games Workshop Limited's Further Supplemental Response to Defendant Chapterhouse Studios LLC's Interrogatory 22;

  - ¶ 10, Ex. 6 (First Rev. Copyright Claim Chart);

  - ¶ 11, Ex. 7 (Second Rev. Copyright Claim Chart).

- GW MSJ Ex. 10 (Bloch Report) at 7-14, 38-42 (discussing "independent contractors / freelancers").

**Games Workshop's Response:** This statement is immaterial because, even if true, it has no bearing on the essential elements of Games Workshop's claims or Chapterhouse's defenses.

4814-9293-5441.2

Games Workshop provided contact information for all former employees and independent contractors/freelancers that it had in its possession. (CHS Mot., Kearney Decl. Ex. 45). Games Workshop in fact provided all contact information within its control concerning its former freelancers and employees. (Ex. 132. Suppl. Merrett Decl. ¶ 2).

*Additional Material Fact No. 19.* GW's retail stores in the U.S. do not carry the full range of its products.

- Kearney Decl. ¶33, Ex. 15: Deposition of Andrew Jones ("Jones Dep.") at 20:21-21:6; 23:1-5:

  Q So to backtrack about the retail range that is sold in the United States, so the retail range sold in the United States is only a subset of the Games Workshop entire product line?

  A Yes . . . .

- *Id.* at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

- Kearney Decl. ¶ 6, Ex. 4: Depo. Ex. 39 (GW's (30(b)(6) designation list).

**Games Workshop's Response:** This statement is immaterial because, even if true, it has no bearing on the essential elements of Games Workshop's claims or Chapterhouse's defenses. Mr. Villacci himself has purchased all or virtually all of the products at issue. (Ex. 136). Games Workshop produced sales information establishing the extent of its sales in the U.S. for each of the subject trademarks (Ex. 145; Ex. 155, 2nd Sup. Moskin Decl. ¶¶ 2-5). Chapterhouse is not accused of copying the full range of products Games Workshop sells, and the evidence demonstrates that the products actually at issue are sold in the U.S. (Ex. 146, Sup. Jones Decl. ¶ 2; Ex. 155, 2nd Sup. Moskin Decl. ¶¶ 2-5).

*Additional Material Fact No. 20.* Records concerning sales in the United States are kept by GW's U.S. business, Games Workshop Retail ("GWR").

- Kearney Decl. ¶ 5, Ex. 3: Jones Dep. at 24:25-25:18;

- *Id.* at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records),

- Kearney Decl. ¶6, Ex. 4: Depo. Ex. 39 (GW's (30(b)(6) designation list).

**Games Workshop's Response:** This statement is immaterial because, even if true, it has no bearing on the essential elements of Games Workshop's claims or Chapterhouse's defenses. Mr. Villacci himself has purchased all or virtually all of the products at issue. (Ex. 136). Games Workshop produced sales information establishing the extent of its sales in the U.S. for each of the subject trademarks (Ex. 145; Ex. 155, 2nd Sup. Moskin Decl. ¶¶ 2-5). Chapterhouse is not accused of copying the full range of products Games Workshop sells, and the evidence demonstrates that the products actually at issue are sold in the U.S. (Ex. 146, Sup. Jones Decl. ¶ 2; Ex. 155, 2nd Sup. Moskin Decl. ¶¶ 2-5).

*Additional Material Fact No. 24.* When asked to describe trademark use for SOUL DRINKER, GW 30(b)(6) witness Andrew Jones contended that GW used it as a trademark in a title of a book.

- Kearney Decl. ¶ 5, Ex. 3: Jones Depo. Tr.:

  - 163:14-17 (". . . I couldn't say whether we have released any other Soul Drinker products. Probably not. But yes, the Soul Drinker product I was thinking about was the 2002 book by that title.");

  - ¶5, Ex. 3: Jones Dep. at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

  - ¶6, Ex. 4: Depo. Ex. 39 (GW's (30(b)(6) designation list).

**Games Workshop's Response:** Games Workshop does not contest this fact. Soul Drinker in fact is used as the name of a series of novels. (Ex. 150, 2nd Supp. Jones Decl. ¶ 3).

