**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC and | ) | |
| JON PAULSON d/b/a PAULSON GAMES, | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S
REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**PAGE NO.**

I.    INTRODUCTION ................................................................................................... 1

II.    GW FAILS TO RAISE A TRIABLE ISSUE OF FACT CONCERNING COPYRIGHT INFRINGEMENT........................................................................................... 2

    A.    GW Cannot Meet Its Burden To Show Ownership of All Its Alleged Works ................. 2

    B.    GW Concedes Its Miniatures Are Unprotectable Under Governing Law ........................ 4

    C.    GW Should Not Be Permitted To Supplement Its Production of Exemplars ................... 5

    D.    GW's Opposition Makes Clear It Cannot Establish Substantial Similarity ..................... 5

        1.    GW Misstates the Test for Copyright Infringement, Which Requires Substantial Similarity of Protectable Expression .................................................................... 6

        2.    GW's Argument Against *Merger* and *Scenes a Faire* Is Unpersuasive ............... 7

        3.    Contrary to Its Assertion, GW Claims Copyright in Public Domain Elements, Including Geometric Shapes, Letters, and Ideas.................................................... 8

        4.    GW Misconstrues The Issue of Functionality. .................................................... 10

III.    GW FAILS TO RAISE A TRIABLE ISSUE OF FACT CONCERNING TRADEMARK INFRINGEMENT OR DILUTION. ........................................................................ 11

    A.    GW Fails to Credibly Dispute That It Has Now Abandoned 29 Marks And Has Failed to Identify Its 35 Allegedly Infringed Unregistered Design Marks ................................... 11

    B.    GW Fails To Offer Evidence of Senior U.S. Rights in Its Alleged Marks...................... 11

    C.    GW Fails To Address Likelihood of Confusion. ........................................................... 13

    D.    CHS's Alleged Use of GW's Mark is Nominative Fair Use. ......................................... 14

    E.    GW Fails To Raise a Triable Issue of Fact Concerning Trademark Dilution. ................ 15

IV.    CONCLUSION................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*,
672 F.2d 607 (7th Cir. 1982) ...........................................................................6, 7, 8

*Baby Buddies, Inc. v. Toys "R" Us, Inc.*,
611 F.3d 1308 (11th Cir. 2010) ..................................................................7

*Bateman v. Mnemonics, Inc.*,
79 F.3d 1532 (11th Cir. 1996) ....................................................................8

*Billy-Bob Teeth, Inc. v. Novelty, Inc.*,
329 F.3d 586 (7th Cir. 2003) ..................................................................2, 3

*Boisson v. Banian, Ltd.*,
273 F.3d 262 (2d Cir. 2001)........................................................................9

*Borello v. Allison*,
446 F.3d 742 (7th Cir. 2006) ....................................................................11

*Bryant v. Gordon*,
483 F. Supp. 2d 605 (N.D. Ill. 2007) ..........................................................7

*Bucklewv. Hawkins,Ash, Baptie & Co., LLP,* 329 F.3d 923, 926 (7th Cir., 2003) ..........................9

*Central Mfg., Inc. v. Brett*,
492 F.3d 876 (7th Cir. 2007) ....................................................................13

*Francorp, Inc. v. Siebert*,
210 F. Supp. 2d 961 (N.D. Ill. 2001) ..........................................................9

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*,
93 F.3d 774 (Fed. Cir. 1996)........................................................................2

*Gaiman v. McFarlane*,
360 F.3d 644 (7th Cir. 2004) ......................................................................9

*Incredible Techs., Inc. v. Virtual Techs., Inc.*,
400 F.3d 1007 (7th Cir. 2005) ..............................................................6, 7, 8

*Liberty Am. Ins. Group, Inc. v. WestPoint Underwriters, LLC*,
199 F. Supp. 2d 1271 (M.D. Fla. 2001)........................................................8

*Mattel, Inc. v. Azrak Hamway Int'l, Inc. dba Remco Toys*, 724 F.2d 357, 360 (2d Cir. 1984) .....11

*Sassafras Enters., Inc. v. Roshco, Inc.*,
   889 F. Supp. 343 (N.D. Ill 1995) ..............................................................................6

*Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*,
   509 F.3d 380 (7th Cir. 2007) ...................................................................................15

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
   610 F.3d 1171 (9th Cir. 2010) ............................................................................14, 15

*Triple Tee Golf, Inc. v. Nike, Inc.*,
   2007 WL 4260489 (N.D. Tex. Aug. 24, 2007), *aff'd on appeal*, 281 Fed.Appx. 368 (5th Cir.
   2008) ............................................................................................................................2

*Ty, Inc. v. Publications Intern., Ltd.*,
   No. 99 CC 5565, 2005 WL 464688 (N.D. Ill. Feb. 25, 2005) .................................15

*Wildlife Express Corp. v. Carol Wright Sales, Inc.*,
   18 F.3d 502, 510 (7th Cir. 1994) ..............................................................................7

**STATUTES**

37 C.F.R. § 202.1 ............................................................................................................8

17 U.S.C. § 102(b) ..........................................................................................................8

**OTHER AUTHORITIES**

Copyright Compendium II 503.02(b) ..............................................................................8

Patry on Copyright § 25:20..............................................................................................4

SF:340679.7

## I.  INTRODUCTION

Almost two years ago GW made a blanket allegation that every single CHS product infringed GW's unspecified universe of copyrights, and that CHS's reference to GW toy armies or products infringed scores of GW trademarks. After nearly two years of costly litigation, GW has now voluntarily dropped nearly a quarter of its copyright claims and abandoned many of its trademark claims, acknowledging that they lacked merit.

