**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC and | ) | |
| JON PAULSON d/b/a PAULSON GAMES, | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | |

**SUPPLEMENTAL DECLARATION OF THOMAS KEARNEY**

I, Thomas Kearney, declare as follows:

1. I am an associate attorney with the law firm of Winston & Strawn LLP. I am a member in good standing of the Bar of the State of California, and on February 14, 2011 was admitted *pro hac vice* to the bar of this Court for purposes of this action. I have personal knowledge of the facts set forth herein and if called to testify could and would do so competently.

2. I have reviewed all of the documents that Plaintiff Games Workshop Limited (“GW”) has produced to Defendant Chapterhouse Studios (“CHS”) in response to CHS’s discovery requests, and have also supervised paralegals and other Winston & Strawn attorneys in conducting further review of those documents.

3. Based on my review, in the course of discovery GW produced 29 documents entitled “Confirmatory Assignment of Intellectual Property Rights.” All such documents that GW produced are in the Bates number range GW0006572 through GW0006774. Each of these documents was executed between April 24 and April 28, 2012. All of these documents were

produced to CHS on April 30, 2012. GW has not produced correspondence with any of the individuals who signed these documents.

4. GW provided two additional documents entitled "Confirmatory Assignment of Intellectual Property Rights" by attaching them as Exhibit 142 to its Opposition to Chapterhouse's Motion for Summary Judgment, Dkt. No. 230-27 pages 21-34. Those documents show that they were signed by Stefan Kopinski and Wayne England. GW never provided CHS with contact information for either of these individuals, and has not produced any correspondence with either of them.

5. GW has thus provided 31 purported assignments in all. Except for the names and dates, the 29 documents referred to in Paragraph 3 above are substantially identical to the two "Confirmatory Assignment of Intellectual Property Rights" documents referred to in Paragraph 4 above (Ex. 142 to GW Opp., Dkt. No. 230-27 pages 21-34).

6. **Exhibit 1** is a true and correct copy of a screenshot showing the results of a Google internet search I performed on September 19, 2012, for the search terms "28mm miniatures." That search returned links and URLs for at least nine companies whose names and descriptions indicate that they make and sell 28mm miniature figures.

7. **Exhibit 2** comprises true and correct copies of screenshots from various websites I visited on September 19, 2012. I visited the following companies' websites: Foundry Miniatures; Crusader Miniatures; Artizan Designs; eBob Miniatures; Eureka Miniatures; Perry Miniatures; Tengu Models; Wargames Factory. Each screenshot shows that the company whose website I visited makes and sells war gaming miniature figures at the 28mm scale. In addition, the companies' web pages make the following statements concerning the standard 28mm scale:

- Crusader Miniatures is "a UK based company making 28mm sized metal figures";

- "Foundry Miniatures Ltd began making miniatures in 1979 and since then has grown to become the market leader in the quality of its 28mm Historical, Fantasy and Science Fiction models";
- Artizan Designs "specialize[s] in producing 28mm high metal figures";
- eBob Miniatures' figures "are [all] 28mm size unless otherwise stated";
- "Tengu Models . . . specialize[s] in 28mm horror miniatures";
- "Wargames Factory brings you full ranges of hard plastic (polystyrene) multi-part 28mm (Wargames Standard 1/56 Scale) miniatures."

8. **Exhibit 3** is a true and correct copy of GW's Response to CHS's Request for Production of Documents Set Five, dated Nov. 7, 2011. In response to CHS's request no. 41, seeking

> All correspondence between YOU and any author, co-author, creator, or co-creator of any of the works YOU claim in this action concerning such works.

GW responded as follows:

> Games Workshop objects that this request is vague and ambiguous, overbroad and unduly burdensome and seeks documents that are irrelevant and not likely to lead to the discovery of admissible evidence.
>
> Without prejudice to or waiver of the foregoing objections, Games Workshop will produce documents, if any, responsive to this request.

To my knowledge, after a review of all the documents GW has produced in this case, GW has not produced any correspondence with any of the authors of its alleged works.

9. On August 13, 2012, five months after the close of fact discovery and one day before the deadline for dispositive motions, GW produced a "Commissioning Form" executed by Adrian Smith in 2008, concerning a work that had yet to be created as of the date of the

contract's execution. That work is self-evidently not the work at issue in this litigation created by Smith, which GW's Second Rev. Copyright Claim Chart (at entry 23) identifies having been created in 2002.

