# Exhibit 10

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION

GAMES WORKSHOP LIMITED,         §
                                §
     Plaintiff,                 §
                                §
V.                              §    CIVIL ACTION NO.
                                §    1:10-cv-08103
CHAPTERHOUSE STUDIOS LLC        §
and JON PAULSON d/b/a           §
PAULSON GAMES                   §
                                §
     Defendants.                §
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION OF

NICK VILLACI

FEBRUARY 29, 2012

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL DEPOSITION of NICK VILLACI, produced as a witness at the instance of the Plaintiff and duly sworn, was taken in the above-styled and -numbered cause on the 29th of February, 2012, from 1:20 p.m. to 3:10 p.m., before Melisa Duncan, CSR in and for the State of Texas, reported by machine shorthand, at the offices of Carrington, Coleman, Sloman & Blumenthal, 901 Main Street, Suite 5500, Dallas, Texas, in accordance with the Federal Rules of Civil Procedure and agreement hereinafter set forth.

COPY

```
1       A.   I'd rather not answer.
2       Q.   (BY MR. MOSKIN)  I'm sorry, what was the answer?
3       A.   I'd rather not answer under advice from my
4   attorney.
5            MS. GOLINVEAUX:  And to be clear, if you can
6   answer without revealing the substance of attorney-client
7   communications, you can answer.  Perhaps if you restate the
8   question.  I think he asked for the substance of
9   communications.
10      Q.   (BY MR. MOSKIN)  Yes.  Can you describe the types
11  of communications you gave to your counsel last week?
12      A.   Sales records and documents.
13      Q.   Sorry, what records, sales records?
14      A.   Yes.
15      Q.   Okay.  And documents?
16      A.   Pertaining to the same subject matter, sales.
17      Q.   Sales of what?
18      A.   Our products.
19      Q.   What specific products?
20      A.   It was a wide range.
21      Q.   Can you identify what the products were?
22      A.   It was just a report on our sales of products.  It
23  wasn't any specific.
24      Q.   Were there any documents concerning the
25  development of any products?
```

| | | |
|---|---|---|
| 1 | A. | There was some chat records between myself and the |
| 2 | | developers talking about our products in development. |
| 3 | Q. | And what products were those? |
| 4 | A. | I don't know offhand. |
| 5 | Q. | You have no -- no recollection? |
| 6 | A. | No, it was just a history. |
| 7 | Q. | What period of history was covered by those chat |
| 8 | | records? |
| 9 | A. | Whatever was available on the computer. |
| 10 | Q. | And what period was available on the computer? |
| 11 | A. | I do not know the dates, just whatever was |
| 12 | | available on the computer that was there on the computer. |
| 13 | Q. | And that was the one computer you have in your |
| 14 | | office? |
| 15 | A. | Yes. |
| 16 | Q. | And you -- and how many chat records were there? |
| 17 | A. | I don't know the number. I didn't count them. |
| 18 | Q. | Can you give an approximation, was it ten, five? |
| 19 | A. | More than one. |
| 20 | Q. | A hundred, more than 500? |
| 21 | A. | No, not more than 500. |
| 22 | Q. | More than 200? |
| 23 | A. | No. |
| 24 | Q. | Well, then 100? |
| 25 | A. | I couldn't say for certain if it was more or less |

```
1      Q.   I think you'll agree that, unlike all the others,
2   there are no specific products mentioned there.  Do you see
3   that?
4      A.   Yes.
5      Q.   Is that because you have no recollection what he
6   worked on?
7      A.   I have no recollection -- complete recollection of
8   every single thing he has worked on.
9      Q.   Had you -- do you have any records of what he
10  worked on?
11     A.   No, I don't have a record that says everything
12  Tomas has worked on.
13     Q.   You have records how much you pay each designer?
14     A.   Yes.
15     Q.   Do those records indicate who worked on what?
16     A.   Some do.
17          MR. MOSKIN:  Let's -- let's show the witness
18  what can be marked as Exhibit 3.
19          (Exhibit 3 was marked.)
20     Q.   (BY MR. MOSKIN)  Now, can you identify this
21  document, Mr. Villaci?
22     A.   It's an e-mail correspondence between myself and
23  Valiant Enterprises.
24     Q.   And who or what is Valiant Enterprises?
25     A.   They are a casting company.
```

