**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON<br>PAULSON d/b/a PAULSON GAMES<br><br>　　　　　　　　　　　　Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly<br>Hon. Jeffrey T. Gilbert |

## [DRAFT] PRETRIAL ORDER

The parties, Games Workshop Limited ("Games Workshop") and Chapterhouse Studios LLC ("Chapterhouse") jointly submit the following proposed pretrial order.

The parties further request leave to amend this order subject to resolution of the pending summary judgment motions.

### 1. Jurisdiction

This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction over the claims arising under the statutory and common law of the State of Illinois pursuant to 28 U.S.C. §1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy. Subject matter jurisdiction is not disputed.

### 2. Claims

#### *Games Workshop's Proposed Statement of the Claims*

The plaintiff in this case is Games Workshop. Games Workshop has created a fictional universe called Warhammer 40,000, set in the 41st Millennium. Games Workshop has created and currently sells hundreds of books and magazines portraying this fictional world. There are computer games, a movie as well as thousands of collectible figurines based on the characters in the books. Fans can use these figurines to play a table-top war-game set in the Warhammer 40,000 universe, using the characters, vehicles, weapons, and other items depicted in the books and magazines according to rules created by Games Workshop.

The defendant, Chapterhouse Studios, is a small company owned by a fan of Warhammer 40,000 who develops and sells to other fans of the game figurines and accessories based on the characters, vehicles and weapons created by Games Workshop. Games Workshop contends that that Chapterhouse Studio's products are made to be immediately recognizable to fans of Warhammer 40,000 in order to sell and that defendant further identifies its products by using the names Games Workshop has created. Games Workshop therefore contends that certain of defendant's individual products, as well as its website, infringe on Games Workshop's copyrights and infringe on Games Workshop's trademarks.

Chapterhouse Studios denies these claims and contends that its products allow players of the game Warhammer 40,000 to enhance their playing experience with the game. Chapterhouse denies that it copies protectable expression in any copyrights owned by Games Workshop; denies that Games Workshop owns U.S. rights in many of the trademarks it claims; denies that it refers to any of Games Workshop's claimed trademarks in a manner that infringes or dilutes those claimed trademarks; and claims that any reference to Games Workshop's claimed marks is a fair use under the law

## *Chapterhouse's Proposed Statement of the Claims[1]*

The plaintiff in this case is Games Workshop Limited, an international game company headquartered in the United Kingdom. Games Workshop sells products including books, magazines, and toy figures related to its Warhammer 40,000 table-top war game. Players can use the toy figures and related accessories to play the game.

The defendant, Chapterhouse Studios LLC, is a small company operated out of its founder's home in Texas that makes products that players can use to enhance their playing experience with Warhammer 40,000 and other fantasy and sci-fi war games. It was founded by a long time enthusiast of Warhammer 40,000 and other tabletop war games. Chapterhouse's products are game figures and accessories that players can use to customize the toy soldiers they use to play tabletop war games. Chapterhouse's products are cast from pewter or gray resin, and are all sold and shipped unpainted, so that players may paint the products themselves.

Games Workshop claims that some of Chapterhouse's products infringe certain copyrights that Games Workshop claims it owns in material related to the Warhammer 40,000 game. Games Workshop also contends that Chapterhouse infringes certain U.S. trademarks that Games Workshop claims it owns. Games Workshop also alleges that certain of its claimed U.S. trademarks are famous and that Chapterhouse uses them in an unfair manner that dilutes the value of those famous trademarks. Games Workshop also claims that Chapterhouse has engaged in unfair and deceptive business practices that are prohibited by Illinois state law. Chapterhouse denies these claims. Specifically, Chapterhouse denies that it copies protectable expression in any copyrights owned by Games Workshop; denies that Games Workshop owns U.S. rights in many of the trademarks it claims; denies that it refers to any of Games Workshop's claimed

---

[1] Chapterhouse objects to Games Workshop's version of the "Claims" section, because it includes argument that is improper to the claims description, such as the statement that Games Workshop has "created a fictional universe called Warhammer 40,000."

Games Workshop does not intend its statement to be argumentative, including the cited statement of fact.

trademarks in a manner that infringes or dilutes those claimed trademarks; and claims that any reference to Games Workshop's claimed marks is a fair use under the law.

## 3. Relief Sought

Games Workshop seeks a permanent injunction against sales of products that infringe its copyrights, if any, as well as an injunction against the presentation of such products aggregated on the defendant's website (or in any similar format); a permanent injunction against any infringing use of Games Workshop's trademarks and logos in identifying defendant's goods, or the use of any other names or symbols likely to cause confusion as to the source or sponsorship of defendant's goods; an injunction against sales of any products made for use in connection with Games Workshop's game Warhammer 40,000 without a permanent identification of Chapterhouse Studios as source; recovery of defendant's profits from the sales of infringing goods to date; and destruction of any infringing goods or any means of producing the same.

## 4. Witnesses

A. Games Workshop identifies the following witnesses that it expects to call at trial:

1.    Jeremy Goodwin, Lead Miniatures Designer, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

2.    Alan Roy Merrett, Head of Intellectual Property, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

3.    Laurence John Blanche, Art Director, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom (subject to ability to travel).

4.    Andrew Meredith Jones, Head of Legal, Licensing and Strategic Projects, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

5.    Nicholas Villacci, owner and CEO, Chapterhouse Studios, 1711 Brettenmeadow Drive, Grapevine, Texas 76051.

B. Games Workshop identifies the following witnesses that it may call at trial:

6.    David Thomas, Miniatures Designer, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

7.      David Gallagher, Senior Artist, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

8.      Neil Hodgson, Graphic Illustrator, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

9.      Gillian Stevenson, Senior Legal Counsel, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

10.      Ed Spettigue, 9211 Rocky Hills Dr, Apt, 303, Cordova, TN 38018-6526.

11.      Sandra Casey, Head of Sales, Games Workshop Retail , 6211 East Holmes Road, Memphis, Tennessee, 38141.

12.      Steve Horvath, Fantasy Flight Games, 1975 W County Rd B2, Roseville, Minnesota 55113.

13.      David Anderson. THQ, Inc., 29903 Agoura Road Agoura Hills, CA 91301.

14.      Daniel Brown, Legal Assistant.  Foley & Lardner, 321 North Clark Street, Suite 2800, Chicago, IL 60654.

15.      Michael Bloch, QC. Wilberforce Chambers, Lincoln's Inn, 8 New Square, London, England WC2A 3QP

C. Games Workshop identifies the following witnesses whose deposition testimony it expects to read at trial

16.      Thomas Fiertek, co-owner of Chapterhouse Studios, Lufttrychs gatan, 41840, Gothenburg Sweden.

17.      Wyatt Traina, designer for Chapterhouse Studios, 775 Parker Street, Boston, Massachusetts.

Games Workshop reserves the right to call any witnesses listed on Chapterhouse's Witness List.

### *Chapterhouse Studios*

Subject to the availability of each witness at the time of trial, Chapterhouse currently expects that it will call or may call the following witnesses to testify at trial:

| WILL CALL | |
|---|---|
| **Witness** | **Address** |
| Lionel Bently | 18 Romsey Road, Cambridge, Cambridgeshire CB1 3DD, United Kingdom |
| William Brewster | First Division Museum at Cantigny, 1s151 Winfield Road, Wheaton, IL 60189 |
| Nicholas Villacci | 1711 Brettenmeadow Drive, Grapevine, TX 76051 |
| **MAY CALL** | |
| **Witness** | **Address** |
| Sandra Casey | 2676 Foy Road, Senatobia, MS 38668 |
| Gary Chalk | La Jossiniere, St Martin le Bouillant, 50800 Villedieu les Poeles, France |
| Tomas Fiertek | Lufttrycksgatan 9, 418 40 Gothenburg, Sweden |
| Neil Hodgson | No. 8 Parkwood Court, Nottingham, NG6 9FB, United Kingdom |
| Andrew Jones | 126 Main Street, Calverton, Nottingham, NG1 46FB, United Kingdom |
| Alan Merret | No. 4 Ferndale Close, Attenborough, Nottingham, NG9 6AQ, United Kingdom |
| Jeffrey Nagy | 49 S Henderson Road, Apt. B309, King of Prussia, PA 19406 |
| Gillian Stevenson | 22 Park Crescent, Wollaton, Nottingham, NG8 2EQ, United Kingdom |

Chapterhouse reserves the right to call any witnesses listed on Games Workshop's Witness List.

Chapterhouse may also present the testimony of the following witnesses by videotaped deposition:

| MAY CALL | |
|---|---|
| **Witness** | **Address** |
| Sandra Casey | 2676 Foy Road, Senatobia, MS 38668 |
| Tomas Fiertek | Lufttrycksgatan 9, 418 40 Gothenburg, Sweden |
| Jeremy Goodwin | No. 4 Taunton Road, Westbridgford, Nottingham, NG2 6EW, United Kingdom |
| Neil Hodgson | No. 8 Parkwood Court, Nottingham, NG6 9FB, United Kingdom |
| Andrew Jones | 126 Main Street, Calverton, Nottingham, NG1 46FB, United Kingdom |
| Alan Merret | No. 4 Ferndale Close, Attenborough, Nottingham, NG9 6AQ, United Kingdom |
| Gillian Stevenson | 22 Park Crescent, Wollaton, Nottingham, NG8 2EQ, United Kingdom |

Chapterhouse reserves the right to present portions of any videotaped deposition testimony designated by Games Workshop.

Chapterhouse reserves the right to call to testify any witness actually called to testify by Games Workshop at trial.

## (a) Witness Objections

### *Games Workshop*

Games Workshop object to the following witnesses identified by Chapterhouse:

1. Gary Chalk – Games Workshop objects that Mr. Chalk's testimony is irrelevant and that he was not properly identified as a witness

2. Jeffrey Nagy – Games Workshop objects that Mr. Nagy was not properly identified as a witness

3. Lionel Bently – Games Workshop objects that portions of Mr. Bently's report are inadmissible and irrelevant.

4. William Brewster – Games Workshop objects that portions of Mr. Brewster's report are inadmissible and irrelevant.

### *Chapterhouse*

Chapterhouse objects to the following witnesses identified by Games Workshop:

1. Michael Bloch – Purported expert opinion is not based upon sufficient facts or data, as required by FRE 702, which Chapterhouse will address separately by Motion in Limine

2. Steve Horvath – Games Workshop failed to disclose this witness before the close of discovery and Chapterhouse did not have the opportunity to depose this witness.

3. Daniel Brown – Games Workshop failed to disclose this witness before the close of discovery and Chapterhouse did not have the opportunity to depose this witness.

## (b) Deposition Designations

Games Workshop's list of deposition designations, Chapterhouse's objections to Games Workshop's designations, Chapterhouse's counter-designations, and Games Workshop's objections to such counter-designations, if any, are attached hereto as Exhibit 1.

Chapterhouse's list of deposition designations, Games Workshop's objections to Chapterhouse's designations, Games Workshop's counter-designations, and Chapterhouse's

objections to such counter-designations, if any, are attached hereto as Exhibit 2. To the extent Chapterhouse has counter-designated testimony designated by Games Workshop that the Court rules is inadmissible, those counter-designations may be moot and may be withdrawn.

For those depositions that have been videotaped, to the extent admissible, a party may introduce the deposition excerpt by videotape instead of, or in addition to, by transcript. If a party opts to introduce deposition testimony by videotape, any counter-designations of that same witness's deposition testimony must also be submitted by videotape.

When deposition designation excerpts are introduced, all admissible deposition counter-designation excerpts, whether offered by videotape or by transcript, will be introduced simultaneously in the sequence in which the testimony was originally given.

Each party reserves the right to use testimony designated by any other party (whether as a designation or a counter-designation), even if not separately listed on its own deposition designation list.

The parties may offer some or all of the deposition testimony set forth herein at trial. A party's decision not to introduce some or all of the testimony of a witness designated by that party herein shall not be commented upon by the other party at trial. However, 48 hours prior to introducing deposition testimony, the introducing party will identify the specific pages and lines that are actually intended to be played or read at trial, or a disclosure that all pages and lines previously designated will be read or played. Within 24 hours after that disclosure, the other party will identify the specific pages and lines it counter-designates to the extent they are different from those previously counter-designated. The parties will meet and confer to resolve any objections to give the introducing party time to prepare any necessary video/DVD of the testimony.

Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

## 5. Exhibits

Games Workshop's list of exhibits, including demonstrative exhibits, and Chapterhouse's specific objections to those exhibits are attached hereto as Exhibit 3. Games Workshop reserves its rights to enlarge, call-out, highlight, or balloon any trial exhibits for use as demonstratives. Chapterhouse objects to a number of Games Workshop's proposed exhibits as not timely produced in discovery and intends to file a motion in limine on that issue.[2]

---

[2] Chapterhouse further objects and reserves its rights with respect to exhibits identified by Games Workshop after the deadline to do so. Games Workshop first identified 215 exhibits on October 3, 2012, five days after this Court's standing order on Preparation Of Final Pretrial Order required their disclosure. Many exhibits lacked Bates numbers or other identifying characteristics that would enable Chapterhouse to surmise what exhibit was identified, *e.g.*, "Games Workshop Copyright Registrations" with no other identifying marks. On October 16, 2012, Games Workshop supplemented its exhibit list with 266 additional exhibits (Exs. 216-483), claiming that many of them "br[o]ke out previously identified exhibits into separate exhibits." Chapterhouse denies that these exhibits were "previously identified," because Games Workshop provided no identifying marks that would enable Chapterhouse

Chapterhouse's list of exhibits including demonstrative exhibits identified to date and Games Workshop's objections to those exhibits are attached hereto as Exhibit 4. Chapterhouse reserves its right to supplement its identification of demonstrative exhibits following a ruling on the pending motions for summary judgment and reserves its right to enlarge, call-out, highlight, or balloon any trial exhibits for use as demonstratives.

Games Workshop objects to Chapterhouse's proposed reservation of rights to identify demonstrative exhibits at a later date (except to the extent that the Court's decision on the pending motion for summary judgment would justify adjustments to either party's exhibit lists, in which case Games Workshop may also request leave to amend its exhibit list).

Each party reserves the right to use exhibits from any other party's trial exhibit list, even if not separately listed on its own exhibit list. The parties also agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document.

