## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES<br><br>Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly<br>Hon. Jeffrey T. Gilbert |

## PLAINTIFF'S OMNIBUS MOTION IN *LIMINE*

Dated:  November 6, 2012

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone:  (212) 682-7474
Facsimile:  (212) 687-3229
Email:  jmoskin@foley.com

Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone:  312.832.4500
Facsimile:  312.832.4700
Email:  jkeener@foley.com

*Attorneys for Plaintiff Games Workshop Limited*

4851-6823-0417.3

# TABLE OF CONTENTS

1.  An Adverse Inference Should Be Made Against Chapterhouse For Failing To Produce Any of Its Advertising or Promotional Material or Documents Concerning Its Customers' Reactions to Its Products.............................................. 1

2.  An Adverse Inference Should Be Made Against Chapterhouse For Failing To Produce any Design Documents for Certain Products ...................................... 3

3.  Defendant Should Be Precluded From Offering Evidence or Argument As To The Copyrightability of Games Workshop's Products Under English Law ....................................................................................................................... 4

4.  Except As Expressly Permitted By The Court, The Experts Should Be Precluded From Offering Opinions Not Disclose in Their Reports. ...................... 6

5.  Defendant Should Be Precluded From Offering Evidence or Argument Challenging Games Workshop's Ownership of the Copyrights At Issue or Concerning Games Workshop's Products Not At Issue. ........................................ 7

6.  Chapterhouse's Expert Report on Equitable Assignment Should Be Stricken ................................................................................................................. 8

7.  Defendant Should Be Precluded From Offering Evidence or Argument That Games Workshop Does Not Own The Copyrights or Trademarks It Elsewhere Admits Games Workshop Owns. ......................................................... 9

8.  Defendant Should Be Precluded From Offering Evidence or Argument Alleging Games Workshop Does Not Own The Trademarks at Issue Or That Any Games Workshop's Products Were Not Sold In Interstate Commerce. ......................................................................................................... 10

9.  Defendant Should Be Precluded From Offering Testimony, Evidence or Argument Regarding Any Chapterhouse Works Not At Issue............................. 11

10. Defendant Should Be Precluded From Offering Testimony, Evidence or Argument Regarding Any Affirmative Defenses Not Provided In Discovery. ......................................................................................................... 11

11. Except as Expressly Permitted by The Court, The Parties Should Be Precluded from Mentioning or Referring to Any Pre-Trial Rulings by the Court or Any Other Pre-Trial Disputes................................................................. 12

12. Chapterhouse Should Be Precluded From Offering Evidence or Argument of Plaintiff's Efforts to Enforce Its Intellectual Property Rights Against Third Parties, Including Former Defendant Jon Paulson...................................... 13

ii

13. Defendant Should Be Precluded From Offering Testimony, Evidence or Argument As To Plaintiff's Policies That Are Not Tied To Defendant's Conduct. ........................................................................................................ 14

14. The Parties Should Be Precluded from Mentioning or Referring to Either Party's Billing Arrangements With Its Lawyers .................................................. 14

15. Parties Should Be Precluded From Offering Evidence or Argument Regarding Any Amended or Withdrawn Pleadings, Claims or Discovery Responses .......................................................................................................... 15

16. The Parties Should Be Precluded from Posing Questions that Seek to Invoke Assertions of Privilege or Offering Testimony, Evidence or Argument Regarding Information or Documents That Were Previously Withheld as Privileged. ........................................................................................ 15

4851-6823-0417.3

# TABLE OF AUTHORITIES

*Billy-Bob Teeth v. Novelty, Inc.*,
    329 F.3d 586 (7th Cir. 2003)……………………………………………………………7

*Boisson v American County Quilts and Linens*,
    273 F.3d 262 (2nd Cir. 2001)……………………………………………………………12

*Bridgeman Art Library v. Corel Corp.*,
    36 F. Supp. 2d 191, (S.D.N.Y. 1999)……………………………………………………5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)………………………………………………………………………9

*EZ Dock, Inc. v. Shafer Sys., Inc.*,
    No. 98-2364, 2003 U.S. Dist. LEXIS 3634 (D. Minn. Mar. 8, 2003)…………...15

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*,
    780 F.2d 189 (2d Cir. 1985)………………………………………………………………5

*In re Trade-Mark Cases*,
    100 U.S. 82 (1879)………………………………………………………………………12

*Kumho Tire Co. v. Carmichael*,
    119 S.Ct. 1167 (1999)……………………………………………………………………9

