**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC and | ) | |
| JON PAULSON d/b/a PAULSON GAMES, | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | |

**CHAPTERHOUSE STUDIOS LLC'S MOTION *IN LIMINE***

# TABLE OF CONTENTS

STANDARD ........................................................................................................................1

ARGUMENT .......................................................................................................................1

I.     GW SHOULD BE PRECLUDED FROM OFFERING CERTAIN
EVIDENCE AT TRIAL THAT IT DID NOT PRODUCE DURING
DISCOVERY .............................................................................................................1

     A.    Late-Produced Exemplars of GW's Alleged Copyrighted Works Should
Be Excluded ...........................................................................................................2

     B.    Late-Produced Evidence of the Use of GW's Trademarks in the United
States Should Be Excluded ....................................................................................4

II.    GW SHOULD BE PRECLUDED FROM INTRODUCING TESTIMONY
FROM PROPOSED EXPERT MICHAEL BLOCH PURPORTING TO
APPLY UK LAW TO THE FACTS OF THIS CASE ....................................................6

     A.    Bloch Offers Opinions that Lack Any Factual Basis ..............................................7

     B.    Bloch's Opinions, Report, and Testimony Should Be Excluded ...........................8

III.   GW SHOULD BE PRECLUDED FROM INTRODUCING ITS
COPYRIGHT APPLICATIONS AND REGISTRATIONS ..........................................10

     A.    GW's Pending Copyright Applications are Irrelevant, Contain False and
Misleading Information, and are Likely to Mislead Jurors...................................10

     B.    GW's Copyright Registrations Contain False and Misleading Information
that Is Likely to Mislead Jurors ...........................................................................11

IV.   GW SHOULD BE PRECLUDED FROM INTRODUCING CERTAIN
COPYRIGHT ASSIGNMENTS AND EMPLOYMENT CONTRACTS .................12

     A.    GW Should Be Precluded from Introducing Copyright Assignments
Executed After the Inception of This Litigation ...................................................12

     B.    GW Should Be Precluded from Introducing Employment Contracts
Introduced After the Close of Fact Discovery ......................................................13

V.    GW SHOULD BE PRECLUDED FROM ARGUING FOR SUBSTANTIAL
SIMILARITY BASED SOLELY ON PUBLIC DOMAIN ELEMENTS ...................13

VI.   GW SHOULD BE PRECLUDED FROM INTRODUCING IRRELEVANT
THIRD PARTY POSTINGS ON FORUM WEBSITES ...........................................14

VII.  GW SHOULD BE PRECLUDED FROM INTRODUCING ANY
EVIDENCE REGARDING chs'S SUBSEQUENT REMEDIAL
MEASURES ............................................................................................................14

CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Bryant v. Gordon,
483 F. Supp. 2d 605 (N.D. Ill. 2007) ..................................................................13

Central Mfg., Inc. v. Brett,
492 F.3d 876 (7th Cir. 2007) ............................................................................5, 6

Clark v. Takata Corp.,
192 F.3d 750 (7th Cir. 1999) ...............................................................................9

Daubert v. Merrell Dow Pharms., Inc.,
509 U.S. 579 (1993)............................................................................................9

Ford v. Schmidt,
577 F.2d 408 (7th Cir. 1978) .......................................................................14, 15

Gaia Techs., Inc. v. Reconversion Techs., Inc.,
93 F.3d 774 (Fed. Cir. 1996)..............................................................................12

Jonasson v. Lutheran Child and Family Servs.,
115 F.3d 436 (7th Cir. 1997) ...............................................................................1

Kelley v. Chicago Park Dist.,
635 F.3d 290 (7th Cir. 2011) .............................................................................13

Kumho Tire Co., Ltd. v. Carmichael,
526 U.S. 137 (1999)............................................................................................9

Lincoln Diagnostics v. Panatrex, Inc.,
No. 07-CV-2077, 2009 WL 3010840 (C.D. Ill. Sept. 16, 2009) ...........................2, 3

Moore v. Metro. Water Reclamation Dist. of Greater Chicago,
No. 02 C 4040, 2004 WL 2958769 (N.D. Ill. Nov. 22, 2004)...................................1

Native Am. Arts, Inc. v. Duckhouse, Inc.,
No. 05-C-2176, 2007 WL 2789274 (N.D. Ill. Sept. 20, 2007)..................................2

Propet USA, Inc. v. Shugart,
No. 06-cv-0186, 2007 WL 2766718 (W.D. Wash. Sept. 19, 2007) ........................10

Triple Tee Golf, Inc. v. Nike, Inc.,
2007 WL 4260489 (N.D. Tex. Aug. 24, 2007), aff'd on appeal, 281 Fed. Appx. 368
(5th Cir. 2008)..................................................................................................12

*Wendler & Ezra, P.C. v. American Int'l Group, Inc.*,
   521 F.3d 790 (7th Cir. 2008) ................................................................9

*Wielgus v. Ryobi Techs., Inc.*,
   No. 08-CV-1597, 2012 WL 3643682 (N.D. Ill. Aug. 13, 2012) ................................................1

