**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GAMES WORKSHOP LIMITED,

                        Plaintiff,

        v.

CHAPTERHOUSE STUDIOS LLC

                    Defendant.

Civil Action No. 1:10-cv-8103

**SECOND AMENDED COMPLAINT FOR
COPYRIGHT INFRINGEMENT, TRADEMARK INFRINGEMENT, UNFAIR AND
DECEPTIVE TRADE PRACTICES, AND UNFAIR COMPETITION**

Games Workshop Limited, by its attorneys, FOLEY & LARDNER LLP, for its Second

Amended Complaint against Chapterhouse Studios LLC ("Chapterhouse" or "Defendant"),

alleges as follows:

**PARTIES AND JURISDICTION**

1.      Games Workshop Limited is a United Kingdom corporation and a subsidiary of

Games Workshop Group, plc, which has numerous store locations in and around Chicago,

Illinois, which is its single largest selling market in the United States.

2.      Upon information and belief, Chapterhouse Studios LLC is a Texas limited

liability company with offices at 3930 Glade Road, Suite 108 #174, Colleyville, Texas, 76034.

3.      This is an action for copyright infringement under 17 U.S.C. § 101 *et seq.*;

trademark infringement under 15 U.S.C. § 1114(1) and Illinois common law; for use of false

designations of origin under 15 U.S.C. § 1125(a); for violation of the Illinois Deceptive Trade

Practices Act under 815 ILCS 510/1 *et seq.*; for violation of the Illinois Consumer Fraud and

1

Deceptive Business Practices Act under 815 ILCS 505/2 *et seq.*; and for unfair competition under Illinois common law.

4.　This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over the claims arising under the statutory and common law of the State of Illinois pursuant to 28 U.S.C. §1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

5.　The Court has personal jurisdiction over Defendant because, upon information and belief, Defendant sells and offers to sell infringing products within this jurisdiction; because Defendant maintains an interactive commercial website through which Illinois residents are able to make purchases of the subject infringing goods; and because Defendant has consented to personal jurisdiction in this action.

6.　Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the Defendant resides in this District and because a substantial part of the events giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

### A.　Games Workshop's Copyrighted WARHAMMER and WARHAMMER 40,000 Games and WARHAMMER and WARHAMMER 40,000 Trademarks

7.　Games Workshop is the largest and most successful tabletop fantasy wargames company in the world, with a following of myriad gamers and hobbyists devoted to collecting, creating, painting, and building armies for use in Games Workshop's popular WARHAMMER and WARHAMMER 40,000 war games.

4851-0528-6674

8.      Games Workshop's WARHAMMER and WARHAMMER 40,000 war games are played, not on a board with defined game places, but in an open-ended world defined only by the underlying literary works and rules that define and depict the characters and armies of the games.

9.The game and background story for WARHAMMER, for instance, takes place in a fantasy world of dark magic and powerful gods, populated by mighty heroes and foul monsters, in which armies of humans stand shoulder to shoulder with noble elves and grim dwarves battling unending attacks from enemies such as rat-like Skaven that crawl beneath cities, restless dead who stir in their graves, and daemons who lead mutated hordes of the Chaos Gods into war.

10.      The game and background story for WARHAMMER 40,000 similarly takes place in a fantasy universe, but one set in a dark and forbidding world of the 41st millennium, a place ravaged by thousands of years of conflict in which gothic armies of the universe do battle and in which the foremost defenders of humanity are Space Marines; genetically engineered super-warriors armed with the most inventive weapons imaginable, supported by vast armies of the Emperor and tanks of the Imperial Guard who confront foes such as the alien armies of the Tau; the savage Orks; enigmatic Eldar; and unfathomable Tyranids, while lurking in the background are once-loyal Space Marines, turned traitorous supporters of the unspeakable Daemon Lords of Chaos.

11.      The various characters, armies and accessories in the WARHAMMER and WARHAMMER 40,000 universe have distinct names, colors, symbols, and other characteristics by which they are known and by which they are immediately recognized by the many fans and followers of the game.

