**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHAPTERHOUSE STUDIOS LLC, )<br>)<br>Defendant. ) | Civil Action No. 1:10-cv-08103<br><br>Honorable Matthew F. Kennelly<br>Honorable Jeffrey T. Gilbert |

**ANSWER OF DEFENDANT CHAPTERHOUSE STUDIOS LLC
TO PLAINTIFF'S THIRD AMENDED COMPLAINT,
ERRONEOUSLY TITLED SECOND AMENDED COMPLAINT**

Chapterhouse Studios LLC ("Chapterhouse") hereby answers the Third Amended

Complaint ("TAC") of Games Workshop Limited ("GW"), erroneously titled Second Amended

Complaint, and denies every allegation therein except where expressly admitted:

**PARTIES AND JURISDICTION**

1.      Games Workshop Limited is a United Kingdom corporation and a subsidiary of
Games Workshop Group, plc, which has numerous store locations in and around Chicago,
Illinois, which is its single largest selling market in the United States.

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 1

and therefore denies them.

2.      Upon information and belief, Chapterhouse Studios LLC is a Texas limited
liability company with offices at 3930 Glade Road, Suite 108 #174, Colleyville, Texas, 76034.

**ANSWER:**

Chapterhouse admits it is a Texas limited liability company.  Chapterhouse denies the

remaining allegations in paragraph 2.

3.      This is an action for copyright infringement under 17 U.S.C. § 101 et seq.;
trademark infringement under 15 U.S.C. § 1114(1) and Illinois common law; for use of false

designations of origin under 15 U.S.C. § 1125(a); for violation of the Illinois Deceptive Trade Practices Act under 815 ILCS 510/1 et seq.; for violation of the Illinois Consumer Fraud and 4851-0528-6674 2 Deceptive Business Practices Act under 815 ILCS 505/2 et seq.; and for unfair competition under Illinois common law.

**ANSWER:**

Chapterhouse admits that the Third Amended Complaint ("TAC"), erroneously titled

Second Amended Complaint and referred to throughout by Plaintiff as "SAC," purports to state

claims for copyright infringement under 17 U.S.C. § 101 et seq.; for trademark infringement

under 15 U.S.C. § 1114(1); for use of false designations of origin under 15 U.S.C. § 1125(a); for

dilution under 15 U.S.C. § 1125(c); for violation of 765 ILCS 1036/65, 815 ILCS 510/1 et seq.,

and 815 ILCS 505/2 et seq.; and for trademark infringement and unfair competition under

Illinois common law. Except as expressly admitted, Chapterhouse denies the allegations in

paragraph 3 and specifically denies any wrongdoing.

4. This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over the claims arising under the statutory and common law of the State of Illinois pursuant to 28 U.S.C. §1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

**ANSWER:**

Jurisdiction is a legal conclusion to which no response is necessary. To the extent a

response is necessary, Chapterhouse denies the allegations in paragraph 4.

5. The Court has personal jurisdiction over Defendant because, upon information and belief, Defendant sells and offers to sell infringing products within this jurisdiction; because Defendant maintains an interactive commercial website through which Illinois residents are able to make purchases of the subject infringing goods; and because Defendant has consented to personal jurisdiction in this action.

**ANSWER:**

Personal jurisdiction is a legal conclusion that does not require a response. To the extent a

response is necessary, Chapterhouse denies the allegations relating to personal jurisdiction.

Chapterhouse denies the remaining allegations in paragraph 5.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the Defendant resides in this District and because a substantial part of the events giving rise to the claims occurred in this District.

**ANSWER:**

Proper venue is a legal conclusion to which no response is necessary.  To the extent a

response is necessary to the allegation that venue is proper, Chapterhouse denies the allegation.

Chapterhouse denies the remaining allegations in paragraph 6.

## FACTS COMMON TO ALL COUNTS

### A.     Games Workshop's Copyrighted WARHAMMER and WARHAMMER 40,000 Games and WARHAMMER and WARHAMMER 40,000 Trademarks

7.     Games Workshop is the largest and most successful tabletop fantasy wargames company in the world, with a following of myriad gamers and hobbyists devoted to collecting, creating, painting, and building armies for use in Games Workshop's popular WARHAMMER and WARHAMMER 40,000 war games.

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 7

and therefore denies them.

8.     Games Workshop's WARHAMMER and WARHAMMER 40,000 war games are played, not on a board with defined game places, but in an open-ended world defined only by the underlying literary works and rules that define and depict the characters and armies of the games.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 8.

9.     The game and background story for WARHAMMER, for instance, takes place in a fantasy world of dark magic and powerful gods, populated by mighty heroes and foul monsters, in which armies of humans stand shoulder to shoulder with noble elves and grim dwarves

3

battling unending attacks from enemies such as rat-like Skaven that crawl beneath cities, restless dead who stir in their graves, and daemons who lead mutated hordes of the Chaos Gods into war.

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph 9

and therefore denies them.

10.     The game and background story for WARHAMMER 40,000 similarly takes place in a fantasy universe, but one set in a dark and forbidding world of the 41st millennium, a place ravaged by thousands of years of conflict in which gothic armies of the universe do battle and in which the foremost defenders of humanity are Space Marines; genetically engineered super-warriors armed with the most inventive weapons imaginable, supported by vast armies of the Emperor and tanks of the Imperial Guard who confront foes such as the alien armies of the Tau; the savage Orks; enigmatic Eldar; and unfathomable Tyranids, while lurking in the background are once-loyal Space Marines, turned traitorous supporters of the unspeakable Daemon Lords of Chaos.

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph

10 and therefore denies them.

11.     The various characters, armies and accessories in the WARHAMMER and WARHAMMER 40,000 universe have distinct names, colors, symbols, and other characteristics by which they are known and by which they are immediately recognized by the many fans and followers of the game.

