**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC and | ) | |
| JON PAULSON d/b/a PAULSON GAMES, | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S MOTION**
**FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER AND SANCTIONS**

Pursuant to Federal Rules of Civil Procedure 54(b) and 37, Defendant Chapterhouse
Studios LLC ("CHS") respectfully requests that this Court reconsider two portions of its
November 27, 2012 Memorandum Opinion and Order (Dkt. No. 258, the "Order") relating to
Plaintiff Games Workshop Limited's ("GW") copyright infringement claims and impose
sanctions on GW.

**I. INTRODUCTION**

This motion addresses two discrete issues.

First, CHS respectfully submits that, due to the confusing nature of GW's several
amendments to its copyright claims, the Court made a misapprehension of fact when it declined
to address the products identified in entries 111-125 of GW's Second Revised Copyright Chart
("Second Rev. Claim Chart," attached hereto as Ex. A to the Declaration of Jennifer A.
Golinveaux, Dec. 27, 2012 ("Golinveaux Decl.")). The Court believed that these products were
related to GW's new lawsuit. However, products 115, 116, and 122 were identified and have
been at issue in this case since at least January 2012. Following the reasoning in the Court's

Order, GW should not be permitted to "simply drop [its copyright] claims without prejudice" for these products at this late stage in the litigation.

Second, CHS requests reconsideration of the Court's finding that GW is "entitled to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20. Newly discovered documents—in the possession of GW's lead trial counsel <u>months</u> before the summary judgment briefing but withheld from CHS and the Court—show that the United States Copyright Office rejected copyright registration for this very design on the grounds that it is "<u>too minimal</u>" to be afforded protection. Decisions of the Copyright Office are generally afforded "great deference" by the courts, and GW's concealment of this evidence before the Court rendered its summary judgment Order is inexcusable. CHS respectfully requests that the Court reconsider its finding with regards to GW's shoulder pads in light of these newly-discovered documents and sanction GW by awarding CHS costs for its independent investigation to uncover the evidence and directing GW to abide by its discovery obligations and produce all correspondence between GW and the Copyright Office regarding the works-in-suit.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 54(b) states that a non-final order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The Seventh Circuit has further held that a ruling may be revisited where "the court has made an error not of reasoning but of apprehension" or has "patently misunderstood a party." *Wielgus v. Ryobi Technologies, Inc.*, No. 08-CV-1597, 2010 WL 5139031, at *3 (N.D. Ill. 2010) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 2009)). A court therefore will grant a motion to reconsider when there is a "compelling reason" . . . that shows that an earlier ruling was erroneous." *Id.* (citing

*Solis v. Current Dev. Corp.,* 557 F.3d 772, 780 (7th Cir. 2009)).  The Seventh Circuit has also held that Rule 54(b) motions for reconsideration may be granted in order to examine newly discovered evidence related to a non-final order.  *United Air Lines, Inc. v. ALG, Inc.*, 916 F. Supp. 793, 795 (N.D. Ill. 1996) ("motions for reconsideration serve a limited function" including to "present newly discovered evidence" relating to a previously issued summary judgment order); *Anderson v. Montgomery Ward & Co., Inc.*, 704 F.Supp. 162, 163 (N.D. Ill. 1989) ("when a party can show good reason for having failed to adduce such [new evidence] in its argument on the original [summary judgment] motion, the court is empowered to review this material, and, if necessary, reverse itself").

When newly discovered evidence was improperly withheld by a party as part of discovery, the court also has broad discretion to impose sanctions under Federal Rule 37(c)(1), including payment of reasonable expenses.  *See* Fed. R. Civ. P. 37; *Dynegy Marketing and Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011); *Allstate Ins. Co. v. Electrolux Home Products, Inc.*, 840 F.Supp.2d 1072, 1078 (N.D. Ill. 2012) ("Rule 37 allows a district court to impose sanctions if the court finds that a party did not comply with discovery requirements," including "reasonable expenses.").

