IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>                        Plaintiff,<br><br>        v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES<br><br><br>                      Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly<br>Hon. Jeffrey T. Gilbert |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL AND FOR RECONSIDERATION OF SUMMARY JUDGMENT**

Plaintiff Games Workshop Limited ("Games Workshop"), by and through its undersigned counsel, respectfully submits this Memorandum in opposition to Chapterhouse Studio's Motion for Reconsideration of Summary Judgment and to compel discovery responses.

**INTRODUCTION**

Chapterhouse's motion is based on numerous false statements and a distortion of the factual and legal significance of an initial question raised by a low level Copyright Office employee (who is not even a lawyer) in connection with one application filed by Games Workshop for a shoulder pad design. The statement, which is simply inadmissible hearsay, is entitled to no deference whatsoever. Chapterhouse has incorrectly characterized this initial inquiry (to which Games Workshop was invited to respond) as a "refusal" to register, thus demonstrating a fundamental misunderstanding of Copyright Office procedures. Indeed, even if it were a refusal and were final, it would likely be entitled to no deference. When Games Workshop did respond by asking the employee to confer with counsel to clarify her opaque 4-

word statement ("it is too minimal") and allow counsel to explain why the design is copyrightable, she failed to respond for over four months, during which lengthy silence Games Workshop assumed the application was being passed to registration. The Copyright Office still has offered no analysis. To this date the Copyright Office has not refused registration of the design. Even if the Copyright Office were someday to deny registration, Copyright Office procedures provide multiple layers of appeal before the decision becomes final, and if these procedures failed it would then, ultimately, be for this Court to decide (based on a full assessment of the facts, which the Copyright Office lacks) whether the design is copyrightable. Chapterhouse's motion is bereft of any substantive analysis why the Court's decision (consistent with the testimony of Chapterhouse's own expert on the subject) is incorrect. In lieu of substantive analysis, Chapterhouse simply makes incorrect statements attacking the integrity of opposing counsel.

The suggestion that Games Workshop withheld discovery is utterly baseless and supported by statements that Games Workshop considers grossly false and misleading. The correspondence with the Copyright Office that Chapterhouse now references began nine months *after* Games Workshop had responded to the subject discovery request (which was served on September 9, 2011 and was merely one of the 86 document requests - as well as innumerable other requests - served by Chapterhouse in the first phase of the litigation), and Games Workshop readily agreed to supplement its production as soon as Chapterhouse inquired about the issue in November, 2012 (more than a year after it served the subject discovery). It is an understatement to note that Chapterhouse's assertion (Golinveau Decl. ¶ 6) that Games Workshop had failed to produce documents when those documents did not even come into existence for another nine months (or a year or more) is misleading at best.

And the statement that Games Workshop was reluctant to produce the correspondence (id. ¶ 7) is simply false (see Moskin Decl ¶ 3), which is confirmed by Mr. Moskin's November 5 email (Golinveau Decl Ex E) and undermined by the very purpose of the "deal" under which Games Workshop would allow Chapterhouse to use such correspondence at trial in exchange for Chapterhouse's agreement not to require Games Workshop to incur the considerable expense of certifying all of its copyright registrations. To the contrary, the primary reason production was delayed was that, after the Court vacated the trial date, thus making completion of the "deal" less urgent, Chapterhouse took the position of refusing to supplement its own production *at all* (a position it unabashedly repeated during the December 12 status conference with the Court). In addition, as noted in Mr. Moskin's November 5 email to opposing counsel, Foley & Lardner's New York office was closed for a full week after Hurricane Sandy and Mr. Moskin was then out of the office for part of the following week. (Moskin Decl ¶ 5.)

