**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES <br><br><br><br> Defendants. | Civil Action No. 1:10-cv-8103 <br><br> Hon. Matthew F. Kennelly <br> Hon. Jeffrey T. Gilbert |

# **PLAINTIFF'S MOTION TO ENFORCE PRIOR DISCOVERY ORDERS**

Plaintiff Games Workshop Limited ("Games Workshop") respectfully submits this Memorandum in support of its motion to clarify now, while there may be time to remedy the matter during discovery, the consequences of Chapterhouse's failure to comply with two prior Court orders in this case regarding discovery and its admitted failure to preserve documents. For the sake of brevity, Games Workshop has not included with this motion all correspondence seeking to resolve these matters without Court intervention.

## ARGUMENT

### A. Failure to Preserve or Produce Documents Concerning Advertising and Promotion and Consumer Reactions to Such Advertising and Promotion

The Court's December 23, 2011 order directed Chapterhouse to produce all advertising and promotion for its accused products, as requested in Games Workshop's May 27, 2011 discovery requests. Chapterhouse has now conceded that it never took steps to preserve such promotional materials and is unable to produce them now. Instead it has given Games Workshop a truncated list of Internet sites (generated from memory) where one might be able to find some of the advertising, insisting that Games Workshop undertake the task of trying to recreate this record. (Keener Decl., Ex. 11).

In response to Games Workshop's Interrogatory 10 in the first phase of the case (served May 27, 2011), seeking identification of all venues where Chapterhouse engages in such promotional activities, Chapterhouse identified the 13 sites, such as eBay and various internet forums principally devoted to fans of Warhammer and Warhammer 40,000.

Games Workshop recently discovered that Chapterhouse also has a Facebook page that it never identified but which was up and running as early as 2009. (Keener Decl. Ex. 1). Without improperly "friending" Chapterhouse, Games Workshop cannot be certain about its contents, but

1

it appears to include Chapterhouse's own advertising posts on many or all of the products in issue and also comments from large numbers of customers regarding these products and the Games Workshop products they are intended to supplant. Chapterhouse never identified its Facebook page in response to Interrogatory 10. "As one judge observed, 'Facebook is not used as a means by which account holders carry on monologues with themselves[,]" and data contained on a Facebook page or a Facebook account is fully discoverable where relevant. *EEOC v. Simply Storage Mgmt.*, 270 F.R.D. 430, at *437 (S.D. Ind. May 11, 2010).

Some of the internet forums above, such as Heresy-online.net, were set up to send Chapterhouse email notifications whenever anyone commented on its postings. (Keener Ex. 2). Similarly, Chapterhouse apparently also received such email notices from Facebook. (Keener Ex. 3) However, only two such notifications were produced for all of the internet forums and only two such notifications were produced for its Facebook page. (Keener Exs. 2-3). Counsel for Chapterhouse has confirmed that no additional notification messages were retained by Chapterhouse. (Ex. 4, J. Hartzell 2-7-13 email).

Games Workshop has also discovered that Chapterhouse continues to promote its products on eBay using Games Workshop's trademarks. (See, e.g., Keener Decl., Ex. 5) Chapterhouse has neither identified any of these specific eBay listings in its interrogatory responses nor produced any of the listings in its document production.

Finally, as noted below, at least some of the designers (Chapterhouse's agents) themselves promote Chapterhouse's products on the forums (and perhaps elsewhere). At least one of the designers – who happens to be a lawyer – did produce copies of what appear to be all of his forum posts in response to a subpoena served on him by Games Workshop. This designer's production was not limited to the ten sites identified above but included other forums

such as "The Warhammer Forum", "Lustria-online.com" and "Troll Forged Miniatures," places Chapterhouse had never identified as locations where it or any of its agents had advertised. Despite this one designer's vigilance, presumably because he is a lawyer, Chapterhouse appears to have entirely failed to instruct the owners of Chapterhouse (Mr. Villacci and Mr. Fiertek) or any of its agents/designers to preserve such documents. This is especially ironic as Chapterhouse continues to maintain that it enjoys an attorney-client relationship with its designers, on the basis of which it has redacted or withheld responsive information – and never instructed its designers to preserve such documents.

