# Exhibit

# 4

| | |
|---|---|
| **Subject:** | RE: GW v. CHS: GW's Discovery Requests |
| **Date:** | Thursday, February 7, 2013 8:50:44 AM Central Standard Time |
| **From:** | Julianne M. Hartzell |
| **To:** | Keener, Jason J. |
| **CC:** | Sarah Kalemeris, JGolinveaux@winston.com, BCooper@winston.com, TKearney@winston.com, Moskin, Jonathan |

Jason,

1. Chapterhouse notes that it has agreed to produce documents within its possession, custody, or control relating to the creation, development, or design of the Accused Works identified in the claim chart in response to RFP Nos. 40 and 41 and believes that production is complete. Additionally, we have provided documents in which Chapterhouse negotiated pricing with Mr. Smith for the purchase of products. Chapterhouse has identified additional documentation regarding receipt for payment made to Mr. Smith for the products at issue that he designed and will produce those documents tomorrow. The documents produced constitute those located by Chapterhouse after a reasonable search of the documents within its possession, custody, or control regarding the purchase of the Accused product designs from Mr. Smith.

2. This inspection has been set for Friday pursuant to previous email communication.

3. Chapterhouse will produce additional responsive documents obtained from Mr. Fiertek by the end of the week.

4. Chapterhouse has produced all responsive documents provided in response to our document collection by designers Jae Lee, Roberto Cirillo, Sean McKirdy, Sean Bullough, and Mr. Lippman.

5. Chapterhouse confirms that designers Holbrook, Fisher, Stinson, Reed, Justesen, Thomas, Lawler, and Smith are not currently within its custody or control. Chapterhouse's relationships with each of the individuals identified vary depending on the factual circumstances of Chapterhouses's interactions with those individual and also vary depending on the time at which the relationship is assessed. With respect to the third parties for which Chapterhouse has produced documents, those individuals have voluntarily complied with Chapterhouse's document collection efforts.

6. Chapterhouse will supplement its interrogatory response to Interrogatory No. 10 to identify its Facebook page and, to the extent that Chapterhouse maintains copies of its Facebook page and postings in the ordinary course of its business, such postings will be produced.

7. Interrogatory No. 10 was directed to all advertising of Chapterhouse products. Interrogatory No. 25 was limited to forums in which Chapterhouse advertised the newly accused products. For example, Chapterhouse did not advertise any of the newly accused products at Wargames Con, GCON2009, or Wasteland Wars 2010, as such products were not yet available at the time the conventions occurred.

8. As Chapterhouse has previously explained, it is not its practice to maintain copies of forum posts made on third party websites in the ordinary course of its business and believe that, to the extent that any such forum post was maintained, it would have been gathered in the document collection performed by Chapterhouse and produced. However, Chapterhouse will confirm whether it possesses any copies of removed forum posts.

9. Although Chapterhouse has previously identified all forum posts recalled by Chapterhouse regarding the newly identified products. Chapterhouse confirms that, while posts may have been made on the websites that you have indicated, with the exception of Facebook, Chapterhouse does not believe that those posts originated from a representative of Chapterhouse.

10. As agreed during the parties' meet and confer telephone calls, Chapterhouse updated its interrogatory response to indicate that it is unaware of any instances in which any consumer or potential consumer for any of the newly Accused Works expressed any confusion or question as to the association or affiliation between Chapterhouse or its products and Games Workshop and its products, Chapterhouse has included within its documents production any correspondence with actual or potential customers relating to the Newly Accused Works in which the actual or potential customer also mentioned Games Workshop, Warhammer or Warhammer 40,000, and to include the identification of any oral communications with actual or potential customers for the newly Accused Works in which such consumers also discussed Games Workshop, Warhammer or Warhammer 40,000 to the extent any such exist. Additionally, in response to Interrogatory No. 25, Chapterhouse has identified forum posts made by Chapterhouse regarding the newly Accused Works. Accordingly, the information requested in your point 10 has been provided by Chapterhouse to the best of its knowledge.

11. To the extent that notifications of postings from internet sites were retained by Mr. Villacci and responsive, such have been produced. Please identify the basis for which you believe additional notifications of postings from internet sites should have been retained by Mr. Villacci.

