# Exhibit

# 14

| | |
|---|---|
| **Subject:** | RE: GW / CHS Meet and Confer - CHS's Discovery Requests - Depositions |
| **Date:** | Friday, February 1, 2013 1:33:13 PM Central Standard Time |
| **From:** | Sarah Kalemeris |
| **To:** | Moskin, Jonathan, Julianne M. Hartzell |
| **CC:** | Keener, Jason J., Cooper, Bryce A., Golinveaux, Jennifer A. |

Jonathan,

The following individuals on behalf of whom we assert attorney-client privilege will appear on our upcoming privilege logs: Nick Villacci, Tomas Fiertek, Stephen Smith, Jae Lee, Michael Lawler, Ashton Holbrook, Robert Lippmann, Sean MacKirdy, and Sean Bullough.

We have collected documents from Mr. Fiertek and produced responsive documents received, but in light of your concerns, we will again contact Mr. Fiertek to confirm that no additional responsive documents exist.

We will provide the production of third party documents, the website captures, and the replacement images for the redacted documents at approximately 3:00pm CST today.

Thank you,
Sarah



Sarah Kalemeris
Marshall, Gerstein & Borun LLP
233 South
Wacker Drive
6300 Willis
Tower
Chicago, IL
60606-6357
Direct: (312) 474-9570
Firm: (312) 474-6300
Fax: (312)474-0448
SKalemeris@marshallip.com
www.marshallip.com

-----Original Message-----
From: JMoskin@foley.com [mailto:JMoskin@foley.com]
Sent: Friday, February 01, 2013 11:34 AM
To: Sarah Kalemeris; Julianne M. Hartzell
Cc: JKeener@foley.com; Cooper, Bryce A.; Golinveaux, Jennifer A.
Subject: RE: GW / CHS Meet and Confer - CHS's Discovery Requests - Depositions

Thank you for your response. Since noon is now less than 30 minutes away, can you give us an estimate when we will have the documents? Particularly since you say you can't get us a privilege log until possibly Tuesday, can you also answer my first question: with which designers does CH claim privilege?

Although we have other questions regarding even CH's own correspondence with designers (such as why there is virtually none for some of them) we are also a little surprised by your comment that most of the forthcoming documents are from Lippman, Bullough, and MacKirdy, not Fiertek, as the court specifically instructed on March 6 that all of Fiertek's documents need to be produced, even if they overlap with Villacci's records. However, perhaps there is some explanation.

Thank you.

Jonathan

-----Original Message-----
From: Sarah Kalemeris [mailto:SKalemeris@marshallip.com]
Sent: Friday, February 01, 2013 11:26 AM
To: Moskin, Jonathan; Julianne M. Hartzell
Cc: Keener, Jason J.; Cooper, Bryce A.; Golinveaux, Jennifer A.
Subject: RE: GW / CHS Meet and Confer - CHS's Discovery Requests - Depositions

Jonathan,

We have been advised that we can deliver the documents to you today, although not by noon. We will provide both metadata showing the document custodian and a list providing bates ranges by custodian.

You will receive approximately 500 documents from the following custodians: Bullough, Cirillo, Fiertek, Lippman, MacKirdy, Jae Lee. The vast majority of these documents are from Lippman, Bullough, and MacKirdy, designers you have subpoenaed whose documents you would have timely received on February 4th.

We will provide you with a privilege log on or before Tuesday, February 5th, as we previously stated. This log will show all documents protected by the attorney-client privilege or work product doctrine.

Sarah


Sarah Kalemeris
Marshall, Gerstein & Borun LLP
233 South
Wacker Drive
6300 Willis
Tower
Chicago, IL
60606-6357
Direct: (312) 474-9570
Firm: (312) 474-6300
Fax: (312)474-0448
SKalemeris@marshallip.com
www.marshallip.com

-----Original Message-----
From: JMoskin@foley.com [mailto:JMoskin@foley.com]
Sent: Friday, February 01, 2013 8:08 AM
To: JMoskin@foley.com; Julianne M. Hartzell
Cc: JKeener@foley.com; Cooper, Bryce A.; Golinveaux, Jennifer A.; Sarah Kalemeris
Subject: RE: GW / CHS Meet and Confer - CHS's Discovery Requests - Depositions

