**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:10-cv-08103 |
| v. ) | |
| ) | |
| CHAPTERHOUSE STUDIOS LLC, ) | |
| ) | Judge Matthew F. Kennelly |
| Defendant. ) | |

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S SECOND MOTION
FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER**

Based on new evidence, and pursuant to Federal Rules of Civil Procedure 54(b) and 37, Defendant Chapterhouse Studios LLC ("CHS") respectfully requests that the Court reconsider its November 27, 2012 Memorandum Opinion and Order (Dkt. No. 258, the "Order") on CHS's First Summary Judgment Motion (Dkt. 208), related to Plaintiff Games Workshop Limited's ("GW") copyright infringement claims regarding its shoulder pad products.

**I.    INTRODUCTION**

GW had documents from the United States Copyright Office that rebutted GW's arguments and supported CHS's First Summary Judgment Motion, but inexplicably did not produce them until after the Court issued its Order. The Court lacked the benefit of those documents when it found that GW was "entitled to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20. This correspondence between GW and the Copyright Office shows that the Copyright Office Registration Specialist rejected copyright registration for this very design on the grounds that it is "too minimal" to be afforded protection—a decision that was subsequently affirmed by a Supervisory Registration Specialist, who stated by formal letter

that the shoulder pads "lack[] the authorship necessary to support a copyright claim." Cooper Decl. Ex. 5 at 3; Ex. 7 at GW0016843. Because decisions of the Copyright Office are generally afforded deference by the courts, CHS respectfully requests that the Court reconsider its finding with regard to GW's shoulder pads in light of these newly-produced documents, and sanction GW by awarding CHS costs for its independent investigation to uncover certain of this evidence.

**II.     STANDARD OF REVIEW**

Federal Rule of Civil Procedure 54(b) states that a non-final order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Rule 54(b) motions for reconsideration may be granted in order to examine newly discovered evidence related to a non-final order. *United Air Lines, Inc. v. ALG, Inc.*, 916 F. Supp. 793, 795 (N.D. Ill. 1996) ("motions for reconsideration serve a limited function" including to "present newly discovered evidence" relating to a previously issued summary judgment order); *Anderson v. Montgomery Ward & Co., Inc.*, 704 F.Supp. 162, 163 (N.D. Ill. 1989) ("when a party can show good reason for having failed to adduce such [new evidence] in its argument on the original [summary judgment] motion, the court is empowered to review this material, and, if necessary, reverse itself").

When newly discovered evidence is improperly withheld by a party as part of discovery, the court has broad discretion to impose sanctions under Federal Rule 37(c)(1), including payment of reasonable expenses. *See* Fed. R. Civ. P. 37; *Dynegy Marketing and Trade v. Multiut Corp.*, 648 F.3d 506, 514 (7th Cir. 2011); *Allstate Ins. Co. v. Electrolux Home Products, Inc.*, 840 F.Supp. 2d 1072, 1078 (N.D. Ill. 2012) ("Rule 37 allows a district court to impose sanctions if the court finds that a party did not comply with discovery requirements," including "reasonable expenses.").

### III. BACKGROUND

#### A. The Protectability of GW's Shoulder Pads Was Before this Court on Summary Judgment.

CHS argued in support of its summary judgment motion that GW's shoulder pad products were not protected by copyright for their "shape/design of the underlying shoulder pad." Dkt. No. 208 at 10. CHS maintained—and the Court agreed—that "common geometric shapes cannot be copyrighted." *Id.* (citing *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 303 (7th Cir. 2011); Dkt. No. 258 at 20 (citing same). CHS further relied on the Copyright Compendium II § 503.02(a)-(b) in arguing that the Copyright Office refuses to base copyright registrations on "standard ornamentation" such as the "common geometric figures or shapes" presented by the "half-hemisphere shape of a traditional bandshell" found in GW shoulder pads. Dkt. 208 at 10-11.

