**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED, | ) |
| Plaintiff, | ) |
| | ) Case No. 1:10-cv-08103 |
| v. | ) |
| | ) |
| CHAPTERHOUSE STUDIOS LLC, | ) |
| | ) Judge Matthew F. Kennelly |
| Defendant. | ) |

**DECLARATION OF BRYCE A. COOPER IN SUPPORT OF CHAPTERHOUSE
STUDIOS LLC'S SECOND MOTION FOR RECONSIDERATION
OF SUMMARY JUDGMENT ORDER**

I, Bryce A. Cooper, declare as follows:

1. I am an associate with the law firm of Winston & Strawn LLP. I am a member in good standing of the Bar of this Court. I have personal knowledge of the facts set forth herein and if called to testify could and would do so competently.

2. Attached hereto as **Exhibit 1** is a true and correct copy of Games Workshop Limited's ("GW") Second Revised Copyright Chart ("Second Revised Claim Chart"), which it served on Chapterhouse Studios LLC ("CHS") on August 3, 2012.

3. Attached hereto as **Exhibit 2** is a true and correct copy of CHS's Requests for Production Set Four, which it served on September 9, 2011. At Request No. 37, CHS requested "all correspondence with any government agency or private copyright registration service concerning" each of GW's alleged works-in-suit (which included the "Assault Squad pads," identified in the First Revised Claim Chart)

4. Attached hereto as **Exhibit 3** is a true and correct copy of GW's Response to CHS's Requests for Production Set Four, which it served on October 19, 2011.

1

5. Despite CHS's requests and GW's agreement to produce any correspondence with the Copyright Office regarding any of GW's allegedly infringed works, GW failed to produce any correspondence with the Copyright Office before the close of discovery on March 15, 2012 (Dkt. No. 116).

6. On November 2, 2012 via telephone conference, counsel for CHS, Jennifer A. Golinveaux and myself, met and conferred with counsel for GW, Jonathan Moskin and Jason Keener to address the parties' contemplated motions in limine, in which GW's failure to produce correspondence with the Copyright Office was discussed. Moskin asked CHS to stipulate that GW need not obtain certified copies of its copyright registrations for trial. Golinveaux responded that CHS was reluctant to so stipulate in light of the fact that CHS had yet to receive any of GW's correspondence with the Copyright Office, despite requesting all such documents in discovery. Moskin expressed confusion over why CHS was interested in the correspondence. He also stated that GW only had limited correspondence with the Copyright Office, and described it as "ministerial" and non-substantive. After Golinveaux pointed out that GW previously agreed to produce such correspondence, Moskin agreed that GW would produce the correspondence if it was the subject of a properly-served Request for Production from CHS during discovery.

7. GW did not produce any of its correspondence with the Copyright Office until January 4, 2013, after CHS filed its First Motion for Reconsideration.

8. In late October 2012, noting that certain of GW's new copyright applications were proceeding to registration while others filed at or near the same time were not, CHS decided to perform an independent investigation, at CHS's own expense of $1,039.00, by requesting on an expedited basis two Copyright Office correspondence files. CHS engaged a

2

Washington, D.C. document retrieval service, which requested documents from the Copyright Office on or about November 7, 2012 (CHS had to engage a document retrieval service because Copyright Office files are not available electronically). Attached hereto as **Exhibit 4** is a true and correct copy of the invoice for obtaining the Copyright Office records. Due to the cost of such a request (for documents that should have been produced by GW in the first instance), CHS requested just two files out of the scores of applications GW has submitted. The Copyright Office responded, and CHS received certified copies of the requested files on December 12, 2012, after the Court had entered its first summary judgment order.

9. One request was for the GW work "Assault Squad Shoulder Pads," which is a shoulder pad with the "arrow cross" or "X" design, identified by product entries 46, 47, and 48 in the Second Rev. Claim Chart. Although GW has still not produced the specimens that were submitted with this application, and the specimens are not available as part of the file received by GW, this is a depiction of the Assault Squad Shoulder Pads from entries 46, 47, and 48 in the Second Revised Claim Chart:



10. Attached hereto as **Exhibit 5** is a true and correct certified copy of the "Assault Squad Shoulder Pads" file from the Copyright Office. This file contains several E-mails between GW's lead trial counsel, Jonathan Moskin, and the Copyright Office regarding GW's copyright application for that product. The Copyright Office responded to GW's "Assault Squad Shoulder Pads" copyright application on June 7, 2012—two months before summary judgment motions were filed in this case. In rejecting GW's application, the Copyright Office Registration

3

Specialist referred to the general shape of the shoulder pad, stating, "[W]e cannot register the *sculpture portion* as it is *too minimal*." *Id.* at 3 (emphasis added).

11.  Attached hereto as **Exhibit 6** is a true and correct copy of correspondence between Games Workshop Limited ("GW") and the U.S. Copyright Office that GW produced on January 4, 2013, Bates labeled GW0011427-30.

12.  Attached hereto as **Exhibit 7** is a true and correct copy of the January 4, 2013 correspondence between the U.S. Copyright Office and GW that GW produced on January 31, 2013, Bates labeled GW0016843-45.

13.  On January 7, 2013, the parties appeared before the Court on CHS's First Reconsideration Motion. The Court raised concerns about whether the correspondence at issue was a final refusal to register the copyright in the sculptural portion of the shoulder pad, and allowed CHS two days to file a reply to address this issue or to withdraw its First Reconsideration Motion.

14.  The parties again appeared before the Court on CHS's First Motion for Reconsideration on January 14, 2013, at which time GW's counsel Mr. Moskin represented that all correspondence with the Copyright Office had been produced.

15.  Although CHS believed that the Copyright Office Registration Specialist's repeated rejection of the sculptural element of the Assault Squad Shoulder Pads was highly relevant to the Court's summary judgment ruling—and wrongfully withheld from consideration by GW—in light of the Court's concerns about relying on potentially non-final rejections by the Copyright Office, CHS filed a Motion to Withdraw Motion for Reconsideration Pending Final Determination on Registration or Abandonment (Dkt. 272).

5

16. On January 31, 2013, GW submitted a "Notice of Filing" to inform the Court that it was responding to the January 4, 2013 Copyright Office refusal letter.

17. Although Chapterhouse's counsel requested that it immediately be provided with the Copyright Office refusal letter once GW's attorney received it, GW's counsel refused to provide it until, as he put it, GW decided how to respond, and it was withheld from Chapterhouse's counsel until January 31, 2013, the same day GW submitted its Notice of Filing. Attached hereto as **Exhibit 8** is a true and correct copy email correspondence from Mr. Moskin dated January 16, 2013 stating that he would produce the refusal "after we have had a chance to review it with our client and decide on how to respond."

I declare under the penalty of perjury that the foregoing is true and accurate.

Dated: March 4, 2013                    By: /s Bryce A. Cooper

## **CERTIFICATE OF SERVICE**

I, Bryce A. Cooper, an attorney, hereby certify that on March 4, 2013, I caused to be filed electronically the foregoing DECLARATION OF BRYCE A. COOPER IN SUPPORT OF CHAPTERHOUSE STUDIOS LLC'S SECOND MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

/s/ Bryce A. Cooper