**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC, | ) | |
| | ) | Judge Matthew F. Kennelly |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT CHAPTERHOUSE STUDIOS LLC'S
MOTION FOR SUMMARY JUDGMENT**

Jennifer A. Golinveaux (CA Bar No. 203056)
Dean A. Morehous (CA Bar No. 111841)
K. Joon Oh (CA Bar No. 246142)
Thomas J. Kearney (CA Bar No. 267087)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Phone: (415) 591-1000
Fax: (415) 591-1400
jCooper@winston.com
dmorehous@winston.com
koh@winston.com
tkearney@winston.com

Imron T. Aly (IL Bar No. 6269322)
Bryce A. Cooper (IL Bar No. 6296129)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600
Fax: (312) 558-5700
bcooper@winston.com

Julianne M. Hartzell (IL Bar No. 6275093)
Sarah J. Kalemeris (IL Bar No. 6303644)
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive
Willis Tower Suite 6300
Chicago, IL 60606
Phone: (312) 474-6300
Fax: (312) 474-0448
jhartzell@marshallip.com
skalemeris@marshallip.com

## I.    INTRODUCTION

Defendant Chapterhouse Studios LLC ("CHS") brings this limited motion for summary judgment on Count I of Plaintiff Games Workshop Limited's ("GW") complaint for copyright infringement of its shoulder pad works identified at product entries 146, 147, 148, 151, 152, 155, 156, 157, and 163 in GW's Claim Chart for Newly Accused Products (the "New Product Claim Chart," Cooper Decl. Ex. 1).  SUF 5-6.  GW claims that these CHS products infringe because they "us[e] the oversized dimensions of Games Workshop's iconic shoulder pad design."  SUF 6.  The purportedly copyrightable element of these shoulder pads is limited to the "[s]ize and shape of [the] pad" and "[n]ot [the] surface decoration."[1]  *Id.*

Two recent pieces of compelling evidence—produced after GW added the Newly Accused Products—support CHS's motion: (1) documents showing that the United States Copyright Office unambiguously rejected copyright registration for this very design on the grounds that it is "too minimal" to be afforded protection and "lacks the authorship necessary to support a copyright claim," and (2) expert testimony—which GW has failed to rebut—consistent with the Copyright Office's determination that the use of oversized and disproportionately large shoulder pads is not a creative addition made by GW, because numerous works of science fiction predating GW's shoulder pad design show the same thing.  CHS requests summary judgment on Count I for the above-referenced shoulder pad products.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Procedural Background

The Court is well versed with the procedural background of the first phase of litigation in this case (the "First Phase") related to product entries 1-123 in GW's second revised copyright

---

[1]    The CHS shoulder pad at product entry 156 also allegedly infringes the "use of arrow and trim" in addition to the "shape of pad."  SUF 7.  CHS addresses why this additional design element is also unprotectable below.

claim chart ("Second Revised Claim Chart," Cooper Decl. Ex. 2). *See* Dkt. 208, CHS First Phase MSJ, at 1-3. GW amended its complaint on December 10, 2012 to add a number of new claims identified at product entries 124-163 in GW's New Product Claim Chart. Dkt. 261. CHS answered GW's amended complaint on December 24, 2012. Dkt. 266. Limited discovery was taken related to the newly added claims (the "Second Phase") and was completed on or about February 25, 2013. Dkt. 265.

CHS moved for summary judgment on all of GW's copyright claims after the First Phase of discovery. Dkt. 208. Relevant to the instant motion, CHS argued in support of its First Phase summary judgment motion that the "shape/design of [GW's] underlying shoulder pad" was too minimal to be afforded copyright protection. *Id.* at 10. CHS maintained—and the Court agreed—that "common geometric shapes cannot be copyrighted." *Id.* (citing *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 303 (7th Cir. 2011); Dkt. 258 at 20 (citing same). CHS further relied on the Copyright Compendium II § 503.02(a)-(b) ("Copyright Compendium II") in arguing that the Copyright Office refuses to base copyright registrations on "standard ornamentation" such as the "common geometric figures or shapes" presented by the "half-hemisphere shape of a traditional bandshell" found in GW shoulder pads. Dkt. 208 at 10-11.

