**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>        Plaintiff,<br><br>        v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON<br>PAULSON d/b/a PAULSON GAMES<br><br>        Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly<br>Hon. Jeffrey T. Gilbert |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT IN PART

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-3229
Email: jmoskin@foley.com

Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: jkeener@foley.com

*Attorneys for Plaintiff Games Workshop Limited*

**TABLE OF CONTENTS**

I.      Preliminary Statement ........................................................................................... 1

II.     Argument ............................................................................................................... 1

        1.      Defendant Lacks Standing To Challenge Games Workshop's Ownership
                of the Copyrights At Issue. ...................................................................... 1

        2.      Chapterhouse Admits Games Workshop Has Made Prior Use In
                Commerce Of Virtually All of The Trademarks At Issue In The Case. ................. 4

        3.      23 Of Defendant's 24 Affirmative Defenses Should Be Dismissed ...................... 7

                a.      Chapterhouse's Claim of Fraud on the Copyright or Trademark
                        Offices Must Be Dismissed ....................................................... 8

                b.      Chapterhouse's Defense of Copyright Fair Use Must Be Dismissed ....... 12

                c.      Chapterhouse's Defense of Preemption Should Be Dismissed ............... 18

                d.      Chapterhouse's Remaining Affirmative Defenses Should Be
                        Dismissed ................................................................................ 19

        CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

CASES

*Applied Med. Res. Corp. v. U.S. Surgical Corp.*,
147 F.3d 1374 (Fed. Cir. 1998)...........................................................................11

*Automated Solutions Corp. v. Paragon Data Systems, Inc.*,
No. 1:05 CV 1519, 2008 U.S. Dist. LEXIS 45914 (N.D.Oh. June 11, 2008) ..........................9

*Berry v. Chicago Transit Auth.*,
618 F.3d 688 (7th Cir. 2010) ...............................................................................1

*Billy-Bob Teeth, Inc. v. Novelty, Inc.*,
329 F.3d 586 (7th Cir. 2003) .............................................................................2-4

*Blue Cross and Blue Shield of N.J. Inc. v. Philip Morris, Inc.*,
141 F. Supp. 2d 320 (E.D.N.Y. 2001) .................................................................11

*Boyds Collection, Ltd. v. Bearington Collection, Inc.*,
360 F. Supp. 2d 655 (M.D. Pa. 2005) .................................................................10

*Campbell v. Acuff-Rose Music, Inc.*,
*supra*, 510 U.S. 569 (1994)...................................................................14, 15, 17

*Carmichael v. Prime*,
2003 U.S. Dist. LEXIS 6444 (S.D. Ind. 2003) ....................................................10

*Chicago Bd. of Educ. v. Substance, Inc.*,
354 F.3d 624 (7th Cir. 2003) .........................................................................14, 16

*Christensen v. Harris County*,
529 U.S. 576 (2000)............................................................................................10

*D. C. Comics, Inc. v. Powers*,
465 F. Supp 843 (S.D.N.Y. 1978) .........................................................................5

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*,
109 F.3d 1394 (9th Cir. 1997) ............................................................................14

*Gaia Techs., Inc. v. Reconversion Techs., Inc.*,
93 F.3d 774 (Fed. Cir. 1996)................................................................................4

*Gryl ex rel. Shire Pharms. Grp. v. Shire Pharms Grp. Plc*,
298 F.3d 136 (2nd Cir. 2002)..............................................................................11

4828-7770-0882.2

*Hickey v. Chicago Truck Drivers, Helpers and Warehouse Workers Union*,
   980 F.2d 465 (7th Cir. 1992) ................................................................11

*Home Design Services, Inc. v. David Weekley Homes, LLC*,
   548 F.Supp.2d 1306 (M.D.Fla. 2008) ....................................................9

*In re Bose Corp.*,
   580 F.3d 1240 (Fed. Cir. 2009).......................................................... 9-10

*Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.*,
   70 F.3d 96 (11th Cir. 1995) ...................................................................2

*JCW Investments, Inc. v. Novelty Inc.*,
   289 F. Supp. 2d 1023 (N.D. Ill. 2003), *aff'd*, 482 F.3d 910 (7th Cir. 2007) ............................1

*Lennon v. Seaman*,
   84 F. Supp. 2d 522 (S.D.N.Y. 2000)..................................................8, 12

*Malibu Textiles, Inc. v. Carol Anderson, Inc.*,
   No. 07 CV 4780, 2008 U.S. Dist. LEXIS 51783 (S.D.N.Y. July 8, 2008)....................2, 8, 11

*MCA, Inc. v. Wilson*,
   677 F.2d 180 (2d Cir. 1981)................................................................15

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*,
   684 F.2d 8221 (11th Cir. 1982) .............................................................9

*Processed Plastic Co. v. Warner Commns, Inc.*,
   675 F.2d 852 (7th Cir. 1982) ................................................................5

*Rogers v. Koons*,
   960 F.2d 301 (2d Cir. 1992)................................................14-15, 17-18

*Sony Corp. of America v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984)......................................................................15, 18

*Sunham Home Fashions LLC v. Pem-America, Inc.*,
   No. 02 CV 6284, 2002 U.S. Dist. LEXIS 24185 (S.D.N.Y. Dec. 17, 2002) ........................2, 9

*Swearnigen-El v. Cook Cnty. Sheriff's Dep't*,
   602 F.3d 852 (7th Cir. 2010) ................................................................1

