# EXHIBIT A

1              IN THE UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF ILLINOIS

3                      EASTERN DIVISION

4

5    - - - - - - - - - - - - - - - - - - - - - -

6    GAMES WORKSHOP LIMITED,

7              Plaintiff,

8                      Civil Action No. 1:10-cv-08103

9              v.

10   CHAPTERHOUSE STUDIOS LLC,

11             Defendants.

12   - - - - - - - - - - - - - - - - - - - - - - -

13

14

15

16

17    Videotaped Deposition of ROBERT NAISMITH,

18   taken at the Crowne Plaza Hotel, Nottingham,

19   UK, Monday, 25 February, 2013, 12:07 pm,

20   before  Ailsa Williams, Accredited Court Reporter

21

22

23

24

25   PAGES 1 - 69

                                         Page 1

Page 54

1    for showing up today.  I don't have any more        13:44:35
2    questions at this time.                    13:44:38
3        CROSS-EXAMINATION BY MR. MOSKIN:
4        MR. MOSKIN:  Give me five minutes and then I    13:44:41
5    probably just have a few.  Before we do that can    13:44:43
6    you read back his last answer about his        13:44:47
7    confirmatory assignment, something about being    13:44:50
8    happy or not with the contents.            13:44:54
9        (Read back.)
10       A  Yes.  Does that not make sense?  The        13:45:24
11   only thing I would like to clarify, when I said legal    13:45:27
12   advisers I didn't mean neutral advisers of my own, I    13:45:29
13   mean Games Workshop Legal Department.        13:45:33
14       MS STEVENSON:  And we cannot advise.        13:45:36
15       A  No, so I just had a discussion, if you    13:45:38
16   like.  What I am trying to communicate is that I    13:45:39
17   received a confirmatory assignment from Games    13:45:46
18   Workshop, I had a letter in the first instance from    13:45:51
19   Alan Merrett, and that was followed up with the    13:45:55
20   assignment which I received.  I read it.  I thought:    13:45:57
21   What is all this legalese stuff?  So I just really    13:46:01
22   wanted to have that explained to me in lay terms, so I    13:46:05
23   spoke to the guys at Games Workshop, who basically    13:46:10
24   explained to me in lay terms, what these things meant.    13:46:13
25   I have never really been -- I have always thought that
                                                          Page 54

Page 55

1    as an employee of Games Workshop at that time that any    13:46:21
2    of the design that I did belonged to them.  The design    13:46:25
3    in particular -- I think there was a photograph at the    13:46:30
4    back of the assignment -- which was a Rhino, and at    13:46:32
5    the time we worked on the Rhino I was an employee of    13:46:37
6    Games Workshop and was quite happy with the idea that    13:46:41
7    the design belonged to them.  Ditto with the Space    13:46:46
8    Marine.  As far as I can see, I was an employee    13:46:51
9    employed to sculpt and create designs, and they    13:46:54
10   they paid me.                        13:46:59
11       Q  I just want to clarify because I am not    13:47:02
12   sure I asked you a question, but I appreciate the    13:47:04
13   clarification.  Just so we can say it in response to a    13:47:08
14   question, as between yourself and Games Workshop, whom    13:47:12
15   do you think owns any intellectual property right in    13:47:17
16   the Rhino, the Space Marine or other works you created    13:47:19
17   while you were working with the company?        13:47:24
18       A  I would say Games Workshop owns that    13:47:26
19   because at the time when I was working I was an    13:47:27
20   employee of them, and I always thought that in a sort    13:47:31
21   of master and servant relationship like that that the    13:47:35
22   IP was owned by the company.            13:47:38
23       Q  Looking at what was marked as Exhibit    13:47:44
24   20, when you were working on creating the Games    13:47:47
25   Workshop Rhino and Land Raider models, did you have
                                                          Page 55

Page 56

1    this picture in front of you?                13:47:56
2        A  No.                        13:47:57
3        Q  Did you have any pictures in front of    13:47:58
4    you?                            13:47:59
5        A  No.                        13:48:00
6        Q  Did you work off of any other specific    13:48:00
7    reference materials?                    13:48:03
8        A  No.  It was all just memory of -- there    13:48:04
9    is the company that make model kits in this country    13:48:06
10   called Airfix, and old boys probably used to have the    13:48:13
11   equivalent in the States, with kits, and there was a    13:48:18
12   kit that I would argue every boy of my age probably    13:48:23
13   had and built and it was one of these tanks, as a    13:48:25
14   teenager, so that was my last actual physical holding    13:48:28
15   of this model or seeing pictures of it, but it is just    13:48:32
16   one of these iconic shapes and designs that kind of    13:48:39
17   locks in your mind.                    13:48:43
18       Q  You described certain constraints that    13:48:45
19   you worked under in creating the Land Raider and the    13:48:47
20   Rhino.  Do you know if actual tanks had the same sort    13:48:50
21   of symmetry you were describing?            13:48:59
22       A  Do you know, I wouldn't be surprised if    13:49:01
23   they didn't.  I don't know and I cannot give you any    13:49:03
24   examples but I would imagine that a lot of these tanks    13:49:07
25   historically were built by tractor factories, you
                                                          Page 56

Page 57

1    know, or construction equipment factories.  So they    13:49:15
2    would have been used to using the same components in    13:49:18
3    many different places.  The whole point about mass    13:49:22
4    production is you make one piece and you keep reusing    13:49:26
5    it, so that I think is a design basic.            13:49:29
6        Q  But you are not aware of any specific    13:49:35
7    tanks that had the same sort of symmetry that you    13:49:37
8    designed in the Games Workshop Rhino and Land Raider?    13:49:41
9        A  No, I would have to say not, but you can    13:49:44
10   see even here the repeated use of the same unit.    13:49:47
11       Q  In making the scaling or the design of    13:49:57
12   the Land Raider and the Rhino units, did you have any    13:50:00
13   references in mind?                    13:50:04
14       A  Only the gaming one really.  Again, we    13:50:06
15   needed to have something which would have presence on    13:50:08
16   the table.  So the Land Raider we made tall, so the    13:50:11
17   fact, if you like, the happy accident that symmetry    13:50:16
18   gave the Land Raider a taller profile gave it a    13:50:19
19   presence on the table which meant that it was easily    13:50:24
20   identified as different from a Rhino.            13:50:26
21       Q  But you are not aware of any prior    13:50:51
22   designs in military or toys that had that same    13:50:53
23   profile, that high profile?                13:50:56
24       A  There were some, I think some French    13:51:01
25   World War One tanks that were a bit tall and there was
                                                          Page 57

15 (Pages 54 - 57)

