**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED, | |
| Plaintiff, | Civil Action No. 1:10-cv-8103 |
| v. | Hon. Matthew F. Kennelly |
| CHAPTERHOUSE STUDIOS LLC, | Hon. Jeffrey T. Gilbert |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S SECOND
MOTION FOR SUMMARY JUDGMENT**

Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: jkeener@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-3229
Email: jmoskin@foley.com

*Attorneys for Plaintiff
Games Workshop Limited*

4844-7383-6051.2

Plaintiff Games Workshop Limited ("Games Workshop"), by and through its undersigned counsel, respectfully submits this Memorandum in opposition to the Motion for Summary Judgment of Defendant Chapterhouse Studios LLC ("Chapterhouse").

## I.      PRELIMINARY STATEMENT

Essentially duplicating its second motion for reconsideration, Defendant's motion for summary judgment seeks nothing more than for the Court to reconsider matters already decided regarding the copyrightability of the Space Marine shoulder pad, yet does so without ever even addressing the legal significance of the Court's November 27, 2012 decision. The decision, of course, constitutes law of the case, yet Chapterhouse has not even attempted to show why it should be set aside.

Nor has Chapterhouse addressed significant new evidence supporting the Court's prior ruling, including testimony of the sculptor who created the first Space Marine figures in 1985, doing so without reference to any specific prior works, and the admissions of Chapterhouse's new expert, who (like the prior two experts) admits there are no historical antecedents for the Space Marine shoulder pad. Moreover, the essence of Chapterhouse's argument appears to rest on a fundamental confusion between the novelty standard of patent law and the far different originality standard of copyright, arguing that merely because its new expert happens to have belatedly found some alternate shoulder pad designs having some general similarity to the Space Marine shoulder pad design, it somehow undermines the originality of the Games Workshop creation. (GW Add'l Fact 24) It does not. Indeed, laying aside that many of the newly cited references are dated after 1985 and could not possibly have influenced Games Workshop's design, there is simply no evidence that Games Workshop's designers ever saw or made reference to any of the newly discovered designs, or even that they were ever available in England where the designers are located. Just so, when Chapterhouse took the testimony of

1

Games Workshop's former sculptor, Mr. Naismith, he confirmed he did not use any particular references in sculpting the first Space Marine figures (although he did acknowledge an amalgam of disparate general influences, none relevant here). Chapterhouse did not even ask him if he had ever seen any of the designs cited by Chapterhouse's new expert, Mr. Grindley, who was evidently hired as a counterweight to Chapterhouse's original experts, who admitted there were no known historical antecedents for the Space Marine shoulder pad. Yet, even Mr. Grindley ultimately agreed in his deposition testimony that he was unaware of any other shoulder pad design having the same combination of features as the Games Workshop design. (Still dissatisfied with its experts' inability to undermine the originality of the Space Marine shoulder pad, Chapterhouse has also now served an amended Grindley report (on March 13) long after the February 1 deadline for service of expert reports and after the conclusion of Grindley's deposition so as to mitigate the sting of his damaging admissions. It should be stricken.[1])

Although Chapterhouse also places great weight on the initial, non-final, refusal of the Copyright Office to register one shoulder pad design (as it does in its pending motion for reconsideration), it again ignores that the Copyright Office did register essentially the same basic design (a fact Games Workshop had failed to call to the Court's attention in briefing the prior summary judgment motions). Regardless, Chapterhouse fails to explain how this supposedly new evidence justifies tossing aside the Court's prior ruling without any analysis. Games Workshop fully addresses this non-final refusal to register in its Response to Chapterhouse's Second Motion for Reconsideration (Dkt. 301).

---

[1] However, as Chapterhouse has not relied on anything in the newly served Grindley report in support of its motion for summary judgment, the Court need not address the issue at this time.

## II.    BACKGROUND

The Court's November 27, 2012 Order included the following holdings:

Upon independent examination, the Court finds that GW's shoulder pads involve
enough originality to afford them copyright protection. The unusually large
proportional size of the shoulder pads as compared to the Space Marine's head
(depicted in GW's product at entry 49) is a creative addition to the common
shoulder pads sometimes worn by real-life soldiers in battle. The shoulder pads
created to fit onto GW's physical figurines, though more proportionally accurate,
are nevertheless still larger and boxier than those typically found outside of the
Warhammer 40,000 fantasy world. The Court thus concludes that GW is entitled
to copyright protection as to the design of its shoulder pads.

