**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>                Plaintiff,<br><br>                v.<br><br>CHAPTERHOUSE STUDIOS LLC<br><br>                Defendant. | Civil Action No. 1:10-cv-08103<br><br>Hon. Matthew F. Kennelly<br>Hon. Jeffrey T. Gilbert |

**RESPONSE TO LOCAL RULE 56.1 STATEMENT OF
MATERIAL FACTS ALLEGEDLY NOT IN DISPUTE
AND COUNTERSTATEMENT OF FACT IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/RECONSIDERATION**

Pursuant to Federal Rule of Civil Procedure 56(c) and LR56.1, Games Workshop Limited responds as follows to the statement of fact submitted by Chapterhouse Studios LLC ("CHS"), in support of its motion for summary judgment.

**I.     Undisputed Material Facts**

**1.     Plaintiff Games Workshop Limited ("GW") is a United Kingdom corporation and a subsidiary of Games Workshop Group PLC.**

**RESPONSE:**  Games Workshop does not contest this fact.

**2.     Defendant CHS is a Texas limited liability company whose address is 3930 Glade Road, Suite 108 # 174, Colleyville, Texas, 76034.**

**RESPONSE:**  Games Workshop does not contest this fact.

**3.     This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over claims arising under the statutory and common law of the State of Illinois pursuant to 28 U.S.C. § 1367 (a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.**

**RESPONSE:**  Games Workshop does not contest this fact.

**4.     Pursuant to Federal Rule of Civil Procedure 12(h), CHS waived its objections to personal jurisdiction and venue by responding to GW's complaint.**

**RESPONSE:**  Games Workshop does not contest this fact.

**5.     GW amended its complaint on December 10, 2012 to add a number of new claims. On January 14, 2011, GW served a chart entitled Games Workshop Claim Chart for Newly Accused Products — January 11, 2013 (the "New Product Claim Chart") identifying, for each of CHS's newly accused products, the copyrights allegedly infringed.**

**RESPONSE:**  Games Workshop does not contest this fact.

**22.     GW alleges it is additionally entitled to copyright protection for its shoulder pad product at entry 156 for its "use of arrow and trim."**

**RESPONSE:**  Games Workshop does not contest the fact that one element of the overall design that

Chapterhouse has copied in connection with its Tactical Power Armor shoulder pad is the Tactical

Space Marine iconography, which Chapterhouse uses in connection with the original character name

"Tactical" (for Tactical Space Marine") and the exact dimensions of the Space Marine Shoulder pad.

**24.     GW filed a copyright application with the United States Copyright Office for the GW work "Assault Squad Shoulder Pads," which is a shoulder pad with the "arrow cross" or "X" design.**

**RESPONSE:**   Games Workshop does not contest the fact on March 1, 2012, Games Workshop

applied to register its Assault Squad shoulder pad which is a Space Marine shoulder pad including a

surface design of the Space Marine Assault Squad iconography (a specific design incorporating an X

design with arrows or triangles at the extensions of the X and a hollowed center, as well as specific

placement on the Space Marine Shoulder Pad shoulder pad itself.)  Games Workshop contests this

fact to the extent Chapterhouse contends that Games Workshop has attempted to copyright all

shoulder pads (as opposed to a Space Marine shoulder pad) with any "arrow cross" or "X" design.

Games Workshop further contests that  the specific X design is simply an X design but rather is one

of a series of original distinguishing icons used to identify and distinguish its Assault Squad Space Marines from its Tactical and Devastator Space Marines.

**30.     On January 31, 2013, GW submitted a "Notice of Filing" to inform the Court that it was responding to the January 4, 2013 Copyright Office rejection.**

<u>RESPONSE:</u>  Games Workshop does not contest that fact that on January 31, 2013 it submitted a "Notice of Filing" with the Court regarding the current status of Games Workshop's Assault Squad Shoulder Pad.  Games Workshop contests this fact to the extent that Chapterhouse is contending that the January 4, 2013 correspondence from the Copyright Office was any sort of final rejection by the Copyright Office.

## II.     Material Facts In Dispute

**6.     Product entries 146, 147, 148, 151, 152, 155, 157, and 163 in GW's New Product Claim Chart are for alleged infringement of GW shoulder pad works. GW claims that these CHS products infringe because they "us[e] the oversized dimensions of Games Workshop's iconic shoulder pad design." The purportedly copyrightable element of these shoulder pads is limited to the size and shape of [the] pad" and "[n]ot [the] surface decoration."**

<u>RESPONSE:</u>  Games Workshop contests this fact.  Games Workshop admits that products 146, 147, 148, 151, 152, 155, 157, and 163 are alleged to infringe the design of Games Workshop's Space Marine figure and the shoulder pad armor by copying the underlying design of the Space Marine shoulder pad, not the surface ornamentation.  Games Workshop denies that the copying of the specific shape (such as quarter ovoid with banding) and exact dimensions are the sole bases of the claims regarding these products, which also use the character names created by Games Workshop, such as. "Iron Hand" for products 146 and 147; and "Iron Hand" and "Terminator" for product 147.

**7.     The CHS shoulder pad at product entry 156 in the New Product Claim Chart also allegedly infringes the "use of arrow and trim" in addition to the "shape of pad."**

<u>RESPONSE:</u>  Games Workshop contests this fact.  Games Workshop admits that product 156 is alleged to infringe the design of Games Workshop's Space Marine figure and the shoulder pad armor

by copying the underlying design of the Space Marine shoulder pad as well as the surface

ornamentation (the distinctive Tactical Space Marine iconography). Games Workshop denies that

the copying of the specific shape (such as quarter ovoid with banding), exact dimensions, and

Tactical Space Marine iconography (such as the user of a specific arrow with trim) are the sole bases

of the claim regarding this product, which also use the character name Tactical Space Marine created

by Games Workshop and is one of an entire series of Tactical, Devastator, and Assault Squad Space

Marine shoulder pads made by Chapterhouse which copy the size and dimensions and iconography

and character names of Games Workshop's original works.

**8.      CHS engaged Dr. Carl Grindley to examine GW's new claims and offer his expert opinion on whether there were substantial similarities between the GW and CHS products and whether—to the extent any similarities existed—any shared design elements originated in pre-existing historical, medieval, cinematic, and/or science fiction sources.**

<u>**RESPONSE:**</u>  Games Workshop denies that Dr. Gindley was tasked with comparing Games

Workshop's and Chapterhouse's products for any substantial similarities. His report is absent of any

such comparison. According to his report, his only task was to "opine on whether elements of the

Games Workshop New Allegedly Infringed Works can be found in or are derived from pre-existing

works from historical, medieval, cinematic, or science fiction sources." (CHS Cooper Decl. Ex 3,

Grindley Report ¶1). The chart accompanying his report is likewise devoid of any comparison of

similarities and differences between the Games Workshop and Chapterhouse products with the

exception of limited opinions on products 132 and 153 (Moskin Decl. Ex. 1, Grindley Chart at pages

42 and 102).

