**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:10-cv-08103 |
| v. | ) | |
| | ) | Honorable Matthew F. Kennelly |
| CHAPTERHOUSE STUDIOS LLC, | ) | Honorable Jeffrey T. Gilbert |
| | ) | |
| Defendant. | ) | |

**CHAPTERHOUSE'S OPPOSITION TO
GAMES WORKSHOP'S MOTION FOR SUMMARY JUDGMENT**

Julianne M. Hartzell
Sarah J. Kalemeris
MARSHALL, GERSTEIN & BORUN LLP
6300 Willis Tower
233 S. Wacker Dr.
Chicago, IL 60606
Telephone: 312-474-6300

Jennifer Golinveaux (CA Bar No. 203056)
Thomas J. Kearney (CA Bar No. 267087)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Telephone: 415-591-1000

Imron Aly
Bryce A. Cooper (IL Bar No. 6296129)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Telephone: 312-558-5600

*Attorneys for Defendant Chapterhouse Studios LLC*

Dated: March __, 2013

## TABLE OF CONTENTS

**Page**

I.  ARGUMENT ..............................................................................................................1

    A.  Games Workshop Must Prove that It Owns Each of the 107 Alleged Trademarks ....................................................................................................... 1

    B.  Games Workshop Must Prove That it Had Standing At the Time It Filed Suit ..... 4

    C.  Chapterhouse Withdraws Certain of Its Affirmative Defenses ............................ 6

    D.  *De Minimis* Copying and Independent Creation Are Merely Required Elements of the Infringement Analysis that the Jury Must Perform. .................... 7

    E.  Chapterhouse's Defense of Copyright Fair Use ..................................................... 7

        1.  The purpose and character of the use is factually disputed. ........................9

        2.  The nature of the copyrighted works is factually disputed. ......................12

        3.  The amount of the use is factually disputed. ...............................................13

        4.  The effect of the use is factually disputed. ..................................................14

    F.  Games Workshop's Illinois Consumer Fraud and Deceptive Business Practices Count is Preempted by Copyright Law .................................................. 14

    G.  There is a Factual Dispute As To Whether Games Workshop Has Impliedly Licensed Certain Uses of Its Copyright and Trademark Works .......................... 17

II.  CONCLUSION.......................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*A.V. ex rel. Vanderhye v. iParadigms, LLC*,
  562 F.3d 630 (4th Cir. 2009) ............................................. 9

*Am. Geophysical Union v. Texaco, Inc.*,
  802 F. Supp. 1 (S.D.N.Y., 1992), *aff'd*, 60 F.3d 913 (2d Cir. 1994),
  *cert. denied*, 516 U.S. 1005 (1995). .................................. 8

*Association of American Medical Colleges v. Cuomo*,
  928 F.2d 519 (2nd Cir. 1991) ............................................ 9

*Baltimore Orioles, Inc. v. Major League Baseball Players Assoc.*,
  805 F.2d 663 (7th Cir. 1986) ........................................... 15

*Billy-Bob Teeth, Inc. v. Novelty, Inc.*,
  329 F.3d 586 (7th Cir. 2003) ............................................ 5

*Blanch v. Koons*,
  467 F.3d 244 (2d Cir. 2006*)*............................................ 9, 10

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)............................................. 8, 9, 10, 12

*G.R. Leonard & Co. v. Stack*,
  386 F.2d 38 (7th Cir. 1967) ............................................. 7

*Goes Lithography Co. v. Banta Corp.*,
  26 F. Supp. 2d 1042 (N.D. Ill. 1998) ................................ 15, 16

*Harper & Row, Publishers, Inc. v. Nation Enterprises*,
  471 U.S. 539 (1985)...................................................... 8

*Hyperquest, Inc. v. N'Site Solutions, Inc.*,
  632 F.3d 377 (7th Cir. 2011) ............................................ 4

*Imperial Residential Design, Inc. v. Palms Dev. Gorup, Inc.*,
  70 F.3d 96 (11th Cir. 1995) ............................................. 5

*Jac USA, Inc. v. Precision Coated Prods, Inc.*,
  2003 WL 1627043 (N.D. Ill. Mar. 25, 2003)............................. 17

*JCW Investments, Inc. v. Novelty, Inc.*,
  482 F.3d 910 (7th Cir. 2007) ............................................ 7

**TABLE OF AUTHORITIES** *(Continued)*

**Page(s)**

*Malibu Textiles, Inc. v. Carol Anderson, Inc.*,
  No. 07CV4780, 2008 U.S. Dist. LEXIS 51783 (S.D. N.Y. July 8, 1008) ......................... 5

*Marobie-Fl, Inc. v. National Assoc. of Fire Equip. Distributors*,
  983 F. Supp. 1167 (N.D. Ill. 1997) ................................................................. 15

*McGraw-Edison Co. v. Walt Disney Prods.*,
  787 F.2d 1163 (7th Cir. 1986) ....................................................................... 14

