**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:10-cv-08103 |
| v. | ) |
| | ) |
| CHAPTERHOUSE STUDIOS LLC, | ) |
| | ) Judge Matthew F. Kennelly |
| Defendant. | ) |

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S REPLY
IN FURTHER SUPPORT OF ITS SECOND MOTION
FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER**

**I.     INTRODUCTION**

Games Workshop Limited's ("GW") opposition is based on one central argument—that the Copyright Office's rejection should not be viewed as a "final" decision—but because GW made clear it is waiving an appeal, the rejection should be considered final here. Although aware of its administrative remedies to appeal the refusal by the Copyright Office Supervisory Registration Specialist to register the "Assault Squad Shoulder Pads," GW strategically chose not to, and further notified the Copyright Office and this Court that it did not intend to appeal. Yet now, desperate to keep the Court from even considering the Copyright Office's careful judgment in deciding whether the size and shape of GW's shoulder pad design should be afforded copyright protection, GW ignores its own representations. It argues that, theoretically, it could renege on its assurances to the Court, appeal the Copyright Office refusal, and push back a "final" rejection until after this case has gone to trial. GW should not be permitted to strategically abandon its copyright application one day and resurrect it the next to prevent this Court from considering the Copyright Office's findings. Of course, regardless of whether the

Copyright Office's decision is characterized as "final," the Court should still be afforded the opportunity to consider its definitive, now-formal refusal to register the size and shape of GW's shoulder pad, which GW prevented the Court from doing in the first instance by withholding relevant correspondence with the Copyright Office.[1]

GW's remaining arguments, advanced to bolster the supposed creativity in the shape and design of its shoulder pads in light of the Copyright Office's explicit refusal to extend copyright protection for those elements, misconstrue the facts and law. GW repeatedly points to the Copyright Office's registration of its Flesh Tearer Shoulder Pad as proof that the Copyright Office's determinations were inconsistent and that the shape and design of the shoulder pad is copyrightable. To the contrary, the Copyright Office's determination that the *surface ornamentation* of the Flesh Tearer Shoulder Pad—which GW acknowledges is different than the simple "arrow cross" or "X" design on its Assault Squad Shoulder Pads—is entirely consistent with its determination that the underlying ovoid shape of the shoulder pad is not, in and of itself, protectable.

GW also misconstrues the threshold showing necessary for a work to be afforded copyright protection by arguing that Robert Naismith, who was involved in the original Space Marines design for GW, was not "guided" by "any direct reference," and that CHS's expert, Dr. Carl Grindley, conceded that he could find no pre-existing work with an *identical combination* of design elements to the GW shoulder pad. Of course, every new ovoid shape with slightly different dimensions is not automatically afforded copyright protection. What this Court previously found is that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a *creative addition* to the *common shoulder pads*

---

[1] GW recites various excuses for not timely producing its correspondence with the Copyright Office. The Court has already commented on those excuses at the January 8, 2013 hearing, so there is no need to rehash them here.

sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added). Dr. Grindley's testimony and report establish that "the use of disproportionately large shoulder pads [] predates . . . *any* Games Workshop Space Marine product with shoulder pads." Dkt. 289-6, Cooper Decl. Ex. 3 ¶ 35. Consistent with this finding, the Copyright Office rejected copyright protection for the specific design element of size and shape of the shoulder pads. The Court should be afforded the opportunity to consider this evidence and give it the weight it deems appropriate.

## II. ARGUMENT

### A. The Copyright Office's January 4, 2013 Formal Rejection Letter is Entitled to Consideration by this Court.

GW first argued that the "informal" nature of the Copyright Office's initial e-mail rejections entitle them to little deference. Based on concerns raised by the Court, CHS withdrew its first motion for reconsideration based on these e-mail rejections and notified the Court that it would seek to re-file its motion if and only if the Copyright Office Supervisory Specialist rejected the sculptural claim of the application, or if GW strategically allowed that claim to become abandoned. Dkt. 272 at ¶ 9. On January 4, 2013, the Copyright Office Supervisory Registration Specialist indeed issued a formal rejection letter to GW (the "Refusal Letter"), stating that the Copyright Office could not register the Assault Squad Shoulder Pads because it "lack[ed] the authorship necessary to support a copyright claim." Dkt. 289-10, Cooper Decl. Ex. 7 at GW0016843.

