**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 1:10-cv-08103 |
| v. | ) ) |
| CHAPTERHOUSE STUDIOS LLC, | ) ) |
| | ) Judge Matthew F. Kennelly |
| Defendant. | ) |

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S REPLY
IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Games Workshop Limited's ("GW") opposition is unable to identify a genuine issue of material fact precluding entry of summary judgment, despite its reliance on misconstruing Chapterhouse Studios LLC's ("CHS") arguments and the record. The Copyright Office's explicit rejection of copyright protection for the size and shape of the GW shoulder pad and Dr. Carl Grindley's expert opinion support a finding that the shape and size of the GW shoulder pad, by itself, is not copyrightable.[1]

The Copyright Office has rejected copyright protection for the specific design element of size and shape for the GW shoulder pad. GW argues that the Copyright Office's registration of its Flesh Tearers Shoulder Pad is proof that the Copyright Office's determinations were inconsistent and that the shape and design of the shoulder pad is copyrightable. To the contrary, the Copyright Office's determination that the *surface ornamentation* of the Flesh Tearers Shoulder Pad—which GW acknowledges is different than the simple "arrow cross" or "X"

---

[1] The CHS products that allegedly infringe GW's copyright for the size and shape of its shoulder pads alone are identified by product entries 146, 147, 148, 151, 152, 155, 156, 157, and 163 in GW's New Product Claim Chart (Dkt. 289-3 and 289-4).

design on its Assault Squad Shoulder Pads—is protectable, is entirely consistent with its determination that the underlying ovoid shape of the shoulder pad is not, in and of itself, protectable. Here is the GW shoulder pad product that was rejected by the Copyright Office:



Cooper Decl. Ex. B, "Assault Squad Shoulder Pads."

Dr. Grindley's report and testimony likewise supports the determination that the proportional size and shape of GW's shoulder pad is not minimally creative as to be protectable, even when considered in relation to the size of a Space Marine's head depicted in the exaggerated *illustration* of a Space Marine wearing shoulder pads from GW's claim chart entry 49.[2] GW overstates the importance of Dr. Grindley's testimony that he could find no pre-existing work with an *identical combination* of design elements to the GW shoulder pad and mischaracterizes CHS's position as advocating that GW designers saw or had copies of every image cited by Dr. Grindley in front of them before they designed the works at issue. That is not CHS's argument. Dr. Grindley's testimony regarding the *ubiquity* of proportionally large shoulder pads in the pre-existing science fiction universe serves as supporting evidence that such expression was common—and remains common—to the genre, and GW's simple depiction fails to express the *minimal amount of creativity* required for copyrightability.

---

[2] *See* November 27, 2012 Order. Dkt. No. 258 at 20 ("The unusually large proportional size of the shoulder pads as compared to the Space Marine's head (depicted in GW's product at entry 49) is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle.").

GW's opposition ignores that it is *this specific element* of proportionally large size—and not, for instance, the fact that GW's shoulder pads extend a micrometer further than a preceding version of an oversized shoulder pad—that the Court found to be protectable in its November 27, 2012 Order. Dkt. No. 258 at 20. CHS acknowledges that this issue was previously before the Court, but believes that new evidence establishes that the presence of a disproportionately large ovoid serving as a shoulder pad for a science fiction character does not express—by itself—the required minimal amount of creativity.

**II.     ARGUMENT**

    **A. Evidence Produced in the Second Phase of Discovery Merits the Court's Reconsideration of Its Previous Finding on the Creativity of the Size and Shape of GW's Shoulder Pads**

GW wrongly suggests that the law of the case doctrine precludes the Court from revisiting its November 27, 2012 ruling. Numerous courts, including the Seventh Circuit, have noted that the "doctrine [] permits reconsidering a prior decision based on newly discovered evidence." *Sterling Fire Restoration, Ltd. v. Wachovia Bank N.A.*, 2012 WL 5471122, at *2 (N.D. Ill. Nov. 9, 2012); *see also Zhang v. Gonzales*, 434 F.3d 993, 998 (7th Cir. 2006) (cautioning against inconsistent rulings absent a "change in the law, *new evidence*, or compelling circumstances") (emphasis added); *Balark v. City of Chicago*, 81 F.3d 658, 661 (7th Cir. 1996) (invoking an exception to the law of the case doctrine and reconsidering its earlier ruling where "new evidence left the Court in substantial doubt as to the correctness of its original decision"); *Buckley ex. rel. Douglas v. Mount Sinai Hosp. Medical Center*, 2006 WL 2460596, at *5 (N.D. Ill. 2006 Aug. 21, 2006) (finding the law of the case doctrine did not apply and taking "a fresh look at the strength" of the claim "in light of the full factual record" where new evidence had been presented).

