**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GAMES WORKSHOP LIMITED,

        Plaintiff,

        v.

CHAPTERHOUSE STUDIOS LLC

        Defendant.

Civil Action No. 1:10-cv-08103

Hon. Matthew F. Kennelly
Hon. Jeffrey T. Gilbert

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S REPLY TO PLAINTIFF'S**
**RESPONSES TO CHAPTERHOUSE'S STATEMENT OF MATERIAL FACTS AND**
**CHAPTERHOUSE'S RESPONSE TO GAMES WORKSHOP'S ADDITIONAL FACTS**

Pursuant to Local Rule 56.1(b)(3), Defendant Chapterhouse Studios LLC ("CHS") hereby submits its Reply and Evidentiary Objections to Plaintiff Games Workshop Limited's ("GW") Response to CHS's Statement of Material Facts in Support of its Motion for Summary Judgment. GW did not include the supporting authority to which CHS cited for each of its undisputed facts, which can be found in CHS's Statement of Material Facts.

CHS replies to GW's responses to CHS's statements of fact as follows:

I. **Undisputed Material Facts**

1. **Plaintiff Games Workshop Limited ("GW") is a United Kingdom corporation and a subsidiary of Games Workshop Group PLC.**

**GW RESPONSE:** Games Workshop does not contest this fact.

2. **Defendant CHS is a Texas limited liability company whose address is 3930 Glade Road, Suite 108 # 174, Colleyville, Texas, 76034.**

**GW RESPONSE:** Games Workshop does not contest this fact.

3. **This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over claims arising under the statutory and common law of the State of Illinois pursuant to 28 U.S.C. § 1367 (a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.**

**GW RESPONSE:**     Games Workshop does not contest this fact.

**4.     Pursuant to Federal Rule of Civil Procedure 12(h), CHS waived its objections to personal jurisdiction and venue by responding to GW's complaint.**

**GW RESPONSE:**     Games Workshop does not contest this fact.

**5.     GW amended its complaint on December 10, 2012 to add a number of new claims. On January 14, 2011, GW served a chart entitled Games Workshop Claim Chart for Newly Accused Products — January 11, 2013 (the "New Product Claim Chart") identifying, for each of CHS's newly accused products, the copyrights allegedly infringed.**

**GW RESPONSE:**     Games Workshop does not contest this fact.

**22.     GW alleges it is additionally entitled to copyright protection for its shoulder pad product at entry 156 for its "use of arrow and trim."**

**GW RESPONSE:**     Games Workshop does not contest the fact that one element of the overall design that Chapterhouse has copied in connection with its Tactical Power Armor shoulder pad is the Tactical Space Marine iconography, which Chapterhouse uses in connection with the original character name "Tactical" (for Tactical Space Marine") and the exact dimensions of the Space Marine Shoulder pad.

   **CHS REPLY:**   GW's statement is without foundation (FRE 602) or citation to the record.   Further, the pending motion is limited to copyright infringement allegations and the alleged use of GW's alleged trademarks is irrelevant to the analysis.

**24.     GW filed a copyright application with the United States Copyright Office for the GW work "Assault Squad Shoulder Pads," which is a shoulder pad with the "arrow cross" or "X" design.**

**GW RESPONSE:**     Games Workshop does not contest the fact on March 1, 2012, Games Workshop applied to register its Assault Squad shoulder pad which is a Space Marine shoulder pad including a surface design of the Space Marine Assault Squad iconography (a specific design incorporating an X design with arrows or triangles at the extensions of the X and a hollowed center, as well as specific placement on the Space Marine Shoulder Pad shoulder pad itself.)

CHI:2730029.2

Games Workshop contests this fact to the extent Chapterhouse contends that Games Workshop

has attempted to copyright all shoulder pads (as opposed to a Space Marine shoulder pad) with

any "arrow cross" or "X" design. Games Workshop further contests that the specific X design is

simply an X design but rather is one of a series of original distinguishing icons used to identify

and distinguish its Assault Squad Space Marines from its Tactical and Devastator Space Marines.

> **CHS REPLY:** Typefaces, such as Roman numerals, cannot be copyrighted. *Eltra Corp.*
>
> *v. Ringer,* 579 F. 2d 294, 298 (4th Cir. 1978) ("typeface is an industrial design in which
>
> the design cannot exist independently and separately as a work of art"); 37 C.F.R. § 202.1
>
> ("works not subject to copyright . . . [include] familiar symbols or designs; mere
>
> variations of typographic ornamentation . . . [and] [t]ypeface as typeface."). Further, the
>
> Court has already rejected GW's theory that its products should be analyzed in the
>
> aggregate, finding that "GW's attempt to persuade the Court to consider all of its
>
> products as one unified whole is therefore unpersuasive and without evidentiary support."
>
> Dkt. 258 at 25.

    **30.**    **On January 31, 2013, GW submitted a "Notice of Filing" to inform the Court that it was responding to the January 4, 2013 Copyright Office rejection.**

**GW RESPONSE:**    Games Workshop does not contest that fact that on January 31, 2013 it

submitted a "Notice of Filing" with the Court regarding the current status of Games Workshop's

Assault Squad Shoulder Pad. Games Workshop contests this fact to the extent that Chapterhouse

is contending that the January 4, 2013 correspondence from the Copyright Office was any sort of

final rejection by the Copyright Office.

> **CHS REPLY:** Having represented to the Copyright Office and this Court that it would
>
> not appeal the rejection of the Assault Squad Shoulder Pads—an effective waiver—GW
>
> insincerely maintains that the Copyright Office's rejection is not "final" in an attempt to

diminish its influence on the Court. The January 4, 2013 correspondence from the Copyright Office should be considered final. *See* Dkt. 287, 306.

## II.     Facts GW Claims Are In Dispute

**6.     Product entries 146, 147, 148, 151, 152, 155, 157, and 163 in GW's New Product Claim Chart are for alleged infringement of GW shoulder pad works. GW claims that these CHS products infringe because they "us[e] the oversized dimensions of Games Workshop's iconic shoulder pad design." The purportedly copyrightable element of these shoulder pads is limited to the size and shape of [the] pad" and "[n]ot [the] surface decoration."**

**GW RESPONSE:**     Games Workshop contests this fact. Games Workshop admits that products 146, 147, 148, 151, 152, 155, 157, and 163 are alleged to infringe the design of Games Workshop's Space Marine figure and the shoulder pad armor by copying the underlying design of the Space Marine shoulder pad, not the surface ornamentation. Games Workshop denies that the copying of the specific shape (such as quarter ovoid with banding) and exact dimensions are the sole bases of the claims regarding these products, which also use the character names created by Games Workshop, such as. "Iron Hand" for products 146 and 147; and "Iron Hand" and "Terminator" for product 147.

> **CHS REPLY:**     Mischaracterizes the evidence in a manner that is immaterial to the motion. GW's New Product Claim Chart speaks for itself. GW's assertion that CHS has copied the "exact dimensions" of the products is without foundation (FRE 602) or citation to the record. Further, the pending motion is limited to copyright infringement allegations and the alleged use of GW's alleged trademarks is irrelevant to the analysis.

**7.     The CHS shoulder pad at product entry 156 in the New Product Claim Chart also allegedly infringes the "use of arrow and trim" in addition to the "shape of pad."**

**GW RESPONSE:**     Games Workshop contests this fact. Games Workshop admits that product 156 is alleged to infringe the design of Games Workshop's Space Marine figure and the shoulder pad armor by copying the underlying design of the Space Marine shoulder pad as well as the

surface ornamentation (the distinctive Tactical Space Marine iconography). Games Workshop denies that the copying of the specific shape (such as quarter ovoid with banding), exact dimensions, and Tactical Space Marine iconography (such as the user of a specific arrow with trim) are the sole bases of the claim regarding this product, which also use the character name Tactical Space Marine created by Games Workshop and is one of an entire series of Tactical, Devastator, and Assault Squad Space Marine shoulder pads made by Chapterhouse which copy the size and dimensions and iconography and character names of Games Workshop's original works.

**CHS REPLY:**  Mischaracterizes the evidence in a manner that is immaterial to the motion.  GW's New Product Claim Chart speaks for itself.  GW's assertion that CHS has copied the "exact dimensions" of the products is without foundation (FRE 602) or citation to the record.  Further, the pending motion is limited to copyright infringement allegations and the alleged use of GW's alleged trademarks is irrelevant to the analysis, and the Court has already rejected GW's theory that its products should be analyzed in the aggregate, finding that "GW's attempt to persuade the Court to consider all of its products as one unified whole is therefore unpersuasive and without evidentiary support." Dkt. 258 at 25.

**8.     CHS engaged Dr. Carl Grindley to examine GW's new claims and offer his expert opinion on whether there were substantial similarities between the GW and CHS products and whether—to the extent any similarities existed—any shared design elements originated in pre-existing historical, medieval, cinematic, and/or science fiction sources.**

**GW RESPONSE:**  Games Workshop denies that Dr. Gindley was tasked with comparing Games Workshop's and Chapterhouse's products for any substantial similarities. His report is absent of any such comparison. According to his report, his only task was to "opine on whether elements of the Games Workshop New Allegedly Infringed Works can be found in or are

derived from pre-existing works from historical, medieval, cinematic, or science fiction sources." (CHS Cooper Decl. Ex 3, Grindley Report ¶1). The chart accompanying his report is likewise devoid of any comparison of similarities and differences between the Games Workshop and Chapterhouse products with the exception of limited opinions on products 132 and 153 (Moskin Decl. Ex. 1, Grindley Chart at pages 42 and 102).

Games Workshop admits that Dr. Grindley was asked to opine on whether any of the Games Workshop products contained design elements that were similar to pre-existing historical, medieval, cinematic, and/or science fiction sources. Games Workshop denies that Dr. Grindley offered any opinions on whether the Games Workshop designs "originated" in those works or were independently created. Dr. Grindley testified:

> Q:    As you sit here today, in your report or your chart, are you making an expert opinion that Games Workshop consciously derived any of its works from any of the examples you give?
> A:    That would really require me to look into their psyche and I couldn't do that. (Moskin Decl. Ex. 2, Grindley Tr. at 85:19-86:1)

Games Workshop denies that Dr. Grindley limited his opinions to the new claims at issue in the case as he makes extensive opinions on whether certain Games Workshop design elements (such as the Space Marine shoulder pad) are similar to pre-existing works. The copyrightability of the Space Marine shoulder pad, as well as numerous other design elements, was at issue in the first phase of the case, resulting in the Court's November 27, 2012 Opinion. Thus, Dr. Grindley has focused many of his opinions on reconsideration and reargument of the Court's prior decision finding the Space Marine shoulder pad design copyrightable. Moreover, Dr. Grindley was never made aware or saw the Court's November 27, 2012 Opinion. (Moskin Decl., Ex. 2, Grindley Tr. 117:17-118:24).

CHI:2730029.2

**CHS REPLY:** Mischaracterizes the evidence in a manner that is immaterial to the motion. Despite GW's willful confusion on the issue, Dr. Grindley explained his analysis at length during his deposition:

> The purpose of my review of that chart was to provide an expert opinion on whether or not there were substantial similarities between the two products and also to determine if there were any even insignificant similarities, what the origin point either in the distant past or in popular culture would be.

Dkt. 289-10, Grindley Dep. Tr. 30:13-19. Actually comparing the GW to the CHS products is an obvious step in this analysis. Dr. Grindley explained:

> I think the best way to conceptualize the process of identification was to – or is to consider that after seeing a resemblance, to continue sort of examining that resemblance to see if that resemblance itself was due to borrowing from one company's works to another or whether that resemblance was due to another factor, and in each of the situations where I found resemblances and then proceeded to the next step of inquiry, I always determined that the resemblances were due to prior works in terms of history.

*Id.* at 43:22-44:8. He concluded that the best way to assist a jury in analyzing similarities between the products was the use of the chart he included in his expert report. *Id.* at 55:3-6. GW was afforded the opportunity to—and did—explore Dr. Grindley's opinions on this issue during his deposition.

Dr. Grindley limited his opinion to the works at issue in the New Products Claim Chart, many of which were also at issue in the claims asserted in the first half of the case, and GW offers no foundation (FRE 602) or record support to suggest otherwise. There are numerous shoulder pads listed in the New Product Claim Chart, including at entries 146, 147, 148, 151, 152, 155, 156, 157, and 163. Dkt. 289-3 and Dkt. 289-4.

In light of newly discovered evidence, including the Copyright Office's rejection and Dr. Grindley's report and testimony on the issue, the Court has discretion to revisit its prior ruling on whether the disproportionally large size and shape of GW's shoulder

pads should be afforded copyright protection. *Anderson v. Montgomery Ward & Co., Inc.*, 704 F.Supp. 162, 163 (N.D. Ill. 1989) ("when a party can show good reason for having failed to adduce such [new evidence] in its argument on the original [summary judgment] motion, the court is empowered to review this material, and, if necessary, reverse itself"); *Buckley ex. rel. Douglas v. Mount Sinai Hosp. Medical Center*, 2006 WL 2460596, at *5 (N.D. Ill. 2006 Aug. 21, 2006) (finding the law of the case doctrine did not apply and taking "a fresh look at the strength" of the claim "in light of the full factual record" where new evidence had been presented).

