IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES<br><br>Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly<br>Hon. Jeffrey T. Gilbert |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT IN PART**

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-3229
Email: jmoskin@foley.com

Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: jkeener@foley.com

*Attorneys for Plaintiff Games Workshop Limited*

4853-1611-5731.3

Games Workshop Limited ("Games Workshop"), submits this reply in further support of its motion for summary judgment in part against defendant Chapterhouse Studios LLC ("Chapterhouse").

## I. Preliminary Statement

In opposing Games Workshop's motion, Chapterhouse concedes that it is withdrawing fifteen of its 24 affirmative defenses.[1] For purposes of this motion, Games Workshop has not challenged Chapterhouse's 18th defense of trademark nominative fair use, and would concede that the 5th defense of de minimis use is essentially just an element of plaintiff's own burden. Of the remaining 7 defenses[2], Chapterhouse makes no effort to defend or justify three of those

---

[1] The 15 affirmative defenses for which Chapterhouse concedes summary judgment can be granted are:
    2 - subject-matter jurisdiction over claims to enforce U.S. copyrights for which GW has not obtained, or has not pleaded ownership of, copyright registrations
    8 - failure to join indispensable parties
    10 - statutes of limitations
    11 - laches
    12 - res judicata
    13 - estoppel
    14 - copyright misuse
    15 - the use of the Lanham Act to impede free and fair competition
    16 - actions that violate any unfair competition laws
    17 - unclean hands
    19 – abandonment of alleged marks
    20 – the First Amendment to the United States Constitution
    21 - failure to mitigate damages
    22 - statutory damages are limited or barred by the United States Constitution
    24 - copyright or trademark registrations were obtained through fraud on the Copyright Office or the Patent and Trademark Office

[2] The remaining seven defenses subject to this motion are:
    1 - failure to state a claim
    3 – lack of standing due to ownership (copyright claims)
    4 - fair use (copyright claims)
    6 - independent creation (copyright claims)
    7 - state law claims preempted by federal law

defenses (1 - failure to state a claim; 6 - independent creation[3], and 23 - good faith as a defense to treble damages). As shown below, Chapterhouse has failed to identify any genuine grounds to support the remaining four defenses addressed in its opposition (copyright ownership, copyright fair use, license and preemption). Its remaining arguments concerning the admission by its own 30(b)(6) witness that Games Workshop has priority of use in commerce of 87 of its word trademarks and icons and separate admission of prior rights in 8 of its Space Marine chapter icons fails to address the actual argument presented by Games Workshop. Games Workshop is not seeking a ruling as to the validity or enforceability of these 95 marks but only as to prior use in commerce. Chapterhouse's deposition testimony in this regard is clear. (However, because the rough transcript available at the time was not entirely clear, a cleaner copy of the final transcript is submitted herewith as Moskin Decl. Ex A.)

Although simply a technical issue, it must also be noted that Chapterhouse's opposition papers were filed and served (via ECF) on March 15, after the March 14 deadline.

## II.   Argument

**1.   Defendant Lacks Standing To Challenge Games Workshop's Ownership of the Copyrights At Issue.**

Despite several pages of argument, Chapterhouse concedes that there is no dispute as to Games Workshop's ownership of all of the copyrights asserted in this case (including the one work by Adrian Smith as to which the Court's November 27, 2012 acknowledged a possible

---

    9 - consent, waiver, acquiescence or license
    23 – good faith as a defense to treble damages

[3] Although Chapterhouse's Rule 56.1 counterstatement refers to certain materials its designers allegedly considered in addition to Games Workshop's prior works, it cites no instance of any work of its own that was created independently – i.e. without any direct influence of prior Games Workshop works, all of which were obviously the primary if not exclusive points of reference for the companion products created by Chapterhouse.

2

4853-1611-5731.3

issue of fact) with the only exception being a drawing of a thunder hammer rendered by one Nick Coleman in 1991.

