IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>CHAPTERHOUSE STUDIOS LLC<br><br>Defendant. | Civil Action No. 1:10-cv-08103<br><br>Hon. Matthew F. Kennelly<br>Hon. Jeffrey T. Gilbert |

**GAMES WORKSHOP'S RESPONSE TO
CHAPTERHOUSES' STATEMENT OF ADDITIONAL MATERIAL FACTS FOR
PLAINITFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56(c) and LR56.1, Games Workshop Limited replies as follows to Chapterhouse's Statement of Additional Material Facts submitted by Chapterhouse Studios LLC ("CHS").

**I.      Undisputed Material Facts**

**1.      Games Workshop identified Nick Coleman as the author of an illustration and description contained in the Warhammer 40,000 Compilation 1991.**

<u>RESPONSE:</u>  Games Workshop does not contest this fact.

**II.     Material Facts In Dispute**

**4.      For certain of its marks described by Games Workshop as "icons," despite the two year pendency of this litigation, the Court's acknowledgment of Games Workshop's failure to identify what it is claiming in November 27, 2012 Summary Judgment Order (Dkt. 258 at 28-29), and repeated requests from Chapterhouse, Games Workshop still has never identified the icons that it contends are at issue.**

<u>RESPONSE:</u>  Games Workshop contests this fact.  At Mr. Villacci's deposition, he was

shown Exhibit 188 containing Games Workshop's icons.  (Moskin Decl. Ex. A, Villacci Tr. 175:19-

182:12). Mr. Villacci recognized each of these icons. (*Id.*). Neither Chapterhouse nor Mr. Villacci has submitted any declaration purporting to contradict his testimony.

**8. Accused Products Nos. 146, 147, 148, 151, 152, 155, and 162 are allaged to have infringed based on the fact that they are designed to fit on or with Plaintiff's products.**

**RESPONSE:** Games Workshop contests this fact. These products are alleged to infringe by copying the exact dimensions of Games Workshop's original shoulder pad designs. This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. Chapterhouse has not identified any recognized fair use purpose (such as education, criticism, or commentary) for these products nor any purpose other than the precise purpose for which Games Workshop makes its corresponding goods.

**10. The Copyright Office refused to register the size and shape of the allegedly infringed shoulder pad because it "lacks the authorship necessary to support a copyright claim."**

**RESPONSE:** Games Workshop contests this fact in part. The Copyright Office declined to register one shoulder pad design but did not analyze any features of the design. This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. The Copyright Office also registered a similar shoulder pad design, the Court has previously ruled that the shape and dimensions of the design are copyrightable, and subsequent discovery has confirmed the originality of the design. (GW Response to CHS Motion for Reconsideration, Dkt. 301).

**11. The Works alleged to have been infringed by the accused products in ASUF 6 are largely factual in that they occur in nature or are part of the public domain.**

**RESPONSE:** Games Workshop contests this fact. The Court's November 27, 2012 ruling held that Games Workshop's Space Marine Shoulder Pad was an original combination of elements. Moreover, this statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. While there may be some historical antecedents having some general but legally

irrelevant similarity to the original design of a Space Marine Shoulder Pad, such a fact does not render the Space Marine nor its shoulder pad factual as a matter of law, nor the combination of such elements as unoriginal as a matter of law.

12. **Accused Products Nos. 2, 4-7, 9-14, 17-20, 23, 24, 46-62, 64, 65, 68, 69, 73-75, 78, 80, 101, 102, 137-141, 149, 150, 153, 154, and 156 are alleged to have infringed two-dimensional artwork or overall armor type rather than a specific product.**

RESPONSE: Games Workshop contests this fact. Chapterhouse has admitted it used a digimeter to copy the specific dimensions of Games Workshop's actual shoulder pad design, right down to the indents on the reverse side. (Moskin Decl. Ex. C, Vilacci Tr. 217-18)

13. **The works alleged to have been infringed by the accused products in ASUF 12 are largely factual in that they occur in nature or are part of the public domain.**

RESPONSE: Games Workshop contests this fact. The Court's November 27, 2012 ruling held that Games Workshop's Space Marine Shoulder Pad was an original combination of elements. Moreover, this statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. While there may be some historical antecedents having some general but legally irrelevant similarity to the original design of a Space Marine Shoulder Pad, such a fact does not render the Space Marine nor its shoulder pad factual as a matter of law, nor the combination of such elements as unoriginal as a matter of law.

