**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>        Plaintiff,<br><br>        v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON<br>PAULSON d/b/a PAULSON GAMES<br><br>        Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly |

## PLAINTIFF'S OMNIBUS MOTION IN *LIMINE*

Dated:  March 27, 2013

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone:  (212) 682-7474
Facsimile:  (212) 687-3229
Email:  jmoskin@foley.com

Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone:  312.832.4500
Facsimile:  312.832.4700
Email:  jkeener@foley.com

*Attorneys for Plaintiff Games Workshop Limited*

4851-6823-0417.8

# TABLE OF CONTENTS

1.    **Defendant Should Be Precluded From Offering Evidence or Argument Regarding English Law** .................................................................. 1

2.    **Except As Expressly Permitted By The Court, The Experts Should Be Precluded From Offering Opinions Not Timely Disclosed in Their Reports.** ................................................................................................................ 2

3.    **Mr. Grindley Should Be Precluded From Offering Testimony Regarding The Size and Shape of the Space Marine Shoulder Pad.** .............. 6

4.    **Defendant and Its Experts Should Be Precluded From Submitting Images of Allegedly Prior Works That Contain Similarities To The Games Workshop Products.** ................................................................................ 7

5.    **Defendant Should Be Precluded From Offering Testimony, Evidence or Argument Regarding Any Chapterhouse Works Not At Issue.** ................ 11

6.    **Except as Expressly Permitted by The Court, The Parties Should Be Precluded from Mentioning or Referring to Any Pre-Trial Rulings by the Court or Any Other Pre-Trial Disputes.** .................................................. 11

7.    **Chapterhouse Should Be Precluded From Offering Evidence or Argument of Plaintiff's Efforts to Enforce Its Intellectual Property Rights Against Third Parties, Including Former Defendant Jon Paulson.** ........................................................................................................... 12

8.    **Chapterhouse Should Be Precluded From Offering Testimony, Evidence, or Argument Regarding A Purported License From Michael Moorcock.** ......................................................................................... 13

9.    **Chapterhouse Should Be Precluded From Offering Testimony, Evidence or Argument As To Plaintiff's Policies That Are Not Tied To Chapterhouse's Conduct.** .......................................................................... 14

10.   **The Parties Should Be Precluded from Mentioning or Referring to Either Party's Billing Arrangements With Its Lawyers.** ................................ 14

11.   **Parties Should Be Precluded From Offering Evidence or Argument Regarding Any Amended or Withdrawn Pleadings, Claims or Discovery Responses.** ......................................................................................... 15

12.   **The Parties Should Be Precluded from Posing Questions that Seek to Invoke Assertions of Privilege or Offering Testimony, Evidence or**

**Argument Regarding Information or Documents That Were
Previously Withheld as Privileged.**................................................................. 15

4851-6823-0417.8

# TABLE OF AUTHORITIES

*Billy-Bob Teeth v. Novelty, Inc.*,
    329 F.3d 586 (7th Cir. 2003)……………………………………………………7

*Boisson v American County Quilts and Linens*,
    273 F.3d 262 (2nd Cir. 2001)…………………………………………………12

*Bridgeman Art Library v. Corel Corp.*,
     36 F. Supp. 2d 191, (S.D.N.Y. 1999)…………………………………………5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)……………………………………………………………9

*EZ Dock, Inc. v. Shafer Sys., Inc.*,
    No. 98-2364, 2003 U.S. Dist. LEXIS 3634 (D. Minn. Mar. 8, 2003)…………..15

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*,
    780 F.2d 189 (2d Cir. 1985)……………………………………………………5

*In re Trade-Mark Cases*,
    100 U.S. 82 (1879)……………………………………………………………12

*Kumho Tire Co. v. Carmichael*,
    119 S.Ct. 1167 (1999)…………………………………………………………..9

*Leboeuf v. K Mart Corp.*,
    888 F.2d 330 (5th Cir. 1989)…………………………………………………..13

*Porous Media Corp. v. Pall Corp.*,
    173 F.3d 1109 (8th Cir. 1999)…………………………………………………13

