# EXHIBIT

# 8

```
                                                      Page 1
 1          IN THE UNITED STATES DISTRICT COURT
 2             NORTHERN DISTRICT OF ILLINOIS
 3                    EASTERN DIVISION
 4   GAMES WORKSHOP LIMITED,    )
 5               Plaintiff,     )
 6       vs.                    ) Civil Action
 7   CHAPTERHOUSE STUDIES LLC   ) No. 1:10-cv-08103
 8   and JON PAULSON d/b/a      )
 9   PAULSON GAMES,             )
10               Defendants.    )
11
12           The deposition of WILLIAM F. BREWSTER,
13   taken pursuant to the Federal Rules of Civil
14   Procedure of the United States District Courts
15   pertaining to the taking of depositions, taken
16   before PAULINE M. VARGO, a Certified Shorthand
17   Reporter within and for the State of Illinois,
18   C.S.R. No. 84-1573, at Suite 2800, 321 North Clark
19   Street, Chicago, Illinois, on June 29, 2012, at
20   9:05 a.m.
21
22
23
24
```

```
 1   PRESENT:
 2
 3        FOLEY & LARDNER, LLP
          321 North Clark Street, Suite 2800
 4        Chicago, Illinois  60654
          312.832.4500
 5        BY:  JASON J. KEENER, ESQ.
               jkeener@foley.com
 6
               appeared on behalf of the Plaintiff;
 7
 8        WINSTON & STRAWN, LLP
          101 California Street
 9        San Francisco, California  94111-5894
          415.591.1564
10        BY:  K. JOON OH, ESQ.
               koh@winston.com
11
               appeared on behalf of the Defendant.
12
13   ALSO PRESENT VIA TELEPHONE:
14        GILL STEVENSON, ESQ.
          In-House Counsel, Games Workshop.
15
16
     REPORTED BY:
17
          PAULINE M. VARGO
18        C.S.R. No. 84-1573.
19
20
21
22
23
24
```

Page 66

1     Q.    And you are not expressing any opinion
2 on whether those works were created prior to the
3 creation of the Games Workshop works?
4     A.    I believe that all the materials that
5 are reference in the analysis cites an earlier date
6 and a later date.
7     Q.    I'm just confirming what we talked to
8 with the other sentence.
9     A.    Yes.
10    Q.    You are not expressing any opinion on
11 whether any pieces of military history were created
12 prior to the creation of any of the Games Workshop
13 products at issue?
14    A.    Correct.
15    Q.    And in this opinion where you identify
16 the insignia, heraldry, equipment pattern and
17 design used by Games Workshop --
18    A.    Yes.
19    Q.    -- you don't identify out of the
20 thousands in binder 103 of those elements which one
21 that opinion applies to?
22    A.    No.
23    Q.    And the next sentence reads, "That the
24 models Games Workshop creates incorporates patterns

Page 67

1  and designs of insignia, heraldry and equipment
2  that are documented to exist either currently or in
3  the past outside of the world of fantasy gaming."
4          Did I read that right?
5     A.   Yes.
6     Q.   And again, when you are saying
7  documented to exist currently or in the past, you
8  are not expressing any opinion on whether or not
9  they were documented prior to the creation of the
10 Games Workshop works?
11    A.   Yes.
12    Q.   And when you state Games Workshop's
13 models incorporate patterns that are documented to
14 exist, since you are not making an opinion that
15 they were created prior to the Games Workshop, you
16 are also not making any opinion that Games Workshop
17 copied any of those documented examples, correct?
18    MR. OH:  Objection, vague and ambiguous and
19 compound.
20 BY THE WITNESS:
21    A.   No.
22 BY MR. KEENER:
23    Q.   So it is clear, you are not expressing
24 any opinion that Games Workshop copied anything

Page 68

1   from prior military history?
2           MR. OH:  Objection, vague and ambiguous and to
3   the extent you are calling for a legal opinion.
4   BY THE WITNESS:
5       A.  I've not -- I've not spoken with anyone
6   from Games Workshop to make that determination.
7   BY MR. KEENER:
8       Q.  My question is a simple "yes" or "no."
9   You are not expressing any opinion that Games
10  Workshop copied anything from prior military
11  history, correct?
12          MR. OH:  Objection.
13  BY THE WITNESS:
14      A.  Yes, correct.
15  BY MR. KEENER:
16      Q.  And when you express your opinion that
17  Games Workshop products are compatible with the
18  world of military culture, what do you mean by
19  "compatible with"?
20      A.  Very similar to known existing materials
21  and designs within the world of military material
22  culture.
23      Q.  Is that the same as what you mean by
24  "not markedly dissimilar from"?

1    A.    Yes.

2    Q.    So you are not expressing two different
3  opinions there; it is one opinion that the Games
4  Workshop items are similar to items found in
5  military history?

6    A.    They are similar to and they are not
7  greatly different from, yes.

8    Q.    I think we talked about that you are not
9  doing any more analysis in the case currently,
10  right?

11    A.    Yes.

12    Q.    And you are not examining any additional
13  Games Workshop products?

14    A.    No.

15    Q.    Turn to Page 2. There is a statement on
16  the third paragraph, the third sentence. It says,
17  "In addition, I continue to examine documents and
18  may reach opinions about those in the process."

