**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC and | ) | |
| JON PAULSON d/b/a PAULSON GAMES, | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendants. | ) | |

**CHAPTERHOUSE STUDIOS LLC'S MOTION *IN LIMINE***

Jennifer A. Golinveaux (CA Bar No. 203056)
Thomas J. Kearney (CA Bar No. 267087)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Phone: (415) 591-1000
Fax: (415) 591-1400
jgolinveaux@winston.com
tkearney@winston.com

Julianne M. Hartzell (IL Bar No. 6275093)
Sarah J. Kalemeris (IL Bar No. 6303644)
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive
Willis Tower Suite 6300
Chicago, IL 60606
Phone: (312) 474-6300
Fax: (312) 474-0448
jhartzell@marshallip.com
skalemeris@marshallip.com

Imron T. Aly (IL Bar No. 6269322)
Bryce A. Cooper (IL Bar No. 6296129)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600
Fax: (312) 558-5700
ialy@winston.com
bcooper@winston.com

Pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules, Defendant Chapterhouse Studios LLC ("CHS") submits this Motion *in Limine* to preclude GW from introducing (1) certain third-party website images and forum postings; (2) images from CHS's website; (3) expert testimony from lay witnesses; and (4) evidence regarding previously undisclosed icon trademarks, and (5) for an adverse inference establishing that GW's designers accessed the third-party reference materials in GW's studios when designing the works at issue.

## STANDARD

Motions *in limine* are "designed to avoid the delay and occasional prejudice caused by objections and offers of proof at trial." *Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999). Federal courts have "broad discretion in resolving motions *in limine*." *Wielgus v. Ryobi Techs., Inc.*, No. 08-CV-1597, 2012 WL 3643682, at *1 (N.D. Ill. Aug. 13, 2012). They perform a "gatekeeping function" by allowing the trial judge to "eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). They are also granted to exclude evidence when its "prejudicial value substantially outweighs the probative value." *Moore v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 02 C 4040, 2004 WL 2958769, at *4 (N.D. Ill. Nov. 22, 2004).

## ARGUMENT

### I.   GW Should Be Precluded From Introducing Certain Third-Party Website Images and Forum Postings

CHS respectfully requests that the Court exclude certain third party websites or internet postings identified in the GW trial exhibit list for three reasons: (1) several postings constitute improper lay opinion, (2) anonymously posted comments are inadmissible hearsay, and (3) to the extent that the postings made by third parties on the internet have any probative value, the prejudice to CHS in admitting such evidence greatly outweighs that value. Pursuant to FREs 701, 702, 806, 401, 402, 403, and 901, any of the website forum postings made by third parties offered to prove any element of copyright or trademark infringement should be excluded. If the

1

court allows such exhibits, certain of the exhibits are incomplete excerpts and, in fairness, the entire website should be used at trial from the forum postings pursuant to FRE 106.

GW has identified at least 57 exhibits that constitute third-party websites. A complete listing is attached as Exhibit A.[1] While some of these postings may fall within one or more hearsay exceptions, many do not: GW has indicated its intent to rely upon postings made by third parties to prove infringement and for the truth of the matters set forth in the website pages. *See, e.g.,* Ex. B, Villacci Dep. at 124:1-20; 124:22-126:20. These third party websites and forum postings are inadmissible under at least FRE 401, 402, 403, 701, 702, and 806.

In the Seventh Circuit, printouts from websites must be closely scrutinized for admissibility. *U.S. V. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) (affirming exclusion of web site postings as hearsay).

### A. Certain Forum Postings Constitute Irrelevant and Improper Lay Opinion

GW has indicated that it intends to rely upon certain internet forum postings made by anonymous users that reflect the opinions of those anonymous users regarding whether CHS's products constitute illegal copies of GW's products, copyright or trademark infringement, or the quality of CHS's products. *See* Ex. B at 124:1-20; 124:22-126:20; Ex. C Nurgle Forum Post; Ex. D, Mako Forum Post. The opinions of these lay witnesses are irrelevant and should be excluded under Rule 401 and 402. Further, lay witnesses may not offer *expert testimony* at trial – testimony that is "based on scientific, technical or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701, 702. For purposes of proving copyright or trademark infringement, the opinion of an ordinary observer that does not establish the basis for the opinion or the application of proper legal standards constitutes inadmissible lay opinions under FRE 701. *Steele v. Turner Broadcasting System, Inc.*, 646 F. Supp. 2d 185, (D. Mass. 2009) (excluding affidavits from ordinary listeners regarding substantial similarity where there was no evidence that those individuals correctly applied the pertinent legal standards); *La Resolana Architects, PA*

---

[1] Exhibits cited herein are appended to the Declaration of Bryce A. Cooper filed concurrently with this motion.

