**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **GAMES WORKSHOP LIMITED,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )     **Case No. 10 C 8103** |
| | ) |
| **CHAPTERHOUSE STUDIOS, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Games Workshop (GW) has sued Chapterhouse Studios (Chapterhouse),

alleging copyright and trademark infringement and related state and federal claims.  The

parties previously filed cross-motions for summary judgment, which the Court partly

granted and partly denied, leaving a good many of GW's claims for trial.  *Games*

*Workshop Ltd. v. Chapterhouse Studios, LLC*, No. 10 C 8301, 2012 WL 5949105 (N.D.

Ill. Nov. 27, 2012).  The Court later granted GW leave to amend its complaint to add

similar claims that it had asserted in a second lawsuit against Chapterhouse.

Each side has again moved for summary judgment.  In addition, Chapterhouse

has asked the Court to reconsider part of its prior summary judgment ruling and award

Chapterhouse costs that it incurred in obtaining previously undisclosed correspondence

between GW and the United States Copyright Office.  For the reasons stated below, the

Court (1) partly grants and partly denies Chapterhouse's motion for reconsideration, (2)

denies Chapterhouse's motion for summary judgment, and (3) partly grants and partly denies GW's motion for summary judgment.

## Background

The Court described the relevant factual background in its prior summary judgment decision. The Court assumes familiarity with that decision.

In connection with this lawsuit, the parties have exchanged numerous requests for documents. On September 9, 2011, Chapterhouse asked GW to produce "all correspondence with any government agency or private copyright registration service" concerning any work at issue in the case. Def.'s Mot. for Recons., Ex. 2 at 5. GW responded that it believed it had disclosed all responsive documents but would provide any additional responsive documents in its possession. *Id.*, Ex. 3 at 2.

On November 2, 2012, counsel held a telephone conference to discuss the parties' contemplated motions *in limine*. According to Chapterhouse, its counsel expressed concern to lead counsel for GW about not receiving any further correspondence between GW and the Copyright Office. Although the parties dispute how GW's attorney reacted, it is undisputed that at some point soon after the telephone conference, GW agreed to supplement its response to the discovery request.

Chapterhouse's attorney states in an affidavit that in late October 2012, Chapterhouse undertook its own investigation into correspondence between GW and the Copyright Office, and on November 7, it requested documents directly from the Copyright Office for two of GW's copyright applications, including an application for Assault Squad shoulder pads (implicated by entries 46–48 in GW's second revised claim chart). On December 12, 2012, approximately two weeks after the Court had

issued its ruling on the motions for summary judgment, Chapterhouse received from the Copyright Office correspondence regarding the Assault Squad shoulder pads application, which revealed a number of communications between GW's attorney and the Copyright Office. GW did not produce any of this correspondence until January 4, 2013, together with its response to Chapterhouse's first motion for reconsideration.[1]

Documents that Chapterhouse obtained from the Copyright Office reflect that Robin Jones, a Copyright Registration Specialist, e-mailed GW's attorney on June 7, 2012 in connection with GW's application. Jones expressed a number of concerns, many of which appear to be requests for clarification. In her e-mail, however, Jones stated that "we cannot register the sculpture portion as it is too minimal." *Id.*, Ex. 5 at 3. Approximately twenty days later, GW's attorney responded, asking to speak with Jones about the "question [she had] regarding the sculptural elements." *Id.*, Ex. 5 at 4.

Jones did not respond to the e-mail from GW's attorney until November 7, 2012, after GW's attorney had called the Copyright Office to speak with her about the pending application. In her response, Jones stated that "[t]he email stated that the 'sculpture' was to[o] minimal (it is basically an 'X') and could not be registered." *Id.*, Ex. 5 at 7. GW's attorney replied to Jones on December 7, noting that the Court's summary judgment decision "ruled that the basic shape of the Games Workshop shoulder pad is copyrightable (even without surface ornamentation)." *Id.*, Ex. 5 at 10. According to correspondence produced by GW in January 2013, Jones responded to GW's attorney on December 11: "[T]his particular shoulder pad submitted is not copyrightable. [I]t is

---

[1] The Court previously granted Chapterhouse's first motion for reconsideration in part, dismissing with prejudice GW's claims for copyright infringement of products listed in entries 115–16 and 122 of the second revised claims chart. Chapterhouse withdrew the remainder of its motion. *See* docket entry 273. Chapterhouse filed its second motion for reconsideration (the current motion) on the same day that it filed its current motion for summary judgment.

simply circular, with an x or plus sign on it." *Id.*, Ex. 6 at 2. In response, GW's attorney again brought up the Court's previous ruling and discussed the evidence upon which the Court had relied. On December 27, 2012, Carol Frenkel, a Supervisory Registration Specialist, notified GW's attorney that she had taken over the application and would make a determination shortly.

