IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAMES WORKSHOP LIMITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:10-cv-08103 |
| v. | ) |
| | ) Honorable Matthew F. Kennelly |
| CHAPTERHOUSE STUDIOS LLC, | ) Honorable Jeffrey T. Gilbert |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT CHAPTERHOUSE STUDIOS LLC'S OPPOSITION TO GAMES WORKSHOP'S MOTION TO ENFORCE PRIOR DISCOVERY ORDERS**

In its motion to enforce the Court's prior discovery orders, Games Workshop seeks to far exceed the actual scope of the Court's orders. Because Chapterhouse's document collection and production are in compliance with the Court's orders, Games Workshop's motion should be denied in its entirety.

**A.  Inspection of Games Workshop Materials in Possession of Villacci**

Games Workshop first seeks sanctions for Mr. Villacci's inability to locate four books that are published by Games Workshop and that were already made available for inspection in August, 2011. As set forth in Chapterhouse's initial opposition brief (Dkt. 283), Mr. Villacci had recently moved after going through a divorce and was unable to locate these four books after the move. Games Workshop appears to be arguing that it should have been apparent to Chapterhouse based upon a February 7, 2013 email from Mr. Keener listing 39 categories of materials sought to be reviewed the next day (Dkt. 278-17, Ex. 16), that Games Workshop actually only wanted to see the four books that Mr. Villacci had previously made available[1] and that Games Workshop

---

[1] While Games Workshop mischaracterizes Mr. Villacci's testimony to say that he "made no particular efforts to preserve his copies," he actually testified that he returned them to the location where they are generally stored. Dkt. 314-2.

chose not to copy at the time they were made available. Nothing in Mr. Keener's email gives any indication that this was Games Workshop's position. Dkt. 287-17, Ex. 16. And at the inspection, Mr. Villacci made available more than 100 products, consistent with Games Workshop's request. Ex. F, Keener February 8, 2013 email. Accordingly, an award of Games Workshop's travel expenses based solely on the unavailability of four previously inspected books out of the more than 100 requested materials made available in the second inspection is unwarranted.

In fact, at Games Workshop's request, Mr. Villacci continued to search for the four books and ultimately was able to locate one of them, the "Horus Heresy: Collected Visions" work and the book was made available to Games Workshop for copying. Dkt. 314 at p. 12. Each of the four books that were previously made available to Games Workshop are books published by Games Workshop itself and identified as allegedly infringed works. Accordingly, Games Workshop possesses the very same books that it contends it is harmed because Mr. Villacci cannot locate. In its initial motion, Games Workshop argued that there was a vague possibility that Mr. Villacci might have highlighted or written in the books, although no such highlighting was noted for any books during either the first or second inspection. Games Workshop also had the opportunity during Mr. Villacci's 2013 deposition, which occurred subsequent to both inspections, to question him about each of the works, whether any markings had been made in any of them, and whether or not he referred to any part of the books or even specific pages of those books in designing any of the accused products. Chapterhouse does not dispute that Mr. Villacci had access to each of the four books. Because Games Workshop possesses copies of each of the four books that were unavailable at the time of the inspection, it had the opportunity to question Mr. Villacci about both the condition of the books and his reliance upon them in designing any products, and has received Mr. Villacci's own copy of the Horus Heresy:

Collected Visions, no inference of direct copying from those books is warranted. There simply was no misconduct, and no prejudice.

**B.      Fiertek Collection**

Games Workshop also identifies a number of complaints regarding the timing of Mr. Fiertek's document collection, but Games Workshop cannot dispute that Chapterhouse produced nearly 4,000 documents from Mr. Fiertek's custody (including 14,000 pages of email communications produced in the shortened, second round of discovery) in advance of his deposition, nearly equal to the entirety of the approximately 18,000 pages of production produced by Games Workshop and all of its designers over the course of this litigation. Hartzell Dec. at ¶ 4. Chapterhouse also provided to counsel an inventory of the Games Workshop materials in Mr. Fiertek's possession on February 9, 2013, far in advance of Mr. Fiertek's deposition, as a substitute for either an inspection in Sweden or shipping Mr. Fiertek's entire library overseas. Ex. H, Fiertek inventory. Games Workshop further requested the physical production of certain of Mr. Fiertek's books, and Chapterhouse again complied. Hartzell Dec. at ¶ 5.

