**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>                                        Plaintiff,<br><br>               v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES<br><br><br>                               Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly<br>Hon. Jeffrey T. Gilbert |

## [DRAFT] PRETRIAL ORDER

The parties, Games Workshop Limited ("Games Workshop") and Chapterhouse Studios LLC ("Chapterhouse") jointly submit the following proposed pretrial order. The proposed pretrial order is subject to the pending motions in limine which the Court will rule upon at a later date, and in the meantime both parties incorporate by reference any objections in their motions in limine. In light of the Court's Memorandum Opinion and Order dated 4/1/13, the parties submit this revised Pretrial Order.

## 1. Jurisdiction

This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction over the claims arising under the statutory and common law of the State of Illinois pursuant to 28 U.S.C. §1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy. Subject matter jurisdiction is not disputed.

## 2. Claims

### *Games Workshop's Proposed Statement of the Claims*

The plaintiff in this case is Games Workshop. Games Workshop has created fictional universes called Warhammer, set in a mythical past, and Warhammer 40,000, set in the 41st Millennium. Games Workshop has created and currently sells hundreds of books and magazines portraying these fictional worlds. There are computer games, a movie as well as thousands of collectible figurines based on the characters in the books. Fans can use these figurines to play table-top war-games set in the Warhammer and Warhammer 40,000 universe, using the

characters, vehicles, weapons, and other items depicted in the books and magazines according to rules created by Games Workshop.

The defendant, Chapterhouse Studios, is a small company owned by two fans of Warhammer 40,000 which develops and sells to other fans of the game figurines and accessories based on the characters, vehicles and weapons created by Games Workshop. Games Workshop contends that that Chapterhouse Studio's products are made to be immediately recognizable to fans of Warhammer and Warhammer 40,000, or else they will not sell, and that defendant further identifies its products by using the names Games Workshop has created, both on its own website and on eBay and other websites where it promotes its goods. Games Workshop therefore contends that almost all of defendant's individual products, as well as the entire collection of products, descriptions and images on its website, infringe on Games Workshop's copyrights and infringe on Games Workshop's trademarks.

Chapterhouse Studios denies these claims and contends that its products allow players of the game Warhammer 40,000 to enhance their playing experience with the game. Chapterhouse denies that it copies protectable expression in any copyrights owned by Games Workshop; denies that Games Workshop owns U.S. rights in certain of the trademarks it claims; denies that it refers to any of Games Workshop's claimed trademarks in a manner that infringes those claimed trademarks; and claims that any reference to Games Workshop's claimed marks is a fair use under the law.

## *Chapterhouse's Proposed Statement of the Claims[12]*

The plaintiff in this case is Games Workshop Limited, an international game company headquartered in the United Kingdom. Games Workshop sells products including books, magazines, and toy figures related to its Warhammer 40,000 table-top war game. Players can use the toy figures and related accessories to play the game.

The defendant, Chapterhouse Studios LLC, is a small company operated out of its founder's home in Texas that makes products that players can use to enhance their playing experience with Warhammer 40,000 and other fantasy and sci-fi war games. It was founded by a long time enthusiast of Warhammer 40,000 and other tabletop war games. Chapterhouse's products are game figures and accessories that players can use to customize the toy soldiers they use to play tabletop war games. Chapterhouse's products are cast from pewter or gray resin, and are all sold and shipped unpainted, so that players may paint the products themselves.

Games Workshop claims that some of Chapterhouse's products infringe certain copyrights that Games Workshop claims it owns in material related to the Warhammer 40,000 game. Games Workshop also contends that Chapterhouse infringes certain U.S. trademarks that Games Workshop claims it owns. Chapterhouse denies these claims. Specifically, Chapterhouse denies that it copies protectable expression in any copyrights owned by Games Workshop;

---

[1] Chapterhouse does not intend its statement of claims to be argumentative, but instead believes its statement of claims to be an accurate factual recitation.

[2] Games Workshop objects to Chapterhouse's Proposed Statement of the claim as argumentative.

denies that Games Workshop owns U.S. rights in many of the trademarks it claims; denies that it refers to any of Games Workshop's claimed trademarks in a manner that infringes those claimed trademarks; and claims that any reference to Games Workshop's claimed marks is a fair use under the law.

**3. Relief Sought**

Games Workshop seeks a permanent injunction against sales of any products that infringe its copyrights, as well as an injunction against the presentation of such products aggregated on the defendant's website (or in any similar format); a permanent injunction against any infringing use of Games Workshop's trademarks and logos in identifying defendant's goods, or the use of any other names or symbols likely to cause confusion as to the source or sponsorship of defendant's goods; an injunction against sales of any products made for use in connection with Games Workshop's game Warhammer 40,000 without a permanent identification of Chapterhouse Studios as source; recovery of defendant's profits from the sales of infringing goods to date; and destruction of any infringing goods or any means of producing the same.

**4. Witnesses**

<u>A. Games Workshop identifies the following witnesses that it expects to call at trial:</u>

1.      Jeremy Goodwin, Lead Miniatures Designer, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

2.      Alan Roy Merrett, Head of Intellectual Property, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

3.      Laurence John Blanche, Art Director, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom (subject to ability to travel).

4.      Andrew Meredith Jones, Head of Legal, Licensing and Strategic Projects, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

5.      Nicholas Villacci, owner and CEO, Chapterhouse Studios, 1711 Brettenmeadow Drive, Grapevine, Texas 76051.

6.      Gillian Stevenson, Senior Legal Counsel, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

7.     Thomas Nanson, IP Assistant, , Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

8.     Daniel Brown, Legal Assistant.  Foley & Lardner, 321 North Clark Street, Suite 2800, Chicago, IL 60654.

B. Games Workshop identifies the following witnesses that it may call at trial:

9.     David Thomas, Miniatures Designer, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

10.     David Gallagher, Senior Artist, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

11.     Neil Hodgson, Graphic Illustrator, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom

12.     Martin Footitt, Senior Miniatures Designer, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

13.     Darius Hinks, Studio Manager, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

14.     Thomas Walton, Established Miniatures Designer, , Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom.

15.     Ed Spettigue, 9211 Rocky Hills Dr, Apt, 303, Cordova, TN 38018-6526.

16.     Sandra Casey, Head of Sales, Games Workshop Retail , 6211 East Holmes Road, Memphis, Tennessee, 38141.

17.     Steve Horvath, Fantasy Flight Games, 1975 W County Rd B2, Roseville, Minnesota 55113.

18.     David Anderson. THQ, Inc., 29903 Agoura Road Agoura Hills, CA 91301.

C. Games Workshop identifies the following witnesses whose deposition testimony it expects to read at trial

19.     Robert Naismith, independent designer and former sculptor for Games Workshop, Bramble Cottage, Long Lane, Hickling, Leicestershire, LE14 3AG, England.

20.     Thomas Fiertek, co-owner of Chapterhouse Studios, Lufttrychs gatan, 41840, Gothenburg Sweden.

21.     Wyatt Traina, designer for Chapterhouse Studios, 775 Parker Street, Boston, Massachusetts.

22.     Robert Lippman, designer for Chapterhouse Studios, 60 Railroad Place, Suite 502 Saratoga Springs, NY 12966.  If Mr. Lippman appears in person at trial, Games Workshop will call him as a live witness.

Games Workshop reserves the right to call any witnesses listed on Chapterhouse's Witness List.

### *Chapterhouse Studios*

Subject to the availability of each witness at the time of trial, Chapterhouse currently expects that it will call or may call the following witnesses to testify at trial:

| WILL CALL | |
|---|---|
| **Witness** | **Address** |
| William Brewster | First Division Museum at Cantigny, 1s151 Winfield Road, Wheaton, IL 60189 |
| Nicholas Villacci | 1711 Brettenmeadow Drive, Grapevine, TX 76051 |
| Dr. Carl Grindley | Associate Professor of English Eugenio María de Hostos Community College The City University of New York B521, 500 Grand Concourse The Bronx, NY 10451 |
| Robert Lippman | Lemery Greisler LLC, 60 Railroad Place, Suite 502, Saratoga Springs, NY 12866 |
| Jeffrey Nagy | 49 S Henderson Road, Apt. B309, King of Prussia, PA 19406 |
| **MAY CALL** | |
| **Witness** | **Address** |
| Sandra Casey | 2676 Foy Road, Senatobia, MS 38668 |
| Gary Chalk | La Jossiniere, St Martin le Bouillant, 50800 Villedieu les Poeles, |

| | |
|---|---|
| | France |
| Tomas Fiertek | Lufttrycksgatan 9, 418 40 Gothenburg, Sweden |
| Neil Hodgson | No. 8 Parkwood Court, Nottingham, NG6 9FB, United Kingdom |
| Andrew Jones | 126 Main Street, Calverton, Nottingham, NG1 46FB, United Kingdom |
| Alan Merret | No. 4 Ferndale Close, Attenborough, Nottingham, NG9 6AQ, United Kingdom |
| Gillian Stevenson | 22 Park Crescent, Wollaton, Nottingham, NG8 2EQ, United Kingdom |
| Sam Terry | 216 Wallace Street, Princeton, WV 24740. |
| Ashton Holbrook | 342 West 1st South #802, Rexburg, ID 83440 |
| Gary K. Wolfe | Roosevelt University, 430 S. Michigan, Chicago, IL 60605 |
| Michio Okamura | 3149 San Angelo Way, Union City, CA 94587 |

Chapterhouse reserves the right to call any witnesses listed on Games Workshop's Witness List.

Chapterhouse may also present the testimony of the following witnesses by transcript or videotaped deposition:

| MAY CALL | |
|---|---|
| **Witness** | **Address** |
| Tomas Fiertek | Lufttrycksgatan 9, 418 40 Gothenburg, Sweden |
| Jeremy Goodwin | No. 4 Taunton Road, Westbridgford, Nottingham, NG2 6EW, United Kingdom |
| Neil Hodgson | No. 8 Parkwood Court, Nottingham, NG6 9FB, United Kingdom |
| John Blanche | Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom |
| Alan Merret | No. 4 Ferndale Close, Attenborough, Nottingham, NG9 6AQ, United Kingdom |
| Gillian Stevenson | 22 Park Crescent, Wollaton, Nottingham, NG8 2EQ, United Kingdom |
| Robert Naismith | independent designer and former sculptor for Games Workshop, Bramble Cottage, Long Lane, Hickling, Leicestershire, LE14 3AG, England |
| Martin Footitt | Senior Miniatures Designer, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom. |
| Darius Hinks | Studio Manager, Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom |
| Thomas Walton | Established Miniatures Designer, , Games Workshop, Willow Road, Lenton, Nottingham NG7 2WS United Kingdom. |

Chapterhouse reserves the right to present portions of any videotaped deposition testimony designated by Games Workshop.

Chapterhouse reserves the right to call to testify any witness actually called to testify by Games Workshop at trial. Chapterhouse reserves the right to designate witness testimony for any

witness currently designated by Games Workshop as a will call witness, but who is ultimately not called to testify by Games Workshop.

**(a) Witness Objections**

*<u>Games Workshop</u>*

Games Workshop object to the following witnesses identified by Chapterhouse:

1. Gary Chalk – Games Workshop objects that Mr. Chalk's testimony is irrelevant and that he was not properly identified as a witness

2. Jeffrey Nagy – Games Workshop objects that Mr. Nagy was not properly identified as a witness

3. William Brewster – Games Workshop objects that portions of Mr. Brewster's report are inadmissible and irrelevant.

4. Dr. Carl Grindley – Games Workshop objects that portions of Dr. Grindley's report are inadmissible and irrelevant. Games Workshop further objects that portions of Dr. Grindley's report and his supplemental report are untimely.

5. Sam Terry - Games Workshop objects that Mr. Terry's testimony is irrelevant and that he was not properly identified as a witness.

6. Ashton Holbrook - Games Workshop objects that Mr. Holbrook's testimony is irrelevant and that he was not properly identified as a witness.

7. Michio Okamura - Games Workshop objects that Mr. Okamura's testimony is irrelevant and that he was not properly identified as a witness.

8. A. Mark Ratner – Games Workshop objects that Mr. Ratner's testimony is irrelevant and that he was not properly identified as a witness. Moreover, his names has never before been disclosed in this case or during discovery.

*<u>Chapterhouse</u>*

Chapterhouse objects to the following witnesses identified by Games Workshop:

1. Steve Horvath – Games Workshop failed to disclose this witness before the close of discovery and Chapterhouse did not have the opportunity to depose this witness.

2. Daniel Brown – Games Workshop failed to disclose this witness before the close of discovery and Chapterhouse did not have the opportunity to depose this witness.

**(b) Deposition Designations**

Games Workshop's list of deposition designations, Chapterhouse's objections to Games Workshop's designations, Chapterhouse's counter-designations, and Games Workshop's objections to such counter-designations, if any, are attached hereto as Exhibit 1.

Chapterhouse's list of deposition designations, Games Workshop's objections to Chapterhouse's designations, Games Workshop's counter-designations, and Chapterhouse's objections to such counter-designations, if any, are attached hereto as Exhibit 2. To the extent Chapterhouse has counter-designated testimony designated by Games Workshop that the Court rules is inadmissible, those counter-designations may be moot and may be withdrawn.

For those depositions that have been videotaped, to the extent admissible, a party may introduce the deposition excerpt by videotape instead of, or in addition to, by transcript. If a party opts to introduce deposition testimony by videotape, any counter-designations of that same witness's deposition testimony must also be submitted by videotape.

When deposition designation excerpts are introduced, all admissible deposition counter-designation excerpts, whether offered by videotape or by transcript, will be introduced simultaneously in the sequence in which the testimony was originally given.

Each party reserves the right to use testimony designated by any other party (whether as a designation or a counter-designation), even if not separately listed on its own deposition designation list.

The parties may offer some or all of the deposition testimony set forth herein at trial. A party's decision not to introduce some or all of the testimony of a witness designated by that party herein shall not be commented upon by the other party at trial. However, 48 hours prior to introducing deposition testimony, the introducing party will identify the specific pages and lines that are actually intended to be played or read at trial, or a disclosure that all pages and lines previously designated will be read or played. Within 24 hours after that disclosure, the other party will identify the specific pages and lines it counter-designates to the extent they are different from those previously counter-designated. The parties will meet and confer to resolve any objections to give the introducing party time to prepare any necessary video/DVD of the testimony.

Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

**5. Exhibits**

The parties have stipulated that trademark registrations, copyright registrations and copyright applications, as well as any correspondence with the Copyright Office or Trademark Office are self-authenticating and do not require certification.

Games Workshop's list of exhibits, including demonstrative exhibits identified to date, and Chapterhouse's specific objections to those exhibits are attached hereto as Exhibit 3. Games

Workshop reserves its rights to enlarge, call-out, highlight, or balloon any trial exhibits for use as demonstratives.

