**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GAMES WORKSHOP LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES <br><br> Defendants. | Civil Action No. 1:10-cv-8103 <br><br> Hon. Matthew F. Kennelly |

# JOINT STATUS REPORT FOR PRETRIAL CONFERENCE

During the pretrial conference held on April 10, 2013, the Court requested a joint status report providing additional information regarding Plaintiff's Motion to Enforce Prior Discovery Orders and Defendants' Motions in Limine 1 and 4. The parties respectfully submit the following joint status report in connection with the continued Pretrial Conference scheduled for April 25, 2013.

## I.      PLAINTIFF'S MOTION TO ENFORCE PRIOR DISCOVERY ORDER – EBAY LISTINGS

In ruling upon Plaintiff's Motion to Enforce Prior Discovery Orders, the Court asked that the parties provide further information about what the testimony shows with respect to what Mr. Villacci did on eBay, what the testimony shows about what likely doesn't exist anymore, and what is the basis for thinking it would have been helpful to the plaintiff along with defendant's response on each topic. (Tr. 4/10/13 at 121-122).

4851-6862-5939.1

a. **Plaintiff's Statement - Chapterhouse's Failure to Preserve eBay Listings That Defendant Deliberately Failed to Produce Despite a Court Order Are Admissible**

Games Workshop submits that sanctions are appropriate for Chapterhouse's willful failure to preserve eBay listings despite a Court Order. At a minimum, all eBay listings should be admissible in view of Chapterhouse's failure to preserve or timely produce the same in response to Games Workshop's May 27, 2011 document requests or this Court's December 23, 2011 Order. A further instruction to the jury is also appropriate so that the jury understands the significance of Chapterhouse's failure to preserve or produce such records despite having been put on notice of its alleged infringement by Games Workshop in 2008; despite the commencement of litigation in 2011; despite Games Workshop's discovery requests and despite the Court's Order. *Columbia Pictures, Inc. v. Bunnell*, 2:06-cv-01093 FMC, 2007 U.S. Dist. LEXIS 96360 (C.D.Cal. Dec. 13, 2007) (failure to preserve forum posts a basis for terminating sanctions); *Championsworld, LLC v. U.S. Soccer Fed.*, 06 C 5724, 276 F.R.D. 577; 2011 U.S. Dist. LEXIS 91883 (N.D.Ill. August 17, 2011) (duty to preserve once the party has notice that evidence may be relevant to future litigation); *Ervine v. S.B.*, 11 C 1187 *2011 U.*S. Dist. LEXIS 24937 (N.D.Ill Mar. 10, 2011) (court has inherent authority to craft appropriate remedies for failure to preserve evidence; bad faith not required; fault is enough). Given the overwhelmingly damaging nature of the evidence Games Workshop has been able to locate on eBay, and given that none of the eBay listings that Games Workshop wishes to offer in evidence were produced in discovery by Chapterhouse, but rather were all found by Games Workshop on its own, an additional sanction of an adverse inference due to spoliation is appropriate, especially in view of that fact the failure to preserve evidence was deliberate.

Mr. Villacci admitted at his recent deposition not only that Chapterhouse does not preserve its eBay postings (prior Moskin Decl. Ex. A, Villacci Tr 28:18-23); but that it keeps no master list of what products he has promoted on that venue (Id. at 39:24-40:10). Rather than save such

2

materials it leaves that to its attorneys. (Id at 37:8-38:8.) However, Games Workshop is not aware of having received any such eBay postings in this case (prior Moskin Decl. ¶12), and none have been identified since Games Workshop first moved to enforce the Court's prior Order. Although Mr. Villacci would like to assert that none of the products at issue in the second phase have been offered for sale on eBay, lacking any master list or record of actual postings, it is not clear on what basis he can make the assertion. He certainly has provided Games Workshop and the Court no means to assess what postings were made or for what products, and Chapterhouse certainly continues to sell products on eBay to this day. As previously noted, Chapterhouse has neither identified any of its specific eBay listings in its interrogatory responses nor produced any of the listings in its document production.

Games Workshop explained in its original motion for summary judgment that in addition to Chapterhouse's use of Games Workshop's trademarks on its website, an additional particular basis for its trademark infringement claim lies in the use of Games Workshop's trademarks on third-party sites such as eBay or Bartertown or on the forums where it promotes its goods. For example, when Chapterhouse's products are sold on third-party sites, such as eBay, or even resold on such sites by Chapterhouse's customers[1], it becomes impossible for purchasers to know whether they originated with Games Workshop or an authorized reseller or licensee. Certainly there are no permanent markings on the accused goods indicating origin with Chapterhouse. It was on eBay and a similar site, Bartertown, where Games Workshop first discovered the infringing products.

---

[1] Citing *CAE, Inc. v. Clean Air Eng'g Inc.*, 267 F.3d 660 (7th Cir. 2001), Games Workshop explained that that post-sale confusion is actionable in this circuit: "Post-sale confusion refers to a situation, in which, for example, a potential customer sees a product bearing the label 'CAE Rental Equipment' without reference to Clean Air and, consistent with the customer's familiarity with CAE, Inc., mistakenly attributes the products to CAE, Inc., thereby influencing his buying decision, either positively or negatively." *Id.* at 683. The court cited, *inter alia, Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 872-73 (2d Cir. 1986), which explained that although product labels might inform actual buyers in the store as to the source of the plaintiff's jeans, similarity in trade dress could cause prospective buyers sighting the jeans outside the store to associate the defendant's jeans with the plaintiff, thereby influencing their buying decision. *Accord, Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 297 (7th Cir. 1998).

Despite Chapterhouse's failure to preserve, let alone produce, any records of its affirmative efforts to sell its products on eBay, Games Workshop has been able to itself locate a few of these listings. The listings found by Games Workshop and being offered in evidence show unabashed use of Games Workshop's trademarks, well outside any possible defense of nominative fair use. As set forth in Exhibit M to Games Workshop's motion, the eBay listings simply read as follows:

1. Space Marine 40K 10 squad bit kit Salamanders Dragon

2. Space Marine 40k Terminator Squad Bits for Salamanders

3. Rhino Armor Kit Salamanders Warhammer 40K Space Marines

4. Resin Drop Pod for 40K Warhammer 40,000 Space Marines

5. 5 Resin Pre-Heresy Assault Jump Packs fit Space Marines

6. Resin Mycetic Spore Pod for Tyranid players

7. Tyranid Conversion Kit for Tyranid Carnifex model

8. Set of 6 Ymgarl Heads – fit Tyranid Genestealers

Nothing about these sales listings indicates they are from a source other than Games Workshop. Similar advertising under Games Workshop's trademarks appeared on Bartertown.com (PX 6) (advertising "Custom Iron Snake, Salamander, Soul Drinker Shoulder Pads") and on many of the forum posts that Chapterhouse failed to preserve or produce.

In response to Mr. Villacci's admitted willful disregard of his duty to preserve relevant eBay listings, even in the face of a Court Order specifically addressing these documents and his admission that he kept no master listing, Chapterhouse puts forth two arguments. First, Chapterhouse argues circularly that since Mr. Villacci has received more than 300 reviews on four active eBay listings since early 2011 (each of which was discovered by Games Workshop but not preserved or produced by Chapterhouse itself), it is unlikely that since the litigation started he has listed any other products on eBay. However, this argument rests on Chapterhouse's belated exhibits

P and Q to this joint report which were never produced in discovery, are not trial exhibits, and were not given to Games Workshop until after 8:00pm today. Furthermore, there is no supporting declaration from Mr. Villacci to explain or authenticate the exhibits, much less be cross-examined about. Instead, Chapterhouse's counsel offers her own declaration, with no basis in personal knowledge to which she attaches (long after Mr. Villacci's deposition and the close of discovery) the two exhibits P and Q, of unknown genesis or derivation. One exhibit allegedly shows that these four active eBay listings have over 300 comments on them. Since Mr. Villacci did not save any other posts, Games Workshop has no way to know what comments he received for his other listings that Games Workshop did not find and that Chapterhouse did not preserve. The other exhibit purports to be a screen shot of some software of Mr. Villacci, for which counsel likewise has no basis in personal knowledge. In essence, Chapterhouse appears to argue circularly that because it has produced additional evidence regarding the four listings Games Workshop found, the Court should draw some inference as to other unspecified listings – without even offering any further statement from Mr. Villacci himself. The circular argument is without foundation and proves nothing.

Second, CHS argues that while there were other products listed on eBay from 2008 through 2010, that was before the litigation started, thus there was no duty to preserve any documents. This argument, even if true (which cannot be confirmed due to Chapterhouse's failure to preserve documents) proves Games Workshop's prejudice. This lawsuit was filed in December 2010. At least as of that date, Chapterhouse had a duty to preserve these documents. Chapterhouse's complete failure to even attempt to preserve any of this highly relevant information allowed the information to be destroyed. Chapterhouse does not deny that these documents were in its control. Had it made any effort to collect these documents after the lawsuit was filed in December 2010, or when Games Workshop formally requested them in early 2011, or when the Court Ordered their

5

production in December 2011, it is likely that Chapterhouse would have been able to obtain most if not all of the lost eBay listings from the 2008-2010 time period.

Because those eBay postings Games Workshop has found directly undermine Chapterhouse's nominative fair use defense, a fair inference is that others (had they been preserved) would likewise have shown how Chapterhouse promotes its products and would continue to promote its products if not enjoined from doing so. Given the limited number of postings Games Workshop came upon on its own (having assumed Chapterhouse was preserving these and producing them as requested in discovery) and the admissions by Chapterhouse that there were many others, Games Workshop has been prejudiced in being deprived the ability to show the jury how Chapterhouse's products are actually promoted to fans of Warhammer 40,000 and the full risks of confusion if it is permitted to continue doing so.

### b. Defendant's Statement - All eBay listings made since the filing of suit are in evidence

Chapterhouse does not dispute that all eBay listings made by Chapterhouse are admissible. CHS disputes GW's characterization on the merits of the 8 eBay postings (they say that the postings include no indication that they are from a source other than GW), but because such posts are identified as trial exhibits, the ultimate determination on the nominative fair use point can be made by the jury.

The Court has asked the parties to identify what testimony was offered regarding the eBay posts and what information is alleged to be missing or no longer in existence from the eBay posts. With respect to the eBay posts, Mr. Villacci testified that he has four currently active posts that are ongoing (already included within PX 644). Villacci 2/20/13 dep at 37, Hartzell Decl. Ex. A; Dkt. 337-9. The publicly available listings state that these posts became active sometime in early 2011. A review of the publicly available feedback made by eBay buyers is consistent with this information, showing the first review for any of the four active listing was made on January 31, 2011. Hartzell

Decl. Ex. P at p. 19. Since this litigation was filed in December 2010, Mr. Villacci has received more than 300 reviews for products purchased in that time, but each review is for one of the 4 currently active posts. By comparison, Mr. Villacci's feedback for 2009, prior to the litigation, demonstrates that he received reviews for a wide variety of product listings. However, because CHS had not yet been sued in this litigation, received the plaintiff's discovery requests, or been subject to the Court's December, 2011 order regarding production of advertisements, sanctions are not appropriate for CHS's alleged failure to maintain copies of the listings for the period from 2008 to 2010. A screenshot from the software that Mr. Villacci used to auto-list products on eBay in the 2009 time period also shows that he stopped using the software in approximately October, 2009 when CHS began selling primarily through its website. Hartzell Decl. Ex. Q. This is also consistent with a gap in eBay buyer feedback for the period of time from late 2009 until the introduction of the four active listings in 2011. Hartzell Decl. Ex. P at p. 19. According to eBay's customer help page (http://pages.ebay.com/help/search/questions/search-completed-listings.html#available), complete listings remain available for 90 days for sold items and 30 days for unsold items. Thus, the 2009 product posts would not have been in existence at the time the litigation was filed. While CHS acknowledges that not all eBay purchasers leave feedback, the volume and consistency of the reviews provided since the filing of this lawsuit strongly suggest, and GW has not shown otherwise, that the only active eBay listings by CHS during this lawsuit were the 4 active listings already in evidence.

