IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC | ) | |
| | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Pursuant to Fed. R. Civ. P. 50(a), Chapterhouse Studios LLC ("CHS") moves for judgment as a matter of law against Games Workshop ("GW") on four issues.

*First*, no reasonable jury could find that CHS infringed GW's trademarks, because trademark infringement requires proof of "likelihood of confusion" and GW gave no such proof. To the contrary, the only GW witness to address the issue, Gillian Stevenson, admitted that "public knowledge afterwards would mean that people *wouldn't* be confused." (Trial Tr. June 6, 2013 at 823:22-23) (emphasis added). Thus, CHS is entitled to judgment as a matter of law as to trademark infringement, and on GW's related state-based and post-sale confusion claims.

*Second*, a reasonable jury could not find that CHS infringed some of GW's trademarks, because trademark infringement requires proof that the mark was used as more than just a term or entry in a book. Yet several of GW's asserted trademarks, like "Ymgarl" are nothing more than entries in an encyclopedia, and are not trademarks. Therefore, CHS is entitled to judgment as a matter of law as to trademark infringement as to these terms somewhere inside a book.

*Third,* a reasonable jury could not find that CHS infringed GW's copyrights, because GW did not prove any of its works were "original"—and in fact called no product designers to

establish this essential fact. The only GW witness to address the issue, Alan Merrett, admitted that he was not the designer of the products and could not testify to resources used by the designers that would warrant a finding of which aspects were original. (Trial Tr. June 4, 2013 at 390:3-5) ("Q: So you were not the individual who's identified as the designer? A: No. That's Correct. I'm Not."); (*Id*. at 390:18-19) ("I said I could not testify to every source the designers used.") Judgment is required on this basis, as well.

*Fourth*, judgment as a matter of law is required as to the claims GW dropped during trial.

### ARGUMENT

Under Rule 50(a), a court may resolve an issue against a party if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Conversely, to *deny* a Rule 50(a) motion, the court must find that the non-moving party presented enough evidence that a reasonable jury could find in its favor. *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 578-79 (7th Cir. 2003). GW falls short of this standard on four scores.

**I.    CHS Is Entitled To Judgment On The Trademark Infringement Claims Because GW Failed to Provide Evidence From Which a Reasonable Jury Could Find a Likelihood of Confusion.**

To prevail on a claim for trademark infringement, GW must prove that the use of its marks is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1) (2006). GW must further prove that such confusion was likely with the target audience, namely "a significant number of people who buy or use, consider buying or using, the product or similar products." (Pretrial Order at ¶35); *McGraw-Edison Co. v. Walt Disney Prod.*, 787 F.2d 1163, 1169 (7th Cir. 1986). The same requirement applies to GW's state-based trademark and post-sale confusion claims. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 679 (7th Cir. 2001) (post-sale confusion); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill 1994)

("Claims for unfair competition and deceptive business practices brought Under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act."). GW has produced no such evidence, and thus judgment should be granted against its trademark claims.

> A. **GW Failed To Provide Evidence From Which A Reasonable Jury Could Find a Likelihood of Confusion.**

As its only witness on the issue of confusion, GW offered the testimony of Ms. Gillian Stevenson, who admitted that GW presented no evidence of confusion. She testified unequivocally on all products added in the second phase of the case, namely products 128-163 (see PEX 1021). Indeed, when asked, Ms. Stevenson plainly admitted that she hadn't presented any evidence of confusion as to the products added in the second phase of the case." (Trial Tr. June 6, 2013 at 804:4-7) More generally, she offered no evidence "that any ***customers*** ever found these two products confusing" other than offering her own personal opinion. (*Id*.) (emphasis added).

