IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>               Plaintiff,<br><br>       v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES<br><br>               Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly |

**JOINT STATUS REPORT FOR ENTRY OF PERMANENT INJUNCTION**

The parties respectfully submit the following joint status report in connection with the Court's request that the parties propose language to be used in a permanent injunction against Chapterhouse for the Games Workshop copyrights and trademarks found to be infringed. Games Workshop submits that the Court should enter the permanent injunction attached as Exhibit A. Chapterhouse submits that the Court should enter the permanent injunction attached as Exhibit B.

There are four substantive differences between the parties' proposed injunctions: (a) whether entry of this permanent injunction constitutes final judgment in this case; (b) whether Chapterhouse should be enjoined from preparing derivative works of products found to be infringing Games Workshop's copyrights; (c) whether Chapterhouse should be enjoined from using Games Workshop's trademarks in places other than a product name; and (d) whether Chapterhouse should be required to turn over to counsel for Games Workshop its inventory, molds, and other means of making the infringing products.

    **1.**      **Final Judgment**

          a.      <u>Games Workshop Position</u>

Final judgment is a judgment that ends the litigation on the merits for all claims and all parties. The judgment entered by the Court as Docket # 403 resolved all of the outstanding claims between the parties with the sole exception of Games Workshop's right to injunctive relief. Upon entry of this permanent injunction, this claim has also been resolved; thus, the litigation has ended on the merits for all claims and all parties. The mere fact that one or both parties may file a motion to alter or amend that judgment, or for a new trial, under Federal Rule of Civil Procedure 59 does not change that fact. Instead, such a motion under Rule 59 (or Rule 60) merely tolls the time to file a notice of appeal. The fact that the Court set a date for the filing of any Rule 59 motions does not alter the finality of this judgment.

    b.   <u>Chapterhouse Position</u>

Chapterhouse does not object to entry of a final judgment or to the use of those words on the document, since judgment has already been entered. Chapterhouse only wishes to make clear that the "final judgment" does not consist of an only an injunction against those products or trademarks which the jury found to have infringed. Instead, the final judgment should also make clear that the injunction does not apply to non-infringing products. Thus, Chapterhouse's version simply adds a reference to the previously entered judgment into the proposal.

  **2.**   **Derivative Works**
 a.   <u>Games Workshop Position</u>

Chapterhouse was found to infringe a number of Games Workshop's copyrights with respect to 49 separate Chapterhouse products. (Dkt. # 403). Accordingly, Games Workshop is entitled to a permanent injunction enjoining Chapterhouse from any further infringement of Games Workshop's various copyrights that the jury found were infringed with respect to these products. Games Workshop's proposed injunction is narrowly tailored to achieve this result by seeking to enjoin Chapterhouse from "reproducing, distributing, displaying, preparing derivative works, selling or

2

otherwise infringing any of Games Workshop's copyrights with respect to" the Chapterhouse products found to be infringing. Chapterhouse's dispute with this proposed language centers solely around the inclusion of "preparing derivative works" as one of the prohibited activities. Chapterhouse should be precluded from preparing derivative works of Games Workshop's infringed copyrights for three reasons:

First, the right to prepare derivative works is one of the essential rights of a copyright holder. 17 U.S.C. § 106. Chapterhouse has been found to have already infringed on Games Workshop's copyrights with respect to these products. Games Workshop is entitled to a permanent injunction against any further infringement of Games Workshop's copyrights, with respect to any of the rights of a copyright holder, with respect to these products. Chapterhouse does not dispute this in principle but only selectively with respect to one of the rights specified in 17 U.S.C. § 106.

Second, striking the phrase "preparing derivative works" does not substantively change the injunction. Chapterhouse has is not objecting to the language "or otherwise infringing any of Games Workshop's copyrights." Thus, as "preparing derivative works" based on Games Workshop's copyrights is an infringement, Chapterhouse's objection to the inclusion of the specific prohibition in the list of prohibited activities is illusory at best and perhaps inserts ambiguity in the injunction.

