```
                    IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION


 GAMES WORKSHOP LIMITED,        )
                                )
                    Plaintiff,  )   Docket No. 10 C 8103
                                )
              vs.               )
                                )
 CHAPTERHOUSE STUDIOS, LLC,     )   Chicago, Illinois
 et al.,                        )   July 16, 2013
                                )   10:10 a.m.
                    Defendants. )


                      TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE MATTHEW F. KENNELLY

 APPEARANCES:

 For the Plaintiff:      FOLEY & LARDNER, LLP
                         BY:  MR. JASON J. KEENER
                         321 North Clark Street
                         Suite 2800
                         Chicago, Illinois   60610


 For the Defendant:      WINSTON & STRAWN, LLP
                         BY:  MR. IMRON T. ALY
                         35 West Wacker Drive
                         Chicago, Illinois   60601
```

LAURA M. BRENNAN - Official Court Reporter
219 South Dearborn Street - Room 2102
Chicago, Illinois 60604
(312) 435-5785

| | |
|---|---|
| 1 | (The following proceedings were had in open court:) |
| 2 | THE CLERK: 10 C 8103, Games Workshop v. |
| 3 | Chapterhouse. |
| 4 | MR. KEENER: Good morning, your Honor; Jason Keener |
| 5 | for plaintiff Games Workshop. |
| 6 | MR. ALY: Imron Aly for Chapterhouse. |
| 7 | THE COURT: Give me just a minute here just to find |
| 8 | the -- oh, here it is. |
| 9 | All right. Nothing is easy in this case, I guess. |
| 10 | And I hope that you have hired large pack animals to bring |
| 11 | over the chambers copies of the, you know, massive post- |
| 12 | verdict motions that apparently got filed yesterday. |
| 13 | So I want to deal, I think, with the easier stuff |
| 14 | first. So you basically highlight four issues on the |
| 15 | injunction in this status report. The last of those four |
| 16 | issues is what happens to the molds in the products. It's a |
| 17 | small issue, okay, I'm just going to say that. It's a small |
| 18 | issue, and I think the way to do it, and I think an |
| 19 | appropriate way to do it, is have Chapterhouse's attorneys |
| 20 | keep it all pending disposition of an appeal, have some |
| 21 | provision in there that they certify that they have -- where |
| 22 | there is some sort of a verification that they have got |
| 23 | everything and that they're keeping it and that it's not going |
| 24 | to be, you know, let loose anywhere. |
| 25 | And then if, you know, that aspect of the decision is |

not overturned on appeal, then, rather than just having Chapterhouse destroy me, would then turn them over to Games Workshop or its lawyers and they would do what they need to do with them.

So I think that's the easiest of the four issues.

MR. KEENER: Your Honor, there is a subissue in there.

THE COURT: There's always subissues.

MR. KEENER: I apologize.

THE COURT: Is there a sub-subissue, too?

MR. KEENER: No. We agree that it applies to all the copyright products, is to issue the trademark icons --

THE COURT: Yes. My question on this is that -- actually I wrote it down here.

So on Chapterhouse I'm not having a -- I don't have a clear sense of what it is that you're proposing. This is the discussion that is at the bottom of page 12 and the top of page 13. You're basically saying their proposal goes too far. So what are you proposing?

MR. ALY: There's two proposals.

One is, as to the return of the molds, that we would not need to give molds where only trademark infringement was found and not copyright infringement.

And, second, as to the trademark infringement in particular, that's addressed earlier in issue number three.

1       THE COURT: Wait a second. So where do I see in your
2   proposed injunction anything about molds? Oh, so it's the
3   crossreference to paragraph 1(a).
4       MR. ALY: That's right.
5       THE COURT: And not 1(b).
6       MR. ALY: That's exactly right.
7       THE COURT: Okay. So the argument that you have made
8   there is that the decision that the jury made had to do with
9   particular usages of the trademarks.
10      MR. KEENER: Your Honor, we're more concerned about
11  the icons. So if you have a model with the icon molded onto
12  the icon --
13      THE COURT: Yes, I guess that was --
14      MR. KEENER: -- we need to destroy that.
15      THE COURT: That would be my question.
16      So I get what you're saying on the defense side, that
17  it's a question of the particular usage of the mark, but the
18  particular usage of at least some of the marks is on a
19  product, and on those it would seem to me that it's sort of a
20  necessary implication of the judgment that you don't get to
21  use that. You might be able to use it some other way, who
22  knows, but on the particular usage that was in there, I'm
23  having a hard time seeing how you would get to use that.
24      What am I missing?
25      MR. ALY: The way that words were used in combination

1  with the icons.  So the ruling on copyright for the icon marks
2  is, yes, you can use --
3           THE COURT:  This is this?
4           MR. ALY:  That's one example, exactly.  So it's issue
5  three of the dispute.
6           And on the ones which are icons, the copyright
7  claims, the jury found for almost all -- I think there were
8  two exceptions -- that we could continue selling those.
9           On the trademark side, said no, but on the trademark
10 side, there's a difference where the word and the icon are
11 used together.  And in the product descriptions -- this is
12 that claim chart, PX 1020, for example, it would have in the
13 description the name and the trademark icon combined, and it's
14 the combined usage that was presented to the jury for both the
15 question in the comparative exhibit and also in the verdict
16 form.
17          So the implication, your Honor, would be that
18 Chapterhouse can sell the product, but they can't call it that
19 particular thing because that's the finding.  That's the way
20 to reconcile the different findings.
21          MR. KEENER:  If I could briefly respond, your Honor?
22          THE COURT:  Lord, can't you guys, like, have some
23 sort of a celebrity death match on whatever planet they play
24 the Warhammer 40K games on?
25          MR. KEENER:  Yes.

