# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GAMES WORKSHOP LIMITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:10-cv-08103 |
| v. | ) |
| | ) |
| CHAPTERHOUSE STUDIOS LLC, | ) |
| | ) Judge Matthew F. Kennelly |
| | ) |
| Defendant. | ) |

# CHAPTERHOUSE STUDIOS' BRIEF IN OPPOSITION TO GAMES WORKSHOP'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Games Workshop ("GW") brought this case to put Chapterhouse out of business. GW failed with the jury, which correctly rejected most of GW's copyright and trademark claims. Now GW asks this Court to substitute its judgment for the jury's, based on overgeneralizations and mischaracterizations of the law and the record.

There is no basis to overturn any of the challenged aspects of the jury's verdict. *First*, there was ample evidence for the jury to find that GW failed to prove both that its products were original and that Chapterhouse copied them. *Second*, GW does not identify any proper grounds for striking the testimony of Chapterhouse's experts related to the issue of *scenes a faire*, but regardless, that evidence is not necessary to support the jury's verdict. *Finally*, GW fails to identify any evidence to undermine the jury's copyright fair use and trademark fair use judgments—in most cases, GW fails to even address the specific products or marks at issue, let alone identify any evidence indicating that Chapterhouse's use was not fair.

GW's motion for judgment as a matter of law should be denied.

## ARGUMENT

**I. Chapterhouse's Shoulder Pads Do Not Infringe GW's Copyrights.**

In challenging the jury's verdict that fourteen Chapterhouse shoulder pads did not infringe GW's shoulder pads,[1] GW relies heavily on the Court's previous ruling that the designs of its shoulder pads are copyrightable. (GW Br. 2.) But even if the shoulder pads were copyrightable (which Chapterhouse disputes for the reasons discussed in Chapterhouse's own Rule 50 motion, Dkt. No. 410 at 10-13), there was still more than sufficient evidence to allow a rational jury to find that Chapterhouse's designs do not infringe.

*First*, the jury's verdict is supported by evidence that Chapterhouse's designs were independently created. *See, e.g.*, *LTZ/Filliung P'ship LLP v. Cody/Braun & Assocs.*, 117 F.

---

[1] Product Nos. 2, 4-7, 13, 21-22, 64-65, 101-02, and 146-47.

Supp. 2d 745, 750 (N.D. Ill. 2000) (finding no infringement because allegedly infringing drawings were "independently created and not copied"). For instance, Jeffrey Nagy, who designed certain of the accused products, testified that he did not copy GW's products:

> Q: When you were working on the products that you worked on, at any time did you copy something Games Workshop did?
>
> A: No.

(Tr. 1293:21-23; *see also id.* 1259:9-15 (testimony of Mr. Nagy that he did not measure a GW shoulder pad or copy its dimensions).)[2] GW incorrectly claims that Mr. Nagy testified elsewhere that the allegedly infringing shoulder pads were created using a template "that is an exact copy of the basic GW shoulder pad design." (GW Br. 2.) In fact, Mr. Nagy testified that he designed the shoulder pad templates himself, that he ignored Mr. Villacci's requests to make them look more like GW's shoulder pads, and that the templates are used only as a "transitory step" in the process of creating Chapterhouse shoulder pads. (Tr. 1309:24-1315:16.) The jury was free to credit Mr. Nagy's testimony, and that testimony alone serves to support the jury's verdict of no infringement. *See U.S. v. Taylor*, 701 F.3d 1166, 1173 (7th Cir. 2012) (jury has exclusive function to evaluate credibility of witnesses and to draw reasonable inferences from evidence); *Venson v. Altamirano*, 827 F. Supp. 2d 857, 861 (N.D. Ill. 2011) (same).[3]

*Second*, the record evidence demonstrates that there are substantial differences

---

[2] All cited pages from the trial transcript are attached as Exhibit A.

