**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GAMES WORKSHOP LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-cv-08103 |
| v. | ) | |
| | ) | |
| CHAPTERHOUSE STUDIOS LLC, | ) | |
| | ) | Judge Matthew F. Kennelly |
| | ) | |
| Defendant. | ) | |

**CHAPTERHOUSE STUDIOS' BRIEF IN OPPOSITION TO
GAMES WORKSHOP'S PETITION FOR COSTS**

Games Workshop ("GW") brought this action to shut down—or, at a minimum, radically

alter—the business of Chapterhouse, claiming in a letter to Chapterhouse that "all of the 106

products currently marketed on your website infringe in some way our client's intellectual

property rights." Ex. A at 5. (DX-175.) *See also* Ex. B at 1 (requesting that Chapterhouse

"cease all such sales") (DX-639). But GW failed—Chapterhouse can still sell many of those

products. And factoring in summary judgment, trial, and dropped claims, Chapterhouse won

***over two-thirds*** of GW's copyright and trademark claims. GW was only successful in obtaining

a small fraction of the damages it initially sought. Indeed, GW would not have invested in this

case as heavily as it did simply to slap Chapterhouse on the wrist. Accordingly, it is

Chapterhouse, not GW, that is the prevailing party. GW focuses only on the trial, but this is too

narrow a view under the text of Rule 54 and the case law surrounding it.

At the very least, each party should bear its own costs. Chapterhouse is a small outfit that

was represented *pro bono*. GW should not be permitted to force Chapterhouse to buckle under

the weight of a cost award that is ***ten times higher*** than the damages awarded at trial—especially in view of how little GW actually won.

Finally, if this Court believes that GW is entitled to costs, GW's award should nonetheless be reduced by over $100,000. As described below, several of the costs sought by GW are simply excessive.

## I.     Chapterhouse Is The Prevailing Party And Is Entitled To Costs.

No matter how the case is sliced, Chapterhouse won substantial relief. *See Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009) (per curiam) (holding that a party prevails under Rule 54(d) when a final judgment awards it substantial relief); *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 641 (7th Cir. 1991). GW suggests that the only thing that matters is that it won ***something*** at trial. But that standard would slant Rule 54(d) in favor of plaintiffs. This is not the law; costs are equally available to prevailing plaintiffs and defendants. *See infra* I.B (citing cases awarding costs to defendants); *cf. Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) (explaining that under the cost-shifting provision of the Copyright Act, "[p]revailing plaintiffs and prevailing defendants are to be treated alike"). Here, Chapterhouse successfully defended against dozens of claims and hundreds of thousands of dollars in potential damages. It is Chapterhouse, not GW, that won "substantial" relief. This is true whether one considers the number of claims, the parties' litigation goals, or the amount of damages.

### A.  Chapterhouse won the vast majority of the claims asserted.

Chapterhouse won over ***two-thirds*** of the copyright claims asserted in this action. More specifically, Chapterhouse won 34 copyright claims on summary judgment. (11-27-12 Summary Judgment Order, Dkt. No. 258 at 7, 35; 4-1-13 Summary Judgment Order, Dkt. No. 333 n.2.) At

2

trial, Chapterhouse won an additional 67 copyright claims.  (Judgment, Dkt. No. 403-1 at 1.)  All told, Chapterhouse can continue to sell, without modification, at least two-thirds of the accused products.

Similarly, Chapterhouse won over **70%** of the asserted trademark claims.  Though GW added and dropped marks throughout the case, a comparison of its interrogatory responses reveals that GW asserted infringement of over 140 unique marks.  *See* Ex. C, Pl.'s Second Supplemental Resp. to Def.'s Interrogs. Set Four (listing asserted marks); Ex. D, Pl.'s Fourth Supplemental Resp. to Def.'s Interrogs. Set Four (same).  But only 92 trademarks remained for trial.  Of these, Chapterhouse won on 54.  (Judgment at 1.)  And Chapterhouse won summary judgment on GW's federal and state dilution claims.  (Dkt. No. 258 at 35-36.)  On sheer math alone, Chapterhouse is the prevailing party.

