IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES<br><br>Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly |

## GAMES WORKSHOP OPPOSITION TO CHAPTERHOUSE MOTION FOR JUDGMENT AS A MATTER OF LAW

Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: jkeener@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-3229
Email: jmoskin@foley.com

Attorneys for Plaintiff
Games Workshop Limited

**PRELIMINARY STATEMENT**

In its June 10, 2013 JMOL motion (Dkt. 388), Chapterhouse raised four grounds for relief.[1] It has now improperly added at least three entirely new grounds[2] and thoroughly recast some of its prior arguments – for instance, its prior (inaccurate) argument about alleged lack of actual confusion is now a new broad argument about alleged failure to prove a likelihood of confusion. In all such instances, its new arguments beyond its original Rule 50(a) motion are improper and should be denied. *Jimenez v. City of Chicago*, 877 F. Supp. 2d 649, 672-73 (N.D. Ill. 2012) (Kennelly, J.) Moreover, Chapterhouse has also failed to tie its new arguments to the specific copyrights or trademarks in issue. Instead (evidently because its brief was already over-long), Chapterhouse simply attached to the brief a ten page list of trademarks and copyrights that are somehow implicated by the motion. However it is unclear to Games Workshop how many of the arguments relate to these lengthy lists. (To the extent Chapterhouse has simply sought to circumvent the page limit, the list should be disregarded.) The motion also unapologetically raises issues directly at odds with the Court's prior rulings on summary judgment, including with respect to trademarks the Court previously held valid and the copyrightability of specific works the Court previously ruled on.

**ARGUMENT**

1. <u>Games Workshop Proved Trademark Ownership</u>

On April 1, 2013, the Court granted summary judgment that Games Workshop owned 82 of the trademarks in issue, based largely on Mr. Villacci's admission he knew they were in prior use in

---

[1] The four grounds raised by Chapterhouse's Rule 50(a) motion were: (1) no proof of "likelihood of confusion" for trademark claims based on Ms. Stevenson's statements; (2) no proof that 13 trademarks were used as trademarks; (3) no proof that any of Games Workshop's works were original; and (4) judgment required on claims dropped during trial. (Dkt. 388)

[2] The entirely new grounds improperly raised by Chapterhouse's Rule 50(b) motion are: Argument IV – Games Workshop's copyrights are based on unprotectable ideas or utilitarian concerns; Argument V – Chapterhouse's use of Games Workshop's alleged trademarks is normative fair use; and Argument VI – Games Workshop's alleged marks are not valid trademarks. (Dkt. 410) Other new grounds are noted below in context.

commerce. (Dkt. 333 at 13-15). In its June 10 JMOL motion, Chapterhouse identified 13 marks[3] for which summary judgment had not been granted that it challenged for alleged failure to prove sufficient use in commerce. (Dkt. 388 at 6). In its new JMOL, it now identifies a different list of 14 marks.[4] Chapterhouse's new challenge to four new marks (Heavy Flamer, Lascannon, Lightning Claw and Jump Pack) is improper under Rule 50(b) and must be rejected. Jimenez, supra. To the extent Chapterhouse has not explained its position as to any other marks, Games Workshop is unable to defend the motion, and it must be denied. It would, of course, be unfair for Chapterhouse to present such arguments for the first time in its reply. See, *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("…an argument raised for the first time in a reply brief is forfeited.")

Moreover, Chapterhouse's contention that some of Games Workshop's marks are not associated with Games Workshop as trademarks is inconsistent with its argument (*infra* §5) that its use of those very same trademarks is a nominative fair use – such that it *must* use Games Workshop's trademarks because they are the only way identify the Games Workshop products for which it is seeking to demonstrate (to consumers) compatibility. It does not distinguish among the marks it says it must use (because they are so closely associated with Games Workshop) and those it now wants to argue have no such association.

In *Plastic Co. v. Warner Commns, Inc.*, 675 F.2d 852 (7th Cir. 1982) and *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76 (2d Cir. 1981), defendant sought to capitalize on the recognition of the "Dixie Racer" car in plaintiff's "Dukes of Hazard" television series before a licensed version

---

[3] Tyranid Bonesword, Tyranid Lashwhip, Mycetic Spore, Ymgarl, Blood Ravens, Exorcist, Tervigon, Exorcist Skull Icon, Howling Griffons Icon, Iron Snakes Icon, Soul Drinkers Icon, Scythes of the Emperor Icon and Hammers of Dorn Icon.

