IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAMES WORKSHOP LIMITED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:10-cv-08103 |
| v. | ) |
| | ) |
| CHAPTERHOUSE STUDIOS LLC, | ) |
| | ) Judge Matthew F. Kennelly |
| | ) |
| Defendant. | ) |

**CHAPTERHOUSE STUDIOS' REPLY IN SUPPORT OF ITS BILL OF COSTS**

Chapterhouse is the prevailing party in this case and thus is entitled to its costs. *See* Fed. R. Civ. P. 54(d)(1). Games Workshop ("GW") brought this action to shut down—or, at a minimum, radically alter—the business of Chapterhouse, claiming in a letter to Chapterhouse that "all of the 106 products currently marketed on your website infringe in some way our client's intellectual property rights." Ex. A at 5. (DX-175.) *See also* Ex. B at 1 (requesting that Chapterhouse "cease all such sales") (DX-639). But GW failed—Chapterhouse can still sell many of those products. And factoring in summary judgment, trial, and dropped claims, Chapterhouse won *over two-thirds* of GW's copyright and trademark claims. GW was only successful in obtaining a small fraction of the damages it initially sought. Indeed, GW would not have invested in this case as heavily as it did simply to slap Chapterhouse on the wrist.

In a case such as this, where a defendant has achieved "substantially all the benefits [it] hoped to achieve in defending the suit," courts have not hesitated to consider it the prevailing party. *See Equinox Software Sys., Inc. v. Airgas, Inc.*, No. Civ. A. 96-3399, 2001 WL 1159846, at *2 (E.D. Pa. Sept. 5, 2001) (concluding defendant was prevailing party even though the jury

1

rejected defendant's counterclaims) (internal quotation marks and citation omitted). Additionally, courts have not been deterred from awarding costs where the defendant was not successful in defending all of the claims against it. *See Florentine Art Studio, Inc. v. Vedet K. Corp.*, 891 F. Supp. 532, 541 (C.D. Cal. 1995) (finding defendants were prevailing parties where they won on seven of nine infringement counts).

Chapterhouse recognizes that this is a mixed judgment case and understands the Court's view that in such a case, seeking attorney's fees may not be warranted. Chapterhouse therefore did not seek fees in this case. But Chapterhouse is, on balance, the prevailing party and should be reimbursed out-of-pocket costs that were imposed based on GW's overreaching claims.

## I. Chapterhouse Is The Prevailing Party And Is Entitled To Costs.

No matter how the case is sliced, Chapterhouse won substantial relief. *See Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009) (per curiam) (holding that a party prevails under Rule 54(d) when a final judgment awards it substantial relief); *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 641 (7th Cir. 1991). GW suggests that the only thing that matters is that it won ***something*** at trial. But that standard would slant Rule 54(d) in favor of plaintiffs. This is not the law; costs are equally available to prevailing plaintiffs and defendants. *Cf. Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) (explaining that under the cost-shifting provision of the Copyright Act, "[p]revailing plaintiffs and prevailing defendants are to be treated alike"). Here, Chapterhouse successfully defended against dozens of claims and hundreds of thousands of dollars in potential damages. Therefore, Chapterhouse is the prevailing party whether one considers the number of claims, the parties' litigation goals, or the amount of damages.

### A. Chapterhouse won the vast majority of the claims asserted.

Chapterhouse won over *two-thirds* of the copyright claims asserted in this action. More specifically, Chapterhouse won 34 copyright claims on summary judgment. (11-27-12 Summary Judgment Order, Dkt. No. 258 at 7, 35; 4-1-13 Summary Judgment Order, Dkt. No. 333 n.2.) At trial, Chapterhouse won an additional 67 copyright claims. (Judgment, Dkt. No. 403-1 at 1.) All told, Chapterhouse can continue to sell, without modification, at least two-thirds of the accused products.

Similarly, Chapterhouse won over *70%* of the asserted trademark claims. Though GW added and dropped marks throughout the case, a comparison of its interrogatory responses reveals that GW asserted infringement of over 140 unique marks. *See* Ex. C, Pl.'s Second Supplemental Resp. to Def.'s Interrogs. Set Four (listing asserted marks); Ex. D, Pl.'s Fourth Supplemental Resp. to Def.'s Interrogs. Set Four (same). But only 92 trademarks remained for trial. Of these, Chapterhouse won on 54. (Judgment at 1.) And Chapterhouse won summary judgment on GW's federal and state dilution claims. (Dkt. No. 258 at 35-36.) On sheer math alone, Chapterhouse is the prevailing party.

