**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

```
------------------------------------------------------- X
GAMES WORKSHOP LIMITED,                                 :
                                                        :
                    Plaintiff,                          :
                                                        :         Civil Action No. 1:10-cv-8103
         v.                                             :
                                                        :         Hon. Matthew F. Kennelly
CHAPTERHOUSE STUDIOS LLC and                            :
JON PAULSON d/b/a PAULSON GAMES,                        :
                                                        :
                    Defendants.                         :
------------------------------------------------------- X
```

**GAMES WORKSHOP'S REPLY IN FURTHER SUPPORT OF MOTION FOR
JUDGMENT AS A MATTER OF LAW**

Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: jkeener@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-3229
Email: jmoskin@foley.com

*Attorneys for Plaintiff
Games Workshop Limited*

Games Workshop respectfully submits the following memorandum in further support of its motion for judgment as a matter of law or for new trial under Fed. R. Civ. P. Rules 50 and 59.

## PRELIMINARY STATEMENT

## ARGUMENT

1. <u>Exact Copying Regarding 13 Shoulder Pad Designs Constitutes Infringement</u>

Chapterhouse's contends that its exact copies of Games Workshop's basic shoulder pad design do not infringe because Jeffery Nagy independently designed them. Chapterhouse plainly misunderstands the meaning of independent creation. "A defendant independently created a work if it created its own work without copying anything or if it copied something other than the plaintiff's copyrighted work." *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries,* 272 F.3d 441, 450 (7th Cir. 2001) (citing 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright §12.11[D], at 12-175 (2001)). See *JCW Investments, Inc. v. Novelty Inc.,* 482 F.3d 910, 915 (7th Cir. 2007). Chapterhouse began by simply recasting Games Workshop's shoulder pad designs (Fiertek, Trial Tr. 1211:17-1212:12) and Mr. Nagy then created an exact digital reproduction of the design – right down to the indents on the back, which he agreed is the standard Games Workshop design. Contemporaneous records and Mr. Nagy's testimony confirm the direct copying. (Ex. 12, PX 41; Trial Tr. 1309:24-1315:16.) Mr. Villacci likewise admitted he could not identify any independently created products: "Q. But you haven't identified any such example of something totally independently created by you in your testimony today? A. Not my testimony today, no." (Trial Tr. 1036:22-1037:10.) The very fact that everything Chapterhouse sells is made to exist only in the Warhammer 40,000 universe make a defense of independent creation incomprehensible. *Paramount Pictures Corp v. Carol Pub. Group*, 11 F. Supp. 2d 329, 332-33 (S.D.N.Y. 1998) ("As an initial matter, it would be absurd to suggest that Ramer has not

copied from the Star Trek Properties. His book contains quotations taken directly from these works, and the Middle Portion is devoted to telling a large portion of the Star Trek story.")

Chapterhouse next says its 14 shoulder pads substantially differ from the originals, but fails to identify any relevant differences for any of the products in issue. Because the underlying dimensions of the Chapterhouse shoulder pads exactly match Games Workshop's, and because the Court previously ruled that the copied design is copyrightable (even apart from the design indents that also were copied), Chapterhouse appropriated material of substance and value. *Atari, Inc. v. N. Amer. Phillips Consumer Elec. Corp.*, 672 F.2d 607, 614, 619 (7th Cir. 1982). While arguing that surface ornamentation may differ from the Games Workshop originals, Chapterhouse simply ignores the actual argument in Games Workshop's motion that simply by adding surface details to literal copies of the original shoulder pad design, Chapterhouse cannot escape a finding that it has copied protected expression. So long as there has been copying of protected expression, no accused infringer can excuse the claimed wrong by showing how much of his work was not copied. *Atari v. North American Phillips Consumer Elec. Corp.*, 672 F.2d 607, 619 (7th Cir 1982) ("[I]t is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate" (Citation omitted.)) Despite the addition of some surface ornamentation, the products are all immediately recognizable as Space Marine shoulder pads and nothing else. That is their only purpose, which is why all are found under the "Space Marine" tab on the Chapterhouse website. If they were not immediately recognizable as Space Marine shoulder pads they would never sell.

