IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAMES WORKSHOP LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>CHAPTERHOUSE STUDIOS LLC and JON PAULSON d/b/a PAULSON GAMES<br><br>Defendants. | Civil Action No. 1:10-cv-8103<br><br>Hon. Matthew F. Kennelly |

**GAMES WORKSHOP REPLY IN SUPPORT OF MOTION FOR COSTS**

Although Chapterhouse effectively conceded in the parties' joint status report (Dkt 407) that it was not the prevailing party (and hence simply argued that the Court should exercise discretion to limit any award to Games Workshop), it has now created a fiction what this case was about; what were Games Workshop's motives, and what was its outcome. It has also created a false standard of subjective satisfaction with achievement of goals as the supposed basis for awarding costs (in lieu of the actual standard whether substantial relief was obtained) and so proceeds to speculate as to Games Workshop's motives in this action. In fact, Games Workshop is very tolerant of what its fans do with its intellectual property; it commenced this action simply because Chapterhouse had created a *business* model of mass-producing products copied in whole or in part from Warhammer 40,000 - reflected in Mr. Villacci's own words that "GW has no legal say about what people make to use with their models so long as it isn't direct copies or recast of the models" (Ex. J, PEX 189) – and refused Games Workshop's entreaties to change that model.

 A.  **Games Workshop Was The Prevailing Party**

Although "shutting down" Chapterhouse was never a goal, and although personal satisfaction is not the test for an award of costs under Rule 54(d)(1), the reality is that Games

Workshop succeeded in most of its claims. The Court agreed in the two summary judgment motions that Games Workshop is indeed the owner of all of its intellectual properties. In the first motion, it rejected Chapterhouse's theories that the works were functional or mere ideas or were owned by the employees who worked on creating them. On the second motion, the Court further rejected essentially all of Chapterhouse's affirmative defenses. The jury then found that a majority of the products in issue infringe either copyright or trademark or both.[1] Within days of the jury verdict, Chapterhouse announced its intent to appeal (Ex. K), because, indeed, it was left without most of its products as over 60% were found to infringe Games Workshop's copyrights and/or trademarks (including 13 of the 20 most successful products Chapterhouse sells). (This does not include any of the additional products addressed in Games Workshop's motion for judgment as a matter of law (Dkt. No. 408).) The jury also awarded damages in precisely the amount Games Workshop requested, awarding more than 50% of what Chapterhouse itself calculated as its profits for its *entire range of products* (including those not accused by Games Workshop and even though Games Workshop sought no damages for the infringed trademarks). To try to diminish the award, Chapterhouse points out that its gross sales total was over $400,000, but that was never Games Workshop's claim for profits and Games Workshop never even purported to challenge Chapterhouse's accounting of offsetting expenses.

Immediately following entry of the jury verdict, Chapterhouse repeatedly announced publicly its intent to appeal. (Ex. K) Chapterhouse's assertion that it met its litigation goal cannot be reconciled with its public statements or with the fact that it stands to be enjoined from selling almost all of the profitable products it makes and from using almost any characters or recognizable

---

[1] The jury found 49 of the accused products to infringe Games Workshop's copyrights. Additionally, the jury found 38 of Games Workshop's trademarks infringed, many of which implicate a number of Chapterhouse products. For example, the Salamander Icon Trademark, found infringed, is used by at least 6 different Chapterhouse products. In all, an additional 22 products not found to infringe Games Workshop's copyrights were found to infringe trademark rights, bringing the total to 71 products or 61%.

imagery associated with Warhammer 40,000. Mostly what it can continue to sell are weapons, fairly unspecific pieces that can be added onto vehicles and random shoulder pad products without Games Workshop's surface ornamentation. Its central philosophy that "GW has no legal say about what people make to use with their models so long as it isn't direct copies or recast of the models" (Ex. K, PEX 189) has been flatly rejected. Post-trial, Chapterhouse will have to be cognizant of the actual legal standards for infringement. Moreover, due to the jury verdict, Games Workshop is entitled to an injunction to prevent Chapterhouse's continued infringements of its intellectual property.

