| | |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
| | NORTHERN DISTRICT OF ILLINOIS |
| 2 | EASTERN DIVISION |

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3

 4   GAMES WORKSHOP LIMITED,          )

 5                   Plaintiff,       )   Docket No. 10 C 8103
                                      )
 6             vs.                    )
                                      )
 7   CHAPTERHOUSE STUDIOS, LLC,       )   Chicago, Illinois
     et al.,                         )   November 7, 2013
 8                                    )   10:30 a.m.
                     Defendants.      )
 9

10                  TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE MATTHEW F. KENNELLY
11

12   APPEARANCES:

13

     For the Plaintiff:     FOLEY & LARDNER, LLP
14                          BY:  MR. JASON J. KEENER
                            321 North Clark Street
15                          Suite 2800
                            Chicago, Illinois   60610
16

17

     For the Defendant:     WINSTON & STRAWN, LLP
18                          BY:  MR. TYLER G. JOHANNES
                            35 West Wacker Drive
19                          Chicago, Illinois   60601

20

21

22

23         LAURA M. BRENNAN - Official Court Reporter
             219 South Dearborn Street - Room 2102
24                 Chicago, Illinois   60604
                       (312) 435-5785
25
```

1       (The following proceedings were had in open court:)

2            THE CLERK:  Case 10 C 8103, Games Workshop v.

3   Chapterhouse Studios.

4            MR. KEENER:  Good morning, your Honor; Jason Keener

5   for plaintiff Games Workshop.

6            MR. JOHANNES:  Tyler Johannes from Winston & Strawn

7   for Chapterhouse.

8            THE COURT:  Well, I hope you have had as much fun

9   observing the call as I have had doing it.

10           So I have some questions about -- I've looked back at

11  the two status reports on the entry of an injunction, and I

12  think I've got some questions on those, and so I want to go

13  into that first.

14           First of all, on the question of copyrights, I'm

15  looking at the initial status report and specifically the

16  section on pages 2, 3, 4 and 5 about derivative works.  If I'm

17  getting this right, it seems like it's a wording issue because

18  Chapterhouse's concern seems to be not that they would be

19  prohibited by the injunction from making derivative works of

20  Games Workshop products as to which they were found to have

21  infringed the copyright but, rather, that they would be

22  precluded, given the wording of the injunction, from making

23  derivative works of their own products.

24           That's the way I'm reading the -- that's the way I'm

25  reading the opposition.

1          And I guess, Mr. Keener, if you think that's wrong, I

2     need you to explain to me why you think it's wrong.

3          MR. KEENER:  We think it's wrong because our

4     injunction specifically says reproducing, distributing,

5     displaying, preparing derivative works, selling or otherwise

6     infringing any of Games Workshop's copyrights with respect to

7     the products found infringing.

8          THE COURT:  All right, let me just pull it up here.

9     So your proposed injunction was Exhibit 1 to that status

10    report.

11         MR. KEENER:  Exhibit A, I think.

12         THE COURT:  Exhibit A, you're right.  Correct.

13         MR. KEENER:  And 1A --

14         THE COURT:  And 1A is what we're talking about,

15    right?

16         MR. KEENER:  Yes.

17         THE COURT:  So that they would be enjoined from, and

18    I'm quoting, "reproducing, distributing, displaying, preparing

19    derivative works, selling or otherwise infringing any of Games

20    Workshop's copyrights with respect to the below Chapterhouse

21    products."

22         And then it lists products.

23         MR. KEENER:  Correct.

24         THE COURT:  So I think I understand what both sides

25    are saying here, but I do think that there is an arguable

1  ambiguity in this just because it's kind of a long and clunky

2  sentence, okay.

3        If you're not intending to preclude Chapterhouse from

4  preparing derivative works of its own products as opposed to

5  derivative works from your copyrights, I think that you could

6  resolve that by drafting.  I mean, you might even just be able

7  to add a sentence or just to tweak it a little bit.  But the

8  way it's worded right now, the problem comes from this

9  language, "with respect to the below Chapterhouse products."

10  I think somebody might look at that and say that arguably

11  means derivative works of Chapterhouse's products.

12        And to the extent that a derivative work of a

13  Chapterhouse product was also derivative of your copyright,

14  you're still covered on that.  But if there was something that

15  was derivative of one of their products that wasn't derivative

16  of the plaintiff's copyright, then you're probably not --

