**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

GAMES WORKSHOP LIMITED,

Plaintiff,

v.

CHAPTERHOUSE STUDIOS LLC

Defendant.

Civil Action No. 1:10-cv-8103

Hon. Matthew F. Kennelly

**CHAPTERHOUSE'S MEMORANDUM IN SUPPORT OF MOTION TO STAY
EXECUTION OF JUDGMENT, WAIVE OR MODIFY BOND REQUIREMENT
PENDING APPEAL, AND QUASH AND DISMISS WITHOUT PREJUDICE THE
<u>CITATION TO DISCOVER ASSETS</u>**

In order to preserve the status quo pending appeal, Chapterhouse brings this motion to

stay execution of the judgment, waive or modify the bond requirement pending appeal, and

quash and dismiss without prejudice the citation to discover assets. Absent a stay, Chapterhouse

may be forced to liquidate and wind down as an entity, which could prevent it from ever

obtaining appellate review of the judgment.

A judgment debtor is normally permitted to stay the judgment pending appeal as a matter

of course, provided that the debtor posts a bond in the amount of the judgment. But "[w]hen the

judgment debtor lacks the assets or credit necessary to pay at once and in full, this means that the

judge should give the creditor less than complete security." *Olympia Equip. Leasing Co. v.

Western Union Tel. Co.*, 786 F.2d 794, 800 (7th Cir. 1986) (Easterbrook, J., concurring).

Chapterhouse owes a judgment of $23,803, but it cannot post a bond in that amount. The

business is too small; its annual income falls well below the amount required to obtain a business

loan sufficient to post the bond. Further, the execution of the judgment may force Chapterhouse

to liquidate and wind down, which could prevent it from continuing to challenge the judgment on appeal.

Accordingly, this Court can and should fashion an alternative security arrangement that would preserve the status quo until the appeal is resolved. Chapterhouse is willing to pledge as collateral its inventory, worth over $40,000 if Chapterhouse is permitted to sell it, and its machinery, which would cost approximately $11,500 if bought new today. It is also willing to put into escrow as security all of its future profits and remaining cash, other than a small amount set aside to pay its other creditors and maintain its ongoing business operations. Such an arrangement would protect Games Workshop ("GW")'s interests while preserving Chapterhouse's right to challenge the judgment on appeal.

## FACTUAL BACKGROUND

Following a jury verdict partially in favor of GW in June 2013, this Court entered a final judgment against Chapterhouse in the amount of $25,000. In December 2013, this Court entered an injunction prohibiting Chapterhouse from selling certain products. Chapterhouse appealed both the judgment and the injunction. GW cross-appealed, and the Seventh Circuit referred the case to mediation. The court suspended briefing while the mediation was pending, and briefing remains suspended. (Order, *Games Workshop Ltd. v. Chapterhouse Studios LLC*, Case No. 14-1027 (7th Cir. Feb. 7, 2014), ECF No. 10.)

**A. Chapterhouse's Inability To Obtain A Bond**

In July 2014, after the mediation appeared to reach impasse, GW asked Chapterhouse to agree to post a bond in the amount of $23,803—the unsatisfied amount of the judgment. Chapterhouse agreed; at the time, it believed it would be able to obtain a bond in that amount. (*See* Ex. A, Affidavit of Nick Villacci ("Villacci Aff."), at ¶ 2.)[1]

Initially, Chapterhouse applied for a bond with a surety, Trausch Insurance Agency Ltd. (*Id.* at ¶ 3.) The surety denied the application. (*Id.*) Informally, the surety informed Chapterhouse's counsel that the bond would be approved if Chapterhouse obtained a letter of credit. (*Id.*)

Chapterhouse then approached two local banks, branches of Wells Fargo and Bank of America, and applied for a letter of credit. (*Id.* at ¶ 4.) Around this time, counsel for GW informed counsel for Chapterhouse that if Chapterhouse were unable to obtain a bond by August 8, GW "reserves it rights." (Ex. B (email chain), at 1.) Counsel for Chapterhouse responded by explaining that the business had been unable to obtain the bond through a surety and had applied for a letter of credit from two banks. (*Id.*) Counsel for GW did not respond. The banks denied the applications, stating that they would not grant such letters of credit unless the money was on deposit at the bank. (Ex. A, Villacci Aff., at ¶ 4.)