*Additional Material Fact No. 25.* GW has not conducted any consumer surveys or testimonials, or commissioned any expert reports, concerning any of the Marks At Issue.

- Kearney Decl. ¶51;

- Kearney Decl. at:

  - ¶ 5, Ex. 3: Jones Tr. at 223:20-224:2:

> Q . . . Has Games Workshop commissioned any studies by an independent research service to evaluate the fame of its trademarks in the US?
>
> A No, not to my knowledge we have not. I suppose the closest you would get to a valuation is the fact that companies like THQ sign up to million of dollars of guarantees in the licensing agreements we have in place with them.

- *Id.* at 225:3 – 226:8:

> Q: . . . Has Games Workshop conducted any studies to determine the brand recognition with respect to its trademark in the United States?
>
> A I certainly have not been involved in anything like that. I guess our US sales business might have done so at some point in its history.

- *Id.* at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

- Kearney Decl. ¶6, Ex. 4: Depo. Ex. 39 (GW's (30(b)(6) designation list).

**Games Workshop's Response:** This statement is immaterial because, even if true, it has no bearing on the essential elements of Games Workshop's claims or Chapterhouse's defenses. Given the large number of products at issue, it would not have been feasible to conduct a survey of any one or more of the same.

*Additional Material Fact No. 26.* Since its launch, CHS's website has featured a prominent notice disclaiming any affiliation with GW on every page of the website.
- Villacci Decl. ¶ 6.

**Games Workshop's Response:** Games Workshop contests this fact. Chapterhouse's disclaimer is not a prominent feature as it is in small print at the bottom of the page. (Ex. 19).

*Additional Material Fact No. 28.* GW's U.S. business has no records of U.S. customers expressing confusion between CHS and CHS or even inquiring about CHS.
- Kearney Decl. at:

- ¶42, Ex. 33: Casey Dep. 58:23-59:20:

  Q. Does Games Workshop Retail have any records of customers expressing confusion between their products and Chapterhouse products?

  A. Not to my knowledge.

  Q. Does Games Workshop Retail have any records of anyone writing into the company about Chapterhouse Studio?

  A. Not to my knowledge.

- *Id.*: Casey Dep. at 12:22-13:1(re: Casey's designation as 30(b)(6) witness for Games Workshop Retail, Inc. "GWR");

- ¶44, Ex. 35: CHS's Deposition Subpoena to GWR;

- ¶43, Ex. 34: CHS's Document Subpoena to GWR;

- ¶45 , Ex. 36: GWR's Response to [Document] Subpoena;

- ¶46 , Ex. 37: Response to [Deposition] Subpoena to GWR;

- ¶47 , Ex. 38: Re-Notice of Subpoena to GWR.

**Games Workshop's Response:**  This statement is immaterial because, even if true, it has no bearing on the essential elements of Games Workshop's claims or Chapterhouse's defenses. Evidence of customer confusion written by English speaking customers received by Games Workshop UK's company via email is still relevant insofar as Chapterhouse's internet-based business originates in the United States but is not limited to United States customers.

*Additional Material Fact No. 29.* GW's 30(b)(6) witness Gillian Stevenson wrote "And another one who clearly is not confused!" after reviewing an email from a individual concerning CHS.

- Kearney Decl. at:

  - ¶52, Ex. 39: Stevenson II Tr. at 151:16-152:10;

  - ¶54, Ex. 41: Depo. Ex. 88;

  - ¶55, Ex. 42: Depo. Ex. 89..

24

- ¶ 53, Ex. 40: G. Stevenson I. Tr. at 17:22-19:25 (re: Stevenson's designations as 30(b)(6) witness, including on topics concerning document collection, confusion, CHS, and trademark policies);

- ¶6, Ex. 4: Depo. Ex. 39 (designation list).

**Games Workshop's Response:** This statement is immaterial because, even if true, it has no bearing on the essential elements of Games Workshop's claims or Chapterhouse's defenses as the subject email is not among those relied upon in connect with Games Workshop's motion for summary judgment. Furthermore, as Gillian Stevenson further testified, this statement was made to distinguish between the emails she received where customers were confused and were customers were angry at Chapterhouses' activities. (Kearney Decl., ¶52, Ex. 39: Stevenson II Tr. at 152:14-19.