Having been put to the test on its remaining claims, GW utterly fails to meet its burden of proof or show any genuine issues of fact for trial. Conceding now that certain of its copyrights were created by contractors and that it thus requires written assignments to assert those works, GW attempts to cure the issue by recently obtaining assignments. But the law is clear that a copyright claimant cannot cure its lack of standing by obtaining assignments during the lawsuit. More troubling, it now appears that GW improperly withheld discoverable communications it had with the authors in attempting to obtain those post-litigation assignments, and then simply dropped the claims days before the deadline for dispositive motions if the authors refused to assign their rights. GW fares no better on the issue of ownership of rights in the 110 trademarks it claims CHS has infringed, relying upon never before produced, self-serving reports generated for this litigation in lieu of any evidence of senior U.S. rights.

Although many of GW's claims fail at the threshold issue of ownership, even beyond this threshold, GW fails to raise a single triable issue of infringement. To the contrary, GW's claims defy the facts presented. On copyright, GW continues to press its flawed theory of the case: that CHS's products infringe because they are "inspired by" GW's universe, which has no basis in U.S. copyright law. It also insists that it is not suing on similarities consisting merely of public domain images, like chevrons; yet when one examines CHS's product        side-by-side with GW's alleged infringed product      , there is no other conclusion. And GW effectively concedes failure on its trademark claims, failing even to address the likelihood of confusion factors for trademark infringement, and failing to offer any evidence of fame of its marks required to establish dilution.

-1-

GW fails to raise any triable issue of fact on its claims. CHS's motion should be granted.

## II. GW FAILS TO RAISE A TRIABLE ISSUE OF FACT CONCERNING COPYRIGHT INFRINGEMENT.

GW acknowledges that—days before the deadline for dispositive motions—it "dropped" its copyright claims against 32 CHS products.[1] CHS is entitled to summary judgment that those 32 products do not infringe GW's copyrights. GW's Opposition also makes clear that it can neither make out a *prima facie* case of ownership of each alleged works, nor establish that *any* of the remaining CHS products are substantially similar to protectable elements of GW's works.

### A. GW Cannot Meet Its Burden To Show Ownership of All Its Alleged Works

After repeatedly representing to CHS and the Court that every copyright alleged in this case was created by GW employees (SUF 38), and objecting to discovery regarding the status of individual authors on that basis, GW now concedes that a still-unspecified number of the works were created by "freelance artists." Nonetheless, GW argues, it should be deemed the owner of those works as well because it has what it refers to as a "general practice of collecting" "confirmatory assignments" from such individuals, and claims it has obtained such "assignments for the works here at issue." (CHS Reply re SUF 34.) What GW fails to mention is that it only recently—and more than a year into this lawsuit—obtained those assignments. A plaintiff that does not own the property on which it sues *at the time it brings suit* does not have standing to sue. *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774 (Fed. Cir. 1996) (plaintiff's *nunc pro tunc* intellectual property assignment was "not sufficient to confer standing on [plaintiff] retroactively"). "[A]n [intellectual property] assignment made over one-and-a-half years after [the] action was instituted cannot retroactively solve the standing problem that existed at the time the action was filed." *Triple Tee Golf, Inc. v. Nike, Inc.*, 2007 WL 4260489 (N.D. Tex. Aug. 24, 2007), *aff'd on appeal*, 281 Fed.Appx. 368 (5th Cir. 2008). The case *Billy-Bob Teeth, Inc. v.*

---

[1] GW acknowledges it has "dropped copyright claims" regarding CHS products nos. 8, 15, 16, 25, 26, 28-30, 32, 38-42, 44, 70, 71, 81, 84-86, 88, 89, 91-93, 96, 107, 109, 115, 116, and 122 (numbers refer to entries in GW's Second Rev. Copyright Claim Chart, Dkt. 208-2). GW Resp. to CHS SUF 26, 27. GW, however, states that it has "dropped copyright claims in 33, not 32 of defendant's products", but does not clarify what additional claim it has dropped. GW Response to CHS SUF 26.

*Novelty, Inc.*, 329 F.3d 586 (7th Cir. 2003) is not to the contrary. The *Novelty* court merely reinstated a jury verdict over the trial judge's conclusion that a key witness's testimony was "not sufficiently reliable to support the verdict." *Id.* at 593.

Furthermore, the record contradicts GW's claimed "practice" of obtaining "confirmatory assignments" from freelancers. On July 5, 2011, more than half a year after filing this case, GW stated it "[was] not aware of any documents" constituting the chain of title for the copyrights it claimed.[2] And indeed, the 31 so-called "confirmatory assignments" GW has provided to date are all executed after April 20, 2012, almost a year and a half into this case and more than a month after the close of fact discovery.[3] Supplemental Declaration of Thomas Kearney ("Supp. Kearney Decl.") ¶¶ 2-5. Two of these were provided for the first time in GW's Opposition papers. *Id.*; Ex. 142 to Opp. (Dkt. 230-27 at 21-34). Although GW misleadingly refers to these as "confirmatory" assignments, it is clear from their face that they are simply assignments that do not purport to replace, supplement, or memorialize any previous written (or verbal) agreement. *See, e.g.,* Dkt. 230-27 at 23, 30 (assigning rights "not already owned by GW").