10. I have reviewed the discovery responses and correspondence in this case, and have been an attorney on this case since February 14, 2011. GW never responded to any discovery request by stating that documents or exemplars would be made available for inspection at Foley & Lardner's Chicago office. To my knowledge, at no time before the close of fact discovery did GW ever inform CHS that any documents or exemplars would be made available for inspection at Foley & Lardner's Chicago office.

11. **Exhibit 4** is a true and correct copy of GW's Response to CHS's Request for Production of Documents, Set Seven.

12. GW did not produce any documents between March 2, 2012, and the close of fact discovery.

13. GW failed to produce any portion of Exhibit 145 before the close of fact discovery, and all but two pages (the ones with Bates numbers) were provided for the first time with GW's Opposition to CHS's Motion for Summary Judgment, more than 3 months *after* the deposition of GW's 30(b)(6) witness regarding trademark topics, revenues and related records. GW produced the documents with Bates numbers GW0011278 and GW0011279, which are the first two pages of Exhibit 145 to GW's Opposition, on July 9, 2012, more than three and a half months after the close of fact discovery, and more than three months after CHS's deposition of GW's 30(b)(6) designee regarding trademark topics, revenues, and related records. The other five pages of GW's Exhibit 145 were never produced to CHS.

14. On August 9, 2012, I received an email from GW's attorney Jason Keener, informing me that GW was producing documents Bates labeled GW0011281-11390, and including a link that permitted me to download the documents from an FTP site. Those documents included never-before-produced documents referenced in GW's Second Rev. Copyright Claim Chart, including: Warhammer 40,000 Dark Angels p. 49; Warhammer 40,000 Eldar pages 23, 26, 28, 31, 37, and 40; Insignium Astartes (no page number visible); and Warhammer 40,000 Space Marines 2008, pages 20, 32, 58, 70, 71, 84, 87, 92, and 101. GW references these never-before-produced documents as allegedly infringed works in its Second Rev. Copyright Claim Chart at entries 35, 36, 46-49, 51, 52, 57-62, 74, 77, 108, 113, 114, 126, 130, 132-134, and 142.

15. **Exhibit 5** is a true and correct copy of relevant pages of the March 9, 2012 Deposition of Gillian Stevenson ("Stevenson II").

16. **Exhibit 6** is a true and correct copy of relevant pages of the March 5, 2012 Deposition of Gillian Stevenson ("Stevenson I").

17. **Exhibit 7** is a true and correct copy of the cover and credits page from "Horus Heresy: The Collected Visions," Bates numbered GW0001875 and GW0001882, respectively. The credits page show that the book "Horus Heresy: The Collected Visions" was previously published in four separate volumes, with the latest of those volumes published in 2006.

18. GW certified that its production was complete as of March 2, 2012. CHS's Statement of Undisputed Facts ("SUF") No. 23 (Dkt. 210 at 8). On March 12, 2012, GW objected to CHS's remaining discovery requests concerning additional sales information. SUF 24 (Dkt. 210 at 8); *see, e.g.*, GW Ex. 147 at Response No. 81 (Dkt. 230-29 at 12) (objecting to request for sales records for each unregistered mark as "needlessly cumulative and repetitive of

prior requests”). GW failed to produce any portion of Exhibit 145 before the close of fact discovery, and failed to provide any portion for Exhibit 145 before the 30(b)(6) deposition of GW’s designated witness regarding trademark topics, revenues and related records.

19. **Exhibit 8** is a true and correct copy of documents Bates labeled CHS00001258-1259, the first page of which GW reproduced as Exhibit 118 to its Opposition. GW failed to reproduce the entire screenshot, which comprises two printed pages and depicts the prominent disclaimer language that appears on every page of CHS’s website.

20. **Exhibit 9** is a true and correct copy of excerpts of the Nicholas Villacci Deposition Transcript Vol. 2 (Apr. 11, 2012) (“Villacci II”).

21. **Exhibit 10** is a true and correct copy of excerpts of the Nicholas Villacci Dep. Tr. Vol. 1 (Feb. 29, 2012) (“Villacci I”).