1    Q.   A casting company, that -- is that what you said?
2    A.   Yes.
3    Q.   That makes casts or molds for your products?
4    A.   Yes.
5    Q.   Are you aware of any e-mail records you have kept
6    relating to any of the products at issue in this case dated
7    after January 26, 2011?
8    A.   Yes.
9    Q.   You have e-mail records after that date?
10   A.   Yes.
11   Q.   And you -- did you provide those records to your
12   counsel?
13   A.   My attorneys have the e-mails they've asked me
14   for.
15   Q.   Can you identify by -- in any way by Bates number
16   or other means of identification any e-mails dated after
17   September 26 -- excuse me, January 26, 2011?
18   A.   Are you asking if we numerically ID our e-mails?
19   Q.   Well, do you keep records chronologically?
20   A.   It stays in our e-mail software.
21   Q.   I have asked your counsel to explain why we have
22   received no documents, no e-mails dated after January 26,
23   2011.  And I'm wondering if you can explain why?
24   A.   I don't know.  They have everything they have
25   asked for.

NICK VILLACCI
February 29, 2012

```
 1      Q.   And who are those?
 2      A.   Before Winston & Strawn represented us, we had
 3   another attorney.  I believe you've spoken to him before.
 4   He's the first attorney that represented us.
 5      Q.   Any -- there was somebody who sent me at least an
 6   e-mail.  I don't --
 7      A.   His name was Nick, that's all I remember.
 8      Q.   Any other lawyers?
 9      A.   No, not in official capacity at all, no.
10           MR. MOSKIN:  Can we take a two-minute break?
11   I'm being summoned to deal with something, if that's all
12   right.
13           (Recess from 2:49 p.m. to 2:54 p.m.)
14      Q.   (BY MR. MOSKIN)  I have -- we have explained to
15   your counsel and to the court in this case that we have
16   received no documents concerning the development of
17   Chapterhouse's products except for 15 products, namely, a
18   wheeled conversion kit for a Chimera, doors for wheeled
19   conversion kits, powerfist hydra (phonetic) sword arm, gun
20   fight for eldars, eldar bits including scorpion warrior
21   priestess, flying shoulder pads, hidden shoulder pads,
22   resin base, death angel shield, space marine heads, space
23   marine jump packs, lashwhip weapon, winged sword and
24   Tervigon conversion kit for car effects.
25           Are you aware of why we have received no
```

```
 1   documents for any of the other 121 products at issue in
 2   this case?
 3             MS. GOLINVEAUX:  Objection, assumes facts not
 4   in evidence and argumentative.
 5      A.  I've provided all the documents my attorneys asked
 6   for, so . . .
 7      Q.  (BY MR. MOSKIN)  Other than the documents you
 8   provided last week, had you earlier in the case provided
 9   documents concerning products other than those 15 I just
10   read off?
11      A.  Don't know what my attorneys have provided you but
12   I've given them everything they've asked for.
13      Q.  Do you know that you gave them the documents
14   concerning the development of the 116 other products prior
15   to last week?
16      A.  If we had documents for those items, they have
17   them.
18      Q.  I'm asking you more specifically, if you know
19   specifically that you did provide documents for the other
20   116 products?
21      A.  I don't know specifically what documents we have
22   for what items.
23      Q.  I'd like to show you what can be marked as
24   Exhibit 16.
25             (Exhibit 16 was marked.)
```