## 6. Type and Length of Trial

This is a jury trial that Games Workshop expects to take 7 trial days, dependent on the Court's availability. Chapterhouse expects the trial to take 7-15 days, dependent on the Court's availability. The parties agree that the length of trial may be dependent upon whether and how certain issues and claims are narrowed in connection with the parties' pending summary judgment motions and forthcoming motions in limine.

## 7. Proposed Voir Dire Questions

1. Have you, or a relative or close friend, ever played any miniature war-games?

---

to surmise what document was listed. Games Workshop supplemented its exhibit list again with 99 exhibits (Exs. 482-581), on October 18, 2012, one day before the pretrial order was due to be filed and 20 days after this Court's standing order on Preparation Of Final Pretrial Order required their disclosure. Chapterhouse supplemented its exhibit list with four new exhibits on October 18, 2012.

Games Workshop denies that it newly identified Exhibits 216-483 on October 16 and Exhibits 483-579 on October 18. In its initial list, Games Workshop identified as exhibits many of the exhibits submitted with its motion for summary judgment, using an identical description, such as "Games Workshop Copyright Registrations." Chapterhouse objected to these as they contained numerous documents and were difficult to identify. In response, Games Workshop separated out these exhibits and other group exhibits into individual exhibits on its exhibit list, thus increasing the number of exhibits. Additionally, as Chapterhouse has done, Games Workshop did identify some new exhibits as the pretrial order was being drafted between the parties and as new issues came more clearly into focus. It is Games Workshop's understanding of the Court's Standing Order that while exhibits can not be added after the pretrial order is filed without leave of court, the drafting process contemplates that each side will make amendments. In just the same manner the parties have each added new proposed jury instructions until almost minutes before the midnight filing deadline. Games Workshop further denies that its reclassification of the previously identified exhibits and addition of exhibits is prejudicial to Chapterhouse or a proper basis for Chapterhouse to object to otherwise relevant and admissible evidence. Certainly Chapterhouse has not identified to Games Workshop any specific exhibit it has been unable to identify (other than the initial questions that led to the redesignations to which it now objects). The parties did not meet in person to review exhibits so each side has had the same ability to review these exhibits and submit their objections, if any. To the extent the Court accepts Chapterhouse's objections to these exhibits, Games Workshop similarly objects to Chapterhouse exhibits so-designated.

**Error! No property name supplied.**

2. Have you, or a relative or close friend, ever collected and/or painted figurines?

3. Have you, or a relative or close friend, ever attended any gaming conventions?

4. Have you ever heard of Games Workshop, Warhammer, Warhammer 40,000, or Warhammer 40K?

5. Have you ever read a book published under the "Black Library" label?

6. Have you ever heard of Chapterhouse Studios?

7. Do you have any knowledge about or experience with copyrights or trademarks, including applying for a copyright registration or a trademark registration?

8. Have you ever been involved in the creation or selection of a trademark?

9. Have you ever been involved in the creation of an artistic work (book, painting, sculptor, etc) that was sold to others?

10. Have you, or a relative or close friend, ever made a claim of copyright infringement, trademark infringement, or patent infringement?

11. Have you ever considered filing for a copyright, trademark registration, or patent registration but decided not to?

12. Have you, or a relative or close friend, ever been accused of infringing another's copyright, trademark, or patent?

13. Have you, a relative or close friend, ever worked in sales or marketing?

14. Have you, a relative or close friend, ever been a member of a union?

15. Have you, a relative or close friend worked for commission, either currently or as part of a previous job?

**8. Proposed Jury Instructions**

**1. FUNCTIONS OF THE COURT AND THE JURY**

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law. You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone. Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them. Perform these duties fairly and impartially. Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

1diam-7 Modern Federal Jury Instructions-Civil 1.01; Federal Civil Jury Instructions of the Seventh Circuit, §1.01 (2009 rev.)

## 2. EVIDENCE

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations. A stipulation is an agreement between both sides that certain facts are true. [If necessary: I have taken judicial notice of certain facts. You must accept those facts as true.]

During the trial, certain testimony was presented to you by the reading of depositions or by the playing of video. You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

1diam-7 Modern Federal Jury Instructions-Civil 1.04;
Federal Civil Jury Instructions of the Seventh Circuit, §1.04 (2009 rev.)
1diam-7 Modern Federal Jury Instructions-Civil 1.05;
Federal Civil Jury Instructions of the Seventh Circuit, §1.05 (2009 rev.)
1diam-7 Modern Federal Jury Instructions-Civil 1.06;
Federal Civil Jury Instructions of the Seventh Circuit, §1.06 (2009 rev.)

## 3. NOTE-TAKING

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

1diam-7 Modern Federal Jury Instructions-Civil 1.07; Federal Civil Jury Instructions of the Seventh Circuit, §1.07 (2009 rev.)

**4.     CONSIDERATION OF ALL EVIDENCE REGARDLESS OF WHO PRODUCED**

In determining whether any fact has been proved, you should consider all of the evidence bearing on the question regardless of who introduced it.

Federal Civil Jury Instructions of the Seventh Circuit, §1.08 (2009 rev.)

**5.     WEIGHING THE EVIDENCE**

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.  In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference."  A jury is allowed to make reasonable inferences.  Any inference you make must be reasonable and must be based on the evidence in the case .

1diam-7 Modern Federal Jury Instructions-Civil 1.11; Federal Civil Jury Instructions of the Seventh Circuit, §1.11 (2009 rev.)

**6.     DEFINITION OF "DIRECT" AND "CIRCUMSTANTIAL" EVIDENCE**

You may have heard the phrases "direct evidence" and "circumstantial evidence."  Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact.  Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a the witness who says, "I was outside a minute ago and I saw it raining."  Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

1diam-7 Modern Federal Jury Instructions-Civil 1.12; Federal Civil Jury Instructions of the Seventh Circuit, §1.12 (2009 rev.)

**7.     TESTIMONY OF WITNESSES (DECIDING WHAT TO BELIEVE)**

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all.  You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, you may consider, among other things:

–the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

–the witness's memory;

–any interest, bias, or prejudice the witness may have;

–the witness's intelligence;

–the manner of the witness while testifying;

–and the reasonableness of the witness's testimony in light of all the evidence in the case.

1diam-7 Modern Federal Jury Instructions-Civil 1.13; Federal Civil Jury Instructions of the Seventh Circuit, §1.13 (2009 rev.)

## 8. NUMBER OF WITNESSES

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

Federal Civil Jury Instructions of the Seventh Circuit, §1.17 (2009 rev.); Federal Civil Jury Instructions of the Seventh Circuit, §1.17 (2009 rev.)

## 9. ABSENCE OF EVIDENCE

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

1diam-7 Modern Federal Jury Instructions-Civil 1.18; Federal Civil Jury Instructions of the Seventh Circuit, §1.18 (2009 rev.)

## 10. EXPERT WITNESSES

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

1diam-7 Modern Federal Jury Instructions-Civil 1.21; Federal Civil Jury Instructions of the Seventh Circuit, §1.21 (2009 rev.)

**11.     BURDEN OF PROOF**

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

When I say that a particular party must prove something by "clear and convincing evidence," this is what I mean:  When you have considered all of the evidence, you are convinced that it is highly probable that it is true.  This is a higher burden of proof than "more probably true than not true." Clear and convincing evidence must persuade you that it is "highly probably true."

Unless I instruct you otherwise, Games Workshop bears the burden of proving its claims by a preponderance of the evidence and Chapterhouse bears the burden of proving its defenses by a preponderance of the evidence

1diam-7 Modern Federal Jury Instructions-Civil 1.27;
Federal Civil Jury Instructions of the Seventh Circuit, §1.27 (2009 rev.)
1diam-7 Modern Federal Jury Instructions-Civil 1.28;
Federal Civil Jury Instructions of the Seventh Circuit, §1.28 (2009 rev.)

## COUNTS

### Count I – Copyright Infringement

### 12.     COPYRIGHT—ALLEGATION DEFINED [DISPUTED]

#### *Games Workshop's Proposed Jury Instruction*

Plaintiff claims that Defendant has infringed Plaintiff's copyright in a series books, magazines, computer games, sculptural figures that form part of the fictional world of Warhammer 40,000.  Plaintiff alleges that defendant has copied characters, elements of characters, weapons and accessories depicted in its books and shown by its figurines and that it markets these products only to fans of Warhammer 40,000, such that all of the products it sells are designed to be immediately recognizable to fans of Warhammer 40,000.  Moreover, Plaintiff contends that Defendant has collected all of these products together on its website and that the website therefore is an infringement.

1diam-7 Modern Federal Jury Instructions-Civil 12.1.1

#### Chapterhouse objects to Games Workshop's proposed jury instruction as follows:

Games Workshop's proposed instruction improperly conflates its separate copyright claims, will be confusing to a jury, and is prejudicial to Chapterhouse.  The jury will be unable to properly analyze Games Workshop's claims unless Games Workshop separately identifies its copyrights at issue.  Games Workshop's proposed reference to its claim concerning the Chapterhouse website is confusing, redundant, and misleadingly implies that this claim is a special type of copyright claim.  Games Workshop's theory of so-called "infringement in the aggregate" has no basis in statute or case law, and appears to be based on a misreading of *Castle Rock Entm't. v. Carol Publg. Group, Inc.*, 150 F.3d 132 (2d Cir. 1998).  Games Workshop's proposed instruction is also argumentative and introduces factors that are irrelevant to its copyright claims.  Chapterhouse believes that the best way to identify Games Workshop's copyright claims is to use a jury form that identifies the allegedly infringed works that survive summary judgment, as proposed below.

#### *Chapterhouse's Proposed Jury Instruction*

Plaintiff claims that Defendant has infringed Plaintiff's copyrights in: [insert number of remaining works from Plaintiff's Second Rev. Copyright Claim Chart that survive summary judgment] works that are individually set forth on the jury verdict form that I will provide to you, by copying unique, original elements from those works.

Federal Civil Jury Instructions of the Seventh Circuit, §12.1.1 (2009 rev.); SAC ¶¶ 43, 49.

#### Games Workshop objects to Chapterhouse's proposed jury instruction as follows:

One of Games Workshop's principal contentions in this case is that many of Chapterhouse's works constitute infringement in the aggregate. This includes the collection of infringing products and descriptions thereof on its website and also includes ranges of products, such as its extensive series of shoulder pad designs appropriating the entire Roman numeral system, logo designs and character names of Games Workshop's Tactical Space Marines, Assault Space Marines and Devastator Space Marines. See, e.g., *Castle Rock Entm't. v. Carol Publg. Group, Inc.*, 955 F. Supp. 2d 260 (S.D.N.Y. 1997), *aff'd,* 150 F.3d 132 (2d Cir. 1998). Chapterhouse's proposed instruction does not permit assessment of this aspect of its overall infringement.

Moreover, Chapterhouse's concern that the jury separately address the individual works can easily be accommodated with Games Workshop's concern that the jury assess patterns of aggregated infringement by use of a special verdict form.

## 13. COPYRIGHT INFRINGEMENT [AGREED]

To succeed on each of its claim, Plaintiff must prove the following things for each work it claims:

1. The particular work in question is the subject of a valid copyright;

2. Plaintiff owns the copyright; and

3. Defendant copied protected expression from the work.

I will explain what these terms mean.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must find for Plaintiff, with respect to that claim. However, if you find that Plaintiff did not prove each of these things, then you must find for Defendant, with respect to that claim.

1diam-7 Modern Federal Jury Instructions-Civil 12.2.1

## 14. VALIDITY [AGREED]

To be eligible for copyright protection, a work must be original and in a form that can be seen, heard, reproduced, or communicated.

A work is original if it was created independently, as opposed to being copied from another work. It must contain at least some minimal degree of creativity. The work need not be completely new. A work can be original even if it incorporates elements that are not original to the author. However, only the original elements added by the author are protected by copyright.

1diam-7 Modern Federal Jury Instructions-Civil 12.3.1

15.     **OWNERSHIP [DISPUTED]**

***Games Workshop's Proposed Jury Instruction***

Plaintiff owns a copyright in characters, paintings, drawings and three-dimensional figures, if its employees created the work; if it created the work jointly with other authors, if it received a written transfer of copyright in the work from someone else who owned copyright in the work or if a transfer should be implied based on the circumstances of the creation of the work.  I will explain more specifically now what this means.

1diam-7 Modern Federal Jury Instructions-Civil 12.4.1

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Chapterhouse believes that, as in the Seventh Circuit Pattern Jury Instructions, a single, integrated instruction on ownership is appropriate.  Chapterhouse's proposed instruction is closely modeled on the Federal Civil Jury Instructions of the Seventh Circuit, as modified to reflect English copyright law.  Games Workshop's proposed instruction is improper and irrelevant to the extent Games Workshop procured assignments for the works at issue after the beginning of litigation, because a plaintiff does not have standing to sue for works it did not own at the inception of a lawsuit.  *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774 (Fed. Cir. 1996) (plaintiff's *nunc pro tunc* intellectual property assignment was "not sufficient to confer standing on [plaintiff] retroactively"); *Triple Tee Golf, Inc. v. Nike, Inc.*, 2007 WL 4260489 (N.D. Tex. Aug. 24, 2007), *aff'd on appeal*, 281 Fed. Appx. 368 (5th Cir. 2008) ("[A]n [intellectual property] assignment made over one-and-a-half years after [the] action was instituted cannot retroactively solve the standing problem that existed at the time the action was filed").

Games Workshop's specification of four different kinds of copyrightable works is confusing, redundant, and irrelevant.  Games Workshop's proposed instruction improperly conflates the separate works Games Workshop claims, will be confusing to a jury, and is prejudicial to Chapterhouse.  As a matter of governing English law, it is not possible for Games Workshop to have "created [a] work" jointly or otherwise, because English copyright law does not provide for the legal fiction that a corporation can be the "author" of a work made for hire. UK Copyright, Designs, and Patents Act 1988, §9 ("In this Part 'author', in relation to a work, means the person who creates it").  It is confusing, redundant, and unnecessary to offer multiple, separate definitions of the different ways a plaintiff can come to own a copyright.  Games Workshop's proposed instruction does not define any of the terms of art or specialized doctrines on which it relies (including at least employee, joint work, and equitable assignment), and thereby invites jury confusion concerning such terms and concepts, by separating them into multiple, discrete instructions.