*Leboeuf v. K Mart Corp.*,
    888 F.2d 330 (5th Cir. 1989)……………………………………………………………13

*Porous Media Corp. v. Pall Corp.*,
    173 F.3d 1109 (8th Cir. 1999)…………………………………………………………13

*Sadhu Singh Hamad Trust v. Ajit Newspaper Advert., Marketing and Comm'ns, Inc.*,
    503 F. Supp. 2d 577 (E.D.N.Y. 2007)……………………………………………………5

*Wilson v. Sundstrand Corp.*,
    2003 U.S. Dist. LEXIS 14356 (N.D. Ill. Aug. 18, 2003)………………………….*3*

4851-6823-0417.3

Plaintiff Games Workshop Limited ("Games Workshop"), requests that the Court preclude Defendant Chapterhouse Studios LLC ("Chapterhouse"), Defendant's counsel, and all of Defendant's witnesses from offering any evidence relating to any of the following matters within the hearing of any member of the jury panel, either in *voir* dire or at any time during trial. To the extent that the Court elects not to rule on these motions before trial, Plaintiff requests that the Court preclude counsel for Defendant and Defendant's witnesses from mentioning, referring to, offering any evidence, or soliciting any testimony relating to the following matters until the same has first been called to the Court's attention out of the presence of the jury and the Court has made a ruling as to each matter and counsel should be instructed to inform each of Defendant's witnesses of the contents of these motions so that no witness will violate them.

**1. An Adverse Inference Should Be Made Against Chapterhouse For Failing To Produce Any of Its Advertising or Promotional Material or Documents Concerning Its Customers' Reactions to Its Products.**

This Court should order an adverse inference against Chapterhouse that its advertising and promotions focus solely on similarities with Games Workshop's works and identify its products using Games Workshop's trademarks. On December 23, 2011, this Court Ordered Chapterhouse to respond to Games Workshop's document request number 16 by December 28, 2011, seeking "any and all documents or things in Chapterhouse's possession, custody or control, showing any advertising or promotion of any or all of the Accused Works." (Dkt. No. 139; Keener Decl., Ex. 1, Games Workshop's Second Set of Requests for Production). Chapterhouse's own Supplemental Response to Interrogatory No. 10 admits that Chapterhouse advertises on a number of websites devoted principally or exclusively to fans of Warhammer 40,000, including: belloflostsouls.net, dakkadakka.com, bartertown.com, heresy-online.net, warseer.com, tabletopgamingnews.com, theminiaturespage.com, and frothersunite.com. (Keener

1

Decl, Ex. 2, Chapterhouse's Sup. Resp. to Second Set of Interrogatories).

Despite the Court's Order, Chapterhouse failed to produce any postings advertising Chapterhouse products made by the two owners of Chapterhouse (Nick Villacci and Tomas Fiertek) on any of these websites. Recent efforts by Games Workshop have uncovered some of these documents, which include relevant (indeed damning) admissions of copying and comments by fans as to the similarities of Chapterhouse's products to the Games Workshop originals. *See, e.g.* Games Workshop's Exhibits 23, 39, 63, 65, 143, 144 in Support of its Motion for Summary Judgment.[1] By letter dated May 29, 2012 (Games Workshop's Exhibit 68 in Support of its Motion for Summary Judgment) Games Workshop alerted Chapterhouse to its failure, but it still produced no such documents.

Many of such documents are also responsive to Games Workshop's Document Request 26 seeking all documents "concerning any instances in which any consumer or potential consumer of any of Chapterhouse's products has mentioned or referred to Games Workshop, WARHAMMER or WARHAMMER 40,000 or expressed any confusion or question as to the association or affiliation between Chapterhouse or its products and Games Workshop and its products." (Keener Decl., Ex. 1) Many of the postings Games Workshop has found on these sites include acknowledgments by Chapterhouse and its customers as to the obvious resemblance of Chapterhouse's products to Games Workshop's originals. Although its response to Request

---

[1] Examples of such highly relevant and damning documents include:

- Mr. Villacci admitting that "We have been considering [the GW Iron Hands] chapter for a while, we just need to be able to create an icon similar enough to the real GW icon while being acceptable to players as well…" (Ex. 23 to GW's Motion for Summary Judgment);

- Mr. Villacci admitting his "Doomseer" product is "obviously supposed to be a female sculpt for Eldar players, no one ever denied that." (Ex. 39 to GW's Motion for Summary Judgment); and

- Mr. Villacci admitting his "Tervigon" kit is "a nice design that builds upon the Carnifex kit, yet fits true to what most tyranid players envision the Tervigon to be like on the table…Our Tervigon conversion kit has the parts necessary to turn your GW Carnifex kit into something that resembles on of their pictures." (Ex. 65 to GW's Motion for Summary Judgment).