*Wilson v. Williams*,
   182 F.3d 562 (7th Cir. 1999) ................................................................1

## STATUTES

17 U.S.C. 410(c) ................................................................10

## OTHER AUTHORITIES

30 Am. Jur. Proof of Facts 3d 307 § 18 (2012) ................................................................14

37 C.F.R. § 202.1(a), (e) ................................................................13

CDPA §§ 11(2), 90(3) ................................................................7

Federal Rule of Evidence 702 ................................................................8, 9

McCarthy on Trademarks § 19:118 ................................................................6

U.S. Copyright Office,
   Compendium II: Copyright Office Practices §503.02(a)-(b) (1984) ................................................13

Pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules, Defendant Chapterhouse Studios LLC ("CHS") submits this Motion *in Limine* to exclude the introduction of: (1) certain evidence created or produced after the close of discovery; (2) testimony from Games Workshop Limited's ("GW") proposed expert, Michael Bloch, purporting to apply UK law to the facts of this case; (3) GW copyright applications and registrations not at issue; (4) certain copyright assignments and employment contracts; (5) argument for infringement based on public domain elements; (6) third party blog posts; and (7) evidence of subsequent remedial measures.

## STANDARD

Motions *in limine* are "designed to avoid the delay and occasional prejudice caused by objections and offers of proof at trial." *Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999). Federal courts have "broad discretion in resolving motions *in limine*." *Wielgus v. Ryobi Techs., Inc.*, No. 08-CV-1597, 2012 WL 3643682, at *1 (N.D. Ill. Aug. 13, 2012). They perform a "gatekeeping function" by allowing the trial judge to "eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). They are also granted to exclude evidence when its "prejudicial value substantially outweighs the probative value." *Moore v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 02 C 4040, 2004 WL 2958769, at *4 (N.D. Ill. Nov. 22, 2004).

## ARGUMENT

I. **GW SHOULD BE PRECLUDED FROM OFFERING CERTAIN EVIDENCE AT TRIAL THAT IT DID NOT PRODUCE DURING DISCOVERY**

Throughout fact discovery, GW failed to produce significant evidence, in violation of the rules and this Court's orders. In an effort to improperly supplement its case, GW made 11 separate productions totaling 5,486 pages (GW0005939-11424) in the seven months between the

close of discovery and the submission of the Joint Pretrial Order identifying its trial exhibits.[1] Now, GW seeks to introduce at trial 181 exhibits that were either never produced or produced well after March 2, 2012 when GW certified that its production was complete. Golinveaux Decl., ¶4 (detailing late produced exhibits) and Ex. A (GW Proposed Trial Exhibit List).

The introduction of any of these exhibits is prejudicial. Nevertheless, CHS narrows its motion *in limine* to only two categories of documents that it repeatedly requested from GW: late-produced (1) exemplars of alleged infringed works and (2) evidence of alleged use of GW's trademarks in the United States. Motions *in limine* are appropriate to preclude the introduction of at trial of evidence not produced in discovery. *See Native Am. Arts, Inc. v. Duckhouse, Inc.*, No. 05-C-2176, 2007 WL 2789274, at *3, n.1 (N.D. Ill. Sept. 20, 2007) ("The appropriate avenue is to . . . file a motion *in limine* if plaintiff otherwise indicates it will present evidence not disclosed during discovery."); *Lincoln Diagnostics v. Panatrex, Inc.*, No. 07-CV-2077, 2009 WL 3010840, at *5 (C.D. Ill. Sept. 16, 2009) ("any documents relevant to the issue of damages that Defendant did not produce prior to the 'drop dead' date . . . could not be presented by Defendant at trial.").

## A.     Late-Produced Exemplars of GW's Alleged Copyrighted Works Should Be Excluded

CHS propounded discovery seeking the basis for GW's claims and identification of the specific works allegedly infringed. ECF No. 208-2 (CHS MSJ), Exs. 1-2. In response, GW provided charts identifying the copyrights it claimed were infringed by each CHS product. *Id.*, Exs. 3-5. But it provided minimal exemplars of its work as requested, despite this Court's orders ECF Nos. 69, 139. For example, at a December 19, 2011 hearing, the Court instructed GW:

> [W]hat the defendant is entitled to here is kind of the – sort of the best example of what it is that you think they ripped off from you. And I would be surprised if that black-and-white printout from a website is the best example . . . You know, if it's in color, you need to give them something in color. If it's three-dimensional, you need to give them something three-dimensional or at least, you know, some really good pictures of it so that they can see the three-dimensional aspects of it, and that's what you need to do.

---

[1] Declaration of Jennifer A. Golinveaux filed herewith ("Golinveaux Decl."), ¶2.

ECF No. 171 at 33:22-34:16. The Court then ordered GW to produce "the best available exemplar of the works in question." *Id.* at 35:21-24. On March 2, 2012, after repeated attempts by CHS and the Court to induce GW to produce exemplars of its claimed works, GW certified to the Court that its production was complete to the best of its knowledge, except for new requests. ECF No. 187.[2] Accordingly, CHS deposed eight GW employees using the universe of exemplars that had been disclosed. Fact discovery closed on March 15, 2012. ECF No. 116.