12.      Games Workshop produces and sells army figures for WARHAMMER and WARHAMMER 40,000 and a wide range of accessories for those armies and games, including

4851-0528-6674

weapons, vehicles, equipment, and other accessories for its armies; the names, symbols, features and appearances of which derive from and are complemented by underlying and highly detailed background publications, including the Warhammer 40,000 rule book (now in its sixth edition); the Space Marine Collectors' Guide, (Second Edition, July 2003) and the following listed volumes (including all of the earlier editions of each of these works):

> Codexes and Army Books (which contain, for a particular army, specific game rules and guides to collecting and painting)
> Necromunda Rulebook, 1995
> Warhammer 40,000 Tyranids, Fourth Edition, January 2010
> Warhammer 40,000 Space Marines, Fifth Edition, October 2008
> Warhammer 40,000 Space Marines, Fourth Edition, 2004
> Warhammer 40,000 Eldar, 2006
> Warhammer 40,000 Tau Empire, 2001
> Warhammer 40,000 Tau Empire, 2005
> Warhammer 40,000 Space Wolves, 2000
> Warhammer 40,000 Space Wolves, 2009
> Warhammer 40,000 Dark Angels, Third Edition, February 2007
> Warhammer 40,000 Chaos Space Marines, Fourth Edition, September 2007
> Warhammer Armies Orks, 1994
> Warhammer Armies Lizardmen, 2003
> Warhammer Armies Lizardmen, 2008
> Warhammer 40,000 Dark Eldar, 2010
> Warhammer 40,000 Imperial Guard, 2008
> Epic 40,000 Rulebook
>
> Background Work
> Index Astartes II, January 2002
> Index Astartes, 2002
> Index Astartes III, February 2004
> Index Astartes IV, June 2005
> Space Marine Collectors Guide, 2003
> Imperial Guard Collectors Guide, 2003
> Warhammer 40,000 Wargear 2005
> Warhammer 40,000 Apocalypse, 2007
> Insignium Astartes, 2002
>
> Art Book/Background work
> The Horus Heresy Collected Visions, June 2007
> The Art of Warhammer 40,000, January 2006
> The Art of Clint Langley, April 2008

4851-0528-6674

<u>Magazine</u>
White Dwarf Magazine 249, September 2000
White Dwarf Magazine 101, 1988

<u>How to Book</u>
How to Paint Space Marines, April 2005

<u>Novel</u>
Soul Drinkers, September 2002
Brothers of the Snake, 2007

Each of the foregoing have been created by or for Games Workshop in England and are protected by copyright belonging exclusively to Games Workshop.

13.     The underlying stories, myths, fictional histories, character names, symbols or icons, overall appearances, and unique characteristics of the many armies used in Games Workshop's WARHAMMER and WARHAMMER 40,000, such as their language, culture, major worlds, weapons, methods of waging war, heraldry and iconography, and how they look, behave, and function are all derived from detailed books and other publications (which are supplemented by other written materials, such as specific game rules, novels, licensed products, hobby guides, and datasheets separately) all of which are created by Games Workshop and are protected by copyright, including those literary works referenced above.

14.     None of the foregoing copyrighted works created in the United Kingdom are United States works for which registration is required under 17 U.S.C. § 411(a); however, Games Workshop does own numerous registrations and pending applications in the United States Copyright Office for its works, including those registrations and applications summarized in Exhibit A hereto.

15.     Games Workshop also owns all copyright in many sculptural figures of the characters from WARHAMMER and WARHAMMER 40,000, and owns registrations and

pending applications in the United States Copyright Office for such sculptural works, including those summarized in Exhibit A hereto.

16.     Games Workshop also owns all copyright in a series of computer games, produced for it under license, entitled Dawn of War, permitting head-to-head or cooperative multiplayer participation in a game set in the WARHAMMER 40,000 universe.  As summarized in Exhibit A hereto, Games Workshop owns registrations in the United States Copyright Office for "Dawn of War" and "Dawn of War II".

17.     Since at least as early as 1984, Games Workshop has sold in the United States books and other publications, games, models, parts and equipment therefore, and related items and services under the name and trademark WARHAMMER (and related names and marks described more fully herein), and, since long prior to the acts of Defendant complained of herein, the WARHAMMER trademark and other trademarks associated with the WARHAMMER game have come to identify Plaintiff's goods and services and to distinguish them from the goods and services of others.