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph

11 and therefore denies them.

12.     Games Workshop produces and sells army figures for WARHAMMER and WARHAMMER 40,000 and a wide range of accessories for those armies and games, including weapons, vehicles, equipment, and other accessories for its armies; the names, symbols, features and appearances of which derive from and are complemented by underlying and highly detailed background publications, including the Warhammer 40,000 rule book (now in its sixth edition); the Space Marine Collectors' Guide, (Second Edition, July 2003) and the following listed volumes (including all of the earlier editions of each of these works):

Codexes and Army Books (which contain, for a particular army,
specific game rules and guides to collecting and painting)
Necromunda Rulebook, 1995

Warhammer 40,000 Tyranids, Fourth Edition, January 2010
Warhammer 40,000 Space Marines, Fifth Edition, October 2008
Warhammer 40,000 Space Marines, Fourth Edition, 2004
Warhammer 40,000 Eldar, 2006
Warhammer 40,000 Tau Empire, 2001
Warhammer 40,000 Tau Empire, 2005
Warhammer 40,000 Space Wolves, 2000
Warhammer 40,000 Space Wolves, 2009
Warhammer 40,000 Dark Angels, Third Edition, February 2007
Warhammer 40,000 Chaos Space Marines, Fourth Edition, September 2007
Warhammer Armies Orks, 1994
Warhammer Armies Lizardmen, 2003
Warhammer Armies Lizardmen, 2008
Warhammer 40,000 Dark Eldar, 2010
Warhammer 40,000 Imperial Guard, 2008
Epic 40,000 Rulebook

Background Work
Index Astartes II, January 2002
Index Astartes, 2002
Index Astartes III, February 2004
Index Astartes IV, June 2005
Space Marine Collectors Guide, 2003
Imperial Guard Collectors Guide, 2003
Warhammer 40,000 Wargear 2005
Warhammer 40,000 Apocalypse, 2007
Insignium Astartes, 2002

Art Book/Background work
The Horus Heresy Collected Visions, June 2007
The Art of Warhammer 40,000, January 2006
The Art of Clint Langley, April 2008

Magazine
White Dwarf Magazine 249, September 2000
White Dwarf Magazine 101, 1988

How to Book
How to Paint Space Marines, April 2005

Novel
Soul Drinkers, September 2002
Brothers of the Snake, 2007

Each of the foregoing have been created by or for Games Workshop in England and are protected by copyright belonging exclusively to Games Workshop.

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph

12 and therefore denies them.

13.    The underlying stories, myths, fictional histories, character names, symbols or icons, overall appearances, and unique characteristics of the many armies used in Games Workshop's WARHAMMER and WARHAMMER 40,000, such as their language, culture, major worlds, weapons, methods of waging war, heraldry and iconography, and how they look, behave, and function are all derived from detailed books and other publications (which are supplemented by other written materials, such as specific game rules, novels, licensed products, hobby guides, and datasheets separately) all of which are created by Games Workshop and are protected by copyright, including those literary works referenced above.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 13.

14.    None of the foregoing copyrighted works created in the United Kingdom are United States works for which registration is required under 17 U.S.C. § 411(a); however, Games Workshop does own numerous registrations and pending applications in the United States Copyright Office for its works, including those registrations and applications summarized in Exhibit A hereto.

**ANSWER:**

Chapterhouse admits that Exhibit A purports to identify a number of copyright

registrations and pending applications.  Chapterhouse lacks sufficient information to admit or

deny the remaining allegations in paragraph 14 and therefore denies them.

15.    Games Workshop also owns all copyright in many sculptural figures of the characters from WARHAMMER and WARHAMMER 40,000, and owns registrations and pending applications in the United States Copyright Office for such sculptural works, including those summarized in Exhibit A hereto.

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph

15 and therefore denies them.

16.     Games Workshop also owns all copyright in a series of computer games, produced for it under license, entitled Dawn of War, permitting head-to-head or cooperative multiplayer participation in a game set in the WARHAMMER 40,000 universe. As summarized in Exhibit A hereto, Games Workshop owns registrations in the United States Copyright Office for "Dawn of War" and "Dawn of War II".

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph

16 and therefore denies them.

17.     Since at least as early as 1984, Games Workshop has sold in the United States books and other publications, games, models, parts and equipment therefore, and related items and services under the name and trademark WARHAMMER (and related names and marks described more fully herein), and, since long prior to the acts of Defendant complained of herein, the WARHAMMER trademark and other trademarks associated with the WARHAMMER game have come to identify Plaintiff's goods and services and to distinguish them from the goods and services of others.

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph

17 and therefore denies them.

18.     Since at least as early as 1987, Games Workshop has sold in the United States books and other publications, games, models, parts and equipment therefore, and related items and services under the name and trademark WARHAMMER 40,000 (and related names and marks described more fully herein), and, since long prior to the acts of Defendant complained of herein, the WARHAMMER 40,000 trademark and other trademarks associated with the WARHAMMER 40,000 game have come to identify Plaintiff's goods and services and to distinguish them from the goods and services of others.

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph

18 and therefore denies them.

19.     Since long prior to the acts of defendant complained of herein, Games Workshop's "Forge World" division has been selling conversion kits, replacement doors, and additional products for its customers made to fit existing WARHAMMER 40,000 products and, more recently (but still prior to the acts complained of herein) WARHAMMER products to use to decorate and modify their models for use in connection with the WARHAMMER 40,000 and WARHAMMER games.

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph

19 and therefore denies them.

20.     Plaintiff's WARHAMMER and WARHAMMER 40,000 games have achieved
enormous success, and for many years have been among the best known and most popular table
top hobby war games in this country.