## III.    ARGUMENT

### A. Products 115, 116, and 122 Should Be Dismissed With Prejudice, Consistent with the Court's Reasoning in Its Order

The Court's grant of summary judgment to CHS with regard to products for which GW is no longer pursuing copyright infringement claims inadvertently excluded three products that had been previously accused, but for which GW dropped its copyright infringement claims. The Court noted in its Order with respect to those products that "GW indicates that it is no longer pursuing copyright infringement claims regarding a number of products" and that GW "cannot

simply drop these claims without prejudice." Dkt. No. 258 at 6. It therefore granted CHS "summary judgment on Count 1 with regard to the products identified in these entries." *Id.*[1] However, the Court's Order did not address the products identified in entries 111-125 of Second Rev. Claim Chart, because it appeared to the Court that those products "may be the subject of a new lawsuit that GW recently filed against [CHS]." *Id.* CHS respectfully submits that the Court misapprehended which products GW referenced when it relied upon GW's statement that it "did not purport to assert claims in . . . *new products*" (*see* Dkt. No. 258 at 6, quoting Dkt. No. 243-1) (emphasis added). GW's statement should not be read to refer to entries 111-125, as several of these products were identified as early as January 19, 2012, in GW's First Revised Copyright Chart ("First Rev. Claim Chart," attached hereto as Golinveaux Decl. Ex. B):

| Product name | Entry in First Rev. Copyright Claim Chart (Jan. 19, 2012) | Entry in Second Rev. Copyright Claim Chart (Aug. 3, 2012) |
|---|---|---|
| SCAR & Sniper Rifle 28mm Pack – 8 | 115 | 115 |
| SCAR Drum Magazine Autoguns Resin 28mm – 6 | 116 | 116 |
| SCAR Drum Magazine with Grenade Launchers Resin 28mm – 6 | n/a | 118 |
| Sniper Rifles Resin 28mm – 6 | n/a | 119 |
| Death Angel Storm Shield | 119 | 122 |
| Lava World Bases | n/a | 120 |
| Iconoclast Conversion kit for Space Marine Land Raider | n/a | 129 |

*See* Golinveaux Decl. Exs. A and B.

---

[1] Specifically, the Court granted CHS summary judgment "for the products listed in entries 8, 15-16, 25-26, 28-30, 32, 38-42, 44, 70-72, 81, 84-86, 88-89, 91-93, 107, and 109." Dkt. No. 258 at 6.

For products 115, 116, and 122, GW dropped its copyright claim in its Second Rev. Claim Chart, stating, "The product implicates trademark issues only, not copyright." Golinveaux Decl. Ex. A. Because "the court has made an error not of reasoning but of apprehension" regarding when these products were first identified, its reconsideration of the Order is appropriate here. *Wielgus*, 2010 WL 5139031, at *3. These products have been in the case since January 2012, and consistent with the Court's reasoning in its Order, GW should not be permitted to "simply drop [its copyright] claims without prejudice" at this late stage in the litigation. CHS respectfully requests that the Court reconsider its ruling and grant CHS summary judgment on Count 1 with regard to products 115, 116, and 122.

### B. Newly Discovered Evidence Withheld By GW Shows That the U.S. Copyright Office Determined That GW's Shoulder Pads Are "Too Minimal" To Be Afforded Copyright Protection and Merits the Court's Reconsideration of This Issue

The Court denied CHS summary judgment with respect to entries 4-7, 12-13, 19-20, 46-48, 50-52, 56-62, 64-65, and 101-02 on the [Second Rev.] Claim Chart based upon the Court's finding that the purportedly creative size and shape of the shoulder pads entitled them to copyright protection.[2] Dkt. No. 208 at 20-21 (noting that "although GW could not base its copyright claim on a depiction of an "X" or a chevron alone, its depiction of that otherwise-common element affixed on an original, creative shoulder pad with a distinctive color scheme is sufficient to satisfy the originality requirement"). The Court's determination, however, was