Before filing this motion, Chapterhouse never further inquired from Games Workshop when it was planning to deliver the correspondence and never attempted a meet and confer. Although Games Workshop does not suggest that Chapterhouse's refusal to recognize its own discovery obligations would relieve Games Workshop of its independent duties under Rule 26(e), Games Workshop saw an opportunity to resolve the issue of both parties' duties to supplement in a manner that would ensure mutuality, and the Court did indeed resolve the issue during the December 12 status conference by setting a date of January 31 for the parties to supplement their prior responses. Regardless of that date, Games Workshop has now produced all of the correspondence with the Copyright Office that it had assembled at or about the time the Court vacated the trial date on November 15 and will complete any remaining production with

its initial documents for the second phase of the litigation or as such documents are created henceforth.

Inasmuch as Chapterhouse never even inquired about the timing of Games Workshop's production of the subject correspondence, this is at least the fourth if not the fifth time Defendant has made a discovery motion in utter disregard of Local Rule 37.2. As such, the motion should be stricken for violation of Local Rule 37.2.[1] Chapterhouse has filed this motion to compel documents that Games Workshop had already agreed to produce in full as part of its supplementation (and has now produced). The apparent advantage to Chapterhouse to the filing of this motion now, instead of either waiting for Games Workshop to supplement its production or to pick up a phone and explain to Games Workshop a need for the production sooner, is as a means to seek reconsideration of a summary judgment ruling that was not in Chapterhouse's favor. Such a motion to compel and/or motion for reconsideration is a needless waste of this Court's and the parties' resources.

## FACTUAL BACKGROUND

On March 1, 2012, Games Workshop applied to register copyright in the design of an "Assault Shoulder Pad" bearing an X design characteristic of the Space Marine Assault Squad, one of over one hundred applications filed by Games Workshop. On June 7, 2012, a copyright "specialist" sent an email to the undersigned counsel for Games Workshop raising various issues regarding the work, including the date of publication, the inclusion of certain text on the packaging and the extent of copyrightable elements in the sculptural design. Without refusing

---

[1] That Chapterhouse decided to spend $1,000 to order the files from the Copyright Office rather than simply ask Games Workshop, which had already agreed to produce this and other correspondence, is puzzling at best – as is other needlessly costly behavior of this pro bono client - such as videotaping all eleven days of depositions it took (whereas Games Workshop videotaped none of its 3 days); appearing in person at all depositions, no matter how remote the location (whereas Games Workshop appeared by phone or video for four of the depositions), hiring a jury consultant and so forth.

registration, the specialist, who is the lowest level of reviewing employee in the Copyright Office, requested a response to the questions raised within twenty days. On June 26, counsel responded by addressing the question regarding publication and requesting an opportunity to speak directly with the employee. Indeed, because the Copyright Office examiner reviews the applications in isolation, and because she mischaracterized the shoulder pad as merely a semi-circle, she would not have been aware of the origins or meaning of the design, the uniqueness of the shape and size of the shoulder pad, the significance of the particular X symbol on it, how that symbol was uniquely associated with the Assault Space Marine squad as part of a larger range of Tactical and Devastator Space Marines, and so forth. (Nor would she have been aware of the expert testimony of Chapterhouse's own witness attesting to the historical uniqueness of the design.) Although Games Workshop does not suggest the design is a great work of art, the examiner was unaware of any of the elements that Games Workshop contends make it copyrightable.

Unfortunately, the employee simply neglected the matter until November 7, 2012, when she sent a further email in response to a telephone call to one of her colleagues by Games Workshop's counsel as part of Games Workshop's efforts to comply with Chapterhouse's request that it supplement its earlier discovery responses. (Moskin Decl ¶ 5.) The matter has recently been passed to a supervisor while the original employee is on maternity leave, but that supervisor has expressed no view on the issue. (Moskin Decl Ex. A) The matter is still unresolved at best.

Although Chapterhouse has not explained why it chose to search the Copyright Office rather than simply inquire when Games Workshop intended to deliver the correspondence pursuant to the parties' evidentiary agreement, that Chapterhouse picked this one file to order

was easy, because Games Workshop has provided a list of the status of all applications it filed (Moskin Decl ¶ 8; Exhibit A to Second Amended Complaint). The lengthy pendency of the two applications Chapterhouse searched (for both at least in part the result of clerical errors by the same Copyright Office employee in ignoring the matters for many months) would have made them stand out. The two applications Chapterhouse searched appear together as simply the first two sculptural works or "miniatures" on the list Games Workshop provided.