 Although Games Workshop has some capacity to locate some of these materials (as it did during the summary judgment briefing), it cannot do so effectively without knowing when and where the ads appeared and can not reconstruct the past. Moreover, Chapterhouse's own documents indicate that some posting have been removed by the Internet forums as being too overtly commercial, such that Games Workshop has no way to recover these posts. (See, e.g., Keener Decl. Ex. 6) (For this very reason, such highly commercial postings might be most relevant to the litigation.) At least some of the forums are also password protected, creating a further hurdle for Games Workshop. By contrast, not only does Chapterhouse know when and where it is promoting its goods, and as easy access to obtain the postings, but as noted above, documents produced in discovery show it has set up at least some of its accounts such that it receives electronic notifications from the forums whenever customers post comments in response to its own postings. (Keener Decl. Exs. 2-3 )

 As Games Workshop has previously demonstrated during the summary judgment briefing many of the forum postings by Chapterhouse that Games Workshop has been able to find have included responses from potential consumers commenting on the marked similarities between

3

Chapterhouse's accused products and the original Games Workshop sources.[1] Games Workshop believes such responses of ordinary consumers are relevant evidence, illustrating how ordinary (or even discerning) observers recognize the marked similarities between the accused products and the original sources from which they are derived. Hence, they are directly relevant to the infringement analysis. Such consumer reactions are also directly responsive to Games Workshop's Interrogatories 9, 10, and 12 (Keener Decl., Ex. 7) and document requests 14, 15, 16, 17, 25, and 26 (Keener Decl. Ex. 8) in the first phase of the suit and interrogatories 5 (21), 7 (23) (Keener Decl. Ex. 9) and 9 (25) (Keener Decl. Ex. 11) and document requests 1 (39), 9 (47), 10 (48), and 12 (50) (Keener Decl. Ex. 10) in the second phase[2] seeking all such comments by third parties that mention Games Workshop or its products.

---

[1] Attached as Exhibit 123 Games Workshop's Summary Judgment briefing were some responses to a sample forum posting by Chapterhouse regarding one new "Tru-Scale" product, in which the opening post comments briefly but ironically about Chapterhouse's use of the name "Knights Praetorius" rather that Space Marines (which they obviously are); another notes simply: "Oh dear Lord, that one's not even slightly subtle." Another forum member wonders if the named designer (Stephen Smith) isn't a Games Workshop employee, and others go even further. (Exhibit 143). One thus states:

> If this is the culmination of what I think it is, then it was one of the chaps on Dakka who true-scaled up his Marines and just got CH to cast them iirc. Adding a couple of mm of greenstuff to the thighs doesn't constitute an even remotely original sculpt imo. …CH have gone from an 'interesting aftermarkets spares' company, to totally moronic and arrogant lamo's, to simply just common thieves. …

The final post on this forum is equally harsh:

I'm not a huge fan of [Games Workshop] at the moment, they aren't impressing me with their decisions and releases. But noone has any excuse to try and get away with this kind of farcical pretense of having their own line of bits and models. Similar/inspired by and so on are a fuzzy area, and I don't know enough about the legal details to know how close is too close in those cases, but this is just blatant poor quality copying! They may as well start recasting and announcing that on their website.

[2] For example, document request 10 (48) requests "Any and all documents or things in Chapterhouse's possession, custody, or control showing any advertising or promotion of any or all of the Accued Works, including without limitation any such advertising or promotion on internet forums or third party websites." Similarly, document request 12 (50) requests "Any and all documents or things in Chapterhouse's possession, custody, or control, concerning any instances in which any consumer or potential consumer of any of Chapterhouse's Accused Works has mentioned or referred to Games Workshop, WARHAMMER or WARHAMMER 40,000 or expressed any confusion or question as to the association or affiliation between Chapterhouse or its products and Games Workshop and its products." Keener Decl. Ex. 10. The request is not limited to confusion but includes any references to Games Workshop or its works.

4

Despite considerable correspondence by the undersigned counsel in the first phase of the litigation (before and after the Court's December 23 Order) seeking production of such promotional materials by Chapterhouse, Chapterhouse declined to produce any of this advertising. Nor did it identify any of the references by "ordinary observers" to Games Workshop and its products and publications in response to the above identified Interrogatories and Document Requests.