12. Chapterhouse recovered the materials contained in the crashed hard drive, imaged it, and produced responsive documents.

13. Chapterhouse notes that it has agreed to produce documents relating to the creation, development, or design of the Accused Works identified in the claim chart in response to RFP Nos. 40 and 41 and believes that production is complete. Chapterhouse has not contended that any of the independent contractors that have been hired to paint any product are within Chapterhouse's custody or control. Please identify the basis for which you believe Chapterhouse has a duty to gather documents from such individuals and the document request for which Chapterhouse has agreed to produce documents encompassing that duty.

14. Chapterhouse confirms that it has not received any documents for production from Smith or Stinson in response to its request for document collection. With respect to those individuals for which Chapterhouse has obtained responsive documents, Chapterhouse contends that its communications with those individuals were prepared in anticipation of litigation and constitute protected work product.

15. Chapterhouse is maintaining the assertions of privilege identified in the CHS privilege log and in the third party privilege logs produced by Chapterhouse. Chapterhouse will supplement its third party privilege logs to address GW's objection to the identification of email strings instead of individual emails by the end of the week.

16 and 17. Although Chapterhouse continues to dispute the relevance of documents regarding products that have not been identified as accused products in this litigation, Chapterhouse will produce non-privileged documents in its possession, custody and control regarding products currently under consideration for production.

Sincerely,
Julianne Hartzell


Julianne M. Hartzell
Marshall, Gerstein & Borun LLP
233 South
Wacker Drive
6300 Willis
Tower
Chicago, IL
60606-6357
Direct: (312) 474-6625
Firm: (312) 474-6300
Fax: (312)474-0448
jhartzell@marshallip.com
www.marshallip.com

-----Original Message-----
From: JKeener@foley.com [mailto:JKeener@foley.com]
Sent: Monday, February 04, 2013 5:03 PM
To: Julianne M. Hartzell
Cc: Sarah Kalemeris; JGolinveaux@winston.com; BCooper@winston.com; TKearney@winston.com; JMoskin@foley.com
Subject: GW v. CHS: GW's Discovery Requests

Counsel,

Below are some discovery deficiencies that still appear to remain in CHS's discovery responses. Please let us know where CHS stands on each of these issues:

  1. As we mentioned in prior emails (including today), while CHS claims that it was not directly involved in the design of at least some of the products created by Mr. Smith, it is striking that CHS did not produce documents regarding CHS' introduction, negotiation, and purchasing of the various products designed by Mr. Smith. Please produce all documents now (emails, instant messaging, etc . as well as any agreements) concerning Mr. Smith or confirm that there are none.
  2. Please let us know when CHS will make available for inspection all GW material in the possession of CHS (presumably Villacci, Fiertek, and CHS' independent designers). As stated on the phone this morning, we need to complete this inspection this week in preparation of depositions starting next week.
  3. We have received no emails from Tomas Fiertek for the second part of the case. For the first part of the case, he produced over 8,000 pages of documents. Please confirm when we will receive all responsive documents from Fiertek.
  4. In addition to the failure to produce more than a handful of emails with Mr. Smith, we have not received any emails from Jae Lee, Cirillo, or MacKirdy, and only a very limited number from Bullough. Please produce those now or explain why we have received no responsive emails or other documents. This is in contrast to Mr. Lippman who, (while only responsible for 2 works at issue) produced hundreds of emails as well a number of responsive forum posts from a large variety of forums and is in contrast to those designers we were able to subpoena in the first phase of the case.
  5. Please confirm whether CHS is contending that none of the following individuals are within CHS's control – Holbrook, Fisher,

Stinson, Reed, Justesen, Thomas, Lawler, or Smith - and provide an explanation why their status differs from those (such as Lippman, Lee, etc.) whom CHS contends are within its control.

 6. It has come to our attention that CHS maintains a Facebook page for purposes of advertising and promoting its products. This concerns us as it is not listed in CHS' current response to Interrogatory No. 10, nor have any of the documents from the website been produced in the first or second part of the case, even though it appears that CHS started making various postings as of September 15, 2009. Please explain CHS's failure to produce any of this highly relevant information. Also, please confirm immediately that CHS will produce the entirety of the Facebook page including all of CHS' announcements, all comments to those announcements, and all entries under the "Recent Posts by Others on Chapterhouse Studios" section.