This is further to my previous message expressing some distress that you are now more than three weeks late producing any documents from the designers and propose drelaying production for another three days. There is a pattern here. In the first phase of the litigation CH produced none of its design documents (other than 5 email chains) until December 2011 and later, notwithstanding that counsel had scanned them all on February 4 2011. After repeatedly delaying a deposition of Mr. Villacci as document custodian, we only learned in February that it had produced none of the designer documents, and did not do so until the Court directed it to do so in March. Even then, CH produced only 29 pages of mostly illegible materials. Counsel then refused to share with us its communications with the designers, but provided only a summary on May 16. No basis for refusing production of those communications has been provided and (in view of your recently stated theory that CH claims attorney client privilege in some of its communications with designers) certainly no privilege log has been produced.

In this phase of the litigation, you first ignored the Court's explicit instructions to serve by hand, instead delaying our receipt of intterogatory answers because they had simply been placed in the regular mail. (For your information, that envelope arrived a full week later.) Also without explanation, you served document responses a day late, on January 11, when they were due on the 10th. Now, after we demonstrated to you by specific example on Monday that documents from designers clearly had not been produced, and after you have ignored our repeated requests all week for an explanation or the bates ranges of the relevant documents, you are telling us that CH is, as of today, more than three weeks late serving any designer documents, and that it proposes waiting another three days to deliver them.

Given the expedited schedule we are operating under, this is unacceptable. Particularly given your theory that you have the right to withhold some documents from designers on attorney-client privilege grounds yet claim no attorney-client privilege in commubnications with other designers, we need to know immediately, within one hour, (i) with which designers you claim privilege, (ii) from which designers you are holding (and we will be getting) documents, and (iii) how many such documents you are holding that should have been produced on January 10. Further, we expect delivery of all of the documents by noon today. Otherwise, we see little alternative but to alert the court.

Jonathan

-----Original Message-----
From: Moskin, Jonathan
Sent: Friday, February 01, 2013 7:45 AM
To: Julianne M. Hartzell
Cc: Keener, Jason J.; Cooper, Bryce A.; Golinveaux, Jennifer A.; Sarah Kalemeris
Subject: Re: GW / CHS Meet and Confer - CHS's Discovery Requests - Depositions

I will follow up with a more detailed message in about 30 minutes but this is very distressing. Please tell us immediately, by no later than 9:00 central, from what designers you are holding documents and produce the documents in whatever format you have them my noon. You can send bates numbered documents later

Jonathan

Sent from my iPhone

On Feb 1, 2013, at 3:20 AM, "Julianne M. Hartzell" <jhartzell@marshallip.com> wrote:

> Counsel,
>
> Thank you for getting back to us so quickly with your deposition scheduling issues. We will confer and provide you with new dates and/or locations for those referenced in your email.
>
> With respect to the third party documents collected by Chapterhouse, we were able to determine this evening that the third party documents prepared for production were inadvertently excluded from the production itself. You will receive them on Monday. The custodians will be identified either in a custodian metadata field or with production numbers that correspond with the custodian.
>
> Sincerely,
>
> Julianne Hartzell
>
> [cid:image37f30c.GIF@b2c8e24c.43a1bd09]
>
> Julianne M. Hartzell
> Marshall, Gerstein & Borun LLP
> 233 South Wacker Drive
> 6300 Willis Tower
> Chicago, IL 60606-6357
> Direct: (312) 474-6625
> Firm: (312) 474-6300
> Fax: (312) 474-0448
> jhartzell@marshallip.com
> www.marshallip.com
>
> The material in this transmission may contain confidential information. If you are not the intended recipient, any disclosure or use of this information by you is strictly prohibited. If you have received this transmission in error, please delete it, destroy all copies and notify Marshall, Gerstein & Borun LLP by return e-mail or by telephone at (312) 474-6300. Thank you.
>
> _____
> From: JMoskin@foley.com [JMoskin@foley.com]
> Sent: Thursday, January 31, 2013 5:30 PM
> To: Julianne M. Hartzell; JKeener@foley.com; 'Cooper, Bryce A.'
> Cc: 'Golinveaux, Jennifer A.'; Sarah Kalemeris
> Subject: RE: GW / CHS Meet and Confer - CHS's Discovery Requests - Depositions
>
> We can serve a formal supplemental answer in due course, but so as not to delay furnishing information, we have confirmed with our

client that there are no licenses of individual works, only group licenses (which previously were provided in discovery) to THQ and Fantasy Flight Games.