Without knowing that the Copyright Office had considered the issue, the Court found upon independent investigation that "[t]he unusually large proportional size of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," and concluded that GW was "entitled to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20. Based upon this finding, the Court therefore denied CHS's First Summary Judgment Motion with respect to entries 4-7, 12-13, 19-20, 46-48, 50-52, 56-62, 64-65, and 101-02 on GW's Second Revised

3

Claim Chart (attached hereto as Cooper Decl. Ex. 1).[1] *Id.* at 20-21 ("although GW could not base its copyright claim on a depiction of an "X" or a chevron alone, its depiction of that otherwise-common element affixed on an original, creative shoulder pad with a distinctive color scheme is sufficient to satisfy the originality requirement").

**B. Good Reason Existed for CHS Having Only Discovered the Copyright Office's Position on GW's Shoulder Pad Design after the Summary Judgment Order.**

Between February 28, 2012 and March 2, 2012, GW filed 73 new U.S. copyright applications for works-in-suit, many of which have not issued. Dkt. 261, Ex. A. In June 2012, a Copyright Office Registration Specialist had taken the position that the Copyright Office could not register the sculpture portion of the GW work "Assault Squad Shoulder Pads," which is a shoulder pad with the "arrow cross" or "X" design, identified by product entries 46, 47, and 48 in the Second Revised Claim Chart. *See* Cooper Decl. Exs. 1, 5. But GW did not produce the relevant correspondence, despite having been obligated to do so. Fortunately, CHS learned about the correspondence, but not until ***after*** the Court entered its Order, when CHS received certified copies of the Copyright Office records.[2] *See* Cooper Decl. Ex. 5.

---

[1] The Court also notes at the beginning of its discussion of GW's shoulder pad products that GW's copyright claims for product entries 21-22, 53, and 97-98 are based "solely on the shape and design of GW's shoulder pads." Dkt. No. 258 at 19. Indeed, GW's Second Revised Claim Chart concedes that "There are no IP issues with this product other than the shape/design of the underlying shoulder pad." Cooper Decl. Ex. 1. However, the Court does not include these product entries in its holding at the end of the section, which lists the shoulder pad products that the Court's Order "resolve[d]" as protectable. Dkt. No. 258 at 20. In addition, there are two more products—entries 99 and 100—for which GW concedes that the shape and size of the shoulder pads are the only purportedly protectable element, but that the Court did not mention in its Order. *See* Dkt. 258 at 19-22; Cooper Ex. 1 at product entries 99-100. Therefore, CHS submits that shoulder pad products 21-22, 53, and 97-100 should be reconsidered together with entries 4-7, 12-13, 19-20, 46-48, 50-52, 56-62, 64-65, and 101-02.

[2] Suspicious that no correspondence with the Copyright Office had been produced for any of the files, and despite GW's discovery responses agreeing to produce any such documents, in late October 2012, CHS commissioned an independent investigator at significant expense to order two representative correspondence files from the Copyright Office. Cooper Decl. ¶ 8. CHS requested two files out of the scores of applications GW has submitted due to the cost of such a request ($1,039 for expedited, certified copies of just two files) for documents that should have been produced by GW in the first instance.

The "Assault Squad Shoulder Pads" file contained several e-mail communications between GW's lead trial counsel, Mr. Moskin, and the Copyright Office Registration Specialist assigned to the application regarding GW's copyright application for that product. *See* Cooper Decl. Ex. 5. The Copyright Office Registration Specialist flatly refused registrability of the size and shape of the shoulder pad design on June 7, 2012—*two months before* summary judgment motions were filed in this case—stating "we cannot register the sculpture portion as it is too minimal." *Id.* at 3. Although GW "propose[d] speaking with" the Specialist about the sculptural elements, she responded and again reiterated unequivocally, "The email stated that the 'sculpture' was too minimal (it is basically an "X") and could not be registered." *Id.* at 4, 7. GW then offered to send the Copyright Office this Court's prior Order, which had been rendered without knowledge of the Copyright Office's action. *Id.* at 10. But the Copyright Office responded, making its determination crystal clear, now for a third time: "this particular shoulder pad submitted is not copyrightable. it [sic] is simply circular, with an x or plus sign on it." Cooper Decl. Ex. 6 at GW0011427-28 (December 11, 2012 email from Copyright Office to Moskin).