However, the Court found upon independent examination that "[t]he unusually large proportional size of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," and concluded that GW was "entitled to copyright protection as to the design of its shoulder pads." Dkt. 258 at 20. Based on this finding, the Court denied CHS summary judgment with respect to

entries 4-7, 12-13, 19-20, 46-48, 50-52, 56-62, 64-65, and 101-02 on GW's Second Revised Claim Chart. *Id.* at 20-21.[2]

**B. The Size and Shape of GW's Shoulder Pads Lacks the Minimal Degree of Creativity Required for Copyright Protection.**

CHS engaged Dr. Carl Grindley to examine GW's new claims and offer his expert opinion on whether there were substantial similarities between the GW and CHS products and whether—to the extent any similarities existed—any shared design elements originated in pre-existing historical, medieval, cinematic, and/or science fiction sources.[3] SUF 8. Dr. Grindley is a tenured associate professor of English at Eugenio Maria de Hostos Community College and consortial professor at The City University of New York. SUF 10. His academic training has included extensive research and publication on popular culture's appropriation of Medieval tropes and he regularly teaches classes on science fiction literature and film. *Id.* Thus, his analysis included historical military as well as contemporary science fiction and cinematic sources in evaluating the alleged creativity that went into producing GW's shoulder pads.

Dr. Grindley reported that the general shape of the GW Space Marine shoulder pad has been around for hundreds of years. SUF 11. "Armorers long ago identified what is roughly a quarter of a sphere as being one of the best ways to protect and cover the shoulders, and this shape can be seen in pauldrons dating back to the 15th century." *Id.* Dr. Grindley pointed out one such example of a disproportionately large and oversized medieval armor in his report:

---

[2]     Concurrently herewith CHS files its Second Motion for Reconsideration of Summary Judgment Order as to these products.

[3]     In collecting works that "pre-existed" the GW New Allegedly Infringed Works at issue, Dr. Grindley used the release date of each product given by GW in its New Product Claim Chart. SUF 9. In many cases, the reference materials he collected predated *any* GW product for the Warhammer 40k universe. *Id.*



SUF 11-12. He further discussed this example during deposition, stating "It is massively oversized to protect the participant from jousting." Cooper Decl. Ex. 4, Grindley Dep. Tr. at 225:24-226:2. When questioned whether the torso in this medieval armor was "dwarfed" by the shoulder pads, Dr. Grindley responded, "Yes, it is . . . This is a unit. This is a single thing. So it indeed blocks the chest through its mere construction." *Id.* at 226:17-21.

Dr. Grindley continued his description of pre-existing works with shoulder pads of unusually large proportional size:

> The use of disproportionately large shoulder pads [] predates both the Games Workshop products listed as New Allegedly Infringed Works as well as *any* Games Workshop Space Marine product with shoulder pads. For instance, in the 1979 movie *Alien*, characters wore armored space suits with shoulder pads nearly the size of the actors' heads in order to show some level of durability:



**Nostromo Environmental Armor, Alien (1979)**

4

SUF 13-14.  Dr. Grindley further reported that:

> Various comic book characters published in the 1980s, before the creation of Games Workshop's New Allegedly Infringed Work shoulder pad products, were often styled after medieval knights with large shoulder pads. For example, the Marvel Comic book character Michael Devlin wore large pauldrons as part of his costume, which is very similar to the shape and proportions of the shoulder pad on Games Workshop's Space Marine figures.