*Thornton v. J Jargon Co.*,
   No. 8:06 CV 1640, 580 F. Supp. 2d 1261, 2008 U.S. Dist. LEXIS 52396 (M.D.Fla.
   July 8, 2008)....................................................................................9

4828-7770-0882.2

*Triple Tee Golf, Inc. v. Nike, Inc.*,
  2007 WL 4260489 (N.D. Tex. Aug. 24, 2007), *aff'd on appeal*, 281 Fed.Appx. 368
  (5th Cir. 2008)............................................................................................................4

*Warner Bros. Entertainment Inc. v. RDR Books*,
  575 F. Supp. 2d 513 (S.D.N.Y. 2008).........................................................*Passim*

*Warner Bros., Inc. v. Gay Toys, Inc.*,
  658 F.2d 76 (2d Cir. 1981)........................................................................................5

## STATUTES, RULES & REGULATIONS

17 U.S.C. § 107.......................................................................................................13, 15

17 U.S.C. § 410(c) ........................................................................................................11

Fed.R.Civ.P. Rules 9(b) .................................................................................................8

Fed.R.Civ.P. Rules 9(b), 12 and 56 .............................................................................10

Federal Rule of Civil Procedure 5(b)(2)(D)..................................................................21

## OTHER AUTHORITIES

2 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 31:84 (2002) ..........10

Plaintiff Games Workshop Limited ("Games Workshop"), requests that the Court grant summary judgment in part against defendant Chapterhouse Studios LLC ("Chapterhouse").

## I.     Preliminary Statement

As set forth below, Chapterhouse has raised various defenses to the present action that are not supported by law, by its pleadings, or by its largely silent responses to discovery.  As a result, these defenses should be dismissed.  Because the facts relevant to the case itself have already been briefed at length, they are only summarized below where necessary.

## II.     Argument

Summary judgment is appropriate when "the admissible evidence, construed in favor of the non-movant, reveals no genuine issue as to any material facts and establishes that the movant is entitled to judgment as a matter of law." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 690–91 (7th Cir. 2010).  *JCW Investments, Inc. v. Novelty Inc.*, 289 F. Supp. 2d 1023, 1031 (N.D. Ill. 2003), *aff'd*, 482 F.3d 910 (7th Cir. 2007).  A genuine issue of material fact exists if there is sufficient evidence to allow a reasonable jury to find in favor of the non-movant. *Id.*; *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010).

### 1.     Defendant Lacks Standing To Challenge Games Workshop's Ownership of the Copyrights At Issue.

The Court's November 27, 2012 decision previously resolved most but not all of the potential issues regarding ownership of Games Workshop's intellectual property, finding a lingering issue as to only one freelance author, Adrian Smith. (Mem.Dec. at 6-15.)  However, the Court was not asked to address the related question whether Chapterhouse has standing to challenge ownership of any of the works where the authors themselves have never done so.

1

In *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586 (7th Cir. 2003), the Seventh Circuit confirmed that where, as here, there is no dispute or disagreement between an original copyright owner and the transferee about the status of the copyright, "it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) [of the Copyright Act] to avoid suit for copyright infringement". *Id*. at 592, quoting *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc*., 70 F.3d 96, 99 (11th Cir. 1995). In *Billy-Bob Teeth*, the creator of the sculptural works at issue executed a *nunc pro tunc* assignment of his rights in the design well after commencement of suit – indeed during the trial of the case itself - which was six years after he created the design. The Seventh Circuit refused to allow defendant to challenge ownership. *See also Malibu Textiles, Inc. v. Carol Anderson, Inc.*, No. 07 CV 4780, 2008 U.S. Dist. LEXIS 51783, at *29 (S.D.N.Y. July 8, 2008) ("Courts have repeatedly held that where a putative transferor and transferee of a copyright agree that the transfer was valid, an alleged infringer may not use the writing requirement as a sword to avoid liability."); *Sunham Home Fashions LLC v. Pem-America, Inc.*, No. 02 CV 6284, 2002 U.S. Dist. LEXIS 24185, at *22 (S.D.N.Y. Dec. 17, 2002).

As previously established in the Court's November 27, 2012 decision, it is undisputed that none of the relevant individual authors have ever challenged Games Workshop's ownership of copyright. No such disputes have been identified in the second phase of the litigation either. Indeed, Games Workshop has presented evidence that all of the individual authors whose works are at issue in the case have either expressly confirmed that Games Workshop is and at all relevant times was the owner of the works, or for a handful of the authors, that they were indisputably Games Workshop's employees and have never had any basis to challenge ownership. One of those former employees recently confirmed in deposition testimony that

2

Games Workshop is indeed owner. [1]  (Facts ¶ 2) Not only have none of the other individuals

sought to challenge Games Workshop's rights – in some cases for a quarter century or more, but

Chapterhouse has presented no evidence that it has acquired rights from any of the authors

(assuming they still retained any) so as to be able to stand in their shoes.  (Facts ¶ 1.)