# EXHIBIT B

RGH_NV022013 (2).txt

1

1  Per your request, please find attached the rough draft
2  in ASCII format of the Oral Deposition of Nick Villacci
3  taken on February 20, 2013.
4  The stenographic notes taken in the within proceeding
5  have been translated instantaneously into their English
6  equivalents through a computerized process called
7  realtime translation. The realtime text as seen on the
8  computer monitor at the site of these proceedings, as
9  well as the rough draft ASCII attached hereto, is
10 unedited and uncertified and may contain untranslated
11 stenotype, misspelled proper names and technical words,
12 occasional reporter's notes, slight omissions or
13 variations of testimony, and/or nonsensical English word
14 combinations. These will be corrected on the final
15 certified transcript upon its delivery to you. The
16 realtime rough draft is intended only for the purpose of
17 augmenting counsel's notes and is not intended to be
18 used or cited in any court proceeding as representing a
19 final edited and proofread transcript.
20 Respectfully,
21 Kristen Kopp, RPR, CSR
22
23
24
25


NON-CERTIFIED ROUGH DRAFT

2

RGH_NV022013 (2).txt

```
4    Q.  That's fine.  That's efficient.

5    Q.  I'd like to mark this as Exhibit 188?

6              (^ Plaintiff's ^ Plaintiffs' ^ Defendant's

7               ^ Defendants' ^ Defense Exhibit Number ^

8              marked.)

9    Q.  (BY MR. MOSKIN)  And you will not have seen

10   this -- you may have seen this before.  But this is --

11   I'll represent to you is a document created by games

12   work shop in this case listing all of the trademarks and

13   design marks in issue.  And if you look beginning on

14   Page 2 at the bottom of Page 5.  My question to you is

15   whether you content that ChapterHouse started using in

16   commerce, that is selling products using any of the

17   names or eye cons listed here before games work shop had

18   begun selling these products using these names or eye

19   cons or had adopted these names or eye cons?

20             MS. HARTZELL:  I'll object to the form of

21   the question.  And also note for the record that there

22   are four pages of trademarks here that the -- that the

23   witness has not seen previously with dates of first use

24   that the witness has not seen previously.  As to which

25   you are asking him about.
```

NON-CERTIFIED ROUGH DRAFT

168

```
1    Q.  (BY MR. MOSKIN)  That's fine.  I would just

2    like you to scan down the hiss and if there are any that

3    you think created the name or icon before games work

4    shop, just let me know.

5    A.  From my understanding of trademark, trademark

6    means you actually use those in use of a product name
```
                              Page 154

RGH_NV022013 (2).txt

7   and commercial.  Putting a word in a book doesn't entail
8   use of a trademark.  Otherwise, phone books would be
9   ridiculous.  You could trademark every name in the phone
10  book, which doesn't work.
11              Saying that, I believe that we release a
12  product called blood RAVENZ and games work shop never
13  released a product called blood RAVENZ.  Let's see.  I
14  don't think games work shop was the first to ever use
15  chaplain.
16      Q.  I'm not asking if it was the first.  I'm saying
17  with respect to you and ChapterHouse.
18      A.  Okay.  Exercisist.
19      Q.  Again, just to be clear, are you saying that
20  you used the name and/or sift before games work shop?
21      A.  In describing actual product sold on the
22  commercial market, yes.  Flush chairs.  Exsift XEK XEK
23  heresy armor.  Horse heresy.  Hal YON GRIF INZ.  Jet
24  bike.  I'd say jump pack.  Lightning claw.  I'm not sure
25  we even have products called these.  Oh, my said

                    NON-CERTIFIED ROUGH DRAFT

                                                        169


1   explorer.  Soul drinker.  Storm shield.  Turb gone.
2   Turn Ied bone sword, turn Ied lash whip.  Don't know how
3   to pronounce this.  The YEE mark GOE GARL.
4       Q.  EM GARL?
5       A.  Sure.  Your guess is as good as mine.
6   Celestial lines icon.  I don't think I've ever seen
7   games work shop sell anything called dark angel winged
8   sword icon.
                        Page 155

RGH_NV022013 (2).txt

9      Q.  I'm not saying sold that will just having that

10  icon on it?

11      A.  I guess what I'm trying to say right now I

12  don't think we have anything called dark angel wings

13  icon, either.  I don't know what we refer to it

14  specifically.  I'd have to cross correlate everything on

15  our website.  I don't think we call anything iron snake

16  icon.  Is this claiming we use this on our website, as

17  well.

18      Q.  That's not the issue here.  The issue is

19  whether you simply claimed that you used these eye cons

20  or trademarks before games work shop did?

21      A.  When it says iron snake's icon, is that the

22  actual wording -- is games work shop alleging that

23  that's what's trademarked Iron Snake's icon or an actual

24  icon of an iron snake.

25      Q.  It's an actual icon of an iron snake?


                 NON-CERTIFIED ROUGH DRAFT

                                                     170


1      A.  I would say iron snake icon then.  The Allen

2  griffin icon.  The exercise sift skull icon.

3      Q.  I'm sorry FRMGS the exorcist skull icon.  The

4  blood RAVENZ icon.  We got specific permission to use a

5  chaos 8.had icon for original designer.  The soul

6  drinkers icon.  That's it.

7          MS. HARTZELL:  And although -- I believe

8  that it's obvious for the context, I will also note for

9  the record that in responding the question, the witness

10  does not acknowledge that any of these are in fact

11  trademarks of games work shop.
                 Page 156

RGH_NV022013 (2).txt

12          THE WITNESS:  Yes, I will agree with that.

13     Q.  (BY MR. MOSKIN)  For the list of marks and

14  icons you just mentioned, I'd like to clarify whether

15  you contend that games work shop -- whether you --

16  strike that.

17          For the list of trademarks and eye cons you

18  just mentioned, are there -- putting aside whether they

19  were trademarks, are you aware that games work shop used

20  each of those before you in books?  So that, for

21  example, the first name you mentioned, you said that you

22  sold a blood RAVEN's product before games work shop sold

23  a blood RAVEN's product.

24     A.  Uh-huh.

25     Q.  Before you sold your blood RAVEN's product, had


                NON-CERTIFIED ROUGH DRAFT

                                                    171


1  games work shop described a blood RAVENs figure or

2  character in any of its books?

3          MS. HARTZELL:  So are you asking whether

4  they had used the words.

5     Q.  (BY MR. MOSKIN)  So -- yes?

6     A.  They've mentioned blood RAVENZ in fictions,

7  yes.

8     Q.  So for example when ChapterHouse launched its

9  blood RAVENZ product, there had already been reference

10  to blood RAVENs in games work shops books that you were

11  aware of?

12     A.  The word blood REF en has been in the fiction

13  before.  And we released product, yes.

                  Page 157

RGH_NV022013 (2).txt

14    Q.  Would that be part of your nominative fair use

15  defense that you needed to use the word blood RACHZ to

16  refer to what was previously described in one of games

17  work shop's books?

18            MS. HARTZELL:  Objection.  Form.

19            THE WITNESS:  ^ CHECK‰ not necessarily, no.

20    Q.  (BY MR. MOSKIN)  Well, what do you mean?

21  Does --

22    A.  Just because -- my understanding of trademark

23  and --

24    Q.  I'm not asking you about trademarks.  We don't

25  need to be -- I'm not asking you to be a lawyer.