The Court likewise rejects Chapterhouse's contention that other GW shoulder pad
designs are ineligible for copyright protection. Chapterhouse contends that for
GW's products in entries 48, 50, and 56 on the Claim Chart, the only similarities
between the parties' works are common geometric shapes—such as an "X" or a
chevron—that are in the public domain and are not copyrightable. "It is true that
common geometric shapes cannot be copyrighted." *Kelley v. Chicago Park Dist.*,
635 F.3d 290, 303 (7th Cir. 2011). Yet although GW could not base its copyright
claim on a depiction of an "X" or a chevron alone, its depiction of that otherwise-
common element affixed on an original, creative shoulder pad with a distinctive
color scheme is sufficient to satisfy the originality requirement. *See Kay Berry,
Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005) ("When an author
combines [otherwise non-protected] elements and adds his or her own imaginative
spark, creation occurs, and the author is entitled to protection for the result.");
*Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127,
134 (2d Cir. 2003) ("[T]he defendant may infringe on the plaintiff's work not
only through literal copying of a portion of it, but also by parroting properties that
are apparent only when numerous aesthetic decisions embodied in the plaintiff's
work of art . . . are considered in relation to one another."). Chapterhouse's
motion for summary judgment on the basis that GW's shoulder pads are not
copyrightable is therefore denied. The Court's finding resolves this issue for
entries 4–7, 12–13, 19–20, 46–48, 50–52, 56–62, 64–65, and 101–02 on the
Claim Chart.

## III.    ARGUMENT

A.    <u>**Games Workshop's Space Marine Shoulder Pad Design Is Copyrightable**</u>

1.    <u>The Court's November 27 Ruling Constitutes Law of the Case</u>

Although Chapterhouse seeks summary judgment that Games Workshop's basic shoulder

pad design and the particular design for its Tactical Space Marine Squad shoulder pad are not

copyrightable, it gives no weight whatsoever to the Court's prior summary judgment ruling

3

finding just the opposite and offers no argument or analysis why the Court should revisit its earlier decision.

*Minch v. City of Chicago,* 486 F.3d 294 (7th Cir. 2007), summarized the law of the case doctrine:

> [T]he law of the case doctrine embodies the notion that a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination. *See, e.g., Santamarina v. Sears, Roebuck & Co.,* 466 F.3d 570, 572 (7th Cir. 2006); *Starcon Int'l, Inc. v. N.L.R.B.,* 450 F.3d 276, 278 (7th Cir. 2006); *Best v. Shell Oil Co.,* 107 F.3d 544, 546 (7th Cir. 1997). This presumption against re-opening matters already decided reflects interests in consistency, finality, and the conservation of judicial resources, among others. *Analytical Eng'g, Inc. v. Baldwin Filters, Inc.,* 425 F.3d 443, 454 (7th Cir. 2005)."

486 F.3d at 301. *See also Toliver v. Pollard*, 688 F.3d 853 (7th Cir. 2012), ("We decline to revisit our earlier prejudice ruling because the law-of-the-case doctrine applies  to that determination. This doctrine advises against revisiting earlier rulings "absent a compelling reason, such as manifest error or a change in the law." (quoting *Minch*)).

Not only has the Court previously addressed the copyrightability of the Space Marine shoulder pad as such, it also previously addressed the copyrightability of the Tactical Space Marine shoulder pad.  While Chapterhouse has slightly changed some of its products, for example from a Tactical Shoulder Pad for Space Marine (product 56 from the 1st phase of the case) to a Scaled Tactical Shoulder Pad for Space Marine (product 156 from the 2nd phase of the case), the infringed Games Workshop work at issue remains the same.  (GW Add'l Fact 15-16) Thus, while Chapterhouse couches its motion as only seeking a ruling on product 156 from the 2nd case, by seeking a finding that the Games Workshop work is not copyrightable, Chapterhouse is actually asking the Court to nullify its prior ruling with respect to product 56 from the 1st phase of the case, without any acknowledgment of this effect or justification for this reconsideration:






| CHS Product 56 – Tactical Shoulder Pad for Space Marine | CHS Product 156 – Scaled Tactical Power Armor Pad | GW Tactical Space Marine Shoulder Pads |