Games Workshop admits that Dr. Grindley was asked to opine on whether any of the Games

Workshop products contained design elements that were similar to pre-existing historical, medieval,

cinematic, and/or science fiction sources. Games Workshop denies that Dr. Grindley offered any

opinions on whether the Games Workshop designs "originated" in those works or were

independently created. Dr. Grindley testified:

> Q:      As you sit here today, in your report or your chart, are you making an expert opinion that Games Workshop consciously derived any of its works from any of the examples you give?
> A:      That would really require me to look into their psyche and I couldn't do that.
> (Moskin Decl. Ex. 2, Grindley Tr. at 85:19-86:1)

Games Workshop denies that Dr. Grindley limited his opinions to the new claims at issue in the case as he makes extensive opinions on whether certain Games Workshop design elements (such as the Space Marine shoulder pad) are similar to pre-existing works. The copyrightability of the Space Marine shoulder pad, as well as numerous other design elements, was at issue in the first phase of the case, resulting in the Court's November 27, 2012 Opinion. Thus, Dr. Grindley has focused many of his opinions on reconsideration and reargument of the Court's prior decision finding the Space Marine shoulder pad design copyrightable. Moreover, Dr. Grindley was never made aware or saw the Court's November 27, 2012 Opinion. (Moskin Decl., Ex. 2, Grindley Tr. 117:17-118:24).

**9.      In collecting works that "pre-existed" the GW New Allegedly Infringed Works at issue, Dr. Grindley used the release date of each product given by GW in its New Product Claim Chart. In many cases, the reference materials he collected predated any GW product for the Warhammer 40k universe.**

**RESPONSE:** Games Workshop contests this fact. Some of the images and references cited by Dr. Grindley are after the release date of the product given by Games Workshop. (*See, e.g., CHS Cooper Decl. Ex. 3, Grindley Rep. ¶41 citing images from 2004). Moreover, many of the reference materials are dated after the original creation of the Warhammer 40K universe, such as the 1985 creation date of the original Space Marine with its armor and shoulder pad. (*See, e.g. CHS Cooper Decl. Ex. 3, Grindley Rep. ¶37 citing 1988 comic book; ¶38 citing 1987 book cover; ¶48 citing 1988 miniatures; ¶50 citing a 1987 movie; ¶52 citing a 1986 book cover; ¶53 citing a 1986 movie prop; and ¶55 citing a 1992 miniature, and pictures from 1994 and 1987). Finally, as Dr. Grindley agreed, he has no evidence that any of these materials ever existed in England (where Games Workshop created the

subject works) prior to the release date of the products given by Games Workshop in its New

Product Claim Chart. (Moskin Decl. Ex. 2, Grindley Tr. at 210:14-211:14.)

Games Workshop further denies that this fact is material because even if it is true, there is no

basis for any contention that Games Workshop copied any of the works identified by Dr. Grindley.

Dr. Grindley testified:

> Q:    As you sit here today, in your report or your chart, are you making an expert
> opinion that Games Workshop consciously derived any of its works from any of the
> examples you give?
> A:    That would really require me to look into their psyche and I couldn't do that.
> (Moskin Decl. Ex. 2, Grindley Tr. at 85:19-86:1)

**11.    The general shape of the GW Space Marine shoulder pad has been around for
hundreds of years. Armorers long ago identified what is roughly a quarter of a sphere as
being one of the best ways to protect and cover the shoulders, and this shape can be seen in
pauldrons dating back to the 15th century.**

<u>**RESPONSE:**</u>  Games Workshop contests this fact.  As this Court has already concluded based on

the expert report and testimony of Chapterhouse's expert on military history:

> Chapterhouse has presented a report from William F. N. Brewster, the Curator of Collections
> for the First Division Museum at Cantigny Park in Wheaton, who stated that GW's shoulder
> pads are "in keeping" with previous examples of military-style shoulder pads found
> throughout history. Brewster attached to his report drawings of soldiers throughout the last
> several centuries, many of whom were clad in armor that included shoulder pads. During his
> subsequent deposition, however, Brewster admitted that he could locate no same or similar
> representation of GW's shoulder pad design in previous military history.

> Upon independent examination, the Court finds that GW's shoulder pads involve enough
> originality to afford them copyright protection. The unusually large proportional size of the
> shoulder pads as compared to the Space Marine's head (depicted in GW's product at entry
> 49) is a creative addition to the common shoulder pads sometimes worn by real-life soldiers
> in battle. The shoulder pads created to fit onto GW's physical figurines, though more
> proportionally accurate, are nevertheless still larger and boxier than those typically found
> outside of the Warhammer 40,000 fantasy world. The Court thus concludes that GW is
> entitled to copyright protection as to the design of its shoulder pads. (Dkt. 258 at 19-20).

Moreover, Chapterhouse's new expert has agreed that he has unable to fine a shoulder pad in

prior military history that had the same unique combination of design choices as Games Workshop's

Space Marine shoulder pad. For example, Dr. Grindley admitted that:

> Q. And can we say that's the same about the other Games Workshop products in the chart, that you have not expressed any opinion on whether the combination of design elements chosen by Games Workshop are the same combination of any prior works you found?
> A. I'd have to look at the report. I don't believe I explicitly said that.
> Q. Implicitly or explicitly, have you pointed to any prior works where you believe all the same design choices which elements to include is the same combination that Games Workshop chose?
> A. No, I have not. (Moskin Decl. Ex. 2, Grindley Tr. at 170:22-171:10).

> Q. So you're unable to find any prior military shoulder pads that had those same design choices as Games Workshop?
> A. Correct. (Moskin Decl. Ex. 2, Grindley Tr. 237:7-10)

In a belabored response to the question whether he was aware of any designs similar to Games Workshop's, including a shoulder pad that is "very large, extending all the way to the elbow" (Moskin Decl. Ex. 2, Grindley Tr. at 216:23-24) he likewise eventually conceded:

> …also with the caveat that the general description of the shoulder pads that you have provided differs substantially to our previous discussion of them, I would have to say yes, I was unable to provide you with any particular image that satisfied that full list of criteria.. (Moskin Decl. Ex. 2, Grindley Tr. at 218:3-8.)

> Q: So therefore, you are unable to state an expert opinion that that combination is unoriginal?
> A. Yes.
> Q. Yes, you agree with my statement?
> A. Yes, I do. (Moskin Decl. Ex. 2, Grindley Tr. at 219:19-24.)

He further testified that his report offered no opinion whether the Games Workshop designs constituted an original combination of elements. (Moskin Decl. Ex. 2, Grindley Tr. at 169:20–170:13.) Indeed, he admitted as follows:

> Q. In searching for shoulder pads used on future infantry warriors, a human wearing a suit of power armor, you were not able to identify any shoulder pads that had those three common design elements of the Games Workshop, size, shape and banding?
> A. Correct. (Moskin Decl. Ex. 2, Grindley Tr. at 264:14-20.)

12. **An example of a disproportionately large and oversized medieval shoulder pad can be seen in Dr. Grindley's expert report:**



**RESPONSE:** Games Workshop contests this fact. Games Workshop denies that the close-fitting armor shown in the above image is even remotely similar in size to Games Workshop's Space Marine shoulder pad. The series of flaps indicates that this armor was designed to be worn by a human model to enhance mobility whereas the solid, thick shape of the Space Marine shoulder pad covering the entire upper arm is so disproportionately large that an actual person would be unable to move in it. (Merrett Decl. ¶2).

Games Workshop denies that this image is relevant as there is no testimony that any Games Workshop designer ever saw this shoulder pad. The designer of the Space Marine shoulder pad testified he used no specific references, which would include this image. (Moskin Decl. Ex. 3, Naismith Tr. at 21:5-22:23).

Games Workshop denies that this image is relevant as it fails to show Games Workshop's unique combination of a absurdly large shoulder pad, in the shape of a quarter ovoid, with banding around the rim.

Games Workshop denies that this image is relevant as there is no testimony that any design element in this image is indispensible in the design of a shoulder pad. Dr. Grindley testified that:

Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?

A. Correct.

Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?