*MJ & Partners Rest. Ltd. P'ship v. Zadikoff*,
  10 F. Supp. 2d 922 (N.D. Ill. 1998) ................................................................ 14

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ........................................................................ 9

*Pesina v. Midway Mfg. Co.*,
  948 F. Supp. 40 (N.D. Ill. 1996) .................................................................... 14

*Ringgold v. Black Entertainment Television, Inc.*,
  126 F.3d 70 (2d Cir. 1997) ............................................................................. 7

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir. 1992) ...................................................................... 9, 10

*Spex, Inc. v. Joy of Spex, Inc.*,
  847 F.Supp. 567 (N.D. Ill. 1994) ................................................................... 14

*Sunham Home Fashions, LLC v. Pem-America, Inc.*,
  No. 02cv6284, 2002 WL 31834477 (S.D.N.Y. Dec. 17, 2002) .......................... 5

*Ty, Inc. v. Publications Intern. Ltd.*,
  292 F.3d 512 (7th Cir. 2002) ............................................................... 8, 11, 14

**STATUTES**

17 U.S.C. § 107 ...................................................................................... 8

17 U.S.C. § 301 ..................................................................................... 15

**OTHER AUTHORITIES**

7th Cir. Pattern Jury Instruction 12.7.1 ....................................................... 8

7th Cir. Pattern Jury Instructions at 12.5.1 .................................................. 7

## CHAPTERHOUSE'S OPPOSITION TO
## GAMES WORKSHOP'S MOTION FOR SUMMARY JUDGMENT

Games Workshop's Summary Judgment motion seeks to avoid the need to prove its claims against Chapterhouse by shifting the burden of proof on two essential issues: (1) ownership of its asserted rights and (2) infringement. But Games Workshop has not met its burden on these issues, and both remain factually disputed.

Games Workshop's motion also hopes to eliminate all affirmative defenses. But while Chapterhouse agrees some no longer apply, there are several affirmative defenses that were appropriately pled and supported during discovery. Because a genuine issue of material fact exists as to each of the affirmative defenses discussed below[1] and Games Workshop has not presented evidence to the contrary, Games Workshop's Motion for Summary Judgment on the remaining Chapterhouse Affirmative Defenses should be denied.

## I.    ARGUMENT

### A.    Games Workshop Must Prove that It Owns Each of the 107 Alleged Trademarks

In order to succeed on its trademark claims, Games Workshop bears the burden of proving that it owns each of the words, symbols, or combinations of words and symbols as a trademark as used in the United States. Yet only 14 of Games Workshop's 107 asserted trademarks are registered and thus subject to an initial presumption of ownership and priority of use. Dkt. 261 at ¶ 21. For another 24 of its marks described by Games Workshop as "icons," Games Workshop still has never identified the symbols that it contends are at issue, despite the two year pendency of this litigation, the Court's acknowledgment of Games Workshop's failure to identify what it is claiming in its November 27, 2012 Summary Judgment Order (Dkt. 258 at

---

[1] Chapterhouse no longer asserts Affirmative Defenses 2, 8, 10-17, and 19-21.

28-29), and repeated requests from Chapterhouse. ASUF 4 (Hartzell Dec. ¶9). For other alleged marks, such as assault cannon, empire, high elf, plasma, jump pack, and jet bike, extensive third party uses and Games Workshop's own witnesses show that it does not own them: consumers recognize them as phrases that describe a generic category of goods, a descriptive term, or as something other than a source identifier for Games Workshop. ASUF 5 (Hartzell Decl. Ex. I, J, K, L). Rather than even attempting to prove its ownership of these marks, Games Workshop instead alleges, incorrectly, that Chapterhouse's Nicholas Villacci said at his deposition that each of the words listed in Games Workshop's interrogatory response constitute valid trademarks owned by Games Workshop that have priority over Chapterhouse's use. That is not what Mr. Villaci said.

Mr. Villaci listed certain words that he knew he had developed before Games Workshop did, but that does not mean he admitted every other mark was valid and infringed. The Court has previously ruled on this issue several times. In recognition of the Court's prior November 27, 2012 ruling, Games Workshop does not ask that the Court enter summary judgment in its favor regarding Chapterhouse's nominative fair use defense. GW Memo in Support at 5. Games Workshop does not appear to ask the Court to reconsider its denial of summary judgment regarding whether Games Workshop had used the marks in commerce based upon the existence of an issue of material fact. Dkt. 258 at 30. Games Workshop does not ask the Court to resolve factual issues regarding its ownership or priority of marks that Mr. Villacci identified specifically as having been used in commerce by Chapterhouse before Games Workshop. *Id.* at 6. Rather, although never explicitly stated, Games Workshop seems to request an order from the Court that Mr. Villacci's silence in failing to name the remaining words identified by Games Workshop constitutes an admission of the ownership, validity, and use in commerce of 87 alleged marks,

the vast majority of which are unregistered and thus, not subject to any evidentiary presumption. *Id.* at 6-7.