GW now argues that this Refusal Letter should still be ignored, because while the Copyright Office's determination may be formal and well-considered, it is not "final."[2] This is

---

[2] GW also makes a passing argument that the Copyright Office Refusal Letter should be treated as inadmissible hearsay. Of course, such a formal letter issued by the Copyright Office in response to a

3

an important distinction, according to GW, as it concedes that a "final" determination could be entitled to "some degree of deference." Opp. at 13.³ In fact, courts have held that the "consistent, well-reasoned" decision of the Copyright Office as to copyrightability of a work is "entitled to respect as persuasive authority." *Design Ideas, Ltd. v. Yankee Candle Co., Inc.*, 2012 WL 3267783, at *6-7 (C.D. Ill. Aug. 9, 2012). On January 31, 2013, GW submitted a "Notice of Filing" to inform the Court that it had filed a letter with the Copyright Office responding to its Refusal Letter, which stated that, although aware of its administrative remedies to appeal the refusal by the Copyright Office Supervisory Registration Specialist, it had decided not to pursue the matter further with the Copyright Office, believing it "more efficient to simply allow the Court to decide the matter." Dkt. No. 275, Ex. 1 at GW0016846-47.

While courts do not appear to have encountered the unique factual circumstance presented here, in which a party has stated its intent to waive appeal to the Copyright Office but

---

copyright application would fall squarely under FRE 803's hearsay exception for public records and reports. *Watkins v. Southeastern Newspapers, Inc.*, 163 Fed. Appx. 823 (11th Cir. 2006).

³ After acknowledging such deference to the Copyright Office may be appropriate, GW relies on a number of cases unrelated to copyright to argue that "courts have treated factual findings by administrative agencies . . . with absolutely no deference." Opp. at 16. GW's cited cases are inapposite. In *Christensen v. Harris County*, 529 U.S. 576 (2000), the Supreme Court declined to give deference to a Department of Labor opinion letter (incomparable to the GW Refusal Letter here), which it differentiated from formal adjudication procedures. In *Hickey v. Chicago Truck Drivers, Helpers and Warehouse Workers Union*, 980 F.2d 465 (7th Cir. 1992), the court declined to give deference to an IRS determination letter and an informal Pension Benefit Guarantee Corp letter, which did not even support the argument for which it was offered by defendants. In *Gryl ex rel. Shire Pharms. Grp. v. Shire Pharms Grp. Plc,*, 298 F.3d 136, 145 (2nd Cir. 2002), the court declined to give deference "beyond whatever persuasive value they might have" to SEC no-action letters issued in a different case. GW mischaracterizes the Court's ruling in *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374 (Fed. Cir. 1998), because the Federal Circuit did not hold, as GW claims, that the administrative law judge's finding as to the extent of similarity between two patents was inadmissible; rather, it merely stated that the exclusion of the ALJ's opinion was not an abuse of discretion by the trial court. In any event, GW's citation to *Applied Med.*, as well as to *Blue Cross and Blue Shield of N.J. Inc. v. Philip Morris, Inc.*, 141 F. Supp. 2d 320 (E.D.N.Y. 2001), *Barnes Foundation v. Twp. of Lower Merion*, 982 F. Supp 970, 1009 (E.D. Pa 1997), *United States v. Jones*, 29 F. 3d 1549, 1554 (11th Cir. 1994), and *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1185 (E.D. Pa 1980) conflates the admissibility of a judgment or finding from a different case with the admissibility of a Copyright Office rejection regarding a product at issue in the current case.