GW's own cited case, *Best v. Shell Oil Co.*, notes that under the law of the case doctrine, "new evidence" may provide the compelling reason to reopen an earlier summary judgment ruling. 107 F.3d 544, 547 (7th Cir. 1997). Indeed, the law of the case doctrine is "highly flexible, especially when a judge is being asked to reconsider his own ruling." *Sterling Fire Restoration, Ltd.*, No. 12-C-3530, 2012 WL at *2 (citing *Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000). In light of the new evidence presented in the second phase of discovery, discussed in CHS's moving brief and *infra*, the Court has reasonable discretion to revisit this important issue.

### B. The Copyright Office has Explicitly Found that the Size and Shape of GW Space Marine Shoulder Pads is Unprotectable

GW makes a flawed argument that the Copyright Office's registration of some aspects of GW's shoulder pads means that their underlying size and shape must also be copyrightable. GW is wrong. GW argues, for example, that its shoulder pads are "virtually identical" to one another. Opp. at 12. GW then points to the Copyright Office's registration of its Flesh Tearers Shoulder Pad as purported proof that the Copyright Office's determinations were inconsistent with its refusal to register the Assault Squad Shoulder Pad and that the shape and design of the shoulder pad is copyrightable in both. Yet the Flesh Tearers pad has a completely different surface design than the Assault Squad pad, consistently showing that it is the ornamental *picture on the surface*—and not the shape and size of the shoulder pad itself—for which GW obtained a copyright registration. GW has cited no evidence to the contrary.

The Copyright Office's correspondence confirms this distinction. Specifically, the Copyright Office expressly found the size and shape of the shoulder pads "too minimal" and "lack[ing] the authorship necessary to support a copyright claim." Dkt. 289-10, Cooper Decl. Ex. 5 at 3, Ex. 7 at GW0016843. The Copyright Office's refusal to register GW's shoulder pad

4

works as to their underlying size and shape is entirely consistent with the fact that GW obtained a registration based upon the different images that appear on top of a different shoulder pad. There is no inconsistency, as GW has alleged, and the different shoulder pads with different images on them are not "virtually identical," as GW incorrectly asserts:

    

Cooper Decl. Ex. A, "Flesh Tearers Shoulder Pads          Ex. B, "Assault Squad Shoulder Pads"

GW's argument also fails, because it would not explain why GW applied for and obtained separate copyright registrations for each of dozens of different shoulder pad products, each of which has its own surface image on it. GW certainly understands that the ornamentation for its Flesh Tearers Shoulder Pad is different from the simple "arrow cross" or "X" design on its Assault Squad Shoulder Pads. *See* Dkt. 301 at 7-8.

The Copyright Office has made clear that, when it believes the artwork affixed to the underlying shoulder pad is protectable, as it did with the Crimson Fists Shoulder Pad, a registration may issue. *See* Dkt. 301-6, Moskin Decl. Ex. E at GW0018132 ("2-D artwork and sculpture can remain as the artwork on the shoulder pads is sculptural in nature."). In the case of the Assault Squad Shoulder Pad, therefore, registration was refused because the Copyright Office necessarily determined that (1) the size and shape of the design did not merit copyright protection *and* (2) the common arrow ornamentation was not a protectable element and the idea of such a simple combination of the two unprotectable elements did not rise to the minimal level of creativity required for copyright protection. By contrast, the Copyright Office apparently determined that the surface ornamentation on the Flesh Tearers Shoulder Pad and Crimson Fists

Shoulder Pad were protectable elements, and registered the works. The Copyright Office's consistent approach to GW's works further confirms that it is the surface art itself, and not the size and shape of the shoulder pads, that the Copyright Office views as potentially protectable.