**9.     In collecting works that "pre-existed" the GW New Allegedly Infringed Works at issue, Dr. Grindley used the release date of each product given by GW in its New Product Claim Chart. In many cases, the reference materials he collected predated any GW product for the Warhammer 40k universe.**

**<u>GW RESPONSE:</u>**     Games Workshop contests this fact. Some of the images and references cited by Dr. Grindley are after the release date of the product given by Games Workshop. (*See, e.g.*, CHS Cooper Decl. Ex. 3, Grindley Rep. ¶41 citing images from 2004). Moreover, many of the reference materials are dated after the original creation of the Warhammer 40K universe, such as the 1985 creation date of the original Space Marine with its armor and shoulder pad. (*See, e.g.* CHS Cooper Decl. Ex. 3, Grindley Rep. ¶37 citing 1988 comic book; ¶38 citing 1987 book cover; ¶48 citing 1988 miniatures; ¶50 citing a 1987 movie; ¶52 citing a 1986 book cover; ¶53 citing a 1986 movie prop; and ¶55 citing a 1992 miniature, and pictures from 1994 and 1987). Finally, as Dr. Grindley agreed, he has no evidence that any of these materials ever existed in England (where Games Workshop created the subject works) prior to the release date of the products given by Games Workshop in its New Product Claim Chart. (Moskin Decl. Ex. 2, Grindley Tr. at 210:14-211:14.)

Games Workshop further denies that this fact is material because even if it is true, there is no basis for any contention that Games Workshop copied any of the works identified by Dr. Grindley. Dr. Grindley testified:

> Q: As you sit here today, in your report or your chart, are you making an expert opinion that Games Workshop consciously derived any of its works from any of the examples you give?
> A: That would really require me to look into their psyche and I couldn't do that. (Moskin Decl. Ex. 2, Grindley Tr. at 85:19-86:1)

**CHS REPLY:** Mischaracterizes the evidence in a manner that is immaterial to the motion. GW ignores the statement of fact, which says in "many"—not all—cases, the materials cited by Dr. Grindley predated any GW product for the Warhammer 40k universe.

GW's statements do not serve to dispute the fact. GW provides no foundation (FRE 602) or record citation supporting that 1985 is the creation date of the original Space Marine. Further, there are many works in the New Products Claim Chart that are not GW Space Marines. GW provides no foundation (FRE 602) or record citation explaining why 1985 should be used as the date of creation for any of the many other works that are allegedly infringed.

The fact is material because it supports that any similarities between the CHS and GW products are common similarities between CHS, GW, and other science fiction works, making them insignificant or unsubstantial. *See also* 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work"); *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982) (discussing the scenes a faire doctrine).

**11.     The general shape of the GW Space Marine shoulder pad has been around for hundreds of years. Armorers long ago identified what is roughly a quarter of a sphere as being one of the best ways to protect and cover the shoulders, and this shape can be seen in pauldrons dating back to the 15th century.**

**GW RESPONSE:**     Games Workshop contests this fact. As this Court has already concluded

based on the expert report and testimony of Chapterhouse's expert on military history:

> Chapterhouse has presented a report from William F. N. Brewster, the Curator of Collections for the First Division Museum at Cantigny Park in Wheaton, who stated that GW's shoulder pads are "in keeping" with previous examples of military-style shoulder pads found throughout history. Brewster attached to his report drawings of soldiers throughout the last several centuries, many of whom were clad in armor that included shoulder pads. During his subsequent deposition, however, Brewster admitted that he could locate no same or similar representation of GW's shoulder pad design in previous military history.
>
> Upon independent examination, the Court finds that GW's shoulder pads involve enough originality to afford them copyright protection. The unusually large proportional size of the shoulder pads as compared to the Space Marine's head (depicted in GW's product at entry 49) is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle. The shoulder pads created to fit onto GW's physical figurines, though more proportionally accurate, are nevertheless still larger and boxier than those typically found outside of the Warhammer 40,000 fantasy world. The Court thus concludes that GW is entitled to copyright protection as to the design of its shoulder pads. (Dkt. 258 at 19-20).

Moreover, Chapterhouse's new expert has agreed that he has unable to fine a shoulder

pad in prior military history that had the same unique combination of design choices as Games

Workshop's Space Marine shoulder pad. For example, Dr. Grindley admitted that:

> Q. And can we say that's the same about the other Games Workshop products in the chart, that you have not expressed any opinion on whether the combination of design elements chosen by Games Workshop are the same combination of any prior works you found?
> A. I'd have to look at the report. I don't believe I explicitly said that.

> Q. Implicitly or explicitly, have you pointed to any prior works where you believe all the same design choices which elements to include is the same combination that Games Workshop chose?
> A. No, I have not. (Moskin Decl. Ex. 2, Grindley Tr. at 170:22-171:10).
>
> Q. So you're unable to find any prior military shoulder pads that had those same design choices as Games Workshop?
> A. Correct. (Moskin Decl. Ex. 2, Grindley Tr. 237:7-10)

In a belabored response to the question whether he was aware of any designs similar to Games Workshop's, including a shoulder pad that is "very large, extending all the way to the elbow" (Moskin Decl. Ex. 2, Grindley Tr. at 216:23-24) he likewise eventually conceded:

> ...also with the caveat that the general description of the shoulder pads that you have provided differs substantially to our previous discussion of them, I would have to say yes, I was unable to provide you with any particular image that satisfied that full list of criteria.. (Moskin Decl. Ex. 2, Grindley Tr. at 218:3-8.)
>
> Q: So therefore, you are unable to state an expert opinion that that combination is unoriginal?
> A. Yes.
> Q. Yes, you agree with my statement?
> A. Yes, I do. (Moskin Decl. Ex. 2, Grindley Tr. at 219:19-24.)

He further testified that his report offered no opinion whether the Games Workshop designs constituted an original combination of elements. (Moskin Decl. Ex. 2, Grindley Tr. at 169:20–170:13.) Indeed, he admitted as follows:

> Q. In searching for shoulder pads used on future infantry warriors, a human wearing a suit of power armor, you were not able to identify any shoulder pads that had those three common design elements of the Games Workshop, size, shape and banding?
> A. Correct. (Moskin Decl. Ex. 2, Grindley Tr. at 264:14-20.)

**CHS REPLY:** Mischaracterizes the evidence in a manner that is immaterial to the motion. The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a

creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

The fact is material because it supports that any similarities between the CHS and GW products are common similarities between CHS, GW, and other pre-existing works, making them insignificant or unsubstantial. *See also* 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work"); *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982) (discussing the scenes a faire doctrine).

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work. But in light of the fact that oversized shoulder pads are common to the science fiction genre, as demonstrated by Dr. Grindley and unchallenged by GW, the large proportional size of GW's shoulder pads is not a creative addition added by GW, irrespective of the precise measurements of the GW shoulder pads.

**12.      An example of a disproportionately large and oversized medieval shoulder pad can be seen in Dr. Grindley's expert report:**



**GW RESPONSE:**   Games Workshop contests this fact. Games Workshop denies that the close-fitting armor shown in the above image is even remotely similar in size to Games Workshop's Space Marine shoulder pad. The series of flaps indicates that this armor was designed to be worn by a human model to enhance mobility whereas the solid, thick shape of the Space Marine shoulder pad covering the entire upper arm is so disproportionately large that an actual person would be unable to move in it. (Merrett Decl. ¶2).

Games Workshop denies that this image is relevant as there is no testimony that any Games Workshop designer ever saw this shoulder pad. The designer of the Space Marine shoulder pad testified he used no specific references, which would include this image. (Moskin Decl. Ex. 3, Naismith Tr. at 21:5-22:23).

Games Workshop denies that this image is relevant as it fails to show Games Workshop's unique combination of a absurdly large shoulder pad, in the shape of a quarter ovoid, with banding around the rim.

Games Workshop denies that this image is relevant as there is no testimony that any design element in this image is indispensible in the design of a shoulder pad. Dr. Grindley testified that:

CHI:2730029.2

> Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?
>
> A. Correct.
>
> Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?
>
> A. Yes, they would.
>
> Q. And there's no standard ways that they would have to make it? A. No, there isn't.
>
> Q. There's a virtual unlimited amount of ways?
>
> A. Yes.
>
> Q. And you're not identifying any characteristics that you believe are indispensible?
>
> A. No. (Moskin Decl. Ex. 2, Grindley Tr. 266:10-267:5)

In contrast, Chapterhouse's new expert on military history testified that that unlike the Space Marine shoulder pad, this picture shows armor integrated with the chest armor into one piece and does not contain any banding around the edge. (*Id.*, Grindley Tr. at 225:6-227:1).

**CHS REPLY:** Mischaracterizes the evidence in a manner that is immaterial to the motion. The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

14

The fact is material because it supports that any similarities between the CHS and GW products are common similarities between CHS, GW, and other pre-existing works, making them insignificant or unsubstantial. *See also* 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work"); *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982) (discussing the scenes a faire doctrine).

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work.

**13.    The use of disproportionately large shoulder pads predates both the Games Workshop products listed as New Allegedly Infringed Works as well as any Games Workshop Space Marine product with shoulder pads.**

**GW RESPONSE:**    Games Workshop contests this fact. Games Workshop denies that Chapterhouse or any of its experts have identified any shoulder pad design predating the 1985 creation date of the Space Marine armor and shoulder pad that is remotely as large in proportion to the figure as the shoulder pad of the Space Marine.

Games Workshop further denies the relevance of this fact as there is no testimony that any Games Workshop designer ever saw or relied upon any of these shoulder pads. The designer of the Space Marine shoulder pad testified that he used no specific reference. (Moskin Dec. Ex. 3, Naismith Tr. at 21:5-22:23).

Games Workshop denies that this image is relevant as it fails to show Games Workshop's unique combination of an absurdly large shoulder pad, in the shape of a quarter ovoid, with banding around the rim.

15

Games Workshop denies that this image is relevant as there is no testimony that any design element in this image is indispensable in the design of a shoulder pad. Dr. Grindley testified that:

> Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?
> A. Correct.
> Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?
> A. Yes, they would.
> Q. And there's no standard ways that they would have to make it? A. No, there isn't.
> Q. There's a virtual unlimited amount of ways?
> A. Yes.
> Q. And you're not identifying any characteristics that you believe are indispensable?
> A. No. (Moskin Decl. Ex 2, Grindley Tr. 266:10-267:5)

**CHS REPLY:**  Mischaracterizes the evidence in a manner that is immaterial to the motion.  The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected.  Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads."  Dkt. No. 258 at 20 (emphasis added).

Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

The fact is material because it supports that any similarities between the CHS and GW products are common similarities between CHS, GW, and other pre-existing works, making them insignificant or unsubstantial. *See also* 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work"); *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982) (discussing the scenes a faire doctrine).

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work.

**14.     In the 1979 movie Alien, characters wore armored space suits with shoulder pads nearly the size of the actors' heads:**



Nostromo Environmental Armor, Alien (1979)

**GW RESPONSE:**     Games Workshop contests this fact. Games Workshop denies that the layered, articulating armor shown in the above image is even remotely similar in size to Games Workshop's Space marine shoulder pad.

Games Workshop denies that this image is relevant as there is no testimony that any Games Workshop designer ever saw this shoulder pad. The designer of the Space Marine shoulder pad testified he used no specific references, which would include this image. (Moskin Decl. Ex. 3, Naismith Tr. at 21:5-22:23)

Games Workshop denies that this image is relevant as it fails to show Games Workshop's unique combination of a absurdly large shoulder pad, in the shape of a quarter ovoid, with banding around the rim.

Games Workshop denies that this image is relevant as there is no testimony that any design element in this image is indispensible in the design of a shoulder pad. Dr. Grindley testified that:

> Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?
> A. Correct.
> Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?
> A. Yes, they would.
> Q. And there's no standard ways that they would have to make it? A. No, there isn't.
> Q. There's a virtual unlimited amount of ways?
> A. Yes.
> Q. And you're not identifying any characteristics that you believe are indispensible?
> A. No. (Moskin Decl. Ex 2, Grindley Tr. 266:10-267:5)

In contrast, Dr. Grindley stated that unlike the Games Workshop Space Marine shoulder pad, this picture from Aliens shows a different design, one that is articulated, with a large series of rivets:

> Q. The image on the top is a picture of armor used in the movie Alien; is that correct?
> A. That is correct.
> Q. And this is yet another design of a shoulder pad?
> A. Yes, it is.
> Q. And this one is again articulated?

18

> A. Yes.
>
> Q. Unlike the Games Workshop shoulder pad?
>
> A. Yes.
>
> Q. And it has a large series of rivets on the various layers. Do you see that?
>
> A. Yes.
>
> Q. And that's dissimilar to the Games Workshop one as well, correct?
>
> A. Yes
>
> Q. So this is another different design of an overlarge shoulder pad?
>
> A. Yes, it is. (*Id.*, Grindley Tr. at 256:17-257:12)

**CHS REPLY:** Mischaracterizes the evidence in a manner that is immaterial to the motion. The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

The fact is material because it supports that any similarities between the CHS and GW products are common similarities between CHS, GW, and other pre-existing works, making them insignificant or unsubstantial. *See also* 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . regardless of the form in which it is

described, explained, illustrated, or embodied in such work"); *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982) (discussing the scenes a faire doctrine).

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work.

**15. Various comic book characters published in the 1980s, before the creation of Games Workshop's New Allegedly Infringed Work shoulder pad products, were often styled after medieval knights with large shoulder pads.**

**GW RESPONSE:** Games Workshop contests this fact. Games Workshop denies that Chapterhouse or any of its experts have identified any shoulder pad design predating the 1985 creation date of the Space Marine armor and shoulder pad from a comic book that is remotely as large in proportion to the figure as the shoulder pad of the Space Marine.