Although it has admittedly (and unfortunately) taken some time for Games Workshop to locate Mr. Coleman, it was not aware an assignment from him was missing (owing to the large number of individual former employees whose contributions are at issue), this unintended oversight having been called to its attention, Games Workshop has now located Mr. Coleman, who has stated his willingness to sign a confirmatory assignment. (Reply to CHS Additional Fact #2-3). He has also clarified his employment history, thus indicating by the timing of the creation of his two drawings (in 1989 rather than 1987 when he was working on a contract basis) that he was likely an employee at the relevant time anyway. (*Id.*) Although his schedule the last several days has not permitted Games Workshop to obtain the actual confirmatory assignment, it expects to have the assignment within days. (*Id.*) Although Games Workshop regrets the delay resolving any lingering doubts as to this one drawing, even resolving it now (before trial) would be less belatedly than in *Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586 (7th Cir. 2003), where the confirmatory assignment was not obtained until midway through the trial. Moreover, it is undisputed that Mr. Coleman has not challenged Games Workshop's rights in the drawings in 25 years since they were rendered, and it is undisputed that Chapterhouse has not received by assignment any right to stand in his shoes to challenge Games Workshop's ownership. Under *Billy-Bob Teeth,* Chapterhouse should not be permitted to raise ownership issues on behalf of an individual who himself does not contest that Games Workshop is the owner. Resolution of this question should now also remove any possible disputes in the case arising under English law and hence render unnecessary any expert testimony on issues of foreign law. (Games Workshop

3

will, of course, produce the confirmatory assignment from Mr. Coleman to Chapterhouse once it is in hand, and will gladly provide notice to the Court at the same time.)

> **2. Chapterhouse Admits Games Workshop Has Made Prior Use In Commerce Of Virtually All of The Trademarks At Issue In The Case.**

In response to Games Workshop's argument that Mr. Villacci admitted prior *use in commerce* of 87 of its claimed marks, Chapterhouse responds with unrelated arguments that Games Workshop has not raised. Games Workshop does not contend that Mr. Villacci admitted that each of the 87 marks is a valid trademark (Ch. Brf at 2) and is not asking the Court to rule that the subject marks are inherently distinctive or have acquired secondary meaning. Rather, Games Workshop's motion seeks only to resolve that each of the subject marks has been used in commerce before Chapterhouse commenced its alleged infringement. The issue is priority of use only; not validity or enforceability. Nor does Chapterhouse dispute its admission on its website of Games Workshop's priority of rights in eight Space Marine chapter logos,[4] Indeed, Mr. Villacci and Chapterhouse not only admitted as much at his deposition; it is undisputed that he has amassed an enormous collection of Games Workshop products that he purchased in the open market (See Dckt 243 at Ex. 136), and he has submitted no declaration in opposition to the present motion challenging priority or calling into question the admissions he made at his deposition.

Chapterhouse's admission is set forth very clearly in the transcript of Mr. Villacci, Chapterhouse's 30(b)(6) designee on the topics (*inter alia*) of its answers to the relevant

---

[4] The eight chapter logos in dispute are (i) Blood Ravens Icon; (ii) Celestial Lions Icon; (iii) Dark Angels Winged Sword Icon; (iv) Exorcist Skull Icon; (v) Howling Griffons Icon; (vi) Iron Snakes Icon; (vii) Chaos Space Marines 8-pointed Star, and (vii) Soul Drinkers Icon.

4

interrogatories and its selection of its own product names.[5] The question put to Mr. Villacci was very simple, namely whether Chapterhouse *contended* that "Chapterhouse started using in commerce – that is, selling products – using any of the names or icons listed [on Plaintiff's Deposition Exhibit 188] before Games Workshop had begun selling these products using these names or icons or had adopted these names or icons." (Reply to CHS Additional Fact #)  It is undisputed that over the next several pages of testimony he only identified the 20 claimed marks set forth in Games Workshop's motion.  (*Id.*)

It is also true that Mr. Villacci did not identify any of the claimed marks in issue as marks he contends he "developed" earlier than Games Workshop.  (Ch Brf at 2)  Rather, he admits that all of the claimed marks (not just the 95) were used in some manner by Games Workshop - at the very least in its fiction - before Chapterhouse commenced use of the same names and icons on its goods.  Instead, Chapterhouse only "contends" that it began using in commerce twenty of the claimed word marks and icons before Games Workshop.[6]  Although Games Workshop is prepared to submit at trial proof of its sales of the relevant products, Games Workshop is not seeking summary judgment on such issues now.