14. **The allegedly infringing shoulder pads in ASUF 12 are a relatively miniscule portion of the Games Workshop artwork or product alleged to have been infringed.**

RESPONSE: Games Workshop contests this fact. The Court's November 27, 2012 ruling held that Games Workshop's Space Marine Shoulder Pad was an original combination of elements. Moreover, this statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. While there may be some historical antecedents having some general but legally irrelevant similarity to the original design of a Space Marine Shoulder Pad, such a fact does not

render the Space Marine nor its shoulder pad factual as a matter of law, nor the combination of such elements as unoriginal as a matter of law.

The statement is also irrelevant because as a matter of law, the amount of work taken for purposes of a fair use analysis must be assessed in terms of the claimed fair use purpose for which the copying has been done, not the size of the work itself. Chapterhouse has not identified any such fair use purpose at all (such as education, criticism, or commentary).

15. **The accused products in ASUF 12 are not stand-alone products but are products that complement the market for Games Workshop's products by enhancing existing models.**

**RESPONSE:** Games Workshop contests this fact. These products are alleged to infringe by copying the exact dimensions of Games Workshop's original shoulder pad designs. This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. Chapterhouse has not identified any recognized fair use purpose (such as education, criticism, or commentary) for these products nor any purpose other than the precise purpose for which Games Workshop makes its corresponding goods.

16. **Accused Products Nos. 35-37, 82, 90, 94, 103, 104, 106, 109, 111-114, 126, 129-131, 142, 143, 159 are not stand-alone products but are products that enhance other models by "converting" them into another form.**

**RESPONSE:** Games Workshop contests this fact. These products are alleged to infringe by copying the exact dimensions of Games Workshop's original shoulder pad designs. This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. Chapterhouse has not identified any recognized fair use purpose (such as education, criticism, or commentary) for these products nor any purpose other than the precise purpose for which Games Workshop makes its corresponding goods.

17. **These accused products in ASUF 16 are not stand-alone products but are products that complement the market for Games Workshop's products by enhancing existing**

**models.**

**RESPONSE:** Games Workshop contests this fact. These products are alleged to infringe by copying the exact dimensions of Games Workshop's original shoulder pad designs. This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. Chapterhouse has not identified any recognized fair use purpose (such as education, criticism, or commentary) for these products nor any purpose other than the precise purpose for which Games Workshop makes its corresponding goods.

**19. Chapterhouse has developed its own mythology for Accused Products 126, 142, 143.**

**RESPONSE:** Games Workshop contests this fact. That Chapterhouse came up with a few lines of purported "fiction" *after* the models were already created to coincide with the release of its copy of Games Workshop's Space Marine characters, does not make the copy anything other than a copy. Indeed, even Mr. Villacci admitted there was no actual fiction behind the two sentence in its promotional release, and his sketchy mention of a fictional Empress was plainly just a veiled reference to the Emperor in Warhammer 40,000 (Moskin Decl. Ex. A, Villacci Tr. 44:7-46-15)

**21. The works alleged to have been infringed by the accused products in ASUF 19 are largely factual in that they occur in nature or are part of the public domain.**

**RESPONSE:** Games Workshop contests this fact. The Court's November 27, 2012 ruling held that Games Workshop's Space Marine Shoulder Pad was an original combination of elements. Moreover, this statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. While there may be some historical antecedents having some general but legally irrelevant similarity to the original design of a Space Marine Shoulder Pad, such a fact does not render the Space Marine nor its shoulder pad factual as a matter of law, nor the combination of such elements as unoriginal as a matter of law.

**26.** **The shapes of these accused products in ASUF 25 that Chapterhouse is alleged to have copied are literal interpretations of elements that exist in nature and military history.**

**RESPONSE:** Games Workshop contests this fact. While there may be some historical antecedents having some general but legally irrelevant similarity to some isolated elements of the original design of Gaems Workshop's Kroxigor, it does not render the Kroxigor design factual as a matter of law and does not render the combination of such elements unoriginal as a matter of law.

**27.** **The Games Workshop website contains explicit authorization for certain IP-related activities, including use of Games Workshop's trademarks to talk about Games Workshop's own products.**

**RESPONSE:** Games Workshop contests this fact. The statement on Games Workshop's website to which Chapterhouse refers states on its face that it applies only to non-commercial use:

> **WHAT YOU CANNOT DO WITH GAMES WORKSHOP'S INTELLECTUAL PROPERTY**
> Please read the following in conjunction with the What you can do section above and the Specific Examples section below. Other than a few exemptions, Games Workshop is not obliged to let anyone use its IP at all (for example, it's a widely held misconception that you can freely make use of someone else's copyrights, without their permission, as long as it's for your own private use – this is currently not an automatic exemption to copyright), and accordingly we always insist that our IP is treated with the respect that we feel that it deserves.
>
> So, If you are using or want to use our intellectual property and you do not have a written license with us, you must not:
> - <u>Use Games Workshop's intellectual property in relation to any commercial activity</u> this includes, for example, paying a printer to print some flyers for you, obtaining sponsorship, or selling non-Games Workshop materials using our trademarks.
>                          \*  \*  \*
> - Use our intellectual property in relation to any third party products or third party intellectual property.