*Sadhu Singh Hamad Trust v. Ajit Newspaper Advert., Marketing and Comm'ns, Inc.*,
    503 F. Supp. 2d 577 (E.D.N.Y. 2007)…………………………………………5

*Wilson v. Sundstrand Corp.*,
    2003 U.S. Dist. LEXIS 14356 (N.D. Ill. Aug. 18, 2003)…………………………*3*

iii

Plaintiff Games Workshop Limited ("Games Workshop"), requests that the Court

preclude Defendant Chapterhouse Studios LLC ("Chapterhouse"), Defendant's counsel, and all

of Defendant's witnesses from offering any evidence relating to any of the following matters

within the hearing of any member of the jury panel, either in *voir* dire or at any time during trial.

To the extent that the Court elects not to rule on these motions before trial, Plaintiff requests that

the Court preclude counsel for Defendant and Defendant's witnesses from mentioning, referring

to, offering any evidence, or soliciting any testimony relating to the following matters until the

same has first been called to the Court's attention out of the presence of the jury and the Court

has made a ruling as to each matter and counsel should be instructed to inform each of

Defendant's witnesses of the contents of these motions so that no witness will violate them.

### 1. Defendant Should Be Precluded From Offering Evidence or Argument Regarding English Law[1]

On May 1, 2012, Games Workshop served its expert report of Michael Bloch on the issue

of copyright ownership under English law, in particular (1) English law distinctions between

employees and independent contractors; (2) English law on joint works; and (3) English law on

equitable assignment.  Chapterhouse served no opening expert report on any issues of English

law.  On June 15, 2012, Chapterhouse served the rebuttal report of Lionel Bently.  However, in

addition to rebutting the issues raised by Mr. Bloch, the Bently Report also raised, for the first

time, an issue of the copyrightability under English Law of Games Workshop's sculptural

figures.  No such issue had been raised by Plaintiff's expert.

The Court has already ruled that Games Workshop is the owner of the copyrights at issue

in the first phase of the case, with one possible exception that his since been resolved to

---

[1] Counsel for the parties have agreed in principle that neither side will offer evidence or argument regarding English law or call at trial any experts in English law, subject only to confirmation by the clients.

1

Chapterhouse's satisfaction. (Nov 27, 2012 Order). With the limited exception of Nick Coleman, Chapterhouse has conceded that Games Workshop is the proper owner of the copyrights at issue in the second phase of the case. (CHS Resp. to Summary Judgment at 4-5, Dkt. 303). As explained in Games Workshop's reply brief, Mr. Coleman does not contest ownership, believes he was an employee at the time he created the works at issue, and is in the process of executing a confirmatory assignment. (Stevenson Decl. ¶ 2). Regardless, Chapterhouse does not have standing to contest Games Workshop's ownership. *Billy-Bob Teeth v. Novelty, Inc.*, 329 F.3d 586 (7th Cir. 2003) (Where there is no dispute between the copyright owner and the transferee about the status of the copyright "it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement").

Finally, on the issue of the applicability of English law to copyrightability, the Court has already ruled that "Chapterhouse's argument begins with an incorrect premise. Although disputes over copyright ownership must be resolved under the laws of a work's country of origin, other issues regarding a claim of copyright infringement, including the question of copyrightability, are determined by the law of the country where the alleged infringement occurred." (11/27/12 Mem. Dec. at 15-16, citations omitted.)

Removing these issues from trial will simplify the case and remove any need for the jury to hear evidence and argument about the intricacies of English Law. Testimony regarding English law only risks jury confusion and wasted time. Fed. R. Evid. 403. Games Workshop likewise will forego testimony of its English law expert.

**2. Except As Expressly Permitted By The Court, The Experts Should Be Precluded From Offering Opinions Not Timely Disclosed in Their Reports.**

Expert reports must contain a complete statement of the expert's opinions and their basis; the facts or data considered by the expert and any relevant exhibits. Fed. R. Civ. P. 26(a)(2)(B).

2

Except as expressly permitted by the Court, experts should be precluded from offering testimony beyond the opinions expressed in their expert reports and the facts, data, and exhibits disclosed therein.