19        At the time you signed your report, what
20  documents were you continuing to examine?

21    A.    That would just be in the course of my
22  use of reference books, and I was informed that I
23  may be receiving further materials.

24    Q.    So when you wrote this on May 1st, 2012,

Page 70

1  what other documents were you continuing to
2  examine?
3     A.   Just my general reference books that I
4  use in the course of daily work.
5     Q.   And you were informed that any expert
6  opinions on any of your reference materials that
7  you want to express in the case had to be in your
8  May 1st expert report, correct?
9     A.   Yes.  The reference works that I cite
10 are part of my daily work.
11    Q.   Again, you were informed that any expert
12 opinions you want to express in this case had to be
13 contained in your May 1st, 2012 report, correct?
14    A.   Correct.
15    Q.   Also in that paragraph about four more
16 lines down you state, "I may assist in the
17 development of demonstrative" -- "demonstration
18 materials to support and explain my opinion."
19         Have you developed any demonstration
20 materials to support your opinion?
21    A.   No.
22    Q.   And the last sentence of that paragraph
23 reads, "At trial, I may convey my testimony using
24 images or other demonstratives."

1    Do you have any images or other
2  demonstratives that you are intending to rely upon
3  that you did not include in your expert report?
4      A.   No.
5      Q.   And you agree that would be unfair for
6  us not to be able to see those ahead of time?
7      MR. OH:  Objection, argumentative objection.
8  To the extent it's calling for issues regarding
9  trial preparation materials and other work
10 product-related issues, I'm going to state an
11 objection to that.
12 BY THE WITNESS:
13     A.   Yes.
14 BY MR. KEENER:
15     Q.   Because you were told that any
16 information that you wanted to rely upon for your
17 report had to be contained within your report,
18 correct?
19     A.   Yes.
20     Q.   Now, we have gone through an overview of
21 what your opinion is before we get into the
22 details, so I want to again make sure what your
23 opinion is not.  Okay?
24          You are not expressing any opinion on

1  when Games Workshop first created any of the works
2  at issue, correct?
3      A.    Correct.
4      Q.    You are not expressing any opinion on
5  whether any Games Workshop element was
6  independently created by Games Workshop?
7      MR. OH:  Objection, vague and ambiguous and to
8  the extent it is calling for a legal opinion.
9  BY THE WITNESS:
10     A.    Correct.
11 BY MR. KEENER:
12     Q.    You are not expressing any opinion that
13 Games Workshop copied anything else in creating its
14 works?
15     MR. OH:  Objection, vague and ambiguous and to
16 the extent it is calling for a legal opinion.
17 BY THE WITNESS:
18     A.    I'm only reflecting on what I have been
19 able to review.
20 BY MR. KEENER:
21     Q.    I understand, but listen to the
22 question.  You are not expressing any opinion that
23 Games Workshop copied any other works in creating
24 the works at issue in this case?

1    MR. OH: Objection, vague and ambiguous and to
2 the extent it is calling for a legal opinion.
3 BY THE WITNESS:
4    A.   Correct.
5 BY MR. KEENER:
6    Q.   You are not expressing any opinion that
7 Games Workshop referred to any particular works in
8 the creation of any of its products at issue,
9 correct?
10    MR. OH: Objection, vague and ambiguous and
11 also to the extent it is calling for a legal
12 opinion.
13 BY THE WITNESS:
14    A.   I could reasonably believe that they did
15 consult works because the materials and patterns
16 that they show previously exist in military
17 material cultural.
18 BY MR. KEENER:
19    Q.   Are you expressing an expert opinion
20 that Games Workshop referred to any materials in
21 creating the works at issue in this case?
22    MR. OH: Objection, vague and ambiguous and to
23 the extent it is calling for a legal opinion.
24

1  BY THE WITNESS:
2       A.    I cite in the addendum there are
3  similarities for the work that they used from the
4  Collins reference guide.
5  BY MR. KEENER:
6       Q.    Other than the Collins reference guide,
7  which I will get to later, are you expressing any
8  opinion that the Games Workshop referred to any
9  other materials in the creation of any of the Games
10 Workshop products at issue?
11      A.    No.
12      MR. OH:    Same objections.
13 BY MR. KEENER:
14      Q.    You said no?
15      A.    No.
16      Q.    And you don't have any personal
17 knowledge about how Games Workshop created any of
18 the products at issue, correct?
19      A.    No.
20      Q.    You are not expressing any opinion on
21 what Chapterhouse used in the creation of any of
22 the Chapterhouse products at issue, correct?
23      A.    Correct.
24      Q.    So you are not expressing any opinion