*v. Reno, Inc.*, 555 F. 3d 1171 (10th Cir. 2009) (affirming exclusion of lay witness with no personal knowledge of the facts of the case regarding substantial similarity of accused works from an ordinary consumer as improper lay opinion). There are also as many if not more online website posts explaining that CHS did ***not*** copy or infringe GW's works, but this trial should not be about these online posts, but rather about the witnesses who appear live to testify and are qualified as experts to provide opinions. All such postings should also be excluded under Rule 403, because any potential relevance is outweighed by the potential prejudice to CHS if the jury were to adopt the unsupported lay opinion of anonymous forum posters.

### B. Anonymous Forum Postings Are Inadmissible Hearsay

GW is also expected to try to offer certain of the internet forum postings by anonymous users to demonstrate consumer statements, to identify alleged similarities between the protected and accused works, or to question the quality of GW's products in support of its trademark claims. *See* Ex. A. All of the proposed exhibits constituting web postings by third parties are out-of-court statements and because they are offered for the truth of the matter asserted, they are inadmissible hearsay. *Jackson*, 208 F.3d at 637. For example, forum postings that opine whether a potential consumer might be confused regarding the source or affiliation of any product, or that such consumer believes that any CHS product bears similarity to a GW product, are inadmissible hearsay. In a similar trademark infringement case, vague allegations of consumer confusion based upon the musings of unidentified internet posters were found to be inadmissible hearsay under FRE 802. *Bobak Sausage Co. v. A&J Seven Bridges, Inc.*, 805 F.Supp.2d 503, 520 (N.D. Ill. 2011) (excluding anonymous internet forum postings offered as evidence of actual consumer confusion in trademark litigation where such postings had not been identified in discovery and constituted inadmissible hearsay); *Monotype Imaging v. Bitstream, Inc.*, 376 F.Supp.2d 877 (N.D. Ill. 2005) (finding website printout inadmissible hearsay in copyright infringement action, but admitting document limited purpose). The same would hold true for postings offered to prove the quality of CHS products or the identification of similarities.

3

Further, GW did not identify these forum postings as instances of actual confusion in response to discovery requests and GW's 30(b)(6) witness testified that GW had not received any such instances of confusion regarding the newly accused products, the vast majority of which are the subject of the anonymous forum posts. Ex. E, Responses to Interrogatories, Int. 4 and 27; Ex. F, Stevenson Dep. at 25:3-6. The failure to identify these postings as instances of actual confusion further supports their exclusion. *Bobak*, 805 F.Supp.2d at 520.

## II. GW Should Be Precluded From Introducing Images from CHS's Website

GW should not be allowed to reference CHS's website images at trial, because CHS's website images are not relevant to any claim. GW accuses CHS's actual sold products of copyright infringement—not website images but actual sold products. At trial, therefore, GW is of course permitted to refer to any actual CHS products so that the jury can handle and evaluate the products and decide whether there is any copyright infringement or not. But GW ought not be able to refer at trial to product images from CHS's websites.

*First*, CHS's website images are irrelevant because they are not accused of infringement. The things accused of copyright infringement are CHS's sold physical products, such as certain shoulder pads, and not the website images of those shoulder pads. In fact, the Court has already ruled on this issue. In its summary judgment opinion, the Court recognized that GW's claims were based not on CHS's website images but on actual products:

> GW's copyright infringement claims, however, are not based upon Chapterhouse's alleged copying of its website. Rather, GW bases its claims on the products that it sells through its website. Moreover, GW has not produced any evidence that Chapterhouse actually copied GW's website: its only evidence concerns Chapterhouse's copying of GW products.

Dkt. 258, at 25. Thus, CHS's physical products are relevant, but the website images depicting them are irrelevant under Rule 402, and should not be allowed at trial.