On January 4, 2013, Frenkel wrote GW a letter stating that the Copyright Office could not register the work. The letter laid out the basic standards for protection under the federal copyright law and stated that the office had "determined that this particular work will not support a claim to copyright for 2-Dimensional artwork or sculpture under the standards described above." *Id.*, Ex. 7 at 1.

## Discussion

### I.    Chapterhouse's motion for reconsideration and costs

Chapterhouse asks the Court to reconsider its earlier ruling on the copyrightability of GW's shoulder pads based on the Copyright Office's decision to deny registration of the Assault Squad shoulder pads. Chapterhouse argues that the Court should defer to the Copyright Office's finding. It also asks the Court to award Chapterhouse the $1,039 it spent conducting an independent investigation into GW's correspondence with the Copyright Office.

#### A.    Motion for reconsideration

The Court's earlier summary judgment ruling is interlocutory in nature and thus may be reconsidered at any time. *See, e.g., Morningware, Inc. v. Hearthware Home Prods., Inc.*, No. 09 C 4348, 2011 WL 1376920, at *1 (N.D. Ill. Apr. 12, 2011). The appropriate purpose of a motion for reconsideration is to correct manifest errors of law

or fact, or to present newly discovered evidence. *Hicks v. Midwest Transit, Inc.*, 531 F.3d 467, 474 (7th Cir. 2008). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

Chapterhouse contends that the Copyright Office's January 4, 2013 letter rejecting GW's application for copyright registration is newly discovered evidence and is persuasive authority to which the Court should defer. Accordingly, Chapterhouse seeks reconsideration with regard to the GW products identified in entries 4–7, 12–13, 19–22, 46–62, 64–65, 97–98,[2] and 101–02 of GW's second revised copyright claim chart. GW argues that the Court should not give deference to the Copyright Office's rejection of its application because, among other things, the January 2013 letter does not constitute final agency action.

Courts differ with regard to what level of deference, if any, should be given to a rejection by the Copyright Office. *Compare Norris Indus., Inc. v. Int'l Tel. & Tel. Corp.*, 696 F.2d 918, 922 (11th Cir. 1983) ("The district court properly gave some deference to the expertise of the Register in its decision."), *with Aqua Creations USA Inc. v. Hilton Hotels Corp.*, No. 10 Civ. 246, 2011 WL 1239793, at *3 (S.D.N.Y. Mar. 28, 2011) ("Where the Copyright Office denies registration, and the unsuccessful applicant subsequently brings an infringement action, courts nonetheless make an independent

---

[2] Chapterhouse also asks for reconsideration regarding products identified in entries 99–100 because GW's claimed copyright in them is based solely on the size and shape of the shoulder pads. In its previous decision, however, the Court noted that GW had dropped all copyright claims implicated by products identified in entries 99 and 100 of the second revised claim chart. *Games Workshop*, 2012 WL 5949105, at *4. To the extent GW maintains any copyright claims for products in entries 99–100, the Court grants Chapterhouse's motion and dismisses the claims with prejudice.

determination as to copyrightability.").  Further complicating the issue is the fact that the Copyright Office itself does not consider correspondence to be "final agency action" until the Review Board renders a decision after a second request for reconsideration, 37 C.F.R. § 202.5(g), and GW has not submitted its application for even a first reconsideration.  The Court need not resolve this issue, however, because even assuming that the Copyright Office's rejection is entitled to some deference, the Court nonetheless concludes that GW's shoulder pads are eligible for copyright protection.

Copyright Registration Specialist Jones denied GW's copyright claim on the basis that the sculpture portion of the shoulder pads is too minimal; she stated that it is "simply circular, with an x or plus sign on it."  Def.'s Mot. for Recons., Ex. 6 at 2. Jones's initial response, however, indicated that GW may be able to obtain registration for the two-dimensional "graphics of the pads . . . ."  *Id.*, Ex. 5 at 3.  Based upon the graphics included in entries 46–48 of the second revised claim chart, which the Court assumes was the two-dimensional artwork submitted to the office, the Court does not see any basis to extend copyright protection to one and not the other.  To the contrary, the graphic is by nature two-dimensional and appears more rudimentary and commonplace than the three-dimensional shoulder pads that GW sells:




At some point the Copyright Office changed its mind about the two-dimensional artwork, and in the January 2013 letter that Supervisory Registration Specialist Frenkel sent to GW, she concluded that both the two-dimensional artwork and the sculpture were not copyrightable.  Frenkel's letter, however, contained no explanation for this determination.  The letter simply recited, in summary fashion, several basic copyright law principles—the claimant must have independently created the work, the work must possess at least a minimal amount of creativity, and copyright law does not protect ideas or concepts—and it concluded, in a single sentence, that "[a]fter careful consideration, we have determined that this particular work will not support a claim to copyright for 2-Dimensional artwork or sculpture under the standards described above." *Id.*, Ex. 7 at 1.  This conclusory statement does not identify what standard or principle of copyright law Frenkel relied upon in rejecting GW's claim.  Even assuming that Frenkel concluded the item was not sufficiently creative, the letter gives no hint regarding why or how she came to that conclusion.