Games Workshop next argues that Chapterhouse (referring to Mr. Fiertek individually), should have preserved internet search results and forum postings made on third-party forums. As an initial matter, the Court's prior discovery orders that Games Workshop alleges it now seeks to enforce do not address the necessity to preserve these materials. Games Workshop did not even present an argument at that time regarding internet forum posts or internet search results. Dkt. 117; 139; 182; 190.  None of the cases cited by Plaintiff require the preservation of the transient information that any party types into an internet web page and submits either for publication or for searching. Similarly, none of the cases address collection of publicly available, third-party websites on which a party representative has made a post. To the contrary, the type of files that

3

are generated when an individual posts on an internet forum or conducts an internet search are generally **not** discoverable in most cases (including random access memory or other ephemeral data; online access data such as temporary internet files, history, cache, cookies, etc.; and other forms of ESI whose preservation require extraordinary affirmative measures that are not utilized in the ordinary course of business under). N.D. Ill. Local Patent Rules at LPR ESI 2.3 (Scope of Preservation). The Local Rules and the Seventh Circuit ESI pilot program also require that the parties promptly bring unresolved preservation issues to the court. *Id.* In this instance, rather than addressing the disputed preservation of ephemeral data such as Google searches and postings made by Chapterhouse on third-party websites, Games Workshop instead waited until the end of this lawsuit to argue that the data should have been included responsive to a prior order of the court, which generally required production of advertisements but did not address the preservation or production of forum posting and internet searches (Dkt. 117 and 139).

With respect to internet searching, Mr. Fiertek testified that his design process included the use of Google image searching for inspiration. Ex. I, Fiertek 2/28/13 at p. 27-29. He explained that the Google image searching "happens constantly during the whole design process." He gave examples of the types of information that he sought via Google search as inspiration sources, including bat wings, dragon wings, armor, medieval helmets, skull and wing symbols, scythes, clothing and equipment from real life reenactment games. Ex. I, Fiertek 2/28/13 at p. 27-29, 38-39, 161-162, 169-170, 203-204, 249-250. This is no different than how any designer uses the Internet, and even Games Workshop's designers did the same thing and di not separately preserve each individual Google search. For example, Games Workshop's lead miniatures designer, Jeremy Goodwin, described his design process, noting that he uses the Internet to look for reference materials for real world items, including things like scales, feathers,

4

texture, historical artifacts, weapons, guns, noting that "we could spend two weeks going through" the types of items that he uses the internet to reference. Ex. J, Goodwin 3/7/12 at p. 72-76. He noted that the Internet is a massive resource that a designer would be stupid to avoid. *Id.* at 73. He also explained that he generally destroys the hard copies that he prints out from the internet showing his references and that no one asked him to gather the Internet references that he uses in connection with designing products for purposes of this lawsuit. *Id.* at 74. Similarly, another GW witness testified that he had not retained sketches used in preparing the allegedly infringed works.[2] Ex. P, Hinks Dep. 2/13/13 at 71. Because the disputed preservation issues were not addressed in the Court's prior order, this motion to enforce on the basis of that order is inappropriate.

Finally, Games Workshop addresses documents that Mr. Fiertek testified were deleted[3]. As Mr. Fiertek testified, all such documents were electronic copies of Games Workshop books – materials within Games Workshop's possession. At his deposition where Mr. Fiertek discussed the electronic books, Games Workshop had the opportunity to question Mr. Fiertek about his possession of those books, for what purpose Mr. Fiertek owned those books, whether any portions of such books were used as references in Mr. Fiertek's design of Chapterhouse products, and whether Mr. Fiertek made any comments or highlights within the electronic books themselves. Mr. Fiertek has further clarified that the ebooks that he deleted were duplicate **copies** of the electronic books, as explained in his testimony that he was deleting the files that he

---

[2] Games Workshop has not produced any documents related to these internet searches admittedly performed by its employees, save a few images of lizards from Mr. Martin Footitt.

[3] Games Workshop also makes reference to movies and books downloaded by Mr. Fiertek. Chapterhouse objects that testimony and evidence regarding any alleged downloading by Mr. Fiertek is not relevant to any claim or defense in this action, are unduly prejudicial, and such personal downloading would not meet the standard of admissibility for habit evidence to demonstrate any of the activities alleged in the Complaint. FRE 401-401; 404(b) and 608(b). *See, e.g.*, *Thompson v. Boggs*, 33 F.3d 847, 854 (7th Cir. 1994).

already had to save space on his hard drive. *See* Ex. K Fiertek Dec.; Ex. L Fiertek errata[4]. When asked, Mr. Fiertek specifically testified regarding whether or not he used specific books as references to designs. *See, e.g.,* Ex. I, Fiertek Dep. at 49; 184.