Chapterhouse's list of exhibits including demonstrative exhibits identified to date and Games Workshop's objections to those exhibits are attached hereto as Exhibit 4. Chapterhouse reserves its right to enlarge, call-out, highlight, or balloon any trial exhibits for use as demonstratives.

Each party reserves the right to use exhibits from any other party's trial exhibit list, even if not separately listed on its own exhibit list. The parties also agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the document. Each party reserves the right to use exhibits during cross-examination or rebuttal that do not appear on either party's exhibit lists, however Games Workshop proposes that this provision should not encompass any documents not produced in discovery. The parties agree that they will not exchange opening argument slide presentations in advance, as the materials by both parties will be changing and updated until presented.

The parties propose that the parties will identify the names of the expected testifying witnesses 3 days before they are expected to be called by 8:00 p.m. (for example, a witness expected to be called on Thursday would be identified by Monday at 8:00 p.m.). Exhibits to be used with the witness are to be identified 2 days before they are expected to be called by 8:00 p.m. Final objections to exhibits are due 1 day before the witness is expected to be called by 8:00 p.m.

## 6. Type and Length of Trial

This is a jury trial that Games Workshop expects to take 7 trial days, dependent on the Court's availability. Chapterhouse expects the trial to take 7-10 days, dependent on the Court's availability. The parties agree that the length of trial may be dependent upon whether and how certain issues and claims are narrowed in connection with the parties' pending summary judgment motions and forthcoming motions in limine.

## 7. Proposed Voir Dire Questions

1. Have you, or a relative or close friend, ever played any miniature war-games?

2. Have you, or a relative or close friend, ever collected and/or painted figurines?

3. Have you, or a relative or close friend, ever attended any gaming conventions?

4. Have you ever heard of Games Workshop, Warhammer, Warhammer 40,000, or Warhammer 40K?

5. Have you ever read a book published under the "Black Library" label?

6. Have you ever heard of Chapterhouse Studios?

7. Do you have any knowledge about or experience with copyrights or trademarks, including applying for a copyright registration or a trademark registration?

8. Have you ever been involved in the creation or selection of a trademark?

9. Have you ever been involved in the creation of an artistic work (book, painting, sculptor, etc) that was sold to others?

10. Have you, or a relative or close friend, ever made a claim of copyright infringement, trademark infringement, or patent infringement?

11. Have you ever considered filing for a copyright, trademark registration, or patent registration but decided not to?

12. Have you, or a relative or close friend, ever been accused of infringing another's copyright, trademark, or patent?

13. Have you, a relative or close friend, ever worked in sales or marketing?

14. Have you, a relative or close friend, ever been a member of a union?

15. Have you, a relative or close friend worked for commission, either currently or as part of a previous job?

Chapterhouse additionally proposes the following jury questions:

16. Do you use generic medicine?

17. Do you own a smart phone/blackberry/iphone?

## 8. Proposed Jury Instructions

## 1. FUNCTIONS OF THE COURT AND THE JURY

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law. You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone. Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them. Perform these duties fairly and impartially. Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

1diam-7 Modern Federal Jury Instructions-Civil 1.01; Federal Civil Jury Instructions of the Seventh Circuit, §1.01 (2009 rev.)

## 2. EVIDENCE

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence, and stipulations. A stipulation is an agreement between both sides that certain facts are true. [If necessary: I have taken judicial notice of certain facts. You must accept those facts as true.]

During the trial, certain testimony was presented to you by the reading of depositions or by the playing of video. You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

1diam-7 Modern Federal Jury Instructions-Civil 1.04;
Federal Civil Jury Instructions of the Seventh Circuit, §1.04 (2009 rev.)
1diam-7 Modern Federal Jury Instructions-Civil 1.05;
Federal Civil Jury Instructions of the Seventh Circuit, §1.05 (2009 rev.)
1diam-7 Modern Federal Jury Instructions-Civil 1.06;
Federal Civil Jury Instructions of the Seventh Circuit, §1.06 (2009 rev.)

## 3. NOTE-TAKING

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

1diam-7 Modern Federal Jury Instructions-Civil 1.07; Federal Civil Jury Instructions of the Seventh Circuit, §1.07 (2009 rev.)

## 4. CONSIDERATION OF ALL EVIDENCE REGARDLESS OF WHO PRODUCED

In determining whether any fact has been proved, you should consider all of the evidence

bearing on the question regardless of who introduced it.

Federal Civil Jury Instructions of the Seventh Circuit, §1.08 (2009 rev.)

5.      **WEIGHING THE EVIDENCE**

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.  In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference."  A jury is allowed to make reasonable inferences.  Any inference you make must be reasonable and must be based on the evidence in the case .

1diam-7 Modern Federal Jury Instructions-Civil 1.11; Federal Civil Jury Instructions of the Seventh Circuit, §1.11 (2009 rev.)

6.      **DEFINITION OF "DIRECT" AND "CIRCUMSTANTIAL" EVIDENCE**

You may have heard the phrases "direct evidence" and "circumstantial evidence."  Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact.  Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a the witness who says, "I was outside a minute ago and I saw it raining."  Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

1diam-7 Modern Federal Jury Instructions-Civil 1.12; Federal Civil Jury Instructions of the Seventh Circuit, §1.12 (2009 rev.)

7.      **TESTIMONY OF WITNESSES (DECIDING WHAT TO BELIEVE)**

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all.  You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, you may consider, among other things:

–the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

–the witness's memory;

–any interest, bias, or prejudice the witness may have;

–the witness's intelligence;

–the manner of the witness while testifying;

–and the reasonableness of the witness's testimony in light of all the evidence in the case.

1diam-7 Modern Federal Jury Instructions-Civil 1.13; Federal Civil Jury Instructions of the Seventh Circuit, §1.13 (2009 rev.)

**8.      NUMBER OF WITNESSES**

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

Federal Civil Jury Instructions of the Seventh Circuit, §1.17 (2009 rev.); Federal Civil Jury Instructions of the Seventh Circuit, §1.17 (2009 rev.)

**9.      ABSENCE OF EVIDENCE**

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

1diam-7 Modern Federal Jury Instructions-Civil 1.18; Federal Civil Jury Instructions of the Seventh Circuit, §1.18 (2009 rev.)

**10.      EXPERT WITNESSES**

You have heard witnesses give opinions about matters requiring special knowledge or skill. You should judge this testimony in the same way that you judge the testimony of any other witness. The fact that such person has given an opinion does not mean that you are required to accept it. Give the testimony whatever weight you think it deserves, considering the reasons given for the opinion, the witness's qualifications, and all of the other evidence in the case.

1diam-7 Modern Federal Jury Instructions-Civil 1.21; Federal Civil Jury Instructions of the Seventh Circuit, §1.21 (2009 rev.)

**11.      BURDEN OF PROOF**

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

When I say that a particular party must prove something by "clear and convincing evidence," this is what I mean: When you have considered all of the evidence, you are convinced that it is highly probable that it is true. This is a higher burden of proof than "more probably true than not true." Clear and convincing evidence must persuade you that it is "highly probably true."

Unless I instruct you otherwise, Games Workshop bears the burden of proving its claims by a preponderance of the evidence and Chapterhouse bears the burden of proving its defenses by a preponderance of the evidence

1diam-7 Modern Federal Jury Instructions-Civil 1.27;
Federal Civil Jury Instructions of the Seventh Circuit, §1.27 (2009 rev.)
1diam-7 Modern Federal Jury Instructions-Civil 1.28;
Federal Civil Jury Instructions of the Seventh Circuit, §1.28 (2009 rev.)

COUNTS

**Count I – Copyright Infringement**

**12.     COPYRIGHT—ALLEGATION DEFINED [DISPUTED]**

*Games Workshop's Proposed Jury Instruction*

Plaintiff claims that Defendant has infringed Plaintiff's copyright in numerous books, magazines, computer games, sculptural figures that form part of the fictional world of Warhammer 40,000.  Plaintiff alleges that defendant has copied characters, elements of characters, weapons and accessories depicted in its books and shown by its figurines and that it markets these products only to fans of Warhammer and Warhammer 40,000, such that all of the products it sells are designed to be immediately recognizable to fans of Warhammer 40,000. Moreover, Plaintiff contends that Defendant has copied related ranges of works and has collected all of its accused products and images together on its website and that the website therefore is an infringement of the entire body of Warhammer 40,000.

1diam-7 Modern Federal Jury Instructions-Civil 12.1.1

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Games Workshop's proposed instruction improperly conflates its separate copyright claims, will be confusing to a jury, and is prejudicial to Chapterhouse.  The jury will be unable to properly analyze Games Workshop's claims unless Games Workshop separately identifies each of its individual copyrights at issue. Chapterhouse objects that the "related ranges of works" language is confusing, unnecessary, and inconsistent with governing law. Games Workshop's theory of so-called "infringement in the aggregate" has no basis in statute or case law, and appears to be based on a misreading of *Castle Rock Entm't. v. Carol Publg. Group, Inc.*, 150 F.3d 132 (2d Cir. 1998). Moreover, GW's claim that CHS's is website is an infringement was rejected in the Court's November 27, 2012 Summary Judgment Memorandum and Order, Dkt. No. 258 at 25 (hereafter "First Summary Judgment Decision")(explaining that "GW's copyright infringement claims, however, are not based upon Chapterhouse's alleged copying of its website. Rather, GW bases its claims on the products that it sells through its website. Moreover, GW has not produced any evidence that Chapterhouse actually copied GW's website. . . .") Games Workshop's proposed instruction is also argumentative and introduces factors that are irrelevant to its copyright claims.  Chapterhouse believes that the best way to identify Games Workshop's copyright claims is to use a jury verdict form that identifies the allegedly infringed works that survive summary judgment, as proposed below.

*Chapterhouse's Proposed Jury Instruction*

Plaintiff claims that Defendant has infringed Plaintiff's copyrights in: [insert number of remaining works from Plaintiff's Second Rev. Copyright Claim Chart and New Products Claim Chart that survive summary judgment] works that are individually set forth on the jury verdict

form that I will provide to you, by copying unique, original elements from those works. One cannot claim infringement of a "world," but rather of the copyrights one owns in individual works, one by one.

Federal Civil Jury Instructions of the Seventh Circuit, §12.1.1 (2009 rev.); SAC ¶¶ 43, 49; Court Order Dkt. 258 at 25 ("GW's attempt to persuade the Court to consider all of its
products as one unified whole is therefore unpersuasive and without evidentiary support.").

### Games Workshop objects to Chapterhouse's proposed jury instruction as follows:

One of Games Workshop's principal contentions in this case is that many of Chapterhouse's works constitute infringement in the aggregate. This includes the collection of infringing products and descriptions thereof on its website and also includes ranges of products, such as its extensive series of shoulder pad designs appropriating the entire Roman numeral system, logo designs and character names of Games Workshop's Tactical Space Marines, Assault Space Marines and Devastator Space Marines. Chapterhouse also organizes its accused works on its website in aggregated format: placing all of its Space Marine works together under one tab; all of its Eldar figures together under another; all of its Tau figures together as well, and so forth. See, e.g., *Castle Rock Entm't. v. Carol Publg. Group, Inc.*, 955 F. Supp. 2d 260 (S.D.N.Y. 1997), *aff'd*, 150 F.3d 132 (2d Cir. 1998). Games Workshop does not purport to claim ownership of a "world", but only of a collection of works as to which ownership is not disputed. Chapterhouse's proposed instruction does not permit assessment of this aspect of its overall infringement.

Chapterhouse's statement that the Court found that its website is not an infringement is not accurate. What the Court held was that Chapterhouse's website did not infringe Games Workshop's website. Games Workshop did not intend to make any such allegation, but rather had argued that the Chapterhouse website is a compilation of materials derived from the entire oeuvre of Warhammer 40,000 (or more specifically the entire collection of individual works directly at issue), and is essentially like a catalog. Such a compilation or catalog is essentially no different from the collection of individual trivia questions collected in one book, which was deemed an infringement of the collection of 84 television shows in *Castle Rock*.

Moreover, Chapterhouse's concern that the jury separately address the individual works can easily be accommodated with Games Workshop's concern that the jury assess patterns of aggregated infringement by use of a special verdict form.

### CHS Response to GW's Objection

GW tries to resurrect an argument that the Court expressly rejected in its denial
of GW's first summary judgment motion. Namely, GW previously attempted—and it admits it was unsuccessful—to "show that the entire range of [CHS's] products" is copied from and infringes the "collective creative realm of Warhammer 40,000." Opp. at 16. The Court already rejected this theory, finding that "GW's attempt to persuade the Court to consider all of its products as one unified whole is therefore unpersuasive and without evidentiary support." Dkt.

258 at 25. The court found that the infringement analysis must be conducted as to each allegedly infringed product. *Id.* at 25-26. GW did not challenge that decision or seek reconsideration.

## 13. COPYRIGHT INFRINGEMENT [AGREED]

To succeed on each of its claim, Plaintiff must prove the following things for each work it claims:

1. The particular work in question is the subject of a valid copyright;

2. Plaintiff owns the copyright; and

3. Defendant copied protected expression from the work.

I will explain what these terms mean.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must find for Plaintiff, with respect to that claim. However, if you find that Plaintiff did not prove each of these things, then you must find for Defendant, with respect to that claim.

1diam-7 Modern Federal Jury Instructions-Civil 12.2.1

## 14. VALIDITY [AGREED]

To be eligible for copyright protection, a work must be original and in a form that can be seen, heard, reproduced, or communicated.

A work is original if it was created independently, as opposed to being copied from another work. It must contain at least some minimal degree of creativity. The work need not be completely new. A work can be original even if it incorporates elements that are not original to the author. However, only the original elements added by the author are protected by copyright.

1diam-7 Modern Federal Jury Instructions-Civil 12.3.1

## 15. OWNERSHIP [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

Plaintiff owns a copyright in characters, paintings, drawings and three-dimensional figures, if its employees created the work; if its employees or others from whom it has a written transfer of rights created the work jointly with other authors, if it received a written transfer of copyright in the work from someone else who owned copyright in the work or if a transfer should be implied based on the circumstances of the creation of the work. The Court has found and Chapterhouse has agreed that Games Workshop is the owner of the copyrights for all of the specific works at issue in this action. I will explain more specifically now what this means.

17

1diam-7 Modern Federal Jury Instructions-Civil 12.4.1

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Chapterhouse believes that, consistent with the Seventh Circuit Pattern Jury Instructions, a single, integrated instruction on ownership is appropriate. Chapterhouse's proposed instruction is closely modeled on the Federal Civil Jury Instructions of the Seventh Circuit.