Mr. Villacci further testified that he had never offered any of the products accused of infringement in the second phase of litigation for sale on eBay. Villacci 2/20/13 Tr., Hartzell Decl. Ex. A at 39. This is also consistent with the publicly available product feedback, which shows no reviews for purchases of any product accused of infringement during the second phase of litigation.

GW also mentions in passing posts by Chapterhouse on the forum Bartertown. It is not clear if GW intends to take the position that Bartertown postings should be treated in the same manner as eBay postings, but CHS disputes that this is accurate. Mr. Villacci testified that Bartertown is a forum, unlike eBay. Villacci 2/20/13 tr., Hartzell Decl. Ex. A at 27. Further, postings made by Chapterhouse on Bartertown under the forum title "Chapterhouse Studios – The Only source for custom casting and bits" including postings made by Mr. Villacci beginning in 2009 and with the most latest post being made on January 10, 2010. *See* Screenshot of Bartertown CHS forum Hartzell Decl. Ex. R, all before this litigation even started. Additional posts directed to CHS products were publicly located by searching Mr. Villacci's screenname nvillacci, but such posts also predate the litigation, the discovery requests, and the Court's order regarding production of advertisements. The fact that even the posts made in 2009 are still publicly available shows that forum posts are not routinely removed after a period of time (unlike eBay listings) and GW has presented no evidence to conclude that any posts have been removed. Because the CHS Bartertown posts were made prior to the start of litigation and remain publicly available, no sanction in connection with Bartertown postings is appropriate.

At bottom, because (excluding the four active listings in evidence) the Chapterhouse product listings on eBay (and its Bartertown posts) predate the filing of this lawsuit as demonstrated by information publicly available on eBay's website, sanctions for Chapterhouse's alleged failure to preserve the 2008-January 2010 eBay listings themselves should not be imposed.

## II.  DEFENDANT'S MOTION IN LIMINE NO. 1 – FORUM POSTS

In Defendant's Motion in Limine No. 1, Defendants sought to exclude certain hearsay forum posts identified on Games Workshop's exhibit list. The Court asked that Plaintiff identify the specific portions of each forum post on which it intends to rely at trial and why it believes each post

8

is admissible and Defendant to respond with the reason it believes the identified post is hearsay. (4/10/13 Tr. at p. 12; 51).

**A.      Plaintiff's Statement – Specific Forum Postings by Chapterhouse and its Ordinary Customers are Admissible**

The below identified specific forum posts by Chapterhouse and its ordinary customers are admissible for at least five reasons.  First, Chapterhouse's own statements are admissions under FRE 801(d)(2).  Chapterhouse has not disputed the admissibility of these statements.  Second, the below identified statements made by Chapterhouse's ordinary customers are not hearsay as they are not being used to prove the truth of the matter asserted, but instead being used to show that ordinary sense impressions of customers, some of whom praise the similarities between the Chapterhouse products and Games Workshop originals; others are critical and some are simply confused.  At most they are simply opinions or personal observations; neither true nor false.  Indeed, the only cases cited by Chapterhouse to exclude such plainly relevant evidence concerned second and third-hand statements having no similarity to the direct, unedited and unexpurgated commentary of ordinary observers.  Third, many of the below identified statements made by Chapterhouse's ordinary customers are present sense impressions under FRE 803(1).  Fourth, the statements are admissible under FRE 803(7) to show that Chapterhouse, which routinely advertises and promotes its products on the forums, does not challenge most of the views of customers impressed (positively or negatively) by the similarities.  As held in *MCA, Inc. v. Wilson*, 425 F. Supp. 443, 450-51 (S.D.N.Y. 1976)*, the spontaneous reactions of cast and audience evidencing substantial similarity are present sense impressions, not hearsay. "[T]heir spontaneity provides their reliability and cures any hearsay infirmities." Id. at 450-451. *Accord*, *ABT Systems v. Emerson Electric Co.*, 4:11-CV-00374 AGF, (E.D.Mo. Feb. 7 2013) (denying motion to exclude on hearsay grounds customer product reviews

appearing on the internet to establish actual use of the infringing feature of Emerson's accused products) (Attached as Keener Decl, Ex. 25).[2]

Finally, for precisely the same reasons that Chapterhouse should not benefit from its failure to preserve or produce *any* of its eBay listings despite having been on notice of possible litigation since 2008, actual notice since 2011 and specific discovery requests and a Court Order in 2012, the below identified statements should be deemed admissible either as a sanction for Chapterhouse's willful failure to preserve and produce the posts during discovery or under the residual hearsay exception under FRE 807. Indeed, had Chapterhouse more promptly identified the forum postings in response to Games Workshop's May 2011 discovery requests or the Court's December 2011 Order, or had it not acquiesced in the Court's initial assessment at the February 14 hearing that these posts are not hearsay, Games Workshop would have been able to pursue or obtain the direct testimony under oath of some or all of these individuals. Chapterhouse should not be rewarded (nor Games Workshop prejudiced) by Chapterhouse's failure to produce documents requested in discovery and as ordered by this Court.

Although it is true that Games Workshop has been able to find some of these forum posts on its own (despite Chapterhouse's failure to produce a single such posting in discovery), to the extent Chapterhouse now seeks to challenge the foundation for its own or third-party statements, Games Workshop believes it has waived the right to do so and has prejudiced Games Workshop's ability to

---

[2] It is undisputed that the statements of such individuals are highly relevant. *Atari, Inc. v. N. Am. Philips Consumer Elec. Corp.*, 672 F.2d 607, 619 (7th Cir. 1982) (considering statements of retailers and sales clerks' comments and expressions as extrinsic evidence that at least some lay observers view the games in question as similar); *MCA, Inc. v. Wilson*, 425 F. Supp. 443, 450 (S.D.N.Y. 1976) (spontaneous reactions of the ordinary observer are relevant and admissible as present sense impressions); *Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F. Supp. 125, 153 (D.N.J. 1982) (evidence of lay observer reaction to the similarities between the games in question is relevant and admissible); 4-13 Nimmer on Copyright § 13.03 ("Certainly there can be no dispute that the spontaneous and immediate reactions of the ordinary observer are relevant evidence in determining the existence of copying"). As held in *MCA, Inc,* the spontaneous reactions of cast and audience evidencing substantial similarity are present sense impressions, not hearsay. "[T]heir spontaneity provides their reliability and cures any hearsay infirmities." Id. at 450-451.

take discovery to address any such objections now.  As noted in Games Workshop's April 3 brief in opposition to Chapterhouse's motion in limine, Chapterhouse likewise raised no objection at the February 14, 2013 hearing when the Court provided its initial assessment that the forum posts (samples of which were submitted with the motion) would be admissible "to prove whatever the state of mind is or belief of the other person." (Tr. 7:11-19; 8: 1-12; 11:23-12:4.)  The forum postings include statement by Chapterhouse itself or its designers concerning their use of Games Workshop's trademarks or copyrights or explaining the company's philosophy of copying. Typically, Chapterhouse also responds to many of the forum posts but only selectively and typically fails to dispute comments about the similarities between its own products and Games Workshop's works.  To the extent Chapterhouse now wishes to challenge some forum posts, Games Workshop believes there is no reason to exclude entire posts where only specific statements or parts of statements are challenged and where an appropriate instruction to the jury can remedy such concerns.  Games Workshop has not sought to include arguably prejudicial comments accusing Chapterhouse of infringement, and such comments can easily be redacted.  Moreover, in many instances, the forum posts should be admissible because of Chapterhouse's failure to respond to or challenge what was said – notwithstanding its admissions online that it reads the posts and notwithstanding the fact that, as demonstrated in Games Workshop's original motion and March 27 brief (Brief at 10) it received (but does not preserve) electronic notices from a number of the forums whenever customers or readers commented on its posts.  Chapterhouse concedes it failed to preserve these notices so it can not be heard to complain now of any unfairness to it that it was unable to respond. Mr. Villacci has also acknowledged on the forums that "I do read and consider every post about quality, sculpts, etc" (PX-878 at GW0018984.)  It is telling that he responds only selectively.

As shown below, Chapterhouse's objections typically are simply conclusory statements without analysis. Moreover, Chapterhouse also repeatedly says it should be permitted to introduce other more favorable comments to rebut the evidence Games Workshop has assembled. However, Chapterhouse has not identified these statements (making it impossible for Games Workshop to address them) or has sometimes pointed simply to customer statements praising Chapterhouse (which misses the point for which Games Workshop has cited the comments – namely, to show that customers appreciate the similarities_. At any rate, it is inherently unfair for Chapterhouse now to be permitted to introduce such materials when it concealed them in discovery. However, the very fact that Chapterhouse seeks leave to offer evidence of customer comments demonstrates its recognition that such comments are relevant and admissible.[3]

## B.    Defendant's Response

At the April 10th pretrial conference, the Court asked Plaintiff to identify both the forum posts that it intends to offer into evidence and whether there's a reasonable basis to say that they qualify as a present sense impression or some other exception to the hearsay rule. 4/10/13 Tr. at 11-12. Rather than addressing each forum post in turn and identifying the hearsay exception that it believes applies to each as GW identifies exceptions that it believes apply to the forum posts, GW argued in its initial draft of this report generally that the following hearsay exceptions should apply to its identified categories of forum posts: the party admission (801(d)(2)) presumably for statements made by CHS, the present sense impression of customers (803(1)), the absence of a record of a regularly conducted activity (803(7)); and the residual exception as a sanction for failure to maintain forum posts (807). With the exception of party admissions (which CHS has already

---

[3] Games Workshop provided its responses to the specific objections raised by Chapterhouse within an hour or so of receipt of April 22, notwithstanding that Chapterhouse had five days to respond to the posts identified by Games Workshop.

4851-6862-5939.1

acknowledged generally applies to postings made by CHS), GW does not offer supporting evidence demonstrating that these exceptions are applicable. CHS received individual identification of hearsay exceptiosn argued by GW to be applicable to each forum post for the first time at 8:30 p.m. on April 22nd.

With respect to the present sense impression exception (803(1)), the Court requested during the pretrial conference that GW explain the basis for why the evidence in question amounts to spontaneous reactions (4/10/13 Tr. at 6-9). In response, GW merely reiterates its early argument that the statements of ordinary consumers are relevant and that "many of the below identified statements made by Chapterhouse's ordinary customers are present sense impressions under FRE 803(1)" without providing any basis for the conclusion that such statements were spontaneous (*supra* at 9). The posts indicate that they are part of an ongoing conversation, demonstrating that the posts are not spontaneous, and do not support using the special indicia of reliability recognized by the present sense impression exception. Otherwise, GW provides no limiting principle against simply allowing all online comments for use at trial as present sense impressions.