And Ms. Stevenson did not even offer evidence of confusion by any ***United States*** consumer as to products from the first phase of the case (products 1-127). (*see* PEX 1020). She discussed two foreign eBay postings (*Id*. at 801:5-19) and emails from foreign customers (*Id*. at 818:4-18; 820:17-821:11), but those do not show impact on consumers in the United States or Illinois, which is the scope of GW's trademark claims. *See* 15 U.S.C. § 1127(1); 815 ILCS 510/2 (2001). Moreover, none of the three emails referred to any GW mark alleged in this case. *See* PEX 1023; (Trial Tr. June 6, 2013 at 818:4-821:11). Thus, even if these consumers had been from the United States, the emails still did not reveal any likelihood of confusion as to any asserted trademark.

Indeed, Ms. Stevenson confirmed that customers were ***not*** confused, acknowledging to her lawyer in response to a similar email: "another one who is clearly not confused, exclamation

3

point." (*Id*. at 822:22-23) (referring to the exhibit marked DEX 171). Ms. Stevenson also acknowledged that the most recent such email was more than three and a half years ago, (*Id*. at 824:25-825:5), and significant co-existence without actual confusion is itself evidence of no likelihood of confusion. *Autozone, Inc. v. Strick*, 2010 WL 883850 at *5 (N.D.Ill. 2010). Indeed, when parties can coexist in the market without confusion for an extended period of time, the likelihood of confusion is low. *See Id*.; (Trial Tr. June 6, 2013 at 803:6-12) (noting that CHS and GW have coexisted in the market for five years).

And after all that, Ms. Stevenson affirmatively disavowed *any* likelihood of confusion—admitting that GW did not perform any consumer surveys regarding confusion (*Id*. at 802:7-20) and affirmatively stating that there was no likelihood of confusion given the public attention trained on this case. (*Id*. at 823:19-23) ("Q: And what is the relevance of [the fact that the three emails presented to demonstrate consumer confusion predated the Complaint]? A: **Well, the public knowledge afterwards would mean that people wouldn't be confused**.") (emphasis added). Because GW has offered no evidence of relevant confusion and affirmatively disavowed any likelihood of confusion, as to any trademark claimed in this case, judgment should be entered in CHS's favor on GW's trademark claims.

Although Ms. Stevenson also offered a side-by-side comparison chart of GW and CHS products as purported evidence of confusion, (*Id*. at 813:10-815:20), she openly acknowledged that the chart was never shown to a single consumer. (*Id*. at 813:13-18) ("Q: But you haven't offered any evidence that customers have ever been confused by these two products, have you? A: Well, they haven't seen these two images side by side, so they couldn't be."). She also conceded that the images in these charts do not depict any GW trademarks claimed in this case.

(*Id*. at 813:11-12) ("A: This isn't being offered for sale, so there is no trademark on it."); (*Id*. at 813:16-17; 815:10-12) (same).

GW's trademark claims also fail for the independent reason that GW was required to prove trademark infringement on a mark-by-mark basis. (Pretrial Order at ¶35; *Huish Detergents, Inc. v. Orange Glo Int'l, Inc*., 2002 WL 32157171 at *4 (D. Utah Nov. 6, 2002) (citing *Teaching Co., Ltd. P'ship. v. Unapix Entm't., Inc.*, 87 F. Supp. 2d 567, 575 (E.D. Va. 2000) ("To prevail on its claims of trademark infringement, [plaintiff] must establish the following for each of its trademarks (and trade dress) which it claims was infringed: first, that it has a valid, protectable trademark, and second, that [defendant's] product is likely to cause confusion among users."). The proposed jury instruction on the elements of trademark infringement uses singular tense to describe Plaintiff's burden, referring to Plaintiff's "mark" not "marks." (Pretrial Order at ¶35.) Here, GW asserts approximately 80 trademarks,[1] including words like "space marine" and "assault cannon," and was required to prove a likelihood of confusion as to each word. GW did not even attempt to do so.

Under these circumstances, no reasonable jury could find a likelihood of confusion—as to any asserted trademark. Accordingly, CHS is entitled to judgment as a matter of law on GW's trademark claims.