Third, Chapterhouse's perceived objections to this phrase are misplaced. Chapterhouse has asserted that it has a right to make derivatives of its own works. However, Games Workshop is not seeking a categorical prohibition of Chapterhouse creating any derivatives of its own products. The language proposed by Games Workshop prohibits Chapterhouse from preparing any derivative of Games Workshop's copyrights with respect to Chapterhouse's infringing products. For example, Chapterhouse's Exorcist shoulder pads were found to infringe Games Workshop's copyrights (Products 10 and 11). Games Workshop's proposed language prohibits Chapterhouse from creating

3

any products that are derivative works of the underlying Games Workshop's copyrights infringed by Chapterhouse's Exorcist shoulder pads. The proposed injunction doe not prohibit Chapterhouse from creating a new shoulder pad that is somehow derived from its Exorcist shoulder pads but are not derivatives of Games Workshops copyrights.

Chapterhouse's position seems to depend on a misreading of the proposed injunction. Games Workshop believes the language is clear that it is directed specifically to limiting future infringement by Chapterhouse of the *Games Workshop* copyrights at issue in the case. (Hence it says that Chapterhouse and those associated with it are enjoined from "Reproducing, distributing, displaying, preparing derivative works, selling or otherwise infringing any of *Games Workshop's copyrights* ...") So long as Chapterhouse is not infringing these works, it is free to make new works derivative of its own works, but otherwise would be enjoined from further infringement. If that is at all unclear, then Games Workshop would be happy to clarify the injunction.

b.  Chapterhouse Position

By adding the phrase "preparing derivative works" to the scope of the injunction, Games Workshop is over-reaching in two ways.

First, if Games Workshop's version of the injunction were adopted, then Chapterhouse could not make derivative works of *Chapterhouse's* own products. There is no reference to any actual Games Workshop copyrights. Paragraph 1(a) of the proposal only refers to Chapterhouse products, as those that it can no longer sell or display. That much is clear. But if Chapterhouse is also prohibited from "preparing derivative works" of those products, then Chapterhouse could literally not make products derived from its own creation. Using Games Workshop's example, Chapterhouse created its own version of an Exorcist shoulder pad. While Chapterhouse could not use Games Workshop's Exorcist, and cannot use the shoulder pad the jury found to have infringed,

4

Chapterhouse should be able to make derivative works of its own product so long as they do not infringe Games Workshop's copyright.

Second, if "preparing derivative works" is added, the injunction would be vague because it does not explain which protectable elements can and cannot be used as the basis for derivative works. For example, we know from the jury's verdict that Chapterhouse can still sell the bulk of its shoulder pad products. But some of the enjoined products are shoulder pads. Under Games Workshop's proposal about "preparing derivative works," it would be unclear whether the scope of the injunction includes other shoulder pads, even though it is clear from the jury's verdict and the judgment already entered in this case that Chapterhouse can sell other shoulder pads. Thus, Games Workshop should not be allowed to add "preparing derivative works" to the scope of the injunction, at least without first identifying which elements are supposedly protectable. When asked to send any clarification to address this issue, short of removing this phrase, Games Workshop stated only that it would wait for the Court to offer clarifications.

### 3. Trademark Usage Outside of Product Names

#### a. Games Workshop Position

Chapterhouse was found to infringe thirty-eight of Games Workshop's trademarks with respect to a large number of Chapterhouse's products. (Dkt. # 403). Some of these infringed trademarks were used in various names of Chapterhouse's products. (*See e.g.* PEX 1020 at Product 37 – "Tervigon") Some of these infringed trademarks were solely used in descriptions of Chapterhouse's products. (*See e.g.* PEX 1020 at Product 19 – "Legion of the Damned") Some were used in both the name and the description of the product. (*See e.g.* PEX 1020 at Product 1 – "Thunder Hammer") Finally, some of these infringed trademarks are icons which were sculpted on as part of a number of Chapterhouse's products. (*See e.g.* PEX 1020 at Product 17 – "Iron Snakes Icon"). Games Workshop is entitled to a permanent injunction enjoining Chapterhouse from any

5

further infringement of Games Workshop's trademarks. Thus, Games Workshop's proposed language enjoins Chapterhouse from "using any of the [infringed trademarks] to name or identify its products, or in any other manner that is likely to cause confusion, to cause mistake, or to deceive."

Chapterhouse's proposed language only prohibits the use of the infringed trademarks in the names of Chapterhouse's products. Such a narrow injunction is improper for two reasons.