1  THE COURT: I mean, seriously, is there no
2  possibility of you --
3  Everybody had a trial, okay, and everybody won some
4  and everybody lost some. It was a mixed bag, okay. It was
5  real mixed bag. And I know that, you know, Games Workshop
6  paid a lot of money for its lawyers, and I know that
7  Chapterhouse is getting free lawyers from a very expensive law
8  firm. And I know that the free lawyers who are doing this pro
9  bono work for the very expensive law firm would probably love
10 to continue to do this and argue and appeal and whatnot.
11 But can't you guys just come up with some way of
12 calling it a day?
13 MR. ALY: Yes, your Honor. One thing we would like
14 to do, your Honor recommended talking with Judge Gilbert, the
15 magistrate judge, the last time to get some kind of a
16 permanent resolution. Chapterhouse wants that.
17 THE COURT: Isn't that --
18 MR. ALY: We really want that.
19 THE COURT: You guys could fight until your kids --
20 and you're both very young, okay -- until your kids are
21 standing up here in front of me. You could still be fighting
22 then. It just seems to me to make more sense. Everybody had
23 their day in court. Everybody won some, everybody lost some.
24 Everybody should be walking away from this saying, okay, I won
25 some and I lost some. Do I really keep fighting over whether

1   I won on 43 things as opposed to 47 or as opposed to 38?
2            I really think it would make a great deal of sense to
3   get you in a room with Judge Gilbert who, as you know, made a
4   significant effort and put a lot of time into it before.
5            MR. KEENER:  We have told him we're not opposed as
6   long as they have significantly changed their position.  Their
7   position right now is quite unreasonable as far as our client
8   is concerned.
9            MR. ALY:  The point is it's not our position.  It's
10  not getting to talk to them.  And I thought that there was a
11  dispute even about talking to them, Judge.
12           THE COURT:  See, when I was a kid, the Vietnam War
13  was still going on, and there was a proposal to have peace
14  talks, and there was a multiple-month period where they
15  actually argued about what shape the table should be.  It's
16  real life and real life true.  That works when people are
17  getting killed, I suppose, maybe.  Nobody is getting killed
18  here except some space marines who aren't real people.
19           I'm going to refer to you Judge Gilbert for a
20  settlement conference.  So I'm going to just table the rest of
21  this stuff for now.  I'm not going to set a schedule on the
22  posttrial motions.  I'm going to call Judge Gilbert and use
23  whatever goodwill I have with him to beg him to have a
24  settlement conference sooner rather than later.
25           And so here's what I would like you to do.  I would

1  like you to go by his chambers before you leave.  I'm going to
2  tell you what floor he's on.  Give me a second.  Gilbert, I
3  think he's on 13, but let me check to be sure.
4      (Brief interruption.)
5          THE COURT:  He is, in fact, on 13, 1366.  Go by his
6  chambers.  Tell him his worst nightmares have come to pass:
7  You're back.  Don't tell him that; I will tell him that.  And
8  find out what you need to do to get on his call to get a date.
9  And I will communicate with him and tell him kind of what the
10 status of things is.  He knows about the trial.  I talked to
11 him about it.
12         But tell him that there's posttrial motions pending,
13 there's all sorts of disputes over what an injunction should
14 say, and I was kind of encouraging everybody to see if you
15 could come up with a resolution now that everybody has fought
16 the good fight and the chips have fallen wherever they fell.
17         MR. KEENER:  Do you still want us to file our
18 petition for costs?
19         THE COURT:  You should file it just so it's there.
20 Whatever you're going to file, you should file it just so it's
21 there, but I'm not going to set schedules on any of it.
22         So what I am going to do is give you a phone status
23 date with me in about six weeks, so the 27th of August, at
24 9:00 o'clock.  As we did before, one side get the other on the
25 phone, and then call in.  You can have anybody on the phone

1  that you want. And it will just be to sort of make sure I
2  have the inventory of everything that's out there. I'm sure
3  you will have a date with Judge Gilbert. It may not have
4  happened yet, and we'll see where we are.
5   Okay, thanks.
6   MR. KEENER: Thank you.
7   THE COURT: Sorry you had to wait around so long
8  today.
9   MR. ALY: We appreciate it.
10
11  (Which were all the proceedings had in the above-entitled
12  cause on the day and date aforesaid.)
13
14
15   C E R T I F I C A T E
16
17   I hereby certify that the foregoing is a true and
18  correct transcript of the above-entitled matter.
19
20
21  */s/ Laura M. Brennan*   August 29, 2013
22
23  _____   _____
24  Laura M. Brennan
    Official Court Reporter   Date
    Northern District of Illinois
25