[3] Furthermore, of the fourteen non-infringing shoulder pads, GW claimed at trial that only six infringe the basic GW shoulder pad design (Product Nos. 6-7, 21-22, and 146-47); as to the other eight (Product Nos. 2, 4-5, 13, 64-65, and 101-02), GW asserted infringement of particular shoulder pads with relevant surface details—products addressed nowhere in its motion. (Ex. B [PX 1020] at 4-5, 8-9, 9-12, 16, 22-23, 58, 90-93; Ex. C [PX 1021] at 51-52.) Perhaps recognizing the lack of evidence regarding the alleged copying of the surface details, GW has changed course and now asserts for the first time in its motion that the surface details of Product Nos. 2, 4, 5, 101, and 102 are no longer relevant to its infringement claims. (GW Br. 2 n.1.)

2

between Chapterhouse's products and GW's products. (*See* Ex. B [PX 1020] at 4-5, 8-9, 9-12, 16, 22-23, 58, 90-93; Ex. C [PX 1021] at 51-52.) The jury could have reasonably found non-infringement based on the accused products "shar[ing] only small cosmetic similarities" with the allegedly infringed works. *Peters v. West*, 692 F.3d 629, 636 (7th Cir. 2012); *id.* at 633-36 (plaintiff required to prove that original and accused work "share enough unique features to give rise to a breach of the duty not to copy another's work").

*Third*, the testimony at trial demonstrated that GW's shoulder pads contain many unoriginal elements such as basic shapes and elements standard to science fiction and derived from military history. (Tr. 1399:25-1401:5; Tr. 1536:15-1541:18; Tr. 1544:4-1546:1.) The jury could have reasonably found that, to the extent Chapterhouse copied anything, what it copied was not original to GW and therefore did not constitute protectable expression. *Peters*, 692 F.3d at 632.

*Finally*, contrary to GW's claim (GW Br. 3), the jury's verdict of non-infringement with respect to these fourteen products is perfectly consistent with its findings that different Chapterhouse products infringed different GW shoulder pads, and that Chapterhouse fairly used GW's copyrights on yet another set of GW shoulder pads. As GW concedes, the shoulder pads that the jury found non-infringing contain ornamentation that distinguishes them from the basic shoulder pads found to infringe. (*Id.*) It is entirely plausible that the jury determined that these fourteen shoulder pads differed from the other accused shoulder pads, and therefore did not infringe, or that the differences confirmed Mr. Nagy's testimony that Chapterhouse did not copy GW's designs. But even if the Court were to conclude that the jury's verdict was inconsistent, any such inconsistency would not warrant overturning the verdict. *See, e.g.*, *Ilnicki v.*

3

*Montgomery Ward, Co.*, 371 F.2d 195, 198 (7th Cir. 1966) ("[A] jury is not required to be logical and consistent in reaching a verdict.") (citations omitted).

II.     **There Is No Basis To Disturb The Jury's Verdict On The Twenty Products Addressed By Dr. Grindley[4] And Mr. Brewster.[5]**

GW asserts that Chapterhouse failed to establish a foundation for the testimony of its experts Dr. Grindley and Mr. Brewster, and that therefore the Court should have dismissed Chapterhouse's *scenes a faire* arguments with respect to twenty of the products that were the subject of their testimony. GW's arguments mischaracterize the *scenes a faire* doctrine and the expert witness testimony. Moreover, GW fails to address any of those twenty products in detail, and it ignores the multiple additional grounds supporting the jury's verdict.

    **A. The jury's verdict is supported by the evidence, including several grounds *unchallenged* by GW.**

*First*, the jury found twelve of the twenty products to be non-infringing.[6] Contrary to GW's claim, the jury did not need to accept Chapterhouse's *scenes a faire* arguments in order to reach that verdict. GW was required to prove *both* elements of copyright infringement—that its designs were original, *and* that Chapterhouse copied them—and there was more than sufficient evidence for the jury to find that GW failed to prove either one. As set forth in Chapterhouse's Rule 50 motion, GW failed to meet its burden on the originality element as a matter of law. (Dkt. No. 410 at 10-12.) Even if the jury was *permitted* to find that GW's ideas were original, it was hardly *compelled* to do so. Likewise, there was ample testimony demonstrating that Chapterhouse did not copy GW's designs. (Tr. 1259:9-15; Tr. 1293:21-23.) The jury was free to credit that evidence and base its non-infringement judgment on either of these factors alone.