**B.  Chapterhouse, not Games Workshop, achieved its litigation goal.**

By any metric, Chapterhouse met its litigation goal:  it can still sell the vast majority of products GW had accused of copyright infringement and can still use GW's trademarks to inform consumers that Chapterhouse products are compatible with GW products.  In a case such as this, where a defendant in a copyright case has achieved "substantially all the benefits [it] hoped to achieve in defending the suit," courts have not hesitated to consider it the prevailing party and award costs.  *Florentine Art Studio, Inc. v. Vedet K. Corp.*, 891 F. Supp. 532, 541 (C.D. Cal. 1995) (finding defendants were prevailing parties where they won on seven of nine infringement counts, were found merely to be innocent infringers on the remaining two, and were assessed the minimum statutory damages); *Equinox Software Sys., Inc. v. Airgas, Inc.*, No. Civ. A. 96-3399, 2001 WL 1159846, at *2 (E.D. Pa. Sept. 5, 2001) (concluding defendant was prevailing party even though the jury rejected defendant's counterclaims because the defendant

"achieved substantially all the benefits [it] hoped to achieve in defending the suit") (internal quotation marks and citation omitted).

### C. Games Workshop received only a small portion of the damages it originally sought.

GW makes much of the fact that the $25,000 jury award was "precisely the amount of damages" it had requested. (GW Br. at 3.) But originally, GW sought far more. It elicited testimony from Nick Villacci that Chapterhouse "ha[d] sold *$427,226.35* of materials" through January 8, 2013. (Ex. E, Tr. 909:18-24) (emphasis added). This was all GW had the burden to do; the burden was on Chapterhouse to prove its expenses. (*Id.* at 1739:11-18.) GW let this Sword of Damocles hang over Chapterhouse throughout the *thirty months of pretrial litigation* and right up until closing argument.

But GW receded from its original demand after Chapterhouse established costs to offset its revenue. As GW now admits, Chapterhouse operated at a 10-15% profit margin. (GW Br. at 4.) Realizing that it would not prevail on its request for $400,000, GW radically reduced its request to a closing argument plea for $25,000.

Indeed, GW would not have incurred the expenses it did if its only goal was to give Chapterhouse a $25,000 slap on the wrist. GW's allegedly taxable costs alone total over $250,000. And its attorneys' fees likely reach seven figures, given the length and complexity of this litigation. GW cannot now claim that it received everything it wanted.

### D. Games Workshop's arguments are meritless.

GW's principal theme is strikingly narrow: nothing else matters but the trial. The 370-plus pre-trial docket entries, the thirty months of pre-trial litigation, the multiple summary judgment decisions—these simply disappear from GW's field of vision. All that matters, according to GW, is that "[t]he jury found that a majority of Chapterhouse's products infringed

either copyright or trademark or both." (GW Br. at 2.) But "substantial relief" requires an assessment of the *entirety* of the case, not just the claims actually brought to trial. Indeed, GW seeks costs for *depositions that were not played at trial* and *depositions of witnesses that did not testify at trial.* GW cannot now contend it is entitled to these costs based on the trial alone.

GW further contends that the jury's trademark findings "cover a large swath of Chapterhouse's products including many of those found not to infringe Games Workshop's copyrights." (GW Br. 3.) Here, GW puts the cart well in front of the horse. Just two days ago— nearly three months after GW filed its opening costs brief—the parties submitted a status report covering this precise issue. (Dkt. No. 445.) As Chapterhouse explained in that report, the verdict form lists more than just icons. It lists icons in combination with trademarked names. Accordingly, there is no basis to prohibit Chapterhouse from selling products that contain *only* an icon. In any event, even under GW's proposed injunction, Chapterhouse may still sell products that use its icons in a way that is not likely to cause confusion, which will require a change only to the product name. (Dkt. No. 407-1 ¶ 1.b.)

Finally, GW contends that thirteen of Chapterhouse's top twenty products were found to infringe. There are two problems with this argument. *First*, it is irrelevant. Even if *all* of Chapterhouse's top twenty products were found to infringe, GW asserted *at least 150 total copyright claims*. GW cannot escape the consequences of its decision to assert a multitude of meritless claims, whether these claims were "important" or not. GW did not prevail on the majority of its claims, and must now lie in the bed it made. *Second*, even if the Court were to take into account the relative "importance" of the accused products, that would be counterbalanced by Chapterhouse's victory on *all of GW's core registered trademarks*. (Second

5

Am. Compl., Dkt. No. 147, at ¶ 22) (listing registered marks); Judgment (depicting

Chapterhouse's victory on these marks).