[4] Heavy Flamer, Lascannon, Blood Ravens, Exorcist, Jump Pack, Lightning Claw, Mycetic Spore, Tervigon, Ymgarl, Exorcist Skull Icon, Iron Snakes Icon, Soul Drinkers Icon, Scythes of the Emperor Icon and Hammers of Dorn Icon. Chapterhouse has appeared to drop its position with respect to three marks: Tyranid Bonesword, Tyranid Lashwhip, and Howling Griffons Icon. (CHS Ex. A at 1)

was made. Such a deliberate attempt to trade on plaintiff's goodwill constituted infringement and unfair competition in violation of Section 43(a) of the Lanham Act notwithstanding that Warner Brothers had not yet commenced actual sales. Similarly, *Johnny Blastoff Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 433-434 (7th Cir. 1999), upheld the football team's rights in the St. Louis Rams trademark before actual use in commerce had begun. Said the court: "The party seeking to establish appropriation of a trademark must show first, adoption, and second, 'use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of [the adopter of the mark].' *Id.*, quoting *New West Corp. v. NYM Co. of Cal., Inc.*, 595 F.2d 1194, 1200 (9th Cir. 1979). "The party who first appropriates mark through use, and for whom the mark serves as a designation of source, acquires superior rights to it [Citation omitted]. Evidence of actual sales is not necessary to establish ownership." 188 F.3d at 434. The court further explained:

> For the purpose of establishing public identification of a mark with a product or service, the fact-finder may rely on the use of the mark in "advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications," *T.A.B. Systems v. Pactel Teletrac*, 77 F.3d 1372, 1375 (Fed. Cir. 1996), as well as in media outlets such as television and radio. See *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 1125 (Fed. Cir. 1985).

188 F.3d at 434. Accord, *D. C. Comics, Inc. v. Powers*, 465 F. Supp 843 (S.D.N.Y. 1978) (Daily Planet so closely associated with the Superman story as to be likely to cause confusion). There was no dispute at trial that Chapterhouse uses Games Workshop's names for almost all of its products because of the valuable commercial associations that it can exploit. (*see e.g.*, Trial Tr. 836:7-837:20 (regarding Exorcist); 913:8-19 (regarding Jump Pack); and 913:20-914:5 (regarding products generally)).

Without addressing applicable Seventh Circuit law discussed with the Court when the prior directed verdict motion was argued (Trial Tr. 1347:22-1349:2), Chapterhouse cites two inapposite

3

cases[5] from the Trademark Trial and Appeal Board, an administrative body that lacks authority to resolve claims under Section 43(a) of the Lanham Act. Nor, of course, do they trump Seventh Circuit rulings. Here, it is clear that everything Chapterhouse makes is meant to trade on the success and popularity of the prior Games Workshop models. That is the very basis for its nominative fair use defense. As Mr. Villacci himself summarized his philosophy of trading on the association between of the icons with Games Workshop: "It is hard to predict what people will buy when it comes to existing chapters, how close to the original Iron Hands icon do we have to stay to make some money off it?" (PEX 744, attached as Exhibit 1.)

To this one argument, Chapterhouse now adds three wholly new arguments not presented in its June 10 JMOL motion, all of which must be denied on that ground alone. *Jimenez, supra.*

First, Chapterhouse argues incorrectly that Games Workshop only demonstrated a single exemplar of use. Without any legal citation, Chapterhouse asserts this is somehow deficient. In fact, Games Workshop presented sales data for each of its marks showing ongoing sales on many products (PEX 865 at 5-7, attached as Ex. 2). Nor is there any known legal requirement that a mark must be used on a variety of goods for it to be protected. For instance, Prius is a perfectly good trademark for cars even though it is used on only one type of automobile. To be sure, there are some cases holding for a special class of goods, books, that a title must be used on more than one volume, but that is the exception that proves the rule. "Soul Drinkers," for instance, refers to a series of 7 books (not just one - not to mention additional ebooks) and a character name; and Chapterhouse promotes its accused products bearing the subject chalice icon (Verdict Form No. 20)

---

[5] *In re DC Comics, Inc.*, 689 F.2d 1042, 1043 n.1 (C.C.P.A. 1982), arguably supports Games Workshop's position in finding registrable as trademarks DC's Superman, Batman and Joker figures despite the comment in a footnote by concurring Judge Nies expressing reservations on technical grounds that the figures might not be trademarks. *Paramount Pictures Corp v. Romulan Invasions*, 7 U.S.P.Q.2d 1897 (T.T.A.B. 1988), was similarly limited to 15 U.S.C.§ 1052 to registrability, not the broader standards applied by federal courts under Section 43(a), 15 U.S.C.§ 1125(a).