### B. Chapterhouse, not Games Workshop, achieved its litigation goal.

By any metric, Chapterhouse met its litigation goal: it can still sell the vast majority of products GW had accused of copyright infringement and can still use GW's trademarks to inform consumers that Chapterhouse products are compatible with GW products. In a case such as this, where a defendant in a copyright case has achieved "substantially all the benefits [it] hoped to achieve in defending the suit," courts have not hesitated to consider it the prevailing party and award costs. *Florentine Art Studio*, 891 F. Supp. at 541 (finding defendants were prevailing parties where they won on seven of nine infringement counts, were found merely to be

innocent infringers on the remaining two, and were assessed the minimum statutory damages); *Equinox Software Sys.*, 2001 WL 1159846, at *2 (concluding defendant was prevailing party even though the jury rejected defendant's counterclaims because the defendant "achieved substantially all the benefits [it] hoped to achieve in defending the suit") (internal quotation marks and citation omitted).

### C. Games Workshop received only a small portion of the damages it originally sought.

GW makes much of the fact that the $25,000 jury award was precisely the amount of damages it had requested. But originally, GW sought far more. It elicited testimony from Nick Villacci that Chapterhouse "ha[d] sold *$427,226.35* of materials" through January 8, 2013. (Ex. E, Tr. 909:18-24) (emphasis added). This was all GW had the burden to do; the burden was on Chapterhouse to prove its expenses. (*Id.* at 1739:11-18.) GW let this Sword of Damocles hang over Chapterhouse throughout the ***thirty months of pretrial litigation*** and right up until closing argument.

But GW receded from its original demand after Chapterhouse established costs to offset its revenue. As GW now admits, Chapterhouse operated at a 10-15% profit margin. (GW Br. at 4.) Realizing that it would not prevail on its request for $400,000, GW radically reduced its request to a closing argument plea for $25,000.

Indeed, GW would not have incurred the expenses it did if its only goal was to give Chapterhouse a $25,000 slap on the wrist. GW's allegedly taxable costs alone total over $250,000. And its attorneys' fees likely reach seven figures, given the length and complexity of this litigation. GW cannot now claim that it received everything it wanted.

**D. Games Workshop's arguments are meritless.**

GW's principal theme is strikingly narrow: nothing else matters but the trial. The 370-plus pre-trial docket entries, the thirty months of pre-trial litigation, the multiple summary judgment decisions—these simply disappear from GW's field of vision. All that matters, according to GW, is that "[t]he jury found that a majority of Chapterhouse's products infringed either copyright or trademark or both." (GW Br. at 1.) But "substantial relief" requires an assessment of the *entirety* of the case, not just the claims actually brought to trial. Indeed, GW seeks costs for ***depositions that were not played at trial*** and ***depositions of witnesses that did not testify at trial.*** GW cannot now contend it is entitled to these costs based on the trial alone.

GW further points to the entry of an injunction. But even under GW's proposed injunction, Chapterhouse may still sell products that use its icons in a way that is not likely to cause confusion, which will require a change only to the product name. (Dkt. No. 407-1 ¶ 1.b.)

Finally, GW contends that thirteen of Chapterhouse's top twenty products were found to infringe. There are two problems with this argument. ***First***, it is irrelevant. Even if ***all*** of Chapterhouse's top twenty products were found to infringe, GW asserted ***at least 150 total copyright claims***. GW cannot escape the consequences of its decision to assert a multitude of meritless claims, whether these claims were "important" or not. GW did not prevail on the majority of its claims, and must now lie in the bed it made. ***Second***, even if the Court were to take into account the relative "importance" of the accused products, that would be counterbalanced by Chapterhouse's victory on ***all of GW's core registered trademarks***. (Second Am. Compl., Dkt. No. 147, at ¶ 22) (listing registered marks); Judgment (depicting Chapterhouse's victory on these marks).

All told, over the course of summary judgment and trial, Chapterhouse won the majority of the claims asserted against it. Despite GW's best efforts, Chapterhouse can still sell many of the accused products. Chapterhouse is the prevailing party and should be awarded costs accordingly.

## II. If Chapterhouse Was Not The Sole Prevailing Party, The Parties Should Bear Their Own Costs.

Even if this Court were to accept GW's arguments, the jury's verdict was, at most, a mixed result. And "courts have especially broad discretion to award or deny costs in mixed result cases, including cases in which liability was established but recovery was nominal relative to what was sought." *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999) (citation omitted). As GW's cited case acknowledges, "it may be proper for the trial court to award only low costs or no costs at all." *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 n.8 (Fed. Cir. 2010). Further, courts enjoy the same discretion under Rule 26. *See* Fed. R. Civ. P. 26(b)(4)(E) (permitting courts to deny costs if "manifest injustice would result").