Chapterhouse's third argument is that the design wasn't sufficiently original, but this issue was already resolved on summary judgment – twice! If the jury felt the design was not copyrightable, contrary to the Court's prior rulings and explicit instructions, that would only

2

confirm why judgment now should be entered in favor of Games Workshop. Finally, the Chapterhouse argues that even if the jury verdict was inconsistent, that is acceptable. Although *Ilnicki v. Montgomery Ward Co.*, 371 F.2d 195 (7th Cir. 1966), cited by Chapterhouse, held that a jury verdict on separate counts need not be entirely consistent, the point here is that the jury verdict was inconsistent with prior Court rulings and the court's jury instructions.

2. <u>There Was No Basis For The Testimony of Chapterhouse's Two Experts.</u>

In opposing JMOL, as in opposing Games Workshop's motion in limine and directed verdict to exclude the testimony of Dr. Grindley and Mr. Brewster, Chapterhouse makes no effort to show that either remotely satisfied the standard for the scenes a faire doctrine, which requires a showing that the disputed features of Games Workshop's originals are "indispensable or standard in the treatment of a particular subject." *Atari v. North American Phillips Consumer Elec. Corp.*, 672 F.2d 607, 616 (7th Cir 1982). Indeed, neither identified more than one or two exemplars of random elements (and in Dr. Grindley's case frequently identified none) on the basis of which the jury was asked to decline protection to Games Workshop's works incorporating such elements even in wholly original new combinations copied by Chapterhouse. Dr. Grindley did not even identify a relevant subject under which to assess whether any features were "indispensable or standard", as he conceded his opinions had nothing to do with miniature designs or tabletop wargaming. (Trial Tr. 1437:1-7.) The most that Chapterhouse disputes is whether elements need be proven "indispensable." Chapterhouse proved neither indispensability nor that any elements were standard; hence, the debate is meaningless, and there is no factual predicate for the claimed *scenes a faire* defense or either expert's testimony.

3. <u>There Was No Basis For Chapterhouse's Copyright Fair Use Defense.</u>

Chapterhouse repeatedly objects that Games Workshop has not offered a product-by-product rebuttal of its fair use defense, which misses the key point that Chapterhouse offered *no*

3

*evidence* to sustain *its burden of proof* that *any* one of its products in any way qualifies for the defense. *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003) (defendant's burden of proof), citing *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 590 (1994). Through its entire 8 pages of argument, Chapterhouse never once identifies what is the supposed transformative purpose of its products, every one of which is derived directly from Warhammer 40,000. At trial, Chapterhouse identified not a single work it even contends is transformative. It did not even try to meet its burden, and its argument now reveals a fundamental misunderstanding of the law.

It says its products "convey a new message" and "impart a different meaning" (Brf at 8), but never says what that is. The only testimony it cites likewise identifies absolutely no "new meanings" imparted by any accused works. (Trial Tr. 922:25-923:15; 953:20-955:8; 1250:3-22.) That is because there is nothing transformative about the products. Citing *Ty Inc. v. Pub's Int'l Ltd.*, 292 F.3d 512 (7th Cir. 2002), Chapterhouse says they "complement" the original works in the same way a Beanie Babies Collector's guide (containing organization, analysis and criticism), was deemed potentially a fair use. But Chapterhouse ignores that what Judge Posner actually said in that case is that " . . . in economic terminology that has become orthodox in fair-use case law, we may say that copying that is complementary to the copyrighted work (in the sense that nails are complements of hammers) is fair use, but copying that is a substitute for the copyrighted work (in the sense that nails are substitutes for pegs or screws), or for derivative works from the copyrighted work [citation omitted], is not fair use." *Id.* at 517. To be transformative, a work must add something *new* for a function, purpose or character *different from* the original – such as scholarship, criticism, parody, etc. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S.