Turning the facts on their head, Chapterhouse distorts the record by faulting Games Workshop for voluntarily agreeing to withdraw a number of products from the case. Games Workshop's decision to do so was in fact motivated by three things: (i) the Court's repeated recommendations to simplify the case; (ii) Games Workshop's own recognition that it could not conveniently present arguments to every product potentially at issue; and (iii) the fact that for most or all of the withdrawn products Chapterhouse had itself either ceased sales or was making sales in such vanishingly small quantities as not to warrant further litigation. Chapterhouse has cited no authority under which Games Workshop's voluntary withdrawal of claims before there was any adjudication of those products should – under any circumstances much less for the actual reasons recited here – be weighed against it.

The fallacy of Chapterhouse's position is made clear with a simple analogy. A person leaving a store with a shopping cart full of products is accused of shoplifting. The accused argues unsuccessfully that none of the products were owned by the store, they were from a different store. The accused unsuccessfully argues that even though the products look similar to the store's products, he actually independently made the products himself at home. The accused argues that some of the items in his cart were free samples given out by the store and thus cannot be stolen.

Before trial, in order to simplify the case, the store does not seek to prove every item in the shopping cart was stolen, focusing the case on the more expensive items in the cart. After trial, the jury finds that the majority of the items in the cart were stolen, including the most expensive items, and awards the store the exact amount in damages requested by the store. Under any reasonable view, the store was the prevailing party and the accused was found to be a shoplifter. The same is true here. Games Workshop started this case arguing that Chapterhouse had improperly used Games Workshop copyrights and trademarks. The jury has spoken, finding Chapterhouse liable for a significant number of copyright and trademark infringements. Chapterhouse was found to be an infringer. Chapterhouse wishes to mischaracterize the result by pointing to the fact that some of the smaller items in its cart were not found to be stolen.

Having been found to have misappropriated most of its designs in whole or in part, and now finding itself facing enormous obstacles continuing its business, Chapterhouse's efforts to put the best face on the trial outcome is unpersuasive and, as noted, turns only on misstating Games Workshop's supposed motives in pursuing this litigation. It is no surprise that Games Workshop made no announcement after trial comparable to Chapterhouse's because it was reasonably satisfied it had succeeded on its main goals at trial.

As shown in the parties' joint status report (Dkt. 407) on costs and in Games Workshop's Motion for Costs (Dkt 416), Games Workshop is the prevailing party under Fed.R.Civ.P. Rule 54(d)(1), not because it was more satisfied with the trial outcome than Chapterhouse, but because it obtained "substantial relief." *Slane v. Mariah Boats, Inc.*, 164 F.3d 1065, 1068 (7th Cir. 1999). The new case cited by Chapterhouse, *Florentine Art Studio, Inc. v Vedet K. Corp.*, 891 F.Supp. 532, 541 (C.D.Cal. 1995), is irrelevant and mis-cited, as it involved an award of attorneys' fees to defendant because of litigation misconduct – *not* costs under Rule 54(d)(1) - where it was the prevailing party on all but two works, as to which the infringement was innocent and which had

been redesigned, and was the prevailing party under the Lanham Act. Similarly, *Equinox Software Sys, Inc. v. Airgas, Inc.*, No. 96-3399, 2001 WL 1159846 at *2 (E.D.Pa. Sept 5, 2001), cited by Chapterhouse, does not support its position. In *Equinox,* there was a dispute over both a licensing agreement and a services agreement. *Id.* The services agreement was decided through arbitration, at which Plaintiff prevailed and was awarded the costs for the arbitration. *Id.* The licensing agreement was decided through jury trial, which found that there was no breach by the Defendant. *Id.* Thus, the Court denied Plaintiff's requests for costs and attorneys fees in the licensing agreement litigation even though Plaintiff was the prevailing party and awarded costs in the related services agreement arbitration. *Id.* There is no ancillary litigation in this case; Games Workshop was the prevailing party in *this* litigation.

To further its argument that it somehow prevailed on a majority of its products, Chapterhouse renews the inscrutable argument it manufactured after trial that even though the parties had extensively negotiated an agreed summary of the so-called icon marks and even though the Court had granted summary judgment that most of these icons are indeed valid trademarks, the jury verdict can now be turned on its head and rendered meaningless and the summary judgment disregarded because the verdict form included necessary verbal descriptive tags identifying the icons. The argument that these descriptive tags somehow became part of the icon marks is frivolous and is one small demonstration why costs became as high as they did.