17  you're almost certainly not entitled to an injunction on that.

18  So I think that you ought to be able to resolve that by

19  drafting.

20        And I guess what I'm going to insist on here --

21        And I know you have got, you know, massive teams on

22  both sides, and you're shouting across, you know, from here to

23  San Francisco and New York or wherever.  What I am really

24  going to insist on here is that people are going to need to

25  get in a room together and hammer out language on that because

1    I think that's -- I think you're both saying the same thing

2    and it's just a question of working out the wording.  Okay.

3    So that's my view on that particular dispute.

4            The second major topic in the original status report

5    has to do with trademark usage.  It's entitled "Trademark

6    Usage Outside of Product Names," and this is the section that

7    starts on page 5 and goes over to page 10, and this is the one

8    where the supplemental status report also covers this.

9            I've got to tell you, I read the supplemental status

10   report.  I do not understand anything that anybody said in it.

11   It's just -- it's just complete gibberish, to be perfectly

12   honest with you.  And so what I am going to ask you to do in a

13   minute here is I'm going to ask each side to give me in a

14   nutshell, and by that I don't mean like -- I mean like a

15   pistachio, not even like a Brazil nut when I'm talking about

16   the size of the nutshell, okay -- in a nutshell what your

17   position is and what the problem with the other side's

18   position is.

19           So, Mr. Keener, you first.

20           MR. KEENER:  Sure.  There are two issues with

21   trademarks.  The first is trademark words other than the

22   product names.  Their injunction says only product names.  It

23   doesn't cover --

24           THE COURT:  Talk slower.

25           MR. KEENER:  It does not cover eBay pages, marketing

1   material or used in the description, some of which the

2   trademarks found by the jury were only used in descriptions.

3   So just the trademark names of the product names doesn't make

4   sense.  That's the smaller issue.

5        The bigger issue is the icons.  The jury found

6   various word marks such as iron snakes --

7        THE COURT:  Is this the thing about how you interpret

8   the verdict form?

9        MR. KEENER:  Yes.

10       THE COURT:  Okay.  Before we get on to that, let me

11  go to the first point a second and ask you this question.  If

12  I'm understanding at least part of Chapterhouse's problem

13  correctly, one of the things that Chapterhouse wants to be

14  able to do -- and I'm getting this from over on page 8 of the

15  original status report, towards the bottom -- is that

16  Chapterhouse wants to be able to say that this thing works

17  well with, and then names a Games Workshop product.

18       MR. KEENER:  Correct.

19       THE COURT:  Is that something that you have a problem

20  with?

21       MR. KEENER:  It depends how it's said.

22       As we went through at trial, "compatible with" is not

23  a free fall to say whatever you want after "compatible with."

24  If he wants to say "compatible with Games Workshop's Space

25  Marine products" -- it's a shoulder pad -- that's fine.  But

1    if he says then "compatible with the Salamanders Legion and

2    the Legion of the Damned Legion and will look great as a

3    Crimson Fist person" and all that, where they string together,

4    you know, multiple sentences, now we're getting to not using

5    as little as needed for the fair use argument.

6         The fair use says "as little as needed to identify

7    the compatibility." So giving a free rein does not make

8    sense.  That's why our injunction is asking, you know, fair

9    use is fine, but you can't use it in ways likely to cause

10   confusion.  And I think that's borne out when the jury found

11   various uses of "compatible with" okay but found use of

12   "Legion of the Damned," which is only a description, after

13   "this would be a great as a Legion of the Damned character,"

14   to be infringing on the trademark.

15        THE COURT:  Okay.  Go on to the second point now.

16   The second point is the thing about the interpretation of the

17   verdict form.

18        MR. KEENER:  Right.

19        THE COURT:  And what are called the icon marks.

20        MR. KEENER:  The trademarks had two parts.  Some were

21   word marks such as iron snakes, and the second portion of the

22   trademarks was the icon marks where it had descriptive tag,

23   the iron snakes icon, and gave a picture of the icon.

24        And our argument is where the icon was found

25   infringing as a trademark, they should be precluded from using

1    that icon.  The argument raised for the first time in

2    injunction, never during trial or during the verdict form or

3    anything else, is since we used the descriptive tag on the