Finally, Chapterhouse applied for a business loan from those same two banks, secured by the assets and income of the business. (*Id.* at ¶ 5.) The applications were denied on the ground that Chapterhouse is too small—the banks required the business to have a yearly income of

---

[1] All Exhibits are attached to the Declaration of Tyler G. Johannes in Support of Motion to Stay Execution of Judgment and Waive or Modify Bond Requirement Pending Appeal, also filed today.

$200,000.  (*Id.*)  Chapterhouse, whose gross sales totaled less than $100,000 in 2013, falls well

short of this requirement.  (*Id.* at ¶ 5.)

**B.  GW's Citation to Discover Assets**

On September 17, 2014, after the business loan had been denied, GW filed a Citation to

Discover Assets against Chapterhouse.  (Ex. C, Citation to Discover Assets.)  The Citation

freezes Chapterhouse's assets and effectively shuts down the business, providing that:

> YOU ARE PROHIBITED from making or allowing ***any transfer or other
> disposition of*** or interfering with ***any property*** not exempt from execution or
> garnishment belonging to the Judgment Debtor or to which the Judgment Debtor
> may be entitled to that may be acquired by or become due to the Judgment Debtor
> ***and from paying over or otherwise disposing of any money*** not so exempt that is
> due or becomes due to the Judgment Debtor, until the further order of Court or
> termination of the proceedings.  You are not required to withhold the payment of
> any money beyond double the amount of the judgment.

(*Id.* at 1 (emphasis added)).  In particular, the Citation prevents Chapterhouse from paying for

postage to ship products that had been ordered and paid for before the Citation was issued.  The

Citation also prevents Chapterhouse from paying outstanding bills.

Chapterhouse has made every effort to comply with the Citation's freeze.  Since

September 17, Chapterhouse has incurred the following charges:  First, a $30.44 postage

purchase made prior to the issuance of the Citation was not processed and deducted from

Chapterhouse's account until September 22.  (Ex. A, Villacci Aff., at ¶ 10.)  Second,

Chapterhouse incurred charges totaling $226.18 to purchase airfare for Mr. Villacci, the operator

of Chapterhouse, to travel to Chicago for the Citation proceedings.  (*Id.*)  These purchases were

agreed to by Games Workshop Ltd. and authorized by the Joint Motion to Reset Citation

Proceeding (Oct. 8, 2014, ECF No. 497) and the Minute Entry granting the same (Oct. 10, 2014,

ECF No. 501).  Third, several payments to utility companies totaling $156.84 were made via

automatic payments that were inadvertently not cancelled, including $100.01 in charges that

were processed on Chapterhouse's debit card after Chapterhouse cancelled the card in an attempt to prevent all deductions. (*Id.*) Finally, PayPal deducted $247.50 in response to customers disputing charges with respect to purchased items that Chapterhouse had not shipped due to the asset freeze. (*Id.*)

Apart from the asset freeze, the Citation further commands that Chapterhouse appear in this Court for an examination under oath on October 14, 2014 (since moved to November 12, 2014 by agreement of the parties), and produce certain documents by October 8, 2014. (Ex. C, Citation to Discover Assets, at 1.) The document requests included numerous personal documents of Mr. Villacci, even though the Citation was not issued against Mr. Villacci and Mr. Villacci is not subject to any kind of judgment.

### C. Chapterhouse's Alternate Security Proposal

In a good-faith effort to secure the judgment, resume the appeal, and avoid the need for a Citation proceeding, counsel for Chapterhouse has proposed to GW the following alternative security arrangement with five key components. (*See* Ex. D (email chain), at 1-3.) Chapterhouse is also complying with GW's document requests, subject to certain objections.