**Additional Material Fact No. 30.** Gillian Stevenson, GW's 30(b)(6) witness regarding confusion related to CHS, testified that "I don't know that the original author is confused," with respect to Depo. Ex. 88.
- Kearney Decl. at:

    - ¶52, Ex. 39: Stevenson II Tr. at 151:1-8, Depo. Ex. 88;

    - ¶54, Ex. 41: Depo. Ex. 88;

    - ¶ 53, Ex. 40: G. Stevenson I. Tr. at 17:22-19:25 (re: Stevenson's designations as 30(b)(6) witness, including on topics concerning document collection, confusion, CHS, and trademark policies);

    - ¶6, Ex. 4: Depo. Ex. 39 (designation list).

**Games Workshop's Response:** This statement is immaterial because, even if true, it has no bearing on the essential elements of Games Workshop's claims or Chapterhouse's defenses as the subject email is not among those relied upon in connect with Games Workshop's motion for summary judgment.

**Additional Material Fact No. 31.** Gillian Stevenson, GW's 30(b)(6) witness regarding confusion related to CHS, testified that it would not be possible to determine whether GW had received emails concerning CHS from individuals residing in the United States.

- Kearney Decl. ¶ 52, Ex. 39: Stevenson II Tr. at:

  - 17:22-19:25 (re: Stevenson's designations as 30(b)(6) witness, including on topics concerning document collection, confusion, CHS, and trademark policies).

  - 122:14-123:10:

    Q Has Games Workshop received any communications from individuals in the United States concerning Chapterhouse Studios? And just for clarification, this question does not include Games Workshop's employees or agents, such as attorneys.

    A That would be impossible for me to say….

  - 142:20-143:1 (re: Australian email address; Depo. Ex. 84);

  - 147:19-148:8, 150:2-14 (re: British email addresses; Depo. Exs. 85, 87);

  - 147:15-18 (re: no indication that sender resided in the U.S.; Depo. Ex. 86);

  - 151:9-13, (re: no indication that sender resided in the U.S.; Depo. Ex. 88).

- Kearney Decl. at

  - ¶54, Ex. 41: Depo. Ex. 88;

  - ¶¶68-71, Exs. 48-51: Depo. Exs. 84-87;

  - ¶6, Ex. 4: Depo. Ex. 39 (designation list).

**Games Workshop's Response:**  This statement is immaterial because, even if true, it has no bearing on the essential elements of Games Workshop's claims or Chapterhouse's defenses. Evidence of customer confusion written by English speaking customers received by Games Workshop UK's company via email is still relevant insofar as Chapterhouse's internet-based business originates in the United States but is not limited to United States customers.

*Additional Material Fact No. 32.* GW has not conducted studies to evaluate the public's recognition of its marks, or the size of the market it competes in.
- Kearney Decl. at:

  - ¶ 5, Ex. 3: Andrew Jones Tr. at 225:3-20;

- *Id*. at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

- ¶6, Ex. 4: Depo. Ex. 39 (GW's (30(b)(6) designation list).

**Games Workshop's Response:** This statement is immaterial because, even if true, it has no bearing on the essential elements of Games Workshop's claims or Chapterhouse's defenses. Given the large number of products at issue, it would not have been feasible to conduct a survey of any one or more of the same.

*Additional Material Fact No. 34.* GW has produced no evidence that it advertises on the same websites or in the same publications as CHS.
- Kearney Decl. ¶ 62.

**Games Workshop's Response:** This statement is immaterial because, even if true, it has no bearing on the essential elements of Games Workshop's claims or Chapterhouse's defenses. This statement is also inherently misleading, as Chapterhouse's entire business is targeted at Games Workshop's customers and only Games Workshop's customers, and Chapterhouse concedes that the only places it markets its products are web forums devoted principally to fans of Warhammer 40,000.