Compounding this issue, it is now clear that GW improperly withheld discovery regarding those assignments. GW initially refused to provide discovery concerning authors of its works on the basis that "all of Games Workshop's works in issue were created by Games Workshop employees." Dkt. 83 at 10, ¶ 19; *see* Dkt. 208-1 at ¶ 108; Dkt. 208-42 (Ex. 70: GW's Resp. to CHS's RFP Set Two, refusing to respond to requests nos. 2 and 3.) Then, a month and a half **after the close of fact discovery**, GW conceded that at least a dozen of its alleged works were created by freelancers. Bloch Report ¶ 22(e) (Dkt. No. 208-19 at 10-11). Despite agreeing to produce all correspondence with its authors, GW has not produce *any* of its correspondence

---

[2] Dkt. 208-42 (Ex. 70: GW's Response to Request for Prod. of Documents Set Two (July 5, 2011)).
[3] GW's Second Rev. Copyright Claim Chart also alleges a number of works for which it has failed to identify an author. Second Rev. Copyright Claim Chart (*passim*; *see, e.g.*, nos. 1, 2, and 3). And, although GW purports to have dropped its copyright claims with respect to all works by Des Hanley, it identifies Hanley as the author of two of its additional works. *Compare* Ex. 132, Suppl. Merrett Decl ¶ 2-3 (claiming no copyright in Hanley works) *with* GW's Ex. 135 nos. 117 and 124 (Dkt. 230-20 at 64, 79) (claiming CHS's products infringe Hanley works).

about the so-called confirmatory assignments. Supp. Kearney Decl. ¶ 8, Ex. 3 (GW's Resp. to CHS's RFP Set Five, Request 41, Nov. 7, 2011). CHS's independent investigation reveals that GW attempted to contact at least one of its alleged authors, Gary Chalk, multiple times, and that it dropped its copyright claims with respect to Chalk's work only after failing to obtain his assignment. Contrary to sworn statements, GW failed to disclose the contact information in its possession and failed to produce its correspondence with Chalk.[4] *Compare* Supp. Merrett Decl. at ¶¶ 2, 3 ("we did not withhold contact information on any of the individuals"; "Games Workshop has provided all the contact information within its control concerning its former freelancers and employees"); Opp. at 5 (GW "produced all of the information it has" about its authors) *with* Declaration of Gary Chalk ("Chalk Decl.") ¶¶ 16-17, Exs. B, C (Aug. 9, 2012 email from GW's in-house counsel to Chalk admitting possession of "an old address that we have for you").[5] It is not credible that GW managed to obtain assignments from dozens of other far-flung authors without generating any correspondence—none of which has been produced. The purported assignments should be disregarded: not only are they untimely, and insufficient to confer standing, the related communications were withheld, in violation of discovery obligations.

### B.     GW Concedes Its Miniatures Are Unprotectable Under Governing Law

GW does not dispute that its miniature figures are ineligible for protection under English copyright law. Instead, it merely states that the fact is "of almost no relevance" (Opp. at 19), and, without argument or explanation, cites a string of out-of-circuit cases that are not binding on this Court and have been widely criticized. *See, e.g.*, Patry on Copyright § 25:20 (arguing persuasively that *Hasbro-Bradley* was wrongly decided because it "confuse[s] standing with substantive law," and setting out the legislative history of the applicable treaty). GW cannot prove ownership of the copyrights in its toy soldiers, model vehicles, accessories, and other mass

---

[4] GW also provided no contact information for Wayne England despite producing a recently obtained assignment from Mr. England. Suppl. Kearney Decl. ¶ 4.

[5] While GW may now claim that correspondence with Chalk is no longer relevant because it has dropped its copyright claims as to his works, it did so only *after* contacting him. Both GW's March 13 and May 3, 2012 verified responses to CHS Interrogatory No. 22 listed Chalk as an author, and both failed to supply the contact information that GW possessed.

produced toys for the simple reason that—as it concedes—under governing English law, the works are not copyrightable. Summary judgment is warranted on each such work.

### C.    GW Should Not Be Permitted To Supplement Its Production of Exemplars

CHS's Product Binder (Dkt. 224) includes all properly produced exemplars of GW's alleged works, as well as GW's late-produced and never-produced exemplars.[6] But exemplars that GW did not timely produce should not be considered. The Court ordered GW to "produce the best available exemplar" of its allegedly infringed works in December 2011, and GW certified its production as complete on March 2, 2012. Dkt. 139 (Order); Dkt. 187 (Certification). GW attempts to justify its production of additional exemplars after the close of fact discovery— including just *five days* before the deadline for dispositive motions—by claiming it "had no reason to expect" CHS's challenge to ownership of its miniatures. Opp. at 20 n.13. GW ignores that CHS raised the issue of copyright ownership under U.K. law more than a year ago. *See, e.g.,* Dkt. No. 78 (Aug. 8, 2011) at 7-9 ("Plaintiff must show ownership of the copyright in [its alleged] works under U.K. law."). The threshold issue of ownership is part of a copyright plaintiff's *prima facie* case, on which it bears the burdens of production and persuasion. GW failed to produce the evidence to meet its burden as ordered, and its effort to supplement evidence is unexcused, should not be rewarded, and the new documents should be excluded.[7]