22. GW’s Ex. 126, which is depicted as part of GW’s purported Additional Undisputed Material Fact No. 31 and which GW’s attorney Jonathan Moskin characterizes (without any foundation) as “[a] copy of the back of Chapterhouse’s Generic Power Armour Shoulder Pad for Space Marine,” is not a picture of that product. *See* GW Ex. 126; GW Ex. 4 (“Moskin Decl.”) at ¶ 86. Attached as **Exhibit 11** is a true and correct copy of an image depicting the back of Chapterhouse’s actual “Power Armor Shoulder Pad for Space Marine” product referenced at GW’s purported Additional Undisputed Material Fact No. 31 and Moskin Decl. ¶ 86. **Exhibit 11** was created by an attorney working under my supervision. For ease of reference, the image in **Exhibit 11** is shown below, side by side with the relevant portion of GW’s Exhibit 126:


Back of CHS "Power Armor Shoulder Pad for Space Marine (CHS Product No. 54)


DETAIL of GW MSJ Ex. 126

23. **Exhibit 12** comprises true and correct copies of pages from GW's website, depicting two views of its assembled "Tyranid Carnifex" model. I located and printed those images by visiting GW's website at http://www.games-workshop.com/gws/catalog/productDetail.jsp?prodId=prod1050178 and clicking on thumbnail images of GW's assembled "Tyranid Carnifex" model. The images of GW's assembled model show that each of the features GW describes in its SUF 50, "including two small hind legs, four large pointed legs that each have a small horn extending off the 'elbow' of the leg, several bony protrusions that extend off the back of the creature, and the overall stance of the creature" are features of *GW's own product*. For ease of reference, the relevant images from Exhibit 28 and GW's SUF 50 (showing CHS's Kit assembled on top of an assembled GW "Carnifex" model) are shown below:







(Detail from GW Ex. 62, showing a CHS Tervigon Conversion Kit for Carnifex Model, assembled on a GW "Carnifex" model to demonstrate fit and compatibility.)

24. **Exhibit 13** is a true and correct copy of excerpts of the Deposition of Alan Merrett (3/8/2012) ("Merrett I").

25. CHS produced relevant documents from the designer of the "Tervigon Conversion Kit for Carnifex Model," Bates labeled 3RDPARTY00000021 -22 and 3RDPARTY00000027-35.

26. I have reviewed the disclaimer that appears on the CHS website (the "Disclaimer"), and compared it to GW's discovery responses listing the Marks At Issue in this case. The Disclaimer lists only eight of the 110 Marks At Issue. The Disclaimer says nothing about U.S. trademark rights specifically.

27. In its Opposition (at 23), GW identifies seven exhibits which it contends reflect CHS's allegedly infringing trademark use: GW's Exs. 18, 52, 62, 72, 79, 92, and 118. The cited exhibits, however, involve:

- marks that are not Marks at Issue, e.g., "Celtic", "Tech-Wolf Shields and Hammer", "Jetbike Seer Council", and "Ymargl Genestealer" (Ex. 18); "Heresy" or "Heresy Marine" (Ex. 52); "Tervigon" (Ex. 62); "Javelin Class Imperial Jet Bike" (EX. 72); "Assault", "IX Devastator Marine", "X Devastator Marine", and "MK 5" (Ex. 79); "Blood Eagle" and "MK 5" (Ex. 92); "Wolf Rhino" and "Tactical Rhino" (Ex. 118); and
- claims for marks that GW abandoned such as Tactical and Skulls –*see*, *e.g.*, Ex. 79 ("Tactical Shoulder Pad 28mm Marines"); Ex. 92 ("Shoulder Pads for Blood Eagle – Tactical"; "Skull or Chaplain Head Bit for Power Armor"); Ex. 118 ("Skull or Chaplain Head Bit for Power Armor"; "Tactical Rhino Doors with Skulls Kit").

28. At best, GW's exhibits 18, 52, 62, 72, 79, 92, and 118 only even refer to a handful of the Marks At Issue. CHS's uses of those marks demonstrate compatibility of CHS's products

with GW's toy miniatures. *See, e.g.*, Ex. 118 ("Conversion Beamer Servo Harness Kit **for Space Marine Model**"); Ex. 92 ("Studded Power Armor Pad **for MK 5**") (emphases added).

29. GW's Ex. 145 is missing at least a third of the 99 unregistered Marks At Issue.

I declare under the penalty of perjury that the foregoing is true and accurate.

Dated: September 20, 2012 By: /s/ Thomas J. Kearney

SF:340643.6