NICK VILLACCI
February 29, 2012

```
 1      Q.   (BY MR. MOSKIN)  And do you have that in front of
 2   you?
 3      A.   Yes, I do.
 4      Q.   And on page 8, is that your signature?
 5      A.   That is my signature.
 6      Q.   I'd like to -- you can read the whole thing, but
 7   I'd like to direct your attention to page 6.  And I will
 8   tell you this is in response to our request for you to
 9   identify all sources consulted, used, reviewed or relied on
10   by Chapterhouse creating each of the accused works.  And
11   the supplemental responses provided on page 6, I'd like to
12   ask you -- and you can read it, I am aware that we received
13   from you documents referring to a lion and a mantis
14   design.  Are you aware of whether Chapterhouse has any
15   documents concerning dungeons and dragon hammer weapons,
16   saw blades, snake art from Greek art, Google images of
17   dragons, HR Giger artwork, the lashwhips, bonesquords and
18   mycetic spore, wolf's head sketches, Nordic-style runes?
19      A.   Do we have any documents?
20           MS. GOLINVEAUX:  Could you -- could you
21   repeat the question?
22      Q.   (BY MR. MOSKIN)  I'm asking if Chapterhouse -- if
23   you're aware that Chapterhouse has any documents showing
24   any of those -- those items?
25      A.   The items we drew inspiration from?
```

```
 1      Q.   Yes, the ones I just mentioned and that are
 2  referenced in your answer to interrogatory number two.
 3      A.   I don't have possession of any documents that show
 4  that.  The designers might.
 5      Q.   You don't know?
 6      A.   Chapterhouse itself does not have any documents
 7  showing that.
 8      Q.   And you don't know whether or not the designers
 9  do?
10      A.   I don't know what documents they draw inspiration
11  from.
12      Q.   Do you do any of the design work yourself?
13      A.   There's one product that was wholly designed by
14  myself.
15      Q.   What was that?
16      A.   I believe it's a shoulder pad and we just
17  designate it a Mach I shoulder pad.
18      Q.   Is that -- is that a product that incorporates
19  any -- in anything -- is that one of the products at issue
20  in this lawsuit?
21      A.   I think so.
22      Q.   So you don't have any drawings that you created?
23           MS. GOLINVEAUX:  Objection, vague and
24  ambiguous.  Was that the entire question?
25      Q.   (BY MR. MOSKIN)  Let me strike that.  Other than
```

```
 1   the Mach I product, you don't have any drawings or sketches
 2   that you personally created?
 3       A.   Yes, I do.
 4       Q.   And what are those?
 5       A.   I couldn't tell you specifically, but during the
 6   design process, ideas and designs are e-mailed back and
 7   forth between parties.
 8       Q.   And some of those are drawings that are done --
 9   that are created by you?
10       A.   I wouldn't call them drawings.  I would call them
11   doodles.  They were just rough sketches.
12       Q.   Okay.  You say that you have not asked your
13   independent designers, concept artists to -- to give you
14   documents that they may have.  Do you know what they would
15   say if you did ask?
16            MS. GOLINVEAUX:  Objection, calls for
17   speculation.
18       A.   I don't know what they would say.
19       Q.   (BY MR. MOSKIN)  Are you aware of any who would
20   refuse to -- are you aware of any of the independent
21   designers or concept artists who would refuse to produce
22   documents if you asked?
23            MS. GOLINVEAUX:  Objection, calls for
24   speculation.
25       A.   Again, I don't know what their frame of mind would
```

```
 1          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3   GAMES WORKSHOP LIMITED,      §
                                  §
 4        Plaintiff,              §
                                  §
 5   V.                           §   CIVIL ACTION NO.
                                  §   1:10-cv-08103
 6   CHAPTERHOUSE STUDIOS LLC     §
     and JON PAULSON d/b/a        §
 7   PAULSON GAMES                §
                                  §
 8        Defendants.             §

 9           REPORTER'S CERTIFICATION OF THE
             ORAL DEPOSITION OF NICK VILLACCI
10                   FEBRUARY 29, 2012
```

11     I, Melisa Duncan, a Certified Shorthand Reporter

12 in and for the State of Texas, hereby certify to the

13 following:

14     That the witness, NICK VILLACCI, was duly sworn by

15 the officer and that the transcript of the oral deposition

16 is a true record of the testimony given by the witness;

17     That the original deposition was delivered to

18 Mr. Moskin.

19     That a copy of this certificate was served on all

20 parties and/or the witness shown herein on _____.

21     I further certify that pursuant to FRCP Rule 30(f)(1)

22 that the signature of the deponent:

23     √ was requested by the deponent or a party before

24 the completion of the deposition and that the signature is

25 to be before any notary public and returned within 30 days

NICK VILLACCI
February 29, 2012

```
 1   from date of receipt of the transcript.  If returned, the
 2   attached Changes and Signature Page contains any changes
 3   and the reasons therefore:
 4   _____ was not requested by the deponent or a party
 5   before the completion of the deposition.
 6       I further certify that I am neither counsel for,
 7   related to, nor employed by any of the parties or attorneys
 8   in the action in which this proceeding was taken, and
 9   further that I am not financially or otherwise interested
10   in the outcome of the action.
11       Certified to by me on this, the ___6___ day of
12   __March__, 2012.
```

MELISA DUNCAN, Texas CSR 6135
Expiration Date: 12/31/13
Firm Registration No. 526
CSI Global Deposition Services
4950 North O'Connor Road, Suite 152
Irving, Texas 75062
972.719.5000