Games Workshop's characterization of its so-called "confirmatory assignment" documents is irrelevant. The documents are based on separate consideration and are assignments, not acknowledgments of previously-existing contracts. Moreover, Games Workshop has

produced numerous copyright assignment documents in various forms, not all of which even purport to be "confirmatory assignments."

### *Chapterhouse's Proposed Jury Instruction*

For each work Plaintiff claims, Plaintiff owns the copyright if:

* The particular work was created by Plaintiff's employee, working within the scope of his or her employment;

* Plaintiff received a written transfer of copyright from someone else who owned it, prior to filing this lawsuit; or

* The particular work was a joint work created in part by one or more of Plaintiff's employees working within the scope of his or her employment. A work is a "joint work" if it was created by two or more authors working in collaboration, each of whom has contributed significant creative expression, so that the contribution of each author is not distinct from the other. To own a copyright in a joint work, a person must contribute original expression to the work. A person does not become a co-author merely by instructing another person to carry out some work. A person does not become a co-author merely by providing ideas or material for another to work with. Plaintiff owns a copyright interest in a work if it is a joint work, and either: one of Plaintiff's employees, working within the scope of his employment, was a joint author of the work; or Plaintiff obtained the copyright from one of the joint authors.

English copyright law determines whether Plaintiff owns a particular work. The instruction I have just read to you reflects English copyright law.

However, under English law, mass-produced toy miniature figures like Plaintiff's are not protected by copyright. If you determine that one of Defendant's products is copied from one of Plaintiff's miniature figures, you must find that the product does not infringe Plaintiff's copyright.

Federal Civil Jury Instructions of the Seventh Circuit, §12.4.1 (2009 rev.); UK Copyright, Designs, and Patents Act 1988, §§10 (joint authorship), 11 (first ownership of copyright), 90(3) (assignment); Bently Report ¶¶ 23-38 (unprotectability of miniature figures); 95-102 (co-authorship), 122-128 (transfers of ownership); *Cala Homes (South) Ltd. v. Alfred McAlpine Homes East Ltd.* [1995] F.S.R. 818; ; *Lucasfilm Ltd. v. Ainsworth* [2010] F.S.R. 10 at ¶ 82 ("mass produced . . . toys" not protectable under the Copyright Act)..

**Games Workshop objects to Chapterhouse's proposed jury instruction as follows:**

Games Workshop objects that Chapterhouse's proposed instruction is needlessly confusing, Games Workshop first objects that Chapterhouse lacks standing to challenge Games Workshop's ownership of copyright. *Billy-Bob Teeth v. Novelty, Inc.*, 329 F.3d 586 (7th Cir. 2003) (Where there is no dispute between the copyright owner and the transferee about the status of the copyright "it would be unusual and unwarranted to permit a third-party infringer to invoke

section 204(a) to avoid suit for copyright infringement").  Moreover, there is no issue in this case of Games Workshop acquiring works by assignment from third parties.  At most it has obtained confirmatory assignments from employees who never contested Games Workshop's ownership and there is no law that under such circumstances an assignment must be obtained prior to litigation.  This part of Chapterhouse's instruction thus is needlessly confusing.  The two cases cited by Chapterhouse involve acquisitions of patent rights by parties that had been total strangers to the title.

To the extent there are any factual issues regarding ownership, Chapterhouse's proposed instruction does not properly reflect applicable English law on the subject (as Games Workshop explains in connection with the following three proposed instructions).  Because the concepts are sufficiently distinct, separate instructions are proper on each of the issues of who is an employee under English law; what is a joint work under English law and when is an equitable assignment appropriate.

Chapterhouse's proposed instruction is also incorrect in suggesting that English law applies to copyrightability.  The belated suggestion in the report of Chapterhouse's rebuttal expert on English law that copyright in some unspecified number of sculptural works might not be fully enforceable has no relevance under U.S. law.  Chapterhouse cites no authorities and offers no genuine argument why English law on copyrightability has any bearing here.  Given the plain language of Section 104 of the Copyright Act following U.S. adherence to the Berne Convention, plainly it has none.  *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985); *Sadhu Singh Hamad Trust v. Ajit Newspaper Advert., Marketing and Comm'ns, Inc.*, 503 F. Supp. 2d 577, 584 (E.D.N.Y. 2007); *Bridgeman Art Library v. Corel Corp.*, 36 F. Supp. 2d 191, 194-95 (S.D.N.Y. 1999); 17 U.S.C. § 104.  Moreover, the expert, Bently merely opined that "the *duration* of its copyright … was effectively limited under Section 52 of the [Copyright Designs and Patents Act] to 15 years unless the toys were regarded themselves as sculptures." (Undisputed Fact # 83) (emphasis added).  The fact that certain copyrights may be limited in English jurisprudence has no relevance given the need to apply U.S. law to enforcement remedies here.  Bently also conceded that English law has likely been supplanted by European law under a 2002 directive. (*Id.*).  In raising a question about the extent of Plaintiff's right to enforce its copyright under English law, the expert never even looked at a single Games Workshop miniature.  The issue is also of almost no relevance, and hence would be confusing to jurors, as virtually all of Chapterhouse's copying is based on images in Games Workshop's books, precisely because Chapterhouse's business model is to design its own sculptural works to appeal to Warhammer 40K fans where it perceives holes in Games Workshop's product line of miniatures and can nonetheless exploit the fans' knowledge of the underlying artwork.  Games Workshop also intends to file a motion to strike Chapterhouse's expert report in relevant part.

## 16.     OWNERSHIP - WORKS CREATED BY EMPLOYEES [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

Plaintiff owns a copyright in the characters, paintings, drawings and three-dimensional figures at issue if the work was prepared by Plaintiff's individuals working for the company

where the work was integral to the company's business or, rather, whether the work was not integrated in the business.

Factors to consider include (i) who has control over the individual's work; (ii) whether the individual provides his or her own equipment; (iii) whether the individual hires his or her own helpers; (iv) how much financial risk the individual takes on; (v) how responsible is the individual for investing in and managing the work; (vii) what opportunities does the individual have to profit from the work; (viii) are taxes or other employment benefits provided to the individual; (ix) whether the work is within the scope of the individual's duties, and (x) for whose benefit is the work done.

Michael Bloch Report ¶¶ 31(a), 40-59

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Games Workshop's proposed instruction concerns legal analysis of the employment status of individuals under English law, not ownership of copyrights. The application of foreign law is a question of law, not properly submitted to a jury. Furthermore, Games Workshop's proposed instruction is redundant, needlessly complex, and confusing. Chapterhouse believes that, as in the Seventh Circuit Pattern Jury Instructions, a single, integrated instruction on ownership is appropriate. Chapterhouse's proposed instruction (above) is closely modeled on the Federal Civil Jury Instructions of the Seventh Circuit, as modified to reflect English copyright law.

In particular, Games Workshop's specification of four different kinds of copyrightable works is confusing, redundant, and irrelevant. Games Workshop's proposed instruction improperly conflates the separate works Games Workshop claims, will be confusing to a jury, and is prejudicial to Chapterhouse. Games Workshop's proposed instruction misstates English law. Expert Report of Lionel Bently ("Bently Report") ¶¶ 62-79 (determining whether an individual is an employee requires a multi-factor, fact-based inquiry).

**Games Workshop responds to Chapterhouse's objection to the proposed jury instruction as follows:**

Review of the reports of Michael Bloch §§ 31(a), 40-59 and Lionel Bently reveals that the two experts agree almost entirely on the multi-factor test of employment that should be applied. Bently's objection is directed to Bloch's use of the summary phrase "integral". However, that summary of the factors is drawn from *Stevenson, Jordan and Harrison v MacDonald and Evans* (1952) 69 RPC, a case before the House of Lords, in which the court stated that "One feature which seems to run through the instances is that, under a contract for service [i.e., an employment contract] a man is employed as part of the business, and his work is done as an integral part of the business; whereas under a contract for services, his work, although done for the business, is not integrated into it, but is only accessory to it." Bloch Report § 46.

**Chapterhouse Does Not Propose a Jury Instruction on Ownership – Works Created by Employees Under English Law**

**17.    OWNERSHIP - JOINT OWNERSHIP [DISPUTED]**

*__Games Workshop's Proposed Jury Instruction__*

Plaintiff owns copyright in the characters, paintings, drawings and three-dimensional figures at issue where it is a joint owner of the work, that is, if  (i) a work has been created by plaintiff in collaboration with another individual author; (ii) each author has contributed significant creative input; and (iii) the contribution from each author is not distinct from the other.

Michael Bloch Report §§ 31(b), 60-65

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Games Workshop's proposed instruction is redundant, needlessly complex, and confusing.  Chapterhouse believes that, as in the Seventh Circuit Pattern Jury Instructions, a single, integrated instruction on ownership is appropriate.  Chapterhouse's proposed instruction (above) is closely modeled on the Federal Civil Jury Instructions of the Seventh Circuit, as modified to reflect English copyright law.

In particular, Games Workshop's specification of four different kinds of copyrightable works is confusing, redundant, and irrelevant.  Games Workshop's proposed instruction improperly conflates the separate works Games Workshop claims, will be confusing to a jury, and is prejudicial to Chapterhouse.  Games Workshop's proposed instruction misstates English law. Expert Report of Lionel Bently ("Bently Report") ¶¶ 95-112 (detailing requirements for finding co-ownership of a  work, derived from statute and case law).

**Games Workshop responds to Chapterhouse's objection to the proposed jury instruction as follows:**

Review of the reports of Michael Bloch §§ 31(b), 60-65 and Lionel Bently reveals that the two experts agree almost entirely on the test of what is a joint work.  Chapterhouse has not identified any respect in which Games Workshop's proposed instruction on what is a joint work is inaccurate.

**Chapterhouse Does Not Propose a Jury Instruction on Ownership – Joint Ownership Under English Law**

**18.    OWNERSHIP – EQUITABLE ASSIGNMENT [DISPUTED]**

*__Games Workshop's Proposed Jury Instruction__*

Plaintiff owns copyright in the characters, paintings, drawings and three-dimensional figures at issue that it may have commissioned from individual authors by virtue of equitable or implied assignment where: it is clear that the party commissioning the work not only needs to be

able to use the individual copy, but also needs be able to enforce the copyright by preventing other parties from using it. Factors to consider include: (i) the purpose in commissioning the work is for the plaintiff to make and sell multiple copies of the work on the market for which the work was created free from the sale of copies in competition with the plaintiff by the contractor or third parties; (ii) whether the contractor creates the work which is derivative from a pre-existing work of the plaintiff; and (iii) whether the contractor is engaged as part of a team with employees of the plaintiff to produce a composite or joint work.

Michael Bloch Report, §§ 31(c), 66-97

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Games Workshop's proposed instruction is redundant, needlessly complex, and confusing. Chapterhouse believes that, as in the Seventh Circuit Pattern Jury Instructions, a single, integrated instruction on ownership is appropriate. Chapterhouse's proposed instruction (above) is closely modeled on the Federal Civil Jury Instructions of the Seventh Circuit, as modified to reflect English copyright law.

In particular, Games Workshop's proposed instruction on *equitable* assignment is improper, because a jury does not properly decide questions of equity. Furthermore, because equitable assignment concerns contract interpretation, it is a matter of law and not a question of fact. *Citadel Group Ltd. v. Washington Regional Medical Ctr.*, 692 F.3d 580, 587 (7th Cir. 2012) ("When the material facts are not in dispute, the existence and interpretation of a contract are questions of law . . ."). The proposed instruction also misstates English law. Expert Report of Lionel Bently ("Bently Report") ¶¶ 129-143 (multi-factor, fact-intensive inquiry required before court finds equitable assignment).

Games Workshop's specification of four different kinds of copyrightable works is confusing, redundant, and irrelevant. Games Workshop's proposed instruction improperly conflates the separate works Games Workshop claims, will be confusing to a jury, and is prejudicial to Chapterhouse.

**If the Court decides a jury instruction concerning "equitable assignment" is appropriate, Chapterhouse proposes the following instruction:**

In exceptional circumstances, English courts may determine that even in the absence of an agreement about ownership of the copyright, the court can find the Plaintiff has certain rights to the work.

The implication of rights is intended to give effect to what both the plaintiff and the author intended at the date of the contract. If you find that Plaintiff has shown that such intent existed with respect to a particular work, you may find that the Plaintiff has certain rights to that work. However, you are not required to do so.

The rights that are to be implied are the minimum rights that are necessary to make the contract with the author effective. For instance, if the court finds that it is necessary to imply

**Error! No property name supplied.**

some grant of rights to a work, and the need could be satisfied by the grant of a license or an assignment of the copyright, the court will grant a license only.

Bently Report ¶¶ 129-143; *BP Refinery (Westernport) Pty Ltd v. The President, Councillors and Ratepayers of the Shire of Hastings* [1978] 52 A.L.J.R. 20 at 26; *Clearsprings Management Ltd. v. Businesslinx Ltd.* [2006] F.S.R. (3) 21.

**Games Workshop responds to Chapterhouse's objection to the proposed jury instruction as follows:**

To the extent the Court rules on any issue of equitable assignment under English law, Games Workshop agrees a jury instruction is not necessary. However, because counsel for the parties were unable to identify any precedent how whether an issue of English law should be decided by the judge or jury, Games Workshop offers this proposed instruction.

Review of the reports of Michael Bloch §§ 31(c), 66-97 and Lionel Bently reveals that the two experts agree almost entirely on the test when an equitable assignment should be found. However, for political reasons (set forth in a public manifesto authored by Bently for a group called the Creators' Rights Alliance) he believes that the well-established doctrine should be eliminated because it is sometimes used to the disadvantage of individual authors. See "Between a Rock and a Hard Place: The Problems Facing Freelance Creators in the UK Media Market-place" p. 94 (accusing courts of "ludicrously" inferring equitable assignments to the disadvantage of authors). Similarly, Bently's treatise (recognizing the frequency with which the docrine is applied) argues that "the courts, by repeatedly responding to their sense that rights should follow the money, …undermine the goals that the statutory scheme aims to achieve." L. Bently and B Sherman, Intellectual Property Law (Oxford Univ. Press) p 133. Games Workshop contemplates a motion in limine or Daubert motion to strike this portion of the Bently Report. At any rate, Bently's concerns for individual authors, no matter how well placed, are inapplicable here where the genesis of Warhammer 40,000 was all within Games Workshop and freelancers, when used are only asked to assist on derivative works based on prior original Games Worshop creations.