2

26 stated that it would comply (Keener Decl., Ex. 3), in fact, it has produced nothing, thus depriving Games Workshop of the opportunity to gather further evidence from such individuals. Compounding the problem, Chapterhouse now objects to such documents as Games Workshop was able to locate on its own as constituting hearsay.

Chapterhouse should not be rewarded for its systematic failure to abide by the Court's order. An adverse inference is warranted that except for any products for which Chapterhouse has produced advertising, it promotes is products by using Games Workshop's trademarks and calling out that they are derived solely from Games Workshop's originals. (In none of the materials Games Workshop has found has Chapterhouse stated that its products are suitable for use with any other game system or have a place in any other fictional universe.) *Wilson v. Sundstrand Corp.*, 2003 U.S. Dist. LEXIS 14356 at * 21961359 at * 26-32 (N.D. Ill. Aug. 18, 2003) (Kennelly, J.).

## 2. An Adverse Inference Should Be Made Against Chapterhouse For Failing To Produce any Design Documents for Certain Products

This Court should order an adverse inference against Chapterhouse that any Accused Product for which it failed to produce design documentation was improperly copied from Games Workshop's products. On March 6, 2012, this Court Ordered Chapterhouse to make a good faith effort to produce all of the design documentation in its possession, custody, or control, including those in the possession of its alleged independent contractors. Such documents would have been responsive to Games Workshop's Request 10, seeking all documents regarding the creation of the accused works and Request 5, seeking all communications with the designers of the products. (Keener Decl., Ex. 1) Despite this Order, Chapterhouse has produced from its own files and from its designers no substantive design documents for numerous products at issue including: the Shoulder Pads for Chalice or Soul Drinker – Tactical, Shoulder Pads for Chalice or Soul Drinker

3

– Terminator, Ymgarl Heads for Tyranid Genestealers, SXV-141 Super-Heavy Assault Walker SAW, Mark I Rhino Conversion Kit, Rhino Tank Conversion Kit for Iron Snakes, Gun-Halberds, and Conversion Beamer Servo Harness Kit for Space Marines.  Despite this Order directing Chapterhouse to produce design documents from the 11 "independent designers" identified in its response to Interrogatory 3, it only produced 29 documents from these designers (other than Mr. Okamura; Mr. Nagy, and Mr. Villacci's partner, Mr. Fiertek), 17 of which were illegible photographs, and despite repeated requests (including as set forth in counsel's May 29, 2012 letter (Ex 68 to GW's Motion for Summary Judgment)) Chapterhouse has refused to share with Games Workshop its correspondence with these designers other than an initial email (but no responses or follow up) to demonstrate a good faith effort to comply with the Court's order. Moreover, for the "independent designers" for which Games Workshop was able to separately subpoena documents, such as Mr. Okamura and Mr. Nagy, Chapterhouse appears to be objecting to email correspondence between that designer and Chapterhouse on hearsay grounds.  (*See, e.g.* CHS Objections to GW Trial Exhibits 11-13, 21-22, 24, 43, 59-61, 105-106, and 385-394).

Chapterhouse should not be rewarded for its failure to produce design documentation for numerous products at issue in this case.  Games Workshop should be given an adverse inference instruction that the Accused Products for which Chapterhouse failed to produce design documentation were derived solely from Games Workshop's originals.

### 3. Defendant Should Be Precluded From Offering Evidence or Argument As To The Copyrightability of Games Workshop's Products Under English Law

On May 1, 2012, Games Workshop served its expert report of Michael Bloch on the issue of copyright ownership under English law, in particular (1) English law distinctions between employees and independent contractors; (2) English law on joint works; and (3) English law on equitable assignment.  (Keener Decl., Ex. 4, Bloch Report).  Chapterhouse served no opening

4

expert report on any issues of English law. On June 15, 2012, Chapterhouse served the rebuttal report of Lionel Bently. However, in addition to rebutting the issues raised by Mr. Bloch, the Bently Report also raised, for the first time, an issue of the copyrightability under English Law of Games Workshop's sculptural figures. No such issue had been raised by Plaintiff's expert.