Then, long after the close of fact discovery, after its counsel certified its production as complete, and after CHS had completed its depositions, GW finally produced many of the exemplars CHS had long requested. GW has identified fifty-six of these documents or physical items as trial exhibits, including: Proposed GW Trial Exhibits ("Tr. Exs.") 14-16, 18, 20, 57, 62, 63, 93, 94, 96, 102, 111, 119, 121, 325, 445-480, 534-537. Golinveaux Decl. ¶4 and Ex. A. These include numerous color copies of books that were produced only as black-and-white scans, or produced only in fragmentary form, or never produced in *any* form, website pages, pictures and drawings, and three-dimensional physical exhibits that have still not been produced. GW should not be permitted to make an end-run around the Court's order to produce copyright exemplars during discovery.[3]

Allowing the introduction of such late-produced (and never-produced) exemplars would be highly prejudicial to CHS when it was prevented from deposing any GW witness on these exhibits. GW has offered no credible reason for why these documents—which were obviously

---

[2] On March 6, 2012, CHS raised its concern to the Court that GW would produce many documents after the close of discovery. The Court responded that, "As far as what's characterized as a hedge in the plaintiff's . . . submission regarding the nature of the document search and the production, I'm satisfied for the time being that it's adequate . . . A lawyer who has an appearance on file in the case has given it to me, and they are just as subject to sanctions as anybody else would be for, you know, submitting a document that turns out to be untrue." Golinveaux Decl. Ex. B, 3/6/2012 Hearing Tr. at 54:7-14.

[3] GW attempts to justify its production of *some* of the additional copyright exemplars after the close of fact discovery (its August 9, 2012 production consisting of Tr. Exs. 15, 62, and 93) by claiming it "had no reason to expect" CHS's challenge to ownership of its miniatures. ECF No. 230 (GW Opp. to CHS MSJ) at 20 n.13. GW ignores that CHS raised the issue of copyright ownership under U.K. law more than a year ago. *See, e.g.,* ECF No. 78 (Aug. 8, 2011) at 7-9 ("Plaintiff must show ownership of the copyright in [its alleged] works under U.K. law."). The threshold issue of ownership is also part of a copyright plaintiff's *prima facie* case. GW has no excuse for its late production.

not newly acquired by GW (*see*, *e.g.*, *id.*, Tr. Ex. 534, the "GW Complete Catalog & Hobby Reference," dated 2005-2006)—were withheld during discovery when they were repeatedly requested by CHS. GW will not be prevented from using any exemplars to prove its case; it will simply be limited to the exemplars it produced during discovery. To permit GW to use documents at trial that it withheld during discovery is prejudicial to CHS.

**B.** **Late-Produced Evidence of the Use of GW's Trademarks in the United States Should Be Excluded**

During discovery, GW also failed to produce any evidence of sales of product under each or any of the GW marks at issue despite CHS's discovery requests.[4] ECF No. 210 (CHS SUF) ¶ 62. GW's 30(b)(6) witness testified that the company had no sales records proving if or when a particular product was sold in the U.S., and directed CHS to Games Workshop Retail ("GWR"), its U.S. subsidiary.[5] But when CHS subpoenaed GWR, it objected to all of CHS's document requests on the basis that they were "needlessly cumulative and repetitive of discovery requests previously answered by Games Workshop Limited" and produced nothing.[6] Moreover, when asked if the company would have a record of when it first sold a product in the U.S., GWR's 30(b)(6) witness stated that information "would not be readily available." ECF No. 208-33, Ex. 16 at 50:14-18. CHS issued yet another Request for Production for "sales, revenues, and profits" and geographic regions where GW used its trademarks. ECF No. 208-42, Ex. 57 ¶ 81. Before GW served its written responses to those requests, it certified that it had completed its document production. ECF No. 187, March 2, 2012. GW subsequently served formal written responses to CHS's Request on March 12, 2012, objecting and not producing additional documents on the purported basis it had already produced such documents earlier. ECF No. 244-5, Ex. 4 ¶ 81.

Months after the close of discovery, apparently recognizing that it must establish use of

---

[4] The only sales-related data that GW produced before the close of fact discovery and its March 2, 2012 Certification were 13 pages of unitemized sales records. ECF No. 208-1 (Kearney Decl. at ¶88); ECF No. 210 (CHS SUF) at ¶ 62.

[5] ECF No. 208-32, Ex. 15 at 11:14-12:10, 24:12-25:2, 25:14-26:18.