18.     Since at least as early as 1987, Games Workshop has sold in the United States books and other publications, games, models, parts and equipment therefore, and related items and services under the name and trademark WARHAMMER 40,000 (and related names and marks described more fully herein), and, since long prior to the acts of Defendant complained of herein, the WARHAMMER 40,000 trademark and other trademarks associated with the WARHAMMER 40,000 game have come to identify Plaintiff's goods and services and to distinguish them from the goods and services of others.

19.      Since long prior to the acts of defendant complained of herein, Games Workshop's "Forge World" division has been selling conversion kits, replacement doors, and

4851-0528-6674

additional products for its customers made to fit existing WARHAMMER 40,000 products and,

more recently (but still prior to the acts complained of herein) WARHAMMER products to use

to decorate and modify their models for use in connection with the WARHAMMER 40,000 and

WARHAMMER games.

20.     Plaintiff's WARHAMMER and WARHAMMER 40,000 games have achieved

enormous success, and for many years have been among the best known and most popular table

top hobby war games in this country.

21.     Plaintiff owns numerous registrations for its trademarks on the Principal Register

in the United States Trademark Office, including the following registrations:

| Trade Mark | Country | Registration Number |
| --- | --- | --- |
| WARHAMMER | USA | 2,718,741 |
| WARHAMMER 40,000 | USA | 3,707,457 |
| 40K | USA | 3,768,909 |
| 40,000 | USA | 3,751,267 |
| GAMES WORKSHOP | USA | 3,612,759 |
| GW | USA | 3,878,431 |
| SPACE MARINE | USA | 1,922,180 |
| ELDAR | USA | 1,944,847 |
| DARK ANGELS | USA | 1,913,474 |
| TAU | USA | 2,820,748 |
| AQUILA Design | USA | 3,646,312 |
| FORGEWORLD | USA | 2,751,558 |
| EPIC | USA | 1,751,460 |
| DAWN OF WAR | USA | 3,291,300 |

22.     Plaintiff's foregoing registered WARHAMMER trademarks (collectively, the

"WARHAMMER Registered Marks") are valid, subsisting, unrevoked, and uncancelled, and

Registration Nos. 2,718,741, 2,820,748, 2,070,887, 2,820,748, 2,100,767, 1,944,847, 1,913,474

and 1,751,460 are now incontestable under the provisions of 15 U.S.C. § 1065.

23.     Games Workshop has very substantial annual sales of products for

WARHAMMER    and    WARHAMMER    40,000    and    bearing    its    WARHAMMER,

4851-0528-6674

WARHAMMER 40,000, 40K, DARK ANGELS, ELDAR, FORGEWORLD, DAWN OF WAR, EPIC, TYRANID, TAU, and SPACE MARINE brand names, with annual sales in this country alone well in excess of $50 million, and Games Workshop invests considerable sums each year in marketing and promoting these brands and in developing new products under these brand names. Games Workshop has thereby built up substantial goodwill and reputation in the marks WARHAMMER, WARHAMMER 40,000, 40k, DARK ANGELS, ELDAR, FORGEWORLD, DAWN OF WAR, EPIC, TYRANID, TAU, and SPACE MARINE (collectively, the "WARHAMMER Marks"), which it uses in connection with its tabletop games and miniatures and accessories for such games.

24. The area in and around Chicago, Illinois is one of the most active for Games Workshop, being part of the single largest selling market in the United States; being home to the AdeptiCon, the largest independent convention for miniature wargaming hobbyists in the country (at which the WARHAMMER and WARHAMMER 40,000 games are featured), and the site selected by Games Workshop for its 2012 Games Day Convention (which attracted thousands of fans of the WARHAMMER and WARHAMMER 40,000 games at the Donald E. Stephens Convention Center).

25. As a result of the great success of Games Workshop's WARHAMMER and WARHAMMER 40,000 publications, products and game, since long prior to the acts of Defendant complained of herein, the name and trademarks WARHAMMER, WARHAMMER 40,000, 40K, DARK ANGELS, ELDAR, FORGEWORLD, DAWN OF WAR, EPIC, TYRANID, TAU and SPACE MARINE have come to represent substantial and highly valuable goodwill belonging exclusively to Plaintiff.