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph

20 and therefore denies them.

21.     Plaintiff owns numerous registrations for its trademarks on the Principal Register
in the United States Trademark Office, including the following registrations:

| Trade Mark | Country | Registration Number |
|---|---|---|
| WARHAMMER | USA | 2,718,741 |
| WARHAMMER 40,000 | USA | 3,707,457 |
| 40K | USA | 3,768,909 |
| 40,000 | USA | 3,751,267 |
| GAMES WORKSHOP | USA | 3,612,759 |
| GW | USA | 3,878,431 |
| SPACE MARINE | USA | 1,922,180 |
| ELDAR | USA | 1,944,847 |
| DARK ANGELS | USA | 1,913,474 |
| TAU | USA | 2,820,748 |
| AQUILA Design | USA | 3,646,312 |
| FORGEWORLD | USA | 2,751,558 |
| EPIC | USA | 1,751,460 |
| DAWN OF WAR | USA | 3,291,300 |

**ANSWER:**

Chapterhouse notes that Trademark Registration Number 1,751,460 is for a Word Mark

of "SAMWISH," which is registered to Uli Siegenthaler, an individual in Switzerland.

Chapterhouse admits that the remaining registration numbers given correspond to trademark

registrations listed on the principal register of the United  States Patent and Trademark Office,

and that these registrations list Games Workshop Limited as the registrant. Chapterhouse lacks

sufficient information to admit or deny any remaining allegations in paragraph 21 and therefore

denies them.

22.     Plaintiff's foregoing registered WARHAMMER trademarks (collectively, the "WARHAMMER Registered Marks") are valid, subsisting, unrevoked, and uncancelled, and Registration Nos. 2,718,741, 2,820,748, 2,070,887, 2,820,748, 2,100,767, 1,944,847, 1,913,474 and 1,751,460 are now incontestable under the provisions of 15 U.S.C. § 1065.

**ANSWER:**

Chapterhouse notes that Trademark Registration Number 1,751,460 is for a Word Mark

of "SAMWISH," which is registered to Uli Siegenthaler, an individual in Switzerland.

Chapterhouse lacks sufficient information to admit or deny the remaining allegations in

paragraph 22 and therefore denies them.

23.     Games Workshop has very substantial annual sales of products for WARHAMMER and WARHAMMER 40,000 and bearing its WARHAMMER, WARHAMMER 40,000, 40K, DARK ANGELS, ELDAR, FORGEWORLD, DAWN OF WAR, EPIC, TYRANID, TAU, and SPACE MARINE brand names, with annual sales in this country alone well in excess of $50 million, and Games Workshop invests considerable sums each year in marketing and promoting these brands and in developing new products under these brand names. Games Workshop has thereby built up substantial goodwill and reputation in the marks WARHAMMER, WARHAMMER 40,000, 40k, DARK ANGELS, ELDAR, FORGEWORLD, DAWN OF WAR, EPIC, TYRANID, TAU, and SPACE MARINE (collectively, the "WARHAMMER Marks"), which it uses in connection with its tabletop games and miniatures and accessories for such games.

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph

23 and therefore denies them.

24.     The area in and around Chicago, Illinois is one of the most active for Games Workshop, being part of the single largest selling market in the United States; being home to the AdeptiCon, the largest independent convention for miniature wargaming hobbyists in the country (at which the WARHAMMER and WARHAMMER 40,000 games are featured), and the site selected by Games Workshop for its 2012 Games Day Convention (which attracted thousands of fans of the WARHAMMER and WARHAMMER 40,000 games at the Donald E. Stephens Convention Center).

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph

24 and therefore denies them.

25.     As a result of the great success of Games Workshop's WARHAMMER and
WARHAMMER 40,000 publications, products and game, since long prior to the acts of
Defendant complained of herein, the name and trademarks WARHAMMER, WARHAMMER
40,000, 40K, DARK ANGELS, ELDAR, FORGEWORLD, DAWN OF WAR, EPIC,
TYRANID, TAU and SPACE MARINE have come to represent substantial and highly valuable
goodwill belonging exclusively to Plaintiff.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 25.

26.     Games Workshop also has a large number of well-known unregistered trade
marks (including names of armies, Chapters, and other products) including without limitation:
Games Workshop also has a large number of well-known unregistered trade marks (including
names of armies, Chapters, and other products) including without limitation: Adeptus
Mechanicus, Space Marine Assault Squad, Alpha Legion, Black Templars, Blood Angels,
Bolter, Tyranid Bonesword, Cadian, Carnifex, Chaos Space Marines, Chaplain, Chimera,
Crimson Fists, Dark Angel, Dark Elf, Deathwatch, Demolisher, Space Marine Devastators,
Dreadnought, Drop Pod, Eldar, Elder Farseer, Eldar Jetbike, Eldar Warlock, Seer Council,
Empire, Exorcist, Flesh Tearers, Gaunts, Genestealer, Gunship, Haemonculus, Heavy bolter,
Hellhound, High Elf, Hive Tyrant, Horus Heresy, Howling Banshee, Imperial Fists, Imperial
Guard, Insignium Astartes, Iron Hands, Jetbike, Jump Pack, Kroxigor, Land Raider, Land
Speeder, Tyranid Lash Whip, Legion of the Damned, Leman Russ, Librarian, Lightning Claw,
Lizardmen, Melta, Plasma, Predator, Rhino, Salamander, Striking Scorpion, Soul Drinker, Space
Wolves, Stormraven, Storm Shield, Stormtrooper, Space Marine Tactical Squad, Techmarine,
Termagants, Terminator, Tervigon, Thousand Sons, Thunder Hammer, Tyrant, Tyranid, Tyranid
Warrior, Urien Rakarth.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 26.