---

[2] The Court also notes at the beginning of its discussion of GW's shoulder pad products that GW's copyright claims for product entries 21-22, 53, and 97-98 are based "solely on the shape and design of GW's shoulder pads." Dkt. No. 258 at 19. Indeed, GW's Second Rev. Claim Chart concedes that "There are no IP issues with this product other than the shape/design of the underlying shoulder pad." Golinveaux Decl. Ex. A. However, the Court does not include these product entries in its holding at the end of the section, which lists the shoulder pad products that the Court's Order "resolve[d]" as protectable. *Id.* at 20. In addition, there are two more products—entries 99 and 100—for which GW concedes that the shape and size of the shoulder pads are the only purportedly protectable element, but that the Court did not mention in its Order. *See id.* at 19-22. Therefore, CHS submits that products 21-22, 53, and 97-100 should be reconsidered together with entries 4-7, 12-13, 19-20, 46-48, 50-52, 56-62, 64-65, and 101-02.

made without knowledge of the U.S. Copyright Office's denial of protection for at least one of the same shoulder pad designs as "too minimal" to be afforded copyright protection, because GW's counsel withheld the Copyright Office's highly relevant correspondence from both the Court and CHS. The Copyright Office's rejection is entitled to "great deference," and CHS's recent independent discovery of this new evidence justifies reconsideration of the Court's decision with respect to the above-identified products. *Natkin v. Winfrey*, 111 F. Supp. 2d 1003, 1010 (N.D. Ill. 2000) ("The Copyright Office['s] . . . opinion as to the scope of the Copyright Act is afforded great deference."); *United Air Lines*, 916 F. Supp. at 795; *Frazier v. Layne Christensen Co.*, 380 F. Supp. 2d 989, 995 (W.D. Wis. 2005), *abrogated on other grounds* (plaintiff's motion for reconsideration granted and earlier summary judgment order vacated when the defendant did not provide complete and timely disclosure of documents requested by plaintiffs).

**1. The Issue of the Copyright Office's Position on the Protectability of GW's Shoulder Pads was Squarely Before this Court and GW had Specifically Agreed to Produce All Correspondence with the Copyright Office about Works-In-Suit.**

CHS argued in support of its summary judgment motion that GW's shoulder pad products were not protected by copyright for their "shape/design of the underlying shoulder pad." Dkt. No. 208 at 10. It maintained—and the Court agreed—that "common geometric shapes cannot be copyrighted." *Id.* (citing *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 303 (7th Cir. 2011); Dkt. No. 258 at 20 (citing same). CHS further relied on the Copyright Compendium II § 503.02(a)-(b) in arguing that the U.S. Copyright Office refuses to base copyright registrations on "standard ornamentation" such as the "common geometric figures or shapes" presented by the GW shoulder pads. Dkt. 208 at 10-11. Unbeknownst to CHS and the Court, the Copyright Office agreed with CHS's position.

Upon independent examination, the Court ultimately found that "[t]he unusually large proportional size of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," and concluded that GW was "entitled to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20. But in reaching this decision, the Court was not afforded the opportunity to consider the correspondence between the U.S. Copyright Office and GW's lead trial counsel, in which the Copyright Office explicitly rejected the sculptural portion of GW's shoulder pad design as "too minimal" to be afforded copyright protection. Despite having been requested by CHS in discovery, and being highly relevant to the issues addressed in the parties' cross-motions for summary judgment, this correspondence was not produced by GW. As recently as November of this year, GW's lead trial counsel denied that any substantive correspondence with the Copyright Office regarding the works-in-suit existed, and it was only recently independently discovered by CHS.

Early in this litigation, on August 8, 2011, CHS requested "all correspondence with any government agency or private copyright registration service concerning" each of GW's alleged works-in-suit (which included the "Assault Squad pads," identified in the First Rev. Claim Chart). Golinveaux Decl. Ex. C, CHS RFP Set Four at ¶ 37. GW responded on October 19, 2011 and agreed, without objection, to "produce documents, if any, responsive to this request." Golinveaux Decl. Ex. D, GW Response to CHS RFP Set Four. Despite this agreement, GW failed to produce any correspondence with the Copyright Office during discovery. Golinveaux Decl. ¶ 6.