In the course of discussing the parties contemplated motions in limine, which were due to be filed November 6, counsel for Chapterhouse inquired into the status of any possible communications with the Copyright Office during a telephonic meet and confer on November 2, 2012. Among the 86 document requests served by Chapterhouse, there had been one document request (number 37), served by Chapterhouse on September 9, 2011, calling for correspondence with the Copyright Office. Games Workshop had produced the correspondence that existed at the time of its responses, but acknowledged during the November 2 call that it would review the subsequent correspondence to arrange for production. As Chapterhouse notes, Games Workshop promptly confirmed by email on November 5 that it would produce the materials. Games Workshop was, indeed, eager to produce the correspondence because, in exchange for allowing Chapterhouse to use the correspondence at trial, Chapterhouse had agreed not to require Games Workshop to incur the very substantial expense of obtaining certified copies of the registrations, which it otherwise was demanding.

The suggestion that Games Workshop had deliberately withheld the correspondence is simply baseless. Indeed, contrary to Chapterhouse's suggestion, Games Workshop had assumed (given the lengthy passage of time without any further objection from the Copyright Office) that

the application had been or was being approved. (Moskin Decl ¶ 7.) Where the Copyright

Office has objections, it typically wastes little time in making them known.

While Games Workshop was assembling the correspondence for production (including

inquiring with the Copyright Office why there had been no further correspondence concerning

the subject application (Moskin Decl ¶ 6)), but before production was made, the Court vacated

the trial date on November 15 and shortly thereafter ruled on the pending motions for summary

judgment. Moreover, in the interim Chapterhouse announced its position (which it

unhesitatingly restated to the Court during the December 12 status conference) that it recognized

absolutely no duty under Rule 26(e) to update its own discovery responses. That issue was then

resolved by the Court during that conference by setting a deadline to update responses by

January 31, 2013. Without even a further request (formal or informal) from Chapterhouse

whether Games Workshop would make a sooner production of the requested materials now that

mutuality of the duty was assured (or even before the Court had confirmed the mutuality of the

duty), Chapterhouse simply rushed to file this motion without any meet and confer.

## ARGUMENT

**1.      There Is No Reason To Reconsider The Court's Summary Judgment Opinion Regarding Games Workshop's Space Marine Shoulder Pads.**

In *Ortiz v. City of Chicago*, No. 09-cv-2636, 2011 U.S. Dist. LEXIS 53206 (N.D. Ill.

May 18, 2011), the court explained that although it has the inherent power to reconsider less than

final judgment under Rule 54(b), such motions are not favored:

> However, it is well established in this district and circuit that "'[m]otions for
> reconsideration serve a limited function: to correct manifest errors of law or fact
> or to present newly discovered evidence.'" *Conditioned Ocular Enhancement,
> Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006) (quoting *Caisse
> Nationale de Credit Agricole v. CBI Indus.,Inc.,* 90 F.3d 1264, 1269 (7th Cir.
> 1996)). In regard to the "manifest error" prong, the Seventh Circuit has explained
> that a motion to reconsider is proper only when "the Court has patently
> misunderstood a party, or has made a decision outside the adversarial issues

presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); see also *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party," instead it "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'"); *Bilek v. American Home Mortg. Servicing,* 2010 WL 3306912, at *1 (N.D. Ill. Aug. 19, 2010)**.** And with respect to the second prong, the court of appeals has explained that a motion to reconsider may be appropriate if there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Id.* Because the standards for reconsideration are exacting, our court of appeals has stressed that issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Id*. Defendants do not invoke a change of law or the availability of new facts; thus, the Court's consideration is limited to whether the Court previously committed "manifest error." In performing this analysis, the Court keeps in mind that "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270.