When Games Workshop renewed its request for such advertising and promotion concerning the new products at issue in the second phase of the suit, Chapterhouse revealed that it had in fact simply failed to retain any of the advertising. Rather than produce any of the actual forum postings or responses by ordinary or discerning observers, Chapterhouse simply listed (from memory) the locations where, as best it now recall, Games Workshop can try to gather at least some of the forum posts and responses on four of the above venues (DakkaDakka, BellofLostSouls, Warseer and Heresy-online.). (Keener Decl., Ex. 11) It did not even include the forum site specifically mentioned in Mr. Merritt's declaration, Frothersunite.com, which included some harsh exchanges between Mr. Villacci and some of his potential customers accusing him of copying from Games Workshop.) (*Supra* note 1.)

As Games Workshop has explained to Chapterhouse, Chapterhouse's duty to preserve dates back to 2008, when Games Workshop first put Chapterhouse on notice it deemed its products to be infringing. A party has a duty to preserve evidence when it knows, or should have known, that litigation was imminent. *See e.g., Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). Indeed, the duty to preserve evidence is broad, encompassing any relevant evidence that the party knew or reasonably could foresee would be relevant to the action. *See Danis v. USN Communications, Inc.*, 2000 U.S. Dist. LEXIS 16900, at *98-99 (N.D.

5

Ill. Oct. 20, 2000). At the latest, this duty attaches when the plaintiff informs the defendant of his potential claim. *See Trask-Morton*, 534 F.3d at 681 (explaining that Motel 6 was on notice of the claim when it received the plaintiff's demand letter). Here, not only did Games Workshop put Chapterhouse on notice in 2008, it commenced suit on December 22, 2010 and served discovery requests directly on point two years ago. Chapterhouse was then ordered by the Court to produce such materials in December 2011. Thus, even if Chapterhouse had a lesser duty to maintain pre-litigation posts on the basis that it was not its regular business practice to do so, its failure, post-litigation, to retain these highly relevant documents is plainly improper.

As a matter of law, Chapterhouse's own forum postings and postings on eBay or other similar sites should be deemed to be (or have been) within its control for purposes of discovery. As a general matter, documents are deemed to be within a party's "possession, custody, or control" for purposes of Rule 34 if the party has actual possession, custody, or control, or has the legal right to obtain the documents on demand. *Morningware, Inc. v. Hearthware Home Products, Inc.*, 2011 U.S. Dist. LEXIS 115524, *8-*9 (N.D. Ill. Oct. 6, 2011). Here, Chapterhouse created its own forum posts and was certainly easily able to preserve copies of its own postings as well as responses to those postings. This Court's opinion in *Acree v. Watson Pharmaceuticals, Inc.*, Case No. 10 C 7812, § 1 (N.D. Ill. Nov. 21, 2012), found that certain documents were in a party's control citing to the statement in *Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 517 (D. Kan. 2007), that a "person has control over documents if, among other things, he has the practical ability to obtain them from another." *Id.* As this Court similarly held in *Wilson v. Sunstrand Corp.*, 2003 WL 21961359 (N.D. Ill. Aug. 18, 2003):

> By virtue of its virtually unfettered contractual right of access to the records of its former division from the division's purchaser, Sundstrand unquestionably had "control" over those records and thus was required under Rule 34(a) to produce

6

them when requested by plaintiffs. "Control" for purposes of Rule 34(a) means includes "the legal right to obtain the documents requested upon demand*.*".

*Id* at * 9. *Accord Knoll Pharma. Co. v. Teva Pharms. USA, Inc.*, 2004 WL 2966964, at *2 (N.D. Ill. 2004) ("Rule 34(a) permits discovery of documents 'which are in the possession, custody, or control of the party upon whom the request is served.' Defendant further argues that because Dr. Arnold agreed to cooperate in any litigation concerning the validity of the patent, Plaintiffs have 'the legal right to obtain the documents requested upon demand.'," citing *Wilson*.)