 7. In its answer to Interrogatory 10, CHS identified numerous forums where it advertises and promotes its products other than the four forums for which it has now provided links in its supplemental response to Interrogatory 25. Please explain why no information has been provided regarding promotional activities on these other forums.

 8. From CHS' recent document production, it has come to our attention that CHS and its agents were aware that a number of its forum posts were removed from forums by the moderators. While CHS has now identified some currently existing forum posts in its supplemental response to interrogatory 9(sic 25), please confirm whether CHS or its agents took any steps to preserve copies of any forum posts that were removed from the forum. If not, please confirm the same.

 9. From CHS' recent document production, its has come to our attention that CHS and its agents posted relevant advertising on Forums that are not identified by CHS on either its response to Interrogatory No. 10 or Interrogatory No. 9 (sic 25). For example, Mr. Lippman has produced documents showing CHS/CHS agent advertising on at least the following forums: minisculpture.co.uk; The_UnderEmpire; Facebook; Lustria-Online.com; warhammer.org.uk; Troll Forged Miniatures. Please update your interrogatory responses accordingly and confirm that CHS's answers correctly identify all of the forum posts for which CHS or its agents are aware of.

 10. Please also confirm that CHS is refusing to update its response to Interrogatory 7 (sic 23) to identify instances where consumers or potential consumers made reference to GW or its products on the forums.

 11. From CHS' recent document production, it has come to our attention that Mr. Villacci received email notices from various internet sites (such as Facebook and Heresy-Online, among others) when someone posted a reply to a post made by Chapterhouse. However, we have only received one such notice with respect to Heresy-Online and two such notices with respect to Facebook. Please confirm that CHS no longer has any of the notices that were sent from Facebook, Heresy-Online, or any other internet website. If so, please explain why these notices were not retained by Chapterhouse.

 12. From CHS' recent document production, it has come to our attention that Mr. Villacci's hard drive containing CHS documents crashed on or around March 28, 2011, when he may have lost over eight months of emails. This time period covers the design period of a number of products in both the first and second phase of the case. As CHS never made GW aware of this issue, please confirm what steps CHS has made to restore the information from the hard drive; whether the hard drive was preserved, and whether it has been searched for responsive materials .

 13. Now that CHS has identified the relevant CHS agents involved in the painting of the Newly Accused Works, please explain why no documents have been collected from these individuals.

 14. CHS has produced emails for Stinson and Smith. Per our call this morning, it is our understanding that despite the fact that these documents bear Stinson and Smith bates numbers, they were not collected by them but instead produced by CHS. Moreover, please explain why CHS has not produced similar emails seeking documents for any of the other designers/painters. If CHS is refusing to produce similar correspondence with respect to other designers/painters, please indicate what portion of the email contains alleged attorney-advice to support CHS' claim of privilege.

 15. CHS had previously indicated that it would be amendable to withdrawing its privilege objection for its communications with third party designers if GW likewise produced its communications with former employees. Despite the fact that GW has now produced these documents, please confirm whether CHS is still maintaining its assertion of privilege over its correspondence with its third party designers.

 16. During the parties meet and confer, CHS had agreed to reconsider its position on the production of documents related to CHS products that it has created but not yet begun selling. As we have not seen any further production on this issue, please confirm that CHS is refusing to produce these documents.

 17. Related to point 16, CHS has produced no documents from or concerning the designer Craig Clark. Mr. Villacci stated at his deposition that he was at the time working with Mr. Clark on new products.

Regards,

Jason J. Keener
Foley & Lardner LLP
321 North Clark Street, Suite 2800, Chicago, IL 60610-4764
(312) 832-5109 (direct) / (312) 832-4700 (fax)

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons.  If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message.  Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding

message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The material in this transmission may contain confidential information. If you are not the intended recipient, any disclosure or use of this information by you is strictly prohibited. If you have received this transmission in error, please delete it, destroy all copies and notify Marshall, Gerstein & Borun LLP by return e-mail or by telephone at (312) 474-6300. Thank you..