For the former employees, the last known addess will have been in or around Nottingham, England. Also, Sabertooth Games, which had been based in Memphis was sold to Fantasy Flight Games.

We are also serving you today the most recent correspondence with the Copyright Office.

Unfortunately, we have received no further information from you, not even the custodial information or the bates ranges of documents by custodian. Please let us know where you stand on this. We believe we should have had this on January 10 when CH's documents were due and you assured us it would be addressed promptly when we spoke on Monday.

We also need to raise with you a few issues regarding depositions. Juan Diaz will need a Spanish translator. Tom Walton can not be in Chicago until February 14 and the likely principal 30(b)(6) witness for GW (Alan Merritt) is not able to travel as he is caring for his seriously ill mother. We could do a video link or make him available in London. We are open to other suggestions as well.

Thanks

Jonathan

_____

From: Moskin, Jonathan
Sent: Wednesday, January 30, 2013 4:49 PM
To: 'Julianne M. Hartzell'; Keener, Jason J.; Cooper, Bryce A.
Cc: Golinveaux, Jennifer A.; Sarah Kalemeris
Subject: RE: GW / CHS Meet and Confer - CHS's Discovery Requests


Julianne,

This is further to Jason's message earlier today (to which we have received no response - and no information, among other things, about document custodians which we had hoped to have already) and will respond to your message last night. In answer to your bottom-line question, I hope this message will confirm that we are not seeking to alter the agreements we reached during the parties' two lengthy calls. However, some clarification is needed. And as noted at the end, resolving your request for a list of books is more complicated than we realized.

Interrogatories 26, 28, and 36. As we discussed on the call, we believe GW already has provided most of the information it has responsive to these requests. We had thought GW had answered everything. After you explained what else you were seeking, we undertook to gather that information. For instance, we expressed doubt that GW would have records of the dates of creation beyond the dates you already have in the registrations and applications that have been provided. However, we are checking.

Interrogatory 31. We are checking again with each of the authors to confirm if they can identify any sources they relied on in creating the works in issue.

We are first checking if there exist any marketing plans for the new works. As we discussed during the call, what the prior discovery in the case shows is that GW does not do any meaningful advertising or promotion of its products.

What I believe (and what I tried to express) was that GW does not retain employment records more than six years old. I am not an expert in English privacy law, but my understanding is that the law contains some sort of preference or mandate to that effect. Obviously GW does not save any records indefinitely, but I was referring specifically to employment records.

Request 108. I am not sure if you mean something different from what we actually said in our prior email, but to repeat: GW is not refusing to produce documents regarding Chapterhouse (but merely objected that the request was encompassed by other requests). We are nonetheless confirming again with our client that it has no additional materials

The exact words I believe we used regarding the Copyright Office correspondence was that we would produce any new correspondence within the next couple of days, certainly this week. That remains true.

Regarding the reference materials that Games Workshop has, you proposed that GW try to generate a list and we have asked our client. If you go back to what Mr. Hodgson testified, although he could only recall looking at two sources other than prior GW publications (the Arms & Armour volume that we produced - notwithstanding that we do not believe it falls within any document request served by Chapterhouse - and a book on heavy equipment that he could not find) he also testified that there are many other books on the premises. As he said, they are all over the place and not organized in a library. Because GW in fact has hundreds of volumes on premises (mostly prior GW publications) our client advises that this is not a simple task. Some of the books are on shelves, some are on or under desks. Some belong to the individual authors (many who are not authors of any of the works at issue

in this case), and some to GW. Nor is there any record when GW or the authors acquired the books (many of which were acquired after the works at issue were created). We also are concerned that once we produce a list of books, you will simply demand copies of all of them, notwithstanding that none appear to be responsive to any CH discovery request. The only document request CHS has identified (Request 2) is specifically limited to materials used in connection with the design of the works at issue. Chapterhouse has still refused to provide a meaningful delineation of what materials (that were not used in connection with such design activities) should be discoverable and why. At the risk of digressing (because were are still working on a solution), if books that were not consulted are discoverable, based on a speculative theory that despite any testimony to the contrary, it is possible that an author unknowingly referred to one of these references, then such a rationale would seem to also include every book ever read, every movie ever seen, every historical city ever visited, every magazine kept at one's home. We don't think this is a correct reading of the scope of what is discoverable. Certainly Chapterhouse has made no effort to produce information according to any remotely similar set of principles.