GW specifically addressed whether its shoulder pads were protectable under U.S. law in its opposition to CHS's First Summary Judgment Motion, even as it withheld evidence that contradicted the argument it made to this Court. *See, e.g.,* Dkt. No. 230 at 15 (GW argued that "[a]s the Copyright Office Compendium II §503.02 (a)-(b) (1984) cited by CHS expressly notes, combinations of elements (even if unprotectable alone) are 'eligible for copyright protection' if their arrangement is original."). Known only to GW, but not to CHS or this Court, the Copyright Office Registration Specialist had rejected a copyright for the sculptural portion of GW's

---

Cooper Decl. Ex. 4. Though CHS ordered expedited copies, it still took more than a month to receive the files. Cooper Decl. ¶ 8.

5

shoulder pad design as "too minimal" to be afforded copyright protection. GW should have produced these documents sooner, but did not. CHS requested them in discovery. There is no question they are relevant to the issues addressed in the parties' cross-motions for summary judgment. And GW had an obligation to inform the Court about the Copyright Office's position on this same issue. Yet GW did not produce the Copyright Office documents until after the Court ruled, and even after CHS filed its first Reconsideration Motion on this issue (Dkt. 267, the "First Reconsideration Motion")."[3]

### C. CHS Withdrew Its First Reconsideration Motion Pending a Final Rejection of GW's Shoulder Pad Products by the Copyright Office.

In its First Reconsideration Motion, CHS did not classify this Copyright Office correspondence as a "final" rejection, but rather argued that the Court should have been given the *opportunity* to *consider* and weigh this evidence in light of its relevance to the copyrightability of GW's shoulder pads. In correspondence produced for the first time after CHS filed its First Reconsideration Motion, it appears that the first Registration Specialist went on leave, and that the Assault Squad Shoulder Pads application at issue was transferred to a Supervisory Registration Specialist, who stated that she "will examine the materials submitted with this claim

---

[3] In its Response to CHS's First Reconsideration Motion (Dkt. 270)—and at the January 14, 2013 hearing— GW offered a plethora of excuses for its failure to timely produce its relevant correspondence with the Copyright Office. But they did not rebut the facts: on August 8, 2011, CHS requested "all correspondence with any government agency or private copyright registration service concerning" each of GW's alleged works-in-suit (which included the "Assault Squad pads," identified in the First Revised Claim Chart). Cooper Decl. Ex. 2, CHS RFP Set Four ¶ 37. GW responded on October 19, 2011 and agreed, without objection, to "produce documents, if any, responsive to this request." Cooper Decl. Ex. 3, GW Response to CHS RFP Set Four ¶ 37. Despite CHS's requests and GW's agreement to produce any correspondence with the Copyright Office regarding any of GW's allegedly infringed works, GW failed to produce any correspondence with the Copyright Office before the close of discovery on March 15, 2012 (Dkt. No. 116). Cooper Decl. ¶ 5. As recently as November 2012, GW's lead trial counsel denied that any substantive correspondence with the Copyright Office regarding the works-in-suit existed, describing any correspondence GW had as "limited" and "ministerial" in nature. Cooper Decl. ¶ 6. *See also* Dkt. No. 267, CHS Mot. for Reconsideration, at 7-8. It was only after the filing of CHS's First Reconsideration Motion that GW finally produced the Copyright Office correspondence. Cooper Decl. ¶ 7.

(Assault Squad Shoulder Pads) and will make a determination shortly." Cooper Decl. Ex. 6 at GW0011427 (December 27, 2012 email from Copyright Office to Moskin.)