SUF 15-16.  Dr. Grindley provided a comparison of the comic book Michael Devlin character to a Games Workshop Space Marine to highlight similarities:




Michael Devlin, Marvel Comics (1988)    Games Workshop Space Marine, Product Entry #126

SUF 16.  Dr. Grindley also discussed how the work of Robert Heinlein provided an abundant source of pre-existing references for the GW Space Marine, including with respect to oversized and disproportionately large shoulder pads:

5





Robert Heinlein (1980)                    Robert Heinlein (1987)

SUF 17. Dr. Grindley further provided several examples of non-GW futuristic miniature soldiers that were designed with oversized, disproportionately large shoulder pads:





SM5 Shock Trooper with Force Axe,        Attila III Cuirassier, Mutant Chronicle
Asgard Miniatures (1983)                 Heartbreaker Miniatures (1994)

SUF 18. Notably, the Asgard Miniature was created in 1983, before *any* GW Space Marine. *Id.*

Dr. Grindley acknowledged that none of the shoulder pads in these pre-existing works are absolutely *identical* to GW's shoulder pad product, but there is no requirement of such identity.

Cooper Decl. Ex. 4, Grindley Dep. Tr. 193:7-9, 215:7-9 ("I have been unable to find an absolutely identical element-by-element copy of the Games Workshop figure."). These pre-existing works do, Dr. Grindley testified, demonstrate that the design element of unusually large proportional size is not new for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. SUF 19; *compare*, *e.g.*, Cooper Decl. Ex. 8, CHS_EXPERT00000010-11 *with* Cooper Decl. Ex. 4, Grindley Dep. Tr. at 193:18-23 (Q: So other than the existence of a shoulder pad -- A: Of an oversized shoulder pad. Q: You believe that's an oversized shoulder pad [referring to the Starship Troopers images above]? A: Yes.).[4] In fact, Dr. Grindley concluded that the presence of oversized, disproportionately large shoulder pads is common to science fiction tropes. SUF 20. GW did not submit a rebuttal expert to Dr. Grindley's report. SUF 21.

### C. The Copyright Office Has Issued a Formal Refusal to Extend Copyright Protection to the Size and Shape of GW's Shoulder Pad Products.

Unbeknownst to CHS and the Court during summary judgment briefing after the First Phase of litigation, a United States Copyright Office Registration Specialist had also determined that the size and shape of GW's shoulder pads lacked the minimal creativity necessary for copyright protection. Between February 28, 2012 and March 2, 2012, GW filed 73 new U.S. copyright applications for works-in-suit. Dkt. 261, Ex. A. One application attempted to cover the GW work "Assault Squad Shoulder Pads," which is a shoulder pad with the "arrow cross" or

---

[4]     Additionally, *compare* Cooper Decl. Ex. 11, CHS_EXPERT00000029 *with* Cooper Decl. Ex. 4, Grindley Dep Tr. 197:3-12 (Q: This is another depiction of a person inside a powered suit of armor? A: Yes. Q: That's different than Games Workshop's? A: Except for this one, also you get a more massive scale for the shoulder armor. Q: A different design than Games Workshop's shoulder pad, correct? A: They are different in design but not in degree.); *compare* Cooper Decl. Ex. 12, CHS_EXPERT00001731 *with* Cooper Decl. Ex. 4, Grindley Dep Tr. 203:14-16 ("It is, however, hemispherical, oversized, and as far as I could tell would be nonfunctional.").

"X" design, identified by product entries 46, 47, and 48 in the Second Revised Claim Chart. *Id.*; SUF 24.

The Copyright Office Registration Specialist flatly refused the application for the size and shape of the shoulder pad design on June 7, 2012, stating "we cannot register the sculpture portion as it is too minimal." SUF 25. Although Mr. Moskin then "propose[d] speaking with" the Specialist about the sculptural elements, she responded and reiterated unequivocally, "The email stated that the 'sculpture' was to [sic] minimal (it is basically an "X") and could not be registered." *Id.* GW offered to send the Copyright Office this Court's prior Order, which had been rendered without knowledge of the Copyright Office's action. *Id.* But the Copyright Office made its determination crystal clear, now for a third time, on December 11, 2012: "this particular shoulder pad submitted is not copyrightable. it [sic] is simply circular, with an x or plus sign on it." *Id.*