Although the Court did not previously address Chapterhouse's standing to challenge

ownership, under *Billy-Bob Teeth, Inc*. and other pertinent precedents, Chapterhouse lacks

standing to challenge Games Workshop's ownership of copyright where the individual authors

have not done so.[2]  This is true even for an author such as Mr. Smith, who executed a

confirmatory assignment only after commencement of suit.  Indeed, in response to

Chapterhouse's prior argument in its summary judgment motion that Games Workshop had

somehow failed to prove ownership of works created by six former employees and a handful of

independent contractors, Games Workshop presented confirmatory assignments from all of the

independent contractors and demonstrated through the uncontroverted testimony of its Head of

Intellectual Property that all of the individuals were indeed former employees for whom it simply

no longer possesses records confirming its ownership.  However, in the prior round of summary

judgment briefing, Chapterhouse argued for the first time in its reply brief  (Dkt 244), *to which*

*Games Workshop had no opportunity to respond*, that it was Games Workshop that lacked

---

[1] Consistent with the Court's November 27, 2012 decision (Mem. Dec. at 9-12), the former employee, Robert Naismith, who sculpted the first Space Marine figures in 1985 as well as the first Rhino and Land Raider vehicles, recently acknowledged at his deposition (noticed by Chapterhouse itself) that he was an employee at the relevant time and agrees Games Workshop owns all rights in the subject works. (Facts 2.)

[2] A separate basis to reach the same conclusion is that, in response to Games Workshop's discovery requests seeking the basic facts supporting Chapterhouse's affirmative defenses, Chapterhouse (as detailed below) has failed to identify any specific Games Workshop copyrights it purports to challenge under its defense that Games Workshop is unable to enforce copyrights (if any) that it does not own.  (*See infra* p. 20.)

3

standing to sue for works it did not own at the outset of the case. In support of that argument, Chapterhouse cited two patent cases in which a previous stranger to title had acquired the patents after it commenced suit.[3] However, the Court was not previously asked to assess whether Chapterhouse itself had standing to challenge Games Workshop's ownership when none of the individual authors had ever done so. Moreover, unlike the two patent cases cited by Chapterhouse in its reply brief, here the issue is not whether Games Workshop first acquired rights by assignment from unrelated third parties *after* commencement of suit. To the contrary, Games Workshop has either (i) identified *confirmatory* assignments from all relevant present or former employees simply confirming (even if after the date of the original creation) that they never purported to challenge plaintiff's ownership (and whose works likely would have belonged to Games Workshop by operation of law anyway under English law), or (ii) presented uncontroverted evidence that the individuals were employees who never purported to challenge Games Workshop's ownership. The two cases cited by Chapterhouse are plainly inapposite, and even if Games Workshop had not provided confirmatory assignments or otherwise expressly accounted for its ownership of the subject works, under controlling Seventh Circuit authority, *Billy-Bob Teeth, Inc.*, Chapterhouse should not be permitted to raise ownership issues on behalf of individuals who themselves do not contest that Games Workshop is the owner. Resolution of this question now would also remove any possible disputes in the case arising under English law and hence render unnecessary any expert testimony on issues of foreign law.

**2. Chapterhouse Admits Games Workshop Has Made Prior Use In Commerce Of Virtually All of The Trademarks At Issue In The Case.**

---

[3] *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774 (Fed. Cir. 1996); *Triple Tee Golf, Inc. v. Nike, Inc.*, 2007 WL 4260489 (N.D. Tex. Aug. 24, 2007), *aff'd on appeal*, 281 Fed.Appx. 368 (5th Cir. 2008) .

During his February 20, 2013 deposition, Mr. Villacci (Chapterhouse's principal owner and designated 30(b)(6) witness) was shown a list of trademarks claimed by Games Workshop in this action (provided in response to Chapterhouse's Interrogatory 18). Consistent with Chapterhouse's nominative fair use defense, under which Chapterhouse purports to have a need to use Games Workshop's prior marks to identify for consumers the relationship between its own accused products and the most nearly parallel preexisting Games Workshop products, he admitted that Games Workshop had made prior use of all 107 of the listed marks. (Facts ¶ 4.) He further admitted that Games Workshop had made prior use in commerce of all of the marks except the 20 set forth in the margin.[4] (Facts ¶ 3.)

Although Games Workshop is not seeking summary judgment as to each of the twenty marks Chapterhouse wishes to challenge, it has provided evidence of use in commerce, including sales records dating back as many as 8 years – in some instances very extensive sales evidence.[5] Moreover, although Chapterhouse does not dispute Games Workshop's prior use and hence ownership of the mark Tyranid, two of the claimed marks it does challenge are Tyranid

---

[4] The twenty marks Chapterhouse wishes to challenge are set forth here. Although Games Workshop is not asking the Court to resolve on summary judgment Games Workshop's priority of rights for all of these marks, Games Workshop does note, parenthetically, that it has provided sales records for each of the claimed marks, with three exceptions for which it claimed protection on separate grounds as mentioned in note 6 below: (i) Blood Ravens; (ii) Exorcist; (iii) Flesh Tearers; (iv) Jump Pack; (v) Lightning Claw; (vi) Mycetic Spore; (vii) Soul Drinker; (viii) Storm Shield; (ix) Tervigon; (x) Tyranid Bonesword; (xi) Tyranid Lashwhip; (xii) Ymgarl; (xiii) Blood Ravens Icon; (xiv) Celestial Lions Icon; (xv) Dark Angels Winged Sword Icon; (xvi) Exorcist Skull Icon; (xvii) Howling Griffons Icon; (xviii) Iron Snakes Icon; (xix) Chaos Space Marines 8-pointed Star and (xx) Soul Drinkers Icon.

[5] For three of the marks, Mycetic Spore, Tervigon and Ymgarl, Games Workshop has also previously explained the basis in for its right to protect the marks based principles of unfair competition law and "analogous" use in commerce. *Processed Plastic Co. v. Warner Commns, Inc.*, 675 F.2d 852 (7th Cir. 1982) and *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76 (2d Cir. 1981); *D. C. Comics, Inc. v. Powers*, 465 F. Supp 843 (S.D.N.Y. 1978).