                    NON-CERTIFIED ROUGH DRAFT

                                                    172


 1    A.  Okay.

 2    Q.  I'm saying that when you -- ChapterHouse began

 3  selling a blood RAVENZ product, did you use the name

 4  blood RAVENZ in order to refer to a prior games work

 5  shop character or figure in one of its books?

 6            MS. HARTZELL:  Objection.  Form.

 7            THE WITNESS:  We used it to refer to a fax

 8  and the fix and I'm not a specific character or model.

 9    Q.  (BY MR. MOSKIN)  Fashion endangered work shops

10  rather fiction you're saying?

11    A.  Yes, we were saying stating that this could be

12  used by players to describe their armies ^ CHECK‰.

13    Q.  And that game work shop fix had existed before

14  in ChapterHouse sold a blood RAVENZ product?

15    A.  Yes.

16    Q.  Okay.  And the same basic question for each of

                          Page 158

RGH_NV022013 (2).txt

17  the other marks or eye cons that you mentioned where you
18  said you sold a product using that name or icon before
19  getting games work shop -- the question being:  Had
20  games work shop in each instance made reference to such
21  a thing or character some somewhere before ChapterHouse
22  in one of its books or by contrast, is there some
23  instance where you say you came up with the name before.
24  Games work shop had used it in any way trademark or
25  otherwise?

                    NON-CERTIFIED ROUGH DRAFT
                                                       173

 1           MS. HARTZELL:  Objection.  Form.
 2           THE WITNESS:  I would say that they had
 3  mentioned the idea of each of these ideas in fiction
 4  before we came out with our idea of it.
 5      Q.  (BY MR. MOSKIN)  Okay.  I have no further
 6  questions at this point in time.  However I note on the
 7  record that ChapterHouse yesterday apparently produced
 8  some 14,000 pages communications from Mr. FOOER and
 9  therefore I cannot close the deposition.  We reserve the
10  right to complete the deposition of ChapterHouse after
11  having had the opportunity to review those late produced
12  documents that were -- should have been produced we
13  believe 30 days ago?
14           MS. HARTZELL:  If the court orders the
15  deposition to continue, we will do so.  I have a couple
16  of questions.
17                       EXAMINATION
18  BY MS. HARTZELL:
                      Page 159

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GAMES WORKSHOP LIMITED,

        Plaintiff,

        v.

CHAPTERHOUSE STUDIOS LLC and JON
PAULSON d/b/a PAULSON GAMES

        Defendants.

Civil Action No. 1:10-cv-8103

Hon. Matthew F. Kennelly
Hon. Jeffrey T. Gilbert

## PLAINTIFF GAMES WORKSHOP LIMITED'S THIRD SUPPLEMENTAL RESPONSE TO DEFENDANT CHAPTERHOUSE STUDIOS LLC'S INTERROGATORIES SET FOUR

Pursuant to Fed.R.Civ.P. Rules 26 and 33, Games Workshop responds as follows to the Fourth Set Interrogatories of Defendant Chapterhouse Studios LLC.

### GENERAL OBJECTIONS

1. Games Workshop incorporates by reference the general objections in Games Workshop Limited's Response and Supplemental Responses to Defendant Chapterhouse Studios LLC's Interrogatories Set Four.

### INTERROGATORIES

**INTERROGATORY NO. 18:**

Separately for each mark YOU allege in this action, provide the date of first "use in commerce" of the mark (as that term is defined in 15 U.S.C. § 1127) by you in the U.S., and the nature of such use.

**RESPONSE:**

Games Workshop objects that this request seeks information that is irrelevant and not likely to lead to the discovery of admissible evidence insofar as Chapterhouse does not purport to claim priority of use over Games Workshop with respect to any of its marks in issue. As a result



EXHIBIT
188

| | |
|---|---|
| Chaplain | 1987 |
| Chimera | 1995 |
| Crimson Fists | 1987 |
| Dark Angel | 1987 |
| Death Watch | 2001 |
| Devastator Space Marine | 1989 |
| Dreadnought | 1987 |
| Drop Pod | 1990 |
| Eldar | 1987 |
| Eldar Farseer | 1990 |
| Eldar Jet Bike | 1988 |
| Eldar Warlock | 1990 |
| Eldar Seer Council | 2000 |
| Empire | 1986 |
| Exorcist | 1989 |
| Flesh Tearers | 1987 |
| Gaunt | 2002 |
| Genestealer | 1987 |
| Heavy Bolter | 1987 |
| Heresy Armour | 1991 |
| Hellhound | 1995 |
| High Elf | 1992 |
| Hive Tyrant | 1987 |
| Horus Heresy | 1988 |
| Howling Banshee | 1991 |
| Howling Griffons | 1998 |
| Imperial Fists | 1991 |
| Imperial Guard | 1989 |
| Inquisition | 1987 |
| Iron Hands | 1987 |
| Jetbike | 1987 |

| | |
|---|---|
| Ymgarl | 1987 |
| Black Templars Icon | 2005 |
| Blood Angels Icon | 1987 |
| Blood Ravens Icon | 1987 |
| Celestial Lions Icon | 1993 |
| Dark Angels Winged Sword Icon | 2006 |
| Exorcist Skull Icon | 1989 |
| Flesh Tearers Icon | 1987 |
| Howling Griffons Icon | 1989 |
| Imperial Fists Icon | 1987 |
| Iron Snakes Icon | 2002 |
| Legion of the Damned Icon | 2004 |
| Chaos Space Marines Eight-Pointed Star Icon | 1988 |
| Soul Drinkers Icon | 1987 |
| Salamanders Icon | 1989 |
| Tau Empire Icon | 2001 |
| Space Marine Tactical Squad Icon | 1991 |
| Space Marine Assault Squad Icon | 1995 |
| Space Marine Devastator Squad Icon | 1995 |
| Ultramarine Icon | 1987 |
| Adeptus Mechanicus Cog Icon | 1995 |
| Iron Hands Icon | 1987 |
| Space Wolves Icon | 1989 |
| Thousand Sons Icon | 2004 |
| Mantis Warrior Icon | 1988 |

## CERTIFICATE OF SERVICE

I, Jason J. Keener, an attorney, hereby certify that on January 31, 2013, I caused a copy of the foregoing GAMES WORKSHOP LIMITED'S THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORIES SET FOUR to be served on the interested parties by causing copies of this document to be served on the following *via* email on counsel of record for Chapterhouse Studios.

/s/ Jason J. Keener
Jason J. Keener

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GAMES WORKSHOP LIMITED,                )
                                       )
            Plaintiff,                 )
                                       )    Civil Action No. 1:10-cv-08103
v.                                     )
                                       )    Honorable Matthew F. Kennelly
CHAPTERHOUSE STUDIOS LLC,              )    Honorable Jeffrey T. Gilbert
                                       )
            Defendant.                 )

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S SUPPLEMENTAL RESPONSES TO**
**PLAINTIFF'S EIGHTH SET OF INTERROGATORIES (NOS. 24 & 25)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant

Chapterhouse Studios LLC ("Chapterhouse") responds as follows to the Interrogatories Labeled

Second Set of Interrogatories Nos. 8 & 9. Because Plaintiff has previously served seven sets of

interrogatories, Chapterhouse will refer to the interrogatory served at 7:30 p.m. Central time on

December 12, 2012 as Plaintiff's Eighth Set of Interrogatories (Nos. 24 & 25).