The only new evidence since the Court's November decision (which Chapterhouse fails to address) fully supports the Court's prior decision. As noted, the sculptor of the original Space Marine, Mr. Naismith, confirmed he used no particular references in its creation. (GW Add'l Facts 3-4). Chapterhouse had also hired two experts in the first phase of the case, neither of whom was able to find any relevant prior designs, much less that Games Workshop actually copied such prior designs. Dissatisfied with the research of its first two experts, Chapterhouse has hired a third expert, and although he has found some new examples (displayed in Chapterhouse's brief), he too admits none has the same features as the Games Workshop figure. (Resp. to CHS Facts 11-20; GW Add'l Facts 17-24.) Because there is no suggestion that Games Workshop actually copied any of these designs, many of which were created after the first Space Marine was sculpted in 1985, the report is simply irrelevant. The only other evidence Chapterhouse cites is an initial, non-final rejection of one shoulder pad design (which, as shown in Games Workshop's opposition to Chapterhouse's second motion for reconsideration, is without any substantive analysis and comes on the heels of a refusal by the Copyright Office to receive any evidence or argument as to copyrightability). That of course must be balanced against a final acceptance and registration of an essentially identical shoulder pad design (differing only in surface ornamentation), which the Court did not previously consider. If there is any compelling reason to revisit the Court's earlier decision, such as manifest error or a change in the law, Chapterhouse has not shown what it is. It has not even tried.

5

2. The Evidence Continues To Support A Finding Of
   Copyrightability of the Space Marine Shoulder Pad

In its selective recitation of facts, Chapterhouse omits reference to the testimony of the

sculptor of the original Space Marine, Bob Naismith, who confirmed that when he created the

figure in 1985 he did so without *any* direct references.  (GW Addl'l Fact 4.)  The only general

inspirations he could identify for the figure were the general shape of blanket rolls used by

Napoleonic soldiers (which became part of the cylindrical space-age equipment at the top of the

backpack); American infantrymen (who wore back packs); Romanesque helmets (which were

modified, modernized and fitted with breathing apparatus and goggles); and Medieval armor

which was articulated at the joints to allow the user's limbs to move.  (*Id.*)



(GW Add'l Fact 1)

As Mr. Naismith similarly testified, the size of the shoulder pad was created simply to

give the miniature figure "presence" on the gaming table in keeping with its oversize image as

depicted in the larger-scale paintings and drawings Games Workshop publishes.

> Q. In the same way I asked you about the function of the helmet, does the
> shoulder pad on a Space Marine have any actual function?
> A. Its main function is this idea of communicating the presence and power of the
> Space Marine in his armor.  That is the story we are trying to tell.
> Q: Does that have anything to do with the size of the shoulder pad in relation to
> the figure itself?
> A. Only insofar as because it's larger than is, if you like, it adds a presence to the
> model.
>             *          *          *

> Q. What about the shoulder pads do you believe added presence on the table?
> A. Very much so, yes. I suppose the simplest thing to imagine is a Space Marine without shoulder pads. It then goes back to being just a man. So it is part of the signal. If you look at American football jocks with their shoulder protectors, they look really imposing, you know, by the time they have got their helmet on and they are all 6-foot something tall, so they are big men with big shoulders, and in the real world are intimidating. So the tie with the Space Marines was to use shoulder pads to give some of that feeling to the design, so that any normal human being standing next to a Space Marine looked like a lesser being.

(GW Add'l Fact 6) Indeed, since the Space Marine shoulder pad does not have to be functional in any literal sense, it is so large (covering the entire upper arm of the Space Marine figure) that it would be impossible for an actual human to move his arm while wearing the device. (GW Add'l Fact 5)

Dissatisfied not only with the Court's November 2012 decision but also with its two prior experts, who admitted that the Games Workshop shoulder pad design was without historical precedent, Chapterhouse hired a third expert, Carl Grindley. However, the Court's prior decision that the basic shape of the shoulder pad is copyrightable is consistent not only with the prior testimony of Chapterhouse's first two expert witnesses but also with the testimony of its third expert witness, Mr. Grindley.