A. Yes, they would.

Q. And there's no standard ways that they would have to make it?

A. No, there isn't.

Q. There's a virtual unlimited amount of ways?

A. Yes.

Q. And you're not identifying any characteristics that you believe are indispensible?

A. No. (Moskin Decl. Ex. 2, Grindley Tr. 266:10-267:5)

In contrast, Chapterhouse's new expert on military history testified that that unlike the Space Marine shoulder pad, this picture shows armor integrated with the chest armor into one piece and does not contain any banding around the edge. (*Id.*, Grindley Tr. at 225:6-227:1).

**13.      The use of disproportionately large shoulder pads predates both the Games Workshop products listed as New Allegedly Infringed Works as well as any Games Workshop Space Marine product with shoulder pads.**

**<u>RESPONSE</u>:** Games Workshop contests this fact. Games Workshop denies that Chapterhouse or any of its experts have identified any shoulder pad design predating the 1985 creation date of the Space Marine armor and shoulder pad that is remotely as large in proportion to the figure as the shoulder pad of the Space Marine.

Games Workshop further denies the relevance of this fact as there is no testimony that any Games Workshop designer ever saw or relied upon any of these shoulder pads. The designer of the Space Marine shoulder pad testified that he used no specific reference. (Moskin Dec. Ex. 3, Naismith Tr. at 21:5-22:23).

Games Workshop denies that this image is relevant as it fails to show Games Workshop's unique combination of an absurdly large shoulder pad, in the shape of a quarter ovoid, with banding around the rim.

Games Workshop denies that this image is relevant as there is no testimony that any design element in this image is indispensible in the design of a shoulder pad. Dr. Grindley testified that:

> Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?
> A. Correct.
> Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?
> A. Yes, they would.
> Q. And there's no standard ways that they would have to make it?
> A. No, there isn't.
> Q. There's a virtual unlimited amount of ways?
> A. Yes.
> Q. And you're not identifying any characteristics that you believe are indispensible?
> A. No. (Moskin Decl. Ex 2, Grindley Tr. 266:10-267:5)

**14.    In the 1979 movie Alien, characters wore armored space suits with shoulder pads nearly the size of the actors' heads:**



**Nostromo Environmental Armor, Alien (1979)**

**RESPONSE:** Games Workshop contests this fact. Games Workshop denies that the layered, articulating armor shown in the above image is even remotely similar in size to Games Workshop's Space marine shoulder pad.

Games Workshop denies that this image is relevant as there is no testimony that any Games Workshop designer ever saw this shoulder pad. The designer of the Space Marine shoulder pad

testified he used no specific references, which would include this image. (Moskin Decl. Ex. 3, Naismith Tr. at 21:5-22:23)

Games Workshop denies that this image is relevant as it fails to show Games Workshop's unique combination of a absurdly large shoulder pad, in the shape of a quarter ovoid, with banding around the rim.

Games Workshop denies that this image is relevant as there is no testimony that any design element in this image is indispensible in the design of a shoulder pad.  Dr. Grindley testified that:

> Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?
> A. Correct.
> Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?
> A. Yes, they would.
> Q. And there's no standard ways that they would have to make it?
> A. No, there isn't.
> Q. There's a virtual unlimited amount of ways?
> A. Yes.
> Q. And you're not identifying any characteristics that you believe are indispensible?
> A. No. (Moskin Decl. Ex 2, Grindley Tr. 266:10-267:5)

In contrast, Dr. Grindley stated that unlike the Games Workshop Space Marine shoulder pad, this picture from Aliens shows a different design, one that is articulated, with a large series of rivets:

> Q. The image on the top is a picture of armor used in the movie Alien; is that correct?
> A. That is correct.
> Q. And this is yet another design of a shoulder pad?
> A. Yes, it is.
> Q. And this one is again articulated?
> A. Yes.
> Q. Unlike the Games Workshop shoulder pad?
> A. Yes.
> Q. And it has a large series of rivets on the various layers.  Do you see that?
> A. Yes.
> Q. And that's dissimilar to the Games Workshop one as well, correct?

A. Yes

Q. So this is another different design of an overlarge shoulder pad?

A. Yes, it is. (*Id.*, Grindley Tr. at 256:17-257:12)

**15.    Various comic book characters published in the 1980s, before the creation of Games Workshop's New Allegedly Infringed Work shoulder pad products, were often styled after medieval knights with large shoulder pads.**

**RESPONSE:**  Games Workshop contests this fact.  Games Workshop denies that Chapterhouse or any of its experts have identified any shoulder pad design predating the 1985 creation date of the Space Marine armor and shoulder pad from a comic book that is remotely as large in proportion to the figure as the shoulder pad of the Space Marine.

Games Workshop further denies the relevance of this fact as there is no testimony that any Games Workshop designer ever saw or relied upon any of these shoulder pads.  The designer of the Space Marine shoulder pad testified that he used no specific reference.  (Moskin Decl. Ex. 3, Naismith Tr. at 21:5-22:23)

Games Workshop denies that this image is relevant as it fails to show Games Workshop's unique combination of a absurdly large shoulder pad, in the shape of a quarter ovoid, with banding around the rim.

Games Workshop  denies that this image is relevant as there is no testimony that any design element in this image is indispensable in the design of a shoulder pad.  Dr. Grindley testified that:

Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?

A. Correct.

Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?

A. Yes, they would.

Q. And there's no standard ways that they would have to make it?

A. No, there isn't.

Q. There's a virtual unlimited amount of ways?

A. Yes.

Q. And you're not identifying any characteristics that you believe are

indispensible?
    A. No. (Moskin Decl. Ex. 2, Grindley Tr. 266:10-267:5)

**16.    The Marvel Comic book character Michael Devlin wore large pauldrons as part of his costume, which is very similar to the shape and proportions of the shoulder pad on Games Workshop's Space Marine figures:**





**Michael Devlin, Marvel Comics (1988)**    **Games Workshop Space Marine, Product Entry #126**

**RESPONSE:**  Games Workshop contests this fact.  Games Workshop denies that the pauldrons shown in the above image are remotely similar in shape and proportions to the Games Workshops Space Marine shoulder pad.  As for shape, Chapterhouse's own expert agreed that the unlike the unitary Space Marine shoulder pad, this pauldron appears to consist of at least two different layers of armor.  (Moskin Decl. Ex. 2, Grindley Tr. at 258:19-24)  Dr. Grindley further pointed out numerous other differences including, the presence of a large square piece of armor, a cutout in the top piece of armor, the lack of edge ribbing on the shoulder pad, and ultimately a different shoulder pad design. (*Id.*, Grindley Tr. at 259:1-15).  As for the size, the pauldron shown above is not as massive in size in proportion to the rest of the figure as the Games Workshop Space Marine shoulder pad.  For example, the pauldron appears to cover only the deltoid muscle while the Space Marine Shoulder Pad extends almost entirely to the elbow.

Games Workshop denies that this image is relevant as there is no testimony that any Games Workshop designer ever saw this shoulder pad. The designer of the Space Marine shoulder pad testified he used no specific references, which would include this image. (Moskin Decl. Ex. 3, Naismith Tr. at 21:5-22:23)

Games Workshop denies that this 1988 shoulder pad design could have possibly influenced the 1985 creation by Games Workshop of the original Space Marine character and armor, including the shoulder pad. Games Workshop further denies that there is any evidence that this comic book, allegedly published somewhere in 1988, was even available in England during any relevant time. Grindley confirmed that he had no evidence of its publishing in England. (Moskin Decl. Ex. 2, Grindley Tr. at 210:14-211:14).