Again, Mr. Villacci did not make the affirmative admission that Games Workshop seeks to rely upon. Mr. Villacci explicitly testified that he was not acknowledging the existence of a trademark by responding to counsel's question and he was not asked any question seeking an acknowledgement of the ownership, validity, or use in commerce of the marks not identified in his response. Response to SUF 3, (Moskin Decl. Exs. B and C.)  He made no affirmative disavowal of Chapterhouse's consistent position throughout this litigation that Games Workshop does not own all of the 107 alleged marks asserted. He did testify as to marks included in the list that he does not believe Chapterhouse has ever used or has not used in the nature of a trademark. Response to SUF 3, (Moskin Decl. Exs. B and C.) He identified one mark as to which Chapterhouse obtained permission from its creator to use the mark. Response to SUF 3, (Moskin Decl. Exs. B and C.). He further identified marks that he believed Games Workshop had not used as a source identifier prior to Chapterhouse's use. Response to SUF 3, (Moskin Decl. Exs. B and C.). Further, although Games Workshop's counsel explicitly explained to Mr. Villacci that he was not asking Mr. Villacci to be a lawyer and opine on trademark law, he now seeks to draw legal conclusions from Mr. Villacci's testimony. Response to SUF 3, (Moskin Decl. Exs. B and C). Games Workshop has neither presented evidence that Mr. Villacci has the proper foundation to testify regarding Games Workshop's first use in commerce, if any, of each of the 107 alleged trademarks nor shown that he actually did so testify.

Games Workshop also seeks to rely on Chapterhouse's nominative fair use defense regarding certain of the 107 alleged trademarks as a blanket admission of the existence and validity of all 107 alleged marks. Merely arguing that, *if* Games Workshop's alleged trademark rights are found to be valid and owned by Games Workshop, the accused uses are permitted as

nominative fair use does not constitute an admission of validity as to those marks. It is no surprise that Games Workshop cites to no case law in support of its proposed burden shift. Because Games Workshop must prove each element of its claim, including the ownership, validity, and priority for each mark, and because Mr. Villacci has made no affirmative admission to the contrary, Games Workshop's unprecedented request that it not be required to prove its case should be denied.

### B.   Games Workshop Must Prove That it Had Standing At the Time It Filed Suit

As set forth in Chapterhouse's Affirmative Defense No. 3, its ownership challenge is directed to the question of whether or not Games Workshop had standing to bring suit when it filed this lawsuit. Dkt. 266 at p. 27. Section 501(b) of the 1976 Copyright Act establishes that only the owner or beneficial owner of an exclusive right under a copyright law is entitled, or has standing, to sue for infringement. *Hyperquest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 381 (7th Cir. 2011). The burden of proving that it owns proper rights is on the party asserting copyright infringement. *Id.* at 385.

With respect to the creators of the works identified in the second phase of the case, Games Workshop finally produced contracts with certain of the remaining freelance authors on March 8, 2013, long after the deadline for the exchange of documents relating to the newly accused products and even after filing its opening brief for whom no prior evidence of assignment had been offered. Chapterhouse Additional Statement of Undisputed Fact ("ASUF") 3, Hartzell Dec. at ¶ 8. After this production, the ownership of only one of the works identified in the December 10, 2012 Complaint remains at issue.

Games Workshop identified Nick Coleman as the author of an illustration and description contained in the Warhammer 40,000 Compilation 1991. Chapterhouse ASUF 1 (Hartzell Dec. Ex. D, claim chart at rows 132 and 133, p. 35-36, 38-39). In its response to Chapterhouse's

Interrogatory No. 37 seeking the names and employment dates of all listed designers who were Games Workshop employees at any time, Games Workshop did not identify Mr. Coleman as an employee or former employee. ASUF 2 (Hartzell Dec. Ex. E, GW Response to Int. 37). Games Workshop has not produced any written assignment or even a belated confirmatory assignment for Mr. Coleman's rights in the authored work. ASUF 3 (Hartzell Dec. at ¶ 8).

Plaintiff contends that where there is no dispute between the plaintiff and the designer regarding ownership of the rights, an accused infringer does not have standing to challenge ownership.[2] GW Memorandum in Support of Summary Judgment at 1-4. While the "confirmatory" assignments submitted by Games Workshop do not affirmatively state that an earlier oral assignment was made, even accepting their validity, the argument is inapplicable to Mr. Coleman, for whom Games Workshop has submitted absolutely no evidence of assignment. In every case cited by Plaintiff, evidence was provided to demonstrate that the creator of the work agreed that the work had been assigned to the asserting party. *See Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 591-592 (7th Cir. 2003) (oral assignment later confirmed in written agreement); *Imperial Residential Design, Inc. v. Palms Dev. Gorup, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995)(written agreement confirming earlier oral agreement); *Malibu Textiles, Inc. v. Carol Anderson, Inc.*, No. 07CV4780, 2008 U.S. Dist. LEXIS 51783, at *29 (S.D. N.Y. July 8, 1008) (informal agreements subsequently reduced to writing); *Sunham Home Fashions, LLC v. Pem-America, Inc.*, No. 02cv6284, 2002 WL 31834477, at *7 (S.D.N.Y. Dec. 17, 2002) (finding undated assignments valid). With respect to Mr. Coleman, Games Workshop has presented no such evidence. Accordingly, Games Workshop's newly raised argument regarding standing to