then argues that it should not be bound by that representation, the procedures of other administrative agencies support the principal that once a party has waived its right to appeal, the decision of the agency is final. *See Mejia-Ruiz v. I.N.S.*, 51 F.3d 358, 363 (2d Cir. 1995) (in context of deportation proceedings, if an appeal of an immigration judge's order to the Board of Immigration Appeals is waived, the order becomes final); *Roudnahal v. Ridge*, 310 F. Supp. 2d 884, 894 (N.D. Ohio 2003) (decision of the immigration judge becomes final upon waiver of appeal to the Board of Immigration Appeals); *U.S. v. Reinhardt College*, 597 F. Supp. 522, 526 (N.D. Ga. 1983) (decision of Veterans Administration's Regional Office Committee on School Liability "became the final agency decision when the college waived its right of administrative appeal"). Having represented to the Copyright Office and this Court that it would not appeal the rejection of the Assault Squad Shoulder Pads—an effective waiver—GW insincerely maintains that the Copyright Office's rejection is not "final" in an attempt to diminish its influence on the Court. This kind of sleight-of-hand should not be permitted, and the Court should consider the Refusal Letter final for purposes of reconsideration.

GW next unjustly indicts the Copyright Office for "refus[ing] to consider any relevant facts or law" (Opp. at 7), simply because the application did not turn out how GW wanted it to.[4] Contrary to GW's assertions, in denying GW's application, the Copyright Office noted that a copyrightable work "must possess[] at least a minimal degree of creativity" and considered the deposit materials submitted by GW. Dkt. 289-10, Cooper Decl. Ex. 7 at GW0016843. The Copyright Office wrote, "After careful consideration, we have determined that this particular

---

[4] GW's harsh criticism of the Copyright Office's competence here appears to be based solely on the fact that the Copyright Office declined to accept GW's offer to send it a copy of this Court's November 27 summary judgment decision. Opp. at 5-6.

5

work will not support a claim to copyright for 2-Dimensional artwork or sculpture under the standards described above." *Id.*

GW has offered no basis for its criticism of the care, consistency, and expertise given by the Copyright Office or the multiple Registration Specialists that examined GW's application. And it presents no support for its contention that the Copyright Office undertook anything less than the reasonable, comprehensive review of an application one would expect from professionals employed to perform such analyses every day. The Copyright Office expressed its determination that the "sculpture portion" of the shoulder pad design was "too minimal" to register. Dkt. 289-10, Cooper Decl. Ex. 5. It is unclear what further analysis GW believes should be articulated to provide "adequate reasoning" about whether an ovoid shape is entitled to copyright protection. But in any event, GW's argument properly relates only to the degree of weight that should be afforded—which this Court is perfectly capable of determining on its own—and not to whether the Motion for Reconsideration (based on new evidence not in front of the Court in the first instance) should be granted. The Copyright Office reasonably determined GW's shoulder pad was not entitled to protection for its size and shape and formally expressed that finding. The Court should be afforded the opportunity to consider this finding and give it the weight it deems appropriate.[5]

---

[5] CHS brings this motion to present newly discovered evidence, much of which was wrongly withheld by GW in the first instance. GW mischaracterizes *Ortiz v. City of Chicago*, No. 09-cv-2636, 2011 U.S. Dist. LEXIS 53206 (N.D. Ill. May 18, 2011) for the proposition that motions for reconsideration are "not favored." The Court held only that motions for reconsideration "serve a limited function" and that issues for reconsideration "rarely arise." *Id.* at *1. GW further argues against the very language it cites by asserting that motions for reconsideration are "limited to correcting manifest error." (Opp. at 18). *Ortiz* plainly holds—as GW quotes earlier in its brief (Opp. at 12)—that motions for reconsideration serve to "correct manifest errors of law or fact *or* to present newly discovered evidence." *Id.* (emphasis added).