GW further argues that the Copyright Office's January 4, 2013 Refusal Letter should be afforded no deference, because while the Copyright Office's determination may be formal and well-considered, it is not "final," which GW concedes may entitle it to "some degree of deference." Dkt. 301 at 13. Courts have indeed held that the "consistent, well-reasoned" decision of the Copyright Office as to copyrightability of a work is "entitled to respect as persuasive authority." *Design Ideas, Ltd. v. Yankee Candle Co., Inc.*, 2012 WL 3267783, at *6-7 (C.D. Ill. Aug. 9, 2012). And here, the Copyright Office's decision should be considered final, because GW expressly waived its right to any further administrative appeal of that decision. On January 31, 2013, GW submitted a "Notice of Filing" to inform the Court that it had filed a letter with the Copyright Office responding to its Refusal Letter which stated that, although aware of its administrative remedies to appeal the refusal by the Copyright Office Supervisory Registration Specialist, GW had decided not to pursue the matter further with the Copyright Office, believing it "more efficient to simply allow the Court to decide the matter." Dkt. No. 275, Ex. 1 at GW0016846-47.

Courts routinely recognize that once a party has waived its right to appeal, the decision of an administrative agency is final. *See Mejia-Ruiz v. I.N.S.*, 51 F.3d 358, 363 (2d Cir. 1995) (finding final an immigration order where appeal of an immigration judge's order to the Board of Immigration Appeals was waived); *Roudnahal v. Ridge*, 310 F. Supp. 2d 884, 894 (N.D. Ohio 2003) (holding final decision of the immigration judge upon waiver of appeal to the Board of Immigration Appeals); *U.S. v. Reinhardt College*, 597 F. Supp. 522, 526 (N.D. Ga. 1983)

6

(recognizing decision of Veterans Administration's "became the final agency decision when the college waived its right of administrative appeal"). Having represented to the Copyright Office and this Court that it would not appeal the rejection of the Assault Squad Shoulder Pad, GW waived its right to further appeal and can no longer argue that the Copyright Office's rejection is not "final."

### C. The Element of Large Size and Shape for Shoulder Pads is Common and Not a Sufficiently Creative Addition to Merit Protectability

GW argues that CHS is conflating patent "novelty" with copyright "originality." To the contrary, it is GW that is conflating originality with minimal creativity required for copyrightability. GW relies on the argument that no previous work has expressed "unusually large proportional size" shoulder pads with the exact same measurements that GW did. But this is not enough. Not every slight variation on an expression is automatically entitled to copyright protection—particularly here, where GW concedes its shoulder pad design is not "a great work of art." Dkt. 301 at 5. And this Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found from its review of an exaggerated illustration of a Space Marine wearing shoulder pads (depicted at GW's claims chart entry 49) generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

GW argues around the Court's previous finding by introducing a host of irrelevant facts that do not create a genuine issue of material fact regarding copyrightability of the size and shape of the shoulder pads. For example, GW relies upon questions of whether Bob Naismith— involved in the design of the original Space Marine—had any reference materials in front of him

7

when creating his design, and testimony from Dr. Carl Grindley acknowledging that none of the shoulder pads in the pre-existing works he reviewed had an *absolutely identical* combination of design elements to GW's shoulder pad product. These facts do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad from a pre-existing work. But in light of the fact that oversized shoulder pads are common to the science fiction genre, as demonstrated by Dr. Grindley—and unchallenged by GW—the proportional size of GW's shoulder pads is not a creative addition added by GW, irrespective of the precise measurements of the GW shoulder pads. "The standard of originality is low, but it does exist." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 362 (1991). This concept is expressed in the *scènes à faire* doctrine, which provides a fundamental limitation on the scope of copyright and whose purpose is to ensure that "protecting the 'expression' . . . [does not] confer a monopoly of the 'idea' upon the copyright owner." 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work"); *see Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982) (discussing the doctrines).[3]

Dr. Grindley's report and testimony demonstrate that—while potentially different in proportion to armor worn by real-life soldiers—the design element of large proportional size is not unique in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35; *compare*, Dkt. 289-10, Cooper Decl. Ex. 8,

---

[3] While GW argues that CHS has never "pled a defense of *scènes à faire*" (Opp. at 13), it is not an affirmative defense. *Liberty Am. Ins. Group, Inc. v. WestPoint Underwriters, LLC*, 199 F. Supp. 2d 1271, 1290 (M.D. Fla. 2001) (rejecting argument that merger and *scenes a faire* are "affirmative defenses" and stating that "[t]he important point . . . is that [the] analysis is necessary . . . [as] a means to a very important end: filtering out all unprotectable material") (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996)); *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011-12 (7th Cir. 2005) (*scènes à faire* doctrine is a "specific limitation[] to copyright protection").