Games Workshop further denies the relevance of this fact as there is no testimony that any Games Workshop designer ever saw or relied upon any of these shoulder pads. The designer of the Space Marine shoulder pad testified that he used no specific reference. (Moskin Decl. Ex. 3, Naismith Tr. at 21:5-22:23)

Games Workshop denies that this image is relevant as it fails to show Games Workshop's unique combination of a absurdly large shoulder pad, in the shape of a quarter ovoid, with banding around the rim.

Games Workshop denies that this image is relevant as there is no testimony that any design element in this image is indispensible in the design of a shoulder pad. Dr. Grindley testified that:

Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?

A. Correct.

Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?

A. Yes, they would.

Q. And there's no standard ways that they would have to make it? A. No, there isn't.

Q. There's a virtual unlimited amount of ways?

A. Yes.

Q. And you're not identifying any characteristics that you believe are indispensible?

A. No. (Moskin Decl. Ex. 2, Grindley Tr. 266:10-267:5)

**<u>CHS REPLY:</u>**  Mischaracterizes the evidence in a manner that is immaterial to the motion.  The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected.  Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

The fact is material because it supports that any similarities between the CHS and GW products are common similarities between CHS, GW, and other pre-existing works, making them insignificant or unsubstantial.  *See also* 17 U.S.C. § 102(b) ("In no case

21

does copyright protection . . . extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work"); *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982) (discussing the scenes a faire doctrine).

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work.

**16.    The Marvel Comic book character Michael Devlin wore large pauldrons as part of his costume, which is very similar to the shape and proportions of the shoulder pad on Games Workshop's Space Marine figures:**




Michael Devlin, Marvel Comics (1988)        Games Workshop Space Marine, Product Entry #126

**GW RESPONSE:**    Games Workshop contests this fact. Games Workshop denies that the pauldrons shown in the above image are remotely similar in shape and proportions to the Games Workshops Space Marine shoulder pad. As for shape, Chapterhouse's own expert agreed that the unlike the unitary Space Marine shoulder pad, this pauldron appears to consist of at least two

22

different layers of armor. (Moskin Decl. Ex. 2, Grindley Tr. at 258:19-24) Dr. Grindley further pointed out numerous other differences including, the presence of a large square piece of armor, a cutout in the top piece of armor, the lack of edge ribbing on the shoulder pad, and ultimately a different shoulder pad design. (*Id.*, Grindley Tr. at 259:1-15). As for the size, the pauldron shown above is not as massive in size in proportion to the rest of the figure as the Games Workshop Space Marine shoulder pad. For example, the pauldron appears to cover only the deltoid muscle while the Space Marine Shoulder Pad extends almost entirely to the elbow.

Games Workshop denies that this image is relevant as there is no testimony that any Games Workshop designer ever saw this shoulder pad. The designer of the Space Marine shoulder pad testified he used no specific references, which would include this image. (Moskin Decl. Ex. 3, Naismith Tr. at 21:5-22:23)

Games Workshop denies that this 1988 shoulder pad design could have possibly influenced the 1985 creation by Games Workshop of the original Space Marine character and armor, including the shoulder pad. Games Workshop further denies that there is any evidence that this comic book, allegedly published somewhere in 1988, was even available in England during any relevant time. Grindley confirmed that he had no evidence of its publishing in England. (Moskin Decl. Ex. 2, Grindley Tr. at 210:14-211:14).

Games Workshop denies that this image is relevant as it fails to show Games Workshop's unique combination of an absurdly large shoulder pad, in the shape of a quarter ovoid, with banding around the rim.

Games Workshop denies that this image is relevant as there is no testimony that any design element in this image is indispensable in the design of a shoulder pad. Dr. Grindley testified that:

Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?

A. Correct.

Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?

A. Yes, they would.

Q. And there's no standard ways that they would have to make it?

A. No, there isn't.

Q. There's a virtual unlimited amount of ways?

A. Yes.

Q. And you're not identifying any characteristics that you believe are indispensible?

A. No. (*Id.*, Grindley Tr. 266:10-267:5)

**CHS REPLY:** Mischaracterizes the evidence in a manner that is immaterial to the motion. The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

The fact is material because it supports that any similarities between the CHS and GW products are common similarities between CHS, GW, and other pre-existing works, making them insignificant or unsubstantial. *See also* 17 U.S.C. § 102(b) ("In no case

24

does copyright protection . . . extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work"); *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982) (discussing the scenes a faire doctrine).

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work.

**17.    Robert Heinlein provided a source of pre-existing references for the GW Space Marine, including with respect to oversized and disproportionately large shoulder pads:**



Robert Heinlein (1980)



Robert Heinlein (1987)

**GW RESPONSE:**    Games Workshop contests this fact. Games Workshop denies that any of the covers for the various Heinlein book covers shown in the above images are remotely similar in shape and proportions to the Games Workshops Space Marine shoulder pad. As

Chapterhouse's own expert agreed, these images bear little similarity to Games Workshop's Space Marine shoulder pads:

> Q. On page 15, you have two pictures from Robert Heinlein, correct.?
> A. That is correct.
> Q. And again, those show additional options and design for shoulder pads for future warriors?
> A. Yes.
> Q. And again, they are both different designs that that chosen by Games Workshop?
> A. Yes. (Moskin Decl. Ex. 2, Grindley Tr. at 259:16-260:1).

For example, as for the image on the left, it appears to be a combination of a circular armor piece covering only the deltoid muscle combined with a separate square rectangular flap extending from the bottom. Furthermore, while the square or rectangular flap appears to extend down the arm, it does not appear from the image to be a of a size to wrap around the entirety of the arm, as the Games Workshop Space Marine shoulder pad does. Games Workshop denies that the image shows a shoulder pad in the shape of a quarter ovoid. As for the image on the right, the shoulder pad can barely be seen, but it appears to be a small articulated pad that bears little if any resemblance to the Space Marine shoulder pad.

Games Workshop denies that these image are relevant as there is no testimony that any Games Workshop designer ever saw any of these specific book covers. The designer of the Space Marine shoulder pad testified he used no specific references, which would include this image. (Moskin Decl. Ex. 3, Naismith Tr. at 21:5-22:23)

Games Workshop denies that the latter of these book covers, allegedly published in 1987, could have possibly influenced the 1985 creation by Games Workshop of the original Space Marine character and armor, including the shoulder pad. Games Workshop further denies that there is any evidence that any of these book cover images, allegedly published somewhere in

1980 and 1987, were even available in England during any relevant time. Grindley confirmed that he had no evidence of their publishing in England. (Moskin Decl. Ex. 2, Grindley Tr. at 210:14-211:14).

Games Workshop denies that these images are relevant as they fails to show Games Workshop's unique combination of a absurdly large shoulder pad, in the shape of a quarter ovoid, with banding around the rim.

Games Workshop denies that these images are relevant as there is no testimony that any design element in these images are indispensible in the design of a shoulder pad. Dr. Grindley testified that:

> Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?
> A. Correct.
> Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?
> A. Yes, they would.
> Q. And there's no standard ways that they would have to make it?
> A. No, there isn't.
> Q. There's a virtual unlimited amount of ways?
> A. Yes.
> Q. And you're not identifying any characteristics that you believe are indispensible?
> A. No. (Moskin Decl. Ex. 2, Grindley Tr. 266:10-267:5)

**CHS REPLY:** Mischaracterizes the evidence in a manner that is immaterial to the motion. The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in

battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

The fact is material because it supports that any similarities between the CHS and GW products are common similarities between CHS, GW, and other pre-existing works, making them insignificant or unsubstantial. *See also* 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work"); *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982) (discussing the scenes a faire doctrine).

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work.

**18.    Dr. Grindley provided several examples of non-GW futuristic miniature soldiers that were designed with oversized, disproportionately large shoulder pads, one of which (the Asgard miniature) was created in 1983, before any GW Space Marine:**





SM5 Shock Trooper with Force          Attila Ill Cuirassier, Mutant
Axe, Asgard Miniatures (1983)         Chronicle Heartbreaker

**GW RESPONSE:**    Games Workshop contests this fact. Games Workshop denies that any of the above miniatures shown in the above images are remotely similar in shape and proportions to the Games Workshops Space Marine shoulder pad. As for the image on the left, it appears to be a multi-layered piece of armor that rises above the shoulder to form an arc wrapping around the head of the figure. It is not in the shape of a quarter ovoid, and is without any banding around the rim. As for the undated image on the right, Grindley states that it was designed in 1994, well after Games Workshop's design. Thus any similarity it has would be irrelevant. Regardless, it still does not share the same combination of elements as the Space Marine shoulder pad.

Games Workshop denies that these images are relevant as there is no testimony that any Games Workshop designer ever saw any of these miniatures. The designer of the Space Marine shoulder pad testified he used no specific references, which would include this image. (Moskin Decl. Ex. 3, Naismith Tr. at 21:5-22:23)

Games Workshop denies that the 1994 image on the right could have possibly influenced the 1985 creation by Games Workshop of the original Space Marine character and armor, including the shoulder pad. Games Workshop further denies that there is any evidence that any of these miniatures was ever available in England during any relevant time. Grindley confirmed

29

that he had no evidence of their publishing in England. (Moskin Decl. Ex. 2, Grindley Tr. at 210:14-211:14).

Games Workshop denies that these images are relevant as they fail to show Games Workshop's unique combination of a absurdly large shoulder pad, in the shape of a quarter ovoid, with banding around the rim.

Games Workshop denies that these images are relevant as there is no testimony that any design element in these images are indispensible in the design of a shoulder pad. Dr. Grindley testified that:

> Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?
> A. Correct.
> Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?
> A. Yes, they would.
> Q. And there's no standard ways that they would have to make it? A. No, there isn't.
> Q. There's a virtual unlimited amount of ways?
> A. Yes.
> Q. And you're not identifying any characteristics that you believe are indispensible?
> A. No. (*Id.*, Grindley Tr. 266:10-267:5)

In contrast, Chapterhouse's new expert on military history testified that he is not an expert in miniatures and has not had any involvement with miniatures of any nature after a brief experience as a twelve year old and no experience at all in the area of miniature wargaming. (*Id.*, Grindley Tr. 16:21-17:2; 23:15-17, 24:12-23).

**CHS REPLY:** Mischaracterizes the evidence in a manner that is immaterial to the motion. The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large*

*proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

The fact is material because it supports that any similarities between the CHS and GW products are common similarities between CHS, GW, and other pre-existing works, making them insignificant or unsubstantial. *See also* 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work"); *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982) (discussing the scenes a faire doctrine).

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work.

**20.** **The presence of oversized, disproportionately large shoulder pads is common to science fiction tropes.**

**GW RESPONSE:** Games Workshop contests this fact. Out of the thousands of science fiction images examined by Grindley, he was able to locate few, if any, shoulder pads that were

even remotely similar to the disproportionately large size as the Games Workshop Space Marine shoulder pad. Dr. Grindley testified that in finding these isolated images, he review included 1200 pages of material associated with science fiction role-playing games, over 50 years of cover illustrations from at least 50 different science fiction magazines, the book covers of Heinlein's publications from 1950s to the present across all readily available translations and editions, a review of the Western European Medieval Armor on display at The Metropolitan Museum of Art, a variety of online sources regarding armor, and the arms and armor shown in in almost 50 different films. (CHS Cooper Decl. Ex. 3, Grindley Rep. ¶2).

Games Workshop denies that this fact is relevant as Games Workshop's unique combination of elements of at least an oversized shoulder pad covering the entire upper arm, in the shape of a quarter ovoid, with banding around the edge is admittedly not a common design element in either science fiction or in prior military history. For example, Dr. Grindley admitted that:

> Q. And can we say that's the same about the other Games Workshop products in
> the chart, that you have not expressed any opinion on whether the combination of design elements chosen by Games Workshop are the same combination of any prior works you found?
> A. I'd have to look at the report. I don't believe I explicitly said that.
> Q. Implicitly or explicitly, have you pointed to any prior works where you believe all the same design choices which elements to include is the same combination that Games Workshop chose?
> A. No, I have not. (Moskin Decl. Ex. 2, Grindley Tr. at 170:22-171:10).
> Q. So you're unable to find any prior military shoulder pads that had those same design choices as Games Workshop?
> A. Correct. (*Id.*, Grindley Tr. 237:7-10)

In a belabored response to the question whether he was aware of any designs similar to Games Workshop's, including a shoulder pad that is "very large, extending all the way to the elbow" (*Id*. at 216:23-24) he likewise eventually conceded:

> ...also with the caveat that the general description of the shoulder pads that you have provided differs substantially to our previous discussion of them, I would have to say yes, I was unable to provide you with any particular image that satisfied that full list of criteria.. (*Id*. at 218:3-8.)
>
> \*      \*      \*
>
> Q: So therefore, you are unable to state an expert opinion that that combination is unoriginal?
> A. Yes.
> Q. Yes, you agree with my statement?
> A. Yes, I do. (*Id*. at 219:19-24.)

He further testified that his report offered no opinion whether the Games Workshop designs constituted an original combination of elements. (*Id*. at 169:20–170:13.) Indeed, he admitted as follows:

> Q. In searching for shoulder pads used on future infantry warriors, a human wearing a suit of power armor, you were not able to identify any shoulder pads that had those three common design elements of the Games Workshop, size, shape and banding?
> A. Correct. (*Id*. at 264:14-20.)