To cloud this simple issue of what Chapterhouse's 30(b)(6) witness admitted regarding Games Workshop's prior use in commerce, Chapterhouse suggests that Games Workshop is trying to rely on Chapterhouse's fair use defense as itself a form of admission.  Although Games

---

[5] A final copy of the deposition transcript is attached as Ex. A to the Supp. Moskin Decl.  Only the rough transcript was available at the time of Games Workshop's motion.

[6] For three of the marks, Mycetic Spore, Tervigon and Ymgarl, Games Workshop has also previously explained the basis in for its right to protect the marks based principles of unfair competition law and "analogous" use in commerce.  *Processed Plastic Co. v. Warner Commns, Inc.*, 675 F.2d 852 (7th Cir. 1982) and *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76 (2d Cir. 1981); *D. C. Comics, Inc. v. Powers*, 465 F. Supp 843 (S.D.N.Y. 1978).

5

Workshop indeed does believe the fair use defense is logically inconsistent with the separate prior use defense, Games Workshop took pains to try to clarify in its motion that it is not seeking summary judgment on this ground. If this was not sufficiently clear, Games Workshop confirms again that that is not a basis for its motion. Equally irrelevant is Chapterhouse's contention that a third party consented to its use of the "Chaos" icon. Even if Chapterhouse had produced evidence of such a license (or even identified the purported licensor), neither of which has it done, that unknown entity is not a party and such a jus tertii defense (nowhere stated among its affirmative defenses) would be of no avail. Rather, the only issue on which Games Workshop seeks summary judgment is that there should be no need to resolve at trial Games Workshop's prior use in commerce of the 87 marks Chapterhouse concedes under oath were used in commerce before it began referring to those marks to sell its own goods, and that there should be no dispute over Games Workshop's prior use in commerce of the "Space Marine chapters [and] Space Marine chapter logos," eight of which Chapterhouse evidently still wishes to challenge. Resolution of this undisputed issue now will help streamline the issues at trial.

### 3. 22 Of Defendant's 24 Affirmative Defenses Should Be Dismissed

#### a. Chapterhouse's Claim of Fraud on the Copyright or Trademark Offices Must Be Dismissed

Although Chapterhouse concedes there is no basis for a claim of fraud on the Copyright or Trademark Offices (and does not dispute that its pleading fails to meet the standards under Rule 9(b)), it suggests that at least as to one work (the Assault Squad shoulder pad) to the extent Games Workshop still seeks registration of this work, it does not abandon its fraud defense. However, the only factual basis for maintaining this defense is the incorrect (and irrelevant) assertion that Games Workshop submitted to the Copyright Office a copy of this Court's decision. (Brf at 6.) Laying aside the logical and legal puzzles understanding how a submission

6

of this Court's order could possibly be fraudulent, the undisputed fact is that the Copyright Office refused to receive the Court's decision and hence could not have relied upon it. (GW Facts ¶ 8.) Moreover, unless Games Workshop were to appeal the Copyright Office's initial denial of the registration before the April 4 deadline to do so, the matter rests in the hands of this Court, and no theory has been advanced by Chapterhouse to support a claim of fraud under the actual circumstances.

      b. <u>Chapterhouse's Defense of Copyright Fair Use Must Be Dismissed</u>

  Chapterhouse concedes that neither its Answer nor its response to Games Workshop's Interrogatories 8 (in the second phase) or 13 (in the first phase) identify any of the accused products that it might contend could be protected as a fair use. Instead, it now submits what is in effect a belated 46-page supplemental interrogatory response – after depositions have been concluded – that sets forth conclusory statements about 163 products. Even assuming Chapterhouse should now be permitted to raise entirely new grounds for a defense that it wholly ignored in its actual discovery responses for 22 months, Chapterhouse's opposition fails to address the actual substance of GW's contentions, instead raising straw-man arguments.