http://www.games-workshop.com/gws/content/article.jsp?catId=&categoryId=&section=&pIndex=3&aId=3900002&start=4&multiPageMode=true

**28.** **Accused Product No. 160 includes a number of elements that are distinct from the allegedly infringed Game Workshop product. Any alleged copying in Accused Product No.**

4827-1847-6051.1

6

**160 is minimal when compared with the entirety of the work.**

<u>RESPONSE:</u>  Games Workshop contests this fact.  One of the designers or the subject product admitted in email correspondence to Mr. Villacci that the Chapterhouse products was a Dark Eldar Heamonculous.  (Moskin Decl. Ex. D, Fiertek Tr: 185:1-186:1).  Moreover, the statement is also irrelevant because as a matter of law, the amount of work taken for purposes of a fair use analysis must be assessed in terms of the claimed fair use purpose for which the copying has been done, not the size of the work itself.  Chapterhouse has not identified any such fair use purpose at all (such as education, criticism, or commentary).

### III. Immaterial Facts

**2.  In its response to Chapterhouse's Interrogatory No. 37 seeking the names and employment dates of all listed designers who were Games Workshop employees at any time, Games Workshop did not identify Mr. Coleman as an employee or former employee.**

<u>RESPONSE:</u>  This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case.  Although it has admittedly (and unfortunately) taken some time for Games Workshop to locate Mr. Coleman, it was not aware an assignment from him was missing (owing to the large number of individual former employees whose contributions are at issue), this unintended oversight having been called to its attention, Games Workshop has now located Mr. Coleman, who has stated his willingness to sign a confirmatory assignment.  Although Games Workshop no longer possesses his employment records, he has also clarified his employment history, thus indicating by the timing of the creation of his two drawings (in 1989 rather than 1987 when he was working on a contract basis) that he was likely an employee at the relevant time anyway.  (Stevenson Decl. ¶ 2.)  Although his schedule the last several days has not permitted Games Workshop to obtain the actual confirmatory assignment, it expects to have the assignment within days.  Moreover, it is undisputed that Mr. Coleman has not challenged

Games Workshop's rights in the drawings in 25 years since they were rendered, and it is undisputed that Chapterhouse has not received by assignment any right to stand in his shoes to challenge Games Workshop's ownership.

**3.     On March 8, 2013, Games Workshop produced for the first time documents relating to the ownership of works created by Andrea Uderzo and Kari Christensen. Games Workshop has not produced any employment agreement, written assignment, or belated confirmatory assignment for Mr. Coleman's rights in the authored work.**

<u>RESPONSE:</u>  This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case.  Chapterhouse is not contesting the ownership of any works created by Andrea Uderzo and Karie Christensen.

.   Although it has admittedly (and unfortunately) taken some time for Games Workshop to locate Mr. Coleman, it was not aware an assignment from him was missing (owing to the large number of individual former employees whose contributions are at issue), this unintended oversight having been called to its attention, Games Workshop has now located Mr. Coleman, who has stated his willingness to sign a confirmatory assignment.  Although Games Workshop no longer possesses his employment records, he has also clarified his employment history, thus indicating by the timing of the creation of his two drawings (in 1989 rather than 1987 when he was working on a contract basis) that he was likely an employee at the relevant time anyway.  (Stevenson Decl. ¶ 2.)  Although his schedule the last several days has not permitted Games Workshop to obtain the actual confirmatory assignment, it expects to have the assignment within days.  Moreover, it is undisputed that Mr. Coleman has not challenged Games Workshop's rights in the drawings in 25 years since they were rendered, and it is undisputed that Chapterhouse has not received by assignment any right to stand in his shoes to challenge Games Workshop's ownership.

**5.     For certain alleged marks, such as assault cannon, empire, high elf, plasma,**

**jump pack, space marine, and jet bike, extensive third party uses and Games Workshop's own witnesses show that consumers recognize the term as a phrases that describe a generic category of goods, a descriptive term, or as something other than a source identifier for Games Workshop.**

RESPONSE: This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. For its trademark claims, Games Workshop is not asking the Court to rule that the subject marks are inherently distinctive or have acquired secondary meaning. Rather, Games Workshop's motion seeks only to resolve that each of the subject marks has been used in commerce before Chapterhouse commenced its alleged infringement. The issue is priority of use only; not validity or enforceability.