In the first phase of the case, Chapterhouse submitted a 5-paragraph Expert Report of William F.N. Brewster for which he expressed specific opinions on only a very limited number of Games Workshop products at issue (a cruciform as used in product numbers 46-48 and a gear as used in product number 69). Mr. Brewster provided general opinions of prior military uses of a limited number of design elements (an unidentified shoulder pad, shields, a war hammer, unidentified firearms, and decorative elements such as geometric forms, skulls, cruciform, gears, and roman numerals). (Keener Decl. Ex. 1, Brewster Report). Mr. Brewster did not express any opinions in his report about any similarities or differences that exist between the Games Workshop or Chapterhouse products. Thus, Mr. Brewster should be precluded from offering any opinions about (1) any Games Workshop products not specifically identified in his expert report, (2) any design elements not specifically discussed in his report, and (3) any similarities or differences that exist between the Games Workshop and Chapterhouse products.

Similarly, in the first phase of the case, Chapterhouse submitted a 7-page Expert Report From Gary K. Wolfe in which he expressed specific opinions on only a very limited number of Games Workshop products at issue: Space Marine Terminator Squad (Keener Decl. Ex. 2, Wolfe Report at 5), Space Marines Land Raider (Report at 5), and Hive Tyrant (*Id.* at 6). Mr. Wolfe further provided general opinions about the prior use in science fiction of a limited number of design elements (battle robots, biomechanical creatures, aliens, high-tech battle armor, and medieval based weapons.). (*Id.* at 4). Mr. Wolfe did not express any opinions in his report about any similarities or differences that exist between the Games Workshop and the Chapterhouse products. Thus, Mr. Brewster should be precluded from offering any opinions about (1) any

3

Games Workshop product not specifically identified in his report, (2) any design elements not specifically discussed in his report, and (3) any similarities or differences that exist between the Games Workshop and Chapterhouse products.

In the second phase of the case, Chapterhouse submitted a 26-page Expert Report from Carl Grindley, along with 138 page chart (served late).  (Keener Decl. Ex. 3, Grindley Report; Ex. 4, Grindley Claim Chart).  In short, Mr. Grindley expresses an opinion that that he identified certain prior images that are similar in some respects to the Games Workshop products.  In the body of the report, Mr. Grindley did not express any opinions about any similarities or differences that exist between the Games Workshop and the Chapterhouse products.  (Keener Decl. Ex. 3).  In his Exhibit B, with the exception of products 132 (Open-Fisted Power Claw) and 153 (Power Armor Shoulder Pad for Scythes of the Emperor), Mr. Grindley did not express any opinions about any similarities or differences that exist between the Games Workshop and the Chapterhouse products.  (Keener Decl., Ex. 4, at pages 42 and 102).  At his deposition, Mr. Grindley stated that while he did not write down any of the similarities or differences he saw between the Games Workshop and Chapterhouse products, he wished to express opinions on this topic at trial as his report did include images of the Games Workshop and Chapterhouse products at issue.  He hoped to comment on his unwritten opinions when viewing those images.  (Keener Decl. Ex. 5, Grindley Tr. 38:16-45:14; 54:12-59:2; 59:23-68:19).

> Q. Other than through inference, do you describe anywhere the elements of that picture you believe are similar?
>
> A. Even through words, we only offer it through inference. This is the difference between the signifier and the signified.
>
> Q. I don't think you're answering my question. My question is I want to know what you thought was similar in that picture. Is there anything you give me that helps me identify what elements you thought were similar?
>
> A. The pictures themselves.

4

> Q. Other than the pictures themselves, is there anything else that tell me what elements you thought were similar?
>
> A. No. (Id. at 68:4-19)

Such sandbagging is improper and highly prejudicial. Under Federal Rule 26(a)(2)(B)(1), Mr. Grindley was required to timely produce a report which contained "a complete statement of all opinions the witness will express and the basis for the reasons for them." The mere inclusion of images of the products at issue does neither. Games Workshop is not apprised of which products Mr. Grindley believes are similar and which he believes are different, much less the basis for such an opinion (either the actual similarities or differences Mr. Grindley believes exist or the basis, if any, to deem such differences relevant). Nor was Games Workshop apprised of the possible need for a rebuttal expert to respond to opinions not actually expressed. Thus, Mr. Grindley should be precluded from offering any opinions about any similarities or differences that exist between the Games Workshop works and Chapterhouse products. Moreover, as a procedural matter, all of the attachments to Mr. Grindley's initial report can be excluded as they were served belatedly on February 2. Only the report itself was served by the February 1 deadline. (Keener Decl. ¶ 5)