Page 75

1  that Chapterhouse referred to any of the materials
2  you cited in the creation of any of their works at
3  issue in this case, correct?
4      A.   Correct.
5      Q.   You are not expressing any opinion
6  either way on whether Chapterhouse copied any of
7  Games Workshop's designs and products, correct?
8      MR. OH:  Objection, vague and ambiguous and to
9  the extent it is calling for a legal opinion.
10 BY THE WITNESS:
11     A.   Correct.
12 BY MR. KEENER:
13     Q.   And you didn't review any Chapterhouse
14 development documents or e-mails, correct?
15     A.   Correct.
16     Q.   And you don't have any personal
17 knowledge about how Chapterhouse designed its
18 products?
19     A.   No.
20     Q.   You are not expressing any opinion
21 whether or not Chapterhouse committed copyright
22 infringement, correct?
23     MR. OH:  Objection to the extent it is calling
24 for a legal opinion.

```
 1   BY THE WITNESS:
 2        A.    Correct.
 3   BY MR. KEENER:
 4        Q.    You are not expressing any opinion on
 5   whether any Chapterhouse products are similar to
 6   any Games Workshop products, correct?
 7        MR. OH:  Objection to the extent it is calling
 8   for a legal opinion.
 9   BY THE WITNESS:
10        A.    Correct.
11   BY MR. KEENER:
12        Q.    You didn't attempt to identify any
13   similarities between any Chapterhouse products and
14   any Games Workshop products, correct?
15        A.    Correct.
16        Q.    And you are not expressing any opinions
17   whether any similarities between the two products
18   exist in prior military history, are you?
19        MR. OH:  Objection, vague and ambiguous.
20   BY THE WITNESS:
21        A.    No.
22   BY MR. KEENER:
23        Q.    You are not expressing any opinion
24   whether any Games Workshop products are entitled to
```

Page 77

1 copyright, are you?
2     MR. OH:  Objection to the extent it is calling
3 for a legal opinion.
4 BY THE WITNESS:
5     A.   No.
6 BY MR. KEENER:
7     Q.   And as we looked at in Exhibit 103, the
8 binder, you are not expressing any opinion
9 regarding the originality of the entire product of
10 any Games Workshop product, are you?
11     MR. OH:  Objection and to the extent it is
12 calling for a legal opinion.
13 BY THE WITNESS:
14     A.   No.
15 BY MR. KEENER:
16     Q.   And you are not expressing for any
17 element of any product whether or not that element
18 is original, are you?
19     MR. OH:  Objection to the extent it is calling
20 for a legal opinion.
21          Can you repeat the question?
22              (WHEREUPON, the record was read by
23               the reporter as requested.)
24     MR. OH:  Same objection.

1   BY THE WITNESS:
2       A.   No.
3   BY MR. KEENER:
4       Q.   Do you have any opinion on what the
5   general theme or category of Games Workshop's
6   products would be?
7       MR. OH:   Objection, vague and ambiguous,
8   compound.
9   BY THE WITNESS:
10      A.   Fantasy world military.
11  BY MR. KEENER:
12      Q.   So fantasy military world?
13      A.   Yes.
14      Q.   Are you expressing any opinion in your
15  report what elements are necessary in a fantasy
16  military world?
17      A.   No.
18      Q.   Are you an expert on fantasy military
19  worlds?
20      A.   No.
21      Q.   So you are not expressing any opinions
22  on what elements might commonly been used in
23  fantasy military worlds, are you?
24      A.   No.

Page 79

1     Q.    You are not expressing any opinion on
2  what design elements are commonly used in fantasy
3  military words, are you?
4     A.    No.
5     Q.    You are not expressing any opinion on
6  what design elements might be an indispensable part
7  of a fantasy military world, are you?
8     MR. OH:  Objection, vague and ambiguous.
9  BY THE WITNESS:
10    A.    No.
11 BY MR. KEENER:
12    Q.    You are not expressing any opinion on
13 the naming of any of the Games Workshop products,
14 are you?
15    MR. OH:  Objection, vague and ambiguous.
16 BY THE WITNESS:
17    A.    No.
18 BY MR. KEENER:
19    Q.    So you understand that this case has
20 both copyright issues and trademark issues, right?
21    A.    Apparently.
22    Q.    Is that your understanding?
23    A.    Yes.
24    Q.    And in your opinion you are not

1  commenting at all on any of the trademark issues in
2  this case, correct?
3       MR. OH:  Objection to the extent you are
4  calling for a legal opinion.
5  BY THE WITNESS:
6       A.    Correct.
7  BY MR. KEENER:
8       Q.    You are limited to talking about the
9  images and the copyright portions of this case,
10 correct?
11      MR. OH:  Objection again to the extent you are
12 calling for a legal opinion.
13 BY THE WITNESS:
14      A.    The images specifically.
15      MR. KEENER:  How about another break?
16      THE WITNESS:  Yes.
17              (WHEREUPON, a recess was had at
18              10:45 a.m. until 10:49 a.m.)
19              (WHEREUPON, teleconference
20              communication with Ms. Gill
21              Stevenson was discontinued.)
22      MR. KEENER:  Back on transcript.
23           Mr. Joon, you had something to say?
24      MR. OH:  Yes.  The witness can reserve his