*Second*, if the CHS websites are allowed at trial, they are likely to cause confusion and prejudice, and should be precluded under Rule 403. That is because the accused CHS products are gray gaming pieces, and not colored, whereas the website images sometimes display painted

4

gaming pieces in color. To evaluate GW's claims of copyright infringement, the jury will be asked to compare copyrightable elements in GW's products to CHS's accused products. And the physical products themselves—both for GW and for CHS—are sold as gray unpainted pieces. Customers are able to paint CHS products in any color scheme they choose, and indeed a large part of the hobby is to custom-paint individual figures. Thus, the concern if GW is allowed to use CHS's colored website images is that the jury will likely compare the color schemes themselves rather than the underlying features on the pieces themselves.[2] Because CHS's colored two-dimensional images on its website are not the ones accused of infringing, it would be confusing and prejudicial for the jury to evaluate infringement based on those colored images rather than the underlying gray uncolored products themselves. In addition, a curative instruction also would be inadequate, because the jury will not be able to erase the colored images from their minds when evaluating infringement. Thus, pursuant to Rule 403, GW should not be allowed to show to the jury product images from CHS's website. The risk of an improper comparison is simply too great. At a minimum, if GW is allowed to use CHS's website images, it should be required to use black-and-white images and not color versions.

### III. GW Should be Precluded from Offering Expert Testimony from Its Fact Witnesses

The Court should preclude GW from presenting expert witnesses or expert testimony for two reasons. *First*, GW is barred from calling expert witnesses at trial because it failed to disclose any expert witnesses related to the remaining issues in dispute in the case, as required by FRCP 26. *Second*, GW's lay witnesses should be prohibited from offering expert testimony. Based on their deposition testimony, it appears that GW's fact witnesses expect to testify about ultimate issues like copyright infringement, trademark infringement, and profits calculations.

---

[2] The same argument applies to the images in GW's claims charts, which depict colored, painted products and not CHS's actual sold products, which are neither colored nor painted. Moreover, GW admitted in the claims chart that it painted CHS products to look like CHS website images. (Ex. K, Claim 124 at 3.) Given this open acknowledgment, it would be particularly prejudicial to allow the CHS website images to be presented at trial.

Specifically, despite acknowledging that he is not an expert on copyright law and how it works (Ex. G, 3/8/12 Merrett Deposition at 110:12-13), GW's head of intellectual property, Alan Merrett, declared himself an expert regarding the scope of GW's copyright protection and whether CHS's products infringe GW's products (Ex. H, 2/24/13 Merrett Deposition at 9:5-15) and testified about such issues during his deposition. For instance, discussing a CHS product, Merrett stated that the combination of "the coincidence of trademark abuse and illustrative similarity" constituted copyright infringement. Ex. G at 135:4-8. Referencing the Celestial Lions, Merrett stated that the copyrightable elements of the product were "the size, shape, dimensions, and design of the shoulder pad, coupled with the fact that it actually has a growling lion's head device on there." *Id.* at 195:7-11. The Court should exclude any such expert testimony that GW attempts to offer at trial.

*First*, GW's failure to disclose any expert witnesses or reports during discovery bars GW from presenting expert witnesses at trial to testify in an expert capacity. Under Rule 26, a party must disclose to the other parties the identity of any expert witness it may use at trial to present evidence under Federal Rules of Evidence 702, 703 or 705. Fed. R. Civ. P. 26(a)(2)(A), (B).

Not only did GW fail to disclose any expert witness, but they also failed to submit any written expert report outlining opinions. Fed. R. Civ. P. 26(a)(2)(B). Thus, because GW failed to "provide information or identify a witness as required by Rule 26(a)," it is "not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless the non-disclosure was justified or harmless." *Jimenez v. United States*, No. 06 C 5943, 2008 WL 3849915, at *4 (N.D. Ill. Aug. 14, 2008).

Courts have routinely granted motions *in limine* barring parties from presenting expert witnesses that were not timely disclosed pursuant to Rules 26 and 37. For example, in *Georgeson v. Dupage Surgical Consultants*, the district court barred expert testimony regarding damages where the plaintiff had never disclosed any expert witnesses. *Georgeson v. Dupage Surgical*

*Consultants*, No. 05-C-1653, 2007 WL 914207, at *2 (N.D. Ill. March 22, 2007); *see also Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F.Supp.2d 786, 790 (N.D.Ill. 2000) (granting motion *in limine* to exclude expert witness pursuant to Rules 26 and 37 who was not timely disclosed and did not file an expert report). This Court should similarly bar GW from presenting expert witnesses, given its failure to disclose such witnesses pursuant to Rule 26.