In addition, the Court notes that in its previous summary judgment ruling, the Court considered the context within which the shoulder pads exist.  The Court noted that the shoulder pads were unusually large as compared to the size of the Space Marine's head and that the proportional difference was sufficient to constitute a creative addition sufficient to afford the shoulder pads copyright protection.

For these reasons, even were the Court to afford some deference to the Copyright Office's decision to deny GW's claim, the Court still would conclude that GW has crossed the modest threshold of creativity needed to obtain copyright protection. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ("To be sure,

the requisite level of creativity is extremely low; even a slight amount will suffice."). The Court therefore denies Chapterhouse's motion for reconsideration.

### B.    Chapterhouse's investigation costs

Chapterhouse has asked the Court to award it $1,039.00 in out-of-pocket costs that it incurred investigating two of GW's applications to and correspondence with the Copyright Office as described earlier.  In support of its motion, Chapterhouse has attached as an exhibit an itemized invoice from Peerless Patents, Ltd., a document retrieval service that Chapterhouse hired to request and obtain the documents from the Copyright Office.  Def.'s Mot. for Recons., Ex. 4.  The invoice details the expenses that Chapterhouse incurred, including:  (a) $80 for certified copies of the two "Copyright Application or Registration Correspondence File[s]"; (b) $50 for a "Rush Processing Service Fee"; (c) $50 for transportation charges to and from the Copyright Office; (d) $784 for copyright disbursements or fees, a figure that is broken down into subcategories; (e) $35 for overnight delivery; and (f) a $40 administrative fee.

Federal Rule of Civil Procedure 26(e) imposes upon a party who has responded to a request for production of documents a duty to supplement its response "in a timely manner" once the party learns that the response is incorrect or incomplete.  Fed. R. Civ. P. 26(e)(1); *see also Allen v. Bake-Line Prods., Inc.*, No. 98 C 1119, 2001 WL 883693, at *1 (N.D. Ill. Aug. 6, 2001) ("The duty to supplement discovery requests lingers on without solicitation by the requesting party.").  If a party fails to comply with Rule 26(e)'s requirements, a court may order payment of reasonable expenses caused by the failure, unless the failure "was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "Courts generally have broad discretion in deciding the appropriate sanction

for a party's discovery violation, and the type of sanction administered generally depends on the unique factual circumstances of the case." *Minuteman Int'l, Inc. v. Nilfisk-Advance*, No. 03 C 223, 2004 WL 2533626, at *3 (N.D. Ill. Sept. 28, 2004) (internal quotation marks omitted).

In deciding whether to impose sanctions based on a party's failure to comply with the disclosure requirements of Rule 26(a), courts consider: (1) any prejudice or surprise to the other party, (2) the party's ability to cure that prejudice, (3) the likelihood of disruption to the trial, and (4) evidence of bad faith or willfulness involved in not disclosing the evidence earlier. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003); *see also Newman v. Metro. Pier & Exposition Auth.*, 962 F.2d 589, 591 (7th Cir. 1992) (sanctioning court should consider circumstances of failure and be guided by proportionality).

Having considered these factors, the Court concludes that GW should pay the expenses that Chapterhouse incurred in obtaining GW's correspondence with the Copyright Office. Beyond the duty to supplement that Rule 26(e) imposes, Chapterhouse specifically asked GW to supplement its production of correspondence with the Copyright Office. GW did not do so but instead withheld correspondence that it knew Chapterhouse had not received, while attempting to contact the Copyright Office for further clarification. GW's lead counsel states in an affidavit that after opposing counsel sent him Chapterhouse's September 9, 2011 discovery requests, he "noticed that the Copyright Office had never responded to [his] June 26 email concerning the application for the Assault Squad Shoulder pad." Pl.'s Resp. to Def.'s Mot. for Recons., Ex. 1 at 4. Rather than disclose the earlier e-mail exchange, however, GW pursued its

dealings with the Copyright Office for nearly two more months before disclosing these communications to Chapterhouse. Even if GW "assumed the matter was resolved" when it did not receive a response from the Copyright Office in June 2012, it knew otherwise on November 7, when Robin Jones sent GW's attorney an e-mail indicating for a second time that she was rejecting at least part of GW's application. *Id.* at 5. And if GW's failure was originally due to oversight based on the large number of document requests that it received from Chapterhouse, it surely was aware on November 2, when Chapterhouse expressed concern over this particular production request, that Chapterhouse's attorneys had not received the correspondence in question from GW.