**C.     Ebay Posts**

Games Workshop's original motion to compel did reference eBay, however, it did not seek postings made on eBay. Rather, the only request by Games Workshop directed to Chapterhouse's eBay posts sought sales data reflecting such sales, which Chapterhouse has provided. (Dkt. 117 at p. 10). Mr. Villacci testified that not a single one of the newly accused products has ever been posted on eBay and that the four postings currently live on eBay are ongoing postings that have been posted for the period of time indicated in the listings. Ex. G Villacci dep at 27; 37-38. Games Workshop has not identified any basis to dispute that. Further, Games Workshop itself has produced and marked as trial exhibits multiple Chapterhouse eBay postings. Ex. M, GW Trial Exhibit 5, 644. Consistent with Chapterhouse's nominative fair use defense, many of the postings indicate that products offered for sale fit Games Workshop products or are for use with Games Workshop's products, but make clear that they are custom-made and constitute original sculpting, thus are not Games Workshop products. Certain of the postings also specifically note GW's ownership of icons and trademarks. Because the postings themselves specifically dispute the adverse inferences sought by Games Workshop and were not requested in the original discovery dispute, the sudden discovery sanction and adverse inferences sought by Games Workshop would be inappropriate.

**D.     Forum Postings**

As noted above, Games Workshop has not demonstrated that Chapterhouse had a duty to catalog or preserve its third-party forum posts. Further, such posts continue to be available and

---

[4] Games Workshop has served objections to Mr. Fiertek's errata.

Games Workshop has identified approximately 50 trial exhibits made up of such internet forum postings. *See* Dkt. 324-01 (Ex. A to Chapterhouse Motion in Limine). Games Workshop does not identify any forum postings made for Chapterhouse products during the course of the litigation that it believes were removed or are no longer publicly available. The sole source cited by Games Workshop regarding the removal of postings by internet forums appears to refer to postings made by Mr. Lippman regarding non-Chapterhouse products, as the email makes clear that his announcements for the Croc Ogres that he designed for Chapterhouse had just been posted and had not been removed. Dkt. 278, Keener Decl. Ex. 6. Games Workshop questioned Mr. Lippman about his understanding of the removal of posts, but did not identify any posts related to Chapterhouse products that had been removed. Ex. N, Lippman 2/15/13 Dep. at 168-171. Games Workshop also questioned Mr. Fiertek about this topic, Mr. Fiertek made clear that the only instances he is aware of when postings made by Chapterhouse about its products were removed from a forum as being too commercial all occurred prior to the start of this lawsuit. Ex. I, Fiertek 2/28/13 dep. at 223:2-14 ("The only thing I recall is maybe five years ago, before the lawsuit started, there was a forum that – whose owner removed Mr. Villacci's posts, claiming those were advertisements.")

Mr. Villacci testified to the procedure that he followed to identify posting that he made on each of the forums where he posted new product announcements for the products accused in the second phase of litigation. Ex. G, Villacci 2/20/13 dep. at 124:15-25. He returned to each of the websites where he recalled posting new product announcements regarding those accused products in the second phase of litigation, logged in to those websites, searched for the forum threads that he started as a product announcement, and identified those forum threads. *Id.* This process goes far beyond merely creating the list "from memory" as asserted by Games

Workshop. He also testified that he stopped using many of the websites that had been identified in the first portion of the litigation, which explains why certain websites that were identified in the first portion of litigation were not included in the interrogatory response related to the second phase. Ex. G, Villacci 2/20/13 dep. at 25:10-14.

Because Chapterhouse has complied with the Court's Order regarding production of advertisements, as explained in greater detail in Chapterhouse's original opposition to Games Workshop's Motion to Enforce, and because the forum postings are available to Games Workshop, no sanction or adverse inference is appropriate with respect to online forum postings.

**E.     Document Collection from Painters**

Games Workshop's motion seeks to enforce the Court's March 6, 2012 Order (Dkt. 190) regarding document collection from third-party designers. The court's order states "Defendant must make a good faith request for relevant documents in the hands of its allegedly independent designers." Dkt. 190. There is no reference to individuals who painted display models for Chapterhouse in the Court's Order. Similarly, Games Workshop's motion requesting the production from the third parties, refers to "supposedly independent designers and concept artists" and makes absolutely no reference to painters. Dkt. 182 at 3-4; 190. Chapterhouse has repeatedly objected that the painted products and documents relating to the painters are not relevant to the case, as set forth in more detail in Chapterhouse's Motion in Limine (Dkt. 319 at p. 4-5). Because the collection of documents from individuals that painted products has never previously been addressed by the Court, collection from painters should not be considered in this Motion to Enforce the Prior Discovery Orders.