Games Workshop's specification of four different kinds of copyrightable works ("characters, paintings, drawings and three-dimensional figures") is confusing, redundant, and irrelevant. Games Workshop's proposed instruction improperly conflates the separate works Games Workshop claims, will be confusing to a jury, and is prejudicial to Chapterhouse. As a matter of governing English law, it is not possible for Games Workshop to have "created [a] work" jointly or otherwise, because English copyright law does not provide for the legal fiction that a corporation can be the "author" of a work made for hire. UK Copyright, Designs, and Patents Act 1988, §9 ("In this Part 'author', in relation to a work, means the person who creates it"). It is confusing, redundant, and unnecessary to offer multiple, separate definitions of the different ways a plaintiff can come to own a copyright. Games Workshop's proposed instruction does not define any of the terms of art or specialized doctrines on which it relies (including at least employee, joint work, and equitable assignment), and thereby invites jury confusion concerning such terms and concepts, by separating them into multiple, discrete instructions.

Games Workshop's statement that Chapterhouse has agreed that Games Workshop is the "owner of the of the copyrights for all of the specific works at issue in this action" is irrelevant, misleading, and likely to confuse the jury. To the extent that Games Workshop continues to vaguely assert the Warhammer universe as its copyrighted work or any work other than those for which the Court has expressly determined ownership, Games Workshop must prove its ownership of those works. Chapterhouse has conceded that it may not challenge ownership only with respect to the works and authors previously identified and for whom Games Workshop has produced written assignments, Chapterhouse does not concede Games Workshop's ownership of every work in the entire Warhammer oeuvre.

### *Chapterhouse's Proposed Jury Instruction*

For each work Plaintiff claims, Plaintiff owns the copyright if:

- The particular work was created by Plaintiff's employee, working within the scope of his or her employment;

- Plaintiff received a written transfer of copyright from someone else who owned it; or

- The particular work was a joint work created in part by one or more of Plaintiff's employees working within the scope of his or her employment. A joint work is a work that two or more persons prepared with the intention that their contributions be merged into inseparable elements of a single work. To own a copyright in a joint work, a person must contribute original expression that, by itself, would be eligible for copyright protection as I have previously defined that term. Contributions in the nature of research, comments or edits are not sufficient. Contributing direction or ideas is not enough.

The Court has found that Games Workshop is the owner of the following specific, individual works that Chapterhouse is accused of infringing: [list the works].

Federal Civil Jury Instructions of the Seventh Circuit, §12.4.1 (2009 rev.); UK Copyright, Designs, and Patents Act 1988, §§10 (joint authorship), 11 (first ownership of copyright), 90(3) (assignment); 95-102 (co-authorship), 122-128 (transfers of ownership).

**Games Workshop objects to Chapterhouse's proposed jury instruction as follows:**

The Court has ruled on summary judgment that Games Workshop is the owner of all the works at issue in the lawsuit. Chapterhouse evidently agrees any ownership questions as to the works in issue have now been resolved, on the basis of which understanding the parties have stipulated that neither will call at trial their proposed experts on English law. Nonetheless, Chapterhouse contends that additional instructions as to individual works are needed. Games Workshop does not seek an instruction that it is the owner of all works that have ever been included as part of the Warhammer or Warhammer 40,000 oeuvre, but only that the collection of all of the works at issue in the case, which it concededly owns, belong to it. Based on this collection of works, without regard to other works in the Games Workshop universe, the jury can and should be able to consider patterns of copying rather than simply one-to-one copies from individual works.

Games Workshop objects that Chapterhouse's proposed instruction is needlessly confusing, Games Workshop first objects that Chapterhouse lacks standing to challenge Games Workshop's ownership of copyright. *Billy-Bob Teeth v. Novelty, Inc.*, 329 F.3d 586 (7th Cir. 2003) (Where there is no dispute between the copyright owner and the transferee about the status of the copyright "it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement"). Moreover, there is no issue in this case of Games Workshop acquiring works by assignment from third parties. At most it has obtained confirmatory assignments from employees who never contested Games Workshop's ownership and there is no law that under such circumstances an assignment must be obtained prior to litigation. This part of Chapterhouse's instruction thus is needlessly confusing.

Although Games Workshop does not believe any further instruction is needed on ownership, to the extent there are any factual issues regarding ownership, Chapterhouse's proposed instruction does not properly reflect applicable English law on the subject and neglects entirely the concept of equitable assignment. Because the concepts are sufficiently distinct, separate instructions would be needed on each of the issues of who is an employee under English law; what is a joint work under English law and when is an equitable assignment appropriate.

19

16.     OWNERSHIP — DERIVATIVE WORK [DISPUTED]

*__Chapterhouse's Proposed Jury Instruction__*

Some of the works Plaintiff claims are works that were adapted from previously existing works. This type of work is called a derivative work. Plaintiff owns a copyright only in the original expression that was added to the earlier work. Plaintiff does not own a copyright in the expression taken from the earlier work unless Plaintiff also owns a copyright for the earlier work. The earlier work may include work that is protected by copyright and used with the copyright owner's permission. The earlier work also may include work that is in the public domain.

Federal Civil Jury Instructions of the Seventh Circuit, §12.4.4 (2009 rev.)

**Games Workshop objects to Chapterhouse's proposed jury instruction as follows:**

Plaintiff objects to the inclusion of an instruction on derivative works.  Defendant has not raised any issue of derivative rights in this case.  Where, as here, the author of the derivative work also has a copyright on the underlying work, there is no need to protect the public domain or the author of the underlying work, as the entire work is that of the single author . *Nielsen Co., LLC v. Truck Ads, LLC*, No. 08 C 6446,  2011 U.S. Dist. LEXIS 96412,  at *44-45  (N.D. Ill. Aug. 24, 2011). Accordingly, this instruction can only serve to confuse the jury.  Moreover, Defendant's claim that certain aspects of Plaintiff's works are pre-existing is already covered in proposed instruction 15 – Validity.  Repeating that instruction would only serve to unduly emphasis the issue.

**Chapterhouse Response to Games Workshop's Objection:**

Games Workshop's objection improperly implies that it is a defendant's burden to "raise an[] issue of derivative rights."  To the contrary, it is plaintiff's burden to prove that it owns rights in any underlying works.  Games Workshop's employees concede that at least some of Games Workshop's alleged works are derivative works.  Games Workshop's objection that it owns copyrights to the underlying works lacks foundation and is irrelevant: it is Games Workshop's burden to prove that it owns valid copyrights.  The objection is also irrelevant to the extent Games Workshop has not alleged infringement of the supposed underlying work.

*__Games Workshop's Proposed Jury Instruction__*

Some of the works Plaintiff claims are works that were adapted from previously existing works. This type of work is called a derivative work. Where, as here, the author of the derivative work also has a copyright on the underlying work, the entire work is that of the single author.

*Nielsen Co., LLC v. Truck Ads, LLC*, No. 08 C 6446,  2011 U.S. Dist. LEXIS 96412,  at *44-45 (N.D. Ill. Aug. 24, 2011).

**CHS Objection to Games Workshop's Proposed Jury Instruction**

Games Workshop's proposed instruction is improper because it makes a finding about who owns the copyright in the previous and underlying work, but it has not been shown that all asserted copyrights were sourced or rooted in previously existing works that Games Workshop made, so this instruction is improper. The issue is one for the jury.

## 17.    COPYING [DISPUTED]

*Games Workshop's Proposed Jury Instruction*

As I stated, Plaintiff must prove that Defendant copied protected expression in each of the works or collection of works identified.

In addition to direct evidence of copying, such as admissions by the defendant or documentary proof of copying or evidence to conceal copying, you may infer that Defendant copied from Plaintiff's work if Defendant had a reasonable opportunity to view it before creating his own work and the two works are so similar that a reasonable person would conclude Defendant took protected expression from Plaintiff's work.

You may infer that Defendant copied Plaintiff's work if the similarities between the two works can be explained only by copying, rather than by coincidence; independent creation; or the existence of a common source for both works.

In determining whether Plaintiff has proved copying, you may consider evidence that Defendant's work was created independently of Plaintiff's copyrighted work.

1diam-7 Modern Federal Jury Instructions-Civil 12.5.1 *Atari, Inc. v. North Am. Philips Consumer Electronics Corp.*, 672 F.2d 607, 619 (7th Cir. 1982) ("direct[ion] to [the designer] that he make certain superficial changes in the gobbler figure may be viewed as an attempt to disguise an intentional appropriation of PAC-MAN's expression.")

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Games Workshop's proposed instruction contains improper argument. Games Workshop's proposed instruction concerning "[a] collection of works" improperly conflates its separate copyright claims, will be confusing to a jury, is prejudicial to Chapterhouse, and is contrary to this Court's First Summary Judgment Decision, Dkt. No. 258 at 25. Games Workshop's proposed instruction concerning direct evidence of copying is argumentative, assumes and implies the existence of such evidence, and is prejudicial to Chapterhouse.

In addition, Games Workshop's addition of the phrase "or evidence to conceal copying" is misleading and likely to confuse the jury. To the extent that Games Workshop is referring to changes made to avoid infringement, "a defendant may legitimately avoid infringement by intentionally make sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's." *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d

499 at 501 (2d Cir. 1982); *Warner Bros., Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 241 (2d Cir. 1983) (noting that numerous differences tend to undercut similarity).

**Games Workshop responds to Chapterhouse's objection to the proposed jury instruction as follows:**

With the exception of the reference to the copying of a "collection of works" and the phrase "In addition to direct evidence of copying" Games Workshop's proposed instructions directly track the model instructions.

Chapterhouse's objections seem more tailored to the issue of infringement rather than merely copying. An inference of copying arises here by virtue of the patterns of copying, above and beyond the evidence that any one work was copied. *Paramount Pictures Corp.Carol Pub. Group*, 11 F. Supp.2d 329, 332-33 (S.D.N.Y. 1998) ("As an initial matter, it would be absurd to suggest that Ramer has not copied from the Star Trek Properties. His book contains quotations taken directly from these works, and the Middle Portion is devoted to telling a large portion of the Star Trek story.")

The pattern of copying here is however very telling evidence that the jury should consider. Chapterhouse's proposed instruction also prevents the jury from considering one of Games Workshop's principal contentions in this case is that many of Chapterhouse's works constitute infringement in the aggregate. This includes the collection of infringing products and descriptions thereof on its website and also includes ranges of products, such as its extensive series of shoulder pad designs appropriating the entire Roman numeral system, logo designs and character names of Games Workshop's Tactical Space Marines, Assault Space Marines and Devastator Space Marines. Chapterhouse also organizes its accused works on its website in aggregated format: placing all of its Space Marine works together under one tab; all of its Eldar figures together under another; all of its Tau figures together as well, and so forth. See, e.g., *Castle Rock Entm't. v. Carol Publg. Group, Inc.*, 955 F. Supp. 2d 260 (S.D.N.Y. 1997), *aff'd*, 150 F.3d 132 (2d Cir. 1998). Chapterhouse's proposed instruction does not permit assessment of this aspect of its overall infringement.

Games Workshop deems appropriate the mention of direct evidence of copying given the extensive evidence of such copying. Games workshop's proposed instruction simply tracks the Chapterhouse has not explained in what sense Games Workshop's proposed instruction is argumentative.

Games Workshop further objects that the two decisions from the early 1980s simply stand for the proposition that generic similarities between two works will not support a finding of substantial similarity. They are not relevant to the preliminary question of copying, for purposes of which any similarities are relevant. Moreover In *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 499 at 501 (2d Cir. 1982), the only similarities between the works was that they were both snowmen, and in *Warner Bros., Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 241 (2d Cir. 1983), the similarities were the result of the fact that the defendant's character was a parody of a superhero, making it inevitable he had some resemblance to Superman. The

court also acknowledged the general proposition that no accused infringer can excuse the claimed wrong by showing how much of the subject work was not copied.

### *Chapterhouse's Proposed Jury Instruction*

As I stated, Plaintiff must prove that Defendant copied protected expression in each of the works alleged to be infringed.

You may infer that Defendant copied from Plaintiff's work if Defendant had a reasonable opportunity to view it before creating his own work and the two works are so similar that a reasonable person would conclude Defendant took protected expression from Plaintiff's work.

You may infer that Defendant copied Plaintiff's work if the similarities between the two works can be explained only by copying, rather than by coincidence, independent creation, or the existence of a common source for both works. A work is not a copy simply because it is 'based upon' preexisting works. A work is not a copy unless it has been substantially copied from the prior copyrighted work.

In determining whether Plaintiff has proved copying, you may consider evidence that Defendant's work was created independently of Plaintiff's copyrighted work.

A finding of copying does not, by itself, mean that Defendant infringed Plaintiff's copyright. Even if you find that Defendant copied some aspect of Plaintiff's work, in order to find that Defendant infringed Plaintiff's copyright you must also find that the copying was of protected expression. You must also find that Defendant's product is substantially similar to Plaintiff's work and not a fair use. I will explain what those terms mean.

Federal Civil Jury Instructions of the Seventh Circuit, §12.5.1 (2009 rev.); *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011-12 (7th Cir. 2005); *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 506 n.1, 510 (7th Cir. 1994); *Bryant v. Gordon*, 483 F. Supp. 2d 605, 617 (N.D. Ill. 2007); *Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 538 (S.D.N.Y 2008); *Houlihan v. McCourt*, No. 00 C 3390, 2002 WL 1769822, at *7 (N.D. Ill. July 29, 2002); *Harris Custom Builders, Inc. v. Hoffmeyer*, 92 F.3d 517 (7th Cir. 1996).

### Games Workshop objects to Chapterhouse's proposed jury instruction as follows:

In addition to the reasons stated in Games Workshop's response to Chapterhouse's objection, Plaintiff objects to paragraph 5 of Defendant's proposed jury instruction, as it is inconsistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 12.5.1. The issues raised in this paragraph are already covered in other proposed instructions. Repeating them here places undue emphasis on them. Additionally, Defendant improperly asserts that a finding that Defendant improperly copied protected expression of Plaintiff is insufficient for a finding of infringement, absent an additional showing of substantial similarity. Where, as here, there is direct evidence of copying, there need not be any additional showing of substantial similarity. As the *Bryant* case cited by Defendant makes clear, copying may be inferred through defendant's access to the work and substantial similarity when direct evidence of copying is

unavailable. *Bryant*, 483 F. Supp. 2d at 617 ("*Direct evidence of copying is typically unavailable*, but 'copyright infringement may be inferred where the defendant had access to the copyrighted work and the accused work is substantially similar to the copyrighted work.'") (emphasis added).

Moreover, plaintiff objects to the inclusion of any mention of fair use in the context of the issue of copying simpliciter, because the fair use defense is premised on an assumption that there has been actual copying but for some transformative further purpose. It can only confuse the jury to introduce the concept of fair use in an instruction on copying. Rather, it only belongs (if at all) as a separate instruction as a defense to substantial similarity.