Next, for hearsay exception 803(7), the absence of a business record, GW must first demonstrate that the data whose absence is at issue was a record that was regularly kept for a matter of that kind. Here, the evidence that GW contends is the absence of a business record, is CHS's failure to respond to forum postings made on online forums. GW assumes that any online response is a business record, but provides not support for that assumption. GW then argues that CHS admitted that it reads some of the posts, but GW has not established that CHS routinely responds as a business matter to such posts or that CHS sees all online posts. To the contrary, GW admits that CHS only responds selectively to such forum posts (*supra* at p. 9). Mr. Villacci similarly testified in his deposition that it is not a regular business practice of CHS to respond to all forum postings. Instead, "[t]here's a lot of posts that I don't read, just skim over them, you know, reply to responses

13

that I deem important." 2/20/13 Villacci Tr. at 125-126, Hartzell Decl. Ex. A. Accordingly, GW has not shown that CHS's failure to respond to forum postings satisfies the 803(7) hearsay exception because it has not shown that such responses were records regularly kept (or even made) for a matter of that kind.

The residual exception (807) requires that the proponent demonstrate that the statement has equivalent circumstantial guarantees of trustworthiness, is offered as evidence of a material fact, is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts, and admitting it will best serve the purposes of these rules and the interests of justice. GW has not addressed any of these requirements. Further, when addressing the forum posts in connection with Plaintiff's motion to enforce prior discovery orders, the Court has already declined to provide an adverse inference or exclude evidence as a sanction on materiality grounds. (4/10/13 Tr. at 121-122). GW has not provided any explanation why the admissibility of hearsay evidence should be applied to forum posts that were available to plaintiff throughout discovery and identified by plaintiff as trial exhibits. CHS also disputes that it acquiesced to a blanket determination by the Court that all forum posts are admissible pursuant to a hearsay exception. To the contrary, in response to the Court's question asking if CHS wanted to say anything about the posting topic, CHS stated "I believe it's not necessary to make those arguments now" and the Court agreed that such arguments could wait until after Mr. Villacci's deposition. (Dkt. 340-2, 2/14/13 Tr. at 11-12). In addition, the fact that these posts are anonymous, posted by anyone with access to a computer, reduces any chance of establishing reliability under the residual exception.

GW also argues generally that the consumer statements are not offered for the truth of the matter asserted, but rather only reflect the opinions of those consumers. As raised in CHS's initial MIL, the lay opinions of consumers based upon unknown facts and law are not relevant to any issue

14

in the case, were not disclosed as opinion testimony, and, because such opinions are directed to conclusions about the law copyright and trademark infringement without any understanding of the basis for such opinion or the bias underlying such conclusions, should be excluded under 401, 402, 403, and 701, similar to the exhibits that Court already ruled were excluded under 403. 4/10/13 Tr. at 11-12. Another problem with GW's view is that it selectively includes only those quotes where consumers supported GW's position when, in fact, there is extensive online support for CHS's position. Thus, if GW is allowed to use the online forum posting evidence of consumer opinions, then under Rule 106, CHS should be allowed to show online forum posting evidence showing the other point of view.

### C.    Plaintiff's Identification of Specific Forum Posts

Below are the specific statements from the forum posts that Games Workshop wishes to introduce at trial, with CHS's response as to each:

1. **PX 10 (Keener Decl, Ex 1)**
   - Statement by Chapterhouse
     - Under heading "MK1 Shoulder Pads, new conversion kits for Space Marines: "We have been considering that chapter [Iron Hands] for a while, we just need to be able to create an icon similar enough to the real GW icon while being acceptable to players as well, but we can't copy the GW one straight on …it's a tricky thing."

CHS Response – CHS agrees that this forum post is admissible. However, to the extent that it is admitted, pursuant to Rule 106, the post quoted in CHS's response to which CHS is responding should be also be admitted for completeness.

GW Reply – CHS does not appear to be objecting to this specific forum post.

2. **PX 52/ PX-168   (Keener Decl, Ex 2)**
   - Statement by Chapterhouse
     - Under the heading Tervigon kit, 1K Heresy Sons, Mantis Warriors: "Our Tervigon conversion kit has the parts necessary to turn your GW Carnifex kit into something that resembles on of their pictures."
     - Later postings by Chapterhouse in the series refers to its own "Imperial Guard weapons and conversion kits as well as a proxy for an Eldar unit" …"If you ever wanted a female mage model for your Elfish or Space Elf collections, this may be your lucky day"

- o Chapterhouse refers to its products simply using Games Workshop's trademarks (e.g. "Preheresy Terminator Pads"; "Tactical Rhino doors"
- o Chapterhouse states: The first runs of the Chapterhouse Studios Tervigon conversion kit are available this week….Also being worked on is a rather ambitious Tyranid Spore Pod…" "I have made a rule not to show products until I have painted pictures of them…Having unpainted products is one of my biggest delays to releasing new bits and models."
- o When a customer asked to see the size of the Tru-Scale "Knights Praetorius", Chapterhouse showed a picture side-by-side with a Games Workshop Space Marine.

CHS Response – In each instance in which CHS responds to another poster, that original post should be admitted in addition to any statement by CHS for completeness. However, to the extent that it is admitted, pursuant to Rule 106, the post to which is responding should also be admitted for completeness. The posting under the heading Tervigon kit is a response to a posting by an individual stating "I'm shocked that GW hasn't shut him down if that's the case…seems like a pretty clear case of trademark infringement. That's not to cast aspersions on the quality of his work, of course." Because that posting makes legal conclusions regarding trademark infringement, both that posting and the CHS response should be excluded under rule 403.

GW Reply – CHS does not appear to be objecting to this specific forum post. CHS does not identify which specific additional posts it seeks to introduce.

- • Statements by Ordinary Customers
  - o An ordinary customer expresses confusion whether Chapterhouse is licensed by Games Workshop: "So are you guys licensed by GW? It's nice to see someone other than FW [Forge World] playing it that space."
  - o Ordinary customers refer to Chapterhouse products by Games Workshp names: "Got my Eldar Farseer jetbike kit now. Good looking."

CHS Response – CHS argued in its MIL that GW could not rely upon forum posts to demonstrate customer confusion because such forum posts were not identified in response to CHS's interrogatory responses seeking the identification of all evidence of actual confusion. In response, GW stated during the pretrial conference that it does not intend to rely upon any forum posting as evidence of consumer confusion. For that reason, the first post should be excluded. With respect to the second posting, GW has not presented any basis for concluding that the response is a spontaneous reaction upon receiving the CHS product or the timing after receipt of such product when such statement was made. Accordingly, it does not satisfy the present sense impression exception.

GW Reply – Regarding the first statement, it is not hearsay as GW is not offering it to prove any licensing relationship between CHS and GW; it is being offered to prove ordinary customers perceive such an arrangement. Moreover, it is a present sense impression of an ordinary customer seeing CHS's products and commenting on an apparent relationship to GW. Nor should Games Workshop be precluded from offering evidence that Chapterhouse itself concealed during discovery. This was not a comment submitted to Games Workshop; rather plaintiff only discovered such evidence when it was put to the effort to search for records that Chapterhouse was aware of but

16

failed to preserve or produce. Regarding the second statement, it is not hearsay as GW is not offering it to prove that the customer received a GW Eldar Farseer jetbike; instead GW is offering it to prove ordinary customers refer to CHS products as GW products. Morever, it is a present sense impression of a comment made by a person who just received their CHS product.

3. **PX 744 (Keener Decl, Ex 3)**
   - Statement by Chapterhouse
     - o In response to a fan request for Chapterhouse to make copies or versions of certain GW products, Chapterhouse admits: "Yes, but we walk a fine line here. It is hard to predict what people will buy when it comes to existing chapters. How close to the original Iron Hands icon do we have to stay to make some money off it?

CHS Response – This exhibit does not have any identification of the forum from which it was taken. However, the request that CHS seems to be responding to is "just out of interest what ever happened to the armored predator front panels you guys were working on a while back." For completeness under Rule 106, the question that CHS responded to should be included as well. Because the post that CHS is responding to includes discussion of GW's legal page in the same posting, both should be excluded under 401, 402, and 403.

GW Reply – CHS does not appear to object to this specific forum post. GW does not objecting to redacting portions of the discussion (which GW is not even offering) that discuss GW's legal page.

4. **PX-170 (Keener Decl, Ex 4)**
   - Statement by Chapterhouse
     - o In response to a request for Iron Hands-themed products, Chapterhouse explains: "We have been considering that chapter for a while, we just need to be able to create an icon similar enough to the real GW icon while being acceptable to players as well, but we cant copy the GW one straight on …it's a tricky thing."

CHS response – This post is addressed above in PX 10.

GW Reply – CHS does not appear to object to this specific forum post.

   - Statement by Ordinary Customer
     - o Customer impression that Chapterhouse's Mk I Rhino kit looks very similar to Games Workshop's original model: "FYI: Your products suck and are more overpriced than GW's. The closest you've come to a decent good-looking product is that Mk I Rhino kit, and even that's a direct copy of the original model in terms of look. No idea where you're pulling your prices from, though."

CHS response – For completeness under Rule 106, this post should not be excluded from the conversation in which it appears. The post is made in response to a long string of discussions of the GW legal case and should be excluded under Rules 402 and 403. However, to the extent that it is admitted, statements made by consumers that are complimentary of CHS's products should also be admitted. On the same exhibit, customers stated "Wow, I like the look of those thunder pads" and "Any idea when the wolf ones will be done? All of it is awesome!"

GW Reply – GW is not offering the "long string of discussions of the GW legal case." Thus, it does not appear that CHS is objecting to this specific forum statement. CHS does not identify the all of the additional statements it seeks to admit. GW does not object to the admission of the two statements they identify in their response.

5. **PX-616 (Keener Decl, Ex 5)**
   - Statement by Chapterhouse Designer for "were-croc"
     - Under the heading "Making my Own Croc-Ogres" – a deliberate play on "Kroxigor": "I'm basically making my own 'big guys' to use with my Lizardmen army, because I need something that looks like a missing link between the old 5th edition Krox (of which I have a few) and the newer ones (of which I have only 1, don't like the look of that much and which frankly cost way more than I am willing to spend)" …"I thought I'd toss out a few pictures of one of my Kroxigors …"

CHS Response – CHS agrees that this post is admissible, but all of the posts by this designer describing the designers design process should also be admitted as recorded recollections of his design process (803(5)). For example, the designer posted updates of his progress in designing the product listing sources that he relied upon: "I'm not fully satisfied with the 'look and feel' of the heads at this point so I will be going at these guys with a dremel in the next phase (too rounded here…needs to be more angular. And the mouths need more expression;" CHS00027098; "One difficulty I'm having with these is trying to figure out how pronounced I want the scales to be. I was thinking of actually doing something similar to an actual alligator's tail, but I am concerned that it will be a major pain to cast it," CHS00027114; "still stumped on a color scheme, but the snake scale idea is appealing to me, with the ridges getting more pronounced over the spine." CHS00027115; "I have one set of arms done and am working on the other guy now. I had to scour through several anatomy books to get an idea of what the arm muscles should really be doing here" CHS000267601; "The faces weren't really meant to be crocodile-like – more raptor/t-rex/crocodile. The point was to make them look like they mean business (and are having too much fun smashing stuff) and I think it's coming across so far. When I add more scales, texture, etc, I think I will eliminate the last of the frogginess." CHS000027183.

GW Reply – CHS does not appear to object to this forum statement. CHS does not identify all of the additional statements it seeks to introduce. For those selected statements identified by CHS, GW does not object to their admission.

6. **PX-620 (Keener Decl, Ex 6)**
   - Statement by Chapterhouse Designer for "were-croc"
     - Under the heading "Making my Own Croc-Ogres": "I fully admit GW's sculpts were my inspiration."