> **B.    This Failure To Prove Confusion Also Applies To GW's State-Based Trademark and Post-Sale Confusion Claims.**

For substantially the same reasons, GW's state-based trademark claim and post-sale confusion claims should be dismissed. Without evidence from which a reasonable jury could find a likelihood of confusion, there is no basis for these claims. *Spex, Inc.*, 847 F. Supp. at 579

---

[1] Mr. Jones stated that there were approximately 83 trademarks at issue on PEX 1023 (Trial Tr. June 5, 2013 at 650:6-19). As stated below, per the agreement of the parties, GW has agreed to drop seven of its trademark claims, and added four terms to PEX 1023 that were not included when Mr. Jones originally testified.

("Claims for unfair competition and deceptive business practices brought Under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act.").

## II. CHS Is Entitled To Judgment On Several Trademark Infringement Claims Because GW Failed to Provide Evidence Of Sufficient Use From Which A Jury Could Find a Valid Trademark.

Several of GW's trademark infringement claims should be dismissed as a matter of law because trademark protection does not extend to marks only referenced within books. *See generally* McCarthy on Trademarks & Unfair Competition § 10:38 (4th ed.1996); *In re Caserta*, 46 U.S.P.Q.2d 1088, 1998 WL 148715 at *2 (T.T.A.B. 1998). For this reason, GW has failed to carry its burden on these marks:

- "Tyranid Bonesword"
- "Tyranid Lashwhip"
- "Mycetic Spore"
- "Ymgarl"
- "Blood Ravens"
- "Exorcist"
- "Tervigon"
- "Exorcist Skull Icon"
- "Howling Griffons Icon"
- "Iron Snakes Icon"
- "Soul Drinkers Icon"
- "Scythes of the Emperor Icon"
- "Hammer of Dorn Icon"

6

Trademark protection is not granted to a mark that is only referenced in books or used as the name of a character in a literary work. McCarthy on Trademarks & Unfair Competition § 10:38 (4th ed.1996); *In re Caserta*, 1998 WL 148715 at *2. The Trademark Trial and Appeal Board of the U.S.P.T.O. found in *In re Caserta* that trademark protection is not warranted for the lead character of a book even if it appears by name and in artwork on every page of that book. *In re Caserta*, 1998 WL 148715 at *2. The mere fact that a character appears in a book only serves to identify the character, rather than to distinguish the term as a trademark. *Id*. The basic principle is this: if the word is somewhere inside a book, then it did not help sell the book.

Similarly, trademark protection is not given to the name of a race of characters. McCarthy on Trademarks & Unfair Competition § 10:38 (4th ed.1996); *Paramount Pictures Corp. v. Romulan Invasions*, 7 U.S.P.Q.2d 1897, 1988 WL 252376 at *3 (T.T.A.B. 1988). In *Paramount*, the U.S.P.T.O refused trademark protection to a race of science fiction characters called "Romulans." *Id*. 1988 WL 252376 at *1. Appearance by "Romulans" in several episodes of the Star Trek television show, a Star Trek novel, and Star Trek movies was insufficient to protect the mark. *Id*. at *3.

GW has not demonstrated any use of the listed terms other than as references or, at best, characters within their books. Mr. Jones, testifying on behalf of GW, specifically admitted that GW did not present any evidence that it has used any of the above marks outside of a book. Trademark law demands a more prominent usage for the exact reason stated by Mr. Jones:

> How can I say why our customers are buying things. They buy our products for a whole range of reasons. I'm sure they pick them up and thumb through the artwork and the characters, and all of that together is what makes them decide to buy or not buy our product.

(Trial Tr. June 5, 2013 at 669:24-670:3).

Mr. Jones admitted that the terms "Mycetic Spore" (*Id.* at 668:17-670:5); "Ymgarl" (*Id.* at 670:15-671:1); "Bonesword" (*Id.* 671:2-672:2); and "Lashwhip" (*Id.*) all only appear in the Tyranid Codex. Since the Tyranid Codex is a book published by GW, and there is no other use of these terms, GW has failed to demonstrate trademark use of these terms. *See* McCarthy on Trademarks & Unfair Competition § 10:38 (4th ed.1996); *In re Caserta*, 1998 WL 148715 at *2; *Paramount*, 1988 WL 252376 at *3.