First, such a narrow injunction does not stop the conduct found to be infringing by the jury. As described above, Chapterhouse was found to infringe a number of Games Workshop trademarks where the mark was not used in the products name but was otherwise used to identify the products in the description, on a forum, on an ebay page or otherwise. Chapterhouse's narrow injunction would allow Chapterhouse to continue its infringement of these trademarks. Additionally, Chapterhouse was found to infringe almost all of the trademark icons at issue in the case. None of these icons were used in the names of Chapterhouse's products. Instead, the icons are sculpted on top of numerous Chapterhouse products. Thus, the injunction must prohibit Chapterhouse from continuing to sell products that display Games Workshop's icon trademarks. Chapterhouse's narrow injunction would allow Chapterhouse to continue its infringement of these icon trademarks. Chapterhouse's suggestion that it can continue to sell products found to infringe Games Workshop's icon trademarks as long as the product name does not infringe a separate Games Workshop trademark is unsupported by any legal theory and renders utterly meaningless a significant part of the jury verdict. Under Chapterhouse's logic, a shoemaker would be able to sell shoes displaying the Nike "swoosh" as long as the shoemaker did not include the word "Nike" in the name of the shoe. Such is not the law. Nor is it in keeping with the actual jury verdict.

Second, Chapterhouse's narrow injunction does not protect Games Workshop from Chapterhouses continued infringement of Games Workshop's trademarks. Trademark infringement does not require the infringed trademark to be used in a product name. Instead, trademark law

6

protects against any use of a trademark that is likely to cause confusion, to cause mistake, or to deceive. 15 U.S.C. § 1114, 1116, 1125. This is exactly the scope of injunction sought by Games Workshop: simply to reflect the letter of the law. For those trademarks found to be infringed by Chapterhouse (even those used solely in the names of Chapterhouse products), Chapterhouse should not be permitted to remove the use of the trademark in the name of the product but then use the same trademark in some other way that is also likely to cause confusion, to cause mistake, or to deceive. Chapterhouse's proposed injunction would require additional lawsuits by Games Workshop for Chapterhouse's use of these same trademarks in eBay sales, in forum posts, or in its product descriptions. Games Workshop's proposal prohibits such trademark infringement, allowing Games Workshop to stop such activities by Chapterhouse through a motion for contempt instead of the lengthy and costly process of new lawsuits for trademarks already found to be infringed by Chapterhouse.

Chapterhouse's position seems to depend on a radical revision of the *actual evidence* presented at trial and a new theory that it never previously articulated to the Court or the jury. In particular regarding the icon marks, the parties agreed on a summary exhibit (PX 1019). The chart identified the icon marks and showed, *solely by pictures*, the specific icons Games Workshop claimed were infringed as well as the specific uses by Chapterhouse that were deemed infringing. Chapterhouse now contends that merely because the verdict form incorporated the names used by the parties to identify the icons, the icons themselves should now be transformed into combined word and icon marks instead. There is no evidence the icon marks have ever been used as such combined word/logo marks, and Games Workshop has never contended that its icon marks are anything other than icons. Not only is Chapterhouse's novel new theory wholly at odds with the evidence, but Chapterhouse at no point expressed any such view during the charging conference when the Court largely adopted the verdict form prepared by Games Workshop.

7

Moreover, contrary to Chapterhouse's reading of the injunction, nothing prohibits it from making fair use of Games Workshop trademarks in its product descriptions (as distinct from the product titles). To the contrary, it only prohibits uses that are likely to cause confusion, which is simply the flipside of fair use and a restatement of the basic law of trademark infringement.

  b. <u>Chapterhouse Position</u>

Yet again, Games Workshop is over-reaching. The jury found that the *way* Chapterhouse used certain Games Workshop words and icons was infringing. The jury did not find, as a blanket rule, that Chapterhouse could not use any Games Workshop words and icons. To the contrary, the jury agreed that many words and phrases used to describe products and describe compatibility was completely appropriate. This is consistent with the law of nominative fair use, and is consistent with Andy Jones' own testimony, the Games Workshop witness who agreed that Chapterhouse could say "compatible with" and name a Games Workshop product. With its proposed injunction, however, Games Workshop now wants Chapterhouse to completely erase certain words and icons from its vocabulary, regardless of how those words and icons are used. That is improper for two reasons:

First, the jury found that Chapterhouse could use Games Workshop trademarks to describe compatibility and functionality in the product description. With only sparing exceptions, if an alleged trademark appeared only in a description (as opposed to the product title), then the jury found that either Chapterhouse did not infringe or that Chapterhouse had fairly used the trademark. There were exceptions, such as "Adeptus Mechanicus," and we asked Games Workshop to make a list of exceptions that Chapterhouse would not use. But Games Workshop did not comply. Chapterhouse should be allowed to modify its product descriptions and use Games Workshop trademarks to accurately reflect that Chapterhouse's products are "compatible with" or "work well with" or "fit with" Games Workshop products, by referring to those products by name. That is the

8

essence of fair use, and that is consistent with the jury verdict. Games Workshop's request for an absolute prohibition goes too far.

Second, there is a dispute as to icon marks. According to Games Workshop, Chapterhouse cannot use any image of an icon that the jury found to have infringed. There are two problems with this approach. First, the verdict form does not list only icons – it lists icons in combination with trademarked names or labels. For example, for Trademark 62, the jury verdict form included this entry:



Thus, the jury was not asked whether the icon *by itself* infringed. The jury was presented with the *combination* of the icon plus the name of the icon, and found infringement and no fair use. Thus, per the verdict form that Games Workshop submitted, Chapterhouse cannot use the "X" mark on a shoulder pad in combination with the name "Space Marine Assault Squad Icon." But Chapterhouse can and should be allowed to sell shoulder pads with X's on them. That is the only way to reconcile the jury verdict which, for *copyright* claims on this very same product and image, the jury agreed was a fair use of Games Workshop's icons and could be used. This is product "48" on the copyright allegations (from PX 1020):

And this is the jury verdict entry for product 48:

9

Putting these together, the jury agreed that Chapterhouse could continue to sell these pads, including with images on its website such as the one depicted here, but could *not* call them a "Space Marine Assault Squad Icon." Games Workshop's proposal thus goes too far, essentially contradicting the jury verdict, which specifically found Chapterhouse could make and sell pads with an "X" on them.

The same is true for virtually every other icon mark, namely Trademark Claims 53 (Flesh Tearers – the sawblade), 54 (Imperial Fist – a fist), 55 (Legion of the Damned – a skull), 57 (Space Marine Tactical – an arrow), 59 (Iron Hands – a metal hand), 60 (Space Wolves – a wolf), and 61 (Salamanders – a dragon head). Rather, Chapterhouse cannot infringe the *trademark* at issue, meaning that it cannot refer to the name and icon in combination, which is precisely what the verdict form reflects. But it should be allowed to continue using the copyright, including the images on its website of icons on shoulder pads, because the jury agreed those do not infringe. Games Workshop should not be allowed to convert its losses on all of those copyright claims into a win through the magic of its wording in an injunction order.

   **4.**  **Chapterhouse Inventory and Molds**
    a.  <u>Games Workshop Position</u>

Both copyright law and trademark law contemplate that an infringer such as Chapterhouse be required to surrender to the intellectual property owner, Games Workshop, possession of the infringing products and the means of making them for destruction. 17 U.S.C. § 503; 15 U.S.C. § 1116. For the Chapterhouse products found to infringe Games Workshop's copyrights, this would include any inventory, molds, masters, or other means of making the products. For the infringed Trademarks, this would include any product packaging that includes the infringed trademarks or any products that contain the infringed trademarks as well as any masters used in their production.

10

Notably, for the icon trademarks, this would include any products that contain Games Workshop's icons.

Chapterhouse's proposed language should be rejected for two reasons.

First, Chapterhouse's proposed language provides the inventory, molds, and other materials to Chapterhouse's counsel, not to Games Workshop's counsel. Chapterhouse makes this request because it intends to appeal. Games Workshop's counsel has discussed with Chapterhouse's counsel that it may be willing to allow Chapterhouse's counsel to hold these materials and not destroy them until after all appeals are exhausted. Chapterhouse's concern that counsel for Games Workshop may mishandle the materials misses the point that the final judgment and injunction must provide finality. Leaving the infringing products with Chapterhouse's agents does not provide such finality. Indeed, unless Games Workshop were to enter such an agreement voluntarily or Chapterhouse were to obtain a stay, the infringing products would be destroyed now. Although Games Workshop is not seeking to rush to destroy any items prematurely, Games Workshop should not be required to seek modification of the judgment to allow later destruction of these items if the judgment is upheld; rather, because the judgment is presumed valid it is Chapterhouse that should later seek modification of the judgment if it prevails in whole or in part on appeal.