*Second*, the jury's non-infringement verdict is also supported by the evidence that, to the

---

[4] Product Nos. 121, 128-31, 134-41, 144-45, and 158.
[5] Product Nos. 48, 50, 53, and 56.
[6] Product Nos. 121, 128-130, 134-136, 140-141, 144-145, 158

4

extent Chapterhouse copied *anything*, what it copied was unprotectable *scenes a faire*.[7] GW contends that there are numerous ways to depict items such as shoulder pads and, therefore, its designs are not "indispensable" and cannot be considered *scenes a faire*. (GW Br. 3-7.)[8] GW misapprehends the doctrine—*scenes a faire* refers to elements "which are as a practical matter indispensable, *or at least standard* in the treatment of a given topic." *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1014 (7th Cir. 2005) (emphasis added); *see also Black v. Gosdin*, 740 F. Supp. 1288, 1293 (M.D. Tenn. 1990) ("a barroom with a jukebox" is *scenes a faire* although it is just one of many possible settings and therefore not indispensable). The jury had more than sufficient evidence to conclude that the allegedly copied elements of these twelve specific products are all standard science fiction design features (Tr. 1372:12-1378:15, 1379:1-1385:16, 1397:6-10, 1404:18-1410:8, 1421:22-1428:18), and thus find no infringement.

*Finally*, the jury found eight of the twenty products to be covered by the fair use defense.[9] As explained in Section III *infra*, there is no basis to disturb the jury's fair use verdict.

### B. GW's attacks on Dr. Grindley and Mr. Brewster are misplaced.

#### a. Dr. Grindley

GW contends that Dr. Grindley's testimony should be stricken for lack of foundation, but concedes it failed to make a contemporaneous foundation objection. (Tr. 1650:6-11.) As this Court made clear, "if it's not a contemporaneous objection, it's forfeited. That's the bottom line." (*Id.* 1651:16-18.) *See U.S. v. Blanding,* 53 F.3d 773, 777 (7th Cir. 1995) ("[F]ailure to preserve this claim at trial with contemporaneous objections is a forfeiture.").

---

[7] Although GW contends that Chapterhouse's *scenes a faire* arguments are inadequate as a matter of law, this Court has already stated that it was "not persuaded that there is not enough testimony to support the issue." (Tr. 1649:24-25.)
[8] Although only two of the twelve non-infringing products are shoulder pads, GW does not address any specific design elements other than shoulder pad features. (GW Br. 3-7.)
[9] Product Nos. 48, 50, 53, 56, 131, 137-139.

5

On the merits, GW's attack is baseless. Dr. Grindley is a tenured professor at the City University of New York and, as this Court has already found, a qualified expert. (Dkt. No. 372 at 2-3.) Dr. Grindley identified common science fiction standards that correspond to GW and Chapterhouse products, based on his extensive knowledge and research in the field. (Tr. 1356:2-15, 1368:13-24, 1396:18-1398:14.)[10] GW contends that this evidence fails to support Chapterhouse's *scenes a faire* arguments, but (as noted above) GW mischaracterizes the doctrine—an element does not have to be indispensable to be unprotectable *scenes a faire*, merely common. Furthermore, even if the jury were to conclude that a given element is not quite common enough to be unprotectable, Dr. Grindley's testimony helped the jury understand that the allegedly copied features (such as large shoulder pads) are minimally creative concepts, making it less likely that Chapterhouse copied those particular features from GW.

### b. Mr. Brewster

GW's similar attack on Mr. Brewster, which affects just four products, must fail too. Mr. Brewster testified about how chevrons, arrows, and roman numerals have been commonly used throughout history. (Tr. 1536:15-1541:18; Tr. 1544:4-1546:1.) This is relevant to *scenes a faire* as well as one of the fair use factors: the nature of the copyrighted work. *See infra* Section III(2). GW fails to acknowledge that a work can be ***protectable***, but still subject to ***fair use***.