All told, over the course of summary judgment and trial, Chapterhouse won the majority

of the claims asserted against it.  Despite GW's best efforts, Chapterhouse can still sell many of

the accused products.  Chapterhouse is the prevailing party and should be awarded costs

accordingly.  GW should be awarded nothing.

**II.      If Chapterhouse Was Not The Sole Prevailing Party, The Parties Should Bear
Their Own Costs.**

Even if this Court were to accept GW's arguments, the jury's verdict was, at most, a

mixed result.  And "courts have especially broad discretion to award or deny costs in mixed

result cases, including cases in which liability was established but recovery was nominal relative

to what was sought." *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999)

(citation omitted).  As GW's cited case acknowledges, "it may be proper for the trial court to

award only low costs or no costs at all." *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 n.8 (Fed. Cir.

2010).  Further, courts enjoy the same discretion under Rule 26. *See* Fed. R. Civ. P. 26(b)(4)(E)

(permitting courts to deny costs if "manifest injustice would result").

This Court should use its discretion to deny all costs to GW, as GW's request would

inflict a burden on Chapterhouse that far exceeds the outcome of the trial.  A "court may decline

to award costs when an award of costs would be inequitable under all the circumstances in the

case." *Plair v. E.J. Brach & Sons, Inc.*, No. 94 C 244, 1995 WL 387789, at *1 (N.D. Ill. June

28, 1995) (internal quotation marks and citation omitted).  In *Plair*, the court denied costs where

the losing party was indigent and represented *pro bono*, even though the losing party was the

plaintiff.  Here, Chapterhouse is the defendant—it did not choose to litigate this case.  And

Chapterhouse is a small company; it was represented in this case *pro bono*. *See* Ex. F

(Declaration of Bryce A. Cooper).  In asking the jury for $25,000 in damages (all GW wanted, it now claims), GW claimed in its closing argument that it was "not looking to be punitive."  (Ex. E, Tr. 1765:20.)  But it now seeks a cost award that is *more than ten times greater than the damage award it requested*.  Such an award would inflict tremendous financial burden on Chapterhouse.  It should be denied.

Further, GW won little of what it sought.  GW has failed to cripple Chapterhouse's business.  And it lost on the majority of its originally asserted copyrights and trademarks.  And it obtained only a small fraction of the damages it initially sought.

GW tries to escape the inevitable conclusion by claiming that "even a nominal award of damages supports a finding that the plaintiff was the prevailing party."  (GW Br. 4.)  But again, this would improperly slant Rule 54 in favor of plaintiffs, despite the rule's plain language that "the prevailing *party*" is entitled to costs (emphasis added).  For this reason, numerous courts have denied costs to plaintiffs who were awarded damages.  *See, e.g.*, *ARP Films, Inc. v. Marvel Entertainment Group, Inc.*, 952 F.2d 643, 651 (2nd Cir. 1991) (affirming the district court's denial of costs, concluding plaintiff was not entitled to costs under the Copyright Act or Rule 54(d), even where plaintiff had been awarded over $1.2 million in damages for various claims and defendant had only received $137,000, because of the "mixed outcome" of the litigation, including pre-trial motion practice); *Gonzalez v. City of Elgin*, No. 06 C 5321, 2010 WL 4636638, at *1 (N.D. Ill. Nov. 8, 2010) (ordering each party to bear their own costs even though plaintiff was awarded $53,500 in damages); *Granville v. Suckafree Records, Inc.*, No. Civ. A H-03-3002, 2006 WL 2520909, at *3 (S.D. Tex. June 28, 2006) (denying plaintiff's motion for costs, observing that "[t]o prevail on but one out of several copyright claims does not in and of itself entitle Plaintiff to an award of costs…").