4

by calling them "Soul Drinker shoulder pads." (Bartertown Postings, PEX 6 at 1, 7-8, attached as Ex. 3.) Second, without addressing with specificity any particular marks, it says that some of the fourteen trademarks have not been used in a sufficiently distinctive way because they are not the complete title of something specific. To the contrary, virtually every challenged mark is the specific name or icon for a specific thing or character (such as Mycetic Spore, Tervigon or Ymgarl); a specific device or weapon (such as Lascannon or Lightning Claw – none of which was even mentioned in the June 10 JMOL motion) or a specific Chapter of the Space Marines (such as the Soul Drinkers mentioned above). No argument has been presented as to any specific mark and no such argument was found in the original JMOL motion. *Jimenez*, *supra*. Even if Chapterhouse had identified any such mark that is not the complete title of something, there is no requirement that a mark always be presented as a whole. Just as "Coke" is a recognizable shorthand for Coca-Cola, what matters is consumer recognition and likelihood of confusion – even if the mark owner itself never uses the foreshortened version of its mark. *Johnny Blastoff, Inc.*, 188 F.3d at 434, citing *Coca-Cola Co. v. Busch*, 44 F. Supp. 405, 409-10 (D. Pa. 1942) ("Coke"protectable trademark for "Coca-Cola"). Third, it says that four marks identified with a product[6] were not used in a sufficiently distinctive way. However, once again, these marks were not mentioned and this argument was not raised in the original JMOL and can not be raised now. Indeed, by way of example, as to the mark Jump Pack, Mr. Villacci conceded at trial that he picked the name Jump Pack for his competing product precisely because he recognized it was so well associated with Games Workshop. Trial Tr. 913:8-19; See *Johnny Blastoff, Inc*. The same is true of all of the other marks Chapterhouse now challenges, which is why its arguments are directly at odds with its separate contention that it MUST use Games Workshop's trademarks in order to identify its competing goods – addressed below in the discussion of its nominative fair use defense.

---

[6] Heavy Flamer, Lascannon, Lightning Claw and Jump Pack.

5

2. <u>Games Workshop Proved A Likelihood of Confusion</u>

The jury ruled that Chapterhouse infringed 64 trademarks, 38 of which were not deemed a fair use. Chapterhouse contends the jury verdict was somehow in error, but it does not identify any specific mark for which it would assert the verdict was not adequately supported. Rather, Chapterhouse just appends to its over-long brief a list of all 64 marks found to be infringed.

Chapterhouse's JMOL motion also substantially recasts its original June 10 motion. That earlier motion was premised ***solely*** on the testimony of Games Workshop's witness, Gillian Stevenson. (Dkt. 388 at 4-5). Chapterhouse contended that Ms. Stevenson testified at trial that the pendency of the litigation and publicity surrounding it had suppressed evidence of actual confusion, because the people most likely to comment on the matter were aware of the adversarial relationship of the parties. However, now that the litigation is over and Chapterhouse is able to continue selling at least some products, that factor is no longer operative. Moreover, notwithstanding the pendency of the litigation, there were numerous instances of actual confusion, showing Ms. Stevenson's assessment was simply one point of evidence among other more persuasive proofs. For instance, although Chapterhouse failed to save any of its internet forum posts, Games Workshop on its own found Exhibit PEX 168 at 8 (a Warseer post from 8/25/2010, attached as Ex. 4) in which a prospective customer inquired "So are you guys licensed by GW?" Chapterhouse's failure to preserve such evidence disables it even from arguing how many or few such incidents there have been. Other emails sent directly to Games Workshop also demonstrate actual confusion. *See* Ex PEX 107, attached as Ex. 5 ("I don't know if they are doing this under license"; "is this legal"; "my question is are they legit?") Even when Chapterhouse has on rare occasions picked different names for its products, its customers refer to them using Games Workshop's names.[7] The fact that a third

---

[7] "The new Eldar Scorpion turned out quite nice." (PEX 681 at 6, attached as Ex. 6) "The idea with the true scale Space Marine is awesome." (PEX 653, attached as Ex. 7) "As requested,

party was reselling her Chapterhouse products on eBay as if they were genuine Games Workshop goods (PEX 1008 and 1009, jointly attached as Ex. 9) also demonstrates actual confusion – as well as why customers in general are *likely* to be confused. Although the law is clear that such instances are not required to prove a likelihood of confusion, it is also clear that even one or two instances are highly probative. *See, e.g.*, *Pride Communications LP v. WCKG, Inc.*, 851 F. Supp. 895, 902 (N.D. Ill. 1994) (single inquiry as evidence of actual listener confusion: "any such evidence is deemed 'substantial evidence' that confusion is likely.")