This Court should use its discretion to deny all costs to GW, as GW's request would inflict a burden on Chapterhouse that far exceeds the outcome of the trial. A "court may decline to award costs when an award of costs would be inequitable under all the circumstances in the case." *Plair v. E.J. Brach & Sons, Inc.*, No. 94 C 244, 1995 WL 387789, at *1 (N.D. Ill. June 28, 1995) (internal quotation marks and citation omitted). In *Plair*, the court denied costs where the losing party was indigent and represented *pro bono*, even though the losing party was the plaintiff. Here, Chapterhouse is the defendant—it did not choose to litigate this case. And Chapterhouse is a small company; it was represented in this case *pro bono*. *See* Ex. F (10/24/13 Declaration of Bryce A. Cooper). In asking the jury for $25,000 in damages (all GW wanted, it now claims), GW claimed in its closing argument that it was "not looking to be punitive." (Ex.

6

E, Tr. 1765:20.) But it now seeks a cost award that is ***more than ten times greater than the damage award it requested***. Such an award would inflict tremendous financial burden on Chapterhouse. It should be denied.

Further, GW won little of what it sought. GW has failed to cripple Chapterhouse's business. And it lost on the majority of its originally asserted copyrights and trademarks. And it obtained only a small fraction of the damages it initially sought.

For similar reasons, numerous courts have denied costs to plaintiffs who were awarded damages. *See, e.g.*, *ARP Films, Inc. v. Marvel Entertainment Group, Inc.*, 952 F.2d 643, 651 (2d Cir. 1991) (affirming the district court's denial of costs, concluding plaintiff was not entitled to costs under the Copyright Act or Rule 54(d), even where plaintiff had been awarded over $1.2 million in damages for various claims and defendant had only received $137,000, because of the "mixed outcome" of the litigation, including pre-trial motion practice); *Gonzalez v. City of Elgin*, No. 06 C 5321, 2010 WL 4636638, at *1 (N.D. Ill. Nov. 8, 2010) (ordering each party to bear their own costs even though plaintiff was awarded $53,500 in damages); *Granville v. Suckafree Records, Inc.*, No. Civ. A H-03-3002, 2006 WL 2520909, at *3 (S.D. Tex. June 28, 2006) (denying plaintiff's motion for costs, observing that "[t]o prevail on but one out of several copyright claims does not in and of itself entitle Plaintiff to an award of costs…").

GW did not win substantial relief, and a cost award would hurt Chapterhouse far more than the verdict at trial. Accordingly, Chapterhouse respectfully requests that GW not be awarded costs.

7

III. **As The Prevailing Party, Chapterhouse Is Entitled To Costs Of $134,097.31.**

In order for a particular item to be taxable as a cost under Rule 54(d)(1), the "expense must fall into one of the categories of costs statutorily authorized for reimbursement." *Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000). Here, Chapterhouse is entitled to $17,142.55 in transcript costs, $4,538.10 in witness costs, and $112,416.66 in printing costs.

1. **Transcript costs**

Under 28 U.S.C. § 1920(2), a court may tax as costs the "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Chaperhouse has requested a total of $17,142.55 under this section, and GW has not objected to these costs. Thus, Chapterhouse is entitled to the full $17,142.55 that it requests in transcript costs.

2. **Witness costs**

Under 28 U.S.C. § 1821(a)(1), "a witness in attendance at any court of the United States . . . or before any person authorized to take his deposition . . . shall be paid the fees and allowances provided by this section." Section 1821 specifies, in relevant part, that witnesses shall be paid for their actual travel expenses incurred on a common carrier, as well as a subsistence allowance. *See id.* § 1821(c)-(d). These witness fees and allowances are taxable as costs under section 1920(3). *See id.* § 1920(3).

*First*, Chapterhouse has submitted receipts showing a total of $2,508.60 in costs for flights for four trial witnesses: Carl Grindley ($590.20), Jeffrey Nagy ($393.80), Nick Villacci ($796.80), and Robert Lippman ($727.80). GW has not objected to any of these flight costs, and Chapterhouse is entitled to the full amount requested. Likewise, GW has not objected to $148.50 in rental car costs for Mr. Nagy, and Chapterhouse is entitled to this amount. *See Canal Barge*

8

*Co. v. Commonwealth Edison Co.*, No. 98 C 0505, 2003 WL 1908032, at *4 (N.D. Ill. Apr. 18, 2003).