417 (1984), cited by defendant, held that time-shifting of television programming was a fair use under a unique set of facts (namely, the "staple article of commerce doctrine"), but *Campbell* and all subsequent cases have made clear there must be a new and different purpose, which is missing here. By definition, Chapterhouse's copying from Warhammer 40,000 and now Warhammer cannot possibly be treated as a fair use where it simply seeks to supersede the demand for genuine Games Workshop products and does nothing to convey any new meaning or message. Chapterhouse has identified no nails to complement Games Workshop's hammers, only pegs to compete with Games Workshop's nails. Its fair use argument is simply frivolous.

Chapterhouse says the products reflect its designers "desire for creative expression" (Brf p.9) but identifies no such creativity. Indeed, every single product for which Chapterhouse produced design documents were emails showing its exclusive focus on copying Warhammer 40,000 and debating only how close it could come. They all simply reflect Mr. Villacci's philosophy: " . . . we have to walk a fine line here. It is hard to predict what people will buy when it comes to existing chapters, how close to the original Iron Hands icon do we have to stay to make some money off it?" (Ex. 13, PX 744 (emphasis added)).

Chapterhouse also oversimplifies Games Workshop's argument to mean that simply because the works are commercial they are presumptively unfair. The Supreme Court *did* make this point in *Sony Corp.,* 464 U.S. at 449 ("[i]f the Betamax were used to make copies for a commercial or profitmaking purpose, such use would presumptively be unfair"), a point also made in *Rogers v. Koons*, 960 F.3d 301, 309 (2d Cir. 1992). However, the issue is that Chapterhouses has never identified any purpose other than making money off the success of Warhammer 40,000. *Campbell* explained that "[t]he enquiry [concerning the first fair use factor] may be guided by the examples given in the preamble to Section 107, looking to whether the use

5

is for criticism, or comment, or news reporting, and the like. . . ." 510 U.S. at 578-79. None of these is met here. [1]

Regarding the second factor (nature of the work), the only case Chapterhouse cites for the proposition that purely fictional works such as Warhammer 40,000 are entitled to anything less than the highest protection against fair use is *SunTrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1270 (11th Cir. 2001). But there, where a retelling of "Gone With the Wind" from the historical perspective of the slaves was deemed fair, the court said only that "GWTW is undoubtedly entitled to the greatest degree of protection as an original work of fiction." That there may be some historical antecedents to elements of Warhammer 40,000 is completely irrelevant to the fair use analysis as Chapterhouse is not purporting to analyze the history of science fiction; it is simply copying Games Workshop to make money – which is the very antithesis of fair use. *Campbell* also makes clear this factor is only genuinely relevant where the challenged work uses a factual work in some studied manner. 510 U.S. at 586-87. None of Chapterhouse's designers pointed to any historical references in describing how the accused products were created – or even that they were aware of any such prior designs when developing the works at issue. The trial record thus confirms the only point of reference for Chapterhouse was Games Workshop. There was no intended commentary on the Games Workshop designs and no historical perspectives were brought to bear on Chapterhouse's product development. Again, its defense is frivolous; as a matter of law, Warhammer 40,000 is entitled to the greatest

---

[1] Chapterhouse says that customer value the different meanings of its products (Brf p. 8). Yet, the cited testimony (Tr. 922:25-923:15; 953:20-955:8; 1250:3-22) does not support the claim, and it offered no testimony from customers. The only evidence what customers think is that Chapterhouse's products satisfy a demand for Games Workshop products through the various forum posts introduced at trial. Because Chapterhouse failed to retain any of its forum posts or customer reactions, it is not even in a position to make any arguments what customers think.

degree of protection as an original work of fiction. Similarly, Chapterhouse says some of its shoulder pad products simply incorporate geometric shapes or military themes (Brf p. 8); but on the one hand this ignores that the Court already found the basic shape copyrightable, and, because Chapterhouse is not offering military history or commenting on the shapes and styles of Warhammer 40,000, that there is nothing transformative here.