**B. The Court Should Not Order The Parties To Bear Their Own Costs**

Implicitly recognizing that it is not the prevailing party, Chapterhouse argues that the Court should use its discretion to have the parties bear their own costs. Chapterhouse's main argument is that the Court should deny an award of costs based on equity, the fact that Chapterhouse is represented pro bono and the costs sought are higher than the damages awarded by the jury. However, the case cited by Chapterhouse actually supports Games Workshop's request for costs.

In *Plair v. E.J. Brach & Sons,* 1995 U.S. Dist. LEXIS 8910, *3 (N.D. Ill., June 28, 1995), the Court declined to award costs where the defendant was indigent and granted leave to proceed *in forma pauperis*. While the indigent status of a party does not require the court to waive costs, the Court decided not to award costs because counsel for Plair was appointed by the Court and thus, Plair should not be held responsible for the tactical decisions of its lawyers that resulted in unwarranted fishing expeditions that drove up costs. *Id*. at *4. In contrast, there is no suggestion that Chapterhouse or its two owners are indigent and unable to pay any of the costs. Moreover, the fact that Chapterhouse was able to obtain *pro bono* counsel from now three major law firms evidences that Chapterhouse is certainly responsible for the tactics employed by its counsel, which repeatedly resulted in unwarranted fishing expeditions and needless litigation costs. As the Court in *Plair* stated, even for indigent clients, an award of costs should be considered as "the threat of costs requires indigent plaintiffs to exercise discretion and judgment in their litigious activity and accept the consequences of their costly lawsuits." *Id.* Chapterhouse's seemingly bottomless pit of free legal services removes the normal incentives that would counsel for discretion in litigation tactics and perhaps even reasonable settlement of disputes. Without Chapterhouse being taxed costs, Chapterhouse has no reason not to continue its behavior in the future.

The remaining cases cited by Chapterhouse are irrelevant and distinguishable. In *Gavoni v. Dobbs House, Inc.,* 164 F.3d 1071, 1074 (7th Cir. 1999), the three plaintiffs were injured when a hotel elevator malfunctioned, and sought $825,000 in damages. The hotel did not dispute liability, that the elevator malfunctioned, but disagreed with the amount of claimed damages. *Id.* The jury awarded the defendants $6500, less than 1% of the amount requested. *Id.* Here, Chapterhouse unsuccessfully disputed liability and even according to Chapterhouse's own calculations, the jury awarded Games Workshop over 50% of its profit for its entire business even though Games Workshop did not accuse a number of Chapterhouse products of infringement and Games

Workshop did not seek any damages for the trademark infringements. In *ARP Films, Inc. v. Marvel Entertainment Group, Inc.,* 952 F.2d 643, 651 (2nd Cir. 1991), the Second Circuit made the non-controversial holding that it was not an abuse of discretion to find the plaintiff was not a prevailing party where the jury awarded each party damages. Here, Chapterhouse was not awarded any damages. In *Gonzalez v. City of Elgin,* 2010 U.S. Dist. LEXIS 118357, *5 (N.D. Ill., Nov. 8, 2010), the Court found that neither party was the "prevailing party" as only two of the six plaintiffs were awarded damages against only three of the seven defendants. Here, there was only one plaintiff, Games Workshop, and one defendant, Chapterhouse, with the jury agreeing that Chapterhouse infringed Games Workshop's copyrights and trademarks. In *Granville v. Suckafree Records, Inc.,* 2006 U.S. Dist. LEXIS 43902, *6-14 (S.D. Tex. June 28, 2006), the plaintiff succeeded in only one of its many copyright claims and lost on all of the other non-copyright claims asserted at trial, and was awarded far less than 1% of the $4,000,000 sought. Moreover, the Court's reasoning was directed mainly to whether plaintiff was entitled to over $1,000,000 in attorneys fees as the prevailing party even though it was responsible for much of the increased costs of the attorneys fees. *Id.*. In contrast, Games Workshop obtained substantial relief, prevailing on significantly more than one sole copyright infringement claim. Similarly, while the tactics of Chapterhouse needlessly and repeatedly increased the cost of the litigation, Games Workshop is not seeking to recover any of its attorneys' fees from Chapterhouse.