4    verdict form, iron snakes icon along with a picture, what the

5    verdict form really meant was we were only asserting

6    infringement where both the name of the product included iron

7    snakes or iron snakes icon and the icon itself were used.

8         It's an argument no one has ever made.  And so

9    they're saying that they can keep using all of the icons that

10    were found infringing as long as the product name doesn't use

11    the descriptive term of the icon.

12         THE COURT:  Okay.  I think I've absorbed that.

13         Tell me your name again, counsel.  Sir?

14         MR. JOHANNES:  Tyler Johannes.

15         THE COURT:  Mr. Johannes, talk to me.  Your turn.

16         MR. JOHANNES:  Your Honor, first, may I make a

17    threshold point talking about the injunction?

18         THE COURT:  Yes.

19         MR. JOHANNES:  We have submitted proposed language

20    because your Honor asked us to do so.  Your Honor said we're

21    going to enter an injunction.

22         THE COURT:  Slow down.

23         MR. JOHANNES:  We submitted proposed language.  Your

24    Honor asked us to do so.  Your Honor said you were going to

25    enter an injunction.

1    Our position is that even with the jury verdict,

2  Games Workshop is still not entitled to an injunction unless

3  they establish the four factors, which they have not done.

4    THE COURT:  Okay.  So let's pause there for a second

5  because I want to -- I have a feeling -- and I can't pretend

6  to remember everything.  I have a feeling that's the first

7  time I'm hearing that argument.  And so you need to tell me

8  why nobody has said this to me before.

9    I mean, you know, we did all this.  I mean, I called

10  it a status report, but it amounted to briefing on an

11  injunction.  And, I mean, I think one would look in vain at

12  either of the status reports to say, hey, wait a second, there

13  shouldn't be any kind of an injunction at all.  And, in fact,

14  the first paragraph of the status report that was filed on the

15  26th of June says Chapterhouse submits that the Court should

16  enter the permanent injunction attached as Exhibit B.  So that

17  is kind of the contrary of telling me that there shouldn't be

18  an injunction at all.

19    So why haven't I heard this argument before today?

20    MR. JOHANNES:  And those were submitted when the --

21  when your Honor, as I understand it, your Honor said that

22  there was going to -- made clear after the trial was over,

23  that you were going to enter an injunction.  And so we

24  submitted and so we --

25    THE COURT:  Were you here when I said that, when I

1 | supposedly said that?

2 |      MR. JOHANNES:  I was not here, your Honor.

3 |      THE COURT:  Yes.  I don't remember saying I was going

4 | to enter an injunction.  I mean, I suppose anything is

5 | possible.  But, you know, I was told certainly during and

6 | probably before the trial that the plaintiff was requesting an

7 | injunction.

8 |      You know, when the verdict was returned, I entered an

9 | order saying I was setting the case for a status hearing to

10 | address, among other things, what further proceedings would be

11 | required regarding the request for an injunction.  We had that

12 | status hearing.  It was in the middle of June.  I do not

13 | recall anybody saying that there shouldn't be an injunction

14 | because the four factors haven't been established.

15 |      I will tell you this, that if somebody had said that,

16 | I would have said, fine, if we need to have a trial on the

17 | injunction part of the case, here's your date.  I wouldn't

18 | have let this case linger for another five months or

19 | four months.  No, close to five at this point.

20 |      But then on that date I said, okay, give me a status

21 | report.  I think I was told that there were some discussions

22 | going on, and I got a status report.  And nobody said that

23 | there needed to be any further proceedings.  It was just about

24 | the form of it.  I wasn't even given a proposed injunction by

25 | Chapterhouse.

1       If I had acted that day and agreed with Chapterhouse,
2   you would have an injunction and you would have had it for
3   four and a half months at this point.  So, honestly, I think
4   you're a day late and a dollar short on that.

5       So when you say you're saying something for the
6   record, I think you forfeited that point.

7       So what is your next point?  Let's get to my
8   questions now.

9       MR. JOHANNES:  Okay.  All right.  On the scope, okay.
10  So with the icons, the nutshell here is that Games Workshop
11  submitted a verdict form that had the words and the pictures
12  in combination, and now they are trying to go beyond what the
13  jury found and prohibit Chapterhouse from using anything with
14  the pictures on.  That's the nutshell.

15      THE COURT:  Well, you know, part of the problem with
16  that argument -- I'm not necessarily disagreeing with all of