*First*, Chapterhouse would deposit $500 in an escrow account as a cash bond within 30 days of the asset freeze being lifted. (Ex. A, Villacci Aff., ¶ 9.) At the end of each month, Chapterhouse would deposit any net profits for the month into the escrow account. The profit will be net of all expenses, including Mr. Villacci's salary of $1,500 per month and the cost of manufacturing and/or acquiring new product for sale. In the event Chapterhouse were to post a net loss for the month, Chapterhouse would remove money from the escrow account to cover it. In the event Chapterhouse were to post a net loss for three out of six consecutive months, GW would have the right to forbid Chapterhouse from manufacturing and/or acquiring new product.

***Second***, Chapterhouse would pledge the machinery used to make its products, which would cost approximately $11,500 if bought new today,[2] and the product stock on hand, with a retail value of over $40,000,[3] except to the extent the stock may be sold during the ordinary course of business. The liens could be executed three months after the conclusion of the appeal (assuming the money judgment remained in effect), but only if the escrow account were below $200 at that time. Otherwise, GW may execute the liens if the escrow account drops below $200, or 24 months after the mandate issues, whichever occurs first.

***Third***, at the conclusion of each month after the mandate issues, any funds in the escrow account in excess of $500 would be paid to GW in satisfaction of the judgment.

***Fourth***, GW would dismiss the Citation to Discover Assets, which would lift the prohibition on asset transfers and permit Chapterhouse to operate in the ordinary course of business.

***Fifth***, GW and Chapterhouse would send a joint email to the Seventh Circuit mediator requesting that briefing be reinstated, so as not to delay the appeal process further.[4]

As of this filing, discussions with GW remain ongoing.

## ARGUMENT

### A. Legal Standard

Ordinarily, a judgment debtor is entitled to stay the execution of the judgment pending appeal as a matter of course, provided the debtor posts a bond in the amount of the judgment.

---

[2] This machinery was purchased in 2011 for $3,283; however, substantially similar products cost approximately $11,500 if bought new today. (Ex. A, Villacci Aff., at ¶ 7.)

[3] As of September 30, 2014, Chapterhouse's inventory had a retail value of approximately $40,938, not counting product already sold to consumers but not shipped. (Ex. A, Villacci Aff., at ¶ 8.)

[4] Chapterhouse originally made a proposal based on an understanding of its cash and inventory that was incorrect due in part to the asset freeze imposed by the Citation. (*See* Ex. D (email chain), at 11-12) Chapterhouse identified this error and has revised its proposal.

Fed. R. Civ. P. 62(d).  But when the posting of a full bond would impose an "undue financial burden," the Court may "fashion some other arrangement for substitute security."  *Poplar Grove Planting and Refining Co. v. Basche Halsey Stuart, Inc.*, 600 F.2d 1189, 1191 (5th Cir. 1979).  "[T]he financial hardship that the bond may impose on the appellant" is "the factor that is most commonly used to waive the bond requirement."  *Hurley v. Atlantic City Police Dep't*, 944 F. Supp. 371, 377 (D. N.J. 1996).

In cases of financial hardship, courts typically fashion security arrangements that permit an appeal even though the debtor cannot post assets equal to the amount of the judgment.  As Judge Easterbrook has explained, "[w]hen the judgment debtor lacks the assets or credit necessary to pay at once and in full, this means that the judge should give the creditor less than complete security."  *Olympia Equip.*, 786 F.2d at 800 (Easterbrook, J., concurring).  Indeed, an alternative security arrangement is especially critical in these situations, as the debtor's very existence (and thus, its right to meaningful relief on appeal of the underlying judgment) may hang in the balance. *See Hurley*, 944 F. Supp. at 377 n.6.  For instance, courts have permitted judgment debtors to pledge physical assets or accounts receivable, *see Olympia Equip.*, 786 F.2d at 799, or place money in escrow, *see Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 874 (10th Cir. 1986).