*Additional Material Fact No. 36.* Andrew Jones, GW's Head of Legal, Licensing and Strategic Project and GW's 30(b)(6) witness on trademark-related topics, confirmed that GW's response to Interrogatory No. 18 was a comprehensive list of all marks alleged in this case (hereinafter, the "Marks At Issue").
- Kearney Decl. at:

  - ¶ 4 & Ex. 2: GW Second Supp. Resp. to CHS Interrogatories Set 4, Mar. 9, 2012) ("Rog 18 Response")

  - ¶ 5 & Ex. 3 (Andrew Jones Depo. Tr. at 13:22-14:8);

  - *Id*. at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

  - ¶ 6, Ex. 4: Depo. Ex. 39 (GW's (30(b)(6) designation list).

27

**Games Workshop's Response:** Games Workshop does not contest this fact; however, Mr. Jones full statement was "As of the date of this document, yes. I am sure if Chapterhouse Studios continue to release infringing products using new trademarks we will continue to add those to our claim." (Kearney Decl. ¶ 5 & CHS Ex. 3, Jones Dep. Tr. at 13:22-14:8)

*Additional Material Fact No. 37.* "Horus Heresy: Collected Visions", Reg. No. TX 7-538- 569 and "Website Content from 2000 to 2011", Reg. No. TXu 1-788-290 are registrations for compilations of works. "Blood Raven Transfer Sheet", Reg. No. VA 1-819-307 is a registration regarding a transfer sheet, which is a sheet with decals of icons, and a registration for a derivative work. The "Blood Raven" icons were derived from an icon from an earlier computer game developed by a third party. GW MSJ Ex. 11 did not include a registration for a computer game.

- GW MSJ Ex. 11;

- Kearney Decl. ¶ 56 & Ex. 43: credits page "Horus Heresy: Collected Visions", GW0001882, providing publication dates before 2007 for each of the books that make up the collection;

- Kearney Decl. ¶ 65 & Ex. 47 (Hodgson Dep. at 104:15-21: "Q Can you describe what you mean by transfer sheets? A That's like a decal, like a transfer where it's an icon that's on a sheet and you cut it out and you slide it across and you put it on the model so that it -- so that you don't have to paint it on, essentially.");

- *Id.* at 76:10-78:15 (testifying that GW's employee based his "Blood Raven" icon on the "Blood Raven" icon from an earlier computer game developed by a different company).

**Games Workshop's Response:** Games Workshop does not contest the fact that these copyright registrations are for compilations and/or derivatives of other Games Workshop works. However, where the owner is the author of the underlying material, the later registration encompasses all of the content. *Nielsen Co., LLC v. Truck Ads, LLC,* 2011 WL 3857122, *12-13 (N.D. Ill., 2011) ("[W]hen the author of the derivative work also has a copyright on the underlying work, there is no need to protect the public domain or the author of the underlying work, as the entire work is that of the single author.").

4814-9293-5441.2

*Additional Material Fact No. 38.* Of the 80 marks listed in GW's Motion in footnote 16, the following 12 marks were not identified in GW's Rog 18 Response: Assault Space Marine, Tyranid Bonesword, Devastator Space Marine, Gaunt, Howling Griffons, Tyranid Lashwhip, Mycetic Spore, Striking Scorpion, Tactical Space Marine, Tervigon, Tyranid, Ymgarl.

- GW's Mot., 20 n.16;

- Kearney Decl. at:

- ¶ 66;

- ¶ 4 & Ex. 2: GW Second Supp. Resp. to CHS Interrogatories Set 4, Mar. 9, 2012) ("Rog 18 Response")

- ¶ 5 & Ex. 3 (Andrew Jones Depo. Tr. at 13:22-14:8);

- *Id.* at 7:13-18, 11:14-12:10 (re: Jones's designation as GW's 30(b)(6) witness on topics including trademark-related topics, fame, revenues and related records);

- ¶ 6, Ex. 4: Depo. Ex. 39 (GW's (30(b)(6) designation list).

**Games Workshop's Response**:  Games Workshop disputes this statement as its response to

Interrogatory 18 included, "Space Marine"; Assault Alpha Legion"; Devastator"; "Tactical";

"Griffon"; "Scorpion" and "Tyranid Warrior".  Any omission from Games Workshop's

Response to Interrogatory 18 was unintentional and without prejudice, as Games Workshop had

specifically identified the following marks in the Second Amended Complaint (¶ 56): Space

Marine; Tyranid; Bonesword; Lashwhip; Gaunt; Howling Griffon; Mycetic Spore; Tervigon;

Ymgarl.