### D.    GW's Opposition Makes Clear It Cannot Establish Substantial Similarity

Aware that a side-by-side comparison of the works at issue makes clear that none of CHS's products are substantially similar to GW's alleged works, GW tries to muddy the Seventh Circuit's test for copyright infringement to avoid the requirement to show both that its own

---

[6] CHS's Product Binder includes copies of each and every identified GW work, to the extent CHS was able to locate them given GW's failure to identify any of its alleged works by Bates number. The Product Binder thus includes works GW produced only after the close of fact discovery (and as late as August 9, 2012), as well as works GW failed to produce at all, but identified only by URL. Kearney Decl. ¶¶ 12-24 (Dkt. 208.1); Product Binder (Dkt. 224 - 224.17).

[7] GW relies on documents produced on August 9, 2012, to support its copyright allegations against numerous CHS products. Suppl. Kearney Decl. ¶14; Product Binder (Dkt. 224-224.17), tabs 35, 36, 46-49, 51, 52, 57-62, 74, 77, 108, 113, 114, 126, 130, 132 134, and 142. GW also cites works it never produced in its copyright allegations. *Id.* at tabs 1, 2, 12, 17, 18, 27, 34, 34-36, 45-49, 51-52, 56-62, 73, 77-78, 83, 108, 111, 117, 123, 124, 126, 128, 130, 132-133, 135, 136, and 142.

SF:340679.7

works contain **protectable expression**, and that CHS's products are **similar** to the **protectable elements** (if any) of GW's alleged works. Applying the actual test—which requires filtration of unprotectable elements (such as simple geometric shapes and abstract ideas) and a side-by-side comparison of the works—shows that there is no substantial similarity of protectable elements.[8]

### 1. GW Misstates the Test for Copyright Infringement, Which Requires Substantial Similarity of Protectable Expression

GW repeatedly misstates the Seventh Circuit's test for copyright infringement, which requires a copyright plaintiff to show:

> [that] the accused work is **so similar** to the plaintiff's work that an **ordinary reasonable person** would conclude that the defendant unlawfully appropriated the **plaintiff's protectible expression** by taking material of substance and value.

*Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011-12 (7th Cir. 2005) (quoting *Atari*, 672 F. 2d 607, 614 (7th Cir. 1982)) (emphases added). GW selectively quotes and mischaracterizes governing case law to argue for a "total concept and feel" test, under which CHS's products would infringe if they were merely "inspired" by GW's works, whether or not they were substantially similar to any protectable elements of the works. *See, e.g.,* Opp. at 6. GW ignores the requirement that the works be *similar*; ignores the requirement that a plaintiff's expression be *protectable*; and implies that the relevant finder of fact is "Games Workshop's fans" rather than a *reasonable person*. *Id.* GW even misleadingly states that "[i]t is precisely that 'substance and value' that makes the similarity substantial." *Id.* GW cites no authority to support this conclusory and circular argument, because none exists.

First, the finder of fact "must take into account that the copyright laws preclude appropriation of **only those elements of the work that are protected** by the copyright." *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982) (emphasis added); *Sassafras Enters., Inc. v. Roshco, Inc.*, 889 F. Supp. 343, 348 (N.D. Ill 1995) (limitations

---

[8] Despite GW's constant refrain (see, e.g., Opp. at 7, 8, 9, 14, 17, 21), CHS does not "concede" actual copying, nor the supposed uniqueness or originality of GW's works incorporating unprotectable ideas and public domain elements, nor GW's ownership of its alleged marks.

on copyright protection "define whether a comparison needs to be made at all and, if so, also define the universe for such a comparison"). *Atari* held that before analyzing substantial similarity, it had to "distill the protectable forms of expression in PAC-MAN from the game itself"; carefully distinguish idea from expression; and treat "[c]ertain expressive matter . . . as *scenes a faire* [which] receive protection only from virtually identical copying". *Id.* at 615-17.[9]

Next, determining if the works are "**similar . . . requires a side-by-side comparison** of the works" by an "ordinary observer." *Bryant v. Gordon*, 483 F. Supp. 2d 605, 617 (N.D. Ill. 2007) (emphasis added) (citing *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 506 n.1, 510 (7th Cir. 1994)) (internal quotation marks omitted). Only protectable elements are relevant to such a comparison. *Incredible Techs.*, 400 F.3d at 1011 ("despite what the ordinary observer might see, the copyright laws preclude appropriation of **only those elements of the work that are protected** by the copyright") (citing *Atari*, 672 F.2d at 614) (emphasis added). Indeed, GW must establish substantial similarity *even if CHS had copied its works* (which it did not). *See Incredible Techs.* 400 F.3d at 1011 (holding that even if defendant "set out to copy" plaintiff's game, plaintiff must still show the copying resulted in substantial similarity); *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308 (11th Cir. 2010) (summary judgment of non-infringement even though defendant's contractor was given a copy of Plaintiff's product and asked to "please work on a similar design").