Chapterhouse's proposed instruction is inherently misleading by including what the jury would likely view as a quantitative element regarding the English court's application of the well-established doctrine. Just as injunctions are deemed extraordinary remedies yet are granted routinely, a jury can not evaluate what it means for a doctrine to be deemed exceptional. Indeed, one of the seminal cases on equitable assignment, *Robin Ray v Classic FM plc* [1998] FSR 620. cited by both experts, notes that "*There has been cited to me a considerable number of authorities where a copyright, brought into existence by a person ("the contractor") pursuant to a contract for services with another ("the client"), has been held to belong in equity to the client.*" The doctrine is widely applied. Moreover, the gratuitous statement that the jury is not required to find an equitable assignment is improper.

In fact, in two cases that are virtually identical to the facts here, the English courts did apply the doctrine. In *Lucasfilms Ltd v Ainsworth* [2009] FSR 2, finding that an individual's contribution of a sculptural work to the movie Star Wars could only have been understood as

being for the benefit of the film producers, not his individual account, and *R Griggs Group Ltd v Evans* (No.1) [2005] F.S.R. 31, where an individual was hired to create a logo for Doc Martens footwear whith the obvious expectation it would be used only by the company. Bloch Report, §§ 84-92 and are not disputed by Bently.

Finally, a jury will not likely understand what is meant by the "minimum rights that are necessary to make the contract with the author effective" particularly where the only possible issues concern whether Games Workshop has exclusive rights in works that can only be used as part of Warhammer 40,000,

## 19.    OWNERSHIP — DERIVATIVE WORK [DISPUTED]

### *Chapterhouse's Proposed Jury Instruction*

Some of the works Plaintiff claims are works that were adapted from previously existing works. This type of work is called a derivative work. Plaintiff owns a copyright only in the original expression that was added to the earlier work. Plaintiff does not own a copyright in the expression taken from the earlier work unless Plaintiff also owns a copyright for the earlier work. The earlier work may include work that is protected by copyright and used with the copyright owner's permission. The earlier work also may include work that is in the public domain.

Federal Civil Jury Instructions of the Seventh Circuit, §12.4.4 (2009 rev.)

**Games Workshop objects to Chapterhouse's proposed jury instruction as follows:**

Plaintiff objects to the inclusion of an instruction on derivative works. Defendant has not raised any issue of derivative rights in this case. Where, as here, the author of the derivative work also has a copyright on the underlying work, there is no need to protect the public domain or the author of the underlying work, as the entire work is that of the single author . *Nielsen Co., LLC v. Truck Ads, LLC*, No. 08 C 6446, 2011 U.S. Dist. LEXIS 96412, at *44-45 (N.D. Ill. Aug. 24, 2011). Accordingly, this instruction can only serve to confuse the jury. Moreover, Defendant's claim that certain aspects of Plaintiff's works are pre-existing is already covered in proposed instruction 15 – Validity. Repeating that instruction would only serve to unduly emphasis the issue.

**Chapterhouse Response to Games Workshop's Objection:**

Games Workshop's objection improperly implies that it is a defendant's burden to "raise an[] issue of derivative rights." To the contrary, it is plaintiff's burden to prove that it owns rights in any underlying works. Games Workshop's employees concede that at least some of Games Workshop's alleged works are derivative works. Games Workshop's objection that it owns copyrights to the underlying works lacks foundation and is irrelevant: it is Games Workshop's burden to prove that it owns valid copyrights. The objection is also irrelevant to the extent Games Workshop has not alleged infringement of the supposed underlying work.

## Games Workshop Does Not Have A Jury Instruction on Ownership – Derivative Work

**20.    COPYING [DISPUTED]**

*__Games Workshop's Proposed Jury Instruction__*

As I stated, Plaintiff must prove that Defendant copied protected expression in each of the works or collection of works identified.

In addition to direct evidence of copying, such as admissions by the defendant or documentary proof of copying, you may infer that Defendant copied from Plaintiff's work if Defendant had a reasonable opportunity to view it before creating his own work and the two works are so similar that a reasonable person would conclude Defendant took protected expression from Plaintiff's work.

You may infer that Defendant copied Plaintiff's work if the similarities between the two works can be explained only by copying, rather than by coincidence; independent creation; or the existence of a common source for both works.

In determining whether Plaintiff has proved copying, you may consider evidence that Defendant's work was created independently of Plaintiff's copyrighted work.

1diam-7 Modern Federal Jury Instructions-Civil 12.5.1

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Games Workshop's proposed instruction contains improper argument. Games Workshop's proposed instruction concerning "[a] collection of works" improperly conflates its separate copyright claims, will be confusing to a jury, and is prejudicial to Chapterhouse. Games Workshop's proposed instruction concerning direct evidence of copying is argumentative, assumes and implies the existence of such evidence, and is prejudicial to Chapterhouse.

**Games Workshop responds to Chapterhouse's objection to the proposed jury instruction as follows:**

With the exception of the reference to the copying of a "collection of works" and the phrase "In addition to direct evidence of copying" Games Workshop's proposed instructions directly track the model instructions.

The pattern of copying here is however very telling evidence that the jury should consider. Chapterhouse's proposed instruction also prevents the jury from considering one of Games Workshop's principal contentions in this case is that many of Chapterhouse's works constitute infringement in the aggregate. This includes the collection of infringing products and descriptions thereof on its website and also includes ranges of products, such as its extensive series of shoulder pad designs appropriating the entire Roman numeral system, logo designs and character names of Games Workshop's Tactical Space Marines, Assault Space Marines and Devastator Space Marines. *See, e.g., Castle Rock Entm't. v. Carol Publg. Group, Inc.*, 955 F.

**Error! No property name supplied.**

Supp. 2d 260 (S.D.N.Y. 1997), *aff'd,* 150 F.3d 132 (2d Cir. 1998). Chapterhouse's proposed instruction does not permit assessment of this aspect of its overall infringement.

Games Workshop deems appropriate the mention of direct evidence of copying given the extensive evidence of such copying. Games workshop's proposed instruction simply tracks the Chapterhouse has not explained in what sense Games Workshop's proposed instruction is argumentative.

### *Chapterhouse's Proposed Jury Instruction*

As I stated, Plaintiff must prove that Defendant copied protected expression in each of the works alleged to be infringed.

You may infer that Defendant copied from Plaintiff's work if Defendant had a reasonable opportunity to view it before creating his own work and the two works are so similar that a reasonable person would conclude Defendant took protected expression from Plaintiff's work.

You may infer that Defendant copied Plaintiff's work if the similarities between the two works can be explained only by copying, rather than by coincidence, independent creation, or the existence of a common source for both works.

In determining whether Plaintiff has proved copying, you may consider evidence that Defendant's work was created independently of Plaintiff's copyrighted work.

A finding of copying does not, by itself, mean that Defendant infringed Plaintiff's copyright. Even if you find that Defendant copied some aspect of Plaintiff's work, in order to find that Defendant infringed Plaintiff's copyright you must also find that the copying was of protected expression. You must also find that Defendant's product is substantially similar to Plaintiff's work. I will explain what those terms mean.

Federal Civil Jury Instructions of the Seventh Circuit, §12.5.1 (2009 rev.); *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011-12 (7th Cir. 2005); *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 506 n.1, 510 (7th Cir. 1994); *Bryant v. Gordon*, 483 F. Supp. 2d 605, 617 (N.D. Ill. 2007).

**Games Workshop objects to Chapterhouse's proposed jury instruction as follows:**

In addition to the reasons stated in Games Workshop's response to Chapterhouse's objection, Plaintiff objects to paragraph 5 of Defendant's proposed jury instruction, as it is inconsistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 12.5.1. The issues raised in this paragraph are already covered in other proposed instructions. Repeating them here places undue emphasis on them. Additionally, Defendant improperly asserts that a finding that Defendant improperly copied protected expression of Plaintiff is insufficient for a finding of infringement, absent an additional showing of substantial similarity. Where, as here, there is direct evidence of copying, there need not be any additional showing of substantial similarity. As the *Bryant* case cited by Defendant makes clear, copying may be inferred through

defendant's access to the work and substantial similarity when direct evidence of copying is unavailable. *Bryant*, 483 F. Supp. 2d at 617 ("**Direct evidence of copying is typically unavailable**, but 'copyright infringement may be inferred where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work.'") (emphasis added).

## 21. COPYING—DEFINITION OF "PROTECTED EXPRESSION" [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

"Protected expression" means expression in Plaintiff's work that was created independently, meaning that it was not itself copied from another work, and involving some creativity.

The minimal originality required for copyright protection includes original combinations of elements even if some or all of the elements are not themselves original and such originality is not assessed by decomposing original combinations into constituent elements.

Ownership of a certificate of copyright obtained within five years of first publication creates a presumption of its validity, shifting the burden to defendant to prove otherwise.

1diam-7 Modern Federal Jury Instructions-Civil 12.5.2; 17 U.S.C. § 410(c) *JCW Investments, Inc. v. Novelty Inc.*, 482 F.3d 910, 915 (7th Cir. 2007); *Bucklew v Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 926 (7th Cir. 2003).

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Games Workshop's proposed instruction contains improper argument. Games Workshop's proposed instruction concerning originality is contrary to established 7th Circuit case law, under which the finder of fact "must take into account that the copyright laws preclude appropriation of only those elements of the work that are protected by the copyright." *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982).

Games Workshop's proposed instruction concerning copyright registration and the presumption of validity is irrelevant to the definition of "protected expression" and falsely implies that Chapterhouse bears a burden to prove Games Workshop's works contain protected expression.

### *Chapterhouse's Proposed Jury Instruction*

"Protected expression" means expression in Plaintiff's work that was created independently, involving some creativity. Copyright law protects only the original expression in the work. This includes the way that ideas or concepts are expressed in the work. It does not include the ideas or concepts themselves. For example, the idea or concept of a secret agent who saves the world from impending disaster is not protected by copyright; but a particular expression of that idea – such as a James Bond movie – may be protected by copyright.

Protected expression does not include settings, poses, or characters that are indispensable or at least standard in the treatment of a particular subject.

The design of a useful or functional item is considered protected expression only if it includes protected pictorial, graphic, or sculptural features that can be identified separately from the item itself. The feature must be capable of existing independently of the item's useful or functional aspects.

Federal Civil Jury Instructions of the Seventh Circuit, §12.5.2 (2009 rev.).

**Games Workshop's Objection Chapterhouse's proposed jury instruction as follows:**

Chapterhouse's proposed instruction includes references to defenses that are not in issue in the case, in particular scenes a faire and functionality. No such defenses are included among the 23 affirmative defenses in Chapterhouse's answer or in its responses to discovery. Nor is there any evidence that either defense is relevant here, thus rendering the instruction confusing to the jury. Moreover, although Games Workshop concedes that some individual elements of some of its designs are not wholly original to it (such as Roman numerals or certain cross designs) the combination of such elements with other original elements or even the combination of such elements with other individual elements from the public domain can be copyrightable. *Bucklew v Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 926 (7th Cir. 2003); *JCW Investments Inc. v. Novelty Inc.*, 482 F3d 910, 917 (7th Cir. 2007); *Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982)

## 22. PROOF OF UNLAWFUL COPYING OF INDIVIDUAL WORKS [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

To prove that defendant has infringed its rights in any individual work, it must show that the accused work is so substantially similar to the plaintiff's work, meaning that that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value. Plaintiff is not required to show that the works are identical, and the test does not involve analytic dissection of the works into their constituent elements but rather whether the accused work has captured the 'total concept and feel' of the copyrighted work in the eyes of the ordinary observer.

*Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982).

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Games Workshop's proposed instruction is redundant, confusing, and unnecessary in light of the proposed instructions on "copying" and "protectable expression." The proposed instruction also misstates the Seventh Circuit test for copyright infringement. *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011-12 (7th Cir. 2005) (emphasizing requirement that works be *similar*); *Atari*, 672 F. 2d 607, 614 (7th Cir. 1982) (same); *id.* (emphasizing need to distinguish unprotectable from protectable forms of expression); *Sassafras Enters., Inc. v.*

*Roshco, Inc.*, 889 F. Supp. 343, 348 (N.D. Ill 1995) (limitations on copyright protection "define the universe for . . . comparison"). The proposed instruction is also improperly argumentative, including in its proposed title ("Proof of Unlawful Copying").

**Chapterhouse Does Not Propose a Jury Instruction on Proof of Unlawful Copying of Individual Works**

**23.    SUBSTANTIAL SIMILARITY  [DISPUTED]**

*Chapterhouse's Proposed Jury Instruction*

To prove that Defendant has infringed Plaintiff's copyright in any of Plaintiff's individual works, Plaintiff must show that the accused work is so similar to the Plaintiff's work that an ordinary reasonable person would conclude that the Defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value.

You can determine if Defendant's product is similar to Plaintiff's work by comparing them side-by-side.  However, only the protectable elements of Plaintiff's work are relevant to such a comparison.  Similarity to elements of Plaintiff's work that are in the public domain, or that were derived from works created by others, does not by itself make the works substantially similar.

*Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011-12 (7th Cir. 2005); *Bryant v. Gordon*, 483 F. Supp. 2d 605, 617 (N.D. Ill. 2007); *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 506 n.1, 510 (7th Cir. 1994); *Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982).

**Games Workshop's Objection Chapterhouse's proposed jury instruction as follows:**

Chapterhouse's proposed instruction improperly invites the jury to apply an abstraction and filtration test (typically used only in software infringement cases) that is not appropriate to consumer products and in so doing gives undue emphasis to defenses that are not in issue in the case, in particular scenes a faire, merger and functionality.  No such defenses are included among the 23 affirmative defenses in Chapterhouse's answer or in its responses to discovery.  Moreover, the instruction does not alert jurors to the actual test of under which combinations of elements (some of which may be in the public domain) are nonetheless copyrightable.  *Bucklew v Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 926 (7th Cir. 2003); *JCW Investments Inc. v. Novelty Inc.*, 482 F3d 910, 917 (7th Cir. 2007); *Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982)

**Games Workshop does not propose an instruction concerning substantial similarity**

**24.    PROOF OF COPYING OF MULTIPLE WORKS TOGETHER [DISPUTED]**

*Games Workshop's Proposed Jury Instruction*

You may also find that defendant has infringed plaintiff's rights by collecting on its website protected expression from individual works and placing them together on its website, such that in the aggregate or in total it has taken material of substance and value from plaintiff's copyrighted works.