The belated argument has no relevance under U.S. law. Chapterhouse has cited no authorities and offered no genuine argument why English law on copyrightability has any bearing here. Given the plain language of Section 104 of the Copyright Act following U.S. adherence to the Berne Convention, plainly it has none. *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985); *Sadhu Singh Hamad Trust v. Ajit Newspaper Advert., Marketing and Comm'ns, Inc.*, 503 F. Supp. 2d 577, 584 (E.D.N.Y. 2007); *Bridgeman Art Library v. Corel Corp.*, 36 F. Supp. 2d 191, 194-95 (S.D.N.Y. 1999); 17 U.S.C. § 104. Moreover, the expert, Bently, citing *Lucasfilms Ltd v Ainsworth* [2009] FSR 2, merely opined that "the *duration* of … copyright … was effectively limited under Section 52 of the [Copyright Designs and Patents Act] to 15 years unless the toys were regarded themselves as sculptures." (Ex. 127 to GW's Motion for Summary Judgment, Bently Rep. ¶32) (emphasis added). That certain copyrights may be time-limited in English jurisprudence has no relevance given the need to apply U.S. law to enforcement *remedies* here. Bently also conceded that English law has likely been supplanted by European law under a 2002 directive. (Keener Decl., Ex. 5, Bently Tr. at 71-73). In raising a question about the extent of Plaintiff's right to enforce its copyright under English law, the expert never even looked at a single Games Workshop miniature. (Ex. 5, Bently Tr. at 34:10-22) The issue is also of almost no relevance, as virtually all of Chapterhouse's copying is based on images in Games Workshop's books, precisely because Chapterhouse's business model is to design its own sculptural works to appeal to Warhammer 40,000 fans where

it perceives holes in Games Workshop's product line of miniatures and can nonetheless exploit the fans' knowledge of the underlying artwork.

In the alternative, if Chapterhouse is permitted to offer evidence on this subject, Games Workshop should be permitted to offer rebuttal testimony and evidence, including testimony by Games Workshop's expert on English law that goes beyond the testimony in that expert's report. The scheduling order in this case made no provision for sur-rebuttal reports. If the Court allows Chapterhouse to offer argument, testimony, or evidence on this issue, overall fairness requires Games Workshop be given the chance to provide rebuttal argument, testimony, and evidence.

### 4. Except As Expressly Permitted By The Court, The Experts Should Be Precluded From Offering Opinions Not Disclose in Their Reports.

Expert reports must contain a complete statement of the expert's opinions and their basis; the facts or data considered by the expert and any relevant exhibits. Fed. R. Civ. P. 26(a)(2)(B). Except as expressly permitted by the Court, experts should not be permitted to offer testimony beyond the opinions expressed in their expert report and the facts, data, and exhibits disclosed therein. For example, Chapterhouse submitted a 5-paragraph Expert Report of William F.N. Brewster for which he expressed specifically identified and opined on a very limited number of Games Workshop products at issue (a cruciform as used in product numbers 46-48 and a gear as used in product number 69). (Keener Decl., Ex. 8) Similarly, Mr. Brewster provided general opinions of prior military uses of a limited number of design elements (an unidentified shoulder pad, shields, a war hammer, unidentified firearms, and decorative elements such as geometric forms, skulls, cruciform, gears, and roman numerals). (Id.) Mr. Brewster should be precluded from offering any opinions about any Games Workshop products not specifically identified in his expert report and should similarly be precluded from offering any opinions about design elements not specifically discussed in his report.

6

**5. Defendant Should Be Precluded From Offering Evidence or Argument Challenging Games Workshop's Ownership of the Copyrights At Issue or Concerning Games Workshop's Products Not At Issue.**

Chapterhouse lacks standing to challenge Games Workshop's ownership of copyright.

*Billy-Bob Teeth v. Novelty, Inc.*, 329 F.3d 586 (7th Cir. 2003) (Where there is no dispute between the copyright owner and the transferee about the status of the copyright "it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement"). After arguing (incorrectly) in its summary judgment motion and its opposition to Games Workshop's summary judgment motion that Games Workshop had failed to prove ownership of works created by six individuals, all of whom are present or former employees (Wayne England, Clint Langley, Mike McVey, Bob Naismith, Simon Egan, and Adrian Smith). Chapterhouse for the first time argued in its reply (Dkt 244) that Games Workshop lacked standing to sue for works it did not own at the outset of the case. Unlike the cases Chapterhouse there cited[2], there is no issue in this case of Games Workshop acquiring works by assignment from third parties. Games Workshop has identified as Exhibits confirmatory assignments from the relevant present or former employees, none of whom had ever challenged plaintiff's ownership and whose works would have belonged to Games Workshop by operation of law anyway. (Ex. 4, Bloch Rpt.) The only confirmatory assignments from nominal freelancers (8 from Sabertooth, Langley, Abnett, and Counter) were obtained contemporaneously with the works or, at any rate, many years before commencement of suit.