[6] ECF No. 208-35, Ex. 32 ¶ 1; ECF No. 208-33, Ex. 16 at 93:14-17.

each and every alleged mark as a trademark in U.S. commerce, GW evidently cobbled together more than 40 spreadsheets of never-before-produced sales information, which it now seeks to introduce as trial exhibits. *See* ECF No. 208-1 (Kearney Decl. ¶89, describing 41 spreadsheets GW provided nearly two months after CHS deposed GW's 30(b)(6) witness). GW seeks to introduce the following "sales summaries," sales data, or catalogs of products at trial: Tr. Exs. 125, 216, 346-384, 532-535. *See* Ex. A.[7]

These late-produced documents are not proper trial exhibits. For example, GW *concedes* that Tr. Ex. 216 (Exhibit 145 to GW's summary judgment papers, Golinveaux Decl., Ex. D) was made for this lawsuit and not a record kept in the normal course of business but implies that it is "audited accounting records." *Compare* ECF No. 230-29 (Supp. Decl. of A. Jones) ¶ 2 *with* ECF 230 at 21. Exhibit 216's headings also make clear its litigation-specific nature: "Proof", "Date of First Use in commerce in the US at least as early as", etc. GW's failure to timely produce this exhibit is compounded by its numerous inconsistencies, which would clearly necessitate further discovery. *See* ECF No. 243-3 (Sec. Supp. Decl. of A. Jones) ¶ 2 (conceding sales data included Canadian sales).

Because they were all produced for the first time after the close of fact discovery and depositions, CHS had no opportunity to depose GW about any of those sales summaries, including the discredited Tr. Ex. 216. This late production is particularly prejudicial because it involves spreadsheets that are incomprehensible to anyone outside GW. *See, e.g.*, Tr. Ex. 371, "Black Library Sales Data – 2007-08 (Golinveaux Decl., Ex. E). Moreover, "[t]here is no way

---

[7] Although GW failed to produce any of the sales summaries it now seeks to introduce as trial exhibits before the close of fact discovery and its March 2, 2012 Certification, GW has misleadingly suggested that it previously produced them before then. ECF No. 245 (CHS Reply SUF) ¶ 80; ECF No. 230 (GW Opp. to CHS MSJ) at 21 ("produced additional sales information in the form of detailed spreadsheets"), ECF No. 230-18 (Moskin Decl.) ¶ 6 ("[GW] subsequently produced sales [sic] detailed monthly sales data for each of GW's products"). This is not the case. ECF No. 244-1 (Kearney Decl.) ¶¶ 13, 18. Rather, GW complained that "it would have been inconceivable for the company to produce such records" during discovery, given millions of dollars in sales. ECF No. 230 (GW Opp. to CHS MSJ) at 22. But this serves no excuse. *Central Mfg.*, 492 F.3d at 883 ("It is unfathomable that a company claiming to have engaged in thousands of dollars of sales of a product for more than a decade would be unable to produce even a single purchase order or invoice as proof").

5

for this Court to know that this alleged sales sheet bears any relation to reality . . . [as it is] simply something Plaintiff[] generated on a [] computer for the purposes of this litigation." *See Central Mfg., Inc. v. Brett,* 492 F.3d 876, 882 (7th Cir. 2007) (internal citation and quotation omitted); McCarthy on Trademarks § 19:118 (records of "intra-company shipments . . . do not constitute bona fide shipments to satisfy" the use-in-commerce requirement). Having repeatedly claimed no evidence existed during the discovery period, GW should not now be allowed to rely upon self-serving, unsubstantiated summaries produced after discovery closed.

## II. GW SHOULD BE PRECLUDED FROM INTRODUCING TESTIMONY FROM PROPOSED EXPERT MICHAEL BLOCH PURPORTING TO APPLY UK LAW TO THE FACTS OF THIS CASE

After initially claiming "all of Games Workshop's works in issue were created by Games Workshop employees" (ECF No. 83 ¶ 19), and denying CHS's discovery regarding authorship on that basis, GW conceded well after the close of fact discovery that at least a dozen of its works were created by freelancers. ECF No. 208-19, Ex. 8 (Bloch Report) ¶ 22(e). In an effort to claim copyright ownership in the works of those freelancers, GW intends to offer expert witness Michael Bloch,[8] who opines that copyright in the disputed works transferred to GW under English law by virtue of (1) the authors' employee status; (2) the works' status as jointly authored; and/or (3) "equitable assignment." *Id.*, ¶ 31(d). Bloch openly admitted, however, that he had no facts to support these opinions. Indeed, Bloch acknowledged that applying the law to the facts with respect to any particular author or work in this case is the function of the fact-finder. Yet that is exactly what Bloch purports to do—render opinions as to whether authors *in this case* were employees, whether they jointly authored disputed works, and whether copyright in the disputed works passed to GW via equitable assignment. *Id.*

Under English law, the author of a work is the presumptive owner of copyright except: (a) where a work was created by an employee, acting in the course and scope of his employment,

---

[8] The Bloch report was co-authored by Harris Bor. Bloch acknowledged at deposition that Bor researched, drafted, and signed the report, but GW refused to produce Bor's billing invoices in discovery or allow CHS to depose him.