4851-0528-6674

26.     Games Workshop also has a large number of well-known unregistered trade marks (including names of armies, Chapters, and other products) including without limitation: Games Workshop also has a large number of well-known unregistered trade marks (including names of armies, Chapters, and other products) including without limitation: Adeptus Mechanicus, Space Marine Assault Squad, Alpha Legion, Black Templars, Blood Angels, Bolter, Tyranid Bonesword, Cadian, Carnifex, Chaos Space Marines, Chaplain, Chimera, Crimson Fists, Dark Angel, Dark Elf, Deathwatch, Demolisher, Space Marine Devastators, Dreadnought, Drop Pod, Eldar, Elder Farseer, Eldar Jetbike, Eldar Warlock, Seer Council, Empire, Exorcist, Flesh Tearers, Gaunts, Genestealer, Gunship, Haemonculus, Heavy bolter, Hellhound, High Elf, Hive Tyrant, Horus Heresy, Howling Banshee, Imperial Fists, Imperial Guard, Insignium Astartes, Iron Hands, Jetbike, Jump Pack, Kroxigor, Land Raider, Land Speeder, Tyranid Lash Whip, Legion of the Damned, Leman Russ, Librarian, Lightning Claw, Lizardmen, Melta, Plasma, Predator, Rhino, Salamander, Striking Scorpion, Soul Drinker, Space Wolves, Stormraven, Storm Shield, Stormtrooper, Space Marine Tactical Squad, Techmarine, Termagants, Terminator, Tervigon, Thousand Sons, Thunder Hammer, Tyrant, Tyranid, Tyranid Warrior, Urien Rakarth.

27.     Many of the symbols associated with the characters and armies of the WARHAMMER 40,000 universe, as well as the accessories for these characters and armies, have also become well-known and immediately recognizable to the many fans of the game as used on and in connection with the respective characters, including without limitation: the Black Templars icon; the Blood Ravens icon; Blood Angels icon; Celestial Lions icon; Dark Angels winged sword icon; Exorcist skull icon; Flesh Tearers icon; Howling Griffon icon; Imperial Fists icon; Iron Snakes icon; Legion of the Damned icon; Chaos Space Marines eight-pointed star

4851-0528-6674

icon; Soul Drinkers icon; Salamanders icon; Tau Empire icon; Scythes of the Emperor icon; Space Marine Tactical squad icon; Space Marine Assualt squad icon; Space Marine Devastator squad icon; Ultramarine icon; Adeptus Mechanicus cog icon; Iron Hands icon; Space Wolves icon; Thousand Sons icon; Mantis Warrior icon.

28.     The foregoing unregistered WARHAMMER word marks and symbols are also very well known among the hobbying and gaming communities. Games Workshop's annual sales of products bearing these marks is likewise significant, and it invests great sums each year in marketing and promoting these brands and in developing new products under these brand names. As a result, Games Workshop has built up substantial goodwill and reputation in these unregistered trade marks in the U.S. and around the world

### B.     Defendant's Infringing Conduct

29.     Upon information and belief, after having initiated some modest sales on eBay in 2008, sometime in or about May 2009, Chapterhouse began manufacturing and selling gaming miniatures and accessories at its website located at www.chapterhousestudios.com ("the Website").

30.     Chapterhouse makes no secret of the fact that its products are derived from, inspired by, and copied from Games Workshop's copyrighted works and, indeed, although Chapterhouse recently changed its website as a result of the allegations of infringement against it in this case, the banner at the top of each page of the Website had, until November 2011, described its business as "Specializing in Custom Sculpts and Bits for Warhammer 40,000 and Fantasy".

31.     The website does not identify any sources of inspiration for any of the products other than Games Workshop.

4851-0528-6674

32.     Chapterhouse's products are identified on its website by the names created and adopted by Games Workshop to identify its corresponding characters, armies and the accessories therefor, as well as images and descriptions derived or copied from Games Workshop's original copyrighted materials.

33.     Upon information and belief, the very name "Chapterhouse" is a reference to Games Workshop's proprietary Space Marines characters from WARHAMMER 40,000, each of which belongs to a specific "Chapter" (of which there are many), with each Chapter having its own unique expressions, such as its own heraldry and iconography.