27.     Many of the symbols associated with the characters and armies of the
WARHAMMER 40,000 universe, as well as the accessories for these characters and armies,
have also become well-known and immediately recognizable to the many fans of the game as
used on and in connection with the respective characters, including without limitation: the Black
Templars icon; the Blood Ravens icon; Blood Angels icon; Celestial Lions icon; Dark Angels
winged sword icon; Exorcist skull icon; Flesh Tearers icon; Howling Griffon icon; Imperial Fists
icon; Iron Snakes icon; Legion of the Damned icon; Chaos Space Marines eight-pointed star
icon; Soul Drinkers icon; Salamanders icon; Tau Empire icon; Scythes of the Emperor icon;
Space Marine Tactical squad icon; Space Marine Assualt squad icon; Space Marine Devastator

squad icon; Ultramarine icon; Adeptus Mechanicus cog icon; Iron Hands icon; Space Wolves icon; Thousand Sons icon; Mantis Warrior icon.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 27.

28.     The foregoing unregistered WARHAMMER word marks and symbols are also very well known among the hobbying and gaming communities. Games Workshop's annual sales of products bearing these marks is likewise significant, and it invests great sums each year in marketing and promoting these brands and in developing new products under these brand names. As a result, Games Workshop has built up substantial goodwill and reputation in these unregistered trade marks in the U.S. and around the world [*sic*]

**ANSWER:**

Chapterhouse denies the allegations in paragraph 28.

**B.     Defendant's Infringing Conduct**

29.     Upon information and belief, after having initiated some modest sales on eBay in 2008, sometime in or about May 2009, Chapterhouse began manufacturing and selling gaming miniatures and accessories at its website located at www.chapterhousestudios.com ("the Website").

**ANSWER:**

Chapterhouse admits it maintains a website at www.chapterhousestudios.com, and admits

that it sells gaming miniatures and accessories through that website.  Chapterhouse admits that it

began selling gaming miniatures and accessories through this website in or about May 2009.

Chapterhouse denies the remaining allegations in paragraph 29.

30.     Chapterhouse makes no secret of the fact that its products are derived from, inspired by, and copied from Games Workshop's copyrighted works and, indeed, although Chapterhouse recently changed its website as a result of the allegations of infringement against it in this case, the banner at the top of each page of the Website had, until November 2011, described its business as "Specializing in Custom Sculpts and Bits for Warhammer 40,000 and Fantasy".

**ANSWER:**

Chapterhouse admits that until November 2011, each page of its website at

www.chapterhousestudios.com contained the words "Specializing in Custom Sculpts and Bits for

Warhammer 40,000 and Fantasy." Chapterhouse denies the other allegations in paragraph 30.

31.     The website does not identify any sources of inspiration for any of the products
other than Games Workshop.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 31.

32.     Chapterhouse's products are identified on its website by the names created and
adopted by Games Workshop to identify its corresponding characters, armies and the accessories
therefor, as well as images and descriptions derived or copied from Games Workshop's original
copyrighted materials.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 32.

33.     Upon information and belief, the very name "Chapterhouse" is a reference to
Games Workshop's proprietary Space Marines characters from WARHAMMER 40,000, each of
which belongs to a specific "Chapter" (of which there are many), with each Chapter having its
own unique expressions, such as its own heraldry and iconography.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 33.

34.     Chapterhouse further admits on its website that Games Workshop is the owner of
all of the copyrights and trademarks at issue herein by expressly stating:

Adeptus Astartes, Battlefleet Gothic, Black Flame, Black Library, the Black
Library logo, BL Publishing, Blood Angels, Bloodquest, Blood Bowl, the Blood
Bowl logo, The Blood Bowl Spike Device, Cadian, Catachan, the Chaos device,
Cityfight, the Chaos logo, Citadel, Citadel Device, City of the Damned, Codex,
Daemonhunters, Dark Angels, Dark Eldar, Dark Future, the Double-
Headed/Imperial Eagle device, 'Eavy Metal, Eldar, Eldar symbol devices, Epic,
Eye of Terror, Fanatic, the Fanatic logo, the Fanatic II logo, Fire Warrior, Forge
World, Games Workshop, Games Workshop logo, Genestealer, Golden Demon,
Gorkamorka, Great Unclean One, the Hammer of Sigmar logo, Horned Rat logo,
Inferno, Inquisitor, the Inquisitor logo, the Inquisitor device,
Inquisitor:Conspiracies, Keeper of Secrets, Khemri, Khorne, Kroot, Lord of

Change, Marauder, Mordheim, the Mordheim logo, Necromunda, Necromunda
stencil logo, Necromunda Plate logo, Necron, Nurgle, Ork, Ork skull devices,
Sisters of Battle, Skaven, the Skaven symbol devices, Slaanesh, Space Hulk,
Space Marine, Space Marine chapters, Space Marine chapter logos, Talisman,
Tau, the Tau caste designations, Tomb Kings, Trio of Warriors, Twin Tailed
Comet Logo, Tyranid, Tyrannid, Tzeentch, Ultramarines, Warhammer,
Warhammer Historical, Warhammer Online, Warhammer 40k Device,
Warhammer World logo, Warmaster, White Dwarf, the White Dwarf logo, and all
associated marks, names, races, race insignia, characters, vehicles, locations,
units, illustrations and images from the Blood Bowl game, the Warhammer world,
the Talisaman world, and the Warhammer 40,000 universe are either ®, TM
and/or © Copyright Games Workshop Ltd 2000-2010, variably registered in the
UK and other countries around the world.