GW's failure to produce correspondence with the Copyright Office came up in a telephonic meet and confer on November 2, 2012 to address the parties' contemplated motions in

limine.  Golinveaux Decl. ¶ 7; Declaration of Bryce Cooper, Dec. 27, 2012 ("Cooper Decl.") ¶ 2.

During that call, lead trial counsel for GW, Jonathan Moskin, asked CHS to stipulate that GW

need not obtain certified copies of its copyright registrations for trial.  Golinveaux Decl. ¶ 7;

Cooper Decl. ¶ 2.  Counsel for CHS stated that CHS was reluctant to do so in light of the fact

that CHS had yet to receive any of GW's correspondence with the Copyright Office, despite

requesting all such documents in discovery.  Golinveaux Decl. ¶ 7; Cooper Decl. ¶ 2.  CHS's

counsel said that CHS would consider such a stipulation if GW confirmed that no such

documents existed.  Golinveaux Decl. ¶ 7; Cooper Decl. ¶ 2.  Moskin expressed confusion over

why CHS was interested in the correspondence.  Golinveaux Decl. ¶ 7; Cooper Decl. ¶ 2.  He

also stated that GW only had limited correspondence with the Copyright Office, and described it

as non-substantive.  Golinveaux Decl. ¶ 7; Cooper Decl. ¶ 2.  After CHS counsel pointed out that

GW previously agreed to produce such correspondence, Moskin replied that GW would check

and compile and produce it if there was any.  Golinveaux Decl. ¶¶ 7-9.  Moskin confirmed via e-

mail on November 5, 2012 that he was "assembling the correspondence with the Copyright

Office for production . . . We will agree that you can use any such correspondence at trial."  *Id.* ¶

9; Golinveaux Decl. Ex. E.  To this day, GW has never produced *any* correspondence with the

Copyright Office (before or after discovery closed), in spite of its continuing "duty to

supplement" its disclosures and responses to requests for discovery under Federal Rule of Civil

Procedure 26(e); its certification stating that "Games Workshop is aware of its continuing

discovery obligations . . . and to the extent Games Workshop discovers additional responsive

documents, it will promptly produce any such documents" (Dkt. No.187, filed March 2, 2012);

and its express assurances to CHS counsel that no substantive correspondence existed and that it

would produce any correspondence that did exist (Golinveaux Decl. ¶¶ 7-10).

2. **Good Reason Exists for CHS Having Only Discovered the Copyright Office's Rejection of GW's Shoulder Pad Design after the Summary Judgment Decision.**

Between February 28, 2012 and March 2, 2012, GW filed 73 new U.S. copyright applications for works-in-suit. In late October 2012 it became apparent that certain of GW's copyright applications were progressing to registration, while others filed at the same time remained pending. Suspicious that still no correspondence with the Copyright Office had been produced for any of the files, despite GW's discovery responses agreeing to produce any such documents, on October 29, 2012 CHS commissioned an independent investigator at significant expense to order two representative correspondence files from the Copyright Office.[3]

One request covered the GW work "Assault Squad Shoulder Pads," which is a shoulder pad with the "arrow cross" or "X" design, identified by product entries 46, 47, and 48 in the Second Rev. Claim Chart. *See* Golinveaux Decl. Ex. A. The other was for the GW work "Tactical Shoulder Pads."[4] On December 12, 2012, *after* the Court entered its Order, CHS received certified copies of the Copyright Office records. *See* Golinveaux Decl. Ex. G. The "Assault Squad Shoulder Pads" file contained several e-mail communications between Moskin and the Copyright Office regarding GW's copyright application for that product. *Id.* Specifically, the Copyright Office had rejected registration for the sculptural portion of GW's "Assault Squad Shoulder Pads" copyright application in an email to Moskin on June 7, 2012— *two months before* summary judgment motions were filed in this case. *Id.* at 3. In rejecting GW's application, the Copyright Office Registration Specialist referred to the general shape of

---

[3]     CHS requested two files out of the scores of applications GW has submitted due to the cost of such a request ($1,039 for expedited, certified copies of just two files) for documents that should have been produced by GW in the first instance. Though CHS ordered expedited copies, it still took more than a month to receive the files. Golinveaux Decl. ¶ 11 and Ex. F.