2011 U.S. Dist. LEXIS 53206, at *4-5.

In support of its motion, Chapterhouse relies on an initial assessment of one work provided by the lowest level employee in the Copyright Office raising a question (among other things) as to whether what she inaccurately said was merely a semi-circular design for a shoulder pad was registrable. The initial comment was not a final refusal, and not even a refusal at all but simply an initial assessment with a request for a response. Nor was the email accompanied by any analysis. Rather, it was simply an inquiry within the scope of Copyright Office Rule 605.1[2] On June 26, 2012 counsel for Games Workshop responded to the question about publication and requested a phone call to discuss the sculptural elements in a manner contemplated by Copyright Office Rule 605.4[3]. For several months, the copyright specialist failed to respond, until Games

---

[2] Copyright Compendium II §605.01 (entitled "Examination process: communications about registration requirements") provides that "Generally, where the registration material is unacceptable or subject to question, the Copyright Office will communicate with the applicant."

[3] Copyright Compendium II §605.04 (entitled "The examination process: response from applicant") provides: "In general. after the Copyright Office has communicated with the applicant about an error or question. the applicant must respond within a reasonable time or the file will be closed."

Workshop inquired into the status of the application. Section 606 of the Copyright Office Rules

sets forth the procedure for issuance of a refusal (which the initial inquiry was *not*)[4] and the

procedures for administrative review of such a refusal.[5]

During the lengthy delay from June 20 to November 7, Games Workshop assumed the

matter had been resolved. The application is now being reviewed by a more senior employee in

the Copyright Office who has expressed no view on the issue of copyrightability. No final

refusal was ever issued here; no occasion for administrative review ever arose, and no

administrative review was ever sought. Under 17 U.S.C. § 411(a)[6], even if there had been a final

---

[4] Copyright Compendium II §606 (entitled "Refusal to Register: Request for Reexamination") provides: "In any case in which the Register of Copyrights determines that, in accordance with the copyright law, the material deposited does not constitute copyrightable subject matter or that the claim is invalid for any other reason, the Copyright Office will refuse registration and will notify the applicant in writing of the reasons for such refusal."

[5] Copyright Compendium II §606.04 (entitled "Refusal to Register") sets for the appeal procedure, providing as follows:

> When the Copyright Office has refused a claim as submitted, it notifies the applicant in writing of the refusal to register. After such notification, the applicant may set forth in writing his or her objections to the refusal and request that the Office reconsider its action. If the claim is refused after reconsideration, the head of the appropriate Examining Division section will send the applicant written notification of the reasons for refusal. The applicant may again request reconsideration. If the claim is refused again, the Chief of the Examining Division will notify the applicant in writing of the reasons. The Division Chief's decision constitutes final agency action.

The Copyright Office recently announced a modest revision to this rule, published at http://www.copyright.gov/fedreg/1995/60fr21983.html

> Appeals of refusal to register: request for reconsideration. When the Copyright Office has refused to register a claim as submitted, it notifies the applicant in writing of the refusal to register. After such notification, the applicant may set forth in writing his or her objections to the refusal and request that the Office reconsider its action. ..... The first request for reconsideration must be received in the Copyright Office within 120 days of the date of the Office's first refusal to register, and the envelope containing the request should be clearly marked: FIRST APPEAL/EXAMINING DIVISION. If the claim is refused after reconsideration, the head of the appropriate section of the Examining Division sends the applicant written notification of the reasons for refusal. The applicant may again request reconsideration in writing. This second appeal must be received in the Copyright Office within 120 days of the date of the Office's refusal of the first appeal, and be directed to the Board of Appeals at the following address. ... The Board of Appeals shall consist of the Register of Copyrights, the General Counsel, and the Chief of the Examining Division, or their respective designees. The Board shall consider the second appeal and render a final decision. The designated Chair of the Board of Appeals will write the applicant setting out the reasons for acceptance or denial of the claim. The Appeals Board's decision constitutes final agency action.

[6] 17 U.S.C. § 411(a) provides in relevant part that:

> In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is

agency decision by the Copyright Office denying registration, the final decision as to

registrability would rest with this Court, as Games Workshop would be entitled to have this

Court review such a decision.