Such a construction of "control" would certainly render the defendant's own posts as within Chapterhouse's control, since defendant is able to log in and retrieve them from the various message board websites or Facebook. This Court also noted in *Acree* that the individual in question had "ready access" to the documents and had testified that another individual "would provide him with the [documents] if he asked." The posts on Chapterhouse's Facebook page are even more directly within the defendant's control because, in addition to having the practical ability to obtain the documents, Chapterhouse has an unquestioned legal right as well. *See Technical Concepts, L.P., v. Continental Mfg. Co.*, 1994 U.S. Dist. LEXIS 7815 (N.D. Ill. Jun. 8, 1994) (citing *Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D. Conn. 1989)(defendant found to have control over payroll records for corporation which he owned; as owner and officer of the corporation he had a legal right to obtain the corporation's documents on demand)).

In addition to the general duty to preserve documents commencing as early as 2008, such materials are responsive to the document requests and interrogatories served by Games Workshop in the first phase on May 27, 2011 and, of course the discovery requests served by Games Workshop informally on November 28, 2012 and formally on December 11, 2012 in the second phase. In addition, Chapterhouse has not only failed to preserve such responsive information, it has frustrated Games Workshop's ability to take discovery from the individuals

7

who posted the comments (and has refused to identify any such individuals in response to Games Workshop's Interrogatory 9 (25)[3]).

In view of Chapterhouse's failure to abide the Court's December 23, 2011 order and failure to preserve evidence, Games Workshop believes that a range of possible remedies is appropriate. While it might be possible for Chapterhouse now to recreate at least some of the forum postings, the concern is that, since Chapterhouse admits is has no records of the posts, Games Workshop would have to check all of the sites anyway to ensure completeness. Moreover, some of the most overtly commercial postings have apparently been deleted by the forums. A further concern is that, as an evidentiary matter, Chapterhouse made known in preparing the pretrial order in this case that it would object on hearsay grounds to any forum postings Games Workshop had found on its own and might seek to offer into evidence.

In view of the prejudice to Games Workshop, some form of relief is appropriate. Minimally, for making it impossible for Games Workshop even to try to conduct follow-up discovery with the individuals commenting on defendant's posts, all such evidence should be deemed admissible. To the extent documents still can be found on the forums (including Facebook) or from Chapterhouse's agents, they should be produced (and be deemed admissible at trial without objection given Chapterhouse's delay in producing them.) To ensure that Games Workshop is not prejudiced by the failure to produce records that can no longer be found, an adverse inference that forum postings not produced <u>do</u> reflect awareness by consumers and ordinary observers as to the substantial similarity of the parties' products would also be

---

[3] The Interrogatory requests Chapterhouse to "Identify by name and last known address (including email address and phone) all individuals who have responded to any Chapterhouse advertisements, promotions or other postings for the Accused Works on forums or otherwise, where such response has referred to Games Workshop or any Games Workshop's products. Such identification should include the date and content of the individual's response. If Chapterhouse does not know the individual's name and last known address, identify the individual's screen name and any other contact information known to Chapterhouse."

8

appropriate.

B. Failure to Produce Documents From Third Party Designers

On March 6, 2012, the Court directed Chapterhouse to use at least good faith to produce design documents from the various designers with which it works in developing the accused products. The importance of such documents is underscored by the testimony of Chapterhouse's principal, Nicholas Villacci, that he claims no design expertise and instead acts as more of a clearinghouse for the marketing and promotion of designs created by others. Hence, he contends he does not know what references the designers rely on in creating the accused works.

The basis for the Court's March 6, 2012 order imposing on Chapterhouse a duty to collect documents from the company's designers was Mr. Villacci's own testimony that it has written agreements with all of its supposedly independent designers and concept artists (Villacci Tr. p. 35 l. 22 – 36 l. 13; p. 39. l. 15 - 24, attached as Keener Decl., Ex. 12) under which Chapterhouse enjoys an express right to compel them to return to it all of the design documents in their possession (including all "nonpublic information relating to Company's … inventions … trade secrets, patents copyrights, …research and development activities, customers, business plans, promotional and marketing activities …"). As Mr. Villacci admitted: "Q: And that covers all of the design documents that the designers create? … A: In my interpretation, yes." (Villacci Tr. p. 37 l. 25 - 38 l. 5., Keener Dec., Ex. 12)[4]

In the same order, Chapterhouse was also directed specifically to produce all responsive correspondence of its 49% owner, Tomas Fiertek. It did ultimately produce 8006 pages of

---

[4] The contracts expressly provide:

Employee will promptly return or destroy all tangible materials embodying Confidential Information (in any form and including, without limitation, all summaries, copies, and excerpts of Confidential Information) following Company's request, without retaining any copy or reproductions thereof or any computer, electronic or other record of such information.