I do have to acknowledge that I misspoke slightly because it had been several months since Hodgson's deposition last March or our correspondence in May and June, when I thought this was resolved. We produced the Arms & Armour book, not because it was the only book GW has dealing with medieval armor (we don't yet know what other books they might have) but because it was one of only two books he recalled having looked at. To be clear, there are other books at GW's studios (Hodgson actually said they have books on armor as well as tanks and weapons) but as we have repeatedly confirmed with the relevant authors, none of them (with the exception of the two we have produced) were consulted or used in ANY way by the authors in creating the GW works at issue.

Meanwhile, while we are trying to sort out how best to resolve the issue of giving you meaningful information on books that no one at GW recalls having looked at in connection with the design of any of the works in issue, your email remains silent on whether CH will identify and produce the reference materials that CH and its designers actually did look at in connection with the design of the works in issue.

Regards,

Jonathan

-----Original Message-----
From: Julianne M. Hartzell [mailto:jhartzell@marshallip.com]
Sent: Tuesday, January 29, 2013 8:14 PM
To: Keener, Jason J.; Cooper, Bryce A.
Cc: Golinveaux, Jennifer A.; Sarah Kalemeris; Moskin, Jonathan
Subject: RE: GW / CHS Meet and Confer - CHS's Discovery Requests

Jason,

Our notes do appear to differ with respect to the scope of what Games Workshop agreed to supplement.

1. Interrogatories 26, 28, and 36 - During our call, Games Workshop agreed to supplement its responses to these requests with all of the information requested in the interrogatories and in the correspondence from Ms. Kalemeris dated January 14, 2013, including not only the status of the copyright applications and registrations that Games Workshop contends are infringed including the title of the work, but also identification of each of the ownership rights in those copyrights that Games Workshop alleges is infringed, the nature of each designer's contribution, and the period of time during which such designer was engaged in the design. Games Workshop also stated that there are no exclusive licensees to any work at issue.

2. Interrogatory 31 - My notes reflect that Games Workshop agreed to supplement its interrogatory response either to identify sources referenced in the creation of the New Allegedly Infringed Works or the documents in which those source materials are referenced. Such supplement should include, at a minimum, the identification of the source materials referenced in GW0011689 and any other similar documents already produced by Games Workshop.

3. Agreed.

4. Please confirm that Games Workshop intends to produce any documents (including email communications or other documents) concerning plans to market the New Allegedly Infringed Works in the event that you are advised by your client that such documents exist.

5. Games Workshop assured Chapterhouse that no documents responsive to RFP 108 have been withheld from production and that all responsive documents have been produced.

6. Agreed.

7. Agreed. We note also that Games Workshop advised that its client does not retain documents that are more than six years old. With respect to the copyright office correspondence, my notes reflect that you agreed to produce it "within the next day or so," not by the end of the week. As we have previously noted, we also believed that Games Workshop's decision to withhold this document

since it's receipt nearly two weeks ago is improper, particularly since the registration itself and your correspondence with the copyright office regarding that registration have been at issue in the motion to reconsider and the court made clear in court on January 8th that Games Workshop should be aware that such documents are responsive and of considerable interest to Chapterhouse.

8. Chapterhouse agrees that in order to try to resolve the disagreement regarding Chapterhouse's Notice of Inspection, Games Workshop offered to provide, again within the next day or so, a listing of all of the reference materials available to the Games Workshop designers, including without limitation the "reference library" noted in deposition testimony. As we discussed during yesterday's call, without the a listing of the reference materials possessed, Chapterhouse is unable to further delineate its request. You also now confirmed that all of the GW designers have computers at their workstations.

If Games Workshop is now limiting the agreements made during our phone calls, advise us immediately.