On January 7, 2013, the parties appeared before the Court on CHS's First Reconsideration Motion. Cooper Decl. ¶ 13. The Court raised concerns about whether the correspondence at issue was a final refusal to register the copyright in the sculptural portion of the shoulder pad, and allowed CHS two days to file a reply to address this issue or to withdraw its First Reconsideration Motion. *Id.*; Dkt. 271. Although CHS believed that the Copyright Office Registration Specialist's repeated rejection of the sculptural element of the Assault Squad Shoulder Pads was highly relevant to the Court's summary judgment ruling—and wrongfully withheld from consideration by GW—in light of the Court's concerns about relying on potentially non-final rejections by the Copyright Office, CHS filed a Motion to Withdraw Motion for Reconsideration Pending Final Determination on Registration or Abandonment. Cooper Decl. ¶ 15; Dkt. 272. CHS notified the Court it would seek to re-file its motion for reconsideration if and only if the Copyright Office Supervisory Specialist rejected the sculptural claim of the application, or if GW strategically allowed that claim to become abandoned. *Id.* at ¶ 9. The Court granted the withdrawal on January 14, 2013. Dkt. 274.

**D. The Copyright Office Has Issued a Formal Refusal to Register GW's Shoulder Pad Products.**

On January 4, 2013 (ten days before the January 14, 2013 hearing on CHS's Motion to Withdraw), the Copyright Office Supervisory Registration Specialist issued a formal rejection letter to GW (the "Refusal Letter"), stating that the Copyright Office could not register the Assault Squad Shoulder Pads because it "lack[ed] the authorship necessary to support a

7

copyright claim." Cooper Decl. Ex. 7 at GW0016843.[4] In denying GW's application, the Copyright Office noted that a copyrightable work "must possess[] at least a minimal degree of creativity." *Id.* (citing *Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340 (1991)). The Copyright Office wrote, "After careful consideration, we have determined that this particular work will not support a claim to copyright for 2-Dimensional artwork or sculpture under the standards described above." *Id.* This determination included "deposit materials." *Id.* The Copyright Office concluded, "no response is necessary." *Id.* at GW0016844.

On January 31, 2013, GW submitted a "Notice of Filing" to inform the Court that it had filed a letter with the U.S. Copyright Office responding to its refusal to register the Assault Squad Shoulder Pad. Dkt. 275. GW's January 31 Letter to the Copyright Office stated that, although aware of its administrative remedies to appeal the refusal by the Copyright Office Supervisory Registration Specialist, it had decided not to pursue the matter further with the Copyright Office, believing it "more efficient to simply allow the Court to decide the matter." Dkt. No. 275, Ex. 1 at GW0016846-7. Having foregone its administrative right to appeal the refusal with the Copyright Office, the Copyright Office's Refusal Letter should be deemed final. 37 C.F.R. § 202.5.

---

[4] At the January 14, 2013 hearing on CHS's Motion for Reconsideration, Mr. Moskin represented that all correspondence with the Copyright Office had been produced, although ten days had passed since the Refusal Letter was sent, and CHS had not been provided the letter. Cooper Decl. ¶¶ 12, 14. Moreover, although CHS's counsel requested that it immediately be provided with the refusal letter once GW's attorney received it, GW's counsel refused to provide it until, as he put it, GW decided how to respond, and it was withheld from CHS's counsel until January 31, 2013 when GW submitted its Notice of Filing, Dkt. No. 275. *See* Cooper Decl. ¶ 17, Ex. 8 (January 16, 2013 email from Mr. Moskin to CHS counsel stating that he would produce the refusal "after we have had a chance to review it with our client and decide on how to respond").

IV.     ARGUMENT

   A. **Newly Discovered and Subsequently Produced Evidence Shows that the U.S. Copyright Office Determined that GW's Shoulder Pads Are "Too Minimal" To Be Afforded Copyright Protection and Merits the Court's Reconsideration of this Issue**

The Court's conclusion on summary judgment that GW was "entitled to copyright protection as to the design of its shoulder pads" was made without knowledge of the Copyright Office's denial of protection for at least one of the same shoulder pad designs as "too minimal" to be afforded copyright protection. This new evidence justifies reconsideration of the Court's decision with respect to the shoulder pad products identified at entries 4-7, 12-13, 19-22, 46-49, 50-53, 54-62, 64-65, and 97-102 on the Second Revised Claim Chart (Cooper Decl. Ex. 1).