On January 4, 2013, a Copyright Office Supervisory Registration Specialist affirmed by formal rejection letter that the Copyright Office could not register the Assault Squad Shoulder Pads because it "lack[ed] the authorship necessary to support a copyright claim." SUF 26.[5] In denying GW's application, the Copyright Office noted that a copyrightable work "must possess[] at least a minimal degree of creativity" (citing *Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340 (1991)). SUF 27. The Copyright Office wrote, "After careful consideration, we have determined that this particular work will not support a claim to copyright for 2-Dimensional artwork or sculpture under the standards described above." *Id.* This determination appears to

---

[5]     At the January 14, 2013 hearing on CHS's First Motion for Reconsideration, GW's counsel Mr. Moskin represented that all correspondence with the Copyright Office had been produced. SUF 28. But the Refusal Letter had been sent ten days earlier, and CHS had not been provided the letter. *Id.* Moreover, although CHS's counsel requested that it immediately be provided with the refusal letter once GW's attorney received it, GW's counsel refused to provide it until, as he put it, GW "decide[d] on how to respond." SUF 29. Ultimately, CHS counsel did not receive the letter until January 31, 2013 when GW submitted its Notice of Filing. *Id.*

have included consideration of "deposit materials." *Id.* The Copyright Office concluded, "no response is necessary," indicating the Copyright Office's determination is final. *Id.*

On January 31, 2013, GW submitted a "Notice of Filing" (Dkt. 275) to inform the Court that it was responding to the Copyright Office rejection. SUF 30. GW's January 31 Letter to the Copyright Office stated that, although aware of its administrative remedies to appeal the refusal by the Copyright Office Supervisory Registration Specialist, it had decided not to pursue the matter further with the Copyright Office, believing it "more efficient to simply allow the Court to decide the matter." *Id.*; Dkt. 275, Ex. 1 at GW0016846-47. GW was obviously concerned about hearing—for what would have been the fifth time—that the Copyright Office did not view its shoulder pads as copyrightable. Because GW has foregone its administrative right to appeal the refusal with the Copyright Office, the Copyright Office's Refusal Letter should be deemed final. 37 C.F.R. § 202.5; SUF 32.

## III. CHS IS ENTITLED TO SUMMARY JUDGMENT ON GW'S COPYRIGHT CLAIMS FOR GW SHOULDER PAD PRODUCTS

Summary judgment is appropriate where the pleadings and evidence presented, viewed in a light favorable to the non-moving party, show no genuine issue of any material facts, such that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is "the appropriate route [in a copyright case] where the court 'concludes either that any similarity between the works concerns only noncopyrightable elements or that no reasonable jury could find the works substantially similar.'" *Gentieu v. Tony Stone Images/Chicago, Inc.*, 255 F. Supp. 2d 838, 849 (N.D. Ill. 2003) (internal citations omitted). The burden of proof lies first on the moving party to establish "the lack of a genuine issue of material fact." *Id.* at 844. The burden then shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.

56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). It must provide enough evidence for the court to determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.* at 252.

### A. GW Is Not Entitled to Copyright Protection for the Underlying Shape and Size of Its Shoulder Pad Products.

To prove copyright infringement, GW must show that CHS's products are substantially similar to *protectable* elements of GW's works when the works are compared side by side. *Bryant v. Gordon*, 483 F. Supp. 2d 605, 617 (N.D. Ill. 2007). Because only *protected* expression is relevant to the determination of substantial similarity, *unprotectable* elements cannot form the basis for claims of copyright infringement. Thus "any comparison of [works] must be preceded by an analysis of the scope of [Plaintiff's] copyrights to identify what elements are included in [its] protected expression." *Gentieu*, 255 F. Supp. 2d at 848. "[The Court] must determine the extent of [plaintiff's] copyrights" by "begin[ning] with the allegedly aggrieved work in one hand and nothing in the other hand and ask[ing] 'Is it copyrightable? And if so, in what respect? To what extent?' Those limiting questions define whether a comparison need to be made at all and, if so, also defines the universe for such a comparison." *Francorp, Inc. v. Siebert*, 210 F. Supp. 2d 961, 965 (N.D. Ill. 2001) (internal quotations omitted).