Bonesword and Tyranid Lashwhip.  Moreover, although eight of the twenty marks Chapterhouse purports to dispute are Warhammer 40,000 Space Marine chapter logos[6], Chapterhouse includes on its website (of its own free will) an express admission that Games Workshop owns numerous trademarks including (among others) the "Space Marine chapters [and] Space Marine chapter logos".[7] (Facts ¶ 9.).

Games Workshop does not ask the Court to resolve possible (if unknown) factual issues regarding the twenty marks that Chapterhouse disputes (even where based on incorrect factual grounds).  Even if the matter can not be resolved on summary judgment, in view of the fact that Chapterhouse has named virtually every one of its products after the corresponding Games Workshop originals and contends that, as a nominative fair use, it *must* use Games Workshop's trademarks in order to identify its own competing products to the relevant customers the Court noted in its November 27, 2012 Order granting summary judgment in part that "the very existence of Chapterhouse's business provides circumstantial evidence from which a reasonable jury could conclude that GW used the marks in U.S. commerce before Chapterhouse" and that "[i]t would defy credulity to suppose that Chapterhouse sold [its] alternative parts in the U.S. to consumers who had not yet bought the corresponding GW product."  (Mem. Dec. at 30.)

Although Games Workshop would argue that so long as Chapterhouse intends to rely on this defense, it can not consistently contend at the same time that the names somehow are not

---

[6] The eight are (i) Blood Ravens Icon; (ii) Celestial Lions Icon; (iii) Dark Angels Winged Sword Icon; (iv) Exorcist Skull Icon; (v) Howling Griffons Icon; (vi) Iron Snakes Icon; (vii) Chaos Space Marines 8-pointed Star, and (vii) Soul Drinkers Icon.

[7] Chapterhouse amended the statement on its website during the pendency of this action, with full knowledge of the claims at issue, to make the above admission.  Although Chapterhouse has alleged that this notice was taken from Games Workshop's own website, given this voluntary and knowing public admission, Chapterhouse should be precluded at trial from challenging ownership of these same trademarks.

6

trademarks, minimally, there should be no need to resolve at trial Games Workshop's prior use in commerce of the 87 marks Chapterhouse concedes under oath were used in commerce before it began referring to those marks to sell its own goods.  Nor should there be any dispute over Games Workshop's ownership of trademark rights in all of the "Space Marine chapters [and] Space Marine chapter logos," eight of which Chapterhouse evidently still wishes to challenge.

### 3.  23 Of Defendant's 24 Affirmative Defenses Should Be Dismissed

In its Answer to the current Complaint in this action, Chapterhouse asserted 24 affirmative defenses.[8]  However, in its response to Games Workshop's Interrogatory 8, which

---

[8] 1. GW's TAC, and every cause of action within it, fails to state a cause of action on which relief can be granted.

2. This court lacks subject-matter jurisdiction over claims to enforce U.S. copyrights for which GW has not obtained, or has not pleaded ownership of, copyright registrations.

3. GW's copyright claims are barred because GW lacks standing to enforce copyrights it does not own.

4. GW's copyright claims are barred by the doctrine of fair use.

5. GW's copyright claims are barred by the *de minimis* doctrine.

6. GW's copyright claims are barred by the doctrine of independent creation.

7. GW's state law claims are barred to the extent they are preempted by federal law.

8. GW's claims are barred by its failure to join indispensable parties.

9. GW's claims are barred by consent, waiver, acquiescence or license.

10. GW's claims are barred by relevant statutes of limitations.

11. GW's claims are barred by laches.

12. GW's claims are barred by res judicata.

13. GW's claims are barred by estoppel.

14. GW's claims are barred by the doctrine of copyright misuse.

15. GW's claims are barred due to its use of the Lanham Act to impede free and fair competition.

16 GW's claims are barred as to any of its actions that violate any unfair competition laws.

17 GW's claims are barred due to its unclean hands.

18. GW's trademark claims are barred by the defense of nominative fair use.

19. GW's trademark claims are barred to the extent it has abandoned its alleged marks.

20. GW's claims are barred by the First Amendment to the United States Constitution.

21. GW's claims are barred by its failure to mitigate damages.

22. GW's claims to statutory damages are limited or barred by the United States Constitution.

asked Chapterhouse to identify "all facts or other grounds, if any, including an identification of any pertinent documents, on which Chapterhouse relies for each of the affirmative defenses asserted in its …" Answer to the Complaint, Chapterhouse provided only cursory information as to four of the defenses. (Facts ¶ 5.)[9] Likewise, in its response to Interrogatory No. 13 in the first phase of the litigation (Facts ¶ 6.) it provided no additional information to support any of these same defenses.

> a. Chapterhouse's Claim of Fraud on the Copyright or Trademark Offices Must Be Dismissed

Proof of fraud on the Copyright or Trademark Offices is subject to exacting pleading standards and requires rigorous proof. To begin, the party alleging fraud must meet the heightened pleading requires of Rule 9(b). *Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 n. 2 (S.D.N.Y. 2000). Moreover, "a party asserting fraud must establish that the application for copyright registration is factually inaccurate, that the inaccuracies were willful or deliberate, and that the Copyright Office relied on those misrepresentations." *Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000) (citation omitted). In explaining the strong presumption against findings of fraud, *Lennon* noted a possible additional requirement, beyond materiality and intent, that the party alleging fraud must show it has "been prejudiced, or suffered some damage, as a result of the alleged fraud." *Id. See also Malibu Textiles, Inc.*, 2008 U.S. Dist. LEXIS 51783,

---

23. GW's claims to treble damages are barred because at all times Chapterhouse has acted without malice and with a good faith belief that its actions were proper.