This response is based on Chapterhouse's continuing investigation, and Chapterhouse

reserves the right to amend or supplement these responses as more information becomes known.

This response is not intended to be used as admissions or as evidence other than as required by

the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

Chapterhouse incorporates by reference the preliminary statement and general objections

set forth in Defendant Chapterhouse Studios LLC's Responses to Plaintiff's Seventh Set of

Interrogatories (Nos. 18-23).

**RESPONSES**

**INTERROGATORY NO. 8:** (*sic* 24)

Set forth all facts or other grounds, if any, including the identification of any pertinent
documents, on which Chapterhouse relies for each of the affirmative defenses asserted in its
forthcoming Answer to the Second Amended Complaint herein.



**ANSWER:** In addition to its general objections, Chapterhouse objects that this is an untimely contention interrogatory. Chapterhouse further objects to this request as overbroad, unduly burdensome, and seeking information outside the scope of permissible discovery. Chapterhouse further objects to this request as improperly separately seeking substantive information on unrelated topics. Chapterhouse objects to this request as overly broad and unduly burdensome. Without waiving and subject to these objections and its general objections, Chapterhouse states that, in support of its affirmative defense that Plaintiff's claims are barred because its copyright and trademark registrations were obtained through fraud on the Copyright Office or the Patent and Trademark Office, Chapterhouse relies upon each piece of correspondence with the Copyright Office or the Patent and Trademark Office that Games Workshop has, withheld from production or failed to timely produce in this lawsuit (which includes all correspondence with each administrative office to the best of Chapterhouse's understanding). With respect to its challenge to the ownership of plaintiff's copyrights in the newly identified works, Chapterhouse states that documents have not been provided demonstrating the ownership of those works and Chapterhouse bases its defense upon that failure. In accordance with Fed. R. Civ. P. 33(d), Chapterhouse further states that it has produced or will produce business records from which the answer to this interrogatory with respect to each of its affirmative defenses can be derived.

**SUPPLEMENTAL ANSWER:**

In connection with the Newly Accused Works, Chapterhouse asserts the affirmative defense that Games Workshop has committed fraud on the copyright office by manipulating this court proceeding and the copyright office in order to withhold information material to the Copyright Office's determination of registrability with an intent to improperly influence the Copyright Office's determination. Games Workshop has filed copyright infringement claims

2

directed solely to the shape and size of certain shoulder pad products and shoulder pad products affixed with common elements. On August 8, 2011, during discovery in this litigation, Chapterhouse requested production of "all correspondence with any government agency or private copyright registration service concerning" each of the alleged works-in-suit. Games Workshop agreed on October 19, 2011 to produce responsive documents.

On June 7, 2012, Counsel in this litigation received correspondence from the Copyright Office refusing to register the sculptural portion of the "Assault Squad Shoulder Pads" because the sculpture portion is too minimal. Counsel did not produce this correspondence to Chapterhouse.

After the close of fact discovery, the parties filed summary judgment motions on, among other things, the issue of registrability of certain of the alleged works-at-issue, including "Assault Squad Shoulder Pads." The physical specimen of the "Assault Squad Shoulder Pads" was not submitted to nor considered by the district court which entered its decision on November 27, 2012. Despite the fact that the very issue of registrability of the "Assault Squad Shoulder Pads" and other similar shoulder pad designs was at issue in the Summary Judgment Briefing and that the Copyright Office's determination is entitled to deference from the Court, counsel for Games Workshop continued to withhold the relevant correspondence with the copyright office in which the copyright office refused copyright registration. During this very same period of time, counsel for Games Workshop continued to correspond with the Copyright Office while withholding each of its repeated communications.

After withholding the copyright office's initial determination from both Chapterhouse and the district court, Games Workshop then sought to leverage the district court's decision (improperly made without benefit of the Copyright Office's refusal to register) by providing a

3

copy of the Court's order to the Copyright Office on December 7, 2012 without noting that counsel withheld evidence from the Court's consideration in reaching its determination.

Upon independently learning of the copyright office correspondence, Chapterhouse filed a motion for reconsideration of summary judgment on December 27, 2012. The court held hearings on the motion on January 8 and January 14, 2012. On January 4, the Copyright Office sent a letter again refusing to register the sculptural elements of the "Assault Squad Shoulder Pads." At the hearings on January 8 and January 14 and in concurrent correspondence with counsel for Chapterhouse, Games Workshop repeatedly stated that it had not yet received the Copyright Office's letter dated January 4. On January 16, Counsel for Games Workshop noted that it had in its possession the Copyright Office's January 4 correspondence. However, Counsel for Games Workshop again withheld production of the Copyright Office correspondence until January 31, 2013, the same date that Counsel for Games Workshop contacted the Copyright Office to abandon its request for registration. In support of this defense, Chapterhouse may rely upon each of the communications between Games Workshop and the Copyright Office regarding any of its pending registrations.

Chapterhouse asserts the legal defense of copyright fair use because, to the extent that Chapterhouse has used any protectable elements of Games Workshop's copyrights, the amount of the protectable elements used is minimal in scope, the use is transformative, and the Chapterhouse products are generally supplements to products offered for sale by Games Workshop so enhance potential sales by Games Workshop rather than harming the value of the protected work. In support of this claim, Chapterhouse relies upon the alleged protected works, the accused works, and documents regarding the creation of the accused works.

4

Chapterhouse asserts the legal defense of nominative fair use, when a defendant is using a plaintiff's trademark to refer to the plaintiff's goods or services, it should not be subject to liability under the Lanham Act, provided its use is not misleading or untruthful and confusion is not likely. A trademark owner is not entitled to forbid the use of its trademark where the trademark is used primarily in an informational sense. Accordingly, in naming and describing its products, Chapterhouse has used only that portion of the Games Workshop trademarks at issue as are necessary to identify Games Workshop products for which the Accused Chapterhouse products are compatible in size, an identification that is necessary for consumers to identify one possible use for Chapterhouse's products. Chapterhouse has done nothing to suggest sponsorship or endorsement by Games Workshop and has instead included a disclaimer on its website noting Games Workshop's trademark rights and separate affiliation.

Chapterhouse asserts that Games Workshop's state law claims are preempted by federal law to the extent that the facts supporting the state law claims merely parrot the federal law.

Chapterhouse further asserts that Games Workshop's trademark claims with respect in particular to the alleged trademarks lasgun, jet bike, heavy weapon, plasma cannon, assault cannon, lascannon, power claws, lightning claws, and melta gun because the trademarks are generic or merely descriptive of the products at issue.