In connection with the prior summary judgment briefing, Chapterhouse submitted to the Court the opinion of an expert in military history, Mr. Brewster, who "admitted that he could locate no same or similar representation of GW's shoulder pad design in previous military history." (GW Add'l Fact 13). Moreover, although Chapterhouse did not submit to the Court in its summary judgment papers the opinion of its other expert, Mr. Wolfe, its claimed expert in science fiction similarly was unable to opine that Games Workshop's Space Marine shoulder pad design was similar to anything in prior science fiction. (GW Add'l Fact 17.) At the February 21 deposition of Chapterhouse's newest expert, Mr. Grindley similarly testified as follows:

7

> Q. So you're unable to find any prior military shoulder pads that had those same design choices as Games Workshop?
> A. Correct. (GW Add'l Fact 20)

In a belabored response to the question whether he was aware of any designs similar to Games Workshop's, including a shoulder pad that is "very large, extending all the way to the elbow" (GW Add'l Fact 21) he likewise eventually conceded:

> …also with the caveat that the general description of the shoulder pads that you have provided differs substantially to our previous discussion of them, I would have to say yes, I was unable to provide you with any particular image that satisfied that full list of criteria..
> *    *    *
> Q: So therefore, you are unable to state an expert opinion that that combination is unoriginal?
> A. Yes.
> Q. Yes, you agree with my statement?
> A. Yes, I do.

(GW Add'l Fact 21). He further testified that his report offered no opinion whether the Games Workshop designs constituted an original combination of elements. (GW Add'l Fact 22.) Indeed, he admitted as follows:

> Q. In searching for shoulder pads used on future infantry warriors, a human wearing a suit of power armor, you were not able to identify any shoulder pads that had those three common design elements of the Games Workshop, size, shape and banding?
> A. Correct. (GW Add'l Fact 22)

More important, there is no evidence that Mr. Naismith or any Games Workshop designer was influenced by any of the references in Mr. Grindley's report. (GW Add'l Fact 23.) Additionally, while Chapterhouse has still never pled a defense of *scenes a faire,* Mr. Grindley confirmed the opinions of the prior experts that there was nothing essential in the elements Games Workshop has chosen to combine that would be indispensible when creating a future space warrior. (GW Add'l Fact 25).

Hence, his report is entirely irrelevant. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other

8

works), and that it possesses at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv.Co.*, 499 U.S. 340, 345 (1991). See also *Boisson v. Banian, Ltd,* 273 F.3d 262, 268 (2d Cir. 2001) ("Originality does not mean that the work for which copyright protection is sought must be either novel or unique, *Trade-Mark Cases*, 100 U.S. 82, 94 (1879), it simply means a work independently created by its author, one not copied from pre-existing works, and a work that comes from the exercise of the creative powers of the author's mind, in other words, "the fruits of [the author's] intellectual labor." *Id*.") Even if any of the shoulder pads recently discovered by Mr. Grindley looked similar to the Space Marine design in any relevant sense, which they do not, Mr. Grindley's report – and Chapterhouse's motion – are thus based on a fundamental misunderstanding of the copyright concept of originality.[2] Simply because something generally similar to the Space Marine shoulder pad existed somewhere, it would not undermine the originality of the Games Workshop design unless there were proof that Games Workshop had copied that prior design. The concept of strict "novelty" on which Mr. Grindley and Chapterhouse rely applies to patents, not copyrights.

Moreover, most of the references reproduced in Chapterhouse's brief (pages 3 – 6) are quite dissimilar from the Space Marine Shoulder pad and many were created *after* 1985 when Mr. Naismith sculpted the first Space Marine figures. In the latter category would fall the 1988 Marvel Comics figure; the 1987 cover art for Heinlein's Starship Troopers and the 1994 Attila III Cuirassier. The 1979 armor from the movie Alien is not nearly as large in proportion to the figure as is the Space Marine shoulder pad and looks very little like the Games Workshop

---

[2] Likewise, because Chapterhouse was obviously unaware of these recently discovered references when it was creating its accused works, they would be irrelevant to defend the claim of copying. Had Mr. Villacci relied on any of them in creating the accused works, he would have been able to identify them in the first phase of the action.

creation (with a floppy tripartite division that looks better suited for flexibility and mobility). The 1980 cover art for Heinlein's Revolt in 2100 appears simply to show a circular badge with some sort of flat arm covering below it. It is not clearly even armor. And the 1983 AM5 Shock Trooper has armor that rises up above the shoulder to form an arc with the helmet creating the opposite effect of the Space Marine whose shoulder pads stand out. By contrast, this figure's shoulder's blend in with its head.