Games Workshop denies that this image is relevant as it fails to show Games Workshop's unique combination of an absurdly large shoulder pad, in the shape of a quarter ovoid, with banding around the rim.

Games Workshop denies that this image is relevant as there is no testimony that any design element in this image is indispensible in the design of a shoulder pad. Dr. Grindley testified that:

> Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?
> A. Correct.
> Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?
> A. Yes, they would.
> Q. And there's no standard ways that they would have to make it?
> A. No, there isn't.
> Q. There's a virtual unlimited amount of ways?
> A. Yes.
> Q. And you're not identifying any characteristics that you believe are indispensible?
> A. No. (*Id.*, Grindley Tr. 266:10-267:5)

17.     **Robert Heinlein provided a source of pre-existing references for the GW Space Marine, including with respect to oversized and disproportionately large shoulder pads:**





Robert Heinlein (1980)



Robert Heinlein (1987)

**RESPONSE:**  Games Workshop contests this fact.  Games Workshop denies that any of the covers for the various Heinlein book covers shown in the above images are remotely similar in shape and proportions to the Games Workshops Space Marine shoulder pad.  As Chapterhouse's own expert agreed, these images bear little similarity to Games Workshop's Space Marine shoulder pads:

> Q. On page 15, you have two pictures from Robert Heinlein, correct.?
> A. That is correct.
> Q. And again, those show additional options and design for shoulder pads for future warriors?
> A. Yes.
> Q. And again, they are both different designs that that chosen by Games Workshop?
> A. Yes.  (Moskin Decl. Ex. 2, Grindley Tr. at 259:16-260:1).

For example, as for the image on the left, it appears to be a combination of a circular armor piece covering only the deltoid muscle combined with a separate square rectangular flap extending from the bottom.  Furthermore, while the square or rectangular flap appears to extend down the arm, it

does not appear from the image to be a of a size to wrap around the entirety of the arm, as the Games Workshop Space Marine shoulder pad does. Games Workshop denies that the image shows a shoulder pad in the shape of a quarter ovoid. As for the image on the right, the shoulder pad can barely be seen, but it appears to be a small articulated pad that bears little if any resemblance to the Space Marine shoulder pad.

Games Workshop denies that these image are relevant as there is no testimony that any Games Workshop designer ever saw any of these specific book covers. The designer of the Space Marine shoulder pad testified he used no specific references, which would include this image. (Moskin Decl. Ex. 3, Naismith Tr. at 21:5-22:23)

Games Workshop denies that the latter of these book covers, allegedly published in 1987, could have possibly influenced the 1985 creation by Games Workshop of the original Space Marine character and armor, including the shoulder pad. Games Workshop further denies that there is any evidence that any of these book cover images, allegedly published somewhere in 1980 and 1987, were even available in England during any relevant time. Grindley confirmed that he had no evidence of their publishing in England. (Moskin Decl. Ex. 2, Grindley Tr. at 210:14-211:14).

Games Workshop denies that these images are relevant as they fails to show Games Workshop's unique combination of a absurdly large shoulder pad, in the shape of a quarter ovoid, with banding around the rim.

Games Workshop denies that these images are relevant as there is no testimony that any design element in these images are indispensible in the design of a shoulder pad. Dr. Grindley testified that:

> Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?
> A. Correct.

Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?

A. Yes, they would.

Q. And there's no standard ways that they would have to make it?

A. No, there isn't.

Q. There's a virtual unlimited amount of ways?

A. Yes.

Q. And you're not identifying any characteristics that you believe are indispensible?

A. No. (Moskin Decl. Ex. 2, Grindley Tr. 266:10-267:5)

**18.** **Dr. Grindley provided several examples of non-GW futuristic miniature soldiers that were designed with oversized, disproportionately large shoulder pads, one of which (the Asgard miniature) was created in 1983, before any GW Space Marine:**



**SM5 Shock Trooper with Force Axe, Asgard Miniatures (1983)**



**Attila Ill Cuirassier, Mutant Chronicle Heartbreaker**

**RESPONSE:** Games Workshop contests this fact. Games Workshop denies that any of the above miniatures shown in the above images are remotely similar in shape and proportions to the Games Workshops Space Marine shoulder pad. As for the image on the left, it appears to be a multi-layered piece of armor that rises above the shoulder to form an arc wrapping around the head of the figure. It is not in the shape of a quarter ovoid, and is without any banding around the rim. As for the undated image on the right, Grindley states that it was designed in 1994, well after Games Workshop's design. Thus any similarity it has would be irrelevant. Regardless, it still does not share the same combination of elements as the Space Marine shoulder pad.

Games Workshop denies that these images are relevant as there is no testimony that any Games Workshop designer ever saw any of these miniatures. The designer of the Space Marine shoulder pad testified he used no specific references, which would include this image. (Moskin Decl. Ex. 3, Naismith Tr. at 21:5-22:23)

Games Workshop denies that the 1994 image on the right could have possibly influenced the 1985 creation by Games Workshop of the original Space Marine character and armor, including the shoulder pad. Games Workshop further denies that there is any evidence that any of these miniatures was ever available in England during any relevant time. Grindley confirmed that he had no evidence of their publishing in England. (Moskin Decl. Ex. 2, Grindley Tr. at 210:14-211:14).

Games Workshop denies that these images are relevant as they fail to show Games Workshop's unique combination of a absurdly large shoulder pad, in the shape of a quarter ovoid, with banding around the rim.

Games Workshop denies that these images are relevant as there is no testimony that any design element in these images are indispensible in the design of a shoulder pad. Dr. Grindley testified that:

> Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?
> A. Correct.
> Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?
> A. Yes, they would.
> Q. And there's no standard ways that they would have to make it?
> A. No, there isn't.
> Q. There's a virtual unlimited amount of ways?
> A. Yes.
> Q. And you're not identifying any characteristics that you believe are indispensible?
> A. No. (*Id.*, Grindley Tr. 266:10-267:5)

In contrast, Chapterhouse's new expert on military history testified that he is not an expert in

miniatures and has not had any involvement with miniatures of any nature after a brief experience as a twelve year old and no experience at all in the area of miniature wargaming. (*Id.*, Grindley Tr. 16:21-17:2; 23:15-17, 24:12-23).

**20.** **The presence of oversized, disproportionately large shoulder pads is common to science fiction tropes.**

<u>RESPONSE:</u> Games Workshop contests this fact. Out of the thousands of science fiction images examined by Grindley, he was able to locate few, if any, shoulder pads that were even remotely similar to the disproportionately large size as the Games Workshop Space Marine shoulder pad. Dr. Grindley testified that in finding these isolated images, he review included 1200 pages of material associated with science fiction role-playing games, over 50 years of cover illustrations from at least 50 different science fiction magazines, the book covers of Heinlein's publications from 1950s to the present across all readily available translations and editions, a review of the Western European Medieval Armor on display at The Metropolitan Museum of Art, a variety of online sources regarding armor, and the arms and armor shown in in almost 50 different films. (CHS Cooper Decl. Ex. 3, Grindley Rep. ¶2).

Games Workshop denies that this fact is relevant as Games Workshop's unique combination of elements of at least an oversized shoulder pad covering the entire upper arm, in the shape of a quarter ovoid, with banding around the edge is admittedly not a common design element in either science fiction or in prior military history. For example, Dr. Grindley admitted that:

> Q. And can we say that's the same about the other Games Workshop products in the chart, that you have not expressed any opinion on whether the combination of design elements chosen by Games Workshop are the same combination of any prior works you found?
> A. I'd have to look at the report. I don't believe I explicitly said that.
> Q. Implicitly or explicitly, have you pointed to any prior works where you believe all the same design choices which elements to include is the same combination that Games Workshop chose?
> A. No, I have not. (Moskin Decl. Ex. 2, Grindley Tr. at 170:22-171:10).