---

[2] Chapterhouse further notes that it disputes Games Workshop's unsupported factual statement that "none of the relevant authors have ever challenged Games Workshop's ownership of copyright" in light of the instances of challenge to Games Workshop's rights that resulted in the voluntary dismissal of pending claims in the first phase of this litigation.

challenge Games Workshop's ownership of Mr. Coleman's work is irrelevant and ownership of Mr. Coleman's works remains in dispute.

With respect to works of Mr. Smith, Chapterhouse concedes that, under *Billy-Bob Teeth*, the Games Workshop confirmatory assignment signed by Mr. Smith appears to resolve the ownership dispute.

### C. Chapterhouse Withdraws Certain of Its Affirmative Defenses

Chapterhouse agrees that it acquired insufficient evidence to proceed with affirmative defenses 2, 8, 10-17, and 19-21 at trial. In addition, Chapterhouse understands that Games Workshop is not seeking statutory damages as to any of its claims, thus affirmative defense 22 is no longer at issue.

With respect to affirmative defense 24 (Fraud on the Copyright Office)—as has been extensively briefed before the Court in Chapterhouse's First and Second Motion for Reconsideration and detailed in Chapterhouse's Interrogatory Response—the defense was premised upon the following: Games Workshop withheld from Chapterhouse and this Court relevant and responsive correspondence between its counsel and the United States Copyright Office during pendency of the summary judgment motion regarding the same products. It then submitted the summary judgment decision entered by the Court, but withheld from the Copyright Office the material fact that the Court had never been advised of the Copyright Office's earlier decision that the "sculpture portion is too minimal" to be qualify for registration. See Dkt. 287. With this incomplete portrayal, Games Workshop attempted to convince the Copyright Office to change its initial refusal to register the sculptural portion of the work. In light of Games Workshop's belated January 31, 2013 production, demonstrating that the Copyright Office fortunately did not change its decision to refuse registration and Games Workshop's subsequent decision to abandon the application, Chapterhouse agrees that there is no registration to be found

invalid based upon the misrepresentation. Accordingly, Chapterhouse no longer asserts affirmative defense 24 so long as Games Workshop is no longer pursuing that application.

With respect to the remaining defenses, Chapterhouse maintains their applicability to the case at bar and sets forth the basis for each in greater detail below.

### D. *De Minimis* Copying and Independent Creation Are Merely Required Elements of the Infringement Analysis that the Jury Must Perform.

Plaintiff bears the burden of showing that copying of protected expression of its work, if any, has been done to an unfair extent. *G.R. Leonard & Co. v. Stack*, 386 F.2d 38, 39 (7th Cir. 1967). In copyright law, the *de minimis* doctrine is applicable in a determination of whether the quantity of copying which has been found rises to the level of actionable copying and is always a required element of copyright infringement. *Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 74-76 (2d Cir. 1997). Similarly, the copyright infringement analysis requires that plaintiff prove copying, either directly or circumstantially. This analysis allows for a determination that the accused work was independently created. *See, e.g.*, 7th Cir. Pattern Jury Instructions at 12.5.1; *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 915 (7th Cir. 2007). Neither is properly characterized as an affirmative defense, but rather as factors in the copyright infringement analysis. Because Games Workshop has not moved for summary judgment of copyright infringement, it would be inappropriate for the court to preclude Chapterhouse from reliance upon evidence of *de minimis* use and independent creation relevant to the infringement analysis. It is up to Plaintiff to prove its copyright infringement case.

### E. Chapterhouse's Defense of Copyright Fair Use

Chapterhouse maintains that it has not copied any of Plaintiff's works that are properly protected under copyright. However, if Chapterhouse is determined to have copied any of Plaintiff's allegedly copyrighted works, Chapterhouse asserts the affirmative defense of fair use

in the alternative.[3] The assertion that fair use may be argued in the alternative if a defendant is found to have copied is so well accepted as to be explicitly described in the 7th Circuit Pattern Jury Instructions. 7th Cir. Pattern Jury Instruction 12.7.1. The affirmative defense of fair use was properly pled and should not be dismissed, as a reasonable jury could determine that each of the accused uses by Chapterhouse of any of Plaintiff's allegedly copyrighted works was protected by the doctrine of fair use.