**B. Subsequent Copyright Office Correspondence and Witness Testimony Confirm that the Size and Shape of GW's Shoulder Pads Should Not Be Entitled to Protection**

Contrary to GW's argument, the evidence produced in the recent phase of discovery has only served to confirm the appropriateness of the Copyright Office's refusal to afford copyright protection for the size and shape of GW's shoulder pads.

GW repeatedly points to the Copyright Office's registration of its Flesh Tearer Shoulder Pad as purported proof that the Copyright Office's determinations were inconsistent and that the shape and design of the shoulder pad is copyrightable. However, there is nothing contradictory in the Copyright Office's determination that the *surface ornamentation* of the Flesh Tearer Shoulder Pads is protectable. GW fully acknowledges that this ornamentation is different from the simple "arrow cross" or "X" design on its Assault Squad Shoulder Pads (Opp. at 7-8). *See* Cooper Decl. Ex. A, GW "Flesh Tearers Shoulder Pads"; Ex. B, "GW "Assault Squad Shoulder Pads." And the Copyright Office has made clear that, when it believes the artwork affixed to the underlying shoulder pad is protectable, as it did with the Crimson Fists Shoulder Pads, a registration may issue. *See* Dkt. 301-6, Moskin Decl. Ex. E at GW0018132 ("2-D artwork and sculpture can remain as the artwork on the shoulder pads is sculptural in nature."). Thus, registration for the Assault Squad Shoulder Pads was refused because the Copyright Office necessarily determined that 1) the size and shape of the design did not merit copyright protection *and* 2) the common arrow ornamentation was not a protectable element. By contrast, the Copyright Office apparently determined that the surface ornamentation on the Flesh Tearer Shoulder Pad and Crimson Fists Shoulder Pad were protectable elements. GW's contention that these decisions of the Copyright Office are "squarely at odds" (Opp. at 13) is a smokescreen to distract from the fact the Copyright Office has carefully considered whether the size and shape of GW's shoulder pads, by itself, merits copyright protection, and rejected it.

GW is also eager to point out that CHS's expert, Dr. Carl Grindley, acknowledged that none of the shoulder pads in the pre-existing works he reviewed had an *absolutely identical* combination of design elements to GW's shoulder pad product. But of course, a work is not entitled to copyright protection for every design element that is not found in a pre-existing work. And this Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

As further explained in CHS's Motion for Summary Judgment on the Newly Accused Products (Dkt. 289), Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially unique when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not new for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35; *compare*, Dkt. 289-10, Cooper Decl. Ex. 8, CHS_EXPERT00000010-11 *with* Cooper Decl. Ex. 4, Grindley Dep. Tr. at 193:18-23 (Q: So other than the existence of a shoulder pad -- A: Of an oversized shoulder pad. Q: You believe that's an oversized shoulder pad [referring to the Starship Troopers images above]? A: Yes.).[6] In fact, Dr. Grindley concluded that the presence of oversized, disproportionately large shoulder pads is common to science fiction tropes and

---

[6] Additionally, *compare* Dkt. 289-10, Cooper Decl. Ex. 11, CHS_EXPERT00000029 *with* Cooper Decl. Ex. 4, Grindley Dep Tr. 197:3-12 (Q: This is another depiction of a person inside a powered suit of armor? A: Yes. Q: That's different than Games Workshop's? A: Except for this one, also you get a more massive scale for the shoulder armor. Q: A different design than Games Workshop's shoulder pad, correct? A: They are different in design but not in degree.); *compare* Cooper Decl. Ex. 12, CHS_EXPERT00001731 *with* Cooper Decl. Ex. 4, Grindley Dep Tr. 203:14-16 ("It is, however, hemispherical, oversized, and as far as I could tell would be nonfunctional.").

identified a number of works with shoulder pads very similar to GW's. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶¶ 34-42; Dkt. 289-10, Cooper Decl. Ex. 4, Grindley Dep. Tr. at 51:5-11.