CHS_EXPERT00000010-11 *with* Cooper Decl. Ex. 4, Grindley Dep. Tr. at 193:18-23 (Q: So other than the existence of a shoulder pad -- A: Of an oversized shoulder pad. Q: You believe that's an oversized shoulder pad [referring to the Starship Troopers images above]? A: Yes.).[4] In fact, Dr. Grindley concluded that the presence of oversized, disproportionately large shoulder pads is common to science fiction tropes and identified a number of works with shoulder pads very similar to GW's. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶¶ 34-42; Dkt. 289-10, Cooper Decl. Ex. 4, Grindley Dep. Tr. at 51:5-11. GW quibbles with how similar the minute details of these works are to the GW shoulder pads, but fails altogether to rebut the fact that the element of large shoulder pads is not, by itself, minimally creative. Thus, the evidence identified by GW, including the testimony from Dr. Grindley, does not create a genuine disputed issue of material fact on this narrow issue.

Instead, GW offers the argument that the 28 mm scale of its shoulder pads is *original*. This argument is not only irrelevant to the pending motion, which focuses only on whether the size of GW's shoulder pads is a minimally creative addition such that it should be afforded copyright protection, but is also flatly contradicted by the record and law. The Court ordered GW to serve an amended claim chart identifying the elements of its copyrighted works that it contended were infringed in the second phase of this litigation by January 11, 2013 (the "New Products Claim Chart"). Dkt. 265. Games Workshop served the claim chart on January 14, 2013, but nowhere in the claim chart is the 28 mm scale identified as an infringed element. *See* Dkt. 289-3 and Dkt. 289-4. Further, GW's 30(b)(6) witness, Alan Merrett, testified that GW

---

[4] Additionally, *compare* Dkt. 289-10, Cooper Decl. Ex. 11, CHS_EXPERT00000029 *with* Cooper Decl. Ex. 4, Grindley Dep Tr. 197:3-12 (Q: This is another depiction of a person inside a powered suit of armor? A: Yes. Q: That's different than Games Workshop's? A: Except for this one, also you get a more massive scale for the shoulder armor. Q: A different design than Games Workshop's shoulder pad, correct? A: They are different in design but not in degree.); *compare* Cooper Decl. Ex. 12, CHS_EXPERT00001731 *with* Cooper Decl. Ex. 4, Grindley Dep Tr. 203:14-16 ("It is, however, hemispherical, oversized, and as far as I could tell would be nonfunctional.").

does not claim that its 28 mm scale is copyrightable. Cooper Decl. Ex. C, Merrett Dep. Tr. at 47:15-17. And Bob Naismith testified that "there are many" war game miniatures that are sold at a 28 mm scale. *Id.*, Ex. D, Naismith Dep. Tr. at 66:9. This fact is easily confirmed by a simple Google search for 28 mm miniatures, which returns links and URLs for at least nine companies whose names and descriptions indicate that they make and sell 28 mm miniature figures. Dkt. 244-1, Supp. Kearney Decl. ¶ 6; Dkt. 244-2, Ex. 1.

In any event, GW cites no authority for the proposition that merely building models at the same *scale* as another manufacturer is an indicium of copyright infringement. It is not. *See*, *e.g.*, *Mattel, Inc. v. Azrak Hamaway Int'l, Inc. dba Remco Toys*, 724 F.2d 357, 360 (2d Cir. 1984) (holding plaintiff was not likely to prevail on merits of its copyright claims where defendant's 5 ½" action figure toy dolls were designed to compete with plaintiff's dolls). GW's citation to this Court's prior discussion regarding the 28 mm scale of the GW's products related only to CHS's argument that the scale of its products were utilitarian. That has nothing to do with whether the scale is actually minimally creative, which it is not.[5] Because GW's attempt to claim the 28 mm scale as a copyrightable element fails, this argument also does not create a genuine disputed issue of material fact regarding the lack of minimal creativity in the size and shape of GW's shoulder pad.