**CHS REPLY:**  Mischaracterizes the evidence in a manner that is immaterial to the motion.  The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected.  Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads."  Dkt. No. 258 at 20 (emphasis added).

Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

The fact is material because it supports that any similarities between the CHS and GW products are common similarities between CHS, GW, and other pre-existing works, making them insignificant or unsubstantial. *See also* 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work"); *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982) (discussing the scenes a faire doctrine).

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work.

**25.   The Copyright Office Registration Specialist refused GW's application for the size and shape of the "Assault Squad Shoulder Pads" work.**

**GW RESPONSE:**   Games Workshop contests this fact. Games Workshop does not contest the fact that the copyright examiner raised an initial objection to registration of the Assault Squad Shoulder Pad design in June 2012 and then issued a non-final rejection of the design in January 2013 but denies the Copyright Office ever issued a final refusal to register the design.

Games Workshop contests that this fact is relevant. As the copyright examiner failed to explain its decision and refused to discuss the facts or the law with counsel for Games Workshop

34

or even review the Court's November 27 decision, it is unclear whether the objection is based on the size of the shoulder pad, the shape of the shoulder pad, the surface ornamentation of the shoulder pad, or for some other reason. As the examiner stated:

> As I believe I said earlier, Registration Specialists examine submissions for copyright using the deposit copy and application materials before them for each case. They cannot get involved in any legal matters. (Moskin Decl. Ex. 4)

Further, as the copyright examiner failed to provide its analysis supporting the rejection, it is entitled to no deference.

**CHS REPLY:** Mischaracterizes the evidence in a manner that is immaterial to the motion. On January 31, 2013, GW submitted a "Notice of Filing" to inform the Court that it had filed a letter with the U.S. Copyright Office responding to its refusal to register the Assault Squad Shoulder Pad. Dkt. 275. GW's January 31 Letter to the Copyright Office stated that, although aware of its administrative remedies to appeal the refusal by the Copyright Office Supervisory Registration Specialist, it had decided not to pursue the matter further with the Copyright Office, believing it "more efficient to simply allow the Court to decide the matter." Dkt. No. 275, Ex. 1 at GW0016846-7. Having foregone its administrative right to appeal the refusal with the Copyright Office, the Copyright Office's Refusal Letter should be deemed final.

GW's statement that the copyright examiner failed to explain its decision lacks foundation (FRE 602) and is unsupported by citation to the record. The Copyright Office Registration Specialist flatly refused registrability of the size and shape of the shoulder pad design on June 7, 2012, stating "we cannot register the sculpture portion as it is too minimal." *Id.* at 3. Although GW "propose[d] speaking with" the Specialist about the sculptural elements, she responded and again reiterated unequivocally, "The email stated

that the 'sculpture' was too minimal (it is basically an "X") and could not be registered." *Id.* at 4, 7. GW then offered to send the Copyright Office this Court's prior Order, which had been rendered without knowledge of the Copyright Office's action. *Id.* at 10. But the Copyright Office responded, making its determination crystal clear, now for a third time: "this particular shoulder pad submitted is not copyrightable. it [sic] is simply circular, with an x or plus sign on it." Cooper Decl. Ex. 6 at GW0011427-28 (December 11, 2012 email from Copyright Office to Moskin).

GW is wrong that the rejection is entitled to no deference. If a copyright application is refused, "the interpretation followed by the Copyright Office, as the agency responsible for administering federal copyright law, is entitled to respect as persuasive authority." *Design Ideas, Ltd. v. Yankee Candle Co., Inc.*, 2012 WL 3267783, at *6 (C.D. Ill. Aug. 9, 2012) *reconsid. denied by* 2013 WL 143379 (C.D. Ill. Jan. 11, 2013). In *Design Ideas*, the district court granted the defendant's motion for summary judgment, finding that the "consistent, well-reasoned" decision of the Copyright Office as to copyrightability of a sail design was entitled to deference. *Id.* at *7.

**26. The Copyright Office Supervisory Registration Specialist affirmed the Registration Specialist's refusal to register GW's "Assault Squad Shoulder Pads" work and issued a formal rejection letter.**

**<u>GW RESPONSE:</u>** Games Workshop contests this fact. Games Workshop does not contest the fact that due to the maternity leave of the initial copyright examiner, the initial examination of the Assault Squad Shoulder Pad was transferred to a different examiner. Games Workshop does not contest the fact that this new examiner issued a non-final rejection of the design in January 2013. Games Workshop denies that the Copyright Office ever issued a final refusal to register the design. Although Games Workshop acknowledges that a supervisor stepped in when the

initial examiner went on maternity leave, it denies that this non-final rejection constituted any type of supervisory level review, but instead was merely the initial non-final rejection.

Games Workshop contests that this fact is relevant. As the copyright examiner failed to explain its decision and refused to discuss the facts or the law with counsel for Games Workshop or even review the Court's November 27 decision, it is unclear whether the objection is based on the size of the shoulder pad, the shape of the shoulder pad, the surface ornamentation of the shoulder pad, or for some other reason. As the examiner stated:

> As I believe I said earlier, Registration Specialists examine submissions for copyright using the deposit copy and application materials before them for each case. They cannot get involved in any legal matters. (Moskin Decl. Ex. 4)

Further, as the copyright examiner failed to provide its analysis supporting the rejection, it is entitled to no deference.

**CHS REPLY:** Mischaracterizes the evidence in a manner that is immaterial to the motion. GW's statement that the copyright examiner failed to explain its decision lacks foundation (FRE 602) and is unsupported by citation to the record. On January 4, 2013, the Copyright Office Supervisory Registration Specialist issued a formal rejection letter to GW, stating that the Copyright Office could not register the Assault Squad Shoulder Pads because it "lack[ed] the authorship necessary to support a copyright claim." Cooper Decl. Ex. 7 at GW0016843. In denying GW's application, the Copyright Office noted that a copyrightable work "must possess[] at least a minimal degree of creativity." *Id.* (citing *Feist Publications v. Rural Telephone Service Co.*, 499 U.S. 340 (1991)). The Copyright Office wrote, "After careful consideration, we have determined that this particular work will not support a claim to copyright for 2-Dimensional artwork or sculpture under the standards described above." *Id.* This determination included

37

"deposit materials." *Id.* The Copyright Office concluded, "no response is necessary." *Id.* at GW0016844.

On January 31, 2013, GW submitted a "Notice of Filing" to inform the Court that it had filed a letter with the U.S. Copyright Office responding to its refusal to register the Assault Squad Shoulder Pad. Dkt. 275. GW's January 31 Letter to the Copyright Office stated that, although aware of its administrative remedies to appeal the refusal by the Copyright Office Supervisory Registration Specialist, it had decided not to pursue the matter further with the Copyright Office, believing it "more efficient to simply allow the Court to decide the matter." Dkt. No. 275, Ex. 1 at GW0016846-7. Having foregone its administrative right to appeal the refusal with the Copyright Office, the Copyright Office's Refusal Letter should be deemed final.

GW is wrong that the rejection is entitled to no deference. If a copyright application is refused, "the interpretation followed by the Copyright Office, as the agency responsible for administering federal copyright law, is entitled to respect as persuasive authority." *Design Ideas, Ltd. v. Yankee Candle Co., Inc.*, 2012 WL 3267783, at *6 (C.D. Ill. Aug. 9, 2012) *reconsid. denied by* 2013 WL 143379 (C.D. Ill. Jan. 11, 2013). In *Design Ideas*, the district court granted the defendant's motion for summary judgment, finding that the "consistent, well-reasoned" decision of the Copyright Office as to copyrightability of a sail design was entitled to deference. *Id.* at *7.

**27.     In denying GW's application, the Copyright Office noted that a copyrightable work "must possess[] at least a minimal degree of creativity." (citing Feist Publications v. Rural Telephone Service Co., 499 U.S. 340 (1991)). The Copyright Office wrote, "After careful consideration, we have determined that this particular work will not support a claim to copyright for 2-Dimensional artwork or sculpture under the standards described above." Id. This determination appears to have included "deposit materials." The Copyright Office concluded, "no response is necessary."**

**GW RESPONSE:**    Games Workshop contests this fact. Games Workshop does not contest this fact to the extent that the non-final rejection contained the quoted language. Games Workshop contests this fact to the extent that Chapterhouse contends that the Copyright Office ever issued a final rejection. Games Workshop contests this fact to the extent that the non-final rejection included a lengthier description of law as it relates to copyrightability. (Moskin Decl. Ex. 5). Thus, Chapterhouse's reference to "the standards described above" improperly implies that the Copyright Office necessarily concluded that the Games Workshop Assault Squad Shoulder Pad did not possess a minimal degree of creativity.

Games Workshop contests that this fact is relevant. As the copyright examiner failed to explain its decision and refused to discuss the facts or the law with counsel for Games Workshop or even review the Court's November 27 decision, it is unclear whether the objection is based on the size of the shoulder pad, the shape of the shoulder pad, the surface ornamentation of the shoulder pad, or for some other reason. As the examiner stated:

> As I believe I said earlier, Registration Specialists examine submissions for copyright using the deposit copy and application materials before them for each case. They cannot get involved in any legal matters. (Moskin Decl. Ex. 4)

Further, as the copyright examiner failed to provide its analysis supporting the rejection, it is entitled to no deference.

**CHS REPLY:**    Mischaracterizes the evidence in a manner that is immaterial to the motion.  GW's statement that the copyright examiner failed to explain its decision lacks foundation (FRE 602) and is unsupported by citation to the record.

On January 31, 2013, GW submitted a "Notice of Filing" to inform the Court that it had filed a letter with the U.S. Copyright Office responding to its refusal to register the Assault Squad Shoulder Pad.  Dkt. 275.  GW's January 31 Letter to the Copyright Office

stated that, although aware of its administrative remedies to appeal the refusal by the Copyright Office Supervisory Registration Specialist, it had decided not to pursue the matter further with the Copyright Office, believing it "more efficient to simply allow the Court to decide the matter." Dkt. No. 275, Ex. 1 at GW0016846-7. Having foregone its administrative right to appeal the refusal with the Copyright Office, the Copyright Office's Refusal Letter should be deemed final.

GW is wrong that the rejection is entitled to no deference. If a copyright application is refused, "the interpretation followed by the Copyright Office, as the agency responsible for administering federal copyright law, is entitled to respect as persuasive authority." *Design Ideas, Ltd. v. Yankee Candle Co., Inc.*, 2012 WL 3267783, at *6 (C.D. Ill. Aug. 9, 2012) *reconsid. denied by* 2013 WL 143379 (C.D. Ill. Jan. 11, 2013). In *Design Ideas*, the district court granted the defendant's motion for summary judgment, finding that the "consistent, well-reasoned" decision of the Copyright Office as to copyrightability of a sail design was entitled to deference. *Id.* at *7.

**31. GW's January 31, 2013 Letter to the Copyright Office stated that, although aware of its administrative remedies to appeal the refusal by the Copyright Office Supervisory Registration Specialist, it had decided not to pursue the matter further with the Copyright Office, believing it "more efficient to simply allow the Court to decide the matter."**

**GW RESPONSE:** Games Workshop contests this fact. Games Workshop denies that it abandoned or renounced any right to pursue either of two levels of appellate review of the application for its Assault Squad Shoulder Pad design, the deadline for the first such review being April 4, 2013, but rather that it recognized both the available options to seek administrative review and the greater apparent efficiency of having the Court resolve the matter. (Moskin Decl. Ex. 6).

**CHS REPLY:** Mischaracterizes the evidence in a manner that is immaterial to the motion. On January 31, 2013, GW submitted a "Notice of Filing" to inform the Court that it had filed a letter with the U.S. Copyright Office responding to its refusal to register the Assault Squad Shoulder Pad. Dkt. 275. GW's January 31 Letter to the Copyright Office stated that, although aware of its administrative remedies to appeal the refusal by the Copyright Office Supervisory Registration Specialist, it had decided not to pursue the matter further with the Copyright Office, believing it "more efficient to simply allow the Court to decide the matter." Dkt. No. 275, Ex. 1 at GW0016846-7. Having foregone its administrative right to appeal the refusal with the Copyright Office, the Copyright Office's Refusal Letter should be deemed final.

**32.** **Having foregone its administrative right to appeal the refusal with the Copyright Office, the Copyright Office's Refusal Letter should be deemed final.**

**GW RESPONSE:** Games Workshop contests this fact. Games Workshop denies that there has been a final agency refusal to register within the meaning of 37 C.F.R. § 202.5. To the contrary, 37 C.F.R. § 202.5(g) defines "Final agency action" as follows: "A decision by the Review Board in response to a second request for reconsideration constitutes final agency action." Games Workshop further denies that it has abandoned or renounced any right to pursue either of two levels of appellate review of the application for its Assault Squad Shoulder Pad design, the deadline for the first such review being April 4, 2013, but rather that it recognized both the available options to seek administrative review and the greater apparent efficiency of having the Court resolve the matter. (Moskin Decl. Ex. 6).