  Games Workshop has *not* argued that Chapterhouse's fair use defense should be dismissed simply because the works are all purely commercial (see CH Brf at 9), but rather because none of the products (each of which is also commercial) even purports to be for purposes of commentary, criticism, education, parody or any other recognized fair use purpose. Moreover, Chapterhouse's works are not simply commercial and not simply lacking in any recognized fair use purpose, but Chapterhouse uses the Games Workshop materials it relies on for inspiration for *exactly the same purpose* as Games Workshop does. Indeed, it sells its products in *direct competition* with Games Workshop to supersede demand for the Games Workshop originals. By definition the use is not fair. In reality, despite pages of argument, all

7

4853-1611-5731.3

that Chapterhouse in fact has asserted to support the defense is that some of its copying is de minimis (a separate defense as to which Games Workshop is not seeking summary judgment). Chapterhouse itself admits in its own brief (at p. 9, referring to *Campbell v. Acuff-Rose Music, Inc.*, *supra*, 510 U.S. 569, 579 (1994)) that to be transformative, a work must add something new for a different function, purpose or character than the original.[7] That is manifestly not true of any of the accused works, all of which simply borrow from Games Workshop's originals enough material to be immediately recognizable to customers of Warhammer or Warhammer 40,000 so as to profit from and trade on Games Workshop's success in making the game and the books as popular as they are. And Chapterhouse then sells its merchandise in competition with Games Workshop to a customer base that consists solely of fans of Warhammer 40,000.

Moreover, even on the narrow issue of commerciality, "The burden of proof is on the copier because fair use is an affirmative defense." *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003), citing *Campbell*, *supra*, 510 U.S. at 590. Chapterhouse has not identified any non-commercial uses for its copies.

Just so, although Chapterhouse cites *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006), where defendant's incorporated a part of plaintiff's fashion photograph into a new work, the use was deemed fair because it was "in furtherance of distinct creative or commercial objectives." Here, by contrast, no such distinct creative or commercial objectives have been shown. Indeed,

---

[7] Moreover the actual question presented in *Campbell* (truncated by Chapterhouse) was:

> …whether the new work merely 'supersede[s] the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.

*Campbell*, 510 U.S. at 579. Here the accused works both serve to supersede the originals and serve the exact same purpose as the originals.

8

*Blanch* noted expressly that defendant's "purposes in using Blanch's image are sharply different from Blanch's goals in creating it." 467 F.3d at 252.[8] The court there did also note that the commercial nature of the use is independently significant, stating: "'whether [the] use [in question] is of a commercial nature or is for non-profit education purposes' is an explicit part of the first fair-use factor. 17 U.S.C. § 107(1)." *Id*. at 253 (alteration in original). Moreover, the court stated quite bluntly the importance of identifying some genuine independent rationale for the borrowing: "The question is whether Koons had a genuine creative rationale for borrowing Blanch's image, rather than using it merely 'to get attention or to avoid the drudgery in working up something fresh.'" *Id*. at 255 (quoting *Campbell*, 510 U.S. at 580). Here, Chapterhouse has articulated no such purpose, and it is clear, viewing its entire collection of works (all of which are directed at the fan base that Games Workshop has developed with its imaginative universes) that its only purpose is to trade on that same base (whose members are familiar with the Warhammer 40,000 iconography and back-story) and avoid having to think up anything genuinely new.

Laying aside whether Chapterhouse's copying constitutes an infringement, there is no dispute it makes and sells its copies for exactly the same purposes for which Games Workshop creates and produces miniatures: so that they can be used by fans of Warhammer 40,000 (either for collection or to play the game). Once again, by definition, Chapterhouse's copying is not a fair use. Although Chapterhouse asserts in conclusory fashion that its shoulder pads add a new level of creativity and design, it does not begin to say what this new level is. In reality, it is undisputed that Chapterhouse used a digimeter to make exact copies of the original Space

---

[8] The court there noted Koons stated purpose: "'I want the viewer to think about his/her personal experience with these objects, products and images and at the same time gain new insight into how these affect our lives.'" *Id*. at 252.

4853-1611-5731.3

Marine shoulder pads for one and only one purpose: so that they can be affixed to genuine Games Workshop Space Marines in place of the shoulder pads the come with the models. Moreover, Games Workshop sells many replacement shoulder pads for its Space Marine figures (some of which, such as the Flesh Tearer shoulder pad and Assault Squad shoulder pad) have been very much in issue.[9] (The only other product Chapterhouse cites (its Large Ammo Belts for Heavy Weapons) Games Workshop's designated witness, Alan Merrett, conceded is not a copyright infringement. Should there be any doubt on this issue, Games Workshop will gladly stipulate to dismissal of any copyright claim regarding the product.