**6. Accused Products Nos. 21, 22, 97-100, 146-148, 151, 152, 155, 157, and 163 are alleged only to infringe the size and shape of the GW shoulder pad and are not alleged to have copied any other Games Workshop work.**

RESPONSE: This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. Chapterhouse has not identified any recognized fair use purpose (such as education, criticism, or commentary) for these products nor any purpose other than the precise purpose for which Games Workshop makes its corresponding goods.

**7. Each of these accused products identified in ASUF 6 is enhanced by a surface decorate that is not alleged to have infringed any other Games Workshop work.**

RESPONSE: This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. Chapterhouse has not identified any recognized fair use purpose (such as education, criticism, or commentary) for these products nor any purpose other than the precise purpose for which Games Workshop makes its corresponding goods.

**9. These accused products in ASUF are not stand-alone products but are products complement the market for Games Workshop's products by enhancing existing models.**

RESPONSE: This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case. Chapterhouse has not identified any recognized fair use purpose (such as

education, criticism, or commentary) for these products nor any purpose other than the precise purpose for which Games Workshop makes its corresponding goods.

**18.    The works alleged to have been infringed by the accused products in ASUF 16 are largely factual in that they occur in nature or are part of the public domain.**

**RESPONSE:**  This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case.  While there may be some historical antecedents having some general but legally irrelevant similarity to the original design of the subject products, it does not render the combination of such elements unoriginal as a matter of law.

**20.    Accused Products Nos. 126, 142, 143 includes a number of elements that are distinct from the allegedly infringed Games Workshop products.**

**RESPONSE:**  This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case.  Chapterhouse has not identified any recognized fair use purpose (such as education, criticism, or commentary) for these products nor any purpose other than the precise purpose for which Games Workshop makes its corresponding goods.  Merely adding some details that are slightly different from those in Games Workshop's original product is not a fair use.  Moreover, the designer of the products admits that they are simply meant to be more true to the artwork in Games Workshop's original publications than are Games Workshop's miniature figurines. (Moskin Decl. Ex. B, Smith Decl. at ¶ 2.)

**22.    Accused Products Nos. 1, 3, 31, 34, 43, 45, 66, 67, 76, 77, 79, 83, 87, 117, 119, 121, 128, 132-36, 158, 161, and 162 are not stand-alone products but are products that enhance other models.**

**RESPONSE:**  This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case.  Chapterhouse has not identified any recognized fair use purpose (such as education, criticism, or commentary) for these products nor any purpose other than the precise purpose for which Games Workshop makes its corresponding goods.

**23.     These accused products in ASUF 22 complement the market for Games Workshop's products by enhancing existing models.**

**RESPONSE:**  This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case.  Chapterhouse has not identified any recognized fair use purpose (such as education, criticism, or commentary) for these products nor any purpose other than the precise purpose for which Games Workshop makes its corresponding goods.

**24.     The works alleged to have been infringed by the accused products in ASUF 22 are largely factual in that they occur in nature or are part of the public domain.**

**RESPONSE:**  This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case.  While there may be some historical antecedents having some general but legally irrelevant similarity to the original design of the subject products, it does not render the combination of such elements unoriginal as a matter of law.

**25.     Accused Products Nos. 144 and 145 include a number of elements that are distinct from the allegedly infringed GW products.**

**RESPONSE:**  This statement is immaterial because, even if true, it has no bearing on any relevant issue in this case.  That there may be some small differences between Chapterhouse's copy of Games Worksho's Kroxigor and Games Workshop's original Kroxigor is irrelevant to the fair use inquiry as Chapterhouse has not identified any recognized fair use purpose (such as education, criticism, or commentary) for these products nor any purpose other than the precise purpose for which Games Workshop makes its corresponding goods.  The designer of the Kroxigor stated, "I fully admit GW sculpts were my inspiration."  (Moskin Decl. Ex. E, Lippman Tr. 124:18-22).

Dated: March 25, 2013                                     Respectfully submitted,

/s/  Jason J. Keener

Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone:  312.832.4500
Facsimile:  312.832.4700
Email:  jkeener@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone:  (212) 682-7474
Facsimile:  (212) 687-3229
Email:  jmoskin@foley.com

*Attorneys for Plaintiff*
*Games Workshop Limited*

**CERTIFICATE OF SERVICE**

   I, Jason J. Keener, an attorney, hereby certify that on March 25, 2013, I caused to be filed electronically the foregoing REPLY TO CHAPTERHOUSE'S STATEMENT OF ADDITIONAL MATERIAL FACTS with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                 /s/ Jason J. Keener
                 Jason J. Keener