Finally, on March 13, Chapterhouse served a 28-page *Supplemental* Expert Report of Carl Grindley, along with a new 146-page chart. This supplemental report was served long after the deadline to serve expert reports, after the deposition of Mr. Grindley, and after the close of expert discovery. Chapterhouse never sought leave of the Court to extend any of these deadlines. Thus, the Supplemental Report is untimely, and Mr. Grindley should be precluded from offering any opinions contained therein. While Chapterhouse never identified exactly what was being supplemented, Games Workshop's review indicates that the Supplemental Report contains at least new paragraphs 2 and 59-63 as well as footnotes 2 and 3. (Keener Decl. Ex. 6,

Sup. Grindley Report).  More importantly, for the first time, in Mr. Grindley's chart, Supplemental Exhibit B, Mr. Grindley now includes for each entry a large list of purported differences between the Games Workshop and Chapterhouse products.  (Keener Decl. Ex. 7, new portions of Grindley Claim Chart).  In short, Mr. Grindley's deposition identified numerous serious deficiencies in Mr. Grindley's orignal report that merely identified certain images without opinion how if at all they were deemed similar to the Games Workshop works at issue. In the face of this deposition testimony, Chapterhouse now wants Mr. Grindley to express opinions at trial on the very different topic of substantial similarity between the Games Workshop and Chapterhouse products.  Allowing Mr. Grindley to express these new opinions at trial severely prejudices Games Workshop.  The opinions were never timely disclosed in his expert report.  Thus, Games Workshop was unable to provide, if necessary, a rebuttal expert report on these topics.  Moreover, Games Workshop was not provided the opportunity to depose Mr. Grindley on any of these newly expressed opinions.  Furthermore, nothing in Mr. Grindley's background as an English professor at a New York community college qualifies him opine on issues of substantial similarity under copyright law, product design or any other form of comparative analysis of the parties' products.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Trial is mere weeks away.  Games Workshop should not be further prejudiced by having to expend its limited time taking further expert discovery needed to address these untimely opinions.

### 3.  Mr. Grindley Should Be Precluded From Offering Testimony Regarding The Size and Shape of the Space Marine Shoulder Pad.

The first phase of this case accused numerous products of infringing the size and shape of Games Workshop's iconic Space Marine Shoulder Pad.  Chapterhouse availed itself of two experts (one on military history and one on science fiction history) to express opinions on whether that shoulder pad design was merely a common design that was indispensible in creating

6

a futuristic space warrior and thus uncopyrightable. The issue was hotly contested by the parties and subject to summary judgment briefing. On November 27, 2012, the Court found the design copyrightable, in part, based on Chapterhouse's own expert admissions that the design was not the same or similar to those found in prior military history.

Despite this ruling, Chapterhouse continued to create and sell additional lines of shoulder pads based off of this iconic Space Marine Shoulder Pad design. For some of these new products Games Workshop alleges copyright infringement for both the surface design on the shoulder pad as well as the overall size and shape of the shoulder pad. For certain of these new products, Games Workshop's sole basis for copyright infringement is the size and shape of the shoulder pad. Thus, the factual and legal issues present for the copyrightability of Games Workshop's Space Marine Shoulder Pad remain exactly the same as in the first phase of the case. Any expert opinions Chapterhouse intended to provide at trial regarding Games Workshop's Space Marine Shoulder Pad were required to be provided in the first phase of the case. Chapterhouse should not be allowed to do an end-run around the Court's rules and get another bite at the apple merely because acknowledges the inadequacy of its original expert reports.

4. **Defendant and Its Experts Should Be Precluded From Submitting Images of Allegedly Prior Works That Contain Similarities To The Games Workshop Products.**

The Expert Reports of Brewster, Wolfe, and Grindley primarily contain various images found in prior military or science fiction history which the expert then opines is similar in some way to one of the Games Workshop products at issue. This testimony is irrelevant to any issue in the case and should be precluded.