*Second*, the Court must bar GW from "proffering an expert in lay witness clothing." *See Compania Administradora v. Titan Intern., Inc.*, 533 F.3d 555, 561 (7th Cir. 2008) (internal citation omitted). The court therefore should prohibit GW's lay witnesses from offering expert testimony in relation to the ultimate issues of trademark infringement, copyright infringement, and damages computations. This is not to say that GW's witnesses may not talk about their alleged copyrights and trademarks: a lay witness <u>may</u> offer testimony on matters "upon which the witness has personal knowledge." *Georgeson*, No. 05-C-1653, 2007 WL at *2.

GW's lay witnesses may not, however, offer *expert testimony* at trial – testimony that is "based on scientific, technical or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701, 702. Ultimate issues like infringement and damages are expert issues. In *Kansas City Southern Ry. Co. v. Borrowman*, the district court precluded plaintiff's lay witness from offering expert testimony regarding the causation of property damage, but of course permitted the witness to testify about facts based on personal knowledge and observation. 2010 WL 1416889, at *2 (C.D. Ill. March 31, 2010). *See also CDX Liquidating Trust ex rel. CDX Liquidating Trustee v. Venrock Associates*, 411 B.R. 591, 602-03 (N.D. Ill. 2009) (granting the motion *in limine* to the extent that parties were "prohibited from extracting expert testimony from lay witnesses in lieu of Rule 702 expert testimony."). Similarly, in *Home Design Services, Inc. v. Trumble,* a copyright infringement case involving an architectural plan, the court affirmed the magistrate judge's ruling that – where plaintiff and its counsel made a conscious decision not to designate the creator of the architectural plan as an expert – the creator could only testify as a lay witness and could not offer opinions that purported to address "the novelty or originality" of

the design at issue from the perspective of the industry as a whole. No. 09–cv–00964–WYD–CBS, 2011 WL 1638910, at * (D. Colo. April 29, 2011).

The Court should similarly grant CHS's motion *in limine* precluding GW from presenting expert testimony through the opinion testimony of lay witnesses, including but not limited to a prohibition on any expert testimony regarding copyright infringement, trademark infringement or damages computations. GW deliberately chose not to disclose any expert witnesses pursuant to Rule 26, and did not submit any expert report. Consequently, GW should not be permitted to make an end-run around the Rules by introducing expert testimony through lay witnesses.

## IV.    GW Should Be Precluded From Presenting Evidence or Testimony about the Icon Marks

The Court should preclude GW from presenting evidence or testimony about its allegations that CHS has infringed a number of GW's design marks that GW has listed by name but whose images GW never identified during discovery (the "Icon Marks").[3] GW's pleadings and interrogatory response with respect to the Icon Marks are insufficient to put CHS on notice as to the claims asserted against it, and allowing GW to present evidence or testimony regarding the Icon Marks would severely prejudice CHS.[4]

It is within this Court's power to exclude testimony and evidence regarding marks for which sufficient notice is not given. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 460, 462-63 (S.D.N.Y. 2007) (granting motion in limine to preclude plaintiff from introducing evidence at trial concerning 11 trademarks not sufficiently identified before close of fact

---

[3] The Icon Marks include: Black Templars Icon, Blood Angels Icon, Blood Ravens Icon, Celestial Lions Icon, Dark Angels Winged Sword Icon, Exorcist Skull Icon, Flesh Tearers Icon, Howling Griffons Icon, Imperial Fists Icon, Iron Snakes Icon, Legion of the Damned Icon, Chaos Space Marines Eight-Pointed Star Icon, Soul Drinkers Icon, Salamanders Icon, Tau Empire Icon, Space Marine Tactical Squad Icon, Space Marine Assault Squad Icon, Space Marine Devastator Squad Icon, Ultramarine Icon, Adeptus Mechanicus Cog Icon, Iron Hands Icon, Space Wolves Icon, Thousand Sons Icon, and Mantis Warrior Icon.

[4] To the extent that Plaintiff argues that these Icons are trade dress, they have done nothing to indicate that argument to CHS, nor have they presented any evidence showing distinctiveness through secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 215-216 (2000) (holding that unregistered trade dress is only protectable under the Lanham Act upon a showing of secondary meaning.)

discovery). And it is Plaintiff's burden to show both the existence of a valid trademark and the image alleged to have infringed. 15 U.S.C. § 1125(a); *Packman v. Chicago Tribune Co*., 267 F.3d 628, 638 (7th Cir. 2001).