GW's attorney stated, in an affidavit that he filed on January 4, 2013 in response to Chapterhouse's earlier motion to reconsider, that at the time in question, the Copyright Office had not yet addressed the copyrightability of the shoulder pads "in any substantive way." Docket entry 270-1 at 1. In his more recent affidavit dated March 13, 2013, which GW's attorney submitted with GW's response to Chapterhouse's second motion for reconsideration, he again states that as of January 4, he "still had received no substantive communication from the Copyright Office (only a promise to respond to my June 26, 2012 email) . . . ." *Id.* at 1. This statement does not appear to be accurate. Prior to Carol Frenkel's January 4 letter denying GW's application, GW's attorney received several e-mails from various Copyright Office personnel, most of which commented on the copyrightability of the sculptured shoulder pad. Considering the circumstances, there is a strong indication that GW's failure to disclose its correspondence with the Copyright Office was deliberate or at least reckless.

The prejudice to Chapterhouse is evidenced by its filing of the first motion to reconsider, in which it relied on the contents of the correspondence (Chapterhouse withdrew the motion in part for reasons not relevant here). Though the motion was unsuccessful, it was a legitimate and colorable motion, made after Chapterhouse undertook its own investigation and uncovered documents that GW had an ongoing responsibility to produce. The Court includes that it is appropriate to shift to GW the $1,039 in expenses that Chapterhouse incurred as a result of GW's failure to timely supplement its document production.

## II.    Chapterhouse's motion for summary judgment

Chapterhouse has moved for summary judgment on nine products identified in GW's claim chart regarding newly accused products (the "new products claim chart"). Specifically, Chapterhouse contends that the GW products identified in entries 146–48, 151–52, 155–57, and 163 on the new products claim chart are not entitled to protection under copyright law. The only products that Chapterhouse contends are not copyrightable in GW's new claims, however, are various shoulder pads. The Court addressed Chapterhouse's arguments in detail in its previous decision and discussed the copyrightability of the shoulder pads again in addressing Chapterhouse's motion for reconsideration. Chapterhouse has not made any additional arguments in support of its position beyond those that the Court has already considered and rejected. Additionally, the Court finds that Chapterhouse's submission of a report by a new expert witness does not warrant a different conclusion, given the low threshold of creativity needed to warrant copyright protection. *See FASA Corp. v. Playmates Toys, Inc.*, 912 F. Supp. 1124, 1147 (N.D. Ill. 1996) (evidence of prior similar works does not defeat author's

claim to copyright protection). The Court therefore denies Chapterhouse's motion for summary judgment.

### III. GW's summary judgment motion

GW contends that it is entitled to partial summary judgment on three points. First, GW contends that it is entitled to summary judgment regarding the question of its ownership of the allegedly copied products. Second, GW contends that Chapterhouse has admitted GW's prior use of eighty-seven of its claimed trademarks and that as a result, the Court should find that GW has established this element of trademark infringement. Finally, GW argues that the Court should strike a number of the affirmative defenses that Chapterhouse has asserted.

Summary judgment is proper when "the admissible evidence, construed in favor of the non-movant, reveals no genuine issue as to any material facts and establishes that the movant is entitled to judgment as a matter of law." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 690–91 (7th Cir. 2010). A genuine issue of material fact exists if there is sufficient evidence to allow a reasonable jury to find in favor of the non-movant. *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 859 (7th Cir. 2010). On a motion for summary judgment, a court does not weigh evidence or determine the credibility of any properly considered testimony. *Berry*, 618 F.3d at 691.

### A. GW's ownership of copyrights

The Copyright Act provides a federal cause of action for "[t]he legal or beneficial owner of an exclusive right under a copyright . . . ." 17 U.S.C. § 501(b). Ownership of a valid copyright, therefore, is one of the elements a plaintiff must prove to prevail in a

copyright infringement lawsuit. *Feist Publ'ns*, 499 U.S. at 361; *HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 385 (7th Cir. 2011).

In its response to GW's motion for summary judgment, Chapterhouse concedes that GW owns the exclusive rights for all but one of the works at issue in the litigation: an illustration of a fictional "Lightning Claw" weapon.  The illustration, created by Nick Coleman, was included in a 1991 GW book on Warhammer 40,000 (entries 132 and 133 on the new products claim chart).  Chapterhouse contended in its motion that GW has never claimed Coleman as a current or former GW employee and had not produced a confirmatory assignment documenting a previous assignment of rights in the illustration.  Chapterhouse appeared to agree, however, that a confirmatory assignment from Coleman would resolve the issue of GW's ownership of the "Lightning Claw" illustration in entries 132 and 133.  In its reply, GW stated that it did not yet have a confirmatory assignment but expected to receive one within a matter of days.  Pl.'s Reply, Stevenson Decl. at 2.  On March 29, GW filed a confirmatory assignment by Coleman.  *See* docket entry 330.  This document confirms GW's prior and continuing ownership of the "Lightning Claw" illustration.  GW is entitled to a finding in its favor on the issue of its ownership of Coleman's illustration as well as on the issue of its ownership of copyrights for all of its other products still at issue in this litigation.