### F. Collection From Third-Party Designers[5]

Although Games Workshop complains of the volume of documents collected directly from third-party designers, it does not dispute that Chapterhouse attempted to contact each designer[6] and collect documents from them as required by the Court's order. Although Games Workshop flatly refused to identify the custodians from whom it collected documents, it does not appear that any attempt at collection was made of former employee or freelance designers by Games Workshop. Additionally, while Games Workshop implies that Chapterhouse did not advise its designers to maintain documents. Mr. Villacci's testimony contradicts this assertion, when questioned specifically about his correspondence with Mr. Cirillo regarding the collection of concept art. Ex. G, Villacci dep. at 111.

In addition to the documents collected directly from third-party designers, the vast majority of Chapterhouse's document collection is directed to the design and development of the accused products. Mr. Fiertek and Mr. Villacci both testified that they did not delete any photos or emails after the start of the litigation, which includes duplicate copies of the email correspondence with the third-party designers. Chapterhouse's communications both internally between Mr. Villacci and Mr. Fiertek and externally with each of the contract designers were conducted by email, including the exchange of photographs, concept art, and CAD design for the accused products. In total, 530 emails to or from the third-party designers were produced. Hartzell Decl. at ¶ 4. A sampling of the extensive concept art and photographs of works in progress are included in Ex. O. The extensive correspondence between Mr. Villacci and Mr. Fiertek exchanging design ideas on a wide variety of products includes thousands of emails.

---

[5] Games Workshop again misrepresents Chapterhouse's claim of privilege with respect to one particular email communication with Mr. Stephen Smith as a claim that Chapterhouse had an attorney-client relationship with Mr. Smith, a claim that Chapterhouse does not make. This issue was briefed in Chapterhouse's original opposition. Dkt. 283 at p. 1-4.

[6] As noted above, painters were not addressed in the Court's prior discovery orders.

9

Again, Games Workshop does not identify responsive communications that it believes were improperly excluded from this production and the documents that have been produced rebut the adverse inferences that Games Workshop seeks. Because the thousands of emails produced by Mr. Villacci and Mr. Fiertek encompassing their internal design correspondence and external design communications with the third-party designers directly rebut the inferences sought by Games Workshop, no such inference is appropriate.

**G.    Conclusion**

Because Chapterhouse has complied with the Court's prior discovery orders, Chapterhouse requests that Games Workshop's Motion to Enforce Prior Discovery Orders be denied as moot.

Dated: April 3, 2013					By: */s/ Julianne M. Hartzell*
							Julianne M. Hartzell
							Sarah J. Kalemeris
							Marshall, Gerstein & Borun LLP
							6300 Willis Tower
							233 S. Wacker Dr.
							Chicago, IL 60606
							T: 312.474.6300
							F: 312.474.0448
							E: jhartzell@marshallip.com
							E: skalemeris@marshallip.com

							Jennifer Golinveaux (CA Bar No. 203056)
							Dean A. Morehous (CA Bar No. 111841)
							K. Joon Oh (CA Bar No. 246142)
							Thomas J. Kearney (CA Bar No. 267087)
							WINSTON & STRAWN LLP
							101 California Street
							San Francisco, CA 94111-5802
							Phone: (415) 591-1000
							Fax: (415) 591-1400
							jgolinveaux@winston.com
							dmorehous@winston.com
							koh@winston.com
							tkearney@winston.com

							Imron Aly (IL Bar No. 6269322)

Bryce A. Cooper (IL Bar No. 6296129)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600
Fax: (312) 558-5700
bcooper@winston.com
ialy@winston.com

Attorneys for Defendant Chapterhouse Studios LLC

## **CERTIFICATE OF SERVICE**

I, Julianne M. Hartzell, hereby certify that I caused a copy of the foregoing DEFENDANT CHAPTERHOUSE STUDIOS LLC'S OPPOSITION TO GAMES WORKSHOP'S SUPPLEMENTAL MOTION TO ENFORCE PRIOR DISCOVERY ORDERS to be served on the following parties via the Court's ECF system on April 3, 2013:

>Jason J. Keener
>Foley & Lardner LLP
>321 North Clark Street
>Suite 2800
>Chicago, IL  60654
>
>Jonathan E. Moskin
>Foley & Lardner LLP
>90 Park Avenue
>New York, NY  10016
>
>*Attorneys for Plaintiff Games Workshop Limited*

*/s/ Julianne M. Hartzell*
Julianne M. Hartzell