### Chapterhouse Response to Games Workshop's Objections

The *Bryant* case does not stand for the proposition for which GW cites it. In the Seventh Circuit, the test for infringement includes determining both (1) whether the defendant copied from the plaintiff's work and (2) whether the copying, if proven, went so far as to constitute an improper appropriation. *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982). Thus, "if the only similarity between plaintiff's and defendant's works is that of the abstract idea, there is an absence of substantial similarity and hence no infringement results."*Id.* at 615. *See also La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1180 (10th Cir. 2009)("Once copying has been established, liability for copyright infringement will attach only where protected elements of a copyrighted work are copied." The plaintiff must prove that there is a " similarity between those aspects of Plaintiff's [work] which are legally protectable and the Defendants' [work]." Id.)

## 18.    COPYING—DEFINITION OF "PROTECTED EXPRESSION" [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

"Protected expression" means expression in Plaintiff's work that was created independently, meaning that it was not itself copied from another work, and involving some creativity.

The minimal originality required for copyright protection can include original combinations of elements, including names and titles of characters, colors and physical dimensions, even if some or all of the elements are not themselves original and such originality is not assessed by decomposing original combinations into constituent elements.

Ownership of a certificate of copyright obtained within five years of first publication creates a presumption of its validity, shifting the burden to defendant to prove otherwise.

In this case the Court has already determined that the shape of the shoulder pad for Games Workshop's Space Marine figure is copyrightable expression. Similarly, the Court has already determined that combinations of the original shoulder pad together with surface designs (whether of not those other designs are protectable on their own, such as an X or a chevron, or the Roman numerals I through X or any other designs) are copyrightable. The Court has further already

determined that Games Workshop's combination of the distinctive elements in its Chaplain icon (consisting of a skull with red eyes that wears a helmet); and stylized Salamander and Wolf designs are copyrightable. The Court has not made any such rulings for or against either party on other features or works claimed to be protectable, and it is for the you, the jury, to decide. However, for the specific elements and combinations of elements that the Court has already deemed copyrightable, the jury must assume these elements are protected expression.

1diam-7 Modern Federal Jury Instructions-Civil 12.5.2; 17 U.S.C. § 410(c) *JCW Investments, Inc. v. Novelty Inc.*, 482 F.3d 910, 915 (7th Cir. 2007); *Bucklew v Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 926 (7th Cir. 2003).

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Games Workshop's proposed instruction contains improper argument and is legally incorrect. Games Workshop's proposed instruction concerning originality is contrary to established 7th Circuit case law, under which the finder of fact "must take into account that the copyright laws preclude appropriation of only those elements of the work that are protected by the copyright." *Atari, Inc. v. N. Amer. Philips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982).

Games Workshop's proposed instruction concerning copyright registration and the presumption of validity is irrelevant to the definition of "protected expression" and falsely implies that Chapterhouse bears a burden to prove Games Workshop's works contain protected expression.

Chapterhouse further objects that Games Workshop's contention that character names and titles of characters constitute protected expression as a rule. *See* Copyright Circular 34 "Copyright Protection Not Available for Names, Titles, or Short Phrases ("Copyright law does not protect names, titles, or short phrases or expressions"); 7th Cir. Modern Federal Jury Instructions-Civil 12.5.2. Characters are not automatically protectable. The character must be proven to be distinctive in order to be protectable and it is Games Workshop's burden to prove such distinctiveness as to each and every character for which it asserts infringement. *Gaiman v. McFarlane*, 360 F.3d 644, (7th Cir. 2004). To the extent that Games Workshop includes an instruction regarding character names, the circumstances in which such characters are protectable should be outlined in the instruction or in a separate instruction.

It is also incorrect for Games Workshop to say that it is up to the jury to decide copyrightability. See Dkt. 258, at 16. If allowed, the issue of copyrightability should be read in context with the Court's decision on those products that Games Workshop still asserts in this case, for trademark purposes only, but for which the court has granted summary judgment for no copyright infringement. Those products are entries 8, 15-16, 25-26, 28-30, 32, 38-42, 44, 70-72, 81, 84-86, 88-89, 91-93, 107, and 109 on the Claim Chart.

Chapterhouse objects to inclusion of the paragraph allegedly reciting prior decisions of the court regarding protectability.

**Games Workshop Response to Chapterhouse's Objection**

The court has already determined that combinations of elements such as colors and character names, and even unoriginal elements such as the Roman numerals I – X can be original. The court has further ruled that the combination of any of these elements with Games Workshop's Space Marine shoulder pad is an original and copyrightable work. Games Workshop is not claiming rights in any one element alone (such as character names). Moreover, Games Workshop voluntarily withdrew its copyright claims as to entries 8, 15-16, 25-26, 28-30, 32, 38-42, 44, 70-72, 81, 84-86, 88-89, 91-93, 107, and 109 on the Claim Chart for tactical and business reasons to simplify the case. While the Court did conclude that Games Workshop's election was binding, it did not make any findings as to the copyrightability of the works.

It is also inconsistent for Chapterhouse to object to a jury instruction explaining the significance of the Court's substantive holdings on copyrightability while seeking to have the Court instruct the jury on its non-substantive (but still binding) holdings on Games Workshop's voluntary withdrawals of certain claims.

### _Chapterhouse's Proposed Jury Instruction_

"Protected expression" means expression in Plaintiff's work that was created independently, involving some creativity. Copyright law protects only the original expression in the work. This includes the way that ideas or concepts are expressed in the work. It does not include the ideas or concepts themselves. For example, the idea or concept of a secret agent who saves the world from impending disaster is not protected by copyright; but a particular expression of that idea – such as a James Bond movie – may be protected by copyright. If there is only one way, or only a few ways, of expressing an idea, then only exact or near-exact copying of Plaintiff's particular expression of that idea is copyright infringement.

Protected expression does not include settings, poses, or characters that are indispensable or at least standard in the treatment of a particular subject. For example, a depiction of a superhuman muscleman crouching in a traditional fighting pose is not in itself protectable.

Protected expression does not include typefaces, such as Roman numerals; does not include familiar symbols or designs, such as chevron stripes or a fleur-de-lys design; and does not include common geometric shapes, such as an arrow or a five-pointed star.

Merely bringing together two or three standard forms or shapes with minor linear or spatial variations does not necessarily create protectable expression. In this case, the Court has previously determined that the combination of a circular saw blade and a teardrop shape, even when combined to create a single symbol, are merely two geometric shapes and are not protectable expression.

The design of a useful or functional item is considered protected expression only if it includes protected pictorial, graphic, or sculptural features that can be identified separately from the item itself. The feature must be capable of existing independently of the item's useful or functional aspects.

Federal Civil Jury Instructions of the Seventh Circuit, §12.5.2 (2009 rev.); *Eltra Corp. v. Ringer*, 579 F. 2d 294, 298 (4th Cir. 1978); *Mattel, Inc. v. Azrak-Hamway Intern., Inc.*, 724 F.2d 357 (2d Cir. 1983); *Tensor Group, Inc. v. Global Web Systems, Inc.*, 1998 WL 887081 (N.D. Ill. Dec. 11, 1998); *Gentieu v. Tony Stone Images/Chicago, Inc.*, 255 F. Supp. 2d 838 (N.D. Ill. 2003) ; Copyright Compendium II § 503.02(a)-(b); 37 C.F.R. § 202.1; November 27, 2012 Mem Dec. at 22

**Games Workshop's Objection Chapterhouse's proposed jury instruction as follows:**

Chapterhouse's proposed instruction includes references to defenses that the record indicates it can not establish, in particular scenes a faire and functionality. There is no evidence that either defense is relevant here, thus rendering the instruction confusing to the jury. Moreover, the example cited of a James Bond movie is confusion as the works in issue are not motion pictures or screenplays, to which the scenes a faire doctrine most often applies. Rather, they are two-dimensional drawings or paintings or sculptural works to which the scenes a faire doctrine has no demonstrated relevance. Indeed, none of Chapterhouse's several experts even purported to contend that any elements at issue here are indispensable or standard, nor did Chapterhouse identify any such features in its response to discovery. Games Workshop also does not claim rights in any "superhuman muscleman crouching in a traditional fighting pose" Moreover, although Games Workshop concedes that some individual elements of some of its designs are not wholly original to it (such as Roman numerals or certain cross designs) the combination of such elements with other original elements or even the combination of such elements with other individual elements from the public domain can be copyrightable. *Bucklew v Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 926 (7th Cir. 2003); *JCW Investments Inc. v. Novelty Inc.*, 482 F3d 910, 917 (7th Cir. 2007); *Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982) The Court agreed that such features (such as a chevron or an X) in combination with other features are indeed copyrightable.

**CHS Response to Games Workshop's Objections**

While GW argues that CHS has never pled a defense of scenes a faire, it is not an affirmative defense. *Liberty Am. Ins. Group, Inc. v. WestPoint Underwriters, LLC*, 199 F. Supp. 2d 1271, 1290 (M.D. Fla. 2001) (rejecting argument that merger and *scenes a faire* are "affirmative defenses" and stating that "[t]he important point . . . is that [the] analysis is necessary . . . [as] a means to a very important end: filtering out all unprotectable material") (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996)); *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011-12 (7th Cir. 2005) (scenes a faire doctrine is a "specific limitation[] to copyright protection").

## 19.    PROOF OF UNLAWFUL COPYING OF INDIVIDUAL WORKS [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

To prove that defendant has infringed its rights in any individual work, it must show that the accused work is so substantially similar to the plaintiff's work, meaning that that an ordinary

reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value. Plaintiff is not required to show that the works are identical, and the test does not involve analytic dissection of the works into their constituent elements but rather whether the accused work has captured the 'total concept and feel' of the copyrighted work in the eyes of the ordinary observer.

When comparing products for similarity, the predominant question is whether 'the two works share enough unique features to give rise to a breach of the duty not to copy another's work.

In assessing similarity, it is sufficient that substantial parts of the accused work was copied; no accused infringer can excuse the claimed wrong by showing how much of the subject work was not copied.

In assessing similarity as viewed by an ordinary observer, where there is evidence of actual reactions of ordinary consumers to defendant's products, such reactions are relevant.

*Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 614, 619 (7th Cir. 1982); November 27, 2012 Mem Dec. at 25, citing *Peters v West*, 692 F.3d 629, 633-34 (7th Cir 2012)..

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Games Workshop's proposed instruction is redundant, confusing, and unnecessary in light of the proposed instructions on "copying" and "protectable expression." The proposed instruction also misstates the Seventh Circuit test for copyright infringement. *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011-12 (7th Cir. 2005) (emphasizing requirement that works be *similar*); *Atari*, 672 F. 2d 607, 614 (7th Cir. 1982) (same); *id.* (emphasizing need to distinguish unprotectable from protectable forms of expression); *Sassafras Enters., Inc. v. Roshco, Inc.*, 889 F. Supp. 343, 348 (N.D. Ill 1995) (limitations on copyright protection "define the universe for . . . comparison"). The proposed instruction is also improperly argumentative, including in its proposed title ("Proof of Unlawful Copying").

In addition, the instruction argues, incorrectly, that one may not consider how much of the subject work was not copied. In fact, however, "a defendant may legitimately avoid infringement by intentionally make sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's." *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 499 at 501 (2d Cir. 1982); *Warner Bros., Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 241 (2d Cir. 1983)

### *Chapterhouse's Proposed Jury Instruction*

To prove that defendant has infringed its rights in any individual work, it must show that the accused work is so substantially similar to the plaintiff's work, meaning that that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value. A defendant may legitimately avoid infringement by intentionally make sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff.

*Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 499 at 501 (2d Cir. 1982); *Warner Bros., Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 241 (2d Cir. 1983)

**Games Workshop Objects to Chapterhouse's proposed jury instruction as follows**

This Court's November 27, 2012 Mem Dec. at 25, citing *Peters v West*, 692 F.3d 629, 633-34 (7th Cir 2012) specifically held that when comparing products for similarity, the predominant question is whether 'the two works share enough unique features to give rise to a breach of the duty not to copy another's work.

Moreover, *Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 614, 619 (7th Cir. 1982); specifically recognized that in assessing similarity, it is sufficient that substantial parts of the accused work was copied; and that no accused infringer can excuse the claimed wrong by showing how much of the subject work was not copied. Atari also recognized that in assessing similarity as viewed by an ordinary observer, where there is evidence of actual reactions of ordinary consumers to defendant's products, such reactions are relevant. Here, there is substantial evidence of actual consumer reactions, and the jury should be instructed as to the significance of such evidence – particularly given the defendant's failure to preserve such evidence in violation of a specific court order.

Games Workshop further objects that the two decisions from the early 1980s simply stand for the proposition that generic similarities between two works will not support a finding of substantial similarity. Here, the defendant's copying is done for the specific purpose of appealing to fans of Warhammer 40,000, and the instruction is confusing in suggesting that any sort of differences will overcome a finding of substantial similarity. Indeed, in *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 499 at 501 (2d Cir. 1982), the only similarities between the works was that they were both snowmen, and in *Warner Bros., Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 241 (2d Cir. 1983), the similarities were the result of the fact that the defendant's character was a parody of a superhero, making it inevitable he had some resemblance to Superman. The court also acknowledged the general proposition that no accused infringer can excuse the claimed wrong by showing how much of the subject work was not copied.

## 20.    SUBSTANTIAL SIMILARITY  [DISPUTED]

### *Chapterhouse's Proposed Jury Instruction*

To prove that Defendant has infringed Plaintiff's copyright in any of Plaintiff's individual works, Plaintiff must show that the accused work is so similar to the Plaintiff's work that an ordinary reasonable person would conclude that the Defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value.

You can determine if Defendant's product is similar to Plaintiff's work by comparing them side-by-side. However, only the protectable elements of Plaintiff's work are relevant to

such a comparison. Similarity to elements of Plaintiff's work that are in the public domain, or that were derived from works created by others, does not by itself make the works substantially similar.

*Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011-12 (7th Cir. 2005); *Bryant v. Gordon*, 483 F. Supp. 2d 605, 617 (N.D. Ill. 2007); *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 506 n.1, 510 (7th Cir. 1994); *Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982).

**Games Workshop's Objection Chapterhouse's proposed jury instruction as follows:**

Chapterhouse's proposed instruction improperly invites the jury to apply an abstraction and filtration test (typically used only in software infringement cases) that is not appropriate to consumer products and in so doing gives undue emphasis to defenses that are not in issue in the case, in particular scenes a faire, merger and functionality. No such defenses are included among the 23 affirmative defenses in Chapterhouse's answer or in its responses to discovery. Moreover, the instruction does not alert jurors to the actual test of under which combinations of elements (some of which may be in the public domain) are nonetheless copyrightable. *Bucklew v Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 926 (7th Cir. 2003); *JCW Investments Inc. v. Novelty Inc.*, 482 F3d 910, 917 (7th Cir. 2007); *Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982)

**Games Workshop does not propose an instruction concerning substantial similarity**

## 21.     PROOF OF COPYING OF MULTIPLE WORKS TOGETHER [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

You may also find that defendant has infringed plaintiff's rights by collecting on its website protected expression from individual works and placing them together on its website, such that in the aggregate or in total it has taken material of substance and value from plaintiff's copyrighted works.