CHS Response – CHS agrees that this post is admissible, but all of the posts by this designer describing the designers design process should also be admitted as recorded recollections of his design process (803(5)). Such posts are included on the same exhibit, and even the very same post from which GW's excerpt was taken. The posts should be presented in connection with the designer's deposition or trial testimony for context.

GW Reply – CHS does not appear to object to this forum statement. CHS does not identify the additional specific statements it seeks to introduce.

### 7. PX-624 (Keener Decl, Ex 7)
- Statement by Chapterhouse Designer for "were-croc"
  - o Posting a photo of the accused copies of the Kroxigor models that he was at the time sculpting "in comparison to the GW Krox"

CHS Response – CHS agrees that this post is admissible, but all of the posts by this designer describing the designers design process should also be admitted as recorded recollections of his design process (803(5)). Such posts are included on the same exhibit, and even the very same post from which GW's excerpt was taken. The posts should be presented in connection with the designer's deposition or trial testimony for context.

GW Reply – CHS does not appear to object to this forum statement. CHS does not identify the additional specific statements it seeks to introduce.

### 8. PX-626 (Keener Decl, Ex 8)
- Statement by Ordinary Customer
  - o In response to postings by the sculptor of the accused Kroxigor-copy as statement by a third party: "Man! Those new Krox of yours look great"

CHS Response – GW has not established any basis for concluding that this statement satisfies any hearsay exception.

GW Reply – The statement is not hearsay as GW is not offering it to prove that CHS's product is good looking or is a Kroxigor (which it is not); instead it is being offered to prove that ordinary customers refer to CHS's products as GW products. Moreover, the statement is a present sense impression as it is an ordinary customer's immediate reaction to seeing a picture of the CHS product.

- Statement by Chapterhouse Designer for himself stating: "I wanted you guys to see my Crocs in a Skrox unit[4] with one of GW's figures for comparison."

CHS Response – CHS agrees that this post is admissible, but all of the posts by this designer describing the designers design process should also be admitted as recorded recollections of his design process (803(5)). Such posts are included on the same exhibit, including "Thanks to everyone who chimed in about adding the extra scale texture." There are also pertinent customer comments such as "Wow, just wow," "Those new Krox of your look great." The posts should also be presented in connection with the designer's deposition or trial testimony for context.

---

[4] "Skrox" is a term for a blended unit of GW Lizardmen figures. CHS objects that GW provides no support for this statement.

GW Reply – CHS does not appear to object to this forum statement. CHS does not identify all of the additional specific statements it seeks to introduce. GW does not object to the admission of the specific statements identified in CHS's response.

## 9. PX-628 (Keener Decl, Ex 9)

- Statement under the heading "Designing Kroxigor Models" so "...I don't have any of the 6th edition [GW] figures in the picture you linked. Mine are all 5th and 7th ed. I note that the 6th ed figures have smooth skin (without scales) on the faces, bellies and below the knee. So it seems that my models would fit in quite nicely with all the Krox modesl that GW has ever produced."

CHS Response – CHS agrees that this post is admissible, but all of the posts by this designer describing the designers design process should also be admitted as recorded recollections of his design process (803(5)). Such posts are included on the same exhibit, "I happen to like the way these looked mixed in with other figures from other editions, and since none of my GW figures match each other exactly either, it's all good." The posts should also be presented in connection with the designer's deposition or trial testimony for context.

GW Reply – CHS does not appear to object to this forum statement. CHS does not identify all of the additional specific statements it seeks to introduce. GW does not object to the admission of the specific statements identified in CHS's response.

## 10. PX-629 (Keener Decl, Ex 10)

- Statement by Ordinary Customer
  - Under the heading "Kroxigor proxy miniatures," regarding the first announced sale of the products by Chapterhouse: "Hmmm, i guess the Proxigor Minis are looking great! (got it?? Got it?? Proxigor bwahahaha)",
  - "Yes, I thin[k] they are a good alternative to the GW ones;"
  - "Very nice but happy with the way the GW Kroxigor look"
  - "They remind me of the 5th ed Krox, just more buff and more humany"

CHS Response – GW has not demonstrated that any of these ordinary customer responses satisfy a hearsay exception. Further, many of the responses are confusing and require context from the poster to explain what is meant. Because the poster is not available to provide that context, the posts should be excluded under Rules 402 and 403. To the extent that these postings are admitted, additional statements in the same exhibit should also be admitted such as "Looking great! much better than the older snake-looking ones. None of this rhinoceros-face business either;" "I like 'em. I'm not a fan of the heads on the current GW ones, and I just don't get the attraction to the old 5th edition ones. Personal taste and all that, but I think the 5th ed ones look like anatomical fail."

GW Reply – None of the above statements are hearsay as they are not being offered for the truth of the matter asserted; instead, they are being offered to prove that ordinary customer's relate CHS's products immediately with GW products. Moreover, the above statements are present sense impressions as they reflect ordinary customer's immediate reactions to viewing pictures of the CHS product. CHS does not identify all of the additional specific statements it seeks to introduce. GW does not object to the admission of the specific statements identified in CHS's response.

4851-6862-5939.1

- Statement by Chapterhouse Designer for "were-croc"
  - "I sculpted these because I like more variation in my units and wanted some figures that bridge the gap between all the various Krox that GW have released over the years."

CHS Response – CHS agrees that this post is admissible, but all of the posts by this designer describing the designers design process should also be admitted as recorded recollections of his design process (803(5)). The posts should also be presented in connection with the designer's deposition or trial testimony for context.

GW Reply – CHS does not appear to object to this forum statement.  CHS does not identify the additional specific statements it seeks to introduce.  GW should not be force to introduce the exhibit per CHS's specific format (through the designer's deposition or trial testimony).

**11. PX-26 (Keener Decl, Ex 11)**
- Statement by Ordinary Customer
  - Under the heading "Doomseer Iyanar from Chapterhouse", one party wrote at length: "Not much resemblance?  No, the faceplate and frontal structure is almost identical to the second one, and indeed any of the original Warlocks, or the first Dire Avengers"
  - "It is to all intense and purpose and Eldar warlock/farseer/seer council member with a name that belongs to an old epic eldar craft lastime I looked.
  - You know what, youre right, there is absolutely no resemblance between your and theirs. Its completely coincidence and there is no way that you're actually trying to knock off an eldar farseer. Doomseer. Farseer/Warlock, whatever. [Pictures of Eldar figures omitted]  It is also absolutely crazy of all of us to think that the fact that you had it painted with an Eldar rune on its head is anything other than happenstance. Given the myriad ways lines can be arranged into glyphs, it should give no more suprise when they randomly come together in a form that is completely in line stylistically with an idiom that your sculpting also coincidentally lines up with, than it should suprise us when it doesn't. Thats how random chance works after all.
  - "Its really childish of us to think that lyanar has any similarity to the craftworld of Iyanden."
  - "How can you expect us to not compare it when that is so clearly, with out any doubt, 100% what you are doing? You know, you might catch a lot less flack if you didn't try to masquerade as this innocent pariah who is just getting picked on due to coincidence. Stop trying to defend your sculpt on grounds that are so clearly false"
  - "Saying that it doesn't look like an eldar character, doesn't sound like an eldar character, isn't painted like an eldar character, wasn't specifically sculpted to be as close to an eldar character as you can get away with when that is so clearly the case has a lot to do with WHY you get treated the way you do around here."
  - "On the contrary, you come in and say that you're NOT at all knocking off anything, and that any similarities between your blue dude up there and an eldar warlock or farseer are completely coincidental. You basically implicitly tell

21

4851-6862-5939.1

everyone that you think they are an ignorant asshole if they think they see a similarity. How stupid do you really think people are?"

- o "I suppose you have to keep up the charade since you ARE in a different boat than the above people who are filling voids where no competeing product exists. Since you DO produce knock offs of your competitors products, I suppose it would be silly of you to openly say, "Yeah, I'm totally selling this not-farseer and cashing in on GW, check out how awesome I am!'".
- o I suppose your "sculptor" made his own Land Raider, here: htt://!iveweb.archive.or/http: //chatjterhousestudios.com//webshoo/comopnents/com virtuemart/show m000 in imotpci .øh? filenpme=Splampnder A!Dh 4b5258adea 1b2.iop&newxsize=90&newvsize=90&fi!eout   And of course he "sculpted" this Tyranid body"[5]:"
- o "It's so obvious that you took a SM torso, did a poor job of filing off the crest on the front (it's so obvious, its funny) and then sculpted on your own back design and made castings of that."

- Statement by Chapterhouse
  - o "Its obviously supposed to be a female sculpt for Eldar players, noone ever denied that. Also the name has NOTHING from the GW universe. I pulled her name from some ancient priestess names and changed a few letters up"
  - o "Nu-uh, these are the old Eldar Farseers, theres not much resemblence to the head besides a general shape"
  - o At the conclusion of this series of posts is a final post by Chapterhouse disputing that it simply recasts Games Workshop models but not challenging the similarities.


CHS response – Because both the consumer posts identified and those posts to which CHS is responding contain prejudicial consumer opinions regarding the GW lawsuit and the legality of CHS's products. Such posts and CHS's responses should be excluded under Rules 402 and 403. See Hartzell Decl. Ex. B (excerpt from PX 26). These postings provide examples of the objections raised in CHS's MIL that the basis for the consumer opinions has not been established so such opinions are unreliable and prejudicial and should be excluded.


GW Reply – GW has not offered any of the alleged "prejudicial consumer opinions regarding the GW lawsuit or the legality of CHS's products" for which CHS is concerned. CHS does not appear to object to any of the specific statements sought to be introduced by GW. Moreover, these statements are not hearsay as GW is not offering them for the truth of the matter asserted (such as CHS using a Space Marine torso in its sculpting) but instead to prove that ordinary customers immediately perceive the CHS products as very similar to a number of GW products. Additionally, the statements are present sense impressions as they reflect statements by ordinary customers upon seeing new product offerings by CHS. To the extent any statements refer to the lawsuit, those narrow statements can be redacted. Finally, the three statements by Chapterhouse should be admissible as admissions by a party.

---

[5] This original forum post is no longer available on the internet. Nor do we have the forum posts to which the individual is referring (including those in which Chapterhouse supposed "bragged about spitting in the face of GW".

**12. PX 123/624  (Keener Decl, Ex 12)**
- Statement by Ordinary Customer
  - Under the heading Chapterhouse release of Tru-scale Knights Praetorius: "Ohhhhh Now I see that you're making your own line of models.  Amazing.  GL [Good luck]!!!;
  - "Idea [of Tru-Scale product] is good but the execution resembles 90s era GW models."
  - Under the further heading "Chapterhouse Studios don't release TRU-Scale Space Marines ;)" other third parties continue: "Oh dear lord, that one's not even subtle";
  - "It does feel as if they are saying 'Eff you GW …we are going to do whatever the heck we want, regardless of your stupid lawsuit.  Models designed by Stephen Smith – is Stephen Smith the GW employee who actually designed these?"
  - "Really lame sculpts too, but that's a given really with CH.  If this is the culmination of what I think it is, then one of the chaps on Dakka who tru-scaled up his Marines and just got CH to cast them iirc [if I remember correctly].  Adding a couple of mm of greenstuff to the thighs doesn't constitute an even remotely original sculpt imo [in my opinion]"

CHS response – GW has not demonstrated any basis to conclude that these customer statements satisfy a hearsay exception. Further, these consumer posts contain prejudicial consumer opinions regarding the GW lawsuit and the legality of CHS's products, such posts and CHS's responses should be excluded under Rules 402 and 403. These postings provide additional examples of the objections raised in CHS's MIL regarding lay opinions that the basis for the consumer opinions has not been established so such opinions are unreliable and prejudicial and should be excluded.