GW has also not presented any evidence, other than an appearance in a book, regarding the remaining disputed trademarks: "Blood Ravens," "Exorcist," "Tervigon," "Exorcist Skull Icon," "Howling Griffons Icon," "Iron Snakes Icon," "Soul Drinkers Icon," "Scythes of the Emperor Icon," and "Hammer of Dorn Icon." This failure by GW to meet its burden of proof entitles CHS to judgment as a matter of law.

### III. GW's Copyright Claims Must Be Dismissed Because It Has Not Proved Its Expressions were Original.

GW's copyright claims must be dismissed as a matter of law because copyright protection only extends to "original works of authorship," (17 U.S.C. § 102), as required by the Constitution. *Feist Publ'n., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 347 (1991). As the parties stipulated, GW bears the burden of proof on the issue of originality. (Pretrial Order, Dkt #331 at ¶13, 14, Mar. 29, 2013.) GW wholly failed to carry its burden.

Originality requires that a work was independently created by the author and that it possesses some degree of creativity. *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 723 (7th Cir. 1995) (relying on *Feist*, 499 U.S. at 347). To testify on this issue, GW called Mr. Alan Merrett (Trial Tr. June 4, 2013 at 388:18-20), but Mr. Merrett testified that he did not design the unregistered copyrights. (*Id.* at 390:3-5) ("Q: So you were not the individual who's identified as the designer? A: No. That's correct. I'm not."). Thus, Merrett lacked personal knowledge of the

8

references or process GW designers used (*id*. at 391:1-12). As a result, all he could offer was that, as design manager, he told his designers to "generate original ideas" (*id*. at 391:7-8). But he did not, and could not, prove that any unregistered copyrighted elements were original. (*Id*. at 390:16-21; 391:11-12).

Even if a copyright is registered, moreover, the party asserting ownership is only entitled to a rebuttable presumption of originality, meaning that the alleged owner still has the burden of persuasion at trial. *See Mid Am. Title Co.*, 59 F.3d at 723 (affirming grant of the defendant's motion for summary judgment when the plaintiff, despite having a registered copyright, could not meet its burden of showing a creative spark sufficient to constitute originality). Here, Mr. Merrett's inability to provide anything other than conclusory allegations fails to meet the burden. (*Id*. at 390:16-21; 391:11-12). Merrett has no personal knowledge of the activities or processes used by his designers. (*Id*. at 391:1-12). His lack of knowledge on this issue renders him incompetent to give testimony. *See* Fed. R. Evid. 602.

Lacking any evidence of originality, the copyright claims must be dismissed, as to both GW's registered and unregistered copyrights.

**IV. GW Conceded Certain Copyright and Trademark Issues at Trial, Therefore Judgment Must be Entered for Defendant on these Claims.**

Judgment as a matter of law should be granted here because GW's admissions at trial demonstrate: (1) that it is no longer alleging any copyright claims arising from products 6 and 9, (*see* Claim Chart marked as PEX 1020); and (2) that GW has failed to demonstrate that the below-listed marks have been used in a manner sufficient to justify trademark protection. Judgment as a matter of law is appropriate against a party that admits that its allegations were unsubstantiated and it has no claim. *See* Fed R. Civ. P. 50(a); *Barnhill v. City of Chicago*, 2001 WL 243410 at *16 (N.D.Ill. Mar. 12, 2001); *Hayden v. La-Z-Boy Chair Co.*, 838 F.Supp. 384,

9

388 (N.D.Ind. 1992). That is the case here.

On cross examination, the head of intellectual property at GW, Mr. Merrett, freely admitted that GW has no legitimate copyright claim against product 6, the "Celestial Lion":

> Q: And you allege that the lion shown in the Chapterhouse product infringes the imagery of the Celestial Lions?
>
> A: No, I didn't.