Second, Chapterhouse's proposed language fails to cover any materials found to infringe Games Workshop's trademarks. While certain products that infringe Games Workshop's trademarks might still be able to be sold by Chapterhouse after changes are made to the products' names and descriptions, there are other products that were sculpted to contain Games Workshop's icon trademarks. Chapterhouse's proposed language would allow Chapterhouse to retain and possibly continue selling these products that have been found to infringe Games Workshop's icon trademarks. Using the shoe example described above, a company found to infringe Nike's

4817-5314-5364.3

"swoosh" on shoes should not be able to keep its inventory and means of continuing to make shoes incorporating the Nike "swoosh."

Chapterhouse's position seems to depend on conflating the language of the proposed injunction with a possible accommodation the parties might be able to reach to permit Chapterhouse to appeal without seeking a stay or partial stay pending appeal.

      b.     <u>Chapterhouse Position</u>

There are two disputed issues with respect to molds and products to be turned over to Games Workshop.

First, Games Workshop asks that its lawyers receive custody of Chapterhouse's molds and products that were found to infringe. The problem with this approach is that such molds and products can be easily, if inadvertently, misplaced or mishandled. Thus, at least pending appeal, Chapterhouse should be allowed to have its own counsel maintain custody of molds and products that were found to infringe. If the appeals do not change the outcome, then Chapterhouse's counsel could simply destroy the molds and products or release the products to Games Workshop. Games Workshop has not explained any objection to this procedure, and to avoid the risk of mishandling, the products should stay within Chapterhouse's counsel's custody. Alternatively, if Games Workshop has some concern with that approach, it can agree to pay to escrow the products in a third party depository pending appeal. When asked why these proposals could not be accepted, Games Workshop said it needed additional input from the client to accommodate a side deal.

Second, Games Workshop's proposal asks for products where only a trademark usage was at issue. As discussed above, Games Workshop did not win on a blanket prohibition that precludes Chapterhouse from using Games Workshop's trademarks. The issue is *how* Chapterhouse uses those marks. While Chapterhouse will have to remove current trademark references that were found to infringe, that does not mean Chapterhouse cannot use those references at all, or that it has

12

to destroy the products that were previously sold by using a particular trademark reference. Again, Games Workshop's proposal goes too far.

Dated: July 11, 2013

Respectfully submitted,
/s/ Jason J. Keener

Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: jkeener@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-3229
Email: jmoskin@foley.com

*Attorneys for Plaintiff*
*Games Workshop Limited*


/s/ Imron Aly
Jennifer A. Golinveaux (CA Bar No. 203056)
Thomas J. Kearney (CA Bar No. 267087)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5802
Phone: (415) 591-1000
Fax: (415) 591-1400
jgolinveaux@winston.com
tkearney@winston.com

Imron T. Aly (IL Bar No. 6269322)
Bryce A. Cooper (IL Bar No. 6296129)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600
Fax: (312) 558-5700
ialy@winston.com
bcooper@winston.com
jhartzell@marshallip.com
skalemeris@marshallip.com

14

4817-5314-5364.3

Julianne M. Hartzell (IL Bar No. 6275093)
Sarah J. Kalemeris (IL Bar No. 6303644)
MARSHALL, GERSTEIN & BORUN LLP
233 S. Wacker Drive
Willis Tower Suite 6300
Chicago, IL 60606
Phone: (312) 474-6300
Fax: (312) 474-0448
jhartzell@marshallip.com
skalemeris@marshallip.com

15

4817-5314-5364.3

**CERTIFICATE OF SERVICE**

      I, Jason J. Keener, an attorney, hereby certify that on July 11, 2013, I caused to be filed electronically the foregoing JOINT STATUS REPORT FOR ENTRY OF PERMANENT INJUNCTION with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

      /s/ Jason J. Keener
      Jason J. Keener