### III. To The Extent Chapterhouse Copied Protectable Expression, Chapterhouse's Copying Was Fair Use.

There is no basis to overturn the jury's verdict of fair use with respect to twenty-four products (the "Fair Use Products").[11] Rather, as set forth below, there was more than sufficient evidence for a rational jury to find that, to the extent the Fair Use Products copied protectable

---

[10] Contrary to GW's contention (GW Br. 4), it was not necessary for Dr. Grindley to catalog ***all*** prior instances of a given element to determine whether it is common or standard. (Tr. 1450:17-1453:3.) The Court previously rejected this argument in the context of GW's *Daubert* motion. (Dkt. No. 372 at 2-3.)
[11] Product Nos. 14, 48, 50, 53, 56, 66, 69, 94, 97-100, 103, 131, 137-39, 148, 151-52, 155-57, and 163.

expression, that copying was fair.

The Copyright Act identifies four factors to be considered in determining whether a use of a copyrighted work is "fair," and lists various examples of fair use purposes. 17 U.S.C. § 107. Contrary to GW's suggestion, however, no one factor is dispositive, nor are the factors or purposes exhaustive. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994); *see also Ty, Inc. v. Publ'ns Int'l Ltd.*, 292 F.3d 512, 522 (7th Cir. 2002) ("Because the factors and purposes are not exhaustive, Ty can get nowhere in defending the judgment by arguing that some or even all of them lean against the defense of fair use."). Rather than provide the fact-specific analysis that fair use requires, GW's brief is predominately attorney argument. Where GW cites the record, it relies primarily on testimony pertaining to non-fair use products. As detailed below, all four factors weigh in favor of Chapterhouse and there is more than sufficient evidence to support the jury's finding of fair use.

### 1. Chapterhouse's Fair Use Products are transformative and have a different character from GW's products.

The first factor in the fair use analysis—the purpose and character of the use—considers whether the use is "transformative," *i.e.*, whether the accused work "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. at 579. The record evidence was more than sufficient to allow the jury to find that Chapterhouse's Fair Use Products are transformative.

Each Fair Use Product is designed to interact with GW's figurines while adding new elements that provide a unique character that differentiates them from GW's products. (Tr. 922:25-923:15; Tr. 953:20-955:8; Tr. 1250:3-22.) Chapterhouse regularly rejected designs that were too similar to GW's products and did not convey a distinct message. (Tr. 953:20-955:8.) For example, twenty of the Fair Use Products are shoulder pads—there was more than sufficient

7

evidence for the jury to find that Chapterhouse borrowed nothing from GW's products beyond the generic shape and size of the underlying shoulder pad,[12] a basic geometric shape that is not independently copyrightable,[13] or general aesthetics derived from Roman military styles.[14]  (Ex. B [PX 1020] at 17, 48, 50, 52-53, 61-62, 88-89; Ex. C [PX 1021] at 35-38, 52-53, 57-58, 61-63, 74; Tr. 1401:25-1404:15; *cf.* Tr. 1399:25-1401:5.)[15]

In each Fair Use Product, Chapterhouse's new design elements alter the nature of the underlying work by conveying a new message.  And the record provides more than sufficient evidence that Chapterhouse's customers purchase these products precisely because they impart a different meaning from the one conveyed by GW's products.  (Tr. 922:25-923:15; Tr. 953:20-955:8; Tr. 1250:3-22.)  Because each product adds a new level of creativity and design not present in any of GW's products, the jury could properly have found that Chapterhouse's products are transformative and that this factor weighs in favor of fair use.

Additionally, GW contends that twenty of the Fair Use Products do not infringe any physical item that GW produces, but only its copyright in a picture or in the generic size and shape of a shoulder pad.[16]  These products thus complement the original works rather than acting as substitutes, further supporting the jury's verdict.[17]  *See Ty*, 292 F.3d at 518 (collector's guide with Beanie Baby photographs was a complementary product and thus "transformative").