GW's lone cited case does not assist it. In *Rice v. Sunrise Express, Inc.*, 237 F. Supp. 2d 962 (N.D. Ind. 2002), the court noted that despite the small award of damages ($720), the plaintiff had prevailed on the "central issue in her lawsuit"—her claim that the defendant violated the Family and Medical Leave Act. *Id.* at 969. Here, there is no analogous single "central issue in [the] lawsuit." Instead, there were numerous copyrights and trademarks asserted, coupled with GW's goal of stopping Chapterhouse from selling Warhammer accessories. Neither of GW's goals came to fruition. Chapterhouse won the majority of the claims and can still sell many of the accused products.

GW did not win substantial relief, and a cost award would hurt Chapterhouse far more than the verdict at trial. Accordingly, Chapterhouse respectfully requests that GW not be awarded costs.

### III. Games Workshop Is Not Entitled To Any Costs For Its Expert, Michael Bloch, Under Rule 26(b)(4)(E).

Both GW and Chapterhouse retained expert witnesses[1] to offer evidence about English law. GW states that the court "summarily dismissed" Chapterhouse's argument on this issue and seems to suggest that this dismissal entitles GW to its costs for responding to Chapterhouse's argument. However, GW misstates both the facts and law concerning the expert witnesses.

As a factual matter, the district court did not summarily dismiss Chapterhouse's argument concerning whether certain products were copyrightable under English law. Rather, the court devoted ten pages to addressing this topic. *See* Dkt. No. 258 at 6-15.

More importantly, Federal Rule of Civil Procedure 26(b)(4)(E) requires a party to pay for the costs of ***deposing*** an opponent's expert witness. *See* Fed. R. Civ. P. 26(b)(4)(E); *see also Se-Kure Controls, Inc. v. Vanguard Prods. Grp., Inc.*, 873 F. Supp. 2d 939, 956 (N.D. Ill. 2012) ("In

---

[1] Games Workshop incorrectly states that Chapterhouse's expert witness was Mr. Bor. Chapterhouse's expert was Mr. Bently, not Mr. Bor.

general, courts in [the Northern District of Illinois] have concluded that, under Rule 26(b)(4)(E), it is reasonable for a party to recover expert witness fees from the opposing party for the time an expert spent both preparing for and attending a deposition conducted by the opposing party."). Mr. Bloch was GW's expert on English law, so Chapterhouse was certainly entitled to depose him on English law. But GW seeks numerous costs that are clearly nonrecoverable, such as those associated with Mr. Bloch's *expert report*. Further, the expert's fees must be reasonable— but GW provides no basis for this Court to make that determination. Accordingly, all the costs linked to Mr. Bloch should be denied.

GW is attempting to recover numerous costs that bear no clear relationship to Mr. Bloch's deposition. For example, the documentation that Games Workshop submitted includes charges related to Mr. Bloch's expert report, copying charges, general charges for communicating with Games Workshop's counsel by phone or email, reviewing Chapterhouse's expert report, and "Travelling to Nottingham and working on the matter." *See* Ex. G (GW Ex. I). Nothing in GW's Exhibit I indicates that any of these charges are related to Mr. Bloch's deposition. The plain language of Rule 26(b)(4)(E) provides recovery only for costs related to an expert's deposition. Consequently, Games Workshop cannot recover any charges unrelated to Mr. Bloch's deposition.

Furthermore, Games Workshop has failed to provide sufficient documentation for the court to determine exactly what fees are related to Mr. Bloch's deposition, and whether those fees are reasonable. "The party seeking reimbursement of their expert witness fees has the burden of demonstrating to the court that the expert's rate and fee are reasonable." *Se-Kure Controls*, 873 F. Supp. 2d at 955. Some of the references to Mr. Bloch's "Preparation for Deposition" in Exhibit I are lumped together with the non-recoverable charges discussed above,

making it impossible to tell what portion of the charges are actually related to the deposition. Moreover, nothing in Exhibit I identifies Mr. Bloch's hourly rate or the amount of time that he spent preparing for his deposition. In short, Games Workshop has not provided sufficient information for the court to determine whether any of Mr. Bloch's charges are reasonable, and consequently cannot recover any of the $78,360 it claims as costs for Mr. Bloch.