Chapterhouse's original JMOL motion made no mention of any purported failure by Games Workshop to satisfy the other factors relevant to proving likelihood of confusion, and those arguments are now waived. *Jimenez*, *supra*. Review of Chapterhouse's new arguments based on those other factors confirms why the jury was entitled to conclude confusion is likely. (i) The marks used by Chapterhouse are in every instance *identical* to the corresponding Games Workshop marks. (ii) Mr. Villacci obviously picked the marks *intending* to capitalize on the recognition Games Workshop had already established for its marks (as he admitted with regard to even one of the few marks that is less inherently distinctive, namely Jump Pack, Trial Tr. 913:8-19). (iii) Most of the marks in issue (such as Tyranid or Eldar or Crimson Fists) are fanciful or, as demonstrated in Section 6 below, are arbitrary as applied to the goods and hence inherently distinctive and strong. Games Workshop also submitted extensive sale records (PEX956, Ex. 2) to prove acquired distinctiveness. (iv) The goods are *identical* and *directly competing*. (v) The products are all inexpensive and there is no evidence to support Chapterhouse's contention that its consumers are sophisticated. These factors, together with substantial evidence of actual confusion, hence overwhelmingly support the jury's finding of likelihood of confusion.

---

here's an email so I can get more info, pics, prices and ordering instructions on the TS Marine kits" (PEX 655 at 5, attached as Ex. 8).

Although Chapterhouse now belatedly argues that that the presence of the overall context of the Chapterhouse website may help avoid some confusion, the mere presence of a disclaimer at the bottom of a page proves nothing as they are routinely ignored by consumers. *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1093 (7th Cir. 1988); *Au-Tomotive Gold Inc. v. Volkswagen of America Inc.*, 457 F.3d 1062, 1077 (9th Cir. 2006). Chapterhouse also sells its own goods on eBay (*see* PEX 5 and 644, jointly attached as Ex. 10) and markets them on the internet forums. Given Mr. Villacci's failure to preserve *any* of his eBay postings or his postings on the internet forums, he is hardly in a position now to add an argument not contained in his June 10 JMOL motion that something about the Chapterhouse website prevents confusion. Likewise, third party postings on eBay show how, in the post-sale context, purchasers from Chapterhouse are likely to try to resell its products as genuine Games Workshop products. (PEX 1008, 1009, Ex. 9) Chapterhouse ignores entirely post-sale confusion in its motion. See *CAE, Inc. v. Clean Air Eng'g Inc.*, 267 F.3d 660, 683 (7th Cir. 2001) (recognizing post-sale confusion).

3. <u>Games Workshop Proved Originality</u>

Chapterhouse adds an entirely new argument, not contained in its original JMOL motion (and hence waived, *Jimenez*, *supra*) that the iconic Space Marine shoulder pad should not be deemed copyrightable under the *scenes a faire* doctrine. The motion ignores both that the Court held just the opposite in granting summary judgment that the design is copyrightable (11/27/12 Mem. Dec. at 18-21, Dkt. 258.) and that the Court reaffirmed its earlier decision when Chapterhouse moved again on the same grounds. (4/1/2013 Mem. Dec. at 11, Dkt. 333.) As at trial, Chapterhouse's new motion fails to satisfy any of the elements of the test. *Atari Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 616 (7th Cir. 1982), ("Scènes à faire generally involve 'incidents, characteristics or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic, what flows naturally from these basic plot

premises.'") Indeed, as Games Workshop has argued in its own JMOL motion, the testimony of both of Chapterhouse's purported experts might well have been stricken because neither made any attempt to satisfy the *scenes a faire* defense. Instead, they simply found at most one or two examples of use of isolated design elements without the least effort to show any such element was standard, much less indispensable. See, GW Motion at 3-6, Dkt. 408.