*Second*, Chapterhouse concedes that the subsistence allowance is capped by statute, *see* § 1821(d)(3), and was $171 per diem at the time of trial, *see* Per Diem Rates Look-Up, http://www.gsa.gov/portal/category/100120 (last visited Oct. 20, 2013). The only objection that GW raised with respect to the subsistence allowance for Dr. Grindley and Mr. Nagy[1] was that the amount claimed exceeded the per diem. Thus, Chapterhouse should be awarded its requested eight days for Dr. Grindley[2] and three days for Mr. Nagy, totaling $1,881 for these two witnesses.

### 3. Printing costs

Section 1920 allows a court to tax as costs the prevailing party's "[f]ees and disbursements for printing," 28 U.S.C. § 1920(3), and "the costs of making copies of any materials where the copies are necessarily obtained for use in the case," *id.* § 1920(4). GW argues that Chapterhouse submitted insufficient documentation of its printing and copying costs because Chapterhouse did not specify the purpose of each copy, whether the printing was in color or black and white, and whether any charges were for multiple copies of the same document. However, the Seventh Circuit has previously rejected such arguments, holding that a prevailing party is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs." *Northbrook Excess*, 924 F.2d at 643. Rather, a party need only "provide the best documentation obtainable from retained records." *Id.*

---

[1] Chapterhouse concedes that it is not entitled to subsistence costs for William Brewster, who lives in a suburb of Chicago.
[2] Chapterhouse has objected to GW's costs for witnesses beyond the days they testified and travel days. GW has not made the same objection. If this Court agrees with Chapterhouse's objection, then Chapterhouse is willing to accept an equivalent reduction.

Here, Chapterhouse submitted documentation showing the date and base amount of each charge, the attorney responsible, and a general description (e.g., "Color Copies" or "Printing/Reproduction Services"). Mr. Cooper also submitted a declaration that these costs "reflect the printing expenses of Winston & Strawn LLP in preparation for the defense of this matter." *Northbrook* requires no more, and Chapterhouse is entitled to the full $112,416.66 that it claims as costs.

Moreover, GW is requesting $40,803 in printing costs. Beyond the objection that GW should not be awarded any costs at all, Chapterhouse has not objected to GW's request for printing costs. Thus, even if this Court determines that Chapterhouse has not submitted sufficient documentation to substantiate its full claim for printing costs, the court should award Chapterhouse at least $40,803 in printing costs, the same amount GW is requesting. *See Se-Kure Controls, Inc. v. Vanguard Prods. Group, Inc.*, 873 F. Supp. 2d 939, 949 (N.D. Ill. 2012) (awarding partial printing costs); *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 980 (N.D. Ill. 2010) (same).

## CONCLUSION

For the foregoing reasons, Chapterhouse should be awarded $134,097.31 in costs as the prevailing party. Chapterhouse can still sell many of the accused products, having won nearly 70% of the claims asserted by GW in this litigation, and GW did not win substantial relief.

Alternatively, the parties should bear their own costs.

Dated: November 7, 2013        Respectfully submitted,

/s/ Imron T. Aly

Jennifer A. Golinveaux (CA Bar No. 203056)
Thomas J. Kearney (CA Bar No. 267087)
    WINSTON & STRAWN LLP
    101 California Street
    San Francisco, CA 94111-5802
    Phone: (415) 591-1000
    Fax: (415) 591-1400
    jgolinveaux@winston.com
    tkearney@winston.com

Imron T. Aly (IL Bar No. 6269322)
Bryce A. Cooper (IL Bar No. 6296129)
Tyler G. Johannes (IL Bar No. 6300117)
    WINSTON & STRAWN LLP
    35 West Wacker Drive
    Chicago, IL 60601-1695
    Phone: (312) 558-5600
    Fax: (312) 558-5700
    ialy@winston.com
    bcooper@winston.com
    tjohannes@winston.com

Julianne M. Hartzell (IL Bar No. 6275093)
Sarah J. Kalemeris (IL Bar No. 6303644)
    MARSHALL, GERSTEIN & BORUN LLP
    233 S. Wacker Drive
    Willis Tower Suite 6300
    Chicago, IL 60606
    Phone: (312) 474-6300
    Fax: (312) 474-0448
    jhartzell@marshallip.com
    skalemeris@marshallip.com

## **CERTIFICATE OF SERVICE**

  I, Imron T. Aly, filed CHAPTERHOUSE STUDIOS' REPLY IN SUPPORT OF ITS BILL OF COSTS with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

          /s/ Imron T. Aly