Chapterhouse likewise misconstrues the third factor, which "calls for thought not only about the quantity of the materials used, but about their quality and importance, too." *Campbell* 510 U.S. at 587. The trial testimony makes clear that Chapterhouse takes enough to make its products immediately recognizable (Traina, Trial Tr. 1232:10-1233:12), so it "can make money off of" the Games Workshop originals. The Supreme Court has made clear this qualitative assessment bears directly on the transformative nature or not of the taking (which is absent here) and ties directly to the fourth factor (the effect on the of the use upon the potential market for or value of the copyrighted work). *Id.* at 587-88.

Finally, regarding the effect of the use upon the potential market for or value of the copyrighted work, Games Workshop sells numerous replacement shoulder pads and replacement door kits for its vehicles (Ex. 15, PEX 416; Jones, Trial Tr. 566:6-572:18) The testimony concerning the Combi-Weapon product was cited merely to exemplify the way all Chapterhouse products supplant the demand for the original – particularly where Chapterhouse offered no other evidence to sustain its burden of proof. Indeed, Games Workshop sells numerous stand-alone products that permit its fans to customize their products (Ex. 15, PEX 416; Jones, Trial Tr. 566:6-572:18). Even if it did not, Chapterhouse's sales of replacement parts for Games Workshop's originals is not a transformative purpose. It is simply commerce of exactly the same kind in which Games Workshop engages. Hence, Chapterhouse's products directly compete

7

with Games Workshop's original product designs and simply supplant the demand for original Games Workshop replacement parts. Recalling the question presented in *Campbell* whether the new work merely 'supersede[s] the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message," 510 U.S. at 579, the answer here is clear. Because the products are directly competitive, Chapterhouse's use directly affects the value of or the potential market for Games Workshop's work. Chapterhouse presented no evidence to carry its burden. The trial testimony included examples of products Chapterhouse *could* sell (such as battlescapes (Stevenson, Trial Tr. 786:23-787:10)); in Judge Posner's terms, these would be like nails to complement Games Workshop's hammers. Instead, Chapterhouse simply puts a slightly different surface ornamentation on a copy of Games Workshop's products. These are not transformative and are not fair use.

Chapterhouse also cites *Sony Computer Entertainment Inc. v. Connectix Corp.*, 53 USPQ 2d 1705 (9th Cir. 2000), which held only that it was fair use to make intermediate copies of parts of Sony's software to make a non-infringing controller to use with PlayStation games. It has no relevance here. Citing no authority for its novel contention, Chapterhouse argues that it is somehow a fair use for it to make *products* copied from Games Workshop's *books*. This would be like saying one can make Darth Vader or Luke Skywalker action figures so long as Lucasfilm has not yet made any itself. In fact, such copying from one medium to another is still simply copying. *Atari*, 672 F.2d at 618 n. 12 ("That a work is transferred into a different medium is not itself a bar to recovery.") The argument is frivolous.

4. <u>Chapterhouse Did Not Prove Trademark Fair Use For Its Own Unlawful Products.</u>

In support of its own affirmative defense, Chapterhouse makes two arguments, both of which miss the point. It argues first that its products are not counterfeits. Games Workshop

8

never said they were. What it said is that it is not a fair use to use a protected trademark to refer to an *unlawful* copy of the underlying product. Tangentially addressing only one of the four cases cited by Games workshop, *R. J. Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, 2001 U.S. Dist. LEXIS 8896 at * 16 (N.D.Ill. June 29, 2001), quoting *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 545 (5th Cir. 1998)). *Tiffany (NJ) Inc. v. eBay Inc.,* 600 F.3d 93, 102 (2d Cir. 2010); *Coach Inc. v. Sassy Couture*, 2012 U.S. Dist. LEXIS 6364 (W.D.Tex. Jan. 19, 2012), Chapterhouse concedes the broader point, explained in *Pebble Beach* that the fair use defense is limited to circumstances where "one who has lawfully copied another's product can tell the public what he has copied". 155 F.3d at 545. Here, defendant has not lawfully copied. Thus, no uses of Games Workshop trademarks in connection with Chapterhouse's copyright-infringing products is fair. This includes products the trademarks Warhammer, 40K, 40,000, Assault Space Marine, and Tactical Space Marine[2], as well as the Space Marine and Eldar tabs on the website to denominate unlawful copies of Space Marine, Eldar or Dark Eldar figures.[3] So too, the prominent use of the tagline "Specializing in Custom Sculpts and Bits for Warhammer 40,000 and Fantasy" is plainly unfair as a means to advertise unlawful copies.