  **C. The Costs Sought By Games Workshop Are Appropriate.**

   **1. Exemplification Expenses**

Chapterhouse takes issues with the $34,338.50 costs Games Workshop incurred in costs for the equipment and vendor to operate the equipment allowing the display of the numerous exhibits to the jury during the trial. Inexplicably, Chapterhouse cites to *Cefalu v. Village of Elk Grove*, 211 F.3d 416 (7th Cir., 2000) to support its position that these costs are not recoverable. While the

district court did deny these costs in line with the argument made by Chapterhouse, the Seventh Circuit reversed and remanded this finding, holding that there is no bar for recovery of these costs and leaving it for the court to determine whether "the nature and context of the information being presented genuinely called for the means of illustration that the party employed. In other words, was the exemplification vital to the presentation of the information, or was it merely a convenience or worse, an extravagance?". *Id.* at 428-29.

Chapterhouse makes no suggestion that this trial technology was not necessary to the litigation. Not only were there thousands of potential trial exhibits, but the case centered on the pictoral comparisons of Games Workshops miniatures and artwork to the Chapterhouse products. As these miniatures are often quite small (a 28mm scale), trying this case without these means of enlargement and comparison of these items would have been unworkable. As the 7th Circuit stated, "Imagine, for example, the jurors and the judge poring over individual, unenlarged copies of the document with bifocals and magnifying glasses as they try to keep pace with an expert's testimony identifying for them the unique whorls of a fingerprint or swirls of a signature…Allowing fees for the cost of preparing the transparency but not for renting the projector would in this sense be a highly formalistic distinction, as each is key to the illustrative function of the exhibit." *Id.* at 428.

### 2. Witness Fees

For the subsistence allowance for its witnesses deposed in Chicago, Games Workshop agrees to a reduction of $943 in order to reflect the $130 per diem rate in effect during the depositions as opposed to the $171 per diem rate in effect during trial.

Games Workshop's request properly sought reimbursement for subsistence costs for its witnesses attendance at trial. However, in order to simplify the issues for the Court, Games Workshop agrees to reduce its witness fees costs by $3,388, the amount requested by Chapterhouse.

Lastly, due to dates of attendance at trial or deposition, airfare costs vary. This is especially true with international airfare. While the airfare costs for Mr. Merrett for trial and Mr. Jones for deposition are more expensive than the airfare fees incurred by other witnesses, these fees were the prevailing rate at the time the tickets were bought. Games Workshop is not seeking reimbursement for first class travel or any other such additional expenses. As Chapterhouse has not offered any evidence that these costs were not the prevailing costs at the time incurred, the Court should reject Chapterhouse's request to reduce Games Workshop's travel expenses by $13,693.

### 3. Transcript Fees

Games Workshop's request properly sought reimbursement for its costs related to transcript fees. However, in order to simplify the issues for the Court, Games Workshop agrees to reduce its transcript fees costs by $3,942.75, the amount requested by Chapterhouse.

### D. Games Workshop Should Be Awarded its Expert Witness Fees Needlessly Incurred

Fed.R.Civ.P. Rule 26(b)(4)(E) provides that " Unless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A)" The charges submitted for Mr. Bloch do not include his time preparing his expert report, but only his efforts to prepare for his deposition – including in particular the need to address a wholly new issue improperly raised for the first time in the *responsive* report of Mr. Bentley (and later rejected by the Court on summary judgment) that English law should govern the issue of copyrightability of the Games Workshop figurines. (See Ex. L, of £51,676 charged by Mr. Bloch, only £12,000 were involved in the drafting of his expert report). Chapterhouse had raised no such defense in its Answer or in discovery to that point, and added the theory only in its response to Mr. Bloch's original report. Mr. Bloch is a leading English barrister on intellectual property law. Chapterhouse does not attempt to argue that manifest

injustice would result from ordering it to pay some or all of Mr. Bloch's fees which were primarily necessitated by its own untimely new defense that the Court summarily rejected.

Dated: November 7, 2013

Respectfully submitted,
/s/ Jason J. Keener

Jason J. Keener (Ill. Bar No. 6280337)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: 312.832.4500
Facsimile: 312.832.4700
Email: jkeener@foley.com

Jonathan E. Moskin
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-3229
Email: jmoskin@foley.com

*Attorneys for Plaintiff*
*Games Workshop Limited*

**CERTIFICATE OF SERVICE**

I, Jason J. Keener, an attorney, hereby certify that on November 7, 2013, I caused to be filed electronically the foregoing Reply in Support of Motion for Costs with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.

      /s/ Jason J. Keener
      Jason J. Keener