17  it; I'm not sure on some of it.

18      But, you know, when these words were put on the
19  verdict form, the words were put on the verdict form so that
20  the jury would have a cross-reference to this big chart that
21  they had been given.  That was the only purpose they were put
22  on there.

23      I don't think that you can torture out of the fact
24  that there's words on the verdict form the proposition that
25  the jury made some sort of a limited finding about that.

1   That's a losing argument.

2           On the rest of it --

3           Excuse me.  Let me get some water here.

4       (Brief interruption.)

5           THE COURT:  On the rest of it, that's frankly the

6   part where I got completely lost in the supplemental status

7   report.  I just couldn't figure out what I was being told.

8           So what else would you like to tell me?

9           MR. JOHANNES:  Well, I just want to -- I think it

10  would be helpful if I clarified the point about trademark and

11  copyright.

12          THE COURT:  Okay.

13          MR. JOHANNES:  Because with that, all that we're

14  saying there, we're saying there, okay, this is how -- it's a

15  reason why the jury's finding -- the jury's finding makes

16  sense because the jury could have found just the trademarks

17  infringed, but it didn't.

18          And what I would like to --

19          Can I explain why -- well, I'm not going to do that.

20  I apologize, your Honor.

21          THE COURT:  It's okay.

22          MR. JOHANNES:  The jury could have found that the

23  trademarks and just the picture infringed, but it didn't.  We

24  were not putting independent -- as much independent weight on

25  that as the Games Workshop summary of it might have suggested.

1    And so I would just --

2    I would just want you to focus on the verdict form

3    itself and how it matched up with the --

4    THE COURT:  With the chart.

5    MR. JOHANNES:  -- exhibit.

6    THE COURT:  Yes, okay.

7    Where are we in terms of briefing?  Is everything

8    else fully briefed, all the posttrial motions?

9    MR. KEENER:  No.

10   THE COURT:  We're waiting for the reply briefs?

11   MR. KEENER:  The reply briefs are due today on the

12   cost motions and the J -- motions.

13   THE COURT:  On all those motions, okay.

14   You know, I think probably if I had it to do all over

15   again, I would have just ruled on the injunction thing before,

16   but I had this -- I had this sort of "pie in the sky" hope

17   that people would settle the case, and that didn't work out.

18   So I think likely what's going to happen is that I'm

19   just going to deal with all this at once because I'm going to

20   get the last briefs on the posttrial motions today and the

21   cost stuff.  So I will probably deal with it all at the same

22   time.

23   I guess I will just make this observation, and this

24   isn't intended as, because it isn't, a comment on how the

25   injunction thing should go.  As sure as I'm sitting here, you

1  guys are going to have more litigation.  You are going to have

2  more litigation, and I guess one of my concerns on the

3  injunction aspect of it is that I believe that I am going to

4  be the Warhammer 40K judge for life, and I plan to live a

5  while.  And actually that's not really quite a terribly happy

6  thought.  It was a fun trial, but it was not that much fun.

7  Anyway, I will --

8          You know, it's going to be probably not until the

9  very end of the year or right after the first of the year

10  before I rule on stuff, and so I will get all of it done then

11  and you will go upstairs and start fighting with them.

12          MR. KEENER:  Your Honor, one question.

13          THE COURT:  Yes.

14          MR. KEENER:  When we started going through the issues

15  on the injunction, you said about the very first issue,

16  derivatives, you wanted us to work on adding --

17          THE COURT:  Oh, language, yes.

18          I think that is one that you can draft around or that

19  you can draft something that will satisfy both sides' concerns

20  here.  So if you can do that, try to do it within the next

21  week or so, and get me some sort of, you know, a really short

22  status report that just covers that issue and then an

23  attachment that has whatever language you have come up with,

24  if you are able to come up with something.  Okay, great.

25  Thanks.

1          MR. KEENER:  Thank you.

2

3          (Which were all the proceedings had in the above-entitled

4     cause on the day and date aforesaid.)

5

6

7

8

9                    C E R T I F I C A T E

10

11          I hereby certify that the foregoing is a true and

12     correct transcript of the above-entitled matter.

13

14

15     */s/ Laura M. Brennan*                    January 21, 2014

16

17     _____          _____
       Laura M. Brennan
18     Official Court Reporter                      Date
       Northern District of Illinois
19

20

21

22

23

24

25