**B.  This Court Should Waive The Bond Requirement And Permit Chapterhouse To Post Alternative Security.**

Despite Chapterhouse's best efforts to post a bond, it simply does not have the financial ability to do so.  Accordingly, this Court should stay the execution of the money judgment and permit Chapterhouse to post alternative security, for four reasons.

*First*, Chapterhouse may have to liquidate its business and forfeit the right to appeal if the judgment is executed now.  (*See* Ex. A, Villacci Aff., ¶ 6.)  Courts routinely fashion creative

security arrangements to permit judgment debtors to pursue an appeal when the alternative is insolvency. *See, e.g., Olympia Equip.*, 786 F.2d at 799 (affirming waiver of bond where defendant might otherwise be forced to declare bankruptcy); *C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc.*, 368 F. Supp. 501, 520 (E.D. Pa. 1973) (granting a stay of execution without a supersedeas bond where execution of the judgment would place the company, and each individual defendant, in insolvency); *Hurley*, 944 F. Supp. at 378 ("[T]he strong likelihood that enforcement of this judgment would push him into bankruptcy is a factor which informs the court's discretion."). Although the terms of the security arrangements vary, the common thread is that courts will fashion some arrangement, tailored to the debtor's circumstances, that permits an appeal.

*Second*, Chapterhouse has diligently attempted to secure cash to post a full bond, as described in detail above. But due to the business's small size, this is not possible. (Ex. A, Villacci Aff., at ¶¶ 3-5.) And despite repeated attempts, Chapterhouse has been unable to secure a letter of credit or business loan. (*Id.* at ¶ 5.) Simply put: Chapterhouse stands ready to post all that it can. *See Olympia Equip.*, 786 F.2d at 800 (Easterbrook, J., concurring); *Alexander v. Chesapeake, Potomac and Tidewater Books, Inc.*, 190 F.R.D. 190, 193-94 (E.D. Va. 1999) (copyright infringement defendant who could not afford to post full supersedeas bond granted stay pending appeal on condition that it give security for amount of judgment that it could currently afford to pay).

*Third*, GW will not be prejudiced by a stay of the judgment. Chapterhouse has proposed to put cash and future profits in escrow and pledge the assets of the business as collateral. Chapterhouse's inventory alone, if Chapterhouse is given the opportunity to sell it, has a retail

value of over $40,000.[5]  Moreover, the machinery used to make Chapterhouse's products, while purchased in 2011 for $3,283, would cost approximately $11,500 if bought new today.  Nor is time of the essence—GW generates over $50 million a year in revenue in the United States alone, and by its own estimation the $25,000 judgment is merely a "nominal sum."  (Tr. 580:6-10, 1766:4-7 (ECF Nos. 422, 427).)

**Fourth**, as discussed above, Chapterhouse has proposed an alternative security arrangement that will allow it to continue to operate its business while escrowing its profits to pay any portion of the judgment that is upheld on appeal.  Chapterhouse will deposit $500 in an escrow account as a cash bond and, at the end of each month, deposit any net profits for the month into the escrow account.  The profit will be net of all expenses, including Mr. Villacci's salary of $1,500 per month.  In the event Chapterhouse has a net loss for the month, Chapterhouse may remove money from the escrow account to cover it.  In addition, Chapterhouse will pledge the machinery used to make its products, which would cost approximately $11,500 if bought new today.  Chapterhouse will also pledge the product stock on hand, with a retail value of approximately $40,000, except to the extent it may be sold during the ordinary course of business.  Chapterhouse has proposed that the liens would have a slightly delayed maturity date, to account for the fact that Chapterhouse's revenues may increase considerably following the appeal even if the copyright infringement judgment is not completely overturned (e.g., if the Seventh Circuit reverses portions of the trademark and/or copyright infringement judgments and provides a corresponding reduction in the scope of the present injunctions while leaving some or all of the damages award intact).