*Additional Material Fact No. 39.* GW conducts minimal advertising in the United States.
- Kearney Decl. at

- ¶42, Ex. 33: Casey Dep. 43:9-15:

  Q. What type of advertising does Games Workshop Retail do?

  A. We don't do traditional advertising.

  Q. What type of nontraditional advertising do you do?

A. Our advertisement is word of mouth from our customers.

- ¶52, Ex. 39: Stevenson II Tr. at 203:19 to 204:14;

  Q Does Games Workshop have records to determine its advertising expenditures in the United States?

  A If it had any, then it would.

  Q And what do you mean if it had any?

  A Well, if you don't advertise, it doesn't cost you anything.

  Q So Games Workshop is not advertising in the United States?

  A They have in the past very occasionally run very localized adverts; but as a general course of business, Games Workshop does not advertise.

- ¶ 53, Ex. 40: G. Stevenson I. Tr. at 17:22-19:25 (re: Stevenson's designations as 30(b)(6) witness, including on topics concerning document collection, confusion, CHS, and trademark policies);

- ¶ 6, Ex. 4: Depo. Ex. 39 (GW's (30(b)(6) designation list)

**Games Workshop's Response:** This statement is immaterial because, even if true, it has no bearing on the essential elements of Games Workshop's claims or Chapterhouse's defenses. Games Workshop's success marketing its products in the United States without traditional advertising has not limited its substantial sales and does not in any way impair its trademark rights.

*Additional Material Fact No. 40.* In its response to Interrogatory No. 3 ("Rog 3 Response"), which required GW to identify allegedly infringing use by CHS for each mark that GW alleges is at issue in this case, GW did not identify use by CHS of 28 marks that GW identified in its Motion in footnote 16. The 28 marks are: Assault Space Marine; Cadian; Chaos Space Marine; Chimera; Devastator Space Marine; Dreadnought; Gaunt; Hellhound; Heresy Armour; Howling Banshee; Howling Griffons; Imperial Guard; Librarian; Melta; Mycetic Spore; Plasma; Predator; Stormraven; Striking Scorpion; Tactical Space Marine; Techmarine; Terminator; Thunder Hammer; Tyranid Bonesword; Tyranid Lashwhip; Tyrant; Warhammer 40K; and Ymgarl.

- Kearney Decl. ¶63, Ex. 45, Response to Interrogatory No. 3 ("Rog 3 Response);

- *Id*. at ¶ 67;

- Mot. 20 n.16.

**<u>Games Workshop's Response:</u>** This statement is immaterial because, even if true, it has no bearing on the essential elements of Games Workshop's claims or Chapterhouse's defenses. Indeed, the subject interrogatory was understood to be directed primarily towards a general inquiry into the basis for "how Chapterhouse infringes each mark." Games Workshop has elsewhere in the course of discovery and in its subsequent pleadings detailed the marks in issue.


Dated:  September 20, 2012                    Respectfully submitted,

                                              s/  Jason J. Keener
                                                Jason J. Keener (Ill. Bar No. 6280337)
                                                FOLEY & LARDNER LLP
                                                321 North Clark Street, Suite 2800
                                                Chicago, IL 60654-5313
                                                Telephone:  312.832.4500
                                                Facsimile:  312.832.4700
                                                Email:  jkeener@foley.com;
                                                aweinzierl@foley.com

                                                Jonathan E. Moskin
                                                FOLEY & LARDNER LLP
                                                90 Park Avenue
                                                New York, New York 10016
                                                Telephone:  (212) 682-7474
                                                Facsimile:  (212) 687-3229
                                                Email:  jmoskin@foley.com

                                                *Attorneys for Plaintiff*
                                                *Games Workshop Limited*

## <u>CERTIFICATE OF SERVICE</u>

I, Jason J. Keener, an attorney, hereby certify that on September 20, 2012, I caused to be filed electronically the foregoing PLAINTIFF'S REPLY TO CHAPTERHOUSE'S ADDITIONAL MATERIAL FACTS IN SUPPORT OF GAMES WORKSHOP'S MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

s/  Jason J. Keener
Jason J. Keener

4814-9293-5441.2