## 2. GW's Argument Against *Merger* and *Scenes a Faire* Is Unpersuasive

GW's argument concerning merger and *scenes a faire* fails. First, CHS does not rely on "merger" or "*scenes a faire*," but simply points out that many if not most of GW's purported "unique" designs are simple, unprotectable geometric shapes, or unprotectable combinations of just two such elements; and that most if not all of GW's claims are based on nothing more than similarities of commonplace, unprotectable ideas. Second, contrary to GW's unsupported

---

[9] *Atari* thus does not stand for the proposition that "[the] test of infringement . . . does not involve analytic dissection . . .", as GW claims. Opp. at 6 (internal quotation marks and citation omitted). GW's claim that "Chapterhouse effectively concedes" the originality of GW's works is sheer bluster. *Id.* at 6-7.

statement, neither doctrine is an "affirmative defense." Rather, they are fundamental limitations on the scope of copyright, whose purpose is to ensure that "protecting the 'expression' ... [does not] confer a monopoly of the 'idea' upon the copyright owner." 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea. . .  regardless of the form in which it is described, explained, illustrated, or embodied in such work"); *see Atari*, 672 F.2d at 616 (discussing the doctrines); *Liberty Am. Ins. Group, Inc. v. WestPoint Underwriters, LLC*, 199 F. Supp. 2d 1271, 1290 (M.D. Fla. 2001) (rejecting argument that merger and *scenes a faire* are "affirmative defenses" and stating that "[t]he important point . . . is that [the] analysis is necessary . . . [as] a means to a very important end: filtering out all unprotectable material") (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996)); *Incredible Techs.*, 400 F.3d at 1011-12 (*scenes a faire* doctrine is a "specific limitation[] to copyright protection").

### 3.    Contrary to Its Assertion, GW Claims Copyright in Public Domain Elements, Including Geometric Shapes, Letters, and Ideas

Contrary to its contention, GW does claim copyright for "simple geometric shapes [and] Roman numerals." Opp. at 17. Indeed, what GW characterizes as "a complex and entirely imaginary system of iconography" consists of nothing more than simple, common, and unprotectable geometric shapes (a chevron , an arrow , or a cross with pointed arms )[10] appearing either alone or in combination with a Roman numeral between I and X. But "the creative expression capable of supporting copyright must consist of something more than the mere bringing together of two or three standard forms or shapes with minor linear or spatial variations." Copyright Compendium II 503.02(b); *see* 37 C.F.R. § 202.1. CHS's Motion catalogs the claims directed only at such unprotectable and ubiquitous elements because the works speak for themselves. Mot. at 10-11. In contrast, GW avoids specifically identifying its claims, works, and elements with a camouflage of florid descriptions. *See, e.g.*, Opp. at 17-18.

*Bucklew* cited by GW does not stand for the proposition that any combination of elements is protectable by copyright. Rather, it clarifies that  the "particular novel twists given" to

---

[10] Detail from GW Ex. 135 (Dkt. 230-19) at 64, 68, 58.

complex aggregations of otherwise unprotectable elements may result in a copyrightable work. *Bucklewv. Hawkins,Ash, Baptie & Co., LLP,* 329 F.3d 923, 926 (7th Cir., 2003) (finding literal copying of every element of plaintiff's work, including "choice and size of font, the size of cells and columns, whether and where to use color, the wording of labels and headings . . . and whether to use boldface or italics for column headings," although "an immense number of alternative combinations" were available). And *Boisson v. Banian, Ltd.,* 273 F.3d 262 (2d Cir. 2001) does not stand for the proposition that alphabet designs are protectable as GW claims. The court expressly declined to rule on whether "the shapes of . . . letters" were protectable. *Id.* at 269. Rather, after detailed consideration of "the arrangement and shapes of the letters, the colors chosen to represent the letters and other parts of the quilts, the quilting patterns, [and] the particular icons chosen and their placement," it found for plaintiff on just two of six claims.

GW's argument that "this case does not concern copying of ideas" also mischaracterizes CHS's arguments and applicable law. "[T]he question is not whether plaintiff's materials contain[] any original expression, but whether [CHS] copied protectable parts of that expression or merely used the same underlying ideas." *Francorp, Inc. v. Siebert,* 210 F. Supp. 2d 961, 964 (N.D. Ill. 2001) (Moran, Sr. J.). Here, as in *Francorp,* "[f]iltering out ideas . . . reveals that no protected expression has been copied."[11] *Id.* GW's copyright claims are based on little more than allegations that, in the words of GW's Head of IP, "This thing is a copy of our idea. That is the best I can come up with." CHS SUF 48. GW spends pages avoiding side-by-side comparisons because a direct comparison exposes the obvious: CHS's alien figures *do not look like* GW's alien figures, except insofar as both depict nightmarish creatures of a familiar genre; CHS's skulls *do not look like* GW's "piles of skulls," except insofar as both depict skulls; CHS's

---

[11] Though GW refers in its Opposition to its "characters," its alleged works are not "characters" at all: they are at most blank slates upon which players may create characters – literally "stock" characters. To be protectable, a character must be "distinctive." *See, e.g., Gaiman v. McFarlane,* 360 F.3d 644, 660 (7th Cir. 2004) ("Cogliostro's age, obviously phony title ("Count"), what he knows and says, his name, and his faintly Mosaic facial features combine to create a distinctive character"). GW has failed to specify copying of any character elements.

conversion kit *does not look like* GW's wolf "iconography," except insofar as both depict wolf skulls. Because these and other abstract ideas are not protectable, GW's copyright claims fail.