*Castle Rock Entm't. v. Carol Publg. Group, Inc*., 955 F. Supp. 2d 260 (S.D.N.Y. 1997), *aff'd,* 150 F.3d 132, 137 (2d Cir. 1998).

### Chapterhouse objects to Games Workshop's proposed jury instruction as follows:

Games Workshop's proposed instruction misstates *Castle Rock* and misstates Seventh Circuit law, in particular (and without limitation) by ignoring the actual test for infringement, which requires substantial similarity of protected expression. This proposed instruction is confusing and misleading because it falsely implies that Games Workshop's copyright claim as to the Chapterhouse website requires a different test and must be analyzed under a different standard. Games Workshop's proposed "material of substance and value" test has no basis in statute, Seventh Circuit case law, nor the Second Circuit's *Castle Rock* case. Rather, it is merely five words taken out of context from a lengthy definition and discussion of copyright infringement in a single case.

The Second Circuit's *Castle Rock* decision was based on admitted copying of expression that was concededly original and protectable, unlike the facts in this case. The *Castle Rock* panel merely found defendant's *de minimis* defense unavailing in light of such copying. Games Workshop's proposed instruction, by contrast, improperly presumes that Games Workshop's works are protectable and that Chapterhouse has copied them. The proposed instruction is also redundant, confusing, and unnecessary in light of the proposed instructions concerning copying, protected expression, and substantial similarity.

### Games Workshop's responds to Chapterhouse's objection as follows:

One of Games Workshop's principal contentions in this case is that many of Chapterhouse's works constitute infringement in the aggregate. This includes the collection of infringing products and descriptions thereof on its website and also includes ranges of products, such as its extensive series of shoulder pad designs appropriating the entire Roman numeral system, logo designs and character names of Games Workshop's Tactical Space Marines, Assault Space Marines and Devastator Space Marines. See, e.g., *Castle Rock Entm't. v. Carol Publg. Group, Inc.*, 955 F. Supp. 2d 260 (S.D.N.Y. 1997), *aff'd,* 150 F.3d 132 (2d Cir. 1998). Chapterhouse's proposed instruction does not permit assessment of this aspect of its overall infringement. As in Castle Rock, Defendant here can not dispute actual copying and thus far has not disputed actual copying. Nor has Defendant identified any basis to dispute copying of expression that was concededly original and protectable, except by imporprly dissecting certain of Games Workshop's works into constituent elements, a small number of which (such as Roman numerals) are in the public domain, albeit never used in the manner used by Games Workshop. Moreover, the "material of substance and value" test is directly adopted from *Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982).

**Chapterhouse Does Not Propose a Jury Instruction on Proof of Copying of Multiple Works Together**

**25.     COPYING – DEFINITION OF "DE MINIMIS" COPYING  [DISPUTED]**

**GW does not propose an instruction concerning *de minimis* copying.**

***Chapterhouse's Proposed Jury Instruction***

Even if you find there is some copying, that fact does not by itself mean that Defendant has infringed Plaintiff's copyright.  Some copying is permitted. Plaintiff must show that the copying, if any, has been done to an unfair extent. Copying of a small and insignificant amount of one of Plaintiff's works does not infringe Plaintiff's copyright.  If the average audience would not recognize the appropriation then copying is *de minimis* and not infringing.

*G. R. Leonard & Co. v. Stack*, 386 F.2d 38, 39 (7th Cir. 1967) (requirement to show copying "to an unfair extent"); *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004) ("insignificant" copying does not infringe; no infringement if average audience would not recognize the appropriation).

**Games Workshop's objects to Chapterhouse's instruction as follows:**

Chapterhouse has not identified in this action any works where it contends that its alleged copying was merely de minimis.  Moreover, because the proper test of infringement is whether the defendant has appropriated "material of substance and value", *Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982), the instruction on de minimis copying is confusing.

Alternately, Games Workshop believes the jury should be instructed in addition that where defendant has appropriated "material of substance and value", the copying is by definition not de minimis.

**26.     DAMAGES—GENERAL [AGREED]**

If you find that Plaintiff has proved that Defendant has infringed Plaintiff's copyright in a work or in multiple works together, then you must determine the amount of damages, if any, Plaintiff is entitled to recover. If you find that Plaintiff has failed to prove the claim, then you will not consider the question of damages.

Plaintiff must prove damages by a preponderance of evidence.

Plaintiff is seeking to recover profits that Defendant made from the alleged infringement. I will define this term.

1diam-7 Modern Federal Jury Instructions-Civil 12.8.1; Federal Civil Jury Instructions of the Seventh Circuit, §12.8.1 (2009 rev.)

### 27.     DAMAGES—DEFENDANT'S PROFITS [AGREED]

If Plaintiff succeeds in showing that Defendant infringed its copyrighted works, Plaintiff is entitled to recover the profits that Defendant made because of that infringement.

Defendant's profits are revenues that Defendant made because of the infringement, minus Defendant's expenses in producing, distributing, marketing or selling the infringing products. Plaintiff need only prove Defendant's revenues. Defendant must prove his own expenses and any portion of his profits that resulted from factors other than infringement of Plaintiff's copyright.

1diam-7 Modern Federal Jury Instructions-Civil 12.8.3; Federal Civil Jury Instructions of the Seventh Circuit, §12.8.3 (2009 rev.)

**Count II – Trademark Infringement**
**Count III – False Designation of Origin**
**Count VI –Illinois Deceptive Trade Practices Act under 815 ILCS 510/1**

**28.     NATURE OF CLAIM [DISPUTED]**

*__Games Workshop's Proposed Jury Instruction__*

Plaintiff claims that Defendant has infringed Plaintiff's trademarks.

A trademark is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product.

The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit trademark owners to show ownership of their products and control their product's reputation.

Plaintiff claims that Defendant infringed Plaintiff's trademarks, including the names of Plaintiff's products and characters, by using the names first adopted and used by Plaintiff in naming and identifying Defendant's own products derived from Plaintiffs products and by marketing those products to Plaintiff's own customers on internet forums devoted primarily or exclusively to fans of Warhammer 40,000.

Plaintiff further claims that because Defendant's products bear no permanent markings identifying Defendant as the producer of those goods, when those products are resold or used by Defendant's customers, it will likely confuse such potential purchasers who can only identify the goods as coming from the Plaintiff.

Defendant denies that its use of Plaintiff's claimed trademarks causes a likelihood of confusion.

1diam-7 Modern Federal Jury Instructions-Civil 13.1.1

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Defendant objects to Paragraphs 4 to 6 of Plaintiff's proposed instruction because Plaintiff deviates from the model instruction set forth in the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.1 by adding superfluous and new language, arguments, and factual allegations.

Paragraph 4 of Plaintiff's proposed instruction fails to describe the trademarks at issue and the products on which Plaintiff used those trademarks.  Plaintiff's description of the nature of allegedly infringing activity is also inconsistent with the description that Plaintiff provided in interrogatory responses.  By contrast, Defendant's proposed instruction describes the specific

Error! No property name supplied.

trademarks at issue and the corresponding products and adopts the language from Plaintiff's own interrogatory response.

With respect to Paragraph 5, neither the Seventh Circuit's model instructions nor the model instruction cited by the Plaintiff contains any such instruction and Plaintiff offers no support for the proposed language.

With respect to Paragraph 6, Plaintiff failed to identify Defendant's other defenses, as the Seventh Circuit model instructions direct.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.1 (2009 rev.); Plaintiff Games Workshop Studios LLC's Response to Interrogatories to Games Workshop Limited Set Two at No. 3 ("Chapterhouse infringes the above marks by making unauthorized use of the same without authorization or consent of Games Workshop on and in connection with its products and its website.") (available at, e.g., Ex. 37 at ECF No. 208-36).

### *Chapterhouse's Proposed Jury Instruction*

Plaintiff claims that Defendant has infringed Plaintiff's trademarks.

A trademark is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product.

The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit trademark owners to show ownership of their products and control their product's reputation. Plaintiff claims that Defendant infringed [insert number of remaining marks at issue from PLAINTIFF'S SECOND SUPPLEMENTAL RESPONSE TO DEFENDANT'S INTERROGATORIES SET FOUR at RESPONSE NO. 18 that survive summary judgment] of Plaintiff's trademarks for Plaintiff's line of miniatures and books by using those trademarks without the authorization or consent of Plaintiff on and in connection with Defendant's products.

Defendant denies that Plaintiff owns U.S. trademark rights in each of the asserted terms and symbols; denies that each of the asserted terms and symbols is a valid trademark; denies that Defendant has used each of asserted terms and symbols as trademarks; and denies that any use of Plaintiff's claimed trademarks has caused a likelihood of confusion. Defendant also asserts that any use of terms and symbols in which Plaintiff does own U.S. trademark rights, if any, is a non-infringing fair use.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.1 (2009 rev.); Plaintiff Games Workshop Studios LLC's Response to Interrogatories to Games Workshop Limited Set Two at No. 3 ("Chapterhouse infringes the above marks by making unauthorized use of the same without authorization or consent of Games Workshop on and in connection with its products and its website."); *Spex, Inc. v. Joy of Spex, Inc.,* 847 F.Supp. 567, 579 (N.D.Ill. 1994) ("Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be

resolved according to the principles set forth under the Lanham Act."; dismissing claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983); *S. Industries, Inc. v. Space Age Technologies*, No. 97-c-2787, 1999 WL 495484, at *7 (N.D. Ill. June 30, 1999) (same; granting summary judgment for defendants for federal trademark claims and Illinois fraud and deceptive business practices claims), *aff'd* 116 Fed. App. 252 (7th Cir. 2004).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

Plaintiff objects to Paragraph 3 of Defendant's proposed instruction because Defendant deviates form the model instruction set forth in the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.1 by adding superfluous and new language, arguments, and factual allegations.

Paragraph 3 of Defendant's proposed instruction improperly characterizes Plaintiff's products as "toys" and improperly limits Plaintiff's use of its trademarks to "toys and books" where Plaintiff has used such marks in a large variety of products, including miniatures, books, computer games, magazines, movies, the internet, and more. Further, Defendant improperly limits the allegedly improper activity as "using the trademarks…in connection with Defendant's products." Plaintiff's instruction is more appropriate as Defendant has used Plaintiff's trademarks not only in connection with its products, but also in its various marketing efforts and throughout its online store. Paragraph 3 further improperly omits Plaintiff's contention of post-sale confusion due to Plaintiff's failure to mark its goods.

Regarding the enumeration of the trademarks in issue, Games Workshop further submits that this can be handled by special verdict form based on the evidence actual presented at trial.

## 29.    TRADEMARK INFRINGEMENT—ELEMENTS [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

Plaintiff claims that Defendant infringed Plaintiff's trademarks. To succeed on its claim for infringement of each trademark, Plaintiff must prove the following things by a preponderance of the evidence:

1. Plaintiff owns the asserted symbol, term, and product design as a trademark;

2. Plaintiff's asserted symbol, term, or product design is a valid trademark;

3. Defendant used the asserted symbol, term, or product design in interstate commerce. The symbol, term, or design is used in interstate commerce if Defendant's product or commercial activities are transferred, advertised, or sold across state lines;

4. Defendant used the asserted symbol, term, or design in a manner that is likely to cause confusion as to the source, origin, sponsorship, or approval of Defendant's product.

I will explain what I mean by these terms.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must find for Plaintiff. However, if Plaintiff did not prove each of these things by a preponderance of the evidence, then you must find for Defendant.

1diam-7 Modern Federal Jury Instructions-Civil 13.1.2

**Chapterhouse objects to Games Workshop's Proposed Instruction as follows:**

Defendant objects to the use of the phrase "product design" because it is inconsistent with the explanation of trademarks in the NATURE OF CLAIM instruction above and the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2. A trademark is a word, symbol, or a combination of words or symbols, which is vague and confusing.

Defendant objects to Plaintiff's failure to include the Seventh Circuit's model instruction for providing a brief explanation for the affirmative defenses in this section of the jury instructions.

Defendant objects to Plaintiff's instruction concerning Defendant's alleged "commercial activities" as Plaintiff has failed to allege that Defendant used any of Plaintiff's symbols or terms as service marks.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2 (2009 rev.); *Id.* at §13.1.2 cmt. 8 (affirmative defense instruction) (2009 rev.); 15 U.S.C. § 1127 (defining "use on commerce" on "services").

### _Chapterhouse's Proposed Jury Instruction_

Plaintiff claims that Defendant infringed Plaintiff's trademarks. To succeed on these claims, Plaintiff must prove the following things by a preponderance of the evidence for each of the asserted terms or symbols:

1. Plaintiff owns the asserted symbol or term as a trademark;

2. Plaintiff's asserted symbol or term is a valid trademark;

3. Defendant used the asserted symbol or term in interstate commerce. The symbol or term is used in interstate commerce by Defendant if Defendant's product on which it uses the marks is transferred, or sold across state lines; and

4. Defendant used the asserted symbol or term in a manner that is likely to cause confusion as to the source, origin, sponsorship, or approval of Defendant's product.

I will explain what I mean by these terms. If you find that Plaintiff has proved each of

these things by a preponderance of the evidence, then you must find for Plaintiff as to that trademark. However, if Plaintiff did not prove each of these things by a preponderance of the evidence, then you must find for Defendant.

If, on the other hand, you find that Plaintiff has proved each of these things by a preponderance of the evidence, you must then consider Defendant's claim that its use of any such term or symbol is a permitted fair use. If you find that Defendant has proved this by a preponderance of the evidence, then you must find for Defendant.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2, cmt. 8 (2009 rev.).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

Plaintiff objects to Defendant's omission of the phrase "product design" as it is consistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2.

Plaintiff objects to Defendant's third element. Defendant's inclusion of the phrase "by Defendant" is inconsistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2. Furthermore, the addition makes the instruction confusing to the jury. Defendant's omission of the phrase ""commercial activities" may improperly exclude potential trademark infringement based on Defendant's marketing practices and its online store. Plaintiff's omission of "advertised" similarly may improperly exclude potential trademark infringement based on Defendant's advertising practices.

Plaintiff objects to the last paragraph of Defendant's proposed instruction regarding fair use as it is inconsistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2. Defendant's fair use defense is properly covered by a separate instruction. Repeating it in this instruction as an element of trademark infringement is not only improper (as it is not an element Plaintiff has to prove) but it also places undue emphasis on the defense.