The only individual author Chapterhouse has been able to find who, for the first time on September 19, 2012, claimed to own rights in two drawings he did for Games Workshop in 1987, Gary Chalk, is an author whose works are not in issue, as Games Workshop has confirmed

---

[2] The two cases cited by Chapterhouse involve acquisitions of patent rights by parties that had been total strangers to the title.

it is not claiming infringement of copyright in his two drawings. If, after 25 years of silence, he wishes to challenge Games Workshop's heretofore uncontested ownership, he can do so himself. His testimony is irrelevant here and neither confers on Chapterhouse standing to challenge Games Workshop's ownership nor raises an issue whether Games Workshop owned all of the t works actually at issue at the commencement of suit. Although Chapterhouse has listed him as a witness who may testify at trial, his testimony is irrelevant and should be excluded.

### 6.  Chapterhouse's Expert Report on Equitable Assignment Should Be Stricken

Review of the reports of Michael Bloch §§ 31(c), 66-97 and Lionel Bently reveals that the two experts agree almost entirely on the test for when an equitable assignment should be found. Indeed, Bently and Bloch agree that the principle is widely applied and there is no dispute that it has been applied in cases virtually identical to the facts here.[3] However, for political reasons (set forth in a public manifesto authored by Bently for a group called the Creators' Rights Alliance) he believes that the well-established doctrine should be eliminated because it is sometimes used to the disadvantage of individual authors, who have unequal bargaining power. See "*Between a Rock and a Hard Place: The Problems Facing Freelance Creators in the UK Media Market-place*" p. 15, 94 (accusing courts of "ludicrously" inferring equitable assignments to the disadvantage of authors). (Keener Decl., Ex. 6) Similarly, Bently's treatise (recognizing the frequency with which the doctrine is applied) argues that "the courts, by repeatedly responding to their sense that rights should follow the money, …undermine the goals

---

[3] One of the seminal cases on equitable assignment, *Robin Ray v Classic FM plc* [1998] FSR 620. cited by both experts, notes that "*There has been cited to me a considerable number of authorities where a copyright, brought into existence by a person ("the contractor") pursuant to a contract for services with another ("the client"), has been held to belong in equity to the client.*" In fact, in two cases that are virtually identical to the facts here, the English courts did apply the doctrine. In *Lucasfilms Ltd v Ainsworth* [2009] FSR 2, finding that an individual's contribution of a sculptural work to the movie Star Wars could only have been understood as being for the benefit of the film producers, not his individual account, and *R Griggs Group Ltd v Evans* (No.1) [2005] F.S.R. 31, where an individual was hired to create a logo for Doc Martens footwear with the obvious expectation it would be used only by the company. Bloch Report, §§ 84-92 and are not disputed by Bently.

that the statutory scheme aims to achieve." L. Bently and B Sherman, *Intellectual Property Law* (Oxford Univ. Press) p 133. (Keener Decl., Ex. 7) In his book and in the manifesto, Bently also cites additional case law upholding the doctrine that has not been cited in his expert report.[4] Bently's concerns for individual authors, no matter how well placed, are inapplicable here where the genesis of Warhammer 40,000 was all within Games Workshop and freelancers, when used are only asked to assist on derivative works based on prior original Games Workshop creations. Because Bently's report criticizing application of the doctrine is apparently colored by political views, his report cannot be deemed objective and should not be considered by the jury. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167 (1999) and FRE 702. Mr. Bently's avowed political biases and publicly stated views that accepted English law is ludicrous and should be changed make his testimony on this subject unreliable. That his testimony on the widespread acceptance of the principle of equitable assignment is otherwise consistent with Mr. Bloch's opinion, there is no prejudice by excluding such testimony.