6

the employer owns the copyright; and (b) an owner may assign his copyright to another by a signed writing. *See* CDPA §§ 11(2), 90(3) (ECF No. 208-19 at 127-134); ECF No. 208-19, Ex. 9 (Bently Report) ¶¶ 52-60; 122-126. GW apparently instructed Bloch that there were "12 works in issue" created by independent contractors and/or freelancers. ECF No. 208-19, Ex. 8 (Bloch Report) ¶ 22(e). Accordingly, Bloch was retained to support GW's theories that (1) such authors were employees, (2) the works at issue were jointly authored, and (3) GW became the owner of the copyrights at issue through "equitable assignment." *Id.* ¶¶ 2-3.[9]

### A. Bloch Offers Opinions that Lack Any Factual Basis

Bloch openly acknowledged that he did not review the facts concerning the works at issue, the authors at issue, or any "employment" information for the freelance authors. *Id.* ¶ 14; Golinveaux Decl., Ex. F at 116:13-118:10. GW apparently told Bloch there were "12 works in issue" for which copyright ownership was in question, *but did not even tell Bloch what those 12 works or authors were. Id.* Instead, Bloch was provided very limited background upon which to base his opinion: the complaint/answer, the deposition transcripts of Goodwin, Blanche, and Jones, "various examples" of artwork, a model jury instruction, and five alleged agreements or assignments purporting to transfer copyright. ECF No. 208-19, Ex. 8 (Bloch Report) ¶ 14. Bloch's purported opinions thus lack factual support tying the documents GW provided to any of the authors and works at issue.

Despite the paucity of facts, the Bloch Report opines about the application of English law to this case.[10] At deposition, Bloch admitted he had reviewed no facts concerning who the "independent contractor/freelancers" referred to in his report were, or what works they authored:

---

[9] Tellingly, since the completion of Bloch's deposition, GW has either dropped claims of employee authorship or produced confirmatory assignments of copyright, in an apparent effort to reduce the number of disputed authors.

[10] *See*, *e.g.*, Bloch Report (ECF No. 208-19, Ex. 8) ¶98 (". . . [A]t least some of [the] independent contractors/freelancers working for the Plaintiff were in fact employees as a matter of law."), ¶ 99 (As such, the copyright in work produced by these "employees" is owned by GW), ¶ 101(a) (Independent contractors worked on projects that were "integral to the Plaintiff's business . . . [F]reelancers saw themselves as being integral to the business."), ¶101(b) (There was a "significant level of control exercised over the freelancers by the Plaintiff."), ¶ 102 ("[N]one of the individual contractors/freelancers

> Q.  So you wrote this report with the assumption that there were only 12 works in dispute, is that correct?
>
> A.  With the assumption that there were "12 works in issue which alleged independent contractors/freelancers have participated," yes.
>
> Q.  And to your understanding, did the plaintiff or plaintiff's counsel also identify for you who the alleged independent contractors and/or freelancers were?
>
> A.  *No, I didn't go through individually looking at the facts in relation to each one of those, and I don't think I've made any attempt to opine on that here.*

Golinveaux Decl., Ex. F at 117:24-118:10 (emphasis added). Bloch also admitted having no factual knowledge of the "12 works" he was asked to opine about:

> Q.  […] What 12 works are you referring to?
>
> A.  That is something which I have been told, that I don't think I have set out here. I'm not sure that -- I'm pretty sure I haven't specifically identified those 12 works. If that's wrong, you can tell me.
>
> …
>
> Q.  So did the plaintiff or plaintiff's counsel identify for you or Mr. Bor the 12 works?
>
> A.  No. I think that's the extent of the dispute rather than -- I mean, yes is the answer, i.e. what I've answered is correct, or that is my correct recollection, I'm not sure that it's correct.

*Id.* at 116:13-117:13.

Finally, Bloch admitted he had not reviewed any disputed works to determine their authorship, or the employment relationship between the authors and GW. *Id.* at 133:17-134:13.

## B.  Bloch's Opinions, Report, and Testimony Should Be Excluded

Expert opinion testimony is admissible only if it is based on scientific or otherwise specialized knowledge, and will assist the trier of fact to understand the evidence or determine a fact in issue. FRE 702. For that reason, trial judges must screen all expert testimony offered to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but

---

who contributed to the works in issue created their illustrations independently, and [] close collaboration was the norm . . . As such, these works "constitute[d] joint works."), ¶106 ("In addition to there being joint ownership, it also seems likely to me that…there are instances where the freelancer's contribution was not sufficiently creative to establish any ownership by the freelancer."), ¶108(e) ( "It seems to have been the Plaintiff's practice, when contracts were entered into with independent contractors/freelancer [*sic*] and third parties [*sic*] licensees, to include an assignment of IP rights to it."), ¶111 (An English court would "not hesitate to find that freelancers had granted an exclusive licence to the Plaintiff").

reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). This standard of admissibility also applies to any testimony that is based on technical or other specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999). To establish reliability, courts focus on an expert's principles and methodology, not his conclusions. *Daubert*, 509 U.S. at 595-596. The Seventh Circuit has explained that nothing in either *Daubert* or Rule 702 requires a district court to admit opinion evidence that is only supported by the *ipse dixit* of the expert. *Clark v. Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999) (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997)). Rather, "district courts [are] required to rule out subjective belief or unsupported speculation." *Id.* at 757 (citation and quotation omitted). "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Wendler & Ezra, P.C. v. American Int'l Group, Inc.*, 521 F.3d 790, 791 (7th Cir. 2008).