34.     Chapterhouse further admits on its website that Games Workshop is the owner of all of the copyrights and trademarks at issue herein by expressly stating:

> Adeptus Astartes, Battlefleet Gothic, Black Flame, Black Library, the Black Library logo, BL Publishing, Blood Angels, Bloodquest, Blood Bowl, the Blood Bowl logo, The Blood Bowl Spike Device, Cadian, Catachan, the Chaos device, Cityfight, the Chaos logo, Citadel, Citadel Device, City of the Damned, Codex, Daemonhunters, Dark Angels, Dark Eldar, Dark Future, the Double-Headed/Imperial Eagle device, 'Eavy Metal, Eldar, Eldar symbol devices, Epic, Eye of Terror, Fanatic, the Fanatic logo, the Fanatic II logo, Fire Warrior, Forge World, Games Workshop, Games Workshop logo, Genestealer, Golden Demon, Gorkamorka, Great Unclean One, the Hammer of Sigmar logo, Horned Rat logo, Inferno, Inquisitor, the Inquisitor logo, the Inquisitor device, Inquisitor:Conspiracies, Keeper of Secrets, Khemri, Khorne, Kroot, Lord of Change, Marauder, Mordheim, the Mordheim logo, Necromunda, Necromunda stencil logo, Necromunda Plate logo, Necron, Nurgle, Ork, Ork skull devices, Sisters of Battle, Skaven, the Skaven symbol devices, Slaanesh, Space Hulk, Space Marine, Space Marine chapters, Space Marine chapter logos, Talisman, Tau, the Tau caste designations, Tomb Kings, Trio of Warriors, Twin Tailed Comet Logo, Tyranid, Tyrannid, Tzeentch, Ultramarines, Warhammer, Warhammer Historical, Warhammer Online, Warhammer 40k Device, Warhammer World logo, Warmaster, White Dwarf, the White Dwarf logo, and all associated marks, names, races, race insignia, characters, vehicles, locations, units, illustrations and images from the Blood Bowl game, the Warhammer world, the Talisaman world, and the Warhammer 40,000 universe are either ®, TM and/or © Copyright Games Workshop Ltd 2000-2010, variably registered in the UK and other countries around the world.

4851-0528-6674

35. Because many of the characteristics of the many armies used in Games Workshop's WARHAMMER and WARHAMMER 40,000 publications and products, such as their language, culture, major worlds, weapons, methods of waging war, heraldry and iconography, and their appearances, behaviors and functions can be found in or derived from numerous Games Workshop books and other publications, as alleged above, only defendant knows for certain which of these books and other publications it accessed and relied upon in creating the works at issue herein. However, even defendant contends it does not know for certain what Games Workshop materials its independent designers access in creating the subject works. By way of example, the following exemplify some of the ways in which Chapterhouse infringes Games Workshop's copyrighted works:

a. Chapterhouse produces and sells a kit to convert a Games Workshop "Carnifex" into a "Tervigon" (both of which terms are original and proprietary to Games Workshop). Games Workshop's Tyranid Codex describes the Tervigon and provides a representation of it, and Defendant's conversion kit will create a Tervigon having unique expressions proprietary to Games Workshop, including having the same number of spine pieces and in the same configuration; the same number, type and configuration of limbs; and similar abdomen sacs; all of which are as depicted and described in Games Workshop's Warhammer 40,000 Tyranids, Fourth Edition, January 2010. However, Chapterhouse may also have referred to and relied upon other Games Workshop publications, including the Tyranid Codexes for 1995, 2001 and 2004

b. Chapterhouse is producing shoulder pads for "Space Marines" that very clearly derive from many of the background works published by Games Workshop for its Space Marine Chapters. Games Workshop's Space Marine units are classified by specific shapes and icons on their shoulder pads, the features of which are clearly and uniquely defined in Games Workshop's background works, such as an arrow for the Tactical Squad, the use of Roman numerals, inverted "V" icons and other iconography and heraldry specific to the Chapter and squad to which a soldier belongs.

c. Chapterhouse is selling shoulder pads for Space Marines featuring symbols and bearing other unique expressions taken from a number of Games Workshop's Assault, Tactical and Devastator Space Marine unit types, including the exact appropriation of the original order of Roman Numeral designations and accompanying character names and product appearances used by Games Workshop to identify and distinguish each unit.