**ANSWER:**

In accordance with Games Workshop's terms and conditions, and to prevent any

likelihood of consumer confusion regarding the source of the products available on

Chapterhouse's website, Chapterhouse's website includes a trademark disclaimer, listing the

trademarks set forth in paragraph 34. Chapterhouse lacks sufficient information to admit or deny

the accuracy of the language supplied by Games Workshop. Chapterhouse denies the remaining

allegations of paragraph 34.

35.     Because many of the characteristics of the many armies used in Games
Workshop's WARHAMMER and WARHAMMER 40,000 publications and products, such as
their language, culture, major worlds, weapons, methods of waging war, heraldry and
iconography, and their appearances, behaviors and functions can be found in or derived from
numerous Games Workshop books and other publications, as alleged above, only defendant
knows for certain which of these books and other publications it accessed and relied upon in
creating the works at issue herein. However, even defendant contends it does not know for
certain what Games Workshop materials its independent designers access in creating the subject
works. By way of example, the following exemplify some of the ways in which Chapterhouse
infringes Games Workshop's copyrighted works:

**ANSWER:**

Chapterhouse denies the allegations of this introductory portion of paragraph 35

a.      Chapterhouse produces and sells a kit to convert a Games Workshop
"Carnifex" into a "Tervigon" (both of which terms are original and proprietary to
Games Workshop). Games Workshop's Tyranid Codex describes the Tervigon
and provides a representation of it, and Defendant's conversion kit will create a

Tervigon having unique expressions proprietary to Games Workshop, including having the same number of spine pieces and in the same configuration; the same number, type and configuration of limbs; and similar abdomen sacs; all of which are as depicted and described in Games Workshop's Warhammer 40,000 Tyranids, Fourth Edition, January 2010. However, Chapterhouse may also have referred to and relied upon other Games Workshop publications, including the Tyranid Codexes for 1995, 2001 and 2004

**ANSWER:**

Chapterhouse admits that it sells a product kit that can be used to convert a Games

Workshop model of a Carnifex into another figure. Chapterhouse denies the remaining

allegations of paragraph 35a.

b.      Chapterhouse is producing shoulder pads for "Space Marines" that very clearly derive from many of the background works published by Games Workshop for its Space Marine Chapters. Games Workshop's Space Marine units are classified by specific shapes and icons on their shoulder pads, the features of which are clearly and uniquely defined in Games Workshop's background works, such as an arrow for the Tactical Squad, the use of Roman numerals, inverted "V" icons and other iconography and heraldry specific to the Chapter and squad to which a soldier belongs.

**ANSWER:**

Chapterhouse admits that it produces "shoulder pad" parts that fit certain models sold by

Games Workshop. Chapterhouse denies the remaining allegations in paragraph 35b.

c.      Chapterhouse is selling shoulder pads for Space Marines featuring symbols and bearing other unique expressions taken from a number of Games Workshop's Assault, Tactical and Devastator Space Marine unit types, including the exact appropriation of the original order of Roman Numeral designations and accompanying character names and product appearances used by Games Workshop to identify and distinguish each unit.

**ANSWER:**

Chapterhouse admits that it sells "shoulder pad" parts that fit certain models sold by

Games Workshop. Chapterhouse denies the remaining allegations in paragraph 35c.

d.      Many of the shoulder pads that Chapterhouse is selling bear not only the unique expressions described above as applying more generally to Games Workshop's products but also have studs, arrow and cross arrow designs, inverted

14

"V" and Roman numeral icons, as well as icons associated with a number of Games Workshop's proprietary Chapters, including the Black Templars, Blood Ravens, Thousand Sons, Blood Eagles, Celestial Lions, Exorcists, Flesh Tearers, Howling Griffons, Imperial Fists, Iron Snakes, Soul Drinkers and Salamander Chapters. Chapterhouse is also selling pads that convert standard Games Workshop Space Marines into characters for other Chapters, such as the Salamander and Fleshtearers Chapters, and which borrow unique expressions relevant to that Chapter which are proprietary to Games Workshop.

**ANSWER:**

Chapterhouse admits that it sells "shoulder pad" parts that fit certain models sold by Games Workshop. Chapterhouse further admits that some of its shoulder pad models bear designs and markings including arrow designs, inverted Vs, and Roman numerals. Chapterhouse denies the remaining allegations in paragraph 35d.

d.    Chapterhouse's conversion and armor kits reproduce all or substantial distinctive features of the vehicles and miniatures upon which they are based, as they are specifically configured to fit to Games Workshop's products, including: (i) the surface decoration of defendant's Salamander Drop Pod overlays, which is derived from and reproduces Games Workshop's Salamander iconography; and (ii) defendant's Rhino Tank Conversion Kits for Space Marine® Dragon or Salamander, the doors, front panels and armor sections of which, in Defendant's own words, have been specifically designed to "…accessorize the current space marine® rhino model kit. Themed in a dragon or salamander style also good for alpha legion…"

**ANSWER:**

Chapterhouse denies the allegations of the above paragraph, erroneously marked 35d.

36.    Subsequent to the commencement of this case, Chapterhouse has introduced numerous new products copied from Games Workshop's original WARHAMMER and WARHAMMER 40,000 universe, including without limitation various "Tru-Scale" conversion kits to change the size scale of genuine Space Marine figures to a new size that Chapterhouse contends is more "true" to Games Workshop's own original artwork than Games Workshop's actual Space Marine figures;Tau heads for Tau "Crisis Model" warriors; various "Heresy" era shoulder pads for Terminator Space Marines and a "Pilum Imperial Attack Jetbike" equipped with new weapons copied from Games Workshop' Space Marine Bike and Games Workshop's weapon designs.

**ANSWER:**

Chapterhouse admits that, subsequent to the commencement of this action, Chapterhouse

has introduced products bearing the designations or descriptions "TRU-Scale," "Alternative

Heads for Tau Crisis Suits," "Heresy-Era" Shoulder Pads, and "Pilum Imperial Attack Jetbike."