[4]     The file for "Tactical Shoulder Pads" consisted only of an automated e-mail indicating that the application had been received. The application has not yet been otherwise acted upon. Golinveaux Decl. ¶ 12.

the shoulder pad, stating, "[W]e cannot register the *sculpture portion* as it is *too minimal*." *Id.* (emphasis added). In no manner is such correspondence non-substantive.

GW specifically addressed whether its shoulder pads were protectable under U.S. law in its opposition to Chapterhouse's motion for summary judgment, even as it withheld evidence that contradicted the argument it made to this Court. *See, e.g.,* Dkt. No. 230 at 15 (GW argued that "[a]s the Copyright Office Compendium II §503.02 (a)-(b) (1984) cited by Chapterhouse expressly notes, combinations of elements (even if unprotectable alone) are 'eligible for copyright protection' if their arrangement is original."). Of course, contrary to GW's argument, the Copyright Office specifically found *two months prior* to the filing of GW's summary judgment papers that the size and design of GW's shoulder pads—even shoulder pads that included an additional (although equally unprotectable) element—were "too minimal" to be afforded protection. Golinveaux Decl. Ex. G at 7.

Copyright Office records further reveal that Moskin called the Copyright Office on November 5, 2012—the *same* day he represented to CHS that GW would assemble and produce any correspondence with the Copyright Office—to follow-up on the Copyright Office's refusal to register "Assault Squad Shoulder Pads," making clear that he was fully aware of the correspondence. *See* Golinveaux Exs. E, G at 6; Golinveaux Decl. ¶ 9. Then, having withheld the Copyright Office's correspondence from CHS and the Court, in an email dated December 7, 2012, GW's counsel attempted to use this Court's Order (rendered without knowledge of the Copyright Office's decision rejecting GW's application) to convince the Copyright Office to overturn its decision. *See* Golinveaux Decl. Ex. G at 10 ("I wanted to point out that in a recent decision, the US District Court for the Northern District of Illinois ruled that the basic shape of

the Games Workshop shoulder pad is copyrightable . . . I would be happy to get you a copy of the decision.").

### 3. When a Copyright Application is Refused, the Copyright Office's Determination is Entitled to Deference

If a copyright application is refused, "the interpretation followed by the Copyright Office, as the agency responsible for administering federal copyright law, is entitled to respect as persuasive authority." *Design Ideas, Ltd. v. Yankee Candle Co., Inc.*, 2012 WL 3267783, at *6 (C.D. Ill. Aug. 9, 2012); *Natkin*, 111 F. Supp. 2d at 1010 ("The Copyright Office['s] . . . opinion as to the scope of the Copyright Act is afforded great deference."); *accord. Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1231 (9th Cir. 1998) (decision of the Register of Copyrights "entitled to deference"); *Morris v. Business Concepts, Inc.*, 283 F.3d 502, 505-06 (2d Cir. 2002) (same); *Norris Indus., Inc. v. Int'l Tel. And Tel. Corp.*, 696 F.2d 918, 922 (11th Cir. 1983) (same). The Supreme Court has also broadly stated that "an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires.") *U.S. v. Mead Corp.*, 533 U.S. 218, 235 (2001) (internal citation omitted).

The Court did not have the benefit of and could not weigh the Copyright Office's rejection of GW's shoulder pad design when it rendered its Order, and the recent discovery of this significant evidence merits the Court's reconsideration. *United Air Lines*, 916 F. Supp. at 795. The fact that this evidence was withheld by GW in disregard for the rules of discovery and its duty of candor to this Court—and that GW then denied its existence to CHS's counsel—only amplifies the grounds for reconsideration. *See Jones v. Nat'l Council of Young Men's Christian Ass'ns of the U.S.*, 2011 WL 3273868, at *3 (N.D. Ill. July 28, 2011) ("[U]nder Federal Rule of

11

Civil Procedure 26(e), each party has a duty to timely amend and/or supplement their responses to discovery if they obtain additional information or know that a response was incorrectly made."); *Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1067 (7th Cir. 2000) ("a lawyer's duty of candor to the court must always prevail in any conflict with the duty of zealous advocacy") (internal citation omitted).