Although, under certain circumstances not present here, some courts have shown some

degree of deference to a *final* refusal by the Copyright Office to register works, at least where

such a refusal is indeed final and sets forth adequate reasoning for the refusal, there has been no

such final or even initial refusal here, only a question to which Games Workshop has been

invited to respond, and no analysis whatsoever.  Even should the examiner ultimately decide to

deny registration to the work, Games Workshop would then be entitled to take advantage of the

multi-step administrative and judicial review procedures, including: (1) a written objection to the

refusal with a request that the Copyright Office reconsider its action; and (2) a written request for

reconsideration to the head of the appropriate Examining Division section.   Only if this second

request were denied would the decision considered a final agency action (*supra* note 5).  Judicial

review under 17 U.S.C. § 411(a) could then also be sought.

The point informally raised here by a low level employee, supported by no analysis

whatsoever, warrants no deference at all.  In *Boyds Collection, Ltd. v. Bearington Collection,*

*Inc.*, 360 F. Supp. 2d 655 (M.D. Pa. 2005), where, as here, an initial examiner raised questions as

to copyrightability, the Court explained that correspondence from a low level examiner is not the

type of *policy statement* by the Copyright Office that is entitled to respect as persuasive

authority.  360 F. Supp. 2d at 661.  In language directly relevant here the court explained:

> The letters are merely responses to individual copyright applications by
> Bearington and are apparently not intended as policy statements with the force of

---

served on the Register of Copyrights. The Register may, at his or her option, become a party to the
action with respect to the issue of registrability of the copyright claim by entering an appearance
within sixty days after such service, but the Register's failure to become a party shall not deprive
the court of jurisdiction to determine that issue

law. They are authored by an examiner in the Copyright Office, not a high-level official, and they do not indicate the source of the interpretation or the manner in which it was reached. Most importantly, the letters provide no rationale or explanation for the agency's construction of the statute. Their value as "persuasive authority," and the deference owed to the agency's interpretation, is thus substantially limited.

Id. at 662. As explained by the Court in *Boyds,* deference to an agency opinion depends on "'the degree of the agency's care, its consistency, formality, and relative expertness, and to the persuasiveness of the agency's position.'" *Id.* (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001)).

The cases cited by Chapterhouse are inapposite.[7] Most simply concern the deference owed to Copyright Office *policies*, not its factual determinations in individual applications. Only two of the cases even concerned this latter issue, but under circumstances bearing no relation to those here.

As a general matter, courts have treated factual findings by administrative agencies having considerably more solemnity than the preliminary comment made here by a low-level employee, with absolutely no deference. *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do

---

[7] In *Natkin v. Winfrey*, 111 F. Supp. 2d 1003 (N.D.Ill. 2000), the case principally relied on by Chapterhouse, the court showed deference to copyright office *policy*, not to a specific factual finding. It is utterly irrelevant here. In *Design Ideas, Lt. v Yankee Candle Co.*, No. 10-CV-3217, 2012 U.S. Dist. LEXIS 112014 (C.D. Ill. Aug. 9, 2012), the Central District gave some deference (while also conducting its own independent analysis) to three final refusals to register a functional design (which refusals the plaintiff had never challenged), one written by a Senior Examiner another written later by the Chief of the Visual Arts and Recordation Division and each accompanied with meaningful analysis, when it sued four years after the initial refusals. In *Batjac Productions Inc. v. GoodTimes Home Video Corp.,* 160 F.3d 1223 (9th Cir. 1998), the Ninth Circuit again showed deference to copyright office *policy* as stated in the Compendium of Copyright Office Practices and not to any specific factual finding.. In *Morris v. Business Concepts*, 283 F.3d 502 (2nd Cir. 2002), the Court again showed some deference to a copyright office *policy* as stated in a Copyright Office Circular, and not to any specific factual finding. Finally, in *Norris Indus., Inc. v. Int'l Tel. and Tel. Corp.*, 696 F.2d 918 (11th Cir. 1983), the Register of Copyrights was a party to the suit contesting the copyrightability of certain allegedly utilitarian designs. The Court gave some deference to the expertise and analysis expressed by the Register throughout the case as to the distinction between an ornamental and useful article. *Id.* at 922. Moreover, the copyrights at issue in the case were subject to final refusals to register by the Copyright Office.