9

emails and documents from him regarding the products at issue in the first phase of the case.

However, in the first phase of the litigation, apart from documents that had been separately subpoenaed by Games Workshop, Chapterhouse produced a total of only 29 documents from the designers (most of which were illegible) from 4 designers and none from 3 designers. Chapterhouse refused to disclose its actual correspondence with the designers to indicate what good faith efforts it made to collect documents. Rather, the most it would do was provide a summary (as set forth in a May 16, 2012 letter.) (Keener Decl., Ex. 13) No reason for refusing to produce the actual correspondence with the designers was provided nor did Chapterhouse at that time purport to claim privilege in such communications or provide a privilege log. (As shown below, Games Workshop has reason to question the efforts used by Chapterhouse to collect such design documents.)

In a similar manner, in the second phase of the litigation, Games Workshop initially sent Chapterhouse discovery requests on November 28 and then formally served those requests on December 11 seeking, among other things, all design documents from the designers.

Although Chapterhouse was required to serve its actual documents responsive to Games Workshop's December 11 requests by January 10, it did not produce any documents from the designers until February 1.[5] When it did finally produce the documents from designers it identified for the second phase, it did so for only 6 of the 16 designers. (Keener Decl., ¶14). Chapterhouse also now expressly claimed attorney client privilege in at least some of the communications with 8 of these designers. (Keener Decl., Ex. 14). As of this writing, it also has yet to produce *any* of Mr. Fiertek's emails for the second part of the case, despite this Court's

---

[5] During a January 25 and January 28 meet and confer, Games Workshop specifically inquired if documents from designers had been produced. Chapterhouse said they had been and that metadata would identify the relevant custodians. When we confirmed that no such metadata identifying custodians could be found, and that only emails from or to Nicholas Villacci himself had been produced, Chapterhouse agreed to produce the remaining documents. However it only produced documents for 6 of the 16 designers and still failed to produce any from Mr. Fiertek.

10

March 6 Order requiring Chapterhouse to search and produce all documents in Mr. Fiertek's possession. Mr. Fiertek's deposition is scheduled for February 19 or 20 by video link to Sweden.

In claiming attorney client privilege with 8 of its 16 designers, what Chapterhouse has said is that the basis for the claimed relationship is the form of contract Chapterhouse has with the designers. As noted, Mr. Villacci previously testified to his belief that his contracts with his designers confers control over their documents. However, Chapterhouse has identified no relevant differences in the contracts it has with the designers. Moreover, Chapterhouse claims privilege only from those designers that have either produced documents to it or have cooperated in response to its inquiries by saying the designers have no documents any longer.

Games Workshop is concerned that Chapterhouse's claim of privilege is circular and self-serving. To the extent privilege is based on contract, as Chapterhouse has asserted, Chapterhouse either has a basis to claim privilege with all of the designers (and has control over all the designers) or has no basis to claim privilege. The determination to claim privilege (or not) based on the *after-the-fact* decisions of the designers to cooperate (or not) with Chapterhouse's request for documents and information in response to Games Workshop's discovery seems to put the matter backwards.

As a practical matter, on the question whether Chapterhouse will or will not produce documents from designers, it has said it only has sufficient control to insist on production from those designers with whom it has an attorney-client relations and has refused to provide information from the others. Games Workshop is concerned that this after-the-fact assessment of privilege has other practical consequences. For example, Chapterhouse has claimed privilege in communications with the designer Stephen Smith that occurred during the pendency of this case, yet has produced no design documents from him. It says the privileged relationship has now

11

ended, but does not say when or how that occurred. As a practical matter, if at one time it had sufficient control to claim privilege, then it also had sufficient control to require that the designers preserve documents relevant to this case (which, as shown by the attached Smith Declaration, it failed to do).