Sincerely,
Julianne Hartzell




Julianne M. Hartzell
Marshall, Gerstein & Borun LLP
233 South
Wacker Drive
6300 Willis
Tower
Chicago, IL
60606-6357
Direct: (312) 474-6625
Firm: (312) 474-6300
Fax: (312)474-0448
jhartzell@marshallip.com
www.marshallip.com

-----Original Message-----
From: JKeener@foley.com [mailto:JKeener@foley.com]
Sent: Tuesday, January 29, 2013 2:34 PM
To: Cooper, Bryce A.
Cc: Golinveaux, Jennifer A.; Sarah Kalemeris; Julianne M. Hartzell; JMoskin@foley.com
Subject: GW / CHS Meet and Confer - CHS's Discovery Requests

Counsel,

Following up on our call yesterday, as promised, here is our summary of the matters we agreed to undertake on behalf of Games Workshop.

1. Interrogatories 26, 28 and 36 - Beyond the information already noted in our January 17 letter, we agreed to formally supplement Games Workshop's responses to these requests and will update the chart attached to the complaint summarizing the status of the copyright applications and registrations.

2. Interrogatory 31 - We believe this answer is complete but will again reconfirm with our client that no additional sources consulted can be identified.  (See also below in our discussion of the request to inspect premises)

3.  Interrogatory 37 - Once again, we believe this answer is complete but have asked our client for additional information as to last city or country where the authors are known to have lived and to find a last known address for Sabertooth Games.

4. Request for Production 99 - We are reviewing with our client whether there exist any responsive plans (in particular with an eye to whether they might bear on the issue - if any - of actual damages).

5. RFP 108 - We clarified that GW was not refusing to produce documents regarding Chapterhouse (but only that the request was encompassed by other requests.  We are nonetheless confirming again with our client that it has no additional materials.

6. Admission requests - We will serve revised responses to the two Requests (repetitively numbered) 735 in Chapterhouse's fifth set of admission requests

7.     a. Regarding the issues raised in your January 24 letter, we agreed to renumber the duplicatively numbered materials

      b. We further explained that GW is not aware of any other design documents beyond the sketches produced in the present and earlier rounds of discovery; and that the actual designers are not aware of further documents similar to the design documents for the Leman Russ Demolisher project or for the Lizardmen design.

      c. We also sought to reassure you that we have inquired repeatedly to be sure there are no design documents that may have been provided to individual authors.

      d.  We again sought to reassure you that GW had produced employment records to the extent it has any.  We will check and reconfirm this.

      f. We will produce any new correspondence with the Copyright Office this week.  As noted, there is some irony in the fact that the Copyright Office has initially declined to register the Assualt Squad should pad design, but did register the Flesh Tearer shoulder pad design.

8.  Request to inspect premises -  I think we narrowed this issue to a request to inspect the reference materials or, in the alternative, for Games Workshop to simply produce the books or a list of books.  We have begun to re-explore this with the client (finding some initial uncertainty based on the fact that there may be no way to filter out books on ht premises that were acquired after suit began or after the works in issue were created).  I also want to remind you what I said in my June 1 email (to which CH never responded) that apart from avoiding a needless burden in an already-expensive case, we would much rather give you more materials if some delimiting principle can be established. In that email, I then concluded by asking you, if you could give us a little further guidance what you would like us to do, but you never responded.
     We also note that this should work both ways.  If we are going to provide documents that the GW designers insist they never even looked at for the works in issue, CH should be getting us all the documents and things actually reviewed or in the possession of CH and its designers.  For example, Villacci/Fiertek should have identified every book, movie, miniature, etc. in their possession and all of the designers should have identified a list of all GW items in their possession, regardless of whether they relate to the product they designed here.

Regards,

Jason J. Keener
Foley & Lardner LLP
321 North Clark Street, Suite 2800, Chicago, IL 60610-4764
(312) 832-5109 (direct) / (312) 832-4700 (fax)

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons.  If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message.  Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The material in this transmission may contain confidential information. If you are not the intended recipient, any disclosure or use of this information by you is strictly prohibited. If you have received this transmission in error, please delete it, destroy all copies and notify Marshall, Gerstein & Borun LLP by return e-mail or by telephone at (312) 474-6300. Thank you..

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this

message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons.  If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message.  Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons.  If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message.  Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.