The Copyright Office's determination is at least persuasive authority that GW's shoulder pads are not protectable. If a copyright application is refused, "the interpretation followed by the Copyright Office, as the agency responsible for administering federal copyright law, is entitled to respect as persuasive authority." *Design Ideas, Ltd. v. Yankee Candle Co., Inc.*, 2012 WL 3267783, at *6 (C.D. Ill. Aug. 9, 2012) *reconsid. denied by* 2013 WL 143379 (C.D. Ill. Jan. 11, 2013). In *Design Ideas*, the district court granted the defendant's motion for summary judgment, finding that the "consistent, well-reasoned" decision of the Copyright Office as to copyrightability of a sail design was entitled to deference. *Id.* at *7.

Other courts have similarly found that rejections by the Copyright Office are entitled to deference. *See Boyds Collection, Ltd. v. Bearington Collection, Inc.*, 360 F. Supp. 2d 655, 661 (M.D. Pa. 2005) (contrary "interpretation followed by the Copyright Office, as the agency responsible for administering federal copyright law, is entitled to respect as persuasive authority"); *see also Natkin v. Winfrey*, 111 F. Supp. 2d 1003, 1010 (N.D. Ill. 2000) ("The Copyright Office['s] . . . opinion as to the scope of the Copyright Act is afforded great deference."); *Norris Indus., Inc. v. Int'l Tel. & Tel. Corp.*, 696 F.2d 918, 922 (11th Cir. 1983)

(district court properly gave some deference to the expertise of the Register in its decision); *Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1231 (9th Cir. 1998) (the reasonable and consistent position of the Register is entitled to deference); *Morris v. Business Concepts, Inc.*, 283 F.3d 502, 506-07 (2d Cir. 2002) (Copyright Office's interpretation of a copyright issue may be persuasive given its expertise, broader investigations and information available to the agency). The Supreme Court has also broadly stated that "an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires.") *U.S. v. Mead Corp.*, 533 U.S. 218, 234-35 (2001) (internal citation omitted).

The Court did not have the benefit of and could not weigh the Copyright Office's rejection of GW's shoulder pad design when it rendered its Order, and the recent discovery and production of this significant evidence merits the Court's reconsideration. *United Air Lines*, 916 F. Supp. at 795. The fact that GW withheld evidence of the Copyright Office's initial rejection in disregard for the rules of discovery and its duty of candor to this Court—and that GW then denied its existence to CHS's counsel—only amplifies the grounds for reconsideration. *See id.*; *Frazier v. Layne Christensen Co.*, 380 F. Supp. 2d 989, 995 (W.D. Wis. 2005), *abrogated on other grounds by Frazier v. Layne Christensen Co.*, No. 04-C-0315-C, 2005 WL 2453098 (W.D. Wis. Sept. 29, 2005) (plaintiff's motion for reconsideration granted and earlier summary judgment order vacated when the defendant did not provide complete and timely disclosure of documents requested by plaintiffs); *Jones v. Nat'l Council of Young Men's Christian Ass'ns of the U.S.*, 2011 WL 3273868, at *3 (N.D. Ill. July 28, 2011) ("[U]nder Federal Rule of Civil Procedure 26(e), each party has a duty to timely amend and/or supplement their responses to

discovery if they obtain additional information or know that a response was incorrectly made.");

*Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1067 (7th Cir. 2000) ("a lawyer's duty of candor to the court must always prevail in any conflict with the duty of zealous advocacy") (internal citation omitted).