"[C]ommon geometric shapes cannot be copyrighted." *Kelley*, 635 F.3d at 303 (citing Copyright Compendium II § 503.02(a)-(b)). The U.S. Copyright Office refuses to base copyright registration on simple, basic three-dimensional shapes, such as the "size and shape" of GW's purportedly "iconic" shoulder pad, or other "common geometric figures or shapes in three dimensional form, such as the cone, cube, or sphere . . . [T]he creative expression capable of supporting copyright must consist of something more than the mere bringing together of two or

three standard forms or shapes with minor linear or spatial variations." Copyright Compendium II § 503.02(a)-(b).

In the case of GW's shoulder pads, GW has argued—and the Court agreed before additional evidence was presented in the Second Phase—that it is the oversized, disproportionately large nature of its shoulder pad design that entitles it to copyright protection for those products. Specifically, the Court held, after reviewing testimony from CHS's expert on military history in the First Phase, that this design element is creative when compared to "the common shoulder pads sometimes worn by real-life soldiers in battle." Dkt. 258 at 20.

However, Dr. Grindley's research, expertise, and analysis confirms that, in the science fiction world, there is nothing original about the addition of the oversized, disproportionately large design element to the common shoulder pad, because it has been expressed numerous times in texts and cinema. Specifically, he established that "[t]he use of disproportionately large shoulder pads [] predates both the Games Workshop products listed as New Allegedly Infringed Works as well as *any* Games Workshop Space Marine product with shoulder pads." SUF 13. For instance, one iconic, pre-existing science fiction work fully displaying such disproportionately large shoulder pads is the 1979 movie *Alien*, where "characters wore armored space suits with shoulder pads nearly the size of the actors' heads." SUF 14. Notably, GW has presented no expert rebuttal to Dr. Grindley's testimony. SUF 21.

GW is anxious to point out that it has not made "all the same" design choices as any preexisting work in creating its products, including the shoulder pads. But of course, each and every slight variation on the expression of the same idea is not entitled to copyright protection. As Dr. Grindley pointed out, "[O]f course, where would I go from there? . . . Do I have to worry about whether boots have nine holes for shoelaces or 12?" Cooper Decl. Ex. 4, Grindley Dep.

Tr. at 169:4-8. For instance, GW would not be entitled to copyright protection simply because its oversized, disproportionately large shoulder pads are a slight 0.01 mm longer than a previous science fiction work's oversized, disproportionately large shoulder pads. Once the design element of disproportional size is found to be uncreative, the only elements of design that remain in GW's underlying shoulder pad products are common geometric shapes, which are unprotectable.

**B. GW Is Not Entitled to Copyright Protection for Shoulder Pad Product 156.**

GW alleges it is additionally entitled to copyright protection for its shoulder pad product at entry 156 for its "use of arrow and trim." SUF 7; Cooper Decl. Ex. 1. However, the U.S. Copyright Office has specifically refused to base copyright registration on "*a standard symbol such as an arrow* or a five-pointed star . . . ." Copyright Compendium II § 503.02(a)-(b) (emphasis added). There is nothing about the arrow on GW's product 156 that is remotely copyrightable. In fact, to the extent GW is claiming that CHS has copied the dimensions of its (purportedly original) arrow, a comparison of the two products reveals this is not the case. The width of the arrow base on CHS's product is clearly wider than the picture of GW's product and narrower than the drawing done by Neil Hodgson and Darius Hinks. Cooper Decl. Ex. 1 at product entry 156. Likewise, the width of the top arrow section is larger on CHS's product. *Id.* But quibbling about dimensions aside, this is just an arrow, which is uncopyrightable.

**C. The U.S. Copyright Office's Determination that GW's Shoulder Pads Are "Too Minimal" to Be Afforded Copyright Protection Merits Consideration**

The Copyright Office's determination is at least persuasive authority that GW's shoulder pads are not protectable. If a copyright application is refused, "the interpretation followed by the Copyright Office, as the agency responsible for administering federal copyright law, is entitled to respect as persuasive authority." *Design Ideas, Ltd. v. Yankee Candle Co., Inc.*, 2012 WL

3267783, at *6 (C.D. Ill. Aug. 9, 2012) *reconsid. denied by* 2013 WL 143379 (C.D. Ill. Jan. 11, 2013). In *Design Ideas*, the district court granted the defendant's motion for summary judgment, finding that the "consistent, well-reasoned" decision of the Copyright Office as to copyrightability of a sail design was entitled to deference. *Id.* at *6-7.