24. GW's claims are barred to the extent its copyright or trademark registrations were obtained through fraud on the Copyright Office or the Patent and Trademark Office

[9] In its interrogatory answer, it also added a conclusory challenge to the inherent distinctiveness of nine of Games Workshop's claimed trademarks, even though that is not one of its 24 stated affirmative defenses. Games Workshop is not seeking summary judgment as to the strength of any of those marks, but only as to its admitted prior use in commerce of most of its claimed marks.

8

*22 ("[o]nly the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] a reason for holding the registration invalid and thus incapable of supporting an infringement action." (quoting *Sunham Home Fashions LLC v. Pem-America, Inc.*, No. 02 CV 6284, 2002 U.S. Dist. LEXIS 24185 at *14 (S.D.N.Y. Dec. 17, 2002)); *Thornton v. J Jargon Co.*, No. 8:06 CV 1640, 580 F. Supp. 2d 1261, 1271, 2008 U.S. Dist. LEXIS 52396, *11 (M.D.Fla. July 8, 2008) ("…omissions or misrepresentations in a copyright application render the registration invalid only when there is 'intentional or purposeful concealment of relevant information,'."); *Automated Solutions Corp. v. Paragon Data Systems, Inc.,* No. 1:05 CV 1519, 2008 U.S. Dist. LEXIS 45914 at *29 (N.D.Oh. June 11, 2008) ("[m]any courts have opined that inadvertent and immaterial mistakes on a federal copyright registration do not invalidate the copyright." ); *Home Design Services, Inc. v. David Weekley Homes, LLC*, 548 F.Supp.2d 1306, 1311 (M.D.Fla. 2008) ("[i]n order to establish fraud on the Copyright Office, defendants must show that the omission or misrepresentation by plaintiff was 'intentional or purposeful concealment of relevant information. Where this element of 'scienter' is lacking, courts generally have upheld the copyright.'"(quoting *Original Appalachian Artworks, Inc. v Toy Loft, Inc.*, 684 F.2d 821, 828 (11th Cir. 1982)).

Essentially the same standard applies in alleging fraud on the Trademark Office. *In re Bose Corp.,* 580 F.3d 1240 (Fed. Cir. 2009). Said the court:

> Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986). A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof. *W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*, 377 F.2d 1001, 1004, 54 C.C.P.A. 1442 (C.C.P.A. 1967). Indeed, "the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *Smith Int'l, Inc. v. Olin Corp.*, 209 U.S.P.Q. 1033, 1044 (T.T.A.B. 1981).

*Id.* at 1243; *Carmichael v. Prime*, 2003 U.S. Dist. LEXIS 6444, *9 (S.D. Ind. 2003) ("fraud in procurement of trademark registration must be alleged according to requirements of Federal Rule of Civil Procedure 9(b).") (quoting 2 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 31:84 (2002)).

A review of Chapterhouse's Answer to the Complaint demonstrates that it has made no effort to plead either claim of fraud with specificity. None of the elements and no supporting facts are set forth in its pleading, and the defenses thus should be dismissed under Fed.R.Civ.P. Rules 9(b), 12 and 56. Its interrogatory answer can not and does not remedy its failure of pleading. Without saying anything about the alleged fraud on the Trademark Office, Chapterhouse's interrogatory answer makes two points regarding the claim of fraud on the Copyright Office. It asserts: (i) that Games Workshop failed to identify to the Court in the course of briefing summary judgment that the Copyright Office had initially declined to register one of its shoulder pad designs (even where the Copyright Office had already registered another similar shoulder pad design, which Games Workshop also overlooked during the summary judgment briefing despite possibly favorable inferences that could have been drawn from the fact of registration) and that (ii) Games Workshop later sought to mislead the Copyright Office simply by asking the administrative body if it wished to review the Court's November 27,2012 decision finding the basic shape of the shoulder pad design copyrightable. The actual decision was never submitted to the Copyright Office. (Facts ¶ 8.)

As Games Workshop previously demonstrated in opposing Chapterhouse's motion for reconsideration (Dkt No. 270), an initial, non-final refusal of the Copyright Office to register a design is entitled to no deference. *See Boyds Collection, Ltd. v. Bearington Collection, Inc*., 360 F. Supp. 2d 655 (M.D. Pa. 2005). *See also Christensen v. Harris County*, 529 U.S. 576, 587

(2000); *Hickey v. Chicago Truck Drivers, Helpers and Warehouse Workers Union*, 980 F.2d

465, 469 (7th Cir. 1992); *Gryl ex rel. Shire Pharms. Grp. v. Shire Pharms Grp. Plc,*, 298 F.3d

136, 145 (2nd Cir. 2002); *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374, 1380-

81 (Fed. Cir. 1998); *Blue Cross and Blue Shield of N.J. Inc. v. Philip Morris, Inc.*, 141 F. Supp.