**INTERROGATORY NO. 9:** (*sic* 25)

Identify by name and last known address (including email address and phone) all individuals who have responded to any Chapterhouse advertisements, promotions or other postings for the Accused Works on forums or otherwise, where such response has referred to Games Workshop or any Games Workshop's products. Such identification should include the date and content of the individual's response. If Chapterhouse does not know the individual's name and last known address, identify the individual's screen name and any other contact information known to Chapterhouse.

5

## VERIFICATION

I, Nicholas Villacci, declare:

I am authorized to make this verification for and on behalf of Defendant Chapterhouse Studio LLC, and I make this verification for that reason. I have read the foregoing DEFENDANT CHAPTERHOUSE STUDIOS LLC'S SUPPLEMENTAL RESPONSE TO GAMES WORKSHOP LTD.'S EIGHTH SET OF INTERROGATORIES TO CHAPTERHOUSE STUDIOS LLC (NOS. 24-25) and know the contents thereof. On information and belief, the matters herein are true.

I declare under penalty of perjury that the foregoing is true and correct.

February 1, 2013

NICHOLAS VILLACCI

10

## CERTIFICATE OF SERVICE

I, Julianne Hartzell, hereby certify that I caused a copy of the foregoing DEFENDANT CHAPTERHOUSE STUDIOS LLC'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S EIGHTH SET OF INTERROGATORIES (NOS. 24 & 25) to be served on the interested parties by causing copies of this document to be served on February 1, 2013 via electronic mail on:

> Jason J. Keener
> Foley & Lardner LLP
> 321 North Clark Street
> Suite 2800
> Chicago, Illinois 60654
>
> Jonathan E. Moskin
> Foley & Lardner LLP
> 90 Park Avenue
> New York, New York 10016

> */s/ Julianne M. Hartzell*
> Julianne M. Hartzell

10

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GAMES WORKSHOP LIMITED,    )
    )
    Plaintiff,    )
    )
    )  Case No. 1:10-cv-08103
v.    )
    )
CHAPTERHOUSE STUDIOS LLC and JON    )
PAULSON d/b/a PAULSON GAMES,    )
    )  Judge Matthew F. Kennelly
    Defendants.    )
    )

**CONTAINS CONFIDENTIAL AND HIGHLY CONFIDENTIAL INFORMATION
PURSUANT TO PROTECTIVE ORDER**

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S SECOND SUPPLEMENTAL
RESPONSE TO GAMES WORKSHOP LTD.'S SECOND SET OF INTERROGATORIES
TO CHAPTERHOUSE STUDIOS LLC (NOS. 3-13)**

PROPOUNDING PARTY:    PLAINTIFF GAMES WORKSHOP LIMITED

RESPONDING PARTY:    DEFENDANT CHAPTERHOUSE STUDIOS LLC

SET:    TWO

    Pursuant to Federal Rule of Civil Procedure 33, Defendant Chapterhouse Studios LLC

("Chapterhouse") hereby supplements its responses to the second set of Interrogatories from

Plaintiff Games Workshop Limited ("Games Workshop"), as follows:

**GENERAL OBJECTIONS:**

    Chapterhouse incorporates the following General Objections as if set forth fully in

response to each interrogatory in Games Workshop's Second Set of Interrogatories.

    1.    These responses are made solely for the purposes of ouse

has not completed its investigation into the facts of this case. The r   y on

1

### RESPONSE TO INTERROGATORY NO. 12

In addition to its General Objections, Chapterhouse objects to this interrogatory as vague and ambiguous. Chapterhouse further objects to this interrogatory as massively overbroad, unduly burdensome, and seeking information outside the scope of permissible discovery.

Without waiving, and subject to its General Objections and these specific objections, Chapterhouse responds pursuant to Federal Rule of Civil Procedure 33(d) that it will produce documents in response to Request for Production No. 26, as detailed in the response, and subject to the objections provided, thereto.

### INTERROGATORY REQUEST NO. 13:

Set forth all facts or other grounds, if any, on which Chapterhouse relied for each of the affirmative defenses asserted in its Answer to the Amended Complaint herein.

### RESPONSE TO INTERROGATORY NO. 13

In addition to its General Objections, Chapterhouse objects that this is an untimely contention interrogatory. Chapterhouse further objects to this interrogatory as vague and ambiguous. Chapterhouse further objects to this interrogatory as massively overbroad, unduly burdensome, and seeking information outside the scope of permissible discovery.

### SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:

In addition to its General Objections, Chapterhouse objects that this is an untimely contention interrogatory. Chapterhouse further objects to this interrogatory as vague and ambiguous. Chapterhouse further objects to this interrogatory as massively overbroad, unduly burdensome, and seeking information outside the scope of permissible discovery. Finally, Chapterhouse specifically objects that Chapterhouse has not received discovery in response to many of its document requests and interrogatories; such documents, uniquely in possession of Plaintiff, are key to many of the affirmative defenses in the Answer to the Amended Complaint.

Without waiving, and subject to its General Objections and these specific objections, and subject to its continuing right and obligation to supplement this response further as new facts and information come to light, Chapterhouse responds as follows.

To the extent Games Workshop alleges that Chapterhouse infringed Games Workshop's copyrights in works that were first published in the United States, Games Workshop must have, or have applied for United States copyright registrations in order to maintain the copyright claims. To the extent Games Workshop does not own the copyrights for works it claims in this action, it lacks standing to bring its copyright infringement claim.

Chapterhouse denies copying any protected expression from Games Workshop, but to the extent that the Court finds otherwise, Chapterhouse maintains that any such use was a fair use: Chapterhouse's use, if any, is transformative because its works are different from Games Workshop's, because it did not use a substantial portion of any Games Workshop work, and because there is no adverse impact on the market for Games Workshop's works. To the extent this Court finds that Chapterhouse did copy a portion of one or more Games Workshop works to make its works, Chapterhouse maintains that such portion is so small as to be de minimis.

Chapterhouse maintains that its designers refer to many sources when creating works, including but not limited to the natural world, military history, heraldry, and other science fiction and fantasy worlds. Chapterhouse's designers routinely refer to images found on Internet search engines and other sources. Chapterhouse also refers to its response to Games Workshop's Interrogatory No. 2.

Chapterhouse bases its affirmative defenses of waiver, acquiescence and license on the fact that Games Workshop encourages fans of Warhammer 40,000 to create their own works for

use in its games, as well as encouraging the alteration and adaptation of its own works by those fans.

Games Workshop uses what legitimate intellectual property rights it does have to impede creativity and commerce by linking those rights to broad prohibitions on fair uses of its works as well as prohibitions on creating and selling works that are compatible with or fit into the world of Games Workshop's works.

Chapterhouse bases its defense of nominative fair use on its website and product descriptions, which use Games Workshop's alleged marks to describe compatibility with or make comparisons to Games Workshop's products.

Chapterhouse further responds pursuant to Federal Rule of Civil Procedure 33(d) that it has also produced documents responsive to this interrogatory.