Although Mr. Grindley identified other (equally distinguishable) shoulder pad designs in his original report, and although Chapterhouse has now rewritten his report following his deposition to address the many omissions and admissions revealed at his deposition, Chapterhouse should not be permitted to rely on such new grounds or products not analyzed in its moving brief in its reply (to which Games Workshop will have no opportunity to respond). *See*, *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("the district court is entitled to find that an argument raised for the first time in a reply brief is forfeited.")

Even if novelty were the standard, Mr. Grindley, consistent with Chapterhouse's first two experts, admits that he is not aware of any prior art having the same combination of features as the basic Space Marine shoulder pad, even when those features are limited to only a vastly oversized device, shaped as a quarter ovoid, with a large rim going around the outside. (GW Add'l Facts 20-22.) Of course many of the Space Marine shoulder pads have additional original features that Chapterhouse has also copied – right down to the indents on the rear of the devices. (GW Add'l Facts 7-8.) Indeed, Mr. Villacci testified he used a "digimeter" to ensure the dimensions were exact matches, including the dimensions of actual Games Workshop shoulder pads. (GW Add'l Fact 9.) By doing so Chapterhouse has made exact or nearly exact replicas of physical shoulder pads (right down to the last indents) that serve no purpose in the world other than to be mounted on Games Workshop's genuine Space Marine figures. (GW Add'l Fact 2.)

10

Another original feature of the Space Marine figures and their armor is their actual size. One false premise of Chapterhouse's defense of this case previously identified by Games Workshop is that there exists a 28 mm industry standard, such that the size and scale of its products match Games Workshop's for some allegedly functional reason. (GW Add'l Fact 10.) In fact, the size and scale was adopted arbitrarily by Games Workshop (with other companies using different scales) – not that that would excuse copying the dimensions of original sculptural designs anyway. (Id.) However, if one wanted to make a model or sculpture of a futuristic intergalactic soldier, there is absolutely no reason to make it to a 28 mm scale using the exact dimensions Games Workshop created unless one were trying to copy Games Workshop. The very sizing and scaling of the shoulder pads thus is part of what makes them original. As Games Workshop previously established, although there are now other companies that make miniatures to the same 28 mm scale that Games Workshop uses, there is nothing to the size essential to making battlefield miniatures. Hence these are original features for which there is no historical precedent. The Court previously rejected this Chapterhouse theory that size is irrelevant:

> Chapterhouse contends that for its products referenced in the preceding paragraph [entries 32–33, 35–37, 63, 82, 87–90, 103–06, 109, and 114], the "sizes and shapes . . . are dictated by the mechanical and utilitarian requirement that the add-on pieces must fit onto the base model. The fact that *Chapterhouse's* products must be designed in a specific way to fit onto GW's products is inapposite….Though some of GW's products have "working" parts—namely, doors to its miniature vehicles and 'drop pods' that can be opened and shut— those features simply serve as a detail of the portrayal of the real or fantasy objects. Gay Toys, 703 F.2d at 974 ("[T]oys do not . . . have an intrinsic utilitarian function other than the portrayal of the real item."); see also Lanard Toys, Ltd. v. Novelty, Inc., 375 Fed. Appx. 705, 710 (9th Cir. 2010). The fact that GW decided to makes its figurines with components that move in the way they might move in real life is insufficient to render those figurines, or even those particular components, utilitarian and not copyrightable. The Court therefore declines to grant summary judgment for Chapterhouse on the ground that these particular products are utilitarian. (Dkt 258 at 23-24)

11

New evidence not previously considered by the Court is Mr. Naismith's testimony that the 28mm scale adopted by Games Workshop in the mid-1980s was simply part of a creative plan to make its own models larger and more imposing than those made to the 25mm scale then in common use. (GW Add'l Fact 10) This testimony is entirely consistent with the prior explanation by Mr. Merrett that the scaling used by Games Workshop was one of its own design choices. (*Id*)