> Q. So you're unable to find any prior military shoulder pads that had those same design choices as Games Workshop?
> A. Correct. (*Id.*, Grindley Tr. 237:7-10)

In a belabored response to the question whether he was aware of any designs similar to Games Workshop's, including a shoulder pad that is "very large, extending all the way to the elbow" (*Id.* at 216:23-24) he likewise eventually conceded:

> …also with the caveat that the general description of the shoulder pads that you have provided differs substantially to our previous discussion of them, I would have to say yes, I was unable to provide you with any particular image that satisfied that full list of criteria.. (*Id.* at 218:3-8.)
>
>         *       *       *
>
> Q: So therefore, you are unable to state an expert opinion that that combination is unoriginal?
> A. Yes.
> Q. Yes, you agree with my statement?
> A. Yes, I do. (*Id.* at 219:19-24.)

He further testified that his report offered no opinion whether the Games Workshop designs constituted an original combination of elements. (*Id.* at 169:20–170:13.) Indeed, he admitted as follows:

> Q. In searching for shoulder pads used on future infantry warriors, a human wearing a suit of power armor, you were not able to identify any shoulder pads that had those three common design elements of the Games Workshop, size, shape and banding?
> A. Correct. (*Id.* at 264:14-20.)

**25.    The Copyright Office Registration Specialist refused GW's application for the size and shape of the "Assault Squad Shoulder Pads" work.**

**RESPONSE:**  Games Workshop contests this fact.  Games Workshop does not contest the fact that the copyright examiner raised an initial objection to registration of the Assault Squad Shoulder Pad design in June 2012 and then issued a non-final rejection of the design in January 2013 but denies the Copyright Office ever issued a final refusal to register the design.

Games Workshop contests that this fact is relevant. As the copyright examiner failed to explain its decision and refused to discuss the facts or the law with counsel for Games Workshop or even review the Court's November 27 decision, it is unclear whether the objection is based on the size of the shoulder pad, the shape of the shoulder pad, the surface ornamentation of the shoulder pad, or for some other reason. As the examiner stated:

> As I believe I said earlier, Registration Specialists examine submissions for copyright using the deposit copy and application materials before them for each case. They cannot get involved in any legal matters. (Moskin Decl. Ex. 4)

Further, as the copyright examiner failed to provide its analysis supporting the rejection, it is entitled to no deference.

**26.** **The Copyright Office Supervisory Registration Specialist affirmed the Registration Specialist's refusal to register GW's "Assault Squad Shoulder Pads" work and issued a formal rejection letter.**

**RESPONSE:** Games Workshop contests this fact. Games Workshop does not contest the fact that due to the maternity leave of the initial copyright examiner, the initial examination of the Assault Squad Shoulder Pad was transferred to a different examiner. Games Workshop does not contest the fact that this new examiner issued a non-final rejection of the design in January 2013. Games Workshop denies that the Copyright Office ever issued a final refusal to register the design. Although Games Workshop acknowledges that a supervisor stepped in when the initial examiner went on maternity leave, it denies that this non-final rejection constituted any type of supervisory level *review*, but instead was merely the initial non-final rejection.

Games Workshop contests that this fact is relevant. As the copyright examiner failed to explain its decision and refused to discuss the facts or the law with counsel for Games Workshop or even review the Court's November 27 decision, it is unclear whether the objection is based on the size of the shoulder pad, the shape of the shoulder pad, the surface ornamentation of the shoulder pad,

or for some other reason.  As the examiner stated:

> As I believe I said earlier, Registration Specialists examine submissions for
> copyright using the deposit copy and application materials before them for each
> case.  They cannot get involved in any legal matters. (Moskin Decl. Ex. 4)

Further, as the copyright examiner failed to provide its analysis supporting the rejection, it is entitled

to no deference.

**27.     In denying GW's application, the Copyright Office noted that a
copyrightable work "must possess[] at least a minimal degree of creativity." (citing Feist
Publications v. Rural Telephone Service Co., 499 U.S. 340 (1991)). The Copyright Office
wrote, "After careful consideration, we have determined that this particular work will not
support a claim to copyright for 2-Dimensional artwork or sculpture under the standards
described above." Id. This determination appears to have included "deposit materials."
The Copyright Office concluded, "no response is necessary."**

**RESPONSE:**  Games Workshop contests this fact.  Games Workshop does not contest this fact to

the extent that the non-final rejection contained the quoted language.  Games Workshop contests this

fact to the extent that Chapterhouse contends that the Copyright Office ever issued a final rejection.

Games Workshop contests this fact to the extent that the non-final rejection included a lengthier

description of law as it relates to copyrightability.  (Moskin Decl. Ex. 5).  Thus, Chapterhouse's

reference to "the standards described above" improperly implies that the Copyright Office

necessarily concluded that the Games Workshop Assault Squad Shoulder Pad did not possess a

minimal degree of creativity.

Games Workshop contests that this fact is relevant.  As the copyright examiner failed to

explain its decision and refused to discuss the facts or the law with counsel for Games Workshop or

even review the Court's November 27 decision, it is unclear whether the objection is based on the

size of the shoulder pad, the shape of the shoulder pad, the surface ornamentation of the shoulder pad,

or for some other reason.  As the examiner stated:

> As I believe I said earlier, Registration Specialists examine submissions for
> copyright using the deposit copy and application materials before them for each

case. They cannot get involved in any legal matters. (Moskin Decl. Ex. 4)

Further, as the copyright examiner failed to provide its analysis supporting the rejection, it is entitled

to no deference.

**31.     GW's January 31, 2013 Letter to the Copyright Office stated that, although aware of its administrative remedies to appeal the refusal by the Copyright Office Supervisory Registration Specialist, it had decided not to pursue the matter further with the Copyright Office, believing it "more efficient to simply allow the Court to decide the matter."**

**RESPONSE:** Games Workshop contests this fact. Games Workshop denies that it abandoned or

renounced any right to pursue either of two levels of appellate review of the application for its

Assault Squad Shoulder Pad design, the deadline for the first such review being April 4, 2013, but

rather that it recognized both the available options to seek administrative review and the greater

apparent efficiency of having the Court resolve the matter. (Moskin Decl. Ex. 6).

**32.     Having foregone its administrative right to appeal the refusal with the Copyright Office, the Copyright Office's Refusal Letter should be deemed final.**

**RESPONSE:** Games Workshop contests this fact. Games Workshop denies that there has been a

final agency refusal to register within the meaning of 37 C.F.R. § 202.5. To the contrary, 37

C.F.R. § 202.5(g) defines "Final agency action" as follows: "A decision by the Review Board in

response to a second request for reconsideration constitutes final agency action." Games

Workshop further denies that it has abandoned or renounced any right to pursue either of two levels

of appellate review of the application for its Assault Squad Shoulder Pad design, the deadline for the

first such review being April 4, 2013, but rather that it recognized both the available options to seek

administrative review and the greater apparent efficiency of having the Court resolve the matter.

(Moskin Decl. Ex. 6).