The fair use doctrine is set forth in 17 U.S.C. § 107, which outlines four factors to be considered, among others:

> (1) The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole, and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

No one factor is dispositive of the others, nor are the factors exhaustive. *Am. Geophysical Union v. Texaco, Inc.*, 802 F. Supp. 1, 21 (S.D.N.Y., 1992), *aff'd*, 60 F.3d 913 (2d Cir. 1994), *cert. denied*, 516 U.S. 1005 (1995). A proper fair use analysis must weigh each factor but should not do so rigidly and should also take into account any other relevant considerations. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). Summary judgment is rarely appropriate in the case of a fair use affirmative defense, as the analysis is largely fact-based. *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 552 (1985); *Ty, Inc. v. Publications Intern. Ltd.*, 292 F.3d 512, 519 (7th Cir. 2002); *Association of American Medical Colleges v. Cuomo*,

---

[3] Chapterhouse further submits that the issue of Chapterhouse's affirmative defense of fair use is not ripe for summary judgment. Chapterhouse explicitly denies that it has copied of any of the allegedly infringed Games Workshop works, and Games Workshop has not made a prima facie case of copying for any of the accused Chapterhouse products.

928 F.2d 519, 524 (2nd Cir. 1991). Such a determination would be particularly difficult in this case, in light of the large number of products at issue.

### 1. The purpose and character of the use is factually disputed.

The first factor in the fair use analysis is the "purpose and character of the use." That a work is commercial in nature is not dispositive, and it is improper for a court to cut short a fair use analysis based on the commercial nature of the accused work. *Campbell*, 510 U.S. at 583-84 ("In giving virtually dispositive weight to the commercial nature of the parody, the Court of Appeals erred."). If a work is found to be transformative, despite being found to be commercial in nature, this finding will weigh in favor of the use as a fair use. *Campbell*, 510 U.S. at 579; *Blanch v. Koons*, 467 F.3d 244, 251-252 (2d Cir. 2006*); A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 640 (4th Cir. 2009); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1166 (9th Cir. 2007). A work is transformative if it adds something new to the underlying copyrighted work or has a different function, purpose or character than the original work. *Campbell*, 510 U.S. at 579.

Plaintiff erroneously argues that any alleged copying by Chapterhouse fails the first factor of the fair use analysis because the accused works are "purely commercial" in nature and do not involve any of the exceptions itemized in the preamble to 17 U.S.C. § 107. It has not been proven that all of the uses for all of the works was purely commercial. Moreover, as noted in the case law, these itemized exceptions are simply examples and do not constitute an exhaustive list of works that qualify for the fair use affirmative defense. *Campbell*, 510 U.S. at 578.

Furthermore, Plaintiff's reliance on *Rogers v. Koons*, a Second Circuit case decided prior to the controlling precedent in *Campbell*, for the assertion that commercial works cannot qualify for the fair use affirmative defense, is misplaced. In *Rogers*, the Court began its analysis by giving the same dispositive weight to the assertion that "copies made for commercial or profit-

making purposes are presumptively unfair," but that assertion was decried in the Supreme Court's reversal of the 9th Circuit in *Campbell*. 960 F.2d 301, 309 (2d Cir. 1992); see also *Campbell*, 510 U.S. at 591. In fact, the Court in *Rogers* never thoroughly addresses the issue of whether the allegedly infringing work is transformative, but only satisfied itself that the allegedly infringing work was not a parody of the original. *Rogers* at 309-310. For at least these reasons, the analysis in *Rogers* is neither controlling nor persuasive, and Plaintiff's arguments in reliance upon *Rogers* should be rejected.

By contrast, a reasonable jury could find that the accused Chapterhouse works are transformative as outlined by *Campbell* and interpreted by other Courts. For example, a new work may be transformative so long as it incorporates new information, aesthetics or understandings. *Blanch*, 467 F.3d at 253. In *Blanch*, the Defendant's unauthorized use in his painting of the Plaintiff's original photograph was found to be transformative in addition to being commercial. Defendant's painting was commissioned for exhibition in a German art gallery space, certainly "commercial" in nature. *Id.* at 253. However, the Court found that the Defendant's use of the raw material of Plaintiff's photograph "in the furtherance of distinct creative or communicative objectives" satisfied the first prong of the fair use determination, regardless of its commercial nature. *Id.*

Chapterhouse's products are similarly transformative of any Games Workshop work that it may be found to have copied. In particular, many of the accused products are alleged to have infringed the size and shape of a shoulder pad. ASUF 6 (Hartzell Decl. Ex. D, F) Because each of the Chapterhouse products alleged to have infringed the Games Workshop shoulder pad "size and shape" adds a new level of creativity and design not present in the original Games Workshop shoulder pad's "size and shape," a reasonable jury could find the Chapterhouse products to be transformative, despite the fact that Chapterhouse's products are commercial in nature.

Chapterhouse Objections and Responses to Games Workshop Statement of Undisputed Facts, Fact 9; ASUF 6-7 (Hartzell Decl. Ex. D, F).