GW attempts to salvage protectability for the size and shape of its shoulder pads by apparently arguing that no previous work has expressed "unusually large proportional size" shoulder pads with the exact same measurements that GW did. This argument misses the point. In light of the fact that oversized shoulder pads are common to the science fiction genre, as demonstrated by the Grindley Report, the large proportional size of GW's shoulder pads is not a creative addition added by GW, irrespective of the precise measurements of the GW shoulder pads.[7]

In the end, the simple shoulder pad products at issue in this case have a limited number of design elements that could properly be considered for copyright protection: 1) the underlying size and shape of the design, and 2) whatever ornamentation is put on top of the underlying design. After careful consideration, the Copyright Office consistently and formally refused to extend copyright protection to the underlying shoulder pad design, finding it "too minimal" and "lack[ing] the authorship necessary to support a copyright claim." Dkt. 289-10, Cooper Decl. Ex. 5 at 3, Ex. 7 at GW0016843. This does not inhibit GW's ability to seek copyright protection for the art and design affixed on top of its underlying shoulder pad. But the "unusually large proportional size" of GW's shoulder pads should not be a copyrightable element, according to

---

[7] While GW argues in its Opposition to CHS's Second Motion for Summary Judgment that CHS has never "pled a defense of scenes a faire" (Opp. at 8), it is not an affirmative defense but rather a fundamental limitation on the scope of copyright, whose purpose is to ensure that "protecting the 'expression' ... [does not] confer a monopoly of the 'idea' upon the copyright owner." 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work"); see Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp., 672 F.2d 607, 616 (7th Cir. 1982) (discussing the doctrines); Liberty Am. Ins. Group, Inc. v. WestPoint Underwriters, LLC, 199 F. Supp. 2d 1271, 1290 (M.D. Fla. 2001) (rejecting argument that merger and scenes a faire are "affirmative defenses" and stating that "[t]he important point . . . is that [the] analysis is necessary . . . [as] a means to a very important end: filtering out all unprotectable material") (quoting Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1541 (11th Cir. 1996)).

the Copyright Office's formal Refusal Letter and the subsequent report and testimony of Dr. Grindley. CHS respectfully requests that the Court take account of this new evidence—which it did not have before it when rendering its first summary judgment order—and reconsider its decision with respect to GW's shoulder pad products.

Dated: March 18, 2013                    Respectfully submitted,

                                         /s/ Bryce A. Cooper

                                         Jennifer A. Golinveaux (CA Bar No. 203056)
                                         Thomas J. Kearney (CA Bar No. 267087)
                                             WINSTON & STRAWN LLP
                                             101 California Street
                                             San Francisco, CA 94111-5802
                                             Phone: (415) 591-1000
                                             Fax: (415) 591-1400
                                             jgolinveaux@winston.com
                                             tkearney@winston.com

                                         Imron T. Aly (IL Bar No. 6269322)
                                         Bryce A. Cooper (IL Bar No. 6296129)
                                             WINSTON & STRAWN LLP
                                             35 West Wacker Drive
                                             Chicago, IL 60601-1695
                                             Phone: (312) 558-5600
                                             Fax: (312) 558-5700
                                             ialy@winston.com
                                             bcooper@winston.com

                                         Julianne M. Hartzell (IL Bar No. 6275093)
                                         Sarah J. Kalemeris (IL Bar No. 6303644)
                                             MARSHALL, GERSTEIN & BORUN LLP
                                             233 S. Wacker Drive
                                             Willis Tower Suite 6300
                                             Chicago, IL 60606
                                             Phone: (312) 474-6300
                                             Fax: (312) 474-0448
                                             jhartzell@marshallip.com
                                             skalemeris@marshallip.com

**CERTIFICATE OF SERVICE**

    I, Bryce A. Cooper, an attorney, hereby certify that on March 18, 2013, I caused to be filed electronically the foregoing DEFENDANT CHAPTERHOUSE STUDIOS LLC'S REPLY IN FURTHER SUPPORT OF ITS SECOND MOTION FOR RECONSIDERATION OF SUMMARY JUDGMENT ORDER with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                                           /s/ Bryce A. Cooper