### D.  GW's Theory that CHS Infringed GW's "Oeuvre" is Entitled to No Weight

Finally, GW tries to resurrect an argument that the Court expressly rejected in its denial of GW's first summary judgment motion. Namely, GW previously attempted—and it admits it

---

[5] As it has done in previous briefing, GW also grossly misrepresents Mr. Villacci's testimony regarding use of a "digimeter" in creating the CHS works. Mr. Villacci testified that his designers took measurements to ensure the size of Chapterhouse's shoulder pads was similar enough to fit one of GW's standard, 28 mm scale models. He *speculated* that one of his designers *may have used* a digimeter to take such measurements. Cooper Decl. Ex. E, Villacci Dep. Tr. at 110:11-111:11.

10

was unsuccessful—to "show that the entire range of [CHS's] products" is copied from and infringes the "collective creative realm of Warhammer 40,000." Opp. at 16. The Court already rejected this theory, finding that "GW's attempt to persuade the Court to consider all of its products as one unified whole is therefore unpersuasive and without evidentiary support." Dkt. 258 at 25. GW did not challenge that decision or seek reconsideration.[6] Nevertheless, GW repeats its old argument, now arguing that certain "ranges" of products—such as Tactical, Assault and Devastator Space Marines have a "collective iconography" with a "creative significance transcending any one character or design in isolation." Opp. at 16. Again, sets of products that are not individually copyrighted do not create some vague super-copyright based on a unified whole of its products. Just like it did before, GW's argument that its ill-defined "oeuvre" has been infringed should fail.

In support of its "aggregate" copying claim, GW ignores the burden of proof and misreads *Castle Rock Ent. v. Carol Pub. Grp., Inc.*, 150 F.3d 132 (2d Cir. 1998).[7] The accused product there, *The SAT*, contained 634 trivia questions and answers about snippets from various *Senifeld* episodes. The court found defendant's *de minimis* defense inapplicable where each of 634 instances of alleged infringement was nonetheless *admittedly* an infringement, "based directly upon original, protectable expression." *Id.* at 138. GW's self-serving comparison here that "there [is] no genuine dispute as to the defendant's actual (and only) source for its accused

---

[6] GW's footnote that it "is not seeking reconsideration of the Court's earlier decision denying summary judgment on this theory," but that "it does wish to present the theory to the jury at trial" (Opp. at 17 n.5) is also particularly troubling, as it demonstrates GW's stated intention to try this case not on the infringement of any protectable elements of its work, but rather on a vague, undefined, and ill-supported infringement of its so-called "oeuvre" that has been rejected by the Court.

[7] GW concedes that it is "of course possible to analyze individual Chapterhouse products . . . independent of the wider matrix." (Opp. at 17). The fact that CHS's products are "sold together on Chapterhouse's website" (Opp. at 17)—the only reason GW advances to do otherwise—has been specifically rejected by the Court. Dkt. 258 at 25.

11

copying" (Opp. at 17) is not supported by the record. To the contrary, the evidence confirms that many sources served as the inspiration for CHS's products.[8] In fact, even GW has previously conceded that CHS's designers stated that they "consulted . . . sources outside the Games Workshop universe," including "submissions by fans of Games Workshop who . . . submitted their own images" of what they wanted the products to look like. Dkt. 237-1 at 16-17 and n.10.

The *Castle Rock* case also dealt with *one* accused product that infringed the copyrights of many individual *Seinfeld* episodes.[9] 150 F.3d at 138. In *Castle Rock*, the court counted all of the different infringements as a single work because *Seinfeld* was a discrete, continuous television series, and only fragments of each episode were copied to create—in the aggregate—one accused product. *Id.* The court held that, "[w]here the secondary work focuses on an entire continuous

---

[8] Mr. Villacci has clearly and consistently stated that CHS's products draw inspiration from a myriad of works:

> Q: …Can you identify any of the products that you sell that were not influenced in some way by Games Workshop's products or the descriptions of materials in its books?
> A: Honestly, since I have been so involved in scifi and miniatures and the hobby and -- I mean, when you -- you have played with something and have been involved with something for so long, that's bound to have an effect on any ideas you come across or create. So that's like saying -- no. I mean, everything has been influenced by -- **everything that we have created has been influenced by what I have been exposed to. Be it, Star Wars movies, Games Workshop products. I can't exclude anything from my personal experience.**

Cooper Decl. Ex. E, Villacci Dep. Tr. at 235:16-236:5 (emphases added).