**CHS REPLY:** Mischaracterizes the evidence in a manner that is immaterial to the motion. While courts do not appear to have encountered the unique factual circumstance presented here, in which a party has stated its intent to waive appeal to the Copyright

Office but then argues that it should not be bound by that representation, the procedures of other administrative agencies support the principal that once a party has waived its right to appeal, the decision of the agency is final. *See Mejia-Ruiz v. I.N.S.*, 51 F.3d 358, 363 (2d Cir. 1995) (in context of deportation proceedings, if an appeal of an immigration judge's order to the Board of Immigration Appeals is waived, the order becomes final); *Roudnahal v. Ridge*, 310 F. Supp. 2d 884, 894 (N.D. Ohio 2003) (decision of the immigration judge becomes final upon waiver of appeal to the Board of Immigration Appeals); *U.S. v. Reinhardt College*, 597 F. Supp. 522, 526 (N.D. Ga. 1983) (decision of Veterans Administration's Regional Office Committee on School Liability "became the final agency decision when the college waived its right of administrative appeal"). Having represented to the Copyright Office and this Court that it would not appeal the rejection of the Assault Squad Shoulder Pads—an effective waiver—GW insincerely maintains that the Copyright Office's rejection is not "final" in an attempt to diminish its influence on the Court. This kind of sleight-of-hand should not be permitted, and the Court should consider the Refusal Letter final for purposes of reconsideration.

## III. Immaterial Facts

**10. Dr. Grindley is a tenured associate professor of English at Eugenio Maria de Hostos Community College and consortial professor at The City University of New York. His academic training has included extensive research and publication on popular culture's appropriation of Medieval tropes and he regularly teaches classes on science fiction literature and film.**

**<u>GW RESPONSE:</u>** This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. Dr. Grindley's identification of prior works that allegedly contain elements that are similar to a Games Workshop product is irrelevant as there is no evidence that any Games Workshop designer used any of these prior works in the design of the Games Workshop products at issue in this case. Further, there is no evidence that these isolated images

identified by Dr. Grindley identify any elements, let alone combination of elements, that are essential or indispensible when creating any of the types of products at issue in this case. Moreover, Grindley's eccentric views concerning the nature of what is original and applicable copyright law render his entire report suspect.

Dr. Grindley's view of originality is an incorrect understanding that if a design has any connection to, basis in, or inspiration from any prior work it is not original. (Moskin Decl. Ex. 2, Grindley Tr. at 143:17-22). Thus, Dr. Grindley testified that it was his expert opinion that all possible expressions of a future infantry warrior, such as a Space Marine with a shoulder pad, had been exhausted around 1990 after the release of the movie Alien. (*Id*., Grindley Tr. at 139:20-140:24, 141:20-142:7). Dr. Grindley further says it is impossible for him to separate the idea of a future military soldier from any particular expressions of that concept. (*Id*., Grindley Tr. at 124:5-125:7)

**CHS REPLY:**  GW does not dispute the fact, which is therefore deemed admitted pursuant to Local Rule 56.1. The statement is material because Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW.  Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work.

GW's further statement regarding Dr. Grindley's "eccentric views" lacks foundation (FRE 602) or any citation to the record, and are irrelevant (FRE 402).

**19. The design element of unusually large proportional size is not new for shoulder pads and was not conceived or originally expressed by GW.**

**GW RESPONSE:** This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. While Games Workshop design of the Space Marine shoulder pad is a unique combination of elements originally expressed by Games Workshop, such a fact is immaterial. Unlike patent law, there is novelty requirement for copyrightability. Games Workshop need not be the first to conceive of or originally express an idea to obtain copyright protection. Chapterhouse has presented no evidence that Games Workshop relied on any preexisting unusually large shoulder pad designs in the creation of its Space Marine shoulder pad. Instead, the designer of the Space Marine shoulder pad testified that he did not refer to any such designs. (Moskin Decl. Ex 3, Naismith Tr. at 21:5-22:23). Further, Chapterhouse has never alleged that it ever relied on any preexisting unusually large shoulder pad design in the creation of its products.

**CHS REPLY:** GW does not dispute the fact, which is therefore deemed admitted pursuant to Local Rule 56.1. Mischaracterizes the evidence in a manner that is immaterial to the motion. The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

The statement is material, because Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

The statement is material because it supports that any similarities between the CHS and GW products are common similarities between CHS, GW, and other pre-existing works, making them insignificant or unsubstantial. *See also* 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work"); *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 616 (7th Cir. 1982) (discussing the scenes a faire doctrine).

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work.

**21.    GW did not submit a rebuttal expert to Dr. Grindley's report.**

**GW RESPONSE:**    This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. No rebuttal is needed given the irrelevance of Dr. Grindley's report.

**CHS REPLY**:   GW does not dispute the fact, which is therefore deemed admitted pursuant to Local Rule 56.1. The statement is material because GW repeatedly (including here) offers expert opinions from its counsel or fact witnesses that are the province of an expert, which GW has not presented.

CHI:2730029.2

**23.     The width of the arrow base on CHS's product is wider than the picture of GW's product and narrower than the drawing done by Neil Hodgson and Darius Hinks. Likewise, the width of the top arrow section is larger on CHS's product.**

<u>**GW RESPONSE:**</u>     This statement is immaterial, because even if true, it has no bearing on any relevant issue in this case. The test is not whether the dimensions of the surface ornamentation on Chapterhouse's tactical shoulder pad are identical to the dimensions of the surface ornamentation of Games Workshop's tactical shoulder pad. The issue is whether they are substantially similar. Games Workshop denies that the width of the Chapterhouse Tactical upwards-pointing arrow is appreciably different from the Games Workshop Tactical Arrow, as shown in both the drawing by Darius Hinks and Neil Hodgson and the Games Workshop physical product. (Moskin Decl. Ex. 11, Copyright Chart 2nd Phase at product 156). Both are very wide arrows pointing upwards, and placed in the center of the shoulder pad. Chapterhouse also specifically highlights the near identity and interchangeability of the designs by using the Games Workshop original character name, Tactical Space Marine, to identify its copied product.

> <u>**CHS REPLY:**</u>     GW does not dispute the fact, which is therefore deemed admitted pursuant to Local Rule 56.1.  The statement is material, because the issue of substantial similarity is left to the determination of the jury, not GW's counsel.

**28.     At the January 14, 2013 hearing on CHS's First Motion for Reconsideration, GW's counsel Mr. Moskin represented that all correspondence with the Copyright Office had been produced. Ten days earlier, however, the Refusal Letter was sent, and CHS had not been provided the letter.**

<u>**GW RESPONSE:**</u>     This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case, as the letter was timely produced to Chapterhouse, which does not purport to have been prejudiced in any way. Games Workshop contests the implication that the January 4 letter from Copyright Office was reviewed prior to the January 14 hearing. In fact, the letter was received in New York sometime after the close of business on Friday, January 11 and

the date of counsel's return to New York from Chicago on Tuesday, January 15, when it was

first reviewed. (Moskin Decl. ¶5). Further, as reflected in counsel's January 10 and January 11

emails to the Copyright Office inquiring about the promised correspondence, the letter had not

yet been received as of those dates, and as also reflected in a January 16 email to Chapterhouse's

counsel, the letter had been received by that date. (Moskin Decl. Exs. 4, 7).

> **CHS REPLY:**  GW does not dispute the fact, which is therefore deemed admitted
>
> pursuant to Local Rule 56.1.  The fact is material to CHS's Second Motion for
>
> Reconsideration related to the same shoulder pad issue.  *See* Dkt. 287 at 7-8.

**29.     Although CHS's counsel requested that it immediately be provided with the refusal letter once GW's attorney received it, GW's counsel refused to provide it until, as he put it, GW "decide[d] on how to respond." Ultimately, CHS counsel did not receive the letter until January 31, 2013, the same day GW submitted its Notice of Filing.**

**GW RESPONSE:**     This statement is immaterial because, even if true, it has no bearing on any

relevant issue in this case. Games Workshop contests the implication that the January 4 letter

from Copyright Office was not timely produced to Chapterhouse. The letter was first reviewed in

New York on Tuesday, January 15. After review of the letter and discussing the contents of it

with Games Workshop, the letter was produced to Chapterhouse on January 31, 2013 as part of a

supplemental document production containing supplemental documents on a variety of issues.

(Moskin Decl. ¶6).

> **CHS REPLY:**  GW does not dispute the fact, which is therefore deemed admitted
>
> pursuant to Local Rule 56.1.   The fact is material to CHS's Second Motion for
>
> Reconsideration, related to the same shoulder pad issue.  *See* Dkt. 287 at 7-8.

## IV.    Games Workshop's Additional Undisputed Material Facts
## Design of the Space Marine, including the Shoulder Pad

1.     Most Space Marines wear Power Armour, an advanced suit of strength enhancing
combat armor consisting of thick ceramite containing a full suite of life-support functions to
operate in hostile environments. (Moskin Decl. Ex. 8, Prior Merrett Decl. ¶ 30). Over the history

of the Warhammer 40K Universe there have been various advancements to the Power Armour, starting with Mark I through to the current Mark VIII version. (Id.) An example of the Mark VIII Power Armor along with various Space Marine Shoulder pads are below:

   

## CHS RESPONSE:

Each statement is irrelevant to any issue in this case. FRE 402.

**DISPUTED**. GW's statements lack foundation (FRE 602) because a "Space Marine" is a miniature toy soldier, and neither GW's Space Marine toy soldier nor any of GW's scale miniature armor bits has the described characteristics.

The statement concerning "the history of the Warhammer 40K Universe" lacks foundation (FRE 602) because it is an imaginary universe with an imaginary timeline, thus the term "advancements" lacks foundation and is meaningless.

CHS further objects to GW's images, which lack foundation (FRE 602) or any citation to the record.

2.      One of the numerous iconic aspects of Games Workshop's Power Armour is the shoulder pad. (Moskin Decl. Ex. 8, Prior Merrett Decl. ¶31). The shoulder pad is a convex shape with a curve at the top and a straight edge at the bottom. (Id.) There is often a large band or rim extending along the entire outer edge of the shoulder pad. (Id.) As part of the Power Armour, the shoulder pad begins above the shoulder and ends right above the elbow. (Id.) The pads are curved in a manner such that it does not cover a large portion of either the chest or the back of the Space Marine. (Id.) On the reverse side of the shoulder pad, there are typically a series of spaced indentations that serve no functional purpose but as Alan Merrett explained, they are used by Games Workshop to create a technical appearance. (Id.; Moskin Decl. Ex. 9, Prior Merrett Tr. at 46:12-47:17)

## CHS RESPONSE:

**DISPUTED.** GW's statement that its shoulder pads have the simple form of "a convex shape with a curve at the top and a straight edge at the bottom" lacks foundation. FRE 602.

- "the shoulder pad begins above the shoulder and ends right above the elbow" – **Disputed.** This is not a characteristic of a shoulder pad, but merely describes it in relationship to a hypothetical toy soldier.
- "The pads . . does [*sic*] not cover a large portion of either the chest or the back of the Space Marine." - **Disputed.** This is not a characteristic of a shoulder pad, but merely describes it in relationship to a hypothetical toy soldier.
- "there are typically a series of spaced indentations" – vague and ambiguous; without foundation (FRE 602).

3. Mr. Naismith, the original designer of the Space Marine armor, including the shoulder pad is a former Games Workshop employee who currently lives in England. Without any prior notice to Games Workshop, Chapterhouse contacted him and convinced him to appear voluntarily for a deposition in this case regarding his work in designing the original shoulder pad. (Moskin Decl. ¶4)

**CHS RESPONSE: DISPUTED.** CHS admits that Mr. Naismith agreed to sit for a deposition. GW's statement that CHS "convinced" him to appear is without foundation (FRE 602) or record support.

Each statement is irrelevant to any issue in this case. FRE 402.

4. Mr. Naismith confirmed that when he created the original Space Marine in 1985, which included the shoulder pad, he did so without any direct references. (Moskin Decl. Ex. 3, Naismith Tr. at 21:5-22:23) He stated that he had some general inspiration from the general shape of blanket rolls used by Napoleonic soldiers (which became part of the cylindrical space-age equipment at the top of the backpack); American WWII infrantryman (who wore back packs); Romanesque helmets (which were modified, modernized and fitted with breathing apparatus and goggles); and Medieval armour which was articulated at the joints to allow the user's limbs to move.) (*Id.*, Naismith Tr. at 29 l. 15 – 34 l.2).

**CHS RESPONSE: DISPUTED.** GW's characterization of Mr. Naismith's testimony lacks foundation (FRE 602) or record support. Mr. Naismith's testimony speaks for itself.

5. As the Space Marine shoulder pad does not have to be functional in any literal sense, it is so large (covering the entire upper arm of the Space Marine figure) that it would be impossible for an actual human to move while wearing it. (Merrett Decl. ¶2).

**CHS RESPONSE: DISPUTED.** Each statement is without foundation (FRE 602), is improper speculation (FRE 701), and is irrelevant to any issue in this case. FRE 402. Further, a "Space

Marine" is a miniature toy soldier, and neither GW's Space Marine toy soldier nor any of GW's scale miniature armor bits has the described characteristics.

6.      Mr. Naismith testified that the size of the Space Marine shoulder pad was meant to give the miniature figure "presence" on the gaming table in keeping with its oversize image as depicted in the larger-scale paintings and drawings Games Workshop publishes.