Hence, in answer to the question posed in *Campbell* whether the new work merely 'supersede[s] the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message, Chapterhouse has identified no such new purpose or different character. It has not even attempted to explain what is the new expression, meaning or message.

Regarding the nature of the work, Chapterhouse concedes there is nothing factual about Games Workshop's fictional universe or the characters and accessories from that fictional realm that Chapterhouse has copied. Instead, it merely points out that its latest expert has identified certain historical references having some similarity to some of Games Workshop's originals. Had Chapterhouse independently created any of its own works based simply on such historical references, it would be able to cite such references in support of an independent creation defense. However, the reality is that every one of Chapterhouse's works corresponds to something in the fictional worlds Games Workshop has created. None of Chapterhouse's designers have pointed

---

[9] As noted in GW's brief opposing reconsideration (Dkt 301 3 at n. 1), the Copyright Office has registered the Flesh Tearer and Salamanders Shoulder Pad designs, and has recently acknowledged that it will register another shoulder pad design, the Crimson Fist Shoulder Pad.

10

to any of the works found by Chapterhouse's new expert as works they were even aware of when designing the works at issue. Because Games Workshop's worlds are all unquestionably fictional, the "nature of the works" analysis supports summary judgment.

Although the nature of the works analysis focuses on the original, not the copy, it is puzzling to say the least that the best example Chapterhouse can cite as a defense is a Tru-Scale Space Marine product that the designer, Stephen Smith, openly advertised as a Space Marine on his website. (Moskin Decl. Ex. B.) Although Chapterhouse failed to have Mr. Smith preserve his design documents and failed to collect any such documents from him in response to the Court's discovery Order (see Smith Decl. Dkt. No. 278 -19), the fact that Chapterhouse came up with a few lines of purported "fiction" *after* the models were already created to coincide with the release of its copy of Games Workshop's Space Marine characters, does not make the copy anything other than a copy. Indeed, even Mr. Villacci admitted there was no actual fiction behind the two sentences in its promotional release, and his sketchy mention of a fictional Empress was plainly just a veiled reference to the Emperor in Warhammer 40,000. (Reply to CHS Additional Fact #19) Even Chapterhouse's purported fiction is a fiction.

As noted above, what Chapterhouse's argument regarding fair use really boils down to is Chapterhouse's assertion that its copying is (in respect of certain unspecified products) simply *de minimis*. To the extent this is true, Games Workshop will be unable to show infringement as to those works. However, Chapterhouse has not even attempted to identify as part of its fair use analysis, for which it bears the burden of proof, so much as a single work where it contends it took "no more than is reasonably necessary . . . to enable [it] to pursue an aim that the law recognizes as proper" *Chicago Bd. of Educ*, 354 F.3d at 629. As noted in Games Workshop's moving brief, "the third factor asks whether the amount and substantiality of the portion used *in*

11

*relation to the copyrighted work as a whole* "are reasonable in relation to the purpose of the copying") *Warner Bros. Entertainment Inc. v. RDR Books*, 575 F. Supp. 2d 513, 546 (S.D.N.Y. 2008).[10] Chapterhouse has not even attempted that analysis. Indeed, the only products Chapterhouse even mentions in this regard are its shoulder pads. (Brf at 13) However, Chapterhouse elsewhere admits that it used a digimeter to make exact copies of the Games Workshop originals, right down to the little indents on the back. Otherwise they would not fit on the originals and would not be useful in superseding the demand for such originals.

Again, by definition, because Chapterhouse's copying from Warhammer and Warhammer 40,000 has absolutely nothing to do with scholarship, criticism, education or even parody, but rather is simply intended to profit from the prior success of Games Workshop's fiction and miniatures for sale in direct competition with Games Workshop, such copying is not a fair use. Chapterhouse has not even identified the supposedly transformative purpose for which it engages in its copying. Under the circumstances, it would simply confuse a jury to permit consideration of whether there is anything "fair" about the copying in any relevant legal sense.

    c.    Chapterhouse's Defense of Preemption Should Be Dismissed

Chapterhouse's argument why Games Workshop's claim under the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 et seq., should be dismissed appears to be a theory in search of an affirmative defense. The offending conduct as specified in the statute all concerns conduct such as passing off, creating a likelihood of confusion; use of deceptive representations and so forth. 815 ILCS 510/2. None of these is an element of copyright infringement. Laying

---

[10] *Blanch* made exactly the same point: "The question is whether once he chose to copy 'Silk Sandals,' he did so excessively, beyond his 'justified' purpose for doing so in the first place – whether the use was 'reasonable in relation to the purpose of the copying.'" 467 F.3d at 257 (quoting *Campbell*, 510 U.S. at 586).