Chapterhouse and its experts have conceded that they are not arguing that Games Workshop's designers copied any of these images in creating the Games Workshop products at

7

issue. (Keener Decl, Ex. 8, Brewster Tr. 74:20-23; Ex. 9, Wolfe Tr. 171:1-17; Ex. 5, Grindley Tr. 87:20-88:10) Thus, the testimony is irrelevant to the issue of originality.

Similarly, Chapterhouse has never contended that its designers ever referenced any of these allegedly prior images during the design and development of any of the Chapterhouse products at issue. (Keener Decl, Ex. 8, Brewster Tr. 67:23-68:14; Ex. 9, Wolfe Tr. 64:18-22; Ex. 5, Grindley Tr. 150:8-11) Thus, the testimony is irrelevant to the issue of independent creation.

Finally, Chapterhouse has not presented any surveys or other type of evidence that any of these images represent elements that are required or indispensible or even common in creating any of these products such that those elements cannot be protectable under the *scènes à faire* doctrine. *Atari Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 616 (7th Cir. 1982), ("Scènes à faire generally involve 'incidents, characteristics or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic, what flows naturally from these basic plot premises.'") In fact, each of the experts expressly testified to the opposite, that there are a vast number of ways to design each of the Games Workshop products at issue and none of these elements is essential or indispensible.

Mr. Brewster testified:

> Q. So you are not expressing any opinions on what elements might commonly been used in fantasy military worlds, are you?
>
> A. No.
>
> Q. You are not expressing any opinion on what design elements are commonly used in fantasy military worlds, are you?
>
> A. No.
>
> Q. You are not expressing any opinion on what design elements might be indispensable part of a fantasy military world, are you?
>
> A. No. (Keener Decl. Ex. 8, Brewster Tr. 78:21-79:10, *see also* 130:20-135:1; 167:4-24; 168:16-169:7)

Mr. Wolfe testified:

> Q. So it's fair for me to take the common -- the future war scenario and say what are the common elements of the future war scenario, and the list would be spacecraft, tanks, battle suits, robots, space marines, terminators, land raiders, aliens and weapons. Would that be fair for me?
>
> A. To say that's a complete list of the entire history of --
>
> Q. That you relied upon to form your opinions.
>
> A. In terms of looking at these images and comparing it to the future war scenario, that is correct. (Keener Decl. Ex. 9, Wolfe Tr. 80:11-23, *see also* 76:2-77:23, 79:4-80:10; 106:19-107:4; 107:24-109:9).

Mr. Grindley testified:

> Q. And you're not making any expert opinion that those three choices combined together is some sort of essential combination that a designer would need to do to make a future infantry soldier?
>
> A. Correct.
>
> Q. Someone making a future infantry soldier would have many choices on how to design a shoulder pad?
>
> A. Yes, they would.
>
> Q. And there's no standard ways that they would have to make it?
>
> A. No, there isn't.
>
> Q. There's a virtual unlimited amount of ways?
>
> A. Yes.
>
> Q. And you're not identifying any characteristics that you believe are indispensable?
>
> A. No. (Keener Decl. Ex 5, Grindley Dep. 266:10-267:5; *see also* 167:21-171:18)

Thus, the testimony is irrelevant to the issue of *scenes a faire* and there is no foundation of relevance for any of the images on any of the three possible grounds for consideration.

As the testimony is not relevant to any claim or defense in the case, Chapterhouse and its experts should be precluded from presenting the images or arguments about the images to the jury. Such testimony would be highly prejudicial and likely to confuse the jury. The likely confusion is underscored by the testimony of Mr. Grindley, who himself is confused as to the

9

originality standard for copyrightability, which he believes instead is the novelty standard from patent law.