Nothing in GW's Third Amended Complaint ("TAC") (Dkt. 261), GW's Responses to CHS's Fourth Set of Interrogatories Nos. 18-20 (Ex. I), or GW's Supplemental Responses to CHS's Interrogatories Nos. 1 or 26 (Ex. J, K) identifies the image marks that CHS is alleged to have infringed, or the CHS products or uses alleged to have infringed those marks, with the requisite specificity to put CHS on notice of the claims against it. On November 27, 2012, the Court noted that GW had not yet identified with specificity which Icon Marks it contended that CHS infringed (Dkt. 256 at 28) and GW has not cured this deficiency, despite the passing of the Court's deadline for identification of the marks, the close of discovery, and repeated requests for clarification from counsel for CHS.

GW lists in its TAC the names of "symbols" that it alleges CHS has infringed. Dkt. 261, ¶ 27. However, nowhere in the TAC does GW actually disclose the *images* that the names of those Icon Marks represent.[5] GW's responses to Interrogatories Nos. 18-20 similarly do not identify any images or symbols, but rather refer to the unregistered Icon Marks simply by name, if at all.[6] (Ex. I). Moreover, none of the claim charts served by GW in response to CHS Interrogatories Nos. 1 and 26 provide a copy of the design constituting the Icon Marks alleged to have been infringed by CHS. GW's Claim Chart for Newly Accused Products, produced in response to CHS Interrogatory No. 26, lists accused CHS products 124-163, identifying with yellow highlighting those trademarks alleged to have been infringed. It does not identify a single

---

[5] GW also admits that the Icon Marks are not registered and, thus, no record of the asserted design mark can be found in the patent office.

[6] GW's response to Interrogatory No. 18 simply lists the names of the Icon Marks and dates of alleged first use in the United States. GW's response to Interrogatory No. 19 fails to identify any Icon Marks, either by name or by symbol. (Ex. I) GW's response to Interrogatory No. 20 was composed of Rule 33(d) documents documenting sales in the United States of GW products. (*Id.*) These documents do not identify any of the Icon Marks that CHS is alleged to have infringed, nor do they show any symbols associated with those marks.

Icon Mark as an alleged trademark or use by CHS of any Icon Mark that CHS is alleged to have infringed. (Exs. J, K).

The Second Revised Claim Chart served on August 3, 2012, covering accused products nos. 1-143, is also deficient, as it does not sufficiently point out the Icon Marks alleged to have been infringed by CHS. (Ex. J). For example, at entry no. 2 of the Second Revised Claim Chart, GW makes reference to the "Black Templars," stating that their icon is a black cross with a skull at its centre. However, the works referenced in that same entry of the claim chart do not feature "a black cross with a skull at its centre." The Index Astartes II 2003, page 45 instead features six different pictures, none of which is "a black cross with a skull at its centre." Even if the works referenced in the Black Templars entry did show the picture described, the accused CHS product, a studded shoulder pad that features neither a skull nor a cross and that is sold unpainted, bears no similarity to the icon described. (Ex. J, Entry No. 2). It is, therefore, unclear based on the claim chart both (1) what the "Black Templars Icon" might be and (2) which CHS product might be accused of infringing that Icon Mark. The rest of the Second Revised Claim Chart is similarly deficient.

Inclusion at trial of the Icon Marks when CHS has had no notice of either the mark asserted or the allegedly infringing use would unfairly prejudice CHS, as CHS has not been able to properly conduct or complete discovery related to the Icon Marks, given the dearth of information provided by GW concerning CHS's alleged infringement of the unregistered Icon Marks to this point.. *Tiffany (NJ) Inc.*, 576 F. Supp. 2d at 462-63 (S.D.N.Y. 2007); *see also Abbott Laboratories v. Sandoz, Inc.*, 743 F. Supp. 2d 762, 776-777 (N.D. Ill. 2010) (granting motion *in limine* to preclude defendant from introducing evidence at trial concerning pleadings not properly disclosed during discovery). In addition to its discovery requests directed to identification of the marks at issue, CHS explicitly sought identification of these icon marks in advance of the 30(b)(6) deposition of GW. Counsel for CHS contacted GW multiple times in an attempt to ascertain the nature of GW's trademark infringement claims with respect to the Icon Marks. (Ex. L, email from J. Hartzell to J. Moskin and J. Keener, February 21, 2013); First Ex.