## B.     GW's prior use of trademarks

GW next contends that Chapterhouse has conceded that GW made prior use in commerce of all the trademarks at issue in the case.  GW relies on deposition testimony by Nick Villacci, Chapterhouse's principal owner and designated Rule 30(b)(6) witness, regarding Chapterhouse's prior use in commerce of the 107 claimed trademarks.

Specifically, GW asked Villacci to look through all of the listed trademarks and identify any marks for which "you think you created the name or the icon before Games Workshop . . . ." Pl.'s Reply, Ex. A at 176. Villacci listed a number of items from the list, and concluded, "[t]hat's it." *Id.*, Ex. A at 179. GW argues that aside from the trademarks that Villacci expressly mentioned,[3] Chapterhouse has conceded GW's prior use in commerce of the listed trademarks.

GW's alleged trademarks include both registered and unregistered trademarks. *See* 15 U.S.C. §§ 1114(1) (cause of action for infringement of a registered mark) & 1125(a) (cause of action for infringement of rights in mark acquired by use). Under the Lanham Act, registration is *prima facie* evidence of the claimant's ownership of a valid trademark. *Id.* § 1115(a); *see Cent. Mfg., Inc. v. Brett*, 492 F.3d 876, 881 (7th Cir. 2007); *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Chapterhouse has offered no evidence suggesting that it used any of GW's registered marks in U.S. commerce before GW did so. GW is entitled to a finding that as to its registered marks, this element of its Lanham Act claim has been established.

By contrast, when a plaintiff claims infringement of an unregistered trademark, it bears the burden to establish both that the mark is protectable and that the plaintiff has "engaged in prior use and ownership." *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*, 440 F. Supp. 2d 249, 269 (S.D.N.Y. 2006) (internal quotation

---

[3] GW contends that Villacci identified twenty marks for which Chapterhouse contends it has seniority of use in U.S. commerce. *See* Pl.'s Br. at 5 n.4. In fact, Villacci named twenty-five marks in response to GW's question quoted above. The Court notes that Villacci's testimony is not a model of clarity regarding whether he disputes GW's prior use vis-à-vis Chapterhouse, GW's prior use as against the world, or the absence of any Chapterhouse product bearing the mark. Because GW had the opportunity to clarify matters but did not do so, the Court will construe any ambiguous testimony as indicating a dispute by Chapterhouse regarding GW's prior use.

marks omitted) (citing *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003));

*G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 676 F. Supp. 1436, 1466 (E.D. Wis.

1987). Thus GW bears the burden of establishing its prior use vis-à-vis Chapterhouse

of all its claimed unregistered trademarks.

As the Court noted in its previous summary judgment decision, GW has

produced a detailed spreadsheet containing the names of each product bearing the

marks at issue and listing the annual amount of U.S. sales for the product from 2004

until the present. Chapterhouse did not begin to sell products of any kind until 2008,

four years later. That is sufficient to establish GW's prior use of the marks. The only

evidence that Chapterhouse has submitted to rebut that evidence is Villacci's testimony

at his deposition. Chapterhouse argues that GW failed to lay a proper foundation

regarding Villacci's knowledge of GW's prior use—he knows only when *Chapterhouse*

began selling products bearing any of the claimed marks—and that Villacci's failure to

name other marks does not amount to an admission. Without Villacci's testimony,

however, Chapterhouse has no evidence that gives rise to a genuine issue of material

fact regarding GW's seniority of use of the marks. Thus the Court agrees that, except

for the marks for which Villacci disputed GW's prior use, GW is entitled to a finding that

it has established prior use in commerce. The Court's finding resolves this issue for all

but twenty-five of the trademarks. [4]

---

[4] The trademarks for which GW still must establish prior use in commerce are: (1) Blood
Ravens, (2) Chaplain, (3) Exorcist, (4) Flesh Tearers, (5) Heresy Armour, (6) Horus Heresy, (7)
Howling Griffons, (8) Jetbike, (9) Jump Pack, (10) Lightning Claw, (11) Mycetic Spore, (12) Soul
Drinker, (13) Storm Shield, (14) Tervigon, (15) Tyranid Bonesword, (16) Tyranid Lashwhip, (17)
Ymgarl, (18) Blood Ravens Icon, (19) Celestial Lions Icon, (20) Dark Angels Winged Sword
Icon, (21) Exorcist Skull Icon, (22) Howling Griffons Icon, (23) Iron Snakes Icon, (24) Chaos
Space Marines Eight-Pointed Star Icon, and (25) Soul Drinkers Icon.