*Castle Rock Entm't. v. Carol Publg. Group, Inc*., 955 F. Supp. 2d 260 (S.D.N.Y. 1997), *aff'd*, 150 F.3d 132, 137 (2d Cir. 1998)

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Games Workshop's proposed instruction misstates *Castle Rock* and misstates Seventh Circuit law, in particular (and without limitation) by ignoring the actual test for infringement, which requires substantial similarity of protected expression. This claim was also rejected in the Court's November 27, 2012 First Summary Judgment Decision, Dkt. No. 258 at 25.

This proposed instruction is confusing and misleading because it falsely implies that Games Workshop's copyright claim as to the Chapterhouse website requires a different test and must be analyzed under a different standard. Games Workshop's proposed "material of

substance and value" test has no basis in statute, Seventh Circuit case law, nor the Second Circuit's *Castle Rock* case. Rather, it is merely five words taken out of context from a lengthy definition and discussion of copyright infringement in a single case.

The Second Circuit's *Castle Rock* decision was based on admitted copying of expression that was concededly original and protectable, unlike the facts in this case. The *Castle Rock* panel merely found defendant's *de minimis* defense unavailing in light of such copying. Games Workshop's proposed instruction, by contrast, improperly presumes that Games Workshop's works are protectable and that Chapterhouse has copied them. The proposed instruction is also redundant, confusing, and unnecessary in light of the proposed instructions concerning copying, protected expression, and substantial similarity.

**Games Workshop's responds to Chapterhouse's objection as follows:**

One of Games Workshop's principal contentions in this case is that many of Chapterhouse's works constitute infringement in the aggregate. This includes the collection of infringing products and descriptions thereof on its website and also includes ranges of products, such as its extensive series of shoulder pad designs appropriating the entire Roman numeral system, logo designs and character names of Games Workshop's Tactical Space Marines, Assault Space Marines and Devastator Space Marines. Chapterhouse also organizes its accused works on its website in aggregated format: placing all of its Space Marine works together under one tab; all of its Eldar figures together under another; all of its Tau figures together as well, and so forth. See, e.g., *Castle Rock Entm't. v. Carol Publg. Group, Inc.*, 955 F. Supp. 2d 260 (S.D.N.Y. 1997), *aff'd,* 150 F.3d 132 (2d Cir. 1998). Chapterhouse's proposed instruction does not permit assessment of this aspect of its overall infringement. As in Castle Rock, Defendant here can not dispute actual copying and thus far has not disputed actual copying. Nor has Defendant identified any basis to dispute copying of expression that was concededly original and protectable, except by imporprly dissecting certain of Games Workshop's works into constituent elements, a small number of which (such as Roman numerals) are in the public domain, albeit never used in the manner used by Games Workshop. Moreover, the "material of substance and value" test is directly adopted from *Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982).

What the Court held in its November 27 decision was simply that Chapterhouse's website did not infringe Games Workshop's website. Games Workshop did not intend to make any such allegation, but rather had argued that the Chapterhouse website is a compilation of materials derived from the entire oeuvre of Warhammer 40,000 (or more specifically the entire collection of individual works directly at issue),, and is essentially like a catalog. Such a compilation or catalog is essentially no different from the collection of individual trivia questions collected in one book, which was deemed an infringement of the collection of 84 television shows in *Castle Rock*.

**<u>CHS Response to GW's Objection</u>**

GW tries to resurrect an argument that the Court expressly rejected in its denial of GW's first summary judgment motion. Namely, GW previously attempted—and it admits it

was unsuccessful—to "show that the entire range of [CHS's] products" is copied from and infringes the "collective creative realm of Warhammer 40,000." Opp. at 16. The Court already rejected this theory, finding that "GW's attempt to persuade the Court to consider all of its products as one unified whole is therefore unpersuasive and without evidentiary support." Dkt. 258 at 25. The court found that the infringement analysis must be conducted as to each allegedly infringed product. *Id.* at 25-26. GW did not challenge that decision or seek reconsideration.

**Chapterhouse Does Not Propose a Jury Instruction on Proof of Copying of Multiple Works Together**

**22.    COPYING – DEFINITION OF "DE MINIMIS" COPYING  [DISPUTED]**

**GW does not propose an instruction concerning *de minimis* copying.**

***Chapterhouse's Proposed Jury Instruction***

Even if you find there is some copying, that fact does not by itself mean that Defendant has infringed Plaintiff's copyright.  Some copying is permitted. Plaintiff must show that the copying, if any, has been done to an unfair extent. Copying of a small and insignificant amount of one of Plaintiff's works does not infringe Plaintiff's copyright.  If the average audience would not recognize the appropriation then copying is *de minimis* and not infringing.

*G. R. Leonard & Co. v. Stack*, 386 F.2d 38, 39 (7th Cir. 1967) (requirement to show copying "to an unfair extent"); *Newton v. Diamond*, 388 F.3d 1189, 1193 (9th Cir. 2004) ("insignificant" copying does not infringe; no infringement if average audience would not recognize the appropriation).

**Games Workshop's objects to Chapterhouse's instruction as follows:**

Chapterhouse has not identified in this action any works where it contends that its alleged copying was merely de minimis.  Moreover, because the proper test of infringement is whether the defendant has appropriated "material of substance and value", *Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982), the instruction on de minimis copying is unnecessary and confusing.

Alternately, Games Workshop believes the jury should be instructed in addition that where defendant has appropriated "material of substance and value", the copying is by definition not de minimis.

**23.    DEFENSES — FAIR USE**

**Games Workshop's Proposed Jury Instruction**

Defendant contends that even if he copied protected expression in Plaintiff's work, his copying is allowed under what the law calls "fair use." To succeed on this defense,

Defendant bears the burden of proving that he made fair use of certain aspects of Plaintiff's work for the purposes of criticism, parody, comment, news reporting, teaching, scholarship, or research.

In deciding this, you should consider the following:

- the purpose and character of Defendant's use, including whether Defendant's use is of a commercial nature, is for a non-profit educational purpose, or transforms Plaintiff's work into something of a different character;
- the degree of creativity involved in Plaintiff's work;
- whether Plaintiff's work was published or unpublished;
- the amount of Plaintiff's work that Defendant copied, and the significance of the portion copied in relation to claimed fair use purpose articulated by defendant and Plaintiff's work as a whole; and
- how Defendant's use affected the value of or potential market for Plaintiff's work;

It is up to you to decide how much weight to give each factor.

Federal Civil Jury Instructions of the Seventh Circuit, §12.7.1 (2009 rev.).

### ***Chapterhouse's Proposed Jury Instruction***

Defendant contends that even if he copied protected expression in Plaintiff's work, his copying is allowed under what the law calls "fair use." To succeed on this defense, Defendant must prove that he made fair use of certain aspects of Plaintiff's work for the purpose[s] of compatibility and/or fit of Defendant's new creative game pieces with existing Warhammer 40,000 pieces.

In deciding this, you should consider the following:

- the purpose and character of Defendant's use, including whether Defendant's use is of a commercial nature or transforms Plaintiff's work into something of a different character;
- the degree of creativity involved in Plaintiff's work;
- the amount of Plaintiff's work that Defendant copied, and the significance of the portion copied in relation to Plaintiff's work as a whole; and
- how Defendant's use affected the value of or potential market for Plaintiff's work;

It is up to you to decide how much weight to give each factor. Compatability does not necessarily mean that there is copyright infringement.

Federal Civil Jury Instructions of the Seventh Circuit, §12.7.1 (2009 rev.); *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1547 (11th Cir. 1996) ("Thus, we today join these other circuits in finding that external considerations such as compatibility may negate a finding of infringement.").

**Games Workshop's objects to Chapterhouse's instruction as follows:**

For reasons set forth at length in Games Workshop's pending motion for summary judgment, Games Workshop does not believe Chapterhouse has even identified an alleged transformative purpose for its copying. Hence, the jury needs to understand that such a purpose is essential to the defense. Chapterhouse's proposed instruction improperly invites the jury to conclude that it is a fair use to use another's work for the purpose of compatibility and/or fit of Chapterhouse's products with existing Warhammer 40,000 pieces. The Court explicitly rejected this theory in the Court's November 27, 2012 Order in finding that Chapterhouse was not entitled to use Games Workshop's works to determine the fit and compatibility of replacement doors for Games Workshop's vehicles. Moreover *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1547 (11th Cir. 1996) concerned the issue of whether it was necessary to allow certain copying for functional operation of a computer program and the fair use questions in the case concerned the permissibility or not of reverse engineering. Because of the inherently functional nature of computer programs, courts have adopted a narrower scope of protection and unique rules for filtering out utilitarian elements of the programs, which tests are not applied to other non-technical works. The compatibility question there concerned the functional need or not for purposes of interoperability and functionality. The case has no bearing here on the issue of whether Chapterhouse can articulate a fair use purpose at all for its copying of an entirely non-functional work of fiction.

**CHS Response to Games Workshop's Objection and Objection to Games Workshop's Proposed Instruction**

The Court has already ruled that fair use is in this case. (Dkt. 333 at 17-20.) In addition, Games Workshop's objection misstates the Court's November 27, 2012 Order. In the Order, the Court held that the defense of functionality did not apply to the way that Games Workshop components "might move in real life," in denying Chapterhouse's motion for summary judgment. Dkt. 258 at 23-24. The Court did not address whether size compatibility falls within the fair use defense in its November 27, 2012 Order, nor did the Order address whether components are functional within the context of the toy itself, such as Games Workshop's shoulder pads that must be made to fit the shoulders of the characters on which they sit.

Chapterhouse objects to Games Workshop's proposed instruction because it improperly limits the bases for the application of fair use to those explicitly listed in the model instruction, contrary to the instructions own explicit allowance to insert additional types of fair use.

## 24.    DAMAGES—GENERAL [AGREED]

If you find that Plaintiff has proved that Defendant has infringed Plaintiff's copyright in a work or in multiple works together, then you must determine the amount of damages, if any, Plaintiff is entitled to recover. If you find that Plaintiff has failed to prove the claim, then you will not consider the question of damages.

Plaintiff must prove damages by a preponderance of evidence.

Plaintiff is seeking to recover profits that Defendant made from the alleged infringement. I will define this term.

1diam-7 Modern Federal Jury Instructions-Civil 12.8.1; Federal Civil Jury Instructions of the Seventh Circuit, §12.8.1 (2009 rev.)

## 25.    DAMAGES—DEFENDANT'S PROFITS [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

If Plaintiff succeeds in showing that Defendant infringed any of its individual copyrighted works or copying in the aggregate, Plaintiff is entitled to recover the profits that Defendant made because of such individual infringements or infringement in the aggregate.

Defendant's profits are revenues that Defendant made because of the infringement, minus Defendant's expenses in producing, distributing, marketing or selling the infringing products. Plaintiff need only prove Defendant's revenues. Defendant must prove his own expenses and any portion of his profits that resulted from factors other than infringement of Plaintiff's copyright.

1diam-7 Modern Federal Jury Instructions-Civil 12.8.3; Federal Civil Jury Instructions of the Seventh Circuit, §12.8.3 (2009 rev.)

### *Chapterhouse's Proposed Jury Instruction*

If Plaintiff succeeds in showing that Defendant infringed any of its individual copyrighted works , Plaintiff is entitled to recover the profits that Defendant made because of such  individual infringements.

Defendant's profits are revenues that Defendant made because of the infringement, minus Defendant's expenses in producing, distributing, marketing or selling the infringing products. Plaintiff need only prove Defendant's revenues. Defendant must prove his own expenses and any portion of his profits that resulted from factors other than infringement of Plaintiff's copyright.

1diam-7 Modern Federal Jury Instructions-Civil 12.8.3; Federal Civil Jury Instructions of the Seventh Circuit, §12.8.3 (2009 rev.)

**Count II – Trademark Infringement**
**Count III – False Designation of Origin**
**Count VIII –Illinois Deceptive Trade Practices Act under 815 ILCS 510/1**

**26.    NATURE OF CLAIM [DISPUTED]**

*Games Workshop's Proposed Jury Instruction*

Plaintiff claims that Defendant has infringed Plaintiff's trademarks.

A trademark is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product.

The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit trademark owners to show ownership of their products and control their product's reputation.

Plaintiff claims that Defendant infringed Plaintiff's trademarks, including the names of Plaintiff's products and characters, by using the names first adopted and used by Plaintiff in naming and identifying Defendant's own products derived from Plaintiffs products and by marketing those products to Plaintiff's own customers on internet forums devoted primarily or exclusively to fans of Warhammer 40,000.

Plaintiff further claims that because Defendant's products bear no permanent markings identifying Defendant as the producer of those goods, when those products are resold or used by Defendant's customers, it will likely confuse such potential purchasers who can only identify the goods as coming from the Plaintiff.

Defendant denies that its use of Plaintiff's claimed trademarks causes a likelihood of confusion.

1diam-7 Modern Federal Jury Instructions-Civil 13.1.1

**Chapterhouse objects to Games Workshop's proposed jury instruction as follows:**

Defendant objects to Paragraphs 4 to 6 of Plaintiff's proposed instruction because Plaintiff deviates from the model instruction set forth in the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.1 by adding superfluous and new language, arguments, and factual allegations.  Further, Plaintiff has submitted no evidence to support the argumentative statement that "it will likely confuse such potential purchasers **who can only identify the goods as coming from the Plaintiff**."

Paragraph 4 of Plaintiff's proposed instruction fails to describe the trademarks at issue and the products on which Plaintiff used those trademarks.  Plaintiff's description of the nature

of allegedly infringing activity is also inconsistent with the description that Plaintiff provided in interrogatory responses. By contrast, Defendant's proposed instruction describes the specific trademarks at issue and the corresponding products and adopts the language from Plaintiff's own interrogatory response.

With respect to Paragraph 5, neither the Seventh Circuit's model instructions nor the model instruction cited by the Plaintiff contains any such instruction and Plaintiff offers no support for the proposed language.

With respect to Paragraph 6, Plaintiff failed to identify Defendant's other defenses, as the Seventh Circuit model instructions direct.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.1 (2009 rev.); Plaintiff Games Workshop Studios LLC's Response to Interrogatories to Games Workshop Limited Set Two at No. 3 ("Chapterhouse infringes the above marks by making unauthorized use of the same without authorization or consent of Games Workshop on and in connection with its products and its website.") (available at, e.g., Ex. 37 at ECF No. 208-36).