GW Reply – GW has not offered any of the alleged "prejudicial consumer opinions regarding the GW lawsuit or the legality of CHS's products" for which CHS is concerned.  CHS does not appear to object to any of the specific statements sought to be introduced by GW.  Moreover, these statements are not hearsay as GW is not offering them for the truth of the matter asserted (such as CHS makings a 90's era line of models or Mr. Smith having been an employee of GW, which he was not) but instead to prove that ordinary customers immediately perceive the CHS products as very similar to a number of GW products.  Additionally, the statements are present sense impressions as they reflect statements by ordinary customers upon seeing new product offerings by CHS.

**13. PX -877 (Keener Decl, Ex 13)**
- Statement by Ordinary Customer
  - Under the heading Chapterhouse release of Tru-scale Knights Praetorius: "Also (not from a legal point of view) I don't get why you feel it necessary to create new names and background for a kit, but then use the names freely on other kits. Its even more confusing when you get to this last line [quoting from Chapterhouse about the anticipate launch of female Imperial Guard, "dark space elf" kits and further kits for Space Marines players] so you're going to create a new name for your marine compatible stuff and call them 'Dark Space Elf'

4851-6862-5939.1

instead of Dark Eldar, but then just use the name Tyranid, Imp Guard and Space marines…"

CHS response – GW has not demonstrated any basis to conclude that this customer statements satisfy a hearsay exception. Because the customer is further speculating about the legality of CHS's naming without any basis for believing that the consumer has an understanding of trademark law, the post should be excluded under Rules 402, 403, and 701.

GW Reply – The statement is not hearsay as GW is not offering it to prove that any legal point of view but instead to reflect an ordinary customer's impression that CHS's products are often referenced with GW names. Moreover, the statement should not be excluded under Rules 402, 403, and 701 because GW is not offering the statement with respect to the customer's understanding of trademark law.

### 14. PX-878 and 879 (Keener Decl, Ex 14)
- Statement by Ordinary Customer
  - Under the heading Chapterhouse Tru-scale Knights Praetorius Kit: "They are very limited quantity at the moment and will hold main release for the new conversion kit for True Scale Space marines (no, I'm sorry, Tru-scale Knights Praetorius, how could I be so silly) next month, that's if they haven't been shut down before then"
  - "Well at least they've not used any GW terminology I guess…Although it's pretty clear from the pictures they just cast up some green stuffed marine parts."
  - "I think I might even buy some of those Tru Scale kits to be honest. Painting has always been my thing and I'm [expletive] at modeling so these are the closest I'm going to get to true scale SM's without commissioning custom conversions."
  - "The problem with Chapterhouse products is they're too close to be legitimate 'replacement' parts, and too deformed and ugly to be good replacements."
  - Under the heading "Some new Heresy Style pads for your terminators": "Whilst nice, they aren't even making an effort to be subtle about 'these can fit these kits to be appropriate for this era.'"
  - Regarding Chapterhouse Tru-scale Knights Praetorius Kit: "Why bother trying to copy Space Marines when you can't do them as well as GW already do?"
  - "they're not trying to create their own sci-fi world so to me the fluff [about the Empress' most loyal soldiers] makes no difference. They will always be space marines in the eyes of anyone who'd buy them"
  - Following a series of comments by Chapterhouse and others, one third party comments: "So are they supposed to be Space Marines or not? Why go to all the trouble of putting them together with SM parts, writing a ludicrous fluff blurb (Empress, really?) make them look like second rate SM's and then pop up and say 'They're not what they look like if you build them with our own parts!'"
  - To which, another party responds: "This is pretty much dead on. I have to say your kids look like cheap rip-offs of the forgeworld versions which came out first and have better design…And include heads…On another hand, I can pretty much point out every single one of those items in the HH [Horus heresy] art book."

CHS response – GW has not demonstrated any basis to conclude that these customer statements satisfy a hearsay exception. Because the customers are further speculating about the legal situation with GW without any basis for believing that the consumer has an understanding of relevant law (they're too close to be legitimate 'replacement' parts; that's if they haven't been shut down before then; They will always be space marines in the eyes of anyone who'd buy them; I can pretty much point out every single one of those items in the HH [Horus heresy] art book"), the post should be excluded under Rules 402, 403, and 701.

GW Reply –These statements are not hearsay as GW is not offering them for the truth of the matter asserted (such as CHS being shut down in a month) but instead to prove that ordinary customers immediately perceive the CHS products as very similar to a number of GW products. If the statement about CHS being shut down is deemed sufficiently prejudicial or an unfair reference to the lawsuit, it can be redacted while leaving the balance of the statement. Additionally, the statements are present sense impressions as they reflect statements by ordinary customers upon seeing new product offerings by CHS. Further, the posts should not be excluded under Rules 402, 403, or 701 as GW is not seeking to introduce any statements regarding the "legal situation with GW."

### 15. PX 124 (Keener Decl, Ex 15)
- Statement by Ordinary Customer
  - Under the heading "Chapterhouse August releases – pads and were-crocs": "I like the not-classic Kroxigor."
    "A lot of the shoulderpads seem to have soft detail. I like the salamander shoulders though."

CHS response – GW has not demonstrated any basis to conclude that these customer statements satisfy a hearsay exception.

GW Reply – None of the above statements are hearsay as they are not being offered for the truth of the matter asserted; instead, they are being offered to prove that ordinary customer's impressions of CHS products. Moreover, the above statements are present sense impressions as they reflect ordinary customer's immediate reactions to viewing pictures of the CHS product.

### 16. PX 870 (Keener Decl, Ex 16)
- Statement by Ordinary Customer
  - Under the heading "Chapterhouse Studios November Releases – Lizard Ogres …Knight Pad): "Why don't you call that lizard a Kroxigor?" …"The not-Kroxigor looks like a rubber children's toy …And the not-Marine shoulder pads are redundant."
  - "Those kroxigors have retro appeal"
  - "The Kroxigors are interesting, might pick up a few if I can't find some good deals on ebay."
  - "Those Kroxigors and their weapons look like they're from two different cartoons photoshopped poorly together."
  - "I like the lizard ogre sculpts, great artistic work, but stop lying. They are Kroxigors."

CHS response – GW has not demonstrated any basis to conclude that these customer statements satisfy a hearsay exception. Further, the last two statements should be excluded under Rules 402 and 403.

GW Reply – None of the above statements are hearsay as they are not being offered for the truth of the matter asserted; instead, they are being offered to prove that ordinary customer's relate CHS's products immediately with GW products. Moreover, the above statements are present sense impressions as they reflect ordinary customer's immediate reactions to viewing pictures of the CHS product. CHS does not explain why the last two statements should be excluded under Rules 402 and 403; they are clearly relevant to show that ordinary customers perceive the CHS products as imitations of GW products. There is nothing unfairly prejudicial in those statements.

### 17. PX-872 (Keener Decl, Ex 7)
- Statement by Ordinary Customer
  - Under the heading "November Chapterhouse Studios Release – Lizard Ogres): "Really, that looks exactly like the current GW lizardmen with a different face and belly…even the same pose/weapons."
  - "Looks like the original Kroxigor model with crappy versions of the  new weapons sculpted on.  I shouldn't criticize, having zero sculpting ability of my own, but there are very good krox substitutes out there, far better quality and more original."
  - "Looking nice, just wish ya'll would try something original for a change"
  - "Wow. actually wow.  Not even trying to hide the blatant rip-off.  Shape changers? Just call them kroxigor and be done with it." (Also PX 874)

CHS Response - GW has not demonstrated any basis to conclude that these customer statements satisfy a hearsay exception. Further, the statements in which ordinary consumers give opinions referring to the consumers opinion regarding blatant rip-off should be excluded under Rules 701, 402, and 403. However, to the extent that any of these posts are admitted, responsive posts by other consumers regarding the lack of similarity should also be admitted.

GW Reply – None of the above statements are hearsay as they are not being offered for the truth of the matter asserted; instead, they are being offered to prove that ordinary customer's relate CHS's products immediately with GW products.  Moreover, the above statements are present sense impressions as they reflect ordinary customer's immediate reactions to viewing pictures of the CHS product.  CHS does not explain why the last statements should be excluded under Rules 402, 403, and 701; they are clearly relevant to show that ordinary customers perceive the CHS products as imitations of GW products.  There is nothing unfairly prejudicial in those statements and the colloquial reference to a "blatant rip-off" is not a legal conclusion but simply a perception of obvious similarity.  CHS does not identify what additional statements it seeks to admit.

### 18. PX-879 (Keener Decl, Ex 18)
- Statement by Ordinary Customer
  - "It's nice to see someone doing a true scale kit for Astartes, and these do look very easy and nicely sculpted … But it does, for me, push the line uncomfortably close, from parts for modification to replication."

26

- o "The tone and the trolling might be obvious but I could no longer lurk and listen to you blow sunshine up [Chapterhouse's] rear about those parts If that's the acceptable standard for aftermarket parts why do people get so up in the air about a few bubbles in the cast. The sculpting at chapterhouse has never been 'professional' but if he's gonna blatantly copy marines at least put ajn effort in. Come people, they might be answering your true scale prayers on some level but don't put up with second rate parts. Your paying money for this."

CHS response – GW has not demonstrated any basis to conclude that these customer statements satisfy a hearsay exception. Further, the statements in which ordinary consumers give opinions referring to the consumers opinion regarding "blatant copying" and rip-off should be excluded under Rules 701, 402, and 403. However, to the extent that any of these posts are admitted, responsive posts by other consumers regarding the lack of similarity should also be admitted. This same exhibit also states that "This kit fills a niche that some people have been yearning for greatly," "I love these mini's and am glad I bought them and truely hope to see more 'Space Elves,'" and "Models above, I like the art on the Blue guys weapon arms, look pretty sweet in concept." CHS also objects under Rule 106 because GW did not produce all pages of this forum post, and instead cherry picked certain pages (as evidenced by the page numbering on the top right of each post).

GW Reply – None of the above statements are hearsay as they are not being offered for the truth of the matter asserted; instead, they are being offered to prove that ordinary customer's relate CHS's products immediately with GW products. Moreover, the above statements are present sense impressions as they reflect ordinary customer's immediate reactions to viewing pictures of the CHS product. CHS does not explain why the statements should be excluded under Rules 402, 403, and 701; the fact that a customer sees the product as "blatently cop[ied]" from the GW products is the customer's impression of the product and not unfairly prejudicial. Finally, CHS does not identify all of the additional posts it seeks to admit. The specific additional comments are irrelevant to the copyright issues of similarity or not.

### 19. PX-883 (Keener Decl, Ex 19)
- Statement by Ordinary Customer
  - o Concerning the Javelin Class Jet Bike: "The fact that I can identify the GW bits, that make up the majority of the bike, bothers me."
  - o "I personally feel like the sculpt overall is just plain ugly. It looks way too klunky and kitbasjed from spare GW parts for my tastes. I mean, heck, if you're going to make a model from the ground up make it something that stands out. I mean heck, I bet I could build at least 60-70% of this using GW spare parts"
  - o "I like the model, but I don't think pretending it's heavily based on the look of SM bikes is going to fool anybody. Kitbash or not, several components are nearly identical to parts from the current bike: the central tank, the rear quarter panels (from the current attack bike), and even the bolters look like old rhino bolters."
  - o Under the same heading but referring to the Tru-scale product: "I just realized one thing: chapter house now let us make an entire army of space marines, without spending a penny with GW."