(Trial Tr. June 4, 2013 at 423:2-4.) Likewise, Merrett admitted that GW has no legitimate claim as to product 9, the "Deathwatch Ruinic:"

> Q: Look at the product identified as product nine. On the left-hand is the shoulder pad product from Chapterhouse, correct?
>
> A: Yes, I suppose. I'm not familiar with that one.
>
> Q: And on the right-hand side is an image from Games Workshop?
>
> A: Yes.
>
> Q: Is it your contention that the Chapterhouse product copies from this Games Workshop product?
>
> A: No. I can't remember – that's probably – . . .
>
> Q: So you have no copyright claim against that product?
>
> A: No. It's not in the claim.

(*Id*. at 423:13-424:2.)

By conceding that there is no copyright infringement, no reasonable jury could find in favor of GW as to these claims, which must be dismissed as a matter of law.

Furthermore, other GW admissions make it clear that some of its trademark claims are fatally flawed. Mr. Jones, testifying about trademarks on behalf of GW, admitted that GW

presented no evidence that CHS infringed its "Aquila" or "Eagle" icons. (Trial Tr. June 6, 2013 718:11-14). As Mr. Jones also stated, no CHS product uses the phrase "Striking Scorpion." (Trial Tr. June 5, 2013 at 651:16-22). Because GW admits these marks are never used by CHS, there can be no viable claim for infringement and therefore CHS is entitled to judgment as a matter of law.

Finally, on June 4, 2013, the parties agreed to drop several claims for trademark infringement. Chapterhouse has not infringed any alleged GW trademark with respect to the following marks identified in GW's Fourth Supplemental Response to Interrogatory Set No. 4, Interrogatory No. 18: (1) Games Workshop; (2) GW; (3) Cadian; (4) Eldar Seer Council; (5) MK II Armor; (6) Melta; and (7) "Plasma." Pursuant to this agreement between the parties, CHS respectfully requests the that Court enter judgment in its favor as to these terms.

For the foregoing reasons, Chapterhouse Studios LLC respectfully requests that the Court grant its Motion for Judgment as a Matter of Law and: grant judgment in favor of CHS on GW's claims of trademark infringement (and related claims) and copyright infringement, as stated above.

Dated: June 12, 2013　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　/s/ Bryce A. Cooper

　　　　　　　　　　　　　　　　　　　Jennifer A. Golinveaux (CA Bar No. 203056)
　　　　　　　　　　　　　　　　　　　Thomas J. Kearney (CA Bar No. 267087)
　　　　　　　　　　　　　　　　　　　　WINSTON & STRAWN LLP
　　　　　　　　　　　　　　　　　　　　101 California Street
　　　　　　　　　　　　　　　　　　　　San Francisco, CA 94111-5802
　　　　　　　　　　　　　　　　　　　　Phone: (415) 591-1000
　　　　　　　　　　　　　　　　　　　　Fax: (415) 591-1400
　　　　　　　　　　　　　　　　　　　　jgolinveaux@winston.com
　　　　　　　　　　　　　　　　　　　　tkearney@winston.com

        Imron T. Aly (IL Bar No. 6269322)
        Bryce A. Cooper (IL Bar No. 6296129)
          WINSTON & STRAWN LLP
          35 West Wacker Drive
          Chicago, IL 60601-1695
          Phone: (312) 558-5600
          Fax: (312) 558-5700
          ialy@winston.com
          bcooper@winston.com

        Julianne M. Hartzell (IL Bar No. 6275093)
        Sarah J. Kalemeris (IL Bar No. 6303644)
          MARSHALL, GERSTEIN & BORUN LLP
          233 S. Wacker Drive
          Willis Tower Suite 6300
          Chicago, IL 60606
          Phone: (312) 474-6300
          Fax: (312) 474-0448
          jhartzell@marshallip.com
          skalemeris@marshallip.com

## **CERTIFICATE OF SERVICE**

      I, Bryce A. Cooper, an attorney, hereby certify that on June 12, 2013, I caused to be filed electronically the foregoing DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                                                 /s/ Bryce A. Cooper