---

[12] Product Nos. 53, 69, 97, 98, 99, 100, 148, 151, 152, 155, 157, and 163.
[13] Product Nos. 14, 48, 50, 56, and 156; *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 303 (7th Cir. 2011).
[14] Product Nos. 137, 138, and 139.
[15] With respect to the other Fair Use Products, Product Nos. 94, 103, and 131 are kits that allow a user to remodel a GW tank by customizing its doors, armor, and weaponry with original Chapterhouse designs that are sized so that they may be attached to existing GW miniatures, and Product No. 66 is a hammer that resembles the general shape of GW's allegedly infringed hammer and contains a dragon profile that resembles a separate GW image, but combines those elements with Chapterhouse's unique hammer and handle design. (Ex. B [PX 1020] at 59, 84, 94-95; Ex. C [PX 1021] at 10-14.)
[16] Product Nos. 14, 48, 50, 53, 66, 69, 97, 98, 99, 100, 103, 137, 138, 139, 148, 151, 152, 155, 157, and 163; *see* Ex. B [PX 1020] at 17, 48, 50, 52, 59, 61-62, 88-89, 94-95; Ex. C [PX 1021] at 35-38, 52-53, 57-58, 61, 63, 74.
[17] As noted above, all of the Fair Use Products contain unique design elements that distinguish them from the allegedly infringed products and thus do not act as substitutes on that basis as well.

GW argues that Chapterhouse's products do not satisfy the first factor based on an incorrect and unduly narrow interpretation of "transformative." (GW Br. 8-11.) *First*, GW improperly relies on *Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992), for the assertion that commercial works are "presumptively unfair." (GW Br. 7-8.) The Supreme Court squarely rejected that proposition in *Campbell*, holding that commercial use may be fair use. 510 U.S. at 583-84. Moreover, contrary to GW's claim, the record provides more than sufficient evidence for the jury to find that the Fair Use Products are not "purely commercial" but reflect Chapterhouse's artists' desire for creative expression. (Tr. 922:25-923:15; Tr. 1250:3-22.)[18]

*Second*, GW contends that **no product** can be "transformative" if it shares the same overall "purpose" as GW's products, *i.e.* playing the Warhammer game. (GW Br. 9-11.) That is not the law. *See, e.g.*, *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 448 (1984) (first factor favors fair use even though users copy television broadcasts for the same purpose as the original work). More importantly, GW mischaracterizes the purpose of Chapterhouse's products which, as demonstrated above, are designed to convey a unique message that distinguishes them from GW's products.

*Third*, GW contends that the jury rendered an inconsistent verdict concerning the shoulder pad products because it found that Chapterhouse's basic shoulder pads infringed GW's copyright in the generic size and shape of its shoulder pads,[19] but it found fair use in cases where Chapterhouse created an additional design or surface decoration.[20] (GW Br. 10.) That is not evidence of confusion, but evidence that the jury properly made individualized assessments as to

---

[18] Relatedly, GW argues that Chapterhouse's products fail the first factor because they do not fall within the exceptions listed in the preamble to 17 U.S.C. § 107. (GW Br. 8-9, 11.) These items are merely examples—they are not an exhaustive list of fair uses. *Campbell*, 510 U.S. at 578; *Ty*, 292 F.3d at 522.
[19] Product Nos. 54-55; *see* Ex. B [PX 1020] at 52-53.
[20] Product Nos. 14, 48, 50, 53, 56, 69, 97-100, 148, 151, 152, 155-57, and 163; *see id.* at 17, 48, 50, 52, 53, 61-62, 88-89; Ex. C [PX 1021] at 52-53, 57-58, 61-63, 74.

9

the transformative nature of each product. Regardless, inconsistency would provide no basis for overturning the jury's verdict. *Ilnicki*, 371 F.2d at 198.

***Finally***, despite fair use requiring a "fact-specific inquiry," *Harper & Row Publishers v. Nation Enters.*, 471 U.S. 539, 588 (1985), GW relies on broad generalizations about Chapterhouse's entire product line, rather than addressing any evidence regarding the specific Fair Use Products. (GW Br. 8-11.) GW provides only cursory reference to the shoulder pad products discussed above, and fails to address any of the remaining Fair Use Products.[21] (*Id.*) That is insufficient to meet the high standard required to overturn a jury's verdict.

**2. GW's products are derivative of military history and science fiction standards.**

The second factor—the nature of the copyrighted work—also weighs in favor of Chapterhouse. The more fact-based or derivative the copied work, the more this factor weighs in favor of fair use. *Campbell*, 510 U.S. at 586; *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1271 (11th Cir. 2001). The copyrighted works at issue here—not GW's overall "fictional universe," but the specific shoulder pads, tanks, and weapons allegedly infringed—are all derived from real-world military instruments, and the jury had ample evidence to conclude that the fact-based nature of these products weighed in favor of fair use.