Moreover, in assessing whether a fee is reasonable, the court should consider any "factor likely to be of assistance to the court in balancing the interests implicated by Rule 26." *Se-Kure Controls*, 873 F. Supp. 2d at 955. "The purpose of [Rule 26] is to avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement." *Id.* at 952 (internal quotation marks omitted). Here, Chapterhouse has not requested reimbursement from GW for any costs related to GW's deposition of Chapterhouse's expert witnesses. Requiring Chapterhouse to pay GW nearly $80,000 in expert deposition fees, even though Chapterhouse is not requesting any such fees from GW, would not advance the interests of Rule 26.

**IV.    Even if Games Workshop Is Awarded Costs, It Is Only Entitled To Costs Of $121,446.75, Not $256,122.**

In order for a particular item to be compensable, the "expense must fall into one of the categories of costs statutorily authorized for reimbursement." *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000). As explained above, GW is not entitled to any of the $78,360 it claims for its expert. And as further explained below, $34,338.50 in exemplification expenses, $18,024 in witness fees, and $3,942.75 in transcript fees are not costs statutorily authorized for reimbursement, and consequently are not taxable costs under Rule 54(d)(1).

**1.    Exemplification expenses**

Under 28 U.S.C. § 1920(4), a court may tax as costs the "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." The Seventh Circuit has interpreted "exemplification" in § 1920 "as permitting an award of the reasonable expense of preparing maps, charts, graphs, photographs, motion pictures, photostats, and kindred materials." *Cefalu*, 211 F.3d at 427 (internal quotation marks omitted).

Here, Games Workshop is attempting to claim as exemplification $34,338.50 in fees paid to a trial consultant to operate equipment and display exhibits during trial. Under *Cefalu*, however, exemplification only includes expenses for producing the visual aid itself. *See id.* at 428 (noting that exemplification can include "models, charts, graphs, and the like," as well as "computer-based, multimedia displays"). Fees paid to a person who presents the visual aid at trial do not qualify as exemplification. *See Trading Tech. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 981 (N.D. Ill. 2010) (refusing to award costs to prevailing party for various consulting services when party "failed to show how such consulting services were necessary to ***creating a demonstrative exhibit***") (emphasis added).

Moreover, even if the trial consultant's services could be construed as exemplification, the "court must still determine whether [the exemplification] was 'necessarily obtained for use in the case.'" *Cefalu*, 211 F.3d at 428 (quoting § 1920(4)). Only "exemplification vital to the presentation of the information" to the court is a taxable cost. *Id.* at 429. Exemplification that is "merely a convenience or, worse, an extravagance" is not a taxable cost. *Id.* Paying a trial consultant tens of thousands of dollars to operate display equipment was a decision made for Games Workshop's convenience. Thus, even if the trial consultant's services can be construed as exemplification, those services are still not taxable as costs under Section 1920.

11

### 2. Witness fees

Under 28 U.S.C. § 1821(a)(1), "a witness in attendance at any court of the United States . . . or before any person authorized to take his deposition . . . shall be paid the fees and allowances provided by this section." Section 1821 specifies, in relevant part, that witnesses shall be paid for their actual travel expenses incurred on a common carrier, as well as a subsistence allowance. *See id.* § 1821(c)-(d). The subsistence allowance is capped by statute. *Id.* § 1821(d)(3). These witness fees and allowances may be taxable as costs under Section 1920(3), but only to the extent that they were "both reasonable and necessary." *See Soler v. Waite*, 989 F.2d 251, 255 (7th Cir. 1993). GW's requests are excessive in three respects.

*First*, with respect to witness fees for depositions, Games Workshop is attempting to claim a lodging subsistence allowance of $171 per diem for each of nine witnesses deposed by Chapterhouse in Chicago. Although $171 was the maximum per diem rate for Chicago at the time of trial, the maximum per diem rate during the time of each deposition was $130. *See* Per Diem Rates Look-Up, http://www.gsa.gov/portal/category/100120 (last visited Oct. 20, 2013). Thus, Games Workshop's costs for witnesses' lodging during depositions must be reduced by a total of $943.