Chapterhouse challenges the originality of numerous products not mentioned in its original JMOL motion. These new arguments are not only untimely, *Jimenez*, *supra,* but demonstrate the fallacy of all of Chapterhouse's arguments in this regard, which consist solely of improper dissection of the overall works into constituent elements. As noted, Chapterhouse ignores that the Court twice granted summary judgment that the iconic Space Marine shoulder pad is copyrightable. It then entirely misconstrues Jes Goodwin's trial testimony demonstrating the virtually limitless range of shoulder pad designs available if one wished to create a shoulder pad design for any figure, including a Space Marine. (Trial Tr. 1603:16-1607:24) Likewise, it ignores the testimony of Bob Naismith explaining the purely aesthetic and original choices he made in designing the original Space Marine and its shoulder pad. (Trial Tr. 533:5-536:13.) None of these arguments even begin to address the purely aesthetic choice to add indents on the rear side of the shoulder pad to give it a more unique appearance, all of which Chapterhouse slavishly copied for admittedly aesthetic reasons. (Trial Tr. 301:9:302:20; 1313:7-12.)

Chapterhouse asserts conclusorily that the Iron Snakes design, use of Roman numerals combined with Arrow or X designs for Tactical or Assault Space Marines are unoriginal, ignoring that Games Workshop has never argued it created snakes in general or Roman numerals or arrows, but rather that it created its own specific snake design and uses its own specific Arrow and X designs together with Roman numerals in entirely original *combinations*, including placing them on uniquely designed shoulder pads (whereas medieval armor used no designs at all) and using them in

9

combination with other names and symbols (including the words Tactical, Devastator and Assault and specific ranges of Roman numerals) to create an entirely new arrangement that Chapterhouse has copied in precisely the way created by Games Workshop. It is telling that neither of Chapterhouse's experts was able to find any direct or even remotely similar parallels to the original designs in issue. The only example of a heraldic figure Chapterhouse could find in any way similar to Games Workshop's icons is a rampant lion (for which the jury concluded there was no copyright infringement – Verdict at A.6-7). As the Court held on November 27, 2012:

> "It is true that common geometric shapes cannot be copyrighted." *Kelley v. Chicago Park Dist.*, 635 F.3d 290, 303 (7th Cir. 2011). Yet although GW could not base its copyright claim on a depiction of an "X" or a chevron alone, its depiction of that otherwise-common element affixed on an original, creative shoulder pad with a distinctive color scheme is sufficient to satisfy the originality requirement. See *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005) ("When an author combines [otherwise non-protected] elements and adds his or her own imaginative spark, creation occurs, and the author is entitled to protection for the result."); *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (2d. Cir. 2003) ("[T]he defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art . . . are considered in relation to one another.") (Mem. Dec. at 20-21.)[8]

Regarding the only argument that Chapterhouse actually made in its original Rule 50(a) motion (and hence, which is even properly before this Court under Rule 50(b)), the Court explained the meaning of "originality" in its November 27, 2012 opinion:

> "To qualify for copyright protection, a work must be original to the author." *Feist*, 499 U.S. at 345. Originality in the copyright context "means only that the work was independently created by the author and that it possesses at least some minimal degree of creativity." *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 519 (7th Cir. 2009). This low threshold permits even a small amount of creativity to render a product protectable under copyright law. *Feist*, 499 U.S. at 345 ("[T]he requisite

---

[8] See also *Bucklew v Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 926 (7th Cir. 2003) (all expressive works can be dissected into constituent elements improperly disregarding that it is "the combination of elements, or particular novel twists given to them, that supply the minimal originality required for copyright protection.")

.

> level of creativity is extremely low; even a slight amount will suffice."). Thus Chapterhouse cannot defeat GW's claims merely by pointing to evidence of prior similar works. *FASA Corp. v. Playmates Toys, Inc.*, 912 F. Supp. 1124, 1147 (N.D. Ill. 1996); see also *Feist*, 499 U.S. at 345 ("Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.")