Chapterhouse's other argument is that some of its statements merely indicate compatibility. Although some such uses of Games Workshop's trademarks might otherwise qualify as fair were the underlying products lawful, Chapterhouse also misses the further point

---

[2] The full list of marks the jury found to have been used fairly is: (i) Warhammer, (ii) 40K, (iii) 40,000, (iv) Eldar, (v) Dark Angels, (vi) Space Marine, (vii) Tau, (viii) Assault Space Marine, (ix) Black Templars, (x) Blood Angels, (xi) Crimson Fists, (xii) Drop Pod, (xiii) Gaunt, (xiv) Heavy Bolter, (xv) Hive Tyrant, (xvi) Imperial Fists, (xvii) Inquisition, (xviii) Legion of the Damned, (xix) Librarian, (xx) Space Wolves, (xxi) Tactical Space Marine, (xxii) Terminator, (xxiii) Tyranid Warrior, (xxiv) Heavy Flamer, (xxv) Lascannon, and (xxvi) Lightning Claw.

[3] The same analysis would apply to the "Tau" tab if the Court were to grant this motion for JMOL or new trial that some of the Tau products infringe.

that the other uses identified in Games Workshop's motion do not speak to compatibility but, rather, are used to identify *Chapterhouse's own products* and hence cannot be fair uses as a matter of law. *New Kids on the Block*, 971 F.2d at 308 (limiting the affirmative defense to situations where "defendant uses a trademark *to describe plaintiff's product, rather than its own . . .* " (Emphasis added). *Accord*, *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010). The principle was just reaffirmed in *Warner Bros. Ent., Inc. v. Global Asylum, Inc*. No. 13-55352, 2013 LEXIS 22120 (9th Cir., Oct. 30, 2013). Here, in promoting *its own goods* under the Games Workshop trademarks, Chapterhouse is not referring to plaintiff's products but is using plaintiff's marks to refer to its own goods. And contrary to Chapterhouse's arguments, its advertising on eBay of "Space Marine", "Warhammer", "40K", "40,000", "Drop Pod" and "Eldar" products simply does not make any comparison to support a finding of fair use.

**CONCLUSION**

For the foregoing reasons, Games Workshop requests that the Court grant the present motion together with such other and further relief as the Court deems just and proper.

10

Dated: November 7, 2013　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Jason J. Kenner
　　　　　　　　　　　　　　　　　　　　Jason J. Keener (Ill. Bar No. 6280337)
　　　　　　　　　　　　　　　　　　　　FOLEY & LARDNER LLP
　　　　　　　　　　　　　　　　　　　　321 North Clark Street, Suite 2800
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60654-5313
　　　　　　　　　　　　　　　　　　　　Telephone: 312.832.4500
　　　　　　　　　　　　　　　　　　　　Facsimile: 312.832.4700
　　　　　　　　　　　　　　　　　　　　Email: jkeener@foley.com

　　　　　　　　　　　　　　　　　　　　Jonathan E. Moskin
　　　　　　　　　　　　　　　　　　　　FOLEY & LARDNER LLP
　　　　　　　　　　　　　　　　　　　　90 Park Avenue
　　　　　　　　　　　　　　　　　　　　New York, New York 10016
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 682-7474
　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 687-3229
　　　　　　　　　　　　　　　　　　　　Email: jmoskin@foley.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*
　　　　　　　　　　　　　　　　　　　　*Games Workshop Limited*

## **CERTIFICATE OF SERVICE**

      I, Jason J. Keener, an attorney, hereby certify that on November 7, 2013, I caused to be filed electronically the foregoing PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR JUDGMENT AS A MATTER OF LAW with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

                                                          /s/ Jason J. Keener
                                                           Jason J. Keener