---

[5] Chapterhouse's inventory has a retail value of approximately $40,938, not including products within Chapterhouse's possession but which have already been sold.  (Ex. A, Villacci Aff., at ¶ 8.)

Courts have approved similar arrangements. For instance, in *Olympia Equipment*, the court waived the bond requirement where the judgment debtor provided for adequate alternative security in the form of the company's pledge of cash, accounts receivables, and security interest in some of the company's physical assets. 786 F.2d at 799. And in *C. Albert Sauter Co.,* the court permitted the defendants to place stocks and cash in escrow where the $1.5 million judgment would have rendered the defendants insolvent. 368 F. Supp. at 520-21. Finally, in *Alexander*, the court permitted copyright infringement defendants to post security in the amount of roughly 13% of the final judgment because that amount was "all defendants appear able to pay in satisfaction of the current judgment." 190 F.R.D. at 193.

Apparently, GW wrongly believes that Mr. Villacci's personal assets are somehow relevant to this issue. (*See* Ex. C, Citation to Discover Assets, at 3-4 (requesting, among other things, information related solely to Mr. Villacci's assets).)[6] But there is no judgment against Mr. Villacci, and the operator of an LLC is not liable for the debts of the business. *See, e.g.*, *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013) (*citing* TEX. BUS. ORGS. CODE ANN. § 101.114) ("[A] member or manager of an LLC 'is not liable for a . . . liability under a judgment . . . except to the extent that 'the company agreement specifically provides otherwise.'").[7] Accordingly, this Court should fashion a security arrangement that considers only the assets of Chapterhouse, tailored to what Chapterhouse can afford to post, and dismiss the Citation proceeding without prejudice.

---

[6] GW contends that the *C. Albert Sauter Co.* decision indicates that Mr. Villaci's personal assets should be included in any alternative security arrangement (*see* Ex. D (email chain), at 9), but in that case, the individuals who were required to escrow personal assets were themselves judgment debtors. *See C. Albert Sauter Co.*, 368 F. Supp. at 504.

[7] Chapterhouse is a Texas LLC, and veil-piercing claims are governed by the law of the state of incorporation. *See On Command Video Corp. v. Roti*, 705 F.3d 267, 272 (7th Cir. 2013).

## CONCLUSION

For the foregoing reasons, Chapterhouse requests that the Court stay execution of the money judgment, waive or modify the bond requirement pending appeal, and quash and dismiss the Citation proceeding without prejudice. Chapterhouse will post alternative security as the Court may deem just and proper.

Dated: November 6, 2014           Respectfully submitted,

/s/ Tyler G. Johannes

Tyler G. Johannes (IL Bar No. 6300117)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601-1695
Phone: (312) 558-5600
Fax: (312) 558-5700
tjohannes@winston.com

Donald R. Steinberg (*admitted pro hac vice*)
Louis W. Tompros (*admitted pro hac vice*)
Kevin A. Goldman (*admitted pro hac vice*)
Elizabeth C. Mooney (*admitted pro hac vice*)
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Phone: (617) 526-6000
Fax: (617) 526-5000
don.steinberg@wilmerhale.com
louis.tompros@wilmerhale.com
kevin.goldman@wilmerhale.com
elizabeth.mooney@wilmerhale.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Tyler G. Johannes, an attorney, hereby certify that on November 6, 2014, I caused to be filed electronically the foregoing MEMORANDUM IN SUPPORT OF MOTION TO STAY EXECUTION OF JUDGMENT, WAIVE OR MODIFY BOND REQUIREMENT PENDING APPEAL, AND QUASH AND DISMISS WITHOUT PREJUDICE THE CITATION TO DISCOVER ASSETS with the Clerk of the Court using the CM/ECF system, which will send an electronic copy of the foregoing to counsel of record and constitutes service under Federal Rule of Civil Procedure 5(b)(2)(D) pursuant to Local Rule 5.9 of the Northern District of Illinois.


_____/s/  Tyler G. Johannes_____