### 4. GW Misconstrues The Issue of Functionality.

GW also misconstrues CHS's functionality argument. GW does not dispute that copyright does not protect functional features of its alleged works, such as doors that open and close. Instead, GW merely argues that, to the extent the "distinctive designs" of GW's products are *not* functional, they are protectable by copyright. But it is undisputed that the *dimensions* of GW's *functional* doors are precisely what allows them to function. The general shape and dimensions of the doors are therefore by definition "functional." GW's argument that the "choice of size [of CHS functional replacement parts and conversion kits] is not constrained by physical limits" is nonsensical: a replacement door or other accessory that does not *fit* will not *function*. Once the unprotectable, *functional* dimensions and general shape of CHS's products and GW's models are filtered out, there is no substantial similarity. As to CHS products that merely *fit onto* certain models, GW's arguments ignore the fact that CHS's products *are not substantially similar* to protectable elements of GW's alleged works. Just as a doll's clothes would not infringe copyright in the doll they are designed to fit, or a hubcap designed to fit onto a certain make and model of car would not infringe a copyright in the car's design, CHS's accessories and add-on parts do not infringe for *merely* fitting.

GW's argument that there is no "required standard size" for miniature wargaming figures similarly misses the point and mischaracterizes CHS's brief, which makes no such claim.[12] Opp. at 3, 15-17. GW does not dispute that the 28mm scale is a standard scale for war gaming miniatures. Instead, it points out the irrelevant fact that some companies (including GW) *also* use *other* standard (not "required") scales. War gaming miniatures—like a host of products, from model trains to printer paper—come in a variety of standard sizes and scales. GW cites no

---

[12] Confusingly, GW also appears to claim that it does *not* use the 28mm scale. *See* GW's Response to CHS's SUF 7 (GW's "models are slightly large[r] than 28mm in size on the whole" and "vary in size from a 6mm scale to 54mm").

authority for the proposition that merely building models at the same *scale* as another manufacturer is an indicium of copyright infringement. It is not. *See, e.g.*, *Mattel, Inc. v. Azrak Hamway Int'l, Inc. dba Remco Toys*, 724 F.2d 357, 360 (2d Cir. 1984) (holding plaintiff was not likely to prevail on merits of its copyright claims where defendant's "5 ½" action figure toy dolls . . . were designed to compete with [plaintiff's] dolls").

### III. GW FAILS TO RAISE A TRIABLE ISSUE OF FACT CONCERNING TRADEMARK INFRINGEMENT OR DILUTION.

GW also fails to raise a triable issue of fact on its trademark claims.

#### A. GW Fails to Credibly Dispute That It Has Now Abandoned 29 Marks And Has Failed to Identify Its 35 Allegedly Infringed Unregistered Design Marks

GW does not contest that the 110 marks identified in its response to CHS's Interrogatory 18 ("Marks at Issue") dropped 17 marks alleged in the SAC. (GW Resp. to SUF 52.) CHS is entitled to summary judgment on those 17 abandoned marks. GW also abandoned claims for 12 of the 110 Marks at Issue. CHS's Reply re SUF 54. GW's response to SUF 54 does not creates a genuine issue of fact as GW does not dispute that GW's 30(b)(6) witness abandoned those 12 marks, and its response, which relies upon marks not at issues, *e.g.*, Roman numerals with a design other than an arrow, is irrelevant. *Id.* GW also does not dispute that it failed to adequately identify 35 unregistered design marks; it merely argues that its failure is immaterial. CHS's Reply re SUF 63, 64. CHS is entitled to summary judgment on these marks, too.

#### B. GW Fails To Offer Evidence of Senior U.S. Rights in Its Alleged Marks

GW does not dispute that it must provide evidence of senior trademark use in the U.S. as part of its case of trademark infringement. Once CHS pointed out the lack of such evidence, Mot. at 18-19, GW had an obligation to "go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact." *Borello v. Allison*, 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted). It fails to do so. Rather than provide any actual evidence of use in the U.S. of the 110 Marks at Issue, it instead relies entirely upon (1) 600+ pages of blurry and unauthenticated photographs, which fail to include any discernible images of the vast majority of the marks; (2) never-before-produced sales

summaries created for the lawsuit that also fail to even reference dozens of the marks; and (3) disclaimer language on CHS's website, that says nothing about U.S. trademark rights, and also does not even list over 100 of the marks. All three fall woefully short of creating a triable issue of fact on ownership of U.S. rights in the 110 marks.