## 30.     OWNERSHIP AND PRIORITY [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

One of the things Plaintiff must prove is that Plaintiff owns Plaintiff's symbol, term or product design as a trademark.

Plaintiff owns Plaintiff's symbol, term or product design as a trademark if Plaintiff used the symbol, term or product design in a manner that allowed consumers to identify the symbol or term with Plaintiff or its product before Defendant began to use Defendant's symbol or term on its product.

1diam-7 Modern Federal Jury Instructions-Civil 13.1.2.1;
Model Civl. Jury Instr. 9th Cir. 15.0 (2007)

**Chapterhouse objects to Games Workshop's Proposed Instruction as follows:**

As discussed above, Defendant objects to the use of the phrase "product design" because it is inconsistent with the explanation of trademarks in the NATURE OF CLAIM instruction above and Federal Civil Jury Instructions of the Seventh Circuit, Sections 13.1.2. A trademark is a word, symbol, or a combination of words or symbols, not product designs, which is vague and confusing.

Defendant objects to Plaintiff's failure to include an instruction explaining that Plaintiff used a term or symbol in interstate commerce if Plaintiff's products bearing the mark are sold or transferred across state lines in the United States, as provided for in the Seventh Circuit's model instructions, particularly in light of the fact that Plaintiff is a UK company, and that intra-company shipments do not constitute *bona fide* shipments to satisfy the use-in-commerce requirements under the Lanham Act. The Seventh Circuit's model instructions concerning sales or transfers crossing state lines is consistent with sales or transfers crossing state lines from a foreign country.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2 (2009 rev.); *Id.* (explaining Plaintiff's use in commerce); *Id.* at §13.1.2.1; 15 U.S.C. § 1127 (definition of the term "use in commerce" for goods), *Central Mfg., Inc. v. Brett*, 492 F.3d 876, 881-83 (7th Cir. 2007) (affirming summary judgment, attorney fees, and costs where plaintiff failed to establish *bona fide* use in commerce of registered trademark); McCarthy on Trademarks § 19:118 ("intra-company shipments. . .do not constitute *bona fide* shipments to satisfy" the use-in-commerce requirement).

### *Chapterhouse's Proposed Jury Instruction*

One of the things Plaintiff must prove is that Plaintiff owns each of the asserted terms and symbols as a trademark.

Plaintiff owns a symbol or term as a trademark if Plaintiff used in interstate commerce the symbol or term in a manner that allowed consumers to identify the symbol or term with Plaintiff or its product before Defendant began to use the symbol or term on its product.

A term or symbol is used in interstate commerce if Plaintiff's products bearing the mark are sold or transferred across state lines in the United States.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2 (2009 rev.) (explaining Plaintiff's use in commerce); *Id.* at §13.1.2.1; 15 U.S.C. § 1127 (definition of the term "use in commerce" for goods); *Central Mfg., Inc. v. Brett*, 492 F.3d 876, 881-83 (7th Cir. 2007) (affirming summary judgment, attorney fees, and costs where plaintiff failed to establish *bona fide* use in commerce of registered trademark).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

Plaintiff objects to Paragraphs 2 and 3 of Defendant's proposed instruction because Defendant deviates form the model instruction set forth in the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2.1 by adding superfluous and new language and arguments.

Defendant's Paragraph 2 improperly includes the phrase "interstate commerce." This phrase is inconsistent with the Federal Jury Instructions of the Seventh Circuit, Section 13.1.2.1. Further, whether or not the trademark was used in interstate commerce is already covered by the previous jury instruction regarding the elements of trademark infringement. Repeating it in this instruction is not only improper (as it does not relate to ownership or priority" but it also places undue emphasis on the issue.

Defendant's Paragraph 3 is similarly improper as it again focuses on "interstate commerce." Furthermore, as Plaintiff is a UK company, if this instruction is used, it should be made clear that interstate commerce also includes the importation into the U.S. of Plaintiff's products bearing the mark, including to a separate corporate entity affiliated with Plaintiff. *In re Silenus Wines, Inc.*, 557 F.2d 806 (C.C.P.A. 1977)

## 31. VALIDITY—TRADEMARK [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

A valid trademark is a symbol, term, or product design that is "distinctive," which means that the symbol, term, or design is capable of distinguishing Plaintiff's product from the products of others. A trademark is valid if it is inherently distinctive or if it has acquired distinctiveness. I will explain these terms to you.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2 (2009 rev.).

**Chapterhouse objects to Games Workshop's proposed instruction as follows:**

As discussed above, Defendant objects to the use of the phrase "product design" because it is inconsistent with the explanation of trademarks in the NATURE OF CLAIM instruction above and Federal Civil Jury Instructions of the Seventh Circuit, Sections 13.1.2. A trademark is a word, symbol, or a combination of words or symbols, not product designs, which is vague and confusing. Defendant proposes removing this phrase.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2 (2009 rev.).

### *Chapterhouse's Proposed Jury Instruction*

A valid trademark is a symbol or term that is "distinctive," which means that the symbol or term is capable of distinguishing Plaintiff's product from the products of others. A trademark is valid if it is inherently distinctive or if it has acquired distinctiveness. I will explain these terms to you.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2.2 (2009 rev.).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

As discussed above, Plaintiff objects to the omission of the phrase "product design" as it is inconsistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2.

## 32. VALIDITY – TRADEMARK – INHERENTLY DISTINCTIVENESS – FANCIFUL, ARBITRARY, AND SUGGESTIVE MARKS [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

An inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product. A trademark is inherently distinctive if it is a "fanciful"; "arbitrary"; or "suggestive" symbol, term or product design.

•A "fanciful" symbol, term or product design is a newly created word or parts of common words that are used in a fictitious, unfamiliar, or fanciful way. For example, "Exxon" for gasoline is a fanciful mark.

•An "arbitrary" symbol, term or product design is a common symbol or term used in an unfamiliar way. For example, "Apple" for computers is an arbitrary mark.

• A "suggestive" symbol, term or product design implies some characteristic or quality of the product. If the consumer must use imagination, reflection, or additional reasoning to understand the meaning of the mark as used with the product, then the mark is suggestive. For example, "Coppertone" for suntan lotion is a suggestive mark because it is suggestive of suntanned skin.

Federal Civil Jury Instructions of the Seventh Circuit, § 13.1.2.2.1 (2009 rev.).

**Chapterhouse objects to Games Workshop's Proposed Instruction as follows:**

As discussed above, Defendant objects to the use of the phrase "product design" because it is inconsistent with the explanation of trademarks in the NATURE OF CLAIM instruction above and Federal Civil Jury Instructions of the Seventh Circuit, Sections 13.1.2. A trademark is a word, symbol, or a combination of words or symbols, not product designs, which is vague and confusing. Defendant proposes removing this phrase.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2 (2009 rev.).

### *Chapterhouse's Proposed Jury Instruction*

An inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product. A trademark is inherently distinctive if it is a

"fanciful"; "arbitrary"; or "suggestive" symbol or term.

- A "fanciful" symbol or term is a newly created word or parts of common words that are used in a fictitious, unfamiliar, or fanciful way. For example, "Exxon" for gasoline is a fanciful mark.

- An "arbitrary" symbol or term is a common symbol or term used in an unfamiliar way. For example, "Apple" for computers is an arbitrary mark.

- A "suggestive" symbol or term implies some characteristic or quality of the product. If the consumer must use imagination, reflection, or additional reasoning to understand the meaning of the mark as used with the product, then the mark is suggestive. For example, "Coppertone" for suntan lotion is a suggestive mark because it is suggestive of suntanned skin.

Federal Civil Jury Instructions of the Seventh Circuit, § 13.1.2.2.1 (2009 rev.).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

As discussed above, Plaintiff objects to the omission of the phrase "product design" as it is inconsistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2.2.1.

## 33.  VALIDITY – DESCRIPTIVE TRADEMARK – ACQUIRED DISTINCTIVENESS [DISPUTED]

### _Games Workshop's Proposed Jury Instruction_

Another type of valid trademark is a "descriptive" symbol, term, or product design that has "acquired distinctiveness."

A "descriptive" symbol, term, or product design directly identifies or describes some characteristic or quality of the product in a straightforward way that requires no imagination or reasoning to understand the meaning of the trademark. For example, "All Bran" for cereal is a descriptive trademark because it describes a characteristic of the cereal. A descriptive trademark can be valid only if it has "acquired distinctiveness. "

To show that a descriptive term has "acquired distinctiveness," Plaintiff must prove:

1. A substantial portion of the consuming public identifies Plaintiff's symbol or term with a particular source, whether or not consumers know who or what that source is. The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products; and

2. Plaintiff's symbol or term acquired distinctiveness before Defendant first began to use Defendant's symbol or term.

To decide whether Plaintiff's symbol or term has "acquired distinctiveness," you may consider

the following:

- the amount and manner of advertising, promotion, and other publicity of Plaintiff's product using Plaintiff's symbol or term;

- the sales volume of Plaintiff's product using Plaintiff's symbol or term;

- the length and manner of use of Plaintiff's symbol or term;

- consumer testimony; and

- deliberate copying of a Plaintiff's symbol or term by the Defendant.

1diam-7 Modern Federal Jury Instructions-Civil 13.1.2.2
1diam-7 Modern Federal Jury Instructions-Civil 13.1.2.2.1
1diam-7 Modern Federal Jury Instructions-Civil 13.1.2.2.3
1diam-7 Modern Federal Jury Instructions-Civil 13.1.2.2.4

**Chapterhouse objects to Games Workshop's proposed instruction as follows:**

Defendant objects to Plaintiff's failure to include an instruction concerning the "consumer surveys" factors, as provided for in the Seventh Circuit's model instruction.

Defendant objects to Plaintiff's inclusion of the last bullet, "deliberate copying of a Plaintiff's symbol or term by the Defendant," because the Seventh Circuit's model instructions do not contain any similar instruction.

Defendant objects to Plaintiff's failure to include an instruction concerning generic trademark. Inclusion of an instruction on generic-ness is appropriate in light of Plaintiff's claim of infringement of marks like "Tactical" for toy soldiers ("Tactical" is one of the marks at issue in this case).

Defendant objects because Plaintiff did not subdivide its instructions like the Seventh Circuit's model instructions, and therefore increases the potential of creating confusion among the jury. The model instructions are subdivided separately with respect to "descriptive trademark – acquired distinctiveness" in general and "acquired distinctiveness" specifically.

Defendant also objects because Plaintiff did not include an instruction that a book title is never considered inherently distinctive and requires a showing of acquired distinctiveness to be protectable. Given that this case involves both copyright infringement claims and trademark claims related to various books by Plaintiff, such an instruction is necessary in order to avoid confusing the jury.

As discussed above, Defendant objects to the use of the phrase "product design" because it is inconsistent with the explanation of trademarks in the NATURE OF CLAIM instruction above and Federal Civil Jury Instructions of the Seventh Circuit, Sections 13.1.2. A trademark is

a word, symbol, or a combination of words or symbols, not product designs, which is vague and confusing.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2 (2009 rev.); *Id*. at §13.1.2.2.3 (validity - descriptive trademark – acquired distinctiveness ); *Id*. at §13.1.2.2.4 (validity - trademark – acquired distinctiveness ); *Id*. at § 13.1.2.2.5 (2009 rev.) (generic trademark); *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999) (book title is never considered inherently distinctive and requires a showing of acquired distinctiveness to be protectable).

### *Chapterhouse's Proposed Jury Instruction*

Another type of valid trademark is a "descriptive" symbol or term that has "acquired distinctiveness."

A "descriptive" symbol or term directly identifies or describes some characteristic or quality of the product in a straightforward way that requires no imagination or reasoning to understand the meaning of the trademark. For example, "All Bran" for cereal is a descriptive trademark because it describes a characteristic of the cereal.

A descriptive trademark can be valid only if it has "acquired distinctiveness." A book title is never considered inherently distinctive and requires a showing of acquired distinctiveness to be protectable.

To show that descriptive term has "acquired distinctiveness," Plaintiff must prove:

1.     A substantial portion of the consuming public identifies Plaintiff's symbol or term with a particular source, whether or not consumers know who or what that source is. The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products; and

2.     Plaintiff's symbol or term acquired distinctiveness before Defendant first began to use Defendant's symbol or term.

To decide whether Plaintiff's symbol or term has "acquired distinctiveness," you may consider the following:

- the amount and manner of advertising, promotion, and other publicity of Plaintiff's product using Plaintiff's symbol or term;

- the sales volume of Plaintiff's product using Plaintiff's symbol or term;

- the length and manner of use of Plaintiff's symbol or term;

- consumer testimony; and

- consumer surveys.

Federal Civil Jury Instructions of the Seventh Circuit, § 13.1.2.2.3 (2009 rev.); *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999); Federal Civil Jury Instructions of the Seventh Circuit, § 13.1.2.2.4 (2009 rev.).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

As discussed above, Plaintiff objects to the omission of the phrase "design" as it is inconsistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2.2.3.

Plaintiff objects to Paragraph 3 of Defendant's proposed instruction as in includes a statement regarding a "book title." This sentence is inconsistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2.2.4. Moreover, the only term potentially relevant to this instruction in this case "Soul Drinkers" refers not just to the title of a book, but also to a series of seven books. As such, there is no basis for a special instruction on this title.

Plaintiff objects to the inclusion of the optional language from the Federal Civil Jury Instructions of the Seventh Circuit regarding consumer surveys. As neither Plaintiff nor Defendant are relying on consumer surveys in this case, the inclusion of this element may only lead to jury confusion.

## 34. VALIDITY – GENERIC TRADEMARK  [DISPUTED]

### *Chapterhouse's Proposed Jury Instruction*

To establish that its trademark is valid, Plaintiff must also prove that the trademark is not "generic."

A "generic" symbol or term is a common or general symbol for or name of a product whose primary significance to the consuming public is to identify a group or class of similar products, regardless of who makes or sells them. The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products. For example, "cola" is a generic term for a type of soft drink, so it cannot function as a trademark for this type of soft drink. For example, bear-shaped gummy candies are common in the candy industry and are generic shapes for this type of candy.