7. **Defendant Should Be Precluded From Offering Evidence or Argument That Games Workshop Does Not Own The Copyrights or Trademarks It Elsewhere Admits Games Workshop Owns.**

Chapterhouse has freely and publicly admitted on the bottom of each page of its website that Games Workshop owns a large number of copyrights and trademarks, including but not limited to the following:

Adeptus Astartes, Battlefleet Gothic, Black Flame, Black Library, the Black Library logo, BL Publishing, Blood Angels, Bloodquest, Blood Bowl, the Blood Bowl logo, The Blood Bowl Spike Device, Cadian, Catachan, the Chaos device, Cityfight, the Chaos logo, Citadel, Citadel Device, City of the Damned, Codex, Daemonhunters, Dark

---

[4] Warner v Gestetner, Ltd, [1988] EIDPR D-89; Massine v. de Basil [1936-45] MacG CC 223; Brighton v. Jones [2005] FSR (16) 288; Auvi Trademark [1995] FSR 288; Flanders v Richardson [1993] FSR 497; A&M Records v. Video Collection [1995] EMLR 25

Angels, Dark Eldar, Dark Future, the Double-Headed/Imperial Eagle device, 'Eavy Metal, Eldar, Eldar symbol devices, Epic, Eye of Terror, Fanatic, the Fanatic logo, the Fanatic II logo, Fire Warrior, Forge World, Games Workshop, Games Workshop logo, Genestealer, Golden Demon, Gorkamorka, Great Unclean One, the Hammer of Sigmar logo, Horned Rat logo, Inferno, Inquisitor, the Inquisitor logo, the Inquisitor device, Inquisitor:Conspiracies, Keeper of Secrets, Khemri, Khorne, Kroot, Lord of Change, Marauder, Mordheim, the Mordheim logo, Necromunda, Necromunda stencil logo, Necromunda Plate logo, Necron, Nurgle, Ork, Ork skull devices, Sisters of Battle, Skaven, the Skaven symbol devices, Slaanesh, Space Hulk, Space Marine, Space Marine chapters, Space Marine chapter logos, Talisman, Tau, the Tau caste designations, Tomb Kings, Trio of Warriors, Twin Tailed Comet Logo, Tyranid, Tyrannid, Tzeentch, Ultramarines, Warhammer, Warhammer Historical, Warhammer Online, Warhammer 40k Device, Warhammer World logo, Warmaster, White Dwarf, the White Dwarf logo, and all associated marks, names, races, race insignia, characters, vehicles, locations, units, illustrations and images from the Blood Bowl game, the Warhammer world, the Talisaman world, and the Warhammer 40,000 universe are either ®, TM and/or © Copyright Games Workshop Ltd 2000-2010, variably registered in the UK and other countries around the world. Used without permission. No challenge to their status intended. All Rights Reserved to their respective owners.
(Ex. 19 to GW's Motion for Summary Judgment)

Chapterhouse amended its notice during the pendency of this action, with full knowledge of the claims at issue, to make the above admission.  Although Chapterhouse has alleged that this notice was taken from Games Workshop's own website and includes reference to ownership of rights in countries in addition to (but *including*) the United States, given this voluntary and knowing public admission, Chapterhouse should be precluded at trial from challenging ownership of these same trademarks and copyrights.

### 8. Defendant Should Be Precluded From Offering Evidence or Argument Alleging Games Workshop Does Not Own The Trademarks at Issue Or That Any Games Workshop's Products Were Not Sold In Interstate Commerce.

Chapterhouse has named virtually every one of its products after the corresponding Games Workshop originals; and in support of its defense of nominative fair use, it asserts that it *must* use Games Workshop's trademarks in order to identify its own competing products to the relevant customers.  So long as it intends to rely on this defense, Chapterhouse should not be permitted to argue that the same trademarks somehow are not trademarks. Moreover,

10

Chapterhouse's owner admits in deposition testimony that he has been purchasing Games Workshop products since he was in his teens and he and Chapterhouse have a vast collection of thousands of such products (Ex. 136 to GW's Motion for Summary Judgment). In the parties' summary judgment motions, Chapterhouse offered no testimony questioning that all of the subject products are indeed on sale in the United States and have been since prior to Chapterhouse's own decision to name all of its products using Games Workshop's names. As such, Chapterhouse should not be permitted to take an inconsistent position unless it has a good faith basis, consistent with Fed.R.Civ.P. Rule 11, to challenge such known and uncontested use in commerce. It will simply cause needless delay and potentially confuse the jury.

### 9. Defendant Should Be Precluded From Offering Testimony, Evidence or Argument Regarding Any Chapterhouse Works Not At Issue.