Bloch's testimony should be excluded because, without sufficient facts or data to base it on, it is nothing more than speculation. Bloch opines that "*assuming*" GW's alleged facts are proven, "*some* of the independent contractors/freelancers in this case can be treated as employees," that some works "would constitute joint works" and that the circumstances of this case are consistent with an "equitable assignment" to GW. ECF No. 208-19, Ex. 8 (Bloch Report) ¶¶ 31(d)(1), (3), 98, 102, 107. As CHS's expert Professor Bently notes, Bloch's broad generalizations about ownership are not supported by UK law; rather, the Court must "conduct an analysis of each and every piece of subject matter in which the Plaintiff claims protection in order to determine whether each one is protected under UK law." ECF No. 208-19, Ex. 9 (Bentley Report) ¶ 16(a). But Bloch lacks the facts to assist the court with such an analysis. He has no knowledge of which "independent contractors/freelancers" are at issue, he has no knowledge of what "works" are at issue, and he therefore has no basis to opine as to the issues of employee status, joint ownership or equitable assignment with respect to any author or work in this case. *See* Ex. F at 116:13-118:10; 133:17-134:13. Indeed, Bloch admits that any attempt to apply English law to the facts of this specific case would overreach, and would usurp the role of

the fact-finder. *Id.* at 143:2-18; 194:1-14. Yet Bloch's opinions overreach in precisely that manner and should be barred.

## III. GW SHOULD BE PRECLUDED FROM INTRODUCING ITS COPYRIGHT APPLICATIONS AND REGISTRATIONS

### A. GW's Pending Copyright Applications are Irrelevant, Contain False and Misleading Information, and are Likely to Mislead Jurors

GW has listed 85 copyright applications on its exhibit list (*see* Golinveaux Decl*.,* Ex. A, Tr. Exs. 230-314), but a pending copyright application has no probative value: it shows nothing more than GW's willingness to pay an application fee to the Copyright Office. *See* 17 U.S.C. 410(c) (only a "certificate of a *registration* made before or within five years after first publication of the work" is evidence of facts stated in the certificate) (emphasis added). Indeed, courts have precluded litigants from bringing copyright claims at all based on a mere application for a copyright. *See, e.g.*, *Propet USA, Inc. v. Shugart*, No. 06-cv-0186, 2007 WL 2766718, *1 (W.D. Wash. Sept. 19, 2007) (purported copyright owner "may only pursue claims of infringement as to copyrighted [works] for which he has a certificate of registration and must establish at trial the specific [works] for which the Copyright Office has granted copyright registration."). A jury is likely to give GW's copyright applications undue weight under the mistaken belief that an application has evidentiary value, which would prejudice CHS. In addition, many of GW's copyright applications are particularly prejudicial, because they are for designs and symbols that cannot be registered under longstanding Copyright Office regulations, including simple public domain symbols such as an arrow (Tr. Ex. 300, "Tactical Shoulder Pads" application), and reproductions of works in the public domain such as commonplace historical weapons (e.g. Tr. Ex. 264, "Halberds" application).

Furthermore, GW's copyright applications contains false claims that will severely prejudice Chapterhouse. *First*, each application falsely claims that Games Workshop Limited is the "author" of the work in questions. But under governing English copyright law, it is a legal impossibility for a corporation to be the "author" of a work, as GW knows. *See* ECF No. 147

(SAC) ¶ 15 ("None of the foregoing copyrighted works created in the United Kingdom are United States works . . ."); English Copyright, Designs & Patents Act 1988 ¶9(1) [add record cite]("In this Part 'author', in relation to a work, means the person who creates it"). *Second*, each of GW's applications states that the work at issue is a "work made for hire." But "work made for hire" is a term of art in U.S. copyright law that has no application to GW's works, because English law has no "work made for hire" provision. The prejudice to Chapterhouse greatly outweighs the evidentiary value of GW's pending copyright applications: a juror is likely to believe erroneously that GW is the author of the works (a legal impossibility), or that the work was a "work made for hire" (another legal impossibility), or both.

**B.**     **GW's Copyright Registrations Contain False and Misleading Information that Is Likely to Mislead Jurors**

The Court should exclude GW's copyright registrations (*see* Golinveaux Decl., Ex. A, Tr. Exs. 217-229, 329-345) for the same reasons it should exclude its copyright applications as explained in Section III.A above. GW likely hopes to evade the necessity of proving it actually owns the works it claims by showing the jury a registration certificate that (falsely) states that GW is the "author" of the work (a legal impossibility). At a minimum, GW should be precluded from introducing copyright registrations for works not at issue in this case. *Compare* Golinveaux Decl., Ex. A, Tr. Exs. 220, 331-334, 336, 339, 341-343, 345 *with* Ex. C, Second Rev. Copyright Claim Chart. Such registrations are irrelevant, and prejudicial because they will mislead the jury into thinking this case is about everything GW introduces. GW should also be precluded from introducing copyright registrations for works produced late: Tr. Exs. 227, 329-331, 338, and 344. Golinveaux Decl. Ex. A.  Permitting such evidence of late-produced works subverts the Court's order instructing GW to produce the "best available exemplar" of its allegedly infringed works. ECF No. 171 at 35:21-24.