d. Many of the shoulder pads that Chapterhouse is selling bear not only the unique expressions described above as applying more generally to Games Workshop's products

4851-0528-6674

but also have studs, arrow and cross arrow designs, inverted "V" and Roman numeral icons, as well as icons associated with a number of Games Workshop's proprietary Chapters, including the Black Templars, Blood Ravens, Thousand Sons, Blood Eagles, Celestial Lions, Exorcists, Flesh Tearers, Howling Griffons, Imperial Fists, Iron Snakes, Soul Drinkers and Salamander Chapters. Chapterhouse is also selling pads that convert standard Games Workshop Space Marines into characters for other Chapters, such as the Salamander and Fleshtearers Chapters, and which borrow unique expressions relevant to that Chapter which are proprietary to Games Workshop.

d. Chapterhouse's conversion and armor kits reproduce all or substantial distinctive features of the vehicles and miniatures upon which they are based, as they are specifically configured to fit to Games Workshop's products, including: (i) the surface decoration of defendant's Salamander Drop Pod overlays, which is derived from and reproduces Games Workshop's Salamander iconography; and (ii) defendant's Rhino Tank Conversion Kits for Space Marine® Dragon or Salamander, the doors, front panels and armor sections of which, in Defendant's own words, have been specifically designed to "…accessorize the current space marine® rhino model kit. Themed in a dragon or salamander style also good for alpha legion…"

36.     Subsequent to the commencement of this case, Chapterhouse has introduced numerous new products copied from Games Workshop's original WARHAMMER and WARHAMMER 40,000 universe, including without limitation various "Tru-Scale" conversion kits to change the size scale of genuine Space Marine figures to a new size that Chapterhouse contends is more "true" to Games Workshop's own original artwork than Games Workshop's actual Space Marine figures;Tau heads for Tau "Crisis Model" warriors; various "Heresy" era shoulder pads for Terminator Space Marines and a "Pilum Imperial Attack Jetbike" equipped with new weapons copied from Games Workshop' Space Marine Bike and Games Workshop's weapon designs.

37.     The nature and extent of Chapterhouse's copying has also grown more pervasive over time.  Whereas it began selling isolated accessories and weapons for Games Workshop's Space Marine characters, it then expanded to selling entire lines of products systematically covering multiple characters (including the entire Roman numbering system of Games Workshop's Tactical, Assault and Devastator Space Marines); then expanded further to copying

13

entire characters (in particular female versions of Games Workshop's Eldar figures) and vehicles (such as the Space Marine Jet Bike), and now has introduced its "Tru-scale" products which, as described above, purport to undermine Games Workshop's exclusive right to determine the size and appearance of the copyrighted figures for its WARHAMMER 40,000 game.

38.     Consistent with the pervasive copying by defendant of Games Workshop's original works, Chapterhouse has in its possession hundreds if not thousands of Games Workshops publications and products, and has ready access to all or substantially all of Games Workshop's copyrighted works.

39.     By letter dated June 12, 2009, Games Workshop placed Chapterhouse directly on notice that it deemed many of its products to infringe Games Workshop's intellectual property rights, and thereafter commenced this case.  However, since then, Chapterhouse has simply expanded its business in disregard of Games Workshop's rights.

40.     Upon information and belief, many consumers of Plaintiff's original WARHAMMER and WARHAMMER 40,000 books and other products and services are users of and make purchases from Defendant's products, including many such individuals and users in the State of Illinois.

41.     Upon information and belief, all of the products that Chapterhouse currently markets and sells are derived from and bear unique characteristics and expressions of Games Workshop's copyrighted works, including unique expressions created and set forth in great detail in Games Workshop's background published works described above.

42.     Upon information and belief, all of the items produced, marketed, and sold by Chapterhouse have copied elements from Games Workshop's copyrighted characters and stories

4851-0528-6674

and sculptural works and/or use trademarks and symbols owned by Games Workshop to identify these sources of inspiration.

43.     Defendant's development, production, marketing, and sale of its copies and derivative works based on Games Workshop's proprietary works is without authorization or approval of Games Workshop.