Chapterhouse denies the remaining allegations of paragraph 36.

37.     The nature and extent of Chapterhouse's copying has also grown more pervasive
over time. Whereas it began selling isolated accessories and weapons for Games Workshop's
Space Marine characters, it then expanded to selling entire lines of products systematically
covering multiple characters (including the entire Roman numbering system of Games
Workshop's Tactical, Assault and Devastator Space Marines); then expanded further to copying
entire characters (in particular female versions of Games Workshop's Eldar figures) and vehicles
(such as the Space Marine Jet Bike), and now has introduced its "Tru-scale" products which, as
described above, purport to undermine Games Workshop's exclusive right to determine the size
and appearance of the copyrighted figures for its WARHAMMER 40,000 game.

**ANSWER:**

Chapterhouse admits that the products available on its website change over time and that

its website currently includes the words "Space Marine" and "TRU-Scale." Chapterhouse denies

the remaining allegations of paragraph 37.

38.     Consistent with the pervasive copying by defendant of Games Workshop's
original works, Chapterhouse has in its possession hundreds if not thousands of Games
Workshops publications and products, and has ready access to all or substantially all of Games
Workshop's copyrighted works.

**ANSWER:**

Chapterhouse admits that its founder, Nicholas Villacci, has in his possession books and

miniatures associated with the Warhammer and Warhammer 40,000 games. Chapterhouse

denies the remaining allegations of paragraph 38.

39.     By letter dated June 12, 2009, Games Workshop placed Chapterhouse directly on
notice that it deemed many of its products to infringe Games Workshop's intellectual property
rights, and thereafter commenced this case. However, since then, Chapterhouse has simply
expanded its business in disregard of Games Workshop's rights.

16

**ANSWER:**

Chapterhouse admits that Plaintiff has provided a letter dated June 12, 2009.

Chapterhouse denies the remaining allegations in paragraph 39.

40.     Upon information and belief, many consumers of Plaintiff's original WARHAMMER and WARHAMMER 40,000 books and other products and services are users of and make purchases from Defendant's products, including many such individuals and users in the State of Illinois.

**ANSWER:**

Chapterhouse lacks sufficient information to admit or deny the allegations in paragraph

40 and therefore denies them.

41.     Upon information and belief, all of the products that Chapterhouse currently markets and sells are derived from and bear unique characteristics and expressions of Games Workshop's copyrighted works, including unique expressions created and set forth in great detail in Games Workshop's background published works described above.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 41.

42.     Upon information and belief, all of the items produced, marketed, and sold by Chapterhouse have copied elements from Games Workshop's copyrighted characters and stories and sculptural works and/or use trademarks and symbols owned by Games Workshop to identify these sources of inspiration.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 42.

43.     Defendant's development, production, marketing, and sale of its copies and derivative works based on Games Workshop's proprietary works is without authorization or approval of Games Workshop.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 43.

44.     Defendant's development, production, marketing, and sale of its copies and derivative works based on Games Workshop's proprietary works preempts Games Workshop's ability to develop and sell its own such variations and derivative works and competes directly with Games Workshop's "Forge World" products.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 44.

45.    Beyond the copying of protected original elements of Games Workshop's copyrighted works, Chapterhouse makes extensive unauthorized use of Games Workshop's registered and unregistered trademarks and symbols.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 45.

46.    Chapterhouse makes pervasive references to Games Workshop's trademarks and symbols to identify its new products (as it did for its earlier products), including without limitation: "Space Marine Land Raider", "Space Marine Storm Raven", "Space Marine Razorback", "Imperial Jetbike", "Tau", "Heresy Era Shoulder Pads for Terminators" and the like.

**ANSWER:**

Chapterhouse admits that its website contains the words "Space Marine," "Land Raider,"

"Storm Raven," "Razorback," "Imperial Jet Bike," "Tau," and "Heresy Era Shoulder Pads for

Terminators."  Chapterhouse denies the remaining allegations of paragraph 46.

47.    Upon information and belief, such references create an association in the minds of customers between Defendant's products and those of Games Workshop and give the false impression that Chapterhouse's products are licensed by or endorsed by Games Workshop or are otherwise associated with Plaintiff.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 47.

48.    Upon information and belief, products produced and sold by Chapterhouse copied from Games Workshop's copyrighted originals and bearing trademarks and other indicia of origin with Games Workshop are also sold in substantial quantities in the secondary market (such as on eBay and other similar platforms), where purchasers are likely to be confused as to the origin of those products.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 48.

49.     Because Chapterhouse places on its products no permanent markings identifying Chapterhouse as the source of the goods, when those products are sold or resold in secondary markets, the likelihood is that they will be associated only with Games Workshop.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 49.

50.     Exacerbating the injury to Games Workshop's reputation, the quality of many of Defendant's products is materially inferior to the quality of Games Workshop's originals, which will cause injury to Games Workshop's reputation among purchasers of Defendant's products in the original or secondary markets.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 50.

51.     Chapterhouse's use of the Games Workshops trademarks, is likely to cause confusion, to cause mistake, or to deceive.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 51.

52.     The WARHAMMER Marks and WARHAMMER Registered Marks were famous at the time Defendant began using these marks.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 52.

53.     Chapterhouse's use of the logos and symbols associated with Games Workshop's WARHAMMER and WARHAMMER 40,000 on and in connection with the same characters, armies and accessories for which Games Workshop uses the same, are likely to cause confusion, to cause mistake, or to deceive.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 53.

54.     Defendant's use of the Games Workshops trademarks has been without Plaintiff's authorization or consent.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 54.

55. Upon information and belief, Defendant's acts complained of herein have been willful and malicious, and intended to trade upon the reputation of Plaintiff and its products and services sold under its WARHAMMER Marks and WARHAMMER Registered Marks and thereby cause harm to Plaintiff.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 55.