The Court's holding with respect to the shoulder pad products relied exclusively on the purportedly "creative addition" of the "unusually large proportional size." Dkt. 258 at 20.[5] Because the general size and shape of GW's shoulder pad products are the same, the Copyright Office's determination that the "sculpture portion" of GW's "Assault Squad Shoulder Pads" is "too minimal" to extend copyright protection therefore holds great significance. CHS respectfully requests that the Court take account of this newly-discovered evidence, reconsider its decision with respect to GW's shoulder pad products, and award CHS its costs associated with obtaining the correspondence withheld by GW.

## IV. CONCLUSION

For these reasons, CHS respectfully requests that the Court reconsider its decision to decline to address the products identified in entries 111-125 on GW's Second Rev. Claim Chart.

---

[5] For product entries 49 and 54-55, the Court acknowledges GW's additional basis for copyright infringement:

> [T]hat entry 49 has rivets and high rims along the edge of the pad nearest the head and that entries 54–55 are unique expressions of a science-fiction shoulder pad that cover the figurine from the start of the shoulder to above the elbow with a large border around the edge.

Dkt. No. 258 at 19. It then notes CHS's argument that "GW's shoulder pad design is merely a common half-hemisphere shape that is not protectable." *Id.* This position echoes the Copyright Office's determination that, "we cannot register the sculptural portion as it is too minimal." Golinveaux Decl. Ex. G at 3. Indeed, the Copyright Office found that *even the combination* of the "common half-hemisphere shape" with an *additional* element was not protectable. *Id.* at 7. Therefore, CHS submits that products 49 and 54-55 should be reconsidered together with the shoulder pad products referenced *supra*.

CHS requests that the Court grant CHS summary judgment on Count 1 with regard to products 115, 116, and 122.

CHS further requests that this Court reconsider its decision with regard to GW's shoulder pad products and find that they do not warrant copyright protection as a matter of law and U.S. Copyright Office policy; grant CHS summary judgment on Count 1 for product entries 4-7, 12-13, 19-22, 46-49, 50-53, 54-62, 64-65, and 97-102; and sanction GW by awarding CHS costs for its independent investigation to uncover this improperly withheld evidence and directing GW to produce all correspondence between GW or GW's counsel and the Copyright Office within seven days of entry of an order granting CHS's motion.

Dated: December 27, 2012               Respectfully submitted,

                                       /s/ Bryce A. Cooper


                                       Jennifer Golinveaux (CA Bar No. 203056)
                                       Dean A. Morehous (CA Bar No. 111841)
                                       K. Joon Oh (CA Bar No. 246142)
                                       Thomas J. Kearney (CA Bar No. 267087)
                                           WINSTON & STRAWN LLP
                                           101 California Street
                                           San Francisco, CA 94111-5802
                                           Phone: (415) 591-1000
                                           Fax: (415) 591-1400
                                           jgolinveaux@winston.com
                                           dmorehous@winston.com
                                           koh@winston.com
                                           tkearney@winston.com

                                       Bryce A. Cooper (IL Bar No. 6296129)
                                           WINSTON & STRAWN LLP
                                           35 West Wacker Drive
                                           Chicago, IL 60601-1695
                                           Phone: (312) 558-5600
                                           Fax: (312) 558-5700
                                           bcooper@winston.com

Julianne M. Hartzell (IL Bar No. 6275093)
Sarah J. Kalemeris (IL Bar No. 6303644)
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive
Willis Tower Suite 6300
Chicago, IL 60606
Phone: (312) 474-6300
Fax: (312) 474-0448
jhartzell@marshallip.com
skalemeris@marshallip.com

## CERTIFICATE OF SERVICE

I, Bryce A. Cooper, an attorney, hereby certify that on December 27, 2012, I caused to be filed electronically the foregoing MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER AND SANCTIONS with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

_____/s/  Bryce A. Cooper_____