not warrant . . . deference"); *Hickey v. Chicago Truck Drivers, Helpers and Warehouse Workers Union*, 980 F.2d 465, 469 (7th Cir. 1992) ("Given the informal nature of these letters, the express limitations included in the IRS letter, and the absence of any reasoning to explain the basis for the statements, we do not think that . . . either of these letters . . . is entitled to deference."); *Gryl ex rel. Shire Pharms. Grp. v. Shire Pharms Grp. Plc,*, 298 F.3d 136, 145 (2nd Cir. 2002) (" . . . SEC no-action letters constitute neither agency rule-making nor adjudication and thus are entitled to no deference beyond whatever persuasive value they might have.") Even judicial opinions from separate cases are generally hearsay and thus inadmissible. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374, 1380-81 (Fed. Cir. 1998) (administrative law judge's finding as to extent of similarity between two patents inadmissible); *Blue Cross and Blue Shield of N.J. Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001), citing McCormick on Evidence § 318, at 894 (3d ed. 1984). *See Barnes Foundation v. Twp. of Lower Merion*, 982 F. Supp 970, 1009 (E.D. Pa 1997) ("Civil judgments are inadmissible hearsay. Noncontested facts recited in the introduction of an opinion, which have not been litigated and which do not present the same degree of reliability that a final judgment does, are likewise inadmissible hearsay.") (citations omitted). *Accord, United States v. Jones*, 29 F. 3d 1549, 1554 (11th Cir. 1994); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1185 (E.D. Pa 1980). There is no exception in Rule 803 for anything analogous to non-final, non-contested statements of an administrative employee in the Copyright Office.

The initial statement here is simply hearsay from a non-attorney who, in her initial review of Games Workshop's application for a shoulder pad design, raised a question as to whether unspecified sculptural portions of Games Workshop's shoulder pad are copyrightable. That the preliminary assessment here at issue is anything but final; that Games Workshop has not even

attempted to respond in full to the initial action, and that the employee is at the lowest level of administrative review establishes none of the criteria of reliability to create an exception to Rule 803. It is not even clear that the supervisor now handling the matter even intends to adopt this statement. Chapterhouse can point to no case to the contrary and has cited no reason to believe this comment is relevant to this action or to the summary judgment motion or warrants a motion for reconsideration. Instead, it has simply and incorrectly characterized the comment as a final refusal and unfairly accused Games Workshop of hiding a harmless comment (1) despite Games Workshop's unawareness of any continuing relevance to the comment (which it assumed had been resolved in the Copyright Office and which it was not aware was subject to a discovery request from a year earlier), and (2) despite its immediate willingness to produce all such correspondence.

Indeed, despite the great sound and fury raised by Chapterhouse, it fails to identify any error in the Court's decision warranting reconsideration and simply repeats the same arguments it previously raised. Nor does Chapterhouse cite anything in the initial question raised by the copyright examiner that might support reconsideration of the Court's recent decision (other than recitation of a bare legal doctrine that, withal, is inapplicable). For precisely such reasons, motions for reconsideration are disfavored and limited to correcting manifest error. No such error has been shown here.

As this Court correctly found in its Summary Judgment Opinion, to qualify for copyright protection, the work need only possess "at least some minimal degree of creativity." Dkt. 258 at 18, *citing Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 519 (7th Cir. 2009). Further, "This low threshold permits even a small amount of creativity to render a product protectable under copyright law." *Id.*, citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).