The attached Declaration of Stephen Smith thus shows a further reason for concern regarding Chapterhouse's efforts (or lack thereof) to preserve and collect documents from its agents. Although Mr. Smith designed 4 of the products at issue in the second phase of the litigation (and 3 products in the first phase), in his declaration he notes that he has not been contacted by Chapterhouse in over nine months. (Smith Decl. ¶ 6). Further, he notes that he has never been instructed by Chapterhouse or its counsel to retain any documents in this case and thus, has deleted all of his email correspondence with Chapterhouse. (Smith Decl. ¶ 5). Chapterhouse also claims it has an attorney-client relationship with him yet refused to produce him for his deposition. Chapterhouse's good faith efforts to collect documents from Mr. Smith in the second phase of the case appear to be the sole sending of an email by Mr. Villacci to a discontinued email account of Mr. Smith. (Keener Decl., Ex. 15). It presumably would have known the account was inactive because an email to the account produces an immediate bounce-back message. (See Keener Decl ¶ 17) Moreover, although Chapterhouse did produce a sparse collection of five largely irrelevant earlier emails Mr. Villacci sent to Mr. Smith, they all contained a different email address from the discontinued address used in Chapterhouse's effort to collect documents. In any event, these "good faith" efforts to collect documents from Mr. Smith never reached Mr. Smith in the second phase of the case. (Smith Decl. ¶ 6).

The same sort of practical approach to control demonstrated in *Acree* and other cases cited above governs documents within the scope of an attorney-client relationship. "Case law is

12

clear that when a client's attorneys have possession of the client's documents, the client is held to be in control of the documents. Therefore, the client can be required to produce documents which he has turned over to his attorneys." *Gossard v. Adia Serv., Inc.*, 1992 U.S. Dist. LEXIS 11939, *5 (Aug. 10, 1992); *see also In re Papst*, 2001 U.S. Dist. LEXIS 10012, *60 (E.D. La. Jul. 12, 2001); *Flagg v. City of Detroit*, 252 F.R.D. 346, 353 (E.D. Mich. Aug. 22, 2008).

Similarly, *Haskins v. First American Title Ins. Co.*, 2012 U.S. Dist. LEXIS 149947 (D. N.J. Oct. 18, 2012) specifically stated regarding the duty to preserve records that litigation holds may extend to third parties, and that courts have issued orders to this effect. "The duty to preserve extends to documents…in the possession, custody and control of the parties…and any employees, agents…or other non-parties who possess materials reasonably anticipated to be subject to discovery." *Id.* at *13 (citing *In re Flash Memory Antitrust Litig.*, 2008 U.S. Dist. LEXIS 40433, *1 (N.D. Cal. Apr. 22, 2008)).

With the exception of one of Chapterhouse's designers (the lawyer), Chapterhouse's failure to instruct its designers to retain documents appears to be wide-spread. Despite Chapterhouse's practice of communicating almost exclusively with its designers over email, for those designers for which Chapterhouse has collected and produced documents, they either consisted of zero emails or a sparse handful of emails. (Keener Decl. ¶ 15).

Given the puzzling *post hoc* nature of the claim of privilege, Games Workshop believes that, minimally, all redacted or withheld documents claiming attorney-client privilege should be inspected in camera. Moreover, Games Workshop also believes that Chapterhouse should be required to produce all communications with the designers (including from the first phase of the litigation) to show its efforts to comply with the Court's March 6 Order – including communications with designers in the first phase of the litigation and including instructions to

13

preserve records. (As noted, Chapterhouse previously refused to produce such documents, but instead only provided a summary (Keener Decl., Ex 13)) Chapterhouse has simply refused to show what it actually said to the designers in its claimed efforts to comply with the Court's March 6 Order. The extent of further remedies may depend on the Court's further assessment of whether Chapterhouse acted in good faith. Given the obvious prejudice to Games Workshop, from its inability to assess the actual design process (about which Mr. Villacci pleads ignorance) an adverse inference that the relevant products for which such documents have not been produced were in fact actually copied would be appropriate. Games Workshop further submits that such an inference is fully supported by the design documents that have been produced by some designers, all of which show a single-minded focus on Warhammer and Warhammer 40K.