After careful consideration, the Copyright Office consistently determined that the "sculpture portion" of GW's Assault Squad Shoulder Pads was "too minimal" and therefore "lack[ed] the authorship necessary to support a copyright claim." Cooper Decl. Ex. 5 at 3, Ex. 7 at GW0016843. The Copyright Office does not appear to have taken its duty lightly or made this determination rashly. It involved multiple levels of review over the course of six months and apparently included substantial back-and-forth between the Copyright Office and counsel for GW. Cooper Decl. Exs. 5, 6, 7. And the Copyright Office had the benefit of the deposit materials submitted in connection with the application, whereas GW did not submit any sculptures into the record for the Court's examination on its First Phase summary judgment motion. *Id.*

The Court's holding on summary judgment with respect to the shoulder pad products relied exclusively on the purportedly "creative addition" of the "unusually large proportional size." Dkt. 258 at 20.⁵ Because the general size and shape of GW's shoulder pad products are

---

⁵ For product entries 49 and 54-55, the Court acknowledges GW's additional basis for copyright infringement:

> [T]hat entry 49 has rivets and high rims along the edge of the pad nearest the head and that entries 54–55 are unique expressions of a science-fiction shoulder pad that cover the figurine from the start of the shoulder to above the elbow with a large border around the edge.

the same, the Copyright Office's rejection of the "sculpture portion" of GW's Assault Squad Shoulder Pads therefore holds great significance. CHS respectfully requests that the Court take account of this new evidence, reconsider its decision with respect to GW's shoulder pad products, and award CHS its costs associated with obtaining the correspondence withheld by GW.

## V.   CONCLUSION

CHS requests that this Court reconsider its decision with regard to GW's shoulder pad products and find that they do not warrant copyright protection as a matter of law and U.S. Copyright Office policy; grant CHS summary judgment on Count 1 for product entries 4-7, 12-13, 19-22, 46-49, 50-53, 54-62, 64-65, and 97-102; and sanction GW by awarding CHS its costs for its independent investigation to uncover certain improperly withheld evidence.

Dated: March 4, 2013     Respectfully submitted,

/s/ Bryce A. Cooper

Jennifer A. Golinveaux (CA Bar No. 203056)
Dean A. Morehous (CA Bar No. 111841)
K. Joon Oh (CA Bar No. 246142)
Thomas J. Kearney (CA Bar No. 267087)
  WINSTON & STRAWN LLP
  101 California Street
  San Francisco, CA 94111-5802
  Phone: (415) 591-1000
  Fax: (415) 591-1400

---

Dkt. No. 258 at 19. It then notes CHS's argument that "GW's shoulder pad design is merely a common half-hemisphere shape that is not protectable." *Id.* This position echoes the Copyright Office's determination that the "sculpture portion" of the GW shoulder pads are "too minimal" to be afforded protection and "lacks the authorship necessary to support a copyright claim." Cooper Decl. Ex. 5 at 3; Ex. 7 at GW0016843. Indeed, the Copyright Office found that *even the combination* of the "common half-hemisphere shape" with an *additional* element was not protectable. Cooper Decl. Ex. 5 at 7. Therefore, CHS submits that products 49 and 54-55 should be reconsidered together with the shoulder pad products referenced *supra*.

12

jgolinveaux@winston.com
dmorehous@winston.com
koh@winston.com
tkearney@winston.com

Imron T. Aly (IL Bar No. 6269322)
Bryce A. Cooper (IL Bar No. 6296129)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600
Fax: (312) 558-5700
bcooper@winston.com

Julianne M. Hartzell (IL Bar No. 6275093)
Sarah J. Kalemeris (IL Bar No. 6303644)
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive
Willis Tower Suite 6300
Chicago, IL 60606
Phone: (312) 474-6300
Fax: (312) 474-0448
jhartzell@marshallip.com
skalemeris@marshallip.com

**CERTIFICATE OF SERVICE**

    I, Bryce A. Cooper, an attorney, hereby certify that on March 4, 2013, I caused to be filed electronically the foregoing DEFENDANT CHAPTERHOUSE STUDIOS LLC'S SECOND MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                                        ____/s/  Bryce A. Cooper_____