Other courts have similarly found that decisions by the Copyright Office are entitled to deference. *See Boyds Collection, Ltd. v. Bearington Collection, Inc*., 360 F. Supp. 2d 655, 661 (M.D. Pa. 2005) (contrary "interpretation followed by the Copyright Office, as the agency responsible for administering federal copyright law, is entitled to respect as persuasive authority"); *see also Natkin v. Winfrey*, 111 F. Supp. 2d 1003, 1010 (N.D. Ill. 2000) ("The Copyright Office['s] . . . opinion as to the scope of the Copyright Act is afforded great deference."); *Norris Indus., Inc. v. Int'l Tel. & Tel. Corp.*, 696 F.2d 918, 922 (11th Cir. 1983) (district court properly gave some deference to the expertise of the Register in its decision); *Batjac Prods. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1231 (9th Cir. 1998) (the reasonable and consistent position of the Register is entitled to deference); *Morris v. Business Concepts, Inc.*, 283 F.3d 502, 506-07 (2d Cir. 2002) (Copyright Office's interpretation of a copyright issue may be persuasive given its expertise, broader investigations and information available to the agency). The Supreme Court has also broadly stated that "an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." *U.S. v. Mead Corp.*, 533 U.S. 218, 234-35 (2001) (internal citation omitted).

After careful consideration, the Copyright Office consistently determined that the "sculpture portion" of GW's Assault Squad Shoulder Pads was "too minimal" and therefore

"lack[ed] the authorship necessary to support a copyright claim." SUF 25-27. The Copyright Office did not take its duty lightly or make this determination rashly. It involved multiple levels of review over the course of six months and apparently included substantial back-and-forth (both email and telephone conversations) between the Copyright Office and counsel for GW. *Id.* The Copyright Office also had the benefit of reviewing the deposit materials submitted with the application, whereas GW did not submit any sculptures into the record for the Court's examination on its First Phase summary judgment motion. SUF 27. CHS respectfully requests that the Court consider and give deference to the Copyright Office's careful and reasoned decision here.

## IV.    CONCLUSION

CHS respectfully requests that the Court find that GW's shoulder pad products do not warrant copyright protection for their underlying size and shape as a matter of law and U.S. Copyright Office policy and grant CHS summary judgment on Count 1 for products identified in entries 146, 147, 148, 151, 152, 155, 156, 157, and 163 of the New Product Claim Chart.

Dated: March 4, 2013                    Respectfully submitted,

/s/ Bryce A. Cooper

Jennifer A. Golinveaux (CA Bar No. 203056)
Dean A. Morehous (CA Bar No. 111841)
K. Joon Oh (CA Bar No. 246142)
Thomas J. Kearney (CA Bar No. 267087)
  WINSTON & STRAWN LLP
  101 California Street
  San Francisco, CA 94111-5802
  Phone: (415) 591-1000
  Fax: (415) 591-1400

jgolinveaux@winston.com
dmorehous@winston.com
koh@winston.com
tkearney@winston.com

Imron T. Aly (IL Bar No. 6269322)
Bryce A. Cooper (IL Bar No. 6296129)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600
Fax: (312) 558-5700
bcooper@winston.com

Julianne M. Hartzell (IL Bar No. 6275093)
Sarah J. Kalemeris (IL Bar No. 6303644)
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive
Willis Tower Suite 6300
Chicago, IL 60606
Phone: (312) 474-6300
Fax: (312) 474-0448
jhartzell@marshallip.com
skalemeris@marshallip.com

## **CERTIFICATE OF SERVICE**

       I, Bryce A. Cooper, an attorney, hereby certify that on March 4, 2013, I caused to be filed electronically the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHAPTERHOUSE STUDIOS LLC'S MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.


                 _____/s/  Bryce A. Cooper_____