2d 320, 323 (E.D.N.Y. 2001). To the contrary, although the Court would have had discretion to

give some weight to the Copyright Office's actual final decision to register the Flesh Tearer's

Shoulder Pad design, 17 U.S.C. § 410(c), Games Workshop also neglected to mention this

registration to the Court in the course of briefing summary judgment on the issue of

copyrightability of the basic shoulder pad design. (Moskin Decl. ¶ 7.)Laying aside the

impossible factual predicate that Games Workshop would have failed to mention a positively

helpful issued registration while at the same time "concealing" (from the Court, not the

Copyright Office) what it deemed a harmless initial question raised by the Copyright Office,[10]

Games Workshop's filings with the Court (which have hardly been shown to be deceptive, much

less deliberately so) can not possibly amount to a fraud on an entirely separate government body

in Washington. The only alleged nexus set forth in Chapterhouse's interrogatory answer to link

Games Workshop's Court filings and its filings with the Copyright Office arose *after* the Court

granted summary judgment on the issue of copyrightability when, following months of complete

inaction by the Copyright Office in response to Games Workshop's June 26 email offering to

discuss the registrability of the Assault Squad Shoulder Pad, Games Workshop offered to

---

[10] Although there is no allegation here that Games Workshop made any specific
misrepresentations to the Copyright Office or to the Trademark Office in connection with any
application here in issue (much less that it did so willfully), "[w]here the misrepresentation can
be construed as inadvertent, innocent or unintentional, it is insufficient to rebut the presumption
of validity." *MalibuTextiles,* 2008 WL 2676356 at *6. The court there found that the copyright
owner's misdesignation of the work as a "work for hire" was not "made to mislead the Copyright
Office 'to approve an application it otherwise believed might be rejected.'" *Id.*

provide the Copyright Office a copy of the decision in November 2012. What Games Workshop is alleged to have concealed from the Copyright Office is murky at best. It simply made the same submission of an application and specimens that supported the successful application for the Flesh Tearer Shoulder Pad design. And, at any rate, after a several month delay caused by the examiner's failure to address an initial offer by Games Workshop to discuss the application, the Copyright Office examiner then simply refused to receive or consider either the Court's decision or any of the facts supporting the decision. Nor would she withdraw her initial refusal to register, leading Games Workshop to turn the matter over to the Court. (See Dkt No. 275.) As a result, Games Workshop's supposed "scheme" (no elements of which have been identified) failed completely, as the Copyright Office never even saw much less relied upon the Court's decision. (Facts ¶ 8.) *Lennon*, 84 F. Supp. 2d at 526 ("As there has not yet been any possible reliance on the allegedly false statements contained in that application, Plaintiff's fraud allegation is not yet fit for 'judicial decision'" (citation omitted)). Absent such reliance there can be no claim of fraud. Indeed, no elements of fraud having been identified (much less shown), these defenses should be dismissed.

Likewise, no facts supporting a claim of fraud on the Trademark Office have been identified in response to Games Workshop's discovery requests or in Chapterhouse's pleadings. Chapterhouse has not even identified any registered trademarks it purports to challenge. As such, it should not be permitted to surprise Games Workshop at trial.

    b. <u>Chapterhouse's Defense of Copyright Fair Use Must Be Dismissed</u>

Neither Chapterhouse's Answer nor its response to Games Workshop's Interrogatories 8 (in the second phase) or 13 (in the first phase) identifies any of the accused products that it might contend could be protected as a fair use. It has, at most, simply offered conclusory statements referring to the general elements of a fair use defense. (Facts ¶ 6.) As

12

with the defense of nominative fair use of Games Workshop's trademarks, implicit in the defense of copyright fair use is defendant's *admission of actual copying,* which it must then show is somehow justified for appropriately limited and "transformative" purposes, such as to commentary, criticism or parody. No such justification for Chapterhouse's admitted copying has been shown.

17 U.S.C. § 107 defines the doctrine and identifies four factors to be considered in assessing the fair use defense:

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including … for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

The history of the statute illustrates that the quintessential fair use cases are for education, commentary, criticism or parody, which are utterly absent here.[11] Indeed, none of Chapterhouse's accused works, every one of which is purely commercial and designed only to profit on the great success of Warhammer 40,000 or Warhammer, even purports to be for

---

[11] The legislative committee notes to Section 107 set forth relevant examples, namely: quotation of excerpts in a review or criticism for purposes of illustration or comment; quotation of short passages in a scholarly or technical work, for illustration or clarification of the author's observations; use in a parody of some of the content of the work parodied; summary of an address or article, with brief quotations, in a news report; reproduction by a library of a portion of a work to replace part of a damaged copy; reproduction by a teacher or student of a small part of a work to illustrate a lesson; reproduction of a work in legislative or judicial proceedings or reports; incidental and fortuitous reproduction, in a newsreel or broadcast, of a work located in the scene of an event being reported.

13

purposes of commentary, criticism, education, parody or any other recognized fair use purpose. By definition, Chapterhouse's copying from Warhammer 40,000 and now Warhammer solely to sell merchandise in competition with Games Workshop is not a fair use. In response to discovery, Chapterhouse certainly has not identified so much as a single work it contends is transformative. "The burden of proof is on the copier because fair use is an affirmative defense." *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003), citing *Campbell v. Acuff-Rose Music, Inc.*, *supra*, 510 U.S. 569, 590 (1994). That burden has not been met here.