Dated: February 3, 2012                     Respectfully submitted,

CHAPTERHOUSE STUDIOS LLC

By:      /s/ Thomas J. Kearney
         Jennifer Golinveaux (CA Bar No. 203056)
         Dean A. Morehous (CA Bar No. 111841)
         Thomas J. Kearney (CA Bar No. 267087)
         WINSTON & STRAWN LLP
         101 California Street
         San Francisco, CA  94111-5802
         Phone: (415) 591-1000
         Fax: (415) 591-1400
         jgolinveaux@winston.com
         dmorehous@winston.com
         tkearney@winston.com

31

Eric Mersmann (IL Bar No. 6286859)
Jon Raffensperger (IL Bar No. 6302802)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600
Fax: (312) 558-5700
emersmann@winston.com
jraffensperger@winston.com

## VERIFICATION

I, Nicholas Villacci, declare:

I am authorized to make this verification for and on behalf of Defendant Chapterhouse Studio LLC, and I make this verification for that reason. I have read the foregoing DEFENDANT CHAPTERHOUSE STUDIOS LLC'S SECOND SUPPLEMENTAL RESPONSE TO GAMES WORKSHOP LTD.'S SECOND SET OF INTERROGATORIES TO CHAPTERHOUSE STUDIOS LLC (NOS. 3-13) and know the contents thereof. On information and belief, the matters herein are true.

I declare under penalty of perjury that the foregoing is true and correct.

February 3, 2012

_____
Nicholas Villacci

33

SF 327608.3

# EXHIBIT F

## Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**VA 1-824-668**

**Effective date of
registration:**

March 8, 2012

---

## Title

**Title of Work:** Flesh Tearers Shoulder Pads

## Completion/Publication

**Year of Completion:** 2000

**Date of 1st Publication:** September 30, 2000     **Nation of 1st Publication:** United Kingdom

## Author

■     **Author:** Games Workshop Limited

**Author Created:** text, photograph(s), 2-D artwork, sculpture

**Work made for hire:** Yes

**Citizen of:** United Kingdom     **Domiciled in:** United Kingdom

## Copyright claimant

**Copyright Claimant:** Games Workshop Limited

Willow Road, Lenton, Nottingham, NG7 2WS, United Kingdom

## Rights and Permissions

**Organization Name:** Foley & Lardner LLP

**Name:** Jonathan Moskin

**Email:** jmoskin@foley.com     **Telephone:** 212-682-7474

**Address:** 90 Park Avenue

New York, NY 10016  United States

## Certification

**Name:** Jonathan Moskin

**Date:** March 1, 2012

**Applicant's Tracking Number:** 099251-0102

---

**Registration #:** VA0001824668
**Service Request #:** 1-732506048



Foley & Lardner LLP
Jonathan Moskin
90 Park Avenue
New York, NY 10016  United States





# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GAMES WORKSHOP LIMITED,

Plaintiff,

v.

CHAPTERHOUSE STUDIOS LLC and JON
PAULSON d/b/a PAULSON GAMES

Defendants.

Civil Action No. 1:10-cv-8103

Hon. Matthew F. Kennelly
Hon. Jeffrey T. Gilbert

## DECLARATION OF JONATHAN MOSKIN IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION TO STRIKE

I, Jonathan Moskin, hereby declare:

1.        I am a partner with the firm, Foley & Lardner LLP, attorneys for Plaintiff Games Workshop Limited, and am admitted *pro hac vice* in this matter.  I have personal knowledge of the matters set forth below.

2.        Attached hereto as Exhibits A is my correspondence with the Copyright Office concerning the subject work Assault Squad Shoulder Pad.  The Copyright Office has yet to address in any substantive way the copyrightability of the work.  As shown by a December 27 email from a supervisor for the employee who initially responded, the supervisor has now taken over the matter but has expressed no opinion on the copyrightability of the work.

3.        During the parties' telephonic meet and confer on November 2, 2012 as part of their discussion of potential motions in limine, counsel for Chapterhouse inquired into the status of any possible communications with the Copyright Office.  Although I had no recollection of any such discovery request, I stated during the call that I had no objection in principal to

1

4820-0715-2658.1

updating Games Workshop's prior responses. Moreover, a further reason Games Workshop was eager to produce the correspondence was that in exchange for allowing Chapterhouse to use the correspondence at trial, Chapterhouse had agreed not to require Games Workshop to incur the enormous expense of obtaining certified copies of the registrations. I do not understand the basis for statement in the Declaration of Jennifer Golinveau (¶7) that I or Games Workshop were reluctant to produce the materials. To the contrary, although I may have expressed some uncertainty whether there had ever been such a discovery request (given the passage of over a year since the request was served and the very large number of discovery requests served overall), given the obvious duty to supplement regardless of content, assuming there had been such a request, there was little downside to Games Workshop in allowing Chapterhouse to try to use the materials at trial (particularly given the likely irrelevance and inadmissibility of any such materials for reasons stated in the accompanying brief, of which Chapterhouse seems unaware) in exchange for Chapterhouse's agreement to spare Games Workshop the cost and burden (however unfair or unreasonable) of obtaining certified copies of all of its registrations.

4.      Following the call, opposing counsel forwarded an excerpt from Chapterhouse's September 9, 2011 discovery requests (Request 37 of 86 total document requests served during fact discovery), confirming that Chapterhouse had made such a request.

5.      Soon after the call and receipt of the prior discovery request, I began culling my records to gather such correspondence, none of which had existed at the time of the prior discovery. As I explained in my November 5 email to Ms. Golinveaux, I was also delayed in doing so as my office was closed for a week after Hurricane Sandy and I was then out of the office for part of the following week. In the process, I noticed that the Copyright Office had never responded to my June 26 email concerning the application for the Assault Squad Shoulder

2

4820-0715-2658.1

pad.  I thus telephoned the Copyright Office to speak with the employee who had first contacted me on June 7 regarding the matter.  I left a message with one of her colleagues inquiring generally about the status of the matter, following which I received the November 7 email included in Exhibit A.

6.      Although we were preparing to produce all of the correspondence as part of trial preparation (and eager to spare Games Workshop the burden of obtaining certified copies of all the copyright registrations), on November 15, the Court vacated the trial date and shortly thereafter rendered its decision on the summary judgment motions.  Moreover, in the interim in discussions with Chapterhouse concerning the new complaint, filed November 12, Chapterhouse made very plain that it recognized no duty to supplement its own discovery responses, leading Games Workshop to seek to bring the issue to the attention of the Court.  Games Workshop, to the contrary, consistently acknowledged its duties under Rule 26(e) and never purported to renege on its agreement to produce all correspondence with the Copyright Office.

7.      Regarding the suggestion that Games Workshop deliberately concealed evidence from the Court, the reality is that, given the lack of any response from the Copyright Office following my June 26 email, I assumed the matter was resolved.  It has been my experience in filing copyright applications that the examiners are very prompt in responding.  The failure of the examiner in this case to respond at all for over four months together with the passage of so much time since Chapterhouse served its discovery did not present this as a live issue warranting attention.  As noted, I did not review the status of the applications until Chapterhouse raised the issue in November.