**B.     The Space Marine Shoulder Pad Design Is Registered**

Consistent with the testimony of all three Chapterhouse experts finding a lack of historical precedents for the Games Workshop shoulder pad design, and consistent with this Court's prior decision, the Copyright Office has registered the design of Games Workshop's Flesh Tearer shoulder pad design. (GW Add'l Fact 26.) Although Chapterhouse chooses to focus on the Copyright Office's non-final refusal to register the design of one Space Marine shoulder pad (with the Assault Squad icon), it simply ignores that another virtually identical shoulder pad design has been registered (with the Flesh Tearer icon). Although the statute gives the Court discretion to give some weight to the Copyright Office's actual *final* decision to register the Flesh Tearer's Shoulder Pad design, 17 U.S.C. § 410(c), because the initial non-final refusal to register the Assault Squad should pad design was accompanied by no analysis and does not purport to articulate Copyright Office policy, it is entitled to no deference. *See Boyds Collection, Ltd. v. Bearington Collection, Inc.*, 360 F. Supp. 2d 655 (M.D. Pa. 2005). *See also Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *Hickey v. Chicago Truck Drivers, Helpers and Warehouse Workers Union*, 980 F.2d 465, 469 (7th Cir. 1992); *Gryl ex rel. Shire Pharms. Grp. v. Shire Pharms Grp. Plc,*, 298 F.3d 136, 145 (2nd Cir. 2002); *Applied Med. Res.*

12

*Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374, 1380-81 (Fed. Cir. 1998); *Blue Cross and Blue Shield of N.J. Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001).

## C.   Chapterhouse Has Not Asserted the Defense of Scenes A Faire

To the extent Chapterhouse is seeking (*sub silencio*) to invoke the doctrine of *scènes à faire,* it never attempts to establish the elements of such a defense, and (as Games Worskhop previously noted in opposing Chapterhouse's prior summary judgment motion on the same grounds) the defense is not among Chapterhouse's 24 affirmative defenses.  (GW Add'l Fact 25).  At any rate, there is no evidence here to support a defense that use of enormous shoulder pads covering the entire upper arm of a character, having a quarter ovoid shape, with a rim along the edge are so common as to be necessary elements of a futuristic space-age warrior.  See *Atari Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 616 (7th Cir. 1982), ("Scènes à faire generally involve 'incidents, characteristics or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic, what flows naturally from these basic plot premises.'")  Indeed, Mr. Grindley admitted that there was nothing essential in the elements Games Workshop has chosen to combine that would be indispensible when creating a future space warrior.  (GW Add'l Fact 25).

> Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?
> A. Correct.
> Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?
> A. Yes, they would.
> Q. And there's no standard ways that they would have to make it?
> A. No, there isn't.
> Q. There's a virtual unlimited amount of ways?
> A. Yes.
> Q. And you're not identifying any characteristics that you believe are indispensible?
> A. No. (GW Add'l Fact 25)

### D. The Combination of Elements in Games Workshop's Tactical Shoulder Pad Design Is Copyrightable

Once again ignoring the Court's prior ruling that Games Workshop's shoulder pad with Tactical Space Marine icon is copyrightable (see Mem. Dec. at 20-21, addressing product 56, the plain Tactical shoulder pad, and products 57-62, the same Tactical shoulder pad combined with Roman numerals I through VI) Chapterhouse challenges the copyrightability of the Games Workshop Tactical Space Marine shoulder pad once again by considering in isolation its copying of this design (in connection with product 156). Chapterhouse ignores that it is in fact part of an entire range of Assault, Tactical and Devastator shoulder pads for Space Marines, all of which Chapterhouse has copied (including the range of names, symbols and numerical designations of Games Workshop's originals). (GW Add'l Fact 11-12) However, as the Court has already articulated, even taken in isolation each shoulder pad incorporates a unique combination of elements. (GW Add'l Fact 13-14). The shoulder pad has a unique shape (which Chapterhouse's three experts all agree has no known antecedents); the name Tactical (as distinct from Assault and Devastator); the corresponding distinctive upward-pointing wide arrow icon (for Tactical, again as distinct from the specific distinctive X design for Assault and chevron for Devastator).