### III.     Immaterial Facts

**10.     Dr. Grindley is a tenured associate professor of English at Eugenio Maria de Hostos Community College and consortial professor at The City University of New York. His academic training has included extensive research and publication on popular culture's appropriation of Medieval tropes and he regularly teaches classes on science fiction literature and film.**

**RESPONSE:**  This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case.  Dr. Grindley's identification of prior works that allegedly contain elements that are similar to a Games Workshop product is irrelevant as there is no evidence that any Games Workshop designer used any of these prior works in the design of the Games Workshop products at issue in this case.  Further, there is no evidence that these isolated images identified by Dr. Grindley identify any elements, let alone combination of elements, that are essential or indispensible when creating any of the types of products at issue in this case.  Moreover, Grindley's eccentric views concerning the nature of what is original and applicable copyright law render his entire report suspect.

Dr. Grindley's view of originality is an incorrect understanding that if a design has any connection to, basis in, or inspiration from any prior work it is not original.  (Moskin Decl. Ex. 2, Grindley Tr. at 143:17-22).  Thus, Dr. Grindley testified that it was his expert opinion that all possible expressions of a future infantry warrior, such as a Space Marine with a shoulder pad, had been exhausted around 1990 after the release of the movie Alien.  (Id., Grindley Tr. at 139:20-140:24, 141:20-142:7).  Dr. Grindley further says it is impossible for him to separate the idea of a future military soldier from any particular expressions of that concept.  (Id., Grindley Tr. at 124:5-125:7)

**19.     The design element of unusually large proportional size is not new for shoulder pads and was not conceived or originally expressed by GW.**

**RESPONSE:**  This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case.  While Games Workshop design of the Space Marine shoulder pad is a unique combination of elements originally expressed by Games Workshop, such a fact is immaterial.

Unlike patent law, there is novelty requirement for copyrightability. Games Workshop need not be

the first to conceive of or originally express an idea to obtain copyright protection. Chapterhouse has

presented no evidence that Games Workshop relied on any preexisting unusually large shoulder pad

designs in the creation of its Space Marine shoulder pad. Instead, the designer of the Space Marine

shoulder pad testified that he did not refer to any such designs. (Moskin Decl. Ex 3, Naismith Tr. at

21:5-22:23). Further, Chapterhouse has never alleged that it ever relied on any preexisting unusually

large shoulder pad design in the creation of its products.

**21.     GW did not submit a rebuttal expert to Dr. Grindley's report.**

**RESPONSE:** This statement is immaterial because, even if true, it has no bearing on any relevant

issue in this case. No rebuttal is needed given the irrelevance of Dr. Grindley's report.

**23.     The width of the arrow base on CHS's product is wider than the picture of
GW's product and narrower than the drawing done by Neil Hodgson and Darius Hinks.
Likewise, the width of the top arrow section is larger on CHS's product.**

**RESPONSE:** This statement is immaterial, because even if true, it has no bearing on any relevant

issue in this case. The test is not whether the dimensions of the surface ornamentation on

Chapterhouse's tactical shoulder pad are identical to the dimensions of the surface ornamentation of

Games Workshop's tactical shoulder pad. The issue is whether they are substantially similar.

Games Workshop denies that the width of the Chapterhouse Tactical upwards-pointing arrow is

appreciably different from the Games Workshop Tactical Arrow, as shown in both the drawing by

Darius Hinks and Neil Hodgson and the Games Workshop physical product. (Moskin Decl. Ex. 11,

Copyright Chart 2nd Phase at product 156). Both are very wide arrows pointing upwards, and placed

in the center of the shoulder pad. Chapterhouse also specifically highlights the near identity and

interchangeability of the designs by using the Games Workshop original character name, Tactical

Space Marine, to identify its copied product.

28.     **At the January 14, 2013 hearing on CHS's First Motion for Reconsideration, GW's counsel Mr. Moskin represented that all correspondence with the Copyright Office had been produced. Ten days earlier, however, the Refusal Letter was sent, and CHS had not been provided the letter.**

**RESPONSE:** This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case, as the letter was timely produced to Chapterhouse, which does not purport to have been prejudiced in any way. Games Workshop contests the implication that the January 4 letter from Copyright Office was reviewed prior to the January 14 hearing. In fact, the letter was received in New York sometime after the close of business on Friday, January 11 and the date of counsel's return to New York from Chicago on Tuesday, January 15, when it was first reviewed. (Moskin Decl. ¶5). Further, as reflected in counsel's January 10 and January 11 emails to the Copyright Office inquiring about the promised correspondence, the letter had not yet been received as of those dates, and as also reflected in a January 16 email to Chapterhouse's counsel, the letter had been received by that date. (Moskin Decl. Exs. 4, 7).

29.     **Although CHS's counsel requested that it immediately be provided with the refusal letter once GW's attorney received it, GW's counsel refused to provide it until, as he put it, GW "decide[d] on how to respond." Ultimately, CHS counsel did not receive the letter until January 31, 2013, the same day GW submitted its Notice of Filing.**

**RESPONSE:** This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. Games Workshop contests the implication that the January 4 letter from Copyright Office was not timely produced to Chapterhouse. The letter was first reviewed in New York on Tuesday, January 15. After review of the letter and discussing the contents of it with Games Workshop, the letter was produced to Chapterhouse on January 31, 2013 as part of a supplemental document production containing supplemental documents on a variety of issues. (Moskin Decl. ¶6).

### IV.      Games Workshop's Additional Undisputed Material Facts

#### Design of the Space Marine, including the Shoulder Pad

1.      Most Space Marines wear Power Armour, an advanced suit of strength enhancing combat armor consisting of thick ceramite containing a full suite of life-support functions to operate in hostile environments. (Moskin Decl. Ex. 8, Prior Merrett Decl. ¶ 30). Over the history of the Warhammer 40K Universe there have been various advancements to the Power Armour, starting with Mark I through to the current Mark VIII version. (Id.) An example of the Mark VIII Power Armor along with various Space Marine Shoulder pads are below:

   

2. One of the numerous iconic aspects of Games Workshop's Power Armour is the shoulder pad. (Moskin Decl. Ex. 8, Prior Merrett Decl. ¶31). The shoulder pad is a convex shape with a curve at the top and a straight edge at the bottom. (Id.) There is often a large band or rim extending along the entire outer edge of the shoulder pad. (Id.) As part of the Power Armour, the shoulder pad begins above the shoulder and ends right above the elbow. (Id.) The pads are curved in a manner such that it does not cover a large portion of either the chest or the back of the Space Marine. (Id.) On the reverse side of the shoulder pad, there are typically a series of spaced indentations that serve no functional purpose but as Alan Merrett explained, they are used by Games Workshop to create a technical appearance. (Id.; Moskin Decl. Ex. 9, Prior Merrett Tr. at 46:12-47:17)

3.      Mr. Naismith, the original designer of the Space Marine armor, including the

shoulder pad is a former Games Workshop employee who currently lives in England.  Without any

prior notice to Games Workshop, Chapterhouse contacted him and convinced him to appear

voluntarily for a deposition in this case regarding his work in designing the original shoulder pad.

(Moskin Decl. ¶4)

4.      Mr. Naismith confirmed that when he created the original Space Marine in 1985,

which included the shoulder pad, he did so without any direct references.  (Moskin Decl. Ex. 3,

Naismith Tr. at 21:5-22:23)   He stated that he had some general inspiration from the general shape

of blanket rolls used by Napoleonic soldiers (which became part of the cylindrical space-age

equipment at the top of the backpack); American WWII infrantryman (who wore back packs);

Romanesque helmets (which were modified, modernized and fitted with breathing apparatus and

goggles); and Medieval armour which was articulated at the joints to allow the user's limbs to move.)

(*Id.*, Naismith Tr. at 29 l. 15 – 34 l.2).