As another example, a work may be transformative in nature if it complements the original work rather than superseding it. *Ty, Inc. v. Publications Intern. Ltd.,* 292 F.3d 512, 518 (7th Cir. 2002) (reversing a district court grant of summary judgment based on the fact that complementary works are transformative and thus eligible for the affirmative defense of fair use). In *Ty*, a publisher's use of photographs of Beanie Babies "soft sculptures," though admitted to be an infringement of Plaintiff's exclusive right to create derivative works, was found to be a fair use because the photos were used to enhance a collector's guide to the products. *Id.* at 519. The Court held that, although certainly made for commercial profit, the collector's guide was transformative as a complementary work, in that it existed in a distinct and yet complementary form from the Beanie Babies products and, thus, the two were complementary products rather than substitutes. *Id.* at 523-524.

Here, many of the accused Chapterhouse products are alleged to have infringed based on the fact that they are designed to fit on or with Plaintiff's products. ASUF 8 (Hartzell Decl. Ex. D, F). For example, Large Ammo Belts for Heavy Weapons (Product No. 162) and many of the accused Chapterhouse Shoulder Pads are "designed to fit" on Games Workshop figures. Rather than directly copying of a Games Workshop product, these Chapterhouse products simply provide additional complementary pieces that a consumer of Games Workshop products might use. Any portion of the Ammo Belts or the Shoulder Pads found to be a copy of any Games Workshop product is a transformative use because the Chapterhouse products that are so accused do not supersede the market for the original Games Workshop works. Instead, the Chapterhouse products enhance the market for the Games Workshop products by offering complementary products, much in the same way that hammers complement the market for nails. *Ty*, 292 F.3d at

11

517. If such works are found to infringe any valid copyright of Games Workshop, they are transformative in that they complement the market for Games Workshop products rather than supersede it.

For at least those reasons stated above with respect to analysis of the first factor concerning the purpose and character of the use, a reasonable jury could find that any Chapterhouse use of the allegedly infringed works is transformative. The arguments of the Plaintiff must be rejected because they are founded on conclusory arguments and the proclamation of an out-dated case that use for commercial gain can never be fair use.

2. <strong>The nature of the copyrighted works is factually disputed.</strong>

The second factor, the nature of the copyrighted works, also weighs in favor of Chapterhouse Studios, and a reasonable jury could so find. The less creative a work, the more this factor weighs in favor of a finding of fair use. *Campbell*, 510 U.S. at 586 ("This factor calls for recognition that some works are closer to the core of intended copyright protection than others.").

Plaintiff's unfounded argument, for which no evidentiary support is cited, that "there is nothing factual about Games Workshop's fictional universe" is misguided. For example, in his expert report, Dr. Carl Grindley points out that armor, shoulder pads, pauldrons, powerpacks, flame throwers, weapons generally, and tanks have their roots in military history, and that Games Workshop's interpretation of those elements was quite literal. *See* ASUF 22-24, (Grindley Supplemental Expert Report, paragraphs 34, 46, 50, 51; Grindley Supplemental Expert Report Ex. B line 129, 130, 131, 137-141, 146-157, 163.) Games Workshop cannot claim copyright in a literal "interpretation" of items in military history. Such factual items are within the public domain and free for all to use.

Still further, many of the Chapterhouse products accused of infringement in this case are related to products that have minimal, if any, creativity. In fact, the Copyright Office has refused to register certain of Games Workshop's allegedly copyrightable works, such as the basic shape and size of the Assault Squad Shoulder Pad and its arrow design. ASUF 10, (Hartzell Decl. Ex. N). Because the level of creativity of these allegedly copyrightable works is minute, if present at all, a reasonable jury could find that this factor weighs in favor of Chapterhouse.

### 3. The amount of the use is factually disputed.

The third factor, the amount and substantiality of the portion used in relation to the copyrighted work as a whole, similarly weighs in favor of Chapterhouse. Plaintiff again relies on conclusory arguments and the analysis of an outdated case for their totalitarian assertion that "no amount of copying is appropriate."

Many of the accused Chapterhouse products are alleged to have infringed only the size and shape of the space marine shoulder pad. ASUF 6-8 (Hartzell Decl. Ex. D, F). As discussed above, this "design" possesses very little, if any, creativity, and the accused Chapterhouse products are composed of much more than simply the size and shape of the shoulder pad. Similarly, certain of the Chapterhouse products are alleged to have infringed only the arm or leg portions of a Games Workshop product, when all other aspects of the Chapterhouse product are completely distinct and entirely different from any other Games Workshop work. Furthermore, and contrary to Games Workshop's assertion, Chapterhouse has developed its own mythology and its own characters for certain of the works at issue. ASUF 19 (Hartzell Decl. Ex. B, D, N). For at least these reasons, a reasonable jury could find in favor of Chapterhouse with respect to this factor of the fair use analysis.