> Q (BY MR. MOSKIN): Name a product of yours that has not been influenced by Games Workshop's products or materials in its books.
> A: I gave you an answer. I said **all of our products have been influenced by a number of things**, including Games Workshop's products and books. I'm not going to limit myself and say our products have only been influenced, inspired by – by Games Workshop stuff. **They have been inspired by a number of items, a number of cultural -- pop culture stuff put together to, you know, come out to that sort of expression of our products.**

*Id.* at 239:2-14 (emphases added).

[9] Likewise, the other cases cited by GW in which a court undertook an "aggregate" analysis were for one accused product that allegedly infringed fragments of a television or book series (and not an ill-defined fictional "universe"). *Warner Bros. Entertainment, Inc. v. RDR Books*, 575 F. Supp. 2d 513 (S.D.N.Y. 2008) (book infringed the series of Harry Potter novels); *Twin Peaks Prods., Inc. v. Publications, Int'l, Ltd.*, 996 (F.2d 1366 (2d Cir. 1993) (book infringed *Twin Peaks* television series).

television series such as *Seinfeld*, there is no basis for looking in isolation at the amount copied from each separately copyrighted episode." *Id.* By contrast here, GW has accused over 160 *separate and distinct* CHS products of violating a corresponding GW work, as listed in GW's Second Revised Claim Chart and Claim Chart for New Products. These are the works that CHS is alleged to have infringed, not GW's nebulous world or "collectively iconography," which GW has neither defined nor portrayed as an "entire continuous television series."

## III.  CONCLUSION

In the end, the simple shoulder pad products at issue in this case have a limited number of design elements that could properly be considered for copyright protection: 1) the underlying size and shape of the design, and 2) whatever ornamentation is put on top of the underlying design. After careful consideration, the Copyright Office consistently and formally refused to extend copyright protection to the underlying shoulder pad design, finding it "too minimal" and "lack[ing] the authorship necessary to support a copyright claim." Dkt. 289-10, Cooper Decl. Ex. 5 at 3, Ex. 7 at GW0016843. This does not inhibit GW's ability to seek copyright protection for the art and design affixed on top of its underlying shoulder pad. But the size and shape of GW's shoulder pads do not reach the level of minimal creativity to be afforded copyright protection, according to the Copyright Office's formal Refusal Letter and the subsequent report and testimony of Dr. Grindley, which establishes that the proportionally large size (as depicted in an illustration referenced at entry 49) is common to the genre and not unique to GW. CHS respectfully requests that the Court take account of this new evidence—which it did not have before it when rendering its first summary judgment order—and reconsider its decision with respect to the protectability of the size and shape of GW's shoulder pad products.

Dated: March 25, 2013	Respectfully submitted,

/s/ Bryce A. Cooper


Jennifer A. Golinveaux (CA Bar No. 203056)
Thomas J. Kearney (CA Bar No. 267087)
    WINSTON & STRAWN LLP
    101 California Street
    San Francisco, CA 94111-5802
    Phone: (415) 591-1000
    Fax: (415) 591-1400
    jgolinveaux@winston.com
    tkearney@winston.com

Imron T. Aly (IL Bar No. 6269322)
Bryce A. Cooper (IL Bar No. 6296129)
    WINSTON & STRAWN LLP
    35 West Wacker Drive
    Chicago, IL 60601-1695
    Phone: (312) 558-5600
    Fax: (312) 558-5700
    ialy@winston.com
    bcooper@winston.com

Julianne M. Hartzell (IL Bar No. 6275093)
Sarah J. Kalemeris (IL Bar No. 6303644)
    MARSHALL, GERSTEIN & BORUN LLP
    233 S. Wacker Drive
    Willis Tower Suite 6300
    Chicago, IL 60606
    Phone: (312) 474-6300
    Fax: (312) 474-0448
    jhartzell@marshallip.com
    skalemeris@marshallip.com

**CERTIFICATE OF SERVICE**

    I, Bryce A. Cooper, an attorney, hereby certify that on March 25, 2013, I caused to be filed electronically the foregoing DEFENDANT CHAPTERHOUSE STUDIOS LLC'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                                  /s/ Bryce A. Cooper