> Q. In the same way I asked you about the function of the helmet, does the shoulder pad on a Space Marine have any actual function?
> A. Its main function is this idea of communicating the presence and power of the Space Marine in his armor. That is the story we are trying to tell.
> Q: Does that have anything to do with the size of the shoulder pad in relation to the figure itself?
> A. Only insofar as because it's larger than is, if you like, it adds a presence to the model (Moskin Decl. Ex. 3, Naismith Tr. at 62:2-23.)
>
> *        *        *
>
> Q. What about the shoulder pads do you believe added presence on the table?
> A. Very much so, yes. I suppose the simplest thing to imagine is a Space Marine without shoulder pads. It then goes back to being just a man. So it is part of the signal. If you look at American football jocks with their shoulder protectors, they look really imposing, you know, by the time they have got their helmet on and they are all 6-foot something tall, so they are big men with big shoulders, and in the real world are intimidating. So the tie with the Space Marines was to use shoulder pads to give some of that feeling to the design, so that any normal human being standing next to a Space Marine looked like a lesser being. (*Id.* at 33:13-34:2.)

**CHS RESPONSE:**   **DISPUTED.**   GW's characterization of Mr. Naismith's testimony lacks foundation (FRE 602) or record support.  Mr. Naismith's testimony speaks for itself.

7.      The Space Marine shoulder pad is an original combination of elements, including at least a vastly oversized shoulder pad, a quarter ovoid shape, and large banding around the edge. A large number of the Chapterhouse products at issue are shoulder pads that copy this unique combination of elements. (Moskin Decl. Ex. 10, Copyright Chart 1st Phase, see, e.g. entries 4-7, 12-13, 19-20, 46-48, 49, 50-52, 56-62, 64-65, and 101-02; Moskin Decl. Ex. 11, Copyright Chart 2nd Phase, *see, e.g.* entries 126, 142, 147-57, and 163).

**CHS RESPONSE:** **DISPUTED.** Each statement is irrelevant to any issue in this case. FRE 402. Combinations of two simple, unprotectable symbols, such as a chevron, arrow, or X symbol, together with a Roman numeral, or a sawblade in combination with a simple jewel, are also unprotectable, since "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003); Copyright Compendium II § 503.02(a)-(b) ("[R]egistration cannot be based upon . . . a simple combination of a few standard symbols. . . [or] the mere bringing together of two or three standard forms or shapes with minor linear or spatial variations.").

The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work. But in light of the fact that oversized shoulder pads are common to the science fiction genre, as

demonstrated by Dr. Grindley and unchallenged by GW, the large proportional size of GW's shoulder pads is not a creative addition added by GW, irrespective of the precise measurements of the GW shoulder pads.

8.      Many of the Space Marine shoulder pads have additional original features such as a series of indents on the rear of the devices. In many instances, Chapterhouse has copied this feature in its shoulder pads.



Back of example Chapterhouse Power Armor Shoulder Pad for Space Marine (Moskin Decl. Ex. 14)

**CHS RESPONSE:**      **DISPUTED.**  As CHS has stated previously, this image is **NOT** of a CHS product.

- First, the Moskin Decl. ¶ 13, which describes this as Chapterhouse's "Tactical Shoulder Pad for Space Marines with Number VI (Product 62)" is inconsistent with the labeling above, which says this is Chapterhouse's "Power Armor Shoulder Pad for Space Marine."

- Second, contrary to the representation made in Moskin Decl. ¶ 13, the purported depiction of CHS's "Power Armor Shoulder Pad for Space Marine" is not an image of a CHS product.  Dkt. 229-10 (Villacci Decl. at ¶ 9).

- Third, the above image is **NOT** the same image that was shown to Mr. Villacci at his deposition, as claimed by Moskin Decl. ¶ 13.  This is the picture shown to Mr. Villacci during his deposition:



Villacci Exhibit 51A

Cooper Decl. ¶ 7, Ex. F.

- Fourth, the back of CHS's "Power Armor Shoulder Pad for Space Marine" is depicted below and is not identical to either of the above pictures:



Back of CHS "Power Armor
Shoulder Pad for Space Marine
(CHS Product No. 54)
Dkt. 244-1, Supp. Kearney Decl. ¶ 22 & Dkt. 244-12, Ex. 11 (showing image of actual CHS product).

- GW does not identify "indentations" on the back of shoulder pads as an infringed feature of its products. Original Copyright Claim Chart (Dkt. 208-2), First Rev. Copyright Claim Chart (Dkt. 208-2), Second Rev. Copyright Claim Chart (Dkt. 208-2 at 93-150).

9.      Mr. Villacci testified he used a "digimeter" to ensure the dimensions of his shoulder pads were an exact match to the Games Workshop Space Marine shoulder pad. (Moskin Decl. Ex. 15, Villacci Tr. at 217-18).

**CHS RESPONSE:  DISPUTED.**  GW grossly misrepresents Villacci's testimony: Villacci said

that his **designers** took measurements to ensure the size of Chapterhouse's shoulder pads was

**similar enough to fit** one of GW's standard, 28mm scale model. Mr. Villacci also speculated

that one of his designers may have used a digimeter to take such measurements. The cited

testimony reads in pertinent part:

> Q    And you say, This is a standard-sized space
> Marine tactical shoulder pad.
>     What do you mean by standard size?
>     MS. GOLINVEAUX:  I'm sorry.  What page are you
> on?
>     A    2.
>     MS. GOLINVEAUX:  Where were you reading from,
> please?
>     Q    (BY MR. MOSKIN) Can I see the exhibit?  Okay.
> It says, This is the standard 28-millimeter scale
> shoulder pad.

CHI:2730029.2

MS. GOLINVEAUX:  Thank you.

Q    (BY MR. MOSKIN) What is the standard size you're referring to?

A    I'm referring to a shoulder pad that fits on the -- the Games Workshop space Marine model's shoulder.

Q    And how do you know it's a standard size?

A    We took measurements to make sure the size was **similar**, fit inside the concave component that would fit on the model.

Q    And how did you take those measurements?

A    Well, **I didn't take them**.  The designers took them.  I can't remember who did this pad, but I know Tomas has a -- a digimeter that's precision.  That's how he -- I assume that's how he takes his size, shapes, and stuff.

Cooper Decl. Ex. E, Villacci Dep. Tr. at 110:11-111:11.

10.    The 28 mm size adopted by Games Workshop is not an industry standard but was adopted arbitrarily by Games Workshop (with other companies using different scales). Although there are now other companies that make miniatures to the same 28 mm scale that Games Workshop uses, there is nothing to the size essential to making battlefield miniatures. Hence these are original features for which there is no historical precedent. Rather, the 28 mm scale was created by Games Workshop and used for the Space Marine figure as part of Games Workshop's original design conception to give the figures greater presence than those confirming to the 25 mm scale popular in the 1980's. (Merrett Decl. ¶3; Moskin Decl. Ex. 3, Naismith Tr. 64:11-66:3)

**CHS RESPONSE:  DISPUTED.**  GW's 30(b)(6) witness, Alan Merrett, testified that GW does not claim that its 28 mm scale is copyrightable.  Cooper Decl. Ex. C, Merrett Dep. Tr. at 47:15-17.  And Bob Naismith testified that "there are many" war game miniatures that are sold at a 28 mm scale.  Cooper Decl. Ex. D, Naismith Dep. Tr. at 66:9.  This fact is easily confirmed by a simple Google search for 28 mm miniatures, which returns links and URLs for at least nine companies whose names and descriptions indicate that they make and sell 28 mm miniature figures.  Dkt. 244-1, Supp. Kearney Decl. ¶ 6; Dkt. 244-2, Ex. 1.

GW cites no authority for the statement that merely building models at the same *scale* as another manufacturer is an indicium of copyright infringement.  It is not.  *See, e.g., Mattel, Inc. v. Azrak Hamaway Int'l, Inc. dba Remco Toys*, 724 F.2d 357, 360 (2d Cir. 1984) (holding

plaintiff was not likely to prevail on merits of its copyright claims where defendant's 5 ½" action figure toy dolls were designed to compete with plaintiff's dolls).

11.     Games Workshop has developed an entire range of Assault, Tactical, and Devastator shoulder pads for Space Marines, each containing the same unique shape of the Space Marine shoulder pad combined with an icon designating the type of Space Marine (a specific "X" design, a wide upward facing arrow design, or a specific chevron design), tied to a specific name Assault, Tactical, and Devastator, and numerical designation (1-10) presented as a Roman numeral. (Moskin Decl. Ex. 8, Prior Merret Decl. ¶ 32).

- Tactical Space Marines are represented by an upward pointing arrow and given roman numerals I through VI on their shoulder pads;



- Assault Space Marines are represented by a crossed X and given roman numerals VII and VIII on their shoulder pads; and



- Devastator Space Marines are represented by a chevron (inverted V) and given roman numerals IX and X on their shoulder pads.



**<u>CHS RESPONSE:</u>**

Each statement is irrelevant to any issue in this case.  FRE 402.

**DISPUTED.**

The rules of GW's "imaginary universe" do not specify a single symbol for each type of space marine. *See* Dkt. 213-17, GW MSJ Ex. 81 (GW0001288) (setting out various insignia,

with and without Roman numerals, and explaining that "[t]he style of marking . . . can vary between Companies and even with a company itself").

To the extent GW seeks to have the Court consider its "range" of products in determining copyright protection, the Court already rejected this theory, finding that "GW's attempt to persuade the Court to consider all of its products as one unified whole is therefore unpersuasive and without evidentiary support."  Dkt. 258 at 25.

12.    Including its new product (No 156), "Scaled Tactical Power Armor Pad" Chapterhouse has created and sells numerous "Tactical Shoulder Pads for Space Marines", "Assault Shoulder Pads for Space Marines", and "Devastator Shoulder Pads for Space Marines":



Tactical Shoulder Pad for Space Marine (Moskin Decl. Ex. 16)



Scaled Tactical Power Armor Pad (Moskin Decl. Ex. 11, Copyright Claim Chart for 2nd Phase at product 156)



Assault Shoulder Pad for Space Marine (Moskin Decl. Ex. 16)



Devastator Shoulder Pad for Space Marine (Moskin Decl. Ex. 16)

**CHS RESPONSE:**

CHI:2730029.2

**DISPUTED.** CHS admits that it offers the above products for sale. CHS disputes that its products infringe GW purported copyrights. "Common geometric shapes cannot be copyrighted," per *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 303 (7th Cir. 2011). The U.S. Copyright Office refuses to base copyright registration on the very same simple and "standard ornamentation" at issue here, "such as chevron stripes . . . a plain, ordinary cross . . . common geometric figures or shapes . . . a standard symbol such as an arrow or a five-pointed star . . . ." U.S. Copyright Office, Compendium II: Copyright Office Practices §503.02(a) (b). Also not copyrightable are simple, basic three-dimensional shapes, such as the shape of GW's "sci-fi shoulderpad," or other "common geometric figures or shapes in three dimensional form, such as the cone, cube, or sphere . . . the creative expression capable of supporting copyright must consist of something more than the mere bringing together of two or three standard forms or shapes with minor linear or spatial variations." *Id.* Typefaces, such as Roman numerals, cannot be copyrighted. *Eltra Corp. v. Ringer,* 579 F. 2d 294, 298 (4th Cir. 1978) ("typeface is an industrial design in which the design cannot exist independently and separately as a work of art"); 37 C.F.R. § 202.1 ("works not subject to copyright . . . [include] familiar symbols or designs; mere variations of typographic ornamentation . . . [and] [t]ypeface as typeface.").

Combinations of two simple, unprotectable symbols, such as a chevron, arrow, or X symbol, together with a Roman numeral, or a sawblade in combination with a simple jewel, are also unprotectable, since "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003); Copyright Compendium II § 503.02(a)-(b) ("[R]egistration cannot be based upon . . . a simple combination of a few standard symbols . . .

[or] the mere bringing together of two or three standard forms or shapes with minor linear or spatial variations.").

CHS further objects to GW's images and references to exhibits as follows:

- GW depicts CHS's products in color, although it is undisputed that all of CHS's products are sold unpainted. Villacci Decl. ¶ 10 (Dkt. 208-43).

- The rules of GW's "imaginary universe" do not specify a single symbol for each type of space marine. *See* Dkt. 213-17, GW MSJ Ex. 81 (GW0001288) (setting out various insignia, with and without Roman numerals, and explaining that "[t]he style of marking . . . can vary between Companies and even with a company itself")

**Court's Prior Rulings**

13. The Court has previously analyzed the copyrightability of Games Workshop's Space Marine shoulder pad and has found it copyrightable. (Dkt. 258). The Court stated:

> Chapterhouse has presented a report from William F. N. Brewster, the Curator of Collections for the First Division Museum at Cantigny Park in Wheaton, who stated that GW's shoulder pads are "in keeping" with previous examples of military-style shoulder pads found throughout history. Brewster attached to his report drawings of soldiers throughout the last several centuries, many of whom were clad in armor that included shoulder pads. During his subsequent deposition, however, Brewster admitted that he could locate no same or similar representation of GW's shoulder pad design in previous military history.
>
> Upon independent examination, the Court finds that GW's shoulder pads involve enough originality to afford them copyright protection. The unusually large proportional size of the shoulder pads as compared to the Space Marine's head (depicted in GW's product at entry 49) is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle. The shoulder pads created to fit onto GW's physical figurines, though more proportionally accurate, are nevertheless still larger and boxier than those typically found outside of the Warhammer 40,000 fantasy world. The Court thus concludes that GW is entitled to copyright protection as to the design of its shoulder pads. (Dkt. 258 at 19-20)

CHI:2730029.2

**CHS RESPONSE:** **DISPUTED.** CHS admits the Court issued a ruling containing the above language. CHS disputes GW's characterization of the above ruling. The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

In light of newly discovered evidence, including the Copyright Office's rejection and Dr. Grindley's report and testimony on the issue, the Court has discretion to revisit its prior ruling on whether the disproportionally large size and shape of GW's shoulder pads should be afforded copyright protection. *Anderson v. Montgomery Ward & Co., Inc.*, 704 F.Supp. 162, 163 (N.D. Ill. 1989) ("when a party can show good reason for having failed to adduce such [new evidence] in its argument on the original [summary judgment] motion, the court is empowered to review this material, and, if necessary, reverse itself"); *Buckley ex. rel. Douglas v. Mount Sinai Hosp. Medical Center*, 2006 WL 2460596, at *5 (N.D. Ill. 2006 Aug. 21, 2006) (finding the law of the case doctrine did not apply and taking "a fresh look at the strength" of the claim "in light of the full factual record" where new evidence had been presented).