12

aside that neither Chapterhouse's Answer nor its response to Games Workshop's Interrogatories in the first of second phase identified any of the claims in suit that it might contend is preempted, much less any reason for preemption, to the extent there is any uncertainty, Games Workshop does not assert this claim to be duplicative of its copyright claims. Although it is clearly very similar to the federal trademark claims, that is not a reason to find it preempted – any more so than Games Workshop's other state law trademark and unfair competition claims, which Chapterhouse does not argue should be rejected. As such, the defense itself should be dismissed.

>    d.    <u>Chapterhouse's Defense Of License Should Be Dismissed</u>

Notwithstanding that Chapterhouse failed to identify any grounds for its ninth affirmative defense of license in its interrogatory answers in the first or second phases of the litigation, its new assertion that Games Workshop has consented to the claimed infringing conduct is based solely on a policy statement of Games Workshop's website that, on its face, is directed solely at non-commercial conduct. It is plainly inapplicable to Chapterhouse. Indeed, the policy statement attached as Exhibit S to Chapterhouse's motion is very explicit:

> **WHAT YOU CANNOT DO WITH GAMES WORKSHOP'S INTELLECTUAL PROPERTY**
> Please read the following in conjunction with the What you can do section above and the Specific Examples section below. Other than a few exemptions, Games Workshop is not obliged to let anyone use its IP at all (for example, it's a widely held misconception that you can freely make use of someone else's copyrights, without their permission, as long as it's for your own private use – this is currently not an automatic exemption to copyright), and accordingly we always insist that our IP is treated with the respect that we feel that it deserves.
>
> So, If you are using or want to use our intellectual property and you do not have a written license with us, you must not:
> - <u>Use Games Workshop's intellectual property in relation to any commercial activity</u> this includes, for example, paying a printer to print some flyers for you, obtaining sponsorship, or selling non-Games Workshop materials using our trademarks.
> \*    \*    \*
> - Use our intellectual property in relation to any third party products or third party intellectual property. (Reply to CHS Additional Fact #27)

As noted above in connection with Chapterhouse's copyright fair use defense, Chapterhouse does not dispute the purely commercial nature of its business. Because this policy statement is the only basis on which Chapterhouse relies for its previously unexplained affirmative defense of license, it plainly has no application to the commercial activity of Chapterhouse, which uses Games Workshop's intellectual property on third-party products – i.e., its own. The affirmative defense thus should be dismissed.

    e. <u>Chapterhouse's Remaining Affirmative Defenses Should Be Dismissed</u>

Other than as set forth above, Chapterhouse makes no effort to defend its 24 affirmative defenses. Although Games Workshop would concede that it must prove more than *de minimis* use as part of its own case in chief, the remaining boilerplate defenses should all be dismissed as Chapterhouse has made no attempt to articulate in its interrogatory answers in the first or second phases of this litigation; in its Answer to the Complaint or in its opposition to this motion any basis whatsoever for any of the other affirmative defenses. Having refused to identify any basis for these defenses, Chapterhouse should not be permitted to surprise Games Workshop at trial. Such boilerplate defenses should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the foregoing motion for summary judgment in part, together with such other and further relief as the court deems just and proper.

14

Dated: March 25, 2013

Respectfully submitted,
/s/ Jason J. Keener

Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: jkeener@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-3229
Email: jmoskin@foley.com

*Attorneys for Plaintiff*
*Games Workshop Limited*

15

4853-1611-5731.3

**CERTIFICATE OF SERVICE**

       I, Jason J. Keener, an attorney, hereby certify that on March 25, 2013, I caused to be filed electronically the foregoing PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT IN PART with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                         /s/ Jason J. Keener
                         Jason J. Keener