> Q. What do you mean by original?
>
> A. There's nothing in them that does not derive from a different source, a previous source.
>
> Q. You mean the idea or the concept or the exact expression of that concept the sculpture made?
>
> A. I don't believe those two things can be divorced.
>
> Q. So you can't divorce a concept of a future military soldier from any particular expression of that concept?
>
> A. No, I don't believe that there is a tangible need to distinguish between those two things. (Keener Decl. Ex. 5, Grindley Dep. 124:18-125:7)
>
> ***
>
> Q. Are you planning any expert opinions whether any Games Workshop work lacks originality in the copyright sense?
>
> A. I'm not an expert in copyright law.
>
> Q. What is your understanding of the word "originality" when you use it? I'm sorry?
>
> A. No, I'm formulating a response. Originality would be the idea of a thing wholly onto itself without an external influence of any sort.
>
> Q. Okay, can something be partially original?
>
> A. No.
>
> Q. Why not?
>
> A. For the same reason you can't be partially pregnant. (*Id*. at 143:17-144:4)

(See also, Id. at 129:23-131:4; 166:8-167:20).. There is a substantial risk of a similar inference being made by the jury – that if the jury agrees that one or even more people had come up with a product with some of the features (or even all of the features) present in Games Workshop's admittedly independently created designs, then Games Workshop's products would not be subject to copyright protection. Such an inference is in direct conflict with the meaning of "original" in copyright law as simply being synonymous with independent creation. See *Boisson v American County Quilts and Linens*, 273 F.3d 262, 268 (2nd Cir. 2001) (originality "simply

10

means a work independently created by its author, one not copied from pre-existing works, and a work that comes from the exercise of the creative powers of the author's mind …", citing *In re Trade-Mark Cases,* 100 U.S. 82, 94 (1879).  It is also contrary to settled copyright law that original combinations of even unoriginal elements from the public domain can be copyrightable. As this Court previously noted in its November 27, 2012 decision:

> "It is true that common geometric shapes cannot be copyrighted." *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 303 (7th Cir. 2011). Yet although GW could not base its copyright claim on a depiction of an "X" or a chevron alone, its depiction of that otherwise-common element affixed on an original, creative shoulder pad with a distinctive color scheme is sufficient to satisfy the originality requirement. *See Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005) ("When an author combines [otherwise non-protected] elements and adds his or her own imaginative spark, creation occurs, and the author is entitled to protection for the result.")

## 5. Defendant Should Be Precluded From Offering Testimony, Evidence or Argument Regarding Any Chapterhouse Works Not At Issue.

In an attempt to narrow the number of works at issue for trial, Games Workshop has identified 33 works in the first phase of the case and 4 works in the second phase of the case for which Games Workshop is no longer asserting any claims of copyright infringement. Thus, any testimony, evidence, or argument concerning them is irrelevant; will only risk jury confusion, and should be excluded.  Fed. R. Evid. 401, 402, and 403.

## 6. Except as Expressly Permitted by The Court, The Parties Should Be Precluded from Mentioning or Referring to Any Pre-Trial Rulings by the Court or Any Other Pre-Trial Disputes.

Unless expressly permitted by the Court, the parties should be prohibited from mentioning or referring to pre-trial rulings by the Court.  Discussions before the jury about the Court's prior rulings on discovery disputes, summary judgment, or any other issues may result in prejudicing the jury unfairly by suggesting that the Court favors one side over the other.  *See* Fed. R. Evid. 403.  Similarly, the parties should be prohibited from referring to any pre-trial disputes that did not result in any rulings by the Court or referencing objections made by the

opposing party in its discovery responses. The witnesses have no personal knowledge of such procedural matters, and such inquiries would create a danger of unfair prejudice and would confuse the jury. Fed. R. Evid. 401, 403. On the same grounds, no evidence or statements should be permitted regarding newly raised perceived discovery issues where such issues were not the subject of a prior Court ruling. Although some instructions to the jury by the Court may be appropriate – including on issues resolved by the Court, such as Games Workshop's ownership if copyright in its works – the parties should not be permitted to raise other such issues without leave of court.