10

M, first email from J. Hartzell to J. Moskin and J. Keener, February 22, 2013; Ex. N, second email from J. Hartzell to J. Moskin and J. Keener, February 22, 2013). GW's refusal to identify the Icon Marks has further disadvantaged CHS's ability to properly assess the claims against it and to conduct meaningful discovery about the nature of those claims.

GW's failure to identify the marks that it alleges are infringed by CHS or the circumstances by which CHS has allegedly infringed those marks has disadvantaged CHS, and GW should be precluded from introducing any evidence regarding CHS's alleged infringement of the Icon Marks.

V.      **Due to GW's Spoliation of Evidence, CHS is Entitled to an Adverse Inference that GW's Designers Accessed the Third-Party Reference Materials in GW's Studios**

CHS asks the Court to instruct the jury that each of GW's authors reviewed each of the available art references that were in GW's offices. It is not disputed that GW's offices had many references in them, including gaming guides, heraldry design compendiums, and military history books.[7] CHS issued a Notice of Inspection for these materials on December 12, 2012. *See* Ex. S. The purpose of the inspection was to collect evidence about which items different GW authors may have reviewed when developing the products at issue in this case, and to rebut the claim that the authors were working completely from scratch. GW eventually allowed CHS to see the reference materials, permitting an office visit only weeks ago, on February 25, 2013. But before that inspection, GW rearranged all of the reference materials by picking them up from individual offices, packing them into boxes, and moving the boxes into a storage area for viewing. In this way, as later correspondence confirmed, CHS could not see which designers of the works at issue in this case had access to which particular reference materials. Ex. P, email chain re GW Inspection. Making matters worse, GW said it could not even provide an index showing who

---

[7] GW's authors had access to such materials when designing the products at issue in this case. And it was normal procedure for those GW authors to review the reference materials as part of their design process. As Games Workshop graphic illustrator Neil Hodgson stated, "Everybody who works in the studio or most of the creative people who work in the studio . . . have a library of books like medieval armor and stuff like that through the ages and flavor pieces." Ex. Q, Hodgson Dep. at 38:20-23.

had which reference materials. *Id.* CHS's case is hampered by not having the evidence linking references to authors, so as to definitively show the jury that the GW authors were not working from a blank slate.

### A. GW's Deliberate Removal of Reference Materials Merits a Curative Inference Jury Instruction

GW's deliberate removal of reference materials merits a curative inference jury instruction stating that each of GW's authors had access to and viewed all of the reference materials. Any other result will prejudice CHS at trial, because GW's authors can claim that they never saw any particular reference material, and GW has now spoliated the very evidence needed to rebut that claim.

The appropriate remedy when a party purposely makes evidence unavailable is to grant a motion *in limine* and provide an adverse inference jury instruction. *See Taylor v. AFS Technologies, Inc.*, No. CV–09–2567–PHX–DGC, 2010 WL 3283570, at *1 (D. Ariz. Aug. 18, 2010) (asking plaintiff to seek adverse jury instruction for spoliation in a motion *in limine*); *Potomac Elec. Power Co. v. Electric Motor Supply, Inc.*, 192 F.R.D. 511, 515 (D.Md. 2000) (same); *Azevedo v. City of Fresno*, No. 1:09–CV–375 AWI DLB, 2010 WL 2353526, at *25 (E.D. Cal. June 9, 2010) (same).

The Court has wide discretion to address motions *in limine* regarding spoliation and may permit "an adverse inference to be drawn against the [opposing] party as a means of leveling the playing field and sanctioning the conduct of [that] party." *Potomac Elec. Power Co.*, 192 F.R.D. at 514. In *DeMeo v. Kean*, for example, the district court granted a motion *in limine* finding spoliation of evidence, and granted an adverse jury instruction, noting that the plaintiff's case would have been helped by the spoliated evidence. 754 F.Supp.2d 435, 449-50 (N.D.N.Y. 2010) (reconsideration denied by *Demeo v. Kean*, 2011 WL 743849 (N.D.N.Y. February 23, 2011)). Here, the Court should similarly "level the playing field" between CHS and GW because GW destroyed the linking custodian evidence that would have helped CHS show that specific authors drew from specific references when creating the works at issue in this case. CHS is prejudiced,

because GW's authors can now claim they did not see or use individual references, and they can no longer be definitively tied back to those individual authors. The Court should remedy this prejudice with a curative jury instruction stating that each of GW's authors had access to and viewed all of the reference materials examined by CHS during its February 25, 2013 inspection, when designing the products at issue in this case.