GW also contends that it is entitled to summary judgment on the question of its ownership of eight of the twenty-five marks at issue, based on a disclaimer that Chapterhouse has posted on its website.[5] Chapterhouse's disclaimer lists a number of products and trademarks—among them "Space Marine chapters" and "Space Marine chapter logos"—that are registered, trademarked, or copyrighted by GW. It then declares: "Used without permission. No challenge to their status intended. All Rights Reserved to their respective owners." *See* docket entry 213-9 at CHS 30. GW argues that because these eight marks are Space Marine chapter logos, it is entitled to summary judgment on the question of its ownership of trademark rights for the marks.

The Court disagrees. Chapterhouse's disclaimer concedes that it does not claim exclusive ownership (or ownership at all) of any marks for Space Marine chapters or their logos. But the disclaimer does not confer upon GW the exclusive rights to those marks. *See Int'l Kennel Club of Chi. v. Mighty Star, Inc.*, 846 F.2d 1079, 1085–87 (7th Cir. 1988) (analyzing protectability of unregistered mark without reference to defendant's disclaimer). Chapterhouse's disclaimer does not mention these eight products by name, and thus it is not sufficient to establish GW's ownership of these eight marks.

### C. Chapterhouse's affirmative defenses

Finally, GW asks the Court to strike twenty-three of the twenty-four affirmative defenses that Chapterhouse asserted in its answer to GW's third amended complaint. In response to GW's motion for summary judgment, Chapterhouse has withdrawn thirteen of its asserted defenses, including affirmative defenses 2, 8, 10–17, and 19–21.

---

[5] Specifically, the eight marks include: (1) Blood Ravens Icon, (2) Celestial Lions Icon, (3) Dark Angels Winged Sword Icon, (4) Exorcist Skull Icon, (5) Howling Griffons Icon, (6) Iron Snakes Icon, (7) Chaos Space Marines Eight-Pointed Star Icon, and (8) Soul Drinkers Icon.

Additionally, Chapterhouse acknowledges (and GW does not dispute in its reply) that GW is not seeking statutory damages for any of its claims, and thus affirmative defenses 22 and 23 are moot.

Chapterhouse concedes that affirmative defenses 5—that any copying was only *de minimis*—and 6—that Chapterhouse independently created its products—are not actually affirmative defenses at all, but rather involve the flip side of elements that GW must establish to prevail on its copyright claims. Although Chapterhouse is free to argue that GW has failed to meet its burden of proving copying and a sufficient degree of copying to give rise to an infringement claim, these are not appropriate "affirmative" defenses. Chapterhouse's affirmative defense 3—that GW lacks standing to enforce its alleged copyrights—is also not an affirmative defense, but rather a matter that a copyright holder is required to establish. *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). For these reasons, the Court strikes Chapterhouse's affirmative defenses 2–3, 5–6, 8, 10–17, and 19–23. The Court also strikes affirmative defense 1, in which Chapterhouse contends that GW has failed to state a cause of action, because the time for filing a Rule 12(b)(6) motion has long since come and gone.

This ruling leaves affirmative defenses 4, 7, 9, 18, and 24. GW seeks to strike all of these other than affirmative defense 18.

### 1. Copyright fair use (defense 4)

Affirmative defense 4, which concerns GW's copyright claims, is a defense of fair use. As an initial matter, GW complains that Chapterhouse did not identify its products that it contends are protected as a fair use of GW's copyrights until after depositions

had been concluded.  As the Court noted in its previous decision, GW never moved for sanctions on this basis, nor did it address the application of the standards for exclusion of unproduced evidence under Federal Rule of Civil Procedure 37.  Thus the Court will not consider GW's request to preclude Chapterhouse's evidence of fair use in connection with the summary judgment process.

Fair use of a copyrighted work is a defense to a claim of copyright infringement. 17 U.S.C. § 107.  Section 107 lists four factors to be considered in determining whether the defendant has made fair use of the copyrighted work:

> (1) [T]he purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.*  These four factors are illustrative, rather than exhaustive, and they must be "explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577–78 (1994); *Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 522 (7th Cir. 2002).  Fair use thus requires a fact-intensive inquiry that often precludes a determination at summary judgment.  *See Coleman v. ESPN, Inc.*, 764 F. Supp. 290, 294 (S.D.N.Y. 1991) (citing *Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1255 (2d Cir. 1986)).