### *Chapterhouse's Proposed Jury Instruction*

Plaintiff claims that Defendant has infringed Plaintiff's trademarks.

A trademark is a word, symbol, or combination of words or symbols used by a person to identify his product, to distinguish his product from those manufactured or sold by others, and to indicate the source of his product.

The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit trademark owners to show ownership of their products and control their product's reputation. Plaintiff claims that Defendant infringed 112 of Plaintiff's trademarks for Plaintiff's line of miniatures and books by using those trademarks without the authorization or consent of Plaintiff on and in connection with Defendant's products.

Defendant denies that Plaintiff owns U.S. trademark rights in each of the asserted terms and symbols; denies that each of the asserted terms and symbols is a valid trademark; denies that Defendant has used each of asserted terms and symbols as trademarks; and denies that any use of Plaintiff's claimed trademarks has caused a likelihood of confusion. Defendant also asserts that any use of terms and symbols in which Plaintiff does own U.S. trademark rights, if any, is a non-infringing fair use.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.1 (2009 rev.); Plaintiff Games Workshop Studios LLC's Response to Interrogatories to Games Workshop Limited Set Two at No. 3 ("Chapterhouse infringes the above marks by making unauthorized use of the same without authorization or consent of Games Workshop on and in connection with its products and its website."); *Spex, Inc. v. Joy of Spex, Inc.,* 847 F.Supp. 567, 579 (N.D.Ill. 1994) ("Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act."; dismissing claims under

the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983); *S. Industries, Inc. v. Space Age Technologies*, No. 97-c-2787, 1999 WL 495484, at *7 (N.D. Ill. June 30, 1999) (same; granting summary judgment for defendants for federal trademark claims and Illinois fraud and deceptive business practices claims), *aff'd* 116 Fed. App. 252 (7th Cir. 2004).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

Plaintiff objects to Paragraph 3 of Defendant's proposed instruction because Defendant deviates form the model instruction set forth in the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.1 by adding superfluous and new language, arguments, and factual allegations.

Paragraph 3 of Defendant's proposed instruction improperly characterizes Plaintiff's products as "toys" and improperly limits Plaintiff's use of its trademarks to "toys and books" where Plaintiff has used such marks in a large variety of products, including miniatures, books, computer games, magazines, movies, the internet, and more. Further, Defendant improperly limits the allegedly improper activity as "using the trademarks…in connection with Defendant's products." Plaintiff's instruction is more appropriate as Defendant has used Plaintiff's trademarks not only in connection with its products, but also in its various marketing efforts and throughout its online store. Paragraph 3 further improperly omits Plaintiff's contention of post-sale confusion due to Plaintiff's failure to mark its goods.

Regarding the enumeration of the trademarks in issue, Games Workshop further submits that this can be handled by special verdict form based on the evidence actual presented at trial.

## 27. TRADEMARK INFRINGEMENT—ELEMENTS [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

Plaintiff claims that Defendant infringed Plaintiff's trademarks. To succeed on its claim for infringement of each trademark, Plaintiff must prove the following things by a preponderance of the evidence:

1. Plaintiff owns the asserted symbol, term, and product design as a trademark;

2. Plaintiff's asserted symbol, term, or product design is a valid trademark;

3. Defendant used the asserted symbol, term, or product design in interstate commerce. The symbol, term, or design is used in interstate commerce if Defendant's product or commercial activities are transferred, advertised, or sold across state lines;

4. Defendant used the asserted symbol, term, or design in a manner that is likely to cause confusion as to the source, origin, sponsorship, or approval of Defendant's product.

I will explain what I mean by these terms.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must find for Plaintiff. However, if Plaintiff did not prove each of these things by a preponderance of the evidence, then you must find for Defendant.

1diam-7 Modern Federal Jury Instructions-Civil 13.1.2

**Chapterhouse objects to Games Workshop's Proposed Instruction as follows:**

Defendant objects to the use of the phrase "product design" because it is inconsistent with the explanation of trademarks in the NATURE OF CLAIM instruction above and the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2. A trademark is a word, symbol, or a combination of words or symbols, which is vague and confusing.

Defendant objects to Plaintiff's failure to include the Seventh Circuit's model instruction for providing a brief explanation for the affirmative defenses in this section of the jury instructions.

Defendant objects to Plaintiff's instruction concerning Defendant's alleged "commercial activities" as Plaintiff has failed to allege that Defendant used any of Plaintiff's symbols or terms as service marks.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2 (2009 rev.); *Id.* at §13.1.2 cmt. 8 (affirmative defense instruction) (2009 rev.); 15 U.S.C. § 1127 (defining "use on commerce" on "services").

### *Chapterhouse's Proposed Jury Instruction*

Plaintiff claims that Defendant infringed Plaintiff's trademarks. To succeed on these claims, Plaintiff must prove the following things by a preponderance of the evidence for each of the asserted terms or symbols:

    1. Plaintiff owns the asserted symbol or term as a trademark;

    2. Plaintiff's asserted symbol or term is a valid trademark;

    3. Defendant used the asserted symbol or term in interstate commerce. The symbol or term is used in interstate commerce by Defendant if Defendant's product on which it uses the marks is transferred, or sold across state lines; and

    4. Defendant used the asserted symbol or term in a manner that is likely to cause confusion as to the source, origin, sponsorship, or approval of Defendant's product.

I will explain what I mean by these terms. If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must find for Plaintiff as to that

trademark. However, if Plaintiff did not prove each of these things by a preponderance of the evidence, then you must find for Defendant.

If, on the other hand, you find that Plaintiff has proved each of these things by a preponderance of the evidence, you must then consider Defendant's claim that its use of any such term or symbol is a permitted fair use. If you find that Defendant has proved this by a preponderance of the evidence, then you must find for Defendant.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2, cmt. 8 (2009 rev.).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

Plaintiff objects to Defendant's omission of the phrase "product design" as it is consistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2.

Plaintiff objects to Defendant's third element. Defendant's inclusion of the phrase "by Defendant" is inconsistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2. Furthermore, the addition makes the instruction confusing to the jury. Defendant's omission of the phrase ""commercial activities" may improperly exclude potential trademark infringement based on Defendant's marketing practices and its online store. Plaintiff's omission of "advertised" similarly may improperly exclude potential trademark infringement based on Defendant's advertising practices.

Plaintiff objects to the last paragraph of Defendant's proposed instruction regarding fair use as it is inconsistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2. Defendant's fair use defense is properly covered by a separate instruction. Repeating it in this instruction as an element of trademark infringement is not only improper (as it is not an element Plaintiff has to prove) but it also places undue emphasis on the defense.

## 28. OWNERSHIP AND PRIORITY – UNREGISTERED AND CONTESTABLE MARKS[DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

One of the things Plaintiff must prove is that Plaintiff owns Plaintiff's symbol, term or product design as a trademark.

Plaintiff owns Plaintiff's symbol, term or product design as a trademark if Plaintiff used the symbol, term or product design in a manner that allowed consumers to identify the symbol or term with Plaintiff or its product before Defendant began to use Defendant's symbol or term on its product.

The Court has already held that as to 87 of the claimed trademarks in issue, Games Workshop has made prior use in commerce of the claimed marks. The Court will provide a list of those marks. As to those 87 marks, you must assume Games Workshop has made such prior use in commerce. The Court has made no determination of priority of use in commerce either

for or against either party as to any of the other claimed marks in issue.

1diam-7 Modern Federal Jury Instructions-Civil 13.1.2.1;
Model Civl. Jury Instr. 9th Cir. 15.0 (2007)

**Chapterhouse objects to Games Workshop's Proposed Instruction as follows:**

As discussed above, Defendant objects to the use of the phrase "product design" because it is inconsistent with the explanation of trademarks in the NATURE OF CLAIM instruction above and Federal Civil Jury Instructions of the Seventh Circuit, Sections 13.1.2.  A trademark is a word, symbol, or a combination of words or symbols, not product designs, which is vague and confusing.

Defendant objects to Plaintiff's failure to include an instruction explaining that Plaintiff used a term or symbol in interstate commerce if Plaintiff's products bearing the mark are sold or transferred across state lines in the United States, as provided for in the Seventh Circuit's model instructions, particularly in light of the fact that Plaintiff is a UK company, and that intra-company shipments do not constitute *bona fide* shipments to satisfy the use-in-commerce requirements under the Lanham Act.  The Seventh Circuit's model instructions concerning sales or transfers crossing state lines is consistent with sales or transfers crossing state lines from a foreign country.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2 (2009 rev.); *Id*. (explaining Plaintiff's use in commerce); *Id*. at §13.1.2.1; 15 U.S.C. § 1127 (definition of the term "use in commerce" for goods), *Central Mfg., Inc. v. Brett*, 492 F.3d 876, 881-83 (7th Cir. 2007) (affirming summary judgment, attorney fees, and costs where plaintiff failed to establish *bona fide* use in commerce of registered trademark); McCarthy on Trademarks § 19:118 ("intra-company shipments. . .do not constitute *bona fide* shipments to satisfy" the use-in-commerce requirement).

Chapterhouse also objects to the reference to the Court's ruling on 87 trademarks, a decision Chapterhouse believes is based upon a factual error which it intends to bring before the Court, because any reference is incomplete that leaves out the part of the Court's ruling that found that Games Workshops had not proven ownership for over 25 of its trademarks.  Games Workshop is therefore wrong to say that there has been "no determination" as to any other marks.  (Dkt. 333, at 15 & n.4.)

## *Chapterhouse's  Proposed Jury Instruction*

One of the things Plaintiff must prove is that Plaintiff owns each of the asserted terms and symbols as a trademark.

Plaintiff owns a symbol or term as a trademark if Plaintiff used in interstate commerce the symbol or term in a manner that allowed consumers to identify the symbol or term with Plaintiff or its product before Defendant began to use the symbol or term on its product.

A term or symbol is used in interstate commerce if Plaintiff's products bearing the mark are sold or transferred across state lines in the United States.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2 (2009 rev.) (explaining Plaintiff's use in commerce); *Id*. at §13.1.2.1; 15 U.S.C. § 1127 (definition of the term "use in commerce" for goods); *Central Mfg., Inc. v. Brett*, 492 F.3d 876, 881-83 (7th Cir. 2007) (affirming summary judgment, attorney fees, and costs where plaintiff failed to establish *bona fide* use in commerce of registered trademark).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

Plaintiff objects to Paragraphs 2 and 3 of Defendant's proposed instruction because Defendant deviates form the model instruction set forth in the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2.1 by adding superfluous and new language and arguments.

Defendant's Paragraph 2 improperly includes the phrase "interstate commerce." This phrase is inconsistent with the Federal Jury Instructions of the Seventh Circuit, Section 13.1.2.1. Further, whether or not the trademark was used in interstate commerce is already covered by the previous jury instruction regarding the elements of trademark infringement. Repeating it in this instruction is not only improper (as it does not relate to ownership or priority) but it also places undue emphasis on the issue.

Defendant's Paragraph 3 is similarly improper as it again focuses on "interstate commerce." Furthermore, as Plaintiff is a UK company, if this instruction is used, it should be made clear that interstate commerce also includes the importation into the U.S. of Plaintiff's products bearing the mark, including to a separate corporate entity affiliated with Plaintiff. *In re Silenus Wines, Inc.*, 557 F.2d 806 (C.C.P.A. 1977)

## 29.  VALIDITY—TRADEMARK [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

A valid trademark is a symbol, term, or product design that is "distinctive," which means that the symbol, term, or design is capable of distinguishing Plaintiff's product from the products of others. A trademark is valid if it is inherently distinctive or if it has acquired distinctiveness. I will explain these terms to you.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2 (2009 rev.).

**Chapterhouse objects to Games Workshop's proposed instruction as follows:**

As discussed above, Defendant objects to the use of the phrase "product design" because it is inconsistent with the explanation of trademarks in the NATURE OF CLAIM instruction above and Federal Civil Jury Instructions of the Seventh Circuit, Sections 13.1.2. A trademark is a word, symbol, or a combination of words or symbols, not product designs, which is vague and

confusing. Defendant proposes removing this phrase. Further, Plaintiff has not identified any product design as a trademark asserted in this case.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2 (2009 rev.).

### *Chapterhouse's Proposed Jury Instruction*

A valid trademark is a symbol or term that is "distinctive," which means that the symbol or term is capable of distinguishing Plaintiff's product from the products of others. A trademark is valid if it is inherently distinctive or if it has acquired distinctiveness. I will explain these terms to you.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2.2 (2009 rev.).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

As discussed above, Plaintiff objects to the omission of the phrase "product design" as it is inconsistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2.

## 30. VALIDITY – TRADEMARK – INHERENTLY DISTINCTIVENESS – FANCIFUL, ARBITRARY, AND SUGGESTIVE MARKS [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

An inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product. A trademark is inherently distinctive if it is a "fanciful"; "arbitrary"; or "suggestive" symbol, term or product design.

•A "fanciful" symbol, term or product design is a newly created word or parts of common words that are used in a fictitious, unfamiliar, or fanciful way. For example, "Exxon" for gasoline is a fanciful mark.

•An "arbitrary" symbol, term or product design is a common symbol or term used in an unfamiliar way. For example, "Apple" for computers is an arbitrary mark.

• A "suggestive" symbol, term or product design implies some characteristic or quality of the product. If the consumer must use imagination, reflection, or additional reasoning to understand the meaning of the mark as used with the product, then the mark is suggestive. For example, "Coppertone" for suntan lotion is a suggestive mark because it is suggestive of suntanned skin.

Federal Civil Jury Instructions of the Seventh Circuit, § 13.1.2.2.1 (2009 rev.).

**Chapterhouse objects to Games Workshop's Proposed Instruction as follows:**

As discussed above, Defendant objects to the use of the phrase "product design" because it is inconsistent with the explanation of trademarks in the NATURE OF CLAIM instruction above and Federal Civil Jury Instructions of the Seventh Circuit, Sections 13.1.2. A trademark is a word, symbol, or a combination of words or symbols, not product designs, which is vague and confusing. Defendant proposes removing this phrase.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2 (2009 rev.).

### *Chapterhouse's Proposed Jury Instruction*

An inherently distinctive trademark is one that almost automatically tells a consumer that it refers to a brand or a source for a product. A trademark is inherently distinctive if it is a "fanciful"; "arbitrary"; or "suggestive" symbol or term.

- A "fanciful" symbol or term is a newly created word or parts of common words that are used in a fictitious, unfamiliar, or fanciful way. For example, "Exxon" for gasoline is a fanciful mark.

- An "arbitrary" symbol or term is a common symbol or term used in an unfamiliar way. For example, "Apple" for computers is an arbitrary mark.