27

- o Another party clarifies: Well, torsos may not currently be available on their but weren't they selling full scale models for a while? Meaning that you could build a 'marine looking army' without using any actual GW parts. They have complete models intended to be used for eldar currently for sale, so while the marine comment might no be 100% technically accurate, if you switch out marine for eldar it applies."
- o Concerning the Chapterhouse Power Claws: "Why would anyone buy these over the real GW Lightning Claws? The design is almost exactly the same except that the blades look horrible in this version."
- o "So the lightning claws are like, you literally took a GW power fist and recast it and put 2 horrible looking claws on top?"

CHS response – GW has not demonstrated any basis to conclude that these customer statements satisfy a hearsay exception. Further, the statements in which ordinary consumers give opinions referring to level of similarity of individual parts that offer a conclusion regarding copying should be excluded under Rules 701, 402, and 403. However, to the extent that any of these posts are admitted, responsive posts by other consumers regarding the lack of similarity should also be admitted. The same exhibit reports that "I like them. They look decently imperial. A whole army on those would be wicked cool." and "I like CH, especially the Storm Raven kit." CHS also objects under Rule 106 because GW did not produce all pages of this forum post, and instead cherry picked certain pages (as evidenced by the page numbering on the top right of each post).

GW Reply – None of the above statements are hearsay as they are not being offered for the truth of the matter asserted; instead, they are being offered to prove that ordinary customers relate CHS's products immediately with GW products. Moreover, the above statements are present sense impressions as they reflect ordinary customer's immediate reactions to viewing pictures of the CHS product. CHS does not explain why the statements should be excluded under Rules 402, 403, and 701; the fact that a customer sees the product as "almost exactly the same" as the GW products is the customer's impression of the product, highly relevant, and not unfairly prejudicial. Finally, CHS does not identify all of the additional posts it seeks to admit. The specific additional comments are irrelevant to the copyright issues of similarity or not.

### 20. PX-884(Keener Decl, Ex 20)
- Statement by Ordinary Customer
  - o Referring to the Javelin Class Jet Bike: "I was referring to the design on the jet bike, looks just like what I remember the pre heresy jet bikes looking like in the Sabertooth card game. There's pictures of a bike quite like this one (the inspiration for it?) in the Horus Heresy Collected Visions Art book."

CHS response – GW has not demonstrated any basis to conclude that these customer statements satisfy a hearsay exception. Further, the opinion of an ordinary consumer opinions regarding the ultimate copyright question of whether the accused product is a copy of a card that the consumer remembers should be excluded under Rules 701, 402, and 403. However, to the extent that any of these posts are admitted, responsive posts by other consumers regarding the lack of similarity should also be admitted. The same exhibit reports that "Heck, it's all from WWI anyway." CHS also objects under Rule 106 because GW did not produce all pages of this forum post, and

instead cherry picked certain pages (as evidenced by the page numbering on the top right of each post).

GW Reply – None of the above statement i hearsay as it is not being offered for the truth of the matter asserted; instead, it is being offered to prove that ordinary customers relate CHS's products immediately with GW products. Moreover, the above statement is a present sense impressions as it reflects and ordinary customer's immediate reactions to viewing pictures of the CHS product. CHS does not explain why the statements should be excluded under Rules 402, 403, and 701; the fact that a customer sees the product as very similar to a picture from the Horus Heresy is the customer's impression of the product, highly relevant, and not unfairly prejudicial. Finally, CHS does not identify the additional posts it seeks to admit. The specific additional comments are irrelevant to the copyright issues of similarity or not.

### 21. PX 885 (Keener Decl, Ex 21)
- Statement by Ordinary Customer
  - o "I like the design but feel it is just a bit too much like a GW Bike. In fact, I had to get out a SM bike to convince you didn't use a GW model and add a few bits. Also making the arms and legs, which are a good replica of Marine parts, may be going a but far."
  - o "No offense, But when I saw these, it was the artwork I though of from the 40k card game. Even down to the fact it has no wings….The bikes look nice thow (sic). I will give you that. A nice clean look that people can bling out themselves well having that heavy SM feel"
  - o "I should have been clearer. This jet bike does not look a clone of the master of ravenwing jet bike, it looks like the SM bike with jets instead of wheels. The fuel tank, seat and rear fender area look like direct copies unless you do a detailed inspection of them. The engine detail is different but at first glance looks like it could be GW. I saw the extra detail on the leg, my opinion still stands. I think you did a great job on this model. Its just that you have done such a great job, without making a direct copy of GW parts, that it appears to be a copy." (In response, Chapterhouse thanked the viewer for the compliment.)

- Statement by Chapterhouse
  - o In response to these posts, Chapterhouse itself posted an image from the Games Worskhop/Sabertooth Games card game showing the inspiration for its jetbike

CHS Response - In each instance in which CHS responds to another poster, that original post should be admitted in addition to any statement by CHS for completeness. However, GW has not demonstrated any basis to conclude that these customer statements satisfy a hearsay exception and many of the statements include consumer opinions regarding the legal conclusion of whether or not CHS products are too close to GW products. Such opinions should be excluded under Rules 701, 402, and 403. The first post also includes unsupported speculation regarding how the products were designed for which the consumer has no basis and ultimately agrees was incorrect. Such posting should be excluded under 403.

GW Reply – None of the above statements are hearsay as they are not being offered for the truth of the matter asserted; instead, they are being offered to prove that ordinary customers relate CHS's

products immediately with GW products. Moreover, the above statements are present sense impressions as they reflect ordinary customer's immediate reactions to viewing pictures of the CHS product. CHS does not explain why the statements should be excluded under Rules 402, 403, and 701; the fact that customers see the product as very similar to GW artwork is the customer's impression of the product, highly relevant, and not unfairly prejudicial. Regarding the first statement, GW is not offering it to prove that in the design process CHS actually used GW pieces for the modeling but instead for CHS's customer's impressions that the products are so similar it looks as if CHS used GW pieces in making the product. Finally, CHS does not identify the additional posts it seeks to admit.

### 22. PX 742 (Keener Decl, Ex 22)
- Statement by Ordinary Customer
  - Under the heading "Chapterhouse not-space marines" (referring to the Tru-scale "Knights Praetorius"): "So it's a space marine, right?"
  - "Disregarding everything else; if I want space marines, why would I buy these instead of the nearly identical GW ones?"

CHS Response - GW has not demonstrated any basis to conclude that these customer statements satisfy a hearsay exception

GW Reply – None of the above statements are hearsay as they are not being offered for the truth of the matter asserted; instead, they are being offered to prove that ordinary customers relate CHS's products immediately with GW products. Moreover, the above statements are present sense impressions as they reflect ordinary customer's immediate reactions to viewing pictures of the CHS product.

### 23. PX 743 (Keener Decl, Ex 23)
- Statement by Chapterhouse
  - Under the heading "Tervigon Conversion kit for Tyranid Carnifex from Chapterhouse Studios" an admission by Chapterhouse that "My goal was to make a kit that is similar to GWs single illustration of the Tervigon. The other part of that goal was not to charge a lot for a kit and to let people use the unused carnifexes we all have stockpiled since the new codex."

CHS Response – CHS agrees that this post by CHS is admissible.

GW Reply – CHS does not appear to be objecting to this specific forum post.

### 24. PX-887 (Keener Decl, Ex 24)
- Statement by Ordinary Customer
  - Under the heading New Female Farseer Stand-in model from Chapterhouse Studios - Doomseer Iyannar:  Responding to a comment by the co-owner of Chapterhouse, Mr. Fiertek, one party wrote at length:
    Hi there I see you are still biting. That sum up you gave applies to a completely different forum, where the values are completely different and the relationships are more complex than you give credit for. However while you're at it, I can take a bit of sniping but from what I have read this mini isn't being too well

recieved. I love how my being ex something makes me bitter about it, I can now afford plenty of resin and plastic crak, ta. Also while we are on the subject of quotes, I quite like this little number:

*Chapterhousestudios wrote: Nu-uh, these are the old Eldar Farseers, theres not much resemblence to the head besides a general shape.*

You know what, you're right, there is absolutely no resemblance between your and theirs. Its completey coincidence and there is no way that you're actually trying to knock off an eldar farseer. Doomseer. Farseer/Warlock, whatever.

It is also absolutely crazy of all of us to think that the fact that you had it painted with an Eldar rune on its head is anything other than happenstance. Given the myriad ways lines can be arranged into glyphs, it should give no more suprise when they randomly come together in a form that is completely in line stylisticly with an idiom that your sculpting also coincidentally lines up with, than it should suprise us when it doesn't. Thats how random chance works after all.

*Chapterhousestudios wrote: Also the name has NOTHING from the GW universe. I pulled her name from some ancient priestess names and changed a few letters up.*

Its really childish of us to think that Iyanar has any similarity to the craftworld of Iyanden. It is so obviously a randomization of 'some thing I found on google and rearranged' that to note the congruence with the estableshed IP that it sails so close to would be just plain fatuous. Shame on us.

*Chapterhousestudios wrote: I dont mind critiques, but when you are making a gak storm over GW comparisons and then you have sculptors asking for video game characters, movie characters etc etc it gets hypocritical.*

How can you expect us to not compare it when that is so clearly, with out any doubt, 100% what you are doing? You know, you might catch a lot less flack if you didn't try to masquerade as this innocent pariah who is just getting picked on due to coincidence. Stop trying to defend your sculpt on grounds that are so clearly false!

Saying that it doesn't look like an eldar character, doesn't sound like an eldar character, isn't painted like an eldar character, wasn't specifically sculpted to be as close to an eldar character as you can get away with when that is so clearly the case has a lot to do with WHY you get treated the way you do around here. There are plenty of people who will say that treading on someone elses IP is bad, no matter who they are. You have to accept that plenty of the people in the world actually believe in absolutes of right and wrong. You will never win them over, but you shouldn't be surpised. If that weren't the case, the world wouldn't function.

However, there are plenty of people who see grey areas, and say- well, if you

want to do derivative work and ride on the coat tails of established idioms and IP and fill niches, or offer competing cheaper products for those that are comfortable using alternative figures, that's fine! Thats the free market, or thats the price of success, or whatever. Lots of people feel that way too.

You might come off as less of joke if you were straight forward and honest about it. It has been said around here before that the not-characters that folks like Crooked Dice, Heresy, HF, etc do are filling voids where no competing product by the IP holder exists. Do you not see how that is different? I'm not saying you have to agree philosophically, or that you can't say that you think what you're doing is just as legal/acceptable/moral, whatever. Your opinion is yours to have, but FACTUALLY, you're playing different games then they are.

Putting aside the above factual difference of filling a void, vs producing a knock off- Another big difference is that most of the above mentioned ranges make NO DENIALs about what they're doing. The similar names, the never-even-thinly-veiled allusions to the original source material. "MALCOLM ECCLESCAKE A time-bothering vagrant do-gooder. " , "Femdroid" vs Fembot, "Cobra" vs "Snake Plisken". Its all really clear whats going on.

On the contrary, you come in and say that you're NOT at all knocking off anything, and that any similarities between your blue dude up there and an eldar warlock or farseer are completely coincidental. You basically implicitly tell everyone that you think they are an ignorant donkey-cave if they think they see a similarity. How stupid do you really think people are?

I suppose you have to keep up the charade since you ARE in a different boat than the above people who are filling voids where no competeing product exists. Since you DO produce knock offs of your competitors products, I suppose it would be silly of you to openly say, "Yeah, I'm totally selling this not-farseer and cashing in on GW, check out how awesome I am!'.