Dr. Grindley testified that GW's products have their roots in military history, and demonstrated that GW modified these fact-based items by applying established science fiction and fantasy standards. (Tr. 1356:21-1357:2.) GW concedes that Dr. Grindley identified historical antecedents for its products, but contends that so long as its particular arrangement of pre-existing structures was unique, the second factor tilts in its favor. (GW Br. 11-12.)[22] That confuses the standard for copyrightability with the standard for fair use. *See Feist Publ'ns, Inc.*

---

[21] Product Nos. 66, 94, 103, 131, 137, 138, and 139.
[22] GW identifies only one of its products—the Space Marine shoulder pad—as allegedly supporting this factor. (GW Br. 11-12.)

10

*v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991); *Campbell*, 510 U.S. at 586. Based on the close similarity between GW's products and earlier science fiction and fantasy depictions of shoulder pads, tanks, and weapons, the jury was free to find that GW exhibited only minimal creativity in applying standard genre tropes to fact-based historical items.

GW's additional arguments are similarly misplaced. ***First***, GW contends that its works are "purely fictional and imaginative." (GW Br. 11.) Yet GW fails to identify *any* evidence in support of its contention, and its own designers confirmed that GW's works are rooted in military history. (Tr. 527:3-529:12; Tr. 1505:5-12; Tr. 1508:8-1510:13; Tr. 1627:9-14.) The jury was free to credit this testimony and the testimony of Dr. Grindley over GW's attorney argument. ***Second***, GW asserts, again without any record evidence, that the only points of reference for Chapterhouse's products were GW's products. (GW Br. 12.) That is similarly disproven by the record (Tr. 1259:9-15; Tr. 1293:21-23), but it is also irrelevant to the second fair use factor, which requires consideration of the nature of the allegedly infringed works. 17 U.S.C. § 107(2). ***Finally***, GW reiterates its incorrect claim that Chapterhouse's products are not transformative (GW Br. 12), which is both wrong for the reasons discussed above and, in any event, only relevant to the first fair use factor. 17 U.S.C. § 107(1).

### 3. The copied portions of GW's products are small and insubstantial.

The third factor—the amount and substantiality of the portion used in relation to the copyrighted work as a whole—similarly weighs in favor of fair use. To the extent Chapterhouse copied any protectable expression, the Fair Use Products reasonably copied only enough to permit Chapterhouse to convey its transformative message. *See Campbell*, 510 U.S. at 586.

Chapterhouse's accessories, by design, combine basic facets of GW's products with its own artistic expression. (Tr. 953:20-955:8.) Given the nature of that creative balancing act, the

11

degree to which Chapterhouse's products resemble GW's products falls along a spectrum. The jury verdict reflects a consistent analysis with respect to the amount and substantiality of copied expression, finding infringement with respect to the most similar products and fair use with respect to the products that copy to a lesser degree.[23] GW provides no rationale for overturning the jury's judgment with respect to the amount of copied expression it found to be fair.

Furthermore, for half of the Fair Use Products, GW concedes that Chapterhouse did not copy any protectable expression other than the dimensions necessary for the product to function as an accessory to different GW products.[24] Even if the abstract size and shape of a product constitute the *only* protectable expression within it, the jury was free to find that those elements possess minimal creativity and amount to an insubstantial portion of the entire work.

Tellingly, GW cites no record evidence related to any Fair Use Product. Its entire third-factor analysis rests on testimony concerning Chapterhouse's process for a creating a *different* product *that was found to infringe*.[25] The supposedly copied material in one infringing product has no bearing on the amount and substantiality of the different supposedly copied material in the Fair Use Products, and cannot provide a basis for overturning the jury's verdict.