*Second*, with respect to witness fees for trial, Games Workshop is seeking a subsistence allowance for witnesses on numerous days that those witnesses did not actually testify at trial. Games Workshop seeks reimbursement for six days of lodging and meals for Alan Merrett, who only testified for three days; thirteen days for Jeremy Goodwin, who only testified for one day; and fifteen days for Gill Stevenson, who served as GW's corporate representative for the ten-day trial. However, "subsistence is allowed [only] for time related to testimony and the necessary travel time to and from the place of court . . . ." *DSM Desotech, Inc. v. 3D Sys. Corp.*, No. 08 cv

12

1531, 2013 WL 3168730, at *2 (N.D. Ill. June 20, 2013). Section 1821 does not allow subsistence for time spent preparing for trial. *See id.* at *1 ("The statute refers only to attendance and not preparation."). Thus, the witnesses are entitled to a lodging and meals subsistence allowance only for the days they testified or were otherwise necessarily present in court, plus one travel day before and one travel day after. This means that Merrett, Goodwin, and Stevenson are entitled only to five, three, and twelve days subsistence, respectively. Games Workshop's claimed costs for these witnesses' lodging and meals consequently must be reduced by $3,388.

*Third*, with respect to two particular witnesses, GW has not established that its requested travel expenses are reasonable. Alan Merrett's airfare is nearly *twice* that of any other trial witness. And Andy Jones's airfare is nearly *twice* that of any other deposition witness. GW has not provided any justification for these disparate costs. Accordingly, GW cannot recover their $13,693 in travel expenses.

### 3. Transcript fees

Section 1920(2) allows a court to tax as costs the "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." However, "[t]he costs of additional services, beyond the regular transcription service, are not recoverable when incurred solely for the convenience of counsel." *DSM Desotech*, 2013 WL 3168730, at *4. "Generally, condensed transcripts, electronic copies, etc. are considered to be obtained for the convenience of counsel." *Id.*

The receipts that Games Workshop submitted in support of its request for $40,248 in transcript fees include $3,942.75 for services that were merely for the convenience of counsel. Specifically, the receipts include $313 for "CD Depo Litigation Packages," $3,358.75 in rough drafts, $120 in digital transcripts, $46 in condensed transcripts, and $105 in transcript

summaries.  Thus, Games Workshop's taxable costs for transcripts must be reduced by

$3,942.75.  *See id.*

## CONCLUSION

For the foregoing reasons, GW's Petition for Costs should be denied.  Chapterhouse can

still sell many of the accused products, having won approximately 70% of the claims asserted by

GW in this litigation.  GW can hardly be said to have won substantial relief.  In the alternative,

GW's cost award should be reduced as specified in this Opposition.

Dated: October 24, 2013                           Respectfully submitted,

                                                  /s/ Imron T. Aly

                                                  Jennifer A. Golinveaux (CA Bar No. 203056)
                                                  Thomas J. Kearney (CA Bar No. 267087)
                                                      WINSTON & STRAWN LLP
                                                      101 California Street
                                                      San Francisco, CA 94111-5802
                                                      Phone: (415) 591-1000
                                                      Fax: (415) 591-1400
                                                      jgolinveaux@winston.com
                                                      tkearney@winston.com

                                                  Imron T. Aly (IL Bar No. 6269322)
                                                  Bryce A. Cooper (IL Bar No. 6296129)
                                                  Tyler G. Johannes (IL Bar No. 6300117)
                                                      WINSTON & STRAWN LLP
                                                      35 West Wacker Drive
                                                      Chicago, IL 60601-1695
                                                      Phone: (312) 558-5600
                                                      Fax: (312) 558-5700
                                                      ialy@winston.com
                                                      bcooper@winston.com
                                                      tjohannes@winston.com

                                                  Julianne M. Hartzell (IL Bar No. 6275093)
                                                  Sarah J. Kalemeris (IL Bar No. 6303644)
                                                      MARSHALL, GERSTEIN & BORUN LLP
                                                      233 S. Wacker Drive
                                                      Willis Tower Suite 6300
                                                      Chicago, IL 60606

15

Phone: (312) 474-6300
Fax: (312) 474-0448
jhartzell@marshallip.com
skalemeris@marshallip.com

# <u>CERTIFICATE OF SERVICE</u>

I, Imron T. Aly, filed CHAPTERHOUSE STUDIOS' OPPOSITION TO GAMES WORKSHOP'S PETITION FOR COSTS with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.


_____/s/  Imron T. Aly_____