(Mem. Dec. at 18-19.) See also *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001) (originality does not mean novelty but only that a work was not copied and has some minimal creativity). Games Workshop was only required to prove originality by a preponderance of the evidence. Chapterhouse's motion ignores most of the evidence presented, all of which was unrebutted. Not only did Alan Merrett testify that he instructed designers to be original (Trial Tr. 310:12-22; 390:16-21; 391:5-10), he testified he actually oversees and works directly with designers. (Trial Tr. 184:2-5; 310:12-22) He also was directly involved in creating many of the chapter icons (Trial Tr. 199:16-200:14) Such direct oversight and involvement demonstrates why Mr. Merrett, as [global head of IP] has personal knowledge of the originality of the design process. Moreover, without objection from Chapterhouse, in every instance when Mr. Merrett was asked to evaluate similarities between the Games Workshop designs and the accused Chapterhouse designs, he was asked specifically to identify only those elements that are *original* (*e.g.,* Trial Tr. 266:22-24; 270:15-18; 281:2-5; 283:13-16; 286:19-22; 296:7-9; 303:25-304:2; 305:9-10; 306:13-15) Bob Naismith likewise testified to the development of the original Space Marine figure, which he said drew inspiration only loosely from dozens of disparate sources in making innumerable design choices that were synthesized into a wholly new creation. (Trial Tr. 533:5-536:13)

Chapterhouse mischaracterizes the testimony of other designers, who testified that they consult sources for things such as the scales on a lizard or the way mud hangs off a tank – elements Chapterhouse is not even accused of copying. Chapterhouse's inability to obtain a single relevant admission from any designer despite days of depositions, its inability to find any *actual* antecedents for any of the *actual* designs in issue (as distinct from isolated elements of the designs – including

11

in any of the many books it reviewed at Games Workshop's facilities) fully confirms the originality of the designs actually in issue in this case. Likewise, Mr. Goodwin never testified that any design actually in issue was "regurgitated" from any relevant other source. Rather, he showed the many design choices that went into designing the Space Marine figure, including its shoulder pad, which is fully consistent with the Court's grant of summary judgment on this issue. Instead, Chapterhouse simply sought to mislead the jury by citing grossly out of context statements having nothing to do with the actual issues raised.

The very success of the Warhammer 40,000 series – and Chapterhouse's own single-minded focus on copying – are testament to the originality of the "numerous aesthetic decisions embodied in the plaintiff's work." *Tufenkian Import/Export Ventures, Inc.*, 338 F.3d at 134. Chapterhouse certainly presented no evidence to challenge originality, and Mr. Merrett's testimony must be seen in context as consistent with the testimony of Chapterhouse and its own experts, none of whom was able to identify anything more than random isolated elements from the prior art.

4. <u>Defendant Has Identified No Bare Ideas That Were the Basis of Infringement</u>

Another new issue raised for the first time in Chapterhouse's JMOL motion that did not appear in the June 10 motion is the contention that Games Workshop's works consist of uncopyrightable ideas. Not only was this argument waived, *Jimenez, supra,* but the Court's November 27, 2012 summary judgment ruling already rejected the very argument Chapterhouse now raises. Specifically ignoring that ruling, the only design other than the shoulder pad (which the Court repeatedly ruled is copyrightable) that Chapterhouse now challenges is "Product 3" (the Chaplain Head). The Court already ruled, however:

> A skull is not protectable on its own, but GW's particular depiction of a *Chaplain in entry 3*, which includes a skull with red eyes that wears a helmet, is copyrightable. As to the other GW products in entries 63, 83, and 104, when reproduction of an animal or other lifelike object is the subject of claimed copyright protection, "a copyright holder must then prove substantial similarity to those few aspects of the work that are expression not required by the idea." Wildlife Exp. Corp. v. Carol

12

> Wright Sales, Inc., 18 F.3d 502, 508 (7th Cir. 1994). Although GW's works in entries 83 and 104 do depict wolves, they do so in a creative and non-required way. The wolf is pictured snarling sideways or with its snout pointed downward facing forward, its eyes are represented by slits (sometimes pictured in red), and it has sharp edges behind its head representing the hair on its neck. The dragon depicted in entry 63 is based on the particularized design, shown sideways with its mouth open and pointed scales behind its head. It is on these bases that GW alleges infringement, not the mere, uncopyrightable depiction of a wolf, dragon, or skull by itself. Because GW alleges infringement based on the unique and creative aspects of its works, Chapterhouse is not entitled to summary judgment on the basis that the GW products in entries 63, 83, and 104 are not protected by copyright.

(Mem. Dec. at 21-22; emphasis added.) No such ideas were identified in the prior summary judgment motion or June 10 JMOL motion, and no such ideas are identified in the present motion.