First, GW points to 600+ pages of blurry, duplicative, and unauthenticated photographs by an unidentified photographer to meet its burden of proving U.S. rights in the 110 Marks at Issue. Opp. at 20 (citing Ex. 136); CHS's Reply re SUF 59 (same). They do not. Only a small handful of the 110 marks **even appear** in these photographs, several only as book titles.[13] Exhibit 136 does not meet GW's burden to establish senior U.S. trademarks rights in each of the 110 Marks at Issue.[14]

Second, GW does not dispute that it failed to produce any actual evidence of U.S. trademark use of each of the 110 Marks at Issue (such as sales invoices or purchase orders), and in fact insisted that no such evidence existed. (CHS's Reply re SUF 17, 61, 62). It instead now offers what appear to be largely never-before-produced sales summaries. Opp. at 21 (citing Ex. 145), CHS's Reply re SUF 59-62. GW *concedes* that Ex. 145 was made for this lawsuit and not a record kept in the normal course of business but implies that it is "audited accounting records". *Compare* Jones Decl. ¶2 (Dkt. 230-29) *with* Opp. at 21. Ex. 145's headings make clear its litigation-specific nature: "Proof", "Date of First Use in commerce in the US at least as early as", etc. Moreover, CHS had no opportunity to depose GW about Ex. 145 because it was not produced. *E.g.*, CHS's Reply re SUF 59. Exhibit 145 is littered with inconsistencies:

- It fails even to list a third of the 99 unregistered Marks at Issue. Supp. Kearney Decl. ¶ 29;

- It purportedly summarizes financial records from as early as 2004, which contradicts Jones's testimony that GW's policy is *not to retain financial records,*

---

[13] Although the photographs are of poor quality, it appears that only 13 (BLOOD ANGELS, BLOOD RAVENS, CARNIFEX, DARK ANGEL, DARK ANGELS, ELDAR, GENE STEALER, THE INQUISITION, PREDATOR, RHINO, SPACE MARINE, TAU, and WARHAMMER) of the 110 marks even appear in Ex. 136, several only as book titles, which GW does not contest is not a trademark use. *See, e.g.,* Ex. 136 at GW0003225.

[14] GW does not dispute that its US stores do not carry its full range of products. (CHS Reply re SUF 59.)

-12-

> *whether invoices, shipping sheets, or tax records, longer than <u>six years</u>.* Dkt. 208-34 (Exh. 15: Jones Tr. at 40:11-42:10);

- GW also suggests that Exh. 145 shows "detailed monthly sales data," it does not. *Compare* Dkt. 230-18 (Moskin Decl. ¶6 "detailed monthly sales data"), Dkt. 230-29 (Jones Suppl. Decl. ¶ 2 "detailed (monthly) sales data") *with* Exh. 145.

"There is no way for this Court to know that this alleged sales sheet bears any relation to reality... [as it is] simply something Plaintiff[] generated on a [] computer for the purposes of this litigation." *See Central Mfg., Inc. v. Brett,* 492 F.3d 876, 882 (7th Cir. 2007) (affirming summary judgment, attorney fees, and costs where plaintiff failed to establish *bona fide* use of registered mark) (citation and internal quotation marks).

Although GW failed to produce any of the sales summaries that comprise Exh. 145 before the close of fact discovery, and provides the bulk of them for the first time with its Opp., it suggests that it previously produced them to CHS. CHS Reply re SUF 80; *compare* Opp. at 21 ("produced additional sales information in the form of detailed spreadsheets"), Dkt. 230-18 (Moskin Decl. ¶6 ("[GW] subsequently produced sales [sic] detailed monthly sales data for each of Games Workshop's products")) *with* Supp. Kearney Decl. at ¶¶ 13, 18. *Compare Central Mfg.*, 492 F.3d at 883 ("It is unfathomable that a company claiming to have engaged in thousands of dollars of sales of a product for more than a decade would be unable to produce even a single purchase order or invoice as proof") *with* Opp. at 22 ("it would have been inconceivable for the company to produce such records" given millions of dollars in sales). GW's "[s]elf serving [] testimony [regarding Exh. 145] is not enough to defeat a motion for summary judgment." *See Central Mfg.*, 492 F.3d at 883. Having repeatedly claimed no evidence existed, GW should not now be allowed to rely upon self-serving, unsubstantiated summaries.

Finally GW asserts without discussion that CHS "admits on its website that [GW] owns all of the trademarks in issue" (Opp. at 20). Not only does the disclaimer say nothing specifically about U.S. trademark rights at all, it does not even list 102 of the 110 Marks at Issue. Supp. Kearney Decl. ¶26. It does not relieve GW of proving ownership of senior U.S. rights.

### C. GW Fails To Address Likelihood of Confusion.

GW fails even to address the issue of likelihood of confusion under the Seventh Circuit's multi-factor test for trademark infringement, and thus concedes it cannot meet its burden to establish likelihood of confusion. In any event, every factor goes against it. Mot. at 22-25. The undisputed facts indicate no likelihood of confusion, warranting summary judgment for CHS.

### D.    CHS's Alleged Use of GW's Mark is Nominative Fair Use.

GW is vague and cursory regarding CHS's allegedly infringing use of GW marks. It does not dispute that it has failed to even identify **any** use by CHS of many of the 110 Marks at Issue. CHS's Reply re SUF 70 (undisputed that GW failed to identify in interrogatory response that CHS used 55 marks). The exhibits cited by GW in its Opposition at 23 as illustrating CHS infringing use show use of only a handful of the alleged marks, and they demonstrate classic nominative fair use. *See* Suppl. Kearney Decl. ¶¶ 27-28; *e.g.*, Ex. 118 ("Non- Games Workshop Vehicle accessories [sic] **for Space Wolf Players**.") (emphasis added).