Federal Civil Jury Instructions of the Seventh Circuit, § 13.1.2.2.5 (2009 rev.).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

Plaintiff objects to the inclusion of an instruction on Generic Trademarks as the issue will only tend to confuse the jury. Defendant has not identified any of Plaintiff's trademarks that it contends is a generic trademark. Unlike an automobile or refrigerator, there is no genus of goods known as "Tactical," so the term is not generic. Moreover, the parties use the name as "Tactical Space Marine" so there is not even an issue of descriptiveness of the claimed mark."

## Games Workshop Does Not Have a Jury Instruction on Validity – Generic Trademark

Error! No property name supplied.

**35.    VALIDITY - TRADEMARK REGISTRATION [DISPUTED]**

***Games Workshop's Proposed Jury Instruction***

Although registration of a trademark is not required, a certificate of registration issued by the United States Patent and Trademark Office creates a presumption that the owner has the right to exclude others form using the trademark in connection with the type of goods specified in the certificate.

Model Civ. Jury Instr. 9th Cir. 15.0 (2007); 15 U.S.C. 1057(b)

**Chapterhouse objects to Games Workshops proposed instruction as follows:**

Defendant objects to this instruction because the Seventh Circuit's model instructions do not contain any similar instruction.    Additionally, a certificate only provides prima facie evidence, thus Plaintiff still bears the burden to prove the validity of its trademarks by a preponderance of the evidence.    This instruction creates the potential to confuse the jury concerning Plaintiff's burden of proof at trial.

Federal Civil Jury Instructions of the Seventh Circuit, § 13 et seq.; 15 U.S.C. 1057(b) (certificate as prima facie evidence).

**Chapterhouse Does Not Propose a Jury Instruction on Validity – Trademark Registration**

**36.    INFRINGEMENT—ELEMENTS—LIKELIHOOD OF CONFUSION—FACTORS [AGREED]**

As I have told you, one of the things that Plaintiff must prove is that Defendant used Defendant's symbol or term in a manner that is likely to cause confusion as to the source, origin, sponsorship, or approval of Defendant's product.

Plaintiff must prove a likelihood of confusion among a significant number of people who buy or use, or consider buying or using, the product or similar products.

In deciding this, you should consider the following:

•Whether the overall impression created by Defendant's trademark is similar to that created by Plaintiff's trademark in appearance, sound, and meaning;

•Whether Defendant and Plaintiff use their trademarks on the same or related products;

•Whether Plaintiff's and Defendant's products are likely to be sold in the same or similar stores or outlets, or advertised in similar media;

•The degree of care that purchasers or potential purchasers are likely to exercise in

buying or considering whether to buy the product. This may depend on the level of sophistication of potential buyers of the product and the cost of the product;

•The degree to which purchasers or potential purchasers recognize Plaintiff's trademark as an indication of the origin of Plaintiff's product. You may consider my previous instructions concerning distinctiveness to help you assess this factor;

•Whether Defendant's use of the trademark has led to instances of actual confusion among purchasers or potential purchasers about the source, origin, sponsorship, or approval of Defendant's product. However, actual confusion is not required for finding a likelihood of confusion; and

•Whether Defendant intended to pass off his product as that of Plaintiff, or intended to confuse consumers.

The weight to be given to each of these factors is up to you to determine. No particular factor or number of factors is required to prove likelihood of confusion.

1diam-7 Modern Federal Jury Instructions-Civil 13.1.2.3

## 37. LIKELIHOOD OF CONFUSION— POST SALE CONFUSION [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

As I previously explained, Plaintiff also that because Defendant's products bear no permanent markings identifying Defendant as the producer of those goods, when those products are resold or used by Defendant's customers, it will likely confuse such potential purchasers who can only identify the goods as coming from the Plaintiff

For Plaintiff to prove a likelihood of post-sale confusion, it must show that when potential customers see Defendant's product in the marketplace (even when not being sold or offered for sale by Defendant), the customer mistakenly attributes the products to Plaintiff based on the customer's familiarity with Plaintiff, thereby influencing his buying decision, either positively or negatively.

*CAE, Inc. v. Clean Air Eng'g Inc.*, 267 F.3d 660, 683 (7th Cir. 2001).

**Chapterhouse objects to GW's proposed instruction as follows:**

Defendant objects to this instruction because the Seventh Circuit's model instructions do not contain any similar instruction. Additionally, there is no possibility of post-sale confusion here and it is therefore not actionable, as Plaintiff acknowledges in its proposed instruction that there are no permanent markings on Defendant's products and *CAE* involved defendants' products that permanently incorporated the trademarks and/or trade dress at issue, which is not at issue here.

Federal Civil Jury Instructions of the Seventh Circuit, § 13 et seq.; *CAE, Inc. v. Clean Air Eng'g Inc.*, 267 F.3d 660, 683 (7th Cir. 2001) (defendant's product bore plaintiff's "CAE" mark).

**Games Workshop responds to Chapterhouse's objection as follows:**

Chapterhouse does not dispute that post-sale confusion is actionable. Its objection to the jury instruction (that the products bear no permanent markings) misses the very point that virtually all of Chapterhouse's products are identified by Games Workshop's preexisting names and are all meant to be used as part of Warhammer 40,000. With no markings naming Chapterhouse as source, the products can only be viewed as Games Workshop's when they are sold in the secondary market (such as eBay) where they can only be identified by reference to Games Workshop's names.

**Chapterhouse Does Not Propose a Jury Instruction on Likelihood of Confusion – Post Sale Confusion**

## 38.    LIKELIHOOD OF CONFUSION – UNFAIR COMPETITION

As I have previously explained, intent can be a factor in assessing the likelihood of confusion. If you find that the defendant deliberately sought to trade on recognition among Plaintiff's customers of specific names recognized in the marketplace so as to preempt Plaintiff's own marketing opportunities, and if you find that such use is likely to cause confusion, you can find that Defendant has engaged in unfair competition in violation of Section 43(a).

Procesed Plastic Co. v. Warner Comm'ns, Inc., 675 F.2d 852 (7th Cir. 1982); Warner Bros., Inc. v. Gay Toys, Inc., 658 F.2d 76 (2d Cir. 1981); D.C. Comics, Inc. v. Powers, 465 F. Supp. 843 (S.D.N.Y. 1978).

**Chapterhouse objects to GW's proposed instruction as follows:**

Defendant objects to this instruction because the Seventh Circuit's model instructions do not contain any similar instruction and Plaintiff misstates the required elements under Section 43(a).

Defendant further objects to this instruction because it will potentially confuse the jury by suggesting it that may disregard and ignore the likelihood of confusion test for trademark infringement and based liability solely on Plaintiff's proposed instruction concerning intent, which is not among of the likelihood-of-confusion factors.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2.3 (2009 rev.); *Barbecue Marx, Inc. v. 551 Ogden, Inc.,* 235 F.3d 1041, 1043-44 (7th Cir. 2000) (discussing likelihood of confusion factors).

## 39.    AFFIRMATIVE DEFENSES—NOMINATIVE FAIR USE [DISPUTED]

Defendant claims that its use of Plaintiff's trademark is permitted because Defendant made fair use of the trademark.

To succeed on this defense, Defendant must prove the following three things by a preponderance of the evidence:

1. Defendant used the trademark to refer to a product of Plaintiff that cannot be easily identified without using the trademark;

2. Defendant used the trademark only as much as was reasonably necessary to identify the product; and

3. Defendant did not do anything in connection with using the trademark to suggest that Plaintiff sponsored or endorsed Defendant or its product.

A product cannot be easily identified without using the trademark if there are no equally informative words to identify the product, or there is no other effective way to compare, criticize, refer to or identify it without using the trademark.

A reasonably necessary use of a trademark occurs when the trademark is used no more prominently than is needed to identify the product and enable consumers to understand the reference.

1diam-7 Modern Federal Jury Instructions-Civil 13.5.1

**Chapterhouse objects to Games Workshop's proposed instruction as follows:**

Defendant objects that Plaintiff failed to include the instruction that Defendant's use of the Plaintiff's trademark to compete with Plaintiff, or to make a profit, does not by itself prevent Defendant from proving fair use, as provided by the Seventh Circuit's model instruction.

Federal Civil Jury Instructions of the Seventh Circuit, §13.5.1 (2009 rev.).

_**Chapterhouse's Proposed Jury Instruction**_

Inclusion of the following:  Defendant's use of the Plaintiff's trademark to compete with Plaintiff, or to make a profit, does not by itself prevent Defendant from proving fair use.

Federal Civil Jury Instructions of the Seventh Circuit, §13.5.1 (2009 rev.).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

Plaintiff objects to the inclusion of the optional language from the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.5.1 as it may lead to jury confusion as to whether use of a trademark in competition is by definition a fair use.  The language at best only repeats the concept already articulated and hence is confusing.

**40.     REMEDIES—TYPES [AGREED]**

*Games Workshop's Proposed Jury Instruction*

If you decide for Plaintiff on the question of liability, then you should consider the amount of money to award to Plaintiff.  The Plaintiff is entitled to any profits that Defendant made because of its infringement.

If you decide for Defendant on the question of liability, then you should not consider this issue.

1diam-7 Modern Federal Jury Instructions-Civil 13.6.1

**41.     REMEDIES – ACTUAL OR STATUTORY NOTICE – REGISTERED MARKS [DISPUTED]**

*Chapterhouse's Proposed Jury Instruction*

To recover profits, Plaintiff must prove by a preponderance of the evidence that Defendant knew that Plaintiff's mark was registered, or that Plaintiff displayed with the trademark the words, "Registered in the U.S. Patent and Trademark Office"; or that Plaintiff displayed with the trademark the words "Reg. U.S. Pat. &Tm. Off."; or Plaintiff displayed with the trademark; trade dress the letter R enclosed in a circle ®.

Federal Civil Jury Instructions of the Seventh Circuit, §13.6.1 (2009 rev.); *Id*. at §13.6.2.

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

Games Workshop objects that these instructions apply not only to Plaintiff's federal infringement claim, 15 U.S.C. § 1114(1),  but also its claims under Section 43(a) of the Lanham Act 15 U.S.C. § 1125(a) and Illinois common law and the Illinois Deceptive Trade Practices Act under 815 ILCS 510/1.  Because there is no requirement to prove notice under any of these laws, the instruction is confusing and unnecessary.

Alternately, a separate instruction should be given that notice is not required under any other such laws.

**42.     DEFENDANT'S PROFITS [AGREED]**

Plaintiff may recover the profits Defendant gained from the trademark infringement. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money Defendant received due to its use of the trademark.

Plaintiff is required only to prove Defendant's gross revenue. Defendant is required to prove any expenses that it argues should be deducted in determining its profits.

Plaintiff is entitled to recover Defendant's total profits from its use of the trademark, unless Defendant proves that a portion of the profit is due to factors other than use of the trademark.

1diam-7 Modern Federal Jury Instructions-Civil 13.6.4

## 43. INTENTIONAL INFRINGEMENT [AGREED]

If you find that Defendant infringed Plaintiff's trademark, you must also determine whether Plaintiff has proven that, at the time Defendant used the trademark Defendant acted willfully. Defendant acted willfully if it knew that it was infringing Plaintiff's trademark or if it acted with indifference to Plaintiff's trademark rights .

1diam-7 Modern Federal Jury Instructions-Civil 13.6.5

**Count VI – Violation of the Illinois Deceptive Trade Practices Act**
**Count VIII – Common Law Unfair Competition – Trademark Infringement**

## 44. NATURE OF THE CLAIM [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

As I explained to you earlier, Plaintiff has asserted a number of claims against Defendant that are related to Defendant's use of Plaintiff's trademarks under Illinois state law. These are:

(1) Defendant has engaged in unfair competition under the Illinois Deceptive Trade Practices Act; and

(2) Defendant has engaged in unfair competition under Illinois common law;.

The legal elements of each of these claims are identical to those of trademark infringement. Therefore, if you find Defendant to have infringed the Plaintiff's trademarks by a preponderance of the evidence, you must also find Defendant liable for these claims.

If you find that Plaintiff has failed to prove that Defendant's use of Plaintiff's trademarks cause a likelihood of confusion as to the source of Defendant's product or find that Defendant's use of Plaintiff's trademarks was fair use, you cannot find Defendant liable for the claims.

*Spex, Inc. v. Joy of Spex, Inc.,* 847 F.Supp. 567, 579 (N.D.Ill. 1994) ("Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act."; dismissing claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983); *S. Industries, Inc. v. Space Age Technologies*, No. 97-c-2787, 1999 WL 495484, at *7 (N.D. Ill. June 30, 1999) (same; granting summary judgment for defendants for federal trademark claims and Illinois fraud and deceptive business practices claims), *aff'd* 116 Fed. App. 252 (7th Cir. 2004).

### Chapterhouse objects to Games Workshop's proposed instruction as follows:

Defendant objects to this instruction because Plaintiff's instruction does not encompass Count VII and because Plaintiff includes a separate instruction for Count VII. Counts VI through VIII are all resolved according to the principles set forth under the Lanham Act. Under Illinois law, Counts VI through VIII are all resolved according to the principles set forth under the Lanham Act. As such, Plaintiff's proposed separate instructions are unnecessary, needlessly complicated, and have the potential of confusing the jury.

*Spex, Inc. v. Joy of Spex, Inc.,* 847 F.Supp. 567, 579 (N.D.Ill. 1994) ("Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved

according to the principles set forth under the Lanham Act.”; dismissing claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983); *S. Industries, Inc. v. Space Age Technologies*, No. 97-c-2787, 1999 WL 495484, at *7 (N.D. Ill. June 30, 1999) (same; granting summary judgment for defendants for federal trademark claims and Illinois fraud and deceptive business practices claims), *aff'd* 116 Fed. App. 252 (7th Cir. 2004); 815 ILCS 505/2 (Source: P.A. 78-904); Federal Civil Jury Instructions of the Seventh Circuit, §13.5.1 (2009 rev.).

### *Chapterhouse's Proposed Jury Instruction*

**Count VI – Violation of the Illinois Deceptive Trade Practices Act**
**Count VII – Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**Count VIII – Common Law Unfair Competition – Trademark Infringement**

As I explained to you earlier, Plaintiff has asserted a number of claims against Defendant that are related to Defendant's use of Plaintiff's trademarks under Illinois state law. These are:

(1) Defendant has engaged in unfair competition under the Illinois Deceptive Trade Practices Act;

(2) Defendant has engaged in unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act; and

(3) Defendant has engaged in unfair competition under Illinois common law.