In an attempt to narrow the number of works at issue for trial, Games Workshop has identified 33 works for which Games Workshop is no longer asserting any claims of copyright infringement. Additionally, during the course of this litigation, Chapterhouse has designed, developed, and released additional products which are not at issue in this case and for which no discovery has taken place and which are the subject of a second planned lawsuit. While Games Workshop believes that many of these new products continue to infringe Games Workshop's copyrights and trademarks, they are not at issue here and are being addressed in a separate complaint. Thus, any testimony, evidence, or argument concerning them is irrelevant; will only risk jury confusion, and should be excluded. Fed. R. Evid. 401, 402, and 403.

### 10. Defendant Should Be Precluded From Offering Testimony, Evidence or Argument Regarding Any Affirmative Defenses Not Provided In Discovery.

Plaintiff's Interrogatory 2 sought identification of any works on which Chapterhouse relied in creating the accused works, including to support its defense of independent creation and its Interrogatory 13 sought identification of any evidence to support its 23 affirmative defenses.

(Keener Decl., Ex. 9, CHS 2nd Sup. Resp. to 1st Set of Interrog.; Keener Decl., Ex. 2, CHS 1st Sup. Resp. to 2nd Set of Interrog). Following motion practice (Dkt. 117), Chapterhouse did make reference to a few works in its response to Interrogatories 2 and 13. (Keener Decl., Exs. 2, 9). However, it should be not be permitted to rely on works not identified in response to these requests to support any of its defenses and should not be permitted to rely on any third-party works to challenge the originality of Games Workshop's works without evidence that Games Workshop reviewed or relied on such works in creating the copyrighted materials in issue. See *Boisson v American County Quilts and Linens*, 273 F.3d 262, 268 (2nd Cir. 2001) (originality "simply means a work independently created by its author, one not copied from pre-existing works, and a work that comes from the exercise of the creative powers of the author's mind …", citing *In re Trade-Mark Cases,* 100 U.S. 82, 94 (1879). This includes most of the exhibits to the report of the claimed expert, William Brewster, insofar as there is no foundation that either party relied on these materials. Nor has defendant asserted among its affirmative defenses *scenes a faire* or merger, such that there is no basis for Defendant to contend that any such elements are necessary to creating a futuristic universe and game.

### 11. Except as Expressly Permitted by The Court, The Parties Should Be Precluded from Mentioning or Referring to Any Pre-Trial Rulings by the Court or Any Other Pre-Trial Disputes.

The parties should be prohibited from mentioning or referring to pre-trial rulings by the Court. Unless expressly permitted by the Court, discussions before the jury about the Court's prior rulings on discovery disputes, summary judgment, or any other issues may result in prejudicing the jury unfairly by suggesting that the Court favors one side over the other. *See* Fed. R. Evid. 403. Similarly, the parties should be prohibited from referring to any pre-trial disputes that did not result in any rulings by the Court or referencing objections made by the opposing party in its discovery responses. The witnesses have no personal knowledge of such

procedural matters, and such inquiries would create a danger of unfair prejudice and would confuse the jury. Fed. R. Evid. 401, 403. On the same grounds, no evidence or statements should be permitted regarding newly raised perceived discovery issues where such issues were not the subject of a prior Court ruling.

### 12. Chapterhouse Should Be Precluded From Offering Evidence or Argument of Plaintiff's Efforts to Enforce Its Intellectual Property Rights Against Third Parties, Including Former Defendant Jon Paulson.

Although Plaintiff is not aware of any such matter that Chapterhouse may wish to raise, whether Plaintiffs has asserted or contemplated asserting its intellectual property rights against others under other circumstances and without regard to actions plaintiff has elected *not* to pursue have no probative value here and any possible probative value is far outweighed by its prejudicial effect. *See* Fed. R. Evid. 403. Allowing Defendant to mention other proceedings involving Plaintiff would be wasteful and would allow the jury to draw unwarranted inferences that are irrelevant to the claims and defenses here. *See, e.g., Leboeuf v. K Mart Corp.*, 888 F.2d 330, 334 (5th Cir. 1989) (upholding trial court exclusion of issues that had "'no direct relation…'" to the ultimate issues in this case and that it was more likely to mislead the jury than to add to its relevant information"). Accord, *Porous Media Corp. v. Pall Corp.* 173 F.3d 1109, 1117 (8th Cir. 1999). Evidence of other proceedings is also irrelevant to whether Defendant is liable in this lawsuit and would amount to impermissible character evidence. *See* Fed. R. Evid. 404. The Court thus should exclude testimony, argument or exhibits relating to other actual or contemplated copyright or trademark infringement actions. Similarly, Defendant should be precluded from referring to the fact that there was another defendant who has settled, and, unless modified, should be precluded from publishing the case caption to the jury as it identifies a defendant not at trial. The Court has already reviewed the settlement correspondence and deemed it outside the proper scope of discovery. It is no more relevant at trial.