## IV.   GW SHOULD BE PRECLUDED FROM INTRODUCING CERTAIN COPYRIGHT ASSIGNMENTS AND EMPLOYMENT CONTRACTS

### A.   GW Should Be Precluded from Introducing Copyright Assignments Executed After the Inception of This Litigation

GW first claimed that *all* the works at issue were created by its employees, but then submitted a sworn declaration from its in-house counsel stating that all but *three* had been created by non-employees; GW later acknowledged that at least 12 works were created by freelancers, but without identifying which ones. *See* ECF No. 210 (CHS SUF) ¶ 38. Beginning on April 24, 2012, more than a year into the case and more than a month after the close of fact discovery, GW considered it necessary to obtain purported *nunc pro tunc* assignments from 31 authors. These assignments (*see* Golinveaux Decl. A, Tr. Exs. 122, 126, 131-138) are highly prejudicial and should be excluded.

First, not only are GW's purported copyright assignments executed after the inception of this litigation untimely (and therefore prejudicial to Chapterhouse, which was prevented from investigating the assignments in the course of discovery), but they are also insufficient to retroactively confer standing on GW. They are thus irrelevant to the issue of whether GW owned the copyrights it claims *at the time it brought suit. Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774 (Fed. Cir. 1996) (plaintiff's *nunc pro tunc* intellectual property assignment was "not sufficient to confer standing on [plaintiff] retroactively"); *Triple Tee Golf, Inc. v. Nike, Inc.*, 2007 WL 4260489 (N.D. Tex. Aug. 24, 2007), *aff'd on appeal*, 281 Fed. Appx. 368 (5th Cir. 2008). GW should not be permitted to rely on irrelevant evidence to mislead the jury into believing that its ownership of copyrights was effective before those assignments were effective.

Second, the Court should also exclude GW's purported copyright assignments for works not at issue in this case, because they are likely to confuse the jury. GW's Tr. Exs. 122 and 131 include purported assignments from Stefan Kopinksi and Ralph Horsley, neither of whom has authored any work at issue. *Compare* Golinveaux Decl. Ex. A, Tr. Exs. 122, 131 *with* Ex. C, Second Rev. Copyright Claim Chart. Tr. Ex. 122 also includes a purported contract between GW and Clint Langley for a work entitled "Tactica Imperalis," which is also not a work at issue. *Id.*

12

**B.** **GW Should Be Precluded from Introducing Employment Contracts Introduced After the Close of Fact Discovery**

GW also proposes to introduce eight exhibits (*see* Golinveaux Decl. Ex. A, Tr. Exs. 131-138) comprising contracts between freelance artists and third party Sabertooth Games, Inc. ("Sabertooth"), which were produced only after the close of fact discovery, despite CHS's discovery requests calling for such documents. The Court should exclude these exhibits on grounds of prejudice, because CHS had no opportunity to investigate the relevance of these documents, including whether they concern any works at issue, and whether any rights in works at issue were actually assigned from the authors or from Sabertooth to GW.

**V. GW SHOULD BE PRECLUDED FROM ARGUING FOR SUBSTANTIAL SIMILARITY BASED SOLELY ON PUBLIC DOMAIN ELEMENTS**

To prove copyright infringement, GW must show that CHS's products are substantially similar to protectable elements of GW's works when the works are compared side-by-side. *Bryant v. Gordon*, 483 F. Supp. 2d 605, 617 (N.D. Ill. 2007). Because only *protected* expression is relevant to the determination of substantial similarity, *unprotectable* elements cannot form the basis for claims of copyright infringement. GW's introduction of unprotectable and public domain elements of its works as evidence of substantial similarity is likely to confuse the jury and will prejudice CHS. Accordingly, GW should be precluded from arguing that any of the following elements standing alone, which are unprotectable as a matter of law, of its works constitute evidence of substantial similarity: arrows; crossed arrows; chevrons; letters; Roman numerals; blood drops; or the names or titles of works (except to the extent such name or title appears on the face of the work). *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 303 (7th Cir. 2011) ("common geometric shapes cannot be copyrighted"); U.S. Copyright Office, Compendium II: Copyright Office Practices §503.02(a)-(b) (1984) (copyright registration unavailable for "standard ornamentation" such as "chevron stripes . . . common geometric figures or shapes . . . a standard symbol such as an arrow"); 37 C.F.R. § 202.1(a), (e) ("works not subject to copyright

. . . [include] [w]ords and short phrases such as names [and] titles . . . ; familiar symbols or designs; mere variations of typographic ornamentation . . . [and] [t]ypeface as typeface").