44.     Defendant's development, production, marketing, and sale of its copies and derivative works based on Games Workshop's proprietary works preempts Games Workshop's ability to develop and sell its own such variations and derivative works and competes directly with Games Workshop's "Forge World" products.

45.     Beyond the copying of protected original elements of Games Workshop's copyrighted works, Chapterhouse makes extensive unauthorized use of Games Workshop's registered and unregistered trademarks and symbols.

46.     Chapterhouse makes pervasive references to Games Workshop's trademarks and symbols to identify its new products (as it did for its earlier products), including without limitation: "Space Marine Land Raider", "Space Marine Storm Raven", "Space Marine Razorback", "Imperial Jetbike", "Tau", "Heresy Era Shoulder Pads for Terminators" and the like..

47.     Upon information and belief, such references create an association in the minds of customers between Defendant's products and those of Games Workshop and give the false impression that Chapterhouse's products are licensed by or endorsed by Games Workshop or are otherwise associated with Plaintiff.

48.     Upon information and belief, products produced and sold by Chapterhouse copied from Games Workshop's copyrighted originals and bearing trademarks and other indicia of

4851-0528-6674

origin with Games Workshop are also sold in substantial quantities in the secondary market (such as on eBay and other similar platforms), where purchasers are likely to be confused as to the origin of those products.

49.     Because Chapterhouse places on its products no permanent markings identifying Chapterhouse as the source of the goods, when those products are sold or resold in secondary markets, the likelihood is that they will be associated only with Games Workshop.

50.     Exacerbating the injury to Games Workshop's reputation, the quality of many of Defendant's products is materially inferior to the quality of Games Workshop's originals, which will cause injury to Games Workshop's reputation among purchasers of Defendant's products in the original or secondary markets.

51.     Chapterhouse's use of the Games Workshops trademarks, is likely to cause confusion, to cause mistake, or to deceive.

52.     The WARHAMMER Marks and WARHAMMER Registered Marks were famous at the time Defendant began using these marks.

53.     Chapterhouse's use of the logos and symbols associated with Games Workshop's WARHAMMER and WARHAMMER 40,000 on and in connection with the same characters, armies and accessories for which Games Workshop uses the same, are likely to cause confusion, to cause mistake, or to deceive.

54.     Defendant's use of the Games Workshops trademarks has been without Plaintiff's authorization or consent.

55.     Upon information and belief, Defendant's acts complained of herein have been willful and malicious, and intended to trade upon the reputation of Plaintiff and its products and

4851-0528-6674

services sold under its WARHAMMER Marks and WARHAMMER Registered Marks and thereby cause harm to Plaintiff.

## FIRST CAUSE OF ACTION

### [Copyright Infringement by Defendant Under 17 U.S.C. § 101 et seq.]

56.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 55 as though fully set forth herein.

57.     Defendant's conduct as aforesaid constitutes infringement of Games Workshop's copyright in and to its literary and sculptural works.

58.     Defendant's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

59.     Plaintiff has no adequate remedy at law.

## SECOND CAUSE OF ACTION

### [Trademark Infringement by Chapterhouse Under 15 U.S.C. § 1114(1)]

60.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 59 as though fully set forth herein.

61.     Chapterhouse's use in commerce of the WARHAMMER Registered Marks is likely to cause confusion, or to cause mistake, or to deceive.

62.     The foregoing conduct of Chapterhouse constitutes trademark infringement in violation of 15 U.S.C. §1114(1).

63.     Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

4851-0528-6674

64.     Plaintiff has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### [False Designations of Origin by Chapterhouse Under 15 U.S.C. § 1125(a)]

65.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 64 as though fully set forth herein.

66.     Chapterhouse's conduct as aforesaid is likely to cause confusion, to cause mistake, or to deceive the relevant public that Chapterhouse, its products and services are authorized by or are affiliated with Games Workshop.

67.     The above-described conduct of Chapterhouse constitutes use of false designations of origin and false and misleading descriptions or representations that are likely to cause confusion, to cause mistake, or to mislead as to the affiliation, connection, or association of Chapterhouse or its goods or services, with Plaintiff and its goods and services in violation of 15 U.S.C. §1125(a).

68.     Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

69.     Plaintiff has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### [Violation by Chapterhouse of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.]