## FIRST CAUSE OF ACTION

### [Copyright Infringement by Defendant Under 17 U.S.C. § 101 et seq.]

56. Plaintiff realleges and incorporates by reference Paragraphs 1 through 55 as though fully set forth herein.

**ANSWER:**

Chapterhouse incorporates by reference its answers to paragraphs 1-55 as though fully set forth herein.

57. Defendant's conduct as aforesaid constitutes infringement of Games Workshop's copyright in and to its literary and sculptural works.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 57.

58. Defendant's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 58.

59. Plaintiff has no adequate remedy at law.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 59.

## SECOND CAUSE OF ACTION

### [Trademark Infringement by Chapterhouse Under 15 U.S.C. § 1114(1)]

60.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 59 as though fully set forth herein.

**ANSWER:**

Chapterhouse incorporates by reference its answers to paragraphs 1-59 though fully set forth herein.

61.     Chapterhouse's use in commerce of the WARHAMMER Registered Marks is likely to cause confusion, or to cause mistake, or to deceive.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 61.

62.     The foregoing conduct of Chapterhouse constitutes trademark infringement in violation of 15 U.S.C. §1114(1).

**ANSWER:**

Chapterhouse denies the allegations in paragraph 62.

63.     Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 63.

64.     Plaintiff has no adequate remedy at law.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 64.

## THIRD CAUSE OF ACTION

### [False Designations of Origin by Chapterhouse Under 15 U.S.C. § 1125(a)]

65.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 64 as though fully set forth herein.

**ANSWER:**

Chapterhouse incorporates by reference its answers to paragraphs 1-65 as though fully set forth herein.

66. Chapterhouse's conduct as aforesaid is likely to cause confusion, to cause mistake, or to deceive the relevant public that Chapterhouse, its products and services are authorized by or are affiliated with Games Workshop.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 66.

67. The above-described conduct of Chapterhouse constitutes use of false designations of origin and false and misleading descriptions or representations that are likely to cause confusion, to cause mistake, or to mislead as to the affiliation, connection, or association of Chapterhouse or its goods or services, with Plaintiff and its goods and services in violation of 15 U.S.C. §1125(a).

**ANSWER:**

Chapterhouse denies the allegations in paragraph 67.

68. Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 68.

69. Plaintiff has no adequate remedy at law.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 69.

### FOURTH CAUSE OF ACTION

### [Violation by Chapterhouse of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 et seq.]

70. Plaintiff realleges and incorporates by reference Paragraphs 1 through 69 as though fully set forth herein.

**ANSWER:**

Chapterhouse incorporates by reference its answers to paragraphs 1-69 as though fully set

forth herein.

71.     This is a claim for deceptive trade practices under the Illinois Deceptive Trade

Practices Act. 815 ILCS 510/1 et seq.

**ANSWER:**

Chapterhouse admits that Plaintiff purports to bring a claim for deceptive trade practices

under the Illinois Deceptive Trade Practices Act. 815 ILCS 510/1 et seq.  Chapterhouse

specifically denies any wrongdoing.  Chapterhouse denies the remaining allegations of paragraph

71.

72.     Upon information and belief, Chapterhouse have/has knowingly made false and
misleading representations as to the source of its goods and services, and knowingly made false
representations as to its affiliation with Plaintiff.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 72.

73.     Chapterhouse has caused a likelihood of confusion or misunderstanding as to the
source, sponsorship, approval, or certification of goods and services by making false and
misleading representations of fact.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 73.

74.     Chapterhouse has caused a likelihood of confusion or misunderstanding as to the
affiliation, connection, or association with or certification by Plaintiff by making false and
misleading representations of fact.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 74.

75.     The conduct complained of herein constitutes unfair and deceptive trade practices,
in violation of 815 ILCS 510/1 et seq.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 75.

76.    Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 76.

77.    Plaintiff has no adequate remedy at law.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 77.

## FIFTH CAUSE OF ACTION

### [Violation by Chapterhouse of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 510/1 et seq.]

78.    Plaintiff realleges and incorporates by reference Paragraphs 1 through 77 as though fully set forth herein.

**ANSWER:**

Chapterhouse incorporates by reference its answers to paragraphs 1-77 as though fully set forth herein.

79.    This is a claim for unfair and deceptive trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, Section 2.

**ANSWER:**

Chapterhouse admits that this purports to be a claim for unfair and deceptive trade practices under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505, Section 2.  Chapterhouse denies any other allegations in paragraph 79 and specifically denies any wrongdoing.

80.    Chapterhouse's business practices directed at Plaintiff and Plaintiff's customers constitute an unfair and deceptive business practice as defined and prohibited by Illinois law.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 80.

81.     Chapterhouse has made false and deceptive representations of material fact to Plaintiff's customers with the intent that Plaintiff's customers rely on the misrepresentations.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 81.

82.     Chapterhouse has made false and deceptive representations of material fact relating to the source, sponsorship, approval, or certification of its goods and services with the intent that Plaintiff's customers rely on the misrepresentations.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 82.

83.     Chapterhouse has made false and deceptive representations of material fact relating to its affiliation, connection, or association with Plaintiff or certification by Plaintiff with the intent that Plaintiff's customers rely on the misrepresentations.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 83.

84.     Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 84.

85.     Plaintiff has no adequate remedy at law.

**ANSWER:**

Chapterhouse denies the allegations in paragraph 85.

## SIXTH CAUSE OF ACTION

### [Common Law Unfair Competition–Trademark Infringement by Chapterhouse]

86.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 85 as though fully set forth herein.

**ANSWER:**

Chapterhouse incorporates by reference its answers to paragraphs 1-85 as though fully set forth herein.