Unlike the low-level Copyright Office employee, this Court had before it the benefit of an expert in military history who "admitted that he could locate no same or similar representation of GW's shoulder pad design in previous military history." *Id.* at 20. Moreover, although Chapterhouse did not submit to the Court in its summary judgment papers the opinion of its other expert, Chapterhouse had an expert in Science Fiction who similarly was unable to opine that Games Workshop's Space Marine shoulder pad design was similar to anything in prior Science Fiction. The Court further had the benefit of the declarations of Games Workshop employees who were able to put the design of the shoulder pad in context with the entirety of a Space Marine character and to explain the unique sculptural characteristics of the shoulder pad. With this evidence in front of it, this Court found:

> [T]hat GW's shoulder pads involve enough originality to afford them copyright protection. The unusually large proportional size of the shoulder pads as compared to the Space Marine's head (depicted in GW's product at entry 49) is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle. The shoulder pads created to fit onto GW's physical figurines, though more proportionally accurate, are nevertheless still larger and boxier than those typically found outside of the Warhammer 40,000 fantasy world. The Court thus concludes that GW is entitled to copyright protection as to the design of its shoulder pads.

*Id.* at 20.

Even assuming the Copyright Office continues to maintain any objection to registration, it has not had the benefit of any of this evidence presented to the Court. Nor has it yet reviewed the Court's decision, although Games Workshop is happy to supply the agency with a copy as need be.

In short, Chapterhouse has not even attempted to show manifest error or any other proper basis for reconsideration. Instead, it has filed this motion to fault Games Workshop gratuitously and incorrectly for not producing documents it had already agreed to produce as part of its supplementation and had only briefly delayed doing so on account of a delay in the trial schedule

14

and Chapterhouse's own intransigence. Rather than waiting for Games Workshop to supplement its production or even send an email or make a phone call to request sooner production, the motion, premised on a mis-citation of applicable law and a failure to address actual Copyright Office procedures, appears to be little more than an excuse to reargue the same points previously rejected and unfairly attack Games Workshop.

**2. Games Workshop Asserts Trademark Infringement ,Not Copyright Infringement Against Chapterhouse Products 115, 116, and 122.**

As clearly stated in Games Workshop's current infringement claim charts, Games Workshop asserts that Chapterhouse Products 115, 116, and 122 "implicate trademark issues only, not copyright." Thus, in compliance with this Court's Summary Judgment Opinion, Games Workshop has no opposition to dismissing, with prejudice, its copyright claims against these three products. Instead of simply picking up the phone and raising this issue with counsel for Games Workshop, Chapterhouse has instead decided to burden the Court with the disfavored practice of moving to reconsider its Opinion. The Court should deny Chapterhouse's motion for reconsideration and instead direct the parties to jointly file an agreed stipulation as to these three products.

## CONCLUSION

**WHEREFORE**, Games Workshop respectfully requests that the Court deny Chapterhouse's motion in its entirety, or simply strike the motion as having been filed in violation of Local Rule 37.2, and grant such other and further relief as the Court deems appropriate and just.

Dated:  January 4, 2013                    Respectfully submitted,

                                           /s/  Jason J. Keener

                                              Jason J. Keener (Ill. Bar No. 6280337)
                                              FOLEY & LARDNER LLP
                                              321 North Clark Street, Suite 2800
                                              Chicago, IL 60654-5313
                                              Telephone:  312.832.4500
                                              Facsimile:  312.832.4700
                                              Email:  jkeener@foley.com

                                              Jonathan E. Moskin
                                              FOLEY & LARDNER LLP
                                              90 Park Avenue
                                              New York, New York 10016
                                              Telephone:  (212) 682-7474
                                              Facsimile:  (212) 687-3229
                                              Email:  jmoskin@foley.com

                                           *Attorneys for Plaintiff*
                                           *Games Workshop Limited*

16

## <u>CERTIFICATE OF SERVICE</u>

I, Jason J. Keener, an attorney, hereby certify that on January 4, 2013, I caused to be filed electronically the foregoing PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL AND FOR RECONSIDERATION OF SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.


       /s/  Jason J. Keener
          Jason J. Keener