    C. <u>Failure to Preserve or Produce Chapterhouse's Reference Materials</u>

Games Workshop's Document Request Nos 1-2 (39-40) sought copies (or an opportunity to inspect) the copies of Games Workshop's works in Chapterhouse's possession that are the subject of the second phase of the action. (Keener Decl., Ex. 10). Games Workshop sent emails on January 28, February 4, and February 7 summarizing the works (all of which are listed on Games Workshop's claim chart). (Keener Decl., Ex. 16). Because roughly 60-70% of Chapterhouse's accused products are based on imagery in one particular volume, *The Horus Heresy: Collected Visions*, the emails confirming the inspection specifically mentioned that work and plaintiff's desire to inspect Chapterhouse's own original copy or copies. (Id.) Based on an initial inspection of Chapterhouse's entire collection of all of Games Workshop's materials (which occurred in August, 2011, before Games Workshop knew anything about how Chapterhouse makes its accused products) Games Workshop was aware that Mr. Villacci has (or

14

had) copies of this book and other of plaintiff's works implicated in the second phase of the action.

On February 8, 2013, by prearrangement, Games Workshop inspected what was supposed to have been 39 works in a law office in Dallas Texas. However, many items that had been in Chapterhouse's possession at the outset of the case were missing, including The Horus Heresy, Codex Blood Angels, Codex Imperial Guard, and How to Paint a Space Marine. In response to follow-up requests by counsel for production of the materials in Chicago, Chapterhouse confirmed on September 11, 2013 that it no longer has copies of these works. (Keener Decl., Ex. 17).

Chapterhouse thus has failed to preserve copies of the Games Workshop works that were plainly its principal if not only source of inspiration for most of the products at issue in the case, thus substantially prejudicing Games Workshop in its ability to show direct and deliberate copying. Although numerous emails between Chapterhouse and its designers make explicit reference to these works (or to abbreviations such as "HH" or "Heresy" or "pre-Heresy") the jury should be able to see the actual sources to assess any markings on the relevant pages, particular levels of wear and tear, and so forth. Nor is Games Workshop able to cross-examine Chapterhouse at deposition or at trial regarding these matters. As a result, for Chapterhouse's failure to preserve plainly relevant evidence, Games Workshop believes that an appropriate remedy would be both a reimbursement of the costs for the inspection and an adverse inference of direct copying for each such work. Chapterhouse would still be permitted to challenge substantial similarity, but should not be permitted to challenge actual copying.

Dated: February 11, 2012	Respectfully submitted,

/s/ Jason Keener

    Jason Keener (Ill. Bar No. 6280337)
    FOLEY & LARDNER LLP
    321 North Clark Street, Suite 2800
    Chicago, IL 60654-5313
    Telephone: 312.832.4500
    Facsimile: 312.832.4700
    Email: jkeener@foley.com

    Jonathan E. Moskin
    FOLEY & LARDNER LLP
    90 Park Avenue
    New York, New York 10016
    Telephone: (212) 682-7474
    Facsimile: (212) 687-3229
    Email: jmoskin@foley.com

*Attorneys for Plaintiff*
*Games Workshop Limited*

**CERTIFICATE OF SERVICE**

I, Jason J. Keener, an attorney, hereby certify that on February 11, 2013, I caused to be filed electronically the foregoing PLAINTIFF'S MOTION TO ENFORCE PRIOR DISCOVERY ORDERS with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

/s/ Jason J. Keener
Jason J. Keener

**CERTIFICATE OF CONFERENCE**

I, Jason J. Keener, an attorney, hereby certify that counsel for Games Workshop (Jason J. Keener and Jonathan Moskin) meet and conferred via telephone with counsel for Chapterhouse (Jennifer Golinveaux, Bryce Cooper, Julianne Hartzell, and Sarah Kalemeris) on Friday January 25 and Monday, January 28, as well as numerous emails between counsel. Counsel for Chapterhouse has refused to produce the items identified herein, primarily on the basis that the requested documents are not in Chapterhouse's possession, custody, or control.

/s/ Jason J. Keener
Jason J. Keener