Although it is rare for a defendant to raise a fair use defense when the challenged works are purely commercial and do not even purport to have any transformative purpose of commentary or parody, a case quite similar to the current action is *Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992). There, the artist Jeff Koons copied the plaintiff's photograph of puppies into sculptural format. Although he tried to excuse the copy as some sort of commentary on the materiality of modern society, the fact that he was not commenting on the plaintiff's photograph (but simply using it to advance other remunerative ends) precluded a finding of parody. Accord *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394 (9th Cir. 1997) (commercial use of Dr. Seuss' themes in a book commenting on the OJ Simpson murder trial was not a parody or comment upon the Dr. Seuss original.) Unlike Koons, where the defendant at least had some recognized stature as an artist (although that did not save him from summary judgment) here, Chapterhouse does not even purport to lay claim to artistic originality but is merely a pair of fans of Warhammer 40,000 seeking ways to exploit Games Workshop's preexisting intellectual property. (Facts ¶¶ 10-13.)

Turning to the four fair use factors, *Warner Bros. Entertainment Inc. v. RDR Books*, 575 F. Supp. 2d 513 (S.D.N.Y. 2008), summarized the law:

14

Most critical to the inquiry under the first fair-use factor is "whether and to what extent the new work is 'transformative.'" *Campbell*, 510 U.S. at 579; *see also Bill Graham Archives v. Dorling Kindersley Ltd*, 448 F.3d 605, 608 (2d Cir. 2006); *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622, 628 (9th Cir. 2003). Specifically, the court asks "whether the new work merely 'supersede[s] the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. at 579. The fair use doctrine seeks to protect a secondary work if it "adds value to the original— if [copyrightable expression in the original work] is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings."

575 F.Supp.2d at 540-41. As noted in *Koons*, "[t]he first factor, purpose and character of the use, asks whether the original was copied in good faith to benefit the public or primarily for the commercial interests of the infringer. *See MCA, Inc. v. Wilson*, 677 F.2d 180, 182 (2d Cir. 1981). Knowing exploitation of a copyrighted work for personal gain militates against a finding of fair use." 960 F.2d 309. As the court there also noted (in language directly relevant here): "[t]he Supreme Court has held that copies made for commercial or profit-making purposes are presumptively unfair." *Id.* at 309 (citing *Sony Corp. of America v. Universal City Studios, Inc* ., 464 U.S. 417, 449 (1984)). The Supreme Court has explained that "[t]he enquiry [concerning the first fair use factor] may be guided by the examples given in the preamble to Section 107, looking to whether the use is for criticism, or comment, or news reporting, and the like. . . ." *Cambell* , 510 U.S. at 578-79. Again, by definition, Chapterhouse's copying from Warhammer 40,000 and now Warhammer can not possibly be treated as a fair use where it simply seeks to supersede the demand for genuine Games Workshop products and does nothing to convey any new meaning or message.

The Supreme Court made clear in *Campbell* that the most important question is whether the work is transformative. Here, Chapterhouse has added to Games Workshop's originals absolutely nothing in the way of commentary, scholarship, analysis, criticism or even parody. It

15

simply borrows from Games Workshop's originals enough material to makes its copies immediately recognizable to customers of Warhammer or Warhammer 40,000 so as to profit from and trade on Games Workshop's success in making the game and the books as popular as they are. And it uses the Games Workshop materials for exactly the same purpose as Games Workshop does. As shown previously in connection with Games Workshop's original summary judgment motion, Chapterhouse must make its copies immediately recognizable to Games Workshop's fans or the copies will not be useful to those fans who want to use them in playing the game Warhammer 40,000. (Facts ¶ 10.)

> Regarding the nature of the work, and again quoting from Koons:

> The next fair use factor asks what is the nature of the work that has been copied. Where the original work is factual rather than fictional the scope of fair use is broader. *See New Era Publications, Int'l. v. Carol Publishing Group*, 904 F.2d 152, 157 (2d Cir.), *cert. denied*, 111 S.Ct. 297 (1990). Whether the original is creative, imaginative, or represents an investment of time in anticipation of a financial return also should be considered. *MCA, Inc. v. Wilson*, 677 F.2d at 182."

Here there is nothing factual about Games Workshop's fictional universe or the characters and accessories from that fictional realm that Chapterhouse has copied. Just as there is nothing educational or in the nature of commentary or critique in Chapterhouse's copies, there is nothing about the originals that lends itself to such fair use. One could of course write a book about the development of Warhammer or Warhammer 40,000, but there is no such scholarship here. Defendant has simply copied entirely imaginative images and characters to make money.

> Regarding the third element, "the fair use copier must copy no more than is reasonably necessary . . . to enable him to pursue an aim that the law recognizes as proper" *Chicago Bd. of Educ*, 354 F.3d at 629. As similarly noted in *Warner Bros. Entertainment* (citing the 7th Circuit's decision in *Chicago Bd. Of Educ.*): The question is whether the amount and value of

16

Plaintiffs' original expression used are reasonable in relation to the Lexicon's transformative

purpose of creating a useful and complete A-to-Z reference guide to the *Harry Potter* world. *See*

*Campbell*, 510 U.S. at 586 (stating that the third factor asks whether the amount and

substantiality of the portion used in relation to the copyrighted work as a whole "are reasonable

in relation to the purpose of the copying")  575 F.Supp. 2d at 546 (internal quotations omitted).