8.      I also note that attached to Games Workshop's Complaint in the second action (now the Second Amended Complaint in this action) is a list (Exhibit A) of all the applications

and registrations obtained by Games Workshop.  Although Chapterhouse states that it picked two applications at random, it appears that they simply picked the first two listed sculptural works that remain pending.

9.      Prior to receipt of Chapterhouse's motion (either before or after the Court confirmed on December 12 that the duty to supplement applied equally to both parties and set a deadline of January 31 to make such supplemental responses), we never received a telephone call, email or other inquiry from counsel for Chapterhouse asking about the status of the correspondence.  Without awaiting the January 31 deadline to supplement we have now produced all of the correspondence previously assembled and will promptly supplement to include any new materials.

I hereby declare under penalty of perjury this 4th day of June, 2013 that the foregoing is true and correct.

/s/ Jonathan E. Moskin
Jonathan E. Moskin

4

## CERTIFICATE OF SERVICE

I, Jason J. Keener, an attorney, hereby certify that on January 4, 2012, I caused to be filed electronically the foregoing DECLARATION OF JONATHAN MOSKIN with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

/s/ Jason J. Keener

Jason J. Keener

4820-0715-2658.1

# Exhibit

# A

**Moskin, Jonathan**

| From: | Moskin, Jonathan |
|---|---|
| Sent: | Tuesday, June 26, 2012 6:29 PM |
| To: | Copyright Office |
| Subject: | RE: 1-732432166 Assault Squad Shoulder Pads |

My understanding is that the 2010 copyright notice simply refers to the date of printing of this particular packaging, but that the artwork and sculpture were created and first published in 2000 as specified. I hope this answers your question about the dates but please let me know.

I would also propose speaking with you to discuss the questions you have regarding the sculptural elements. I have included a telephone number below if you wish to call. Obviously, I am mindful of the 20-day deadline you noted, which I believe expires tomorrow. I hope that while we address any remaining questions we can extend the deadline.

Thank you

Jonathan Moskin
212-338-3572

-----Original Message-----
From: Copyright Office [mailto:cop-ad@loc.gov]
Sent: Thursday, June 07, 2012 11:30 AM
To: Moskin, Jonathan
Subject: 1-732432166 Assault Squad Shoulder Pads

Dear Jonathan Moskin:

I am examining this text, photograph(s), 2-D artwork, sculpture claim for Games Workshop. The application gives the year of completion as 2000, and the pub date as 9/30/2000. The copyright notice has 2010 on the packaging. Please clarfiy what is being registered on the 9/30/2000 date. I see what looks like graphics of the pads which we could register. Please confirm they are artwork and not photos.

Also, we cannot register the sculpture portion as it is too minimal. The text on this package appears to be the same as Crimson fist shoulder pads and cannot be registered again. Please allow permission to remove sculpture and text from the application.

Please note that if we do not receive a response to this message within 20 days, we will close this case without processing your registration or notifying you further, and forward your deposit copy(ies) under the provisions of the current copyright law. The fee is not refundable. If you re-apply for registration after the case is closed, you must send a new application, copy and fee. The effective date of registration will be based on the new submission.

Sincerely,
Robin Jones
Registration Specialist
Visual Arts Division
U.S. Copyright Office

When replying to this email, please include the following thread id (entire line) within the body of your response to expedite routing to the correct office.

[THREAD ID:1-CV2JUR]

1

GW0011403

## Moskin, Jonathan

| | |
|---|---|
| **From:** | Copyright Office [cop-ad@loc.gov] |
| **Sent:** | Thursday, June 07, 2012 11:30 AM |
| **To:** | Moskin, Jonathan |
| **Subject:** | 1-732432166 Assault Squad Shoulder Pads |

Dear Jonathan Moskin:

I am examining this text, photograph(s), 2-D artwork, sculpture claim for Games Workshop. The application gives the year of completion as 2000, and the pub date as 9/30/2000. The copyright notice has 2010 on the packaging. Please clarfiy what is being registered on the 9/30/2000 date. I see what looks like graphics of the pads which we could register. Please confirm they are artwork and not photos.

Also, we cannot register the sculpture portion as it is too minimal. The text on this package appears to be the same as Crimson fist shoulder pads and cannot be registered again. Please allow permission to remove sculpture and text from the application.

Please note that if we do not receive a response to this message within 20 days, we will close this case without processing your registration or notifying you further, and forward your deposit copy(ies) under the provisions of the current copyright law. The fee is not refundable. If you re-apply for registration after the case is closed, you must send a new application, copy and fee. The effective date of registration will be based on the new submission.


Sincerely,
Robin Jones
Registration Specialist
Visual Arts Division
U.S. Copyright Office

When replying to this email, please include the following thread id (entire line) within the body of your response to expedite routing to the correct office.

[THREAD ID:1-CV2JUR]

GW0011423

**Keener, Jason J.**

| | |
|---|---|
| **From:** | Copyright Office [cop-ad@loc.gov] |
| **Sent:** | Thursday, December 27, 2012 10:25 AM |
| **To:** | Moskin, Jonathan |
| **Subject:** | RE: RE: RE: RE: 1-732432166 Assault Squad Shoulder Pads |

Mr. Moskin,

We did receive your message with information about the court decision.  I've taken over both cases for the specialist who is on extended leave.  We look at each case on an individual basis.  You should receive an email shortly with some questions that remain about the Crimson Fists Shoulder Pads.   I will examine the materials submitted with this claim (Assault Squad Shoulder Pads) and will make a determination shortly.

Carol Frenkel
Supervisory Registration Specialist
Visual Arts Division
U.S. Copyright Office


When replying to this email, please include the following thread id (entire line) within the body of your response to expedite routing to the correct office.

[THREAD ID:1-CV2JUR]


-----Original Message-----
From:  JMoskin@foley.com
Sent: 12/11/2012 11:24:01 AM
To:  "'Copyright Office'" <cop-ad@loc.gov>
Subject: RE: RE: RE: 1-732432166 Assault Squad Shoulder Pads

I do not understand your response, which did not acknowledge my message.  As I mentioned, a Federal Court has already held, based on among other things on a review of expert testimony submitted by the adverse party to the litigation that assessed prior designs of shoulder pads in military and gaming contexts, that the shape of the shoulder pad itself is original and copyrightable.  The case is Games Workshop Limited v. Chapterhouse Studios LLC, 1:10-cv-08103 (N.D.Ill). The addition of further distinguishing material (which has additional meaning in the context of the fictional Warhammer 40,000 universe) on the protectable shoulder pad should not render it uncopyrightable.

Moreover, if you inspect the shoulder pad itself, you will see that it has a lip around the edge and that what you call an "x" has more detail than that might suggest - including triangular devices at each end and a hollowed indentation running the length of the "x" shape.  The center of each triangular shape is also hollowed.

I hope this helps clarify the matter.  Please let me know if you would like a copy of the decision or if you wish to discuss this further.

Jonathan Moskin
212-338-3572

-----Original Message-----
From: Copyright Office [mailto:cop-ad@loc.gov]
Sent: Tuesday, December 11, 2012 9:39 AM
To: Moskin, Jonathan
Subject: RE: RE: RE: 1-732432166 Assault Squad Shoulder Pads

1

GW0011427

When replying to this email, please include the following thread id (entire line) within
the body of your response to expedite routing to the correct office.