As noted above, this Court previously held:

"It is true that common geometric shapes cannot be copyrighted." *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 303 (7th Cir. 2011). Yet although GW could not base its copyright claim on a depiction of an "X" or a chevron alone, its depiction of that otherwise-common element affixed on an original, creative shoulder pad with a distinctive color scheme is sufficient to satisfy the originality requirement. *See Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005) ("When an author combines [otherwise non-protected] elements and adds

14

his or her own imaginative spark, creation occurs, and the author is entitled to protection for the result.") (GW Add'l Fact 14)[3]

Based on this analysis, the Court found the Tactical Space Marine shoulder pad design copyrightable. Indeed, numerous design decisions were involved in creating even the one Tactical Shoulder Pad (product no 156). *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (2d Cir. 2003). Each such design decision has been copied so as to make the Chapterhouse product immediately recognizable to Games Workshop's fans, and if the design decisions did not have the significance they do have there would have been no need to copy them. Although the Chapterhouse Scaled Tactical Armor shoulder pad is not an exact copy of the Space Marine shoulder pad, like most of the Chapterhouse products it includes the exact shoulder pad design (which Chapterhouse recreated using a digimeter, GW Add'l Fact 9); the name Tactical, and the very specific arrow design. Laying aside why one would wish to create a "Tactical" shoulder pad with any form of arrow unless one were seeking to copy Games Workshop's original design, it is clear that arrows can point in any direction; they can be thick or thin, straight or curved, placed on any part of a product and so forth. Each such design decision made by Games Workshop, has been copied by Chapterhouse – and of course Chapterhouse has done so in exactly the same scaled proportions as Games Workshop. In short, no basis has been shown for simply disregarding the Court's prior decision, which constitutes law of the case.

---

[3] See also *Bucklew v Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 926 (7th Cir. 2003):

> Every expressive work can be decomposed into elements not themselves copyrightable-the cars in a car chase, the kiss in a love scene, the dive bombers in a movie about Pearl Harbor, or for that matter the letters of the alphabet in any written work. The presence of such elements obviously does not forfeit copyright protection of the work as a whole, but infringement cannot be found on the basis of such elements alone; it is the combination of elements, or particular novel twists given to them, that supply the minimal originality required for copyright protection.

4844-7383-6051.2

**E.** **Chapterhouse's Tactical Shoulder Pad Should Be Seen in Context To Assess Copyrightability Or Infringement**

Although Chapterhouse Tactical Shoulder Pad can be assessed in isolation, it in fact forms part of a continuum with the other Chapterhouse products considered in the Court's November 27 decision, i.e. 4–7, 12–13, 19–20, 46–48, 50–52, 56–62, 64–65, and 101–02, because this particular Tactical shoulder pad made by Chapterhouse is simply one in a series of shoulder pads that copy the entire range of Games Workshop's Tactical, Assault and Devastator Space marine shoulder pads, with the corresponding icons (the distinctive X for Assault, upward-pointing arrow for Tactical and chevron for Devastator) and the numerical designations I - X; presented as Roman numerals (each element itself a separate design choice). (GW Add'l Fact 11-12). In the first phase of the case, the Court recognized (in language quoted above) that the entire range of products is copyrightable.

Although Games Workshop previously cited *Castle Rock Ent. v. Carol Pub. Grp, Inc.,* 150 F.3d 132 (2d Cir. 1998), in an unsuccessful effort to show that the entire range of products presented on the Chapterhouse website is copied from (and infringes) the collective creative realm of Warhammer 40,000[4], Chapterhouse's copying of the entire range of Tactical. Devastator and Assault shoulder pads, including their collective iconography, demonstrates in perhaps a simpler and clearer way the relevance here of the analysis in *Castle Rock Ent.* Thus, the point is that the overall meaning of the collective iconography for the Tactical, Assault and Devastator Space Marines, has a creative significance transcending any one character or design in isolation. The products sold by Chapterhouse can also be seen in this context and as part of this larger matrix.

---

[4] Games Workshop evidently misled the Court to believe it was asserting a one-to-one correspondence with Games Workshop's website (Dkt 258 at 25).