5.      As the Space Marine shoulder pad does not have to be functional in any literal sense,

it is so large (covering the entire upper arm of the Space Marine figure) that it would be impossible

for an actual human to move while wearing it.  (Merrett Decl. ¶2).

6.      Mr. Naismith testified that the size of the Space Marine shoulder pad was meant to

give the miniature figure "presence" on the gaming table in keeping with its oversize image as

depicted in the larger-scale paintings and drawings Games Workshop publishes.

> Q. In the same way I asked you about the function of the helmet, does the
> shoulder pad on a Space Marine have any actual function?
> A. Its main function is this idea of communicating the presence and power of the
> Space Marine in his armor.  That is the story we are trying to tell.
> Q: Does that have anything to do with the size of the shoulder pad in relation to
> the figure itself?
> A. Only insofar as because it's larger than is, if you like, it adds a presence to the
> model (Moskin Decl. Ex. 3, Naismith Tr. at 62:2-23.)
>
> *        *        *

Q. What about the shoulder pads do you believe added presence on the table?
A. Very much so, yes. I suppose the simplest thing to imagine is a Space Marine without shoulder pads. It then goes back to being just a man. So it is part of the signal. If you look at American football jocks with their shoulder protectors, they look really imposing, you know, by the time they have got their helmet on and they are all 6-foot something tall, so they are big men with big shoulders, and in the real world are intimidating. So the tie with the Space Marines was to use shoulder pads to give some of that feeling to the design, so that any normal human being standing next to a Space Marine looked like a lesser being. (*Id.* at 33:13-34:2.)

7.      The Space Marine shoulder pad is an original combination of elements, including at least a vastly oversized shoulder pad, a quarter ovoid shape, and large banding around the edge. A large number of the Chapterhouse products at issue are shoulder pads that copy this unique combination of elements. (Moskin Decl. Ex. 10, Copyright Chart 1st Phase, *see, e.g.* entries 4-7, 12-13, 19-20, 46-48, 49, 50-52, 56-62, 64-65, and 101-02; Moskin Decl. Ex. 11, Copyright Chart 2nd Phase, *see, e.g.* entries 126, 142, 147-57, and 163).

8.      Many of the Space Marine shoulder pads have additional original features such as a series of indents on the rear of the devices. In many instances, Chapterhouse has copied this feature in its shoulder pads.



Back of example Chapterhouse Power Armor Shoulder Pad for Space Marine (Moskin Decl. Ex. 14)

9.      Mr. Villacci testified he used a "digimeter" to ensure the dimensions of his shoulder pads were an exact match to the Games Workshop Space Marine shoulder pad. (Moskin Decl. Ex. 15, Villacci Tr. at 217-18).

10.      The 28 mm size adopted by Games Workshop is not an industry standard but was

adopted arbitrarily by Games Workshop (with other companies using different scales). Although there are now other companies that make miniatures to the same 28 mm scale that Games Workshop uses, there is nothing to the size essential to making battlefield miniatures.  Hence these are original features for which there is no historical precedent.  Rather, the 28 mm scale was created by Games Workshop and used for the Space Marine figure as part of Games Workshop's original design conception to give the figures greater presence than those confirming to the 25 mm scale popular in the 1980's.  (Merrett Decl. ¶3; Moskin Decl. Ex. 3, Naismith Tr. 64:11-66:3)

11.    Games Workshop has developed an entire range of Assault, Tactical, and Devastator shoulder pads for Space Marines, each containing the same unique shape of the Space Marine shoulder pad combined with an icon designating the type of Space Marine (a specific "X" design, a wide upward facing arrow design, or a specific chevron design), tied to a specific name Assault, Tactical, and Devastator, and numerical designation (1-10) presented as a Roman numeral. (Moskin Decl. Ex. 8, Prior Merret Decl. ¶ 32).

- Tactical Space Marines are represented by an upward pointing arrow and given roman numerals I through VI on their shoulder pads;

     

- Assault Space Marines are represented by a crossed X and given roman numerals VII and VIII on their shoulder pads; and



- Devastator Space Marines are represented by a chevron (inverted V) and given roman numerals IX and X on their shoulder pads.



12.     Including its new product (No 156), "Scaled Tactical Power Armor Pad"

Chapterhouse has created and sells numerous "Tactical Shoulder Pads for Space Marines",

"Assault Shoulder Pads for Space Marines", and "Devastator Shoulder Pads for Space Marines":



Tactical Shoulder Pad for Space Marine (Moskin Decl. Ex. 16)



Scaled Tactical Power Armor Pad (Moskin Decl. Ex. 11, Copyright Claim Chart for 2nd Phase at product 156)



Assault Shoulder Pad for Space Marine (Moskin Decl. Ex. 16)



Devastator Shoulder Pad for Space Marine (Moskin Decl. Ex. 16)

**Court's Prior Rulings**

13.     The Court has previously analyzed the copyrightability of Games Workshop's

Space Marine shoulder pad and has found it copyrightable.  (Dkt. 258).  The Court stated:

Chapterhouse has presented a report from William F. N. Brewster, the Curator of Collections for the First Division Museum at Cantigny Park in Wheaton, who stated that GW's shoulder pads are "in keeping" with previous examples of military-style shoulder pads found throughout history. Brewster attached to his report drawings of soldiers throughout the last several centuries, many of whom were clad in armor that included shoulder pads. During his subsequent deposition, however, Brewster admitted that he could locate no same or similar representation of GW's shoulder pad design in previous military history.

Upon independent examination, the Court finds that GW's shoulder pads involve enough originality to afford them copyright protection. The unusually large proportional size of the shoulder pads as compared to the Space Marine's head (depicted in GW's product at entry 49) is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle. The shoulder pads created to fit onto GW's physical figurines, though more proportionally accurate, are nevertheless still larger and boxier than those typically found outside of the Warhammer 40,000 fantasy world. The Court thus concludes that GW is entitled to copyright protection as to the design of its shoulder pads. (Dkt. 258 at 19-20)

14.     The Court has previously analyzed the copyrightability of Games Workshop's

Tactical Space Marine shoulder pad, which is the iconic Space Marine shoulder pad with the

surface ornamentation of a specific wide arrow pointing upward in the center of the pad.  (Dkt

258 at 20-21).  The Court stated:

The Court likewise rejects Chapterhouse's contention that other GW shoulder pad designs are ineligible for copyright protection. Chapterhouse contends that for GW's products in entries 48, 50, and 56 on the Claim Chart, the only similarities between the parties' works are common geometric shapes— such as an "X" or a chevron—that are in the public domain and are not copyrightable. "It is true that common geometric shapes cannot be copyrighted." Kelley v. Chicago Park Dist., 635 F.3d 290, 303 (7th Cir. 2011). Yet although GW could not base its copyright claim on a depiction of an "X" or a chevron alone, its depiction of that otherwise-common element affixed on an original, creative shoulder pad with a distinctive color scheme is sufficient to satisfy the originality requirement. See Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 207 (3d Cir. 2005) ("When an author combines [otherwise non-protected] elements and adds his or her own imaginative spark, creation occurs, and the author is entitled to protection for the result."); Tufenian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 134 (2d Cir. 2003) ("[T]he defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art . . . are considered in relation to one another."). Chapterhouse's motion for summary

judgment on the basis that GW's shoulder pads are not copyrightable is therefore denied. The Court's finding resolves this issue for entries 4–7, 12–13, 19–20, 46–48, 50–52, 56–62, 64–65, and 101–02 on the Claim Chart. (*Id.*)

15.      In the prior phase of this case, the Court thus held as copyrightable the Space Marine shoulder pad, by itself, and also copyrightable when combined with various icons, such as Tactical, Assault, Devastator, among others. (Dkt. 258 at 19-21). The relevant Chapterhouse products these rulings covered were products 4-7, 12-13, 19-20, 46-48, 49, 50-52, 56-62, 64-65, and 101-02. (*Id.*, Moskin Decl. Ex. 10, Copyright Chart 1st Phase at products 4-7, 12-13, 19-20, 46-48, 49, 50-52, 56-62, 64-65, and 101-02).