### 4. The effect of the use is factually disputed.

Finally, the fourth factor for consideration is the effect of the use upon the potential market for or value of the copyrighted work. A reasonable jury could also find that this factor weighs in favor of Chapterhouse Studios or is, at the very least, neutral. As discussed above, the accused Chapterhouse sculptures do not supersede the market for the original Games Workshop works but, instead, complement the market. *Ty*, 292 F.3d at 517. Chapterhouse Objections and Responses to Games Workshop Statement of Undisputed Facts, Fact 9; ASUF 9, 15, 17, 23 (Hartzell Decl. Exs. D, F, M, Q). Chapterhouse has provided a full table identifying the fair use factors that it believes favor Chapterhouse under this analysis, including citation to ASUF in support. (Hartzell Decl. Ex. V).

For at least these reasons, in the event that Chapterhouse is found to have copied any of Games Workshop's works, a reasonable jury could also find that any such use by Chapterhouse is a fair use. Summary judgment is not appropriate in view of the facts and issues in this case.

### F. Games Workshop's Illinois Consumer Fraud and Deceptive Business Practices Count is Preempted by Copyright Law

Games Workshop has asserted three state law claims in its Third Amended Complaint, including counts alleging violation of the Illinois Deceptive Trade Practices Act, Common Law Unfair Competition – Trademark Infringement, and Illinois Consumer Fraud and Deceptive Business Practices Act. Dkt. 261 at Counts 3-5. Both Chapterhouse and Games Workshop agree in their proposed jury instructions that a determination on the Illinois Deceptive Trade Practices Act and Common Law Unfair Competition Counts will track the same elements of Games Workshop's Lanham Act trademark infringement claims. Dkt. 249 at p. 50-52. To the extent that the elements of these state law claims are limited to trademark infringement, Chapterhouse does not contend that they are preempted. However, despite cases cited by the defendants such as *Spex, Inc. v. Joy of Spex, Inc.*, 847 F.Supp. 567, 579 (N.D. Ill. 1994) finding that violation of the

Illinois Consumer Fraud and Deceptive Business Practices Act should be resolved according to the principles set forth under the Lanham Act,[4] Games Workshop proposes in its jury instructions that this count should not be resolved under the trademark infringement analysis. Dkt. 249 at p. 59-60.

Because the only facts plead in Games Workshop's complaint that do not relate to alleged trademark infringement are directed to allegations of copyright infringement, the Illinois Consumer Fraud and Deceptive Business Practices count is preempted by federal copyright law. Section 301 of the Copyright Act preempts state causes of action that create "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106." 17 U.S.C. § 301; *Baltimore Orioles, Inc. v. Major League Baseball Players Assoc.*, 805 F.2d 663, 673 n. 20 (7th Cir. 1986). In the Seventh Circuit, preemption occurs under a two-prong test when (1) the work in which the right is asserted is fixed in tangible form and falls within the subject matter of copyright, and (2) the rights claimed are equivalent to the exclusive rights or the lack of such rights as determined by § 106 of the Copyright Act. *Id.* at 674. If an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright, and there is no preemption. *Marobie-Fl, Inc. v. National Assoc. of Fire Equip. Distributors*, 983 F. Supp. 1167, 1180 (N.D. Ill. 1997).

It is well-settled that a state law unfair competition claim based solely on an alleged infringer's reproduction and sale of a copyrighted work as its own creation, lacks that "extra"

---

[4] *See also McGraw-Edison Co. v. Walt Disney Prods.*, 787 F.2d 1163, 1174 (7th Cir. 1986) ("'Likelihood of confusion' has the same meaning in unfair competition cases under the Deceptive Trade Practices Act as it has in traditional infringement cases."); *MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998) ("[Claims] based on the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq., and the Deceptive Trade Practices Act, 815 ILCS 510/1 et seq.,* must rise or fall based on the Lanham Act claim. This is because the legal inquiry is the same under the Lanham Act as under the Consumer Fraud and the Deceptive Trade Practices Act."); *Pesina v. Midway Mfg. Co.*, 948 F. Supp. 40, 43 (N.D. Ill. 1996) ("The legal inquiry is the same under the Illinois [Consumer Fraud Act and Deceptive Trade Practices Act] and the Lanham Acts.").

element and is preempted by the Copyright Act. *See Goes Lithography Co. v. Banta Corp.*, 26 F. Supp. 2d 1042, 1047-48 (N.D. Ill. 1998) (finding that the plaintiff's claim under the Illinois Uniform Deceptive Trade Practices Act ("UDPTA") was preempted by the Copyright Act). Here, by explicitly identifying that it does not believe that this count is resolved as trademark infringement, Plaintiff is left only with allegations supporting its copyright infringement cause of action. Thus, the basis for Plaintiff's consumer fraud allegations is Chapterhouse's alleged copying of Games Workshop's allegedly copyrighted works and the subsequent reproduction, marketing, sales and distribution of those products.