14. The Court has previously analyzed the copyrightability of Games Workshop's Tactical Space Marine shoulder pad, which is the iconic Space Marine shoulder pad with the surface ornamentation of a specific wide arrow pointing upward in the center of the pad. (Dkt 258 at 20-21). The Court stated:

> The Court likewise rejects Chapterhouse's contention that other GW shoulder pad designs are ineligible for copyright protection. Chapterhouse contends that for GW's products in entries 48, 50, and 56 on the Claim Chart, the only similarities between the parties' works are common geometric shapes— such as an "X" or a chevron—that are in the public domain and are not copyrightable. "It is true that common geometric shapes cannot be copyrighted." Kelley v. Chicago Park Dist., 635 F.3d 290, 303 (7th

Cir. 2011). Yet although GW could not base its copyright claim on a depiction of an "X" or a chevron alone, its depiction of that otherwise-common element affixed on an original, creative shoulder pad with a distinctive color scheme is sufficient to satisfy the originality requirement. See Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 207 (3d Cir. 2005) ("When an author combines [otherwise non-protected] elements and adds his or her own imaginative spark, creation occurs, and the author is entitled to protection for the result."); Tufenian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 134 (2d Cir. 2003) ("[T]he defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art . . . are considered in relation to one another."). Chapterhouse's motion for summary judgment on the basis that GW's shoulder pads are not copyrightable is therefore denied. The Court's finding resolves this issue for entries 4–7, 12–13, 19–20, 46–48, 50–52, 56–62, 64–65, and 101–02 on the Claim Chart. (*Id.*)

**CHS RESPONSE:** **DISPUTED.** CHS admits the Court issued a ruling containing the above language. CHS disputes GW's characterization of the above ruling. The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

In light of newly discovered evidence, including the Copyright Office's rejection and Dr. Grindley's report and testimony on the issue, the Court has discretion to revisit its prior ruling on whether the disproportionally large size and shape of GW's shoulder pads should be afforded copyright protection. *Anderson v. Montgomery Ward & Co., Inc.*, 704 F.Supp. 162, 163 (N.D. Ill. 1989) ("when a party can show good reason for having failed to adduce such [new evidence] in its argument on the original [summary judgment] motion, the court is empowered to review this material, and, if necessary, reverse itself"); *Buckley ex. rel. Douglas v. Mount Sinai Hosp.*

*Medical Center*, 2006 WL 2460596, at *5 (N.D. Ill. 2006 Aug. 21, 2006) (finding the law of the case doctrine did not apply and taking "a fresh look at the strength" of the claim "in light of the full factual record" where new evidence had been presented).

15.     In the prior phase of this case, the Court thus held as copyrightable the Space Marine shoulder pad, by itself, and also copyrightable when combined with various icons, such as Tactical, Assault, Devastator, among others. (Dkt. 258 at 19-21). The relevant Chapterhouse products these rulings covered were products 4-7, 12-13, 19-20, 46-48, 49, 50-52, 56-62, 64-65, and 101-02. (*Id*., Moskin Decl. Ex. 10, Copyright Chart 1st Phase at products 4-7, 12-13, 19-20, 46-48, 49, 50-52, 56-62, 64-65, and 101-02).

**CHS RESPONSE:     DISPUTED.**  CHS disputes GW's characterization of the Court's ruling. The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected.  Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads."  Dkt. No. 258 at 20 (emphasis added).

In light of newly discovered evidence, including the Copyright Office's rejection and Dr. Grindley's report and testimony on the issue, the Court has discretion to revisit its prior ruling on whether the disproportionally large size and shape of GW's shoulder pads should be afforded copyright protection.  *Anderson v. Montgomery Ward & Co., Inc.*, 704 F.Supp. 162, 163 (N.D. Ill. 1989) ("when a party can show good reason for having failed to adduce such [new evidence] in its argument on the original [summary judgment] motion, the court is empowered to review this material, and, if necessary, reverse itself"); *Buckley ex. rel. Douglas v. Mount Sinai Hosp. Medical Center*, 2006 WL 2460596, at *5 (N.D. Ill. 2006 Aug. 21, 2006) (finding the law of the case doctrine did not apply and taking "a fresh look at the strength" of the claim "in light of the full factual record" where new evidence had been presented).

16.     The new Chapterhouse products subject to Chapterhouse's motion, products 146-48, 151-52, 155-57, and 163 (Br. At 1), are accused of infringing the same Games Workshop

Space Marine shoulder pad designs the court has already found copyrightable, such as the basic Space Marine shoulder pad and the Tactical Space Marine shoulder pad. (Moskin Decl. Ex. 11, Copyright Chart 2nd Phase at products 146-48, 151-52, 155-57, and 163).

**CHS RESPONSE:** **DISPUTED.** CHS disputes GW's characterization of the Court's ruling. The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

In light of newly discovered evidence, including the Copyright Office's rejection and Dr. Grindley's report and testimony on the issue, the Court has discretion to revisit its prior ruling on whether the disproportionally large size and shape of GW's shoulder pads should be afforded copyright protection. *Anderson v. Montgomery Ward & Co., Inc.*, 704 F.Supp. 162, 163 (N.D. Ill. 1989) ("when a party can show good reason for having failed to adduce such [new evidence] in its argument on the original [summary judgment] motion, the court is empowered to review this material, and, if necessary, reverse itself"); *Buckley ex. rel. Douglas v. Mount Sinai Hosp. Medical Center*, 2006 WL 2460596, at *5 (N.D. Ill. 2006 Aug. 21, 2006) (finding the law of the case doctrine did not apply and taking "a fresh look at the strength" of the claim "in light of the full factual record" where new evidence had been presented).

**Chapterhouse's New Expert on Military History, Mr. Grindley**

17.     Despite Chapterhouse's two prior experts (one on military history and one on science fiction history), who both had a chance to comment on Games Workshop's design for its Space Marine shoulder pad, Chapterhouse has now retained a third purported expert, Mr. Grindley, to opine on Games Workshop's design for its Space Marine shoulder pad. (CHS Cooper Decl. Ex. 3).

**CHS RESPONSE:** Each statement is irrelevant to any issue in this case. FRE 402. CHS admits that Dr. Grindley is an expert that has issued an opinion in this case.

18.     Chapterhouse's prior expert admitted that looking through all of the shoulder pads he identified from prior history, he did not see any shoulder pads with any insignia or design on them. (Moskin Decl. Ex. 12, Brewster Tr. at 137:22-138:2). He was unable to point to anywhere in military history where emblems or designs are applied to shoulder pads. (*Id*. at 138:3-6). Furthermore, while Chapterhouse's expert testified that he had found certain decorative elements (not on shoulder pads) in prior military history (such as griffins, lions, scales, etc.), he was unable to express any opinion on whether any of Games Workshop's particular combinations of decorative elements were present or common in prior military history. (*Id*. at 165:5-166:17). He even concluded that in his experience "applications of these designs to certain things like shoulder pads is not common in military history." (*Id*. at 166:18-23).

**CHS RESPONSE:**     **DISPUTED**.  Each statement is irrelevant to any issue in this motion. FRE 402.

The first sentence is incomprehensible. That CHS's expert did not see such symbols applied specifically to shoulder pads is irrelevant to any issue in this case. FRE 402. GW, which bears the burdens of production and persuasion on each element of its copyright case, cannot place the burden on defendant to prove a negative. CHS's products are not substantially similar to the protectable elements of any of GW's alleged works. To the extent they depict similar ideas, that is not copyright infringement, for "[n]o author may copyright his ideas." *Feist Pubs., Inc. v. Rural Television Serv. Co.*, 499 U.S. 340, 344-45 (1991) (citation and quotation marks omitted). To the extent (if any) that both CHS's products and GW's alleged works depict unprotectable, abstract ideas, devoid of reference to any particularized expression, that is not the basis for a claim of copyright infringement. After filtering out unprotectable elements, the only similarities (if any) are such unprotectable ideas.

In particular, CHS objects to the following quoted statements:

- "he did not see any shoulder pads with any insignia or design on them" – **disputed**: misrepresents the testimony of Chapterhouse's expert, who stated:

    Q.   And all of the shoulder pads we looked at that you identified from prior history, did you see any of those shoulder pads with any insignia or design on them?
    A.   Not to my recollection, no.

Brewster Dep. at 137:22 – 138:2 (Dkt. 213-4, GW's Ex. 5).

- "He was unable to point to anywhere in military history where emblems or designs are applied to shoulder pads" – disputed: misrepresents the testimony of Chapterhouse's expert, who stated only that his report did not contain such examples. Id.

- "he was unable to express any opinion on whether any of Games Workshop's particular combinations of decorative elements were present or common in prior military history" – disputed: misrepresents the testimony of Chapterhouse's expert, who was not asked and did not address the question of "particular combinations of decorative elements":

> Q.   Which decorative elements do you cite?
> A.   Birds of prey, eagles, griffins, lions, crowns and wreaths and hands and arrows, spears, scales, serpents.  They are all cited in the first section, and it goes on to geometric forms.  Do you want me to continue?
> Q.   I want you to identify which design elements you believe are common in military history.
> A.   Arrows, yes.  Arrows and chevrons, skulls and cruciform designs, various forms of crosses, the use of gears and Roman numerals.
> Q.   And is that the extent of your opinion on what design elements are common in military history?
> A.   That's the extent of those elements that I encountered while viewing the Workshop binder.
> Q.   So those are the only design elements you are commenting on in your expert report?
> A.   Correct.
> Q.   Are you expressing -- strike that.
>      One of the examples you identified was a hand.
> A.   Yes.
> Q.   Would you agree that there are various ways you could depict the hand in a design?
> A.   Certainly.
> Q.   Are you expressing anywhere in your expert report that certain designs of a hand are common in military history?
> A.   No.
> Q.   And would the same be true for all the design elements you listed that while that concept might be common, you are not commenting on whether

> any particular design or expression of that concept
> is common in military history?
>     A.    Correct.

Brewster Dep. at 165:5 – 166:17 (*id.*).

- "in his experience 'applications of these designs to certain things like shoulder pads is not common in military history.'" – **disputed:** irrelevant (FRE 402), lacks foundation (FRE 602). There is  no foundation for the proposition that any of GW's designs are applied to shoulder pads. Furthermore, the surface to which a design is applied is irrelevant to analyzing substantial similarity.

- "Chapterhouse has been unable to identify anything it used for its so-called "independent creation" except for identifying random isolated elements, such as a lion or a griffin." – **disputed:** lacks foundation (FRE 602); misrepresents the record. The cited document reads in pertinent part:

> . . . Chapterhouse draws inspiration in varying degrees from many different disciplines and sources, including, but not limited to mythology, military history, fiction, film, videogames, physics, biology, gaming, and many other disciplines and areas of study and cultural expression. Chapterhouse notes that the Internet provides a wealth of informational and inspirational material for all creative endeavors, and that Chapterhouse performs Internet and other research when creating its products.
>
> Specifically, Chapterhouse responds that the Dungeons and Dragons hammer weapons provided inspiration for Chapterhouse's war hammers. The designs for the Celestial Lions were inspired by photographs submitted by a customer, one of a public sculpture with the head of a lion and the body of a fish, and the other of a lion in silhouette. Chapterhouse's products that look like circular-saw blades were based on actual circular saw blades. The snake on some of the Chapterhouse products was based on an image of classical Greek art. The Star Fox logo on some of Chapter house's products is based on a fan-created design. The lashwhips, boneswords, and the mycetic spore took inspiration from the art of HR Giger, in particular the art direction for the Alien movies. Chapterhouse consulted the tyranid codex for the Tervigon Conversion Kit. Chapterhouse's.sculptor on the project also consulted Games Workshop's Carnifex model while developing the Tervigon conversion kit, to ensure proper fit and alignment of the kit with the Carnifex model. The dragon/salamander images Chapterhouse used came from Google Images searches on words like "dragon." Chapterhouse asked a concept artist to draw sketches of its wolf's head icon, and to adorn the icon with Nordic-style runes. The designs for the scarab and starburst shoulder pads were inspired by Egyptian art. Chapterhouse's mantis products began as a commission from a customer - the customer provided a photograph of a particular species of mantis, along with line drawings based on tracings from the photograph.

GW's Ex. 95 (Dkt. 213-19) (CHS Second Supp. Response to GW First Set of Interrogatories [Response to Rog 2]).