**7. Chapterhouse Should Be Precluded From Offering Evidence or Argument of Plaintiff's Efforts to Enforce Its Intellectual Property Rights Against Third Parties, Including Former Defendant Jon Paulson.**

Although Plaintiff is not aware of any such matter that Chapterhouse may wish to raise, whether Plaintiff has asserted or contemplated asserting its intellectual property rights against others under other circumstances and without regard to actions plaintiff has elected *not* to pursue have no probative value here and any possible probative value is far outweighed by its prejudicial effect. *See* Fed. R. Evid. 403. Allowing Defendant to mention other proceedings involving Plaintiff would be wasteful and would allow the jury to draw unwarranted inferences that are irrelevant to the claims and defenses here. *See, e.g., Leboeuf v. K Mart Corp.*, 888 F.2d 330, 334 (5th Cir. 1989) (upholding trial court exclusion of issues that had "'no direct relation…' to the ultimate issues in this case and that it was more likely to mislead the jury than to add to its relevant information"). *Accord, Porous Media Corp. v. Pall Corp.* 173 F.3d 1109, 1117 (8th Cir. 1999). Evidence of other proceedings is also irrelevant to whether Defendant is liable in this lawsuit and would amount to impermissible character evidence. *See* Fed. R. Evid. 404. The Court thus should exclude testimony, argument or exhibits relating to other actual or contemplated copyright or trademark infringement actions. Similarly, Defendant should be

12

4851-6823-0417.8

precluded from referring to the fact that there was another defendant who has settled, and, unless modified, should be precluded from publishing the case caption to the jury as it identifies a defendant not at trial. The Court has already reviewed the settlement correspondence and deemed it outside the proper scope of discovery. It is no more relevant at trial.

### 8. Chapterhouse Should Be Precluded From Offering Testimony, Evidence, or Argument Regarding A Purported License From Michael Moorcock.

In response to Games Workshop's motion for summary judgment to dismiss Chapterhouse's affirmative defenses, including the defense of license, the only purported license identified by Chapterhouse in response was an implied license based on general policy statements made on Games Workshop's website directed to non-commercial use of its products. Nor did Chapterhouse identify in response to Games Workshop's interrogatories directly addressing its affirmative defenses any license at all. However, Chapterhouse has now identified on its exhibit list a purported license and related correspondence with Michael Moorcock (CHS Exs. 530-531), related to an eight-pointed chaos star. At his February 20, 2013 deposition, Mr. Villacci stated that "we got specific permission to use a Chaos Eight-Pointed Star Icon from the original designer." (Keener Decl. Ex. 10, Villacci Tr. 179:5-6). The fact that Chapterhouse allegedly has a license from a third party to an alleged design of that party does not relieve Chapterhouse of liability for infringing on the trademarked logos of Games Workshop. There is no suggestion that Games Workshop licenses anything from Mr. Moorcock or that its rights derive in any way from him. Nor is there any evidence that Mr. Moorcock owns any valid rights in the design, such as proof of actual use of the design in commerce as a trademark on any goods. If Mr. Moorcock wants to suggest that Games Workshop is infringing any valid intellectual property, that would be between Mr. Moorcock and Games Workshop. Chapterhouse simply does not have any standing to raise this *jus tertii* defense at trial. *Bishops Bay Founders Group Inc. v. Bishops Bay Apartments LLC*, 301 F. Supp. 2d 901, 910 (W.D. Wis.

13

2003) ("as long as plaintiff's rights are superior to defendant's, which is uncontroverted in this case, the fact that [a third party] might have rights superior to plaintiff's has no effect on this lawsuit.")  As Chapterhouse is not relying on this license as an affirmative defense, it is irrelevant to any issue in this case and would only lead to a risk of jury confusion and should be excluded.  Fed. R. Evid. 401, 403.

9. **Chapterhouse Should Be Precluded From Offering Testimony, Evidence or Argument As To Plaintiff's Policies That Are Not Tied To Chapterhouse's Conduct.**

Defendant should be excluded from introducing evidence of Plaintiff's general statements and policies regarding its intellectual property unrelated to Defendant's actual conduct.  Notably, it appears that Defendant intends to rely on various statements on Games Workshop's website about Games Workshop's IP Policy as it relates to its fans, expressly *excluding* those who seek commercial gain.  These general statements are irrelevant and likely to lead to jury confusion and should be inadmissible under Federal Rule of Evidence 402, and allowing Defendant to introduce these policies risks jury confusion.  Defendant seeks to introduce policies about what Plaintiff permits non-commercial entities to do, having no application to the commercial activity here at issue.