**B. In the Alternative, GW's Spoliation of Evidence also Warrants an Adverse Jury Instruction Pursuant to Rule 37.**

The Court has another independent basis to grant CHS's requested relief, as discovery violation sanctions under Rule 37 for spoliating evidence. *See Krumwiede v. Brighton Associates, L.L.C.*, No. 05-C-3003, 2006 WL 1308629, at *9 (N.D. Ill. May 8, 2006). Rule 37 sanctions are appropriate where a noncomplying party has acted "either with willfulness, bad faith or fault" and the opposing party has been prejudiced by the party's spoliation of evidence. *Id.* at *10; *Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992); *Oyebade v. Boston Scientific Corp.*, 2012 WL 4020971, at *2 (S.D. Ind. 2012).

GW spoliated evidence in bad faith. There is no dispute that many of the reference materials, in the ordinary course of business, were maintained in individual offices. Ex. Q, Hodgson Dep. at 38:20-23, 41:11-14; Ex. R, Footitt Dep. at 46:21-48:1.) It was only after CHS issued its notice of inspection that GW rearranged those materials, by taking them out of individual offices, packing them in boxes, and moving the boxes to a separate area. Making matters worse, GW later confirmed it could not even provide an index saying who had which materials. Ex. P. Thus, in response to CHS' request for an inspection, GW had destroyed the very evidence CHS was looking to find.

 GW's actions have prejudiced CHS. A party "suffers prejudice due to spoliation of evidence when the lost evidence prevents the aggrieved party from using evidence essential to its underlying claim." *Krumwiede*, No. 05-C-3003, 2006 WL at *10. Sanctions for spoliation of evidence include "permitting adverse inferences" and must "be proportionate to the circumstances surrounding the failure to comply with discovery." *Id.* An adverse inference

instruction is an appropriate sanction for spoliation of evidence where that sanction holds the party accountable for the substance of the spoliated evidence and is "properly remedial" or minimizes prejudice to the opposing party. *F.T.C. v. Asia Pacific Telecom, Inc.*, 788 F.Supp.2d 779, 791 -792 (N.D. Ill. 2011).

This discovery relief is timely sought because GW only recently finally allowed the inspection to occur on February 25, 2013. Thus, a sanction providing for an adverse inference jury instruction would serve the goals of Rule 37 by remedying the prejudice to CHS caused by GW's rearranging of the reference materials so they could not be seen as kept in the designers' workspaces in the ordinary course of business, and GW's subsequent inability to provide an index have prejudiced CHS. The Court should therefore issue an instruction stating that GW's authors all had access to and viewed all of the reference materials examined by CHS during its February 25, 2013 inspection. Such an instruction is directly in line with the goals of Rule 37 – it would hold GW to account for its willful refusal to permit proper inspection or turn over the index and would remedy the undue prejudice faced by CHS.

## <u>CONCLUSION</u>

For the foregoing reasons, CHS's Motion *in Limine* should be granted.

Dated: March 27, 2013        Respectfully submitted,

                           /s/ Bryce A. Cooper

                           Jennifer A. Golinveaux (CA Bar No. 203056)
                           Thomas J. Kearney (CA Bar No. 267087)
                              WINSTON & STRAWN LLP
                             101 California Street
                           San Francisco, CA 94111-5802
                           Phone: (415) 591-1000
                           Fax: (415) 591-1400
                           jgolinveaux@winston.com
                           tkearney@winston.com

Imron T. Aly (IL Bar No. 6269322)
Bryce A. Cooper (IL Bar No. 6296129)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600
Fax: (312) 558-5700
ialy@winston.com
bcooper@winston.com

Julianne M. Hartzell (IL Bar No. 6275093)
Sarah J. Kalemeris (IL Bar No. 6303644)
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive
Willis Tower Suite 6300
Chicago, IL 60606
Phone: (312) 474-6300
Fax: (312) 474-0448
jhartzell@marshallip.com
skalemeris@marshallip.com

## CERTIFICATE OF SERVICE

I, Bryce A. Cooper, an attorney, hereby certify that on March 27, 2013, I caused to be filed electronically the foregoing CHAPTERHOUSE STUDIOS LLC'S MOTION IN LIMINE with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

_____ /s/  Bryce A. Cooper _____