The first statutory factor does not strongly favor one party over the other in this case.  Although the ultimate aim of Chapterhouse's alleged copying was undoubtedly for commercial sale, it has presented evidence from which a reasonable jury could

conclude that in copying GW's products, it added something new with a different character—namely, that its products are "transformative." *See Campbell*, 510 U.S. at 579. Specifically, Chapterhouse advertises a number of its products as items that can "convert" one GW product or fictional character into another fictional character, and it sells other products that present "alternative" designs to those sold by GW.

Factor three is similarly disputed. As discussed above and in the Court's previous decision, the Court has already determined that a jury reasonably could go either way regarding the extent to which Chapterhouse's products copy GW's products.

Factor two tends to favor GW, although the extent to which this is so remains a disputed factual question. This Court has concluded that GW's products are sufficiently original to warrant copyright protection. Additionally, GW's products are all related to a fictional post-apocalyptic universe, a tale that began twenty-five years ago with the publication of *Rogue Trader*. Yet the characters that GW has created undoubtedly share many of their traits with other fictional characters in science-fiction and fantasy genres, and the Space Marines include traits and armor similar to those worn by real soldiers throughout history. Thus although Warhammer 40K is undeniably fictional, many components of GW's products bear substantial similarly to items found throughout history. Thus, the degree to which factor two favors GW is not clear.

Factor four tilts the most strongly in favor of GW. Although Chapterhouse contends that its products only complement the existing GW market rather than supersede it, the evidence submitted by both parties suggests that the core of Chapterhouse's business model is to attract GW customers and sell them "alternative" figurine components at a lower cost.

In sum, although some of the factors favor GW on the question of fair use, there are factual disputes and issues regarding weight that make it inappropriate to enter summary judgment in GW's favor on this defense.

## 2. Preemption (defense 7)

In its third amended complaint, GW asserts three state-law claims: (1) violation of the Illinois Deceptive Trade Practices Act, 815 ILCS 510/3, (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a, and (3) a claim of common law unfair competition and trademark infringement. Chapterhouse contends that to the extent GW's state-law claims concern copyright infringement, they are preempted by the Copyright Act. *See* 17 U.S.C. § 301. Chapterhouse agrees that to the extent that GW's state-law claims are limited to its allegations of trademark infringement, they are not preempted. GW argues that the elements of its state-law claims are sufficiently different from the elements of its claim under the Copyright Act to make federal preemption inappropriate.

Section 301 of the Copyright Act provides that:

[A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). The Seventh Circuit has held that section 301 requires a court to undertake a two-step analysis to determine whether a state-law claim is preempted. First, a court should determine whether the work in which the right is asserted is fixed in a tangible form and thus comes within the Copyright Act's protection. Next, the court

must analyze whether the state-law right is equivalent to the rights that fall within the purview of the Copyright Act. *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 674 (7th Cir. 1986).

With regard to the products on which GW claims copyright infringement, it is clear that the figurines and illustrations are fixed in a tangible form. *See Defined Space, Inc. v. Lakeshore East, LLC*, 797 F. Supp. 2d 896, 902–03 (N.D. Ill. 2011) ("[I]t [is] uncontroversial that the photographs at issue in this case fall within the subject matter of the Copyright Act."); *Goes Lithography Co. v. Banta Corp.*, 26 F. Supp. 2d 1042, 1048 (N.D. Ill. 1998). Thus the first element of the preemption standard has been established.

Turning to the second part of the analysis, to avoid preemption, the state-law claim must incorporate an additional or different element such that the entire nature of the claim is "qualitatively different from a copyright infringement claim." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992); *see also Goes Lithography*, 26 F. Supp. 2d at 1048. The Second Circuit has determined that "[a]n action will not be saved from preemption by elements such as awareness or intent, which alter the action's scope but not its nature. . . ." *Computer Assocs. Int'l*, 982 F.2d at 717. Based on this rationale, a number of judges in this district have found the same types of state-law claims that GW asserts to be preempted by the Copyright Act. *See, e.g., Defined Space*, 797 F. Supp. 2d at 903 ("violations of state law prohibiting consumer fraud and deceptive business and trade practices"); *Cyber Websmith, Inc. v. Am. Dental Ass'n*, No. 09 C 6198, 2010 WL 3075726, at *2 (N.D. Ill. Aug. 4, 2010) (Lanham Act and Illinois Uniform Deceptive Trade Practices Act); *Natkin v. Winfrey*, 111 F. Supp. 2d 1003,

1013–14 (N.D. Ill. 2000) (Lanham Act, Illinois Consumer Fraud and Deceptive Business Practices Act, Illinois Uniform Deceptive Trade Practices Act, and Illinois common-law claim for unfair competition); *Goes Lithography*, 26 F. Supp. 2d at 1048 (Illinois Deceptive Trade Practices Act).