- A "suggestive" symbol or term implies some characteristic or quality of the product. If the consumer must use imagination, reflection, or additional reasoning to understand the meaning of the mark as used with the product, then the mark is suggestive. For example, "Coppertone" for suntan lotion is a suggestive mark because it is suggestive of suntanned skin.

Federal Civil Jury Instructions of the Seventh Circuit, § 13.1.2.2.1 (2009 rev.).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

As discussed above, Plaintiff objects to the omission of the phrase "product design" as it is inconsistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2.2.1.

### 31.   VALIDITY – DESCRIPTIVE TRADEMARK – ACQUIRED DISTINCTIVENESS [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

Another type of valid trademark is a "descriptive" symbol, term, or product design that has "acquired distinctiveness."

A "descriptive" symbol, term, or product design directly identifies or describes some characteristic or quality of the product in a straightforward way that requires no imagination or reasoning to understand the meaning of the trademark. For example, "All Bran" for cereal is a descriptive trademark because it describes a characteristic of the cereal. A descriptive trademark can be valid only if it has "acquired distinctiveness. "

To show that a descriptive term has "acquired distinctiveness," Plaintiff must prove:

> 1. A substantial portion of the consuming public identifies Plaintiff's symbol or term with a particular source, whether or not consumers know who or what that source is. The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products; and

> 2. Plaintiff's symbol or term acquired distinctiveness before Defendant first began to use Defendant's symbol or term.

To decide whether Plaintiff's symbol or term has "acquired distinctiveness," you may consider the following:

> •the amount and manner of advertising, promotion, and other publicity of Plaintiff's product using Plaintiff's symbol or term;

> •the sales volume of Plaintiff's product using Plaintiff's symbol or term;

> •the length and manner of use of Plaintiff's symbol or term;

> •consumer testimony; and

> •deliberate copying of a Plaintiff's symbol or term by the Defendant.

1diam-7 Modern Federal Jury Instructions-Civil 13.1.2.2
1diam-7 Modern Federal Jury Instructions-Civil 13.1.2.2.1
1diam-7 Modern Federal Jury Instructions-Civil 13.1.2.2.3
1diam-7 Modern Federal Jury Instructions-Civil 13.1.2.2.4

**Chapterhouse objects to Games Workshop's proposed instruction as follows:**

Defendant objects to Plaintiff's failure to include an instruction concerning the "consumer surveys" factors, as provided for in the Seventh Circuit's model instruction.

Defendant objects to Plaintiff's inclusion of the last bullet, "deliberate copying of a Plaintiff's symbol or term by the Defendant," because the Seventh Circuit's model instructions do not contain any similar instruction.

Defendant objects to Plaintiff's failure to include an instruction concerning generic trademark. Inclusion of an instruction on genericness is appropriate in light of Plaintiff's claim of infringement of marks like "Tactical" for toy soldiers ("Tactical" is one of the marks at issue in this case).

Defendant objects because Plaintiff did not subdivide its instructions like the Seventh Circuit's model instructions, and therefore increases the potential of creating confusion among

the jury. The model instructions are subdivided separately with respect to "descriptive trademark – acquired distinctiveness" in general and "acquired distinctiveness" specifically.

Defendant also objects because Plaintiff did not include an instruction that a book title is never considered inherently distinctive and requires a showing of acquired distinctiveness to be protectable. Given that this case involves both copyright infringement claims and trademark claims related to various books by Plaintiff, such an instruction is necessary in order to avoid confusing the jury.

As discussed above, Defendant objects to the use of the phrase "product design" because it is inconsistent with the explanation of trademarks in the NATURE OF CLAIM instruction above and Federal Civil Jury Instructions of the Seventh Circuit, Sections 13.1.2. A trademark is a word, symbol, or a combination of words or symbols, not product designs, which is vague and confusing.

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2 (2009 rev.); *Id*. at §13.1.2.2.3 (validity - descriptive trademark – acquired distinctiveness ); *Id*. at §13.1.2.2.4 (validity - trademark – acquired distinctiveness ); *Id*. at § 13.1.2.2.5 (2009 rev.) (generic trademark); *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999) (book title is never considered inherently distinctive and requires a showing of acquired distinctiveness to be protectable).

### *Chapterhouse's Proposed Jury Instruction*

Another type of valid trademark is a "descriptive" symbol or term that has "acquired distinctiveness."

A "descriptive" symbol or term directly identifies or describes some characteristic or quality of the product in a straightforward way that requires no imagination or reasoning to understand the meaning of the trademark. For example, "All Bran" for cereal is a descriptive trademark because it describes a characteristic of the cereal.

A descriptive trademark can be valid only if it has "acquired distinctiveness." A book title is never considered inherently distinctive and requires a showing of acquired distinctiveness to be protectable.

To show that descriptive term has "acquired distinctiveness," Plaintiff must prove:

1.  A substantial portion of the consuming public identifies Plaintiff's symbol or term with a particular source, whether or not consumers know who or what that source is. The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products; and

2.  Plaintiff's symbol or term acquired distinctiveness before Defendant first began to use Defendant's symbol or term.

To decide whether Plaintiff's symbol or term has "acquired distinctiveness," you may

consider the following:

- the amount and manner of advertising, promotion, and other publicity of Plaintiff's product using Plaintiff's symbol or term;

- the sales volume of Plaintiff's product using Plaintiff's symbol or term;

- the length and manner of use of Plaintiff's symbol or term;

- consumer testimony; and

- consumer surveys.

Federal Civil Jury Instructions of the Seventh Circuit, § 13.1.2.2.3 (2009 rev.); *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999); Federal Civil Jury Instructions of the Seventh Circuit, § 13.1.2.2.4 (2009 rev.).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

As discussed above, Plaintiff objects to the omission of the phrase "design" as it is inconsistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2.2.3.

Plaintiff objects to Paragraph 3 of Defendant's proposed instruction as in includes a statement regarding a "book title." This sentence is inconsistent with the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.1.2.2.4. Moreover, the only term potentially relevant to this instruction in this case "Soul Drinkers" refers not just to the title of a book, but also to a series of seven books. As such, there is no basis for a special instruction on this title.

Plaintiff objects to the inclusion of the optional language from the Federal Civil Jury Instructions of the Seventh Circuit regarding consumer surveys. As neither Plaintiff nor Defendant are relying on consumer surveys in this case, the inclusion of this element may only lead to jury confusion.

## 32. VALIDITY – GENERIC TRADEMARK  [DISPUTED]

### *Chapterhouse's Proposed Jury Instruction*

To establish that its trademark is valid, Plaintiff must also prove that the trademark is not "generic."

A "generic" symbol or term is a common or general symbol for or name of a product whose primary significance to the consuming public is to identify a group or class of similar products, regardless of who makes or sells them. The consuming public consists of people who may buy or use, or consider buying or using, the product or similar products. For example, "cola" is a generic term for a type of soft drink, so it cannot function as a trademark for this type

of soft drink.  For example, bear-shaped gummy candies are common in the candy industry and are generic shapes for this type of candy.

Federal Civil Jury Instructions of the Seventh Circuit, § 13.1.2.2.5 (2009 rev.).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

Plaintiff objects to the inclusion of an instruction on Generic Trademarks as the issue will only tend to confuse the jury.  Defendant has not identified any of Plaintiff's trademarks that it contends is a generic trademark.  Unlike an automobile or refrigerator, there is no genus of goods known as "Tactical," so the term is not generic.  Moreover, the parties use the name as "Tactical Space Marine" so there is not even an issue of descriptiveness of the claimed mark."

**Chapterhouse's Response:**

Defendant objects to Plaintiff's failure to include an instruction concerning generic trademark.  Inclusion of an instruction on genericness is appropriate in light of Plaintiff's claim of infringement of marks like "tactical" for toy soldiers and "jet bike" for a jet powered motorcycle and "plasma" for weapons.

**Games Workshop Does Not Have a Jury Instruction on Validity – Generic Trademark**

**33.    VALIDITY - TRADEMARK REGISTRATION [DISPUTED]**

***Games Workshop's Proposed Jury Instruction***

Although registration of a trademark is not required, a certificate of registration issued by the United States Patent and Trademark Office creates a presumption that the owner has the right to exclude others form using the trademark in connection with the type of goods specified in the certificate.

Model Civ. Jury Instr. 9th Cir. 15.0 (2007); 15 U.S.C. 1057(b)

**Chapterhouse objects to Games Workshops proposed instruction as follows:**

Defendant objects to this instruction because the Seventh Circuit's model instructions do not contain any similar instruction.   Additionally, a certificate only provides prima facie evidence, thus Plaintiff still bears the burden to prove the validity of its trademarks by a preponderance of the evidence.   This instruction creates the potential to confuse the jury concerning Plaintiff's burden of proof at trial.

Federal Civil Jury Instructions of the Seventh Circuit, § 13 et seq.; 15 U.S.C. 1057(b) (certificate as prima facie evidence).

**Chapterhouse Does Not Propose a Jury Instruction on Validity – Trademark Registration**

## 34.    INFRINGEMENT—ELEMENTS—LIKELIHOOD OF CONFUSION—FACTORS [AGREED]

As I have told you, one of the things that Plaintiff must prove is that Defendant used Defendant's symbol or term in a manner that is likely to cause confusion as to the source, origin, sponsorship, or approval of Defendant's product.

Plaintiff must prove a likelihood of confusion among a significant number of people who buy or use, or consider buying or using, the product or similar products.

In deciding this, you should consider the following:

•Whether the overall impression created by Defendant's trademark is similar to that created by Plaintiff's trademark in appearance, sound, and meaning;

•Whether Defendant and Plaintiff use their trademarks on the same or related products;

•Whether Plaintiff's and Defendant's products are likely to be sold in the same or similar stores or outlets, or advertised in similar media;

•The degree of care that purchasers or potential purchasers are likely to exercise in buying or considering whether to buy the product. This may depend on the level of sophistication of potential buyers of the product and the cost of the product;

•The degree to which purchasers or potential purchasers recognize Plaintiff's trademark as an indication of the origin of Plaintiff's product. You may consider my previous instructions concerning distinctiveness to help you assess this factor;

•Whether Defendant's use of the trademark has led to instances of actual confusion among purchasers or potential purchasers about the source, origin, sponsorship, or approval of Defendant's product. However, actual confusion is not required for finding a likelihood of confusion; and

•Whether Defendant intended to pass off his product as that of Plaintiff, or intended to confuse consumers.

The weight to be given to each of these factors is up to you to determine. No particular factor or number of factors is required to prove likelihood of confusion.

1diam-7 Modern Federal Jury Instructions-Civil 13.1.2.3

**35.     LIKELIHOOD OF CONFUSION— POST SALE CONFUSION [DISPUTED]**

*Games Workshop's Proposed Jury Instruction*

As I previously explained, Plaintiff also that because Defendant's products bear no permanent markings identifying Defendant as the producer of those goods, when those products are resold or used by Defendant's customers, it will likely confuse such potential purchasers who can only identify the goods as coming from the Plaintiff

For Plaintiff to prove a likelihood of post-sale confusion, it must show that when potential customers see Defendant's product in the marketplace (even when not being sold or offered for sale by Defendant), the customer mistakenly attributes the products to Plaintiff based on the customer's familiarity with Plaintiff, thereby influencing his buying decision, either positively or negatively.

*CAE, Inc. v. Clean Air Eng'g Inc.*, 267 F.3d 660, 683 (7th Cir. 2001).

**Chapterhouse objects to GW's proposed instruction as follows:**

Defendant objects to this instruction because the Seventh Circuit's model instructions do not contain any similar instruction.  Additionally, there is no possibility of post-sale confusion here and it is therefore not actionable, as Plaintiff acknowledges in its proposed instruction that there are no permanent markings on Defendant's products and *CAE* involved defendants' products that permanently incorporated the trademarks and/or trade dress at issue, which is not at issue here. Further, Plaintiff has submitted no evidence to support the argumentative statement that "it will likely confuse such potential purchasers who can only identify the goods as coming from the Plaintiff."

Federal Civil Jury Instructions of the Seventh Circuit, § 13 et seq.; *CAE, Inc. v. Clean Air Eng'g Inc.*, 267 F.3d 660, 683 (7th Cir. 2001) (defendant's product bore plaintiff's "CAE" mark).

**Games Workshop responds to Chapterhouse's objection as follows:**

Chapterhouse does not dispute that post-sale confusion is actionable.  Its objection to the jury instruction (that the products bear no permanent markings) misses the very point that virtually all of Chapterhouse's products are identified by Games Workshop's preexisting names and are all meant to be used as part of Warhammer 40,000.  With no markings naming Chapterhouse as source, the products can only be viewed as Games Workshop's when they are sold in the secondary market (such as eBay) where they can only be identified by reference to Games Workshop's names.

**Chapterhouse Does Not Propose a Jury Instruction on Likelihood of Confusion – Post Sale Confusion**

## 36.    LIKELIHOOD OF CONFUSION – UNFAIR COMPETITION

As I have previously explained, intent can be a factor in assessing the likelihood of confusion.  If you find that the defendant deliberately sought to trade on recognition among Plaintiff's customers of specific names recognized in the marketplace so as to preempt Plaintiff's own marketing opportunities, and if you find that such use is likely to cause confusion, you can find that Defendant has engaged in unfair competition in violation of Section 43(a).

Procesed Plastic Co. v. Warner Comm'ns, Inc., 675 F.2d 852 (7th Cir. 1982); Warner Bros., Inc. v. Gay Toys, Inc., 658 F.2d 76 (2d Cir. 1981); D.C. Comics, Inc. v. Powers, 465 F. Supp. 843 (S.D.N.Y. 1978).

**Chapterhouse objects to GW's proposed instruction as follows:**

Defendant objects to this instruction because the Seventh Circuit's model instructions do not contain any similar instruction and Plaintiff misstates the required elements under Section 43(a).

Federal Civil Jury Instructions of the Seventh Circuit, §13.1.2.3 (2009 rev.); *Barbecue Marx, Inc. v. 551 Ogden, Inc.,* 235 F.3d 1041, 1043-44 (7th Cir. 2000) (discussing likelihood of confusion factors).

## 37.    AFFIRMATIVE DEFENSES—NOMINATIVE FAIR USE [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

Defendant claims that its use of Plaintiff's trademark is permitted because Defendant made fair use of the trademark.

To succeed on this defense, Defendant must prove the following three things by a preponderance of the evidence:

1. Defendant used the trademark to refer to a product of Plaintiff that cannot be easily identified without using the trademark;

2. Defendant used the trademark only as much as was reasonably necessary to identify the product; and

3. Defendant did not do anything in connection with using the trademark to suggest that Plaintiff sponsored or endorsed Defendant or its product.

A product cannot be easily identified without using the trademark if there are no equally informative words to identify the product, or there is no other effective way to compare, criticize,

refer to or identify it without using the trademark.

A reasonably necessary use of a trademark occurs when the trademark is used no more prominently than is needed to identify the product and enable consumers to understand the reference.