Here's a suggestion: If you really don't think we're all as dumb as you seem to suggest we are, and you haven't drunk the kool-aid so much to actually believe your 'official line' about how original this all is, and you're really just having this on with a wink and nod to those in the know, how about rather than trotting out these pathetic tired old lines about 'random googling' and not having ANYTHING to do with GW source material, you just don't say anything at all, rather than insult our intelligence.

"Here's my new release. Hope you like it"   That's all you need to say. That'd suffice

In response, Chapterhouse made a final comment disputing that it simply recasts Games Workshop's products but not challenging the other statements as to the similiarities between its product and Games Workshop's works

CHS Response - GW has not demonstrated any basis to conclude that this multi-page posting listing that is evidence of a continuing conversation on the topic satisfies any hearsay exception and many of the statements include opinions regarding the legal conclusion of whether or not CHS products are too close to GW products. Such opinions should be excluded under Rules 701, 402, and 403. The first post also includes unsupported speculation regarding how the products were designed for which the consumer has no basis and ultimately agrees was incorrect. Such posting should be excluded under Rules 402 and 403. As explained *supra*, GW has not shown that CHS's failure to respond to online postings satisfies 803(7).

GW Reply - None of the above statements are hearsay as they are not being offered for the truth of the matter asserted; instead, they are being offered to prove that ordinary customer's relate CHS's products immediately with GW products. Moreover, the above statements are present sense impressions as they reflect ordinary customer's immediate reactions to viewing pictures of the CHS product. CHS does not explain why the statements should be excluded under Rules 402, 403, and 701; the fact that customers see the product as very similar to GW products is the customer's impression of the product, highly relevant, and not unfairly prejudicial. GW is not seeking to introduce the any legal conclusions. The statement is also admissible under 803(7) to show that Chapterhouse does not dispute its copying.

## III.   DEFENDANT'S MOTION IN LIMINE NO. 4 – IDENTIFICATION OF ICON TRADEMARKS

In its Motion in Limine #4, CHS sought to exclude evidence or testimony about the unregistered symbol trademarks that CHS contends GW failed to identify during discovery.

### A.   Plaintiff's identification of its disclosure

The premise of Chapterhouse's motion in limine to exclude evidence of plaintiff's icon marks is simply false. Games Workshop identified all of the subject icons in its response to Interrogatory 18 (which was supplemented during the second phase of the litigation and was shown to Mr. Villacci at his deposition when he acknowledged his familiarity with all of the subject design marks) and Games Workshop further identified all of the icon marks on its claim charts submitted early in the first phase of the case and prior even to commencement of the second phase. Just so, as Games Workshop previously explained in opposing Chapterhouse's motion, the Court itself noted in granting in part Games Workshop's summary judgment motion, that Mr. Villacci reviewed a list

of Games Workshop marks in issue (in response to Chapterhouse's Interrogatory 18[6]) – including the icon or design marks. He not only had no difficulty understanding what they were, but identified only eight such design marks he even purported to challenged for alleged lack of prior use in commerce. 4/1/13 Mem Dec. at 15 n. 5. Even for these, he conceded Games Workshop had made prior use of all eight at the very least in its fiction. The statement by Chapterhouse that Games Workshop first identified these icon marks on Friday, April 19 is not only incorrect it is incomprehensible.

Despite the fact that Mr. Villacci has no difficulty understanding what is in issue, his counsel now purport to challenge not just the eight design marks but 25 such designs arguing that they were not sufficiently identified in discovery. However, Chapterhouse made no formal objection and filed no motion to compel (in either phase of the case). Its motion in limine thus is improper under Local Rule 37.2 and Federal Rule 37 itself, as there is no predicate prior order in this case to support a motion of any kind now. *Fine Line Distribs. V. Rymer Meats,* No. 93 c 5685, 1994 U.S. Dist. LEXIS 9730, *11-12 (N.D. Ill. July 15, 1994) ("the cases interpreting Rule 37(b) clearly establish that the court should only issue sanctions pursuant to Rule 37(b) for a violation of a court order regarding discovery").

Not only is Chapterhouse's motion untimely under Rule 37, its portion of the joint report (first served after 5:00 pm central time today) in reality seeks summary judgment on the sufficiency of Games Workshop's evidence of use in commerce – in some instances regarding marks for which the court has already granted summary judgment to Games Workshop. Chapterhouse also refers to

---

[6] It is not clear why Chapterhouse now refers to Interrogatories 3 and 40 rather than the specific request it made (and which it does not dispute Games Workshop answered in full) seeking identification of all of the marks in issue. To be sure, Games Workshop did object during discovery in the second phase to the fact that Chapterhouse served roughly 50 discrete interrogatories in this phase without leave of court, some of which were duplicative of prior requests.

attachments to the report (as well as a Hartzell declaration) which it did not serve on Games

Workshop until after 8:00 pm central time. As a result, Games Workshop is unable to determine the

basis if any for Chapterhouse's remaining objections. [7] However, Games Workshop would concede

that for five of the subject design marks (the Celestial Lions icon, the Exorcist Skull icon, the Space

marine Devastator icon; the Thousand Sons icon, and the Mantis Warrior icon, its theory

(previously explained to the Court in connection with the parties' summary judgment motions), is

that the basis in for its right to protect the marks based principles of unfair competition law and

"analogous" use in commerce. *Processed Plastic Co. v. Warner Commns, Inc.*, 675 F.2d 852 (7th

Cir. 1982) and *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76 (2d Cir. 1981); *D. C. Comics, Inc.*

*v. Powers*, 465 F. Supp 843 (S.D.N.Y. 1978).[8] Without acknowledging the actual legal basis for

Games Workshop's contentions, most of Chapterhouse's arguments are directed to these marks.

|    | Icon | Depiction | Production |
|----|------|-----------|------------|
| 1. | Black Templars Icon |  | PX434-GW0002396; PX445; PX468; PX839-GW0013519, 13523; PX930-GW0018169 |

---

[7] Games Workshop does acknowledge that while it had provided references to all but three of the icon marks by the morning April 19, there were three for which it provided the references during the day of April 22.

[8] In *Processed Plastic and Warner Bros.*, defendant sought to capitalize on the recognition of the "Dixie Racer" car in plaintiff's "Dukes of Hazard" television series before a licensed version was made. Such a deliberate attempt to trade on plaintiff's goodwill constituted unfair competition in violation of Section 43(a). Here, all of Games Workshop's trademarks in issue (with a very few exceptions) have been used on actual products. But even an icon such as the Devastator Chevron that has appeared only in Games Workshop's fictional works is associated only with Games Workshop for fantasy games and miniatures. Here, as in the twin "Dixie Racer" cases, Chapterhouse directly trades on the goodwill Games Workshop has developed in its names and icons.

| | Icon | Depiction | Production |
|---|---|---|---|
| 2. | Blood Angels Icon |  | PX415-GW0004536, GW0004549; PX428-GW0005470; PX434-GW0002331; PX457; PX470; PX532-GW0005470; PX839-GW0013326, 13331, 13344, 13346, 13356, 13519; PX930-GW0018169, 18171 |
| 3. | Blood Ravens Icon |  | PX416-GW0002441; PX447; PX544-0002441; PX934-GW0018188-89 |
| 4. | Celestial Lions Icon |  | PX449 |
| 5. | Dark Angels Winged Sword Icon |  | PX415-GW0004536, GW0004549; PX420-GW0000889, 980; PX421-GW0000981; PX434-GW0002374; PX450; PX454; PX839-GW0013519; PX857-GW0015231; PX930-GW0018169; PX938-GW0018249 |
| 6. | Exorcist Skull Icon |  | PX449 |
| 7. | Flesh Tearers Icon |  | PX415-GW0004593-94; PX416-GW0002452; PX434-GW0002356; PX495; PX496; PX550-GW0002452; PX839-GW0013357, 13360; PX930-GW0018171; PX939-GW0018250 |

4851-6862-5939.1

| | Icon | Depiction | Production |
|---|---|---|---|
| 8. | Howling Griffons Icon |  | PX432;<br>PX844; |
| 9. | Imperial Fists Icon |  | PX416-GW0002461;<br>PX421-GW0001080;<br>PX432-GW0001654;<br>PX434-GW0002366;<br>PX454;<br>PX552-GW0002461;<br>PX839-GW0013520;<br>PX943-GW0018259-60;<br>PX944-GW0018262;<br>PX945-GW0018263 |
| 10. | Iron Snakes Icon |  | PX453;<br>PX949-GW0018271 |
| 11. | Legion of the Damned Icon |  | PX434-GW0002377;<br>PX839-GW0013297, 13509;<br>PX950-GW0018274 |
| 12. | Chaos Space Marines Eight-Pointed Star Icon |  | PX419-GW0000781, 888;<br>PX433-GW0001875;<br>PX434-GW0002337;<br>PX455;<br>PX526-GW0000781, 888;<br>PX839-GW0013373, 13392;<br>PX937-GW0018192 |
| 13. | Soul Drinkers Icon |  | PX 72-GW0008925;<br>PX325;<br>PX434-GW0002391;<br>PX456;<br>PX860-GW0015499;<br>PX954-GW0018285;<br>PX955-GW0018287 |

|     | Icon | Depiction | Production |
| --- | --- | --- | --- |
| 14. | Salamanders Icon |  | PX434-GW0002389;<br>PX951-GW0018278-79;<br>PX952-GW0018281-82 |
| 15. | Tau Empire Icon |  | PX 415-GW0004860-61, 4879-80;<br>PX463;<br>PX464;<br>PX515-GW0004859;<br>PX516-GW0004861-62;<br>PX541-GW0002426;<br>PX718-GW0013642;<br>PX839-GW0013543-4, 13546, 13549, 13551-52;<br>PX864-GW0016663;<br>PX963-GW0018299;<br>PX964-GW0018301 |
| 16. | Space Marine Tactical Squad Icon |  | PX 63;<br>PX416-GW0002478;<br>PX424-GW0001300;<br>PX476; PX562-GW0002478;<br>PX839-GW0013521;<br>PX930-GW0018171;<br>PX957-GW0018290 |
| 17. | Space Marine Assault Squad Icon |  | PX 65-GW0002323;<br>PX416-GW0002440;<br>PX434-GW0002323;<br>PX543-GW0002440;<br>PX839-GW0013519;<br>PX930-GW0018169;<br>PX960-GW0018296 |
| 18. | Space Marine Devastator Icon |  | PX 466 (*added April 22, 2013*)<br>PX 842 (*added April 22, 2013*)<br>PX 853 (*added April 22, 2013*) |
| 19. | Ultramarine Icon |  | PX93-GW0011378;<br>PX415-GW0004533, 4536, 4549, 4698-99, 4716, 4764;<br>PX416-GW0002467, 2471;<br>PX421-GW0000981;<br>PX422-GW0001081;<br>PX424-GW0001217, 1300;<br>PX428-GW0005471-72; |

4851-6862-5939.1

| | Icon | Depiction | Production |
|---|---|---|---|
| | | | PX434-GW0002372, 2381, 2386-87;<br>PX446;<br>PX454;<br>PX465;<br>PX476;<br>PX502-GW0004699;<br>PX509-GW0004764;<br>PX532-GW0005471;<br>PX533-GW0005472;<br>PX534-GW0007031;<br>PX556-GW0002467;<br>PX558-GW0002471;<br>PX763-GW0011979;<br>PX765-GW0012023;<br>PX839-GW0013509, 13517, 13521;<br>PX846-GW0017536;<br>PX930-GW0018171;<br>PX965-GW0018338 |
| 20. | Adeptus Mechanicus Cog Icon |  | PX948-GW0018269-70 |
| 21. | Iron Hands Icon |  | PX839-GW0013518-19;<br>PX946-GW0018265;<br>PX947-GW0018267-68 |
| 22. | Space Wolves Icon |  | PX-102;<br>PX415-GW0004536, 4549;<br>PX416-GW002477;<br>PX428-GW0005473;<br>PX434-GW0002388;<br>PX472;<br>PX474;<br>PX511-GW0004785;<br>PX561-GW0002477;<br>PX839-GW0013528, 13537;<br>PX930-GW0018171;<br>PX962-GW0018298 |

| | Icon | Depiction | Production |
|---|---|---|---|
| | |  | |
| 23. | Thousand Sons Icon |  | PX 467 (*added April 22, 2013*) |
| 24. | Mantis Warrior Icon |  | PX 542 – GW0002431 (*added April 22, 2013*) |

## B.    Defendant's Response

During the pretrial conference, the Court instructed GW to explain how it identified the symbols associated with the icon marks listed in footnote 3 of the MIL to Chapterhouse during discovery. *See* Tr. At 51-52 ("the plaintiff needs to tell me, yes, this is how we communicated to the defendant what the image is"); *see also* Dkt. 319 at fn. 3, p. 8.  In response to the Court's order requiring identification of how it disclosed the icon marks to CHS, GW provided on April 19 the above chart including an image of each icon.  Although GW represented it had previously produced these icons during discovery, in fact what GW meant as shown by the citations above was that somewhere within GW's nearly 20,000 page document production, it had disclosed these symbols. ("the April 19th Chart,").  There are two main problems with this approach:  (1) GW should have identified these marks in response to interrogatory requests, so that CHS could have responded appropriately and (2) the new chart is still insufficient.