### 4. Chapterhouse's accessories do not supplant demand for GW's products.

The fourth fair use factor—the effect of the use upon the potential market for or value of the copyrighted work—also weighs in favor of Chapterhouse. Chapterhouse's accessories do not

---

[23] *See* Dkt. No. 399 [Verdict Form] at 2-8; Ex. B [PX 1020]; Ex. C [PX 1021]. To the extent GW contends that the jury reached inconsistent results with respect to Chapterhouse products that copied the same materials, the jury was free to consider other factors beyond the amount and substantiality of the copied material. Additionally, as set forth in Chapterhouse's Motion for Judgment as a Matter of Law, the copied features of Games Workshop's products are not eligible for copyright protection. Dkt. No. 410 at 10-13.
[24] Product Nos. 53, 69, 97-100, 148, 151-52, 155, 157, and 163; *see* Ex. B [PX 1020] at 52, 61-62, 88-89; Ex. C [PX 1021] at 52-53, 57-58, 61, 63, 74.
[25] *See* GW Br. 12; Tr. 1232-10:1233:12 (describing Chapterhouse adaption of "Flesh Tearer" icon); Ex. D [GW Ex. 9, PX 189] (same); Dkt. No. 399 at 2 (verdict of infringement with respect to Product No. 12).

12

supplant the demand for GW's products but instead complement the market. *See Campbell*, 510 U.S. at 590-91; *Ty*, 292 F.3d at 517.

Copyright law does not provide GW with the exclusive right to market accessories for Warhammer figurines. Chapterhouse is free to sell transformative accessories that compete directly with those sold by GW. *See Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 607-08 (9th Cir. 2000) (transformative products may legitimately compete with copyrighted works; economic loss due to that competition does not compel a finding of no fair use); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523-24 (9th Cir. 1992); *Castle Rock Entm't, Inc. v. Carol Publishing Group, Inc.*, 150 F.3d 132, 145 n. 11 (2d Cir. 1998).

GW asserts that Chapterhouse's products supplant the demand for its own "replacement shoulder pads" and "replacement door kits." (GW Br. 12-13.) That misses the mark. ***First***, only two of the Fair Use Products allegedly infringe replacement shoulder pads, and only four allegedly infringe a physical product of any kind.[26] ***Second***, Chapterhouse's accessories are not fungible with the allegedly infringed products or with GW's generic replacement parts. Contrary to GW's claim, this is not a case where a competitor produces a cheap knock-off that serves the same function as the original. Chapterhouse's products are generally ***more expensive*** than GW's products, and Chapterhouse's customers purchase its products precisely because they have a different appearance and convey a different message. (Tr. 922:25-923:15; Tr. 953:20-955:8; Tr. 1017:8-1018:21; Tr. 1250:3-22.) Thus, the Fair Use Products complement the market by offering consumers accessories that impart a distinct meaning.

Finally, GW once again fails to cite any record evidence related to the Fair Use Products. (*See* GW Br. 12-13.) Instead, GW identifies a single Chapterhouse product that it contends

---

[26] Product Nos. 56, 94, 131, and 156.

13

actually competes with GW's products—the Magnetic Combi-Weapon.[27] (GW Br. 13.) But the jury found that that product *does not infringe.* (Dkt. No. 399 at 3.) Thus, it is entirely irrelevant to whether the Fair Use Products supplant the demand for GW's allegedly infringed products.

### IV. There Is No Basis To Disturb The Jury's Verdict On The 26 Trademarks Covered By The Fair Use Defense.

GW contends that Chapterhouse used GW's marks to refer to "its own unauthorized and unlawful copying," a use that "is, by definition, unfair." (GW Br. 13.) But as GW concedes, fair use is a valid defense if the mark is used to describe *GW's product*. (GW Br. 14; Tr. 1746.) The jury found that Chapterhouse did that by stating that its products were *compatible with* GW's products. GW points to nothing in the record that counsels—much less compels—the Court to disturb that verdict.

As a preliminary matter, GW fails to make any argument with respect to 19 of the 26 marks that it lists in a footnote. (GW Br. 15 n.13.) GW does not mention them in the text, tie them to any product, or give any examples of how they were used by Chapterhouse. Thus, GW has failed to demonstrate that the jury's verdict with respect to those 19 marks was irrational.