5. <u>Defendant's Did Not Prove Nominative Fair Use</u>

Chapterhouse did not address its nominative fair use defense in its June 10 motion and has thus waived the argument. *Jimenez*, *supra*. Even now, it has not argued why any specific trademark uses should be deemed fair. The motion is thus deficient. Moreover, as set forth in Games Workshop's own JMOL motion (at 13-15), even as to those products where the jury did find fair use, the fair use defense must be deemed inapplicable where, as here, the underlying works are unlawful. Focusing on its home page, which prominently stated "Customizing in Custom Sculpts and Bits for Warhammer 40,000," and which prominently used numerous Games Workshop trademarks for sale of products affiliated only with Games Workshop, Chapterhouse suggests without argument that such use must be deemed fair. In fact, its overwhelming and exclusive focus on Games Workshop would easily be understood by consumers as a license arrangement (which is consistent with many examples of actual confusion cited above (*supra* § 1). *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947,953-54 (7th Cir. 1992) (use of a mark as an "attention-getting symbol" in advertising is not a fair use). And Chapterhouse preserved none of its eBay postings or internet forum postings, so the jury was entitled to infer that none of these uses was fair

13

– as demonstrated by the eBay postings Games Workshop *was able* to find. As noted above (*supra* § 2) the mere presence of a disclaimer proves nothing as they are routinely ignored by consumers.

Moreover, Chapterhouse's position that it must use all of Games Workshop's trademarks in order to identify the Games Workshop products for which it is seeking to demonstrate (to consumers) compatibility, is inconsistent with its contention that those terms are not associated with Games Workshop as trademarks (*supra* § 1 and *infra* § 6).

6. Games Workshop's Trademarks Are Valid

As with most of its arguments supporting JMOL, Chapterhouse's contention that some of Games Workshop's trademarks are not inherently distinctive was not presented in its June 10 motion and has been waived. *Jimenez, supra.* Chapterhouse's argument also fails to apprehend the meaning of the distinctions along the spectrum of distinctiveness of marks. See *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 et seq. (2d Cir. 1976), distinguishing among fanciful, arbitrary, suggestive, descriptive and generic terms. Of the seven marks it now challenges, Librarian, Tyrant, Predator, Salamander and Legion of the Damned were all ruled valid trademarks in the Court's April 1 summary judgment decision and, according to the distinctions among types of marks, these five and each of the other two challenged marks are, as a matter of law, *arbitrary* and hence *inherently distinctive* as applied to futuristic warriors or fighting vehicles. Exorcist does not literally describe futuristic warriors any more than Apple (which is generic for fruits) describes computers. Rhino similarly does not literally describe make-believe tanks. It and the other five marks describe nothing about the subject science fiction figures and all of the marks are arbitrary and hence inherently strong. Because Legion of the Damned is a coined phrase, it would likely be fanciful, but the result is the same: it is inherently strong as a matter of law.

7. <u>Chapterhouse Has Identified No Grounds For A New Trial</u>

For the reasons stated above, Chapterhouse's motion identifies no specific respect in which it believes a new trial would be warranted. The jury's verdict was not againt the "manifest weight of the evidence." *Mejia v. Cook County, Ill.*, 650 F.3d 631, 633 (7th Cir. 2011).

8. <u>There Are No Disputed Issues As To One Claim Dropped During Trial</u>

Games Workshop does not dispute that in an effort to narrow the issues in dispute it dropped its copyright infringement claim for Deathwatch Ruinic (product 9) and its trademark infringement claims for Aquila, Eagle, Games Workshop, GW, Cadian, Eldar Seer Council, MK II Armor, Melta, and Plasma. Consistent with its position on earlier dropped claims, Games Workshop does not oppose entry of judgment of noninfringement with respect to these claims.

## CONCLUSION

For the foregoing reasons, Chapterhouse's motion should be denied in its entirety together with such other and further relief as the Court deems just and proper.

Dated: October 24, 2013

Respectfully submitted,
/s/ Jason J. Keener

Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: jkeener@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-3229
Email: jmoskin@foley.com

*Attorneys for Plaintiff*
*Games Workshop Limited*

## CERTIFICATE OF SERVICE

I, Jason J. Keener, an attorney, hereby certify that on October 24, 2013, I caused to be filed electronically the foregoing PLAINTIFF'S OPPOSITION TO MOTION FOR JUDGMENT AS MATTER OF LAW with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

      /s/ Jason J. Keener
      Jason J. Keener