GW alludes to only a handful of instances where it contends CHS's use of the alleged marks is not a nominative fair use, and discusses only one specifically: discontinued wording that used to appear on CHS's website: "Specializing in Bits and Sculpts for Warhammer 40,000 [and Fantasy]". Opp. at 23; *e.g.*, Ex. 118. Not only did CHS discontinue use of that tagline months ago, "Warhammer 40,000" is **undisputedly not a mark at issue**. CHS's Reply re SUF 52, 53.  Even if it were a current use or a mark at issue, the reference to "Warhammer 40,000" "easily satisf[ies] the first *New Kids* factor" since it was "'necessary' to describe their business." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1181 (9th Cir. 2010) (use of mark "LEXUS" in domain names "buy-a-lexus.com" and "buyorleaselexus.com" by brokers for a range of automobiles, including Lexus-branded cars, was nominative fair use). Second, CHS used no more of the (alleged) mark than necessary and no specialized stylization or color to call it out; for example, it uses the same consistent font, and in a smaller size than "Chapterhouse Studios" right above it—contrary to GW's argument that CHS is using the alleged mark as an attention-getting symbol. Third, CHS does not suggest sponsorship or endorsement by GW as it

-14-

is undisputed that CHS disclaims such a connection on its website.[15] *Tabari*, 610 F.3d at 1182. "In light of [a disclaimer, plaintiff] must respond with evidence that [defendant's] use of the mark suggested sponsorship or endorsement by [plaintiff]. *Ty, Inc. v. Publications Intern., Ltd.*,, No. 99 CC 5565, 2005 WL 464688, *10 (N.D. Ill. Feb. 25, 2005) (no issue of material fact where plaintiff failed to produce evidence). Here, GW failed to introduce any materials facts of any such endorsement. *See* CHS's Reply re SUF 72-76, 78-80. Although GW does not discuss any other use by CHS, the record shows that any such use is nominative fair use.[16]

### E.    GW Fails To Raise a Triable Issue of Fact Concerning Trademark Dilution.

It is undisputed that GW produced no evidence that any of its marks are famous in the U.S. or Illinois as required for its federal and state dilution clams. (CHS's Reply re SUF 61, 68-69, 77.) GW merely argues, without evidence, that "the cult fame of Warhammer 40k makes it unusual, but Games Workshop's annual sales in excess of $50 million and wide distribution network attest to the unique status of the product that thrives without even any conventional advertising." Opp. at 24. GW's self serving testimony is not enough to defeat a motion for summary judgment. GW's assertion that its "Warhammer 40k" mark has achieved only niche fame also dooms its dilution claims. *Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, 509 F.3d 380, 384 (7th Cir. 2007) (niche fame does not support dilution). It is also undisputed that GW fails to identify use by CHS of the mark Warhammer 40K. CHS's Reply re SUF 70. GW also fails to provided evidence for the other threshold elements such as the date its marks became famous or the date CHS adopted the mark. GW fails to create a triable issue on dilution.

## IV.    CONCLUSION

Based upon the undisputed facts GW cannot establish the elements of its copyright or trademark claims. CHS respectfully requests that the Court grant its motion.

---

[15] GW Ex. 118 does not include the disclaimer that appears on the CHS web page it (partially) depicts. Supp. Kearney Decl., Ex. 8, is a complete version of that webpage, including the disclaimer.
[16] GW also does not dispute that its state and common law claims should be analyzed according to these same principles, and fail for the same reasons.

Dated: September 20 , 2012          Respectfully submitted,

                                                  _____/s/ Thomas J. Kearney_____
                                              Jennifer A. Golinveaux (CA Bar No. 203056)
Dean A. Morehous (CA Bar No. 111841)
K. Joon Oh (CA Bar No. 246142)
Thomas J. Kearney (CA Bar No. 267087)
     WINSTON & STRAWN LLP
     101 California Street
     San Francisco, CA 94111-5802
     Phone: (415) 591-1000
     Fax: (415) 591-1400
     jgolinveaux@winston.com
     dmorehous@winston.com
     koh@winston.com
     tkearney@winston.com

Eric Mersmann (IL Bar No. 6286859)
Bryce Cooper (IL Bar No. 6296129)
Jonathon Raffensperger (IL Bar No. 6302802)
     WINSTON & STRAWN LLP
     35 West Wacker Drive
     Chicago, IL 60601-1695
     Phone: (312) 558-5600
     Fax: (312) 558-5700
     emersmann@winston.com
     bcooper@winston.com
     jraffensperger@winston.com

## CERTIFICATE OF SERVICE

I, Thomas J. Kearney, an attorney, hereby certify that on September 20, 2012, I caused to be filed electronically the foregoing

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**SUPPLEMENTAL DECLARATION OF THOMAS KEARNEY**

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S REPLY TO PLAINTIFF GAMES WORKSHOP'S RESPONSES TO CHAPTERHOUSE'S STATEMENT OF MATERIAL FACTS AND CHAPTERHOUSE'S RESPONSE TO GAMES WORKSHOP'S ADDITIONAL FACTS**

**DECLARATION OF GARY CHALK**

with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.


_____/s/  Thomas J. Kearney_____

SF:340750.1