The legal elements of each of these three claims track those of trademark infringement. Therefore, if you find that Plaintiff has failed to prove Defendant infringed any of Plaintiff's trademarks, all three of these claims fail, and you should find for Defendant.

If you find that Plaintiff has succeeded on its claim that Defendant infringed the Plaintiff's trademarks, you must then decide whether Defendant has committed consumer fraud in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act to succeed on Claim VII. For you to find in favor of the Plaintiff on this claim, you must find that the Plaintiff has proven each of the following elements by a preponderance of the evidence:

1) a deceptive act or practice by the Defendant;

2) the Defendant intended the others to rely on the deception;

3) the deception occurred in the course of conducting trade or commerce;

4) the Plaintiff suffered actual damage; and

5) the damage was proximately caused by the deception.

The intent required is only that the Defendant intended others to rely on the deceptive act, not that the Defendant intended to deceive. Thus, a Consumer Fraud Act claim may be based on a deceptive act done negligently or innocently if the Defendant intended that others rely on the act or practice.

If you find that the Plaintiff has proven each of these elements, you should find in favor of the Plaintiff on Count VII for Violation fo the Illinois Consumer Fraud and Deceptive Business Practices Act. If you find that the Plaintiff has failed to prove any of these elements, you should find in favor of the Defendant for Count VII.

If you find that Plaintiff has failed to prove that Defendant's use of Plaintiff's trademarks causes a likelihood of confusion as to the source of Defendant's product or find that Defendant's use of Plaintiff's trademarks was fair use, you cannot find Defendant liable for any of these three claims.

*Spex, Inc. v. Joy of Spex, Inc.,* 847 F.Supp. 567, 579 (N.D. Ill. 1994) ("Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act."; dismissing claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983); *S. Industries, Inc. v. Space Age Technologies*, No. 97-c-2787, 1999 WL 495484, at *7 (N.D. Ill. June 30, 1999) (same; granting summary judgment for defendants for federal trademark claims and Illinois fraud and deceptive business practices claims), *aff'd* 116 Fed. App. 252 (7th Cir. 2004); Federal Civil Jury Instructions of the Seventh Circuit, §13.5.1 (2009 rev.); 815 ILCS 505/2 (Source: P.A. 78-904).

**Count IV – Dilution and Tarnishment**

## 45. NATURE OF CLAIM [AGREED]

The term "dilution" means the lessening of the capacity of a famous trademark to identify and distinguish goods, regardless of the presence or absence of competition between the owner of the famous mark and other parties, or of likelihood of confusion, mistake, or deception.

Plaintiff claims that Defendant has diluted a number of Plaintiff's trademarks which Plaintiff claims are famous. Plaintiff's six allegedly famous trademarks at issue in this case are WARHAMMER, 40K, DARK ANGELS, ELDAR, TAU, and SPACE MARINE.

Defendant denies that Plaintiff owns trademark rights in each of the asserted terms; denies that each of the asserted terms is a valid trademark; denies that each of asserted trademarks is famous; denies that Defendant used each of the alleged marks; and denies that Defendant diluted any of the claimed famous trademarks. Defendant also says that any use of valid and famous trademarks owned by Plaintiff is permitted because Defendant made fair use of the trademark.

15 U.S.C. § 1125(c); Federal Civil Jury Instructions of the Seventh Circuit, §13.4.1 (2009 rev.) (noting that the "Committee has not proposed an instructioon trademark dilution under 15 U.S.C. 1125(a) because in October 2006, Congress made changes to the statute that significantly alter its meaning. The changed provisions have not yet been the subject of significant appellate interpretation").

## 46. TRADEMARK DILUTION—ELEMENTS [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

To succeed on its dilution claims, Plaintiff must prove the following things by a preponderance of the evidence for each of the asserted famous trademarks:

1. Plaintiff owns the asserted term as a trademark;

2. Plaintiff's asserted term is a valid trademark;

3. Plaintiff's trademark is famous;

4. Defendant used the famous trademark or a similar trademark in interstate commerce after the trademark became famous;

5. Defendant's use of the famous trademark or a similar trademark is likely to cause dilution by blurring or tarnishment; and

I will explain to you the terms that I have not explained to your before.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must find for Plaintiff. However, if you find that Plaintiff did not prove each of these things by a preponderance of the evidence for each of these alleged marks, then you must find for Defendant.

If, on the other hand, you find that Plaintiff has proved each of these things by a preponderance of the evidence, you must then consider Defendant's claim that its use of that term or symbol is permitted because Defendant made fair use of the trademark. If you find that Defendant has proved this by a preponderance of the evidence, then you must find for Defendant.

15 U.S.C. § 1125(c).

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Games Workshop has failed to include the proper exclusion under 15 U.S.C. § 1125(c)(3) ("The following shall nto be actionable as dilution by blurring or dilution by tarnishment under this subsection: (A) Any fair use,including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the peron's own goods or services . . .").

### _Chapterhouse's Proposed Addition to the Jury Instruction_

      6)  Defendant's use of the famous trademark or a similar trademark is not excluded as not actionable as dilution

## 47.   TRADEMARK DILUTION—A FAMOUS MARK [AGREED]

One of the things Plaintiff must prove is that Plaintiff owns a famous trademark. A trademark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods of the Plaintiff's. A trademark is not famous if it only has fame within a niche market.

In determining whether Plaintiff's claimed trademark possesses the requisite degree of recognition to be considered, you may consider the following:

1.   The duration, extent, and geographic reach of advertising and publicity of the trademark, whether advertised or publicized by the owner or third parties;

2.   The amount, volume, and geographic extent of sales of goods offered under the trademark;

3.   The extent of actual recognition of the trademark; and

4. Whether the trademark is registered with the United States Patent and Trademark Office.

15 U.S.C. § 1125(c)(2)(A); *Top Tobacco, L.P. v. North Atlantic Operating Co., Inc.*, 509 F.3d 380, 384 (7th Cir. 2007) (niche fame does not support dilution).

## 48. TRADEMARK DILUTION—DILUTION BY BLURRING OR TARNISHMENT [AGREED]

One of the things Plaintiff must prove is that Defendant's use of the famous trademark is likely to cause dilution by blurring or tarnishment.
15 U.S.C. § 1125(c).

### Trademark Dilution – Dilution By Blurring

"Dilution by blurring" means association arising from the similarity between a trademark and a famous mark that impairs the distinctiveness of the famous mark.

In determining whether Defendant's trademark is likely to cause dilution by blurring, you may consider the following:

- The degree of similarity between Defendant's trademark and the famous mark.

- The degree of inherent or acquired distinctiveness of the famous mark.

- The extent to which the Plaintiff is engaging in substantially exclusive use of the mark.

- The degree of recognition of the famous mark.

- Whether Defendant intended to create an association with the famous mark.

- Any actual association between Defendant's trademark and the famous mark.

15 U.S.C. § 1125(c)(2)(B).

### Trademark Dilution – Dilution By Tarnishment

"Dilution by tarnishment" means association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

15 U.S.C. § 1125(c)(2)(C).

## 49. TRADEMARK DILUTION—EXCLUSIONS [AGREED]

Defendant's use of the famous trademark or a similar trademark is not actionable as trademark dilution if the use is:

- Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by Defendant other than as a designation of source for the Defendant's own goods, including use in connection with advertising or promotion that permits consumers to compare goods or services, or identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods of the Plaintiff;

15 U.S.C. § 1125(c)(3).

**Count V – Violation of Illinois Anti-Dilution Statute**

**50.    NATURE OF CLAIM [AGREED]**

Plaintiff has also asserted a claim against Defendant for violation of the Illinois Anti-Dilution Statute.  The legal elements of this claim are similar to those of Plaintiff's federal dilution claim but also requires that Plaintiff's trademark is famous in the state of Illinois rather than is famous throughout the United States.  Unlike the federal dilution claim, Plaintiff must also show that Defendant's alleged violation actually caused dilution rather than a likelihood to cause dilution.

Specifically, you should find that Defendant's use of Plaintiff's trademarks causes dilution under the Illinois Anti-Dilution Act if the marks are distinctive, are famous in the State of Illinois and that the Defendant's use of a similar mark causes dilution of that distinctiveness of the Plaintiff's mark even if there is no competition between the parties and even if there is no likelihood of confusion as to the source of goods or services.  Plaintiff must prove its claim by a preponderance of the evidence.

65 ILCS 1036/65 (Source: P.A. 90-231, eff. 1-1-98.)  *Intermatic Inc. v. Toeppen*, 947 F.Supp. 1227 (N.D. Ill. 1996); *Hyatt Corp. v. Hyatt Legal Services,* 736 F.2d 1153, 1157 (7th Cir. 1984), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434.

**51.    TRADEMARK DILUTION—A FAMOUS MARK IN ILLINOIS [AGREED]**

One of the things Plaintiff must prove to establish a violation of Count V is that Plaintiff owns a trademark that is famous and distinctive in Illinois.

In determining whether Plaintiff's claimed trademark possesses the requisite degree of famousness and distinctiveness, you may consider the following:

1.    The degree of inherent or acquired distinctiveness of the trademark in this State;

2.    The duration and extent of use of the trademark in connection with the goods with which the trademark is used;

3.    The duration and extent of advertising and publicity of the trademark in this State;

4.    The geographical extent of the trading area in which the trademark is used;

5.    The channels of trade for the goods or services with which the mark is used;

6.    The degree of recognition of the trademark in the trading areas and channels of trade in this State used by Plaintiff and Defendant;

7.    The nature and extent of use of the same or similar trademark by third parties; and

Error! No property name supplied.

8.      Whether the trademark is the subject of a State registration in this State, or a federal registration.

**Count VII – Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**

**52.     NATURE OF CLAIM [DISPUTED]**

*<u>Games Workshop's Proposed Jury Instruction</u>*

The Plaintiff claims that the Defendant has committed consumer fraud in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.  The Consumer Fraud act prohibits deceptive conduct in connection with the offering or advertising for sale of property in trade or commerce.

For you to find in favor of the Plaintiff on this claim, you must find that the Plaintiff has proven each of the following elements by a preponderance of the evidence:

1) a deceptive act or practice by the Defendant;

2) the Defendant intended the others to reply on the deception;

3) the deception occurred in the course of conducting trade or commerce;

4) the Plaintiff suffered actual damage; and

5) the damage was proximately caused by the deception.

The intent required is only that the Defendant intended others to rely on the deceptive act, not that the Defendant intended to deceive.  Thus, a Consumer Fraud Act claim may be based on a deceptive act done negligently or innocently if the Defendant intended that others rely on the act or practice.

If you find that the Plaintiff has proven each of these elements, you should find in favor of the Plaintiff on this claim.  If you find that the Plaintiff has failed to prove any of these elements, you should find in favor of the Defnedant.

*Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 776 N.E.2d 151, 160 (Ill. 2002); *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.*, 197 Ill.App.3d 948, 953, 557 N.E.2d 246, 250 (Ill. App. 1st Dist. 1990).

**Chapterhouse objects to Games Workshop's proposed instruction as follows:**

Defendant objects to this instruction as unnecessary and potentially confusing to the jury.  As discussed above concerning Plaintiff's proposed jury instructions for Counts VI and VIII, Counts VI through VIII are all resolved according to the principles set forth under the Lanham Act.  Under Illinois law, Counts VI through VIII are all resolved according to the principles set forth under the Lanham Act.  As such, Plaintiff's proposed separate instructions are unnecessary, needlessly complicated, and have the potential of confusing the jury.

*Spex, Inc. v. Joy of Spex, Inc.,* 847 F.Supp. 567, 579 (N.D. Ill. 1994) ("Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act."; dismissing claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983); *S. Industries, Inc. v. Space Age Technologies*, No. 97-c-2787, 1999 WL 495484, at *7 (N.D. Ill. June 30, 1999) (same; granting summary judgment for defendants for federal trademark claims and Illinois fraud and deceptive business practices claims), *aff'd* 116 Fed. App. 252 (7th Cir. 2004); 815 ILCS 505/2 (Source: P.A. 78-904); Federal Civil Jury Instructions of the Seventh Circuit, §13.5.1 (2009 rev.).

**53.     SELECTION OF PRESIDING JUROR; GENERAL VERDICT [AGREED]**

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

[READ VERDICT FORMS]

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in, date, and sign the appropriate form.

1diam-7 Modern Federal Jury Instructions-Civil 1.32; Federal Civil Jury Instructions of the Seventh Circuit, §1.32 (2009 rev.)

**54.     COMMUNICATION WITH COURT [AGREED]**

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

If you do communicate with me, you should not indicate in your note what your numerical division is, if any.

1diam-7 Modern Federal Jury Instructions-Civil 1.33; Federal Civil Jury Instructions of the Seventh Circuit, §1.33 (2009 rev.)

**55.     DISAGREEMENT AMONG JURORS [AGREED]**

The verdict must represent the considered judgment of each juror. Your verdict, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

1diam-7 Modern Federal Jury Instructions-Civil 1.34; Federal Civil Jury Instructions of the Seventh Circuit, §1.34 (2009 rev.)

Dated:  October 19, 2012                    Respectfully submitted,

                              s/  Jason J. Keener
                             Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone:  312.832.4500
Facsimile:  312.832.4700
Email:  jkeener@foley.com;
aweinzierl@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone:  (212) 682-7474
Facsimile:  (212) 687-3229
Email:  jmoskin@foley.com

*Attorneys for Plaintiff*
*Games Workshop Limited*

/s/ Bryce Cooper

       Jennifer A. Golinveaux (CA Bar No. 203056)
       Dean A. Morehous (CA Bar No. 111841)
       K. Joon Oh (CA Bar No. 246142)
       Thomas J. Kearney (CA Bar No. 267087)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Phone: (415) 591-1000
Fax: (415) 591-1400
**jgolinveaux@winston.com**
**dmorehous@winston.com**
**koh@winston.com**
**tkearney@winston.com**

Bryce A. Cooper (IL Bar No. 6296129)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600

Fax: (312) 558-5700
**bcooper@winston.com**

Error! No property name supplied.

## CERTIFICATE OF SERVICE

I, Jason J. Keener, an attorney, hereby certify that on October 19, 2012, I caused to be filed electronically the foregoing Joint Pretrial Order with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

　s/  Jason J. Keener　　　　　
Jason J. Keener