13

### 13. Defendant Should Be Precluded From Offering Testimony, Evidence or Argument As To Plaintiff's Policies That Are Not Tied To Defendant's Conduct.

Defendant should be excluded from introducing evidence of Plaintiff's general statements and policies regarding its intellectual property unrelated to Defendant's actual conduct. Notably, it appears that Defendant intends to rely on various statements on Games Workshop's website about Games Workshop's IP Policy as it relates to its fans, expressly *excluding* those who seek commercial gain. These general statements are irrelevant and likely to lead to jury confusion. There is no evidence that Defendant knew about these general policies, much less relied upon them, making them irrelevant and inadmissible under Federal Rule of Evidence 402, and allowing Defendant to introduce these policies risks jury confusion. Defendant seeks to introduce policies about what Plaintiff permits non-commercial entities to do, having no application to the commercial activity here at issue.

### 14. The Parties Should Be Precluded from Mentioning or Referring to Either Party's Billing Arrangements With Its Lawyers .

The Parties should be prohibited from offering any statement, reference or criticism of how the Parties employed their attorneys, including how or whether the Parties' are represented on a pro bono or cash fee basis, or who is paying any litigation expenses. Such matters are not irrelevant and would be raised solely to unfairly prejudice the Parties' position without any probative value. Fed. R. Evid. 402, 403. Games Workshop has taken no discovery on the issue of Chapterhouse's billing arrangements, notwithstanding that it has spent lavishly on videotaping depositions, flying attorneys around the world for depositions when Games Workshop has simply used telephone or video links; has hired a jury consultant and has employed teams of lawyers as against the two lawyers employed by Games Workshop. The legal fees and expenses incurred are not relevant to any issues for the jury's consideration, and would serve to unduly prejudice Plaintiff, mislead the jury, and waste time. Fed. R. Evid. 402, 403.

### 15. Parties Should Be Precluded From Offering Evidence or Argument Regarding Any Amended or Withdrawn Pleadings, Claims or Discovery Responses.

The fact that Plaintiff has amended its pleadings or discovery responses, or that Plaintiff pled earlier claims or allegations that that have been amended or withdrawn, should be excluded from evidence. This includes Games Workshop's decision not to pursue copyright infringement claims as to 33 products, which was done largely to simplify the trial, and its amendments of objections and responses to document requests as the basis for Chapterhouse's requests were later clarified, as to which the witnesses will have no knowledge. Withdrawn claims and allegations are utterly relevant. *See* Fed. R. Evid. 401-2; *see also EZ Dock, Inc. v. Shafer Sys., Inc.*, No. 98-2364, 2003 U.S. Dist. LEXIS 3634 at *37 (D. Minn. Mar. 8, 2003) Even if these issues were relevant, the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury and would cause undue delay and wasted time. Fed. R. Evid. 403.

### 16. The Parties Should Be Precluded from Posing Questions that Seek to Invoke Assertions of Privilege or Offering Testimony, Evidence or Argument Regarding Information or Documents That Were Previously Withheld as Privileged.

The parties should be prohibited from questioning witnesses about these matters in front of the jury because such questions will simply draw a valid objection on privilege grounds and will result in prejudicing the jury unfairly against the witness or party for protecting their legal rights. *See* Fed. R. Evid. 403.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the foregoing Motions in *Limine.*

4851-6823-0417.3

Dated:  November 6, 2012

Respectfully submitted,
/s/  Jason J. Keener

    Jason J. Keener (Ill. Bar No. 6280337)
    FOLEY & LARDNER LLP
    321 North Clark Street, Suite 2800
    Chicago, IL 60654-5313
    Telephone:  312.832.4500
    Facsimile:  312.832.4700
    Email:  jkeener@foley.com

    Jonathan E. Moskin
    FOLEY & LARDNER LLP
    90 Park Avenue
    New York, New York 10016
    Telephone:  (212) 682-7474
    Facsimile:  (212) 687-3229
    Email:  jmoskin@foley.com

    *Attorneys for Plaintiff*
    *Games Workshop Limited*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Jason J. Keener, an attorney, hereby certify that on November 6, 2012, I caused to be filed electronically the foregoing PLAINTIFF'S OMNIBUS MOTION IN LIMINE with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

/s/ Jason J. Keener
Jason J. Keener

17

4851-6823-0417.3