## VI.  GW SHOULD BE PRECLUDED FROM INTRODUCING IRRELEVANT THIRD PARTY POSTINGS ON FORUM WEBSITES

GW seeks to introduce several exhibits cobbled together by excerpting and re-assembling postings from various third-party online forums. *See* Golinveaux Decl., Ex. A, Tr. Exs. 10, 26, 123, and 124.[11] For example, its proposed Tr. Ex. 26 (Golinveaux Decl., Ex. G) starts with page 1 of 6 of a UK-online forum discussion, then skips to page 3 of 6, then jumps to pages 3 and 4 of 6 of an apparently different discussion, before turning to pages 1 and 2 of 5 of an apparently different discussion. GW likewise fails to include all pages of the document used to construct Tr. Ex. 10 (Golinveaux Decl., Ex. H), and acknowledges that Tr. Ex. 123 is its own "Compilation of online forum posts . . .", though it failed to disclose that it constructed this single exhibit from two different discussions from two different online forums. Golinveaux Decl., Ex. A. As with its summary judgment motion, GW apparently intends to introduce statements from unknown third parties as evidence to suggest that CHS copied GW's alleged works. *E.g.*, Golinveaux Decl., Ex. H (Tr. Ex. 10) at 3 ("It's pretty similar to the Imperial and Crimson Fist symbols, just a little spiker . . . kinda, anyway, :-/" [sic]). Even if these exhibits were relevant evidence, which they are not, any probative value of the third party postings is outweighed by a danger of unfair prejudice and misleading the jury because the exhibits are incomplete, out-of-context, unauthenticated, hearsay, and lack credibility.

## VII.  GW SHOULD BE PRECLUDED FROM INTRODUCING ANY EVIDENCE REGARDING CHS'S SUBSEQUENT REMEDIAL MEASURES

It is well-recognized that a motion *in limine* is not only an appropriate but also is a recommended tool for the exclusion of evidence when subsequent remedial measures evidence

---

[11] Tr. Ex. 26 was filed by GW with its summary judgment pleadings at ECF No. 213-11, Ex. 39. Tr. Ex. 10 was filed by GW with its summary judgment pleadings at ECF No. 213-10, Ex. 23. Tr. Exs. 123 and 124 were filed by GW with its summary judgment pleadings at ECF No. 230-28, Exs. 143, 144.

would be particularly damaging if admitted. *See generally* 30 Am. Jur. Proof of Facts 3d 307 *Evidence of Subsequent Remedial Measures in Civil Cases* § 18 (2012); *Ford v. Schmidt*, 577 F.2d 408, 410-411 (7th Cir. 1978). GW has alleged that CHS copied its unique combination of colors, symbols, designs and other features on multiple CHS products. At the time the lawsuit was filed, CHS's website included certain photographs of painted CHS products, including decorative armor and other tabletop war game accessories. CHS sells those products unpainted, and purchasers are then able to paint CHS products in any color scheme they choose. During the litigation, CHS replaced photographs of painted items with photographs of gray, unpainted items. GW should be precluded from entering evidence of any such subsequent remedial measures on the part of CHS. *See Ford*, 577 F.2d at 410-411 (affirming exclusion of evidence of a new policy that was "a measure taken after the event in litigation, which measure, had it existed at the time, would have avoided the event in litigation"). If evidence of CHS's subsequent remedial measures is introduced, the jury could infer that these actions suggest guilt, a leap of logic the Federal Rules of Evidence prevent.

## CONCLUSION

For the foregoing reasons, CHS's Motion *in Limine* should be granted and the Court should exclude:

- GW's proposed Tr. Exs. 10, 14-16, 18, 20, 26, 57, 62, 63, 93, 94, 96, 102, 111, 119, 121-126, 131-138, 216, 227, 217-314, 325, 329-384, 445-480, and 532-537;

- Testimony from Games Workshop Limited's ("GW") proposed expert, Michael Bloch, purporting to apply UK law to the facts of this case;

- GW argument for infringement based on public domain elements; and

- Evidence of CHS's subsequent remedial measures.

Dated: November 6, 2012
Respectfully submitted,

/s/ Bryce Cooper
Jennifer A. Golinveaux (CA Bar No. 203056)
Dean A. Morehous (CA Bar No. 111841)
K. Joon Oh (CA Bar No. 246142)
Thomas J. Kearney (CA Bar No. 267087)
    WINSTON & STRAWN LLP
    101 California Street
    San Francisco, CA 94111-5802
    Phone: (415) 591-1000
    Fax: (415) 591-1400
    jgolinveaux@winston.com
    dmorehous@winston.com
    koh@winston.com
    tkearney@winston.com

Bryce A. Cooper (IL Bar No. 6296129)
    WINSTON & STRAWN LLP
    35 West Wacker Drive
    Chicago, IL 60601-1695
    Phone: (312) 558-5600
    Fax: (312) 558-5700
    bcooper@winston.com

## <u>CERTIFICATE OF SERVICE</u>

I, Bryce A. Cooper, an attorney, hereby certify that on November 6, 2012, I caused to be filed electronically the foregoing **CHAPTERHOUSE STUDIOS LLC'S MOTION *IN LIMINE*** with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.


_____/s/  Bryce A. Cooper_____

17