70.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 69 as though fully set forth herein.

71.     This is a claim for deceptive trade practices under the Illinois Deceptive Trade Practices Act.  815 ILCS 510/1 *et seq*.

4851-0528-6674

72.     Upon information and belief, Chapterhouse have/has knowingly made false and misleading representations as to the source of its goods and services, and knowingly made false representations as to its affiliation with Plaintiff.

73.     Chapterhouse has caused a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods and services by making false and misleading representations of fact.

74.     Chapterhouse has caused a likelihood of confusion or misunderstanding as to the affiliation, connection, or association with or certification by Plaintiff by making false and misleading representations of fact.

75.     The conduct complained of herein constitutes unfair and deceptive trade practices, in violation of 815 ILCS 510/1 *et seq.*

76.     Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

77.     Plaintiff has no adequate remedy at law.

**<u>FIFTH CAUSE OF ACTION</u>**

**[Violation by Chapterhouse of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 510/1 *et seq*.]**

78.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 77 as though fully set forth herein.

79.     This is a claim for unfair and deceptive trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, Section 2.

80.     Chapterhouse's business practices directed at Plaintiff and Plaintiff's customers constitute an unfair and deceptive business practice as defined and prohibited by Illinois law.

4851-0528-6674

81.     Chapterhouse has made false and deceptive representations of material fact to Plaintiff's customers with the intent that Plaintiff's customers rely on the misrepresentations.

82.     Chapterhouse has made false and deceptive representations of material fact relating to the source, sponsorship, approval, or certification of its goods and services with the intent that Plaintiff's customers rely on the misrepresentations.

83.     Chapterhouse has made false and deceptive representations of material fact relating to its affiliation, connection, or association with Plaintiff or certification by Plaintiff with the intent that Plaintiff's customers rely on the misrepresentations.

84.     Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

85.     Plaintiff has no adequate remedy at law.

## SIXTH CAUSE OF ACTION

**[Common Law Unfair Competition–Trademark Infringement by Chapterhouse]**

86.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 85 as though fully set forth herein.

87.     Chapterhouse's conduct as aforesaid is likely to confuse and deceive consumers about the origin of Defendant's goods and services.

88.     The foregoing conduct of Chapterhouse constitutes infringement and misappropriation of Plaintiff's common law rights in its trademarks in violation of the common law of the State of Illinois.

4851-0528-6674

89.     Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

90.     Plaintiff has no adequate remedy at law.


**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

1.     Preliminarily and permanently enjoining Defendant, its agents, representatives, employees, assigns, and suppliers, and all persons acting in concert or privity with them, from infringing Plaintiff's copyrighted works or using any of Plaintiff's names or marks in a manner that is likely to cause confusion, to cause mistake, or from otherwise infringing Plaintiff's trademarks, or from competing unfairly with Plaintiff;

2.     Directing the destruction of all infringing merchandise and molds and means of producing the same;

3.     Awarding Plaintiff its damages and Defendant's profits derived by reason of the unlawful acts complained of herein and/or statutory damages as provided by law;

4.     Awarding Plaintiff treble damages as provided by law; and

5.     Awarding Plaintiff its reasonable attorney fees, prejudgment interest, and costs of this action as provided by law.

4851-0528-6674

Dated: December 10, 2012  Respectfully submitted,

By: /s/ Jason J. Keener
  Jason J. Keener  (IL Bar No. 6280337)
  FOLEY & LARDNER LLP
  321 North Clark Street, Suite 2800
  Chicago, IL 60654-5313
  Telephone:  312.832.4500
  Facsimile:  312.832.4700
  Email:  jkeener@foley.com

  Jonathan E. Moskin (*pro hac vice*)
  FOLEY & LARDNER LLP
  90 Park Avenue
  New York, New York 10016
  Telephone:  (212) 682-7474
  Facsimile:  (212) 687-3229
  Email:  jmoskin@foley.com

  *Attorneys for Plaintiff Games Workshop Limited*

## CERTIFICATE OF SERVICE

I, Jason J. Keener, an attorney, certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification and service of such filing to all attorneys of record.

  /s/ Jason J. Keener
  Jason J. Keener

4851-0528-6674