87.    Chapterhouse's conduct as aforesaid is likely to confuse and deceive consumers about the origin of Defendant's goods and services.

**ANSWER:**

Chapterhouse denies the allegations of paragraph 87.

88.    The foregoing conduct of Chapterhouse constitutes infringement and misappropriation of Plaintiff's common law rights in its trademarks in violation of the common law of the State of Illinois.

**ANSWER:**

Chapterhouse denies the allegations of paragraph 88.

89.    Chapterhouse's conduct as aforesaid has caused great and irreparable injury to Plaintiff, and unless such conduct is enjoined, it will continue and Plaintiff will continue to suffer great and irreparable injury.

**ANSWER:**

Chapterhouse denies the allegations of paragraph 89.

90.    Plaintiff has no adequate remedy at law.

**ANSWER:**

Chapterhouse denies the allegations of paragraph 90.

**PRAYER FOR RELIEF**

Chapterhouse denies that GW is entitled to any of the relief requested.

**AFFIRMATIVE DEFENSES**

Chapterhouse asserts the following defenses, without regard to whether they are affirmative defenses or matters as to which GW bears the burden of proof. Chapterhouse reserves the right to raise additional defenses as discovery proceeds. Chapterhouse does not

assume the burden of proof on any issue, however characterized, on which it does not bear that burden.

GW's TAC, and every cause of action within it, fails to state a cause of action on which relief can be granted.

This court lacks subject-matter jurisdiction over claims to enforce U.S. copyrights for which GW has not obtained, or has not pleaded ownership of, copyright registrations.

GW's copyright claims are barred because GW lacks standing to enforce copyrights it does not own.

GW's copyright claims are barred by the doctrine of fair use.

GW's copyright claims are barred by the *de minimis* doctrine.

GW's copyright claims are barred by the doctrine of independent creation.

GW's state law claims are barred to the extent they are preempted by federal law.

GW's claims are barred by its failure to join indispensable parties.

GW's claims are barred by consent, waiver, acquiescence or license.

GW's claims are barred by relevant statutes of limitations.

GW's claims are barred by laches.

GW's claims are barred by res judicata.

GW's claims are barred by estoppel.

GW's claims are barred by the doctrine of copyright misuse.

GW's claims are barred due to its use of the Lanham Act to impede free and fair competition.

GW's claims are barred as to any of its actions that violate any unfair competition laws.

GW's claims are barred due to its unclean hands.

GW's trademark claims are barred by the defense of nominative fair use.

GW's trademark claims are barred to the extent it has abandoned its alleged marks.

GW's claims are barred by the First Amendment to the United States Constitution.

GW's claims are barred by its failure to mitigate damages.

GW's claims to statutory damages are limited or barred by the United States Constitution.

GW's claims to treble damages are barred because at all times Chapterhouse has acted without malice and with a good faith belief that its actions were proper.

GW's claims are barred to the extent its copyright or trademark registrations were obtained through fraud on the Copyright Office or the Patent and Trademark Office. Upon information and belief, after improperly withholding from production and from the Court in the pending litigation rejections issued by the copyright office denying the copyrightability of GW works, GW now seeks to rely on the summary judgment order entered without benefit of the Copyright Office's findings in an attempt to overcome the rejection.

## JURY TRIAL DEMANDED

In accordance with Federal Rule of Civil Procedure 38(b), Chapterhouse demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Chapterhouse seeks relief as follows:

1.      That the Court enter judgment for Chapterhouse and against GW on all causes of action;

2.      That the Court award Chapterhouse costs of suit, including attorneys' fees; and

3.      That the Court award such other relief as is just and equitable.


Dated: December 24, 2012          By: */s/ Sarah J. Kalemeris*
                                  Jennifer A. Golinveaux (CA Bar No. 203056)

Dean A. Morehous (CA Bar No. 111841)
K. Joon Oh (CA Bar No. 246142)
Thomas J. Kearney (CA Bar No. 267087)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Phone: (415) 591-1000
Fax: (415) 591-1400
jgolinveaux@winston.com
dmorehous@winston.com
koh@winston.com
tkearney@winston.com

Bryce A. Cooper (IL Bar No. 6296129)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600
Fax: (312) 558-5700
bcooper@winston.com

Julianne M. Hartzell (IL Bar No. 6275093)
Sarah J. Kalemeris (IL Bar No. 6303644)
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive
Willis Tower Suite 6300
Chicago, IL 60606
Phone: (312) 474-6300
Fax: (312) 474-0448
jhartzell@marshallip.com
skalemeris@marshallip.com

*Attorneys for Defendant Chapterhouse Studios LLC*

## CERTIFICATE OF SERVICE

I, Sarah J. Kalemeris, hereby certify that I electronically filed the foregoing

ANSWER OF DEFENDANT CHAPTERHOUSE STUDIOS LLC TO PLAINTIFF'S THIRD AMENDED COMPLAINT, ERRONEOUSLY TITLED SECOND AMENDED COMPLAINT

with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D), pursuant to Local Rule 5.9:

> Jason Keener
> FOLEY & LARDNER LLP
> 321 North Clark Street, Suite 2800
> Chicago, IL 60654-5313
> Telephone: 312.832.4500
> Facsimile: 312.832.4700
> Email: jkeener@foley.com
>
> Jonathan E. Moskin
> FOLEY & LARDNER LLP
> 90 Park Avenue
> New York, New York 10016
> Telephone: (212) 682-7474
> Facsimile: (212) 687-3229
> Email: jmoskin@foley.com

Date: December 24, 2012        */s/ Sarah J. Kalemeris*
                                        Sarah J. Kalemeris
                                        One of the attorneys
                                        for Chapterhouse Studios LLC