*Koons* similarly explained:

> Where the amount of copying exceeds permissible levels, summary judgment has
> been upheld.  *Walt Disney Productions v. Air Pirates* , 581 F.2d 751, 758 (9th Cir.
> 1978), *cert. denied,* 439 U.S. 1132 (1979). To a large degree, this factor involves
> the same analysis as that used when determining if the copy is substantially
> similar to the original. Sometimes wholesale copying may be permitted, while in
> other cases taking even a small percentage of the original work has been held
> unfair use. … Even more critical than the quantity is the qualitative degree of the
> copying: what degree of the essence of the original is copied in relation to its
> whole. *Id.* at 98; *see also New Era Publications Int'l.*, 904 F.2d at 159.

960 F.2d at 310.

By definition, because there is nothing transformative about Chapterhouse's copying, no

amount of copying is appropriate.  As noted above, while Chapterhouse does appear to make a

conscious effort to avoid exact copies, it does so simply to try to escape infringement penalties,

not because it is trying to re-envision Games Workshop's originals for some purpose other than

to play Warhammer 40,000.  Indeed, if it changes the originals too much they won't be useful to

Games Workshop's fans, who are the only customers of the infringing goods and who will not be

able to use the resulting parts in playing the game.  (Facts ¶ 10.)

Given Chapterhouse's singular focus on profiting from the popularity of Warhammer and

Warhammer 40,000, and its exclusive marketing focus in selling its copies to Games

Workshop's existing fan base, there can be no question under the fourth factor that the impact on

Games Workshop's market renders the copying unfair.  As noted in *Koons*, "where the use is

17

intended for commercial gain some meaningful likelihood of future harm is presumed." 960

F.2d. at 312 (citing *Sony Corp. of America,* 464 U.S. at 451.)  As explained in *Warner Bros.*

*Entertainment*, "The fourth factor will favor the copyright holder 'if she can show a 'traditional,

reasonable, or likely to be developed' market for licensing her work.'" 575 F. Supp. 2d at 549

(quoting *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 81 (2d Cir. 1997)).  The extent

of the harm to Games Workshop need not be quantified.  Rather, as noted in *Koons*:

> But the owner of a copyright with respect to this market-factor need only
> demonstrate that if the unauthorized use becomes "widespread" it would prejudice
> his potential market for his work. *See id.*; *Harper & Row,* 471 U.S. at 568. The
> reason for this rule relates to a central concern of copyright law that unfair
> copying undercuts demand for the original work and, as an inevitable
> consequence, chills creation of such works. Hence the inquiry considers not only
> harm to the market for the original photograph, but also harm to the market for
> derivative  works.

960 F.2d. at 312.

Again, by definition, because Chapterhouse's copying from Warhammer and

Warhammer 40,000 has absolutely nothing to do with scholarship, criticism, education or even

parody, but rather is simply intended to profit from the prior success of Games Workshop's

fiction and miniatures, such copying is not a fair use.

### c.   Chapterhouse's Defense of Preemption Should Be Dismissed

Neither Chapterhouse's Answer nor its response to Games Workshop's Interrogatory 8

identifies any of the claims in suit that it might contend is preempted, much less begin to explain

why.  Having refused to identify in discovery any such claim it contends might be preempted,

Chapterhouse should not be permitted to surprise Games Workshop at trial.  As such, the defense

should be dismissed.

18

> d.    Chapterhouse's Remaining Affirmative Defenses Should Be Dismissed

Although Games Workshop challenges all of the affirmative defenses actually identified (in brief) in Chapterhouse's interrogatory answer (including the defense of nominative fair use of Games Workshop's trademarks) and although Chapterhouse has failed to identify any specific uses of Games Workshop's trademarks that it contends are used fairly, Games Workshop is mindful that the Court previously denied summary judgment on the question whether any of Chapterhouse's uses of Games Workshop's marks is a nominative fair use.

However, Chapterhouse has made no attempt to articulate in its interrogatory answer or in its Answer to the Complaint any basis whatsoever for any of the other twenty affirmative defenses. Having refused to identify in discovery any basis for these defenses, Chapterhouse should not be permitted to surprise Games Workshop at trial. Such boilerplate defenses should be dismissed. Likewise in the first phase of the litigation, Chapterhouse identified no information in its response to Interrogatory No. 13 to demonstrate any basis for these same defenses.

As noted above (*supra* n. 2) one of the defenses asserted in summary fashion in Chapterhouse's pleading for which it provided no information is the third defense that Games Workshop lacks standing to enforce copyrights (if any) it does not own. No such copyrights have been identified by Chapterhouse in either phase of the litigation (with the possible exception of those works created by the six former employees of Games Workshop, the status of which was accounted for in the declaration of Alan Merrett and one of whom, Mr. Naismith, has recently confirmed in his own sworn testimony). Having refused to disclose any factual basis for challenging Games Workshop's ownership of these or any other works, Chapterhouse should not be permitted to raise such issues for the first time at trial.

4828-7770-0882.2

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the foregoing motion for summary judgment in part, together with such other and further relief as the court deems just and proper.

Dated:  March 4, 2013

Respectfully submitted,
/s/  Jonathan E.. Moskin

Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone:  312.832.4500
Facsimile:  312.832.4700
Email:  jkeener@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone:  (212) 682-7474
Facsimile:  (212) 687-3229
Email:  jmoskin@foley.com

*Attorneys for Plaintiff*
*Games Workshop Limited*

4828-7770-0882.2

## <u>CERTIFICATE OF SERVICE</u>

        I, Jonathan E. Moskin, an attorney, hereby certify that on March 4, 2013, I caused to be filed electronically the foregoing PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT IN PART with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                    /s/  Jonathan E. Moskin
                    Jonathan E. Moskin

21