When replying to this email, please include the following thread id (entire line) within
the body of your response to expedite routing to the correct office.

[THREAD ID:1-CV2JUR]

this particular shoulder pad submitted is not copyrightable.  it is simply circular, with
an x or plus sign on it.

-----Original Message-----

From:  JMoskin@foley.com
Sent:  12/7/2012 04:34:54 PM
To:  "'Copyright Office'" <cop-ad@loc.gov>
Subject:  RE: RE: 1-732432166 Assault Squad Shoulder Pads

I left you a message to discuss this.  I wanted to point out that in a recent decision,
the US District Court for the Northern District of Illinois ruled that the basic shape of
the Games Workshop shoulder pad is copyrightable (even without surface ornamentation).  I
would be happy to get you a copy of the decision.

Please also feel free to call me.

Jonathan Moskin
212-338-3572

-----Original Message-----
From: Copyright Office [mailto:cop-ad@loc.gov]
Sent: Wednesday, November 07, 2012 2:19 PM
To: Moskin, Jonathan
Subject: RE: RE: 1-732432166 Assault Squad Shoulder Pads




When replying to this email, please include the following thread id (entire line) within
the body of your response to expedite routing to the correct office.


When replying to this email, please include the following thread id (entire line) within
the body of your response to expedite routing to the correct office.

[THREAD ID:1-CV2JUR]

This claim in "text, photos, 2d artwork, sculpture" was delayed as I had not received
permission to remove certain aspects of authorship from the appl.

The email stated that the "sculpture" was to minimal (it is basically an "X") and could
not be registered.  Your email stated that the (c) notice on the package refers to the
printing date.

The "text" appears to be same as the text on the Crimson fist should pads package.  When
was the text first published/registered?  If already registered, the text cannot be
registered again.

In regards to the "2d artwork", there was no clarification from my previous email: "I see

2

GW0011428

what looks like graphics of the [shoulder] pads which we could register [as 2d artwork]".
Please confirm they are artwork and not photos."

Robin Jones
-----Original Message-----

From:  JMoskin@foley.com
Sent:  6/26/2012 06:29:09 PM
To:  Copyright Office <cop-ad@loc.gov>
Subject:  RE: 1-732432166 Assault Squad Shoulder Pads

My understanding is that the 2010 copyright notice simply refers to the date of printing
of this particular packaging, but that the artwork and sculpture were created and first
published in 2000 as specified.  I hope this answers your question about the dates but
please let me know.

I would also propose speaking with you to discuss the questions you have regarding the
sculptural elements.  I have included a telephone number below if you wish to call.
Obviously, I am mindful of the 20-day deadline you noted, which I believe expires
tomorrow.  I hope that while we address any remaining questions we can extend the
deadline.

Thank you

Jonathan Moskin
212-338-3572

-----Original Message-----
From: Copyright Office [mailto:cop-ad@loc.gov]
Sent: Thursday, June 07, 2012 11:30 AM
To: Moskin, Jonathan
Subject: 1-732432166 Assault Squad Shoulder Pads

Dear Jonathan Moskin:

I am examining this text, photograph(s), 2-D artwork, sculpture claim for Games Workshop.
The application gives the year of completion as 2000, and the pub date as 9/30/2000.  The
copyright notice has 2010 on the packaging.  Please clarfiy what is being registered on
the  9/30/2000 date.  I see what looks like graphics of the pads which we could register.
Please confirm they are artwork and not photos.

Also, we cannot register the sculpture portion as it is too minimal.  The text on this
package appears to be the same as Crimson fist shoulder pads and cannot be registered
again.  Please allow permission to remove sculpture and text from the application.

Please note that if we do not receive a response to this message within 20 days, we will
close this case without processing your registration or notifying you further, and forward
your deposit copy(ies) under the provisions of the current copyright law.  The fee is not
refundable.  If you re-apply for registration after the case is closed, you must send a
new application, copy and fee.  The effective date of registration will be based on the
new submission.

Sincerely,
Robin Jones
Registration Specialist
Visual Arts Division
U.S. Copyright Office

When replying to this email, please include the following thread id (entire line) within
the body of your response to expedite routing to the correct office.

[THREAD ID:1-CV2JUR]

GW0011429

The preceding email message may be confidential or protected by the attorney-client
privilege. It is not intended for transmission to, or receipt by, any unauthorized
persons.  If you have received this message in error, please (i) do not read it, (ii)
reply to the sender that you received the message in error, and (iii) erase or destroy the
message.  Legal advice contained in the preceding message is solely for the benefit of the
Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the
subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include
a disclaimer. To the extent the preceding message contains advice relating to a Federal
tax issue, unless expressly stated otherwise the advice is not intended or written to be
used, and it cannot be used by the recipient or any other taxpayer, for the purpose of
avoiding Federal tax penalties, and was not written to support the promotion or marketing
of any transaction or matter discussed herein.

The preceding email message may be confidential or protected by the attorney-client
privilege. It is not intended for transmission to, or receipt by, any unauthorized
persons.  If you have received this message in error, please (i) do not read it, (ii)
reply to the sender that you received the message in error, and (iii) erase or destroy the
message.  Legal advice contained in the preceding message is solely for the benefit of the
Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the
subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include
a disclaimer. To the extent the preceding message contains advice relating to a Federal
tax issue, unless expressly stated otherwise the advice is not intended or written to be
used, and it cannot be used by the recipient or any other taxpayer, for the purpose of
avoiding Federal tax penalties, and was not written to support the promotion or marketing
of any transaction or matter discussed herein.

The preceding email message may be confidential or protected by the attorney-client
privilege. It is not intended for transmission to, or receipt by, any unauthorized
persons.  If you have received this message in error, please (i) do not read it, (ii)
reply to the sender that you received the message in error, and (iii) erase or destroy the
message.  Legal advice contained in the preceding message is solely for the benefit of the
Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the
subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include
a disclaimer. To the extent the preceding message contains advice relating to a Federal
tax issue, unless expressly stated otherwise the advice is not intended or written to be
used, and it cannot be used by the recipient or any other taxpayer, for the purpose of
avoiding Federal tax penalties, and was not written to support the promotion or marketing
of any transaction or matter discussed herein.


The preceding email message may be confidential or protected by the attorney-client
privilege. It is not intended for transmission to, or receipt by, any unauthorized
persons.  If you have received this message in error, please (i) do not read it, (ii)
reply to the sender that you received the message in error, and (iii) erase or destroy the
message.  Legal advice contained in the preceding message is solely for the benefit of
Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the
subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include
a disclaimer. To the extent the preceding message contains advice relating to a Federal
tax issue, unless expressly stated otherwise the advice is not intended or written to be
used, and it cannot be used by the recipient or any other taxpayer, for the purpose of
avoiding Federal tax penalties, and was not written to support the promotion or marketing
of any transaction or matter discussed herein.

GW0011430