In *Castle Rock*, defendant's short book contained 643 trivia questions derived from 84 of the 86 episodes of the "Seinfeld" television series. The Second Circuit affirmed a grant of summary judgment by then-district-court-judge Sonia Sotomayor where, as here, there was no genuine dispute as to the defendant's actual (and only) source for its accused copying. *Castle Rock* held that the trivia book infringed the "Seinfeld" television series because the trivia tested aspects of the "Seinfeld" characters, such as expressions and mannerisms, based on the fictitious expression created by the authors, notwithstanding that only fragments were copied from individual episodes. *Id.* at 139. The individual episodes were all part of a continuing (if disjointed story) involving the same characters. In much the same way, all of GW's Tactical, Devastator and Assault Space Marine characters (including their shoulder armor and iconography) are interrelated parts of one matrix.[5] While it is of course possible to analyze individual Chapterhouse products such as the Tactical shoulder pad independent of the wider matrix, the reality is they are sold together on Chapterhouse's website and are perhaps best assessed as part of this broader collective whole.

Although Games Workshop evidently failed to explain the relevance of the theory articulated in *Castle Rock* in the prior summary judgment briefing, it is not that Chapterhouse's website is a copy of Games Workshop's website, but that *patterns* of copying by Chapterhouse – including the overall range of Tactical, Assault and Devastator products – can be assessed in a

---

[5] In much the same way, but on a larger scale, the entire Warhammer 40,000 oeuvre is an ongoing and evolving story involving the same essential characters, and all of Chapterhouse's products are derived from aspects of the original fictional world Games Workshop has created and are made to be used only in connection with that original creative world. Hence, it is not that Chapterhouse's website is a copy of Games Workshop's website but a copy of integrated fragments from the overall Warhammer 40,000 universe – much as in *Castle Rock*. Although Games Workshop is not seeking reconsideration of the Court's earlier decision denying summary judgment on this theory, it does wish to present the theory to the jury at trial.

17

way that transcends the specific pieces or fragments copied (even if each of those fragments is itself an infringement). In *Castle Rock*, the court did not even attempt to separately analyze each of the trivia questions derived from the Seinfeld show in finding from where the entire collection was derived, but rather viewed the individual fragments of copying in the aggregate. *Id.* at 138. *Accord Warner Bros. Entertainment Inc. v. RDR Books*, 575 F. Supp. 2d 513, 535 (S.D.N.Y. 2008) (finding substantial similarity where "[m]ost of the Lexicon's 2,437 entries contain direct quotations or paraphrases, plot details or summaries of scenes from one or more of the Harry Potter novels."); *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.* , 996 F.2d 1366, 1372-73, 1381 (2d Cir. 1993) (finding substantial similarity between infringing book and 8 episodes of *Twin Peaks* weekly television series seen as a whole, but awarding statutory damages on per-episode basis)..

Regarding this additional Tactical Space Marine shoulder pad Chapterhouse is accused of copying in the second phase of the case, the original elements thus go beyond simply the shape of the shoulder pad itself, the upward-pointing heavy arrow or the name Tactical Space Marine that the Court previously deemed protectable. What Chapterhouse is also copying is part of an entire original framework of sculptural designs, character names, iconography and numbering that fit together to form a larger whole. Even beyond the isolated shoulder pad design for Tactical Space Marines that has been copied, this overall framework and storyline is original and warrants protection.

## III.  CONCLUSION

For the foregoing reasons, Chapterhouse's motion for summary judgment should be denied, together with such other and further relief as the Court deems appropriate and just.

Dated:  March 14, 2013

Respectfully submitted,

/s/  Jason J. Keener

Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone:  312.832.4500
Facsimile:  312.832.4700
Email:  jkeener@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone:  (212) 682-7474
Facsimile:  (212) 687-3229
Email:  jmoskin@foley.com

*Attorneys for Plaintiff*
*Games Workshop Limited*

19

## <u>CERTIFICATE OF SERVICE</u>

I, Jason J. Keener, an attorney, hereby certify that on March 14, 2013, I caused to

be filed electronically the foregoing PLAINTIFF'S MEMORANDUM IN OPPOSITION TO

MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF

system, which will send an electronic copy of the foregoing to counsel of record and constitutes

service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the

Northern District of Illinois.


           /s/  Jason J. Keener
           Jason J. Keener

4844-7383-6051.2