16.      The new Chapterhouse products subject to Chapterhouse's motion, products 146-48, 151-52, 155-57, and 163 (Br. At 1), are accused of infringing the same Games Workshop Space Marine shoulder pad designs the court has already found copyrightable, such as the basic Space Marine shoulder pad and the Tactical Space Marine shoulder pad. (Moskin Decl. Ex. 11, Copyright Chart 2nd Phase at products 146-48, 151-52, 155-57, and 163).

### Chapterhouse's New Expert on Military History, Mr. Grindley

17.      Despite Chapterhouse's two prior experts (one on military history and one on science fiction history), who both had a chance to comment on Games Workshop's design for its Space Marine shoulder pad, Chapterhouse has now retained a third purported expert, Mr. Grindley, to opine on Games Workshop's design for its Space Marine shoulder pad. (CHS Cooper Decl. Ex. 3).

18.      Chapterhouse's prior expert admitted that looking through all of the shoulder pads he identified from prior history, he did not see any shoulder pads with any insignia or design on them. (Moskin Decl. Ex. 12, Brewster Tr. at 137:22-138:2). He was unable to point to anywhere in military history where emblems or designs are applied to shoulder pads. (*Id.* at 138:3-6). Furthermore, while Chapterhouse's expert testified that he had found certain decorative elements (not

on shoulder pads) in prior military history (such as griffins, lions, scales, etc.), he was unable to express any opinion on whether any of Games Workshop's particular combinations of decorative elements were present or common in prior military history. (*Id.* at 165:5-166:17). He even concluded that in his experience "applications of these designs to certain things like shoulder pads is not common in military history." (*Id.* at 166:18-23).

19.     Mr. Grindley was not made aware that the Court had previously analyzed the copyrightability of the Space Marine shoulder pad in light of the prior existing works identified by Chapeterhouse's prior experts.  (Moskin Decl. Ex. 2, Grindley Tr. at 117:17-118:24).  Thus, Mr. Grindley had no knowledge concerning the features or combination features of the Space Marine shoulder pad that the Court identified as copyrightable.  (*Id.*)

20.     Mr. Grindley admitted that he was unable to find any prior military shoulder pads with the same combination of design choices as the Space Marine shoulder pad, such as an oversized shoulder pad, a quarter ovoid shape, and a banding around the edge.  For example, Mr. Grindley testified:

> Q. So you're unable to find any prior military shoulder pads that had those same design choices as Games Workshop?
> A. Correct. (Moskin Decl. Ex. 2, Grindley Tr. 237:7-10)

21.     When asked about Mr. Grindley's knowledge of any prior designs of shoulder pads similar to Games Workshop's, including a shoulder pad that is "very large, extending all the way to the elbow" (Moskin Decl. Ex. 2, Grindley Tr. at 216:23-24) he likewise eventually conceded:

> …also with the caveat that the general description of the shoulder pads that you have provided differs substantially to our previous discussion of them, I would have to say yes, I was unable to provide you with any particular image that satisfied that full list of criteria.. (*Id*. at 218:3-8.)
>
>              *        *        *
>
> Q: So therefore, you are unable to state an expert opinion that that combination is

unoriginal?
A. Yes.
Q. Yes, you agree with my statement?
A. Yes, I do. (*Id.* at 219:19-24.)

22.     Dr. Grindley testified that his report offered no opinion whether the Games

Workshop designs constituted an original combination of elements. (Moskin Decl. Ex. 2,

Grindley Tr. at 169:20-170:13.) Indeed, he admitted as follows:

> Q. In searching for shoulder pads used on future infantry warriors, a human
> wearing a suit of power armor, you were not able to identify any shoulder pads
> that had those three common design elements of the Games Workshop, size,
> shape and banding?
> A. Correct. (*Id.* at 264:14-20.)

23.     Neither Chapterhouse nor Dr. Grindley contend that any of Games Workshop's

designers copied or relied upon any of the references identified by Dr. Grindley. (Moskin Decl.

Ex. 2, Grindley Tr. at 85:19-86:1).

24.     Dr. Grindley's view of originality is an incorrect understanding that if a design

has any connection to, basis in, or inspiration from any prior work it is not original. (Moskin

Decl. Ex. 2, Grindley Tr. at 143:17-22). Thus, Dr. Grindley testified that it was his expert

opinion that all possible expressions of a future infantry warrior, such as a Space Marine with a

shoulder pad, had been exhausted around 1990 after the release of the movie Alien. (*Id.*,

Grindley Tr. at 139:20-140:24, 141:20-142:7). Dr. Grindley further says it is impossible for him

to separate the idea of a future military soldier from any particular expressions of that concept.

(*Id.*, Grindley Tr. at 124:5-125:7).

25.     Chapterhouse has never asserted as one of its 24 affirmative defenses a defense of

*scènes à faire*. (Dkts. 45, 150, and 266). Regardless, there is no evidence from Dr. Grindley or

otherwise to support a defense that the use of enormous shoulder pads covering the entire upper

arm of a character, having a quarter ovoid shape, with a rim along the edge are so common as to

be necessary elements of a futuristic space-age warrior. In fact, Dr. Grindley testified to the

opposite:

> Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?
> A. Correct.
> Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?
> A. Yes, they would.
> Q. And there's no standard ways that they would have to make it?
> A. No, there isn't.
> Q. There's a virtual unlimited amount of ways?
> A. Yes.
> Q. And you're not identifying any characteristics that you believe are indispensible?
> A. No. (Moskin Decl. Ex. 2, Grindley Tr. 266:10-267:5)

**Copyright Office**

26.     The Copyright Office has registered Games Workshop's Flesh Tearer shoulder pad,

consisting of the iconic Space Marine shoulder pad combined with the surface ornamentation of the

Flesh Tearer icon (a saw blade with a drop of blood on it). (Moskin Decl. Ex. 13).

Dated:  March 14, 2013                          Respectfully submitted,


                                                /s/  Jason J. Keener

                                                    Jason J. Keener (Ill. Bar No. 6280337)
                                                    FOLEY & LARDNER LLP
                                                    321 North Clark Street, Suite 2800
                                                    Chicago, IL 60654-5313
                                                    Telephone:  312.832.4500
                                                    Facsimile:  312.832.4700
                                                    Email:  jkeener@foley.com

                                                    Jonathan E. Moskin
                                                    FOLEY & LARDNER LLP
                                                    90 Park Avenue
                                                    New York, New York 10016
                                                    Telephone:  (212) 682-7474
                                                    Facsimile:  (212) 687-3229
                                                    Email:  jmoskin@foley.com

                                                    *Attorneys for Plaintiff*
                                                    *Games Workshop Limited*

## <u>CERTIFICATE OF SERVICE</u>

I, Jason J. Keener, an attorney, hereby certify that on March 14, 2013, I caused to be filed electronically the foregoing RESPONSE TO LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS NOT IN DISPUTE IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

 /s/  Jason J. Keener
Jason J. Keener