The fact that plaintiff has alleged some unspecified misrepresentation or deception—an element not explicitly demanded by the Copyright Act—does not avoid preemption. As Judge Andersen explained in *Goes Lithography*,

> "[C]onsumer deception" inherently is present in any copyright action. In this case, plaintiff's claim alleges no more than that the defendant falsely designated the origin of plaintiff's work when they reproduced and sold it as their own. This would be true in any action where a copyright allegedly is infringed.

*Goes Lithography*, 26 F. Supp. 2d at 1047.

The allegations of the complaint directed to this count state that Chapterhouse's "business practices" constitute an unfair and deceptive business practice and that Chapterhouse has made unidentified false and deceptive representations of material fact relating to the source, sponsorship, approval or certification of its goods and services, and as to its affiliation, connection, or association with Plaintiff. Games Workshop alleges that the business of Chapterhouse is directed to selling "products that are derived from, inspired by, and copied from Games Workshop's copyright works" specializing in custom sculpts and bits for Warhammer 40,000 and Fantasy. Dkt. 261 at ¶30. The alleged misrepresentations regarding sponsorship and affiliation are present in any alleged unauthorized copying and reproduction of another's

16

copyrighted work. *Goes Lithography*, 29 F.Supp. 2d at 1047. Accordingly, the allegations directed to Chapterhouse's business practices are not qualitatively different from its copyright allegations and are expressly preempted by the Copyright Act.

> ### G.    There is a Factual Dispute As To Whether Games Workshop Has Impliedly Licensed Certain Uses of Its Copyright and Trademark Works

Chapterhouse also adequately pled the affirmative defense that its activity is licensed. Pursuant to Rule 8(b), whether an accused product is licensed should be listed as an affirmative defense. That affirmative defense does not need to be pled with particularity, and mere notice pleading is enough. *Jac USA, Inc. v. Precision Coated Prods, Inc.*, 2003 WL 1627043, at *11 (N.D. Ill. Mar. 25, 2003). Chapterhouse specifically alleged in its Answer that "GW's claims are barred by consent, waiver, acquiescence or license."  Dkt. 266 at p. 27. The case is similar to Jac USA, where the plaintiff put the licensing defense at issue in the complaint, even though it never listed "license" as an affirmative defense. It could still rely on the licensing defense because of the "notice of the defense and opportunity to respond" based on the pleadings in the complaint. *Id.* Here, not only did Chapterhouse specifically list the license defense, but it also denied GW's own specific allegation about whether CH's activities are licensed or not. Dkt. 266 at ¶54.

Games Workshop's own website contains explicit authorization for certain IP related activities, including using Games Workshop's trademarks to talk about Games Workshop's own products. ASUF 27 (Hartzell Decl. Ex. S). This is precisely the activity that Chapterhouse contends is at issue in its use of Games Workshop's trademarks on its website. Thus, the licensing, consent, and waiver affirmative defense is ripe for trial.

## II.    CONCLUSION

Because a genuine issue of material fact exists as to each of the affirmative defenses discussed above and Games Workshop has not presented evidence to the contrary, Games

Workshop's Motion for Summary Judgment on the Chapterhouse Affirmative Defenses addressed above should be denied.

Respectfully submitted,

Dated: March 14, 2013     By: */s/Julianne M. Hartzell*      
            Julianne M. Hartzell
            Sarah J. Kalemeris
            Marshall, Gerstein & Borun LLP
            6300 Willis Tower
            233 S. Wacker Dr.
            Chicago, IL 60606
            T: 312.474.6300
            F: 312.474.0448
            E: jhartzell@marshallip.com
            E: skalemeris@marshallip.com

            Jennifer Golinveaux (CA Bar No. 203056)
            Thomas J. Kearney (CA Bar No. 267087)
            WINSTON & STRAWN LLP
            101 California Street
            San Francisco, CA 94111-5802
            Phone: (415) 591-1000
            Fax: (415) 591-1400
            jgolinveaux@winston.com
            dmorehous@winston.com
            koh@winston.com
            tkearney@winston.com

            Imron Aly
            Bryce A. Cooper (IL Bar No. 6296129)
            WINSTON & STRAWN LLP
            35 West Wacker Drive
            Chicago, IL 60601-1695
            Phone: (312) 558-5600
            Fax: (312) 558-5700
            bcooper@winston.com

            Attorneys for Defendant Chapterhouse Studios LLC

18

## <u>CERTIFICATE OF SERVICE</u>

I, Julianne M. Hartzell, hereby certify that I caused a copy of the foregoing DEFENDANT CHAPTERHOUSE STUDIOS LLC OPPOSITION TO SUMMARY JUDGMENT to be served on the following parties via the Court's ECF system on March 14, 2013:

> Jason J. Keener
> Foley & Lardner LLP
> 321 North Clark Street
> Suite 2800
> Chicago, IL  60654

> Jonathan E. Moskin
> Foley & Lardner LLP
> 90 Park Avenue
> New York, NY  10016

> *Attorneys for Plaintiff Games Workshop Limited*

> /s/ Julianne M. Hartzell
> Julianne M. Hartzell