19. Mr. Grindley was not made aware that the Court had previously analyzed the copyrightability of the Space Marine shoulder pad in light of the prior existing works identified by Chapeterhouse's prior experts. (Moskin Decl. Ex. 2, Grindley Tr. at 117:17-118:24). Thus, Mr. Grindley had no knowledge concerning the features or combination features of the Space Marine shoulder pad that the Court identified as copyrightable. (*Id.*)

**CHS RESPONSE:**     **DISPUTED**.  Each statement is irrelevant to any issue in this motion. FRE 402.  CHS admits that Dr. Grindley was not made aware of the Court's prior ruling, but disputes GW's characterization above.

Dr. Grindley testified that he believed he should reach his expert opinion independent of prior rulings and explained, "rulings I would imagine can be based on legal precedence or the ability to get evidence in or not into the record or what have you, so a ruling might not have anything to do as far as I'm concerned with the reality of the thing."  Dkt. 302-5, Moskin Decl. Ex. 2 at 119:18-23.

20. Mr. Grindley admitted that he was unable to find any prior military shoulder pads with the same combination of design choices as the Space Marine shoulder pad, such as an oversized shoulder pad, a quarter ovoid shape, and a banding around the edge. For example, Mr. Grindley testified:

> Q. So you're unable to find any prior military shoulder pads that
> had those same design choices as Games Workshop?
> A. Correct. (Moskin Decl. Ex. 2, Grindley Tr. 237:7-10)

**CHS RESPONSE:**  Each statement is irrelevant to any issue in this case.  FRE 402. Combinations of two simple, unprotectable symbols, such as a chevron, arrow, or X symbol, together with a Roman numeral, or a sawblade in combination with a simple jewel, are also unprotectable, since "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003); Copyright Compendium II § 503.02(a)-(b) ("[R]egistration cannot be

based upon . . . a simple combination of a few standard symbols. . . [or] the mere bringing together of two or three standard forms or shapes with minor linear or spatial variations.").

The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large proportional size of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work.

21.     When asked about Mr. Grindley's knowledge of any prior designs of shoulder pads similar to Games Workshop's, including a shoulder pad that is "very large, extending all the way to the elbow" (Moskin Decl. Ex. 2, Grindley Tr. at 216:23-24) he likewise eventually conceded:

> ...also with the caveat that the general description of the shoulder pads that you have provided differs substantially to our previous discussion of them, I would have to say yes, I was unable to provide you with any particular image that satisfied that full list of criteria.. (*Id*. at 218:3-8.)
>
> *        *        *
>
> Q: So therefore, you are unable to state an expert opinion that that combination is unoriginal?
> A. Yes.
> Q. Yes, you agree with my statement?
> A. Yes, I do. (*Id*. at 219:19-24.)

**CHS RESPONSE:** Each statement is irrelevant to any issue in this case. FRE 402. Combinations of two simple, unprotectable symbols, such as a chevron, arrow, or X symbol, together with a Roman numeral, or a sawblade in combination with a simple jewel, are also unprotectable, since "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003); Copyright Compendium II § 503.02(a)-(b) ("[R]egistration cannot be based upon . . . a simple combination of a few standard symbols. . . [or] the mere bringing together of two or three standard forms or shapes with minor linear or spatial variations.").

The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work.

22. Dr. Grindley testified that his report offered no opinion whether the Games Workshop designs constituted an original combination of elements. (Moskin Decl. Ex. 2, Grindley Tr. at 169:20-170:13.) Indeed, he admitted as follows:

CHI:2730029.2

Q. In searching for shoulder pads used on future infantry warriors, a human wearing a suit of power armor, you were not able to identify any shoulder pads that had those three common design elements of the Games Workshop, size, shape and banding?
A. Correct. (*Id.* at 264:14-20.)

**CHS RESPONSE:** Each statement is irrelevant to any issue in this case. FRE 402. Combinations of two simple, unprotectable symbols, such as a chevron, arrow, or X symbol, together with a Roman numeral, or a sawblade in combination with a simple jewel, are also unprotectable, since "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003); Copyright Compendium II § 503.02(a)-(b) ("[R]egistration cannot be based upon . . . a simple combination of a few standard symbols. . . [or] the mere bringing together of two or three standard forms or shapes with minor linear or spatial variations.").

The Court has never found that each down-to-the-millimeter measurement of the GW shoulder pad is protected. Rather, it found generally that "[t]he *unusually large proportional size* of the shoulder pads as compared to the Space Marine's head . . . is a creative addition to the common shoulder pads sometimes worn by real-life soldiers in battle," which "entitled [GW] to copyright protection as to the design of its shoulder pads." Dkt. No. 258 at 20 (emphasis added).

Dr. Grindley's report and testimony thoroughly demonstrate that—while potentially original when compared to armor worn by real-life soldiers—the design element of unusually large proportional size is not minimally creative for shoulder pads in the science fiction universe and was not conceived or originally expressed by GW. Dkt. 289-6, Cooper Decl. Ex. 3 at ¶ 35.

GW's further statements are immaterial, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work.

23.     Neither Chapterhouse nor Dr. Grindley contend that any of Games Workshop's designers copied or relied upon any of the references identified by Dr. Grindley. (Moskin Decl. Ex. 2, Grindley Tr. at 85:19-86:1).

**CHS RESPONSE:**  Each statement is irrelevant to any issue in this case.  FRE 402.  GW's

statements are immaterial, because they do nothing to establish that the *disproportional size* of

those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that

GW did not copy an identical shoulder pad in a pre-existing work.

GW's statements are immaterial to the pending motion, because they do nothing to

establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal*

*creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing

work.  But in light of the fact that oversized shoulder pads are common to the science fiction

genre, as demonstrated by Dr. Grindley and unchallenged by GW, the large proportional size of

GW's shoulder pads is not a creative addition added by GW, irrespective of the precise

measurements of the GW shoulder pads.

24.     Dr. Grindley's view of originality is an incorrect understanding that if a design has any connection to, basis in, or inspiration from any prior work it is not original. (Moskin Decl. Ex. 2, Grindley Tr. at 143:17-22). Thus, Dr. Grindley testified that it was his expert opinion that all possible expressions of a future infantry warrior, such as a Space Marine with a shoulder pad, had been exhausted around 1990 after the release of the movie Alien. (*Id.*, Grindley Tr. at 139:20-140:24, 141:20-142:7). Dr. Grindley further says it is impossible for him to separate the idea of a future military soldier from any particular expressions of that concept. (*Id.*, Grindley Tr. at 124:5-125:7).

**CHS RESPONSE:**  Each statement is irrelevant to any issue in this case.  FRE 402.  GW also

mischaracterizes Dr. Grindley's testimony.  Dr. Grindley stated clearly that he is "not an expert

in copyright law" when GW counsel asked whether he was offering "any expert opinions

whether any Games Workshop work lacks originality in the copyright sense."  Dkt. 289-10, Ex.

4, Grindley Dep. Tr. at 143:13-16.  In addition, Dr. Grindley specifically testified that he *was not*

going to "express any expert opinion that all forms of expression were exhausted at any date

prior to 2000." *Id.* at 137:7-14.  Dr. Grindley's speculation referenced above was offered only in response to GW counsel's express prodding to do so, over CHS counsel objection.  Finally, GW's last sentence above truncates the discussion and mischaracterizes Dr. Grindley's opinion. *See id.* at 125:22-126:7) (Q: So in your mind there's not a way to distinguish an idea from the expression of an idea?  A:  That's not what I said.  In my opinion, it's the expression of a thing and the thing itself are two separate entities and the individual expressions of an actual thing may, you know, superficially seem marginally different but, in fact, are not because they are both sort of derivations of that other thing.)  This is entirely consistent with his expert opinion that he "was not able to identify any *significant* similarities" between the GW and CHS products.  *Id.* at 42:9-13 (emphasis added).

GW's statements are immaterial to the pending motion, because they do nothing to establish that the *disproportional size* of those shoulder pads satisfies the requirement of *minimal creativity*; they only go to show that GW did not copy an identical shoulder pad in a pre-existing work.  But in light of the fact that oversized shoulder pads are common to the science fiction genre, as demonstrated by Dr. Grindley and unchallenged by GW, the large proportional size of GW's shoulder pads is not a creative addition added by GW, irrespective of the precise measurements of the GW shoulder pads.

25.     Chapterhouse has never asserted as one of its 24 affirmative defenses a defense of *scènes à faire*. (Dkts. 45, 150, and 266). Regardless, there is no evidence from Dr. Grindley or otherwise to support a defense that the use of enormous shoulder pads covering the entire upper arm of a character, having a quarter ovoid shape, with a rim along the edge are so common as to be necessary elements of a futuristic space-age warrior. In fact, Dr. Grindley testified to the opposite:

> Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to make to make a future infantry soldier?
> A. Correct.

Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?

A. Yes, they would.

Q. And there's no standard ways that they would have to make it?

A. No, there isn't.

Q. There's a virtual unlimited amount of ways?

A. Yes.

Q. And you're not identifying any characteristics that you believe are indispensible?

A. No. (Moskin Decl. Ex. 2, Grindley Tr. 266:10-267:5)

**CHS RESPONSE:** **DISPUTED.** *Scènes à faire* is not an affirmative defense. *Liberty Am. Ins. Group, Inc. v. WestPoint Underwriters, LLC*, 199 F. Supp. 2d 1271, 1290 (M.D. Fla. 2001) (rejecting argument that merger and *scenes a faire* are "affirmative defenses" and stating that "[t]he important point . . . is that [the] analysis is necessary . . . [as] a means to a very important end: filtering out all unprotectable material") (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1545-46 (11th Cir. 1996)); *Incredible Techs. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011-12 (7th Cir. 2005) (noting *scenes a faire* doctrine is a "specific limitation[] to copyright protection"); *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 616-17 (7th Cir. 1982) (distinguishing idea from expression and treating "[c]ertain expressive matter . . . as *scenes a faire* [which] receive protection only from virtually identical copying").

## Copyright Office

26.     The Copyright Office has registered Games Workshop's Flesh Tearer shoulder pad, consisting of the iconic Space Marine shoulder pad combined with the surface ornamentation of the Flesh Tearer icon (a saw blade with a drop of blood on it). (Moskin Decl. Ex. 13).

**CHS RESPONSE:** **DISPUTED.** CHS admits that the Copyright Office has registered GW's Flesh Tearer Shoulder Pads. CHS disputes that the registration issued based on the size and shape of the pad as opposed to the surface ornamentation as depicted in color.

The Copyright Office has expressly found the size and shape of the shoulder pads "too minimal" and "lack[ing] the authorship necessary to support a copyright claim." Dkt. 289-10, Cooper Decl. Ex. 5 at 3, Ex. 7 at GW0016843. The Copyright Office's refusal to register GW's shoulder pad works as to their underlying size and shape is entirely consistent with the fact that GW obtained a successful registration for the images affixed on top of the shoulder pad itself.

The Copyright Office has made clear that, when it believes the artwork affixed to the underlying shoulder pad is protectable, as it did with the Crimson Fists Shoulder Pads, a registration may issue. *See* Dkt. 301-6, Moskin Decl. Ex. E at GW0018132 ("2-D artwork and sculpture can remain as the artwork on the shoulder pads is sculptural in nature."). In the case of the Assault Squad Shoulder Pads, therefore, registration was refused because the Copyright Office necessarily determined that (1) the size and shape of the design did not merit copyright protection *and* (2) the common arrow ornamentation was not a protectable element. By contrast, the Copyright Office apparently determined that the surface ornamentation on the Flesh Tearer Shoulder Pad was registerable, and registered the works. The different approaches by the Copyright Office further confirm that it is the surface art itself, and not the size and shape of shoulder pads, that the Copyright Office viewed as protectable.

CHI:2730029.2

Dated: March 25, 2013             Respectfully submitted,

/s/ Bryce A. Cooper


Jennifer A. Golinveaux (CA Bar No. 203056)
Thomas J. Kearney (CA Bar No. 267087)
    WINSTON & STRAWN LLP
    101 California Street
    San Francisco, CA 94111-5802
    Phone: (415) 591-1000
    Fax: (415) 591-1400
    jgolinveaux@winston.com
    tkearney@winston.com

Imron T. Aly (IL Bar No. 6269322)
Bryce A. Cooper (IL Bar No. 6296129)
    WINSTON & STRAWN LLP
    35 West Wacker Drive
    Chicago, IL 60601-1695
    Phone: (312) 558-5600
    Fax: (312) 558-5700
    ialy@winston.com
    bcooper@winston.com

Julianne M. Hartzell (IL Bar No. 6275093)
Sarah J. Kalemeris (IL Bar No. 6303644)
    MARSHALL, GERSTEIN & BORUN LLP
    233 S. Wacker Drive
    Willis Tower Suite 6300
    Chicago, IL 60606
    Phone: (312) 474-6300
    Fax: (312) 474-0448
    jhartzell@marshallip.com
    skalemeris@marshallip.com

## <u>CERTIFICATE OF SERVICE</u>

I, Bryce A. Cooper, an attorney, hereby certify that on March 25, 2013, I caused to be filed electronically the foregoing DEFENDANT CHAPTERHOUSE STUDIOS LLC'S REPLY TO PLAINTIFF'S RESPONSES TO CHAPTERHOUSE'S STATEMENT OF MATERIAL FACTS AND CHAPTERHOUSE'S RESPONSE TO GAMES WORKSHOP'S ADDITIONAL FACTS with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.


_____/s/  Bryce A. Cooper_____