10. **The Parties Should Be Precluded from Mentioning or Referring to Either Party's Billing Arrangements With Its Lawyers.**

The Parties should be prohibited from offering any statement, reference or criticism of how the Parties employed their attorneys, including how or whether the Parties' are represented on a pro bono or cash fee basis, or who is paying any litigation expenses.  Such matters are not irrelevant and would be raised solely to unfairly prejudice the Parties' position without any probative value.  Fed. R. Evid. 402, 403.  Games Workshop has taken no discovery on the issue of Chapterhouse's billing arrangements, notwithstanding that it has spent lavishly on videotaping depositions, flying attorneys around the world for depositions when Games Workshop has

14

simply used telephone or video links; has hired a jury consultant and has employed teams of lawyers as against the two lawyers employed by Games Workshop. The legal fees and expenses incurred are not relevant to any issues for the jury's consideration, and would serve to unduly prejudice Plaintiff, mislead the jury, and waste time. Fed. R. Evid. 402, 403.

**11. Parties Should Be Precluded From Offering Evidence or Argument Regarding Any Amended or Withdrawn Pleadings, Claims or Discovery Responses.**

The fact that Plaintiff amended its pleadings or discovery responses, or that Plaintiff pled earlier claims that that have been amended or withdrawn, should be excluded from evidence. This includes Games Workshop's decision not to pursue copyright infringement claims as to 33 products, which was done largely to simplify the trial, and its amendments of objections and responses to document requests as the basis for Chapterhouse's requests were later clarified, as to which the witnesses will have no knowledge. Withdrawn claims and allegations are utterly relevant. *See* Fed. R. Evid. 401-2; *see also EZ Dock, Inc. v. Shafer Sys., Inc.*, No. 98-2364, 2003 U.S. Dist. LEXIS 3634 at \*37 (D. Minn. Mar. 8, 2003) Even if these issues were relevant, the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury and would cause undue delay and wasted time. Fed. R. Evid. 403.

**12. The Parties Should Be Precluded from Posing Questions that Seek to Invoke Assertions of Privilege or Offering Testimony, Evidence or Argument Regarding Information or Documents That Were Previously Withheld as Privileged.**

The parties should be prohibited from questioning witnesses about these matters in front of the jury because such questions will simply draw a valid objection on privilege grounds and will result in prejudicing the jury unfairly against the witness or party for protecting their legal rights. *See* Fed. R. Evid. 403.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the foregoing Motions in *Limine.*

15

4851-6823-0417.8

Dated:  March 27, 2013                Respectfully submitted,
/s/  Jason J. Keener

                        Jason J. Keener (Ill. Bar No. 6280337)
                        FOLEY & LARDNER LLP
                        321 North Clark Street, Suite 2800
                        Chicago, IL 60654-5313
                        Telephone:  312.832.4500
                        Facsimile:  312.832.4700
                        Email:  jkeener@foley.com

                        Jonathan E. Moskin
                        FOLEY & LARDNER LLP
                        90 Park Avenue
                        New York, New York 10016
                        Telephone:  (212) 682-7474
                        Facsimile:  (212) 687-3229
                        Email:  jmoskin@foley.com

                        *Attorneys for Plaintiff*
                        *Games Workshop Limited*

16

## CERTIFICATE OF SERVICE

I, Jason J. Keener, an attorney, hereby certify that on March 27, 2013, I caused to be filed electronically the foregoing PLAINTIFF'S OMNIBUS MOTION IN LIMINE with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.


/s/  Jason J. Keener
Jason J. Keener

## CERTIFICATE OF CONFERENCE

I, Jason J. Keener, certify that counsel for Games Workshop, Jason J. Keener, met and conferred with counsel for Chapterhouse, Bryce Cooper, via telephone on March 27, 2013. With the exception of an agreement in principal on Motion in Limine #1, Chapterhouse opposes each of the Motions-in-limine presented herein.


/s/  Jason J. Keener
Jason J. Keener

4851-6823-0417.8