GW has not offered any argument explaining why its claims against Chapterhouse under Counts 4 through 6—insofar as they are based upon products for which GW claims copyright infringement—involve violations of GW's rights that are qualitatively different from those protected by the Copyright Act. The Court therefore denies GW's request for summary judgment on this defense.

Chapterhouse has not asked the Court for summary judgment on the basis of preemption. Federal Rule of Civil Procedure 56(f), however, provides that a court may grant summary judgment for a nonmovant or on grounds not raised by a party, provided that it gives the party against whom summary judgment will be entered notice and a reasonable time to respond. Fed. R. Civ. P. 56(f); *Lynch v. Ne. Reg'l Commuter R.R. Corp.*, 700 F.3d 906, 910–11 (7th Cir. 2012) ("Rule 56(f) . . . allows a court to grant summary judgment on grounds not raised by a party only after providing notice and a reasonable time to respond."). The Court now gives notice that it intends to grant summary judgment for Chapterhouse on the ground that to the extent that any of GW's state-law claims concern copyright infringement, they are preempted by the Copyright Act. If GW has some basis to preclude entry of summary judgment against it on this basis on the copyright-related aspects of its state-law claims, it must file an objection explaining its opposition by no later than April 8, 2013. In the alternative, GW may withdraw its state-law claims insofar as they allege copyright infringement.

### 3. Implied license (defense 9)

GW seeks summary judgment on Chapterhouse's affirmative defense that GW impliedly licensed Chapterhouse's uses of any protectable copyrights and trademarks. Chapterhouse contends that a page on GW's website, entitled "What you can and can't do with Games Workshop's intellectual property," has impliedly licensed Chapterhouse's use of GW's intellectual property. The policy statement found on GW's website, however, expressly forbids "informal licensees" from using GW's intellectual property "in relation to any commercial activity . . . [including] selling non-Games Workshop materials using our trademarks." Def.'s Resp., Ex. S at 1. The GW policy statement also expressly forbids "creat[ing] a production run of conversions for sale" and "cast[ing] any materials that are based upon Games Workshop material." *Id.*, Ex. S at 2. It is undisputed that Chapterhouse was selling its products commercially, and several of the products Chapterhouse sells are named and described as "conversion kits." Chapterhouse has identified no other basis upon which GW impliedly licensed its use of the claimed copyrights and trademarks. Because GW's policy statement expressly prohibits the kind of use Chapterhouse undertook in creating and selling its products, the Court determines that no reasonable jury could find that GW impliedly licensed Chapterhouse's use. The Court thus grants GW's motion for summary judgment on affirmative defense 9.

### 4. Fraud on the Copyright and Trademark Offices (defense 24)

Chapterhouse contends that GW committed fraud on the Copyright Office when it "submitted the summary judgment decision entered by the Court, but withheld from the Copyright Office the material fact that the Court had never been advised of the

Copyright Office's earlier decision that the 'sculpture portion is too minimal' to . . . qualify for registration." Def.'s Resp. at 6. The e-mail correspondence between GW's attorney and the Copyright Office regarding GW's application for registration of its Assault Squad shoulder pads indicates, however, that although the attorney attempted to send the Court's prior decision to the Copyright Office, the Office refused to receive or review the decision. It is perhaps for this reason that Chapterhouse has stated that it does not intend to assert affirmative defense 24 unless GW appeals the Copyright Office's denial of that particular registration.

Pursuant to 37 C.F.R. § 202.5(b)(3), GW must submit any request for reconsideration within three months of the Copyright Office's initial decision to refuse registration. 37 C.F.R. § 202.5(b)(3). The Copyright Office denied registration in a letter dated January 4, 2013, and thus GW will lose its ability to petition for reconsideration on April 4. Although GW wrote the Copyright Office a letter stating that it believed that it would be "more efficient simply to allow the Court to decide the matter," it denies that it has abandoned any right to pursue appellate review of the denial. Thus the Court strikes affirmative defense 24 without prejudice and will allow Chapterhouse to revive the defense if GW pursues further review of the Copyright Office's denial and Chapterhouse believes it has a good-faith basis for the defense.

## Conclusion

For the reasons stated above, the Court grants Chapterhouse's motion for reconsideration [docket no. 287] in part and denies it part, denies Chapterhouse's motion for summary judgment [docket no. 289], and grants GW's motion for summary judgment [docket no. 291] in part and denies it in part. Additionally, the Court gives

notice to GW that it intends to grant summary judgment for Chapterhouse on certain claims based on preemption by the Copyright Act, as more fully described earlier. GW must file any response opposing the Court's proposal by April 8, 2013.

_____

MATTHEW F. KENNELLY
United States District Judge

Date: April 1, 2013