1diam-7 Modern Federal Jury Instructions-Civil 13.5.1

**Chapterhouse objects to Games Workshop's proposed instruction as follows:**

Defendant objects that Plaintiff failed to include the instruction that Defendant's use of the Plaintiff's trademark to compete with Plaintiff, or to make a profit, does not by itself prevent Defendant from proving fair use, as provided by the Seventh Circuit's model instruction.

Federal Civil Jury Instructions of the Seventh Circuit, §13.5.1 (2009 rev.).

***Chapterhouse's Proposed Jury Instruction***

Inclusion of the following: Defendant's use of the Plaintiff's trademark to compete with Plaintiff, or to make a profit, does not by itself prevent Defendant from proving fair use.

Federal Civil Jury Instructions of the Seventh Circuit, §13.5.1 (2009 rev.).

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

Plaintiff objects to the inclusion of the optional language from the Federal Civil Jury Instructions of the Seventh Circuit, Section 13.5.1 as it may lead to jury confusion as to whether use of a trademark in competition is by definition a fair use. The language at best only repeats the concept already articulated and hence is confusing.

## 38. REMEDIES—TYPES [AGREED]

***Games Workshop's Proposed Jury Instruction***

If you decide for Plaintiff on the question of liability, then you should consider the amount of money to award to Plaintiff. The Plaintiff is entitled to any profits that Defendant made because of its infringement.

If you decide for Defendant on the question of liability, then you should not consider this issue.

1diam-7 Modern Federal Jury Instructions-Civil 13.6.1

**39.    REMEDIES – ACTUAL OR STATUTORY NOTICE – REGISTERED MARKS [DISPUTED]**

*Chapterhouse's Proposed Jury Instruction*

To recover profits, Plaintiff must prove by a preponderance of the evidence that Defendant knew that Plaintiff's mark was registered, or that Plaintiff displayed with the trademark the words, "Registered in the U.S. Patent and Trademark Office"; or that Plaintiff displayed with the trademark the words "Reg. U.S. Pat. &Tm. Off."; or Plaintiff displayed with the trademark; trade dress the letter R enclosed in a circle ®.

Federal Civil Jury Instructions of the Seventh Circuit, §13.6.1 (2009 rev.); *Id*. at §13.6.2.

**Games Workshop objects to Chapterhouse's proposed jury instructions as follows:**

Games Workshop objects that these instructions apply not only to Plaintiff's federal infringement claim, 15 U.S.C. § 1114(1),  but also its claims under Section 43(a) of the Lanham Act 15 U.S.C. § 1125(a) and Illinois common law and the Illinois Deceptive Trade Practices Act under 815 ILCS 510/1.  Because there is no requirement to prove notice under any of these laws, the instruction is confusing and unnecessary.

Alternately, a separate instruction should be given that notice is not required under any other such laws.

**40.    DEFENDANT'S PROFITS [AGREED]**

Plaintiff may recover the profits Defendant gained from the trademark infringement. You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money Defendant received due to its use of the trademark.

Plaintiff is required only to prove Defendant's gross revenue. Defendant is required to prove any expenses that it argues should be deducted in determining its profits.

Plaintiff is entitled to recover Defendant's total profits from its use of the trademark, unless Defendant proves that a portion of the profit is due to factors other than use of the trademark.

1diam-7 Modern Federal Jury Instructions-Civil 13.6.4

**41.    INTENTIONAL INFRINGEMENT [AGREED]**

If you find that Defendant infringed Plaintiff's trademark, you must also determine whether Plaintiff has proven that, at the time Defendant used the trademark Defendant acted

willfully. Defendant acted willfully if it knew that it was infringing Plaintiff's trademark or if it acted with indifference to Plaintiff's trademark rights .

1diam-7 Modern Federal Jury Instructions-Civil 13.6.5

**Count VI – Violation of the Illinois Deceptive Trade Practices Act**
**Count VIII – Common Law Unfair Competition – Trademark Infringement**

## 42.    NATURE OF THE CLAIM [DISPUTED]

### *Games Workshop's Proposed Jury Instruction*

As I explained to you earlier, Plaintiff has asserted a number of claims against Defendant that are related to Defendant's use of Plaintiff's trademarks under Illinois state law. These are:

(1) Defendant has engaged in unfair competition under the Illinois Deceptive Trade Practices Act; and

(2) Defendant has engaged in unfair competition under Illinois common law;.

The legal elements of each of these claims are identical to those of trademark infringement.  Therefore, if you find Defendant to have infringed the Plaintiff's trademarks by a preponderance of the evidence, you must also find Defendant liable for these claims.

If you find that Plaintiff has failed to prove that Defendant's use of Plaintiff's trademarks cause a likelihood of confusion as to the source of Defendant's product or find that Defendant's use of Plaintiff's trademarks was fair use, you cannot find Defendant liable for the claims.

*Spex, Inc. v. Joy of Spex, Inc.,*  847 F.Supp. 567, 579 (N.D.Ill. 1994) ("Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act."; dismissing claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983); *S. Industries, Inc. v. Space Age Technologies*, No. 97-c-2787, 1999 WL 495484, at *7 (N.D. Ill. June 30, 1999) (same; granting summary judgment for defendants  for federal trademark claims and Illinois fraud and deceptive business practices claims), *aff'd* 116 Fed. App. 252 (7th Cir. 2004).

**Chapterhouse objects to Games Workshop's proposed instruction as follows:**

Defendant objects to this instruction in its entirety, pending the Court's sua sponte consideration of these claims as preempted by federal law.  Defendant further objects to this instruction because Plaintiff's instruction does not encompass Count VII and because Plaintiff includes a separate instruction for Count VII.  Counts VI through VIII are all resolved according to the principles set forth under the Lanham Act.  Under Illinois law, Counts VI through VIII are all resolved according to the principles set forth under the Lanham Act.  As such, Plaintiff's proposed separate instructions are unnecessary, needlessly complicated, and have the potential of confusing the jury.

*Spex, Inc. v. Joy of Spex, Inc.,* 847 F.Supp. 567, 579 (N.D.Ill. 1994) ("Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act."; dismissing claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983); *S. Industries, Inc. v. Space Age Technologies*, No. 97-c-2787, 1999 WL 495484, at *7 (N.D. Ill. June 30, 1999) (same; granting summary judgment for defendants for federal trademark claims and Illinois fraud and deceptive business practices claims), *aff'd* 116 Fed. App. 252 (7th Cir. 2004); 815 ILCS 505/2 (Source: P.A. 78-904); Federal Civil Jury Instructions of the Seventh Circuit, §13.5.1 (2009 rev.).

### Games Workshop Responds to Chapterhouse's Objections

The proposed instruction makes explicit that the claim relates only to use of trademarks, not copyrights. There is thus no basis to assert that the claims are preempted.

### *Chapterhouse's Proposed Jury Instruction*

**Count VI – Violation of the Illinois Deceptive Trade Practices Act**
**Count VII – Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**Count VIII – Common Law Unfair Competition – Trademark Infringement**

As I explained to you earlier, Plaintiff has asserted a number of claims against Defendant that are related to Defendant's use of Plaintiff's trademarks under Illinois state law. These are:

(1) Defendant has engaged in unfair competition under the Illinois Deceptive Trade Practices Act;

(2) Defendant has engaged in unfair competition under the Illinois Consumer Fraud and Deceptive Business Practices Act; and

(3) Defendant has engaged in unfair competition under Illinois common law.

The legal elements of each of these three claims track those of trademark infringement. Therefore, if you find that Plaintiff has failed to prove Defendant infringed any of Plaintiff's trademarks, all three of these claims fail, and you should find for Defendant.

If you find that Plaintiff has succeeded on its claim that Defendant infringed the Plaintiff's trademarks, you must then decide whether Defendant has committed consumer fraud in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act to succeed on Claim VII. For you to find in favor of the Plaintiff on this claim, you must find that the Plaintiff has proven each of the following elements by a preponderance of the evidence:

1) a deceptive act or practice by the Defendant;

2) the Defendant intended the others to rely on the deception;

56

3) the deception occurred in the course of conducting trade or commerce;

4) the Plaintiff suffered actual damage; and

5) the damage was proximately caused by the deception.

The intent required is only that the Defendant intended others to rely on the deceptive act, not that the Defendant intended to deceive. Thus, a Consumer Fraud Act claim may be based on a deceptive act done negligently or innocently if the Defendant intended that others rely on the act or practice.

If you find that the Plaintiff has proven each of these elements, you should find in favor of the Plaintiff on Count VII for Violation fo the Illinois Consumer Fraud and Deceptive Business Practices Act. If you find that the Plaintiff has failed to prove any of these elements, you should find in favor of the Defendant for Count VII.

If you find that Plaintiff has failed to prove that Defendant's use of Plaintiff's trademarks causes a likelihood of confusion as to the source of Defendant's product or find that Defendant's use of Plaintiff's trademarks was fair use, you cannot find Defendant liable for any of these three claims.

*Spex, Inc. v. Joy of Spex, Inc.,* 847 F.Supp. 567, 579 (N.D. Ill. 1994) ("Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act."; dismissing claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983); *S. Industries, Inc. v. Space Age Technologies*, No. 97-c-2787, 1999 WL 495484, at *7 (N.D. Ill. June 30, 1999) (same; granting summary judgment for defendants for federal trademark claims and Illinois fraud and deceptive business practices claims), *aff'd* 116 Fed. App. 252 (7th Cir. 2004); Federal Civil Jury Instructions of the Seventh Circuit, §13.5.1 (2009 rev.); 815 ILCS 505/2 (Source: P.A. 78-904).

**Count VII – Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**

**43.     NATURE OF CLAIM [DISPUTED]**

***Games Workshop's Proposed Jury Instruction***
The Plaintiff claims that the Defendant has committed consumer fraud in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. The Consumer Fraud act prohibits deceptive conduct in connection with the offering or advertising for sale of property in trade or commerce.

For you to find in favor of the Plaintiff on this claim, you must find that the Plaintiff has proven each of the following elements by a preponderance of the evidence:

1) a deceptive act or practice by the Defendant;

2) the Defendant intended the others to reply on the deception;

3) the deception occurred in the course of conducting trade or commerce;

4) the Plaintiff suffered actual damage; and

5) the damage was proximately caused by the deception.

The intent required is only that the Defendant intended others to rely on the deceptive act, not that the Defendant intended to deceive. Thus, a Consumer Fraud Act claim may be based on a deceptive act done negligently or innocently if the Defendant intended that others rely on the act or practice.

If you find that the Plaintiff has proven each of these elements, you should find in favor of the Plaintiff on this claim. If you find that the Plaintiff has failed to prove any of these elements, you should find in favor of the Defnedant.

*Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 776 N.E.2d 151, 160 (Ill. 2002); *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.*, 197 Ill.App.3d 948, 953, 557 N.E.2d 246, 250 (Ill. App. 1st Dist. 1990).

**Chapterhouse objects to Games Workshop's proposed instruction as follows:**

Defendant objects to this instruction as unnecessary and potentially confusing to the jury. As discussed above concerning Plaintiff's proposed jury instructions for Counts VI and VIII, Counts VI through VIII are all resolved according to the principles set forth under the Lanham Act. Under Illinois law, Counts VI through VIII are all resolved according to the principles set forth under the Lanham Act. As such, Plaintiff's proposed separate instructions are unnecessary, needlessly complicated, and have the potential of confusing the jury.

*Spex, Inc. v. Joy of Spex, Inc.,* 847 F.Supp. 567, 579 (N.D. Ill. 1994) ("Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act."; dismissing claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983); *S. Industries, Inc. v. Space Age Technologies*, No. 97-c-2787, 1999 WL 495484, at *7 (N.D. Ill. June 30, 1999) (same; granting summary judgment for defendants for federal trademark claims and Illinois fraud and deceptive business practices claims), *aff'd* 116 Fed. App. 252 (7th Cir. 2004); 815 ILCS 505/2 (Source: P.A. 78-904); Federal Civil Jury Instructions of the Seventh Circuit, §13.5.1 (2009 rev.).

**44.     SELECTION OF PRESIDING JUROR; GENERAL VERDICT [AGREED, WITH COMMENT]**

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

[READ VERDICT FORMS]

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in, date, and sign the appropriate form.

1diam-7 Modern Federal Jury Instructions-Civil 1.32; Federal Civil Jury Instructions of the Seventh Circuit, §1.32 (2009 rev.)

**Chapterhouse comments on this instruction as follows:**

The parties agree that a verdict form will be prepared.  Chapterhouse therefore requests a list of all products that are still asserted for copyright infringement and all products still asserted for trademark infringement, so that a verdict form can be prepared for each one.

**45.     COMMUNICATION WITH COURT [AGREED]**

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

If you do communicate with me, you should not indicate in your note what your numerical division is, if any.

1diam-7 Modern Federal Jury Instructions-Civil 1.33; Federal Civil Jury Instructions of the Seventh Circuit, §1.33 (2009 rev.)

**46.     DISAGREEMENT AMONG JURORS [AGREED]**

The verdict must represent the considered judgment of each juror. Your verdict, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender

your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

1diam-7 Modern Federal Jury Instructions-Civil 1.34; Federal Civil Jury Instructions of the Seventh Circuit, §1.34 (2009 rev.)

Dated: April 8, 2013                    Respectfully submitted,

s/ Jason J. Keener
Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: jkeener@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-3229
Email: jmoskin@foley.com

*Attorneys for Plaintiff*
*Games Workshop Limited*

/s Bryce A. Cooper

Jennifer A. Golinveaux (CA Bar No. 203056)
Thomas J. Kearney (CA Bar No. 267087)
    WINSTON & STRAWN LLP
    101 California Street
    San Francisco, CA 94111-5802
    Phone: (415) 591-1000
    Fax: (415) 591-1400
    jgolinveaux@winston.com
    tkearney@winston.com

Imron T. Aly (IL Bar No. 6269322)
Bryce A. Cooper (IL Bar No. 6296129)
    WINSTON & STRAWN LLP
    35 West Wacker Drive
    Chicago, IL 60601-1695
    Phone: (312) 558-5600
    Fax: (312) 558-5700
    ialy@winston.com
    bcooper@winston.com

Julianne M. Hartzell (IL Bar No. 6275093)

Sarah J. Kalemeris (IL Bar No. 6303644)
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive
Willis Tower Suite 6300
Chicago, IL 60606
Phone: (312) 474-6300
Fax: (312) 474-0448
jhartzell@marshallip.com
skalemeris@marshallip.com

**CERTIFICATE OF SERVICE**

I, Jason J. Keener, an attorney, hereby certify that on April 8, 2013, I caused to be filed electronically the foregoing Joint Pretrial Order with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

s/ Jason J. Keener
Jason J. Keener