The alleged trademarks within GW's discovery are not called out as such.  In fact, many of the reference documents identified in GW's new chart are books or screen shots that are hundreds of pages in length with the alleged trademark showing up somewhere in the middle.  Knowing that

even a word used in a book title does not constitute trademark use[9], it is unreasonable to expect the defendant to identify, for example, that the alleged trademark of the Mantis Warriors icon could be found as a picture shown on page 72 of a book contained somewhere in GW's production. Similarly, defendant should not have been expected to identify the Howling Griffon trademark symbol on a single page of a 200-page book when that particular page lists more than 50 soldiers and the entire book is unable to be OCRed. (PX 844, Hartzell Decl. Ex. C). Some of these documents do not even have the name of the identified icon on the same page as the symbol and include a wide variety of symbols. (*e.g.*, PX 421, p. GW0000981, Hartzell Decl. Ex. D; PX 421, p. GW00001080, Hartzell Decl. Ex. E; PX 432, Hartzell Decl. Ex. F; PX 948, Hartzell Decl. Ex. G). For three of the icon marks, GW was unable to even identify any document produced in discovery containing the alleged mark in its original April 19th chart, but supplemented its chart on April 22nd with documents allegedly disclosing the marks.[10] This is important because finding the associated images for each trademark previously listed only by name is not a straightforward exercise where everyone knew which image was intended to be asserted. To the contrary, for majority of the alleged trademarks, there is not even one particular image associated with that mark—the Space Wolves images that GW now provides confirm this point because they identify two wholly different images as supposedly being the "Space Wolves Icon." (*supra* at 40, entry 22).

    **1.    Despite Discovery Requests Requiring Their Identification, the Icon Marks were Not Identified in Discovery**

    Because the identification of the icon marks and the uses accused of infringing them were not properly identified during discovery, exclusion is appropriate. *See Tiffany (NJ) Inc. v. eBay,*

---

[9] *Herbko Intern., Inc. v. Kappa Books, Inc.,* 308 F.3d 1156, 1162-1163 (Fed. Cir. 2002).

[10] These icons include the Space Marine Devastator Icon, the Thousand Sons Icon, and the Mantis Warrior Icon.

*Inc.*, 576 F. Supp. 2d 460, 462-63 (S.D.N.Y. 2007); *see also Abbott Laboratories v. Sandoz, Inc.*, 743 F. Supp. 2d 762, 776-777 (N.D. Ill. 2010) (granting motion *in limine* to preclude defendant from introducing evidence at trial concerning pleadings not properly disclosed during discovery).

GW had a duty to disclose the icon trademarks both in response to CHS's interrogatories and in the amended claim chart that it offered to provide to address CHS's concerns about the vagueness of the trademark allegations and that it incorporated in response to those interrogatories.[11] GW did not identify any citations to its pleadings or interrogatory responses (including its claim charts) that disclosed the Icon Marks. Instead, GW for the first time identified the icon marks in the chart it served on Friday (and updated today) by citation to previously unidentified production documents. GW was wrong to imply that it had previously identified the images during discovery.

CHS Interrogatories Nos. 3 and 40 sought the identification of the trademarks CHS was alleged to have infringed along with where and how Chapterhouse infringes each mark. In response to these interrogatories, GW listed over 60 marks and cited to the amended claim chart served on January 14, 2013 in which plaintiff stated that the trademarks at issue were highlighted in yellow. (GW Response to CHS Interrogatories Set 2, Ex. H; GW Response to CHS Interrogatories Set 6, Ex. I). The icon marks were not included in any of these disclosures.

The only time in the course of discovery that GW identified the icon marks (and then only by name, not symbol) occurred in GW's supplemental response to Interrogatory No. 18 (seeking

---

[11] In response to CHS's concerns about the vagueness of GW's trademark assertions, GW offered to identify the asserted marks in the Joint Status Report Regarding Plan for Discovery, filed December 11, 2012:

> "Games Workshop has sought to clarify that only specific trademarks and logos are implicated by the new products and has proposed as an alternative to summary judgment to serve within a reasonable time (approximately January 7, 2013) **an amended version of the claim chart** referenced in Section 1(A)(1) above **identifying for each product the specific trademark at issue**."

(Dkt. 264, FN 5). The Court set January 11, 2013 as the deadline for service of this amended claim chart in its Scheduling Order (Dkt. 265).

dates of first use for the allegedly infringed marks) served January 31, 2013.[12] (GW Supplemental Response to CHS Interrogatories Set Four, Ex. J). GW did not at any time during discovery identify the Icon Marks by reference to any of its production documents, as it now seeks to do in the April 19th Chart. Because GW did not identify the asserted unregistered icon marks during discovery, they should be excluded.

### 2. Even the April 19th Chart is Insufficient

Even if the Court allows identification of the unregistered icon marks by the April 19th Chart, that chart shows symbols that GW could not have used as trademarks. This is one reason that CHS has been asking GW to provide the icon marks all along. After all, to establish trademark use of a mark, a designation claimed as a mark must be used in a manner sufficiently consistent to be understood by the public as an identifying mark. *Sam's Riverside, Inc. v. Intercon Solutions, Inc.*, 790 F.Supp.2d 965, 982 (S.D. Iowa 2011). To create trademark rights, a designation must be proven to perform the job of identification: to identify one source and distinguish it from others. *Id.* GW has not done so here, because there is no ***consistent*** use of any of the images now identified as representing each alleged trademark icon name.

Even after receiving the April 19th Chart, it is unclear whether GW has identified a single, consistent image that Plaintiff contends constitutes each of the icon trademarks. To the contrary, for certain marks Plaintiff apparently could not decide which symbol to include in the chart that it alleged constituted its trademarks. *See* Space Wolves Icon and Legion of the Damned Icon. In addition, the documents cited in support of many of the marks show a variety of different symbols. For the Space Wolves icon, although GW identifies two icons, the documents GW cites depict

---

[12] The Icon Marks are a subcategory of the alleged trademarks added for the first time in the January 31, 2013 interrogatory response that CHS noted at the April 1, 2013 court hearing were never included in the sales data relied upon by the Court in its April 1, 2013 Summary Judgment ruling regarding prior use in commerce.

several other icons: they disclose a wolf skull (PX 102, Hartzell Decl. Ex. K), a side-facing single wolf head on a yellow background (PX 415, Hartzell Decl. Ex. L), a forward-facing half wolf head (PX 511, Hartzell Decl. Ex. M), and a two-headed wolf on a yellow background (PX 962, Hartzell Decl. Ex. N). Plaintiff's own inability to identify and provide supporting use for a consistent icon mark shows at best limited, sporadic, and inconsistent use of the symbols insufficient to identify any protectable mark.

The amended claim chart was similarly cryptic, only stating that "[t]he Space Wolves Chapter's iconography includes wolf skulls, wolf tails and fangs." Dkt. Entry No. 82. Similarly, for the Legions of the Damned icon, GW's supporting documents show a variety of skulls with flames. (PX 839, Hartzell Decl. Ex. O). This does not demonstrate what the alleged trademark looks like and is far from showing that the symbol has been used in a manner sufficiently consistent to be understood by the public as an identifying mark.

As another example, GW identified this black cross symbol as the Black Templars Icon ✳ in the April 19th Chart. In its amended claim chart for the first phase of litigation, GW described the iconography of the Black Templars as "a black cross with a skull at its center." Dkt. 303-11, Entry No. 24. The documents listed in the April 19th Chart disclose multiple iterations of a black cross either with or without a skull at its center, even within individual cited documents including each of the following:



Similarly, the earlier written descriptions of the Blood Angels Icon ("includes blood drops") and the Adeptus Mechanicus Cog Icon ("a skull within a cog") are inconsistent with the image that GW ultimately chose to include in the April 19th Chart.

4851-6862-5939.1

When the Plaintiff cannot even identify any symbol consistently used as a source identifier, CHS cannot be expected to defend against these unidentified marks. For that reason as well, the icon marks should be excluded.

Dated:  April 22, 2013                        Respectfully submitted,
                                          /s/  Jason J. Keener

                                          Jason J. Keener (Ill. Bar No. 6280337)
                                          FOLEY & LARDNER LLP
                                          321 North Clark Street, Suite 2800
                                          Chicago, IL 60654-5313
                                          Telephone:  312.832.4500
                                          Facsimile:  312.832.4700
                                          Email:  jkeener@foley.com

                                          Jonathan E. Moskin
                                          FOLEY & LARDNER LLP
                                          90 Park Avenue
                                          New York, New York 10016
                                          Telephone:  (212) 682-7474
                                          Facsimile:  (212) 687-3229
                                          Email:  jmoskin@foley.com

                                          *Attorneys for Plaintiff*
                                          *Games Workshop Limited*

                                      /s Julianne M. Hartzell

                                 Jennifer A. Golinveaux (CA Bar No. 203056)
                                 Thomas J. Kearney (CA Bar No. 267087)
                                          WINSTON & STRAWN LLP
                                          101 California Street
                                          San Francisco, CA 94111-5802
                                          Phone: (415) 591-1000
                                          Fax: (415) 591-1400
                                          jgolinveaux@winston.com
                                          tkearney@winston.com

                                 Imron T. Aly (IL Bar No. 6269322)
                                 Bryce A. Cooper (IL Bar No. 6296129)

4851-6862-5939.1

WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600
Fax: (312) 558-5700
ialy@winston.com
bcooper@winston.com

Julianne M. Hartzell (IL Bar No. 6275093)
Sarah J. Kalemeris (IL Bar No. 6303644)
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive
Willis Tower Suite 6300
Chicago, IL 60606
Phone: (312) 474-6300
Fax: (312) 474-0448
jhartzell@marshallip.com
skalemeris@marshallip.com

## CERTIFICATE OF SERVICE

I, Jason J. Keener, an attorney, hereby certify that on April 22, 2013, I caused to be filed electronically the foregoing Joint Status Report with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

s/ Jason J. Keener
Jason J. Keener

4851-6862-5939.1