In any event, GW's few examples undercut its argument. For instance, the eBay postings used the "Space Marine" and "Warhammer 40K" marks to convey that the advertised goods are *compatible with* Warhammer 40K. (*See, e.g.*, Ex. E [GW Ex. 10, PX 5] at 11 ("I use them for my 40k Space Marine army.").) The website uses the "Space Marine" and "Eldar" tabs in the same fashion—to make clear that Chapterhouse's goods are *"compatible with"* GW's product, not that they *are* GW products. (Ex. F [GW Ex. 11, PX 435] at 2) (emphasis added). GW ignores this crucial "compatible with" language, which is paradigmatic fair use. Chapterhouse is not trading on GW's name, but "put[ting] potential customers on notice that its parts are

---

[27] Product No. 34.

*compatible with* [GW's] product." *Ford Motor Co. v. O.E. Wheel Distribs., LLC*, 868 F. Supp. 2d 1350, 1368 (M.D. Fla. 2012) (emphasis added).

GW's final example fares no better. As GW points out, Chapterhouse's tagline notes that it "Specializ[es] in Custom Sculpts and Bits *for* Warhammer 40,000 and Fantasy." (GW Br. 15) (emphasis added). GW contends—without reference to any particular infringing product—that this tagline "advertise[s] unlawful copies." (*Id.*) But Chapterhouse was *never* accused of copying the actual Warhammer 40,000 game. GW completely ignores the word "for." Chapterhouse advertises its products as "custom sculpts and bits," *to be used with* GW's game. This is quintessential fair use. *Ford Motor Co.*, 868 F. Supp.2d at 1368-69 ("software compatible with both WINDOWS and APPLE" is fair use); *Waco Int'l, Inc. v. KHK Scaffolding Houston Inc.*, 278 F.3d 523, 534 (5th Cir. 2002) ("Waco-style" is fair use of "Waco," as it "describes the good as being similar to or compatible with Waco's products").

GW cites only one supposedly analogous case—*Coach Inc. v. Sassy Couture*, 2012 WL 162366 (W.D. Tex. Jan. 19, 2012). (GW Br. 14.) But *Coach* involved a mark on counterfeit products. Chapterhouse makes accessories to be used *with* GW's own products. GW does not identify any alleged "counterfeit" product here, let alone tie such a product to a specific GW mark. And Chapterhouse's website explicitly disclaims any sponsorship or endorsement by GW. (Ex. F [GW Ex. 11, PX 435] at 4; Ex. G [PX 690] at 28506; Tr. 930:10-11.)

In sum, GW has provided nothing to indicate that the jury's verdict on any of these 26 marks was irrational. That verdict should stand.

## CONCLUSION

For the foregoing reasons, GW's motion should be denied.

15

Dated: October 24, 2013          Respectfully submitted,

/s/ Imron T. Aly

Jennifer A. Golinveaux (CA Bar No. 203056)
Thomas J. Kearney (CA Bar No. 267087)
    WINSTON & STRAWN LLP
    101 California Street
    San Francisco, CA 94111-5802
    Phone: (415) 591-1000
    Fax: (415) 591-1400
    jgolinveaux@winston.com
    tkearney@winston.com

Imron T. Aly (IL Bar No. 6269322)
Bryce A. Cooper (IL Bar No. 6296129)
Tyler G. Johannes (IL Bar No. 6300117)
    WINSTON & STRAWN LLP
    35 West Wacker Drive
    Chicago, IL 60601-1695
    Phone: (312) 558-5600
    Fax: (312) 558-5700
    ialy@winston.com
    bcooper@winston.com
    tjohannes@winston.com

Julianne M. Hartzell (IL Bar No. 6275093)
Sarah J. Kalemeris (IL Bar No. 6303644)
    MARSHALL, GERSTEIN & BORUN LLP
    233 S. Wacker Drive
    Willis Tower Suite 6300
    Chicago, IL 60606
    Phone: (312) 474-6300
    Fax: (312) 474-0448
    jhartzell@marshallip.com
    skalemeris@marshallip.com

## **CERTIFICATE OF SERVICE**

      I, Imron T. Aly, filed an OPPOSITION TO GAMES WORKSHOP'S MOTION FOR JUDGMENT AS A MATTER OF LAW with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                        /s/ Imron T. Aly